# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

**Civil Action No. 1:19-cv-02443-STV**

Jun Li, Qi Qin, Yi Liu, Jie Yang, Yuquan Ni, Li Fang,
Zhongzao Shi, Fang Sheng, Shunli Shao, Kaiyuan Wu,
Zhijian Wu, Zhongwei Li, and Yuwei Dong,

      Plaintiffs,

v.

Colorado Regional Center Project Solaris LLLP,
Colorado Regional Center I, LLC,
Solaris Property Owner LLC, and
Peter Knobel,

      Defendants.

## RESPONSE IN OPPOSITION TO EMERGENCY MOTION TO SHOW CAUSE TO HOLD JAMES KILROY AND HIS CLIENTS IN CONTEMPT [ECF 14]

Colorado Regional Center Project Solaris LLLP ("CRCPS") and Colorado Regional Center I, LLC ("CRC") (together, the "CRC Entities"), through undersigned counsel, hereby submit their Response in Opposition to Plaintiffs' Emergency Motion to Show Cause to Hold James Kilroy and His Clients in Contempt ("Motion") [ECF 14], stating as follows:

## INTRODUCTION

Plaintiffs are thirteen of a total of 152 limited partners in CRCPS. This is not a class action, and Plaintiffs have not sought class action treatment of this case.

CRC is the general partner of CRCPS. Plaintiffs purchased their limited partnership interest in CRCPS as part of an approved EB-5 Program through the United States Citizenship and Immigration Services ("USCIS") in order to obtain a permanent residence visa, commonly referred

1

to as a "green card." Plaintiffs filed this lawsuit on August 28, 2019 [ECF1]. Plaintiffs did not, however, serve any of the Defendants until October 1, 2019 [ECF 41 and 42].

On September 16, 2019, CRC, as general partner of CRCPS, sent a notice of pending litigation to all limited partners, advising them of this lawsuit. CRC did so in order to: (a) advise the limited partners of their obligation under the limited liability partnership agreement to indemnify CRC for the legal fees associated with the defense of this lawsuit; (b) assure the limited partners that CRC intends to vigorously defend this lawsuit; (c) advise the limited partners of a specific opportunity to sell the assets of CRCPS, which include residential condominium units in Vail, Colorado; and (d) reassure the limited partners that CRC would not place the interests of the Plaintiffs ahead of the full group of limited partners of CRCPS.[1]

As general partner of CRCPS, CRC was obligated to share this information with the limited partners. Plaintiffs, however, characterize this communication as "contempt of court" perpetrated by CRC, CRCPS and undersigned counsel. It is entirely unclear what CRC, CRCPS and undersigned counsel are being accused of being contemptuous *of*: the Court has entered no substantive rulings in this matter, and Defendants had not entered an appearance in this case until one week after Plaintiffs filed their motion [ECF 18 and 19]. Apparently, the focus of Plaintiffs' motion is a single sentence in the September 16, 2019 in which CRC states as follows: "As the lawsuit proceeds, we may ask the Plaintiffs to voluntarily abandon their Green Card or ask the

---

[1] In their motion, Plaintiffs only provided the Court with a partial version of the September 16, 2019 correspondence to the limited partners. The full correspondence is attached hereto as **Exhibit A.**

2

Court to revoke their Green Cards should the Plaintiffs continue to seek rescission as a remedy." [ECF 14].

Plaintiffs claim that CRC, CRCPS and undersigned counsel sent this September 16, 2019 correspondence only to Plaintiffs; that the purpose of the correspondence was to threaten Plaintiffs; and, that one of the Plaintiffs (Li Fang) "has withdrawn in fear." Plaintiffs are wrong on all counts. CRC sent the *entire* September 16, 2019 correspondence to *all* limited partners, not just Plaintiffs. CRC did so because it was obligated – as the general partner of the limited partnership – to do just that. And Plaintiff Li Fang has not in fact "withdrawn in fear." As he withdrew, he advised CRC that he was doing so because he was hopeful that CRC would take practical measures as soon as possible to help the investors reduce losses. To be clear, nobody has "withdrawn in fear" from this lawsuit. In fact, Plaintiffs just filed a motion to amend the Complaint this week that *adds* seven new Plaintiffs.

