# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-02443

Jun Li, Qi Qin, Yi Liu, Jie Yang, et al.

      Plaintiffs,

          v.                                          Hon. Magistrate Scott Varholak

Colorado Regional Center Project Solaris LLLP,
Colorado Regional Center I, LLC, et al.

      Defendants.

---

## PLAINTIFFS' REPLY ON MOTION TO SHOW CAUSE TO HOLD JAMES KILROY AND HIS CLIENTS IN CONTEMPT

---

**Threats to Report Immigrant Status Can Be Criminal**

Threatening to report a person to immigration authorities, or in this case, "ask[ing] the Court to revoke their Green Cards," is a menacing and intimidating tactic that skirts criminal behavior. Colorado's criminal law, C.R.S. 18-3-207(1.5), makes it a Class 4 felony of Criminal Extortion to gain financial advantage over another by threatening to reveal their immigration status:

> A person commits criminal extortion if the person, with the intent to induce another person against that other person's will to give the person money or another item of value, threatens to report to law enforcement officials the immigration status of the threatened person or another person.

The punishment is 2 to 6 years in prison and a fine up to $500,000. Here, the Defendants are effectively saying, 'Give up your valuable right to claim damages from us, or we will revoke

your immigration status.'  That is a threat demanding that the limited partners give up something of value or else pay the cost of having their immigration status reported to the government.

This is criminal in many states. In California, it is a crime of Extortion with 2-4 years in prison when a person threatens to report another's immigration status or suspected immigration status; such threats are presumed to cause *fear*.  Cal. Penal Code. ch. 7, sec. 519. New York's labor department calls a threat to report immigration status to the authorities "retaliation" and it can lead to three months in jail and a $20,000 fine, and that may soon be upgraded to a felony.[1]

Putting aside the criminal law, how does such a threat register emotionally?  Here is one example: a human resources employee at the Denver Public Schools sent out an email saying that they would report to the immigration authorities any teachers on immigrant visas who participated in a strike.  The Mayor of Denver called this "unconscionable," and the Denver School Board and the Administrator immediately apologized amid a public uproar and denouncements from teachers, parents, and community leaders.[2]  Those are not even the people directly threatened.  When the Mayor, the School Board, and the entire community are outraged by these types of threats, imagine the effect on the actual person who is threatened.

---

[1] Michael Sisak and Claudia Torrens, "New York Bill Targets Workplace Immigration Discrimination," *AP News*, February 6, 2019.  See https://www.apnews.com/0c67ad6e1e4f4d9bafa24c52db3bd309 (last checked October 15, 2019).

[2] See Melanie Asmar, "This was Wrong,' Says Denver Schools Chief of Email Threat to Immigrant Teachers," *ChalkBeat*, January 25, 2019 (https://chalkbeat.org/posts/co/2019/01/25/denver-strike-immigrant-teachers-superintendent-apology/)(last checked October 15, 2019).

Defendants claim that their threat to "revoke Green Cards" had no effect, and they cite the case of Li Fang, a client who withdrew and then emailed the Colorado Regional Center ("CRC") saying that he hoped the situation would be resolved. This shows how little the CRC knows because they don't speak Chinese.

The truth is attached as the Declaration of Yi Wen "Vicki" Chen, assistant to attorney Litowitz, who runs the WeChat group on this case which has 25 participants who talk among themselves and with attorney Litowitz. The CRC letter containing the threat on September 16th hit the WeChat group at 9:30pm on that day and immediately sparked controversy and discussion starting ten minutes later at 9:40pm. Li Fang was able to see this entire discussion. On the same night of the 16th, Li Fang joined a spinoff WeChat group of four investors who discussed the CRC's letter and the threat it contained. They spoke in the spinoff WeChat room and then on the telephone for nearly an hour, as texts and calls flew back and forth on WeChat. Finally Li Fang had a telephone call with one or more other limited partners that lasted until 12:45am. At 5:52am the next morning, obviously not having slept or getting little sleep due to worry, Li Fang decided to withdraw as our client in Chinese. At 5:57am he notified others in the group, obviously an indication that this was a topic of their conversation. Interestingly, Li Fang only spoke to us only in Chinese, yet his email to the CRC was in English, not his native language, probably to appease CRC.

Judge Varholak can look at this sequence of events and reach a conclusion whether CRC's threat had any effect on Li Fang. He had been a client since August. On the day of the CRC letter, he and other investors immediately went into chats where the threat was discussed, then they had texts and calls on it past midnight, then Li Fang stayed up late

3

thinking about it, and before the sun came up the next morning he withdrew as a client in Chinese, and then sent a conciliatory note to CRC in English.

Colorado Rule of Professional Conduct 4.5 says that a lawyer should not threaten a governmental process (criminal, administrative, or disciplinary) as a way to gain an advantage in a civil suit.  As Comment 2 make clear:

> Threatening to use, or using the criminal, administrative or disciplinary process to coerce adjustment of private civil matters is a subversion of that process; further, the person against whom the criminal, administrative or disciplinary process is so misused may be deterred from asserting valid legal rights and thus the usefulness of the civil process in settling private disputes is impaired.

