**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

**Civil Action No. 1:19-cv-02443-STV**

Jun Li, Qi Qin, Yi Liu, Jie Yang, Yuquan Ni, Li Fang,
Zhongzao Shi, Fang Sheng, Shunli Shao, Kaiyuan Wu,
Zhijian Wu, Zhongwei Li, Sa Wu, Fan Zhang, Lin Qiao, Jinge
Hu, Rujun Liu, Ying Xu, Lu Li, and Yuwei Dong,
individually, as well as Derivatively for Colorado Regional
Center Project Solaris LLLP,

    Plaintiffs,

v.

Waveland Ventures LLC,
Colorado Regional Center Project Solaris LLLP,
Colorado Regional Center,
Colorado Regional Center I, LLC,
Solaris Property Owner LLC,
Solaris Property Owner I LLC, and
Peter Knobel,

    Defendants.

## AFFIDAVIT OF RICK HAYES

I, Rick Hayes, being of the age of majority, and with personal knowledge, hereby state as follows:

1.     I am a managing member of Colorado Regional Center, LLC ("CRC"), a Colorado limited liability company.

2.     CRC is an approved EB-5 Regional Center, authorized by U.S. Citizenship and Immigration Services ("USCIS") to operate anywhere within the State of Colorado.

4838-1702-8777.3

Exhibit A

3. I am also a managing member of Colorado Regional Center I, LLC ("CRC I"), a Colorado limited liability company, which is the general partner of Colorado Regional Center Project Solaris LLLP ("CRCPS"), a Colorado limited liability limited partnership.

4. Jun Li, Qi Qin, Yi Liu, Jie Yang, Yuquan Ni, Zhongzao Shi, Fang Sheng, Shunli Shao, Kaiyuan Wu, Zhijian Wu, Zhongwei Li, and Yuwei Dong (collectively, the "Plaintiffs") are Chinese investors who each purchased a limited partnership interest in CRCPS for $500,000, as part of an approved EB-5 Program through the USCIS to obtain a permanent residence visa, commonly referred to as a "green card."

5. CRCPS prepared a Private Placement Memorandum ("PPM") to raise funds related to the development of a luxury residential and commercial project known as Solaris Residences ("Solaris"). *See* **Exhibit 1.**

6. As the PPM explained, investors who invested in this opportunity paid $500,000 for limited partnership interests in CRCPS and the proceeds of the PPM offering were to be used to lend up to $100 million to Solaris Property Owner LLC ("SPO"), the developer of Solaris.

7. The PPM included, among other things, copies of the transactional documents related to CRCPS' contemplated loan to SPO, a fulsome description of the anticipated use of the proceeds of the private offering, a description of the investor qualifications and suitability requirements, and an actual copy of the CRCPS limited liability partnership agreement (the "Partnership Agreement"). *See* **Exhibit 2.**

8. In order to purchase a limited liability partnership interest, the investors had to, and did, certify their proficiency in the English language.

9. The loan agreement between CRCPS and SPO was and always has been an arms' length and fully negotiated transaction.

10. Before sending the PPM to potential investors, counsel for CRCPS submitted the investment opportunity and transaction structure described in the PPM to the United States Citizenship and Immigration Services ("USCIS"). The USCIS evaluated this investment structure and transaction structure and approved it as an EB-5 Program investment. USCIS has never revoked the EB-5 Program approval for this investment.

11. In this lawsuit, Plaintiffs are apparently claiming that they believed they were promised a guaranteed return. CRC, CRC I and CRCPS did not promise any of the investors a guaranteed return, nor would USCIS have permitted such an investment under the EB-5 Program. Attached hereto as **Exhibit 3** is a copy of 8 C.F.R. § 204.6(j)(2), which provides: "To show that the petitioner has invested … the right amount of capital, the petition must be accompanied by evidence that the petitioner has placed the required amount of capital at risk for the purpose of generating a return on the capital placed at risk."

12. The PPM was issued on or about March 11, 2011. The last limited partner subscribed by April 2013.

13. Thereafter, CRCPS loaned 100% of the proceeds of the investments made by the limited partners which totaled approximately $82.5 million, to SPO's assignee, Solaris Property Owner I, LLC ("SPO I").

14. The proceeds of the loan were to be used by SPO to pay certain costs pertaining to the development of the Solaris project.

3

15. The loan was evidenced by a loan agreement and a promissory note and was funded in multiple advances over a period of time.

16. To secure the loan, SPO granted a lien, evidenced and perfected by individual deeds of trust, to CRCPS for each of 19 condominium units valued in the aggregate at approximately $82.5 million at the time of execution of the loan agreement (the "Property").

17. Prior to the commencement this action, two of the nineteen units have been assigned to entities owned by certain limited partners of CRCPS in consideration of a redemption of their partnership interests.

18. The loan accrued interest at a rate of 5.55% per annum.

19. The principal balance together with all accrued and unpaid interest of each loan advance was due and payable five years after the date of each loan advance.

20. Pursuant to the terms of the loan agreement and as expressed by the PPM, three years following each loan advance, SPO had the right to prepay the amount of the loan advance by either paying cash or tendering a special warranty deed to one or more condominium units, which would reduce the principal balance of the loan, as set forth in the loan agreement and promissory note.

21. Prior to the first advance under the loan, SPO assigned all rights, obligations, title and interest related to the loan, note and Property to Solaris Property Owner I, LLC ("SPO I"), and SPO I assumed all obligations thereunder, thus becoming the borrower pursuant to the loan agreement.

22. Consistent with the terms of the loan agreement, SPO I delivered notice of its intention to exercise the right to collateral transfer with respect to each condominium unit to CRCPS in lieu of cash payment after three years following each loan advance.

