# In the United States District Court
# for the District of Colorado

Civil Action No. 1:19-cv-02443-STV

JUN LI, *et al.*, individually and derivatively for Colorado Regional Center Project Solaris LLLP,

    Plaintiffs,

v.

WAVELAND VENTURES LLC, *et al.*,

    Defendants.

## Solaris Property Owner, Solaris Property Owner I and Peter Knobel's Amended Response to Plaintiffs' Motion to Add Plaintiff

Defendants Solaris Property Owner, LLC ("SPO"), Solaris Property Owner I, LLC ("SPO I"), and Peter Knobel submit this Response to plaintiffs' Motion to add a plaintiff.

### Introduction

Plaintiffs brought this lawsuit against the SPO defendants and their manager Peter Knobel, individually, based on assumptions, guesswork, conspiracy theories and just flat-out hope of making a purse out of a now-regretted investment, all gilded with a rhetorical flourish and freighted with unrealistic ambition. Within 60 days of the commencement of the lawsuit, all of it has turned out to be wrong.

Ambition-deflating facts have emerged. For example: No, SPO is not a proper defendant since it never received any loan proceeds from CRCPS because it had assigned all its rights, interests and obligations under the Loan Agreement to SPO I. No, neither SPO entity is a proper defendant since neither made any representations to any of the plaintiffs (including the proposed new one). No, Mr. Knobel, the manager of the

SPO entities, is not a proper defendant, because he never received any of the loan proceeds, was not a party to the Loan Agreement, and made no representations to any of the plaintiffs (including the proposed new one). No, as this Court concluded October 22, plaintiffs did *not* assert a derivative claim in the original Complaint and therefore had no lawful basis to record a notice of *lis pendens* on the seventeen condominium units. No, the loan transaction was not a "disguised purchase" of the units; instead it was a non-traditional loan in which plaintiffs and the borrower, SPO I, respectively, stood to gain or lose money depending on the real estate market for high-end luxury condominium units in Vail, Colorado, at the time SPO I's loan prepayments were made. And, so, no, just because the market went down and plaintiffs fear an investment loss does not mean that someone—anyone—else must cover their loss.

Undeterred by the facts plaintiffs filed an Amended Complaint, adding new plaintiffs, new defendants, including SPO I, new factual allegations, and new claims. None of this changed the established facts or improved plaintiffs' case against the SPO entities and Mr. Knobel.

Plaintiffs now seek leave to add yet another plaintiff. We object. The objection is hardly "strange[]," Doc.43. It is a suggestion and request that plaintiffs gather a viable case before presenting it in federal court. Plaintiffs' serial amendments to their complaint must have a terminal point, yet based on plaintiffs' counsel's comments at the October 22 hearing, he contemplates yet more amendments to the complaint. We suggest now is a good stopping point for amendments. More amendments will prejudice the SPO entities and Mr. Knobel by delaying resolution of this case. Plaintiffs have demonstrate in any event that they lack the facts to plead claims against the SPO

entities and Mr. Knobel that rise above the level of futility, with or without the new plaintiff.

## Facts

Thirteen plaintiffs commenced this action August 28, 2019.

Service of the summons and complaint was not diligent. Plaintiffs did not personally serve the SPO entities and Mr. Knobel for upwards of a month before we offered to and did accept service on October 1.

On October 13 plaintiffs moved to amend the complaint to withdraw one plaintiff, add seven new plaintiffs, and "clarify" that "the last two counts" of the original Complaint "are brought in a derivative capacity." Doc.43, at 1. This was not a true statement. For one, there was nothing to "clarify." As the Court found at the October 22 hearing plaintiffs nowhere in the original Complaint pleaded that they were suing in a derivative capacity or asserted in any derivative claims. For another, the last two counts of the original Complaint were Claim 6 (fraud asserted against all the defendants) and Claim 7 ("*lis pendens*" asserted against plaintiffs' own limited partnership, Colorado Regional Center Project Solaris, LLLP ("CRCPS"), SPO and Mr. Knobel.

Meanwhile the proposed Amended Complaint contained the same fatal defects relative to the SPO entities and Mr. Knobel. For example it contained no allegations the SPO entities or Mr. Knobel communicated with, let alone made any representations to, any of the existing and putative plaintiffs, no allegations that would lead to a plausible inference that the SPO entities and Mr. Knobel owed a duty of disclosure to the plaintiffs, and no non-conclusory allegations that the SPO entities and Mr. Knobel intended to defraud any of the plaintiffs. Nonetheless in the spirit of Rule 15 we informed plaintiffs' counsel we did not object to the motion to amend the Complaint.

