# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-02443

Jun Li, Qi Qin, Yi Liu, et al.,
        Plaintiffs,

        v.                Hon. Magistrate Scott Varholak

Waveland Ventures LLC,
Colorado Regional Center Project Solaris LLLP,
Colorado Regional Center I, LLC,
Solaris Property Owner LLC,
Solaris Property Owner I, and
Peter Knobel,
        Defendants.

## Plaintiffs' Reply on Motion to Add One Plaintiff (Cao Xiaolong)

### This is Not a Rule 12(b)(6) Motion

Before this Court is a Motion for Permissive Joinder to add one fungible plaintiff. This creates no extra work for anyone. No documents need to be amended. It simply adds one name to the caption of this case. Yet attorney Gee, who represents Defendants Knobel and the Solaris Property Owner entities, has filed a 12-page Response claiming substantial prejudice to his clients from adding one plaintiff.

This is an EB-5 lawsuit, which by their very nature are either class actions or have many individual plaintiffs. For example, *Ang et al. v. U.S. Immigration Fund LLP*, No. 156339/2018 (New York County 2018) had 117 individually named plaintiffs; *Fu v. Mastroianni, et al.* No. 79196634 (Palm Beach County, Florida 2018)

had 86 individually named plaintiffs. The South Dakota Deadwood EB-5 case had 65 plaintiffs. https://rapidcityjournal.com/news/local/judge-wants-sd-supreme-court-s-help-in-high-stakes/article_0070171b-6ebf-5d07-b478-109af78b73ab.html (last checked November 9, 2019). Attorney Litowitz handles only EB-5 cases, and he cannot recall any case where a court set a limit on the number of plaintiffs.

Attorney Gee doesn't articulate any burden imposed on him by the addition of one plaintiff. In fact, 15 more plaintiffs are about to be consolidated into this case from a related case in Magistrate Wang's courtroom, and the whole thing may turn into a class action. The number of plaintiffs is a non-issue.

The only burden on attorney Gee is the burden that he created with such a long Response to a perfunctory motion. Paradoxically, he will have even more work if he wins the motion and permissive joinder is *denied* because then attorney Litowitz will file a separate case for Cao Xiaolong, which Mr. Gee would then have to consolidate back into this case.

**If Mr. Gee wants to end this case which is such a burden to his clients, then his clients can simply pay back the money they borrowed. Why is that so difficult to understand? His clients took a loan of $84.5 million of Chinese money and there is a shortfall of nearly 50% that they never paid back, so if they are successful and honorable businessmen as they proclaim, they can pay back the money like all successful and honorable businessmen do. Their refusal to pay back their debt tells this Court everything it needs to know about the preposterously fraudulent structure of this transaction.**

2

Attorney Gee's long Response tries to convert this Rule 20 motion into a Rule 12(b)(6) Motion to Dismiss. All he does is express outrage that his clients were sued in the first place, as if Mr. Knobel just happened to walk into the courtroom to get out of the rain. To put it politely, attorney Gee's routine of 'Aw shucks, I don't know why my clients are being sued' is unconvincing and an insult to this Court's intelligence.

### Why Mr. Gee's Clients are Parties

This deal was set up so Defendants Knobel and the Colorado Regional Center ("CRC") could never lose: their gain was guaranteed, yet all the risk fell on the Chinese investors, by design. If property values in Vail went <u>up</u>, Knobel could pay back the loan with cash and still make money on his other 60 units in the Solaris complex, and he would have gotten an undercollateralized non-recourse loan at 5.5% interest, far below market rate and characterized as equity so he could use it as collateral for other financing. If property values went <u>down</u> (as they did) he could just turn over the keys to 19 condos instead of paying back the money he borrowed, and walk away with tens of millions in free cash that he would never have to pay back (which he did, effectively selling $40-45 million in unsellable condos for $84.5 million). There was no way for Knobel to lose: either he got a source of incredibly cheap financing that was undercollateralized, or else he could simply pay with condos that were worth a fraction of the loan balance. At no point was he ever exposed to pay back a cent of cash. That is why he called the debt 'developer's equity' on which he could borrow more money. No one - no one - refers to debt as equity. This was a disguised sale, a disguised loan, and a fraud from beginning to end.

3

CRC/Waveland could not lose, by design. They get their 2% management fee regardless of how the market moves (that is $1.65 million each year times 8 years, or $13 million total for 'managing' the deal by letting Knobel rent out the units for himself), and now they get 6% penalty interest when the units are sold.

Only the Chinese could lose - and they lost, big time. Their investment was unhedged, without any stop losses on the downside, no mitigations to the amounts they could lose. Their $84.5 million investment turned into a disaster at the hands of Mr. Gee's clients who bungled the deal, did a horrendous job, built condos that cannot be sold at the overinflated prices allocated to them, and generally was a total failure. The Chinese investors were not partners or joint venturers with Knobel -- they are CREDITORS by being the owners of the lending entity that extended a LOAN to Mr. Gee's clients. It was a LOAN. Knobel is simply not paying back his creditors the principal and interest and is instead absconding with the borrowed money. He robbed them with a fountain pen just as assuredly as with a gun.

