# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-02443

JUN LI, QI QIN, JIE YANG, YUQUAN NI, LI GANG, ZHONGZAO SHI, FANG SHENG, SHUNLI SHAO, KAIYUAN WU, ZINJIAN WU, INGWEI LI, YUWEI DONG, LIN QIAO, JINGE HU, RUJUN LIU, FAN ZHANF, LU LI, SA WU, YING XU, and CAO XIAOLONG, individually and derivatively for defendant COLORADO REGIONAL CENTER PROJECT SOLARIS LLLP,

                      Plaintiffs,

            v.

WAVELAND VENTURES LLC, COLORADO REGIONAL CENTER PROJECT SOLARIS LLLP, COLORADO REGIONAL CENTER I LLC, SOLARIS PROPERTY OWNER LLC, SOLARIS PROPERTY OWNER I LLC, AND PETER KNOBEL,

                    Defendants.

------------------------------------------------------------

Consolidated case 19-cv-02637

DIANWEN CUI, LEI GU, SUFEN LENG, XUE MEI, ZHOU MEI, YAN SONG, LU WANG, YUE WU, ZHUO YANG, JINGWEN ZHANG, LEI ZHANG, LING ZHANG, XIAOHONG ZHANG, QIN ZHOU, XUN ZHU, CHUNYI ZOU, individually, and on behalf of COLORADO REGIONAL CENTER PROJECT SOLARIS LLLP,

                    Plaintiffs,

            v.

Hon. Judge Raymond Moore
Hon. Magistrate Scott Varholak

1

WAVELAND VENTURES, LLC, COLORADO REGIONAL CENTER LLC, COLORADO REGIONAL CENTER I LLC, COLORADO REGIONAL CENTER PROJECT SOLARIS LLLP, SOLARIS PROPERTY OWNER LLC, SOLARIS PROPERTY OWNER LLC I, and JOHN DOES 1-10,

       Defendants,

       -and-

COLORADO REGIONAL CENTER PROJECT SOLARIS LLLP, Nominal Defendant.

## Proposed Scheduling Order

 **1.** **Date of Conference and Appearances of Counsel.**  The lawyers have <u>not</u> met for a F.R.C.P. 26 scheduling conference.  This is due to complications described below, which will be discussed in more detail at the scheduling conference.

 First, another case was consolidated into this one, so it is not clear (at least, the lawyers cannot agree) whether there should be one scheduling order or two.

 Second, the defendants have notified this Court they will submit motions to dismiss and have given notice of a coming Rule 11 motion, so there is some confusion as to when discovery should take place while these motions are pending.

 Third, the consolidated case involves a *lis pendens* (as this case once did), which may generate additional litigation that will throw off any timetable.

Fourth, both of the Complaints (in this and the consolidated case) have counts for securities fraud that may be subject to the PSLRA's stay on discovery, so there is confusion over the extent of discoverable matters during this stay -- for example, can discovery take place now concerning the state law breach of fiduciary and fraud counts while the PSLRA stay is in place?

The lawyers who have appeared are as follows: **Douglas Litowitz** for 21 Chinese plaintiffs; **Brian Stewart** and **Hubert Kuo** for 16 Chinese plaintiffs from case 19-cv-02637 that was consolidated into this case; **James Kilroy** and **Stephanie Kanan** for defendants Colorado Regional Center Project Solaris LLLP ("LP"), Colorado Regional Center LLC ("CRC"), Colorado Regional Center I LLC ("GP"), and Waveland Ventures LLC; and **Harold Alan Haddon** and **Ty Cheung Gee** for Defendants Peter Knobel ("Knobel"), Solaris Property Owner LLC, and Solaris Property Owner I LLC (the Solaris entities, "SPO").

2.     **Statement of Jurisdiction.**  This Court has federal subject matter jurisdiction because the Complaints allege violations of federal securities laws. 28 U.S.C. 1331.  This Court also has diversity jurisdiction because most if not all plaintiffs are foreign nationals or residents of other states, whereas the defendants are principally located in Colorado, as is the property in dispute, and the amount in dispute exceeds the statutory minimum. 28 U.S.C. 1332(a)(2).

