**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 19-cv-02443-RM-STV

Li, *et al.*,

     Plaintiffs,

v.

Waveland Ventures, LLC, *et al.*,

     Defendants.

---

**RESPONSE IN OPPOSITION TO MOTION TO DISQUALIFY THE LAW FIRM OF SNELL & WILMER LLP FROM SIMULTANEOUS REPRESENTATION OF THE DEFENDANT LIMITED PARTNERSHIP AND ITS GENERAL PARTNER [ECF 111]**

---

Defendants Colorado Regional Center Project Solaris LLLP ("CRCPS") and Colorado Regional Center I, LLC's ("CRC I"), by and through undersigned counsel, hereby submit their Response in Opposition to Motion to Disqualify the Law Firm of Snell & Wilmer LLP From Simultaneous Representation of the Defendant Limited Partnership and its General Partner (the "Motion") [ECF 111], stating as follows:

**INTRODUCTION**

In their motion to disqualify Snell & Wilmer L.L.P. ("Snell & Wilmer") from dual representation of CRCPS, the limited partnership, and CRC I, its general partner, the Li Plaintiffs attempt to portray this case as a typical shareholder derivative action. But this case is anything but typical, and this motion is just the latest example. After months of representation and extensive motions practice initiated almost entirely by the Li Plaintiffs, they now attempt to disqualify Snell

1

& Wilmer from any further representation of both entities. The objective, of course, is to deprive the parties of counsel of their choice, force them to incur additional expense and disrupt the litigation, which is precisely the reason such motions are treated with skepticism. Neither the law nor the facts support the motion and it should be denied.

The entire basis for disqualification is premised on the existence of the Li Plaintiffs' so-called derivative claims that they contend were asserted on behalf of CRCPS and render it adverse to CRC I. But the claims they label as derivative are neither recognized at law nor directed at CRC I. And to the extent they have alleged any fraud or self-dealing, which they claim requires separate counsel, there is no adverse interest between the entities because the Li Plaintiffs accuse both CRCPS and CRC I of the same conduct. But more fundamentally, under no circumstance can the Li Plaintiffs simultaneously pursue direct claims against the limited partnership, while also pursing claims on its behalf, as they purport to do here. This constitutes an impermissible conflict that requires immediate dismissal of any derivative claims. Because the Li Plaintiffs have not, and cannot, pursue any derivative claims, there is no basis for separate counsel.

While the Cui Plaintiffs have not sought disqualification at this time, they too have failed to plead any viable derivative claim to justify separate counsel. Stripped of its superficial title, their sole derivative claim against CRC I is purely a direct claim to recover individual damages for breach of fiduciary duty. There is not a single allegation that CRC I's supposed misconduct harmed the limited partnership or that the limited partnership is entitled to recover any damages. The Cui Plaintiffs only allege individual harm and seek to recover damages for themselves, not the limited partnership. Nor do the Cui Plaintiffs' remaining derivative claims present any conflict, as they are directed at an entirely different entity that is already represented by separate counsel.

In any event, the Cui Plaintiffs' individual claims against the limited partnership preclude them from asserting any derivative claims. There is simply no basis – in either of the consolidated cases – for disqualification.

## FACTUAL BACKGROUND

The Plaintiffs are Chinese investors who each purchased a limited partnership interest in CRCPS for $500,000, as part of an approved EB-5 Program to obtain a "green card."  Under the terms of the partnership agreement, CRCPS loaned the proceeds of the investment, which totaled approximately $82.5 million, to SPO I to pay certain costs pertaining to the development of a luxury residential and commercial development in Vail, Colorado.  The loan was secured by a deed of trust for each of 19 condominium units valued in the aggregate at approximately $82.5 million at the time of execution of the loan agreement.

Pursuant to the terms of the overall loan agreement and as expressed by the Private Placement Memorandum dated March 11, 2011 ("PPM"), three years following each loan advance, CRCPS and SPO I had certain "put" and "call" rights.  SPO I ultimately exercised its "put" right to transfer each condominium unit to CRCPS in lieu of cash payment of the loan.  CRCPS has not yet been assigned title to the remaining units comprising the Property (other than two condominium units conveyed to CRCPS' designees), because SPO I agreed to continue to hold title and, upon the instruction of CRCPS, to directly sell the units to a buyer designated by CRCPS. Accordingly, SPO I continues to hold title to the Property (now 17 units), and CRCPS continues to hold a first priority lien on the Property by means of the respective deeds of trust.

