# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

**Civil Action No. 19-cv-02443**
**Consolidated with Civil Action No. 19-cv-02637**

Jun Li, Qi Qin, Yi Liu, et al.,
        Plaintiffs,

v.                            Hon. Magistrate Scott Varholak

Waveland Ventures LLC,
Colorado Regional Center Project Solaris LLLP,
Colorado Regional Center I, LLC,
Solaris Property Owner LLC,
Solaris Property Owner LLC I, and
Peter Knobel,
        Defendants.

---

## Declaration of Brian P. Stewart

---

I, Brian P. Stewart, am over the age of eighteen and have personal knowledge of the facts stated herein and hereby to state as follows:

1. I am an attorney at The Ardent Law Group, attorneys of record for the Plaintiff's in Civil Action No. 19-cv-02637.

2. This declaration is offered in support of Plaintiffs Motion for Leave to File 2nd Amended Complaint.

3. 165 Chinese investors collectively invested $82.5 million into a Colorado limited partnership, Defendant Colorado Regional Center Project Solaris LLLP ("LLLP") that was created by Waveland Ventures, LLC ("Waveland") and CRC created. CRC's subsidiary, Colorado Regional Center I, LLC ("GP") was established as the general partner of the LLLP and received a 1% partnership interest.

4. The GP had the exclusive right to negotiate on behalf of the LLLP, however such rights included a fiduciary duty to negotiate in the best interests of the LLLP.

5. In negotiating the loan with Solaris Property Owner ("SPO"), the GP failed to negotiate in the best interests of the LLLP and instead entered into the Loan agreement and a series of amendments thereto which benefited SPO and its successor in interest Solaris Property Owner LLC I ("SPOI") and the GP itself, all to the detriment of the LLLP.

6. This office filed the Plaintiff's original Complaint on September16, 2019. Thereafter, on November 8, 2019 we filed the 1st Amended Complaint, adding an action for specific performance based upon SPOI's many offers to exercise its right to convey title to the Collateral Units, while continuing to retain title to and possession of the Collateral units.

7. On November 19, 2019 this case was consolidated with *Li v. Waveland Ventures, LLC* case No. 1:19-cv-02443-STV. During several conferrals related to the Scheduling Order, opposing counsel aggressively rebuked me for not knowing every detail related to numerous hearings in the *Li v. Waveland Ventures, LLC* case which were held on October 28, 2019. I informed him that I had not seen the documents or the transcript some of which were subject to a protective order.

8. On December 10, 2019, Mr. Kilroy sent a zip file containing the evidence submitted during the October 28, 2019 hearings in the *Li v. Waveland Ventures, LLC* case. I had some trouble with the zip file, because I always seem to have trouble opening large condensed files. I was unable to completely review these files until after Christmas. During the holidays, I was able to thoroughly review the documents sent to me by Mr. Kilroy.

9. On December 19, 2019 I appeared by telephone at the Scheduling Conference during which two lengthy discussions were held regarding amending the pleadings. At the time I had not yet reviewed the information in Mr. Kilroy's zip file. During the Scheduling conference I indicated that I did not have any intention of amending the Complaint but could not definitively state that that would not change in the future. The Court's Minute Order stated that: "[d]eadline to Amend Complaint is January 31, 2020" and "[u]ntil these cases become unconsolidated, the deadlines provided today shall apply to both this case and 19-cv-02637-RM-STV".

10. My review indicated that GP expressly agreed to make the loan non-recourse as to the principal loan amount, did not secure a meaningful personal guarantee, and secured the loan with individual units rather than the entire project. Furthermore, the loan contains a provision that SPOI can, after three years opt to repay the loan in full as well as another provision that allows SPOI the option to transfer title to the Collateral Units to the LLLP rather than repay the loan. The only reason for including this option is if the Collateral Units are worth less than the amount owed on the loan. No lender would agree to such a thing, as a lenders primary concern is repayment of their loan plus a return on the investment.

