*Exhibit D to Loan Agreement*
*Yield Enhancement Agreement*

# YIELD ENHANCEMENT AGREEMENT

THIS YIELD ENHANCEMENT AGREEMENT (the "**Yield Enhancement Agreement**") is made effective into this 5th day of November, 2010, by and between COLORADO REGIONAL CENTER PROJECT SOLARIS, LLLP, a Colorado limited liability limited partnership ("**CRCPS**") and SOLARIS PROPERTY OWNER, LLC, a Delaware limited liability company ("**Solaris**"). Initially capitalized terms used but not otherwise defined below shall have the meanings ascribed to such terms under the provisions of the Loan Documents, as hereinafter defined.

## RECITALS:

A.   CRCPS has agreed to loan Solaris certain sums of money (the "**Loan**") in accordance with the terms, conditions and provisions of the Loan Agreement, Note and Loan Documents (all of which documents may be collectively referred to below as the "**Loan Documents**").

B.   The Loan proceeds are expected to be generated by investments into CRCPS from certain investors (the "**Investors**") pursuant to the EB-5 Immigrant Investor Regional Center Program ("**EB-5**").

C.   Subject to all of the terms, conditions and provisions set forth below and as a material inducement for CRCPS to make the Loan, Solaris has agreed to make certain Interest Payments to CRCPS in connection with the Loan as more specifically set forth in the Note and other Loan Documents.

D.   In addition to the Interest Payments and as a material inducement for CRCPS to enter into the Loan, Solaris has agreed to give CRCPS certain rights with respect to the Collateral Unit(s) as additional interest for the Loan (the "Additional Interest").

E.   The parties now desire to memorialize their mutual understanding concerning the Additional Interest by pursuant to this Yield Enhancement Agreement.

NOW THEREFORE, in consideration of the foregoing, the mutual promises set forth below and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereby agree as follows:

## AGREEMENT:

1.   **USE RIGHTS.**   In addition to the Interest Payments set forth in the Note and as a material inducement for CRCPS to make the Loan, Solaris hereby agrees to allow each Limited Partner (as hereinafter defined) to use a two (2) bedroom Collateral Unit for up to twenty one (21) nights each calendar year during the term of the Loan (the "**Use Rights**"). Solaris understands and acknowledges that CRCPS is entering into the Loan Agreement in reliance on the Use Rights and would not have agreed to make the Loan but for the Use Rights.

2.   **RULES OF USE.**   Solaris and CRCPS hereby agree cooperate in good faith to establish such reasonable rules, regulations and procedures as are necessary to administer the Use Rights (the "**Rules of Use**") as soon as reasonably practicable and in no event later than the Closing of the first Loan Advance. Solaris Borrower and Lender further agree to execute and deliver a recordable memorandum or other recordable document(s) evidencing the existence of the Use Rights established pursuant to this paragraph and, when applicable, the release thereof

3.   **OPTION TO DEMAND CONVEYANCE OF COLLATERAL UNITS.**   Notwithstanding anything to the contrary set forth in any Loan Documents, CRCPS shall have the

*Exhibit D to Loan Agreement*
*Yield Enhancement Agreement*

absolute right to refuse cash repayment of the Note and may, at any time after the applicable Prepayment Date, require Solaris to convey the Collateral Unit(s) securing any Loan Advance(s) to CRCPS in full satisfaction of such Loan Advance(s) (the "**Unit Demand Right**").  In the event of any conflict or inconsistency between this Yield Enhancement Agreement and the provisions of the Loan Documents, this Yield Enhancement Agreement shall supersede and control in point of conflict or inconsistency.

4.   **RENTAL PROCEEDS.** During the Term of the Loan, CRCPS shall be entitled to receive any and all Rental Proceeds (as hereinafter defined) collected in connection with the rental and occupancy of the Collateral Unit(s),  "**Rental Proceeds**" means all rents received in connection with the rental of any Collateral Unit(s) net of Rental Management Expenses (as hereinafter defined). "**Rental Management Expenses,**" means all taxes (including, without limitation, real estate taxes), dues and fees (including, without limitation, condominium association dues and fees), all management fees, housekeeping fees, administration fees and other reasonabe and customary costs, fees and expenses incurred in connection with the Collateral Unit(s) or the rental thereof.

5.   **LOAN ADVANCE ADJUSTMENT.** Notwithstanding anything to the contrary set forth in any Loan Documents, the parties acknowledge and agree that each Loan Advance shall be automatically increased by the amount necessary to provide Required Furnishings for the Collateral Unit(s) securing such Loan Advance. "**Required Furnishings**" means all furniture, accessories, linens, towels, silverware, wall hangings, and other similar items used to decorate or accessorize the Collateral Unit(s).  Any and all interest costs related to the Required Furnishings (including, without limitation, interest under the Promissory Note) shall be considered Rental Management Expenses.

