# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-02443

Jun Li, Qi Qin, Yi Liu, Jie Yang, Yuquan Ni, Li Fang,
Zhongzao Shi, Fang Sheng,  et al.,
       Plaintiffs,

                                      Hon. Judge Raymond Moore
        v.                           Hon. Magistrate Scott Varholak

Waveland Ventures LLC, Colorado Regional Center I, LLC,
Colorado Regional Center LLC, Solaris Property Owner LLC,
Colorado Regional Center Project Solaris LLLP,
Solaris Property Owner I LLC, and Peter Knobel,
       Defendants.

---

## Li Plaintiffs' Motion For Mandatory Injunction (i) Forcing CRCPS to Call the Loan and Repay Investors, and (ii) Enjoining CRCPS's Plan to Distribute Collateral in Kind to Limited Partners

---

This case revolves around an $82,500,000 loan from Defendant Colorado Regional Center Project Solaris LLLP ("CRCPS") to Defendant Solaris Property Owner LLC and its successor ("SPO1").  The loan ("Loan") was made in installments from 2012 to January 2015 with five-year maturity dates, and each installment is now beyond its five-year due date.  The Loan documents permitted SPO1 to 'repay' the Loan by transferring title of condominium units at Solaris Vail held in the name of SPO1 to CRCPS, but this 'repayment by title transfer' was never fully effectuated.  As a result, SPO1 has only repaid a tiny portion of the Loan.

The unpaid Loan principal is $78,500,000 according to CRCPS's report to limited partners dated May 31, 2019.  Their 2018 financial report and tax return (prepared in 2019) say their main "asset" is an $82,500,000 "note receivable." So CRCPS - **by admission** - can immediately call the

overdue Loan balance from SPO1 and distribute the proceeds to the limited partners in cash, thereby giving the limited partners 100 cents on the dollar of their capital contribution and ending this case immediately. Yet they refuse to do so and refuse to explain why. Plaintiffs believe that if CRCPS refuse to do what every rational lender in the world would do, then this Court should force them to do it.

In the last seven weeks, CRCPS has been floating a comically pitiful scheme which involves assembling limited partners into groups that form their own business entities and then arranging for each such entity to get a transfer of title to a condo unit at Solaris Vail. This would suddenly transmogrify 150 Chinese investors spread across the world into owners and sellers of Solaris Vail condos (the same condos that CRCPS itself hasn't been able to unload in 3 years) and pitting them all against each other simultaneously, causing pure chaos. This scheme violates the Limited Liability Limited Partnership Agreement as well as the Colorado Uniform Limited Partnership Act, which only allow for repayment of capital contributions in **cash**, not in kind. Colo. Rev. Stat. 7-62-606.

There is a quick and easy route to ending this case: force CRCPS to call the loan, collect the principal, and pay back the limited partners. This is a fair and efficient way to end this dispute.

1. **CRCPS Admits it can Call the Loan and Pay the Limited Partners**

CRCPS' Modified Cash Basis Financial Report dated May 16, 2019 from Plante and Moran PLLC says that the main asset held by CRCPS is a note receivable in the amount of $82,500,000. This Financial Report is an admission by CRCPS under Fed. R. Evid. 801(d)(2)(C)

and (D) which says that a statement from an authorized agent is non-hearsay.  See Exhibit 1 at page 1.

CRCPS' federal tax return for fiscal year 2018 - submitted September 7, 2019 - says that CRCPS's assets include an $82,500,000 note receivable.  This tax return is an admission and not hearsay under Fed. R. Evid. 801(d)(2)(C) and (D).  See Exhibit 1 at pages 2-3.

For 8 months, the Li Plaintiffs have been asking CRCPS to stand behind their words and call the Loan.  As far back as July 1, 2019 - *before this case was filed* - attorney Litowitz sent a derivative demand letter to CRCPS and the first item on the list of demands was: "1.  Declare default and accelerate the Note from Solaris Property Owner LLC, sue on the Note and immediately use the proceeds to repay investors."  See Exhibit 1 at pages 4-5.  Attorney Stewart for the Cui Plaintiffs has informed attorney Litowitz that he sent an identical demand to CRCPS.  These demands have been met with mulish silence.

Attorney Litowitz emailed attorney James Kilroy on February 27 to ask why CRCPS didn't call the Loan if it was a "note receivable."  Attorney Kilroy refused to give a coherent answer other than telling Litowitz to look at the transcript of the October hearing, but in that hearing Magistrate Judge Varholak said that this case should be resolved as quickly as possible to give the highest return to limited partners.  See Transcript of October 22, 2019 Hearing at pages 4-5.  Calling the Loan is the simplest way to resolve this case and get the best return for limited partners.

