1

1              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF COLORADO
2
    Case No. 19-cv-02443-RM-STV
3   _____

4   JUN LI, et al.,

5        Plaintiffs,

6   vs.

7   COLORADO REGIONAL CENTER PROJECT SOLARIS, LLLP, et al.,

8        Defendants.
    _____
9

10          Proceedings before SCOTT T. VARHOLAK, United States

11   Magistrate Judge, United States District Court for the

12   District of Colorado, commencing at 1:33 p.m., March 2, 2020,

13   in the United States Courthouse, Denver, Colorado.

14   _____

15          WHEREUPON, THE ELECTRONICALLY RECORDED PROCEEDINGS

16   ARE HEREIN TYPOGRAPHICALLY TRANSCRIBED. . .

17   _____

18                      APPEARANCES

19          DOUGLAS LITOWITZ and BRIAN STEWART, Attorneys at

20   Law, appearing for the Plaintiffs.

21          STEPHANIE KANAN and TY GEE, Attorneys at Law,

22   appearing for the Defendants.

23   _____

24                      MOTION HEARING

25

```
 1              P R O C E E D I N G S

 2          (Whereupon, the within electronically recorded

 3  proceedings are herein transcribed, pursuant to order of

 4  counsel.)

 5          THE COURT:  This is 19-cv-2443.  Can I have entries

 6  of appearance, please.

 7          MR. LITOWITZ:  Doug Litowitz for the Li plaintiffs,

 8  Your Honor.

 9          THE COURT:  Good afternoon.

10          MR. STEWART:  Good afternoon, Your Honor.  Brian

11  Stewart for the Shao plaintiffs.

12          THE COURT:  Good afternoon.

13          MS. KANAN:  Good afternoon, Your Honor.  Stephanie

14  Kanan on behalf of Waveland Ventures, LLC, Colorado Regional

15  Center, LLC, Colorado Regional Center 1, LLC and Colorado

16  Regional Center Project Solaris, LLLP.

17          THE COURT:  Good afternoon.

18          MR. GEE:  Good afternoon, Your Honor.  Ty Gee

19  appearing on behalf of Solaris Property Owner, Solaris

20  Property Owner I and Peter Knobel sued in his individual

21  capacity.  With me at counsel table is Ryan Smith, general

22  counsel for the SPO entities.

23          THE COURT:  And good afternoon.

24          So currently pending before me is Document Number

25  131.  This is motion to alter the judgment.  My order on the
```

3

1   motion to strike that had previously been filed.  I've

2   already denied that to the extent it seeks -- it sought an

3   amendment on the motion -- on the order on the motion to

4   strike, but allowed briefing on the issue of whether the Li

5   plaintiff should be granted leave to amend their complaint.

6          And then the second document is Number 144.  This

7   is the motion for leave to file a second amended complaint by

8   the Shee (ph) plaintiffs.  Both have been responded to and

9   both have been replied to.

10          I will hear any further argument that either wishes

11   to make.  Since it's the various plaintiffs' motions, I'll

12   hear from the plaintiffs first are the ones to take the lead

13   on that.

14          MR. LITOWITZ:  Your Honor, Mr. Stewart has got a

15   plane to catch and he wanted to argue first, if that's okay

16   with you.

17          THE COURT:  That's fine.

18          MR. STEWART:  If that's works, Your Honor.

19          THE COURT:  Yeah, no, that's fine.  Yeah, no,

20   that's fine.

21          MR. STEWART:  And quite frankly, I don't know how

22   you -- you feel about this and I'll submit to whatever the

23   ruling is because I think it's pretty straightforward, and

24   I'm surprised -- sorry about that.

25          THE COURT:  Go ahead, no.

4

```
 1          MR. STEWART:  And I'm a little surprised that we're

 2   even here.  The complaint is not at issue.  I don't think

 3   there is any indication that there is bad faith.  There is no

 4   indication that anybody is being prejudiced.  The only thing

 5   that's even slightly interesting is their claim that they've

 6   already done a motion to dismiss the other complaint.  It's

 7   exactly the same with the addition of a dec relief cause of

 8   action.  So whatever work has been done can be used on a

 9   motion to dismiss this version of the complaint.  So that's

10   the only possibility someone has been prejudiced.

11          And so I would just submit to whatever Your Honor's

12   feeling is.  It's very straightforward, simple, you know,

13   it's a very new case, four months old, nobody has answered,

14   no one has done anything.

15          THE COURT:  And let me ask you, because I found --

16   Mr. Stewart, I found your briefing to be largely on point

17   here as to what the issues were, and I appreciate it.

18          The argument that was made in response to your

19   motion was that there were certain documents that were

20   publicly available, and you replied to that and I just want

21   to make sure that I understand that I'm correct on your

22   argument, which is they weren't publicly available, they were

23   filed under restriction, they would have been available to

24   the parties in the Li matter, but because this didn't get

25   consolidated, you did not have access to those documents.
```

 1          MR. STEWART:  That is correct, Your Honor.

 2          THE COURT:  Okay.

 3          MR. STEWART:  And to be fair, I didn't try to

 4   access them.  We weren't -- we weren't terribly interested in

 5   those hearings.  We weren't really -- I mean, we were aware

 6   of them, but we weren't paying attention to them.  And when I

 7   was told, oh, you need to go get them, they're public access,

 8   they were subject to a protective order, and we discussed

 9   that, and then later I was given the documents.

