# EXHIBIT B

1    IN THE UNITED STATES DISTRICT COURT
         FOR THE DISTRICT OF COLORADO
2

3    Civil Action No. 19-cv-2443-RM

     Consolidated with Civil Action No. 1:19-cv-02637
4

5    JUN LI, et al., individually and derivatively for Colorado

6    Regional Center Project Solaris, LLLP,

7    Plaintiffs,

8

9    v.

10   WAVELAND VENTURES LLC, et al.,

11   Defendants.

12   _____

13                    REPORTER'S TRANSCRIPT
                            HEARING
14   _____

15
           Proceedings before the HONORABLE RAYMOND MOORE,
16   Judge, United States District Court for the District of
     Colorado, commencing at 1 p.m., on the 27th day of February,
17   2020, in Courtroom A601, United States Courthouse, Denver,
     Colorado.
18
                            APPEARANCES
19
     Brian Patrick Stewart, Ardent Law Group, P.C. 4340 Von Karman
20   Avenue, Suite 290, Newport Beach, CA 92660, Douglas Eliot
     Litowitz Douglas Litowitz, Law Office of 413 Locust Place,
21   Deerfield, IL 60015 For the Plaintiffs.

22   Ty Cheung Gee, Haddon Morgan & Foreman, P.C.  150 East 10th
     Avenue, Denver, CO 80203, 303-831-7364 and Stephanie Kanan
23   Snell & Wilmer LLP-Denver, 1200 17th Street, One Tabor Center,
     Suite 1900 Denver, CO 80202 303-634-2000 For the Defendants.

24

25

1               TAMMY HOFFSCHILDT, FCRR, CRR, RMR Official Reporter
                     901 19th Street, Denver, Colorado 80294

2              Proceedings Reported by Mechanical Stenography

3               Transcription Produced via Computer

```
 1                      P R O C E E D I N G S

 2        (In open court at 1:02 p.m.)

 3             THE COURT:  Please be seated.  19-cv-2443.  It's

 4   actually -- well, it's a consolidated case, consolidated with

 5   19-cv-2637; 2443 was originally assigned or drawn to me, and I

 6   am terrible in the pronunciation of names, so forgive me.  But

 7   I believe it is on the order of something near to Shun Li and

 8   others, on behalf of the number of entities, Waveland Ventures,

 9   Colorado Regional Center Projects, Colorado Regional Center,

10   Colorado Regional Center One, LLC, Solaris Property Owner, LLC

11   Solaris Property Owner One, LLC and Peter Knobel.

12             The latter of the two cases 2637 was originally drawn

13   to Judge Domenico, I'm going to take a stab at this, and say

14   that the plaintiff there, or at least the lead plaintiff on the

15   list of plaintiffs, is Dianwen Cui, and it is against the

16   same -- essentially the same plaintiffs, although, it's John

17   Does 1 to 10 being alleged as the defendant in place of

18   Mr. Knobel.

19             In any event, we're here, today, on these cases.  Let

20   me take appearances before we proceed.  My understanding is

21   that the plaintiffs counsel for each of the cases is appearing

22   by phone, and I will start with -- is it Mr. Stewart, who is

23   the plaintiff for Mr. Li and others?

24             MR. STEWART:  That would be Mr. Litowitz who is the

25   counsel for Mr. Li.
```

1          THE COURT:  Then I will take the appearance of

2    Mr. Litowitz first.

3          MR. LITOWITZ:  Good afternoon, Your Honor.  Doug

4    Litowitz on behalf of the lead plaintiffs.

5          THE COURT:  And, Mr. Stewart?

6          MR. STEWART:  Good afternoon, Your Honor,

7    Brian Stewart on behalf the Cui plaintiffs.

8          THE COURT:  And then, in terms of the defendants, or

9    the defendant cluster, so to speak, you don't have to go over

10   there.

11         MS. KANAN:  Stephanie Kanan on behalf of Waveland

12   Ventures, LLC, Colorado Project Solaris, LLLP, Colorado

13   Center -- Colorado Regional Center LLC and Colorado Regional

14   Center 1, LLC.

15         MR. GEE:  Good afternoon, Your Honor.  My name is Ty

16   Gee, I'm appearing on behalf of Solaris Property Owner, Solaris

17   Property Owner 1, and Mr. Peter Knobel.  With me at counsel

18   table is Ryan Smith, general counsel for the SPO  entities.

