## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.  1:19-cv-02443-RM-STV
Consolidated with Civil Action No. 1:19-cv-02637

Jun Li, *et al*.,

     Plaintiffs,

v.

Waveland Ventures, LLC, *et al*.,

     Defendants.

---

**DEFENDANT COLORADO REGIONAL CENTER I, LLC'S RESPONSE IN OPPOSITION TO LI PLAINTIFFS' MOTION FOR MANDATORY INJUNCTION (I) FORCING CRCPS TO CALL THE LOAN AND REPAY INVESTORS, AND (II) ENJOINING CRCPS' PLAN TO DISTRIBUTE COLLATERAL IN KIND TO LIMITED PARTNERS [ECF 165]**

---

Defendant Colorado Regional Center I, LLC ("CRC I"), through undersigned counsel, hereby submits this Response in Opposition to Li Plaintiffs' Motion for Mandatory Injunction (i) Forcing CRCPS to Call the Loan and Repay Investors, and (II) Enjoining CRCPS' Plan to Distribute Collateral In Kind to Limited Partners [ECF 165], stating as follows:

## I.    <u>INTRODUCTION</u>

The Li Plaintiffs are Chinese investors who each purchased a limited partnership interest in Colorado Regional Center Project Solaris LLLP ("CRCPS") as part of an approved EB-5 Program to obtain a permanent residence visa.  In total, the Li Plaintiffs represent approximately ten percent (10%) of the 152 remaining limited partners of CRCPS.  Nearly eight months ago, the

4848-0079-8906.4

Li Plaintiffs commenced this action, attempting to unwind and renegotiate the terms of their investment that is now almost a decade old.  In conjunction with that effort, the Li Plaintiffs have made several baseless attempts to interfere with CRC I's[1] business judgment, particularly as it relates to partnership assets that CRCPS acquired as part of a loan transaction, which has prevented the immediate liquidity of their investment – the very relief they are purportedly seeking.  This time, however, the Li Plaintiffs seek to bypass a trial altogether and request a mandatory injunction to force the repayment of the loan and enjoin the partnership from making proper distributions to the other limited partners.

But like their first request for an injunction, which Magistrate Judge Varholak summarily denied, the Li Plaintiffs fail to demonstrate that injunctive relief is warranted, let alone offer any relevant evidence in support of their request.  They instead resort to ad hominem attacks and claim that the Court should grant a mandatory injunction to "make CRCPS eat its own words" and "end this dispute."  [ECF 165, pp. 2 and 8].  But that is not the appropriate standard, nor are injunctions designed to grant a plaintiff all the relief it would be entitled to if it prevailed in a full trial, as the Li Plaintiffs seem to suggest.  Once again, there is simply no basis for the Li Plaintiffs' requested relief.

---

[1] On April 20, 2020, CRC I received notification of the Li Plaintiffs' Status Report, alleging that approximately 70% of the limited partners voted, by proxy, to remove CRC I as the general partner of CRCPS for "cause."  [ECF 183].  CRC I is still in the process of reviewing the Status Report and the attachments (which include purported proxies that do not identify the alleged limited partner, other than by signatures – many of which are in Chinese characters). If, as counsel for the Li Plaintiffs claims, CRC I has been properly removed, then Plaintiffs' Motion [ECF 165] may be moot. CRC I had already drafted this brief when the Li Plaintiffs filed the Status Report and they have not had sufficient opportunity to evaluate the stated legal position before necessarily having to file this Response in accordance with the Court's briefing schedule.  [ECF 179].

## II.      STATEMENT OF MATERIAL FACTS

Colorado Regional Center, LLC ("CRC") is an approved EB-5 Regional Center, authorized by USCIS to operate anywhere within the State of Colorado. *See* **Exhibit A**, Affidavit of Rick Hayes, at ¶ 2. CRC I is the general partner of CRCPS. *Id.* at ¶ 3. Plaintiffs are Chinese investors who each purchased a limited partnership interest in CRCPS for $500,000, as part of an approved EB-5 Program through the USCIS to obtain a permanent residence visa, commonly referred to as a "green card." *Id.* at ¶ 4; *see also* ¶ 7, Ex.2.

