# EXHIBIT B

```
 1                   IN THE UNITED STATES DISTRICT COURT

 2                       FOR THE DISTRICT OF COLORADO

 3
     Civil Action No. 19-cv-02443-STV
 4

 5    JUN LI, QI QIN, YI LIU, JIE YANG,
      YUQUAN NI, ZHONGZAO SHI, FANG SHENG,
 6    SHUNLI SHAO, KAIYUAN WU, ZHIJIAN WU,
      ZHONGWEI LI, SA WU, FAN ZHANG, LIN QIAO,
 7    JINGE HU, RUJUN LIU, YING XU, LU LI, and
      YUWEI DONG, individually, as well as
 8    derivatively for COLORADO REGIONAL CENTER
      PROJECT SOLARIS LLLP,                                    REDACTED
 9
             Plaintiffs,
10
             vs.
11
     WAVELAND VENTURES LLC,
12   COLORADO REGIONAL CENTER PROJECT SOLARIS
     LLLP, COLORADO REGIONAL CENTER,
13   COLORADO REGIONAL CENTER I LLC,
     SOLARIS PROPERTY OWNER LLC,
14   SOLARIS PROPERTY OWNER I LLC, and
     PETER KNOBEL,
15
             Defendants.
16
     -----------------------------------------------------------------
17
             TRANSCRIPT OF ELECTRONICALLY RECORDED PROCEEDINGS
18                             MOTION HEARING

19   -----------------------------------------------------------------

20         Proceedings before the HONORABLE SCOTT T. VARHOLAK,
     Magistrate Judge, United States District Court for the
21   District of Colorado, commencing at 9:22 a.m. on the 22nd day
     of October, 2019, in Courtroom A402, Alfred A. Arraj United
22   States Courthouse, Denver, Colorado.

23
     Transcriber:  JULIE H. THOMAS
24                 901 19th Street, Room A256
                   Denver, CO 80294
25                 (303)335-2111

             Proceedings recorded by electronic recording device;
                   transcription produced via computer.
```

1  been totally unencumbered.
2  Q.  Let's -- before we get there -- I'll get to that, but
3  we've now referenced the put right and call right.  What
4  happened at the three-year mark when the parties,
5  borrower/lender, each had that put and call right?  What
6  actually happened?
7  A.  The lender notified us of their intent to tender the units
8  to us.
9  Q.  In what time period is that?
10 A.  That would have been three years after -- well, it was
11 probably a few months before the third anniversary of the
12 first loan advance.
13 Q.  Okay.  March, April 2015?  Does that time frame sound
14 right?
15 A.  Correct.
16 Q.  So the borrower puts the properties to the lender.  The
17 Court has seen, through the filings, that the title to the
18 properties didn't go to CRCPS.  Is that accurate?
19 A.  That is accurate.
20 Q.  Why?  First tell us why, and then tell us how we got
21 there.
22 A.  Um, it's really just a question of cost and what we felt
23 was in the best interest of the investors.  Um, were we to
24 transfer title, um, to the limited partnership versus holding
25 a deed of trust, the cost of that exercise would have

1   approximated a million dollars.  Um, there's a 1 percent
2   transfer tax in the Town of Vail.  We would have had to pay --
3   you know, prepay three months of HOA dues.  In fact, it would
4   have caused us then to go out and insure the various units
5   which, you know, which was being insured at the time -- you
6   know, was being insured by SPO.
7          So we made a business judgment that, um, basically
8   entailed not incurring a million dollars of partnership
9   expenses to take title versus holding a first deed of trust,
10  that our security position was such that it just simply didn't
11  merit taking title of the properties.
12  Q.   In other words, the security position remains the first
13  position.
14  A.   Correct.
15  Q.   Let me restate it to make sure we've got it.
16          SPO entered into an agreement with CRCPS that,
17  notwithstanding the put, SPO would retain title; correct?
18  A.   Correct.
19  Q.   And ultimately the objective was to liquidate or sell
20  these units; correct?
21  A.   The objective never changed.  It was just basically, in
22  our opinion, form over substance in taking title to the units
23  and burdening the partnership with a million dollars of
24  expenses that given that we held a first security interest in
25  the real estate underlying the loan, it simply didn't make any

19-cv-02443-STV                                                    10/22/19    42

1   sense to incur that expense.
2   Q.  Let me make it really simple.  If SPO had transferred
3   title to CRCPS, CRCPS then transfers title to a third-party
4   purchaser, there would be a $1 million consequence?
5   A.  Correct.
6   Q.  If SPO holds title and conveys to the ultimate purchaser,
7   there would not be a million-dollar hit?
8   A.  Correct.
9   Q.  And that's why you did it?
10  A.  Correct.
11  Q.  For the first time you've used the term "business
12  judgment."  Tell us why that decision was in the best
13  interests of the limited partnership.
14  A.  Well, ultimately when a unit is sold, it doesn't --
15  there's no creation of more risk for the partnership relative
16  to the spending of a million dollars of monies that, in our
17  judgment, was not necessary.
18  Q.  Who would have taken that million-dollar hit had you just
19  gone ahead and taken title?
20  A.  All the investors.
21  Q.  To the tune of a million dollars?
22  A.  Correct.
23  Q.  As we sit here today, is SPO willing to transfer the
24  properties directly to a final purchaser so that that million
25  dollars is not incurred?

1   A.   Yes, and we have done it twice.
2   Q.   And if they don't, CRCPS has the first deed of trust on
3   all those properties; correct?
4   A.   Correct.
5   Q.   So taking us through -- this hasn't been cleared up yet.
6   We started with -- as I understand it, 19 units were pledged
7   as collateral by SPO.  Correct?
8   A.   Yes.
9   Q.   We are now talking about 17.  What happened to those other
10  two?  You started to mention this.
11  A.   We were approached by, um, initially a group of eight
12  investors that wanted to tender their partnership interests
13  for a specified condo unit and then have the right to either
14  keep, sell, dispose, whatever they wanted to do with that
15  condominium unit.  And then we got approached by a second
16  group.  You know, in both instances, um, we accepted the
17  tendering of their units and transferred the real estate to an
18  entity owned by those specific members of the partnership.
19  Q.   Those limited partners were similarly situated to the
20  plaintiffs in that they each invested $500,000; correct?
21  A.   Correct.
22  Q.   How did they do on a return of their investment based on
23  the transactions that you mentioned?
24  A.   One sold a unit, and one still owns a unit.
25  Q.   How about the one that was sold?