# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-02443

Jun Li, Qi Qin, Yi Liu, Jie Yang, et al.

        Plaintiffs,

        v.

Hon. Judge Moore
Hon. Magistrate Varholak

Colorado Regional Center Project Solaris LLLP,
Colorado Regional Center I, LLC, et al.

        Defendants.

---

## LI PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIM BY CRC DEFENDANTS UNDER FED. R. CIV. P. 12(b)(6) AND FOR ORDER DECLARING GENERAL PARTNER REMOVED INSTANTER

---

Defendant Colorado Regional Center I LLC ("CRC1") refuses to be removed as general partner of Colorado Regional Center Project Solaris LLLP (the "LP") even though 70-plus percent of limited partners demand its removal for cause due to fraud and breach of fiduciary duty.  CRC1 and its affiliates have filed a Counterclaim to the Li Plaintiffs' Third Amended Complaint in which they assert, without citing any precedent, that they cannot be removed as general partner absent a *judicial* finding that they committed fraud, and demanding a declaratory judgment that they are still the general partner [ECF 204].

The Counterclaim must be dismissed for failure to state a claim under Fed. R. Civ. Pro. 12(b)(6) because:

(a) The removal of CRC1 as general partner was completely in accord with the voting procedures outlined in the Limited Partnership Agreement (the "LPA");
(b) The LPA constitutes the law of the LP and it does not contain any provision requiring judicial approval to effectuate the removal of the general partner;
(c) There is no overriding statutory or free-floating legal principle requiring judicial approval for removal of a general partner, since *judicial* removal and *voting* removal are two different methods by which limited partners can remove a general partner, and they have different procedures such that only a *judicial* removal requires a *judicial* procedure;
(d) A general partner can be removed for cause without any prior judicial stamp of approval on the "cause," but in any event the limited partners clearly stated that the cause was "fraud" and they cited a litany of frauds and breaches of fiduciary duty that justified their removal decision;
(e) CRC1 owes fiduciary duties to the limited partners, and when over 70% of them believe that CRC1 has committed fraud and breach of fiduciary duty, CRC1 has a duty to listen to the limited partners, who are the *owners* of the LP and the principals for whom CRC1 is merely an agent; and
(f) This Court cannot rewrite a clear and unambiguous limited partnership agreement by imposing a surreptitious judicial approval requirement.[1]

To begin with, this Court was notified in a Status Report [ECF 183] that at least 106 (now 109) of the 152 limited partners in the LP voted to remove CRC1 for cause due to fraud and breach of fiduciary duty. The Status Report included copies of 106 proxies [ECF 183 ex. 1-3] and also a letter from the proxyholder to CRC1 explaining why it was being removed [ECF 183 ex. 4]. The Status Report cited chapter and verse of the sections of the LPA allowing the limited partners to remove the general partner for cause (including fraud) by the vote of 66% of limited partners, which is what happened. This accords with the Colorado Uniform Limited Partnership Act which allows a general partner to be removed in accordance with the partnership agreement. Colo. Rev. Stat. 7-62-402(1)(c).

There is nothing - nada - zilch - in the LPA which mandates a judicial determination of fraud as a prerequisite (or as a condition subsequent) to removal of the general partner.

---

[1] Because this is a Motion under Fed. R. Civ. Pro. 12(b)(6) it is exempt from the conferral requirement pursuant to D.C.COLO.LCivR 7.1(b)(2).

A limited partnership agreement is the fundamental constitution of a limited partnership, or as courts have put it: "[T]he agreement is the law of the partnership." *Obert v. Environmental Res. And Dev. Corp.*, 771 P.2d 340, 346 (Wash. 1989), quoting Crane and Bromberg, *Partnership* §5, at 43 (1968). It is black letter law that an agreement must be construed against the drafter, who in this case was CRC1. *Compass Ins. Co. v. City of Littleton,* 984 P.2d 606, 613 (Colo. 1999).

