## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

**Civil Action No. 19-cv-02443-RM-STV**
**Consolidated with Civil Action No. 1:19-cv-02637**

Jun Li, *et al*.,

      Plaintiffs,

v.

Waveland Ventures, LLC, *et al*.,

      Defendants.

---

**DEFENDANTS WAVELAND VENTURES, LLC, COLORADO REGIONAL CENTER, LLC, COLORADO REGIONAL CENTER I, LLC, AND SNELL & WILMER L.L.P.'S RESPONSE IN OPPOSITION TO LI PLAINTIFFS' MOTION TO DISQUALIFY SNELL & WILMER L.L.P. [ECF 198]**

---

Defendants Waveland Ventures, LLC, Colorado Regional Center, LLC, and Colorado Regional Center I, LLC (collectively, the "CRC Entities") and Snell & Wilmer L.L.P. ("Snell & Wilmer"), by and through undersigned counsel, hereby respond in opposition to the Li Plaintiffs' Motion to Disqualify Snell & Wilmer L.L.P. (the "Motion") [ECF 198] as follows:

### INTRODUCTION

The Li Plaintiffs' Motion is their latest attempt to improperly gain a tactical advantage in this litigation. Through their Motion, the Li Plaintiffs seek complete disqualification of their opposing counsel, Snell & Wilmer.[1]  The Li Plaintiffs' request boils down to a single argument:

---

[1] The Snell & Wilmer attorneys who have entered an appearance in this case are James D. Kilroy and Stephanie A. Kanan, who will be referred to herein as "Snell & Wilmer."

1

that because Snell & Wilmer formerly represented both Colorado Regional Center Project Solaris LLLP ("CRCPS") and the CRC Entities in this action, Snell & Wilmer must be disqualified from continuing to represent the CRC Entities because CRCPS now is adverse.  The Li Plaintiffs' request ignores that Plaintiffs created the conflict they seek to use against Snell & Wilmer through their recent assertion of derivative claims on behalf of CRCPS and other hostile actions—including purporting to takeover CRCPS and fire Snell & Wilmer.  In addition, the Li Plaintiffs' Motion is unsupported and contrary to cases throughout the country that have addressed this precise issue in the derivative context.  As a result, the Court should deny the Li Plaintiffs' Motion and allow Snell & Wilmer to continue representing the CRC Entities in this matter.

## BACKGROUND

CRCPS is a Colorado limited liability limited partnership.  It has no independent officers, directors or employees.  *See* Exhibit A, Kilroy Declaration, ¶ 5.  It is a business entity that acts, and can only act, through and at the direction of its general partner. *Id.*  Up until very recently, there has been no dispute that CRC I was the general partner of CRCPS.  Now, that is in dispute, as will be discussed herein.

The Li Plaintiffs initiated this action on August 28, 2019.  [ECF 1].  Plaintiffs originally only asserted direct claims against CRCPS, its general partner, Colorado Regional Center I, LLC ("CRC I") and the other defendants, essentially alleging that CRCPS and its general partner fraudulently induced the Li Plaintiffs to become members of CRCPS. [ECF 1] Snell & Wilmer was hired by CRC I to represent the CRC Entities and CRCPS, and the attorneys entered appearances on September 24, 2019 on behalf of the CRC Entities and CRCPS. [ECF 18 and 19]. The original Li Plaintiffs' complaint clearly did not assert derivative claims for relief. [ECF 1].

2

Since the filing of their initial complaint, the Li Plaintiffs have amended their pleading three additional times, as have the Cui Plaintiffs in this consolidated action. [ECF 53, 86, 121, 21, 169, 190]. There has been a great deal of activity in this case, but that activity has consisted, almost exclusively, of Plaintiffs amending their pleadings, seeking injunctive relief against Defendants (twice), and filing lis pendens in an effort to prevent CRC I from selling the luxury condominium units in Vail, Colorado (twice).

The Li and Cui Plaintiffs' various complaints have been inconsistent and confusing – at least to the CRC Entities. In any case, because of the timing of the various amendments by Plaintiffs, Defendants filed no responsive pleadings until very recently, when the CRC Entities filed their motion to dismiss the operative complaints of both the Li and Cui Plaintiffs on May 11, 2020. [ECF 203].

