# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

**Civil Action No. 19-cv-02443**
**Consolidated with Civil Action No. 19-cv-02637**

Jun Li, Qi Qin, Yi Liu, et al.,
    Plaintiffs,

    v.                Hon. Raymond P. Moore

Waveland Ventures LLC,
Colorado Regional Center Project Solaris LLLP,
Colorado Regional Center I, LLC,
Solaris Property Owner LLC,
Solaris Property Owner I, and
Peter Knobel,
    Defendants.

---

## Plaintiffs' Motion for Appointment of Receiver
### (On *Ex Parte* Basis Without Bond As Permitted by the Loan Documents)

---

Pursuant to C.R.C.P. 66, Plaintiffs Dianwen Cui, Lei Gu, Sufen Leng, Xue Mei, Zhou Mei, Yan Song, Lu Wang, Yue Wu, Zhuo Yang, Jingwen Zhang, Lei Zhang, Ling Zhang, Xiaohong Zhang, Qin Zhou, Xun Zhu, Chunyi Zou (collectively "EB-5 Investors" or "Cui Plaintiffs"), by and through their undersigned counsel, respectfully request the immediate *ex parte* appointment of a receiver over certain Receivership Property (as defined herein and in the Cui Plaintiffs Third amended Complaint). In support, the Cui Plaintiffs state as follows:

### CERTIFICATE OF COMPLIANCE WITH D.C.COLO.LCivR 7.1(a)

Although the Defendants have expressly waived notice of an ex parte application for appointment of a receiver upon the occurrence of events of default under the terms of the parties' loan documents, undersigned counsel has conferred with counsel for all of the defendants

1

regarding the subject matter of this motion. The Defendants have indicated that they intend to oppose this motion.

## BACKGROUND

*Formation of Colorado Regional Center Project Solaris, LLLP*

1. 165 individual Chinese investors ("Limited Partners") collectively invested $82.5 million into a Colorado limited liability limited partnership, Defendant Colorado Regional Center Project Solaris, LLLP ("LLLP"),that was created by Defendant Waveland Ventures, LLC ("Waveland") pursuant to the Uniform Limited Partnership Act of the State of Colorado.

2. Waveland also created Defendant Colorado Regional Center I, LLC ("GP") as the general partner of the LLLP and GP received a 1% general partnership interest in LLLP (Verified Third Amended Complaint "VTAC" ¶ 4).

3. Plaintiffs, as EB-5 Investors, along with other Limited Partners, were limited partners of LLLP pursuant to the Limited Liability Limited Partnership Agreement of LLLP ("Partnership Agreement"). A copy of the Partnership Agreement is attached to the Declaration of Leng Sufen "Sufen Dec" as **Exhibit A**.

4. The LLLP was formed for the purpose of lending funds to Solaris Property Owner, LLC ("SPO"), the owner and operator of a residential and commercial real estate project commonly known as "Solaris," located in Vail, Colorado. In addition, the business of the LLLP is to undertake all necessary actions in the GP's sole discretion to preserve the immigration benefits of the limited partners, including without limitation, investing in additional or alternate projects consistent with the requirements of the EB-5 program.[1]

---

[1] Limited Liability Limited Partnership Agreement of Colorado Regional Center Project Solaris, LLLP, a Colorado limited liability limited partnership, Sections 1.01 and 3.01.

5.  The LLLP is a single-asset entity whose sole asset is a promissory note secured by numerous deeds of trust encumbering individual condominium units owned by Solaris Property Owner I, LLC ("SPOI") as successor-in-interest to SPO (as described below).

