# EXHIBIT F

## PROMISSORY NOTE

Original Principal Amount: **$100,000,000.00**                                      Date: April 18, 2012

**PROMISE TO PAY**: Solaris Property Owner I, LLC, a Delaware limited liability company ("**Borrower**") promises to pay to Colorado Regional Center Project Solaris, LLLP, a Colorado limited liability limited partnership ("**Lender**"), or order, in lawful money of the United States of America, the principal amount of One Hundred Million and No/100 United States Dollars ($100,000,000.00) together with interest at the rate of five and seven-tenths percent (5.7%) per annum (the "**Interest Rate**") on the terms and conditions set forth below (the "**Loan**"). Notwithstanding anything contained herein to the contrary (including, without limitation, the Original Principal Amount set forth above), the maximum principal balance due hereunder at any point in time shall equal the total principal balance of all Loan Advances made to Borrower as set forth in Exhibit A attached hereto and incorporated herein by this reference. It is the express intent of the parties hereto that the Original Principal Amount of this Note is intended to reflect the maximum amount of principal to be loaned by Lender to Borrower from the various Loan Advances made from time to time.

**DEFINED TERMS**: Initially capitalized terms used but not otherwise defined below shall have the meanings ascribed to such terms under the provisions of that certain Loan Agreement dated effective November 5, 2010, by and between Borrower and Lender (the "**Loan Agreement**").

**INTEREST PAYMENTS**: Commencing on the date Lender makes the first Loan Advance to Borrower in accordance with the Loan Agreement (the "**Commencement Date**"), the outstanding principal of the loan shall bear interest at the Interest Rate. Borrower shall make interest-only payments on the outstanding principal balance of the Loan (each, an "**Interest Payment**") on the first business day of each month following the Commencement Date until the Loan is repaid in full. Each Interest Payment shall include interest on all sums outstanding at the time such Interest Payment is due (including a pro-rated amount of interest for any Loan Advances that took place during the previous month). Borrower will pay Lender at Lender's address as Lender shall designate in writing. Any and all payments made hereunder shall be applied first to any unpaid collection costs and late charges pursuant to this Note, second to accrued unpaid interest, and third in reduction of the outstanding principal balance of the Loan.

**TERM**: With respect to each Loan Advance, this note shall be deemed to mature, and (if not sooner repaid in accordance with the provisions hereof) the unpaid principal balance attributable to such Loan Advance, together with all accrued interest attributable to the same (if any), shall be due and payable on the date that is exactly sixty (60) months from Closing on such Loan Advance (each, a "**Maturity Date**"); *provided, however*, that (notwithstanding anything to the contrary set forth in this Note or any other Loan Documents) at any time after the Prepayment Date (as hereinafter defined), Borrower shall have the absolute right to prepay the portion the Note attributable to any Loan Advance by repaying Lender the amount of such Loan Advance in cash or conveying Lender the Collateral Unit(s) securing such Loan Advance. If Borrower tenders to Lender any Collateral Unit(s) in repayment of a Loan Advance, the principal balance of the Note shall be reduced by the amount of the Loan Advance secured by such Collateral Unit(s). With respect to each Loan Advance, the term "**Prepayment Date**" means a date that is exactly thirty six (36) months from and after the Closing on such Loan Advance.

**PREPAYMENT**: Except as otherwise set forth in this Note, Borrower shall not be allowed to pay all or a portion of the Loan prior to the Prepayment Date.

**NOTICE OF PREPAYMENT**: Borrower shall give Lender (i) at least sixty (60) calendar days prior written notice of any Cash Prepayment and (ii) at least twenty (20) calendar days prior written notice of any Collateral Unit Distribution.

1

**DEFAULT:** Subject to any applicable cure rights set forth in any Loan Document, each of the following shall constitute an "**Event of Default**" hereunder:

 (i) if Borrower fails to make any payment when such payment is due;

 (ii) if Borrower fails to comply with or to perform when due any other material, obligation, covenant, representation, warranty or condition contained in this Note or any other Loan Document;

 (iii) if Borrower defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement in favor of any other creditor or person that results in a Material Adverse Affect; or

 (iv) if any material representation or statement made or furnished to Lender by Borrower is false or misleading at the time made or furnished.

**NON-RECOURSE LOAN; EXCEPTION FOR INTEREST PAYMENTS:**

 (i) **Non-Recourse Loan.** Except as expressly provided below, subject to any applicable cure rights set forth in any Loan Document, if an Event of Default has occurred and is then continuing, Lender agrees to proceed solely against the Collateral, it being the parties' mutual understanding and intent that principal amount of the Loan secured by this Note is entirely non-recourse to Borrower. Notwithstanding the foregoing, Lender may name Borrower or any of its successors or assigns or any person or entity holding under or through them as parties to any actions, suits or other proceedings initiated by Lender to enforce any remedies set forth herein against the Collateral, including without, limitation, any action, suit or proceeding to foreclose the lien of the Deed of Trust against the Collateral.

 (ii) **Exception for Interest Payments.** Notwithstanding the foregoing, subject to any applicable cure rights set forth in any Loan Document, if Borrower fails to make any Interest Payment(s) due hereunder, the amount of such Interest Payment(s) plus the Collection Costs directly related collecting to the same shall be fully recourse to Borrower. Except as expressly set forth in the immediately preceding sentence, the Loan evidenced by this Note is and shall remain entirely non-recourse to Borrower.

