**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

**Civil Action No. 19-cv-02443
Consolidated with Civil Action No. 19-cv-02637**

Jun Li, Qi Qin, Yi Liu, et al.,
        Plaintiffs,

           v.                                    Hon. Raymond P. Moore

Waveland Ventures LLC,
Colorado Regional Center Project Solaris LLLP,
Colorado Regional Center I, LLC,
Solaris Property Owner LLC,
Solaris Property Owner I, and
Peter Knobel,
        Defendants.

**Plaintiffs' Opposition to Motion to Dismiss
Complaint Under F.R.C.P. 12 (b) (6)**

Plaintiffs Dianwen Cui, Lei Gu, Sufen Leng, Xue Mei, Zhou Mei, Yan Song, Lu Wang, Yue Wu, Zhuo Yang, Jingwen Zhang, Lei Zhang, Ling Zhang, Xiaohong Zhang, Qin Zhou Chunyu Zou, individually, and derivatively on behalf of Colorado Regional Center Project Solaris LLLP (the "CUI Plaintiffs") by and through the undersigned counsel, hereby submit this Opposition to CRC Defendants' F.R.C.P. 12 (b) (6) Motion to Dismiss CUI Plaintiffs' 3rd Amended Complaint [ECF 190] and Li Plaintiffs' Third Amended Complaint [ECF 121] as follow:

**CIVIL PRACTICE STANDARDS**

As an initial observation, the Court in this matter has consistently rejected motions filed in violation of its published Civil Practice Standards. The Current Motion [ECF # 203] is highly

convoluted and confusing as it is a combination of two separate Motions to Dismiss two distinct and separate Complaints filed by two completely separate groups of Plaintiffs. Section IV. A. of the Civil Practice Standards states that:

> "**Absent leave of Court, a motion**, response, reply, or other filing **may not** (i) incorporate by reference another motion or filing; or (ii) **contain another motion**, e.g., a Rule 56(d) motion should not be included in a response to a Rule 56(a) motion and a Rule 15 motion should not be included in an objection to a United States Magistrate Judge's recommendation."

While the Defendants jointly sought leave to file a brief which exceeded the 20 page limitation, no one ever sought leave of the Court to combine two motions into one.

## BACKGROUND

The Defendants' Motion to Dismiss the Cui Plaintiffs' Third Amended Complaint ("TAC") [ECF # 203] is predicted on perpetuating the Defendants ongoing underlying fraud against the Plaintiffs. Specifically, the Defendants want to call their fraud a security and then absolve themselves by pointing to securities disclaimers in the Confidential Information Memorandum ("CIM") [Exhibit "A" to Plaintiffs' Motion]. The Defendants want to refer to the transactions as "securities". In large print in the preface to the CIM the first sentence states that: "THESE SECURITIES ARE HIGHLY SPECUALTIVE AND INVOLVE A HIGH DEGREE OF RISK …" of course they also state that the "SECURITIES HAVE NOT BEEN REGISTERED WITH THE U.S. SECURITIES AND EXCHANGE COMMISSION OR ANY STATE COMMISSION AND ARE BEING OFFERED PRIVATELY TO A LIMITED NUMBER OF INVESTORS" finally it states that: "THE COMPANY IS EXEMPT FROM THE PROVISION OF THE INVESTMENT COMPANY ACT OF 1940 PURSUANT OT SECTION (3) (1)." The investment in the Limited Partnership may or may not qualify as a security. Defendants' base much of their defense in the whole cloth that this is a security; that they are exempt; and that they have clearly warned the Plaintiffs of the risks involved.

Of course the exemption claimed is that the number of investors solicited are less than 100, when the solicitation, on its face, requires at least 160 investors. Whether it is a security, or not, is unclear, but either way it certainly isn't exempt from registration with the appropriate state and federal agencies.[1]  In any event, the loan to Solaris Property Owner, LLC ("SPO")[2], is a simple secured transaction and one where the investments discussed in the CIM the deposit of $500,000 into a limited Partnership, Colorado Regional Center Project Solaris, LLLP (the "LLLP"), with GP acting as the General Partner are pooled with the other investors funds to create the capital for the secured loan to SPO.  On page 9 of the CIM, the "Securities" are identified as "Limited Liability Limited Partnership Interests".[3]  The secured loan to SPO should still be a proper secured transaction negotiated by the GP in the best business interests of the LLLP.  The GP, under Colorado law has a fiduciary duty to negotiate in good faith in the best interests of the LLLP.

