# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

**Civil Action No. 19-cv-02443**
**Consolidated with Civil Action No. 19-cv-02637**

Jun Li, Qi Qin, Yi Liu, et al.,
        Plaintiffs,

v.   Hon. Raymond P. Moore

Waveland Ventures LLC,
Colorado Regional Center Project Solaris LLLP,
Colorado Regional Center I, LLC,
Solaris Property Owner LLC,
Solaris Property Owner LLC I, and
Peter Knobel,
        Defendants.

## Declaration of Brian P. Stewart in Support of Opposition to Motion to Dismiss

I, Brian P. Stewart, am over the age of eighteen and have personal knowledge of the facts stated herein and hereby to state as follows:

1. I am an attorney at The Ardent Law Group, attorneys of record for the Plaintiffs in Civil Action No. 19-cv-02637.

**2.** This declaration is offered in support of the Cui Plaintiffs' Opposition to Motion to Dismiss.

3. 165 Chinese investors collectively invested $82.5 million into a Colorado limited partnership, Defendant Colorado Regional Center Project Solaris LLLP ("LLLP") that was created by Waveland Ventures, LLC ("Waveland") and Colorado Regional Center ("CRC"). CRC's subsidiary, Colorado Regional Center I, LLC ("GP") was established as the general partner of the LLLP and received a 1% partnership interest.

4. The GP had the exclusive right to negotiate the loan with on behalf of the LLLP, however such rights included a fiduciary duty to negotiate in the best interests of the LLLP.

5. In negotiating the loan with SPO, the GP failed to negotiate in the best interests of the LLLP and instead entered into the Loan agreement and a series of amendments thereto which benefited SPO and its successor in interest Solaris Property Owner LLC I ("SPOI") and the GP itself, all to the detriment of the LLLP.

6. I have litigated cases related to secured loan transactions for over 25 years. I have reviewed hundreds of loan transactions involving all manner of lenders from federally insured institutional lenders to hard money lenders. Any competent lender in a commercial transaction would require: the debt to be secured by the entire property, not specific units; would require that the loan be a recourse loan; and would additionally require personal guarantees from any individual members of the ownership group of a corporate borrower. Each of these traditional steps would be taken to ensure repayment of the loan and to ensure adequate security in the event of a default.

7. Here, in complete disregard of its fiduciary duties to the limited partners and the LLLP, the GP expressly agreed to make the loan to SPO non-recourse as to the principal loan amount; did not secure a meaningful personal guarantee; and secured the loan with individual units rather than the entire project. Furthermore, the loan contains a provision that SPOI can, after three years opt to pre-pay the loan in full as well as another provision that allows SPOI the option to transfer title to the Collateral Units to the LLLP rather than repay the loan.

8. SPOI could never have secured these concessions from any other source of financing and should not have been able to do so here. In an interview with Colorado Biz Magazine in December of 2014 while speaking about the Solaris Project, Rick Hayes (owner manager of GP) stated that:

> "At the time the world was coming to an end, at least financially." "**There weren't other sources of financing available**. It put stress on the project."

Clearly Mr. Hayes was aware that the lender, his clients, the LLLP, had all of the leverage in this transaction.

9. Mr. Hayes demonstrates that he has nothing but disdain for EB-5 investors by admitting later in the article that "EB-5 investors are not return driven – they are return-agnostic. From that standpoint, it's a cheap source of capital for developers." (A true and correct copy of the Colorado Biz Magazine article is attached hereto as **Exhibit "1"**).

10. Despite statements in the CIM that SPO would be responsible for payments of Homeowners Association Dues, property taxes, insurance and other obligations relating to the pledged Condominium Units. A review of the Financial Statements produced by the GP indicates that over a five year period from 2013 - 2017, expenses totaled $19,951,869 against rental income of only $10,822,077. (Copies of the annual financial statements are attached hereto as **Exhibits "2", "3", "4", "5" & "6"**). Because the GP has refused to respond to the Plaintiffs requests to identify who has received all of these payments it is assumed that all of these expenses have been paid to the GP or one of its affiliates.

11. For reasons known only to the GP and the borrower, the borrower had the option to transfer title to the security to LLLP, in lieu of payment so long as such transfer occurred prior to the maturity date. On April 17, 2015, exactly one day before the loan became due, GP and SPOI entered into the Agreement Regarding Collateral Units (Exhibit G to Defendants Motion) which states that:

> "In lieu of accepting the conveyance of title to the Eligible Units pursuant to a Collateral Unit Distribution, the Lender and Borrower have determined that it is desirable for Borrower to continue to hold record title to the Eligible Units." [Agreement Regarding Collateral Units ¶ E]

And,

> "Borrower has agreed to temporarily refrain from conveying title to the Eligible Units to Lender pursuant to a Collateral Unit Distribution on the condition that, for purposes of

calculating interest under the Loan Documents, Borrower shall be deemed to have caused a Collateral Unit Distribution as of the Prepayment Date corresponding to each Eligible Unit and associated Loan Advance". [Agreement Regarding Collateral Units ¶ F]

This agreement purportedly absolves the Borrower of paying interest while allowing them to retain control of the inventory of units. NO consideration was given for this agreement and it confers no benefit on the LLLP.

12. The GP and SPO/SPOI clearly conspired to take $82.5 million dollars with no intention of ever repaying it to the Chinese investors. After all they are return averse, all they care about is getting their green card.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 1st day of June 2020.

                                                                                         /s/ Brian P. Stewart
                                                                                         Brian P. Stewart

## CERTIFICATION OF SERVICE

This is to certify that on June 1, 2020, a true and correct copy of the above and foregoing **Declaration of Brian P. Stewart in Support of Opposition to Motion to Dismiss** has been electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record.

*/s/ Brian P. Stewart*
For Ardent Law Group, P.C.