# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-02443

JUN LI, QI QIN, et al., individually and derivatively for defendant COLORADO REGIONAL CENTER PROJECT SOLARIS LLLP,

              Plaintiffs,

              v.

WAVELAND VENTURES LLC,
COLORADO REGIONAL CENTER
PROJECT SOLARIS LLLP, COLORADO
REGIONAL CENTER I LLC, et al.

              Defendants.

Hon. Judge Raymond Moore
Hon. Magistrate Scott Varholak

## Reply to Snell & Wilmer's Response on Li Plaintiffs' Motion to Disqualify
### [Snell & Wilmer's Response was ECF 209, responding to ECF 198]

      Snell & Wilmer (S&W) first appeared in this case for both the LP and its GP. This made some sense initially, since the Li Plaintiffs sued both the LP and the GP directly, claiming that they *both* failed to collect the limited partners' money and recklessly invested in the Solaris Vail project. At that point, the LP and GP were both defendants in a direct lawsuit, so their interests were aligned in forming a common defense, making joint representation reasonable. However, seeds of conflict were present from the beginning, since the limited partners had made a derivative demand before filing the case and threatened to bring derivative claims on behalf of the LP against the GP, which would drive a wedge between the LP and GP and make them adverse.

      As the case moved forward, the limited partners noticed that S&W was favoring the GP over the LP. S&W took the position that the GP was not responsible for the loss sustained by the LP (borne by its limited partners), and the LP had no claims against the GP. In fact, S&W sat at

1

the same counsel table with the borrower who refused to pay back the loan to the LP, as if the GP and the borrower were aligned. This was inexplicable. If S&W was zealously representing the LP which had suffered a $40 million loss of limited partners' money at the hands of the GP and the borrower, then why did it refuse to assert claims against either the GP or the borrower? It was clear that despite the rhetoric of dual representation, S&W saw their mission as wholly devoted to protecting the GP.

By early January [ECF 111], the Li Plaintiffs moved for disqualification of S&W under RPC 1.7 (conflicts in concurrent representation), which says that when concurrently represented parties become adverse, the lawyer must withdraw from representing all parties and bow out of the case:

> In considering whether to represent multiple clients in the same matter, a lawyer should be mindful that if the common representation fails because the potentially adverse interests cannot be reconciled, the result can be additional cost, embarrassment and recrimination. ***Ordinarily, the lawyer will be forced to withdraw from representing all of the clients if the common representation fails.*** (emphasis added).

RPC 1.7, comment 29.

This Court denied the motion for disqualification without prejudice [ECF 125] and presciently said that if the situation became more 'ripe' by the time of the Third Amended Complaint ("TAC"), the motion could be revisited: "If the third amended complaint makes the alleged conflict of interest issue 'riper' as plaintiffs argue, plaintiffs may show so in any refiled motion - establishing what allegations in the third amended complaint show such conflict exists, where they may be found, and why they merit the disqualification of Snell & Wilmer."

As this Court anticipated, the TAC derivatively - on behalf of the LP - accuses the GP of breach of fiduciary duty including self-dealing and lack of care (Count I), civil theft (Count II),

2

federal securities fraud (Count V) and state securities fraud (Count VI) -- all asserted derivatively so that the recovering party would be the LP and the liable party would be the GP.  In a recent filing [ECF 210], the Li Plaintiffs dropped all direct counts and now assert solely on behalf of the LP that the GP must either collect the limited partners' $82.5 million from Solaris Property Owner I LLC or else be liable for any damages itself.  Therefore the TAC puts the LP in a position directly adverse to the GP, where the LP and the GP have no common defense.  Also in the meantime, the limited partners voted to remove the GP for cause due to fraud, and fired S&W as the LP's lawyer. S&W then withdrew as counsel for the LP.

The reason for the instant Motion is that S&W thinks that because it withdrew from representing the LP, it can now continue to represent the GP.  But this isn't true.  The LP remains a *former* client of S&W, and they cannot represent a current client (the GP) in the same case adverse to their former client (the LP).

There are two background considerations.  First, more than 70% of the limited partners have fired S&W.  It would be uncomfortable and bizarre for the limited partners suing on behalf of the LP to see the LP's former lawyer stand up in court arguing *against* the LP and saying that the limited partners should get nothing.  That will rightly be perceived as switching sides.

Second, S&W's fees are being paid by the LP's insurance policy (or at least a policy paid by the LP), so the limited partners are now in the bizarre position of funding the very lawyers whom they fired. Rarely is a conflict so obvious that one party is actually funding its opponent. S&W refuses to provide opposing counsel with the name of the insurance company paying their bills, for fear that their funding will be cut, or at least questioned.

The law in this area is quite clear.  In the 10th Circuit, disqualification based on a conflict between a current and former client is governed under Colorado Rule of Professional Conduct 1.9

which is identical to the ABA Model Rule of Professional Conduct 1.9. *Jaeger v. HSBC Bank USA*, N.A., 2013 WL 1704298 *2 (D. Colo. April 19, 2013). Comment 1 to RPC 1.9 says point blank that a lawyer cannot represent a client against a former client in the same matter:

> Nor could a lawyer who has represented multiple clients in a matter represent one of the clients against the others in the same [] matter after a dispute arose among the clients in that matter, unless all affected clients give informed consent.

