IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

**Civil Action No. 19-cv-02443-RM-STV**
**Consolidated with Civil Action No. 1:19-cv-02637**

Jun Li, *et al.*,

 Plaintiffs,

v.

Waveland Ventures, LLC, *et al.*,

 Defendants.

**DEFENDANTS WAVELAND VENTURES, LLC, COLORADO REGIONAL CENTER, LLC AND COLORADO REGIONAL CENTER I, LLC'S RESPONSE IN OPPOSITION TO LI PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIM BY CRC DEFENDANTS [ECF 208]**

  Defendants Waveland Ventures, LLC, Colorado Regional Center, LLC and Colorado Regional Center I, LLC (the "CRC Entities"), through undersigned counsel, hereby submit this Response in Opposition to Plaintiffs' Motion to Dismiss Counterclaim Under Fed. R. Civ. P. 12(b)(6) and for Order Declaring General Partner Removed Instanter [ECF 208] ("Motion"), stating as follows:

## INTRODUCTION

  When the Li Plaintiffs filed this lawsuit on August 28, 2019, there was no question that Colorado Regional Center I, LLC ("CRC I") was the general partner of Colorado Regional Center Project Solaris LLLP ("CRCPS"), a Colorado limited liability limited partnership. [ECF 1, page 1]. On April 20, 2020, however, the Li Plaintiffs filed a Status Report [ECF 183] announcing that more than two thirds of the CRCPS limited partners had signed proxies and written consents

allegedly demanding removal of CRCPS' general partner, CRC I "for cause," based on "fraud." [ECF 183 page 1]

CRC I was not privy to the alleged removal process; it does not know what the CRCPS limited partners were told in connection with the proxies and cannot discern the validity of the proxies themselves. [ECF 183-1, 183-2]. Moreover, while in this lawsuit CRC I has certainly been accused of fraud [ECF 121], it disputes this accusation and has filed a motion to dismiss all fraud claims. [ECF 203]. In sum, CRC I does not believe that it has been properly removed as general partner of CRCPS and wishes to continue in its role as general partner in order to liquidate the real estate holdings of CRCPS, make distributions as required by contract, and close down CRCPS in a responsible manner. CRC I contends that the efforts in this lawsuit to remove it as general partner of CRCPS are designed to provide preferential treatment to the named Plaintiffs, to the detriment of the entire set of limited partners.

Recognizing that there is a justiciable controversy regarding the issue of whether CRC I has indeed been properly removed or can be properly removed as general partner of CRCPS under the circumstances, the CRC Entities asserted a single counterclaim in their partial answer [ECF 204]. In addition to their partial answer, and at the same time, the CRC Entities filed a motion to dismiss all claims in this consolidated case with the exception of the Li Plaintiffs' claim for removal of CRC I as general partner. [ECF 203; ECF 121, ¶¶ 212-19]. The CRC Entities recognize that the Li Plaintiffs' claim for removal of CRC I is a currently ripe claim under the circumstances, and the CRC Entities' counterclaim is directly related to, though slightly different than, the Li Plaintiffs' removal claim.

4826-1306-6172.1

The Li Plaintiffs have now moved to dismiss the CRC Entities' single counterclaim under Fed. R. Civ. P. 12(b)(6). [ECF 208]. The CRC Entities contend that their declaratory judgment counterclaim is not only a plausible declaratory judgment claim for relief, but exactly the type of declaratory judgment claim contemplated by the Declaratory Judgment Act, 28 U.S.C. § 2201.

With their motion to dismiss the CRC Entities' counterclaim the Li Plaintiffs have also moved for an "Order Declaring General Partner Removed Instanter." [ECF 208]. But the Li Plaintiffs' do not even attempt to support this aspect of their motion – procedurally, factually or legally.  This request also should be denied.

## ARGUMENT

### I. THE COURT SHOULD DENY THE MOTION TO DISMISS COUNTERCLAIM

#### A. Standard of Review: Motion to Dismiss

In evaluating a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must accept all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1136 (10th Cir. 2014); *Mink v. Fox*, 613 F.3d 995, 1000 (10th Cir. 2010). The complaint must allege a "plausible" right to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569 n. 14 (2007). To determine whether a claim is plausible, a court considers "the elements of the particular cause of action, keeping in mind that the Rule 12(b)(6) standard doesn't require a plaintiff to set forth a prima facie case for each element." *George v. Urban Settlement Servs.*, 833 F. 3d 1242, 1247 (10th Cir. 2016)(quotation omitted).

