Case No. 1:19-cv-02443-RM-STV Document 225-1 filed 06/10/20 USDC Colorado pg 1 of 30

# EXHIBIT C

## LIMITED LIABILITY LIMITED PARTNERSHIP AGREEMENT
### OF
## COLORADO REGIONAL CENTER PROJECT SOLARIS, LLLP
### A COLORADO LIMITED LIABILITY LIMITED PARTNERSHIP

This Agreement is made by and among Colorado Regional Center I, LLC, a Colorado Limited Liability Company, (the "General Partner") and each of the persons set forth in Exhibit A attached hereto and designated as Limited Partners (the "Limited Partners"). The Limited Partners and the General Partners are collectively referred to as the "Partners."

## AGREEMENT

### ARTICLE I
### FORMATION OF LIMITED PARTNERSHIP

Section 1.01. Formation. The undersigned hereby form COLORADO REGIONAL CENTER PROJECT SOLARIS, LLLP, a Colorado limited liability limited partnership, under the revised Uniform Limited Partnership Act of the State of Colorado, as amended from time to time (the "Act"), to lend funds to Solaris Property Owner, LLC, a Delaware limited liability company ("SPO"), the owner and operator of a residential and commercial real estate project commonly known as Solaris, located in Vail, Colorado.

Section 1.02. Name. The name of the Limited Partnership is "COLORADO REGIONAL CENTER PROJECT SOLARIS, LLLP," a Colorado limited liability limited partnership (the "Limited Partnership"). The General Partner may from time to time change the name of the Limited Partnership to adopt such trade or fictitious names as it may determine to be appropriate.

Section 1.03. Principal Office of the Limited Partnership. The principal office of the Limited Partnership shall be at 4643 S. Ulster Street, Suite 950, Denver, Colorado 80237. The Limited Partnership may maintain offices at such other location as may be determined appropriate by the General Partner.

Section 1.04. Name and Place of Residence of Each Partner. The name, address, Capital Contribution, and number of Units of each of the Partners are designated on the attached Exhibit A. The name and address of the General Partner is Colorado Regional Center I, LLC located at 4643 S. Ulster Street, Suite 950, Denver, Colorado 80237.

Section 1.05. Term. The term of the Limited Partnership shall commence upon filing of the Certificate of Limited Partnership in the office of the Colorado Secretary of State and shall continue until the Limited Partnership is dissolved, wound up and terminated in accordance with the provisions of this Agreement and the Act.

Section 1.06. Designated Agents for Service of Process. The Limited Partnership elects and appoints Chester P. Schwartz, 4643 S. Ulster Street, Suite 950, Denver, Colorado 80237, as the designated agent for service of process.

## ARTICLE II
## DEFINITIONS

The following terms used in the Agreement shall have the meaning specified below:

Section 2.01. "Act" means the Uniform Limited Partnership Act of the State of Colorado, as amended from time to time.

Section 2.02. "Additional General Partner" means a person or entity, if any, that serves as a General Partner in addition to Colorado Regional Center I, LLC.

Section 2.03. "Administrative Expenses" means those expenses incurred by the General Partner in connection with the sale of Interests including specifically and without limitation, certain marketing, travel, legal and accounting fees, referral and related fees, and the legal fees of a Limited Partner incurred in preparation of such Limited Partner's I-526 petition (up to a maximum of $15,000 and provided that the General Partner approves the selection of the legal counsel).

Section 2.04. "Affiliate" means any person who directly or indirectly through one or more intermediaries, controls or is controlled by, or is under common control of the General Partner or Limited Partners.

Section 2.05. "Agreement" means this Agreement, as it may be amended from time to time.

Section 2.06. "Assignee" means a person who has acquired all or any portion of a Limited Partner's Interest in the Limited Partnership and has not been admitted as a Limited Partner.

Section 2.07. "Available Cash Flow" means funds provided from operation of the Limited Partnership (including the funds provided from any Capital Event, but specifically excluding any payments received by the Limited Partnership as a result of any prepayment of the SPO Note), without deduction for depreciation, but after deducting funds used to pay all expenses and debts of the Limited Partnership, including administrative operational expenses, management fees, debt payments, capital improvements, and less the amount set aside by the General Partner, in the exercise of its sole discretion, for reserves.

Section 2.08. "Capital Account" means that as defined in **Section 4.04** herein.

Section 2.09. "Capital Contribution" means the total amount of money or property contributed to the Limited Partnership by each Partner (excluding any amounts contributed for Administrative Expenses).

Section 2.10. "Capital Event" The refinance, sale, exchange or other disposition of the Project or any portion thereof, including an involuntary conversion or condemnation of real property or any portion thereof.

Section 2.11. "Code" means the Internal Revenue Code of 1986, as amended from time to time.

Section 2.12. "Condominium Unit" means each of the 79 residential condominium units located at the Project.

Section 2.13. "Deficit Capital Account" means the situation whereby the Limited Partnership has distributed to a Partner distributions in excess of such Partners capital contributions plus allocable share of income less allocable share of loss and any other charges allowable under this Agreement, resulting in such Partner's capital account falling below zero.

Section 2.14. "General Partner" means Colorado Regional Center I, LLC and/or any other Person admitted as a General Partner pursuant to the Agreement and their successors.

Section 2.15. "Interest" or "Limited Partnership Interest" or "Partnership Interest" means the ownership interest of a Partner in the Limited Partnership at any particular time, including the right of such Partner to any and all benefits to which such Partner may be entitled as provided in the Agreement and in the Act, together with the obligations of such Partner to comply with all the terms and provisions of the Agreement and the Act.

Section 2.16. "Limited Partner" means each Limited Partner listed on Exhibit A and any person admitted to the Limited Partnership as a Limited Partner.

Section 2.17. "Limited Partnership" means COLORADO REGIONAL CENTER PROJECT SOLARIS, LLLP.

Section 2.18. "Limited Partnership Property" means all the real and personal property owned by the Limited Partnership, including specifically and without limitation, the SPO Note and any real or personal property securing the SPO Note which may be or may become owned by the Limited Partnership.

Section 2.19. "LP Interest" means the Partnership Interest of a Limited Partner.

Section 2.20. "Net Proceeds from a Capital Event" The net proceeds derived by the Limited Partnership from a capital event after payment or allowance for the expenses incurred in connection with such Capital Event and after payment or allowance for existing indebtedness, the discharge of any other expenses or liabilities of the Limited Partnership and the establishment of appropriate reserves, all as determined by the General Partner, in its sole discretion.

Section 2.21. "Partners" means collectively the General Partners and the Limited Partners, and a reference to a Partner shall be to any one of the Partners.

Section 2.22. "Person" means any natural person, partnership, corporation, association or other legal entity.

Section 2.23. "Positive Capital Account" means that the balance of a Partner's Capital Account is greater than zero.

Section 2.24. "Profit or Loss" means the income or loss of the Limited Partnership as determined by the method of accounting chosen by the General Partner and permitted by the Code.

CRC 000187

Section 2.25.  "Project" means the real property and improvements consisting of 79 residential condominium units and approximately 70,000 square feet of commercial space, all known as "Solaris" located in Vail, Colorado.

Section 2.26.  "SPO Note" means the Promissory Note executed by SPO in favor of the Limited Partnership in the form as attached hereto as Exhibit B.

Section 2.27.  "Subscription Agreement" means the agreement signed by each Limited Partner in connection with his or her Capital Contribution to the Limited Partnership.

Section 2.28.  "Units" or "Partnership Interests" means each Partner's percentage of ownership in the Partnership as set forth adjacent to his or her name in Exhibit A.

## ARTICLE III
## PURPOSE, BUSINESS AND POWERS OF THE LIMITED PARTNERSHIP

Section 3.01.  Purpose and Business of the Limited Partnership.  The business of the Limited Partnership shall be to lend funds to SPO.  In addition, the business of the Limited Partnership shall be to undertake all necessary actions in the General Partner's sole discretion to preserve the immigration benefits of the Limited Partners, including without limitation, investing in additional or alternate projects consistent with the requirements of the EB-5 Program, as described in the related Confidential Information Memorandum.  The Loan to SPO will be evidenced by the SPO Note and the SPO Note will be secured by one or more deeds of trust (the "Deeds of Trust").  Each Deed of Trust will grant to the Limited Partnership a security interest in one or more Condominium Units, free and clear of all liens and encumbrances except for matters of record approved by the Limited Partnership.  The Limited Partnership will further manage all income received from the SPO Note.  If at any time the Limited Partnership becomes the owner of a Condominium Unit, then the business of the Limited Partnership will further include the management of the real and personal property then owned by the Limited Partnership.

Section 3.02.  Powers.  The Limited Partnership is hereby authorized:

(1)     To acquire, manage and operate Limited Partnership Property and to hold it for economic gain;

(2)     To mortgage, sell, lease, transfer and exchange or otherwise convey or encumber all or part of the Limited Partnership Property in furtherance of any and all of the objectives of Limited Partnership business; and

(3)     To enter into, perform and carry out contracts of any kind necessary to, or in connection with or incidental to, the operation of Limited Partnership Property.

## ARTICLE IV
## CAPITAL CONTRIBUTIONS

Section 4.01.  Capital Contributions; Administrative Expenses.

