**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.  1:19-cv-02443-RM-STV;
Consolidated with Civil Action No. 1:19-cv-02637

Li, *et al*.,

  Plaintiffs,

v.

Waveland Ventures, LLC, *et al*.,

  Defendants.

**DEFENDANTS COLORADO REGIONAL CENTER, LLC, COLORADO REGIONAL CENTER I, LLC, AND WAVELAND VENTURES, LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS CUI PLAINTIFFS' THIRD AMENDED VERIFIED COMPLAINT AND LI PLAINTIFFS' THIRD AMENDED COMPLAINT [ECF 203]**

**TABLE OF CONTENTS**

Page

ARGUMENT ........................................................................................................................ 1

    A.    All Direct Claims Asserted by the Li Plaintiffs Have Been Voluntarily Dismissed ................................................................................................... 1

    B.    The Court Should Disregard the Stewart Affidavit attached to the Cui Plaintiffs' Response .................................................................................. 1

    C.    Plaintiffs Fail to State Claims for Fraudulent Misrepresentation and Fraud ......... 2

        1.    Reply to Cui Plaintiffs' Response: Fraud Claim, Count I of CTAC ......... 2

        2.    Reply to Li Plaintiffs' Response: Fraud Claim, (second) Count VII of LTAC ................................................................................................ 5

    D.    Plaintiffs Fail to State Claims for Federal and State Securities Fraud ................... 5

        1.    Reply to Cui Plaintiffs' Response: Securities Fraud, Count V of CTAC ....................................................................................................... 5

        2.    Reply to Li Plaintiffs' Response: Securities Fraud, Counts V and VI of LTAC ................................................................................................ 5

    E.    Plaintiffs Fail to State Claims for Breach of Fiduciary Duty ................................. 7

        1.    Reply to Cui Plaintiffs' Response: Breach of Fiduciary Duty, Count II of CTAC .................................................................................... 7

        2.    Reply to Li Plaintiffs' Response: Breach of Fiduciary Duty, Count I of LTAC ................................................................................................ 8

    F.    Reply to Cui Plaintiffs' Response: Colorado Consumer Protection Act, Count III of CTAC ............................................................................................... 12

    G.    Reply to Cui Plaintiffs' Response: Investment Company Act Claim, Count V of CTAC ................................................................................................ 12

    H.    Plaintiffs Fail to State Claims of Alter Ego/Veil Piercing ................................... 13

        1.    Reply to Cui Plaintiffs' Response: Alter Ego, Count VII of CTAC ........ 13

        2.    Reply to Li Plaintiffs' Response: Veil Piercing, (fourth) Count VII of LTAC .............................................................................................. 13

    I.    Reply to Li Plaintiffs' Response: Civil Theft, Count II of LTAC ....................... 13

    J.    Plaintiffs Fail to State Any Claims against CRC and Waveland ......................... 14

CONCLUSION ................................................................................................................... 15

Defendants Waveland Ventures, LLC, Colorado Regional Center, LLC and Colorado Regional Center I, LLC (the "CRC Entities"), by and through undersigned counsel, hereby submit this Reply in Support of Motion[1] to Dismiss Cui Plaintiffs' Third Amended Verified Complaint ("CTAC") and Li Plaintiffs' Third Amended Complaint ("LTAC")[ECF 203] ("Reply"), stating as follows:

## ARGUMENT

### A. All Direct Claims Asserted by the Li Plaintiffs Have Been Voluntarily Dismissed

After the CRC Entities filed their motion to dismiss [ECF 203], the Li Plaintiffs withdrew and voluntarily dismissed all direct claims for relief asserted in the LTAC. [ECF 210, pp. 1-2]. As such, there are now two plaintiffs left as to the LTAC: Hsin-Yi Wu and Qi Qin. All other Li Plaintiffs have withdrawn and dismissed their claims for relief. According to the caption of the LTAC, the Li Plaintiffs' current five-count derivative action pits Hsin-Yi Wu and Qi Quinn, on behalf of Colorado Regional Center Project Solaris LLLP ("CRCPS"), against "Nominal Defendant" CRCPS. [ECF 121, p. 1 – caption]. Because CRCPS cannot sue itself, the CRC Entities assume the caption is a mistake, and that the derivative claims are actually directed at the Defendants identified in the body of the LTAC (as opposed to the caption of the pleading).

