# EXHIBIT B

```
 1                 IN THE UNITED STATES DISTRICT COURT

 2                     FOR THE DISTRICT OF COLORADO

 3
       Civil Action No. 19-cv-02443-STV
 4

 5      JUN LI, QI QIN, YI LIU, JIE YANG,
        YUQUAN NI, ZHONGZAO SHI, FANG SHENG,
 6      SHUNLI SHAO, KAIYUAN WU, ZHIJIAN WU,
        ZHONGWEI LI, SA WU, FAN ZHANG, LIN QIAO,
 7      JINGE HU, RUJUN LIU, YING XU, LU LI, and
        YUWEI DONG, individually, as well as
 8      derivatively for COLORADO REGIONAL CENTER
        PROJECT SOLARIS LLLP,                                  REDACTED
 9
                Plaintiffs,
10
                vs.
11
        WAVELAND VENTURES LLC,
12      COLORADO REGIONAL CENTER PROJECT SOLARIS
        LLLP, COLORADO REGIONAL CENTER,
13      COLORADO REGIONAL CENTER I LLC,
        SOLARIS PROPERTY OWNER LLC,
14      SOLARIS PROPERTY OWNER I LLC, and
        PETER KNOBEL,
15
                Defendants.
16
      -----------------------------------------------------------------
17
             TRANSCRIPT OF ELECTRONICALLY RECORDED PROCEEDINGS
18                              MOTION HEARING

19    -----------------------------------------------------------------

20           Proceedings before the HONORABLE SCOTT T. VARHOLAK,
      Magistrate Judge, United States District Court for the
21    District of Colorado, commencing at 9:22 a.m. on the 22nd day
      of October, 2019, in Courtroom A402, Alfred A. Arraj United
22    States Courthouse, Denver, Colorado.

23
      Transcriber:  JULIE H. THOMAS
24                  901 19th Street, Room A256
                    Denver, CO 80294
25                  (303)335-2111

            Proceedings recorded by electronic recording device;
                   transcription produced via computer.
```

```
19-cv-02443-STV                                              10/22/19    2
```

1                             APPEARANCES

2  For the Plaintiffs:
   DOUGLAS ELIOT LITOWITZ, LAW OFFICE OF DOUGLAS LITOWITZ,
3  413 Locust Place, Deerfield, IL 60015

4  For the Defendant CRC Entities:
   JAMES D. KILROY and STEPHANIE A. KANAN, SNELL & WILMER L.L.P.,
5  1200 Seventeenth Street, Suite 1900, Denver, CO 80202-5854

6  For the Defendants SPO LLC and Knobel:
   TY GEE, HADDON MORGAN AND FOREMAN, P.C., 150 East 10th Avenue,
7  Denver, CO 80203

8                   *     *     *     *     *

9                          I N D E X

10  DEFENDANTS' WITNESS                                           PAGE

11  DONALD RICK HAYES
        Direct - Mr. Kilroy                                          9
12      Cross - Mr. Litowitz                                        57
        Redirect - Mr. Kilroy                                       79
13      Cross - Mr. Gee                                             80
        Further Redirect - Mr. Kilroy                               80
14

15              DEFENDANTS'
                EXHIBITS                          RECEIVED
16
                    1                                15
17
                    3                                30
18
                    5                                31
19
                    2                                36
20
                    4                                37
21
                    6                                38
22
                   11                                52
23
                   12                                53
24
                   13                                54
25
                   14                                55

