# In the United States District Court
# for the District of Colorado

Civil Action No. 1:19-cv-02443-RM-STV
—*Consolidated with* No. 19-cv-2637-RM-STV

JUN LI, *et al.*, individually and derivatively for Colorado Regional Center Project Solaris LLLP,

    Plaintiffs,

v.

WAVELAND VENTURES LLC, *et al.*,

    Defendants.

## Solaris Property Owner, Solaris Property Owner I and Peter Knobel's Reply in Support of Motion to Dismiss the *Li* Complaint

Solaris Property Owner ("SPO"), Solaris Property Owner I ("SPO I"), and Peter Knobel (collectively, "SPO Defendants") submit this Reply in support of their motion to dismiss (Doc.224) the *Li* plaintiffs' third amended complaint ("LTAC").

## Argument

After a defendant in a Rule 12(b)(6) motion has identified a complaint's fatal pleading defects, it is too late for the plaintiff to undo the defects or re-do the complaint. A 12(b)(6) response cannot do service for a properly pleaded complaint. "It is well-settled that Plaintiffs may not amend their operative pleading through a Response." *RV Horizons, Inc. v. Smith*, No. 1:18-cv-02780-NYW, 2019 WL 6052416, at *6 (D. Colo. Nov. 15, 2019) (internal quotations omitted); *see In re Qwest Commc'ns Int'l*, 396 F. Supp. 2d

1178, 1203 (D. Colo. 2004) ("The plaintiffs may not effectively amend their Complaint by alleging new facts in their response to a motion to dismiss.").

The *Li* plaintiffs' response (Doc.230) is just such an attempt to re-do their amended third amended complaint—their fourth try at pleading a viable lawsuit. Instead of quoting verbatim from their complaint, these plaintiffs *paraphrase* their allegations to "prove" the original allegations are sufficient. That will not do. Quite the contrary, plaintiffs' resort to paraphrasing their allegations is an implicit admission their original allegations were legally deficient.

I. **The civil theft claim is deficient.**

Under *Iqbal*,[1] plaintiffs' derivative theft allegations must comply with (a) Rule 8's standards forbidding "naked" and conclusory assertions; (b) Rule 9(b)'s particularity requirement—the who, when, where and how of the alleged fraud—since the theft claim is grounded on alleged fraud; and (c) the plausibility standard. The original theft allegations are inadequate. Paraphrasing accentuates the inadequacy.

**Rule 8(a).** There is insufficient space to examine each of plaintiffs' eighteen paraphrased paragraphs. The first three will illustrate the point.

1. Original Paragraph 29 (Doc.222) alleged that "meetings between Knobel and Mr. Hayes of CRC . . . culminated in a series of loan contracts." Paraphrased Paragraph 29 says "Knobel set up a series of loan documents." Doc.230 at 15.

---

[1] *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

2. Original Paragraph 30 said the contracts:

> set the trap for foreign investors by ensuring that any foreign money would be (i) "non-recourse" so that Knobel and his companies would have no obligation to pay back the money in cash but merely turn over the collateral; and (ii) the loans would be under-collateralized by limiting the pool of collateral units to undesirable and overvalued units that would never be sold for the value that was arbitrarily assigned to them using the rubric of Knobel's overpriced units that had been sitting unsold.

Doc.222 ¶ 30 (emphasis supplied). Paraphrased Paragraph 30 says "the loan was 'non-recourse' *to replace SPO's 'recourse' financing*, so SPO could pay it back with condominium units that could be sold to raise the cash owed on the loan at maturity . . . . *SPO overvalued the collateral units, assigning them values from 2009*, securing loan [sic] with old collateral valuations." Doc.230 at 15 (emphasis supplied). The paraphrasing does not track the original Paragraph 30.

3. Original Paragraph 32 alleged Section 8 of the Loan Agreement provides that "the Borrower can select the collateral to secure each loan advance," and then quotes from Section 8. Doc.222 ¶ 32. Paraphrased Paragraph 32 says original Paragraph 32 "alleges the obvious point (which could be on judicial notice) that letting a borrower assign value to its own collateral is not industry standard, nor is a non-recourse loan without a 'make whole' provision requiring the borrower to add collateral[.]" That is not an accurate paraphrase.

