# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

**Civil Action No. 19-cv-02443**
**Consolidated with Civil Action No. 19-cv-02637**

Jun Li, Qi Qin, Yi Liu, et al.,
        Plaintiffs,

        v.                                        Hon. Raymond P. Moore

Waveland Ventures LLC,
Colorado Regional Center Project Solaris LLLP,
Colorado Regional Center I, LLC,
Solaris Property Owner LLC,
Solaris Property Owner I, and
Peter Knobel,
        Defendants.

## Cui Plaintiffs' Opposition to Motion to Dismiss Complaint Under F.R.C.P. 12 (b) (6) of Defendants Solaris Property Owner, Solaris Property Owner I and Peter Knobel's [ECF 224]

    Plaintiffs Dianwen Cui, Lei Gu, Sufen Leng, Xue Mei, Zhou Mei, Yan Song, Lu Wang, Yue Wu, Zhuo Yang, Jingwen Zhang, Lei Zhang, Ling Zhang, Xiaohong Zhang, Qin Zhou Chunyu Zou, individually, and derivatively on behalf of Colorado Regional Center Project Solaris LLLP (the "CUI Plaintiffs") by and through the undersigned counsel, hereby submit this Opposition to the Defendants Solaris Property Owner, Solaris Property Owner I and Peter Knobel's [the "Solaris Defendant's"] F.R.C.P. 12 (b) (6) Motion to Dismiss CUI Plaintiffs' 3rd Amended Complaint [ECF 190] and Li Plaintiffs' Third Amended Complaint [ECF 121] as follow:

## CIVIL PRACTICE STANDARDS

As an initial observation, the Court in this matter has consistently rejected motions filed in violation of its published Civil Practice Standards.  Much like the CRC Defendants' Motion to Dismiss, the Current Motion [ECF # 224] is highly convoluted and confusing as it is a combination of two separate Motions to Dismiss attempting to attack two distinct and separate Complaints filed by two completely separate groups of Plaintiffs.  Section IV. A. of the Civil Practice Standards states that:

> "**Absent leave of Court, a motion**, response, reply, or other filing **may not** (i) incorporate by reference another motion or filing; or (ii) **contain another motion**, e.g., a Rule 56(d) motion should not be included in a response to a Rule 56(a) motion and a Rule 15 motion should not be included in an objection to a United States Magistrate Judge's recommendation."

While the Solaris Defendants jointly sought leave to file a brief which exceeded the 20 page limitation, no one ever sought leave of the Court to combine two motions into one.  The Solaris Defendants' Motion to Dismiss, liberally and improperly mixes and matches allegations from the Li Plaintiffs' Complaint in the factual recitation and arguments that are unclear as to which Complaint is being addressed in an obvious effort to confuse the court.  Had the Solaris Defendants made the appropriate Motion to the Court to combine the two Motions to Dismiss, there would have been an objection to avoid this unfortunate and most likely intentional confusion.   Having failed to follow the Courts rules, The Solaris Defendants' attempt to argue retroactively by way of a footnote that such conduct should be rewarded.

## BACKGROUND

The Solaris Defendants' Motion to Dismiss the Cui Plaintiffs' Third Amended Complaint ("TAC") [ECF # 224] is based upon their claims that the Plaintiffs have failed to state a claim for relief and have merely plead "unadorned, the-defendant-unlawfully-harmed-me accusations" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).   Essentially the Solaris Defendants are attempting

to assert that the TAC [ECF 190] fails to provide specific facts to inform them of the Cui Plaintiffs' Claims.  The factual allegations in the TAC [ECF#190] are as clear as they possibly can be at this stage of the litigation.

> "As required by Fed. R. Civ. P. 12(b)(6), a complaint must give the defendant fair notice of what the claim is and the grounds on which it rests, and allege a plausible entitlement to relief. Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 559, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The plausibility inquiry requires the court to distinguish "the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012). The Court must then determine whether the factual allegations are sufficient to support "the reasonable inference that the defendant is liable for the misconduct alleged." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (quoting Iqbal, 556 U.S. at 678). The complaint should not be read "too mechanically"; rather, it should be considered as a whole, along with a heavy dose of common sense. Rodríguez-Vives v. P.R. Firefighters Corps of P.R., 743 F.3d 278, 283 (1st Cir. 2014). All well-pled facts must be taken as true and all reasonable inferences drawn in the plaintiff's favor. Ruivo v. Wells Fargo Bank, N.A., 766 F.3d 87, 90 (1st Cir. 2014)."

