IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

**Civil Action No. 19-cv-02443**
**Consolidated with Civil Action No. 19-cv-02637**

Jun Li, Qi Qin, Yi Liu, et al.,
        Plaintiffs,

      v.                                    Hon. Raymond P. Moore

Waveland Ventures LLC,
Colorado Regional Center Project Solaris LLLP,
Colorado Regional Center I, LLC,
Solaris Property Owner LLC,
Solaris Property Owner I, and
Peter Knobel,
        Defendants.

---

**Plaintiffs' Reply to CRC I's Response in Opposition to Motion for Appointment of Receiver [ECF # 229]**

---

BACKGROUND

1. **Procedural Issues.**

The Defendants in this action continue to respond to Motions in this matter in a most unusual fashion. Although Colorado Regional Center I, LLC (sometimes referred to as "GP" or "CRC I") lacks standing to do so, Counsel for CRC I has filed the only opposition to the Cui Plaintiffs' Motion for Appointment of Receiver. Meanwhile, Solaris Property Owner, LLC ("SPO"), Solaris Property Owner I, LLC ("SPO I") and Peter Knobel (collectively referred to as the "SPO Defendants") apparently have no opposition to the Motion. CRC I lacks standing to oppose the Motion, because it has been removed as the General Partner of Colorado Regional

1

Center Project Solaris, LLLP ("LLLP").  On May 11, 2020, CRC I filed a Cross-Complaint [ECF # 204] is seeking a legal determination of whether it was properly removed as the General Partner.  However, the Limited Partnership Agreement does not require a legal determination but merely requires a 2/3 vote of the Limited Partners to remove the General Partner for cause.  Even if CRC I had not been removed as General Partner, the rights of CRC I to oppose the Motion for Appointment of Receiver are dubious at best.

Snell & Wilmer has withdrawn as counsel for the LLLP; Snell & Wilmer's ongoing participation in this matter is also the subject of a motion for disqualification which is being heard on the same day as this hearing.   Considering the allegations of the Li Plaintiffs and the Cui Plaintiffs as well as the fact that more than two thirds of the Limited Partners have expressly requested the removal of CRC I, the Cui Plaintiffs have sought the appointment of a receiver for the express purpose of having an independent third party overseen by the Court to manage the LLLP and the security while the action is pending.

2. **The Ongoing Fraud.**

CRC I's have whitewashed the ongoing fraud by stating; that they have done everything pursuant to the agreements; that this was a highly volatile investment; and that the Chinese Investors were given disclaimers about the volatility of the investment.[1]  The Cui Plaintiffs allege that this is not and never was a security and that the security disclaimers are not applicable.  Alternatively, at the very least, the disclaimers are invalid because the Defendants claim an exemption from federal securities laws that does not apply to them.

Rick Hayes has bragged, in a published article, in reference to this specific transaction that the Chinese are adverse to returns on their investment.  In the same article he stated that the

---

[1] Disclaimers about a loan that was supposed to be fully secured by real property with a personal guarantee from Peter Knobel

2

economic climate made it impossible to borrow money (Exhibit W to the BPS Dec). Yet Mr. Hayes, the principle owner of all of the CRC Defendants, purportedly negotiated on behalf of the LLLP, a complicated, one sided agreement with all sorts of alleged disclaimers that favored the interests of the SPO Defendants over the interests of the limited partners. When the loan finally became due Mr. Hayes then negotiated an amendment to allow the SPO Defendants to maintain possession of title to the security while terminating actual repayment of the debt the Agreement Regarding Collateral Units ("ARCU").

The CRC Defendants laughably claim that the reason for this was to save the LLLP money. The only "evidence" offered for this proposition is the hearsay testimony of Mr. Hayes that it would save $1 million dollars, which he states are comprised of "taxes, HOA Fees and other payments". It is important to remember that the GP and/or its related entities have received over $19 million dollars in fees and commissions and other costs [BPS Dec ¶ 10; Exhibits "X" through "AA" to the BPS Dec], and apparently have deferred another $4 million. So the loan was supposed to be 100% secured by real estate, but now the Defendants claim the real estate is worth less than half the amount loaned. Furthermore, the GP has realized a $23 million dollar profit and will continue to systematically pick the carcass clean if it is allowed to remain in control of the LLLP. The need for the Receiver is twofold: 1) the borrower is no longer repaying the loan and has not transferred title to the property; and 2) CRC I is methodically taking whatever value is left in the security in "management fees"

## ARGUMENT

### A. Standing.

It is unclear how CRC I has standing to oppose the requested appointment of a receiver in this action.

