# In the United States District Court for the District of Colorado

Civil Action No. 1:19-cv-02443-RM-STV
—*Consolidated with* No. 19-cv-2637-RM-STV

JUN LI, *et al.*, individually and derivatively for Colorado Regional Center Project Solaris LLLP,

    Plaintiffs,

v.

WAVELAND VENTURES LLC, *et al.*,

    Defendants.

## SPO Defendants' Reply in Support of Their Motion to Dismiss the *Cui* Complaint

Solaris Property Owner ("SPO"), Solaris Property Owner I ("SPO I"), and Peter Knobel (collectively, "SPO Defendants") submit this Reply in support of their motion to dismiss (Doc.234) the *Cui* plaintiffs' Third Amended Complaint ("CTAC").

## Argument

I. **The *Cui* plaintiffs' "Background" section fails to present any relevant facts.**

The response's "Background" section presumably is intended to present facts, but it consists of faulty arguments and irrelevant factual allegations.

"**Conspiracy.**" The *Cui* plaintiffs argue that the SPO Defendants "conspired"

with other defendants[1] "to defraud the Plaintiffs." Doc.234 at 3. But as in their complaint (*see* Doc.190 ¶ 88), the *Cui* plaintiffs fail to state any facts, as opposed to naked argument and "'unadorned . . . accusations,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), to support their claim of "conspiracy." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] formulaic recitation of the elements of a cause of action will not do.").

The closest they come is alleging that the CRC Defendants—we use the term as it is defined in Doc.203-1, at 4 to refer to Waveland Ventures, LLC, Colorado Regional Center, LLC, and Colorado Regional Center I, LLC—and the SPO Defendants "enrich[ed] themselves," Doc.234 at 3, from the loan transaction. Even if true, that hardly shows a conspiracy since all contracting parties presumably try to benefit from their contract, or else they wouldn't have entered into it. *See Llacua v. W. Range Ass'n*, 930 F.3d 1161, 1175 (10th Cir. 2019) (antitrust conspiracy claim is not tenable if it relies "solely on circumstantial facts of parallel behavior": "the conspiracy is not plausible if in light of common economic experience the alleged conduct is equally likely to result from independent action"). In the end, neither plaintiffs' 12(b)(6) response—which cannot do service for a pleading—nor their complaint asserts "factual content that allows the court

---

[1] The *Cui* plaintiffs' reference to various defendants is confusingly inconsistent. On page 2 of their response, they say "CRC Defendants" is their collective shorthand for CRCPS (which plaintiffs refer to as "LLLP"); Colorado Regional Center I, LLC (which plaintiffs in their response refer to as "CRC" but which in their complaint they referred to sometimes as "GP" and sometimes as "CRC I"); Waveland Ventures LLC; and Rick Hayes. Doc.234 at 3. Yet in their complaint their shorthand "Defendants" does *not* include CRCPS. Doc.190 ¶ 49.

2

to draw the reasonable inference," *Iqbal*, 556 U.S. at 678 (internal quotations omitted), that there was any "conspiracy," let alone one involving any of the SPO Defendants.

**Available financing.** Plaintiffs assert Mr. Hayes said in a magazine article that at the time CRCPS was discussing a loan to SPO "'[t]here weren't other sources of financing available.'" Doc.234 at 3. Although not completely clear, they appear to be arguing that CRCPS could and should have secured advantageous loan terms. *Id.* at 3-4. The argument is meritless.

Plaintiffs' premise is legally wrong. The CTAC does not simply allege that CRCPS via its general partner CRC I should have negotiated more advantageous loan terms. It alleges "[n]o legitimate lender" would have agreed to the loan agreements because "[l]enders look for a return that is *certain*." Doc.190 ¶ 12 (emphasis supplied). But a return from an investment that is "certain" is an investment that is not legally permissible under the EB-5 program. *See Wang v. USCIS*, 375 F. Supp. 3d 22, 27 (D.D.C. 2019).

