IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-02443

Jun Li, Qi Qin, Yi Liu, Jie Yang, et al.
        Plaintiffs,

        v.

Colorado Regional Center Project Solaris LLLP,
Colorado Regional Center I, LLC, et al.
        Defendants.

Hon. Judge Moore
Hon. Magistrate Varholak

## Motion for Admonishment and Attorney Fees against attorney Ty Gee under 28 U.S.C. §1927

**STATEMENT OF CONFERRAL PER D.C.COLO.LCivR 7.1:** counsels for the Cui Plaintiffs do not oppose this motion; counsels for the CRC Defendants do not express an opinion since the motion isn't directed to them; counsel for the SPO Defendants (Mr. Gee) opposes this motion after a telephone conferral.

### Background

Attorney Ty Gee represents Solaris Property Owner LLC, Solaris Property Owner I LLC, and their owner Peter Knobel (the "SPO Defendants"). They borrowed $82.5 million from nominal defendant Colorado Regional Center Project Solaris LLLP ("CRCPS"), collateralized by mortgages on condominium units owned by the SPO Defendants in the Solaris Vail project. The loan money came from 165 Chinese investors who have the status of limited partners in CRCPS. The loan was made in advances from 2012-2015 with 5 year maturities. The limited partners expected the general partner of CRCPS to insist that the SPO Defendants repay the loan or turn over collateral equal in value to the loan balance plus interest, thereby enabling the general partner

of CRCPS to return the investment money and interest back to the Chinese limited partners.  This never happened, because the SPO Defendants never paid it back in cash and never conveyed deeds to the collateral in repayment of what they owed.

Normally the general partner of a lender is diligent about collecting an overdue loan from a defaulting borrower.  But not here.  Perhaps this is because the general partner of the lender draws a substantial fee so long as the loan remains outstanding and uncalled, so it actually *makes* more money the longer the loan stays unpaid.  The situation was ideal for both the general partner and the borrower, so they reached a consensus  whereby the loan stayed unenforced and the general partner made fees while the borrower had unlimited use of the Chinese money.  This put the entire burden of non-payment/non-collection on the limited partners, who were aghast that the general partner didn't simply call the loan for payment -- or even *attempt* to do so.  Finally, the limited partners brought this lawsuit derivatively for the benefit of CRCPS to recover the loan money so it can be distributed back to them.  In addition, more than 70% of the limited partners voted to remove the general partner of CRCPS and to call the loan, without a single vote cast in support of the general partner and the borrower.

Two groups of limited partners (the "Li Plaintiffs" and the "Cui Plaintiffs") brought derivative actions in the name of CRCPS to sue the SPO Defendants to force repayment of the loan. Basically, this is just like any other case to recover an unpaid loan, aside from a few nuances such as it being a derivative action, it has a securities law aspect, and there are two sets of plaintiffs. But at bottom the case is simple: the SPO Defendants won't repay the loan, the general partner of CRCPS refuses to demand repayment because it draws management fees for as long as the loan remains outstanding, and so the limited partners had to take matters into their own hands by suing both of them and bringing a derivative action to collect the loan for CRCPS.

The SPO Defendants moved to dismiss the Complaints under Rule 12(b)(6). In response, attorney Litowitz voluntarily dropped several counts from his Complaint to make it simpler. The matter is fully briefed, with SPO having submitting both an initial motion and a reply brief. Judge Moore set it for a hearing on August 31, 2020.

**<u>Inappropriate Conduct</u>**

By email dated August 6th, Mr. Gee threatened both sets of Plaintiffs' counsels (attorney Litowitz for the Li Plaintiffs and attorney Stewart for the Cui Plaintiffs) that he would file a Rule 11 motion against them as soon as August 27th unless they voluntarily dismissed all of his clients. <u>See</u> Exhibit 1 for Mr. Gee's email and the proposed motion.

To clarify: Mr. Gee is threatening to file a Rule 11 motion 4 days before this Court is scheduled to hear his Rule 12(b)(6) motion seeking the exact same remedy of dismissal. Indeed, his Rule 11 motion incorporates and repeats his Rule 12(b)(6) motion, which he admits:

> "I contend that the arguments made in our Fed. R. Civ. P. 12(b)(6) motion and reply are sufficient not only to establish the basis for dismissal but also for sanctions under Rule 11(c); so I will be relying substantially on this papers."

This threat is legally deficient on many levels, as explained below. But in a larger sense, Mr. Gee's threat is an intimidation tactic to usurp Judge Moore's decision-making autonomy. He is trying to preempt Judge Moore from being the decision-maker, by pushing the bizarre notion that a lender must dismiss a borrower who hasn't paid back a loan or else the lender's attorney will be threatened with sanctions. Mr. Gee knows that the borrower of an unpaid loan can never be dismissed from a lawsuit to collect that loan, and he knows that even if the borrower asserts a disputed factual claim that the loan was somehow magically extended or prepaid, this factual dispute precludes a

3

dismissal under Rule 12(b)(6). So Mr. Gee is attempting an end run around Judge Moore's authority and discretion by trying to get a preemptive victory before letting Judge Moore hear the motion, and by casting a pall over attorneys Litowitz and Stewart during the entire August 31st hearing.