Plaintiffs' motion for contempt not only mischaracterizes the nature of the correspondence from CRC, but it also ignores basic principles of rescission. As is clear from the September 16, 2019 correspondence, CRC has contended to its limited partners that Plaintiffs may ask the Court to determine that Plaintiffs may not be able to pursue rescission as a remedy if Plaintiffs fail to return everything they received in the transaction with CRCPS. This statement of fact is true, and CRC's stated intention is at the very least legally supportable. Rescission of a contract, as Plaintiffs seek here, requires that the rescinding party be restored to the *status quo ante*. In other words, all payments, things of value and benefits conferred must be returned, which would necessarily include Plaintiffs' "green cards." There is nothing threatening or misleading about informing CRCPS's investors of this position, and CRC and CRCPS are aware of no case law suggesting that

3

an EB-5 investor may partially unwind the EB-5 investment by getting its money back while keeping all direct and material benefits of their investment.[2] Such a result would stand in stark contrast to well-settled law precluding a party from both affirming and disaffirming a contract.

## FACTUAL BACKGROUND

1. Between 2011 and 2013, Plaintiffs Jun Li, Qi Qin, Yi Liu, Jie Yang, Yuquan Ni, Li Fang, Zhongzao Shi, Fang Sheng, Shunli Shao, Kaiyuan Wu, Zhijian Wu, Zhongwei Li, and Yuwei Dong (collectively, the "Plaintiffs"), who are Chinese investors, each purchased a limited partnership interest in CRCPS for $500,000, as part of an approved EB-5 Program through the U.S. Citizenship and Immigration Services ("USCIS") to obtain a permanent residence visa, commonly referred to as a "green card." *See* **Exhibit B,** Rick Hayes ("Hayes") Affidavit.

2. Under the terms of the partnership agreement, CRCPS agreed to loan the proceeds of the investment to a developer to pay certain costs related to the development of 79 high-end residential condominium units (the "Project"). *See* **Exhibit B**, Hayes Affidavit.

3. In exchange for their investment and partnership interest in CRCPS, the investors received I-829 approval from USCIS beginning in 2015, which eventually resulted, or will result, in the issuance of permanent green cards.

4. Consistent with the terms of the loan agreement, the developer delivered its notice of its intention to exercise its right to transfer title to CRCPS in lieu of cash payment with respect to 17 condominium units that were pledged as collateral for the loan. *See* **Exhibit B**, Hayes Affidavit.

---

[2] Plaintiffs cited no case law at all in their motion in support of their position that Defendants have improperly propagated" "misstatements of law."

5. On June 5, 2019, CRCPS entered into a Letter of Intent to sell the 17 condominium units to a buyer in as a bulk sale transaction. The net proceeds of the bulk sale (after payment of transaction costs and accrued partnership expenses) will be distributed to limited partners, including Plaintiffs, as a return of capital. *See* **Exhibit B**, Hayes Affidavit.

6. On August 28, 2019, Plaintiffs filed a complaint against the CRC Entities, SPO and Peter Knobel (collectively, the "Defendants"), seeking rescission of their investment contract that was entered into over six years ago for alleged violations of federal and state securities law, breach of fiduciary duty and fraud (the "Complaint"). Plaintiffs also purport to assert a claim for "lis pendens." [ECF 1].

7. On September 4, 2019, undersigned counsel sent a letter to Plaintiffs' counsel informing him of the Letter of Intent and that any assertion or recording of a lis pendens would necessarily interfere with the anticipated sale, resulting in damage to the investors, including Plaintiffs. *See* **Exhibit C**.

8. Despite that correspondence, Plaintiffs recorded a Notice of Lis Pendens on September 13, 2019, falsely claiming that this action affects title to the 17 condominium units. [ECF 16].

9. On September 16, 2019, CRC sent a letter to all limited partners informing them of the pending litigation, which attached additional correspondence from undersigned counsel and counsel for SPO and Knobel. *See* **Exhibit A**.

10. On September 17, 2019, Robert Glucksman, Managing Director of CRC, received e-mail correspondence from Plaintiff Li Fang, advising that he was withdrawing from the litigation. *See* **Exhibit D**.

11. That same day, Plaintiffs filed their Emergency Motion to Show Cause to Hold James Kilroy and His Clients in Contempt [ECF 14], arguing that the September 16, 2019 correspondence was threatening, contained misstatements of law and that it resulted in Plaintiff Li Fang withdrawing "in fear." [ECF 14]. Plaintiffs did not cite to any orders of the Court which have been allegedly violated or filings in the Court which are allegedly improper. Plaintiffs cited only to an incomplete version of the September 16, 2019 letter which CRC sent to its constituents – all of the limited partners of CRCPS.