Here, the threat to revoke Green Cards was a warning shot across the bow to all others who might sign up as plaintiffs.  CRC's goal was not to inform -- since they misstated the law -- but to deter clients from making civil claims against them.

In summary, the threat to the Defendants was likely criminal, likely unethical, and most assuredly offensive and intended only to gain advantage in a civil suit.   And to gain an advantage over the very people whose money they had lost and to whom they owe fiduciary duties.

**Defendants Cannot Cite a Single Case in Support of the Claim in the Letter**

As expected, Defendants cannot produce a single case where any court "revoked Green Cards" in private litigation on a business deal, nor even revoked a Green Card under *any* circumstances.

Green Cards are issued, processed, revoked, and handled by the *Executive Branch* through the Department of Justice under the auspices of the Attorney General.  Green Card

proceedings are begun, heard, tried, and decided before an Immigration Judge at the Department of Justice, not by an Article III federal judge or Article I federal magistrate judge. 8 U.S.C. 1103 (jurisdiction of Attorney General), 8 U.S.C. 1256 (removal of Green Cards handled at Department of Justice under auspices of Attorney General).  If a party is dissatisfied with the ruling of the Immigration Judge, he may appeal to the Board of Immigration Appeals, which is also within the Department of Justice.  Only after such case has gone through these levels can it possibly be heard by the *Judicial Branch* and even then, the case would go straight to the Tenth Circuit Court of Appeals, bypassing the District Court of Colorado, and under recently enacted rules, the Tenth Circuit would have to presume that the Immigration Judge acted properly.[3] The District Court -- *this* Court -- is bypassed entirely. See *Sidabutar v. Gonzales*, 503 F.3d 1116 (10th Cir. 2007)(appeal from Board of Immigration Appeals directly to Tenth Circuit, citing deference owed to decisions of the Executive Branch). There is no role in this scheme for a District Court to "revoke Green Cards."

      The Defendants have confused Green Card proceedings with *naturalization* proceedings (granting or denying citizenship to an existing Green Card holder) which *can* be brought in a federal district court -- but only by or against the government (the USCIS or the U.S. Attorney), not in private litigation. Such cases arise under 8 U.S.C. 1451 or 8 U.S.C. 1425 and deal with such issues as marriage fraud, illegal procurement, lack of good moral character, willful misrepresentation, crime, or internal government mishaps.

---

[3] See 84 Fed. Reg. 31463, Pages 31463-71, 8 CFR 1003, 8 CFR 1292, Attorney General Order No. 4478-2019; Effective September 3, 2019.

On a private business deal like this, there is simply no way for a federal district court to "revoke a Green Card." That is why Defendants cannot cite a single case where this happened. Not one case. There is absolutely no precedent of this happening. If we strip off all the erratic citations in their Response and look for a case where a federal court stripped investors of their Green Cards for claiming rescission of an EB-5 financial transaction, there is absolutely nothing.

Weakly, they cite 2 cases that are totally off point. In *Huiwu Lai v. United States*, 2018 WL 1610189, at *2 (W.D. Wash. Apr. 13, 2018), the district court admitted it lacked jurisdiction in a removal proceeding. That case involved a Mr. Lai whose Green Card was approved by a USCIS official who pleaded guilty to bribery, casting into doubt the Green Cards he approved. When Mr. Lai crossed the border back into the USA, officials confiscated his Green Card until an Immigration Judge could hear the case and sort out whether the Green Card was procured by bribery, but the hearing date was long into the future. Mr. Lai wanted to have his Green Card in the interim to go to China. The issue before the Court was whether he could get back his Green Card during this period while he was waiting for the Immigration Judge to hear his case. The Court said yes. In other words, the issue of revoking Green Cards was not brought in the district court, there was no underlying financial transaction where rescission was at issue, and the whole problem was due to government illegality and not a private business deal. That case does nothing for Defendants.

Defendants cite *Ayala v. U.S. Citizenship & Immigration Servs.*, 2017 WL 3023572 (E.D. Cal. July 14, 2017), which was a *naturalization* proceeding where it turned out that the applicant had received a Green Card derivatively through her father whose Green Card was revoked by the USCIS for dealing heroin. Through a screw-up at the USCIS, they did not

6

remove her derivative Green Card when they removed her father's, and then the statutory period of five years passed so her Green Card was presumed unchallengeable (the USCIS has five years to revoke).  She then claimed in an administrative appeal that she had the right to be a citizen since she was a lawful Green Card holder.  The Court got the case after the administrative proceeding.  It held that she could not naturalize since her Green Card did not comply with the substance of the Green Card requirements since it was issued in error.  They refused to let her naturalize, but they did not rule expressly on whether she got to keep her green card.  Again, this has nothing to do with a district court having original jurisdiction to revoke a Green Card, nothing to do with a business transaction, and nothing to do with the remedy or rescission for securities violations.

The *Lai* and *Ayala* decisions do not lend a shred of support that this Court can revoke a Green Card.  And those are the Defendants' *best* cases.  Elsewhere they make the strange argument that this court can decide its own jurisdiction.  Plaintiffs are speechless about this, but they do not believe that the Judicial Branch can declare that it has jurisdiction to usurp the Executive Branch and make Green Card decisions.