23. Pursuant to the terms of an Agreement Regarding Collateral Units between CRCPS and SPO I, attached hereto as **Exhibit 4**, CRCPS has not yet been assigned title to the remaining units comprising the Property (other than the two condominium units conveyed to CRCP's designees) because SPO I agreed to continue to hold title and, upon the instruction of CRCPS, to directly sell the units to a buyer designated by CRCPS.

24. Such deferral of title transfer benefits CRCPS because it avoids a significant municipal transfer tax, prepayment of HOA dues, and over $100,000 of working capital payments that would be due the HOA, which costs would be borne by the limited partners, including Plaintiffs (investors).

25. Accordingly, SPO I continues to hold title to the Property (now consisting of 17 units), as the successor in interest to SPO, and CRCPS continues to hold a first priority lien on the Property by means of the respective deeds of trust.

26. CRC I, as general partner of CRCPS, has been cognizant of the limited partners' desire to liquidate their investment, and CRC I has consistently and regularly provided the investors notices regarding appraisals of the Property, opportunities to sell the Property through bulk sales of the condominium units or sales of individual units and plans for the return of the limited liability partners' capital contributions. Copies of certain notices that CRC I has sent to all limited partners are attached hereto as **Exhibit 5.**

27. In an effort to provide an equitable exit strategy for limited partners who wanted to liquidate their investment, CRC I sent notices beginning on March 15, 2016 (*see* Ex. 5), to the limited partners, including Plaintiffs, giving them an opportunity have their limited partnership interest redeemed by the partnership, CRCPS, in accordance with the terms of the Partnership Agreement.

28. After initially exercising their respective redemption rights, Plaintiffs subsequently expressly rejected this opportunity, advising CRC I that they would not exercise the "Put Right" that CRC I described in the notices.

29. CRC I has diligently attempted to find a suitable exit strategy for all investors, which of course would necessarily involve a sale of the Property.

30. Exercising its reasonable business judgment, CRC I determined that a recent offer for a bulk sale of the remaining 17 units was in the best interest of CRCPS and its limited partners.

31. On June 5, 2019, CRCPS entered into a Letter of Intent ("LOI") to sell all of the Property (again, now comprised of 17 units) to a buyer in a transaction referred to as a bulk sale for total consideration of $49.5 million.

32. CRC I would obviously prefer to sell the units for a higher price than $49.5 million, but the reality is that in CRC I's business judgment, the price being offered in the LOI is reasonable under current market conditions after giving consideration to the application of a liquidity discount (i.e., factoring in time value of money, etc). It may be possible to secure a higher total price for the sale of all 17 units on an individualized basis, as opposed to a bulk sale, but many of the limited partners have been insistent that they desire immediate liquidity on their investment and a cessation of management fees that naturally accrue unless and until the units are sold.

6

33. The rationale of the bulk sale contemplated in the LOI is to satisfy the demands of the limited partners for immediate liquidity and to monetize the assets of the limited partnership.

34. If the LOI proceeds to a purchase and sale agreement closing, the net proceeds of the bulk sale (after payment of transaction costs and accrued partnership expenses) will be distributed to limited partners, including Plaintiffs, as a return of capital.

35. Counsel for CRC, CRC I and CRCPS sent counsel for Plaintiffs notice of the LOI and proposed bulk sale on or about September 4, 2019 and warned that this lawsuit or any lis pendens filed to support Plaintiffs' complaint would jeopardize this potential bulk sale. Plaintiffs reacted by filing a lis pendens and a motion for preliminary injunction.

36. It appears that Plaintiffs are asking the Court to require SPO to place title to the 17 units in the name of CRCPS based on some kind of claim that SPO or SPO I has somehow breached the loan agreement with CRCPS. But CRC and CRCPS are not aware of any breach by SPO or SPO I of the loan agreement, and, again, the whole reason that CRC asked SPO I to hold title until the 17 units are sold was to avoid a possible transfer penalty that could cost CRCPS (and, derivatively, its limited partners about $1 million.

37. If the Court orders title to the 17 units to be placed in CRCPS, and CRCPS enters into a direct sale with the purchaser under the current letter of intent (or another purchaser), CRCPS will be saddled with a liability of about $1 million upon the transfer of the units.

38. It also appears that Plaintiffs are asking the Court to enjoin CRCPS from proceeding with the transaction contemplated in the LOI.

39. This lawsuit and the lis pendens filed by Plaintiffs have already jeopardized the transaction contemplated in the LOI, but I believe that this transaction can be salvaged, depending on the outcome of the hearing on Plaintiffs' motion for preliminary injunction.

40. If the Court enjoins the bulk sale contemplated by the LOI, it is unlikely that CRCPS will get another similar opportunity to sell the remaining 17 units – at least not in the near term. I base this belief on my personal knowledge of the relevant market for real estate of this nature in Vail, Colorado and specifically on my personal efforts over a long period of time to have the Property appraised and marketed.

41. If the Court enjoins the bulk sale contemplated by the LOI, CRCPS will be damaged in a sum certain: $49.5 million. In addition, if the Property is not sold it will of course have to be maintained and managed, and management fees will necessarily continue to accrue. Based on past history, those maintenance and management fees will necessarily accrue in the amount of approximately $134,000 per month.

///

Dated this 18th day of October, 2019.

_____
Rick Hayes

STATE OF COLORADO     )
                      )ss.
COUNTY OF Eagle       )

Subscribed and sworn to before me this 18 day of October, 2019 by Rick Hayes.

Witness my hand and official seal.

_____
Notary Public

My Commission Expires: March 9, 2022

[SEAL]

SAMANTHA GUARDIAN CASTILLO
Notary Public - State of Colorado
Notary ID 20184011065
My Commission Expires Mar 9, 2022