3

On October 22 the Court held a hearing on all the pending motions: plaintiffs' "Emergency Motion" to hold in contempt defendants Colorado Regional Center I, LLC ("CRC") and CRCPS and their counsel in "contempt" (although plaintiffs had not served the summons and complaint on any of the alleged contemnors); CRCPS and SPO I's petition for an order to show cause as to plaintiffs' recording of a notice of *lis pendens* on the seventeen condominium units collateralizing the loan to SPO I; and plaintiffs' motion to enjoin CRCPS's bulk sale of the collateral units.

A telling point at the hearing was when plaintiffs' counsel effectively confessed he brought the motion for preliminary injunction and put the parties and the Court to an evidentiary hearing based on his idiosyncratic—and obviously wrong—interpretation of a May 30, 2019 memorandum from CRC to investors. The memo contained three sections: one addressing CRCPS's "Exit Strategy and Plan for Return of LP Capital Contributions"'; one addressing the limited partners' "Put Rights"; and one addressing "LPs Who Do Not Provide a Put Exercise Notice." *See* 10/22/19 Hearing, Ex.11, at CRC_000675-79. In the context of discussing a strategy for selling the collateral condominium units, in the first section CRC discussed in two paragraphs the units' individual fair market value and their value in a "bulk sale." CRC said it had commissioned an appraisal of the eighteen units for a bulk sale so that CRCPS would have "a better sense of the value of the portfolio if sold to a financial buyer as a bulk purchase." *Id.*, Ex.11, at CRC_000676. CRC did not say it was pursuing a bulk sale. The "Put Rights" section notified the limited partners that any limited partner who met certain criteria could elect to sell her partnership interest to CRCPS. If a limited partner chose to sell, the memo said, "[a]t the closing of the sale of the [limited partnership]

4

interest to [CRCPS], the [limited partner] shall deliver to [CRCPS] . . . [a] waiver and release of [CRCPS] from any and all future claims." *Id.*, Ex.11, at CRC_000678. In the last section, CRC addressed all limited partners who did not wish to sell their limited partnership interest to CRCPS. CRC said it would continue to try to sell the units and "[a]s each Unit is sold, a pro rata return of capital will be made to those [limited partners] who remain in the Partnership." *Id.*, Ex.11, at CRC_000679.

Plaintiffs' counsel badly and erroneously read the memo to say that CRC planned an imminent bulk sale of all the condominium units and that upon such a sale each limited partner would have confessed a waiver of her right to bring any action against CRC or CRCPS. Plaintiffs' counsel led his cross-examination of CRC manager Rick Hayes with a series of questions presupposing his erroneous reading was correct. After Mr. Hayes explained why it was not, plaintiffs' counsel was visibly surprised, dropped the line of questioning, and said, "I'm just double-checking." *See* Tr. of 10/22/19 hearing, at 57:8-59:16. After the evidentiary presentation plaintiffs' counsel said "today *clarified* . . . that the bulk sale does not waive the rights to any future claims." *Id.* at 84:1-4 (emphasis supplied). This was a "clarification" plaintiffs' never sought from the parties before moving for a preliminary injunction and putting the parties to a three-hour evidentiary hearing.

Near the conclusion of the hearing when the Court indicated that plaintiffs had no legal basis to record the notice of *lis pendens* and that it would be denying the motion for preliminary injunction, plaintiffs' counsel shared the "back story" of his lawsuit: He started with eight plaintiffs-clients; he asked CRC and CRCPS to pay them the full amount of their investment and "[t]hey said no"; "I've got 12 people now"; plaintiffs'

5

counsel made the same request; "[t]hey said no"; "Now I've got 20 and more coming. . . . I'm going to get more and more clients. . . . I have 20-some clients, and it's going to blow up." *Id.* at 91:22-92:8. After a bulk sale of the collateral units by CRCPS, plaintiffs' counsel said, "I'll get another *50 clients*." *Id.* at 92:13-16 (emphasis supplied). The he said if the limited partners do not have input on the bulk sale, "I'll get another *30 clients* then." *Id.* at 92:20-21 (emphasis supplied).

On October 30, eight days after the hearing, plaintiffs' counsel conducted a drive-by conferral via email. Directed to defense counsel the email said simply: "Do either of you have any objection if I add another plaintiff?" We responded: "SPO entities and Mr. Knobel object." When plaintiffs' counsel asked, "On what grounds?" we responded: "What are your grounds for adding the plaintiff?" Plaintiffs' counsel promptly concluded the conferral, stating, "I'll go straight to the judge." EXHIBIT A.[1] The next day plaintiffs' counsel filed the Motion.