The abusive structure of this deal is smothered in Defendant Knobel's fingerprints. Documents from 2010 and 2011 -- prior to the Chinese investments -- show that Mr. Knobel worked with CRC to structure a loan that would enrich themselves and place all the risk on whomever they could get to invest through the EB-5 program. Knobel signed a Loan Agreement dated November 5, 2010 (months before the PPM was done) and a Memorandum of Understanding dated April 1, 2011 that limited the collateral for the loan to the value of north-facing units that were less desirable than mountain-view units, and explains that they would seek EB-5 investors to make a freakishly abnormal non-recourse loan against this less desirable

4

collateral. The promotional documents make it seem like the security for the deal is the entire Solaris complex, and nowhere in any of the documents was it disclosed that the collateral would only be 19 units and not 79, nor any commercial property, nor any parking. When the Chinese found out that the collateral was only 19 units and these had immediately lost their overinflated values, they were in a state of shock.

After Knobel stiffed CRC and defaulted on paying back the principal, CRC hired Mr. Knobel (who just defaulted on them) as the exclusive real estate agent to sell the very units that he could not pay the loans on, refusing to list the units on the MLS and only listing them with Knobel's realty firm. Along the way, Knobel entered into hidden agreements with CRC, giving him rights of first refusal and competing rights to sell his own units in competition with the collateral units, so he could get in front of the Chinese investors whose money he had just taken, and keeping title with him. This again shows that Knobel and CRC were in collusion to defraud and profit unjustly at the sole expense of the Chinese investors.

At the evidentiary hearing, CRC executive Rick Hayes strangely told this Court that the properties are worth $73 million but can only be sold for a fraction of this price. He also said that the best way to measure fair value of real estate is market price. This is a ball of confusion. If the market price is $73 million - which is what they tell the Chinese investors in writing -- how can a sale generate low-$40 million in proceeds, and why are they trying to do this as a secret sale without telling the investors? That's like saying my house is worth $1,000,000 but I can only sell it for $500,000. It's nonsense. **If the remaining units are really worth $73 million as CRC claims in writing, then why not refinance at $73 million and give the**

5

**proceeds to the Chinese investors? Why engage in a secret bulk sale for a fraction of that? The whole thing is designed so that the Defendants can take the money and run.**

The symbiotic relationship between Knobel and CRC bespeaks fraud and collusion, and the timeline shows that they worked together to set up a horrendous structure to hide how it would shortchange the investors, which they found through the EB-5 program. *That* is why Mr. Gee's clients are in this lawsuit -- because his clients' names are on virtually every deal document in a non-standard and utterly bizarre deal that enriched his clients by tens of millions of Chinese money while their project was a complete failure. They "won" by failing -- that is only possible through fraud.

### Mr. Gee's Tone is Snide and Entitled

Mr. Gee should walk into this Court with his head down in shame and an apology in hand to the Chinese people. Mr. Gee's clients -- Knobel and his shell companies -- took $84.5 million from Chinese people's life savings, and will only return a little more than half of that. Mr. Gee's clients are a failure, the project is a failure, the collateral is a failure, the deal structure is a failure, and they have crippled more than 100 Chinese families. Will all that guilt on his shoulders, Mr. Gee refuses to be humble and instead adopts a tone of high dudgeon and snide superiority.

Mr. Gee's clients could not make money honestly in Project Solaris by building a good product that people want to buy. They made money by structuring the deal so that even if their product was horrendous and no one wanted to buy, they still walked

away with tens of millions in cash by not having to repay the Chinese-funded lender. For this failure, this blunder, this financial disaster that has ruined families, Mr. Gee has no sympathy for the Chinese. He tells this Court that his clients - flush with tens of millions from the Chinese that they did not earn but simply borrowed and refuse to pay back-- are the victims.

In haughty arrogance, Mr. Gee expresses disdain that attorney Litowitz is struggling with the identity of the entities and therefore had to amend the complaint, but he won't acknowledge that his clients set up a shell game. There is the original borrower **Solaris Property Owner LLC** (Colorado #20081165030), which was once run by **Solaris Mezz LLC.** Then there is **Solaris Property Owner I LLC** (#20111579515); there is **Solaris Property Owner II LLC** (#20131096402); there is **Solaris Property Owner III LLC** (#20151513985); there is **Solaris Property Owner IV LLC** ((#20161222913); there is **Solaris Property Owner V LLC** (20171732076); there is **Solaris Property Owner VI LLC** (20171251842), and when Mr. Knobel defaulted on paying back the money to CRC, he was hired by CRC through **PBK Real Estate LLC d/b/a Solaris Real Estate LLC**. There are a dozen other Solaris entities in the Colorado records -- so it was obviously built as a hall of mirrors to shield liability and hide the real parties in interest. On the other group of defendants, there is **CRC**, **CRC I, Waveland Ventures LLC,** not to mention all the people (some of whom are related to each other) moving back and forth. So, yes, it will take a bit of time to sort it out: that's what happens when lawyers create an Enron-esque structure to hide the money they refuse to pay back.