3.     **Statement of Claims and Defenses.** The Plaintiffs are suing directly and derivatively as limited partners in the LP.  They were among 165 investors who each invested $500,000, giving the LP $82.5 million in capital in 2012.  The GP decided to loan it all on a non-recourse basis to SPO.  The loan was structured as a 5-year, 5.5% loan, paying the GP 2% per year.  The collateral for the loan was not revealed to the limited partners, but was agreed

3

beforehand by the LP and SPO to consist of 19 units in Solaris Vail equal to north-facing (not highly desirable) units supposedly valued at $82.5 million, the exact amount of the loan.

The money was raised by the GP/LP using Chinese brokers to tout the project with materials produced by the LP, saying that said the investment was safe, well-structured, unleveraged, and convertible into units worth the full value of the investment, with multiple exit strategies.

In reality, the loan documents allowed SPO to "repay" the $82.5 million in loan principal after 3 years by turning over 19 units and walking away without recourse, which it did, leaving the LP with condominiums worth about half the value of the loan.

The LP - a single purpose entity which is not in the business of selling anything let alone condominiums - found itself holding 19 condo units and has sold only two units in 3 years, thereby freezing all the money that needs to get returned to the limited partner investors. Bizarrely, they hired the defaulting borrower (an SPO affiliate) as sole agent to sell the units even though it had just defaulted and cost the LP tens of millions in losses. Every six months the GP tells the limited partners that they must line up to be eligible to get money out in the unlikely event a unit is sold, at about half of the value that the GP told the investors it would have.  17 units remain after 3 years. 2 have been sold, 1 of which is highly suspicious and made to parties affiliated with Chinese agents who marketed the limited partnership units.  A bulk sale is estimated to return only $40-45 million of the remaining loan amount of $78 million, before deductions for costs accrued by the GP.  The bottom line is that investors are facing a loss of half their money while the GP and SPO suck their blood like a backstreet dentist.

The plaintiffs allege that the LP is an unregistered investment fund and that it utilized unregistered brokers - creating a right of financial rescission and their money back.  The LP also

4

committed securities fraud under federal and state laws, and the GP breached its fiduciary duties and engaged in a fraud (a 'long con') to set up the transaction so that the lender and borrower would each profit at the expense of the Chinese investors, without adequate disclosure. Either this is fraud or incompetence, but plaintiffs think that no structure this bad could happen without scienter and malice. Plaintiffs were played for suckers because they were desperate to be Americans, and boy, did they get an introduction to the American way of doing business.

The defendants protest that despite their financial acumen and supposed skill in investing other people's money, the loss suffered solely by the plaintiffs in this deal (everyone else having profited) is due to mysterious and unfathomable forces of the market. These self-described experienced professionals profess surprise that property they claimed was worth $82.5 million in 2012 was really worth $40-45 million 3 years later. They find nothing unusual in using other people's money to make a non-recourse loan that is so far below the industry standard of collateral that it would be illegal if made by a registered financial institution. They refuse to accept any fault and show absolutely no remorse. Never once have they admitted a shred of responsibility, only arrogance and shock that they have been called to account for the losses they caused foreigners while ensuring that their own pockets were lined and that SPO could borrow money without paying back a penny in hard cash.

**4. Undisputed Facts.**

1. Defendant Peter Knobel is described as 'The Man Behind Solaris.' See Edward Stoner, "The Man Behind Solaris," *Vail Daily*, July 7, 2006.
2. The *Vail Daily* reported that Knobel bought the subject property on which Solaris Vail sits in 2003 from Oscar Tang.

5

3. Knobel is the equity owner and principal behind a number of companies named "Solaris," which are typically structured as Delaware LLCs whose true owners are kept from public records. This is true of Solaris Property Owner, Solaris Property Owner I, Solaris Mezz, and other Solaris entities. He has created an opaque, Enron-like structure.

4. After buying the subject property, Knobel/SPO planned a project under the name Solaris having 77-79 condo units and various stores, parking, and entertainment. He touted this project and conducted presales during 2006-2008.