The Li Plaintiffs complain that the structure of the loan was fraudulent and designed to benefit only CRCPS, CRC I, SPO I and their related entities, rather than the investors.  But the

loan structure that they now characterize as "bizarre" or a "freakish abomination" was fully disclosed to them before they purchased their interest in CRCPS.  The PPM, which was provided to the Li Plaintiffs prior to their investment, did not promise any of the investors a guaranteed return, nor would that have been permitted under the EB-5 Program, which requires the investment to be placed "at-risk."  The PPM also cautioned prospective investors that a return or repayment of the capital contributions could be contingent upon the ability to sell the collateral units.

Despite receiving ample notice regarding the nature of the investment and the associated risks, the Li Plaintiffs initiated this lawsuit to rescind the entire transaction and recover monetary damages, including a full return of their capital contribution.  In their Second Amended Complaint filed in Case No. 19-cv-02443 (the "Li Complaint"), they assert direct claims against the various defendants for: (i) failing to register as an investment company under 15 U.S.C. § 80a-46(b); (ii) aiding and abetting unregistered broker-dealers under 15 U.S.C. §§ 78o and 78t; (iii) federal securities fraud; (iv) state securities fraud; (v) breach of fiduciary duty; and (vi) fraud.  [ECF 86; Case No. 19-cv-02443].  The Li Complaint also includes two purported derivative claims called "Force Borrower to Repay $82.5 Million" and "Lis Pendens."

The Cui Plaintiffs filed their First Amended Complaint and Jury Demand in Case No. 19-cv-02637 (the "Cui Complaint"), seeking monetary damages and rescission for: (i) federal securities fraud; (ii) violation of the Colorado Consumer Protection Act; (iii) fraudulent misrepresentation; (iv) breach of fiduciary duty; and (v)  violations of the Lanham Act.  [ECF 21; Case No. 19-cv-02637].  The Cui Plaintiffs also purport to assert a claim for "Specific Performance" against SPO to require conveyance of title, but they failed to plead an underlying claim for breach of contract entitling them to such remedy.

4

## ARGUMENT

**I.      Motions to Disqualify Are Disfavored Litigation Tactics.**

"Motions to disqualify an opponent's attorney [shall] be viewed with skepticism in light of their potential abuse as dilatory or tactical devices." *Vinton v. Virzi*, 269 P.3d 1242 1246 (Colo. 2012); *see also Greenebaum–Mountain Mortgage Co. v. Pioneer Nat'l Title Ins. Co*., 421 F. Supp. 1348, 1352 (D .Colo. 1976). Courts recognize that disqualification of counsel is a severe remedy that can result in significant expense to clients, disrupt the orderly progress of litigation, and deprive a party of the counsel of its choice. *See In re Estate of Myers*, 130 P.3d 1023, 1025 (Colo. 2006); *People v. Hoskins*, 333 P.3d 828, 835 (Colo. 2014); *Fognani v. Young,* 115 P.3d 1268 (Colo. 2005). As such, disqualification should be avoided whenever possible and "must not be based on speculation or conjecture." *Kline Hotel Partners v. Aircoa Equity Interests, Inc*., 708 F. Supp. 1193, 1194 (D. Colo. 1989); *People Ex Rel. Woodward v. District Court*, 704 P.2d 851 (Colo. 1985). Nor should disqualification motions be used as a strategic litigation tactic. *See, e.g., Redd v. Shell Oil Co*., 518 F.2d 311, 315 (10th Cir.1975); *see also Fognani*, 115 P.3d at 1272 ("courts have historically been highly cynical of motions to disqualify opposing counsel, noting that such motions are often dilatory or tactical devices"). When the opposition moves to disqualify counsel during a tactically advantageous time for the opposition, courts should employ an even higher level of scrutiny because "such motions are often dilatory or tactical devices." *Fognani*, 115 P.3d at 1271 (citations omitted).