11. On November 5, 2010 the GP and SPO executed the Loan Agreement, the Operating Agreement and the Yield Enhancement Agreement. The Yield Enhancement Agreement (a copy of which is attached as Exhibit "A") states that.

> "In addition to the Interest Payments set forth in the Note and as a material inducement for CRCPS to make the Loan, Solaris hereby agrees to allow each Limited Partner (as hereinafter defined) to use a two (2) bedroom Collateral Unit for up to twenty one (21) nights each calendar year during the term of the Loan (the "**USE RIGHTS**"). Solaris understands and acknowledges that CRSPS is entering into the Loan Agreement in reliance on the Use Rights and would not have agreed to make the loan but for the Use Rights." [Yield Enhancement Agreement ¶ 1]

3

12. Mr. Hayes testified during the October 28, 2019 injunction hearing on page 14 line 18 – thru page 15 line 3 that the Use Rights for the Collateral Units be removed from the transaction at the request of the USCIS.  With the removal of this material inducement to enter into the Yield Enhancement Agreement serious questions exist as to whether the Yield Enhancement Agreement is enforceable for lack of consideration.  The Yield Enhancement Agreement is also the part of the transaction which provides that the LLLP is entitled to receive Rental Proceeds – **net of Rental Management Expenses.**  It is expected that Defendants will attempt to argue that this is somehow a benefit to the LLLP.   No legitimate lender would consider such a thing.  Rental proceeds are speculative let alone rental proceeds net expenses.   Furthermore the failure of the material inducement to enter into the agreement raises questions as to the enforceability of the Yield Enhancement Agreement.

13. A review of the Financial Statements produced by the GP's accountants indicates that over a five year period from 2013 - 2017, expenses totaled $19,951,869 against rental income of only $10,822,077.  (Copies of the annual financial statements are attached hereto as Exhibits "B", "C", "D", "E" & "F").  Most or all of these expenses have been paid to SPOI, one of its affiliates, GP or one of its affiliates.  Clearly, the right to receive Rental Income net of Rental Management Expenses is of no benefit to LLLP.

14. On April 17, 2012 SPOI executed the Promissory Note.   On April 17, 2015, exactly one day before SPOI became eligible to prepay the loan, GP and SPOI entered into the Agreement Regarding Collateral Units (a copy of which is attached as Exhibit " G").  This is the agreement wherein it states that:

> "In lieu of accepting the conveyance of title to the Eligible Units pursuant to a Collateral Unit Distribution, the Lender and Borrower have determined that it is desirable for Borrower to continue to hold record title to the Eligible Units." [Agreement Regarding Collateral Units ¶ E]

4

And,

> "Borrower has agreed to temporarily refrain from conveying title to the Eligible Units to Lender pursuant to a Collateral Unit Distribution on the condition that, for purposes of calculating interest under the Loan Documents, Borrower shall be deemed to have caused a Collateral Unit Distribution as of the Prepayment Date corresponding to each Eligible Unit and associated Loan Advance". [Agreement Regarding Collateral Units ¶ F]

Defendants contend that by retaining title and possession of the Collateral Units they are saving LLLP a myriad of taxes, fees and costs associated with the transfer, which is actually implied to be a sale of property in the proposed form transfer agreement [Exhibit A to the Agreement Regarding Collateral Units] referred to as a "Bill of Sale".

15. This agreement purports to absolve the Borrower of paying interest while allowing them to retain its equity and possession of the Property along with control of the inventory of units being listed. Furthermore, nothing in the loan documents states that the LLLP is responsible for the transfer taxes, property taxes, insurance and commissions. Nevertheless this new Agreement Regarding Collateral Units treats the transfer as if this were a sale transaction. So this is the first and only document that requires LLLP to pay for these transfer expenses.

16. It is difficult to understand the benefit conferred upon the LLLP in the Agreement Regarding Collateral Units. The concept that the consideration is that by agreeing to this arrangement the LLLP won't have to pay for the transfer expense is ridiculous, since the unsigned attachment to the agreement is the only place that purports to obligate LLLP to make such payments.