6.   **MISCELLANEOUS.**

**Waivers and Amendments**.  Neither this Agreement nor any provision hereof may be changed, waived, discharged or terminated orally, but only by a statement in writing signed by each of the parties hereto.

**Governing Law**.  The parties agree to submit to the jurisdiction of the courts of the City and County of Denver, Colorado. This Agreement shall be governed by and construed in accordance with the laws of Colorado.

**No Right to Jury Trial**.  Each party hereby irrevocably waives, and agrees not to assert, by way of motion, as a defense, counterclaim or otherwise, in any action or proceeding with respect to this Agreement any right to a trial by jury.

**Successors and Assigns**.  Except as otherwise provided herein, the terms and conditions of this Agreement shall inure to the benefit of and be binding upon the parties hereto and their respective successors and assigns, heirs, executors and administrators.  Nothing in this Agreement, express or implied, is intended to confer upon any party other than the parties hereto or their respective successors and assigns any rights, remedies, obligations, or liabilities under or by reason of this Agreement, except as expressly provided in this Agreement.  Notwithstanding to the contrary set forth in any of the Loan Documents, Solaris shall have the absolute right (in Solaris' discretion) to assign this Yield Enhancement Agreement to Solaris' wholly-owned, bankruptcy-remote, single-purpose subsidiary (the "**SPE**"). Upon such assignment, all of Solaris' rights and obligations under the Loan Documents shall automatically and forever terminate and, thereafter, Solaris shall have no further obligation of any kind whatsoever with respect to this Yield Enhancement Agreement.  If Solaris assigns Solaris' interest in the Loan Documents to Solaris' SPE prior to the execution of this Yield Enhancement Agreement, Solaris' SPE shall be substituted for Solaris as the signatory hereof and construed to mean "Solaris" for all purposes hereunder.  A condition precedent to any such assignment shall be that any assignee of Borrower shall continue to

*Exhibit D to Loan Agreement*
*Yield Enhancement Agreement*

operate the Solaris Project, as defined in the Loan Agreement, to assure full construction expenditure to project completion and subsequent operation of the retail businesses, all in satisfaction of the factual assumptions set forth in the EB-5 Econometric Report prepared in connection with the Solaris Project. The purpose of this condition precedent is to assure the Lender that the related EB-5 investors' ability to obtain removal of conditions on their U.S. permanent residency will not be impaired by any such assignment of the Borrower's rights and obligations under the Loan Documents. The Lender shall have sole discretion to determine satisfaction of this condition precedent prior to any assignment by Borrower.

**Notices.** All notices required to be given under this Agreement shall be given in writing, may be sent by facsimile (unless otherwise required by law) or by electronic mail, and shall be effective when actually delivered or when deposited with a nationally recognized overnight courier or deposited in the United States mail, first class, postage prepaid, addressed to the party to whom the notice is to be given at the address shown below. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address.

| | |
|---|---|
| **SOLARIS:** | Solaris Property Owner, LLC<br>Attention: Legal Department<br>141 East Meadow Drive, Suite 211<br>Vail, Colorado 81657<br>P: (970) 479-7566<br>F: (970) 479-6666 |
| **CRCPS:** | Colorado Regional Center Project Solaris, LLLP<br>4643 S. Ulster Street, Suite 950<br>Denver, Colorado 80237<br>P: 720.554.9704<br>F: 720.554.9905 |

**Severability.** In case any provision of this Agreement shall be declared invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

**Titles and Subtitles.** The titles of the paragraphs and subparagraphs of this Agreement are for convenience of reference only and are not to be considered in construing this Agreement.

**Counterparts.** This Agreement may be executed in any number of counterparts, each of which shall be an original, but all of which together shall constitute one instrument.

**No Strict Construction.** The parties hereto have participated jointly in the negotiation and drafting of this Agreement. In the event an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the parties hereto, and no presumption or burden of proof shall arise favoring or disfavoring any party by virtue of the authorship of any of the provisions of this Agreement.

**Amendments.** This Agreement may only be amended and any waivers hereunder shall only be made with the approval of the Company and the Purchaser.

[Signature Page Follows]

THIS YIELD ENHANCEMENT AGREEMENT is made effective as of the date first above written by and between:

### SOLARIS:

**Solaris Property Owner, LLC,** , a Delaware limited liability company

By: Solaris Mezz, LLC, a Delaware limited liability company

By: _____
Peter Knobel, Manager

### CRCPS:

**Colorado Regional Center Project Solaris, LLLP,**
a Colorado limited liability limited partnership

By: Colorado Regional Center I, LLC, a Colorado limited liability company, general partner

By: _____
Chester Schwartz, Manager

D-5