Accordingly, Plaintiffs ask this Court for a mandatory injunction compelling CRCPS to eat their own words and treat the Loan as an asset and a note receivable, declare default, accelerate payment, and repay the limited partners.  That is what all lenders do when a loan is unpaid, and CRCPS should do it whether voluntarily or by court order.

The burden for a mandatory injunction is higher than a preliminary injunction which preserves the status quo. *Central Bancorp, Inc. v. Central Bancompany, Inc*., 386 F. Supp. 2d 1122 (D. Colo. 2019). The same 4-factor test applies (likelihood of success on the merits; irreparable harm; the balance of harms favors the moving party; and there is no adverse effect on the public), but in the context of a mandatory injunction the trial court must "more closely scrutinize" the elements of likelihood of success on the merits and balancing of harms. *Id.* at. 1136, quoting *O Centro Espirita Beneficiente Uniao Do Vegetel v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004).

Here, likelihood of success is nearly 100% because CRCPS has admitted themselves that the Loan is a note receivable and it is overdue and was $82.5 million at year-end 2018 and $78.5 million by mid-2019; **those are their own words**. The Plaintiffs have derivatively asserted the right of CRCPS to call the Loan. So the likelihood of collecting the debt is virtually guaranteed. Further, the Plaintiffs will suffer irreparable harm if CRCPS does not call the Loan, since they will otherwise get stuck in CRCPS's illegal scheme to have the limited partners form into groups and arrange for each group to take title to a unit of collateral and then sell it -- in other words to make a distribution in kind to the limited partners and place each limited partner in the real estate business in Colorado. This proposed scheme violates the law (see below) and deprives the limited partners of an easy path to receive 100 cents on the dollar by saddling them with the horrendous task of going into the real estate business and trying to get rid of unsellable, overpriced collateral units at perhaps 50 cents on the dollar at most. If the Court allows this scheme to go through, it will force the limited partners to sue the general partner and then pierce its corporate veil to recover, causing protracted litigation.

Magistrate Varholak said that he wants the parties to find an inexpensive solution where the limited partners get back the most possible money. Tr. October 22, 2019, at 4-5. Now is the opportunity: take CRCPS at their word and have them call the Loan, distribute the proceeds, and end this case.

2. **CRCPS's Proposal to Distribute Collateral in Kind to Groups of Limited Partners violates the Partnership Agreement and Colorado Law**

In response to questions from limited partners who cannot figure out why their capital contributions haven't been returned, CRCPS issue a document to limited partners on January 23, 2020 called "FAQ: Solaris Project Update." (the "Update"). See Exhibit 2 for the Update.

The Update informs the limited partners that a bulk sale of the collateral units is estimated to fetch $41.29 million on the remainder of the capital investment by the limited partners, i.e. about 40-50 cents on the dollar without giving any effect to inflation or deductions for management fees and other expenses. CRCPS then proposes an alternative to a bulk sale where CRCPS would arrange for the collateral units to be transferred from the current titleholder (SPO1) to various business entities set up by groups of limited partners, thrusting the limited partners into the position of setting up companies and being owners and sellers of Colorado real estate and having to sign a note payable to CRCPS for management fees:

> The Partnership will consider introducing LPs to each other who want to set up separate legal companies to pursue a transfer. However, once introductions are made it will be up to the LPs to organize and properly document the entity and negotiate operational structure and agreements among themselves, etc. The Partnership will not be part of the actual setup or operation of those units. . .

5

> The Partnership is willing to negotiate with investor groups formed by Limited Partners who want to redeem their Partnership interests in exchange for ownership of a unit. As in the past, such investor groups would be responsible for paying accrued management fees associated with each unit which is approximately $35,000 per limited partnership interest, as well as other closing expenses and terms to be discussed. Investor groups would have the option of paying these fees at closing or deferring payment by way of having the Partnership finance a two-year note to be paid at the earlier of resale of the unit or maturity.
>
> If a unit is transferred to a company owned by a group of limited partners of which you are a partner, the decision to sell the unit, what price to list the unit for and accept, and timing of ownership will be up to your company. Your group of limited partners may decide to own and rent the unit for some time or you may decide to list the unit for sale immediately. That decision would be up to your company. The price it is ultimately sold for will depend on market dynamics.

See Exhibit 2 at pages 1, 5, 2.