10          THE COURT:  Okay.  And that was in December of 2019

11   when you received those?

12          MR. STEWART:  Correct, correct.

13          THE COURT:  Okay, I'll take -- like I said, I've

14   read the briefing.  I'll take any -- if there is anything

15   additional you wish to say.  I don't have any questions.

16          MR. STEWART:  Again, this matter has been briefed

17   extensively by both sides.  I don't -- I'm not one to waste

18   your time and, you know, like I said, I do have to get to the

19   airport, so if we're going to have a lengthy argument, so be

20   it and I'll get a later flight.

21          THE COURT:  I don't think it's going to need a

22   lengthy argument.

23          MR. STEWART:  Thank you very much, Your Honor.

24          THE COURT:  Anything further on behalf of the Li

25   plaintiffs?

6

 1            MR. LITOWITZ:  Yes, Your Honor.  Basically, I also

 2    am a little puzzled about this.  Rule 15 says that leave for

 3    amend should be given freely in the interest of justice and

 4    that's what all of the case law says.  We can amend to match

 5    the facts.  There were facts that I did not know at the time

 6    of the second amended complaint, which I knew by the time of

 7    the third, and I put them into the third.  These had to do

 8    with certain times of valuations that had been done by the

 9    defendants that were sent to me by my clients and also the

10    transcript of this -- from this Court in October, which I did

11    not get until after I had already filed the second amended

12    complaint.  So there was new information there.

13            This has to be weighed against the burden on them.

14    They have not filed a single response, not one response of

15    pleading, and they knew that a new complaint was coming at

16    the end of January.  So like any defendant anywhere in the

17    world they had a month to answer a complaint for the first

18    time.  That makes them the same as everybody.

19            THE COURT:  Except --

20            MR. LITOWITZ:  That's not a substantial burden.

21            THE COURT:  Except that when your representation is

22    we're amending simply to add one plaintiff, it's fair for

23    them to anticipate that the remainder of the complaint is

24    going to look identical and the arguments with respect to the

25    plaintiffs who are already in the case are going to be

7

1    identical arguments for the new plaintiff who was added in

2    the complaint.

3             MR. LITOWITZ:  Well, I disagree with that because I

4    feel that --

5             THE COURT:  How so?

6             MR. LITOWITZ:  My disagreement is that once the

7    order comes in -- the order is what's definitive, not the

8    discussion beforehand.  I had talked to you about maybe

9    filing a class complaint.

10            THE COURT:  That's not -- that's not accurate.  You

11   need leave to amend the complaint.  When you file something

12   that says -- or when you represent in court a motion that I

13   would like to amend the complaint for the sole purpose of

14   adding a plaintiff and it's unobjected to, the order is

15   granting leave for that amendment.  Indeed, our local rules

16   have a redline version submitted with a motion to amend for

17   that very reason so that we can see what is going to be

18   added, so that they can look at it and see whether they are

19   going to oppose it or not.  That's part of our local rules.

20            And so, you know, I think when you make a

21   representation that this is what we're going to do and the

22   Court issues an order based upon that representation and then

23   the representation turns out to be wholly inaccurate, it's

24   fair for the Court to say, Well, then I'm not giving you the

25   relief that you initially sought.

```
 1              MR. LITOWITZ:  The relief being that you're not

 2    going to let my plaintiffs get the best possible complaint

 3    they can get?

 4              THE COURT:  Well, no.  What I'm saying is that when

 5    you make your representation that this is what you're seeking

 6    and then you say -- and then the order grants you leave to do

 7    that and you do something different, the order is not -- the

 8    order was based on a representation that you made and it's a

 9    false representation.

10              MR. LITOWITZ:  Okay.

11              THE COURT:  And so it's -- that's why I required

12    you to file a new motion and set forth the basis in law for

13    obtaining a new -- for filing a new complaint.

14              MR. LITOWITZ:  Okay, I got you, and that's why I

15    did it.

16              THE COURT:  Anything further?

17              MR. LITOWITZ:  Well, on this motion, no.  On some

18    other things, yes.

19              THE COURT:  The only thing pending before me is

20    this motion.

21              MR. LITOWITZ:  True.

22              THE COURT:  Okay.

23              MR. LITOWITZ:  Thank you, Your Honor.

24              THE COURT:  Let me hear from defendants.

25              MS. KANAN:  Thank you, Your Honor.
```

9

1        THE COURT:  And before defendants argue, I will

2   say, if it hasn't already been clear from my comments today

3   and from the order that I issued, I don't like the way this

4   went down.  I don't like when there is a representation to

5   the Court that we are seeking leave to amend to add one

6   plaintiff and then the amended complaint without seeking any

7   new motion is entirely different from it as happened with the

8   Li plaintiffs, not the Shee plaintiffs, but the Li

9   plaintiffs.

10        I don't like how that looks, but Rule 15 is a

11   liberal pleading standard and we haven't set a deadline yet

12   for amendment of pleadings so we're not even to Rule 16.