19         MS. KANAN:  My apologies, Your Honor, with me at

20   counsel table is Rob Glucksman on behalf of the CRC entities.

21         THE COURT:  All right.  And I am assuming, although I

22   was not taking notes, that that covers the universe of

23   defendants that are -- or at least the universe of defendants

24   that are relevant for today's proceeding?

25         MS. KANAN:  That's correct.

 1          *THE COURT:*  So let me start by seeing if we can come

 2     to some common understanding.  Originally, what brought this up

 3     here, and what I mean by that is, I know there have been

 4     proceedings and are still more proceedings scheduled before

 5     Judge Varholak, but what originally brought matters up here was

 6     the filing of **ECF Number 115**, as to which I have an

 7     observation, which is, 115 filings in six months.  Well, all

 8     right.  This is the way we're going to go, this is the way

 9     we're going to go.  But, in any event, it was LL –– I will call

10     Colorado Regional Center Project Solaris, LLLP as simply LLLP,

11     because it is probably the simplest way for me to say it.  But

12     there was an order to show cause as to –– it was eventually

13     joined in by SPO1, Solaris Property Owners 1, LLC, petitioning

14     for an order to show cause to enter with respect to a lis

15     pendens filed by the Cui plaintiffs, and then thereafter there

16     was **ECF Number 134** filed again by the LLLP, asking for a

17     forthwith hearing on the petition, and then there was, filed by

18     the Li plaintiffs, not in response to these prior two matters,

19     because the prior two matters, aren't directed at them, but if

20     I can use the analogy of saying, "We like that train over

21     there.  Can we get on board too?"  They filed a motion for

22     declaratory relief authorizing them to file a lis pendens, and

23     then I think this morning, or yesterday, there is also

24     something from the Cui plaintiffs that purports to be an errata

25     filed at **ECF Number 161**, and as these things were coming in, we

1    had briefing, on these matters and I suppose, procedurally, the

2    issue is whether or not to issue the order to show cause, but

3    ultimately, if I issue an order to show cause, from my

4    perspective what happens is we come back together in 14 to 21

5    days, and then I issue a ruling, and I don't think there's

6    anything that's going to happen in the next 14 to 21 days

7    that's going to add to the pile of information that I already

8    have.  And what I mean by that is taking all of this,

9    collectively, I think I understand each parties' position, and

10   so I don't know why I want to do this twice.  In fact, I will

11   tell you, I don't want do it twice, and what my inclination is,

12   is to deem the order to show cause to have entered and ruled on

13   it, but I will hear from the parties in terms of their view of

14   the matter.

15            I will start with Mr. Litowitz, and I am starting with

16   you, sir, simply because you're first on my list.

17            *MR. STEWART:*  Your Honor, this is Mr. Stewart.  I just

18   wanted to make one clarification, because I think it's an

19   important one; and that is, that the petition for the order to

20   show cause was filed by the LLLP, and it was not filed by SPO1

21   Solaris property owners, other than that, then I would agree

22   with everything that you said.

23            *THE COURT:*  All right.  Mr. Litowitz.

24            *MR. LITOWITZ:*  Your Honor, thank you.  I will try to

25   be brief, and I agree with you a hundred percent that it is

1    better to get this matter resolved today.  This is basically a

2    classic --

3           THE COURT:  Let's stop -- let's stop -- let's stop,

4    let's stop.  I just want the answer to that piece.  Let me get

5    the answer to that piece from the defendants.  You don't have

6    to go over there.

7           MS. KANAN:  Your Honor, from the LLLP's perspective we

8    would agree with that approach, as well.

9           THE COURT:  Mr. Gee?

10          MR. GEE:  We agree, Your Honor.

11          THE COURT:  All right.  Then I will proceed in the

12   manner that I have indicated, essentially, deeming the order to

13   show cause to have issued, addressing the substantive matter,

14   rather than kicking it down the road and dealing with all of

15   these matters that I have identified up to now.

16          As I said, I don't know that I need a whole lot more,

17   but I will give each side a few more minutes to make whatever

18   arguments they wish to, and then I'm going to rule, and we will

19   move on from there.

20          So, since I cut off Mr. Litowitz, I will come back to

21   him first, and to the extent that I -- I don't want to move on

22   too fast, Mr. Stewart corrected me, in some respects in noting

23   that the petition was filed by the LLLP, it was eventually

24   joined in by the SPO1 in **ECF Number 158.**  And so that

25   clarification/explanation doesn't alter the landscape of where

1    we are, I don't think, in any material way.