CRCPS prepared a Private Placement Memorandum ("PPM") to raise funds related to the development of a luxury residential and commercial project known as Solaris Residences ("Solaris"). *Id.* at ¶ 5. As the PPM explained, investors who invested in this opportunity paid $500,000 for limited partnership interests in CRCPS, and the proceeds of the PPM offering were to be used to lend up to $100 million to Solaris Property Owner, LLC ("SPO"), the developer of Solaris. *Id.* at ¶ 6. The PPM included, among other things, copies of the transactional documents related to CRCPS' contemplated loan to SPO, a fulsome description of the anticipated use of the PPM offering, a description of the investor qualifications and suitability requirements, and an actual copy of the CRCPS limited liability partnership agreement. *Id.* at ¶ 7. In order to purchase an interest in CRPCS, the investors had to, and did, certify their proficiency in the English language. *Id.* at ¶ 8. While Plaintiffs are apparently claiming in this lawsuit that they believed they were promised a guaranteed return of their investment, CRC, CRC I, and CRCPS did not promise any of the investors a guaranteed return. *Id.* at ¶ 11.

The PPM was issued on or about March 11, 2011, and the last limited partner subscribed by April 2013. *Id.* at ¶ 12. Thereafter, CRCPS loaned the proceeds of the investment, which totaled

3

approximately $82.5 million, to SPO's assignee, Solaris Property Owner I, LLC ("SPO I"). *Id.* at ¶ 13. The proceeds of the loan were to be used by SPO to pay certain costs pertaining to the development of the Solaris project. *Id.* at ¶ 14. The loan was evidenced by a loan agreement, and a promissory note and was funded in multiple advances over a period of time. *Id.* at ¶ 15. To secure the loan, SPO granted a lien, evidenced by a deed of trust, to CRCPS for each of 19 condominium units valued in the aggregate at approximately $82.5 million at the time of execution of the loan agreement (the "Property"). *Id.* at ¶ 16. Prior to the commencement this action, two of the 19 units were assigned to entities owned by certain limited partners of CRCPS in consideration of a redemption of their partnership interests. *Id.* at ¶ 17. The loan accrued interest at a rate of 5.55% per annum. *Id.* at ¶ 18. The principal balance together with all accrued and unpaid interest of each loan advance was due and payable five years after the date of each loan advance. *Id.* at ¶ 19.

Pursuant to the terms of the overall loan agreement and as expressed by the PPM, three years following each loan advance, CRCPS (the lender) and SPO (the borrower) had certain "put" and "call" rights. *Id.* at ¶ 5, Ex. 1. Specifically, three years after each loan advance SPO was entitled to "put" the collateral securing the loan advance instead of repaying CRCPS with cash, and CRCPS was entitled to refuse SPO's repayment of cash and require SPO to convey the Property. *Id.* As structured, if the value of the Property went down three years after the loan closing, SPO had the option to repay its obligations by conveying the Property, and if the value of the Property went up three years after the loan closing, CRCPS could reject SPO's cash repayment and demand a conveyance of the Property. *Id.* at ¶ 20. Prior to the first advance under the loan, SPO assigned all rights, obligations, title and interest related to the loan, note and Property to SPO I, and SPO I

assumed all obligations thereunder, thus becoming the borrower pursuant to the loan agreement. *Id.* at ¶ 21.

The real estate market for luxury condominium units in Vail, Colorado did not do as well as CRCPS and its limited partners hoped it would – a risk that was specifically identified in the PPM. *Id.* at ¶ 5, Ex. 1. Consistent with the terms of the loan agreement, SPO I exercised its right to transfer the Property in lieu of cash payment with respect to each condominium unit after three years following each loan advance. *Id.* at ¶ 22. Pursuant to the terms of an Agreement Regarding Collateral Units ("ARCU") between CRCPS and SPO I, CRCPS has not yet been assigned title to the remaining units comprising the Property, because SPO I agreed to continue to hold title and, upon the instruction of CRCPS, to directly sell the units to a buyer designated by CRCPS. *Id.* at ¶ 23, Ex. 4.  The ARCU was entered into between CRCPS and SPO I to save CRCPS and its limited partners approximately $1 million in HOA dues, taxes and other payments.  *Id.* ¶ 24; *see also* **Exhibit B**, 40:2-43:4.  Accordingly, SPO I continues to hold title to the Property, and CRCPS continues to hold a first priority lien on the Property by means of the respective deeds of trust. *See* Ex. A at ¶ 25.