CRC1's Counterclaim fails to state a claim based on the LPA which *they* drafted. If they had wanted to require judicial approval prior to (or subsequent to) a 66% vote of limited partners to remove the general partner for fraud, they could have conditioned removal on, for example, "*a finding of fraud as determined by a court of competent jurisdiction.*" Their failure to use this type of language requiring judicial approval constitutes their own decision, and they cannot now rewrite their own document just because they don't like the result when their own agreement was followed by the limited partners.

At this point, the Court must ask why CRC1 wants to remain general partner when 109 of 152 limited partners believe that they have acted fraudulently, breached fiduciary duties, and should be be removed? Why would CRC1 deny the wishes of 70% or more of the limited partners to whom they owe fiduciary and contractual duties? Not to be too cynical, but perhaps - just perhaps - the answer lies in the management fee which has CRC1 has been collecting for the last 8 years of $1.4 to $1.6 million annually, as their "reward" for managing the limited partners' investment into the dirt. After all, CRC1 decided to put $82.5 million of limited partners' money into a loan based on inadequate collateral, which they failed to call at maturity, and the money is now (at year 8 of a 5-year investment) stuck in illiquid,

3

unsellable, and overpriced condominiums that are worth perhaps $40 million, while CRC1 continues to accrue management fees.  How greedy and selfish can *fiduciaries* be to lose $40 million dollars of other peoples' money and then express incredulity and recalcitrance when those investors want to fire them?

The limited partners are fed up.  They were given a prospectus which said in absolutely clear language that if the loan was not *prepaid by special warranty deed*, then CRC1 could call the entire loan balance and interest to be paid in cash at 5-year maturity:

> [From years 3 to 5 of the loan] SPO shall have the right to prepay all or certain minimum amounts of the outstanding principal balance on the Solaris Note by tendering to the Company either (i) a special warranty deed to a Condominium Unit . . . or (ii) cash in the amount of the principal amount of the prepayment plus all accrued interest.
>
> On the five-year anniversary date of each respective Loan Advance (the "Maturity Date"), provided that the specific Loan Advance has not previously been paid, SPO will be obligated to pay the entire remaining unpaid principal balance together with any accrued and unpaid interest in full.

Private Placement Memorandum at pp. 1, 3 (emphasis added).  CRC1 admits that the loan was not prepaid by special warranty deed as required by this language, which means that the loan advances matured in 2017, 2018, and 2020, at which time the entire unpaid principal and interest was due and callable.

CRC1's excuse for not calling the loan is the threadbare argument that it entered into a secret agreement with the borrower in 2015 whereby the units were "deemed" transferred in advance 'temporarily' for the purposes of calculating interest due under the loan.  But CRC1 must know that a '*deemed temporary* transfer for the purpose of calculating interest'

cannot satisfy the express requirement of *actual permanent* transfer by special warranty deed. CRC1's claim to be powerless to call the loan is directly contradicted by their own deal documents, which specifically empower CRC1 to call the loan at maturity unless it has been prepaid permanently by special warranty deeds.

The central argument in CRC1's one count Counterclaim is the assertion that they cannot be removed for fraud until there has been a judicial determination that they actually committed fraud, or as they put it: "The Partnership Agreement only provides for the expulsion of a general partner for cause, which requires the parties to seek a judicial determination regarding any contested removal" [ECF 204 at Counterclaim ¶58]. This is a totally false statement and a fraud on this Court, since the LPA does not even mention the words "judicial determination" nor "contested removal" nor "expulsion." CRC1 is just inventing terms out of whole cloth.