On January 1, 2020, the Li Plaintiffs filed their first motion to disqualify Snell & Wilmer. [ECF 111]. Before the Li Plaintiffs filed this motion, all attorneys conferred. Snell & Wilmer pointed out, during that conferral, that the attorneys for all Plaintiffs and also Snell & Wilmer had at the time at least a *potential* conflict of interest that all counsel should consider. *See* Exhibit A, Kilroy Declaration, ¶ 7. Specifically, at that time both the Li Plaintiffs and the Cui Plaintiffs purported to assert derivative claims (that is, claims on behalf of CRCPS) against CRC I and also individual (and derivative) claims against CRCPS. As Snell & Wilmer pointed out, it was inconsistent for Plaintiffs' counsel to claim to represent CRCPS while suing CRCPS and at the same time accuse Snell & Wilmer of a conflict of interest for defending both CRCPS and CRC I. *See* Exhibit A, Kilroy Declaration, ¶ 7. At the time, and consistently throughout this litigation, Snell & Wilmer asked Plaintiffs to "clean up" their pleading and determine if CRCPS could

3

possibly be a true defendant from whom relief should be sought. *See* Exhibit A, Kilroy Declaration, ₧₧ 7 and 12. In addition, Snell & Wilmer suggested that if Plaintiffs were unwilling to amend their pleading to clarify the precise nature of this dispute, any analysis of disqualification would be premature at the pleading and motion to dismiss stage. *See* Exhibit A, Kilroy Declaration, ₧ 7. Snell & Wilmer advised that it would be open to further discussion with Plaintiffs' counsel during this time period – a time period in which both sets of Plaintiffs were serially amending their pleadings. *See* ECF 111, page 6; *see also* Exhibit A, Kilroy Declaration, ₧ 7.

The CRC Entities and Snell & Wilmer opposed the first motion to disqualify for the reasons discussed during the conferral on that motion. [ECF 117]. Immediately after Snell & Wilmer filed this response, the Li Plaintiffs unilaterally filed their Third Amended Complaint ("LTAC"). [ECF 121]. The Court denied the first motion to disqualify, without prejudice. [ECF 124]. The Li Plaintiffs' moved for reconsideration of the Court's order [ECF 125] and the Court denied that motion as well. [ECF 126].

The LTAC was a dramatically different pleading than counsel for the Li Plaintiffs had previously represented it would be to Magistrate Judge Varholak. The CRC Entities moved to strike the LTAC, pointing this out and also arguing that the LTAC appeared designed to actually plead into a conflict of interest for Snell & Wilmer in an improper manner. [ECF 127, page 5]. Magistrate Judge Varholak initially struck the LTAC [ECF 130], and ultimately, on March 2, 2020, granted the Li Plaintiffs' motion to amend and permitted its filing. ECF 166]. Magistrate Judge Varholak also stayed Defendants' obligation to respond and set a deadline of March 23, 2020 for further amendments of the complaints. Magistrate Varholak also set a May 11, 2020 deadline for Defendants to respond to the Plaintiffs' operative complaints. [ECF 179].

On April 30, 2020 the Cui Plaintiffs filed a further amended complaint, their Third Amended Complaint ("CTAC") [ECF 190].  As of April 30, 2020, then, the CRC Entities had, for the first and only time, actual operative complaints from both sets of Plaintiffs to which they could finally respond.  [ECF 121 and 190].

Shortly before this time, counsel for Li Plaintiffs Douglas Litowitz filed a "Status Report on Removal of General Partner by Proxies and Written Consent," whereby Li Plaintiffs' counsel purported to announce that CRC I has been removed as the general partner of CRCPS and that control and management of CRCPS now resides with counsel or his wife/legal assistant.  [ECF 183].  The status report purported to attach proxy documents signed by limited partners of CRCPS, but it is impossible to determine the identities of the signatories on most of the proxies.  [ECF 183].