***The Loan Documents and Collateral***

6.  <u>The Loan Agreement:</u>  The LLLP entered into a Loan Agreement with SPO dated November 5, 2010 pursuant to which the LLLP agreed to loan funds to SPO for the construction or refinance of individual Condominium Units at the Solaris property as soon as reasonably practicable in accordance with the terms, conditions, provisions and restrictions of EB-5 Immigration Investor Program.[2]

7.  <u>The Promissory Note</u>:  The Loan is evidenced by a Promissory Note from SPO, LLC dated as of April 18, 2012, payable to the order of LLLP, in the original principal amount of $100,000,000.00 (as amended from time to time, the "Note").  The Promissory Note contemplates multiple advances against a single Condominium Unit until the total amount of the Loan allocated to that Condominium Unit has been advanced.  The due date of the Promissory Note ("Maturity Date") is that date which is 60 months (five years) after the final advance of the allocated loan amount to a Condominium Unit.  As a consequence, the Promissory Note has 19 separate Maturity Dates; one for each loan amount secured by an individual Condominium Unit.  A copy of the Promissory Note is attached to the Sufen Dec as **Exhibit C** and incorporated by reference herein.  Pursuant to the terms of the Promissory Note, SPO assigned its rights in the Loan Documents to its wholly-owned single-purpose subsidiary, Solaris Property Owner I, LLC ("SPOI").[3]  On April 18, 2012, SPOI and LLLP executed an Allonge that stated that the Interest Rate (as defined in the Note) shall be 5.55% and that all references to the Interest Rate shall

---

[2] Loan Agreement, Section 7.
[3] Promissory Note, Section 20. (iv).

mean 5.55%. A copy of the Allonge is to the Sufen Dec as **Exhibit D** and incorporated by reference herein.

8. <u>Deeds of Trust</u>: The Loan is secured, in part, by those certain Deeds of Trust ("Security Agreements") executed by SPOI, securing each individual Condominium Unit. Prior to each individual Deed of Trust being granted on an individual Condominium Unit, SPO conveyed ownership of the individual Condominium Unit to SPOI by quitclaim deed. Copies of the Deeds of Trust are attached to the Sufen Dec as **Exhibits "E" through "T"** and incorporated by reference herein.

9. <u>Collateral/Receivership Property</u>: As more fully described in each Deed of Trust, the Security Agreements originally granted the LLLP a security interest and lien on the following assets of SPOI: Unit 2A South; Penthouse E West; Unit 6E East; Penthouse E East, Unit 5E West, Unit 4G West, Unit 7E West, Penthouse C East, Unit 6D East, Unit 5C West, Unit 6C West, Unit 5G West, Unit 3 E East, unit 7E East, Unit 4D East, Penthouse G West, Penthouse C West (the "Collateral").[4] In addition, the Deed of Trust specifically "assigns to Lender all of the Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property," ( "Additional Collateral"). The Collateral and Additional Collateral are subject to the Deed of Trust which the Cui Plaintiffs request that the Court place into receivership as the receivership property ("Receivership Property").

10. Collectively herein, the Loan Agreement, Promissory Note, Deeds of Trust, and documents related thereto may be referred to as the "Loan Documents."

11. LLLP is the holder and beneficiary of the Loan Agreement, Promissory Note, Deeds of Trust and all other Loan Documents.

---

[4] The GP removed Unit 6E West (2-12-19); Unit 3C East (7-12-2019); and Unit 6C West (3-6-2020) from the collateral.

***Borrower's Default under the Loan Documents***

12. SPOI has failed to make regularly scheduled interest payments under the terms of the Promissory Note. The borrower's failure to make a regularly scheduled payment when due is an Event of Default under the Loan Documents (see Deeds of Trust Page 8).

13. The first Maturity Date under the Promissory Note was April 17, 2017. The last Maturity Date under the Promissory Note was no later than January 2020. Therefore, the Maturity Date for full repayment of the loan was no later than January 2020. The Promissory Note has matured, but SPOI, the borrower, has not repaid the Promissory Note.

***The GP's Failure to Exercise Fiduciary Duties in Negotiation of the Loan Documents***

14. As stated above, the LLLP was formed under the Colorado Uniform Limited Partnership Act. The fiduciary duties of the GP to governed by the Colorado Uniform Limited Partnership Act.

15. The GP had the exclusive right to negotiate on behalf of the LLLP, however such rights were subject to a fiduciary duty to negotiate in the best interests of the LLLP (C.R.S. §§ 7-60-121 and 7-64-404).