**LENDER'S RIGHTS:** Subject to any applicable cure rights set forth in any Loan Documents, if an Event of Default under this Note has occurred and is then continuing: (i) Lender may declare the entire unpaid principal balance of this Note and all accrued interest, if any, immediately due and, upon receipt of written notice of such acceleration, Borrower shall convey the Collateral Unit(s) to Lender in full satisfaction of Borrower's obligations under this Note and the other Loan Documents; (ii) Lender, at its option, may also, if permitted under applicable law, increase the Interest Rate on this Note to the lesser of fourteen percent (14.00%) or the maximum amount permitted by law (the "**Default Rate**"); and (iii) Borrower shall be responsible for any and all Collection Costs directly related to the Event of Default. "**Collection Costs**" means, to the extent permitted by law, Lender's reasonable legal expenses (whether or not there is a lawsuit), including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, any post-judgment collection services, and any court costs and fees associated with the foregoing.

**CHOICE OF LAW:** This Note has been delivered to Lender and accepted by Lender in Colorado. Borrower and Lender agree to submit to the jurisdiction of the courts of the City and County of Denver, Colorado. Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or

counterclaim brought by either Lender or Borrower against the other. This Note shall be governed by and construed in accordance with the laws of Colorado.

**COLLATERAL:** In order to secure payment of this Note, Borrower has granted to Lender security interests in certain real and personal property owned by Borrower (the "**Collateral**"). These security interests are evidenced by a Deed of Trust and Security Agreement and certain other documents (collectively, the "**Collateral Documents**"). Reference is made to the Collateral Documents for various rights and remedies of the parties to those documents.

**ASSIGNMENT BY BORROWER.** Notwithstanding to the contrary set forth in any of the Loan Documents, Borrower shall have the absolute right (in Borrower's discretion) to assign this Promissory Note, the Loan Agreement and the other Loan Documents to Borrower's wholly-owned, single-purpose subsidiary (the "SPE"). Upon such assignment, all of Borrower's rights and obligations under the Loan Documents shall automatically and forever terminate and, thereafter, Borrower shall have no further obligation of any kind whatsoever with respect to the Loan or Loan Documents. If Borrower so assigns Borrower's interest in the Loan Documents to Borrower's SPE prior to the execution of this Promissory Note, Borrower's SPE shall be substituted for Borrower as the signatory hereof and construed to mean "Borrower" for all purposes hereunder and under the other Loan Documents. A condition precedent to any such assignment shall be that any assignee of Borrower shall continue to operate the Solaris Project, as defined in the Loan Agreement, to assure full construction expenditure to project completion and subsequent operation of the retail businesses, all in satisfaction of the factual assumptions set forth in the EB-5 Econometric Report prepared in connection with the Solaris Project. The purpose of this condition precedent is to assure the Lender that the related EB-5 investors' ability to obtain removal of conditions on their U.S. permanent residency will not be impaired by any such assignment of the Borrower's rights and obligations under the Loan Documents. The Lender shall have sole discretion to determine satisfaction of this condition precedent prior to any assignment by Borrower.

**GENERAL:** Lender may delay or forego enforcing any of its rights or remedies under this Note or under the Collateral Documents without losing them. Borrower understands and agrees that, with or without any notice to anyone other than Borrower, Lender may (i) make one or more additional secured or unsecured loans or otherwise extend additional credit and (ii) apply any security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreements, as Lender in its discretion may determine. Borrower, to the extent allowed by law, waives presentment, demand for payment, protest and notice of dishonor.

**BORROWER:**

**Solaris Property Owner I, LLC,** a Delaware limited liability company

By: _____

Name: __Ryan Smith_____

Title: __Designated Agent_____

3

## EXHIBIT A
### (Promissory Note)

| A | B | C | D | E |
|---|---|---|---|---|
| Property | Collateral Unit Value | Loan Advance | Date Loan Advance Complete | Maturity Date |
| Unit 6E West | $3,707,982 | $4,000,000 | April 18, 2012 | April 17, 2017 |
| Unit 2A South | $6,439,950 | $6,500,000 | April 25, 2012 | April 24, 2017 |
| Pent E West | $3,084,124 | $3,000,000 | May 3, 2012 | May 2, 2017 |
| Unit 6E East | $3,707,485 | $3,500,000 | May 30, 2012 | May 29, 2017 |
| Pent E East | $3,084,683 | $3,000,000 | June 15, 2012 | June 14, 2017 |
| Unit 5E West | $3,581,090 | $4,000,000 | August 2, 2012 | August 1, 2017 |
| Unit 4G West | $6,420,861 | $6,500,000 | August 24, 2012 | August 23, 2017 |
| Unit 7E West | $4,556,554 | $4,500,000 | September 7, 2012 | September 6, 2017 |
| Pent C East | $2,355,248 | $2,000,000 | September 13, 2012 | September 12, 2017 |
| Unit 6D East | $7,832,070 | $8,000,000 | October 2, 2012 | October 1, 2017 |
| Unit 5C West | $3,555,668 | $3,500,000 | November 6, 2012 | November 5, 2017 |
| Unit 6C West | $3,605,715 | $3,500,000 | November 27, 2012 | November 26, 2017 |
| Unit 5G West | $6,521,940 | $6,500,000 | January 24, 2013 | January 23, 2018 |
| Unit 3E East | $2,578,042 | $3,000,000 | January 29, 2013 | January 28, 2018 |
| Unit 7E East | $4,043,190 | $4,000,000 | January 30, 2013 | January 29, 2018 |
| Unit 4D East | $7,831,977 | $7,500,000 | March 6, 2013 | March 5, 2018 |
| Pent G West | $4,737,891 | $4,500,000 | May 20, 2013 | May 19, 2018 |
| Pent C West | $2,355,530 | $2,500,000 | May 30, 2013 | May 29, 2018 |
| Unit 3C East | $2,500,000 | $2,500,000 | January 30, 2015 | January 29, 2020 |

Borrower Initials _RS_
Date _1/29/15_