The fiduciary duty owed by a general partner includes the duties of good faith, sound business judgment, candor, forthrightness, and fairness. *Roeschlein v. Watkins*, 686 P.2d 1347 (Colo. App. 1983). *Silverberg v. Colantuno*, 991 P.2d 280, 285, 1998 Colo. App. LEXIS 199, *7, 42 U.C.C. Rep. Serv. 2d (Callaghan) 637, 1998 Colo. J. C.A.R. 4407.  You would think that the GP would negotiate the loan with the best interests of the LLLP in mind.  That certainly did not happen.  In negotiating the Loan Documents with SPO, the GP failed to negotiate in the best interests of the LLLP and instead entered into the Loan agreement and a series of amendments

---

[1] These "securities have never been registered.

[2] Later all rights of SPO were assigned to Solaris Property Owner LLC I ("SPOI")

[3]. By the Defendants own language the security is the interest in the limited liability Company and not the "Loan" to Solaris.

thereto which benefited SPO and its successor-in-interest SPOI and the GP itself, all to the detriment of the LLLP and the Limited Partners. [Declaration of Brian P. Stewart "BPS Dec" ¶ 5].

Furthermore, as admitted by Rick Hayes, "At the time the world was coming to an end, at least financially. There weren't other sources of financing avaiable. It put stress on the project. [BPS Dec ¶ 8; Exhibit 1 to BPS Dec]. When the Loan Agreements were negotiated and structured, it was very difficult to get a loan for commercial property, let alone one with the provisions favorable to SPOI, the borrower, as negotiated by GP here. MR. Hayes knew this and still ignored the fiduciary duties owed to the LLLP in structuring the deal. Additioanlly, Mr. Hayes bragged in the Article about his belief that "EB-5 investors are not return driven – they are return-agnostic. From that standpoint, it's a cheap source of capital for developers." [BPS Dec ¶ 9; Exhibit 1 to BPS Dec]. None of this information was ever conveyed to the investors.

The CIM is a thoroughly confusing and self-serving document, in any language. For example, the CIM states that:

1. " the Solaris Note will be personally guaranteed by Peter Knobble [CIM page 1]";
2. "Ownership of the LP Interests will entitle Limited Partners to free use of a two-bedroom Condominium Unit at Solaris for up to seven days during the months of November through March, and 14 days during the rest of the year[CIM page 2]";
3. "SPO will retain ownership of the Condominium Units that are pledged to the company as Collateral for the SPO Note. Therefore SPO will be responsible for ongoing payments of Homeowners Association Dues, property taxes, insurance and other obligations relating to the pledged Condominium Units." [CIM page 2]";

None of these representations were true. The Limited Partners were told that the loan would be secured by Deeds of Trust; they were told that the loans would be personally guaranteed by Peter Knobbel the owner of SPO; they were told that the principal of the loan would be "paid" or "pre-paid". All of these representations created the impression that the loan itself was relatively safe.

4

An investor might believe that he/she might not recoup any interest on the loan but the principal would be safe. While there are some disclaimers about the investment, these are related to the failure of SPO/SPOI and the volatility of the market. None of the "risks" identified have occurred. All of SPOI's other lenders have been paid, SPOI is not in bankruptcy and from all appearances is quite profitable. Simply put SPOI doesn't want to repay the loan and the GP has done everything it can to facilitate SPOI's desire. The actions of the GP are and always have given the appearance of a perceived fiduciary duty to SPOI rather than to the limited partners or LLLP.

## ARGUMENT

It is commonly understood that "…a motion to dismiss on the grounds that a petition does not state a claim on which relief can be granted, admits all facts well pleaded, and the legal question presented thereby is governed by the facts as pleaded." *Galbreath v. Metropolitan Trust Co.*, 134 F.2d 569, 570, 1943 U.S. App. LEXIS 3619, *1. The applicable inquiry under Rule 12(b) (6) is well-settled. Courts are required to accept all well-pleaded allegations in the complaint as true and to draw all reasonable inferences in favor of the non-moving party. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 40 L. Ed. 2d 90, 94 S. Ct. 1683 (1974), overruled on other grounds, *Harlow v. Fitzgerald*, 457 U.S. 800, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1982); Allegheny General Hospital v. Philip Morris, Inc., 228 F.3d 429, 434-35 (3d Cir. 2000). The inquiry is not whether plaintiffs will ultimately prevail in a trial on the merits, but whether they should be afforded an opportunity to offer evidence in support of their claims. *See Scheuer*, 416 U.S. at 236. **Dismissal under Rule 12(b) (6) is not appropriate unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief**. *See R.F. Lafferty*, 267 F.3d at 346 *Conley v. Gibson*, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957)). *Rockefeller Ctr.*

5

*Props. Sec. Litig. v. Rockefeller*, 311 F.3d 198, 215-216, 2002 U.S. App. LEXIS 23259, *35-36, Fed. Sec. L. Rep. (CCH) P92,203, 54 Fed. R. Serv. 3d (Callaghan) 252.  By these standards, the TAC easily withstands the claims raised in Defendants Motion to Dismiss.