Courts have interpreted RPC 1.9 as having a three prong test for disqualification: (i) there was an attorney-client relationship with the former client, (ii) the present litigation is substantially related to the subject of the prior representation, and (iii) the interests of the opposing counsel's current client are materially adverse to the former client. *Helmer v. Goodyear Tire & Rubber Co.,* 2012 WL 6953341 *3 (D. Colo. Aug. 31, 2012). In *Helmer,* the Court said that "If the movant establishes the first two prongs, an **irrebuttable presumption** arises that a client has indeed revealed facts to the joint attorney that require his disqualification." (emphasis added). Here S&W seek to represent a current client adverse to a former client in the exact same case. This creates an irrebuttable presumption of conflict and a requirement of disqualification. The same rule is true in California, where for some reason S&W gets a lot of the cases they cite. See *Blue Water Sunset, LLC v. Markowitz*, 122 Cal. Rptr. 3d 641, 647 (App. Ct. 2011)("If an attorney represents a current client against a former client, the attorney will be subject to disqualification if there is a substantial relationship between the two representations.").

S&W tries to find a loophole in this clear rule by claiming that the conflict was "thrust-upon" them by circumstances beyond their control, so it is too late to change it now. They have misread this exception. A "thrust upon" conflict exists only where there was no conflict (actual or potential) at the beginning of the representation, when from left field a conflict is thrust upon the

4

lawyer by events out of his control. A good example would be where an attorney represents Company A in suing Company B, but Company B is then bought out by Company C who is also a client of the attorney: the situation began without any potential or actual conflict and only *became* a conflict due to events beyond the lawyer's control.  See *Fitz v. Warden, Nottoway Corr. Ctr.*, 2018 WL 5660310 *fn. 7 (W.D. Va. Oct. 31, 2018)(using this exact example).  Here, there was a potential conflict from the very beginning of this case since the GP was responsible for investing and safeguarding the LP's money, yet it lost at least half of the money while 'managing' it and taking a 2% fee.  The "thrust upon" rule does not apply when a conflict existed at the beginning:

> However, in most cases applying the "thrust upon" doctrine, the conflict was created, not by any conduct of the law firm, but by events such as corporate mergers and acquisitions.  In this case . . . the acquisition did not create the conflict.  Rather, the representation of adverse interests occurred when [the law firm] investigated, drafted, and filed the complaint. . .

*Flying J Inc. v. TA Operating Corp.,* 2008 WL 648545 *5 (D. Utah March 10, 2008).  The firing of S&W did not "thrust" S&W into a conflict, since the seeds of the conflict existed at the start of their representation.  It simply made the LP a *former* client and triggered Rule 1.9 instead of Rule 1.7 but with the same effect that S&W must withdraw altogether.

Despite S&W's endless citations in their Response, they don't cite a single case where a lawyer was allowed to defend a current client against accusations by a former client *in the same case*.  They only cite to derivative actions where the current and former clients all remain defendants, where the question is whether the lawyer may go from representing one defendant (say, the corporation) to another defendant (say, the controlling officers).  For example, they rely on *Forrest v. Baeza*, 67 Cal. Rptr. 857 (App. Ct. 2nd Div. 1997) was about a three person corporation, where the court said that a lawyer for the *defendant* corporation could be disqualified and still represent the other two *defendants* who were executives.  The *Forrest* court did NOT

5

apply the Model Rules which are applicable in Colorado, and it did not allow a former client of an attorney to sue a current client of that attorney in the same action.

The limited partners - who are the *owners* of the LP - are still angry that while professing dual representation, S&W sided only with the GP, thereby putting all the loss on the limited partners and taking no action for the LP to recover its loss. Now that the LP is a *former* client in this litigation, S&W owes it a duty not to represent an adverse party in this litigation.

S&W is charged with knowing the Rules of Professional Conduct which clearly said that one of the dangers of multiple representation was that the clients could become adverse and the lawyer would have to completely withdraw. That is where we are at right now. The case is still relatively early and there are plenty of fresh and unconflicted law firms that can be brought on to defend the GP with fees paid by the GP itself, instead of charging their legal fees to the persons whose money they lost.

WHEREFORE, the Li Plaintiffs request this Court issue an order that Snell & Wilmer be disqualified from representing any party in this action AND that S&W reveal the insurance company paying their fees and no longer draw such fees at the expense of their former client.

Dated: June 3, 2020

Respectfully Submitted,

/s/ Douglas Litowitz
Attorney for the Li Plaintiffs
413 Locust Place
Deerfield, IL 60015
312-622-2848
Litowitz@gmail.com

6

## Certificate of Service

I hereby state that I have served this Motion for Disqualification on all counsels of record by filing the same with the ECF system for the District of Colorado.

/s/ Douglas Litowitz