#### B. The Allegations of the Counterclaim

In their single counterclaim, the CRC Entities alleged the following, in pertinent part:

3

When investors became limited partners in CRCPS, they entered into the Limited Liability Partnership Agreement of CRCPS ("Partnership Agreement"). [ECF 204, Counterclaim ¶ 21]. Under § 3.02 of the Partnership Agreement, CRC I, as general partner was authorized to: (i) acquire, manage and operate partnership property and to hold it for economic gain; (ii) mortgage, sell, transfer and exchange or otherwise convey or encumber all or part of the partnership property in furtherance of any and all of the objectives of CRCPS's business; and, (iii) enter into, perform and carry out contracts of any kind necessary to, or in connection with or incidental to, the operation of the partnership property. [*Id.*, ¶ 28].

Pursuant to § 9.06 of the Partnership Agreement, two-thirds of all limited partners could vote, without the concurrence of CRC I, to remove CRC I as the general partner of CRCPS "for cause." [*Id.*, ¶ 30]. The term "cause" is defined in § 12.02 of the Partnership Agreement as "acts of the General Partner which constitute larceny, fraud or a crime involving moral turpitude." [*Id.* at 31].

On April 20, 2020, the Li Plaintiffs filed a "Status Report," which announced that certain unidentified limited partners have appointed the legal assistant of counsel for the Li Plaintiffs as "proxy" to remove CRC I as the general partner of CRCPS. [*Id.*, ¶¶ 48-49; ECF 183]. The proxies and consents attached to the Status Report claimed to remove CRC I for fraud "due to failure of the [CRC I] to return the capital investments by failing to collect the loan [to SPO I]" and because "the entire structure of this transaction and the material given to [the limited partners] in China was fraudulent." [ECF 204, Counterclaim, ¶ 50; ECF 183]. The proxies further stated that CRC I's alleged conduct was a breach of fiduciary duty despite the fact that breach of fiduciary duty is

4

4826-1306-6172.1

not identified in the definition of "cause" in the general partner removal provision of the Partnership Agreement. [*Id.*, ¶¶ 51, 31].

CRC I disputes the authenticity of the alleged removal process because it is unclear whether the signatories of the purported proxies are legitimate and signed by CRCPS limited partners, and because it is entirely unclear what the limited partners were told by counsel for the Li Plaintiffs and his legal assistant in connection with this alleged process. [ECF 48-49, 51 and 56].

CRC I also disputes that "cause" existed to justify any purported removal as the general partner of CRCPS, specifically because: (a) CRC I has no legal right to demand repayment of the loan from SPO I because SPO I complied with the loan by "putting" all of the condominium units to CRCPS [*Id.*, ¶, 52]; (b) SPO I only continues to hold legal title to the units, but pursuant to a written contract that confirms CRCPS's first priority lien over the units and that directs SPO I to directly convey the units to buyers as sales of the units occur [*Id.*, ¶¶ 43-44].; (c) there was no fraudulent failure to return the limited partners' capital investments, which were necessarily at risk and repeatedly disclosed, in writing, as being necessarily at risk [*Id.*, ¶ 52]; (d) at all times, CRC I comported with the Partnership Agreement, other contracts, and principles of sound business judgment; (e) to the extent removal of CRC I was or is claimed to be because of the investment structure itself, the investment obviously pre-dated the existence of CRCPS and CRC I's role as general partner [*Id.*, ¶ 52]; and, (f) there are no facts to substantiate the claim of fraud. [*Id.*, ¶ 52].

CRC I has not consented to removal and does not believe removal has already occurred. If, however, removal was automatic upon the limited partners alleged vote, as the Li Plaintiffs claim, the removal was invalid and unsupported because CRC I has not committed fraud, nor has there been any determination or adjudication of fraud. [*Id.*, ¶¶ 59-62].

5

The Li Plaintiffs, on the other hand, claim that they have already removed CRC I and that the removal is not subject to judicial review at all. [*Id.* at 61]. CRC I has asked the Court for declaratory relief, and specifically a declaration that no cause existed to justify removal of CRC I as general partner of CRCPS and that CRC I has authority to act as the general partner of CRCPS. CRC I has also asked the Court for further relief consistent with the declaratory judgment. [*Id.,* page 41].