CRC 000188

(1)     Each of the Limited Partners' Capital Contributions is set forth on Exhibit A. The Limited Partners shall own collectively 99% of the Limited Partnership and the General Partner shall own 1% of the Limited Partnership. Each Limited Partner shall own his or her pro rata share of the 99% total Limited Partnership Interests determined by dividing each Limited Partner's Capital Contribution by 99% of the total of all Capital Contributions contributed by all Limited Partners. For example, by way of illustration, if there are 40 Limited Partners, each of whom has contributed $500,000 in Capital Contributions, each Limited Partner will own a 2.475% interest in the Limited Partnership (40 X $500,000 = $20,000,000;     $20,000,000     X99% = $19,800,000;     $19,800,000/40 = $495,000; $495,000/19,800,000 = 2.475%). The Limited Partners shall have no obligation to make additional Capital Contributions. In exchange for its Interest in the Limited Partnership, the General Partner has made an initial Capital Contribution of cash and certain soft costs. The General Partner shall have no obligation to the Limited Partnership or the Partners to make additional Capital Contributions, except for the General Partner's obligation set forth in **Section 6.02**.

Section 4.02. Return and Withdrawal of Capital. No Partner shall have the right to demand Limited Partnership Property. Further, no Partner shall have any right to withdraw or make a demand for the withdrawal of any of such Partner's Capital Contribution (or the capital interest reflected in such Partner's Capital Account) until the full and complete winding up and liquidation of the Limited Partnership.

Section 4.03. Administrative Expenses. Each Limited Partner shall pay the sum of $50,000 as an Administrative Expense. The Administrative Expense shall be in addition to the Capital Contribution and shall not be deemed to be a Capital Contribution.

Section 4.04. Partner Capital Accounts. An individual Capital Account shall be maintained for each Partner in accordance with the requirements of the Code. Except as required by the Code, the Capital Account of each Partner shall consist of his Capital Contribution, as increased by any contribution of capital subsequent to his original contribution, and by such Partner's share of Limited Partnership income and gain allocated after the date hereof to such Partner, and as decreased by the amount of all cash and the fair market value of all property and assets distributed to such Partner, the amount of all losses allocated after the date hereof to such Partner, and any amounts charged under Section 4.05 and/or Section 10.08 to such Partner.

Section 4.05. Interest on Capital Contributions. No interest shall be paid to a Partner on Capital Contributions. Non-cumulative simple interest will be charged by the Limited Partnership to a Partner on the sum of any amounts charged to such Partner's Capital Account from obligations to the Limited Partnership or a General Partner arising under Section 10.08. The interest charged will be computed on a calendar year compounded basis at a rate equal to the prime rate of interest from time to time announced by Wells Fargo Bank to be its "prime rate", such interest to be collected by reduction of any distributions payable to the Partner immediately following the calculation of the year's interest by the General Partner. To the extent that there are no distributions against which the interest can be applied, then the interest will be charged to the Partner's Capital Account. This Section 4.05 will survive the termination of a Partner's status as a Partner.

Section 4.06. Minimum Capital Contribution. The minimum Capital Contribution by any Limited Partner in the Limited Partnership shall be $500,000.

CRC 000189

## ARTICLE V
## COMPENSATION FOR SERVICES

Section 5.01. General Partner's Fees. The General Partner will not directly charge management fees to the Limited Partnership. The Limited Partnership will enter into a management contract (the "Management Contract") with Waveland EB-5 Management, LLC, a Colorado limited liability company ("Waveland Management"). Waveland Management is a wholly-owned subsidiary of Waveland Ventures, LLC, the parent company of the General Partner. Under the terms of the Management Contract, in consideration of the performance by Waveland Management of certain management and servicing duties, Waveland Management will be entitled to receive an annual management fee equal to 2% of the total Capital Contributions to the Limited Partnership (the "Management Fee"), payable quarterly from Available Cash Flow only. If there is not Available Cash Flow sufficient to pay the Management Fee, then the amount payable shall accrue and bear interest at the rate of 6% per annum and shall be payable from Available Cash Flow. Additionally, the General Partner may pass on actual costs of operations to the Limited Partnership. However, under no circumstance will such costs be deducted from the Limited Partners' Capital Contributions and will derive entirely from Available Cash Flow.

Section 5.02. General Partner's Interest. In consideration of the contribution of cash and other services rendered to the Limited Partnership, the General Partner will receive a 1% Interest in the Limited Partnership. The General Partner will be entitled to receive from Available Cash Flow certain additional payments as set forth in Section 6.02 below.

## ARTICLE VI
## ALLOCATIONS AND DISTRIBUTIONS

Section 6.01. Allocation of income, gain, deductions and loss.

Except for any special allocations required or permitted by the United States Tax Code to ensure that all allocations hereunder have substantial economic effect, all items of income, gain, deductions and loss shall be allocated to the Partners in the same manner as their proportionate share of Available Cash Flow and Net Proceeds from a Capital Event as set forth below in **Section 6.02**. Any non cash items of income or expense (such as depreciation or amortization) will be allocated in accordance with each Partner's Interest in the Partnership.

Section 6.02. Distributions of Available Cash Flow; Usage of Condominium Units.

(a) General Partner Distribution and Limited Partner Distribution. If the Limited Partnership incurs expenses that exceed the amount received for Administrative Expenses, and if such excess amounts are paid by the General Partner, then the excess amounts shall be paid by the General Partner. No such excess amounts, if any, shall be paid from Capital Contributions. If the Limited Partnership incurs expenses that are less than the amount received for Administrative Expenses, then the General Partner shall be entitled to a distribution of such excess amounts as an organizational fee. The Limited Partners shall be entitled to receive an annual cash return on their initial Capital Contributions (the "Preferred Return") out of Available Cash Flow to the extent available for distribution at the discretion of the General Partner. The amount of the Preferred Return is set forth in Exhibit A. After such time as the Limited Partners receive the Preferred Return, the Limited Partners shall be entitled

CRC 000190

to receive Cash Available for Distribution equal to their total aggregate Capital Contributions. At such time as the Limited Partners have received payments equal to their total Capital Contributions, then all remaining Cash Available for Distribution (including the proceeds, if any, from a Capital Event) shall be distributed 30% to the Limited Partners and 70% to the General Partner.

(b)    Partner Distributions. Any distribution to the Partners will be distributed to each Partner an amount equal to the total amount of any such distribution multiplied by the ratio of each Partner's Interest over the total Limited Partnership Interests in the Limited Partnership held by all Partners. Distributions shall be made semi-annually and may only be made out of the accumulated balance of the operating profits (specifically excluding any prepayments of the SPO Note) of the Limited Partnership.

Section 6.03.    Deficit Capital Accounts at Liquidation. The Limited Partners shall have no liability to the Limited Partnership, to the General Partners, or to the creditors of the Limited Partnership on account of any deficit balance in their Capital Accounts upon liquidation of the Limited Partnership, provided, however, that any Partner for whom any charges have been made to his Capital Account by reason of the obligations described in Section 4.05 and/or Section 10.08 is required to pay to the Limited Partnership the amount of any negative balance in his Capital Account, but such payment shall not exceed the sum of the obligations under Section 4.05 and Section 10.08. This Section 6.03 will survive the termination of a Partner's status as a Partner. A Partner must also pay any attorneys' or accountants' fees actually and reasonably incurred by the Limited Partnership or a General Partner in collecting amounts under this proviso from the Partner.

Section 6.04.    Income Tax Distributions. To the extent that the Limited Partnership is earning income which will result in the Partners being subject to income tax on their distributive share of the Limited Partnership's income, minimum distributions shall be made to the Partners in such amounts and at such times (but in no event later than March 31 each year) as shall be sufficient to enable the Partners to meet income tax liability arising or incurred as a result of their Partnership Interests in the Limited Partnership. For the purposes of such distribution, it shall be assumed that the Partners are taxable at the then highest applicable U.S. individual federal, state and local rates, in Denver, Colorado. Any such distribution shall be made on a nondiscriminatory basis to all Partners pro rata in accordance with their respective Limited Partnership Interests. Such distributions shall be made based on the annual taxable income of the Limited Partnership without regard for the individual income tax liabilities of the individual Partners.

Section 6.05.    Usage of Condominium Units. Beginning on the date of the execution of the SPO Note, each Limited Partner shall be entitled to the use of a Condominium Unit on the terms and conditions set forth in the attached Exhibit C. The parties acknowledge and agree that the specific terms and conditions set forth in Exhibit C may be changed from time to time by the General Partner without a vote of the Limited Partners. The General Partner shall notify the Limited Partners of any changes to the terms and conditions set forth in Exhibit C.

## ARTICLE VII
## EXPENSES

Section 7.01.    Limited Partnership Expenses. The Limited Partnership shall pay all costs and expenses of the Limited Partnership which may include, but are not limited to the list below. However,

CRC 000191

under no circumstance will any such cost or expense be deducted from the Limited Partners' Capital Contributions.