### B. The Court Should Disregard the Stewart Affidavit attached to the Cui Plaintiffs' Response

It is unclear why Brian Stewart, counsel for the Cui Plaintiffs, has chosen to become a

---

[1] The CRC Entities' motion to dismiss [ECF 203] is a single motion to dismiss all but one of Plaintiffs' claims for relief in this consolidated case, filed in compliance with the Court's Civil Practice Standard IV.A and this Court's Order of May 6, 2020 allowing an additional ten pages for "the CRC Defendants' and SPO Defendants' *respective Fed. R. Civ. P. 12 motion."* [ECF 196](emphasis added). The CRC Entities did not file two 30-page motions, as the Cui Plaintiffs claim they should have, because doing so would have violated the Court's Order and resulted in 60 pages of duplicative briefing on the overlapping claims in this consolidated action.

witness in this matter by submitting his own affidavit with the Cui Plaintiffs' response to motion to dismiss, declaring, under oath, that he has "personal knowledge" that CRC I breached fiduciary duties and "conspired to take $82.5 million dollars with no intention of ever repaying it to the Chinese investors." [ECF 213-1 through 213-7].

What is clear, however, is that the Court, in deciding the CRC Entities' Rule 12(b)(6) motion, should disregard and ignore the Stewart Affidavit. *See Butt v. Wright Medical Technology, Inc.*, 2015 WL 4162576, at *2 (D. Colo., July 10, 2015)( in resolving a Rule 12(b)(6) motion, the Court may not consider affidavits submitted in response to the Motion), *citing Silver v. Primero Reorganized Sch. Dist. No. 2,* 619 F. Supp. 2d 1074, 1080 (D. Colo. 2007); *White v. Santomaso*, 2012 WL 364057, at * 3 n. 4 (D. Colo. Feb. 2, 2012).

**C.     Plaintiffs Fail to State Claims for Fraudulent Misrepresentation and Fraud**

Count I of the Cui Plaintiffs' Third Amended Complaint ("CTAC") [ECF 190, ¶¶93-105] and (second) Count VII of LTAC [ECF 121, ¶¶220-235], are for common law fraud. The Cui Plaintiffs' fraud claim is directed at all Defendants, including the CRC Entities. The Li Plaintiffs' fraud claim is directed at Defendant CRCPS [ECF 121, page 52]. Both fraud claims are asserted as direct, not derivative claims.

    **1.     Reply to Cui Plaintiffs' Response: Fraud Claim, Count I of CTAC**

In response to the CRC Entities' argument that the CTAC fraud claim fails to satisfy the heightened pleading requirements of Rule 9(b) because of the insufficient allegations of false or misleading statements, reliance and scienter [ECF 203, pp. 9-15], the Cui Plaintiffs do not dispute that the specific material misrepresentations and omissions in support of their fraud claim are set forth in paragraphs 56, 66, 68, 79, 73 and 74 of the CTAC. Nor do the Cui Plaintiffs

2

address the CRC Entities' arguments under the "bespeaks caution" doctrine, or the effect of the numerous disclaimers made by Plaintiffs as they became CRCPS limited partners. Nor do the Cui Plaintiffs even deny that their allegations are in fact conclusory and non-specific. [Motion, ECF 203, pp. 9-15]. Instead, the Cui Plaintiffs cite to a case they call "*Rockefellar Ctr. Props. Sec. Litig. v. Rockefellar*, 311 F.3d 198" for the proposition that where it can be shown that the requisite factual information is peculiarly within the defendant's knowledge or control, the rigid requirements of Rule 9(b) may be relaxed. [ECF 213, p. 8].