Julie H. Thomas, RMR, CRR                              (303)296-3056

1   been totally unencumbered.
2   Q.   Let's -- before we get there -- I'll get to that, but
3   we've now referenced the put right and call right.  What
4   happened at the three-year mark when the parties,
5   borrower/lender, each had that put and call right?  What
6   actually happened?
7   A.   The lender notified us of their intent to tender the units
8   to us.
9   Q.   In what time period is that?
10  A.   That would have been three years after -- well, it was
11  probably a few months before the third anniversary of the
12  first loan advance.
13  Q.   Okay.  March, April 2015?  Does that time frame sound
14  right?
15  A.   Correct.
16  Q.   So the borrower puts the properties to the lender.  The
17  Court has seen, through the filings, that the title to the
18  properties didn't go to CRCPS.  Is that accurate?
19  A.   That is accurate.
20  Q.   Why?  First tell us why, and then tell us how we got
21  there.
22  A.   Um, it's really just a question of cost and what we felt
23  was in the best interest of the investors.  Um, were we to
24  transfer title, um, to the limited partnership versus holding
25  a deed of trust, the cost of that exercise would have

1  approximated a million dollars.  Um, there's a 1 percent
2  transfer tax in the Town of Vail.  We would have had to pay --
3  you know, prepay three months of HOA dues.  In fact, it would
4  have caused us then to go out and insure the various units
5  which, you know, which was being insured at the time -- you
6  know, was being insured by SPO.
7          So we made a business judgment that, um, basically
8  entailed not incurring a million dollars of partnership
9  expenses to take title versus holding a first deed of trust,
10 that our security position was such that it just simply didn't
11 merit taking title of the properties.
12 Q.   In other words, the security position remains the first
13 position.
14 A.   Correct.
15 Q.   Let me restate it to make sure we've got it.
16          SPO entered into an agreement with CRCPS that,
17 notwithstanding the put, SPO would retain title; correct?
18 A.   Correct.
19 Q.   And ultimately the objective was to liquidate or sell
20 these units; correct?
21 A.   The objective never changed.  It was just basically, in
22 our opinion, form over substance in taking title to the units
23 and burdening the partnership with a million dollars of
24 expenses that given that we held a first security interest in
25 the real estate underlying the loan, it simply didn't make any

1  sense to incur that expense.
2  Q.  Let me make it really simple.  If SPO had transferred
3  title to CRCPS, CRCPS then transfers title to a third-party
4  purchaser, there would be a $1 million consequence?
5  A.  Correct.
6  Q.  If SPO holds title and conveys to the ultimate purchaser,
7  there would not be a million-dollar hit?
8  A.  Correct.
9  Q.  And that's why you did it?
10 A.  Correct.
11 Q.  For the first time you've used the term "business
12 judgment."  Tell us why that decision was in the best
13 interests of the limited partnership.
14 A.  Well, ultimately when a unit is sold, it doesn't --
15 there's no creation of more risk for the partnership relative
16 to the spending of a million dollars of monies that, in our
17 judgment, was not necessary.
18 Q.  Who would have taken that million-dollar hit had you just
19 gone ahead and taken title?
20 A.  All the investors.
21 Q.  To the tune of a million dollars?
22 A.  Correct.
23 Q.  As we sit here today, is SPO willing to transfer the
24 properties directly to a final purchaser so that that million
25 dollars is not incurred?

1  A.  Yes, and we have done it twice.
2  Q.  And if they don't, CRCPS has the first deed of trust on
3  all those properties; correct?
4  A.  Correct.
5  Q.  So taking us through -- this hasn't been cleared up yet.
6  We started with -- as I understand it, 19 units were pledged
7  as collateral by SPO.  Correct?
8  A.  Yes.
9  Q.  We are now talking about 17.  What happened to those other
10 two?  You started to mention this.
11 A.  We were approached by, um, initially a group of eight
12 investors that wanted to tender their partnership interests
13 for a specified condo unit and then have the right to either
14 keep, sell, dispose, whatever they wanted to do with that
15 condominium unit.  And then we got approached by a second
16 group.  You know, in both instances, um, we accepted the
17 tendering of their units and transferred the real estate to an
18 entity owned by those specific members of the partnership.
19 Q.  Those limited partners were similarly situated to the
20 plaintiffs in that they each invested $500,000; correct?
21 A.  Correct.
22 Q.  How did they do on a return of their investment based on
23 the transactions that you mentioned?
24 A.  One sold a unit, and one still owns a unit.
25 Q.  How about the one that was sold?