As the paraphrased paragraphs underscore, the original paragraphs contained conclusory allegations, naked assertions, non-particularized allegations and at times just pure argument and useless rhetoric. They are not entitled to any assumption of truth.

3

They do not contain well-pleaded factual allegations that any of the elements of civil theft exists as to any of the SPO Defendants.

**Rule 9(b).** The *Li* plaintiffs' theft theory is fraud. *See* Doc.222 ¶¶ 135-36. As discussed in our motion (Doc.224 at 15-17), the gravamen of the theft claim is that one or more of the SPO Defendants fraudulently overvalued the Collateral Units. *See, e.g.*, Doc.222 at 2; *id.* ¶¶ 30, 34-40. So plaintiffs were required to "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000) (internal quotations omitted). They did not do so.

**Plausibility.** Plaintiffs are required to plead facts allowing this Court to draw the reasonable inference one or more of the SPO Defendants is liable for theft; it is not enough to plead facts "merely consistent with a defendant's liability." *See Iqbal*, 556 U.S. at 678 (internal quotations omitted). They failed to do this.

Plaintiffs allege one or more of the SPO Defendants "wildly inflated," Doc.222 ¶ 101, the Collateral Units' value. Doc.224 at 15. Yet in the same breath the *Li* plaintiffs admitted the units' value reflected actual market value as of March 2011. *See* Doc.222 ¶ 101; *see* Doc.222-6, at 3. When plaintiffs' own document quoted in and appended to their complaint contradicts their own allegation, that allegation is not a well-pleaded fact and may be ignored. *See Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1105 (10th Cir. 2017) ("we need not accept as true allegations of fact that are at variance with the express terms of an instrument attached to the complaint as an exhibit and made

4

a part thereof") (internal quotations, brackets and ellipsis omitted); 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1327 (3d ed., Apr. 2017 update) ("[W]hen a disparity exists between the written instrument annexed to the pleadings and the allegations in the pleadings, the terms of the written instrument will control, particularly when it is the instrument being relied upon by the party who made it an exhibit."), *quoted with approval in Brokers' Choice of Am.*, 861 F.3d at 1105. We respectfully submit that the Court should disregard plaintiffs' conclusory allegation that one or more of the SPO Defendants "inflated" the Collateral Units' values.

**Alternatively, the theft claim is time-barred.** Plaintiffs argue their theft claim is not time-barred because "the limited partners first came to attorney Litowitz in 2019" after receiving a notice from CRC I dated May 30, 2019. Doc.230 at 17. That is argument presented in response to a 12(b)(6) motion. It cannot do service for well-pleaded facts in a pleading. Plaintiffs' complaint establishes their claim is time-barred. Theft has a two-year statute of limitations. *Id.* The complaint alleges "the limited partners" asked their foreign agents why the loan "was so undercollateralized," and those agents "arranged for the appraisal firm of HVS . . . to examine the situation." Doc.222 ¶ 101. HVS "concluded that SPO and CRC had set wildly inflated prices on the collateral from the outset." *Id.* (boldface omitted). The HVS report, dated August 5, 2016 and attached to the LTAC, says it is an amendment to the "original draft report provided . . . on July 1, 2016." Doc.222-6. Plaintiffs did not commence their action until August 28, 2019. Doc.001. Their theft claim is time-barred.

5

## II. The Colorado securities fraud claim is deficient.

**The *Li* plaintiffs have no derivative claim.** Plaintiffs fail to explain why their derivative claim, brought on behalf of CRCPS, is legally cognizable, that is, how CRCPS could sell and market securities to the *Li* plaintiffs and yet bring a derivative claim on behalf of itself. Their response ignores this fatal problem.

**Rule 8(a).** The securities fraud claim, like the duplicative theft claim, is premised on the allegation that Knobel inflated the Collateral Units' value and caused the loan to be "under-collateralized." For the same reasons plaintiffs did not properly plead the theft claim, they did not properly plead the securities fraud claim.

**Rule 9(b).** Plaintiffs do not address their failure to plead fraud with particularity. So we rest on our arguments in the motion.