*Stamatakos v. Wells Fargo Bank, N.A.*, 2018 U.S. Dist. LEXIS 47373, *5

The Complaint clearly alleges that Colorado Regional Center Project Solaris, LLLP (the "LLLP"), Colorado Regional Center I, LLC ("CRC"), Waveland Ventures LLC, and Rick Hayes (collectively the "CRC Defendants") and the Solaris Defendants conspired to defraud the Plaintiffs to enrich themselves.  The Solaris Defendants seem to be unable to decide if they want the Chinese money to be characterized as a security or as a loan.  This is not surprising as they want the benefits of each characterization without the detrimental aspects of either.

Rick Hayes, the owner operator of each of the CRC Defendants, when discussing the Solaris Project has publicly stated that: "At the time the world was coming to an end, at least financially.  There weren't other sources of financing available.  It put stress on the project. [Declaration of Brian P Stewart [BPS Dec] ¶ 8 [ECF #213]; Exhibit 1 to BPS Dec [ECF # 213-2].  By Mr. Hayes admission, the Solaris Defendants could not get financing in any other way.

3

The Defendants then tried to package the financing as a "security" so that they could include all of the usual disclaimers given in connection with the issuance of a security. However, the "security" was not offered by a registered broker-dealer [TAC ¶ 121]; and their "offering documents" attempted to claim an exemption from Federal Rules that didn't apply [TAC ¶ 118].

When the Loan Agreements were negotiated and structured, by Mr. Hayes and Mr. Knobel, **it is very unlikely that the Solaris Defendants could have secured any financing,** let alone financing that was under secured, contained no personal guarantee and ensured by its terms that it would never be repaid in full. The facts alleged in the TAC give the Solaris Defendants fair notice of the Cui Plaintiffs' claims, the facts upon which those claims rest and allege a plausible entitlement to relief on those claims. Those claims are that the Defendants defrauded the Cui Plaintiffs and the other investors into believing that the loan was fully secured by deeds of trust, and that Mr. Knobel was personally securing the loan, when in fact that there was no personal guarantee and the loan was badly under secured. Notwithstanding these blatant lies the "loan documents", such as they are, provide an option for the Solaris Defendants to transfer title to the security to the LLLP, in lieu of payment. Although they claim to have excercised this option title to the security has never been transferred to the LLLP.

The Solaris Defendants claim in their Motion that they have nothing to do with the "securities offering" [Solaris Motion to Dismiss ("MTS") page 2] while maintaining that they are somehow protected by the "securities disclaimers" in the CIM [Solaris MTD page 5 – 6]. Solaris Property Owner, LLC ("SPO")[1], is a simple secured transaction. The investments discussed in the Confidential Information Memorandum ("CIM") [Exhibit "A" to CRC

---

[1] Later all rights of SPO were assigned to Solaris Property Owner LLC I ("SPOI")

Defendants' Motion to Dismiss (ECF #213)] are the deposit of $500,000 into LLLP, with GP acting as the General Partner then the funds are pooled with the other investors funds to create the capital for the secured loan to SPO.  On page 9 of the CIM, the "Securities" are identified as "Limited Liability Limited Partnership Interests".[2]  The secured loan to SPO is still a secured transaction that should have been negotiated by the GP in the best business interests of the LLLP.  The GP, under Colorado law had a fiduciary duty to negotiate in good faith in the best interests of the LLLP.   That clearly did not happen, and the structure of the deal was specifically set up to benefit the Solaris Defendants and the GP at the expense of the Chines investors.