3

"…it is well established that the court has an independent obligation to assure that standing exists, regardless of whether it is challenged by any of the parties. *Bender* v. *Williamsport Area School Dist.*, 475 U.S. 534, 541, 106 S. Ct. 1326, 89 L. Ed. 2d 501 (1986)."

*Summers v. Earth Island Inst.*, 555 U.S. 488, 499, 129 S. Ct. 1142, 1152, 173 L. Ed. 2d 1, 12, 2009 U.S. LEXIS 1769, *23, 77 U.S.L.W. 4146, 39 ELR 20047, 67 ERC (BNA) 1961, 72 Fed. R. Serv. 3d (Callaghan) 1183, 21 Fla. L. Weekly Fed. S 670

Furthermore, it has been noted that:

"Although we have not exhaustively defined the prudential dimensions of the standing doctrine, we have explained that prudential standing encompasses "the general prohibition on a litigant's raising another person's legal rights"

*Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12, 124 S. Ct. 2301, 2309, 159 L. Ed. 2d 98, 109, 2004 U.S. LEXIS 4178, *16-17, 72 U.S.L.W. 4457, 17 Fla. L. Weekly Fed. S 359.

CRC I has no rights to the security has no reason to object to the appointment of a receiver other than the fact that the appointment of a Receiver will end its gravy train for good.

### B. Appointment of Receiver.

A Federal court has inherent equitable power to appoint a receiver.

"Federal courts have an inherent equitable power to appoint a receiver to manage a defendant's assets during the pendency of litigation." *Matter of McGaughey*, 24 F.3d 904, 907 (7th Cir. 1994)(citations omitted).

Appointment of a receiver is highly discretionary and does on turn on any formula or elements but rather on the good judgment of the Court.

"[t]he courts are in agreement that the highly discretionary nature of the appointment of a receiver is inconsistent with any formulaic or algorithmic method for determining when the appointment is appropriate." *Jackson v. N'Genuity Enters. Co.*, No. 09-C-6010, 2011 U.S. Dist. LEXIS 113511, 2011 WL 4628683, at *28 (N.D. Ill. Oct. 3, 2011). Thus, **"[i]t is not a necessary prerequisite to the appointment of a receiver that any particular condition be shown . . . ."** *See id.* **"Rather, the district court must take into account 'all the circumstances of the case,' instead of attempting to rely on a 'precise formula' for making the determination**. 'No one factor is dispositive.'" *Id.* (citations and brackets omitted).

4

*U.S. Bank N.A. v. Lakeview Retail Prop. Owner LLC,* 2016 U.S. Dist. LEXIS 59789, *4-5 [emphasis added]

Here, in addition to SPOI retaining ownership of the property while no longer paying the debt, one of the main points of contention is the exorbitant fees, commissions and other expenses being incurred by CRCI, to the detriment of the LLLP. The only party to the litigation who opposes appointment of a receiver is CRC I, which is not surprising as they have made quite a profit out of the relationship. It would be helpful to the court to have an independent third party administer the LLLP, and take possession of the assets. This way the Court will be assured of the proper management and protection of the assets from any further dissipation[8] during the pendency of the action.

In its opposition, CRC I continually makes broad statements such as: there has been no default; there has been no breach of fiduciary duty; there has been no removal of the general partner. These statements are always based upon Mr. Hayes referencing the fraudulent documents which were prepared for the express purpose of stealing the Chinese investor's money.