The article and Mr. Hayes's hearsay statement are a legal irrelevance for 12(b)(6) purposes. To the extent plaintiffs argue it shows CRCPS was in the driver's seat in loan negotiations, the article and statement cannot bear that weight. Plaintiffs did not allege, nor could they, that SPO I either was desperate for a loan or had no other options other than CRCPS. To whatever extent SPO I was motivated to borrow money, CRCPS undoubtedly was motivated to make the loan, without which none of its limited partners could apply for a green card. Additionally CRCPS was seeking a borrower in a narrow

market, i.e., borrowers who would use the money to create a certain number of jobs in certain "targeted employment areas," 8 U.S.C. § 1153(b)(5), and whose job-creation project was subject to approval from the USCIS, *see Doe v. USCIS*, 410 F. Supp. 3d 86, 97 (D.D.C. 2019). Regardless plaintiffs' assertion that credit was scarce does not compel or permit a reasonable inference that the CRCPS-SPO loan transaction was the product of fraud or other wrongdoing.

## II. *Conley* is bad law.

Citing *Conley v. Gibson*, 355 U.S. 41 (1957), and two Third Circuit cases, the *Cui* plaintiffs in boldface argue, "Dismissal under Rule 12(b)(6) is not appropriate unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Doc.234 at 5-6 (boldface omitted). In *Twombly* the Supreme Court abrogated *Conley* based on its "no set of facts" holding. *Twombly*, 550 U.S. at 563 ("[A]fter puzzling the profession for 50 years, this famous observation has earned its retirement. The phrase is best forgotten . . . ."). Both Third Circuit cases plaintiffs cite pre-date *Twombly*. After *Twombly* the Third Circuit recognized the abrogation. *See United States ex rel. Lobel v. Express Scripts, Inc.*, 351 Fed. App'x 778, 779 (3d Cir. 2009) ("Lobel challenges the District Court's judgment by relying upon the incorrect legal standard . . . in *Conley v. Gibson* . . . . As ESI rightly counters, the Supreme Court overruled *Conley* in [*Twombly*].") (citations omitted).

4

### III. The tort claims should be dismissed.

#### A. Claims 1 (fraud), 3 (CCPA) and 5 (federal securities fraud) are deficient.

**Rule 9(b).** Claims 1, 3 and 5 are fraud-based claims that the *Cui* plaintiffs brought directly which must be pleaded with particularity. They allege two fraudulent acts by one or more of the SPO Defendants: misrepresenting and concealing material facts in investment materials given to plaintiffs, and using "inflated prices" for the Collateral Units' value. *See* Doc.224 at 15.

Rather than cite to specific paragraphs in which they pleaded fraud with particularity, plaintiffs instead play coy. In our 12(b)(6) motion we pointed to the CTAC's Paragraph 94, in which plaintiffs say the misrepresentations and omissions are "*set forth in detail* above in paragraphs, *inter alia*, 56, 66, 68, 70, 73 and 74." Doc.224 at 20 (emphasis supplied; internal quotations omitted). We said none of these paragraphs "details" any fraud. *Id.* In response plaintiffs say we are wrong to "limit" the fraud allegations to those paragraphs, which they implicitly concede do not "set forth in detail" any misrepresentations or omissions. But plaintiffs do not identify any paragraphs that do "detail" or particularize allegations of fraud; instead they point to "incorporation" paragraphs in the complaint that incorporate by reference all previous allegations, e.g., Doc.190 ¶ 93 ("Plaintiffs incorporate the allegations contained in the preceding paragraphs as if fully set forth herein."). Doc.234 at 6.