The Advisory Committee Notes to Rule 11 say that it should not be invoked when the Court is already hearing a simultaneous motion to test the sufficiency of the pleadings, such as a motion under Rule 12(b)(6):

> [Rule 11] should not be employed . . . to test the legal sufficiency or efficacy of allegations in the pleadings; other motions are available for those purposes. Nor should Rule 11 motions be prepared to emphasize the merits of a party's position, to extract an unjust settlement, [or] to intimidate an adversary into withdrawing contentions that are fairly debatable. . .

Advisory Committee Notes - 1993. In other words, it is unprofessional to threaten Rule 11 sanctions for the purpose of goading opposing counsel into prematurely withdrawing claims, because such threats will cause opposing counsel to withdraw perfectly good claims due to fear of personal liability.

Mr. Gee also reverses the proper sequence of Rule 11 and Rule 12 motions. Rule 11 motions do not come *prior* to a Rule 12 hearing, but afterwards: "[S]anctions under Rule 11 normally will be determined at the end of the litigation, *and in the case of motions at the time when the motion is decided or shortly thereafter*." Notes of Advisory Committee on Rules - 1983 (emphasis added).

Notice the timing: Mr. Gee has threatened to file a Rule 11 motion on August 27th which would deprive attorneys Litowitz and Stewart of sufficient time to respond by the 31st, meaning

4

that the lawyers would head into the August 31st hearing with the Court having heard only Mr. Gee's side of the Rule 11 motion. This is a deliberate attempt to monopolize the Court's attention in his favor and to cast one-directional aspersions on opposing counsel.

Even worse, Mr. Gee wrongfully wraps his Rule 11 motion around his Rule 12 motion, in violation of this Court's Civil Practice Standard IV.A which says that, "Absent leave of Court, a motion . . . may not incorporate by reference another motion or filing." But Mr. Gee admits that his proposed Rule 11 motion is a restatement of his Rule 12 motion, and even incorporates parts it by reference:

> "The relevant facts are set forth in the SPO Defendants' motion to dismiss. We incorporate them here by reference … We incorporate by reference here Doc. 224 at 20 and Doc. 232 at 2-5 [the Motion to Dismiss and the Reply]"

Ex. 1 Motion at p. 3, 9. In the space of a single page (11-12), Mr. Gee incorporates earlier motions nine (9) times:

> *See* Doc. 224 at 18-20…*See* Doc. 224 at 17-24; Doc 240 at 5-8...
> *See* Doc. 224 at 25-26…*See* Doc. 224 at 28-30; Doc. 240 at 8-10…
> *See* Doc. 224 at 30-32; Doc. 240 at 8-10…*See* Doc. 224 at 32-33.

This proves that his Rule 11 motion is a wrap-around of his Rule 12 motion, in violation of the Civil Practice Standards.

Just from a logical perspective, Mr. Gee's demand to have the borrowers of a loan dismissed in an action on the loan is nonsensical. The borrowers of a loan are necessary parties in a loan enforcement action, since relief cannot be afforded in their absence. Both Complaints explain (in great detail) the terms of the underlying loan agreement, the failure of the SPO Defendants to pay back the money in cash, the failure of the SPO Defendants to properly convey

5

collateral as repayment, and the resultant breach of contract for which CRCPS is owed damages. There is no way that this rises to a Rule 11 issue.

Indeed, Mr. Gee's motion to dismiss [ECF 224; p. 10] concedes the facts alleged in the Complaints: he admits that his clients borrowed $82.5 million from CRCPS. He admits that the loan was never <u>prepaid</u> in cash nor paid at maturity. He admits that the loan was secured by condominiums whose value was set as of 2010, despite their precipitous decline in value by the time of the loan advances in 2012-2015.  He admits that his clients never conveyed a special warranty deed of the collateral to CRCPS as repayment, even though this is the only permissible method of repaying the loan under the Private Offering Memorandum, the Agreement Regarding Collateral Units, and Colorado law, all of which say that no 'conveyance' is effective without a transfer of deed.

Mr. Gee complains about delay and cost, but the status quo is that the Plaintiffs have lost all their life savings in this investment, while Mr. Gee's clients have spent 7 years sitting on $82.5 million of Chinese money that never belonged to them in the first place.  The delay *benefits* Mr. Gee's clients because it gives them a longer time to pay back the borrowed money; and the costs of litigation *benefit* Mr. Gee's clients because they are sitting on $82.5 million of the Plaintiffs' money to use as a war chest, while the Plaintiffs are living on hope.

Mr. Gee has already had two bites at the apple: a motion to dismiss and a reply brief.  And Judge Moore is giving him an in-person hearing in the middle of a pandemic.  That is a courtesy from the Court.  He has repaid Judge Moore by trying to preempt His Honor from deciding the case, and by issuing out-of-court threats instead of in-court legal arguments.