12. One week later, on September 24, 2019, undersigned counsel entered an appearance in this matter in conjunction with filing a Petition for Order to Show Cause Pursuant to C.R.S. § 38-35-204, seeking a determination from the Court that the Notice of Lis Pendens is spurious and should be deemed invalid. [ECF 20]. Prior to that date, undersigned counsel had not entered an appearance in this matter or filed any documents.

13. On October 13, 2019, Plaintiffs filed a motion to amend in which Plaintiffs sought leave to add an additional seven Plaintiffs to this lawsuit. [ECF 43].

## ARGUMENT

**A.  Legal Standard**

To the extent Plaintiffs are seeking sanctions under Fed. R. Civ. P. 11 or a finding of contempt, such relief is not appropriate here. There has not been any improper filing or misrepresentation to the Court, nor has there been any violation of a Court order. *See* Fed. R. Civ. P. 11 (applying only to signed pleadings, written motions, or other papers, and representations to the court); *see also Lundahl v. Halabi*, 600 F. App'x 596, 604 (10th Cir. 2014) ("[t]o be held in contempt, a court must find the party violated a specific and definite court order and the party had

notice of the order") (citation omitted). Thus, the September 16, 2019 correspondence does not fall under Fed. R. Civ. P. 11 or a contempt order's purview.

CRC, CRCPS and undersigned counsel certainly recognize, however, that federal courts have the inherent power to manage their own proceedings and to control the conduct of those who appear before them, including sanctioning litigations for bad faith conduct. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991). This inherent authority is governed "not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id*. (citation omitted). "Bad faith conduct generally involves oppressive or vexatious conduct, or attempts to perpetrate a fraud on the court." *Fid. Nat'l Title Ins. Co. v. Intercounty Nat'l Title Ins. Co.*, No. 00 C 5658, 2002 WL 1433717, at *9 (N.D. Ill. July 2, 2002) (approving exercise of the court's inherent authority where party sent anonymous, threating letters to opposing counsel).

Legitimate representation that advances reasonable interpretations of the law and is not aimed at threatening or harassing an opposing party is not subject to a court's inherent sanctioning authority. *See, e.g.*, *Teamsters Local Union No. 430. v. Cement Exp., Inc.*, 841 F.2d 66, 68 (3rd Cir. 1988) (holding that sanctions were not warranted where argument, while novel and unsuccessful, was not plainly unreasonable). Courts must proceed cautiously to avoid inhibiting representation undertaken with legitimate zeal. *See Braley v. Campbell*, 832 F.2d 1504, 1512 (10th Cir. 1987) (en banc). In invoking the inherent power to punish conduct which abuses the judicial process, a court must exercise restraint and discretion. *See Chambers*, 501 U.S. at 43.

**B.     The September 16, 2019 Correspondence Does Not Merit Sanctioning Under the Court's Inherent Authority.**

### *1.      CRC Advances a Reasonable Interpretation of the Law.*

Contrary to Plaintiffs' assertions, advising the limited partners that Plaintiffs may ultimately have to surrender their green cards because they are seeking to rescind their investment contract is not a misstatement of the law. Rescission is an equitable remedy that returns the parties to "the status quo prevailing before the existence of an underlying contract." *Rosenfield v. HSBC Bank*, 681 F.3d 1172, 1183 (10th Cir. 2012). "[R]escission is generally available in circumstances where the aggrieved party is improperly induced into assenting to terms of a contract . . . ." *Id.* at 1184 (providing examples such as fraud or material representation, reliance on an incorrect fundamental assumption, and mistake). Rescission, in effect, allows a party to make it such that the agreement had never been executed. *Id.* Accordingly, the party seeking rescission "must be restored to the *status quo ante*: all payments and things of value must be returned, and all benefits conferred must be adequately compensated." *Kaiser v. Mkt. Square Disc. Liquors, Inc.*, 992 P.2d 636, 642 (Colo. App. 1999). Critically, "a party may not rescind a contract in part and affirm it in part, or rescind a contract but retain some benefit arising from it." *Id.* (citing *Gerbaz v. Hulsey*, 288 P.2d 357, 359 (Colo. 1955)).

There can be no genuine dispute that Plaintiffs' green card was not only a thing of value and benefit conferred, but it was the primary purpose for Plaintiffs purchasing a limited interest in CRCPS. *See, e.g.*, *SEC v. Chen*, No. C17-0405JLR, 2019 WL 652360, at *14 (W.D. Wash. Feb. 15, 2019) (finding that foreign investors invested in partnership because they wanted to obtain EB-5 status and, eventually, lawful permanent residency in the United States). If Plaintiffs are unable or unwilling to unwind the entirety of their EB-5 investment transactions, rescission very well may not be an appropriate remedy. There is nothing threatening, misleading or inaccurate about this

concept. *See, e.g.*, *Kaiser*, 992 P.2d at 642 (reiterating that a party may not rescind a contract but retain some benefit arising from it).