The USCIS Policy Manual at 26.1 says that: "Rescission is now an option that USCIS should use only in limited instances."  Section (g) says that rescission is optional and the USCIS may choose to let an innocent person retain their Green Card even if there was a problem with how they procured it:

> "The fact that an alien was not eligible for adjustment of status does not automatically mean that you must rescind the alien's lawful permanent resident status. **If the alien was not aware of the ineligibility and intended no fraud or deception in obtaining lawful permanent resident status, you may decide not to institute rescission proceedings, particularly**

7

> **if the alien has accrued other equities during his or her residence.** If the decision is made not to rescind lawful permanent resident status, prepare a memorandum for the signature of the District Director stating the background and facts of the case explaining why it was decided not to rescind. (emphasis added).

This is all in the *Executive Branch* - and it means that Green Cards are revoked only in limited circumstances and rarely for anything other than fraud, crime, or deliberate misrepresentation. The District Court has absolutely nothing to do with it. *This* is what the CRC should have told the limited partners to 'inform' them of the law.

### Rescission in Securities Law is a Remedy, not Time Travel

Defendants fail to grasp that rescission is a *remedy* under the securities laws -- it is a term of art. In the context of securities law it does not mean that the parties go back through time travel to undo everything that happened. It does not require rewriting history. It simply means that when a securities violation has occurred, one possible remedy is that the securityholder returns his security to the issuer for the original price, and then the matter is considered settled -- the purchaser is thereafter not entitled to assert any other damages. This is actually considered a good thing for the issuer since it cuts off their damages to simply returning the money, avoiding any claims of fraud, material omission, consequential damages and so forth.

Attorney Kilroy errs by using the term "rescission" like lay persons, as if it meant that everything subsequent to the securities transaction would have to be unraveled:

> "[y]our demands in the Lawsuit that your clients' investments be rescinded would, of course, require a complete unwinding of the transactions. This necessarily would require your clients to abandon their Green Cards, voluntarily or by court order, as part of the Lawsuit." Response at Exhibit A.

Nonsense.  Rescission is a *remedy* for returning a security in exchange for a refund; it is a paper transaction that leaves the world as it is.  Notice how Mr. Kilroy does not say that rescission would require Defendants to tear down the entire Solaris Vail Condominium Project brick-by-brick -- he only says it would impact the Plaintiffs.  He uses a one-sided (Plaintiffs-only) view of "unwinding" just to frighten and scare, with no basis in securities law.

In any event, there is nothing inequitable about asking the Defendants to pay back what they borrowed. Why is that such an earth-shattering proposition?

The Colorado Securities Act, C.R.S. 11-51-604(1), provides many instances in which rescission is an available remedy.  If the securityholder still holds the certificate or the security, he can merely return it to the seller for a refund plus statutory interest.  At the federal level, Section 12 of the 1933 Securities Act provides for rescission whenever there is a violation such as failure to register a public offering.  Under this provision, rescission offers are made all the time when an issuer of securities fails to make a registration. Here is a simple example from Lending Tree making a rescission offer for securities that they thought didn't require registration, but actually did require it: https://www.sec.gov/Archives/edgar/data/1409970/000119312515221866/d937960ds3asr.htm  Notice there is no requirement to "undo" everything that happened since the stock was issued: there is only a *remedy*, an exchange of stock for the money back.

Similarly, the Plaintiffs are not asking the developer to knock down the condominiums into rubble, so the developer should not suggest that the limited partners would have to give back their Green Cards. "Rescission" in the context of securities law merely means that  there was a flaw in how the money was raised, and so one possible

9

remedy is to have the securities surrendered for the purchase price, and then the buyers waive pursuing other remedies. There is no "unwinding" of anything in the real world, just a financial exchange is the reverse of the original exchange: it is a financial remedy, not a time travel experiment. And it happens all the time.

**Conclusion**

The Defendants now tell this Court that the purpose of their letter was to *inform* limited partners. Whatever their intentions, noble or not, they misstated the law, and now they should be forced to issue a retraction and an apology to all limited partners. It is clear that the letter was written by a lawyer, not by a lay person, so there is a lawyer responsible for this mistake.

This Court has an inherent power of contempt under 18 U.S.C. 401:

> A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as—
> **(1)** Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;
> **(2)** Misbehavior of any of its officers in their official transactions;
> **(3)** Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

Here attorney Kilroy and his clients have purposely misstated the law to scare the limited partners from joining this lawsuit, thereby obstructing justice, skirting the criminal law, violating the Rules of Professional Conduct, and recklessly interfering with opposing counsel's attorney-client relationships. They should make this situation right by giving the limited partners a correct statement of the law, and by paying the costs and fees of this action.

Dated: October 16, 2019

                                                Respectfully Submitted,
                                                /s/ Douglas Litowitz
                                                413 Locust Place
                                                Deerfield, IL 60015
                                                312-622-2848
                                                Litowitz@gmail.com

Certificate of Service:  This document was filed on the ECF system for the District of Colorado.