## Discussion

**I. Plaintiffs' disclosure of their settlement offer is highly improper and sanctionable.**

In the first and second paragraph of plaintiffs' Motion to add a plaintiff, they self-servingly and gratuitously say "his Honor believes that the parties should explore settlement" and then proceed to disclose their "fair" "settlement proposal" extended to the defendants. Doc.72, at 1. Under their "fair" settlement offer, plaintiffs say, they would not seek the return of the full amount of the investment they claim they may lose. This offer, they volunteer, "is a compromise where none of the parities [sic] would walk away

---

[1]Since we believe plaintiffs' description of the conferral is misleading, we attach the email exchange.

happy, which is the hallmark of a fair deal." *Id.* "Unfortunately, no response has been received," plaintiffs say. They conclude with the self-serving comment: "Anything his Honor can do to encourage settlement is greatly appreciated." *Id.* It is not simply that none of this has anything to do with a motion to add a plaintiff. It is that plaintiffs have engaged in highly improper and sanctionable conduct.

Rule 16.6(a) of the District of Colorado Local Civil Rules provides that all litigants shall consider the use of an alternative dispute resolution process. Rule 16.6(e) provides that a party in an alternative dispute resolution proceeding "shall not voluntarily disclose . . . any communication provided in confidence to the magistrate judge in connection with an early neutral evaluation or other alternative dispute resolution proceeding."

The purpose of a rule prohibiting disclosure of communications to third parties, and in particular the judge presiding over a case, is obvious. For example, disclosure of settlement communications could affect the judge's view of the parties or their claims and defenses. A party could make one or more settlement offers *for the purpose* of influencing the presiding judge's view of her or of her opponent. A party's strategic disclosure of settlement discussions to the presiding judge would significantly inhibit the parties' and their attorneys' candor in any future settlement discussions..

The federal courts have condemned the disclosure to presiding judges of settlement offers and other settlement communications. *See, e.g.*, *Swapna v. Deshraj*, No. 16-CV-05482-JSC, 2018 WL 1142005, at *3 (N.D. Cal. Mar. 2, 2018) ("[I]t is wholly inappropriate to file settlement conference statements and settlement offers on the public docket and disclose the contents of settlement matters to the assigned judge.

7

*See* ADR L.R. 7-4(a). The Court has thus not reviewed the declaration attachments and orders that the declaration and its contents be STRICKEN from the record."); *Calka v. Kucker Kraus & Bruh*, 167 F.3d 144, 146 (2d Cir.1999) (discussing need to maintain confidentiality of settlement discussions in court settlement conferences because disclosure of such communications "would have a chilling effect" on the parties, and finding that disclosure was "highly improper and will not be condoned."); *Bernard v. Galen Grp.*, 901 F. Supp. 778, 782-84 (S.D.N.Y.1995) (sanctioning plaintiff's attorney for disclosing terms of two settlement offers, including specific dollar amounts, made by defendants during mediation sessions); *E-Z Bowz, L.L.C. v. Prof'l Prod. Research Co.*, No. 00 Civ. 8670(LTS)(GWG), 2003 WL 22416174, at *3 (S.D.N.Y. Oct. 23, 2003) (admonishing attorney for disclosing in summary judgment submissions confidential settlement communications from court-sponsored settlement conference).

Settlement offers have nothing to do with whether a party should be permitted to add a plaintiff and nothing to do with how a court should decide legal questions. We see plaintiffs' gratuitous disclosure of their settlement offer as an egregiously inappropriate attempt to influence the Court—"*we* are trying to carry out the Court's will; *they* are opposing the Court's will by not accepting our 'fair' settlement offer." We strenuously object to this conduct and ask the Court to admonish plaintiffs and their counsel to refrain from such conduct in the future.

## II. The Motion to add a plaintiff should be denied.

As an initial matter plaintiffs suggest we did not "cooperat[e]" when plaintiffs' "conferred" with counsel for the defendants. They argue that when plaintiffs' counsel conferred, "both firms objected" and "[n]either stated any reason to oppose this Motion,

8

which should be a *pro forma* . . . . The result is that his [sic] Court will have to wade through another set of briefs." This is objectionable. One, it is factually wrong. Counsel for defendants CRC, CRCPS and Waveland Ventures LLC said he had no objection. Two, it is highly misleading. Plaintiffs' counsel's conferral, addressed above, consisted of sending a one-sentence email. When we requested the grounds for the motion, plaintiffs' counsel ended the conferral, stating, "I'll go straight to the judge." EXHIBIT A. Three, plaintiffs presuppose that requests to amend pleadings are not subject to the adversary process, and then suggest that opposition to their request is "[un]cooperative" and unfairly burdens the Court with "hav[ing] to wade through . . . briefs." None of that is true. The attempt to pit the Court against a party lodging a proper objection is improper.

### A. Rule 15 governs a motion to add a plaintiff.

Plaintiffs argue a motion to add a plaintiff is so "*pro forma*" and "perfunctory" that "there are no Local Rules on joinder of parties[]." Doc.72, at 2. They then argue their motion should be granted under Federal Rule of Civil Procedure 20, which governs permissive joinder of parties. The argument is flawed.