7

At the pleading stage, the Plaintiffs merely need to make *allegations* that if true would implicate Knobel and his shell companies. That is easily done since Knobel's name is all over all the loan documents and he worked with CRC to structure the loan so that it would be non-recourse, undercollateralized, and gave him the ability to walk away with tens of millions in free money -- and this design was in place before they recruited the Chinese. Mr. Gee is wrong to say that the operative question is "Did Knobel *say* anything to the Chinese?" Rather, the proper question is, "Did Knobel participate in setting up a structure whereby the Chinese were doomed to lose their money?" The answer to that is yes.

A telltale sign of fraud is that attorney Gee (who represents the **borrower** in a loan that is over and done) is knowledgeable about the **lender's** bulk sale. This is bleeding his cards because a non-recourse borrower should not care what happens after the loan is repaid unless - and only unless - the borrower is a co-conspirator. For example, if my car is repossessed by the dealership on a non-recourse loan and I am off the hook for future payments, I would not care what happened next to the car -- it would be a non-issue, no longer my problem. I would only care about what happened to the car if I had some continuing side arrangement with the dealership.

That is why it is curious attorney Gee has information such as "CRC did not say it was pursuing a bulk sale" and that "Plaintiffs' counsel badly and erroneously read the memo to say that CRC planned an imminent bulk sale of all the condominium units." See Response at 4-5. How - and why - would the **borrower** know this information about the **lender**? The only conceivable answer is that they

8

are still in cahoots, tied together in a fraudulent scheme to extract value from the Chinese.

It is stunning for Mr. Gee to admit there is no imminent bulk sale. At the evidentiary hearing, the lender CRC was waiving around a Letter of Intent that they wanted sealed by the Court since a bulk sale was imminent and was supposedly only being stopped by attorney Litowitz's lis pendens. So now we learn that there is no bulk sale planned? And most importantly, how would Mr. Gee (counsel to the *borrower*) know - or even care - about the plans of the *lender,* unless they were still in cahoots together?

As another example of arrogance, Mr. Gee tries to humiliate attorney Litowitz regarding his incredulity that CRC would not inform the Chinese investors of a bulk sale. At the hearing, Mr. Hayes (for CRC) said that a bulk sale is somehow - some way - different than the sale of units under the put right structure where investors need to be notified that the units are being sold at below 70% of estimated fair value and must waive their rights to future claims. Yes, Litowitz was flustered and shocked -- amazed that CRC would dare to claim that the sale of **one** unit creates a right of notice and approval by the Chinese whereas a sale of **seventeen** units creates no such rights. That is like saying that a Hardware Store borrower needs approval from its bank to sell a box of hammers but not to sell the entire store. CRC's plan to sell all the units without approval or notice is a sucker-punch to the Chinese. CRC has a duty of good faith to the Chinese investors and they should not weasel out of it by conducting a *secret* bulk sale. Again -- how is this any business of Mr. Gee's clients,

9

since they are 'supposedly' the borrower entity and not connected to the lender any longer? This gives the game away.

## Conclusion

Attorney Litowitz wonders if this Court has ever seen a 12-page Response on a permissive joinder motion to add one fungible plaintiff.

Mr. Gee has pushed this case to 80 ECF documents and likely created another hearing, and then another on the motion to dismiss, and so on. And he wants to file a Rule 11 motion, naturally. Well, he has the money to keep this case going forever. How much money? $30-40 million of Chinese money that accidentally fell out of the sky and into his clients' wallets as a free money reward for their failure to make an honest profit on condos that no one wants to buy.

The Judge recommends that this case settle. That is what he said in open court. The Plaintiffs want to do what the Judge requested. So attorney Litowitz told the Court that he is willing to see both sides to this case and *start discussions* by splitting the difference. That is just an opening gesture that Litowitz has not even run past his clients, it doesn't break any rules -- it just says that Litowitz is listening to the Court. Litowitz welcomes Mr. Gee to make the same statement showing his willingness to listen to the Court by agreeing to discuss a settlement. Magistrate Judges often facilitate settlements, that is an area of their expertise, and it is a welcome part of their job. **Again - if Mr. Gee's clients are honorable men they will simply pay back the money that they borrowed from the Chinese. That's if - big if - they are honorable and successful businessmen.**

In summary, this is a simple motion to permissively add one person. Attorney Gee has surreptitiously turned it into a Rule 12(b)(6) motion, which it isn't.

WHEREFORE, Plaintiffs seek an Order adding Cao Xiaolong as a plaintiff under F.R.C.P. 20(a).

/s/ Douglas Litowitz
Counsel for Plaintiffs

November 10, 2019

**Certificate of Service:**

I filed the foregoing on the ECF system on November 10, 2019.

/s/ Douglas Litowitz

11