5. On July 9, 2008, SPO issued a press release style "Solaris Closes on its Construction Financing" from director of marketing and sales Craig Cohn. It announced that SPO obtained $325 million in institutional funding for construction of the project and had presold units in the range of $300 million for delivery to buyers in 2009/2010, with 70% of units under contract. SPO claimed that Solaris will be "the finest project ever constructed in Vail Village."

6. By December 2010, SPO released a statement saying it had repaid the first-line mortgage lenders ($140 MM) and had sold 18 residences in the last six months. See "Vail's Solaris Developer Pays Off $140 Million Loan" *Vail Daily*, December 26, 2010.

7. Apparently despite these pronouncements, SPO and Knobel still needed extra money.

8. From as early as 2010, SPO began signing contracts with CRC (and its affiliate Waveland) to raise additional funds from foreigners through the EB-5 program. These contracts were to retain CRC to raise money for SPO and were signed by "Solaris Mezz LLC" - another company controlled and owned by Knobel.[1]

---

1. A "Regional Center" is a federally approved facility that packages investments so that investors might qualify for a green card under the so-called EB-5 program, which allows a green card

9. CRC went to find money to loan SPO in a sweetheart deal where foreigners would invest up to $100 million into an LP run by CRC, which would loan the money to SPO under a scheme where they would both profit at the sole expense of the foreigners.

10. CRC and Waveland hired Chinese agents to market limited partnership units to Chinese investors. The marketing materials describe Knobel as the owner and chief executive officer of borrower SPO.

11. A private placement memorandum ("PPM") and deal documents were created with the date of March 31, 2011.  One of the deal documents is a Subscription Agreement that says, "The Company will have a note receivable from SPO, but the management of SPO will be controlled solely by **Peter Knobel as the sole equity member of SPO**." (emphasis added). This means that this transaction was structured by Knobel and his SPO entities along with CRC and its affiliates -- both of whom would get a guaranteed gain at the expense of whomever they could bring on as investors.

12. The PPM says that the money LOANED by the LP would not be DEBT that must be paid back but will be considered as OWNER'S EQUITY in the hands of the borrower, which would allow it to be used as collateral for future loans.  This is utterly bizarre since every loan that must be paid back is a debt, not equity. The loan was also non-recourse and collateralized at supposedly $82.5 million, without a penny of extra security in case the units go down in value from the valuation SPO and CRC put on the units.  None of this was disclosed to the Chinese investors who thought that they were getting collateral in the entire project and in all 79 condominiums.

---

for foreigners who invest $500,000 in targeted areas and create 10 jobs.  The immigration aspects of the transaction are not at issue between the parties.

13. A total of 165 Chinese signed up as limited partners, paying $500,000, funding the LP with $82,500,000 in 2012.

14. The LP loaned all the $82,500,000 to SPO who for some reason assigned its rights to SPO I. The deal documents provide for a 5-year maturity with 5.5% annual interest. The loan is non-recourse, meaning that the only recourse of the LP for repayment is to the collateral. The collateral consisted on 19 units at Solaris Vail with an agreed value between the borrower and lender (undisclosed to the investors) of precisely $82,500,000. The loan documents have an 'option' structure whereby after 3 years (2 years prior to maturity) SPO could pay back the entire $82,500,000 principal by turning the 19 units over to the LP.

15. This turning over collateral as repayment was supposedly done around 2015, and reported to investors as early as 2013, but through a secret agreement undisclosed to the investors, title stayed in the hands of the borrower, where it still sits today. The loan documents also had an option whereby the LP could insist on getting units instead of repayment of principal after 5 years, in which case the investors would get merely 30% of the increase in value over $82,500,000 -- this 'option' expired worthless and far "outside of the money" -- a horrendously wrong bet. Still, after making such a horrible deal and botching the terms and losing so many tens of millions, the GP took 2% of the principal amount per year as a fee, and took a 1% interest in the limited partnership itself.

16. By 2016, the LP held the 19 collateral units which had been put back to them instead of repayment of capital, while SPO 'paid back' $82.5 million with units worth about half as much. By mid-2019, a whopping 2 of the 19 units had been sold. Every six months the GP sent a notice to investors offering them to 'put' their units to the LP in exchange for a fractional sale in a unit if that unit sells. A bulk sale has been contemplated but one was

8

abandoned by the buyer, and an estimate puts the value of a bulk sale at $40-45 million, making for a 50% loss incurred for investors. As a result, there has not been liquidity and the investors cannot exit the investment. They are stuck while CRC and Waveland accrue fees from them.