The burden of establishing the grounds for disqualification is on the moving party. *See Kline*, 708 F. Supp. at 1194; *see also Fognani*, 115 P.3d at 1272. That burden is met only when "it appears reasonably necessary to ensure 'the integrity of the fact-finding process, the fairness or

appearance of fairness at trial, the orderly or efficient administration of justice, or public trust or confidence in the... justice system."' *Harlan*, 54 P.3d at 877 (quoting *People v. Garcia*, 698 P.2d 801, 806 (Colo. 1985)).  Determination of whether an attorney should be disqualified is a matter largely within discretion of the trial court.  *See Estate of Myers*, 130 P.3d at 1025; *Garcia*, 698 P.2d at 806.

The absence of any legal or factual basis for the Li Plaintiffs' motion reveals its purpose - to disrupt the parties' relationship with counsel for a tactical advantage.  The Li Plaintiffs and their counsel knew that Snell & Wilmer was representing CRCPS and CRC I no later than September 4, 2019, but did not advise counsel of their intention to move to disqualify until almost four months later, on December 22, 2019, by which time Snell & Wilmer had expended a great deal of time and effort on the case.  Not only has Snell & Wilmer engaged in extensive communications with counsel for the various parties during those four months, but it also drafted numerous motions and represented both entities at an evidentiary hearing.  The Li Plaintiffs' delay in seeking disqualification confirms that the motion is contrived and should be dismissed on this basis alone. *See Universal City Studios, Inc. v. Reimerdes*, 98 F. Supp.2d 449, 455 (S.D.N.Y. 2000) (denying motion to disqualify counsel as a litigation tactic when brought in midst of motion practice and nearly a month after movant knew of alleged conflict); *see also Masiello v. Perini Corp.*, 477 N.E.2d 1020, 1025-26 (Mass. 1985) (affirming denial of motion to disqualify brought, despite ample notice, on eve of trial, as an "eleventh hour maneuver[]" and noting that "Court resources are sorely taxed by the increasing use of disqualification motions as harassment and dilatory tactics").

**II.      Colorado Does Not Prohibit Dual Representation in Shareholder Derivative Actions.**

Although Plaintiffs' contend that CRCPS and CRC I cannot be represented by the same counsel, neither the rules of professional conduct, nor the courts require separate representation by virtue of the pleadings alone.

In determining whether disqualification is appropriate, courts consider whether the moving party has alleged facts demonstrating a violation of any rule of professional conduct.  *See Woodard*, 704 P.2d at 853; *see also* D.C.Colo.LAtty R2 (adopting the Colorado Rules of Professional Conduct); *see also Kline*, 708 F. Supp. at 1194.  Colo. RPC 1.7(b) governs dual representation and provides that a lawyer shall not represent a client if "(1) the representation of one client will be directly adverse to another client; (2) or there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer" unless:

> (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
>
> (2) the representation is not prohibited by law;
>
> (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
>
> (4) each affected client gives informed consent, confirmed in writing.

The Li Plaintiffs have made no showing that Snell & Wilmer's representation of CRCPS may be "materially limited" by its responsibilities to CRC I, or to a third party, or by Snell & Wilmer's own interests. Nor have the Li Plaintiffs shown that the interests of CRCPS and CRC I

are "directly adverse." *See, e.g.*, *Robinson v. Snell's Limbs & Braces of New Orleans, Inc.*, 538 So. 2d 1045, 1048–49 (La. Ct. App. 1989) ("[T]here is no conflict of interest because there are really no adverse interests being represented.").  To the contrary, at this point in the litigation, CRCPS's interests and CRC I's interests are identical.  Neither of the Li Plaintiffs' so-called derivative claims are viable, let alone directed at CRC I.  Counts VII and VIII of the Li Complaint are called "Force Borrower to Repay $82.5 Million Loan" and "Lis Pendens," respectively.  But there are no such causes of action recognized at law.  While the Li Plaintiffs do assert a claim for breach of fiduciary duty against CRC I, it is pled as a direct claim, not a derivative claim.  And to the extent they have asserted other claims involving fraud or self-dealing, the Li Plaintiffs accuse both entities of engaging in such conduct through direct claims only.  Both entities dispute that the Li Plaintiffs' claims have any merit and intend to seek dismissal of the entire lawsuit.