17. After executing the Agreement Regarding Collateral Units SPOI gets to maintain possession and equity in the Collateral Units, is absolved of paying interest on the loan, essentially writes of 50% of the principal obligation and forces LLLP to pay all the transfer costs in the event of a transfer. And of course the GP and/or its affiliates continue to collect a variety of fees identified as Net Rental Management Expenses. This is a completely unenforceable agreement

concocted by GP and SPOI to allow SPOI to avoid paying any transfer fees or costs after exercising the option to convey title to the Collateral Units in order to save $40 million. There is absolutely no benefit conferred upon the LLLP in the Agreement Regarding Collateral Units.

18. It became very apparent that despite having all of the leverage in the negotiations, the GP systematically and consistently signed amendments for which no consideration existed that conferred no benefit to the limited partners. This seems in keeping with statements made Waveland CEO, Rick Hayes in the September 2014 Edition of Colorado Business wherein he stated that "EB-5 investors are not return driven – the are return-agnostic. From that standpoint, it's a cheap source of capital for developers." (A true and correct copy of the article is attached hereto as Exhibit "H"). This public statement of distain for all EB-5 investors, implying that they never expect a return, just might explain some of these transaction documents.

19. It was clear that at the very least the Complaint would need to be amended to request a cause of action for declaratory relief as to the enforceability of some of the transaction documents if not the entire transaction. Additionally, because of the unusual benefits conferred upon SPOI and its owner; GP and its owners; a claim for alter ego liability also appeared to be necessary.

20. A great deal of discovery will be required, but based upon these transaction documents in conjunction with the Financial Statements of LLLP, it appears that thus far in this $82 million "loan" SPOI has borrowed $82 million dollars but will be repaid no more than $47 million. GP or its affiliates have received roughly $20 million in various Rental Management Fees and are claiming that more, maybe quite a bit more, is still due and owing. Meanwhile the limited partners who actually provided the $82 million are unlikely to see much of a return, if any, depending upon the amount GP claims in future Rental Management Fees. This is why the amendments are necessary.

21.     Contrary to the representations of Defendants these requests do not drastically change the pleadings, they merely help to shed some light on a very unusual transaction.

22.     Finally, between January 27 and 29, 2020 I attempted to confer with all counsel requesting that they consent to the pleading. (a true and correct copy of the conferral e-mail is attached hereto as Exhibit "I"). I engaged all counsel who responded. In my experience a conferral is where you lay out the legal authority that supports your position. The only meaningful response I was given was that I made a statement during the Scheduling Conference that unless I discovered new information I did not intend to amend the complaint.[1] No authority has been offered by either defense counsel that would justify denying my request that they consent to the pleading let alone a legitimate basis to oppose the Motion. Mr. Kilroy is always polite and makes an effort to at least engage, while playing his cards close to the vest. Mr. Gee on the other hand apparently believes that silence followed by a condescending remark is what passes for a conferral in this District. Suffice it to say I prefer Mr. Kilroy's style.

---

[1] At that time, and even to this date none of the Defendants have filed a responsive pleading.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 30th day of January 2020.

/s/ Brian P. Stewart_____
Brian P. Stewart
**Ardent Law Group**
4340 Von Karman Ave.,
Suite 290
Newport Beach, California 92660
Telephone: (949) 299-0188
Facsimile:  (949) 299-0127
bstewart@ardentlawgroup.com
Attorney for Plaintiffs Dianwen Cui, Lei Gu, Sufen Leng, Xue Mei, Zhou Mei, Yan Song, Lu Wang, Yue Wu, Zhuo Yang, Jingwen Zhang, Lei Zhang, Ling Zhang, Xiaohong Zhang, Qin Zhou Chunyu Zou, individually, and on behalf of Colorado Regional Center Project Solaris LLLP

## CERTIFICATION OF SERVICE

This is to certify that on January 31, 2020, a true and correct copy of the above and foregoing **Declaration of Brian P. Stewart** has been electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record.

*/s/ Brian P. Stewart*
For Ardent Law Group, P.C.