This proposal violates the Limited Liability Limited Partnership Agreement which has a special provision at Section 13.06 called "Rights of Limited Partners to Return of Capital Contribution." It provides a mechanism whereby limited partners can receive cash - and only cash - as a return of their capital contribution. The cash would be derived from CRCPS' sale of collateral. Section 13.06 says:

> The price for such purchase [CRCPS's repurchase of a limited partner interest] shall be equal to the Limited Partners' pro rata share (as determined from the Capital Accounts) of whatever price the Partnership is able to realize using its reasonable efforts to liquidate the Limited Partnership Property . . .

There is nothing in Section 13.06 that allows payment in kind, let alone dumping actual physical condo units on groups of limited partners and saddling *them* with the duty to sell the collateral, which even CRCPS has failed miserably at doing. The obligation is on CRCPS to liquidate the

6

collateral and give cash to the limited partners *pro rata*, which cannot be done under a system that gives differently valued properties to different groups of limited partners.

In conferral on this issue as required by local rules, attorneys for the Plaintiffs told CRCPS's counsel that their plan violates Section 13.06. Their response is that Section 13.06 which specifically covers the rights of limited partners to return of their capital contributions is overridden by Section 8.01(2) which allows the general partner broad discretion in dealing with limited partnership property. But this is nonsense, first because the collateral units that CRCPS wants to distribute to groups of limited partners are not even the 'property' of CRCPS since it doesn't hold the titles, but second, a specific provision of a contract overrides a general provision. *Frontrange Solutions USA, Inc. v. Newroad Software, Inc.*, 505 F. Supp. 2d 821, 831 (D. Colo. 2007), citing *Holland v. Board of County Com'rs of County of Douglas*, 883 P.2d 500, 505 (Colo. App. 1994)("Further, it is a basic principle of contract law that specific clauses of a contract control the effect of general clauses.") Section 8.01(2) is a boilerplate catch-all provision that does not control; Section 13.06 is a specific provision on return of capital contributions, and it does not authorize distributions in kind, only distributions in cash pro rata.

Further, Colorado law prohibits distribution in kind to limited partners unless the limited partnership agreement specifically authorizes distributions in kind, which we have just seen that it does not. Indeed, Colo. Rev. Stat. 7-62-605 mandates that distributions to limited partners must be made in *cash* unless otherwise set forth in the partnership agreement:

> Except as provided in writing in the partnership agreement, a partner, regardless of the nature of the partner's contribution, has no right to demand and receive any distribution from a limited partnership in any form other than cash.

This language (that the limited partner has "no right to demand and receive any distribution" other than cash) renders CRCPS's proposal a nullity. This is consistent with Section 13.06 of the Limited Liability Limited Partnership Agreement which says that limited partners will get a "price" resulting from CRCPS liquidating the collateral - and the word "price" means cash, not a portion of some business entity that a half dozen limited partners create to hold a condominium unit which they then have to somehow sell.  There is no language allowing a distribution in kind as a way of returning a capital contribution, and it violates Colorado law.  And that is just the beginning of the problems with CRCPS's proposal: for example, since the limited partners hold identical interests they should get identical payouts, but this cannot be achieved if different groups get different properties at different times.  And the scheme will flood the market with Solaris Vail condos owned by people all over the world.  And that is putting aside the securities law implications of CRCPS acting as a broker to set up investors to pool their limited partnership interests, or issuing notes to limited partners for payment of CRCP's fees.  The whole thing is a grotesque monstrosity dreamed up by CRCPS because they refuse to take the obvious step of calling the Loan.

As fiduciaries for the limited partners, CRCPS and its general partner should simply send a one-page note to SPO1 saying that the time is overdue to repay the Loan.  Then they can collect, distribute the proceeds to the limited partners, then everyone walks away.

To put it bluntly, this Court should make CRCPS eat its own words. They are telling everyone from their limited partners to the IRS to the State of Colorado that the Loan is outstanding as a note receivable.  Accordingly, they should collect it and distribute the proceeds to the investors.  Nothing could be simpler.

WHEREFORE, Plaintiffs ask for a mandatory injunction ordering CRCPS to call the Loan, and for CRCPS to abandon the plan to distribute collateral units to business entities set up by groups of limited partners they introduce to each other, in violation of the controlling partnership agreement and in violation of Colorado law.

Dated: February 29, 2020

Respectfully Submitted,

/s/ Douglas Litowitz
413 Locust Place
Deerfield, IL 60015
312-622-2848
Litowitz@gmail.com

CERTIFICATE OF SERVICE

I, Douglas Litowitz, certify that this Motion for Mandatory Injunction was served on all counsels of record by filing the same with the ECF system for the District of Colorado on February 29, 2020.

/s/ Douglas Litowitz