13        I think what with the Shee plaintiffs, at least,

14   they probably even survive Rule 16 because Rule 16 requires

15   good cause, which the Tenth Circuit has held to be learning

16   of new facts through the discovery process, which it sounds

17   like that's what happened with them.  So I think with the

18   Shee plaintiffs, they would probably even be able to survive

19   a Rule 16 analysis, but they don't even need to get there and

20   they're at the Rule 15.

21        And while I appreciate that the work has likely

22   went in to the motions to dismiss, again, with respect to the

23   Shee plaintiffs, it's adding a new claim, so you're not

24   redoing anything, you're just addressing the new claim that

25   was being added in there.

10

1          So I -- I want to throw that all out there so that

2    you can address it in your argument.

3          MS. KANAN:  Thank you, I appreciate that.

4          I think with respect to counsel's argument that it

5    is new information and what the Court just stated on the

6    record about the case being relatively new for them and that

7    they received this new information, it appears that that

8    explanation is a little bit misleading.  I'm not aware of the

9    entire case being restricted prior to even the motions

10   hearing.  We didn't even have a protective order in place at

11   that point in time and there were filings in as early as

12   September and December that had attachments with affidavits

13   from Rick Hayes (ph) and Peter Knobel.  It had some of the

14   relevant agreements attached to them as well.

15         So to the extent that the Shee plaintiffs are now

16   contending that they didn't have access to that information,

17   I think really the only thing that they didn't have access to

18   was a letter of intent that was placed under restriction and

19   the transcript itself, but based on the review of the actual

20   amendments, it doesn't appear that any of the -- any of the

21   amendments are based on either of those two documents.

22   They're based on the agreements which they had access to.

23         THE COURT:  Well, but you're asking them to sift

24   through the record of a lengthy record, we're already up to

25   165 ECF filings in a case that has only been going on since,

1  you know, for five months, to sift through there to try to

2  find -- in a case that's not theirs, to try to find relevant

3  information in a case that is theirs, and it's hard for me to

4  really fault them for not doing that given that discovery has

5  been stayed and we would expect them to obtain some of this

6  information through the discovery process.

7       So I'm not sure that I can find fault, and

8  certainly I'm not sure I can find a lack of diligence rising

9  to the level of barring a Rule 15 amendment because they

10  didn't sift through a hundred and -- it wasn't 165 at the

11  time, but there probably was 100 pleadings in a case that

12  they weren't a party to, and some of which were restricted,

13  including the ones you would initially want to go to which is

14  the transcript of a hearing that was restricted.

15       MS. KANAN:  Right, and I understand the point that

16  you're making and that the fact that this has been stayed and

17  that it wasn't their case, but I would also just reiterate

18  the fact that the information was passed to counsel prior to

19  the December 19 hearing and at no point in time was there any

20  sort of comment made by Mr. Stewart that, Look, I just

21  received a zip file with several documents that I haven't had

22  a chance to look at and I can't access until, you know, after

23  the holidays, there was no mention of that.

24       And, you know, I think that's revealing and I think

25  it places them somewhat in the same category as the Li

1    plaintiffs.  There could have been some sort of indication at

2    that point in time that, you know, I'm not making any sort of

3    guaranty because we just got new information and we might

4    amend based on that new information.  There was no mention

5    whatsoever.

6            THE COURT:  I get that, but at least the Shee

7    plaintiffs went through the correct process, which is they

8    would be on a deadline for -- for filing as of right an

9    amended complaint, so they filed a motion to amend under Rule

10   15, you responded, they replied.

11           What bothered me about the Li plaintiffs was they

12   didn't go through that process.  They instead relied upon an

13   order that I gave on the theory that it was unopposed, on the

14   theory that the only thing being added was a single

15   plaintiff.  And so it's hard for me to fault the Shee

16   plaintiffs for saying we only anticipate filing an amendment

17   and then learning new information and saying, Okay, well, now

18   I've got new information, I am going to seek leave to amend.

19           MS. KANAN:  Understood.  I guess the final point

20   that I would make with respect to the Shee plaintiffs is

21   based on the hearing that we had last week in front of Judge

22   Moore who, in fact, found that the complaint that's operative

23   as of right now is defective as to their derivative claims.

24           THE COURT:  I'm aware of that hearing.

25           MS. KANAN:  And the same issue exists for the

13

1    proposed amendment that's before the Court today.  So to the

2    extent that there has been no correction of that issue, I

3    think an amendment here would be futile.

4            THE COURT:  Okay, here is what I'm going to do.

5            MR. GEE:  Your Honor.

6            THE COURT:  Yes.

7            MR. GEE:  I would like a moment.

8            THE COURT:  Sure, go ahead.

9            MS. KANAN:  And may I just briefly address the Li

10   plaintiffs as well if you're going to do both?

11           THE COURT:  Sure.

12           MS. KANAN:  With respect to the Li plaintiffs, I

13   think the prejudice here that our clients have suffered is

14   significant.  This is not just there has been no responsive

15   pleading filed, no harm, no foul.  This is impacting the

16   operations of the limited partnership on a daily basis.  The

17   amount of pleadings alone and filings alone have obviously

18   taken away from the operations of the business and this has

19   already been going on for six months.  This is significant.