2              So, in any event, Mr. Litowitz, I will hear from you.

3              *MR. LITOWITZ:*  Great.  Thank you, Your Honor.  This is

4    basically a very simple dispute over title, and it's

5    classically made for a lis pendens.  There was a loan, it was

6    for 84-million dollars to SPO, was supposed to be paid back in

7    five years, or else after three years, they could pay it back

8    with titles to property.

9              They never turned over the property.  They never gave

10   the title back.  So there's a dispute as to who should have the

11   title, the borrower that put up the collateral, which was the

12   titles, or the lender that was supposed to get paid the

13   collateral sum as part of the transfer back?  It's a simple

14   dispute, and the Colorado statute says that any time there's

15   relief demanding affecting title a lis pendens can issue, and

16   here there is.

17             We are saying, myself and the other plaintiffs, are

18   saying that, titles should go back to the LLLP, because that's

19   what every single document requires in this case, and we are

20   just following the legal documents that were drafted by the

21   defendants, that says title must go back to the lender.  If you

22   don't pay the loan, and instead of paying that lender, you say

23   I'm going to give you property, you have to give the title to

24   the property.  So it's very, very simple.  I don't see why it's

25   complicated.  Colorado law, anything affecting real property,

1    can have a lis pendens on it.  What Judge Varholak did makes no

2    sense to me, frankly.

3         THE COURT:  And I don't care whether it makes sense --

4    hold, hold, hold, hold.  I don't care whether it makes sense to

5    you.  You can take that up with him.  I'm not here to be

6    baby-sitting issues and arguments that the two of you may have

7    had with each other, with regard to various things, nor am I

8    here to resolve motions to dismiss, nor am I here to resolve

9    motions for summary judgment, nor am I as tolerant of counsel

10   as Judge Varholak is.

11        I have a specific issue in front of me.  So why don't

12   you talk to me about the matter that was filed on behalf of the

13   Li's plaintiffs, which is why I should grant a motion for

14   declaratory relief, authorizing them to file a lis pendens in

15   this matter?

16        MR. LITOWITZ:  Sure.  The spurious document law, which

17   is cited by the other side to block the lis pendens was enacted

18   to permit zealots, anti-American zealots from filing liens

19   against public officials.  It has no business in a dispute that

20   is a business dispute between parties about title.  So how that

21   got dragged into this is something that I don't think -- I

22   really don't understand that, at all, because it wasn't meant

23   for this type of dispute.  This type of dispute is meant for a

24   lis pendens issue, not for a spurious document issue by

25   anti-American zealots.

1        So, just to keep it really simple, we believe that

2   there is a contractual dispute over title.  They have one view,

3   we have another, that's fine, but that just goes to prove that

4   there's a dispute over title, and you may or may not know that

5   originally I had filed a lis pendens, in this case --

6        *THE COURT:*  I know.

7        *MR. LITOWITZ:*  And the Judge struck it --

8        *THE COURT:*  Go ahead.  I said I know, that's all I was

9   saying.

10       *MR. LITOWITZ:*  Yeah, that's fine.  So that's why I

11   was -- why I was a little bit dumbfounded on that.  What

12   happened was that as part of that -- the Judge said that I had

13   filed a spurious document, but that I had the right to refile,

14   and have that refiling looked at again by the Judge.   In

15   addition, there was, Judge awarded attorney fees for me having

16   filed a spurious document, and as part of that settlement of

17   the fee issue, I agreed not to file a lis pendens during the

18   the pendency of a bulk sale of all of the units.  So there's a

19   bit of tangled history here, Your Honor.

20       I will leave it at that, really.  I just think that

21   this is a pure case of a lis pendens and there's no better case

22   for one.

23       *THE COURT:*  All right.  Let me hear from Mr. Stewart.

24       *MR. STEWART:*  Thank you, Your Honor.  I will try to

25   keep it simple and short.  I hear you loud and clear.

1    I'm going to separate the -- the OSC arguments from

2    the arguments on reply, and the reason I said it was important

3    that the LLLP filed the petition for the order to show cause,

4    is because the LLLP is who we sued on behalf of derivatively,

5    and so from my standpoint, and I have asked this question a few

6    times, as to standing, you know, we have a derivative claim for

7    specific performance, asking that the -- the borrower tender

8    title as they claim they are doing.  They have been claiming it

9    for three years, but they signed this agreement the day before

10   they had the ability to do that, saying, we're going to give

11   you the property, but it's not good for everybody to do that,

12   so we don't have to pay you interest anymore, and we are not

13   going to give you the property, and that's been going on for

14   quite awhile.