CRC I, as general partner of CRCPS, has been cognizant of the limited partners' desire to liquidate their investment, and has consistently and regularly provided the investors notices regarding appraisals of the Property, opportunities to sell the Property through bulk sales of the condominium units or sales of individual units, and plans for the return of the limited liability partners' capital contributions. *Id.* at ¶ 26. Consistent with the exit strategy described in the PPM and set forth in § 13.06 of the Partnership Agreement, CRC I sent notices beginning on March 15, 2016, to the limited partners, including the Li Plaintiffs, giving them an opportunity to have their

limited partnership interest redeemed to the partnership, CRCPS. *Id.* at ¶ 27. The Li Plaintiffs ultimately rejected this opportunity. *Id.* at ¶ 28.

CRC I has diligently attempted to find a suitable exit strategy for all investors, which would necessarily involve a sale of the Property. *Id.* at ¶ 29. Exercising its reasonable business judgment, and given the limited partners stated interest in liquidity, CRC I determined that an offer for a bulk sale of the Property was in the best interest of CRCPS. *Id.* at ¶ 30. On June 5, 2019, CRCPS entered into a Letter of Intent ("LOI") to sell all of the Property (then comprised of 17 units) to a buyer in a transaction referred to as a bulk sale for total consideration of $49.5 million. *Id.* at ¶ 31. On October 8, 2019, the Li Plaintiffs sought to enjoin CRCPS from proceeding with that bulk sale. [ECF 32]. After an evidentiary hearing, during which the Li Plaintiffs presented no witnesses or other documentary evidence, Magistrate Judge Varholak denied the Li Plaintiffs' motion to enjoin the bulk sale. [ECF 59]. On that same day, Magistrate Judge Varholak also granted CRCPS' Petition for Order to Show Cause Pursuant to C.R.S. § 38-35-204, extinguishing the spurious lis pendens filed by the Li Plaintiffs. [ECF 59 and 68].

Immediately thereafter, and before this case was consolidated with Case No. 19-cv-2637, the Cui Plaintiffs filed a new lis pendens despite having no legal basis for doing so. [ECF 28; Case No. 19-cv-2637]. The prospective bulk sale buyer on the $49.5 million sale then backed out of the bulk sale, specifically citing the Cui Plaintiffs' lis pendens. CRCPS was forced to again petition the Court to extinguish the spurious lis pendens, which was ultimately granted on February 27, 2020. [ECF 164].

### III.   <u>STANDARD OF REVIEW</u>

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quotation omitted); *see also O Centro Espirita Beneficiente Unia Do Vegetal v. Ashcroft*, 389 F.3d 973, 977 (10th Cir. 2004) (same).   The purpose of a preliminary injunction is limited and is designed "to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). Although the grant or denial of a preliminary injunction is a decision which lies within the sound discretion of the trial court, "[a] preliminary injunction is an extraordinary remedy, the exception rather than the rule." *Free the Nipple-Fort Collins v. City of Fort Collins, Co.*, 916 F.3d 792, 797-98 (10th Cir. 2019).

To obtain a preliminary injunction, the movant must demonstrate: "(1) substantial likelihood that movant will eventually prevail on the merits; (2) a showing that the movant will suffer irreparable injury unless the injunction issues; (3) proof that the threatened injury to the movant outweighs whatever damage the proposed injunction will cause the opposing party; and (4) a showing that the injunction, if issued, would not be adverse to the public interest." *Id.*   Courts are especially cautious when granting an injunction that: (1) requires the nonmoving party to take affirmative action – a mandatory preliminary injunction – before a trial on the merits occurs; (2) disturbs the status quo; or (3) affords the movant substantially all the relief it would be entitled to if it prevailed in a full trial.   *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009). Under those circumstances, the movant must satisfy a heightened burden and demonstrate that the

four factors weigh "heavily and compellingly" in the movant's favor.  *See O Centro*, 389 F.3d at

977.  Of significance, all three circumstances warranting a heightened burden are present here.

## IV.    ARGUMENT

**A.    The Li Plaintiffs' Failure to Present Any Relevant Evidence Bars Injunctive Relief**

In their Motion, the Li Plaintiffs do not proffer any affidavits, declarations or other

documentary evidence that supports their right to relief, and instead rely almost entirely on

argument from counsel.  For this reason alone, the Li Plaintiffs' Motion should be denied.