**There is no Requirement of a Judicial Hearing**

Colorado law provides that a limited partnership agreement must be enforced like any other contract. *Fox v. I-10, Ltd.*, 957 P.2d 1018, 1022 (Colo. 1998), quoting *Westminster Properties, Inc. v. Atlanta Assocs.*, 301 S.E.2d 636, 637 (Ga. 1983)("Partners, generally, be they general or limited, may make any agreement between themselves that they deem desirable so long as said agreement is not in violation of prohibitory statutory provisions, the common law, or relevant considerations of public policy"). And if a contract is clear and unambiguous, courts must give effect to the plain and ordinary meaning of its terms. *Fox*, 957 P.2d at 1022, citing *Wota v. Blue Cross & Blue Shield*, 831 P.2d 1307, 1309 (Colo. 1992)("The Court should not rewrite a contractual provision that is clear and unambiguous") .

Here, the LPA's provisions for removal of the general partner are crystal clear: the general partner can be removed by a 66% vote at a special meeting called for that purpose at which limited partners can appear by proxies and written consents.

There is NO mention in the LPA of any requirement for judicial determination of removal.  The words "judicial determination" are not in the removal provisions.

There is NO provision in the LPA saying that the general partner has to agree with a removal vote or else the matter is a "contested removal" requiring judicial approval. The words "contested removal" are not in the removal provisions.

There is NO mechanism in the LPA by which the removal of a general partner could be challenged in court.

There is NO requirement in the LPA that the limited partners need judicially sanctioned proof of fraud before or after they remove a partner for fraud; there is NO provision even requiring them to have a good faith belief that the general partner committed fraud; all that is needed is a raw vote of 66% and statement of the "cause."

But even assuming *arguendo* - against the legal precedents - that somehow the limited partners were required to state their evidence of fraud, they have done so abundantly in their proxies and in the Third Amended Complaint.  The proxies and written consents accuse CRC1 of fraud and breach of fiduciary duty for fraudulently claiming they are powerless to call the $82.5 million overdue loan as required by the PPM (and thereby return money to the limited partners).  The limited partners believe that CRC1 fraudulently refuses to call the loan because they want to benefit themselves by drawing a management fee for their own

benefit, in violation of fiduciary duties to maximize gain for the limited partners. The limited partners also assert that the general partner is lying when it says that the $82.5 million loan was somehow repaid, when in fact not a single property was transferred to the LP under a special warranty deed.  Further, the limited partners find it fraudulent that the general partner entered into a secret agreement with the borrower that tried to get around the requirement of transferring property by special warranty deed as required under the loan documents. The limited partners are dumbfounded that the general partner claimed in 2019 tax documents and financial statements that the partnership holds NO property other than a note receivable from the borrower, yet simultaneously told the limited partners that the borrower had repaid the note in full by transfer of property in 2015 under a secret agreement not shown to the limited partners. In letters to the limited partners, CRC1 has fraudulently included the properties - that it does not own - under the term "partnership property."  These inconsistent statements by CRC1 (on the one hand that they own no properties whatsoever, and on the other hand that they own all the collateral properties) are contradictory and one of them must be a lie.  The limited partners gave $82.5 million to the general partner, and three years later it was worth $40 million despite no corresponding decline in the market -- there is no explanation other than breach of fiduciary duty and fraud.

Want more? The limited partners can go all day.  The limited partners have letters from CRC1 saying that the collateral properties were transferred to it by the borrower in 2013, when it fact no properties have ever been transferred.  CRC1 sent quarterly letters to the limited partners saying that the collateral was worth 93% of the loan balance, yet later they conceded that a sale of the collateral would only fetch 50%, without telling the limited partners that the 93% figure was purely hypothetical based on the assumption (which

7

cannot happen in reality) that each unit was sold alone on the market. In addition, CRC1 gave liquidity to friends and business associates who were able to sell their partnership interests (in a vehicle called Lucky Five LLC) ahead of all the other limited partners who wanted liquidity. To cap it off, the entire transaction was a fraud from the beginning because CRC1 made the $82.5 million loan to SPO starting in 2012 by letting SPO set the value of its own collateral based on 2009 figures at which it wanted to sell the properties, not on current market values at the time of the loan advances, and in any event the loan was radically undercollateralized with no mechanism for making the collateral match the value of the loan balance. The Li Plaintiff's Third Amended Complaint sets forth all these events of fraud, negligence, deceit, and breach of fiduciary duty.