With the filing of the status report, Snell & Wilmer recognized that the issue of whether CRC I or Mr. Litowitz has legal authority to act for CRCPS is apparently now in dispute.  This led to a new and different potential conflict of interest concern and accordingly Snell & Wilmer organized a conferral of counsel to discuss.  *See* Exhibit A, Kilroy Declaration, ¶¶ 11-12.  In that second conferral process, Snell & Wilmer advised that it intended to move to withdraw from representation of CRCPS because it is currently unclear who can legally act for CRCPS.  *See* Exhibit A, Kilroy Declaration, ¶ 12.  In that second conferral, Snell & Wilmer revisited with counsel for Plaintiffs the separate issue of all of the attorneys' possible conflict of interest in light of Plaintiffs' current operative complaints.  *See* Exhibit A, Kilroy Declaration, ¶ 12.  In that lengthy telephonic conferral, counsel for the Cui Plaintiffs, Brian Stewart, stated that he did not oppose Snell & Wilmer's withdrawal from representing CRCPS, and he clarified that the Cui Plaintiffs

4851-8347-6668.4

are *not* pursuing any claims against CRCPS (stating that CRCPS is a "nominal defendant" as far as the Cui Plaintiffs' claims are concerned). Mr. Litowitz, on behalf of the Li Plaintiffs, however, objected. *See* Exhibit A, Kilroy Declaration, ¶ 12.

Snell & Wilmer proceeded to file its motion to withdraw as counsel for CRCPS [ECF 197], which the Court has now granted. [ECF 207]. Snell & Wilmer also filed a Fed. R. Civ. P. 12(b)(6) motion on behalf of the CRC Entities, and not CRCPS [ECF 203] - after obtaining an extension of time for CRCPS to file a response if one is required. [ECF 202]. Finally, the Li Plaintiffs filed a motion to disqualify Snell & Wilmer from continuing to represent the CRC Entities in this matter. [ECF 198]. The Cui Plaintiffs did not join in Li Plaintiffs' request. *Id.* For the reasons that follow, Li Plaintiffs' request [ECF 198] should be denied.

## **ARGUMENT**

### I.     **The Li Plaintiffs' Motion to Disqualify Snell & Wilmer Should Be Viewed with Suspicion**

Motions to disqualify generally are disfavored in this District because they interfere with a party's right to select counsel of choice. *See Chung v. Lamb*, 2016 WL 11548225, at \*2 (D. Colo. May 17, 2016) (citing *People v. Nozolino,* 298 P.3d 915, 919 (Colo. 2013)). A motion to disqualify counsel rests within the broad discretion of this Court. *Id.* at \*1 (citation omitted). "This District applies the Rules of Professional Conduct, as adopted by the Colorado Supreme Court, to the question of disqualification." *Id.* (citation omitted); D.C.COLO.LAttyR 2. In considering a request to disqualify, the Court "must take into account the importance of continued representation of a party by his or her counsel of choice." *Chung*, 2016 WL 11548225, at \*1 (citing *Nozolino*, 298 P.3d at 919).

"Disqualification of a party's chosen attorney is an extreme remedy and is only appropriate

where required to preserve the integrity and fairness of the judicial proceedings." *Nozolino*, 298 P.3d at 919; *see also In Re Estate of Myers,* 130 P.3d 1023, 1025 (Colo. 2006) ("[D]isqualification is a severe remedy that should be avoided whenever possible."). As such, motions to disqualify opposing counsel "should be viewed with suspicion," and this Court "must guard against the possibility that disqualification is sought to secure a tactical advantage in the proceedings." *Pappas v. Frank Azar & Assocs., P.C.*, 2007 WL 4224196, at *6 (D. Colo. Nov. 27, 2007) (internal quotations and citation omitted); *Chung*, 2016 WL 11548225, at *1 ("Generally, courts are 'highly cynical' of motions to disqualify opposing counsel in light of their potential use as dilatory or tactical devices.") (citations omitted); *Fognani v. Young,* 115 P.3d 1268, 1272 (Colo. 2005); *Estate of Myers,* 130 P.3d at 1025. The Li Plaintiffs, as the movants, bear the heavy burden of establishing that disqualification is proper. *See Kline Hotel Partners v. Aircoa Equity Interests, Inc.*, 708 F. Supp. 1193, 1194 (D. Colo. 1989).