16. In negotiating the Loan Documents with SPO, the GP failed to negotiate in the best interests of the LLLP and instead entered into the Loan agreement and a series of amendments thereto which benefited SPO and its successor-in-interest SPOI and the GP itself, all to the detriment of the LLLP and the Limited Partners. [Declaration of Brian P. Stewart "BPS Dec" ¶ 5]

17. At the time Loan Agreements were negotiated and structured, it was very difficult to get a loan for commercial property [BPS Dec ¶ 8], let alone one with the provisions favorable to SPOI, the borrower, as negotiated by GP in the instant case.

18. The Loan Agreement failed to include ordinary and customary provisions contained in real estate loan transactions made for the protection of the lender. Examples of such lender protection provisions missing from the Loan Agreements include, but are not limited to the following:

   a. Lenders in commercial real estate loan transaction at the time the Loan Documents were negotiated would, at the very least, require the debt to be secured by the entire property. The LLLP's loan was secured by 19 individual Deeds of Trust encumbering specific individual condominium units increasing the difficulty and cost for the lender in the event it was required to enforce its security instruments. The LLLP was further left unprotected because these individual Deeds of Trust did not contain cross-collateral or cross-default provisions.

   b. Real estate lenders at the time the Loan Documents were negotiated would not only require that the loan be a recourse loan, but would additionally require personal guarantees from any individual members of the ownership group of a corporate borrower. [BPS Dec ¶ 6]. The Loan Documents were drafted so that the payment of interest was the only portion of the loan guaranteed by a principal of the corporate borrower.

   c. Real estate lenders at the time the Loan Documents were negotiated would not make a loan on a speculative real estate development in which the allocated amount of the loan would exceed 50% to 65% of the value of the property collateral securing the loan. In the case of the LLLP's loan to SPOI, the GP made loans on behalf of the LLLP that exceeded these thresholds, and in some cases the allocated loan amount exceeded 100% of the value of the condominium unit.

d. More importantly, the total amount of the Loan, $82,500,000, was the total valuation ascribed to all of the 19 condominium units pledged as collateral for the Loan. The following table derived from Exhibit A to the Promissory Note reflects these excess loan amounts based upon the valuation of the property:

| Property | Collateral Unit Value | Loan Advance | Loan-to-Value | Date Loan Advance Complete | Maturity Date |
|---|---|---|---|---|---|
| Unit 6E West | $3,707,982.00 | $4,000,000.00 | 107.88% | April 18, 2012 | April 17, 2017 |
| Unit 2A South | 6,439,950.00 | 6,500,000.00 | 100.93% | April 25, 2012 | April 24, 2017 |
| Pent E West | 3,084,124.00 | 3,000,000.00 | 97.27% | May 3, 2012 | May 2, 2017 |
| Unit 6E East | 3,707,485.00 | 3,500,000.00 | 94.40% | May 30, 2012 | May 29, 2017 |
| Pent E East | 3,084,683.00 | 3,000,000.00 | 97.25% | June 15, 2012 | June 14, 2017 |
| Unit 5E West | 3,581,090.00 | 4,000,000.00 | 111.70% | August 2, 2012 | August 1, 2017 |
| Unit 4G West | 6,420,861.00 | 6,500,000.00 | 101.23% | August 24, 2012 | August 23, 2017 |
| Unit 7E West | 4,556,554.00 | 4,500,000.00 | 98.76% | September 7, 2012 | September 6, 2017 |
| Pent C East | 2,355,248.00 | 2,000,000.00 | 84.92% | September 13, 2012 | September 12, 2017 |
| Unit 6D East | 7,832,070.00 | 8,000,000.00 | 102.14% | October 2, 2012 | October 1, 2017 |
| Unit 5C West | 3,555,668.00 | 3,500,000.00 | 98.43% | November 6, 2012 | November 5, 2017 |
| Unit 6C West | 3,605,715.00 | 3,500,000.00 | 97.07% | November 27, 2012 | November 26, 2017 |
| Unit 5G West | 6,521,940.00 | 6,500,000.00 | 99.66% | January 24, 2013 | January 23, 2018 |
| Unit 3E East | 2,578,042.00 | 3,000,000.00 | 116.37% | January 29, 2013 | January 28, 2018 |
| Unit 7E East | 4,043,190.00 | 4,000,000.00 | 98.93% | January 30, 2013 | January 29, 2018 |
| Unit 4D East | 7,831,977.00 | 7,500,000.00 | 95.76% | March 6, 2013 | March 5, 2018 |
| Pent G West | 4,737,891.00 | 4,500,000.00 | 94.98% | May 20, 2013 | May 19, 2018 |
| Pent C West | 2,355,530.00 | 2,500,000.00 | 106.13% | May 30, 2013 | May 29, 2018 |
| Unit 3C East | 2,500,000.00 | 2,500,000.00 | 100.00% | January 30, 2015 | January 30, 2020 |
| Totals | $82,500,000.00 | $82,500,000.00 | 100.00% | | |