A. **Fraud Allegations**

   1. **Statute of limitations claims.**

Defendants' attempt to dismiss the 1st Count of the TAC based upon statute of limitation grounds is simply a misrepresentation of the TAC.   Here, the Defendants take the position that because they put a securities risk disclaimer in the CIM, the statute of limitations must begin there.  Anyone reviewing the documents would understand the risk of losing their investment.  Of course this one dimensional analysis must fail for a variety of reasons.

First, there is no single date upon which to commence calculation the statute of limitations.  There were 165 investors who were solicited at various times through various presentations all of which were extremely confusing to any normal person in any language.  Funds were taken in at different times, advanced at different times and matured at different times.  The chart below indicates that funds were advanced and became due over a three year period.

| Property | Collateral Unit Value | Loan Advance | Loan-to-Value | Date Loan Advance Complete | Maturity Date |
|---|---|---|---|---|---|
| Unit 6E West | $3,707,982.00 | $4,000,000.00 | 107.88% | April 18, 2012 | April 17, 2017 |
| Unit 2A South | 6,439,950.00 | 6,500,000.00 | 100.93% | April 25, 2012 | April 24, 2017 |
| Pent E West | 3,084,124.00 | 3,000,000.00 | 97.27% | May 3, 2012 | May 2, 2017 |
| Unit 6E East | 3,707,485.00 | 3,500,000.00 | 94.40% | May 30, 2012 | May 29, 2017 |
| Pent E East | 3,084,683.00 | 3,000,000.00 | 97.25% | June 15, 2012 | June 14, 2017 |
| Unit 5E West | 3,581,090.00 | 4,000,000.00 | 111.70% | August 2, 2012 | August 1, 2017 |
| Unit 4G West | 6,420,861.00 | 6,500,000.00 | 101.23% | August 24, 2012 | August 23, 2017 |
| Unit 7E West | 4,556,554.00 | 4,500,000.00 | 98.76% | September 7, 2012 | September 6, 2017 |
| Pent C East | 2,355,248.00 | 2,000,000.00 | 84.92% | September 13, 2012 | September 12, 2017 |
| Unit 6D East | 7,832,070.00 | 8,000,000.00 | 102.14% | October 2, 2012 | October 1, 2017 |
| Unit 5C West | 3,555,668.00 | 3,500,000.00 | 98.43% | November 6, 2012 | November 5, 2017 |
| Unit 6C West | 3,605,715.00 | 3,500,000.00 | 97.07% | November 27, 2012 | November 26, 2017 |

| Unit 5G West | 6,521,940.00 | 6,500,000.00 | 99.66% | January 24, 2013 | January 23, 2018 |
| --- | --- | --- | --- | --- | --- |
| Unit 3E East | 2,578,042.00 | 3,000,000.00 | 116.37% | January 29, 2013 | January 28, 2018 |
| Unit 7E East | 4,043,190.00 | 4,000,000.00 | 98.93% | January 30, 2013 | January 29, 2018 |
| Unit 4D East | 7,831,977.00 | 7,500,000.00 | 95.76% | March 6, 2013 | March 5, 2018 |
| Pent G West | 4,737,891.00 | 4,500,000.00 | 94.98% | May 20, 2013 | May 19, 2018 |
| Pent C West | 2,355,530.00 | 2,500,000.00 | 106.13% | May 30, 2013 | May 29, 2018 |
| Unit 3C East | 2,500,000.00 | 2,500,000.00 | 100.00% | January 30, 2015 | January 30, 2020 |
| **Totals** | **$82,500,000.00** | **$82,500,000.00** | **100.00%** | | |

The CIM and other presentations always stated that the loan would be secured by real property, that the security would be worth at least as much as the principal amount of the loan, that the loan would also be personally guaranteed by Peter Knobble, all representations that would tend to indicate a loan that was properly securitized. The documents also always discussed **payment** of the principal or **pre-payment** of the principal. Nowhere in the documents did it ever discuss or anticipate that "payment" of the principal or "pre-payment" of the principal would be manifest as payment of less than ½ of the principal.