### C. The CRC Entities' Counterclaim States a Plausible Claim for Relief

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction, … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought…" 28 U.S.C. § 2201(a).

In their motion to dismiss, the Li Plaintiffs do not even mention the CRC Entities' *pleading*, even though the entire purpose of a Fed. R. Civ. P. 12(b)(6) is to focus on the sufficiency of pleading claims for relief. If the Li Plaintiffs' challenge is truly under Fed. R. Civ. P. 12(b)(6), then it falls woefully short. On its face, the CRC Entities' counterclaim identifies the actual controversy – which is: (a) whether an authentic and legitimate removal process has occurred; (b) whether the limited partners have already removed CRC I as the general partner based on the proxies delivered; (c) whether the limited partners have already removed CRC I as general partner of CRCPS based on the accusation (and accusation alone) of fraud; and, (d) whether there is or has been any factual basis for the purported removal of CRC I "for cause." In addition, the CRC Entities' counterclaim seeks declaratory relief regarding the rights and legal relations of CRCPS' general partner and limited partners. In sum, CRC I's pleading is fully supported by the precise

6

terms of the Declaratory Judgment Act, 28 U.S.C. § 2201(a). For this reason alone, the Li Plaintiffs' motion to dismiss should be denied.

### D. The Court Should Permit the CRC Entities' Counterclaim

Instead of identifying alleged pleading deficiencies, the Li Plaintiffs argue that "there is no inchoate right to judicial determination prior to or after removal" of a general partner of CRCPS [ECF 208, page 3 and 9]. In essence, the Li Plaintiffs seem to be arguing that they and other limited partners properly removed CRC I already, and there is nothing CRC I or this Court can do about it. While not mentioning Fed. R. Civ. P. 12(b)(1) at all, the Li Plaintiffs appear to be arguing that this Court does not have subject matter jurisdiction to consider the CRC Entities' counterclaim. Even if the Court is inclined to consider an argument the Li Plaintiffs have not made – which is that the Court should not accept jurisdiction over the CRC Entities' counterclaim - the Court, respectfully, should deny the Li Plaintiffs' motion.

In candor, the CRC Entities recognize that the Supreme Court has long made clear that the Declaratory Judgment Act "gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so." *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 982 (10th Cir. 1994), *citing Public Affairs Associates, Inc. v. Rickover*, 369 U.S. 111, 112, 82 S.Ct. 580, 581, 7 L.Ed.2d 604 (1962) and *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 494, 62 S. Ct. 1173, 1175, 86 L.Ed.1620 (1942). The Tenth Circuit has instructed district courts to consider certain factors in determining whether to hear a declaratory judgment claim: (a) whether a declaratory action would settle the controversy; (b) whether it would serve a useful purpose in clarifying the legal relations at issue; (c) whether the declaratory remedy is being used merely for the purpose of "procedure fencing" or "to provide an arena for a race to *res judicata*; (d) whether the use of a declaratory

7

action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and, (e) whether there is an alternative remedy which is better or more effective. *Mhoon*, 31 F.3d at 983, *citing Allstate Ins. Co. v. Green*, 825 F. 2d 1061 (6th Cir. 1987).

Based on the *Mhoon* factors – none of which were addressed by the Li Plaintiffs – the CRC Entities' counterclaim for declaratory relief is appropriate and important for resolution in in this case. First, the CRC Entities' counterclaim is essentially related to the Li Plaintiffs' own affirmative claim for removal of CRC I as the general partner of CRCPS [ECF 121, ¶¶ 212-19], and there is certainly an actual controversy surrounding the purported takeover by the Li Plaintiffs' counsel and removal of CRC I as a general partner which the request for declaratory relief would resolve. The counterclaim is not, however, merely the "mirror image" of the Li Plaintiffs' affirmative claim for removal. CRC I's counterclaim addresses issues unaddressed, but certainly related to, the Li Plaintiffs' affirmative removal claim – including the issues of whether the removal was "self-executing" upon the alleged proxy vote, as the Li Plaintiffs apparently claim, and whether the alleged removal was authentic and procedurally valid. *See Prograde Ammo Group LLC v. Perry*, 2015 WL 1064266, at * 3 (D. Colo. March 9, 2015)(while courts have dismissed so-called "mirror image" noninfringement counterclaims in intellectual property actions, a counterclaim seeking a declaratory judgment is not duplicative or redundant if it asserts an independent case or controversy which would remain viable after a dismissal of plaintiff's claim).