(1)     All costs of personnel employed by the Limited Partnership;

(2)     All costs of borrowed money including repayment of advances to the Partnership made by a Partner which shall be paid monthly and amortized over five years at an interest rate equal to the prime rate of interest from time to time announced by Wells Fargo Bank to be its "prime rate" plus 5%, taxes and assessments on Limited Partnership Property;

(3)     Legal, audit, accounting, brokerage and other fees;

(4)     Printing and other expenses and taxes incurred in connection with the issuance, distribution, transfer, registration and recording of documents evidencing ownership of an Interest in the Limited Partnership or in connection with the business of the Limited Partnership;

(5)     Fees and expenses paid to contractors, mortgage bankers, brokers and services, leasing agents, consultants, on-site managers, real estate brokers, insurance brokers and other agents, including Affiliates of any General Partner;

(6)     Expenses in connection with the acquisition, preparation, operation, improvement, development, disposition, replacement, alteration, repair, remodeling, refurbishment, leasing, and financing and refinancing of Limited Partnership Property.

(7)     The cost of insurance obtained in connection with the business of the Limited Partnership;

(8)     Expenses of organizing, revising, amending, converting, modifying or terminating the Limited Partnership;

(9)     Expenses in connection with distributions made by the Limited Partnership to, and communications and bookkeeping and clerical work necessary in maintaining relations with, Limited Partners;

(10)     Expenses in connection with preparing and mailing reports required to be furnished to Partners for required tax reporting, or other purposes which the General Partner deems appropriate;

(11)     Costs incurred in connection with any litigation, including any examination or audits by regulatory agencies;

(12)     Costs of preparation and dissemination of informational material and documentation relating to potential sale, refinancing or other disposition of Limited Partnership Property;

(13)     The Management Fee; and

CRC 000192

(14)    Costs of compliance with reporting requirements imposed by USCIS or related governmental entities with respect to compliance with the EB-5 program as it may be amended from time to time.

## ARTICLE VIII
## POWERS, RIGHTS AND OBLIGATIONS OF GENERAL PARTNERS

Section 8.01.    General Authority and Powers of the General Partner. The General Partner shall have the exclusive right and power to manage, operate and control the Limited Partnership and to do all things and make all decisions necessary or appropriate to carry on the business and affairs of the Limited Partnership. In addition to the specific rights and powers herein granted to the General Partners, the General Partner shall possess and enjoy and may exercise all the rights and powers of a general partner as provided in the Act, including the full and exclusive power and authority to act for and to bind the Limited Partnership. The scope of the General Partner's power and authority shall encompass all matters connected with or incident to the business of the Limited Partnership, including but not limited to the power and authority:

(1)    To spend and or invest the capital and revenue of the Limited Partnership to maximize return to the Limited Partnership, including the acquisition of the Limited Partnership Property;

(2)    To manage, sell, develop, purchase, mortgage, improve, operate and dispose of Limited Partnership Property, including to act on behalf of the Limited Partnership with respect to any Limited Partnership or joint venture in which the Limited Partnership participates;

(3)    To employ persons, firms and/or corporations for the sale, operation, management, syndication and development of Limited Partnership Property, including but not limited to sales agents, broker-dealers, attorneys and accountants;

(4)    To employ agents, attorneys, accountants, engineers and other consultants or contractors who may be Affiliates of a General Partner; however, any employment of such persons must be on terms not less favorable to the Limited Partnership than those offered by unaffiliated persons for comparable services in the same area;

(5)    To acquire and or sell personal or real property owned by the Limited Partnership or in which the Limited Partnership has an interest, lease real property, borrow on a secured or unsecured basis in the name of the Limited Partnership, grant Partnership property as security for a loan to the Partnership, hire and fire employees, to sign any documents required on behalf of the Limited Partnership, without the signatures or consents of the Limited Partners, required to carry out the duties of the General Partner, and all other acts necessary, appropriate, or helpful for the operation of the Limited Partnership business;

(6)    To appoint representatives to manage the day-to-day operations of the Limited Partnership, including specifically, the appointment of Waveland EB-5 Management, LLC;

(7)    To execute, acknowledge and deliver any and all instruments to effectuate any of the foregoing powers and any other powers granted to the General Partner under the laws of the State of Colorado or other provisions of this Agreement;

(8)     To enter into and to execute agreements for employment or services, as well as any other agreements and all other instruments the General Partner deems necessary or appropriate to own, sell, improve, operate and dispose of Limited Partnership Property or to effectively and properly perform its duties or exercise its powers hereunder;

(9)     To enter into such agreements and contracts with parties and to give such receipts, releases and discharges, with respect to the business of the Limited Partnership, which the General Partner, in its sole discretion, deems advisable or appropriate;

(10)     To purchase, at the expense of the Limited Partnership, such liability and other insurance as the General Partner, in its sole discretion, deems advisable to protect the Limited Partnership's assets and business; however, the General Partner shall not be liable to the Limited Partnership or the other Partners for failure to purchase any insurance, including earthquake insurance, unless such act or omission constitutes gross negligence or willful misconduct by a General Partner within the meaning of Section 8.04;

(11)     To sue and be sued, complain, defend, settle, and/or compromise, with respect to any claim in favor of or against the Limited Partnership, in the name and on behalf of the Limited Partnership; and

(12)     To grant Limited Partnership real or personal property as security for a loan to the Limited Partnership, and sign all documents required to grant such security interests in Limited Partnership Property, without the signatures or consents of the Limited Partners.

Section 8.02.  Right of Public to Rely on Authority of General Partner.  No person, firm, corporation, or governmental authority dealing with the Limited Partnership or any Limited Partnership or joint venture for which the Limited Partnership is a general partner or otherwise authorized to act, shall be required to inquire into the authority of the General Partner to take any action, make any decision, or sign and deliver any document, instrument or deed.  The General Partner does not require an authorizing resolution from the Partners in order to grant Limited Partnership Property as security for an obligation of the Limited Partnership.

Section 8.03.  Time Devoted to Limited Partnership; Other Ventures. The General Partner shall devote so much of their time to the business of the Limited Partnership as in its judgment the conduct of the Limited Partnership's business reasonably requires.  The General Partner may engage in business ventures and activities of any nature and description independently or with others, whether or not in competition with the business of the Limited Partnership, and neither the Limited Partnership nor any of the other Partners shall have any rights in and to such independent ventures and activities or the income or profits derived there from by reason of the acquisition of Interests in the Limited Partnership.

Section 8.04.  Liability of General Partners to Limited Partners and Limited Partnership.  In carrying out their duties and exercising the powers hereunder, the General Partners shall exercise reasonable skill, care and business judgment.  A General Partner shall not be liable to the Limited Partnership or the Limited Partners for any act or omission performed or omitted by them in good faith pursuant to the authority granted to them by this Agreement unless such act or omission constitutes gross negligence or willful misconduct by that General Partner. In exercising their powers hereunder, the General Partner recognizes its fiduciary responsibility to the Limited Partnership as set forth in **Section**

CRC 000194

**8.06** hereof. The General Partner shall be entitled to rely on the advice of counsel and public accountants experienced in any matter at issue, and shall not be liable, responsible or accountable in damages or otherwise to the Limited Partnership, or any Limited Partner for any action taken or failure to act on behalf of the Limited Partnership in good faith and in reliance on any such advice.

Section 8.05. Indemnification. The Limited Partnership shall indemnify and hold harmless the General Partner from any loss or damage, including attorneys' fees actually and reasonably incurred by them, by reason of any act performed by them on behalf of the Limited Partnership or in furtherance of the interests of the Limited Partnership; provided, however, that such indemnification or agreement to hold harmless shall be recoverable only out of the assets of the Limited Partnership and not from the Limited Partners. The foregoing indemnity shall extend only to acts or omissions performed or omitted by a General Partner in good faith and in the belief that the acts or omissions were in the Limited Partnership's interests, or not opposed to the best interests of the Limited Partnership and which are not a result of negligence or willful or wanton misconduct on the part of that General Partner.

Section 8.06. Fiduciary Responsibility. The General Partners shall have a fiduciary responsibility for the safekeeping and use of all funds and assets of the Limited Partnership.

## ARTICLE IX
## STATUS OF LIMITED PARTNERS

Section 9.01. Participation in Management. Except as specifically provided herein, no single Limited Partner shall control the Limited Partnership's business or management or have any right or authority to act for or on the behalf of, or otherwise bind, the Limited Partnership (except a Limited Partner who may also be a General Partner and then only in its capacity as General Partner within the scope of its authority hereunder). Notwithstanding the above, the Limited Partners shall form an advisory committee to consult and advise the General Partner with respect to the partnership business as may be permitted under the laws of the state of Colorado.

Section 9.02. Limitation of Liability. No Limited Partner shall have any personal liability whatever, whether to the Limited Partnership, to any Partners or to the creditors of the Limited Partnership, for the debts or obligations of the Limited Partnership or any of its losses beyond his Capital Contribution set forth opposite his name in Exhibit A attached hereto; provided, however, that any Partner for whom any charges have been made to his Capital Account by reason of the obligation described in Section 6.04, Section 4.05, and/or Section 10.08 is required to reimburse the Limited Partnership for the amount of any negative balance in his Capital Account, but such reimbursement shall not exceed the sum of the Partner's obligations under Section 4.05 and Section 10.08. This Section 9.02 will survive the termination of a Partner's status as a Partner. A Partner must also pay any attorneys' or accountants' fees actually and reasonably incurred by the Limited Partnership or a General Partner in collecting amounts under this proviso from the Partner.