The Cui Plaintiffs apparently meant to cite to *In re: Rockefeller Center Properties, Inc.*, 311 F.3d 198 (3rd Cir. 2002). In *Rockefeller*, the Third Circuit affirmed the district court's dismissal of securities fraud claims, finding that the plaintiffs failed to meet the heightened pleading requirements set forth in Rule 9(b) and the Private Securities Litigation Reform Act of 1995, 15 U.S.C § 78u-4(b)(1) ("PSLRA"). *Rockefeller*, 311 F. 3d at 205. In *Rockefeller*, the Third Circuit painstakingly reviewed each specific allegation of fraud made by plaintiffs, as had the district court before it. The specific fraud allegations in *Rockefeller* were significantly more specific than those in the CTAC (and the LTAC), yet the Third Circuit found them insufficient, holding that "Rule 9(b) requires, at a minimum, that plaintiffs support their allegations of securities fraud with all of the essential factual background that would accompany "the first paragraph of any newspaper story – that is, the 'who, what, when and how" of the events at issue."  *Id.* at 217 (citations omitted).

The Cui Plaintiffs' suggestion that Rule 9(b) should be relaxed or disregarded because it is somehow undisputed that CRC I is the *only* party who possesses actual knowledge of documents and presentations made to the Cui Plaintiffs is clearly incorrect and belied by the fact

3

that all of the Cui Plaintiffs verified the allegations in the CTAC, under oath and based on personal knowledge. [ECF 190, pp. 35-50]. But the Cui Plaintiffs have not even attempted to identify any of the critical *specific* facts that led to them becoming CRCPS limited partners, choosing instead to make conclusory and non-specific accusations. Paragraph 65 of the CTAC, for instance, at least appears to be the lynchpin of the Cui Plaintiffs' fraud claim. Even though the Cui Plaintiffs do not expressly rely on paragraph 65 in support of their fraud claim [ECF 190, ¶94], it is by far the longest paragraph and most comprehensive *effort* to assert fraud. [ECF 190, ¶65]. In paragraph 65, the Cui Plaintiffs characterize an alleged PowerPoint presentation by an unidentified alleged "agent" of CRC I. There are no allegations, however, of who actually made the alleged presentation, when it was made, or even who attended the alleged presentation and whether any of the Plaintiffs relied on the alleged presentation.

In response to the CRC Entities' argument that their fraud claim is time barred, the Cui Plaintiffs claim that under either a three-year or five-year statute of limitations their fraud claim falls within the statute of limitations because there was a continuing fraud that was ongoing until January 30, 2020 – the maturity date of the final loan advance to SPO I. [ECF 213, pages 6-7]. First, the statute of limitations for fraud claims in Colorado is three, not five years. C.R.S. § 13-80-101(c) and (f).[2] Second, the Cui Plaintiffs actually pled a claim for fraudulent *inducement*, alleging that the Cui Plaintiffs were provided misleading documents and information in order to induce them to become limited partners in CRCPS. [ECF 190, ¶¶56, 66, 68, 70, 73, 74, 94-102].

---

[2] The statute of limitations for constructive fraud discussed in *Elk River Associates v. Huskin*, 691 P.2d 1148, 1152 (Colo. App. 1984) – the 1984 version of C.R.S. § 13-80-114 - was repealed 34 years ago. "Under Colorado law, actions for breach of fiduciary duty and constructive fraud are subject to a three-year statute of limitations." *Cypress Advisors, Inc. v. Davis*, 2017 WL 3116289, at * 10 (D. Colo. July 21, 2017), citing C.R.S. § 1380-101(1)(f).

The fraudulent actions alleged by the Cui Plaintiffs necessarily occurred before 2012, and the Cui Plaintiffs were thus put on inquiry notice at least by 2012, as they were presumed to have read the offering documents and information related to their investments. [ECF 203, pp. 7-8].

### 2. Reply to Li Plaintiffs' Response: Fraud Claim, (second) Count VII of LTAC

The Li Plaintiffs have voluntarily dismissed their common law fraud claim. [ECF 210, pp. 1-2].