**Alternatively, the fraud claim is time-barred.** Plaintiffs argue only that the question when fraud was discovered is "fact-specific and precludes a motion to dismiss." Doc.230 at 19. That is incorrect. "A statute of limitations defense may be appropriately resolved on a Rule 12(b) motion when the dates given in the complaint make clear that the right sued upon has been extinguished." *Sierra Club v. Okla. Gas & Elec. Co.*, 816 F.3d 666, 671 (10th Cir. 2016) (alteration omitted), *quoted in Adams v. United States*, No. 19-1301, 2020 WL 3422870, at *3 (10th Cir. June 23, 2020). We rest on our motion and the CRC Defendants' motion (Doc.203 at 15-16).

6

### III. The breach of contract claim is deficient.

The breach of contract claim is premised entirely on the allegation that SPO I did not comply with the Loan Agreement because it neither repaid the loan in cash or in Collateral Units. Doc.222 ¶¶ 151-153. The claim depends entirely on the invalidity of the ARCU.

Plaintiffs argue the ARCU has "5 insoluble flaws that render it ineffectual to make any prepayment, transfer, or conveyance of title." The first "flaw" is that ARCU only exists "for the purpose of calculating interest" and is not a "transfer document." Doc.230 at 9-10. That is incorrect. It has multiple purposes. For example, in Recital D CRCPS and SPO I agree that "[i]n lieu of accepting the conveyance of title to the Eligible Units . . ., the Lender and Borrower have determined that *it is desirable for Borrower to continue to hold record title* to the Eligible Units." Doc.203-7 at 3 (emphasis supplied). That purpose has nothing to do with "calculating interest." The ARCU is not literally a "transfer document," but it does govern, control and facilitate the transfer of title to Collateral Units. *See, e.g.*, *id.* ¶ 4(a) (providing that if SPO enters into contract for purchase and sale of unit, "Borrower and Lender shall promptly execute and deliver to the other party a Transfer Agreement").

The second "flaw" is "the ARCU *itself* cannot make any transfer." Doc.230 at 10. Even if this is true, it is irrelevant to the breach of contract claim. The question is not whether the ARCU itself can transfer title to a unit; it is whether the ARCU changes the

7

Loan Agreement's terms to permit—require—SPO I to continue holding title to the Collateral Units. As discussed in the previous paragraph, the answer is yes.

The third "flaw" is that "any supposed transfer by the ARCU was untimely" because the earliest date for prepayment was the day after the ARCU was signed. Doc.230, at 11. This argument is not well taken. As discussed in the previous paragraph, ARCU amended the Loan Agreement, as CRCPS as lender and SPO I as borrower were empowered to do. SPO I "duly notified" CRCPS it intended to convey Collateral Units on the applicable prepayment date; in lieu of that, CRCPS agreed to have SPO I hold the units to save it and its limited partners a substantial amount of money. *See* Doc.203-7 ¶¶ C-D. This was hardly a "flaw"; it was a contracted-for result.

The fourth "flaw" is ARCU says it doesn't reduce the loan balance owed by SPO I. Doc.230 at 11. That is a design, not a flaw. Under the ARCU, CRCPS (a) recognized that SPO I intended to pay the entire loan balance by conveying the Collateral Units pursuant to the Loan Agreement, and (b) contracted with SPO I to change the Loan Agreement so that SPO I could hold the units for CRCPS's benefit until directed to convey them. Under the ARCU the loan balance is reduced on each occasion CRCPS requests such a conveyance and CRCPS delivers on that request. It's happened three times already, the last time a few months ago. In fact the ARCU facilitates and controls the reduction of the loan balance. Each time CRCPS requests conveyance of a Collateral Unit, the loan balance is reduced by the unit's agreed valuation.

Plaintiffs' last described "flaw" is difficult to understand, but it appears to be that the ARCU has been used to cause "rubber band transfer[s]" of units back and forth between CRCPS and SPO I. Doc.230 at 12. This "flaw" is based on plaintiffs' misreading of the ARCU. It does not cause repeated transfers. SPO I originally held nineteen units. On the date the ARCU was signed SPO I had announced it would pay off all loan advances by tendering each unit. Under the ARCU SPO I agreed to temporarily refrain from conveying title to the units. When CRCPS asks for a conveyance of a unit, SPO I will transfer the unit once and will not receive it again. SPO I has conveyed three units; none has been returned. That is not a "rubber band"; it is a one-way-street transfer.