## ARGUMENT

It is commonly understood that "…a motion to dismiss on the grounds that a petition does not state a claim on which relief can be granted, admits all facts well pleaded, and the legal question presented thereby is governed by the facts as pleaded." *Galbreath v. Metropolitan Trust Co.*, 134 F.2d 569, 570, 1943 U.S. App. LEXIS 3619, *1.   The applicable inquiry under Rule 12(b) (6) is well-settled. Courts are required to accept all well-pleaded allegations in the complaint as true and to draw all reasonable inferences in favor of the non-moving party. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 40 L. Ed. 2d 90, 94 S. Ct. 1683 (1974), overruled on other grounds, *Harlow v. Fitzgerald*, 457 U.S. 800, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1982); Allegheny General Hospital v. Philip Morris, Inc., 228 F.3d 429, 434-35 (3d Cir. 2000). The inquiry is not whether plaintiffs will ultimately prevail in a trial on the merits, but whether they should be afforded an opportunity to offer evidence in support of their claims. *See Scheuer*, 416 U.S. at 236. **Dismissal under Rule 12(b) (6) is not appropriate unless it appears beyond**

---

[2]. By the Defendants' own language the security is the interest in the limited liability Company and not the "Loan" to Solaris.

**doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief**. *See R.F. Lafferty*, 267 F.3d at 346 *Conley v. Gibson*, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957)). *Rockefeller Ctr. Props. Sec. Litig. v. Rockefeller*, 311 F.3d 198, 215-216, 2002 U.S. App. LEXIS 23259, *35-36, Fed. Sec. L. Rep. (CCH) P92,203, 54 Fed. R. Serv. 3d (Callaghan) 252.  By these standards, the TAC easily withstands the claims raised in Solaris Defendants' Motion to Dismiss.

### I.     Tort Claims

#### 1.     Fraud allegations lack specificity.

Defendants have spent a large portion of their motion arguing that in order to plead fraud the heightened pleading requirements of Rule 9(b) must apply.  The Solaris Defendants conveniently ignore paragraphs 93, 111, 117, 120, 125, 135 and 145 which incorporate by reference all of the preceeding paragraphs in the TAC [ECF # 190].  The Solaris Defendants attempt to limit the allegations of the TAC [ECF # 190] to paragraphs 56, 66, 68, 70, 73 and 74 while ignoring paragraphs 8, 9, 10, 12, 13, 16, 18, 20 and 21.

The Solaris Defendants also ignore the legal authority that does not allow them to hide behind their superior factual knowledge of their own fraudulent activity.   In discussing this issue, the court in *Rockefellar Ctr. Props. Sec. Litig v. Rockefellar* 311 F. 3d 198, stated at page 216 that:

> "While we have acknowledged the stringency of Rule 9(b)'s pleading requirements, we have also stated that, in applying Rule 9(b), courts should be "sensitive" to situations in which "sophisticated defrauders" may "successfully conceal the details of their fraud." Id. **Where it can be shown that the requisite factual information is peculiarly within the defendant's knowledge or control, the rigid requirements of Rule 9(b) may be relaxed.** Id. (emphasis added)."

Here, it is undisputed that the GP produced all of the soliciting documents and hired agents in China to solicit investors for their scheme.  The GP could not have acquired any of the

information without the participation and approval of the Solaris Defendants, and despite their protestations that they are a simple borrower There is no as to who was in control of the scheme or as to what claims being made by the Plaintiffs.  The Defendants are the only parties who possesses the actual knowledge of who the individuals making the presentations were, and they not only do not deny producing the deceptive written information, they attempt to rely upon disclaimers contained in the materials.  The GP, with the knowledge and understanding of the Solaris Defendants produced a very deceptive and confusing prospectus promising immigration status and a secured loan transaction secured by real estate valued greater than the amount of the principal for the repayment of the loan.  There is very little in the way of mystery as to who presented this information to the Plaintiffs nor is there a question as to what is being claimed.  It is shameful for the Solaris Defendants to claim to have no connection to the CIM while actively seeking the protections of the disclaimers contained therein.  The Solaris Defendants make similar arguments with respect to the Third claim for violation of the Colorado consumer Protections Act ignoring the complaint as a whole and the facts alleged in the preliminary allegations.

      2.   **<u>Statute of Limitations Claims</u>**.

Defendants attempt to dismiss the 1st Count of the TAC based upon statute of limitation grounds is simply a misrepresentation of the TAC.  Here, the Defendants falsely state that the claims are ten years old because that was when they began their fraud, and therefore, the statute of limitations must begin to run ten years ago.  In the Defendants' world, anyone reviewing the documents would understand the risk of losing their investment.  Of course this one dimensional analysis must fail for a variety of reasons.