### C. The Only Party with Standing to Object has Expressly Consented to the Appointment of a Receiver without bond

Each of the Deeds of Trust provides for Appointment of a Receiver in the event of a default. This is contractual and was agreed to by the borrower, who again**, does not oppose this motion**. After absolving themselves of the duty to repay the loan, the Defendants realized that the SPO Defendants could no longer control the market price for condominiums if they transferred title to the LLLP. So they entered into the ARCU in an effort to attempt to legitimize keeping title to the security. The ARCU is completely unenforceable and the only "consideration" CRC I can point

---

[8] Or perhaps the receiver will satisfy the Court of the good intentions of CRC I

to is the "1 million dollars in savings on transfer taxes, HOA dues and other costs" which Mr. Hayes testified to at the hearing to remove the lis pendens filed in the Li Action. No transfer taxes would be owed pursuant to the exemptions contained in C.R.S. § 39-22-604.5 (2) (a) & (b); the GP has been paying HOA Dues annually (as shown on Exhibits "X", "Y", "Z", "AA" and "BB", and has inexplicably increased even though 2 of the units have been sold); no one knows what Mr. Hayes means by "other costs"

### D. Availability of a less Drastic Remedy.

CRC I ignores the fact that the parties to the Deeds of Trust, the LLLP and SPOI have contractually agreed that a receiver shall be appointed in the event of a default on the loan. SPOI has not made a payment on the loan in quite some time, SPOI has not transferred title to the security to LLLP despite its purported exercise of the option to do so, the ARCU is a completely void instrument concocted by CRC I and the SPO Defendants to allow SPOI to maintain ownership of the security without making payments on the loan. Finally SPOI does not oppose the Motion. Based upon the facts before the Court this is tantamount to a stipulation to the appointment of a receiver.

### E. The Appointment of a Receiver will benefit Everyone.

CRC I makes the interesting argument that it will be too expensive to appoint a receiver. They claim that receivers are expensive and the cash flow from the property has been unable to support CRC I's management fees. The Cui Plaintiffs have made multiple requests to see the general ledgers to determine who exactly has benefited from the $5 million per year that has been paid in management fees repairs, commissions, HOA dues etc. The Defendants have routinely refused to supply this information . It is highly unlikely that a receiver that is overseen by this Court will be even close to expensive as CRC I has been. The appointment of a receiver

will not complicate this matter but will most likely provide unbiased information to the court that will be invaluable in helping the Court reconcile what has actually been happening at the Solaris Property.  Finally, CRC I raises a spectre that a bond has not been requested.  This is again because the documents expressly state that a bond is not required.  If the Court wishes to require a bond as a condition of appointment of a receiver it may do so.

## REQUEST FOR RELIEF

WHEREFORE, the Cui Plaintiff's request that this Court enter an order pursuant to C.R.C.P. 66 and LLLP's Loan Documents appointing Pear Partners, LLC as Receiver for the Receivership Property and as Receiver and substitute general partner for the LLLP with all of the powers and authority usually held by receivers and reasonably necessary to accomplish the purposes set forth herein, as provided in the proposed order tendered herewith, and that the Court grant such other and further relief as it deems necessary and proper.


Dated: July 6, 2020                               /s/ Brian Stewart
                                                  Hubert Kuo
                                                  Brian P. Stewart
                                                  **Ardent Law Group**
                                                  4340 Von Karman Ave.,
                                                  Suite 290
                                                  Newport Beach, California 92660
                                                  Telephone: (949) 299-0188
                                                  Facsimile:  (949) 299-0127
                                                  bstewart@ardentlawgroup.com
                                                  Plaintiffs Dianwen Cui, Lei Gu, Sufen Leng,
                                                  Xue Mei, Zhou Mei, Yan Song, Lu Wang,
                                                  Yue Wu, Zhuo Yang, Jingwen Zhang, Lei
                                                  Zhang, Ling Zhang, Xiaohong Zhang, Qin
                                                  Zhou, Xun Zhu, Chunyi Zou

## CERTIFICATION OF SERVICE

This is to certify that on July 6, 2020, a true and correct copy of the above and foregoing **Plaintiffs' Reply to CRC I's Response to Motion for Appointment of Receiver** has been electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record.

*/s/ Brian P. Stewart*
For Ardent Law Group, P.C.

8