Needless to say it does not advance plaintiffs' argument that they have complied with the particularization requirement when they can't or won't in their 12(b)(6)

5

response identify any paragraph in their 149-paragraph complaint in which they have alleged fraud with particularity. When we have asserted in our motion that particularity is lacking, we respectfully submit it is plaintiffs' obligation in their response to identify the particularized allegations on pain of dismissal. *See, e.g.*, *In re Rigel Pharmaceuticals, Inc. Sec. Litig.*, No. C 09-00546 JSW, 2009 WL 5125344, at *8 (N.D. Cal. Dec. 21, 2009) ("As the party bringing this action, Plaintiff is responsible for identifying with particularity what statements are false and misleading. 15 U.S.C. § 78u–4(b)(1). Plaintiff has not fulfilled its responsibility in this regard, and the Court is unwilling . . . to search through the Complaint in an effort to link the allegedly false statements to the reasons those statements purportedly are false.") (internal quotations omitted); *cf. Hull v. Shames*, No. CIV.A. 06-CV-00818WD, 2008 WL 496167, at *1 n.1 (D. Colo. Jan. 17, 2008) ("[T]he plaintiff's response does not contain any citations to factual statements made in the Complaint. It is not the Court's duty to search the Complaint for statements that are based on personal knowledge and which might serve to create a material fact dispute. It is the litigants' responsibility to provide the court with concise arguments, relevant facts, and specific citations to authorities and supporting evidence.") (citation omitted).

Plaintiffs next argue (a) CRC I (which they refer to as "GP") produced the "soliciting documents," (b) CRC I hired agents in China to solicit investors; (c) CRC I "could not have acquired" any of "the information"—plaintiffs do not identify what is "the information"—without "the participation and approval" of the SPO Defendants; and (d) CRC I with the SPO Defendants' "knowledge and understanding" produced "a

6

very deceptive and confusing prospectus promising immigration status and a secured loan transaction." Doc.234 at 6-7. They then conclude:

> There is very little in the way of mystery as to who presented this information to the Plaintiffs nor is there a question as to what is being claimed. It is shameful for the Solaris Defendants to claim to have no connection to the [PPM] while actively seeking the protections of the disclaimers contained therein.

*Id.* at 7.

Even if these factual assertions and arguments had been pleaded in the CTAC, they would not be sufficient to comply with Rule 9(b). There is in fact a great "mystery" as to what plaintiffs are accusing one or more of the SPO Defendants of doing, which one allegedly did or said what, when, what one or more of them said that was false or what they allegedly concealed, and how one or more of them "participated" in the preparation of the PPM and "approved" it. Additionally, when plaintiffs allege the SPO Defendants participated in preparing the PPM or approved it, it is perfectly appropriate for the SPO Defendants to identify PPM provisions rebutting plaintiffs' claims of misrepresentations and concealment.

**PSLRA.** The PSLRA particularity requirements are even more stringent than those in Rule 9(b). *See* Doc.224 at 18. The *Cui* plaintiffs do not contend they complied with them.

**Statute of limitations.** The *Cui* plaintiffs argue their fraud-based claims are not time-barred. The first reason is "there is no single date" to calculate the time-bar date because the "165 investors" were solicited at various times and loan advances were made

7

and matured at different times. Doc.234 at 7-8. The argument is meritless. The dates when the "165 investors" were solicited are irrelevant. There are not 165 plaintiffs; only the *Cui* plaintiffs are before the Court. They did not allege the dates they were "solicited," which is one of their Rule 9(b) and PSLRA failings. In any event all the investors subscribed to CRCPS in 2011 and 2012. *See* Doc.203 at 4 (citing Doc.203-2). The dates the loan advances were made and matured are irrelevant, since they were made in accordance with the PPM and its exhibits, which each investor reviewed before investing, Doc.203-2. *See* Doc.203-1.

Plaintiffs next argue that the PPM "always" said certain things, .e.g., the loan would be secured by real property. Doc.234 at 8. It's unclear what the argument is here. Perhaps the argument is that the statute of limitations would never run because the documents "always" contained misrepresentations. That would be a nonsensical argument. If that were true, no fraud claim based on documents ever would be time-barred.