Finally, Mr. Gee sees a Rule 11 violation in the naming of Peter Knobel as a Defendant, but Knobel's fingerprints are all over this loan transaction and he is the beneficial owner and manager of the flow-through SPO entities, so all the benefits of the $82.5 million loan went to him. Apparently he wants the proceeds of the loan to be passed upward, but not the responsibility to repay it. This is nonsense, as the Li Plaintiffs said in their Response:

> SPO claims that Knobel is not involved here, but his signature is on the Loan Agreement, Operating Payment Agreement, Guaranty Agreement, Memorandum of Understanding, and he owns and manages and gets the profits of SPO. Colorado law allows piercing of an LLC that is an instrument of the owners. *Griffith v. SSC Pueblo Belmont Operating Co.,* 381 P.3d 308, 313 (Colo. 2016); *Stockdale v. Ellsworth*, 407 P.3d 571, 576 (Colo. 2017). The determination of whether a court should pierce the veil is a "mixed question of law and fact" which should not be decided on a motion to dismiss which addresses solely the pleadings. *Id.* at 576; *Lester v. Career Bldg. Acad.*, 338 P.3d 1054, 1062 (Colo. App. 1st Div. 2014). Further, the pleading standard for veil piercing is liberal. *Wichita Destination Developers, Inc. v. Focus Hospitality Services, LLC*, 365 F. Supp. 3d 1172, 1181 (D. Kan. 2019). Accordingly, the pleadings of veil piercing and the listing of owners as defendants is reasonable at this juncture. [ECF 230].

At this juncture - the pleading stage - the Plaintiffs merely need to allege that the loan was not properly paid, that the entire transaction was structured with the intention that the securities (the limited partnership interests) would be under-collateralized and never returned to the Chinese investors at full value, and that Knobel helped to build this structure and benefitted from it. That is precisely what the Plaintiffs have argued. This is a standard argument found in every courtroom in every city in this country. Rule 11 has no place here.

It is troubling that Mr. Gee never counseled his clients to pay back the money they borrowed. *That* would have saved all the delays and costs.

## **Mr. Gee Should Be Admonished and Pay Attorneys' Fees**

Mr. Gee should be aware that Rule 11 cuts both ways: "[T]he filing of a motion for sanctions is itself subject to the requirements of this rule and can lead to sanctions." Advisory Committee Notes - 1993. Some courts have imposed Rule 11 sanctions on the *filer* of the motion. *Claudet v. First Federal Credit Control, Inc.,* 2015 WL 7984410 *3 (M.D. Fla. Nov. 17, 2015)(sanctioning the *filing* party, who filed the Rule 11 motion to create anxiety and harass opposing counsel). So if he does bring a Rule 11 motion, he will face a counterclaim for Rule 11 violation.

But the mere invocation of Rule 11 is inappropriate here. This Court has inherent power under 28 U.S.C. §1927 to sanction counsel for unprofessional conduct that multiplies the proceedings:

> Any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

This statute applies to attempts by a lawyer to deprive the court of jurisdiction, which is what Mr. Gee is trying to do by using threats to force an outcome prior to the Judge hearing the matter. *Chambers v. NASCO, Inc*., 501 U.S. 32, 57, 111 S. Ct. 2123 (1991). In *Chambers*, the United States Supreme Court held that a federal court has broader powers under 28 U.S.C. §1927 than under Rule 11, and that sanctions were appropriate when a party tried to use out-of-court methods to deprive the court of jurisdiction: "the party may be sanctioned for abuses of process occurring outside the courtroom". *Id.* at 57. See, also, *Farmer v. Banco Popular of North America*, 791 F.3d 1246, 1257 (10th Cir. 2015)(holding that a district court has the inherent power to sanction bad faith conduct under 28 U.S.C. §1927). Therefore, this Court has the power to make Mr. Gee

8

compensate opposing counsel for threatening a Rule 11 motion to gain an extrajudicial tactical advantage.

Judge Moore laid out a clear timeline for hearing a number of motions on August 31st, including motions under Rule 12(b)(6).  Mr. Gee has disrespected Judge Moore by throwing a wrench into Judge Moore's timeline and extorting Plaintiffs' counsels with threats of personal liability. This is a naked power grab to usurp this Court's judicial power and to wrongfully influence the litigation process.   Mr. Gee has already made his arguments twice (in a motion to dismiss and a reply brief) and he is getting a hearing on August 31st; to add a Rule 11 motion on top of this is to multiply proceedings unreasonably and vexatiously, especially when his demand is to dismiss borrowers of an unpaid loan from a lawsuit to collect that very unpaid loan.

WHEREFORE, Plaintiffs ask this Court for an admonishment of Mr. Gee and an award of attorneys' fees to opposing counsel in an amount deemed reasonable by the Court.


Dated: August 10, 2020                    Respectfully Submitted,


                                          /s/ Douglas Litowitz
                                          413 Locust Place,
                                          Deerfield, IL 60015
                                          312-622-2848
                                          Litowitz@gmail.com


**Certificate of Service**

This document was filed on the ECF system for the District of Colorado on August 10, 2020 and thereby sent to all counsels of record.