Moreover, other immigration cases conclude that green card holders must surrender their green cards if the initial benefit was conferred in error. *See*, *e.g.*, *Ayala v. U.S. Citizenship & Immigration Servs.*, No. 1:16-CV-0798 AWI BAM, 2017 WL 3023572, at *4-5 (E.D. Cal. July 14, 2017). In *Ayala*, the court held that where plaintiff obtained lawful permanent resident ("LPR") status based on the government's mistake, plaintiff was still not lawfully admitted for permanent residence. *See id*. The *Ayala* court followed the Eastern District of Michigan in adopting the government's argument that plaintiff's LPR status was void *ab initio* because the LPR status was issued erroneously. *Ayala*, 2017 WL 3023572 at *6 (following *Turfah v. U.S. Citizenship & Immigration Servs.*, No. 2:15-cv-10371, 2016 WL 362456, at *3 (E.D. Mich. Jan. 29, 2016), *aff'd*, 845 F.3d 668 (6th Cir. 2017)). This approach comports with the USCIS guidelines. *See* USCIS Adjudicator's Field Manual, 26.2(a)(2), https://www.uscis.gov/ilink/doc View/AFM/HTML/AFM/0-0-0-1/0-0-0-12524/0-0-0-12583.html ("In other cases where INS or USCIS improperly conferred benefits, even though no fraud or deception was involved, you must exercise considerable judgment and discretion to determine whether either removal proceedings or rescission is appropriate.").[3] CRC and CRCPS maintain that there was no error or fraud in connection with Plaintiffs' EB-5 investments. Indeed, the USCIS approved of the CRCPS investment. The point is that rescission is only available as a remedy in this case if Plaintiffs are willing to *completely* rescind, or unwind, their EB-5 transactions.

---

[3] This section of the Adjudicator's Field Manual has not yet been updated and moved to the USCIS Policy Manual per USCIS's updating announcement.

9

Finally, the September 16, 2019 correspondence did not improperly assert that this Court will require Plaintiffs to surrender their green cards. CRC and CRCPS are well aware that the Court will decide this issue if and when it is presented to the Court. While this Court may conclude it does not have jurisdiction to revoke Plaintiffs' green cards, *see Huiwu Lai v. United States*, No. C17-1704-JCC, 2018 WL 1610189, at *2 (W.D. Wash. Apr. 13, 2018) ("A district court lacks jurisdiction to hear claims involving issues to be adjudicated in a removal proceeding."), the question may still be put to the court to determine its own jurisdiction, *Shepherd v. Holder*, 678 F.3d 1171, 1180 (10th Cir. 2012) ("[A] federal court *always* has jurisdiction to determine its own jurisdiction.") (citation omitted). Indeed, in *Huiwu Lai*, 2018 WL 1610189, at *3, the court concluded that it had the jurisdiction to adjudicate claims seeking the return of that plaintiff's green card because neither the Immigration Court, Board of Immigration Appeal, or court of appeals would address the issue in considering the merits of plaintiff's status adjustment. And, in a subsequent proceeding, the court ordered the return of plaintiff's Green Card until removal proceedings were complete. *Id.* at *4.  In sum, CRC, CRCPS and undersigned counsel simply did not propagate misstatements of law.  The September 16, 2019 correspondence was entirely proper – sent by the general partner to limited partners who have a direct interest in the fact of this lawsuit and its actual and possible consequences.

### 2. *The September 16, 2019 Correspondence Was Not Oppressive or Vexatious, Nor Was it Designed to Interfere With the Litigation Process*

The September 16, 2019 correspondence was not an attempt to interfere with the litigation process.  As is clear on the face of the September 16, 2019 correspondence, it was sent to all limited partners, not just Plaintiffs.