A motion for leave to add a plaintiff implicates both Rules 15 and 20. *See, e.g.*, Fed. R. Civ. P. 15(c)(1)(C); *Sims v. New*, No. 08-cv-794-CMA-MEH, 2009 WL 3234225, at *20 (D. Colo. Sept. 30, 2009); *Kohn v. Am. Housing Found. I, Inc.*, 170 F.R.D. 474, 475 (D. Colo. 1996). Particularly is that true here where the addition of a party necessitates amendments to the complaint, i.e., the filing of a second amended complaint. Plaintiffs' argument that the absence of a "Local Rule[]" on joinder of parties is an irrelevance. The absence of a local rule on a given request hardly suggests granting the request is "*pro forma*" or "perfunctory." There *is* a local rule governing

9

amendments to complaints under Rule 15—D.C.Colo.LCivR 15.1—that plaintiffs did not comply with in their Motion.

Rule 20 authorizes plaintiffs to join in one action if they assert claims arising out of the same series of transactions or occurrences, and a question of law or fact common to all the plaintiffs will arise in the action. Fed. R. Civ. P. 20(a)(1). Plaintiffs assert that proposed plaintiff Cao Xiaolong "has an identical claim as the other Plaintiffs who invested in" CRCPS. Doc.72. For purposes of the Motion we accept that as true. We do not object under Rule 20. We object under Rule 15.

Rule 15(a) provides one mulligan to a plaintiff. Thereafter any modification of the plaintiff is permitted "only by leave of court." Although the rule provides leave shall be freely given when justice requires, leave to amend properly is denied if there is "undue prejudice to the opposing party by virtue of allowance of the amendment" or "futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962), *quoted with approval in Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006).

**Prejudice.** As we informed plaintiffs' counsel, we have been preparing a motion to dismiss. We have conferred with him about the motion. The motion is due less than a month from now. First we were preparing a motion to dismiss the original Complaint. Then we were preparing a motion to dismiss the Amended Complaint, which substantially added SPO I and changed the allegations and legal theories against SPO and Mr. Knobel. We also are preparing a draft Rule 11 motion based on the Amended Complaint to be served on plaintiffs' counsel. Now plaintiffs want to amend the complaint again.

The filing of serial complaints unfairly moves the goalposts, increasing the SPO entities' and Mr. Knobel's legal fees and costs. There must be an end to serial amendments. But at the end of the October 22 hearing, plaintiffs' counsel promised no end to the amendments. Today he wants to add "one" plaintiff. Tomorrow or sometime down the road, he said, he will have "20," "30" and "50" more plaintiffs to add. *See* Tr. of 10/22/19 hearing, at 91:22-92:8, 92:13-16 & 92:20-21.

**Futility.** In their original Complaint and Amended Complaint the plaintiffs at bar have confessed implicitly they have no viable claims against the SPO entities or their manager Mr. Knobel. They have failed to allege that the SPO entities or Mr. Knobel made any communication to them, let alone a representation to them about an investment in CRCPS and let alone a fraudulent one. They have failed to allege in a non-conclusory way that the SPO entities or Mr. Knobel had any intent to defraud them. They have failed to allege in a non-conclusory way that the SPO entities' or Mr. Knobel' representations—as opposed to their own investment decisions and the Vail real estate market—caused any loss to them. They have failed to allege any facts to support any claim that the SPO entities and Mr. Knobel had any legal duty to say anything to them about their investment in CRCPS. They have pleaded a claim against SPO I, "lis pendens," that is not cognizable under the law.

In place of factual allegations necessary to support their claims, plaintiffs have alleged demonstrably false facts. For example they assert that Mr. Knobel borrowed $82.5 million from CRCPS, that he has refused to pay back the loan, and that he has a right of first refusal to buy collateral units being sold by CRCPS. There is no charitable

11

way to say this. The lawsuit against the SPO entities and Mr. Knobel is substantially groundless. It is causing substantial harm.

The motion says Mr. Xiaolong "has an identical claim as the other Plaintiffs who invested in [CRCPS]." Doc.72, at 2. Why would we *not* object to his joinder in this groundless lawsuit? How will Mr. Xiaolong's "identical claim" against the SPO entities and Mr. Knobel improve on this lawsuit? His identical claim is as futile "as the other Plaintiffs," *id.*, who cannot identify a single representation made to them by the SPO entities and Mr. Knobel.

## Conclusion

The Court should deny the Motion.

November 8, 2019.

                              Respectfully submitted,

                              *s/ Ty Gee*
                              Harold A. Haddon
                              Ty Gee
                              HADDON, MORGAN AND FOREMAN, P.C.
                              150 East Tenth Avenue
                              Denver, CO 80203
                              Tel 303.831.7364
                              hhaddon@hmflaw.com; tgee@hmflaw.com

                              *Attorneys for Defendants Solaris Property Owner, LLC, Solaris Property Owner I, LLC, and Peter Knobel*