17. The latest statement to investors on May 30, 2019 says that the remaining units have a fair market value of $73,130,000 on unpaid principal of $78,500,000 -- but the GP refuses to refinance at this rate.

18. The 2018 financial statements and tax returns of the LP show that it owns a note receivable in the amount of $82.5 million from SPO, but the GP refuses to sue the borrower on the note.

5. **Computation of Damages.** Plaintiffs seek a return of their principal ($500,000) and any unpaid interest due to them, plus disgorgement of fees by the GP and any further damages determined by the Court due to fraud and breach of fiduciary duties.

6. **Report of Preconference Discovery and Meeting Under Fed. Civ. P. 26(f).**

There has not been any such meeting yet. There has been no formal discovery (interrogatories, requests for production, request to admit, depositions). As an *informal* matter, certain documents were provided by Colorado Regional Center to Plaintiffs' attorneys pursuant to the inspection rights of limited partners under the Limited Partnership Agreement. Plaintiffs would like to immediately depose defendant Peter Knobel of SPO and Rick Hayes of CRC.

Discovery in this case will weigh more heavily upon defendants as their actions and decisions are being challenged by passive investors. The limited partners are fungible in that none of them have any special information or circumstances that would shed light on the allegations. In terms

of alternative dispute resolution, plaintiffs are willing to entertain mediation, and they have proposed several agenda items for the scheduling conference. It is anticipated that the defendants will retain all electronic records of relevance.

7.  **Consent to Magistrate.** All parties did not consent to have this matter heard by a magistrate, but by order of Judge Raymond Moore, this case is being heard by Magistrate Judge Scott Varholak.

8.  **Discovery Limitations.** The parties do not propose limitations of discovery beyond those contained in the F.R.C.P. There is already a protective order with respect to certain documents submitted to the Court in a previous evidentiary hearing.

9.  **Case Plan and Schedule.**
    a.  Joinder of parties and amendment of pleadings by February 15, 2020.
    b.  Discovery completed by May 1, 2020.
    c.  Dispositive motions filed by July 30, 2020.
    d.  The parties anticipate using expert witnesses.
    e.  Depositions should not go beyond parties, employees, and experts.
    f.  Interrogatories served by May 1, 2020.
    g.  Requests for production and admission served by May 1, 2020.
    h.  Persons to be deposed by Plaintiffs: Peter Knobel, Rick Hayes, Melissa Hayes.
    i.  Persons to be deposed by Defendants: to be determined.

    j.   Trial date set for August, 2020, although it is anticipated that plaintiffs will move for summary judgment.

10.    **Dates for further conferences**: A settlement conference will be held on _____, 2020, at _____. It is ordered that all settlement conferences before the magistrate shall be confidential. A final pretrial conference will be held in this case on _____ at _____. A Final Pretrial Order shall be prepared by the parties and submitted to the court no later than seven (7) days before the final pretrial conference.

11.    **Other Scheduling Matters.**  No discovery or scheduling issues are outstanding at this time. If a trial is needed, it is expected to be 3-4 days.

12. **Notice to Counsel and Pro Se Parties.**

The parties filing motions for extension of time or continuances must comply with Local Civ. Rule 6.1(c) by submitting proof that a copy of the motion has been served upon the moving attorney's client, all attorneys of record, and all *pro se* parties. Counsel will be expected to be familiar and to comply with the Pretrial and Trial Procedures or Practice Standards established by the judicial officer presiding over the trial of this case. With respect to discovery disputes, parties must comply with Local Rule 7.1(a).

13. **Amendments to the Scheduling Order.** The scheduling order may be altered or amended only upon a showing of good cause.

DATED at Denver, Colorado, December 11, 2019.

BY THE COURT:

_____
United States Magistrate Judge

APPROVED:

_____  _____
Doug Litowitz         James Kilroy

_____  _____
Brian Stewart         Ty Gee