The Cui Plaintiffs' derivative claims are similarly flawed and fail to create any impermissible conflict.  For example, their breach of fiduciary duty claim is pled as both a direct and derivative claim, yet they only seek to recover individual, *not derivative*, damages.  They do not claim that CRC I's alleged breach harmed CRCPS nor do they claim that CRCPS is entitled to recover any damages.  This claim does not render CRCPS and CRC I adverse to each other.  And the Cui Plaintiffs' remaining derivative claims fare no better.  Counts VI and VII are claims against Solaris Property Owner, LLC ("SPO"), not CRC I, for specific performance.  Because these claims are not even asserted against CRC I, they also do not create any adverse alignment of the parties.

Moreover, Colo. RPC 1.13(g) provides that "[a] lawyer representing an organization may also represent any of its officers, directors, employees, members, shareholders or other constituents, subject to the provisions of Rule 1.7."  The comments to that rule state that in most

8

circumstances, "derivative suits are a normal incident of an organization's affairs, to be defended by the organization's lawyer like any other suit." Colo. RPC 1.13, cmt. 14.  The Colorado Rules of Professional Conduct, accordingly, do not prohibit Snell & Wilmer's joint representation of the limited partnership and its general partner.  Indeed, the comments to Colo. RPC 1.13 further note that "if the [derivative] claim involves serious charges of wrongdoing by those in control of the organization, a conflict <u>may</u> arise between the lawyer's duty to the organization and the lawyer's relationship with the board," in which case Colo. RPC 1.7 governs.  Even in cases involving serious wrongdoing, it is not a foregone conclusion that a conflict exists or that joint representation is precluded.   Simply put, there is nothing in Colo. RPC 1.13 or 1.7 that suggests that dual representation in a derivative action is categorically prohibited.

Colorado courts have similarly declined to apply a blanket prohibition on dual representation for corporate defendants in a derivative action.  *See Kline*, 708 F. Supp. at 1194-95 (court first assessed whether derivative claims were properly pled before ruling on motion to disqualify).  Indeed, the prevailing practice in Colorado and in the Tenth Circuit is that the same counsel may represent both the corporation and its accused officers or directors. *See, e.g., City of Cambridge Retirement System v. Ersek*, 921 F.3d 912 (10th Cir. 2019) (same law firm(s) represented individual and corporate defendants in derivative action); *Gubricky on behalf of Chipotle Mexican Grill, Inc. v. Ells*, 255 F. Supp. 3d 1119 (D. Colo. 2017) (same); *deHaas v. Empire Petroleum Co.*, 435 F. 2d 1223 (10th Cir. 1970) (same); *Tisch v. Tisch*, 439 P.3d 89 (Colo. App. 2019) (same); *Bell v. Arnold*, 487 P.2d 545 (Colo. 1971) (same).  And in several of those cases, the claims against the individual defendants included allegations of self-dealing, fraud and misappropriation of corporate assets.  *See Bell*, 797 F.2d at 7 (corporate directors charged with

9

illegality, fraud and negligence in handling corporate affairs and finances); *Tisch*, 846 F.2d at 87-88 (controlling shareholder charged with civil theft and breach of fiduciary duty by using corporate profits for private use.); *deHaas*, 435 F.2d at 1225 (shareholder and officer charged with securities fraud violations).

III.    **There is No Conflict of Interest Because Plaintiffs Have Not Asserted, and Cannot Assert, Any Viable Derivative Claim on Behalf of CRCPS**

While the Li Plaintiffs contend that disqualification is required by virtue of their pleadings alone, joint representation is permitted, at a minimum, through the motion to dismiss stage. Accordingly, the Court can, and should, evaluate whether the Li Plaintiffs' claims can withstand a motion to dismiss before ruling on this issue.  Even a cursory review of their pleading demonstrates that they cannot.