20           And so despite the fact that, you know,

21   procedurally we haven't reached the, you know, at issue date,

22   there has been no responsive pleading, it's -- it's

23   disingenuous to say that there has been no prejudicial impact

24   on our clients because there absolutely has.  And what Your

25   Honor has already stated on the record about relying on the

14

1  fact that the only amendment at that point would to be add

2  new plaintiffs, there was no mention whatsoever about

3  changing the substance, which just looking at the redline

4  alone, you can see how significant those changes are.

5        And I think the one thing I would -- I would add,

6  the information that was changed and the amendments that were

7  made again was all based on information that counsel had at

8  the time we appeared on December 19, and he appeared at the

9  hearing in October.  He received all the pleadings, all the

10 attachments, all the exhibits.  He could have made all of

11 those changes prior to that date and chose not to.

12       And frankly, the timing is very suspect, because it

13 was literally the day after we filed the response to their

14 motion to disqualify Snell & Wilmer, and it seemed very

15 reactive to that motion and it was ahead of the deadline of

16 January 31 and clarified the issue of whether or not they had

17 a properly pled derivative claim.

18       So I think the motion should be denied for various

19 reasons, and at a minimum I think attorneys' fees should be

20 awarded, at least with respect to the Li plaintiffs, because

21 the CRC entities have spent a great deal of time and expense

22 relying on statements that counsel made back in December.

23       THE COURT:  Thank you.

24       MR. LITOWITZ:  May I respond to that?

25       THE COURT:  No.  I want to hear from remaining

15

1    defense counsel.  Mr. Gee, go ahead.

2              MR. GEE:  Thank you.

3              Well, Your Honor, this litigation began August,

4    September of 2019 when Mr. Stewart says that we've only been

5    here for four months.  That's not a correct counting of

6    months.  We've been here for six months with this Court.

7    Since then there have been seven iterations of a complaint,

8    three by the Shee plaintiffs, four by the Li plaintiffs.

9              In response to Mr. -- Mr. Litowitz's last

10   complaint, the one that's before the Court now, we identified

11   numerous issues, legal issues with regard to the complaint,

12   and when we opposed the addition of a single plaintiff, the

13   Court correctly noted that we had raised 12(b)(6) issues, and

14   I think that was a valid criticism in the sense that it was

15   the addition of a single plaintiff.

16             We are now talking about a wholesale change to the

17   currently operating Li plaintiff's complaint, and it is

18   appropriate, as we pointed out in our papers, for the Court

19   on a Rule 15 motion to consider 12(b)(6) issues.

20             THE COURT:  I agree, the statement at the end of

21   the Li's reply brief criticizing your response as a premature

22   Rule 12(b)(6) is inaccurate, that's the standard I have to

23   apply in determining futility.

24             MR. GEE:  Yes.

25             THE COURT:  I agree with you, you don't need to

16

1    convince me of that.

2         MR. GEE:  Okay.  Well, Your Honor, we -- we have

3    these -- we've had these seven complaints and we learned on

4    Thursday there is no end in sight.  The Court is already

5    familiar with Judge Moore's ruling stating that both of the

6    current operating complaints from the Shee and Li plaintiffs

7    violate the provisions requiring verification of derivative

8    claims.  Notably, as the plaintiffs' counsel themselves

9    recognized, so to do their proposed amended complaints

10   violate that provision.

11        MR. LITOWITZ:  That's incorrect.

12        MR. GEE:  So on Friday, the day after Judge Moore

13   pointed this out, we have a communication from Mr. Stewart

14   saying, Ladies and gentlemen, how about we vacate Monday's

15   hearing so that I can withdraw my current pending motion to

16   amend and file a new motion to amend to propose yet another

17   complaint.

18        Your Honor, this case is a story of plaintiff

19   wandering in a rowboat in the ocean looking for a viable

20   claim for relief against my clients.  It's about time, Your

21   Honor, we suggest, that they pull in the oars or the Court

22   should take their rowboat away.  I see no end to what's going

23   on.  We pointed out back in November that -- that

24   Mr. Litowitz kept saying that he had 1, 2, 30, 50 plaintiffs

25   and it's still coming.

17

1          Now, to say that there is no prejudice to the

2     defendants, that is an overstatement by leaps and bounds.

3     Since August of 2019 my clients have been paying me to look

4     at their complaints and to litigate all the motions that they

5     have been filing.  That's prejudice and there --

6          THE COURT:  The only issue before me is the

7     prejudice from an amendment.  If -- I agree, I mean, as I

8     indicated, we're in ECF Number 165 on a case that has been

9     out there six months.  I completely agree that there has been

10    way too much rancor in this case and not enough attempts to

11    get something done with this.  I made that clear months ago

12    at the hearing, and it has not gotten any better, it has

13    gotten worse.

14         But the question before me is what -- is there

15    undue prejudice as a result of allowing the amendment here?

16         MR. GEE:  Yes.

17         THE COURT:  And so far the only prejudice that has

18    been articulated, at least in the written portions, is we

19    began working on a motion to dismiss and we (inaudible).  And

20    I agree, that's some prejudice, but under Rule 15 Courts,

21    including myself, routinely grant leave to amend even after

22    the motion to dismiss has been filed oftentimes after it has

23    been decided.  It's a -- it's a dismissal without prejudice

24    identifying the flaws in the motion, or excuse me, in the

25    complaint and granting leave to refile.