15        Now, I would expect as the borrower to be the one

16   objecting to the lis pendens, but the borrower, as you noted,

17   they filed the joinder, they didn't file a joinder until after

18   my opposition was filed, so I didn't get to address anything as

19   to whatever joinder they have filed, and they have not joined

20   in the reply brief.

21        Now, quite frankly, I believe I addressed all of the

22   issues that they raised in the order to show cause, to show

23   that we have a right to the lis pendens, that, you know, we

24   have a right to file a derivative claim and that we do have an

25   interest in the real property derivatively, as the LLLP.  They

1    have been telling us they are going to give us back the

2    property, they haven't.  We are saying please, please do.

3    Please do what you say you are going to do, and so, from

4    that -- in that respect we do have the ability to file the lis

5    pendens on a derivative claim.

6              Now, some of the arguments they made, one that I find

7    to be very, very interesting is that we don't need a lis

8    pendens, because we have a deed of trust.  And as I stated in

9    my opposition, if you know anything about secure transaction,

10   once there's no underlying obligation, the deed of trust is a

11   worthless piece of paper.  It's no longer a lien, if there's no

12   obligation.  So the defendants take a position they don't owe

13   us money on the note anymore, because they took this option to

14   give us back the property.  So the deed of trust doesn't

15   protect anything, and it doesn't protect anyone, but,

16   nevertheless, that was one of their primary arguments, is you

17   guys are totally secure, don't worry about it, we have got a

18   deed of trust, that's not really true.  And I -- I tried to

19   outline why and how the general partner and the borrower have

20   been colluding to take every single dollar out of this

21   transaction, and why the general partner would be doing such a

22   thing, because they are collecting a lot of fees, and I attach

23   as Exhibit A, to my opposition, the article in the -- what --

24   it's a Denver online magazine where Mr. Hayes actually says

25   exactly that.  He says, we never could have got financing from

1    anybody else because of this horrible, you know, financial

2    crisis, and yet, while -- while the -- the lender, the LLLP,

3    had all of the leverage in this transaction, what did they do?

4    They continually breach their fiduciary duties to the limited

5    partners, and gave huge concessions to the borrower, that the

6    borrower could never get from anyone else, and I will

7    eventually have expert witnesses to testify to that, but I

8    don't have to, because Mr. Hayes has admitted it, in his

9    interview with these people.

10          So, you know, that's where we are at.  Now, the only

11   compelling thing that I have heard, from anyone, is the reply

12   brief that CRCPS filed.  Of course, every single thing in the

13   reply brief is new.  It doesn't address anything that was in my

14   opposition, and it wasn't in their original order to show

15   cause, nor did anyone confer with me on it.

16          So, what they are basically saying is there are

17   technical problems, the Complaint needs to be verified.  You

18   know I have got verifications, I will bring them with me to the

19   court on Monday, we can verify either Complaint, either --

20          THE COURT:  You can bring whatever you want to bring

21   whenever you want to bring it, but you cannot do it

22   retroactively in time.

23          MR. STEWART:  Your Honor, I understand that, okay.

24   And I am just telling you, if, in fact, your order is going to

25   be that, you know, the lis pendens can't stand because of the

1     technical arguments that they bring up, for the first time on

2     reply, and there's, you know -- I did the research.  There's

3     several cases that say they can't do that.  Gerardi (phonetic)

4     is a Colorado district case, that says arguments not raised in

5     an opening brief are deemed abandoned and waived.  I wouldn't

6     go that far, but there is controlling law that says that.

7             THE COURT:  What -- listen, I understand your

8     position.  I'm not -- I still think that so far what I'm

9     hearing is things that, much of which, would be shared with a

10    mediator if I was trying to resolve, I don't know, a motion for

11    summary judgment, a settlement discussion, a whole bunch of

12    other things.

13            In other words, the ultimate, who is the villain here,

14    and frankly, at this juncture, that's not my concern.

15            Let me hear from -- Ms. Kanan.

16            MS. KANAN:  Would you like me to stay at counsel

17    table?