While the movant need not prove all aspects of his or her case in full for a preliminary

injunction, *see Atty. Gen. of Okla. v. Tyson Foods, Inc.*, 565 F.3d 769, 776 (10th Cir. 2009), the

movant must at least put forward some evidence to support a preliminary injunction. *See, e.g.*,

*Voile Mfg. Corp. v. Dandurand*, 551 F. Supp. 2d 1301, 1307 (D. Utah 2008) ("Courts require more

than unsupported factual conclusions to support . . .a finding [of irreparable harm]."); *see also*

*Underwood v. Bank of Am. Corp.*, No. 18-cv-02329-PAB-MEH, 2018 WL 6655913, at *6 (D.

Colo. Dec. 19, 2018) (concluding that plaintiffs failed to offer sufficient evidence of irreparable

harm where declarations submitted by plaintiffs were from close friends and business associates).

To that end, conclusory statements, that merely reiterate the four requirements for preliminary

relief, do not establish entitlement to preliminary injunction. *See Muhammad v. U.S.*, 295 F. App'x

289, 291 (10th Cir. 2008).

Aside from three largely irrelevant exhibits, the Li Plaintiffs' Motion is simply a series of

unverified and wholly unsupported conclusory statements.  Such statements standing alone,

however, do not justify the issuance of a mandatory injunction. *See Blango v. Thornburgh*, 942

F.2d 1487, 1493 (10th Cir. 1991) (noting that arguments that are "merely conclusory reiterations

4848-0079-8906.4

of the requirements for an injunction couched in the form of declarative statements" are insufficient). Moreover, the so-called evidence attached to the Motion, which does not even include the relevant contracts, fails to demonstrate that any breach has occurred or that the ARCU is somehow unenforceable. Instead, the Li Plaintiffs simply rely on argument from counsel. But to establish a right to an injunction, evidence, not mere assertion, is required. Because the Motion contains no relevant evidence whatsoever, the Li Plaintiffs' request must be denied.

**B.     The Li Plaintiffs' Request to Enjoin CRCPS' So-Called Plan to Distribute Collateral in Kind Does Not Relate to the Claims in the Third Amended Complaint ("TAC")**

The Li Plaintiffs' Motion is apparently based, in part, on an alleged breach of the Partnership Agreement and violation of the Colorado Uniform Limited Partnership Act, C.R.S. § 7-62-101, *et seq*. (the "Act"). But the Li Plaintiffs have not alleged, let alone established, any breach of the Partnership Agreement or violation of the Act, nor have they pled such a claim in their TAC. [ECF 121].

Preliminary injunctions are only appropriately used to grant intermediate relief of the same character as that which may be finally granted at the conclusion of the litigation. *See DeBeers Consol. Mines v. U.S.*, 325 U.S. 212, 220 (1945). In other words, "injunctive relief must relate in some fashion to the relief requested in the complaint." *Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1134 (11th Cir. 2005). When the movant seeks intermediate relief beyond the claims in the complaint, the court is powerless to enter a preliminary injunction. *See Stewart v. U.S. Immigration & Naturalization Serv*., 762 F.2d 193, 198-99 (2d Cir. 1985) (holding that the district court lacked jurisdiction to issue a preliminary injunction because the movant had

"present[ed] issues which [were] entirely different from those which [had been] alleged in his original complaint").

The Li Plaintiffs do not even attempt to demonstrate that they are likely prevail on the merits of any cause of action related to the purported "illegal scheme" that they seek to enjoin. [ECF 165, p. 4]. Nor could they because the TAC does not include any claim that would permit the remedy that the Li Plaintiffs seek. At most, the Li Plaintiffs' TAC includes so-called derivative claims for breach of contract and breach of fiduciary duty, but these causes of action are wholly unrelated to CRCPS' alleged "plan to distribute collateral in kind to limited partners." [ECF 165, p. 5]. For this reason alone, the Li Plaintiffs' request to enjoin the distribution of collateral should be denied.

But even assuming that the Li Plaintiffs had asserted this claim, there is nothing in the Partnership Agreement or the Act that precludes a limited partner from agreeing to receive an in kind distribution. The Partnership Agreement states that "[n]o Limited Partner shall have any right to demand or receive any distribution from the Limited Partnership in any form other than cash, upon dissolution or otherwise." *See* Ex. A, ¶ 7, Ex. 2, § 9.05. While this provision certainly prohibits the Limited Partners from asserting a right to an in kind distribution, it does not prohibit CRC I from exercising its discretion to issue an in kind distribution, particularly where a Limited Partner is willing to accept a distribution of that nature.