There is no statute of limitations for removal of a general partner. *RRW Legacy Management Group, Inc. v. Walker*, 751 Fed. Appx. 993, 996 (9th Cir. 2018)(rejecting a defense of laches by a general partner who was removed, the court said, "Nothing in the Agreement establishes a limitations period for removal of a general partner."). This makes common sense. It would be circular to say that the Li Plaintiffs have to wait until the end of the trial to get a judgment of fraud and only then remove the general partner for fraud, because at that point they would have already received their judicial remedy for fraud without removing the general partner, and would have no further reason to remove the general partner for fraud. The voting process in the LPA is a non-judicial self-help remedy that is designed to allow the limited partners to take action now before they suffer further.

As a result, the limited partners have already done more than the LPA requires in order to remove the general partner. They have followed the LPA to a "T", and under

8

Colorado law, a Court cannot rewrite a clear contract to impose unstated terms. *Bledsoe Land Co. LLLP v. Forest Oil Corp*, 277 P.3d 838, 842 (Colo. App. 4th Div. 2011). CRC1 cannot rewrite their own contract to insert their own private provision requiring court approval before they can be removed; there is no such provision in the LPA and no statute overrides the LPA to insert such a provision.

**There is no Inchoate Right to Judicial Determination Prior to or after Removal**

The CRC Defendants assert some kind of free-floating unanchored obligation of the limited partners to prove fraud *before* they remove the general partner. This would impermissibly insert contrary language into the LPA, which does *not* require proof of fraud. *Betz v. Chena Hot Springs Group*, 657 P.2d 831, 835 (Alaska 1982)(court refused the request of a removed general partner to "imply a reasonable cause requirement" into the partnership agreement). Courts in other states allow the limited partners to remove a general partner based on their belief that the general partner breached the partnership agreement, even *before* a court later affirmed this to be correct. *Davenport Group MG, L.P. v. Strategic Inv. Partners, Inc.,* 685 A.2d 715, 723 (Del. Ch. 1996)("After-acquired but factually undisputed information alone may support the removal of a general partner"). Here there is no dispute about the horrendous transaction that CRC1 created for the limited partners' money, nor how they lied to the limited partners, nor how they failed to call the loan, nor how they misrepresented the value of the collateral, nor how they failed to disclose a secret agreement. These are public facts which are already known and which supply grounds for removal.

9

In summary, the removal language in the LPA is clear and the limited partners have spoken. Indeed, they have spoken in the manner required of them under the LPA that CRC1 drafted and which must be construed against CRC1. It was not easy to get 109 limited partners spread all over the world to agree on removing the general partner. This is obviously something about which they feel strongly, and therefore CRC1 as their fiduciary should respect their wishes instead of taking an adverse position to them.[2]

WHEREFORE, the Li Plaintiffs seek an order striking the Counterclaim in ECF 204, and finding that CRC1 is removed as general partner of CRCPS.

Dated: May 16, 2020

Respectfully Submitted,

/s/ Douglas Litowitz
413 Locust Place
Deerfield, IL 60015
312-622-2848
Litowitz@gmail.com

Certificate of Service:
This document was filed on the ECF system for the District of Colorado and thereby sent to all counsels of record.

---

[2] This whole episode goes to show why the Li Plaintiffs insisted months ago [ECF 111] that the LP and GP have different counsels instead of both being jointly represented by Snell & Wilmer, since the LP and GP had conflicting interests and the modern trend required separate counsels. Hopefully the Court now sees that when 109 of 152 limited partners accuse the general partner of fraud, there is a conflict between the LP and the GP, and that one lawyer cannot continue to represent either party in the lawsuit by going against his former client in the same case. Thus the Li Plaintiffs have moved to disqualify Snell & Wilmer [ECF 198] from representing the GP adverse to their former client the LP in the exact same lawsuit, which is a clear violation of RPC 1.9.