The Li Plaintiffs' request, which is the second motion for disqualification they have filed in this action, should be viewed with suspicion. First, the Li Plaintiffs' alleged basis for seeking disqualification—that CRCPS and the CRC Entities are adverse parties and Snell & Wilmer cannot represent a party adverse to a former client (CRCPS) in the same litigation—was created by Plaintiffs during the course of this litigation, and finally confirmed only with the Li Plaintiffs' filing of the Third Amended Complaint. [ECF 121]. The Li Plaintiffs seek to use the very conflict they have created for a tactical advantage by seeking to disqualify the CRC Entities' counsel of choice.

In addition, Li Plaintiffs' request was made shortly after its counsel sent a letter purporting to represent CRCPS and purporting to terminate Snell & Wilmer as counsel for CRCPS in this

litigation. [ECF 198-1]. In that letter, the Li Plaintiffs' counsel (or his legal assistant) claimed to have complete control over CRCPS. [ECF 183-4]. Given the Li Plaintiffs' actions, the Court should be highly skeptical of the Li Plaintiffs' Motion, which may very well be "an improper attempt to gain a tactical advantage in the litigation." *Pappas*, 2007 WL 4224196, at *6; *Sequa v. Lititech, Inc.*, 807 F. Supp. 653, 659 (D. Colo. 1992) (citation omitted).

II.     **Snell & Wilmer's Continued Representation of the CRC Entities Is Permissible and Appropriate under the Circumstances**

Through their Motion, the Li Plaintiffs now seek complete disqualification of Snell & Wilmer in this litigation even though Snell & Wilmer has already withdrawn from representing CRCPS. The Li Plaintiffs argue that Snell & Wilmer's continued representation of the CRC Entities is "expressly forbidden by the Colorado Rules of Professional Conduct" because Snell & Wilmer continues to represent the CRC Entities, which are directly adverse to a former client, CRCPS, in this action. [ECF 198, page 2]. The Li Plaintiffs do not, however, cite a single case in the shareholder derivative context to support their position that Snell & Wilmer's continued representation of the CRC Entities in this matter is improper.

In fact, the Li Plaintiffs' argument is *contrary* to federal and state authority addressing this precise situation and it should be rejected. *See, e.g.*, *Musheno v. Gensemer*, 897 F. Supp. 833, 838 (M.D. Pa. 1995); *Lewis v. Shaffer Stores Co.*, 218 F. Supp. 238, 239 (S.D.N.Y. 1963) (finding "no impropriety" in law firm continuing to defend directors and officers in shareholder derivative action, but finding "it would be wise for the corporation to retain independent counsel"); *Natomas Gardens Inv. Grp. LLC v. Sinadinos*, 2009 WL 3055213, at *9 (E.D. Cal. Sept. 14, 2009), *order clarified*, No. CIV S-08-2308 FCDKJM, 2009 WL 4282054 (E.D. Cal. Nov. 25, 2009); *see also Forrest v. Baeza*, 67 Cal. Rptr. 2d 857, 867 (Cal. App. 1997) (discussing authority and legal

8

commentary addressing the issue and noting that "neither of these authors so much as entertains the possibility of requiring complete disqualification of the attorney who initially represented both the corporation and its directors"). Permitting Snell & Wilmer to continue representing the CRC Entities is entirely "consistent with federal authority in the precise circumstance of attorney disqualification in shareholder derivative litigation, which holds that while dual representation of a corporation and its directors is impermissible (at least if the directors are charged with fraud), the attorney who formerly represented both clients may continue to represent the individual ones." *Forrest*, 67 Cal. Rptr. 2d at 867 (citations omitted).

In *Natomas*, for example, the court found that complete disqualification of counsel representing both the defendant company and defendant managing shareholder in a shareholder derivative action was "not required, nor necessary" and that plaintiff's request for complete disqualification "lack[ed] foundation and support." 2009 WL 3055213, at *8. While the *Natomas* court concluded that the firm could not continue representing the defendant company due to the plaintiff shareholder's assertion of derivative claims, which rendered the company a plaintiff, it held that the firm's continued representation of the managing shareholder was both permissible and consistent with federal authority on this issue. *Id.* at *8-9.