  e. In order to ensure that adequate collateral value is available to repay a commercial real estate loan when the loan is being repaid through the sale of condominium units, real estate lenders require minimum levels of loan repayment or principal reduction in order to release their deed of trust and allow the sale of the property. These minimum release payments are typically 120% to 125% of the loan amount allocated to an individual condominium unit. The Loan Documents with SPOI negotiated by the GP do not contain any minimum release prices. Moreover, none of the Loan Agreement, Promissory Note, or the 19 individual Deeds of Trust provided for any amount of required repayment upon the sale or transfer of a condominium unit.

  f. Real estate lenders do not allow for the sale of a property serving as collateral for a loan without repayment of the loan. In order to ensure repayment, real estate lenders require strict "due on sale or transfer" provisions in their Deeds of Trust and loan documents. The Loan Documents with SPOI negotiated by the GP do not contain such provisions, but rather gave the lender the <u>option</u> of declaring all sums secured by a single one of the 19 Deeds of Trust due and payable if a condominium unit was sold or transferred without the prior written consent of the lender.

19. Rick Hayes, the owner manager of GP, demonstrated his disdain for the EB-5 investors, in the December 2014 Edition of Colorado Biz Magazine where he stated that "EB-5 investors are not return driven – they are return-agnostic. From that standpoint, it's a cheap source of capital for developers." [BPS Dec ¶ 9; Exhibit "W" to BPS Dec].

20. The financial statements produced by the GP thus far indicate that during the five year period between 2012 and 2017 expenses totaled $19,951,869 against rental income of only $10,822,077 [BPS Dec ¶ 10; Exhibits "X" through "AA" to the BPS Dec]. The GP has refused to elaborate on the identity of the recipients of these large amounts for commissions, management fees, maintenance and repair fees and other expenses. However the Cui Plaintiffs believe that most of the funds used to pay these fees have ended up in the hands of the GP or its affiliates.

***The GP's Failure to Exercise Fiduciary Duties in the Enforcement of the Loan Documents***

21. The GP has failed to meet its fiduciary obligations to the LLLP and the Limited Partners by failing to enforce the Loan Documents and the rights of the LLLP following defaults by the borrower, SPOI. (see Declaration of Doug Litowitz "Litowitz Dec" ¶ 12) [BPS Dec ¶ 20].

22. Each of the 19 Deeds of Trust granted by SPOI for the benefit of the LLLP contained a provision allowing the LLLP to record Uniform Commercial Code security interests in the rents and personal property of SPOI. A review of the Colorado Secretary of State's UCC Financing Statement database reveals that the GP failed to record a single UCC Financing Statement to perfect the LLLP's security interest in the rents and personal property of SPOI. As a result of its failure to perfect the LLLP's security interests, the GP has breached its fiduciary duties to the LLLP and the Limited Partners [BPS Dec ¶ 19].