Furthermore the GP has continuously sent the investors updates indicating that the loan was adequately collateralized for repayment of the principal, thereby preventing the Plaintiffs from discovering the fraud. In fact the actions of the GP kept the limited partners in the dark about the issues related to the value of the collateral until the proposed bulk sale in November of 2019. It could equally be argued that the continuing fraud was ongoing until the January 30 maturity date of the final advance, as there is no way to determine which investor's money was used for each advance. Whether you apply the 3 year statute of limitations for fraud claims *J.A. Balistreri Greenhouses v. Roper Corp.*, 767 P.2d 736, 739, 1988 Colo. App. LEXIS 254, *9, 12 BTR 839 or the 5 year statute of limitations for fraud involving a fiduciary *Elk River Associates v. Huskin*, 691 P.2d 1148, 1152, 1984 Colo. App. LEXIS 1254, *8-9, Plaintiffs claims clearly

fall within the applicable statute of limitations. Defendants' contention that the fraud must have been discovered in 2012 are both self-serving and ridiculous.

       **2.  Fraud allegations lack specificity.**

Defendants have spent a large portion of their motion arguing that in order to plead fraud the heightened pleading requirements of Rule 9(b) must apply.  In discussing this issue, the court in *Rockefellar Ctr. Props. Sec. Litig v. Rockefellar* 311 F. 3d 198, stated at page 216 that:

> "While we have acknowledged the stringency of Rule 9(b)'s pleading requirements, we have also stated that, in applying Rule 9(b), courts should be "sensitive" to situations in which "sophisticated defrauders" may "successfully conceal the details of their fraud." Id. **Where it can be shown that the requisite factual information is peculiarly within the defendant's knowledge or control, the rigid requirements of Rule 9(b) may be relaxed.** Id. (emphasis added)."

Here, it is undisputed that the GP produced all of the soliciting documents and hired agents in China to solicit investors for their scheme.  There is no as to who was in control of the scheme or as to what claims being made by the Plaintiffs.  The GP is the only party who possesses the actual knowledge of who the individuals making the presentations were, and they not only do not deny producing the deceptive written information, they attach it to their motions as an Exhibit.  The GP, with the knowledge and understanding of the other defendants produced a very deceptive and confusing prospectus promising immigration status and a secured loan transaction secured by real estate valued greater than the amount of the principal for the repayment of the loan.  There is very little in the way of mystery as to who presented this information to the Plaintiffs nor is there a question as to what is being claimed.

///

///

///

///

**Breach of Fiduciary Duty Allegations.**

    1.    **Statute of limitations claims.**

Defendants again make a similar simplistic one dimensional statute of limitations argument, claiming that the actions complained of in the complaint all occurred prior to the Plaintiffs' investment. Defendants' arguments are incorrect.

> "Although the existence of a fiduciary or confidential relationship is generally a question of fact for the jury, *Meyer v. Schwartz,* 638 P.2d 821 (Colo. App. 1981); *Breeden v. Dailey,* 40 Colo. App. 70, 574 P.2d 508 (1977), a general partner owes a fiduciary duty to the limited partners as a matter of law. *Gundelach v. Gollehon,* 42 Colo. App. 437, 598 P.2d 521 (1979). And, while formation of a limited partnership requires substantial compliance in good faith with the requirements of § 7-61-103, C.R.S. (then C.R.S. 1963, 104-2-2), a fiduciary relationship between the parties to a limited partnership can attach during the negotiations which precede formal execution of the certificate of limited partnership. *See Lucas v. Abbott,* 198 Colo. 477, 601 P.2d 1376 (1979).
>
> *Elk River Associates v. Huskin*, 691 P.2d 1148, 1152, 1984 Colo. App. LEXIS 1254, *7-8

The actions of the GP[4] from the formation of the investment scam up to and including this 12 (b)(6) motion constitute a premeditated, intricate and ongoing series of breaches of fiduciary duties to the limited partners individually and to the LLLP. The manner in which the GP formulated the solicitation for investment in the GP and negotiated the loan with SPO are egregious on their face particularly in light of the comments made by Rick Hayes which demonstrate his callous disregard of the GP's fiduciary duties to the LLLP. The execution of the Agreement Regarding Collateral Units in April of 2015 without the knowledge or consent of the limited partners which allowed SPOI to stop making payments while retaining ownership of the Collateral to again disguise the true value of the Collateral; the ongoing misrepresentations of the value of the security; the GP's active attempts through counsel to deny the Plaintiffs' information about the

---

[4] And perhaps its counsel.

operating costs of the GP and contact information of limited partners; and GP's acts through counsel to defend against Plaintiffs' Complaints without the standing to do so, in an attempt to shield SPOI from Plaintiffs' claims are all evidence of the breaches of fiduciary duty which continue to this day. Some of the most egregious violations have occurred since the Complaint was filed but the GP has been actively breaching its fiduciary duties to the limited partners on a daily basis since the inception of the LLLP.