Second, the declaratory judgment would serve a useful purpose in clarifying who properly may serve as general partner of CRCPS – a legal issue that both sides share an interest in resolving.

Third, the request for declaratory relief is a counterclaim; as such it is certainly not being used for procedural fencing or forum shopping.

8

Fourth, there is no concern that the use of the declaratory judgment counterclaim would encroach upon state court jurisdiction.

Fifth, and specifically because there is a dispute as to whether the purported removal of CRC I was effective and supportable, the declaratory judgment procedure is the best and most effective remedy available to resolve this important controversy. In *A & J Capital, Inc. v. Law Office of Krug,* 2019 WL 367176 (Del. Ch. January 29, 2019), for instance, a Delaware state court considered a very similar fact pattern under declaratory relief procedures. In *A&J,* the nominal defendant LA Metropolis Condo I, LLC ("LAMC") was formed to raise investment capital under the EB-5 program.. *A&J*, 2019 WL 367176, at *1. The members of LAMC were two hundred Chinese nationals who collectively contributed $100 million to be invested in a construction loan for the development of residential and commercial space in downtown Los Angeles. *Id.* The loan was extended to Greenland LA Metropolis Development I, LLC ("Greenland").  The plaintiff, A&J Capital, Inc. (A&J") was engaged to serve as the manager of LAMC in exchange for a management fee.

In *A&J,* the company's operating agreement provided that A&J could only be removed as manager "for cause." *Id.* A&J claimed that Greenland colluded with members of LAMC in an effort to have members remove A&J and replace Greenland's attorney as the manager of LAMC in order to extract concessions from the company. *Id.* Specifically, Greenland's attorney, Krug, who had previously been retained by members of LAMC to perform an analysis of the at-risk nature of the LAMC account funds drafted a "removal ballot" which was sent by Krug to all members of LAMC. *Id.,* at * 9. The removal ballot did not identify a basis for removal of A&J, but it did note the members' rights to remove the manager under the operating and management

9

agreements. *Id.* The removal ballots also asked members to vote on whether to elect Krug as the manager of LAMC, and to return their votes to Krug. *Id.*

A&J filed a declaratory judgment under the Delaware limited liability statutes seeking a declaration that its removal by an improper and unsubstantiated vote and its purported replacement by Greenland's attorney Krug was invalid.  In that lawsuit, A&J challenged both the authenticity of the member ballots on A&J's alleged removal and also the alleged bases for removal, which A&J argued failed to rise to the "for cause" standards of the LAMC operating agreement. *Id.* at * 10-12.  The court noted that there was a great deal of briefing and argument regarding the authenticity of the removal ballots, but no evidence was presented by Krug to explain how the ballots were distributed, what the members were told or even whether the members were asked to remove *A&J* for cause. *Id.,* at 10.  Without determining the authenticity of the removal process itself, the court ultimately entered a declaratory judgment that A&J had improperly been removed, without sufficient cause. *Id.* at 18. While *A&J* involved a statutory removal process under Delaware law, and not a contractual removal process, the CRC Entities cite this case to point out that the *type* of dispute identified in CRC I's counterclaim is particularly well suited for declaratory relief.

E.   **The Alleged Removal of CRC I as General Partner is Reviewable**

The Li Plaintiffs' only discernible argument in support of its motion to dismiss is that: (a) CRC I can be removed as general partner of CRCPS based on an accusation, as opposed to determination, of fraud or cause; and, (b) the requisite number of CRCPS limited partners have voted in favor of removing CRC I based on the accusation. [ECF 208, page 3, 5-6 and 9-10].  The Li Plaintiffs fail to appreciate that CRC I has not consented to removal, challenges the authenticity

10

and nature of the alleged removal process, and challenges the unsupported assumption that there was ever even a basis in fact for the alleged removal.