Section 9.03. Death or Incapacity of Limited Partner. The death, legal incapacity, dissolution, termination, merger, consolidation or bankruptcy of a Limited Partner shall not cause dissolution of the Limited Partnership, but the rights of such Limited Partner to share in the profits and losses of the Limited Partnership, to receive distributions from the Limited Partnership and to assign an Interest in the Limited Partnership shall, on the happening of such an event, devolve upon such Limited Partner's executor,

CRC 000195

administrator, guardian, conservator, or other legal representative or successor, as the case may be, subject to the terms and conditions of this Agreement, and the Limited Partnership shall continue as a Limited Partnership. However, in any such event such legal representative or successor, or any assignee of such legal representative or successor shall be admitted to the Limited Partnership as a Limited Partner only in accordance with and pursuant to all of the terms and conditions of **Article XI** hereof.

Section 9.04. Recourse of Limited Partners. Each Limited Partner shall look solely to the Limited Partnership for all distributions with respect to the Limited Partnership and his Capital Contribution thereto and share of profits and losses thereof and shall have no recourse therefore, upon dissolution or otherwise, against the General Partners or any other Limited Partner.

Section 9.05. No Right to Property. No Limited Partner shall have any right to demand or receive any distribution from the Limited Partnership in any form other than cash, upon dissolution or otherwise.

Section 9.06. Voting Rights of Limited Partners. Subject to the provisions of **Article VIII,** the Limited Partners owning Interests constituting in the aggregate at least two-thirds of the Interests of all Limited Partners unless stated otherwise may, without the concurrence of the General Partners and in accordance with **Section 12.02** hereof, remove the General Partner for cause and admit a substitute General Partner.

Section 9.07. Meetings of Limited Partners.

(1) Meetings of the Limited Partners to vote upon any matters on which the approval or consent of the Limited Partners is required or on which the Limited Partners are authorized to take action under this Agreement may be called at any time by the General Partner and shall be called by the General Partner within ten (10) days after receipt of a written request for such a meeting signed by one or more Limited Partners owning Interests constituting in the aggregate more than 51% of the Interests of all Limited Partners. Any such request shall state the purpose of the proposed meeting and the matters proposed to be acted upon at such meeting, including a verbatim statement of the wording of any proposed amendment to this Agreement. Meetings shall be held at the principal office of the Limited Partnership or at such place as may be designated by the General Partners or, if the meeting is called upon the written request of Limited Partners, as designated by such Limited Partners.

(2) Notification of any meeting to be held pursuant to this **Section 9.07** shall be given not less than ten (10) days nor more than sixty (60) days before the date of the meeting, to each Limited Partner at his record address, or at such other address which he may have furnished in writing to the General Partner. Such notice shall be in writing; shall state the place, date and hour of the meeting; and shall indicate that the notice is being issued at or by the direction of the Partner or Partners calling the meeting. The notice shall state the purpose or purposes of the meeting and the matters proposed to be acted upon at such meeting, including a verbatim statement of the wording of any proposed amendment to this Agreement. If a meeting is adjourned to another time and place, and if an announcement of the adjournment of time or place is made at the meeting, it shall not be necessary to give notice of the adjourned meeting. No notice of the time, place or purpose of any meeting of Limited Partners need be given to any Limited Partner who attends in person or is represented by proxy, except for a Limited Partner attending a meeting for the express purpose of objecting at the beginning of the meeting to the transaction or any business on the ground that the meeting is not lawfully called or convened, or to any

CRC 000196

Limited Partner entitled to such notice who, in a writing executed and filed with the records of the meeting, either before or after the time thereof, waives such notice.

(3)     For the purpose of determining the Limited Partners entitled to notice of, or to vote at, any meeting or any adjournment thereof, or to vote by written consent without a meeting, the General Partners or the Limited Partners requesting such meeting or vote may fix, in advance, a date as the record date for any such determination of Limited Partners. Such date shall not be more than sixty (60) days nor less than ten (10) days before any such meeting or submission of a matter to the Limited Partners, the date on which notice of the meeting or submission of the matter to the Limited Partners for a vote by written consent is mailed shall be the record date for such determination of Limited Partners.

(4)     Each Limited Partner may authorize any person or persons to act for him by proxy with respect to any matter in which a Limited Partner is entitled to participate, whether by waiving notice of any meeting, or voting or participating at a meeting. Each proxy must be signed by the Limited Partner. No proxy shall be valid after the expiration of twelve (12) months from the date thereof unless otherwise provided in the proxy. Every proxy shall be revocable by the Limited Partner executing it.

(5)     Any matter for which the approval or consent of the Limited Partners is required or for which the Limited Partners are authorized to take action under this Agreement or under applicable law may be approved or action may be taken by the Limited Partners without a meeting and shall be as valid and effective as action taken by the Limited Partners at a meeting assembled, if written consents to such action by the Limited Partners are signed by the Limited Partners owning Interests constituting in the aggregate the Interests required to approve or otherwise authorize such action, and such written consents are delivered to the General Partners.

(6)     Personal presence of the Limited Partners shall not be required at any meeting, provided an effective written consent to or rejection of the action proposed to be taken at such meeting is submitted to the General Partner. Attendance by a Limited Partner and voting in person at any meeting shall revoke any written consents or rejections of such Limited Partner submitted with respect to action proposed to be taken at such meeting.

(7)     Failure to vote either in person, by proxy or by written consent at a duly called meeting upon receipt of notice as provided for in this **Article IX** on matters for which approval of the Limited Partners are required by this Agreement shall be counted as an affirmative vote.

## ARTICLE X
## BOOKS AND RECORDS, ACCOUNTING, REPORTS AND
## STATEMENTS AND TAX MATTERS

Section 10.01. Books and Records. The General Partner shall, at the expense of the Limited Partnership, keep and maintain, or cause to be kept and maintained, the books and records of the Limited Partnership using the method of accounting chosen by the General Partner. All books and records of the Limited Partnership shall be kept at the principal office of the Limited Partnership.

Section 10.02. Annual Accounting Period. All books and records of the Limited Partnership shall be kept on the basis of an annual accounting period ending December 31 of each year, except for the final accounting period which shall end on the date of termination of the Limited Partnership. All

CRC 000197

references herein to the "fiscal year of the Limited Partnership" are to the annual accounting period described in the preceding sentence, whether the same shall consist of twelve months or less.

Section 10.03. General Partner's Reports to Limited Partners. The General Partner shall send at Limited Partnership expense to each Limited Partner the following:

(1) After the end of each fiscal year of the Limited Partnership, such information as shall be necessary for the preparation by such Limited Partner of his federal income tax return which shall include a computation of the distributions of such Limited Partner and the allocation to such Limited Partner of profits or losses, as the case may be; and

(2) A reasonable time after the end of each fiscal year of the Limited Partnership, an annual report, which shall include an income statement for and balance sheet of the Limited Partnership as of the fiscal year end.

Section 10.04. Right to Examine Records. Limited Partners shall be entitled, upon written request directed to the General Partner, to (a) review the records of the Limited Partnership at all reasonable times and at the location where such records are kept by the Limited Partnership and (b) obtain a list of the names and addresses of the Limited Partners.

Section 10.05. Tax Matters Partner. The tax matters partner of the Limited Partnership shall be the General Partner.

Section 10.06. Tax Returns. The General Partner shall, at Limited Partnership expense, from Available Cash Flow, cause the Limited Partnership to prepare and file a United States Limited Partnership Return of Income and all other tax returns required to be filed by the Limited Partnership for each fiscal year of the Limited Partnership.

Section 10.07. Tax Elections and Adjustments. The General Partner is authorized to cause the Limited Partnership to make, forego or revoke such elections or adjustments for federal income tax purposes as it deems necessary or advisable in its sole discretion, provided such elections or adjustments are consistent with federal income tax rules and principles, including but not limited to, in the event of a transfer of all or part of the Limited Partnership Interest of any Partner, an election pursuant to Section 754 of the Code to adjust the basis of the assets of the Limited Partnership or any similar provision enacted in lieu thereof. The Partners will, upon request, supply any information necessary to properly give effect to any such election or adjustment.

Section 10.08. Federal Income Tax Withholding. In the event any of the Partners are subject to Federal Income Tax withholding, the General Partner is authorized to withhold any sums required by the Internal Revenue Code even if such withholding conflicts with any of the terms and conditions of this Agreement or otherwise affects distributions, allocations or payments to the Partners. In the event that the General Partner learns of a withholding obligation subsequent to the distribution to which the withholding obligation relates, the General Partner will issue an invoice to the Partner. If the invoice is not paid within sixty (60) days, the General Partner will charge the amount against the Partner's Capital Account. This Section 10.08 will survive the termination of a Partner's status as a Partner.