### D. Plaintiffs Fail to State Claims for Federal and State Securities Fraud

Count V of the CTAC refers, in paragraph 123 to 15 U.S.C. § 78j, perhaps indicating that the Cui Plaintiffs intended to assert a claim of federal securities fraud against all Defendants, including the CRC Entities. [ECF 190, ¶¶120-24]. The Li Plaintiffs clearly allege federal securities fraud in Count V of the LTAC. [ECF 121, Count V, ¶¶181-196]. And the Li Plaintiffs also allege, in Count VI of the LTAC, a claim for state securities fraud under C.R.S. § 11-5-101, *et seq*. The Li Plaintiffs' securities fraud claims are directed at CRC I. [ECF 121, p. 42]. The Cui Plaintiffs assert their federal securities claim as a direct, not derivative, claim. The Li Plaintiffs assert their federal and state securities claims as derivative, not direct, claims.

### 1. Reply to Cui Plaintiffs' Response: Securities Fraud, Count V of CTAC

The Cui Plaintiffs do not address any of the CRC Entities' arguments as to why the Cui Plaintiffs' apparent claim for federal securities fraud should be dismissed, simply saying that "Defendants may be held liable under 15 U.S.C. § 78t." [ECF 213, pp. 10-11].

### 2. Reply to Li Plaintiffs' Response: Securities Fraud, Counts V and VI of LTAC

The Li Plaintiffs do not address the CRC Entities' argument that the Li Plaintiffs' fail to state a claim for federal and state securities fraud because those claims are asserted derivatively –

5

that is, on behalf of CRCPS. Again, this claim makes no sense as a derivative claim and the Li Plaintiffs have withdrawn and dismissed their direct claims. [ECF 203, p. 19].

In response to the CRC Entities' argument that the Li Plaintiffs' federal and state securities fraud claims are time-barred under the applicable federal and state statutes of limitations and repose [ECF, 203, pp. 15-16], the Li Plaintiffs contend that there were two securities offerings which trigger separate limitations periods: the first offering in 2012, and a second "offering" whereby CRCPS limited partners were permitted to "put" back their limited partnership interests in CRCPS to CRCPS. [ECF 210, pp. 18-19]. The only allegations in the LTAC regarding what the Li Plaintiffs describe as a second "securities offering" are in paragraphs 186-90. [ECF 121, pp. 43-44]. In these paragraphs the Li Plaintiffs summarily contend – with no elaboration - that when CRCPS gave limited partners the opportunity to put their interests back to CRCPS that opportunity was a securities offering. *Id.* In their response, the Li Plaintiffs make no effort to further describe this alleged second securities offering, nor do they provide any legal analysis in support of their position. [ECF 210, pages 18-19]. Even if the provision to the CRCPS limited partners of an opportunity to liquidate their investment – in response to the requests from many limited partners to do just that – could possibly be considered a securities offering (and it cannot), the Li Plaintiffs did not *exercise* that opportunity. They did not allege in the LTAC that they took CRCPS up on the offer to put, because in fact they did not do so. In sum, the Li Plaintiffs do not allege – because they cannot allege – that they, or CRCPS, purchased a security by exercising the put opportunity. [ECF 203, pp. 15-16].

In response to the CRC Entities' argument that the Li Plaintiffs fail to state a claim for federal and state securities fraud, the Li Plaintiffs respond: "Oh really? Let's see if the Li

6

Plaintiffs do not even attempt to identify specific misrepresentations or omissions." The Li Plaintiffs then cite every allegation in the LTAC that they claim is pled with the requisite specificity under Rule 9(b) and the PSLRA, beginning with paragraph 83, which alleges, very generally, that the entire transaction was "fraudulent and incompetent." [ECF 210, page 9; ECF 121, ¶83]. All of the examples cited by the Li Plaintiffs are conclusory, non-specific and thus deficient under Rule 9(b) and the PSLRA. [Motion, ECF 203, pp. 9-19; *see also* SPO Defendants' motion to dismiss, ECF 224, pp. 11-20].

### E. Plaintiffs Fail to State Claims for Breach of Fiduciary Duty

Count II of the CTAC [ECF 190 ¶¶ 106-110] and Count I of the LTAC [ECF 121, ¶¶ 113-130] are breach of fiduciary duty claims against CRC 1, the general partner of CRCPS. The Cui Plaintiffs assert their breach of fiduciary duty claim as *both* an individual and derivative claim, and the Li Plaintiffs assert their breach of fiduciary duty claim as a derivative, not direct, claim.