Plaintiffs make a final argument—that there is "a disputed factual issue" whether the ARCU is supported by "mutual consideration." Doc.230, at 14. They argue the Court need not "bless" the ARCU because it deprives the limited partners of "tens of millions [of dollars] in interest." *Id.* Plaintiffs are misguided.

Courts do not "bless" contracts. Contracting parties like CRCPS via the derivative *Li* plaintiffs that wish to invalidate a contract they signed must establish the grounds of invalidity. CRCPS has failed to establish any basis for invalidating the ARCU. In fact the *Li* plaintiffs have failed to bring a claim seeking invalidation of the ARCU. They only have asserted a claim for breach of the Loan Agreement because of alleged failure to repay the loan. *See* Doc.222 ¶¶ 150-164. But that claim is not legally cognizable because of the existence of the ARCU, under which CRCPS requested and agreed that SPO I hold the Collateral Units until CRCPS requested their conveyance.

It is irrelevant that under the ARCU interest on the various loan advances stopped accruing. Ending accrual of interest was *a key part of the bargain*: SPO I notified CRCPS it intended to prepay all the loan advances by conveying the Collateral Units in lieu of paying cash; if it had prepaid in this way, interest would have stopped accruing; CRCPS determined it did not want SPO I to convey the units and entered into the contract under which SPO I would hold the units until CRCPS requested their conveyance. CRCPS derivatively through the *Li* plaintiffs can hardly complain about this result, since it is the very result it bargained for. To put it bluntly, plaintiffs never were going to see the "tens of millions of dollars in interest" they claim they lost, since but for the ARCU SPO I would have prepaid all the loan advances, cutting off any interest accrual. Instead SPO I agreed to the ARCU, which cut off any interest accrual.

Plaintiffs' argument that there was no "mutual consideration" because the ARCU "appears to give SPO massive amnesty from interest payments" (Doc.230 at 14) is meritless. Courts do not judge or assess the adequacy of the consideration; any benefit to a promissor or any detriment to a promise, no matter how slight, is adequate consideration; and if a court finds some consideration, regardless of its relative value, its work on consideration is done. *See Hatlee v. Hardey*, No. 13-cv-02469-RM-MJW, 2015 WL 5719644, at *11 (D. Colo. Sept. 29, 2015), *aff'd in part sub nom. Hatlee v. Olds*, 665 Fed. App'x 695 (10th Cir. 2016).

### IV. The veil-piercing claim is deficient.

Claim 7 of the LTAC purports to assert a direct claim for piercing SPO's and/or possibly SPO I's veil. *See* Doc.222 at 53, 54. In their response to the CRC Defendants' motion to dismiss, the *Li* plaintiffs announced they were abandoning all direct claims and would "proceed solely on a derivative basis, with the proviso that they retain the right to seek equitable veil-piercing remedies." Doc.210 at [1]. Then in their response to the SPO Defendants' motion to dismiss, the *Li* plaintiffs assert, "the parent companies and ultimate owners must be parties because they controlled the lower-level parties, and the owners were beneficiaries of wrongdoing." Doc.230 at 19-20.

At a minimum, this kind of herky-jerky pleading-by-response-to-12(b)(6)-motions is highly confusing. We object. The *Li* plaintiffs announced on May 29, 2020—before our motion to dismiss was due—that it was abandoning all its direct claims and proceeding only on derivative claims. Doc.210 at 1. In reliance on that representation to the Court, we did not move to dismiss Claim 7. Now, after we have filed our motion, the *Li* plaintiffs say, "Never mind. We *are* asserting Claim 7." That is improper. *See Johnson v. Lindon City Corp.*, 405 F.3d 1065, 1069 (10th Cir. 2005) ("Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.") (internal quotations and brackets omitted).

11

Even if the *Li* plaintiffs could resurrect their veil-piercing "claim," it is not legally cognizable. *See* Doc.224 at 29.

## Conclusion

The Court should dismiss the LTAC.

June 29, 2020

Respectfully submitted,

*s/ Ty Gee*
Harold A. Haddon
Ty Gee
HADDON, MORGAN AND FOREMAN, P.C.
150 East Tenth Avenue
Denver, CO 80203
Tel 303.831.7364
hhaddon@hmflaw.com; tgee@hmflaw.com

*Attorneys for Defendants Solaris Property Owner, LLC, Solaris Property Owner I, LLC, and Peter Knobel*