First, there is no single date upon which to commence calculation the statute of limitations.  The fraud alleged is wide ranging and is not limited to the information in the CIM.

There were 165 investors who were solicited at various times through various presentations all of which were extremely confusing, to any normal person, in any language. Funds were taken in at different times, advanced at different times and matured at different times. The chart below indicates that funds were advanced and became due over a three year period.

| Property | Collateral Unit Value | Loan Advance | Loan-to-Value | Date Loan Advance Complete | Maturity Date |
|---|---|---|---|---|---|
| Unit 6E West | $3,707,982.00 | $4,000,000.00 | 107.88% | April 18, 2012 | April 17, 2017 |
| Unit 2A South | 6,439,950.00 | 6,500,000.00 | 100.93% | April 25, 2012 | April 24, 2017 |
| Pent E West | 3,084,124.00 | 3,000,000.00 | 97.27% | May 3, 2012 | May 2, 2017 |
| Unit 6E East | 3,707,485.00 | 3,500,000.00 | 94.40% | May 30, 2012 | May 29, 2017 |
| Pent E East | 3,084,683.00 | 3,000,000.00 | 97.25% | June 15, 2012 | June 14, 2017 |
| Unit 5E West | 3,581,090.00 | 4,000,000.00 | 111.70% | August 2, 2012 | August 1, 2017 |
| Unit 4G West | 6,420,861.00 | 6,500,000.00 | 101.23% | August 24, 2012 | August 23, 2017 |
| Unit 7E West | 4,556,554.00 | 4,500,000.00 | 98.76% | September 7, 2012 | September 6, 2017 |
| Pent C East | 2,355,248.00 | 2,000,000.00 | 84.92% | September 13, 2012 | September 12, 2017 |
| Unit 6D East | 7,832,070.00 | 8,000,000.00 | 102.14% | October 2, 2012 | October 1, 2017 |
| Unit 5C West | 3,555,668.00 | 3,500,000.00 | 98.43% | November 6, 2012 | November 5, 2017 |
| Unit 6C West | 3,605,715.00 | 3,500,000.00 | 97.07% | November 27, 2012 | November 26, 2017 |
| Unit 5G West | 6,521,940.00 | 6,500,000.00 | 99.66% | January 24, 2013 | January 23, 2018 |
| Unit 3E East | 2,578,042.00 | 3,000,000.00 | 116.37% | January 29, 2013 | January 28, 2018 |
| Unit 7E East | 4,043,190.00 | 4,000,000.00 | 98.93% | January 30, 2013 | January 29, 2018 |
| Unit 4D East | 7,831,977.00 | 7,500,000.00 | 95.76% | March 6, 2013 | March 5, 2018 |
| Pent G West | 4,737,891.00 | 4,500,000.00 | 94.98% | May 20, 2013 | May 19, 2018 |
| Pent C West | 2,355,530.00 | 2,500,000.00 | 106.13% | May 30, 2013 | May 29, 2018 |
| Unit 3C East | 2,500,000.00 | 2,500,000.00 | 100.00% | January 30, 2015 | January 30, 2020 |
| **Totals** | **$82,500,000.00** | **$82,500,000.00** | **100.00%** | | |

The CIM and other presentations always stated that the loan would be secured by real property, that the security would be worth at least as much as the principal amount of the loan, that the loan would also be personally guaranteed by Peter Knobble, all representations that would tend to indicate a loan that was properly securitized. The documents also always discussed **payment** of the principal or **pre-payment** of the principal. Nowhere in the documents did it ever discuss or anticipate that "payment" of the principal or "pre-payment" of the principal would be manifest as payment of less than ½ of the principal.