Finally plaintiffs argue that CRC I has "continuously" sent "the investors" updates that "reaffirm[ed]" the fraud. *Id.* at 9. Assuming this is alleged in the complaint, CRC I's actions would not bear on plaintiffs' fraud-based claims asserted against the *SPO Defendants*, who are not alleged to have engaged in any communications with plaintiffs.

**IV.   The contract claims should be dismissed.**

Plaintiffs have asserted direct and derivative contract claims. In the motion we said plaintiffs lack standing to assert direct claims relating to contracts to which they are not

parties. Doc.224 at 22-23. Plaintiffs argue *Tisch v. Tisch*, 439 P.3d 89 (Colo. App. 2019), "arguably supports" their right to bring a derivative claim even if they are not parties. Doc.234 at 9. They appear to argue that because CRC I breached a fiduciary duty to them by not obtaining repayment of the cash or conveyance of the Collateral Units, they are entitled to bring a direct claim against SPO I for breach of contract. We think that is a *non sequitur*. CRC I's alleged breach of a fiduciary duty would not give rise to a limited partner's right to sue on a contract to which she is not a party. Plaintiffs cite no authority for such a rule.

Plaintiffs argue *Farmers Insurance Exchange v. District Court*, 862 P.2d 944 (Colo. 1993), give them standing to bring the direct declaratory judgment claim. Doc.234 at 10. Plaintiffs misread *Farmers Insurance*. That case does not hold that a limited partner who is not a party to a contract (albeit her partnership is) has standing to bring a declaratory judgment action as to that contract. The case cites section 13-51-106, C.R.S. (1987), for the proposition that a person "interested under a . . . contract" may seek a declaratory judgment. 862 P.2d at 947. An "interested" person under section 13-51-106 means a person who has standing. *See Shelter Mut. Ins. Co. v. Mid-Century Ins. Co.*, 214 P.3d 489, 495 (App. 2008), *aff'd*, 246 P.3d 651 (Colo. 2011).

Plaintiffs argue we "completely ignor[ed]" their derivative contract claims. Doc.234 at 9-10. That is incorrect. We made a one-paragraph argument that they lack standing to assert a direct claim for breach of contract. Doc.224 at 25-26. We made a one-sentence argument that plaintiffs lack standing to assert a direct claim for declaratory

9

judgment and cited to page 26 (ECF p.29)[2] of the motion. *Id.* at 30. All the remaining contract-related arguments were directed at plaintiffs' derivative contract claims. *See id.* at 25-32.

Plaintiffs argue the ARCU is unsupported by consideration and it is improper to rely on Mr. Hayes's testimony to contend that CRCPS received a $1 million benefit. Doc.234 at 11-12. We needn't rely on Mr. Hayes's testimony. We can simply rely on the law governing consideration and on the ARCU itself. The law says courts do not consider the adequacy of consideration. *Hatlee v. Hardey*, No. 13-cv-02469-RM-MJW, 2015 WL 5719644, at *11 (D. Colo. Sept. 29, 2015), *aff'd in part sub nom. Hatlee v. Olds*, 665 Fed. App'x 695 (10th Cir. 2016). In the ARCU, CRCPS admitted it received sufficient, good and valuable consideration. Doc.203-7, at 4.

## V. The veil-piercing "claim" should be dismissed.

Plaintiffs appear to concede that veil piercing is not a viable claim for relief. *See* Doc.234 at 12. Accordingly, the Court should dismiss it.

## Conclusion

The Court should dismiss the CTAC.

---

[2]That was a typographical error. We intended to cite to ECF pp.25-26 of the motion, where we presented the one-paragraph standing argument.

July 15, 2020

        Respectfully submitted,

        *s/ Ty Gee*
        Harold A. Haddon
        Ty Gee
        HADDON, MORGAN AND FOREMAN, P.C.
        150 East Tenth Avenue
        Denver, CO 80203
        Tel 303.831.7364
        hhaddon@hmflaw.com; tgee@hmflaw.com

        *Attorneys for Defendants Solaris Property Owner, LLC, Solaris Property Owner I, LLC, and Peter Knobel*