10

A party has the right to act independently in initiating communications with the opposing party, and an attorney has no obligation to prevent or attempt to discourage such conduct. *See Miano v. AC&R Advert., Inc.*, 148 F.R.D. 68, 82-83 (S.D. N.Y. 1993); *see also Fidelity*, 2002 WL 1433717, at *7 ("A represented party may directly contact a represented opposing party . . . ."). But that is not what even happened here. CRC sent the September 16, 2019 correspondence to all 152 limited partners, not only to the thirteen who are Plaintiffs in this lawsuit. Granted, a court may exercise its inherent authority to impose sanctions where parties send communications that are threatening or a blatant attempt to interfere with the litigation process or the attorney-client relationship. *See Fidelity*, 2002 WL 1433717, at *11 ("Anonymous, threatening letters prevent a speedy, open, and just resolution of the dispute on its merits."). But again, that is simply not what happened here, as is evident from the full September 16, 2019 correspondence itself. *See, e.g.*, *id.* at *8-9 (determining that a party expressing an opinion to another party that his or her attorney is not protecting his or her best interests does not constitute an improper attempt to influence the litigation or interfere with the attorney-client relationship).

The obvious and clear purpose of the September 16, 2019 correspondence was to inform the limited partners of the pending litigation. One sentence at the end of the third paragraph accurately asserted that CRC and CRCPS may ask the Court to review the consequences of Plaintiffs' demand for rescission, and the remainder of the correspondence simply detailed the status of the pending litigation, including how the litigation impedes the CRCPS' ability to sell the real property. CRC, in its capacity as the general partner of CRCPS, properly determined that the limited partners were entitled to this information because it directly impacts their interests. To the extent that providing such information to all limited partners suggests that Plaintiffs are not in fact

acting in the best interest of the limited partnership, or that Plaintiffs' counsel is not acting in their collective best interest, that provision of information is entirely proper and does not warrant the imposition of sanctions.

Plaintiffs failed to provide the Court with the full September 16, 2019 correspondence, so CRC and CRCPS do so here. *See* **Exhibit A.** The full correspondence includes communications between the attorneys which are again entirely appropriate in light of the undeniable fact that this lawsuit impacts all limited partners. Undersigned counsel's attached letter was two pages long and properly stated at the end of the seventh paragraph, "[y]our demands in the Lawsuit that your clients' investments be rescinded would, of course, require a complete unwinding of the transactions. This necessarily would require your clients to abandon their Green Cards, voluntarily or by court order, as part of the Lawsuit." *See* **Exhibit A**.

In sum, the entirety of the September 16, 2019 correspondence, including undersigned counsel's letter to counsel for Plaintiffs, focused on the impediment this litigation creates to the bulk sale of the real property. Nothing about the CRC Entities' conduct or undersigned counsel's conduct was oppressive or vexatious at all, let alone to justify sanctions.

### 3. *The September 16, 2019 Correspondence Has Not Had a Chilling Effect on, or Otherwise Interfered With, the Litigation.*

Finally, Plaintiffs are simply wrong that the September 16, 2019 correspondence has discouraged Plaintiffs from pursuing their claims and participating in this action. Plaintiff Li Fang did not withdraw out fear of losing his green card. Instead, he represented to CRC that he intended to withdraw because he was hopeful that CRC could take practical measures as soon as possible to help the investors reduce losses. *See* **Exhibit D**. Clearly this limited partner chose to withdraw

as a Plaintiff not due to any intimidation by CRC, but instead because CRC advised all limited partners of the bulk sale transaction. As further evidence that the September 16, 2019 correspondence has had no negative or chilling effect on this litigation, just this week Plaintiffs filed a motion to amend to add seven new Plaintiffs. [ECF 43].

## CONCLUSION

Plaintiffs' motion [ECF 14] should be denied because relief under Rule 11 and contempt are not applicable here. Nor are sanctions warranted pursuant to this Court's inherent authority because the September 16, 209 correspondence was proper, directed to all limited partners, advanced a reasonable interpretation of the law, and has not improperly interfered with the lawsuit as Plaintiffs allege.

DATED: October 15, 2019.

*/s/ James D. Kilroy*
James D. Kilroy
Stephanie A. Kanan
SNELL & WILMER L.L.P.
1200 Seventeenth Street, Suite 1900
Denver, CO 80202-5854
Phone: (303) 634-2000
Fax: (303) 634-2020
Email:  jkilroy@swlaw.com
Email:  skanan@swlaw.com

***Counsel for Defendants Colorado Regional Center Project Solaris, LLLP and Colorado Regional Center I, LLC***

## CERTIFICATE OF SERVICE

This is to certify that on October 15, 2019, a true and correct copy of the above and foregoing document has been electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record:

Douglas Litowitz
413 Locust Place
Deerfield, IL  60015

Harold A. Haddon
Ty Gee
Haddon Morgan and Foreman, P.C.
150 East 10th Avenue
Denver, CO  80203

                                          */s/Erika Conner*
                                          for Snell & Wilmer L.L.P.

4821-3850-9736