Permitting joint representation of corporate defendants at least through a motion to dismiss appears to be settled practice in Colorado.  *See, e.g., Kline*, 708 F. Supp. at 1194-95.  At that stage of the proceedings, courts must first determine, as a matter of law, whether the plaintiff has asserted any viable derivative claims against the defendants before reaching a conclusion regarding any conflict.  *See id.*  In other words, courts will not order disqualification on the uncontested pleadings alone.  If the court ultimately determines that the plaintiff has asserted only direct claims, rather than derivative claims, the defendants are not adverse, and no conflict exists to justify disqualification.  *See Kline*, 708 F. Supp. at 1195; *see also In re Murrin Bros, 1885, Ltd.,* Case No. 18-0737, 2019 WL 6971663, at * 4 (Tex. Dec. 20, 2019) ("if the derivative claims are treated as direct claims…the [Plaintiffs'] case for disqualification essentially vanishes"); *McAlinden v.*

*Wiggins*, 543 F. Supp. 1004, 1006 (S.D.N.Y. 1982) (a claim asserted against both the corporation and its officers for a common wrong does not preclude dual representation).

Several other jurisdictions that have addressed this issue, including Delaware, have adopted a similar approach. *See, e.g., Respler on Behalf of Magnum Hunter Resources Corp. v. Evans*, 17 F. Supp. 3d 418, 421 (D. Del. 2014) ("In derivative actions, there exists no conflict of interest between a corporation and individual director defendants at the motion to dismiss stage, therefore, a law firm may represent all defendants without impropriety"); *see also Scattered Corp. v. Chi. Stock Exch., Inc*., No. 14010, 1997 WL 187316, at *6–8 (Del. Ch. Apr. 7, 1997) *aff'd on other grounds*, 701 A.2d 70 (Del. 1997), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000); *Clark v. Lomas & Nettleton Financial Corp*., 79 F.R.D. 658, 661 (N.D. Tex. 1978). As one court observed:

> I find that there is no conflict of interest requiring disqualification in the narrow instance when one law firm represents a derivatively sued corporation and its individually sued directors and the law firm initially files a motion to dismiss on behalf of its clients, does not otherwise participate in the lawsuit, and withdraws from representation of either the corporation or the individual directors when either the motions to dismiss are overruled or when it becomes necessary to actively participate in the defense of the corporation and the individual directors. At this stage of the proceedings, when the court must make a determination on whether as a matter of law the defendants should be in the lawsuit, unless it can be shown that an actual conflict exists or that certain confidences are being jeopardized, I think the client's right to select the counsel of his choice outweighs any potential conflict of interest. Once that determination is made, or once it becomes necessary for active participation in the defense of the directors, then new counsel must be sought, because the potential for conflict has increased to the point where it outweighs the rights of the individual directors to select counsel.

*Clark*, 79 F.R.D. at 661.

Given the procedural posture of this case, the Li Plaintiffs' motion is premature at best.  As stated on the record at the Scheduling Conference held on December 19, 2019, all of the defendants, including CRCPS and CRC I, intend to move for dismissal of both the Li Complaint and the Cui Complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  As set forth in Section II, *supra*, the Li Plaintiffs' derivative claims are not recognized at law.  Setting those fictitious claims aside, as the Court must, the Li Plaintiffs assert only direct claims against CRCPS and CRC I for a common wrong.  And the same is true for the Cui Plaintiffs.  *See* Section II, *supra*. In the absence of any derivative claim properly before the Court, there is simply no basis for disqualification.  *See, e.g., Kline*, 708 F. Supp. at 1195; *McAlinden*, 543 F. Supp. at 1006.

Moreover, all Plaintiffs in this consolidated action, and their counsel, are barred from bringing any derivative claims due to their own impermissible conflict of interest.  *See New Crawford Valley, Ltd. v. Benedict*, 847 P.2d 642, 647 (Colo. App. 1993) (applying comparable state law).  Courts consider the "existence of other litigation between a [Rule] 23.1 plaintiff and the same [Rule] 23.1 defendants in which that plaintiff seeks to have the defendants' assets applied to the satisfaction of a personal claim, rather than transferred to the corporation," to be a serious conflict of interest.  *Id*.  Because the Li Plaintiffs and the Cui Plaintiffs are simultaneously pursuing their own individual claims against CRCPS for securities fraud, among other claims, any derivative claims cannot also be pursued.  *See Prime Mover Capital Partners L.P. v. Elixir Gaming Technologies*, 898 F. Supp. 2d 673,691-92 (S.D.N.Y. 2012) (dismissing derivative claim where plaintiff asserted securities fraud claims against the company).  And this conflict also extends to their counsel, precluding the representation of other limited partners.  *See New Crawford*, 847 P.2d

at 647.[1]  Thus, even if the Li Plaintiffs of Cui Plaintiffs had asserted a derivative claim that is recognized at law, dismissal would necessarily be required.  *See, e.g., Prime Mover*, 898 F. Supp. 2d at 691-92.