18

1          And especially when we're talking about a $40

2    million lawsuit, it's hard for me to say that it's undue

3    prejudice from the -- I don't know what you spent so far, but

4    from, you know, the thousands, as opposed to millions of

5    dollars, in drafting the motion, especially since I'm sure

6    some of it can be recrafted into a renewed motion.

7          Let me tell the parties, and I'll allow any further

8    argument, what my inclination is at this point, because I

9    agree, this case is stayed, we are now six months into the

10   case and I foresee, based upon Judge Moore's comments on

11   Friday where we are going to be, which is going to be a new

12   motion to amend because he has essentially indicated that

13   based upon his review there is no derivative claim here.

14         I think what -- again, I think what makes the most

15   sense, I want to move this case forward, and I do think it

16   would be an abuse of my discretion to deny leave to amend

17   based upon the prejudice that has been set out here today,

18   and even if I agree, and it is a bit of an odd situation for

19   me to be in because I'm the referral judge and it's Judge

20   Moore who has indicated that he thinks it's going to be

21   futile with the current operative complaint, I know where

22   we're going to, which is only another motion to amend to try

23   to cure the default, the problems that Judge Moore has

24   identified.

25         I don't want any additional prejudice to the

19

1    defendants, but I also think it would be abuse of discretion

2    on this record for me to deny leave.

3            I think what makes sense is for me to stay any

4    further briefing -- to allow the leave to amend, make these

5    the new operative complaints, to say any further briefing on

6    any responsive pleading to the current operative complaints

7    for four weeks, until March 30, because I don't want you to

8    start working on your motion to dismiss if we're going to get

9    another motion to amend coming down the pike here.

10           And set a deadline -- well, I'll go even a little

11   bit further.  I'll give you -- I'll stay the response to the

12   current operative complaint until April 6.  I will set a

13   deadline for amendment of pleadings and joinder of parties of

14   March 23, 2020.  What that does is it requires from that date

15   further good cause to amend the complaint.

16           Now, I know discovery is stayed.  If during the

17   process of discovery plaintiffs learn of new information that

18   they didn't know about before and based on that wish to file

19   a, whatever we're on now, fourth, fifth, sixth amended

20   complaint, that's good cause, the Tenth Circuit has

21   recognized that as good cause.  But if it's just simply come

22   April they're still fumbling around trying to figure out how

23   to properly draft a derivative complaint, that is not good

24   cause or is arguably not good cause.  I think it's time to

25   get us to Rule 16 standards rather than to Rule 15.

20

1            So what I'm inclined to do is grant both of these

2    motions, stay a responsive pleading until April 6 and set a

3    deadline of March 23 for amendment of pleadings or joinder of

4    parties.  If they move to amend prior to March 23, based upon

5    Judge Moore's comments, again, Rule 15, I would be inclined

6    to allow the amendments, but after that March 23, we need

7    good cause.

8            So let me -- I'll allow -- since you're up there,

9    I'll allow to you respond to that and then I'll take any

10   further argument.

11           MR. GEE:  Sure, Your Honor.  Let me see if I can

12   persuade you to go in a different direction.  Let's get to

13   the merits of the Rule 15 motion.

14           The Court has discussed undue prejudice.  I want to

15   discuss the other factors in Foman vs. Davis.  One factor is

16   undue delay.  We're six months in with no -- with no end in

17   sight to these amended complaints.  That's undue delay, six

18   months and we haven't -- we don't even have a deadline to

19   file the so-called responsive pleading that Mr. Litowitz

20   suggested we haven't filed.

21           We haven't filed it not because we haven't wanted

22   to file it, we haven't filed it because we can't even settle

23   on a complaint, they can't settle on a complaint.  And every

24   complaint that has filed to date, I include all seven

25   iterations of the complaint.

1          MR. LITOWITZ:  Don't point at me.

2          MR. GEE:  And this goes to the issue of the failure

3    to cure and the -- and the amendment futility.  It is true

4    that this Court has yet to issue a substantive order on what

5    they must cure.

6          MR. LITOWITZ:  Your Honor, I don't like being

7    pointed at.

8          THE COURT:  Mr. Litowitz, I don't see him pointing

9    at you.  I see him having his hand raised.

10         MR. GEE:  It is true that the Court has not issued

11   an order directing these parties to -- to cure something in

12   their complaint, and the reason the Court hasn't seen that is

13   because I've been doing the curing, I've been telling them

14   what is the problem with their complaints, and I did so again

15   in response to the most recent motion to amend.  I spent a

16   significant amount of time pointing out the problems in their

17   complaint.

18         Are they going to fix it?  I don't think they will.

19   Do you know why, Your Honor?  It's because they can't fix it.

20   If you look at every iteration of these gentlemen's

21   complaints, not one of them answered any of these questions.

22   What did Peter Knobel do individually?  Let's only take the

23   well-pleaded allegations.  What did Mr. Knobel do to earn

24   himself, for example, for Mr. Litowitz, the civil theft

25   claim?  What did the Solaris Property Owner entities do other

1    than to comply with contractual obligations that they had

2    with the limited partnership?  What did they do?

3            And these complaints nowhere do they point out, in

4    fact, you will not find a single allegation that any of the

5    SPO entities or Mr. Knobel had a single contact with any one

6    of the plaintiffs.  And so this -- this kind of gets to the

7    point about the amendment futility, Your Honor.