18            THE COURT:  Yeah.  Because it's completely

19    uncomfortable for you, and I am amused by that.

20            MS. KANAN:  Thank you, Judge.  I will respond, first,

21    to Mr. Litowitz's comments, regarding his motion for

22    declaratory relief, seeking authorization to file his notice of

23    lis pendens.  The characterization of the parties' agreement

24    with regard to the attorney's fees, that would have been

25    awarded to the CRC entities, as a result of the extinguishment

1   of the first notice of lis pendens, that -- the agreement to

2   waive those fees, was in exchange for the lead plaintiffs to

3   not refile any subsequent lis pendens, that agreement was filed

4   with the Court, signed by counsel for both parties, and it

5   doesn't contain any of the language that Mr. Litowitz is

6   claiming it contains here today.  It was not contingent upon

7   only the bulk sale, that conversation didn't occur, and even to

8   the extent that it did, what was filed with the Court was the

9   agreement that was reached, and it says, any subsequent lis

10  pendens, they will not file.

11          So, he cannot unilaterally now rescind that agreement,

12  and for the other reason, set forth in the briefing, the

13  requested relieve under Rule 57 is wholly inappropriate when

14  that claim is not before the Court in the Li plaintiff's

15  Complaint, and under no circumstance can the Court issue an

16  advisory opinion, and particularly where the requested relief

17  in the first place does not require judicial approval, like the

18  filing of a notice of lis pendens.  So, that motion should be

19  denied and the Court should not issue any ruling, one way or

20  the other, on that issue.

21          With regard to Mr. Stewart's claims on the petition

22  and the reply, I think the Court has already noted the primary

23  issue here, and that is, the first amended Complaint that

24  purportedly forms the basis for the notice of lis pendens is

25  deficient, and it cannot support a lis pendens, and there's

 1    nothing that the two plaintiffs can do, now, to fix that.  It

 2    cannot be cured, because under Colorado law, the validity of a

 3    notice of lis pendens is determined at the time that it's

 4    recorded.  At the time that their noise of lis pendens was

 5    recorded they did not have a basis to record it.  The claim

 6    that they have asserted is against the wrong entity, a notice

 7    of errata does not fix that, that is a backdoor amendment, and

 8    we have already established that they need to seek leave to

 9    amend their Complaint, and in any event regardless of what you

10    call it, that cannot cure that issue.

11            THE COURT:  Go ahead.  Wrap it up.

12            MS. KANAN:  Okay.  I guess the only other thing I

13    would note is that to characterize the deed of trust now, is

14    not protecting the property is just simply false.  It's not --

15    unrelated to the Court's analysis, here, today, but in any

16    event, the agreement that the parties entered into specifically

17    says the indebtedness is still owed.  So the deeds of trust are

18    valid.  All right.  Mr. Gee.

19            MR. GEE:  Your Honor, I don't have anything to add to

20    that.

21            THE COURT:  All right.  So let me just work through

22    some things here, in terms of, obviously, the motion for a

23    forthwith hearing on the petition, that's essentially mooted by

24    the understanding that we've reached, here, today.  We are

25    having the hearing now, and I don't know that there's anything

1    more to say about it.  I could say granted, I could say denied,

2    but we are ultimately having the hearing.  I prefer to look at

3    it as -- as moot in light of the fact that we're having the

4    hearing here today.

5            In terms of -- I will start with the the Cui

6    plaintiffs, if I'm speaking correctly, and the lis pendens that

7    was filed, which then resulted in the LLLP's filing of a

8    petition for the order to show cause, which I have deemed to

9    have issued, and am now addressing.  I declare the lis pendens

10   to be invalid.  I don't need to get into all of these other

11   arguments, as I said, "Who is the ultimate villain?"

12           There are some very straightforward and easy things

13   here.  One, the title, as I understand it, is in SPO1, which is

14   Solaris property owner LLC 1, and yet, that's not who the lis

15   pendens is against, and the Cui plaintiffs, they know it,

16   that's what that errata is trying to fix.  I'm not here to fix

17   things.  I'm not here to bend the rules of time.

18           Ultimately, the claim that was made, on which the lis

19   pendens depends was against SPO1, and the title -- excuse me --

20   was against SPO, and the titleholder is SPO1, and if you, later

21   down the road, you get some right, or Judge Varholak to amend,

22   or whatever, fine, but in terms of this thing called an errata,

23   I order that it be stricken.  It is of no consequence or value,

24   whatsoever.