The Act is consistent with the terms of the Partnership Agreement. C.R.S. § 7-62-605 provides that a limited partner has no right to receive any distribution except in cash unless the partnership agreement in writing provides otherwise. It further provides that a limited partner may not be compelled to accept a distribution in kind to the extent that the percentage of the asset

4848-0079-8906.4

distributed to the partner exceeds a percentage of that asset that is equal to the partner's interest in the partnership. *See* C.R.S. § 7-62-605. According to the Li Plaintiffs, this statute also prevents a limited partner from agreeing to receive an in kind distribution. But the statute includes no such language. And while Colorado courts have not directly addressed this issue, several commentators have opined that "if a limited partner is willing to accept a particular item, the language of the [Act] would seem to permit a general partner to distribute that item to the limited partner even though the other limited partners object." 1 Colo. Prac., Methods Of Practice § 4:40 (7th ed.); *see also* 9 La. Civ. L. Treatise, LLC & Partnership Bus. & Tax Plan § 1:18 (4th ed.) (interpreting identical provision). Neither the Partnership Agreement, nor the Act, requires the Court to interfere with CRC I's business judgment.

**C.     The Li Plaintiffs Cannot Satisfy the Heightened Burden Required for a Mandatory Injunction to Force CRCPS to Call the Loan and Repay Investors**

> ### *1.     The Li Plaintiffs Cannot Demonstrate a Substantial Likelihood of Success on the Merits of Their Breach of Contract Claim*

The only conceivable cause of action that the Li Plaintiffs have pled in support of their request for injunctive relief is Count III, which is called "Derivative CRCPS against SPO1 for Breach of Loan Agreement." [ECF 121, p. 38]. This cause of action, however, improperly combines five separate claims based on five different contracts and fails to comply with the requirements of Fed. R. Civ. P. 23.1. For these reasons alone, the Li Plaintiffs cannot demonstrate a substantial likelihood of success on any claim that would entitle them to injunctive relief. More critically, however, no breach by SPO I has occurred.

11

      i.    <u>The Li Plaintiffs Fail to Comply With the Requirements Under Fed. R. Civ. P. 8(a)-(b) and 10(b)</u>

The Li Plaintiffs' breach of contract claim fails to comply with basic pleading requirements set forth in Fed. R. Civ. P. 8 and 10 and is therefore subject to dismissal.

Fed. R. Civ. P. 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of this rule is to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Fed. R. Civ. P. 10(b), in turn, requires that the allegations of a claim must be made "in numbered paragraphs, each limited as far as practicable to a single set of circumstances … [and] each claim founded upon a separate transaction or occurrence … must be stated in a separate count." A party that combines several claims for relief in a single count disregards these rules, which warrants dismissal. *See Fikes v. City of Daphne*, 79 F.3d 1079, 1082 (11th Cir. 1996); *see also JPMorgan Chase Bank, N.A. v. Hayhurst Mortgage, Inc.*, No. 10-21501-CIV, 2010 WL 2949573 at * 2-3 (S.D. Fla. July 26, 2010) (dismissing complaint for, among other things, failing to separate transactions into separate claims pursuant to Rule 10(b)); *Youngworth v. Gentile*, No. C.A. 05-30108, 2006 WL 516757, at * 4 (D. Mass. Feb. 27, 2006) (complaint dismissed with leave to amend); *Veltmann v. Walpole Pharmacy, Inc.*, 928 F. Supp. 1161, 1163-64 (M.D. Fla. 1996) (holding that dismissal without prejudice or order for more definite statement were warranted by lack of separate counts alone, although other factors required dismissal with prejudice).

Count III violates Fed. R. Civ. P. 8(a)(2) and 10(b). The Li Plaintiffs combined into a single count four separate breach of contract claims based on four different contracts – the Loan

Agreement, Promissory Note, PPM and Partnership Agreement – while also apparently seeking a declaratory judgment that a fifth contract – the ARCU – is void *ab initio*. Because of this improper combination of claims, it is nearly impossible to determine which claims the Li Plaintiffs are intending to assert, let alone the parties against whom the purported claims are asserted. The result is untenable and clearly in violation Fed. R. Civ. P. 8(a)(2) and 10(b), which requires dismissal.

     ii.    <u>The Li Plaintiffs Fail to Comply With the Requirements Under Fed. R. Civ. P. 23.1</u>

Count III also requires dismissal because it was asserted as a derivative claim, but does not comply with the verification requirement under Fed. R. Civ. P. 23.1.