Similarly, in *Musheno v. Gensemer*, plaintiff shareholders moved to disqualify a law firm from continuing its dual representation of the corporation and its board of directors where plaintiffs asserted claims for fraud and self-dealing by directors in derivative action. 897 F. Supp. 833, 834-35 (M.D. Pa. 1995). The court agreed that the corporation needed to obtain independent counsel and granted the motion for disqualification to that extent. *Id.* at 835-38. While it was unclear to the court whether the plaintiffs also sought to disqualify defense counsel from representing "*any*

Defendant" in the litigation, the court determined "there is *nothing* to prevent [counsel] from continuing to represent the Directors" in the litigation and merely required that counsel withdraw from representing the corporation, but not the other defendants. *Id.* at 838, n.5 (second emphasis added; citation omitted); *see also Forrest*, 67 Cal. Rptr. 2d at 867-68 (granting in part and denying in part motion to disqualify counsel in derivative action who represented both defendant corporation and individual officer defendants accused of embezzlement and allowing counsel to continue representing individual officer defendants). The same result should be had here.

Only after March 23, 2020 was it clear that the Li Plaintiffs' Third Amended Complaint [ECF 121] would in fact be the operative pleading of the Li Plaintiffs to which a response would be required. Until then, and actually through April 30, 2020, when the Cui Plaintiffs filed their Third Amended Complaint [ECF 190], it was not clear what claims any of the Plaintiffs intended to actually assert and in what capacity –derivative and/or direct. It is now, however, finally clear that the Li Plaintiffs have placed CRCPS "in the anomalous position of being both a plaintiff and a defendant" in this derivative action. *Natomas*, 2009 WL 3055213 at *6 (internal quotations and citation omitted). On top of that, a new and completely different potential conflict of interest concern emerged with the Li Plaintiffs' announcement that Mr. Litowitz's legal assistant is allegedly now in charge of CRCPS.

Snell & Wilmer properly withdrew from representing CRCPS. Because Snell & Wilmer no longer represents CRCPS in this action, the Court should rule consistently with the numerous other courts that have addressed this issue in the derivative context and permit Snell & Wilmer to continue representing the CRC Entities in this action.

### III.   Rule 1.9 Does Not Prohibit Snell & Wilmer's Continued Representation of the CRC Entities

#### A.   Plaintiffs created the conflict they now seek to use against the CRC Entities and their counsel of choice.

The Li Plaintiffs rely on Colorado Rule of Professional Conduct 1.9 to support their argument that Snell & Wilmer should be completely disqualified. *See* ECF 198 at 2-4; *id.* at 4 (seeking "an order that Snell & Wilmer be disqualified from representing any party in this action"). Rule 1.9, the former client rule, provides in relevant part that "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing." CRPC 1.9. Rule 1.9, however, does not even apply here because Snell & Wilmer did not, as Li Plaintiffs argue, "switch[] sides" in this case. ECF 198 at 3. Instead, Snell & Wilmer has represented CRC I since commencement of the litigation. Ironically, the only attorney in this action who has "switched sides" in this case is the accuser – counsel for the Li Plaintiffs, who originally sued CRCPS, and then through amended pleading brought claims against other Defendants derivatively (on behalf of) CRCPS while continuing to pursue direct claims against CRCPS. [ECF 198, page 4, footnote 2].

In their Motion, the Li Plaintiffs argue that when "a lawyer switches sides in the same matter, there is an 'irrebuttable presumption' that the client has revealed information to the attorney which requires his disqualification from representing an adversary." ECF 198 at 3 (citing *English*

*Feedlot, Inc. v. Norden Laboratories, Inc.*, 833 F. Supp. 1498, 1506 (D. Colo. 1993)).[2]  The Li

Plaintiffs' argument, however, fails to recognize the context in which Snell & Wilmer went from

representing both CRC I and CRCPS to only CRC I.  This is not a situation where Snell & Wilmer

"switche[d] sides in the same matter," and thus, the "hot potato" rule does not apply.

Courts have "allowed firms to withdraw from representing one client to continue (rather

than begin) representing another client when an unforeseeable conflict arises through no fault of

the lawyer."  ABA Model Rules of Professional Conduct, Rule 1.9, Annotation (Thrust-Upon

Conflicts) (citations omitted); *see id.* (quoting N.Y. City Ethics Op. 2005-5 (2005) ("'thrust-upon'

conflicts do not implicate hot-potato rule; opinion recommends flexible approach in which

'overriding factor should be the prejudice the withdrawal or continued representation will cause

the parties'").