23. Each of the loans advanced by the LLLP had a maturity date of 60 months after the date of the last loan advance to a specific condominium unit secured by a deed of trust for the benefit of the LLLP. Those maturity dates ranged from April 17, 2017 to no later than August 2018. Each of the loans has matured and remains unpaid. Despite several demands having been made upon the GP and its counsel to declare the loan in default, the GP has failed to exercise its

fiduciary duties to protect the interests of the LLLP and the Limited Partners because the GP has failed to provide notices of default to SPOI based upon SPOI's failure to repay the loans at maturity. [Litowitz Dec ¶ 12] [BPS Dec ¶ 20].

24. In addition to its failure to repay the loans at maturity, SPOI has failed to pay monthly interest on the loans to the LLLP. Each of the loans advanced by the LLLP provided the lender the right to charge default interest at the rate of fourteen percent (14%) per annum on the outstanding principal balance of the loan in the Event of a Default by the borrower, SPOI. The failure to pay interest is an Event of Default under the Loan Documents. The GP has failed to exercise its fiduciary duties to protect the interests of the LLLP and the Limited Partners because the GP has failed to charge default interest to the borrower, SPOI. [Litowitz Dec ¶ 12] [BPS Dec ¶ 20].

25. The Loan Documents provide that the interest on the Note is personally guaranteed by a principal of SPOI ("Guarantor"). To the extent the GP has not made any effort to enforce the collection of interest and default interest from the Guarantor, the GP has failed to exercise its fiduciary duties to protect the interests of the LLLP and the Limited Partners [Litowitz Dec ¶ 12] [BPS Dec ¶20].

26. The Loan Documents provide that upon the occurrence of an Event of Default by the borrower, the LLLP shall give written notice describing the nature of the Event of Default. Each of the 19 individual Deeds of Trust granted by SPOI as collateral to secure the indebtedness evidenced by the loans from the LLLP to SPOI provide SPOI three (3) days to cure any monetary default (e.g., payment of amounts due). Thereafter, if the Event of Default remains uncured, the LLLP has the right, among other rights, to accelerate the Loan and declare all amounts under the loan due and payable. Despite several demands made by both the Li

Plaintiffs and the Cui Plaintiffs, the GP has failed to exercise its fiduciary duties to protect the interests of the LLLP and the Limited Partners because the GP has failed to issue notices of default or notices of acceleration and demand to SPOI [Litowitz Dec ¶ 12] [BPS Dec ¶ 20].

27. The Loan Documents further require that upon notice of acceleration and demand from the LLLP, the borrower SPOI shall convey the collateral units to the LLLP in satisfaction of the borrower's obligations under the Promissory Note and the Loan Documents. Despite several demands made by both the Li Plaintiffs and the Cui Plaintiffs, the GP has failed to exercise its fiduciary duties to protect the interests of the LLLP and the Limited Partners because the GP has failed to issue notices of acceleration and demand to SPOI and obtain the transfer of the condominium units serving as collateral for the LLLP's loan from SPOI to the LLLP [Litowitz Dec ¶ 12] [BPS Dec ¶ 20].

28. Each of the 19 individual Deeds of Trust granted by SPOI as collateral to secure the indebtedness evidenced by the loans from the LLLP to SPOI provide the LLLP with the right to foreclose on the real and personal property pledged as collateral for the loans upon the occurrence of an uncured Event of Default. Despite several demands made by both the Li Plaintiffs and the Cui Plaintiffs, the GP has failed to exercise its fiduciary duties to protect the interests of the LLLP and the Limited Partners because the GP has failed to issue notices of default or notices of acceleration and demand to SPOI and commence the foreclosure process [Litowitz Dec ¶ 12] [BPS Dec ¶ 20].