2. **Economic Loss rule Claims**

Defendants make yet another argument that hammers home the ill-conceived premeditated attempts to defraud the E-B 5 investors, citing the economic loss rule as a prohibition against tort claims arising from contract. Apparently, according to the GP, by stating in the Limited Partnership Agreement that the LLLP will be governed by the Uniform Limited Partnership Act, they have somehow gutted the fiduciary duties which are statutorily established by the Uniform Limited Partnership Act. Defendants cite *Tuchman v. Pell Rudman Trust Co*., N.A. 245 F. Supp. to support this proposition. *Tuchman* involves a client services agreement not a Limited Partnership Agreement, and discusses an election of remedies, not an elimination of tort claims. The case is wholly inapplicable to the situation before the Court and should be ignored for what it is, yet another attempt to misdirect the Court with smoke and mirrors.

B. <u>**Securities Claims.**</u>

Defendants do not deny that they while claiming to have been in the business of selling "securities" that they fraudulently claimed to be exempt from securities regulations based upon soliciting less than 100 investors, or that they have illegally and improperly employed and directed people in China to solicit the sale of thee "securities". Instead they claim that there is no private cause of action for these violations. Defendants herein were less aiders and abettors, and were rather the controlling or directing parties producing the solicitation

materials and directing the people making the solicitations. As a consequence, Defendants may be held liable under 15 USC 78t (a).

Of course these acts were perpetrated while they were the acting General Partner of the LLLP. But they don't owe a fiduciary duty to the LLLP or the limited partners under the Uniform Limited Partnership Act, because they mentioned the Act in the Limited Partnership Agreement solicit investments.  The art of talking out of three sides of your mouth all at once is rare and unusual.

### C. **Alter Ego Liability.**

Colorado law provides for alter ego liability. A corporation is the alter ego of its shareholder or shareholders when it is a "mere instrumentality for the transaction of the shareholders' own affairs, and there is such unity of interest in ownership that the separate personalities of the corporation and the owners no longer exist." Id. (quoting *Krystkowiak v. W.O. Brisben Co.,* 90 P.3d 859, 867 n.7 (Colo. 2004)). To determine whether a corporation is an alter ego, a court should consider a number of factors, including whether "(1) the corporation is operated  as a distinct business entity, (2) funds and assets are commingled, (3) adequate corporate records are maintained, (4) the nature and form of the entity's ownership and control facilitate misuse by an insider, (5) the business is thinly capitalized, (6) the corporation is used as a 'mere shell,' (7) shareholders disregard legal formalities, and (8) corporate funds or assets are used for noncorporate purposes."  *Stockdale v. Ellsworth* 407 P.3d 571 **; 2017 Colo. LEXIS 1092.  The allegations contained in the complaint are adequate to put the Defendants on notice of the alter ego claims.  Plaintiffs should be allowed to conduct discovery to determine whether evidence supports those claims.  Colorado law clearly supports that a party may move to join a party post judgment for alter ego liability see

*City of Aurora v. Simpson* 105 P3d. 595.  While it would be better to allow the alter ego allegations to remain, Plaintiffs may always revisit them after judgment is entered.

WHEREFORE, Plaintiffs respectfully request that the Defendants' F.R.C.P. Rule 12 (b) (6) Motion be denied.

DATED: June 1, 2020            /s/ Brian P. Stewart
                                                          Brian P. Stewart
                                                          **Ardent Law Group**
                                                          4340 Von Karman Ave., Suite 290
                                                          Newport Beach, California 92660
                                                          Telephone: (949) 299-0188
                                                          Facsimile:  (949) 299-0127
                                                           bstewart@ardentlawgroup.com
                                                          Attorney for Plaintiffs Dianwen Cui, Lei Gu, Sufen Leng, Xue Mei, Zhou Mei, Yan Song, Lu Wang, Yue Wu, Zhuo Yang, Jingwen Zhang, Lei Zhang, Ling Zhang, Xiaohong Zhang, Qin Zhou Chunyu Zou, individually, and on behalf of Colorado Regional Center Project Solaris LLLP

## CERTIFICATION OF SERVICE

This is to certify that on June 1, 2020, a true and correct copy of the above and foregoing Plaintiffs' **Plaintiffs' Opposition to Motion to Dismiss Complaint Under F.R.C.P. 12 (b) (6)** has been electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record.

*/s/ Brian P. Stewart*
For Ardent Law Group, P.C.