The Li Plaintiffs seem to be arguing that there is no such thing as judicial review of a "for cause" termination. Under the heading "There is no Inchoate Right to Judicial Determination Prior to or after Removal" [ECF 208, page 9], the Li Plaintiffs cite as their support for this remarkable proposition the Alaska Supreme Court decision of *Betz v. Chena Hot Springs Group*, 657 P.2d 831, 835 (Alaska 1982). It is unclear why. In *Betz*, the limited partnership agreement at issue provided for "involuntary retirement" of the general partner *without* a requirement that the retirement decision be for reasonable cause. When the general partner challenged the removal, the court refused to read a "for cause" requirement into the limited partnership agreement. *Id.* In *Betz*, there was naturally judicial review of the general partner's position: the court, of course, determined the case on the merits. Moreover, our case involves the exact opposite situation as the Alaska Supreme Court encountered in *Betz*. There is simply no question that the CRCPS Partnership Agreement, exactly unlike that in *Betz*, had and has a "for cause" requirement. This is, of course, one of the main points of the CRC Entities' declaratory judgment counterclaim.

Stated simply, the Li Plaintiffs' insistence that the alleged removal of CRC I is not judicially reviewable is wrong and would render the "for cause" requirement of any contract meaningless. The Li Plaintiffs' assumption that their attorney can simply announce the removal of CRCPS' general partner and substitute in his legal assistant as the new general partner – and that no judicial review is available – is as unsupportable as it unsupported in the motion to dismiss.

In sum, the Li Plaintiffs have presented no legal support for their Fed. R. Civ. P. 12(b)(6) motion, and the motion should be denied.

11

## II. THE COURT SHOULD DENY THE MOTION FOR "ORDER DECLARING GENERAL PARTNER REMOVED INSTANTER"

In the title and the prayer for relief of their motion, the Li Plaintiffs demand a "finding that CRC I is removed as general partner of CRCPS, "instanter." [ECF 208, page and 10]. Nowhere in their motion do the Li Plaintiffs identify the procedural rule upon which they rely for this request or even any reasons, facts or law that would entitle them to this relief. Clearly the Li Plaintiffs are not seeking summary judgment on the CRC Entities' counterclaim; they are instead attempting to dismiss that counterclaim. If instead the Li Plaintiffs are seeking summary judgment on their affirmative claim for removal of CRC I as manager of CRCPS [ECF 121 ¶¶ 212-19], they have woefully failed to satisfy the procedural or substantive requirements of Fed. R. Civ. P. 56. To prevail on a motion for summary judgment, a party must do quite a bit more than ask for an order in the title and prayer for relief in a filing. *See* Fed. R. Civ. P. 56(a); D.C.COLO.LCivR 56.1; The Honorable Raymond P. Moore's Practice Standard (Civil) IV.C.

The Li Plaintiffs' request for an "order declaring general partner removed instanter" should be denied.

### CONCLUSION

For the foregoing reasons, the CRC Entities respectfully request that the Court deny the Li Plaintiffs' Motion to Dismiss Counterclaim Under Fed. R. Civ. P. 12(b)(6) and for Order Declaring General Partner Removed Instanter. [ECF 208]

DATED: June 8, 2020.

/s/*James D. Kilroy*
James D. Kilroy
Stephanie A. Kanan
SNELL & WILMER L.L.P.
1200 Seventeenth Street, Suite 1900
Denver, Colorado 80202
Telephone: 303.634.2000
Facsimile: .303.634.2020
Email: jkilroy@swlaw.com
Email: skanan@swlaw.com

*Counsel for Defendants Waveland Ventures, LLC, Colorado Regional Center, LLC and Colorado Regional Center I, LLC*

4826-1306-6172.1

## CERTIFICATE OF SERVICE

This is to certify that on June 8, 2020, a true and correct copy of the above and foregoing document has been electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record:

Douglas Litowitz
413 Locust Place
Deerfield, IL  60015

Hubert Kuo
Brian P. Stewart
Ardent Law Group
4340 Von Karman Avenue, Suite 290
Newport Beach, CA  92660

Harold A. Haddon
Ty Gee
David Maxted
Haddon Morgan and Foreman, P.C.
150 East 10th Avenue
Denver, CO  80203

                                             */s/Amy Kovarsky*
                                             for Snell & Wilmer L.L.P.

4826-1306-6172.1