CRC 000198

## ARTICLE XI
### TRANSFERS OF LIMITED PARTNERSHIP INTERESTS;
### WITHDRAWAL AND ADMISSION OF LIMITED PARTNERS

Section 11.01. General Prohibition. No Limited Partner may voluntarily, or involuntarily, directly or indirectly, sell, transfer, assign, pledge or otherwise dispose of, or mortgage, pledge, hypothecate or otherwise encumber, or permit or suffer any encumbrance of, all or any part of his Interest in the Limited Partnership, except as provided in this **Article XI**. Any other purported sale, transfer, assignment, pledge or encumbrance shall be null and void and of no force or effect whatsoever.

Section 11.02. No withdrawal of Limited Partner. No Limited Partner shall have the right to withdraw from the Limited Partnership except as otherwise provided in this Agreement.

Section 11.03. Transfers by Limited Partners.

(1)     Subject to any restrictions on transferability required by law or contained elsewhere in this Agreement, a Limited Partner may transfer his entire Interest in the Limited Partnership upon satisfaction of the following conditions:

(a)     The transfer shall (A) be by bequest or by operation of the laws of intestate succession, or (B) be approved in writing by the General Partner, which approval shall be withheld only if, in the reasonable judgment of the General Partner, the proposed transfer does not comply with the requirements of this **Article XI**, would jeopardize the status of the Limited Partnership as a Limited Partnership for federal income tax purposes, or would violate, or cause the Limited Partnership to violate, any applicable law or governmental rule or regulation, including without limitation, any applicable federal or state securities law and federal immigration laws pertaining to EB-5 classification;

(b)     The transferor and transferee shall have executed and acknowledged such instruments as the General Partner may deem necessary or desirable to effect such transfer;

(c)     The transferor and transferee shall have provided, if requested by any General Partner, an opinion of counsel indicating that, in the opinion of said counsel, such transfer would not jeopardize the status of the Limited Partnership as a Limited Partnership for federal income tax purposes, and would not violate, nor cause the Limited Partnership to violate, any applicable law or governmental rule or regulation, including without limitation, any applicable federal or state securities law and federal immigration laws pertaining to EB-5 classification; and

(d)     The transferor has made all Capital Contributions to the Limited Partnership in accordance with **Article IV** hereof and has no further obligation to the Limited Partnership beyond his Capital Contribution as described in Section 9.02.

(2)     At the time of a transfer of any Limited Partner's Interest, whether or not such transfer is made in accordance with this **Section 11.03**, all the rights possessed as a Limited Partner in connection with the transferred Interest, which rights otherwise would be held either by the transferor or transferee, shall terminate against the Limited Partnership unless the transferee is admitted to the Limited Partnership as a Limited Partner pursuant to the provisions of **Section 11.04** hereof; provided, however,

CRC 000199

that if the transfer is made in accordance with this **Section 11.03**, such transferee shall be entitled to
receive distributions to which the transferor would otherwise be entitled as of the effective date of such
transfer, which date shall be specified by the General Partner and shall be no later than the last day of the
calendar month following the first calendar month during which the General Partner has received notice
of the transfer and all conditions precedent to such transfer provided for in this Agreement have been
satisfied. The Limited Partnership and the General Partner shall be entitled to treat the transferor as the
recognized owner of such Interests until such effective date and shall incur no liability for distributions
made in good faith to the transferor prior to the effective date.

(3)     In the event a Limited Partner transfers all of his Interest in the Limited
Partnership, the transferor will cease to be a Limited Partner. The transferring Limited Partner
acknowledges that such a transfer may make him or her ineligible for any benefit conferred under the
Immigration and Nationality Act to EB-5 investors. The transferring Limited Partner is hereby advised to
seek independent immigration counsel prior to effecting a transfer.

(4)     If a General Partner purchases the Interest of a Limited Partner, such Interest
shall be treated as a Limited Partnership Interest with respect to all allocations and distributions of the
Limited Partnership.

(5)     A transfer by a Limited Partner, including transfers of all or less than all rights
hereunder, shall not relieve the transferor of obligations under this Agreement.

(6)     Each of the Limited Partners, by executing this Agreement, hereby covenants and
agrees that he will not, in any event, sell or distribute his Interest in the Limited Partnership or any portion
thereof unless, in the opinion of counsel to the Limited Partner (which counsel and opinion shall be
satisfactory to counsel for the General Partner) such Interest in the Limited Partnership may be legally
sold or distributed in compliance with applicable federal and state securities laws.

(7)     Notwithstanding any other provision of this Agreement, a Limited Partner may
not transfer his Interest in any case if such a transfer, when aggregated with all other transfers within a
twelve (12) month period, would cause the termination of the Limited Partnership as a Limited
Partnership for federal income tax purposes pursuant to Section 708 of the Code, unless such transfer
shall be expressly approved by the General Partner.

Section 11.04. Admission of Transferees as Limited Partners.

(1)     No transferee of a Limited Partner shall be admitted as a Limited Partner unless
all of the following conditions have been satisfied:

(a)     The transfer complies with **Section 11.03** and the transferor Limited
Partner gives the transferee the right to become a Limited Partner;

(b)     The prospective transferee has executed an instrument, in form and
substance satisfactory to the General Partner, accepting and agreeing to be bound by all the terms and
conditions of this Agreement, including the power of attorney set forth in **Article XIV** hereof, and has
paid all expenses of the Limited Partnership in effecting the transfer;

CRC 000200

(c)     All requirements of the Act regarding the admission of a transferee limited partner have been complied with by the transferee, the transferring Limited Partner, and the Limited Partnership;

(d)     Such transfer is effected in compliance with all applicable state and federal securities laws; and

(e)     The transferee executes all documents reasonably required by the General Partner.

(2)     In the event of a transfer complying with all the requirements of **Section 11.03** hereof and the transferee being admitted as a Limited Partner pursuant to this **Section 11.04**, the General Partner, for himself as a General Partner and for each Limited Partner pursuant to the Power of Attorney granted by each Limited Partner, shall execute and file an amendment to this Agreement. Unless named in this Agreement, as amended from time to time, no person shall be considered a Partner; and the Limited Partnership, each Partner, and any other person having business with the Limited Partnership need deal only with Partners so named and shall not be required to deal with any other person by reason of a transfer by, or by reason of the death of, a Partner, except as otherwise expressly provided herein.

## ARTICLE XII
## TRANSFERS OF GENERAL PARTNERSHIP INTERESTS;
## WITHDRAWAL AND ADMISSION OF GENERAL PARTNERS

Section 12.01.  Withdrawal of General Partner.  The General Partner may withdraw from the Limited Partnership by giving the Limited Partners written notice of withdrawal at least sixty (60) days prior to the effective date of the withdrawal.  A General Partner who withdraws from the Limited Partnership may sell its Interest only in accordance with the procedures and limitations of **Section 12.03** hereof.  In the event there is no such sale, or until such time as there is such a sale, a General Partner who has withdrawn shall have the same rights and be subject to the same limitations as a General Partner that has been removed pursuant to the provisions of **Section 12.03** hereof, and the interest of the withdrawn General Partner may be acquired by the other General Partners or by the Limited Partners in accordance with the procedures set forth in **Section 12.03** hereof.

Section 12.02.  Removal, Bankruptcy, Dissolution, Death or Incompetency of General Partner.  A General Partner shall cease to be a General Partner of the Limited Partnership upon the removal, bankruptcy, dissolution, death or incompetency of the General Partner and any General Partner may be removed by the vote of the Limited Partners, under **Section 9.06** above, only for cause.  For purposes of this **Section 12.02**, the term "cause" shall mean acts of the General Partner which constitute larceny, fraud, or a crime involving moral turpitude.

Section 12.03.  Transfer by General Partner; Admission of Additional or Successor General Partners.  A General Partner may transfer his Interest, or any part thereof, and an additional or successor General Partner, as the case may be, shall be admitted to the Limited Partnership as follows:

(1)     If a General Partner desires to sell, transfer or assign its Interest in the Limited Partnership to another then existing General Partner, such General Partner must obtain the consent of all of the other General Partners, if any, before effecting such sale or transfer.  If the Partner desiring to sell,

CRC 000201

transfer or assign its interest is the General Partner, then a majority of the other General Partners, if there are three or more General Partners, and, if not, then two-thirds of the Limited Partners, must agree as to who is to become the new General Partner before the proposed sale, transfer or assignment can be effected.

(2)     Except as provided in **Section 12.03(3)**, if a General Partner desires to sell, transfer or assign its Interest in the Limited Partnership to a person or entity who is not then a General Partner, such transfer shall be permitted if, and only if, the proposed transferee is approved as a successor General Partner as follows:

(a)     The admission of the transferee as a successor General Partner shall have been consented to by the other General Partners, and if none, by a two-thirds vote of the Limited Partners;

(b)     If the proposed transferee is a non-natural person, it shall have provided the Limited Partnership evidence satisfactory to counsel for the Limited Partnership of its authority to become a General Partner;

(c)     In the event that one or more General Partners shall be so designated and approved, this Agreement shall be appropriately amended to provide for the participation of such additional General Partners.

Notwithstanding the above, the General Partner shall have the absolute right to assign to any third party all or any portion of its right to receive cash flow distributions from the Limited Partnership provided that the General Partner remains as a General Partner.