#### 1. Reply to Cui Plaintiffs' Response: Breach of Fiduciary Duty, Count II of CTAC

The Cui Plaintiffs do not address the CRC Entities' argument that the Cui Plaintiffs' breach of fiduciary duty claim can only be a derivative, not a direct, claim. [ECF 203, p. 19, footnote 5].

In response to the CRC Entities' arguments that the Cui Plaintiffs lack standing to assert the alleged breaches of fiduciary duty identified in their Complaint because those alleged breaches occurred *prior* to their investments and also because the claim is time-barred, [ECF 203, pp. 20-21], the Cui Plaintiffs argue that despite the manner in which they pled the breach of fiduciary duty claim in the CTAC, the breach of fiduciary duty they have alleged is actually

7

an intricate and ongoing series of actions. [ECF 213, p. 9]. The Cui Plaintiffs argue, citing no legal support or even explanation, that the CRC Entities' filing of their motion to dismiss constitutes a breach of fiduciary duty by CRC I "and perhaps its counsel." [ECF 213, p. 9]. Other than making repeated ad hominem attacks on CRC I and its counsel, the Cui Plaintiffs do not even attempt to explain how they have standing to assert the breach of fiduciary duties that they *pled* – all of which preceded the existence of CRCPS and all of which are literally identical to the acts that the Cui Plaintiffs describe as acts of fraudulent inducement. [ECF 190, ¶109, which in turn incorporates ¶¶56, 66, 68, 70, 73 and 74].

In response to the CRC Entities' argument that the Cui Plaintiffs' breach of fiduciary duty claim is barred by the economic loss doctrine [ECF 203, p. 22], the Cui Plaintiffs claim that *Tuchman v. Pell Rudman Trust Co.*, 245 F. Supp, 2d 1156 (D. Colo. 2003) is "wholly inapplicable," and accuse the CRC Entities of attempting to misdirect the Court with "smoke and mirrors." [ECF 213, p. 10]. Because the Li Plaintiffs raise similar arguments on the economic loss doctrine, the CRC Entities will further address the *Tuchman* decision in the following section.

**2.     Reply to Li Plaintiffs' Response: Breach of Fiduciary Duty, Count I of LTAC**

The Li Plaintiffs do not respond to the CRC Entities' argument that they lack standing to assert breach of fiduciary against the CRC Entities for alleged acts that occurred *prior* to their investments. [ECF 203, pp. 21-22; ECF 210, pp. 14-16]. Indeed, the Li Plaintiffs reiterate that the breach of fiduciary duty they have asserted against CRC I is based on the pre-investment time frame – specifically, the creation of a deal structure that was "set up to fail." [ECF 210, p. 15].

8

Nor do the Li Plaintiffs respond to the CRC Entities' argument that the allegations of post-investment breach of fiduciary duty fail to state a claim in light of the Agreement Regarding Collateral Units ("ARCU"). [ECF 203, pp. 21-22 and Exhibit G].

In response to the CRC Entities' argument that the breach of fiduciary claim is barred by the economic loss doctrine [ECF 203, p. 22], the Li Plaintiffs, like the Cui Plaintiffs, insist that the economic loss doctrine is not applicable. [ECF 210, pp. 16-17; ECF 213, p. 10]. As the CRC Entities argued in their motion, Plaintiffs' breach of fiduciary duty claims are barred by the economic loss doctrine because the duties they allege were breached—even if independent—are also imposed by the CRCPS Limited Partnership Agreement ("LPA"). [ECF 203, p. 20] Neither the Li Plaintiffs nor the Cui Plaintiffs cite any authority or provide any analysis to support their position that the economic loss doctrine does not apply here. [ECF 210, pp.16-17; ECF 213, p.10]. And their position is contradicted by Colorado law on the economic loss doctrine.