8

Furthermore the GP has continuously sent the investors updates indicating that the loan was adequately collateralized for repayment of the principal, thereby reaffirming the fraud with each update and preventing the Plaintiffs from discovering the fraud.  In fact the actions of the GP kept the limited partners in the dark about the issues related to the value of the collateral until the proposed bulk sale in November of 2019.   It could equally be argued that the continuing fraud was ongoing until the January 30 maturity date of the final advance, as there is no way to determine which investor's money was used for each advance.  Whether you apply the 3 year statute of limitations for fraud claims *J.A. Balistreri Greenhouses v. Roper Corp.*, 767 P.2d 736, 739, 1988 Colo. App. LEXIS 254, *9, 12 BTR 839 or the 5 year statute of limitations for fraud involving a fiduciary *Elk River Associates v. Huskin*, 691 P.2d 1148, 1152, 1984 Colo. App. LEXIS 1254, *8-9, Plaintiffs claims clearly  fall within the applicable statute of limitations. The Defendant's contention that the fraud must have been discovered in 2012 are both self-serving and ridiculous.   There was no reason for the Plaintiffs to suspect the fraud until the loan matured and the Defendants began asserting that the security was valued at less than 50% of the principal.

## II.     **Contract Claims.**

The Solaris Defendants state that the Cui Plaintiffs lack standing to bring the claims for breach of contract and declaratory relief.  They cite *Tisch v. Tisch* 439 P. 2d 89, 103 for this proposition while completely ignoring the fact that these causes of action have been brought as derivative claims. The Court in *Tisch*, affirms the Plaintiff's rights to bring the derivative claims and arguably supports the right to the individual claims.

> "…in limited circumstances, a shareholder may bring a personal action against a corporation where the shareholder has sustained an injury separate and distinct from that of the corporation or the other shareholders. For example, a division of this court implicitly recognized that a breach of fiduciary duty allegation against majority shareholders who distributed corporate profits in the form of a "bonus" to a majority shareholder, rather than as a "dividend" to all shareholders, created a question of fact."
> See *Polk v. Hergert Land & Cattle Co.*, 5 P.3d 402, 405 (Colo. App. 2000)

*Tisch v. Tisch*, 439 P.3d 89, 103-104, 2019 COA 41, P55, 2019 Colo. App. LEXIS 387, *29, 2019 WL 1285070

Here, the Plaintiffs have alleged that the GP has breached its fiduciary duty to the limited partners in structuring and amending the agreements to allow the Solaris Defendants to avoid repayment of the loan and allowing the GP to enrich itself by claiming excessive payments for fees and commissions.  The failure on the part of the Solaris parties to either repay the debt or convey title to the security coupled with the GP's ongoing and egregious breaches of its fiduciary duties by refusing to require the Solaris Defendants to do either falls within this limited exception for individual claims.

Defendants assert that the Cui Plaintiffs have no standing to bring claims for declaratory relief.   Once again, the declaratory relief cause of action is brought both in the Plaintiffs' individual capacity and derivatively.  Clearly, the Cui Plaintiffs have standing to bring the derivative claim, which, as stated above,  is supported by the Solaris Defendants' own authorities.   Furthermore, the Solaris Defendants are mistaken about the individual claims.

> "An action for a declaratory judgment is appropriately used to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations. §§ 13-51-102 to -115, 6A C.R.S. (1987) (the "Uniform Declaratory Judgments Law"). The Uniform Declaratory Judgments Law spells out **who may obtain a declaration**:
>
>> **Any person interested under a deed, will, written contract, or other writings constituting a contract or whose rights, status, or other legal relations are affected** by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.
>
> § 13-51-106, 6A C.R.S. (1987)."

*Farmers Ins. Exch. v. District Court*, 862 P.2d 944, 947, 1993 Colo. LEXIS 940, *8-9, 17 BTR 1895

In addition to reaching the faulty conclusion that the Plaintiffs have no standing to bring a declaratory relief action, the Solaris Defendants take it upon themselves to state that the claim serves no useful purpose. How nice for the Solaris Defendants to be able to usurp the role of the judiciary by rendering the declaratory determination themselves.[3] The complaint alleges that the Solaris Defendants conspired with the CRC Defendants to structure a transaction for the express purpose of defrauding the Chinese investors so that the Solaris Defendants would never have to repay the full amount of the loan and the CRC Defendants could loot any payments made by the Solaris Defendants.