The Court need not wait for a motion to dismiss to address these fatal flaws and deny the Li Plaintiffs' motion.  *See Kline*, 708 F. Supp. at 1194-95.  But if the Court is not inclined to render a determination regarding the viability of the Li Plaintiffs' derivative claims, at a minimum, it should defer its ruling on the motion to disqualify until the issues are fully briefed and decided under Fed. R. Civ. P. 12(b)(6).

## IV.    Even if the So-Called "Modern Rule" Applies, Separate Counsel is Not Required

Plaintiffs cite no authority suggesting that Colorado or the Tenth Circuit has adopted the "modern rule" announced in *Bell Atlantic Corp. v. Bolger*, 2 F.3d 1304 (3d Cir. 1993).  But even so, it does not preclude dual representation under these circumstances.

While Plaintiffs' characterize *Bolger* as the leading authority on joint representation of the corporation and individual defendants in derivative litigation, courts around the country are divided on the issue.  *See, e.g., Murrin Bros.*, 2019 WL 6971663, at * 4.  Some jurisdictions have held that joint representation of both the company and the insider defendants is categorically impermissible, while others have taken a more tempered approach, recognizing that the interests

---

[1]  In their Statement of Conferral Pursuant to Local Rule 7.1 [ECF 111, p. 6], the Li Plaintiffs do not mention the fact that in the attorneys' conferral on this issue of possible disqualification, undersigned counsel noted to counsel for Plaintiffs the potential for an improper conflict of interest on the *Plaintiffs'* side because Plaintiffs purport to bring individual direct damage claims against CRCPS in the same lawsuit wherein they seem to be asserting derivative claims on behalf of CRCPS.  To be clear, no motion to disqualify has been filed to address Plaintiffs' counsel for the same reasons cited in this response: it would be premature to assume that disqualification of any of the attorneys is necessary or proper until rulings on the anticipated Fed. R. Civ. P. 12 motions.

of the company and its controlling officers or directors are often aligned, and separate counsel is not necessary unless a divergence of those interests arises.  *See id.* (collecting cases).  The court's reasoning in *Kline*, which appears to be the only state or federal case in Colorado addressing joint representation of corporate defendants in a derivative action, is consistent with the latter approach. Nevertheless, Plaintiffs ignore this line of authority, relying instead on the "modern rule" announced by the Third Circuit. But even the "modern rule" supports Snell & Wilmer's continued joint representation.

In *Bolger*, the court held that disqualification was not required in a derivative suit for a firm who simultaneously represented the corporation and individual corporate defendants where there were no allegations of serious wrongdoing.  *Bolger*, 2 F.3d at 1316-17.  In reaching its holding, the court concluded that "except in patently frivolous cases – allegations of directors' fraud, intentional misconduct, or self-dealing require separate counsel" in derivative actions.  *Id.* at 17. In other words, the *Bolger* court did not entirely prohibit dual representation in shareholder derivative actions, but instead carved out two circumstances under which it is expressly permissible.  *See id.*

First, the *Bolger* court recognized that "even under the modern rule, independent counsel may not be required if the derivative claim is obviously or patently frivolous."  *Bolger*, at 1316 (internal quotations omitted).  As the Eleventh Circuit explained, "if the derivative suit lacks merit then the corporation's and the alleged wrongdoers' interests will be aligned; both will want the derivative suit to be terminated."  *Stepak v. Addison*, 20 F.3d 398, 404 (11th Cir. 1994).  Other jurisdictions have applied similar reasoning, concluding that "at the dismissal stage, the [corporation's] interest was identical to that of the individual defendants – to seek the dismissal of

14

the complaint." *Scattered Corp.*, 1997 WL 187316, at *6-8. Accordingly, the *Bolger* court expressly authorizes the joint representation of the corporation and the individual defendants through the motion to dismiss stage of the litigation to determine whether the claims are frivolous.