8            I'm going to say the same thing in the motion to

9    dismiss if I can ever get a deadline, but as the Court noted,

10   in Rule 15 I have an opportunity to point out problems with

11   the proposed amendments, which is what I attempted to do in

12   response to their motion to amend, and there are significant

13   problems with -- with these proposals, these proposed

14   amendments to the current operating complaint.

15           They can't plead a viable claim, and so what --

16   what I'm suggesting that the Court do is that the Court take

17   a look, really take a look at these complaints filed by the

18   plaintiffs and see whether they actually do -- I'm talking

19   only about the proposed amendments -- to see if the proposed

20   amendments actually do state a claim for relief against any

21   of my clients.

22           Now, I want -- I want to talk specifically about

23   two amendments.  Mr. Stewart said the only thing we did in

24   our proposed second amended complaint was add declaratory

25   judgment claim.  Well, that's not true.  If the Court

23

1    compares the amended complaint with the second amended

2    complaint, there are substantial changes.  For example,

3    although they did not redline Mr. Knobel's name in the

4    capture, the Shee plaintiffs have added Mr. Knobel personally

5    to -- to the proposed second amended complaint.  Based on

6    what?

7           Look at, Your Honor -- we invite you to look at the

8    allegations relating to Mr. Knobel by these Shee plaintiffs.

9    What well-pleaded allegation do they have to plead that

10   Mr. Knobel participated in, say, federal securities fraud?

11   They can't even identify a single contact, any contact

12   whatsoever, even a carrier pigeon, nothing, Your Honor.  So

13   what is the basis for forcing Mr. Knobel to defend against a

14   second amended complaint?  He would have to pay my attorney

15   fees.

16          And let's get to the Li plaintiffs.  I just want to

17   talk about one of their proposed changes.  They have -- they

18   have an allegation that Mr. Knobel personally engaged in

19   civil theft.  Civil theft based on what?  Do they have a

20   single allegation that Mr. Knobel intended to deprive without

21   authorization the plaintiffs of any amount of money without

22   authorization?

23          MR. LITOWITZ:  Yes.

24          MR. GEE:  Not one.  Show me the well-pleaded

25   allegation that -- where that takes place.  Nothing.  He is

1    the manager of two LLCs.  Where did he put money in his

2    pocket?  It doesn't say.  And yet he -- he has pleaded -- he

3    has been pleaded as a defendant in this case.

4          Last thing I'm going to say, Your Honor, I don't

5    work for these two gentlemen, but I feel like I am.  Every

6    time they put out a shoddy complaint, one that does not state

7    a claim, I'm required and my clients are required to pay me.

8    Maybe -- maybe these plaintiffs should be paying me to look

9    at their complaint and tell them where the defects are.

10         It's extremely frustrating for us, Your Honor, for

11    us to point out the problems every time there is a new

12    iteration of the complaint only to have them, like the

13    Charlie Brown and Lucy, have me kick a football that I never

14    get to kick at it, because, guess what, thank you for

15    pointing out our defects in our complaint, let me try to fix

16    them again, and invariably they do not.

17         MR. LITOWITZ:  May I speak, Your Honor.

18         MR. STEWART:  No, no, I can speak.

19         THE COURT:  There is no need.

20         MR. LITOWITZ:  I do have something --

21         THE COURT:  You don't need to.

22         MR. LITOWITZ:  He said some things that were

23    incorrect.

24         THE COURT:  You don't need to respond.

25         MR. STEWART:  Your Honor, I'm (inaudible), but if I

25

1    can make one statement that I think would be helpful.

2              THE COURT:  There is --

3              MR. STEWART:  Okay, it doesn't matter.  The

4    conferral process, and my understanding of it, is not being

5    followed.  And, you know, I understand that there is a

6    definite established relationship with Mr. Litowitz and

7    opposing counsel that preexisted our filing.  I have tried

8    very hard to confer and gotten stonewalled by opposing

9    counsel every time, and every time they've asked me for

10   anything, I've agreed, I've stipulated.

11             And most of the problems -- Mr. Dee [sic] is trying

12   to --

13             MR. GEE:  Gee.

14             MR. STEWART:  I'm sorry, Mr. Gee, I have -- he

15   hasn't done anything with my complaint until Friday, and I

16   agree, there are a couple of minor problems that are easily

17   correctable, and so I reached out and said, Hey, do you want

18   to keep kicking this thing down the hall, because they're

19   going to bring a 12(b)(6) motion and you're going to say that

20   needs to be verified and I'm going to have the verifications

21   ready to go, and I don't think that it's -- it would be

22   proper to not have us do that.

23             So I'm just saying, well, I would stipulate to it

24   and just, you know, kind get along and litigate the real case

25   and stop doing what we're doing.

1          THE COURT:  I would love to see that.

2          MR. STEWART:  I would love to see it too, Your

3    Honor, and what I'm telling you, it's hard because I sit here

4    and there is this preexisting relationship that I'm aware of,

5    that I'm not part of, and I have tried very hard to work the

6    way I work in the district courts in California where I talk

7    to opposing counsel and we say, hey, you know, this is what

8    we're going to do with the pleadings, let's get this thing

9    moving.