25           If, in fact, a party can add other parties to a case,

1    add claims against them by calling it an errata, then the

2    parties have the unlimited right to amend proceedings whenever

3    they want to.

4          I don't mind an errata with respect to a brief or a

5    memorandum or something of that nature.  This is too cute and I

6    don't do cute.

7          Next, despite that, there is this other issue, and

8    while it may be said that it's first raised in the reply, and

9    therefore I shouldn't consider it.  I'm not going to close my

10   eyes to the Federal Rules of Civil Procedure.

11         You don't have a viable derivative suit, because you

12   haven't complied with the rule.  The rule requires that the

13   Complaint must be verified and must..., and then there are

14   other matters, and nothing has been filed by way of a verified

15   Complaint.  I'm not going to sit down and get into a debate

16   about, "Oh, this wasn't raised here or it wasn't raised there,"

17   frankly, we are aware of it as a court, regardless of whether

18   they raised it, and more than that, I'm not going to ignore the

19   rules when I know what they are, and I don't care whether the

20   parties raised it, originally, or not.

21         At the end of the day, you have got a claim that's not

22   directed to the titleholder, you have got a claim that's not

23   verified, and as far as I can tell, there's also -- there is an

24   issue of the misstatement in the notice as to whether or not

25   the claim was both on their behalf and derivatively, but

1    there's also this reference to fix that, as well, in the

2    errata.

3            You know, I'm not holding or saying anything with

4    respect to what goes on in the future.  What I'm saying is, on

5    the basis of what is there, as of the time the lis pendens is

6    filed, it's invalid.  It's just not good enough.

7            With respect to the -- as I said, I have already

8    addressed the Motion For Forthwith Hearing.  With respect to

9    the Motion For Declaratory Relief, Authorizing Filing Of Lis

10   Pendens, that's denied, as well.  I'm not even exactly sure

11   what it is that I'm being asked to do.  Just, kind of, give

12   people permission to do certain things?  You want to do

13   something, and you think it's right, do it.  If it turns out

14   you are right, congratulations.  If it turns out you are wrong,

15   there are consequences.  The consequences may be a denial of

16   the motion -- of the motion or action.  The consequences may be

17   that there is an attorney-fees requirement or other

18   consequence.  But I'm not going to, in advance of the parties,

19   be saying, "Yes, you have my permission to do this or that or

20   the other things."  Particularly, when, while I don't need to

21   finally resolve the issue of what the agreement between the

22   parties was, I will say that my leanings, in terms of

23   interpretation of that agreement is consistent with Ms. Kanan's

24   view of things.  It speaks to the filing of lis pendens on the

25   subject property.  At the time that it's filed, there's an

1    amended Complaint that has been filed, asserting the derivative

2    claim or attempting to assert the derivative claim in the first

3    instance.  It's not as if there was some agreement with respect

4    to one case and then everything changed thereafter.  By the

5    time this thing hits the Court, this notion of the derivative

6    claim and the broader conduct is known to both parties and yet

7    the language is what the language is.

8         More than that, what am I giving a declaratory

9    judgment on?  Right now, the operative pleading refers to

10   seeking a declaratory judgment with respect to a lis pendens

11   that is the one that Judge Varholak already ruled on.  So, I

12   don't have an underlying matter here that is a pled claim that

13   I'm somehow advancing or giving a ruling on.  And then, of

14   course, there is the matter that I raised sua sponte, that I

15   raised with respect to the Cuis, as well; and that is, you

16   might have a derivative claim right now, but you don't have an

17   effective one, and so, I'm not going to sit here and say that

18   you can or can't do anything.  I'm just going to deny the

19   motion asking me to declare your right to file this lis

20   pendens.

21        I understand the argument, I'm being asked to give a

22   declaratory -- an advisory opinion.  I don't know that I

23   necessarily agree with that, but I am being asked to, in

24   essence, guide plaintiffs' ship, and I am not inclined to do

25   so.

1     My final -- I will hear from you in a moment.  My

2  final comment is I want to be clear, in terms of future

3  matters, and I understand that this has occurred on a short

4  calendar and a short string, I understand that, but in terms of

5  future matters, whether there's appearances or other matters,

6  file it, file a motion.  I'm not having my staff respond to

7  matters of emails, phone calls or things of that nature.  File

8  it, and file it right, and we go forward.