Compliance with Fed. R. Civ. P. 23.1 is mandatory and requires that: (1) the complaint be verified; (2) the claim alleges that plaintiff was a partner at the time of the transaction; (3) the claim alleges efforts made to obtain the desired action from the general partner or the reason for failing to do so; and (4) plaintiff fairly and adequately represents the interests of similarly situated limited partners. *See Eschino v. Lopez*, Civ. No. 14-cv-2686, 2015 WL 5047650, at * 1 (D. Colo. 2015). The mandatory verification of a derivative complaint cannot come as a surprise to the Li Plaintiffs, as the Court expressly noted during the February 27, 2020 hearing that the complaints in this proceeding were not verified. *See* **Exhibit C**, 20:13-20.

Despite this warning, and the repeated opportunity to amend their pleading, the Li Plaintiffs' TAC is unverified. Verification requires that a signed and notarized statement be attached to the pleading in which a witness swears that the statements in the pleading are true and correct. *See Neal v. Kelly*, 963 F.2d 453, 457 (D.C. Cir. 1992) (verification is confirmation of truth by affidavit or oath). A written declaration made under penalty of perjury can be used instead of

an affidavit to properly verify a pleading.  *See* 28 U.S.C. § 1746.  But it must state one of the following: (a) if executed outside the United States, "I declare (or certify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct"; or (b) if executed within the United States, its territories or commonwealth,  "I declare (certify or state) under penalty of perjury that the foregoing is true and correct." 28 U.S.C. § 1746(1) and (2).

 The "verification" attached to the TAC is not a proper verification.[2] [ECF 121-8]. It is certainly not an affidavit, and if intended to be a declaration it does not include the very important mandatory language. *See, e.g.*, *Pfiel v. Rogers*, 757 F.2d 850, 859 (7th Cir. 1985) (an affidavit is a written statement of facts, signed by the person making it and sworn to before someone who is authorized to administer oaths). This not simply a technical deficiency that can be ignored; rather, the lack of proper verification is alone grounds for dismissal. *See Eschino*, 2015 WL 5047650, at * 1.

iii.   The Li Plaintiffs Cannot Demonstrate That Any Breach of Contract Has Occurred

Even assuming that the Li Plaintiffs had complied with the applicable pleading requirements, they cannot demonstrate that any breach of the Loan Agreement – or any other agreement – has occurred.

Under the terms of the ARCU, which incorporates the underlying loan documents, SPO I is expressly authorized and required to hold record title to the Property.  *See* Ex. A, Ex. 4.  Thus,

---

[2] It is unclear where Hsin-Yi Wu was when the verification was apparently executed. It is dated January 19, 2019 (which admittedly may be a typographical error), "received" by counsel apparently on January 20, 2020 and stamped by an Illinois notary public, apparently, on January 19, 2020 (the day before it was received by counsel. [ECF 121-8, p. 2].

its failure to repay the Loan or convey title to CRCPS does not – and cannot – constitute a breach. *See, e,g., K-2 Ski Co. v. Head Ski Co.*, 467 F.2d 1087 (9th Cir. 1972) (holding that if the facts as alleged in a verified complaint are substantially controverted, an injunction should not be granted unless the moving party makes a further showing).  Moreover, "specific performance can only be accomplished according to the terms of the parties' contract." *Ballow v. PHICO Ins. Co*., 878 P.2d 672, 680 (Colo. 1994).  To that end, "[a] court may not make a contract for the parties and then order it to be specifically performed." *Id*.; *D.H. Overmyer Co. v. Brown*, 439 F.2d 926, 929 (10th Cir. 1971); *see also Elliott v. Joyce*, 889 P.2d 43, 46 (Colo. 1994) (internal citation omitted) ("[A] court is without authority to compel a party to do something he or she did not contract to do"). Because the parties agreed that SPO I would continue to hold title, the Court cannot order the specific performance that the Li Plaintiffs seek.  This claim therefore fails as a matter of law.