The present circumstances fall squarely within the "thrust upon conflicts" doctrine, thus

permitting Snell & Wilmer under Rule 1.9 to continue representing the CRC Entities.  *See* ABA

Model Rules of Professional Conduct, Rule 1.9, Annotation (Thrust-Upon Conflicts).  The reason

Snell & Wilmer withdrew from representation of CRCPS was due to Plaintiffs' final Third

Amended Complaint – which was only clearly the Li Plaintiffs' *operative* complaint (after four

amendments) as of March 23, 2020 – and also the very recent purported removal of CRC I as

---

[2] Li Plaintiffs rely on *English Feedlot, Inc. v. Norden Laboratories, Inc.* to support their argument, but that case was a products liability action which addressed whether law firm Holland & Hart should be disqualified from representing the plaintiff given its prior, unrelated representation of one of the defendants.  ECF 198 at 3.  In any event, Judge Babcock *denied* the defendant's motion to disqualify Holland & Hart, finding that there was no confidential information disclosed in the prior representation that was relevant to the current dispute.  *English Feedlot*, 833 F. Supp. 1498, 1506-07 (D. Colo. 1993).

general partner. [ECF 121, 183, 190, & 197-1].

Certainly Snell & Wilmer had recognized the *potential* conflict of interest it had in representing CRCPS and the CRC Entities if, in fact, Plaintiffs ultimately decided to pursue both derivative and direct damage claims.  [ECF 117, page 13 footnote 1].  But Plaintiffs' intentions – and pleadings – have been a moving target.   When Snell & Wilmer first undertook dual representation of CRCPS and the CRC Entities in this matter Plaintiffs had asserted only direct claims against CRCPS and the CRC Entities. While the Li Plaintiffs thereafter purported to assert derivative claims in amended pleadings, they also dramatically altered the nature and type of the claims repeatedly, and as a result it has been entirely unclear for many months whether Plaintiffs are even asserting causes of action against CRCPS. That remains the case. Again, the Cui Plaintiffs state unequivocally that they are not pursuing claims against CRCPS and that CRCPS is only a "nominal defendant."  *See* Exhibit A, Kilroy Declaration. The Li Plaintiffs appear to be saying the same thing, or at least something close. [ECF 198, page 4, footnote 2: "There is only one direct count pleaded by the Li Plaintiffs against the LP itself, which was inserted to keep the complaint alive as a direct action only in the unlikely event that the Court strikes it as a derivative action, as explained in the Third Amended Complaint itself…"].

Throughout this lawsuit, Snell & Wilmer has been consistently attempting to work through the potential conflict of interest shared by all attorneys in light of the Li Plaintiffs' evolving pleading of its claims for relief – concluding with the Li Plaintiffs' current assertion of claims against CRCPS and claims asserted against the CRC Entities on behalf of CRCPS.  *See, e.g.*, *New Crawford Valley, Ltd. v. Benedict*, 847 P.2d 642, 647 (Colo. App. 1993) (applying comparable state law); *Ahn v. Hanil Dev. Corp.*, 2008 WL 11340365, at *4 (C.D. Cal. Aug. 15, 2008) (finding

that plaintiffs' counsel cannot concurrently represent plaintiffs' individual claims and derivative claims "without potentially breaching the duty of loyalty" and finding that the interests of plaintiffs and corporation were "adverse" because success on plaintiffs' individual claims against the company would damage the company).