29. Each of the 19 individual Deeds of Trust granted by SPOI as collateral to secure the indebtedness evidenced by the loans from the LLLP to SPOI provide the LLLP with the right notices of acceleration and demand, declaring the entire amount of the indebtedness immediately due and payable upon the occurrence of an uncured Event of Default. The 19 Deeds of Trust

require SPOI upon the issuance of such notice of acceleration and demand to immediately convey title to the collateral units to the LLLP.  The GP has failed to exercise its fiduciary duties to protect the interests of the LLLP and the Limited Partners because the GP has failed to issue notices of acceleration and demand to SPOI upon its uncured Events of Default and demand the transfer of the collateral units to the LLLP.

30. Along with the failure of the GP to act to enforce the rights of the LLLP with respect to the condominium units SPOI pledged as collateral for loans from the LLLP, the GP has allowed for the transfer of three Condominium Units to groups of individual Limited Partners of the LLLP and/or third parties.

31. The Collateral was originally comprised of 19 units, however the GP has sold or transferred title to three of the units: 1) 6C West on March 6, 2020 to RRS Eagle Properties, LLC, a Florida limited liability company; 2) 3C East on July 12, 2019 to Lucky Five, LLC, a Delaware limited liability company; and 3) 6E West February 12, 2019 to CDWE, LLC, a Colorado limited liability company.  Copies of the Special Warranty Deeds conveying title to these three units are attached to the Request for Judicial Notice served concurrently herewith ["RJN"] as **Exhibits 1, 5 & 7**.  The limited partners know little about these transfers, however they are informed and believe that the proceeds of from the sale of 6C West were primarily used to pay management fees to the GP and for the GP's attorney's fees.

32. The transfers of 3C East and 6E West were made to small groups of Limited Partners of the LLLP, for nominal values stated as $10.00 on the face of the Special Warranty Deeds [Exhibits 1 & 5] in violation of the terms of the Partnership Agreement which states that

no Limited Partner shall have any right to demand or receive any distribution from the LLLP in any form other than cash, upon dissolution or otherwise. [6]

33. As partial consideration for the transfers of units 3C East and 6E West, Lucky Five, LLC and CDWE, LLC granted Deeds of Trust against the units in favor of the LLLP in the amount of $154,335.97 and $210,073.98, respectively. Copies of the Deeds of Trust are attached to the RJN as **Exhibits 2 and 6**.

34. The transfer of units 3C East and 6E West to Limited Partners represent a preferential payments to those Limited Partners over the rights of all Limited Partners.

35. CDWE, LLC subsequently transferred 6E West to Solaris Bella LLC, a Colorado limited liability company on April 30, 2019 for $2,760,000. A copy of the Special Warranty Deed conveying title to 6E West from CDWE, LLC to Solaris Bella LLC is attached to the RJN as **Exhibit** 3

36. In order for these three transfers of property to occur, the LLLP had to release its respective Deeds of Trust encumbering the three units. The GP, on behalf of the LLLP, failed to exercise its fiduciary duties to protect the interests of the LLLP and the Limited Partners by granting the releases of the three Deeds of Trust and allowing the transfer of these properties.

***Removal of the General Partner***

37. During the course of this litigation, counsel for the GP has continually refused requests for information made by the Plaintiffs in their capacity as Limited Partners of the LLLP. Counsel has also made arguments against the both the Cui Plaintiffs and the Li Plaintiffs that the GP simply does not have standing to make. Counsel for the GP has inexplicably vigorously

---

[6] Partnership Agreement at § 9.05

opposed claims by the Plaintiffs that are only plead against SPO or SPOI. [BPS Dec ¶ 13]. This ongoing conflict of interests finally forced action on the part of the limited partners.

38. In light of the GP's breach of its fiduciary duties to the LLLP and the Limited Partners, and based upon the conflict of interest in the representation of both the GP and the LLLP, the Limited Partners sought to exercise their rights with respect to the removal of the GP for cause.