(3)     Upon action taken by the Limited Partners to remove a General Partner in accordance with **Section 9.06** and subject to **Section 12.02**, Limited Partners owning Interests constituting in the aggregate two-thirds of the Interests of all Limited Partners may, without the concurrence of the General Partners, admit to the Limited Partnership one or more additional General Partners to replace the General Partner(s) to be removed. In the event that one or more additional General Partners shall be so admitted, this Agreement shall be appropriately amended to provide for the participation of such additional General Partners.

(4)     Notwithstanding any other provision of this Agreement, the General Partners may not transfer any Interest in any case if such transfer, when aggregated with all other transfers within a twelve (12) month period, would cause the termination of the Limited Partnership as a Limited Partnership for federal income tax purposes pursuant to Section 708 of the Code unless such transfer shall be approved by Limited Partners owning Interest constituting in the aggregate a majority of the Interests of all Limited Partners in the Limited Partnership.

Section 12.04. Continuing Liability. In the event a General Partner withdraws from the Limited Partnership or sells, transfers or assigns its entire Interest pursuant to the provisions of this Agreement, such General Partner shall be, and shall remain, liable for all obligations and liabilities incurred by the General Partner prior to the effective date of such occurrence and shall be free of any obligation or liability incurred on account of the activities of the Limited Partnership from and after such effective date.

Section 12.05. Additional Conditions to Admission of General Partners. Notwithstanding any other provision of this Agreement, no additional or successor General Partner may be admitted to the Limited Partnership and no right of the Limited Partners to consent to or approve such admission shall have any effect whatsoever or be exercisable until and unless prior to such exercise the Limited Partnership shall have received an opinion of counsel satisfactory to the Limited Partners (as hereinafter provided) to the effect that the giving of consent of the Limited Partners to such admission will not adversely affect the classification of the Limited Partnership as a Limited Partnership for federal income tax purposes. For purposes of this **Section 12.05**, an opinion of counsel will be deemed satisfactory to the Limited Partners if approved in writing by Limited Partners owning Interests constituting in the aggregate a majority of the Interests of all Limited Partners.

Section 12.06. Purchase of Interest(s) of General Partners. Upon the removal, bankruptcy, dissolution, death or incompetency of a General Partner, the Limited Partnership Interest(s) of the General Partner(s) (hereinafter, for purposes of **Sections 12.02 and 12.06**, referred to as the "Terminated General Partner(s)") shall be purchased by the Limited Partnership for a purchase price determined in accordance with **Section 12.07** hereof. The purchase price of such Interest(s) shall be paid by the Limited Partnership to the Terminated General Partner(s) or his/their representative either, at the option of the Limited Partnership, in cash or by a promissory note of the Limited Partnership payable to such Terminated General Partner(s) or his representative in a face amount equal to said purchase price and containing provisions as would be usual and customary in a commercial promissory note, including provisions for interest at a rate equal to the prime rate of interest from time to time announced by Wells Fargo Bank to be its "prime rate", such interest to be payable at the time of each installment of principal, which shall be payable in five (5) annual installments or as the Terminated General Partner(s) or his representative and the Limited Partnership may otherwise agree.

Section 12.07. Purchase Price of a Terminated General Partner(s) Interest. The fair market value of the Terminated General Partner(s)' Interest(s), for any reason other than for removal for cause, to be purchased by the Limited Partnership in accordance with **Section 12.06** above shall be determined by agreement between the Terminated General Partner(s) or his representative and the Limited Partnership. If the Terminated General Partner(s) or his representative and the Limited Partnership cannot agree upon the fair market value of such Limited Partnership Interest(s) within 90 days after the date of the Terminated General Partner(s) removal, bankruptcy, dissolution, death or incompetency, then the purchase price shall be the General Partner's percentage interest of the appraised value of the Limited Partnership's assets and business, valued as a going concern without a minority discount determined as soon as possible after the end of the 90-day period above. In the event of removal for cause the purchase price of the terminated General Partner(s) interest shall be based on the formula set forth in this paragraph except that the value of any distributions to Limited Partners paid to the General Partner shall be reduced to zero.

## ARTICLE XIII
## DISSOLUTION, WINDING UP AND TERMINATION

Section 13.01. Events Causing Dissolution. The Limited Partnership shall be dissolved and its affairs shall be wound up upon the happening of the first to occur of any of the following events:

      (1)     Expiration of the term of the Limited Partnership stated in **Section 1.05** hereof;

CRC 000203

(2)      Entry of a decree of judicial dissolution pursuant to the Act;

(3)      The sale or other disposition of all or substantially all of the assets of the Limited Partnership;

(4)      The removal, bankruptcy, dissolution, death or incompetency of the General Partner(s), unless:

(a)      At the time of the occurrence of any of such events there is at least one other additional or successor General Partner, in which case the business of the Limited Partnership shall be carried on by the remaining General Partner(s); or

(b)      Within 90 days of the occurrence of any such event, all Partners agree in writing to continue the business of the Limited Partnership and to the appointment of one or more General Partner(s) who shall succeed to all of the management rights and responsibilities of the General Partner(s) hereunder.

Section 13.02.  Bankruptcy of General Partner(s).  For the purposes of this Agreement, the "bankruptcy" of a General Partner shall mean any of the following:

(1)      The General Partner makes an assignment for the benefit of creditors;

(2)      The General Partner files a voluntary petition in bankruptcy;

(3)      The General Partner is adjudicated as bankrupt or insolvent;

(4)      The General Partner files a petition or answer seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief under any statute, law or regulation;

(5)      The General Partner files an answer or other pleading admitting or failing to contest the material allegations of a petition filed against such Partner in any proceedings of the nature described in (4) above;

(6)      The General Partner seeks, consents to, or acquiesces in the appointment of a trustee, receiver, or liquidator of such Partner or of all or any substantial part of such Partner's properties;

(7)      The expiration of 90 days after the commencement of any proceeding against the General Partner seeking reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief under any statute, law, or regulation, provided the proceeding has not been dismissed within such 90 day period; or

(8)      The expiration of 60 days after the appointment without such General Partner's consent or acquiescence of a trustee, receiver, or liquidator of the General Partner or all or any substantial part of such General Partner's properties, provided the appointment is not vacated or stayed within such

CRC 000204

60 day period, or if stayed within such 60 day period, then the expiration of sixty (60) days after the expiration of any such stay, provided the appointment is not vacated within such 60 day period.

Section 13.03. Winding Up. Upon dissolution of the Limited Partnership for any reason, he General Partner, or any other party (the "Liquidator") designated by vote or written consent of Limited Partners owning Interests constituting in the aggregate a majority of the Interests of all Limited Partners, if required, shall commence to wind up the affairs of the Limited Partnership and to liquidate its assets. The Partners shall continue to share income, gains, expenses, losses and all other items during the period of liquidation in the same proportion as before the dissolution. The Liquidator shall have the full right and unlimited discretion to determine the time, manner and terms of any sale or sales of Limited Partnership Property pursuant to such liquidation. Pending such sales, the Liquidator or such other party shall have the right to continue to operate and otherwise deal with the assets of the Limited Partnership. A reasonable time shall be allowed for the orderly winding up of the business of the Limited Partnership and the liquidation of its assets and the discharge of its liabilities to creditors so as to enable the Liquidator to minimize the normal losses attendant upon a liquidation, having due regard to the activity and condition of the relevant markets for the Limited Partnership Property and general financial and economic conditions. Any Partner may be a purchaser of the Property of the Limited Partnership upon liquidation, including, without limitation, any liquidation conducted pursuant to a judicial dissolution or otherwise under judicial supervision; provided, however, that the purchase price and terms of sale are fair and reasonable to the Limited Partnership.

Section 13.04. Distributions. The proceeds of liquidation and any other funds of the Limited Partnership shall be distributed in the order of priority set forth in **Article VI** above.

Section 13.05. Certificate of Cancellation; Report; Termination. Upon the dissolution and commencement of winding up of the Limited Partnership, the General Partner shall execute and file a certificate of cancellation of the Limited Partnership. Within a reasonable time following the completion of the liquidation of the Limited Partnership's assets, the General Partner or such other party shall prepare and furnish to each Partner, at the expense of the Limited Partnership, a statement that sets forth the assets and liabilities of the Limited Partnership as of the date of complete liquidation and the amount of each Partner's distribution pursuant to Article VI hereof. Upon completion of the liquidation and distribution of all Limited Partnership funds, the Limited Partnership shall terminate and the General Partner shall have the authority to execute and file all documents required to effectuate the termination of the Limited Partnership.