Specifically, where, like here, the duty of care alleged to have been breached is "'memorialized' in the contract, … the economic loss rule bars the tort claim*." Casey v. Colo. Higher Educ. Ins. Benefits Alliance Trust*, 310 P.3d 196, 202 (Colo App. 2012) (citation omitted); *see id.* at 204 (citing *BRW, Inc. v. Dufficy & Sons, Inc.*, 99 P.3d 66, 74 (Colo. 2004); *Action Nissan, Inc. v. Hundai Motor Am.*, 617 F. Supp. 2d 1177, 1192-93 (M.D. Fla. 2008); *Micale v. Bank One*, 382 F. Supp. 2d 1207, 1221-22 (D. Colo. 2005)) (Where a complaint alleges breach of "contractually imposed fiduciary duties," which are "memorialized" in the contract, the economic loss rule bars the tort claim for breach of fiduciary duty.). The economic loss doctrine applies even if the duty otherwise would be imposed in the absence of a contract. *See BRW, Inc.*, 99 P.3d at 74-75; *A Good Time Rental, LLC v. First Am. Title Agency, Inc.*, 259

9

P.3d 534, 537 (Colo. App. 2011) ("[E]ven a duty separately recognized under tort law is not independent if it is also imposed under the parties' contract.") (citations omitted); *Benton v. Avedon Engineering, Inc.*, 2012 WL 5866303, at *5 (D. Colo. Nov. 19, 2012) (finding breach of fiduciary duty claim barred by the economic loss rule because the "duties that allegedly created fiduciary relationship are in substance the same as the contractual duties … [a]s such, they did not create a fiduciary relationship or fiduciary duties independent of the contract").

While the Li Plaintiffs claim in their Response that "there are two distinct sources of fiduciary duties here: contractual and statutory," they acknowledge that the "Limited Liability Partnership Agreement ('LPA') *expressly says* that the GP owes fiduciary duties of 'skill, care, and business judgment' and *expressly requires* them [sic] to safeguard and protect the partnership property." [ECF 210, p.14] (emphases added) (citing ECF 121, ¶ 114). These duties—expressly set forth in the LPA—are precisely the duties that Plaintiffs assert were breached by CRC I, as general partner. [ECF 121, pp. 32-35] (alleging breach of fiduciary duty "arising by Contract and Statute" and seeking economic "Damages," defined as "the shortfall between what [CRCPS] would have received in [sic] the Loan had been paid in cash versus the value of what it actually received"); [ECF 190 at pp. 24-25] (alleging breach of fiduciary duties in the management and administration of the investment and alleging "significant damages" as a result). The Li Plaintiffs themselves question whether they "are even asserting a free-floating independent tort separate from the contract, since Count I says that the fiduciary duties of the GP are derived both from the LPA (a contract) and from the Colorado Uniform Limited Partnership Act (which governs limited partnerships, creatures of contract)."[ECF 210, pp. 16-17]. Regardless of whether Plaintiffs have alleged the existence of independent fiduciary duties, the

10

bottom line is that those same duties are imposed by, and expressly memorialized in, the LPA. [ECF 210, p. 14; ECF 121-3, §§ 8.04 and 8.06]. As a result, Plaintiffs' breach of fiduciary duty claims are barred by the economic loss doctrine and should be dismissed as a matter of law.

The Li Plaintiffs' argument that the economic loss doctrine does not bar their fiduciary duty claim because "that doctrine is intended to prevent a plaintiff from recovering twice under different theories – once under contract and once under tort" is incorrect. [ECF 210, p.16]. The economic loss doctrine "is designed to serve three purposes: (1) to maintain a distinction between contract and tort law; (2) to enforce expectancy interests of the parties so that they can reliably allocate risks and costs during their bargaining; and (3) to encourage the parties to build the cost considerations into the contract because they will not be able to recover economic damages in tort." *BRW, Inc.*, 99 P.3d at 72; *see also United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 210 F.3d 1207, 1226 (10th Cir. 2000), aff'd, 532 U.S. 588, 121 S. Ct. 1776, 149 L. Ed. 2d 845 (2001) ("The economic loss rule is designed to preclude plaintiffs from circumventing the law of contract and seeking recovery in tort for what in essence is merely a claim of damages for breach of contract.").