The Solaris Defendants' Motion itself demonstrates their inability to understand their own fraud as they struggle with the concept of whether the vehicle for their fraud is a "security" or a loan. The GP has involved itself in self-dealing to enrich itself and the Solaris Defendants. As admitted by Rick Hayes, the Solaris Defendants had no other options to borrow money at the time of these transactions. What exactly was done and what was intended by the GP and the Solaris Defendants is absolutely in dispute; it is not trivial; and can only be determined by an independent third party like the Court.[4]

One of the Cui Plaintiffs' chief arguments is that there was no consideration given for the Agreement Regarding Collateral Units ("ARCU"). The Solaris Defendants continue to assert that "CRCPS through the ARCU secured SPO I's forbearance from conveying the Collateral Units. This was a $1 million benefit to CRCPS" based upon Mr. Hayes testimony that the LLLP was saved transfer taxes by the Solaris Defendants retaining title to the security. Once again the Solaris Defendants usurp the courts role, this time relying on the hearsay testimony of the

---

[3]. This is hardly shocking considering their flagrant flaunting of the Courts Civil Practice Standards.
[4] Although it will be very interesting to hear the Defendants responses to discovery if discovery is ever allowed.

mastermind of the fraud to misrepresent the law.  No transfer taxes would be owed pursuant to the exemptions contained in C.R.S. § 39-22-604.5 (2) (a) & (b).  The Defendants simply want to retain control of the security so that they can control the sales and rental prices on all of the units at Solaris.

### III. Alter Ego Liability.

Colorado law provides for alter ego liability. A corporation is the alter ego of its shareholder or shareholders when it is a "mere instrumentality for the transaction of the shareholders' own affairs, and there is such unity of interest in ownership that the separate personalities of the corporation and the owners no longer exist." Id. (quoting *Krystkowiak v. W.O. Brisben Co.,* 90 P.3d 859, 867 n.7 (Colo. 2004)). To determine whether a corporation is an alter ego, a court should consider a number of factors, including whether "(1) the corporation is operated as a distinct business entity, (2) funds and assets are commingled, (3) adequate corporate records are maintained, (4) the nature and form of the entity's ownership and control facilitate misuse by an insider, (5) the business is thinly capitalized, (6) the corporation is used as a 'mere shell,' (7) shareholders disregard legal formalities, and (8) corporate funds or assets are used for noncorporate purposes."  *Stockdale v. Ellsworth* 407 P.3d 571 \*\*; 2017 Colo. LEXIS 1092.  The allegations contained in the complaint are adequate to put the Defendants on notice of the alter ego claims, whether they are a separate cause of action or simply alter ego allegations. Plaintiffs should be allowed to conduct discovery to determine whether evidence supports these allegations.  Colorado law clearly supports that a party may move to join a party post judgment for alter ego liability see *City of Aurora v. Simpson* 105 P3d. 595.  While it would be better to allow the alter ego allegations to remain, Plaintiffs may always revisit them after judgment is entered.  But these allegations must be remembered in the event the Plaintiffs are required to pursue future claims for fraudulent transfers by any of the individual named Defendants.

WHEREFORE, Plaintiffs respectfully request that the Solaris Defendants F.R.C.P. Rule 12 (b) (6) Motion be denied.

DATED: July 1, 2020                      <u>*/s/ Brian P. Stewart*</u>
Hubert Kuo
Brian P. Stewart
**Ardent Law Group**
4340 Von Karman Ave.,
Suite 290
Newport Beach, California 92660
Telephone: (949) 299-0188
Facsimile: (949) 299-0127
bstewart@ardentlawgroup.com
Attorney for Plaintiffs Dianwen Cui, Lei Gu, Sufen Leng, Xue Mei, Zhou Mei, Yan Song, Lu Wang, Yue Wu, Zhuo Yang, Jingwen Zhang, Lei Zhang, Ling Zhang, Xiaohong Zhang, Qin Zhou Chunyu Zou, individually, and on behalf of Colorado Regional Center Project Solaris LLLP

## CERTIFICATION OF SERVICE

   This is to certify that on July 1, 2020, a true and correct copy of the above and foregoing **Cui Plaintiffs' Opposition to Motion to Dismiss Complaint Under F.R.C.P. 12 (b) (6) of Defendants Solaris Property Owner, Solaris Property Owner I and Peter Knobel's [ECF 224]** has been electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record.

                   */s/ Brian P. Stewart*
                   For Ardent Law Group, P.C.