The second circumstance permitting joint representation arises when the allegations against the directors and officers allege mismanagement in violation of the duty of care, and not a breach of the duty of loyalty. *See Bolger,* 2 F.3d at 1317. The *Bolger* court "recognize[d] that corporate law has traditionally distinguished between breach of the duty of care and breach of the duty of loyalty, the latter being more grave." *Id.* To that end, the court held that allegations that an individual defendant breached the duty of loyalty "require separate counsel," but in the absence of such allegations, joint representation is permissible. *See id.* ("[o]f greater significance, however, is the absence of allegations of fraud, intentional misconduct, or self-dealing").

As set forth in Section II, *supra*, the Li Plaintiffs' so-called derivative claims are non-existent. Moreover, neither of their claims allege a breach of CRC I's duty of loyalty. At most, Plaintiffs' derivative claim to "Force Borrower to Repay $82.5 Million Loan" could conceivably be construed as a demand for specific performance, which is a remedy available for breach of contract, not breach of fiduciary duty. And even so, this claim is not even asserted against the general partner. The only claim even remotely alleging a breach of the duty of loyalty is a direct claim asserted against CRC I.

The Cui Plaintiffs' derivative claims also fail to create any impermissible conflict under the "modern rule." As discussed in Section II, *supra*, the Cui Plaintiffs' breach of fiduciary duty claim lacks the requisite allegations to be construed as a derivative claim, rendering such claim frivolous at best. And Counts VI and VII of the Cui Complaint, which are the only other derivative

15

claims, are not asserted against CRC I and therefore have no impact on the alignment of interests between CRCPS and CRC I.

In sum, the *Bolger* case does not mandate disqualification.  It expressly authorizes joint representation under these circumstances.  Snell & Wilmer certainly recognizes the potential for a conflict at some later date, after the motions to dismiss have been fully briefed and decided, but there is no justification for requiring separate counsel at this stage of the proceedings.

## **CONCLUSION**

The Li Plaintiffs' motion [ECF 111] should be denied because there is no basis for disqualification.  None of the plaintiffs in this consolidated action have pled any viable derivative claim to demonstrate that the interests of CRCPS and CRC I are directly adverse.  To the contrary, both entities are accused of the same misconduct and share the identical interest in dismissing the consolidated action.  As such, separate counsel is not required and the motion should be denied.

WHEREFORE, CRCPS and CRC I respectfully request that the Court enter an order denying the Li Plaintiffs' Motion to Disqualify the Law Firm of Snell & Wilmer LLP From Simultaneous Representation of the Defendant Limited Partnership and its General Partner.

4816-4040-2865

DATED: January 21, 2020.

/s/ James D. Kilroy

James D. Kilroy
Stephanie A. Kanan
SNELL & WILMER L.L.P.
1200 Seventeenth Street, Suite 1900
Denver, CO 80202-5854
Phone: (303) 634-2000
Fax: (303) 634-2020
Email:  jkilroy@swlaw.com;
skanan@swlaw.com

***Counsel for Defendants Waveland Ventures, LLC, Colorado Regional Center Project Solaris LLLP, Colorado Regional Center, and Colorado Regional Center I, LLC***

17

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on January 21, 2020, a true and correct copy of the above and foregoing **RESPONSE IN OPPOSITION TO MOTION TO DISQUALIFY THE LAW FIRM OF SNELL & WILMER LLP FROM SIMULTANEOUS REPRESENTATION OF THE DEFENDANT LIMITED PARTNERSHIP AND ITS GENERAL PARTNER [ECF 111]** has been electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record:

Douglas Litowitz
413 Locust Place
Deerfield, IL  60015

Brian P. Stewart
Herbert Kuo
Ardent Law Group
4340 Von Karman Avenue, Suite 290
Newport Beach, CA  92660

Harold A. Haddon
Ty Gee
David G. Maxted
Haddon Morgan and Foreman, P.C.
150 East 10th Avenue
Denver, CO  80203

*/s/ Amy Kovarsky*
for Snell & Wilmer L.L.P.

18