10          And to be fair, Ms. Kanan's office is always

11   polite, but, you know, they're kind of hiding the ball on

12   some of this stuff, which again, we screwed up, I'm not going

13   to say we didn't.  Mr. Gee never confers with me at all.

14   It's hilarious for him to sit here and include me in that --

15   in that grouping because he doesn't respond.

16          THE COURT:  Well, I can tell everybody where this

17   is going to go, and I've done it in very few cases and it's

18   going to be especially painful for the parties in this case

19   because you all are from different states in that when I have

20   an especially cantankerous case such as this -- and I want to

21   sidestep for a moment because this is -- I want to express my

22   frustration to some extent.

23          I practiced for 15 years in the federal public

24   defender's office in this district.  I had cases where

25   literally my clients' lives were on the line, whether they

1   would ever see the light of day again, and I could litigate a

2   case with vigor and zeal for my client and not constantly

3   throw the other attorney under the bus.

4          And my experience now, in three-plus years as a

5   judge, is 95 percent of the cases work their way through and

6   there may be an occasional discovery dispute or an occasional

7   thing where I need to get involved with where I get it, you

8   need resolution.  And the other 5 percent of cases take up

9   all of my time with things that have no need for everybody to

10  be having their clients spend money on.  And it's in those

11  cases when they get especially bad that once we get to

12  discovery and essentially I take over the roles of this case

13  through a discovery process is I start requiring everybody to

14  meet and confer in person.

15         And that's where this case is heading.  And, you

16  know, the rancor in this case, I mean, just Document Number

17  45 begins -- and this isn't even against counsel, it's

18  against me.  The Court violated its own rules, and it goes on

19  to then cite the local rule and stops one sentence before, it

20  says I could do exactly what I did, which is I don't need to

21  wait on a response, I can issue an order.  I don't know that

22  I've ever seen anything quite like that, and it's disturbing

23  about where this case is going.

24         And you are going to end up spending all of the

25  money that's left in this project, which is an amazing amount

1   of money, fighting, and I don't think it's doing anybody any

2   good and I've expressed that at prior hearings.

3          Under Federal Rule of Civil Procedure 15(a)(2) the

4   Court is freely allowed amendment of the pleadings when

5   justice so requires.  To grant or deny of an opportunity to

6   amend is within the discretion of the Court, but, quote,

7   outright refusal to grant a leave without any justifying

8   reason appearing for the denial is not an exercise of

9   discretion, it is merely abuse of that discretion and

10  inconsistent with the spirit of the federal rules in Foman v.

11  Davis, 371 U.S. 178 at 182.

12          Quote, refusing leave to amend is generally only

13  justified upon a showing of undue delay, undue prejudice to

14  the opposing party, bad faith or dilatory motive, failure to

15  cure deficiencies by amendments previously allowed or

16  futility of amendment.

17          Here, defendants have argued several of these,

18  they've argued undue delay, undue prejudice.  And to some

19  extent I think that there has been delay and I think that

20  there has been prejudice.  As Mr. Gee I think correctly

21  argues, we're six months into this case and we don't have an

22  operative complaint.  And certainly the defendants have had

23  to spend time reviewing the multitude of complaints that have

24  come in and to analyze whether or not they sufficiently state

25  a claim and there is certainly some prejudice as a result of

1    that.

2          There is also some delay in the fact that, as I

3    indicated, we're six months into this case and we still don't

4    have an operative complaint.  Nonetheless, in a case that

5    involves $40 million, I think it would be an abuse of my

6    discretion to deny leave to amend solely based upon that.

7          The other argument is futility, and here it's a

8    closer call, especially since Judge Moore, who is a presiding

9    judge on this case, has indicated that he does not believe

10   that the derivative claim succeeds, but -- and that's

11   important because an amendment is futile when it does not

12   survive a motion to dismiss and it's Bituminous Casualty v.

13   Hartford Casualty Insurance Company, 2013 Westlaw 6676157.

14         And so in theory, I could deny this as futile and

15   prohibit leave to amend; however, what would undoubtedly

16   happen in this that case is we would see another, in fact

17   what I think we're going to see irregardless, is we're going

18   to see another motion to amend coming down the pike here that

19   will attempt to fix the problems with the current complaints

20   or the complaints sought to be added here.

21         And given that all I can do, because this case is

22   no longer with me on consent, is issue a recommendation that

23   the leave to amend be denied as futile.  By the time the --

24   any objection to my recommendation is briefed, we're going to

25   see the new motion to amend, and I think all it's going to do

30

1   is waste everybody's further time with objections to my

2   recommendation and with yet another motion to amend and any

3   responses to that.

4           And moreover, it's my general policy following

5   cases from the -- from this district, that the better policy,

6   rather than deciding a futility issue on a motion to amend,

7   is to instead allow the amended complaint and then permit a

8   motion to dismiss.

9           And there is a number of cases that approve that

10  approach, Standard v. Cardwell (ph), 2011 Westlaw 1235414, a

11  District of Colorado opinion from 2011; Steel Domestic Sales

12  LLC v. Steelwise, 2008 Westlaw 2520423, a District of

13  Colorado opinion from 2008.  The latter from Judge Ebel says

14  that the futility argument, quote, seems to place the cart

15  before the horse.