9     So, go ahead counsel, make your record, Mr. ...

10 Mr. Litowitz, first, I assume.  Go ahead.

11     MR. LITOWITZ:  Do you agree that there's a dispute

12 over who has title to this property?

13     THE COURT:  What?  You are not questioning me.

14 What -- who do you think you are?  You want -- you want to make

15 a record -- you want to make a record, you make your record.

16 You want to play cute, go somewhere else.  I have ruled.  I'm

17 giving you an opportunity to make your record with respect to

18 preserving matters.  I am not giving you an opportunity to play

19 Q and A with me.  As I told you, I'm not Judge Varholak.

20     I will now move on to Mr. Stewart.  Do you wish to

21 have anything else to say?

22     MR. STEWART:  Your Honor, I have very little to say.

23 You know, I hear you loud and clear, I know what you are

24 saying, and I don't necessarily disagree with it.  I do think

25 that a notice of errata to correct a clerical error in the

1    complaint is not inappropriate, but I will just agree, to

2    disagree.  I'm not going to tell you that you are wrong.  That

3    is crazy.  However, it was a clerical error.  It was not

4    noticed until late, and I think that the lis pendens actually

5    does address SPO1, but I hear you, and we will have to come in

6    and ask the Court for permission to amend, and hopefully, you

7    know, the Court will be willing, because it doesn't seem --

8    like I said, I think --

9              THE COURT:  I'm not trying -- I'm --

10             MR. STEWART:  I'm not arguing with you.

11             THE COURT:  I understand.  What I'm telling you --

12             MR. STEWART:  This is a very young case, and so -- and

13   I'm being told -- we have a motion on Monday to amend the

14   Complaint, and they are saying you can't do it, and it's not --

15   neither Complaint is even at issue yet, and I appreciate the

16   cuteness, and I am not trying to be cute, I'm trying to say,

17   you are right, and as to the reply argument, I'm just saying, I

18   think they were being cute hiding those arguments, never

19   conferring with me and bringing them up when I didn't have a

20   chance to address them.

21             THE COURT:  Okay.  All right.

22             MR. STEWART:  I hope I get the -- I hope I get the

23   same -- same type of consideration later, because this case is

24   not at issue, it's never been at issue, and there's some

25   serious wrongdoing here, and when I ask for leave to amend the

1  Complaint, to allege the derivative claim, I'm hoping I'm not

2  going to hear it's too late, because it's only three/four

3  months old --

4       THE COURT:  I don't know what you are going to hear,

5  and I am not saying you are going to hear it from me or you are

6  not going to hear it from me.  What I have done, today, I have

7  not, in any way, shape or form, tried to put my thumb on the

8  scale of whether or not the Complaint can be amended to correct

9  the deficiency, with regard to the S -- SPO1 or with regard to

10  the verification.  I'm not trying to rule on those things or

11  cut you off or anything else.

12       I'm just simply saying, there's an issue in front of

13  me, I have rarely seen a case where the urine exchange between

14  the parties is as great as it is as early as it is, and I am

15  not going to tolerate it.

16       So, my response to this is, we will go forward, let's

17  go forward, I haven't blocked you from doing anything, and in

18  terms of what you hope, you can hope whatever you wish to hope

19  for, I will deal with what's in front of me, I don't give "owe

20  you ones" or "don't owe you ones," and I am not trying to send

21  some message to you or the Li plaintiffs that I'm intending to

22  inhibit your ability to litigate your case.

23       What I am, very clearly, saying is, I am not going to

24  just kind of bring some overall notion of equity into a legal

25  issue that's a very straightforward one that's in front of me.

1    I'm sorry that the Complaint doesn't say what it says.  I don't

2    agree with you.  I understand what you tried to do with the

3    errata, I don't agree with you that you can do that.  Simply

4    because, if you can do that, you can always say, "Well, I meant

5    to say this party, as well," or "I meant to direct that claim

6    to that one."

7            And again, I'm not trying to -- nothing I'm ruling

8    here today, absolutely nothing, should be taken by anyone or by

9    Judge Varholak or anyone else as me saying, "You don't get to

10   amend your Complaint," or "You do get to amend your Complaint."