Nor can the Li Plaintiffs demonstrate that the ARCU is void *ab initio* due to lack of consideration.  Under Colorado law, consideration is defined as "any benefit to a promisor or any detriment to a promisee at the time of the contract—no matter how slight."  *Lucht's Concrete Pumping, Inc. v. Horner*, 255 P.3d 1058, 1061 (Colo. 2011).  An agreement is supported by consideration if "the promisee, in return for a promise, does anything legal which he is not bound to do, or refrains from doing anything which he has a right to do, even though there is no actual loss or detriment to him or actual benefit to the promisor." *Troutman v. Webster*, 257 P. 262, 264 (Colo. 1927); s*ee also Lucht's Concrete*, 255 P.3d at 1061 (noting that "[c]onsideration may take the form of forbearance by one party to refrain from doing something that it is legally entitled to do").

The Li Plaintiffs contend that the ARCU "imposes costs on CRCPS in excess of benefits" and therefore "lacks consideration and is unenforceable *ab initio*."  [ECF 121, ¶ 156].  But the plain language of the agreement and the unrebutted testimony of Rick Hayes demonstrates otherwise.  After exercising its "put" rights under the Loan Agreement, SPO I was legally obligated and entitled to transfer title to the Property to CRCPS.  Under the ARCU, however, SPO I agreed to refrain from doing so, which alone constitutes adequate consideration. And whether CRCPS received a benefit (which it did) is immaterial.  *See Troutman,* 257 P. at 264 (if promise suffered a legal detriment at the request of the promisor, it makes no difference whether or not it resulted in benefit to the promisor). But in any event, CRCPS did in fact receive a significant benefit under the ARCU.  Mr. Hayes testified that the ARCU was entered into between CRCPS and SPO I to save CRCPS and its limited partners approximately $1 million in HOA dues, taxes and other payments.  *See* Ex. C, 40:2-43:4.  This too constitutes adequate consideration.  In sum, there is simply no basis to declare the ARCU unenforceable.

### 2. *The Li Plaintiffs Cannot Demonstrate That They Will Suffer Irreparable Harm Without Injunctive Relief*

Nearly eight months after they initiated this lawsuit, the Li Plaintiffs now argue that they will suffer real, immediate and irreparable injury unless the Court forces CRCPS to "call the Loan."  They contend that, absent injunctive relief, the limited partners will be "stuck in CRCPS' illegal scheme," which, in turn, will force them to sue CRC I to recover damages.  [ECF 165, p. 4].  But their unexplained delay, and the existence of a meaningful remedy, do not demonstrate irreparable harm.

Courts have consistently held that "a showing of probable irreparable harm is the single most important prerequisite." *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004) (citation omitted). Irreparable harm "does not readily lend itself to definition" and proving irreparable harm is not "an easy burden to fulfill." *Id*. at 1262 (citation omitted). "To constitute irreparable harm, an injury must be certain, great, actual and not theoretical." *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) (citation omitted). It must also "be imminent, such that there is a clear need to act to prevent the harm from occurring." *Id*. To that end, "[a] movant's delay in seeking injunctive relief cuts against finding irreparable injury." *See S. Ute Indian Tribe v. U.S. Dep't of Interior*, Civil Action No. 15-cv-01303, 2015 WL 3862534, at *1 (D. Colo. June 22, 2015).

The essence of showing irreparable harm is demonstrating an injury that money damages cannot sufficiently remedy. *See, e.g., High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*, 49 F.3d 1551, 1557 (Fed. Cir. 1995); *Voile*, 551 F. Supp. 2d at 1307. "Economic loss usually does not, in and of itself, constitute irreparable harm." *See Cobra N. Am., LLC v. Cold Cut Systems Svenska AB*, 639 F. Supp. 2d 1217, 1231 (D. Colo. 2008) (citation omitted). Similarly, a claim of "[p]urely speculative harm will not suffice"; instead, a plaintiff must show that "significant risk of irreparable harm" is present to meet the burden. *RoDa Drilling*, 552 F. 3d at 1210. "Wholly conclusory and speculative statements, no matter how vividly argued, do not amount to irreparable harm." *Digital Ally, Inc. v. Corum*, Case No. 17-cv-02026-DC-GLR, 2017 WL 1545671, at *4 (D. Kan. Apr. 28, 2017).

Even assuming the Li Plaintiffs pled a legally cognizable claim to justify their requested injunctive relief, their six month delay in requesting this injunctive relief significantly undermines

any claimed irreparable harm.  Moreover, they readily admit that they are seeking only money damages, and, if successful, they will obtain a money judgment.  And while they contend that they will be forced to participate in the "illegal scheme to have the limited partners form into groups and arrange for each group to take title to a unit of collateral and then sell it," they also admit they can simply "sue the general partner and then pierce its corporate veil to recover."  [ECF 165, p. 4].  In other words, the Li Plaintiffs themselves have identified an available and meaningful remedy.  Without any showing of irreparable harm, injunctive relief is not warranted.