The Li Plaintiffs' consistent response to these efforts has been to contend that they are permitted to plead claims in the alternative as direct and derivative, citing *Srebnik v. Dean*, 2006 WL 2457386 (D. Colo. 2006).  In *Srebnik*, the District Court pointed out that any conflict that exists in cases where a plaintiff brings both derivative and direct claims is theoretical rather than real."  2006 WL 2457386, at *3.  The District Court pointed out that because, in that case, the direct and derivative claims were contingent upon the same nucleus of facts, there was, at the *pleading* stage, only a potential conflict.  *Id.*  Notably, the CRC Entities have never moved to disqualify counsel for the Li Plaintiffs, in full recognition of the *Srebnik* holding that conflicts of interest in this context are, or may be, premature at the pleading stage.  The same *Srebnik* analysis applies to the potential conflict Snell & Wilmer faces now that it is finally apparent that the Li Plaintiffs *may* intend to pursue direct claims against CRCPS and derivative claims on behalf of CRCPS.[3] In sum, it is far from clear whether the *potential* conflict of interest associated with Snell & Wilmer's representation would have precluded Snell & Wilmer from representing CRCPS at this pleading stage of the litigation.  But Snell & Wilmer has now withdrawn from representing CRCPS, because in addition to this potential conflict the new announcement challenging the legal authority of CRCPS's general partner has led to a new and different concern, namely, the issue of

---

[3] Even now, the Li Plaintiffs remain unclear as to whether they are even asserting a direct claim against CRCPS: "The Li Plaintiffs can stay this direct Count since they have now taken control of the LP and cannot sue themselves." [ECF 198, page 4, footnote 2].

4851-8347-6668.4

who has the right to direct CRCPS.

Given the overall situation, the Court should find that any such conflict was "thrust upon" Snell & Wilmer through Plaintiffs' actions in this case and the CRC Entities should not be prejudiced as a result by losing counsel of their choice, who have represented them from commencement of this action.

### B. Courts throughout the country have rejected application of Rule 1.9 under nearly identical circumstances.

In the shareholder derivative context, several courts have considered and rejected application of Rule 1.9 under nearly identical circumstances—including Li Plaintiffs' unsupported assertion that Snell & Wilmer learned confidential information through the course of its representation of CRCPS that requires disqualification. For example, the *Forrest* court expressly considered the Li Plaintiffs' argument that counsel should not be permitted to continue representing the majority shareholder and manager "while converting the corporations to former clients" because doing so would violate the former client rule. *See* 67 Cal. Rptr. 2d at 866-67. The court reasoned that the rule may not even apply because counsel was "not *accepting* employment but *continuing* his preexisting representation of the Forrests." *Id*. at 867-68.

The court further found, "in the factual circumstances of this case, where [counsel] has been representing a corporation comprised of three shareholders solely by virtue of his relationship with the Forrests, acting as the majority directors/shareholders, it is impossible to conceive of confidential information [counsel] could have received from the 'corporation' that is different from information he received from the Forrests." *Id*. at 868. The court also rejected application of the rule presuming access to confidential information and requiring disqualification where, "as here, the functioning of the corporation has been so intertwined with the individual defendants that any

distinction between them is entirely fictional, and the sole repositories of corporate information to which the attorney has had access are the individual clients, application of the 'former client' rule would be meaningless." *Id*.

A Florida appellate court held similarly in a case involving the disqualification of corporate counsel in a derivative action brought by minority shareholder against majority shareholder and the corporations, as nominal defendants. *Campellone v. Cragan*, 910 So. 2d 363, 364 (Fla. Dist. Ct. App. 2012). The trial court decided that because counsel, "through his dual representation, had access to information regarding the entities that could give Campellone an unfair advantage in the derivative suit," counsel should be disqualified "from representing *either* Campellone *or* the corporation." *Id*. at 365. On appeal, the court found no abuse of discretion in the trial court's decision to disqualify counsel from representing the corporations, but overturned the decision as to counsel's continued representation of Campellone. *Id*. The appellate court disagreed with the trial court's "finding that [counsel] had access to financial and other information that would give Campellone an 'unfair advantage' over [the minority shareholder] in the derivative action," finding that "the 'unfairness' is not apparent. Nor is it clear that any information in this context could be confidential." *Id*. As a result, the appellate court quashed the trial court's order prohibiting counsel's continued representation of Campellone in the derivative action. *Id*. at 365-66.