39. On or about March 26, 2020, Counsel for the Li Plaintiffs circulated a ballot to all of the Limited Partners of LLLP requesting that they vote for the removal of the GP pursuant to Section 9.06 and 12.02 of the Limited Partnership Agreement of the LLLP (see Declaration of Doug Litowitz "Litowitz Dec" ¶ 5). 105 of the current 152 Limited Partners voted to remove the GP, and on or about April 20, 2020 counsel for the Li Plaintiffs filed a Status Report herein [ECF # 183] informing the Court of the vote for removal of the GP. (copies of all of the ballots of the Limited Partners are attached to the Status Report [ECF # 183] as Exhibits 1 -3)[7]

40. On the same day, counsel for the Li Plaintiffs sent a correspondence to counsel for the GP informing him that a new GP would need to be appointed within 90 days [see Litowitz Dec ¶ 8]. The GP was removed for cause based upon the failure of the GP to collect on the loans to SPOI and based upon the GP's breaches of fiduciary duty to the Limited Partners and the LLLP as enumerated herein.

41. Since the vote to remove the GP, James Kilroy, counsel for the GP, has stated on several occasions that he intends to withdraw as counsel for the GP now that he understands that he has a conflict of interest. In fact, Mr. Kilroy filed a Motion to Withdraw on May 6, 2020 [ECF # 197] which the Court granted on May 18, 2020 [ECF # 207. [BPS Dec ¶ 17].

---

[7]. There are now 109 limited Partners who have voted to remove the GP.

Notwithstanding these developments, Mr. Kilroy has been evasive on the issue of the removal and replacement of the General Partner.  On May 11, 2020 Mr. Kilroy filed a counterclaim for Declaratory Relief with respect to the removal of CRC I as the General Partner of LLLP. [BPS Dec ¶16] [Litowitz Dec" ¶ 11].  In light of the stated will of the limited partners, it makes little sense to escalate this issue.

***Express Consent by Defendants to the Ex Parte Appointment of a Receiver without Bond***

42. Given the defaults of SPOI under the Loan Documents, the GP's failure to exercise its fiduciary duties to the LLLP and the Limited Partners, the Cui Plaintiffs believe it is in the best interests of the Parties that a receiver be appointed as receiver over the Collateral/Receivership Property.

43. In light of the removal of the GP and the GP's breaches of its fiduciary duties to the LLLP and the Limited Partners, the Cui Plaintiffs believe it is in the best interests of the Parties that a receiver be appointed over the LLLP and the receiver serve as the substitute general partner of the LLLP.

44. Pursuant to each of the 19 Deeds of Trust granted by SPOI for the benefit of the LLLP, SPOI expressly consented to the appointment of a receiver over the Collateral upon default on an *ex parte* basis without notice.  See Deeds of Trust are attached to the Sufen Dec as **Exhibits E through U** (Appoint Receiver) which states as follows:

> **Appoint Receiver.**  Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the indebtedness.  The receiver may serve without bond if permitted by law.  Lender's right to

appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount.  Employment by Lender shall not disqualify a person from serving as a receiver.  Receiver may be appointed by a court of competent jurisdiction upon *ex parte* application and without notice, notice being expressly waived.

## REQUEST FOR RELIEF

*Request for the Immediate Appointment of a Receiver*

45. Given the uncured Events of Default and the GP's ongoing and continued failure to exercise its fiduciary duties to the LLLP and the Limited Partners, the Cui Plaintiffs feel that it is in the best interests of all parties concerned to request that the Court appoint a Receiver to take possession of and administer the Real Property secured by the loan.

46. The Cui Plaintiffs seek the entry of the proposed Order filed herewith appointing Pear Partners, LLC and its principal, Patrick M. Donovan to act as Receiver to collect, preserve, and protect the Collateral/Receivership Property and enforce the rights of the LLLP under the Loan Documents.  Such proposed Order contains customary powers and terms necessary to enable a receiver to perform their functions to preserve, protect, and assist with the disposition of the Receivership Property.