Section 13.06. Rights of Limited Partners to Return of Capital Contribution. Beginning on a date three years following the date of the first Capital Contribution to the Limited Partnership by a Limited Partner, the General Partner shall engage one or more independent third parties who are familiar with the Vail, Colorado condominium market to prepare a good faith estimate of the Fair Market Value (as hereinafter defined) of the Limited Partnership Property. The Limited Partnership shall provide notice (the "Option Notice") to the Limited Partners of the estimated Fair Market Value. For purposes of this Section, "Fair Market Value" shall be deemed to mean the total liquidation value (as determined pursuant to a good faith market analysis conducted by qualified third-parties engaged by the General Partner) of all of the Limited Partnership Property after deduction of all usual and customary selling expenses, pro rations, and other similar matters. Each Limited Partner who, at the time of the receipt of the Option Notice has held his or her LP Interest for at least three years, shall be entitled to give notice to the General Partner within 45 days following delivery of the Option Notice of his or her election to sell to the Limited Partnership his or her LP Interest (the "Acceptance Notice"). Failure to deliver the Acceptance Notice within such 45-day period shall be deemed conclusive evidence of the Limited Partner's rejection of the offer to purchase. Except as specifically set forth below, receipt of the Acceptance Notice shall be deemed

CRC 000205

to be conclusive evidence of the Limited Partner's election to sell his or her LP Interest at the Purchase Price (as defined below). The price for such purchase shall be equal to the Limited Partner's pro rata share (as determined from the Capital Accounts) of whatever price the Partnership is able to realize using its reasonable business efforts to liquidate the Limited Partnership Property pursuant to the Option Notice (the "Purchase Price"). The Purchase Price may be greater than or less than the Fair Market Value as set forth in the Option Notice and shall be solely dependent on the price that the Partnership is able to realize from the liquidation of the Limited Partnership Property. Notwithstanding the above, if the actual Purchase Price is less than 70% of the Fair Market Value set forth in the Option Notice, the Limited Partner shall have the right, exercisable within 10 days following written notice to the Limited Partner of the amount of the Purchase Price, to rescind the Acceptance Notice. Prior to the consummation of any sale pursuant to this provision, the independent party or parties who made the initial determination of Fair Market Value, shall make a second determination that the actual sales price represents a fair valuation under all facts and circumstances. Such fair market analyses shall be made available for review by any Limited Partner. The Purchase Price shall be payable in cash on a date 180 days following the expiration of the 90-day period following delivery of the Option Notice. On each six-month anniversary date of the original Option Notice, the General Partner shall provide to the remaining Limited Partners a new Option Notice setting forth the then applicable Fair Market Value of the Limited Partnership Property and each Limited Partner shall then have 90 days from such date to deliver an Acceptance Notice. If the offer is accepted, the Purchase Price shall be payable as set forth above. This Section is intended only to provide the Limited Partners with the right to receive their pro-rata share the Fair Market Value on certain future date, as more specifically set forth above, and shall in no event be construed to confer any additional rights or privileges with respect to the management or disposition of the Partnership assets.

## ARTICLE XIV
## SPECIAL AND LIMITED POWER OF ATTORNEY

Section 14.01. Special and Limited Power of Attorney.

(1) The General Partner shall at all times during the existence of the Limited Partnership have a special and limited power of attorney as the attorney-in-fact for each Limited Partner with power and authority to act in the name and on the behalf of each Limited Partner to make, execute, swear to, verify, acknowledge, correct and file the following documents and any other documents deemed by the General Partner to be necessary for the business of the Limited Partnership:

(a) This Agreement, and any amendments thereto;

(b) Any certificate of Limited Partnership for the Limited Partnership and amendments thereto required or permitted or deemed advisable by the General Partner to be made or filed on behalf of the Limited Partnership, and any and all certificates or other instruments necessary to qualify the Limited Partnership as a Limited Partnership;

(c) Any other instrument or document that may be required to be filed by the Limited Partnership under the laws of any state or by a governmental agency or which the General Partner deems advisable to file, including without limitation the United States Citizenship and Immigration Services;

(d) Any instrument or document which may be required to effect the continuation of the Limited Partnership and admission of an additional or substitute General or Limited

Partner, or the dissolution and termination of the Limited Partnership (provided such continuation, admission or dissolution and termination are in accordance with the terms of this Agreement).

(e)     Any instrument or document which may be required to respond to USCIS's requests for additional evidence or denial where the grounds relate to the Project only, with respect to any Limited Partner's I-526 Petition or I-829 Petition. Each Limited Partner acknowledges and agrees that the Limited Partnership's special immigration counsel, as appointed by the General Partner, is the sole entity authorized to respond on behalf of the Limited Partnership in any matter before the USCIS, the Administrative Appeals Office, or other judicial body having jurisdiction over any Limited Partner's I-526 Petition or I-829 Petition. Each Limited Partner agrees to supply a Form G-28 appointing such special immigration counsel to facilitate such response by the Partnership or General Partner; and

(f)     Execute any and all documents necessary to enable the General Partner to carry out powers of the General Partner including but not limited to granting Limited Partnership Property as security for Limited Partnership obligations and sale or conveyance of Limited Partnership Property.

(2)     This power of attorney is a special power of attorney coupled with an interest, is irrevocable, shall survive the death of each Limited Partner and is limited to those matters herein set forth.

## ARTICLE XV
## MISCELLANEOUS

Section 15.01. Amendments. Except as otherwise provided by law, this Agreement may be amended in any respect by the General Partner without the written approval or consent of Limited Partners owning Interests in the Limited Partnership; provided however, that:

(1)     Without the consent of Limited Partners to be adversely affected by the amendment, this Agreement may not be amended so as to change the Capital Contributions required, or rights and interests in profits, losses and distributions of any Partner; and

(2)     In the case of any provision hereof which requires the action, approval or consent of a specified Interest of Limited Partners, such provision may not be amended without the consent of the Limited Partners owning such specified Interests.

Section 15.02. Notices. Any notice, offer, consent or other communication required or permitted to be given or made hereunder shall be in writing and shall be deemed to have been sufficiently given or made when delivered personally to the party (or an officer of the party) to whom the same is directed, or (except in the event of a mail strike) five (5) days after being mailed by first class mail, postage prepaid, if to the Limited Partnership or to the General Partner, to the office described in Section 1.03 hereof, or if to a General Partner or to a Limited Partner, to the address set forth in Exhibit A attached hereto. Any Partner may change his or its address for the purpose of this Section 15.02 by giving notice of such change to the Limited Partnership, such change to become effective on the tenth (10th) day after such notice is given.

Section 15.03. Governing Law; Survival of Rights; Severability of Provisions. This Agreement shall be governed by the internal laws of the State of Colorado and shall, subject to the restrictions on transfer set forth herein, bind and inure to the benefit of the heirs, executors, personal representatives, successors and assigns of the parties hereto. If any provision of this Agreement is held to be invalid, the remainder of this Agreement shall not be affected thereby.

CRC 000207

Section 15.04. Entire Agreement. This Agreement constitutes the entire agreement among the parties and supersedes any prior agreement or understandings among them, oral or written, all of which are hereby cancelled. This Agreement may not be modified or amended other than pursuant to **Section 15.01** hereof.

Section 15.05. Captions; Pronouns. The paragraph titles or captions contained in this Agreement are inserted only as a matter of convenience of reference. Such titles and captions in no way define, limit, extend or describe the scope of this Agreement nor the intent of any provision hereof. All pronouns and any variation thereof shall be deemed to refer to the masculine, feminine or neuter, singular or plural, as the identity of the person or persons may require.

Section 15.06. No Waiver. The failure of any Partner to seek redress for violation, or to insist on strict performance, of any covenant of this Agreement shall not prevent a subsequent act which would have constituted a violation from having the effect of an original violation.

Section 15.07. Counterparts. This Agreement may be executed in several counterparts, each of which shall be deemed an original, but all of which shall constitute one Agreement, binding on all of the parties hereto.

**Signature Page Follows**

CRC 000208

 

 

**IN WITNESS WHEREOF** the parties have executed this Agreement as of the day and year first above written.

**GENERAL PARTNER:**

Colorado Regional Center I, LLC

By: Chester P. Schwartz
Its: Manager

**LIMITED PARTNERS:**

Colorado Regional Center I, LLC

By Chester P. Schwartz, Manager, as attorney-in-fact for the
    Limited Partners listed in Exhibit A attached hereto and
    Incorporated herein

CRC 000209

I-526 Attachment
Part 3: Information About Your Investors
Colorado Regional Center Project Solaris, LLLP Ownership

|  | Petitioner | Ownership Percentage |
|---|---|---|
| 1. | Mr. Seung Mo Kim | 0.6% |
| 2. | Mr. Fuqiang Sun | 0.6% |
| 3. | Mr. Siyuan Huang | 0.6% |
| 4. | Mr. Guohai Wang | 0.6% |
| 5. | Ms. Jie Yang | 0.6% |
| 6. | Ms. Ming Zhao | 0.6% |
| 7. | Mr. Min Zheng | 0.6% |
| 8. | Mr. Guohai He | 0.6% |
| 9. | Mr. Xiaolong Cao | 0.6% |
| 10. | Mr. Rujun Liu | 0.6% |
| 11. | Mr. CheonSoo Yoon | 0.6% |
| 12. | Ms. Juanjiao Zhu | 0.6% |
| 13. | Ms. Lin QIAO | 0.6% |
| 14. | Mr. Zhiwen ZHANG | 0.6% |
| 15. | Ms. Sha WU | 0.6% |
| 16. | Mr. Qi QIN | 0.6% |
| 17. | Mr. Xianhu WU | 0.6% |
| 18. | Mr. Luchuan YE | 0.6% |
| 19. | Ms. Yichen DAI | 0.6% |
| 20. | Mr. Hui CHEN | 0.6% |
| 21. | Mr. Hongbin SHEN | 0.6% |
| 22. | Mr. Feng LING | 0.6% |
| 23. | Ms. Yan LU | 0.6% |
| 24. | Ms. Xiaohe XU | 0.6% |
| 25. | Ms. Yuan BI | 0.6% |
| 26. | Mr. Hao Ying | 0.6% |
| 27. | Mr. Liyang Wang | 0.6% |
| 28. | Ms. Ying XU | 0.6% |
| 29. | Mr. Yong Jun LEE | 0.6% |
| 30. | Ms. Na LI | 0.6% |
| 31. | Ms. Lu LI | 0.6% |
| 32. | Ms. Hong HU | 0.6% |
| 33. | Ms. Yanxia SHEN | 0.6% |
| 34. | Mr. Zhong LIU | 0.6% |
| 35. | Ms. Ji Sun LEE | 0.6% |
| 36. | Ms. Lin SONG | 0.6% |
| 37. | Mr. Sheng YUAN | 0.6% |
| 38. | Mr. Shaowu KONG | 0.6% |
| 39. | Mr. Yuwei DONG | 0.6% |
| 40. | Ms. Xinping GENG | 0.6% |
| 41. | Mr. Youwei ZHANG | 0.6% |
| 42. | Mr. Dapeng WANG | 0.6% |
| 43. | Mr. Kewen ZHOU | 0.6% |