The Li Plaintiffs, like the Cui Plaintiffs, question the CRC Entities' reliance on *Tuchman* but the CRC Entities cited *Tuchman* in their Motion because that case discusses the applicability of Colorado's economic loss doctrine as a bar to tort claims even where, like here, there exist duties of care imposed by law. *See Tuchman v. Pell Rudman Trust Co.*, 245 F. Supp. 2d 1156, 1159 (D. Colo. 2003). According to the court in *Tuchman*, "[t]he salient inquiry is into the nature of the obligations assumed: if they are the same as or subsume the duties of care imposed by law, then the duty of care imposed in tort is no longer 'independent' of that agreed to in

11

contract." *Id*. Although the *Tuchman* court declined to dismiss the breach of fiduciary duty claim at the Rule 12 stage, the court ruled that if plaintiff established the existence of an enforceable contract with defendant, the tort claims would be dismissed as barred by the economic loss doctrine. *Id*. at 1160. Here, the existence and enforceability of the LPA is not challenged[3], and thus, dismissal of Plaintiffs' breach of fiduciary duty claims at this stage pursuant to the economic loss doctrine is appropriate. *BRW, Inc.*, 99 P.3d at 73-75; *see also Rosania v. Group O, Inc.*, 2014 WL 679884, at *6 (D. Colo. Feb. 20, 2014) (adopting recommendation and granting defendant's motion to dismiss plaintiff's claim for breach of fiduciary duties as barred by Colorado's economic loss rule).

F.   **Reply to Cui Plaintiffs' Response: Colorado Consumer Protection Act, Count III of CTAC**

Count III of the CTAC is for alleged violation of the Colorado Consumer Protection Act, C.R.S. § 6-1-101 *et seq*. ("CCPA"), asserted against all Defendants. [ECF 190, ¶¶111-16]. The Cui Plaintiffs do not say whether this is asserted as a derivative or direct claim. In any event, the Cui Plaintiffs do not attempt to address the CRC Entities' motion to dismiss this claim. [ECF 203, p. 22-23].

G.   **Reply to Cui Plaintiffs' Response: Investment Company Act Claim, Count V of CTAC**

Count IV of the CTAC is a claim for rescission under the Investment Company Act, 15 U.S.C. § 80a, *et seq.* ("ICA"). [ECF 190, ¶¶ 117-19]. In response to the CRC Entities' argument that there is no private right of action under this statute, the Cui Plaintiffs seem to suggest that the CRC Entities have admitted that they illegally and improperly employed and directed people

---

[3] To the contrary, the CRC Entities' counterclaim against the Li Plaintiffs *affirms* the LPA and seeks a declaratory judgment under its terms. [ECF 204, pp. 32-41].

12

in China to solicit the sale of securities. [ECF 213, p. 10]. This, of course, is completely untrue and unsupported. The CRC Entities admit no such thing. In any event, the Cui Plaintiffs do not address the actual issue – which is whether there is a private right of action under the ICA. There is not. [ECF 203, pp. 23-26].

**H.     Plaintiffs Fail to State Claims of Alter Ego/Veil Piercing**

Count VII of the CTAC [ECF 190, ¶¶ 145-49] and the (fourth) Count VII of the LTAC [ECF 121, ¶¶ 246-51] allege generally that the Court should pierce the corporate veil of CRC 1 and enter judgment against individual owners and members of CRC 1. [ECF 190, ¶¶145-49; ECF 1221, ¶¶246-51]. The Cui Plaintiffs do not identify whether their alter ego claim is direct or derivative.  The Li Plaintiffs assert their veil piercing claim as a direct claim. [ECF 121, p. 53].

**1.     Reply to Cui Plaintiffs' Response: Alter Ego, Count VII of CTAC**

The Cui Plaintiffs do not meaningfully respond to the CRC Entities' arguments in favor of dismissal of their alter ego claim, other than to ask for discovery so they can explore whether they can allege any facts in support of this claim. [ECF 213, p. 11-12].