16          The Standard case goes on to say that the Court

17  preserving its scarce resources will not at this time

18  consider the question whether the amendment should be denied

19  on grounds of futility because they fail to state plausible

20  claims for relief.  The Court will consider that question if

21  and when defendants file a motion to dismiss on those

22  grounds.

23          That seems particularly apt here given that the

24  only thing I can do is issue a recommendation that leave not

25  be permitted to amend, which as I said, is going to then lead

1    to further objections and almost certainly a further motion

2    to amend, and I think that that is a waste of not only the

3    Court's resources, but also the parties' resources.

4              Nonetheless -- so I will grant Numbers 144, to the

5    extent it seeks leave to file another amended complaint, and

6    1 -- excuse me, 131, to the extent it seeks leave to grant --

7    to file another amended complaint, and 144 in its entirety,

8    since the only relief requested was to file a second amended

9    complaint, but I do want to start getting into Rule 16

10   territory.

11             And so I am going to stay the response to the now

12   operative complaints, and I will instruct the Clerk of Court

13   to file the proposed amendment, or to accept the proposed

14   amendment complaints to 144 and 131 and those shall now

15   become the operative complaints.

16             I will stay the defendant's response to those

17   operative complaints until April 6, 2020 and I will set a

18   deadline to amend pleadings for March 23, 2020.  Again, what

19   does is it puts us into Rule 16 land.  It doesn't mean if a

20   new discovery is found that plaintiffs cannot rely on that

21   new discovery for a new complaint, but it does mean they're

22   willing to show good cause after that date for any filing any

23   newly amended complaints.

24             Is there any question about my order or anything

25   further that we can do?

32

1           MR. LITOWITZ:  Clarification, Your Honor.

2           THE COURT:  Sure.

3           MR. LITOWITZ:  My third amended complaint -- my

4   third amended complaint had a verification on it, and so I

5   was a little bit confused as to why the lack of a

6   verification was Judge Moore's lynchpin for saying that the

7   Qee (ph) plaintiffs had a defective complaint when mine did

8   have a verification.

9           THE COURT:  You would have to ask Judge Moore that.

10  That's -- he was the one who made those comments, not me, so

11  you would have to ask Judge Moore that question.

12          MR. LITOWITZ:  Can I say one more thing, while I

13  just came in from Chicago?

14          THE COURT:  Sure.

15          MR. LITOWITZ:  So give me a little bit of a break.

16          This case has actually been going on since July and

17  that was the time at which I sent a derivative letter to the

18  defendants saying, Hey, why don't you pay back the money you

19  borrowed.  You have a note, which is outstanding, you're

20  telling people it's $78.5 million, pay it back, we'll give

21  the money back to the clients and we all walk away.  That's

22  how the case ends.

23          That's what my new motion is about.  They said the

24  motion -- on their taxes, and on their finances that they're

25  owed a note for $78 million, pay it, pay it and we're out of

1    here.

2          THE COURT:  My guess is they don't have it and

3    therein lies the problem, but you're excused.

4          MR. STEWART:  Thank you for your patience.

5          THE COURT:  You're welcome.  Have fun with this

6    case.

7          MR. LITOWITZ:  You had said earlier, and I thought

8    your spirit was absolutely correct, which was, let's find an

9    easy, inexpensive way out, and we have one, right in front of

10   us.  They claim in their financials and on their tax returns,

11   which I've shown in this latest filing, that they are owed

12   this money, it's an asset and a note receivable for $82

13   million.  All they have to do is call the money in from

14   Mr. Knobel and his SPO entities and pay the Chinese and we're

15   out of here, we're done.

16         THE COURT:  Well, that solution is not before me.

17   I don't have this case on consent.  It's Judge Moore's case,

18   the substance of it you all need to take up with Judge Moore.

19         MR. LITOWITZ:  And I'm sitting here with people

20   that have put in half a million dollars of their lifesavings

21   and don't have a penny.  Meanwhile, half of their -- half of

22   their money is gone and I do say in my third complaint where

23   it went and I do say how it went.  It's in Mr. Knobel's

24   pocket and that's where it is.

25         So I don't appreciate people saying that I don't

34

1    say that because I do say all that and I have a verified

2    complaint.  And if Your Honor does want to get rid of this

3    case and if Mr. -- Judge Moore wants to get rid of this case,

4    it can be done in five seconds.

5           THE COURT:  The substance of this case is now

6    before Judge Moore.  Judge Moore will determine whether it

7    states a claim or whether it doesn't state a claim.  That's

8    not before me.

9           MR. LITOWITZ:  Gotcha.

10          THE COURT:  Anything further from the defendants?

11          MS. KANAN:  No, Your Honor.

12          MR. GEE:  Nothing from the SPO entities.

13          THE COURT:  All right, thank you, we'll be in

14   recess.

15          (Whereupon, the within hearing was then in

16   conclusion at 2:20 p.m.)

17

18

19

20

21

22

23

24

25

1                    TRANSCRIBER'S CERTIFICATION

2    I certify that the foregoing is a correct transcript to the

3    best of my ability to hear and understand the audio recording

4    and based on the quality of the audio recording from the

5    above-entitled matter.

6

7    /s/ Dyann Labo                    March 20, 2020

8    Signature of Transcriber                    Date

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**PATTERSON TRANSCRIPTION COMPANY**
scheduling@pattersontranscription.com