11   I'm not speaking to that, because none of that is in front of

12   me, now --

13           MR. STEWART:  And, Your Honor, I'm not trying to anger

14   you in any way --

15           THE COURT:  That's fine.

16           MR. STEWART:  I'm not arguing.

17           THE COURT:  I'm not angry.  I'm being -- I'm not

18   angry.  Part of the problem is that this phone line is one

19   where, at various points in time we are talking on top of each

20   other, and it's not intentional on your side, and I recognize

21   that, and it is not intentional on mine.  Sadly, the duplex

22   nature of the phone, I can't remember whether it's single

23   duplex or double duplex, but it causes some difficulty and

24   there's some lag, and I apologize for speaking on top of you or

25   seeming to do so.  I think it's more of a phone function than

1    anything else.

2         Go ahead and make your record, I just wanted to be

3    clear.

4         MR. STEWART:  Your Honor I didn't get my chance to

5    apologize.  I intended to be there, at the airport early this

6    morning, the flight was pushed to a later time.  I'm flying up

7    tonight, and I will be in the court on Monday.  So I apologize

8    for the phone issues, because I'm in agreement with you, I

9    don't like having motions argued by telephone.  I would have

10   much preferred to have been there.

11        All I'm saying is I think that if you read the

12   Complaint as a whole, the notice of errata is not a backdoor

13   amendment.  I mean, every word in the Complaint SPO and SPO1

14   are together, it was just a mistake that slipped through, but I

15   understand what you are saying, and I understand what they

16   argued, but I think there was fair bit of cuteness going on

17   from the other side, in addition to whatever is going on from

18   the plaintiffs.

19        THE COURT:  Oh let --

20        MR. STEWART:  That's all.  I have no problem with your

21   order, whatsoever.  We will show up and fix the Complaint and

22   make the right motions and we will see what happens.

23        THE COURT:  All right.  And let me be clear -- I'm not

24   suggesting that the cuteness that's going on here is limited to

25   one side off the aisle.  I have not delved into it, but I'm

26

1    aware of the fact that there are allegations that some people

2    have, essentially, been told that if they pursue this, they are

3    going to get ratted out to Immigration, and if that kind of

4    nonsense is going on, I will deal with it, as well.

5            So I'm not trying to sit here and lay a villain hat or

6    a cuteness hat on anyone.  I'm simply saying, what ends up

7    happening is, nobody in this case, seemingly, can go forward

8    without emotionally expanding the issue, and I understand why.

9    It is big stakes, there's big dollars, but I'm just going to

10   deal with what I have to deal with and not get dragged into

11   other issues.

12           So let me close this up by saying this, what I'm going

13   to do is direct the parties to confer and file, within ten days

14   of today's date, findings of fact and the text of an order.

15   I'm also going to give you that period of time to meet and

16   confer, with respect to attorney fees.  I'm not suggesting that

17   you come to any agreement or not come to any agreement, but I

18   want to give you the opportunity to do that.  If you are unable

19   to come to any agreement, then I would ask that the filing for

20   attorney's fees, the documentation necessary to support that be

21   filed within two weeks of today's date, and beyond that, we are

22   done.

23           Is there anything further on behalf of the Li

24   plaintiffs?

25               *MR. LITOWITZ:*  Yeah, I do, actually.  I'm sorry.  I

1   think that a lis pendens goes to the issue of whether

2   there's --

3          THE COURT:  Okay.  Let's take this down to a basic

4   level; I have ruled; you have lost; and I am not talking about

5   it anymore; you're done.  With respect to the Cui plaintiffs.

6          MR. LITOWITZ:  That's an argument --

7          THE COURT:  With respect to the Cui plaintiffs.

8   Anything further?

9          MR. STEWART:  No, Your Honor.  I just would point out,

10   of the 162 things that have been filed, I'm responsible for

11   about ten of them.  Most of them are in response to -- to the

12   defendants.  I'm not trying to argue.

13          THE COURT:  All right.  All right.  Fair enough.  Fair

14   enough.  Fair enough.  Anything for the defendants?

15          MS. KANAN:  Nothing further.  Thank you.

16          THE COURT:  Recess.

17          THE COURTROOM DEPUTY:  All rise.  Court is in recess.

18      (Recess at 1:46 p.m.)

19                     REPORTER'S CERTIFICATE

20

21      I certify that the foregoing is a correct transcript from
the record of proceedings in the above-entitled matter.

22

23      Dated at Denver, Colorado, this 12th day of March, 2020.

24                     s/Tammy Hoffschildt

25                     _____

                       Tammy Hoffschildt, FCRR,RMR,CRR