>    3.    *The Balance of Equities Strongly Disfavors Injunctive Relief*

The Li Plaintiffs make no attempt to demonstrate that the balance of equities favor an injunction.  Focusing solely on the purported harm that they insist will result if the Court does not force CRCPS to "call the Loan," the Li Plaintiffs fail to consider the impact that an injunction will have not only on CRCPS itself, but also on the 90% of the limited partners who are not a party to this lawsuit.

Under the heightened disfavored-injunction standard, the Li Plaintiffs are required to make a strong showing that the threatened irreparable harm to them or the company outweighs the threatened harm the injunctive relief may inflict on CRCPS, CRC I, and the other limited partners.  *See Free the Nipple*, 916 F.3d at 806.  The Li Plaintiffs' fail to make this showing for several reasons.  First, the Li Plaintiffs ignore that the proposed distribution of collateral was expressly requested by the other limited partners – it is not "a grotesque monstrosity dreamed up by CRCPS because they refuse to take the obvious step of calling the Loan."  [ECF 165, p. 8].  Second, the Li Plaintiffs provide no basis for their sweeping conclusions, particularly as it relates to any alleged disparity of distributions to limited partners or the negative impact of any so-called "flood" in the

market of the condominium units owned by "people all over the world."  *See id*.  And finally, the Li Plaintiffs ignore that CRC I is entitled, and obligated, to exercise its business judgment, including weighing relevant market conditions and certain limited partners' desire for immediate liquidity.  Interfering with the parties' contractual agreements in the manner requested by the Li Plaintiffs would nullify the purpose of the limited partnership agreement, including CRC I's role as general partner, and harm all limited partners by preventing distributions and causing CRCPS to continue to accrue maintenance and management fees.  The balance of equities does not weigh in favor of granting the Li Plaintiffs' requested injunction.

### 4.     An Injunction Would Disserve the Public Interest

The Li Plaintiffs do not advance any argument relating to this factor either. As described above, the structure of the investment, the terms of the parties' agreements, and governing state and federal law do not support the Li Plaintiffs' request for an injunction.  As such, the issuance of a preliminary injunction would undermine the public's interest in the proper enforcement of state and federal law and the independence of corporate governance.  Moreover, "there is a public interest in upholding enforceable contracts." *Mercury Cos., Inc. v. First Am. Corp.*, No. 08-cv-00911, 2008 WL 4861950, at *9 (D. Colo. Nov. 10, 2008).  As such, the terms of the Loan Agreement and the ARCU, as expressly agreed to by CRCPS and SPO I, should be strictly enforced. Allowing the Li Plaintiffs to interfere with the parties' contractual rights, on the other hand, does not advance any public interest.  Accordingly, this factor also weighs against injunctive relief.

## V.    <u>CONCLUSION</u>

The Li Plaintiffs have failed to establish the right to any injunctive relief.  Their Motion should be denied.

DATED: April 22, 2020.

*/s/ James D. Kilroy*
James D. Kilroy
Stephanie A. Kanan
SNELL & WILMER L.L.P.
1200 Seventeenth Street, Suite 1900
Denver, CO 80202-5854
Phone: (303) 634-2000
Fax: (303) 634-2020
Email:  jkilroy@swlaw.com
Email:  skanan@swlaw.com

***Counsel for Defendant Waveland Ventures, LLC, Colorado Regional Center Project Solaris, LLLP, Colorado Regional Center, LLC and Colorado Regional Center I, LLC***

## CERTIFICATE OF SERVICE

This is to certify that on April 22, 2020, a true and correct copy of the above and foregoing document has been electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record:

Douglas Litowitz
413 Locust Place
Deerfield, IL  60015

Hubert Kuo
Brian P. Stewart
Ardent Law Group
4340 Von Karman Avenue, Suite 290
Newport Beach, CA  92660

Harold A. Haddon
Ty Gee
David Maxted
Haddon Morgan and Foreman, P.C.
150 East 10th Avenue
Denver, CO  80203

/s/Sandy Braverman
for Snell & Wilmer L.L.P.

4848-0079-8906.4