Likewise, in *Heine v. Streamline Foods Inc.*, the court denied the plaintiff's motion to disqualify the law firm that initially represented both the defendant company and its manager in a shareholder dispute after the plaintiff amended and asserted derivative claims against the manager. 2012 WL 13173031, at *1-4 (N.D. Ohio Feb. 13, 2012). After plaintiff amended to assert derivative claims on behalf of the defendant company and against the manager, defense counsel

16

moved to withdraw from representation of the manager and plaintiff moved to disqualify defense counsel.  *Id*. at *3-4.  The court found that "it ha[d] not been shown that any information that [company] gained related to [its manager] during [defense counsel's] representation of both parties would be detrimental to [counsel's] continued representation of [company]."  *Id*. at *5.  As a result, the court declined to disqualify counsel from continuing to represent company in the litigation on the basis that confidential information had been gained from the dual representation.  *Id*.

Here, the Li Plaintiffs' unsupported assertion that because Snell & Wilmer represented CRCPS "for greater than six months" it somehow "learned confidential information about its strategies, finances, internal disputes, strengths and weaknesses" is insufficient to establish that Snell & Wilmer's continued representation of the CRC Entities would be improper.  ECF 198 at 3-4.  Like in the above cases, here, Snell & Wilmer's communications have been strictly with the CRC Entities, given that CRCPS is a passive company managed and operated by and through CRC I.  *See* Exhibit A, Kilroy Declaration, ¶ 14. CRC I has served as the "sole repository of corporate information," and drawing any distinction between CRCPS and CRC I for purposes of deciding Li Plaintiffs' Motion would be "entirely fictional."  *Forrest*, 67 Cal. Rptr. 2d at 868.  Because CRCPS acts only through the general partner, CRC I, application of the "former client" rule to the situation at hand would be meaningless.  *See id.*

Furthermore, the Li Plaintiffs have not identified what, if any, information Snell & Wilmer could possibly have gained during its dual representation of CRCPS and the CRC Entities that would be confidential to CRCPS in light of the relationship between CRCPS and CRC I or how that unidentified information could be used to the detriment of CRCPS if already possessed by CRC I. There is none.  At all times, Snell & Wilmer was communicating only with CRC I, the

general partner of CRCPS, and thus far (despite over 200 filings), the case is not at issue and no discovery has occurred.  *See* Exhibit A, Kilroy Declaration, ¶¶ 5 and 14.  There simply is no valid basis to conclude that Snell & Wilmer should be disqualified from continuing to represent the CRC Entities in this litigation.  This Court, therefore, should rule consistent with the other courts that have addressed this issue in the derivative context and find that Snell & Wilmer's continued representation of the CRC Entities in this matter is permissible.

## **CONCLUSION**

The Li Plaintiffs have not satisfied their heavy burden of establishing that Snell & Wilmer's continued representation of the CRC Entities is impermissible.  The Court, therefore, should deny the Li Plaintiffs' Motion to Disqualify and permit the CRC Entities to continue being represented by counsel of their choice, Snell & Wilmer.

DATED:  May 27, 2020.

/s/James D. Kilroy
James D. Kilroy

/s/Stephanie A. Kanan
Stephanie A. Kanan

SNELL & WILMER L.L.P.
1200 Seventeenth Street, Suite 1900
Denver, Colorado 80202
Telephone: 303.634.2000
Facsimile: .303.634.2020
Email: jkilroy@swlaw.com
Email: skanan@swlaw.com

*Counsel for Defendants Waveland Ventures,*
*LLC, Colorado Regional Center, LLC and*
*Colorado Regional Center I, LLC*

4851-8347-6668.4

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on May 27, 2020, a true and correct copy of the above and foregoing **DEFENDANTS WAVELAND VENTURES, LLC, COLORADO REGIONAL CENTER, LLC, COLORADO REGIONAL CENTER I, LLC, AND SNELL & WILMER L.L.P.'S RESPONSE IN OPPOSITION TO LI PLAINTIFFS' MOTION TO DISQUALIFY SNELL & WILMER L.L.P. [ECF 198]** has been electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record:

Douglas Litowitz
413 Locust Place
Deerfield, IL  60015

Hubert Kuo
Brian P. Stewart
Ardent Law Group
4340 Von Karman Avenue, Suite 290
Newport Beach, CA  92660

Harold A. Haddon
Ty Gee
Haddon Morgan and Foreman, P.C.
150 East 10th Avenue
Denver, CO  80203


_Amy Kovarsky_
for Snell & Wilmer L.L.P.

4851-8347-6668.4