Pursuant to F.R.C.P. 66, a court may appoint a receiver in accord with historical practice in federal courts.  A Receiver is an indifferent person between parties, appointed by court to receive rents, issues, or profits of land, or other thing in question, pending suit, where it does not seem reasonable to court that either party should do it.  *Ledbetter v. Farmers Bank & Trust Co*., 142 F.2d 147 (4th Cir.), cert. denied, 323 U.S. 719, 65 S. Ct. 48, 89 L. Ed. 578 (1944). Furthermore, there is no general

requirement of hearing in Rule 66, and court may approve of appointment of receiver without hearing where record discloses sufficient facts to warrant it. *Citronelle-Mobile Gathering, Inc. v. Watkins*, 934 F.2d 1180, Unemployment Ins. Rep. (CCH) P16184, Unemployment Ins. Rep. (CCH) P16184A, 20 Fed. R. Serv. 3d (Callaghan) 284 (11th Cir. 1991).

47. Colorado law also permits the appointment of a receiver, where, as here, the parties have agreed to such remedy upon the event of a default. C.R.S. § 38-38-602(3); *Bank of Am. Nat'l Trust & Sav. Ass'n v. Denver Hotel Ass'n*, 830 P.2d 1138 (Colo. App. 1992) (trial court did not abuse its discretion in appointing a receiver *ex parte* where based on contract, bank was entitled to such appointment in the event of default).

48. Cause exists to grant the Cui Plaintiffs' request for the immediate appointment of a receiver. As described above, Events of Default have occurred under the Loan Documents and the Defendants expressly agreed to the appointment of a receiver upon an Event of Default. Furthermore, the limited partners have voted to remove the GP and the GP has actively engaged in actions which constitute breaches of its fiduciary duties to the limited partners with respect to the removal of Units 6C West; 3C East and 6E West from the security pool in violation of the terms of the Limited Partnership Agreement and in the case of Units 3C East and 6E West preferential transfers to specific limited partners.

49. The Cui Plaintiffs request that the Court appoint Pear Partners, LLC and Patrick M. Donovan as receiver over the Collateral/Receivership Property described herein on an *ex parte* and forthwith basis and order that no bond be required based on the agreement of the parties.

50. The Cui Plaintiffs request that the Court appoint Pear Partners, LLC and Patrick M. Donovan as receiver in this matter over the Receivership Property and that they serve as the

substitute general partner of the LLLP.  Background information on Mr. Donovan and his colleague, Christopher P. Harff including their professional resumes and history of Court-appointed receivership assignments along with the current billing rates of Pear Partners, LLC are attached to the BPS Dec as **DD and EE.**  As demonstrated by such materials, Mr. Donovan and Mr. Harff have extensive experience serving as a Court-appointed receivers and Pear Partners, LLC is qualified to act as receiver in this case.

WHEREFORE, the Cui Plaintiff's request that this Court enter an order pursuant to C.R.C.P. 66 and LLLP's Loan Documents appointing Pear Partners, LLC as Receiver for the Receivership Property and as Receiver and substitute general partner for the LLLP with all of the powers and authority usually held by receivers and reasonably necessary to accomplish the purposes set forth herein, as provided in the proposed order tendered herewith, and that the Court grant such other and further relief as it deems necessary and proper.

Dated: May 29, 2020

/s/ Brian Stewart
Hubert Kuo
Brian P. Stewart
**Ardent Law Group**
4340 Von Karman Ave.,
Suite 290
Newport Beach, California 92660
Telephone: (949) 299-0188
Facsimile:  (949) 299-0127
bstewart@ardentlawgroup.com
Plaintiffs, Dianwen Cui, Lei Gu, Sufen Leng, Xue Mei, Zhou Mei, Yan Song, Lu Wang, Yue Wu, Zhuo Yang, Jingwen Zhang, Lei Zhang, Ling Zhang, Xiaohong Zhang, Qin Zhou, Xun Zhu, Chunyi Zou in the consolidated case

## CERTIFICATION OF SERVICE

This is to certify that on May 29, 2020, a true and correct copy of the above and foregoing **Plaintiffs' Motion for Appointment of Receiver (On Ex Parte Basis Without Bond As Permitted by the Loan Documents)** has been electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record.

*/s/ Brian P. Stewart*
For Ardent Law Group, P.C.