Page 1 of 4

CRC 000210

I-526 Attachment
Part 3: Information About Your Investors
Colorado Regional Center Project Solaris, LLLP Ownership

| 44. | Mr. Yi DING | 0.6% |
|-----|-------------|------|
| 45. | Mr. Jie RONG | 0.6% |
| 46. | Ms. Jiaqi YUAN | 0.6% |
| 47. | Mr. Ruolin DONG | 0.6% |
| 48. | Mr. Jae Seok HUR | 0.6% |
| 49. | Mr. Xuqun LIU | 0.6% |
| 50. | Ms. Xiaohong ZHANG | 0.6% |
| 51. | Ms. Na-na MA | 0.6% |
| 52. | Mr. Li XU | 0.6% |
| 53. | Mr. Lian SHEN | 0.6% |
| 54. | Ms. Xiaomei WANG | 0.6% |
| 55. | Mr. Yue WU | 0.6% |
| 56. | Ms. Mingxiu HAO | 0.6% |
| 57. | Mr. Tao JIANG | 0.6% |
| 58. | Mr. Linjie LUO | 0.6% |
| 59. | Mr. Ilyong KIM | 0.6% |
| 60. | Mr. Zhen HUANG | 0.6% |
| 61. | Ms. Rong Zhu | 0.6% |
| 62. | Ms. Weihua SHI | 0.6% |
| 63. | Mr. Wen CHEN | 0.6% |
| 64. | Ms. Xuyan SHAO | 0.6% |
| 65. | Ms. Yang LI | 0.6% |
| 66. | Mr. Yue Li | 0.6% |
| 67. | Ms. Beilei HUANG | 0.6% |
| 68. | Ms. Yuping YIN | 0.6% |
| 69. | Ms. Xue HAN | 0.6% |
| 70. | Mr. Wei WANG | 0.6% |
| 71. | Mr. Jun ZHANG | 0.6% |
| 72. | Ms. Haibo YU | 0.6% |
| 73. | Mr. Chengyu XU | 0.6% |
| 74. | Ms. Ling ZHANG | 0.6% |
| 75. | Mr. Zhou MEI | 0.6% |
| 76. | Ms. Yufang WU | 0.6% |
| 77. | Mr. Xiao LIANG | 0.6% |
| 78. | Ms. Yan AI | 0.6% |
| 79. | Mr. Kaiyuan WU | 0.6% |
| 80. | Ms. Lei GU | 0.6% |
| 81. | Ms. Yu ZHAO | 0.6% |
| 82. | Mr. Xiaofeng LIANG | 0.6% |
| 83. | Ms. Yulan ZHOU | 0.6% |
| 84. | Ms. Eunjeong KIM | 0.6% |
| 85. | Mr. Weiqiang SU | 0.6% |
| 86. | Mr. Naidong LIU | 0.6% |
| 87. | Mr. Ji MA | 0.6% |

Page 2 of 4

I-526 Attachment
Part 3: Information About Your Investors
Colorado Regional Center Project Solaris, LLLP Ownership

| 88. | Mr. Jungwoo LEE | 0.6% |
|---|---|---|
| 89. | Ms. Yan SONG | 0.6% |
| 90. | Ms. Sufen LENG | 0.6% |
| 91. | Mr. Chunyi ZOU | 0.6% |
| 92. | Mr. Lei ZHANG | 0.6% |
| 93. | Ms. Zheng TAO | 0.6% |
| 94. | Ms. Xue MEI | 0.6% |
| 95. | Mr. Shijun CHEN | 0.6% |
| 96. | Ms. Bei YU | 0.6% |
| 97. | Mr. Yudong CAO | 0.6% |
| 98. | Ms. Qin ZHOU | 0.6% |
| 99. | Ms. Quanzhi DING | 0.6% |
| 100. | Ms. Lijun SUN | 0.6% |
| 101. | Ms. Hongyan HUANG | 0.6% |
| 102. | Ms. Xiaolin LIU | 0.6% |
| 103. | Mr. Guanou LI | 0.6% |
| 104. | Mr. Xun ZHU | 0.6% |
| 105. | Ms. Yu ZHANG | 0.6% |
| 106. | Mr. Yibo BAO | 0.6% |
| 107. | Mr. Yuquan NI | 0.6% |
| 108. | Ms. Jingwen ZHANG | 0.6% |
| 109. | Mr. Wentao LIU | 0.6% |
| 110. | Ms. Dong YE | 0.6% |
| 111. | Mr. Haifeng CHEN | 0.6% |
| 112. | Mr. Zhuo YANG | 0.6% |
| 113. | Mr. Hesong SUN | 0.6% |
| 114. | Mr. Fan ZHANG | 0.6% |
| 115. | Mr. Zhongzao SHI | 0.6% |
| 116. | Mr. Kang JIN | 0.6% |
| 117. | Ms. Qinfang YU | 0.6% |
| 118. | Ms. Fang SHENG | 0.6% |
| 119. | Ms. Qiushi LI | 0.6% |
| 120. | Ms. Hanying FU | 0.6% |
| 121. | Mr. Yuanzhen LI | 0.6% |
| 122. | Ms. Man YU | 0.6% |
| 123. | Ms. Haowen GUAN | 0.6% |
| 124. | Mr. Tao YUAN | 0.6% |
| 125. | Mr. Zhijian WU | 0.6% |
| 126. | Mr. Li FANG | 0.6% |
| 127. | Mr. Zhenghui LIU | 0.6% |
| 128. | Mr. Jinge HU | 0.6% |
| 129. | Ms. Lu WANG | 0.6% |
| 130. | Ms. Hsinyi WU | 0.6% |
| 131. | Mr. Zhidong WANG | 0.6% |

CRC 000212

I-526 Attachment
Part 3: Information About Your Investors
Colorado Regional Center Project Solaris, LLLP Ownership

| 132. | Mr. Jiujing YU | 0.6% |
|------|----------------|------|
| 133. | Mr. Tian XIA | 0.6% |
| 134. | Mr. Li WEI | 0.6% |
| 135. | Ms. Hui ZHANG | 0.6% |
| 136. | Ms. Mengyao QIU | 0.6% |
| 137. | Ms. Wei WANG | 0.6% |
| 138. | Mr. Jun FAN | 0.6% |
| 139. | Ms. Shengyun HUANG | 0.6% |
| 140. | Mr. Xusheng ZHANG | 0.6% |
| 141. | Mr. Yi LIU | 0.6% |
| 142. | Ms. Ying LI | 0.6% |
| 143. | Mr. Gang LI | 0.6% |
| 144. | Mr. Shunli SHAO | 0.6% |
| 145. | Ms. Yi HOU | 0.6% |
| 146. | Mr. Zhongwei LI | 0.6% |
| 147. | Mr. Qi YANG | 0.6% |
| 148. | Mr. Yong ZHANG | 0.6% |
| 149. | Mr. Mingquan LI | 0.6% |
| 150. | Ms. Xiaoshen WANG | 0.6% |
| 151. | Ms. Meirong HUANG | 0.6% |
| 152. | Ms. Yuan QIAO | 0.6% |
| 153. | Mr. Zhangang LI | 0.6% |
| 154. | Ms. Jianru ZHENG | 0.6% |
| 155. | Ms. Yuzhen WANG | 0.6% |
| 156. | Ms. Xiaoling LI | 0.6% |
| 157. | Mr. Jun LI | 0.6% |
| 158. | Mr. Lei ZHANG | 0.6% |
| 159. | Ms. Hiu Kit Wong | 0.6% |
| 160. | Mr. Dianwen Cui | 0.6% |
| 161. | Mr. Qiu LI | 0.6% |
| 162. | Mr. Herong HUANG | 0.6% |
| 163. | Mr. Yunxia LIU | 0.6% |
| 164. | Ms. Hongbian Ge | 0.6% |
| 165. | Mr. Jun XIE | 0.6% |
| 166. | Colorado Regional Center | 1.00% |

CRC 000213