**2.     Reply to Li Plaintiffs' Response:  Veil Piercing, (fourth) Count VII of LTAC**

The Li Plaintiffs have conceded and voluntarily dismissed their veil piercing claim (fourth) Count VII of the LTAC. [ECF 210, pp. 1-2].

**I.     Reply to Li Plaintiffs' Response: Civil Theft, Count II of LTAC**

Count II of the LTAC is for civil theft under C.R.S. § 18-4-405 (or 205), asserted by the Li Plaintiffs as a derivative claim against CRC and the SPO Defendants. [ECF 121, ¶¶131-49]. In response to the CRC Entities' argument that the LTAC does not contain sufficient facts in support of this claim, the Li Plaintiffs argue that CRC Entities created a false impression to get

13

investors to part with their money, then later failed to fully collateralize and collect the loan. [ECF 210, pp. 17-18]. The Li Plaintiffs' very description of their civil theft claim is an admission that the claim, if it is a clam, must be *direct*, and not derivative: the Li Plaintiffs are alleging that the CRC Entities induced them to part with *their* money – their individual investments. But the Li Plaintiffs have dismised their direct claims.

In addition, the Li Plaintiffs cite to no specific allegations in the LTAC that support the elements of a civil theft claim, including, for instance the specific intent to permanently deprive plaintiff of the benefit of property. [ECF 203, p. 29]. As the SPO Defendants point out in their motion to dismiss [ECF 224], despite Plaintiffs' repeated accusation of theft directed at all Defendants and their counsel, nothing has happened to their investment. In lieu of a cash payment on the loan that CRCPS extended, CRCPS was tendered and controls the disposition of the collateral – condominium units – securing the loan. [ECF 224, p. 2; pp. 8-9; p. 17]; [ECF 203, p. 29]. Because the Li Plaintiffs have not plausibly alleged that CRC obtained control over CRCPS property with intent to permanently deprive CRCPS of such property, the civil theft claim should be dismissed. *See Western State Bank v. Cosey, LL.C.,* 2019 WL 5694271, at * 3 (D. Colo. Nov. 4, 2019).

### J. Plaintiffs Fail to State Any Claims against CRC and Waveland

In their motion to dismiss, the CRC Entities argued that neither the CTAC or the LTAC allege anything at all with specificity as to CRC and Waveland, and that both complaints completely fail to state claims against these Defendants. [ECF 203, pp. 29-30]. The Cui Plaintiffs did not respond to this argument and do not even hint at how they have possibly asserted any claims against CRC and Waveland. [ECF 213]. The Li Plaintiffs, on the other hand,

14

argue that Colorado law permits veil piercing [ECF 210, page 11-13] – both ignoring the fact that veil piercing is a procedure to enforce an underlying judgment [ECF 203, page 27], and also apparently forgetting that they have withdrawn and dismissed their veil piercing claim. [ECF 210, page 1-2].

## **CONCLUSION**

For the foregoing reasons the CRC Entities respectfully request that the Court grant their motion to dismiss [ECF 203].

Dated:  June 12, 2020

/ *James D. Kilroy*
James D. Kilroy
Stephanie A. Kanan
SNELL & WILMER L.L.P.
1200 Seventeenth Street, Suite 1900
Denver, CO 80202-5854
Phone: (303) 634-2000
Fax: (303) 634-2020
Email:  jkilroy@swlaw.com
Email:  skanan@swlaw.com

***Counsel for Defendants Colorado Regional Center LLC, Colorado Regional Center I, LLC, Waveland Ventures, LLC***

**CERTIFICATE OF SERVICE**

   This is to certify that on June 12, 2020, a true and correct copy of the above and foregoing document has been electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record:


Douglas Litowitz
413 Locust Place
Deerfield, IL  60015

Hubert Kuo
Brian P. Stewart
Ardent Law Group
4340 Von Karman Avenue, Suite 290
Newport Beach, CA  92660

Harold A. Haddon
Ty Gee
Haddon Morgan and Foreman, P.C.
150 East 10th Avenue
Denver, CO  80203

              */s/Amy Kovarsky*
              for Snell & Wilmer L.L.P.