1   IN THE UNITED STATES DISTRICT COURT
    FOR THE DISTRICT OF COLORADO
2

    Civil Action No. 19-cv-2443-RM
3

    JUN LI, et al.,
4

        Plaintiffs,
5

6   DIANWEN CUI, et al.,

7   Consolidated Plaintiffs

8   vs.

9   COLORADO REGIONAL CENTER PROJECT

10  SOLARIS LLLP, et al.,

11  _____

12

13                  **REPORTER'S TRANSCRIPT**
                         Hearing
14

15  _____

16          Proceedings before the HONORABLE RAYMOND MOORE, Judge,

17  United States District Court for the District of Colorado,

18  commencing at 9 a.m., on the 31st day of August, 2020, in

19  Courtroom A601 and VTC, United States Courthouse, Denver,

20  Colorado.

21

22

23

24  Proceeding Recorded by Mechanical Stenography, Transcription
    Produced via Computer by Tammy Hoffschildt, 901 19th Street,
25      Room A251, Denver, Colorado, 80294, (303) 292-1088

**APPEARANCES**

Douglas Litowitz, Douglas Litowitz, Law Office 413 Locust Place, Deerfield, IL 60015, appearing for Li Plaintiffs.

Brian Patrick Stewart, Ardent Law Group P.C., 4340 Von Karman Avenue, Suite 290, Newport Beach, CA 92660, appearing for Cui Plaintiffs.

James D. Kilroy, Snell & Wilmer LLP-Denver, 1200 17th Street, One Tabor Center, Suite 1900, Denver, CO 80202, appearing for, Colorado Regional Center Project Solaris LLLP, defendants.

Stephanie Kanan, Snell & Wilmer LLP-Denver, 1200 17th Street, One Tabor Center, Suite 1900, Denver, CO 80202, also appearing for Colorado Regional Center I, LLC, and appearing via VTC.

Ty Cheung Gee, Haddon Morgan & Foreman, P.C., 150 East 10th Avenue, Denver, CO 80203, appearing for Solaris Property Owner LLC, defendants.

\*   \*   \*   \*   \*

**PROCEEDINGS**

(In open court at 9:03 a.m.)

    *THE COURTROOM DEPUTY:*  All rise.  Court is in session.

    *THE COURT:*  Please be seated.  Scooch a little more that way.  No, not you, counsel.  Whoever -- there you go. Those numbers that are on the seats, are spaced 6-feet apart, and that's what I use as my guides for where people should sit.

    All right.  We're here on 19-cv-2443, which is consolidated with 19-cv-2637, without getting into the details

1    of the full captions, essentially 2443 is Jun Li, J U N space L

2    I, versus Waveland Ventures, LLC, Colorado Regional Center

3    Project Solaris, LLP, Colorado Regional Center I, LLP, and

4    others.

5         The second case -- I actually did that backwards.

6    What I just gave is for the -- what I call the Cui case.  The

7    Li case, there are so many names, and I am going to get them

8    confused, 2443 is H S I N-Y I versus the same plaintiffs as

9    previously stated; that is, Waveland Ventures, LLC and others.

10        And if there's some mistake in my delineation of the

11   names, so be it, but the case numbers are correct.  In a very

12   simple way, what I have done is to -- what the parties have

13   done, and I have agreed to -- I have gone along with, is to

14   kind of cluster the parties into groups.  What I call the Li

15   Plaintiffs, would be the plaintiffs for the 2443 case.  What I

16   call the Cui Plaintiffs, would be the plaintiffs for the 2637.

17   What I call the CRC defendants, is a cluster of individuals;

18   and then finally, the -- the Solaris is the final cluster, and

19   as I understand it, it's Li, and I am now pointing at the

20   tables, Li, Cui, CRC, Solaris.

21        Simple rules for today.  Number one, no one stands.

22   I'm not -- and no one is going to the podium.  There are two

23   reasons for that; number one, is you can tell, my court

24   reporter is not here.  She is appearing remotely, and she will

25   best be able to hear if we utilize the microphones that are on

4

1    the -- the tables.  Of course that would suggest that you

2    should use the common mic, but given that, the circumstances

3    that we find ourselves in, I prefer to keep each party, if you

4    would, isolated at a particular location, using his own

5    microphone, and not cross trading with anyone else.

6          So, I don't need anybody to stand.  I do need you to

7    speak into the microphones, and let me take appearances after

8    all of that.  Starting with what I call the Li Plaintiffs.

9          MR. LITOWITZ:  Good morning, Your Honor,

10   Douglas Litowitz, L I T O W I T Z, for the Li Plaintiffs.

11         THE COURT:  Good morning to you, sir.  In the back.

12         MR. STEWART:  Good morning, Your Honor.  Brian

13   Stewart, B R I A N, S T E W A R T, from the Ardent Law Firm, on

14   behalf of Cui Plaintiffs.

15         THE COURT:  All right.  Can you pull that?

16         MR. STEWART:  I was trying to pull it.

17         THE COURT:  If the chord seems too short, believe me,

18   it will come, if you put some force on it.  Coming back to the

19   CRC Defendants.

20         MR. KILROY:  James Kilroy for the CRC Defendants.

21         THE COURT:  And for the -- just for the -- get the

22   listing of the CRC Defendants.  I know who they are, but...

23         MR. KILROY:  CRC Defendants are Colorado Regional

24   Center I, which we're calling CRC I --

25         THE COURT:  We will get to that in a minute.  Go

1  ahead.

2        *MR. KILROY:*  Colorado Regional Center, and Waveland

3  Ventures, LLC.

4        *THE COURT:*  Okay.  And then in the back?

5        *MR. GEE:*  Good morning, Your Honor.  My name is

6  Ty Gee, and I represent the other set of the defendants Solaris

7  Property Owner, Solaris Property Owner I, Peter Knobel and

8  with -- also attending to my right, behind me, is Ryan Smith,

9  who is a representative of the clients.

10        *THE COURT:*  All right.  What is not apparent, from the

11  mere entries, is that there is one more defendant, nominal

12  plaintiff.  There's another party; and that is, Colorado

13  Regional Center, Solaris, LLP.  They are not represented.  The

14  reason they are not represented is evident, if you search

15  through the docket, and what we will do with that is something

16  that we'll discuss today.

17        They are an entity.  They cannot appear pro se.  They

18  have to appear by counsel for a variety of reasons.  They were

19  previously represented by Snell & Wilmer, and for a variety of

20  reasons Snell & Wilmer withdrew from the representation and

21  there's now a dispute as to whether or not the limited partners

22  have, if you would, taken over, or whether CRC I, which is,

23  slash, was, the former general partner, still runs things, and

24  because of that dispute, who hires counsel is in dispute, and

25  we have that fine legal term, a mess on our hands, but ... it

1  is what it is, and for today, we're going to go forward that

2  way.

3       All right.  You have heard that these names of the

4  parties are a mouthful, and so, in terms of the Li Plaintiffs,

5  I have just called them by that name, and frankly, they have

6  called themselves, and others have called them by that name.

7  It refers to a collective number of limited partners of CRCPS,

8  Chinese investors, as I understand it.  Others are the

9  plaintiffs or the body of plaintiffs in 2637, they are the Cui

10  Plaintiffs.  Again, the same shorthand being used.

11       As we come over to the defendant's side, and I just

12  want to get the acronyms straight, because different --

13  different pleadings, you will see things referred to different

14  ways.  I want everybody to understand the shorthand that I am

15  using, and that I would invite you to each use in the future,

16  for a consistencies sake.  I don't think there's going to be

17  any tremendous surprise, Waveland Ventures, LLC, Waveland,

18  Colorado Regional Center, LLC, CRC.  As I understand it,

19  Waveland -- well, CRC is wholly owned by Waveland.  And if I

20  get this wrong, I don't want anybody pausing.  Just correct me

21  and let's get it straight.  CRC owns CRC I, LLC, and I am just

22  going to call that -- excuse me -- CRC owns Colorado Regional

23  Center I, LLC, who I will call CRC I, and then, as I mentioned

24  there is a dispute, that is remaining, with regard to Colorado

25  Regional Center Project Solaris, LLP.  They have been called a

1    number of things, I will call them CRCPS.

2           In terms of the Solaris entities, Solaris Property

3    Owners, LLC, is SPO, as far as I'm concerned, and then Solaris

4    Property Owner I, LLC, is SPO I.  The project that was in Vail

5    is these various residences, and we can either call them the

6    "project" or the "residence" or Solaris, that part makes little

7    difference to me.  But I just want to make sure that if I make

8    a reference to, in shorthand, everybody knows what I'm talking

9    about, and I would invite each of you to make the same

10   references.

11          All right.  We're going to walk through a number of

12   things.  Let me tell you that, obviously, there are masks?

13   Obviously, if you brought water, you can remove it to -- to

14   drink the water.  There are -- there -- occasionally been

15   instances where someone has had something happen to where they

16   had to sneeze, and so they remove their mask to sneeze, and I

17   wanted to shoot them.  I recognize sneezing into the mask and

18   then keeping it on your face can be described in several terms,

19   one of which might be gross.  So, I don't mind you removing the

20   mask, if something like that were to occur.  All that I would

21   ask is that you either sneeze into your arm or there -- there

22   is -- there are some boxes, they are not exactly within arm's

23   length, on each table.  There are some boxes of tissues that

24   are around the room, and if you need to get one, just don't

25   even ask, just go, get it, have it at your table and use it.

8

1          The final thing I will say is we had Purell, and it --

2     it seemingly appears and disappears.  Some of the tables have

3     them, some of the tables don't.  You are free to use as much or

4     as little of that as you want.  I will also tell you that after

5     each hearing we have the courtroom cleaned, and I don't mean

6     dusted, I mean each place where the people move is sprayed

7     down, wiped down, with disinfectant and cleaner, including the

8     places where the people are seated in the back.  To some extent

9     that is a further reason why I control the movement of people.

10    We're keeping track of who goes where and who touches what and

11    that's all for your benefit and for everyone else's.

12         There's a lot of things to talk about today.  I'm not

13    saying that we're going to necessarily have bench rulings

14    today, but I want to just work through several things.

15         Let me start, before we get to the motions, with the

16    issue of the Li Plaintiffs direct claims, and again, there's a

17    lot of paper, and I have tried to have notebooks and charts,

18    and frankly the pieces move, and if I get this wrong, again,

19    don't be shy about interrupting me.

20         Where things now stand, as I understand it, is that

21    the operative Complaint, both the Li Complaint and the Cui

22    Complaint is the Third Amended Complaint.  There have been

23    Motions To Dismiss, that have been filed by the CR -- well ...

24    by counsel for the CRC Defendants and counsel for the SPO

25    Defendants, and I say that because, it's off the top of my

9

1    head, I think it may even be the case that -- it's hard for me

2    to remember whether CRCPS was included in the collective

3    response of -- the collective Motion To Dismiss that was filed.

4    It was not.  Okay.  But, in any event, what we had was a

5    Complaint, Motion To Dismiss, and then the Li Plaintiffs said,

6    in a response to one of those motions, that it was moving --

7    well, that it was dismissing its direct claims against the CRC

8    entities, or defendants.

9         The only difficulty with that is one which I intend to

10    solve; and that is, the rules don't really allow for dismissal

11    of some things, and -- less than all of the case, voluntarily

12    or on your own or without Court order, I intend to -- and I

13    will give counsel if there's an objection to this, I intend to

14    interrupt or extract from the response that position as a

15    motion to dismiss the direct claims that were filed in the Li

16    Plaintiff's Complaint, and to grant that dismissal; thereby,

17    eliminating those claims from the Third Amended Complaint on

18    behalf of the Li Plaintiffs.

19         Having said that, I also want to recognize that I

20    understand -- no I -- let's just stop there.

21         Mr. Litowitz, is there any objection to that?

22         *MR. LITOWITZ:*  No.  You are absolutely correct.

23         *THE COURT:*  All right.

24         *MR. GEE:*  Your Honor --

25         *THE COURT:*  This sounds a little stupid, but I'm going

1    to -- I'm going to ask you to do this for me, until I get --

2    exactly, until I get used to the sounds of their voices, since

3    I can't tell whose mouths are moving, do something to -- to

4    make me see who it is that's talking.  All right.

5           Mr. Gee, go ahead.

6           MR. GEE:  Your Honor, you didn't mention the SPO

7    Defendants, but we the SPO Defendants, we read Mr. Litowitz'

8    response to the CRC Defendant's motion to dismiss as also

9    including any direct claims against the SPO defendants.  In

10   other words, preserving only the derivative claims against the

11   SPO --

12          THE COURT:  In fairness, there's a piece of me that I

13   think read that, that way, but let's just be clear; is that

14   correct?

15          MR. LITOWITZ:  That's correct, Your Honor.

16          THE COURT:  All right.  So, all of the direct claims,

17   regardless -- yes.

18          MR. STEWART:  Agreed, but I wanted to point out that

19   in addition, I think the Li Plaintiffs conceded two of the

20   derivative claims, Count 4 and their first Count 7.

21          THE COURT:  We will get to that.  We will get to that,

22   because there are some things that -- that -- what I'm trying

23   do is make sure that I understand where we are today.  All

24   right.

25          So, all of the Li direct claims are -- have been moved

1    to be dismissed.  I have granted the motion, and they are

2    dismissed.  The Li Plaintiffs are proceeding solely on the

3    basis of derivative claims?

4         *MR. GEE:*  Correct, Your Honor.

5         *THE COURT:*  All right.  Minor, minor point, in terms

6    of going forward, in the future, there are some shortcuts that

7    have been taken, and I want to discourage you from attempting

8    to take the shortcuts, again.

9         What I mean by that is that the Practice Standards

10   have page limits, and local rules of the practice standards

11   govern how papers are to be filed, and one of the things that

12   is there is that you can't just incorporate, by reference, or

13   join in, somebody else's argument.  The reason is, and I am

14   just -- I'm just saying this by way of an example, if, in fact,

15   the CRC Defendants and the SPO Defendants, were to respond to

16   something from the Li or Cui Plaintiffs, and there's a ten-page

17   limit, well, the CRC people could make one argument expansively

18   across ten pages, and then say, "Oh, and I am going to

19   incorporate the SPO.  The SPO could make another argument

20   expansively, over ten pages, and say, "I am going to

21   incorporate the CRC's" and what you end up is, essentially,

22   each of you filing a 20-page motion.

23        I'm not saying that I won't grant a motion to join, I

24   just want it done by request to the Court, as opposed to by

25   acquiescence of the parties.

1          Having said that, I'm not striking anything that

2     anybody has filed up to now or not considering it.  Just

3     saying, going forward, let's just get in line with the way that

4     I normally do things and proceed along those lines.  Okay.

5          The next thing I want to do may sound a little absurd,

6     and frankly I don't care how much absurd it sounds, but what I

7     want to do is to walk through and make sure that I have an

8     understanding as to who the various counts of the Complaint are

9     against.  Having said this, let me be clear about something,

10    the documents are what they are, and I'm not suggesting that by

11    asking this question.  I am allowing some amendment or change

12    in the -- in the pleadings, but it is possible that I simply

13    have misunderstood something and want to, at least, identify

14    where there may be issues and what those issues might be.

15         So, I'm starting with the Li Plaintiff's Third

16    Amendment Complaint, and I'm just going to walk through this

17    count by count, telling you what I see.

18         There are, as I understand things, five counts that

19    are still in play?

20         *MR. LITOWITZ:*  Exactly.

21         *THE COURT:*  Count 1 is against CRC I, Breach Of

22    Fiduciary Duty?

23         *MR. LITOWITZ:*  Correct.

24         *THE COURT:*  Count 2 is against CRC, SPO, SPO I, Knobel

25    and the LLC Principles for Civil Theft.

1        MR. LITOWITZ:  Correct.

2        THE COURT:  It is not at all clear to me, who the LLC

3   principles are, or whether they are actually in this lawsuit.

4        MR. LITOWITZ:  Well, Your Honor, if I may, we have

5   been trying to find that out for quite sometime, and we've

6   asked the other side for a list, and they won't give it to us.

7   So, we have had to speculate.  There's no public records

8   because these are LLCs, and we can't find out who the owners

9   are, and our requests for a full list of the owners, for

10  jurisdiction purposes, because for an LLC, the jurisdiction is

11  where the members are.  They haven't given it to us.

12       So, I have used a shorthand by saying the principles;

13  meaning, that when I do find out who owns it, I will have the

14  proper parties to pierce the veil, too.

15       THE COURT:  All right.  But right now, we don't have

16  anybody -- and I understand why, but right now we don't have

17  anybody that is identified in the caption or by name in the

18  pleadings that corresponds to that generic reference.

19       MR. LITOWITZ:  That is correct.  We have guesswork,

20  but we don't have -- we don't have that.

21       THE COURT:  Let me come over to Mr. Kilroy.  I'm

22  sorry, I -- well, I'm -- maybe not sorry.  My note says that,

23  Mr. Kilroy, you had a partner, Stephanie Kanan, who was

24  appearing by VTC.

25       MR. KILROY:  She is.

1        *THE COURTROOM DEPUTY:*  No, Your Honor.  She is still

2    there.

3        *THE COURT:*  Okay.  All right.  I can't see her, but

4    welcome and good morning to you, ma'am.  She can't respond?

5        *MS. KANAN:*  Thank you, Your Honor.

6        *THE COURT:*  She can respond.  All right.  Mr. Kilroy,

7    excuse me, please.

8        *MR. KILROY:*  Before I do, Your Honor, I forgot to

9    mention that Rick Hayes, my client representative, managing

10   director of CRCP --

11       *THE COURT:*  We will get to him.

12       *MR. KILROY:*  -- is back at the back of the room.  I

13   just wanted to make sure you know that.

14       *THE COURT:*  Is he the one far right?  I got him.  I

15   got him.  He is the one I moved.

16       *MR. KILROY:*  Right.  And I think what Mr. Litowitz

17   said is correct.

18       *THE COURT:*  Okay.  Count 3 goes to SPO I, for Breach

19   Of Loan Agreement?

20       *MR. LITOWITZ:*  Correct.  Count 4 goes to SPO I, for --

21   shorthand is, in fact, shorthand, but transfer of title to

22   CRCPS.

23       *MR. LITOWITZ:*  Count 4 has been stricken, Your Honor.

24       *THE COURT:*  I'm sorry.  Count 4 is out.  That's

25   correct.  Count 5 I should say goes to CRC I --

1          *MR. LITOWITZ:*  Correct.

2          *THE COURT:*  -- securities?

3          *MR. LITOWITZ:*  Correct.  And then the final count --

4          *THE COURT:*  The final count is Count 6, which goes to

5     CRC and...

6          *MR. LITOWITZ:*  Knobel.

7          *THE COURT:*  Knobel.  All right.  I have a question,

8     with regard to this count.  Again, I'm not amending anything,

9     I'm just trying to figure it out, how you see it.

10         *MR. LITOWITZ:*  Okay.  I can tell you briefly --

11         *THE COURT:*  No, no, no, no.  Let me tell you what my

12    issue is, and then we can see whether we're on the same page.

13         *MR. LITOWITZ:*  Sure.

14         *THE COURT:*  If you look at Count 6, what it says,

15    right below the number, is derivative against CRC, its

16    principles and Knobel, personally.

17         Now, flip over to the "wherefore" that applies to that

18    count, and it says, "Wherefore, the plaintiffs demand that

19    CRCPS hold CRC and SPO I and their affiliates and principles

20    accountable."

21         So...

22         *MR. LITOWITZ:*  Yeah, that's a typo.

23         *THE COURT:*  Who is this against, in your view?  And

24    what is it asking me to do?  Because, obviously, there's no

25    reference in the titling, if you would, of the count to SPO I,

1    and I have no idea who SPO I's affiliates and principles are,

2    in any event.

3         MR. LITOWITZ:  Basically, that's a typo, in the

4    wherefore it should say Knobel, and I want to explain further,

5    Your Honor, that the way this is set up --

6         THE COURT:  So, it's not SPO?

7         MR. LITOWITZ:  Correct, right, that's a typo.  The way

8    this structure is set up, all of the entities, you will notice

9    are LLCs; SPO, LLC, SPO I, LLC, CRC, LLC, CRC I, LLC.  So, they

10   are all flow-through entities, which means that the benefits of

11   the loan, that was given to the Chinese money went up, because

12   these are all flow through, and so, as a person pleading, I

13   want to look for who is benefiting, cui bono, as we say in

14   Latin, right?

15        THE COURT:  We don't speak Latin, but you're free to

16   do so with all of the dead Romans you can find.

17        MR. LITOWITZ:  I can do Chinese if you want, but, you

18   know, we're kind of looking at an Enron'esque structure --

19        THE COURT:  I need counsel to put it on.  Don't worry

20   about that.  I understand that I'm not.  I have got reasons

21   that I don't intend to put on the record, and on top of that,

22   I'm a good --

23             (Interruption in proceedings from the At& T operator.)

24        THE COURT:  Yes, it is.  Please, go away.

25             All right, and I am good 30 feet from anybody, so

 1   that's why.  But having said all of that, you gentlemen are

 2   closer than I am to any of you.  I understand it is a pain, it

 3   is uncomfortable, and if you would like to, I can provide you

 4   with one of the --

 5           MR. STEWART:  I'm fine, Your Honor.

 6           THE COURT:  Okay.  That's fine.  This is part of the

 7   reason why I wanted to do this in person, because this ...

 8   stuff happens far more frequently than Judges want to admit.  I

 9   will leave it to Ms. Pearson to try to get it reestablished.

10   If not, we may have lost Ms. Kanan, but counsel is present in

11   the courtroom.

12           (Pause in proceedings.)

13           THE COURT:  This is more complicated than your

14   pleadings, but what can we do?  All right.

15           MR. LITOWITZ:  You are lucky you didn't get a call

16   center in the Philippines.

17           Because these are all LLCs and are flow-through

18   entities, as a person who is doing the pleading, we want to

19   find out, you know, where the money goes, and who made the

20   decisions, and we have been stymied in that by the defendants,

21   and so, we pleaded in this manner, just to indicate, we are

22   asking the Court, at some point, just to put it on the record

23   that at some point we are looking to pierce the veil.

24           THE COURT:  I understand that.  I understand that, and

25   I am not -- I'm not really here so much as to argue about the

18

1   various things that have set you each at each other's throats

2   throughout the pleadings, so much as to make sure that I

3   understand what I have got in front of me, and at least give

4   you an opportunity to explain.

5          All right.  So, let me switch over to the Cui

6   Plaintiffs.  As I understand it there are only eight counts --

7          MR. STEWART:  I believe that's correct.

8          THE COURT:  -- that are still in play.  And again, I'm

9   just going to walk through them in shorthand.

10          MR. STEWART:  I love that you are going to do that.

11          THE COURT:  Count 1, is against all defendants?

12          MR. STEWART:  Correct.

13          THE COURT:  There may or may not be an issue here,

14   because I don't know what you mean by all defendants, and the

15   reason that I say that is that ECF -- at paragraph 49, it says

16   defendants of Waveland, CRC, GP, which I interpret as CRC I?

17          MR. STEWART:  Correct.

18          THE COURT:  SPO, SPO I, Rick Hayes, Peter Knobel and

19   the Doe Defendants, are collectively referred to as defendants,

20   quote/unquote.  CRCPS is not in that list.

21          MR. STEWART:  No, Your Honor.

22          THE COURT:  Okay.  And I just want to make sure that

23   we have the same understanding, when I say, Count 1 is against

24   all defendants, it's all defendants as defined?

25          MR. STEWART:  I understand, that is a problem.  Our

1    Complaint was only -- only nominally named CRCPS, which is why

2    Mr. Kilroy and I don't have the same problem that he had with

3    Mr. Litowitz.

4            So, it is intended to be all defendants.  I was --

5    CRCPS should be included in the definition.  That's a problem.

6            THE COURT:  It's a problem.

7            MR. STEWART:  As if -- I mean, there's still only a

8    nominally defendant because they belong, nevertheless, I

9    understand what you are saying.

10           THE COURT:  All right.  Count 2 is against CRC, and

11   CRC I for Breach Of Fiduciary Duty?

12           MR. STEWART:  Correct.

13           THE COURT:  Count 3 is against -- again, I'm not going

14   to repeat the issue, but it's against all defendants for the

15   Colorado Consumer Protection Act?

16           MR. STEWART:  Same issue.

17           THE COURT:  Count 4 is against CRCPS, and CRC I, for

18   failure to register as an investment company.

19           MR. STEWART:  Correct.

20           THE COURT:  Count 5, I have further question about.

21   It's the same issue with more air blown into it, and what I

22   mean by that is this, it is against all defendants, but then

23   when you get down to the -- the very last -- the prayer

24   provision, it says, "Accordingly, the LLLP, which is what I

25   call CRCPS, is required to fully refund the 85 investors'

1      investment, plus the administrative fees they paid."

2              So, it purports to be against everyone, but only seeks

3      relief -- specified relief against one, and the one it seeks

4      the specified relief against isn't included in the definition

5      of the everyone.  Am I -- again, look, I'm not here shaking a

6      finger or wagging or even getting upset.  I just want to make

7      sure that I give everyone an opportunity, if I have screwed

8      this up, to let me know what it is that I'm just not seeing

9      right.  And if I'm seeing it correctly, and you agree, well,

10     then we move on, because I'm not here to decide an issue based

11     on this.  I'm simply trying to make sure that my understanding

12     is correct.

13             *MR. STEWART:*  Your Honor, if you are reading it --

14     it's correct.  It's the way that -- you are reading it

15     correctly.

16             *THE COURT:*  Okay.

17             *MR. STEWART:*  I can't -- that's fine.

18             *THE COURT:*  All right.  Count 6 is against SPO I for

19     Breach Of Contract?

20             *MR. STEWART:*  Correct.

21             *THE COURT:*  Count 7 is against, CRCPS, SPO and SPO I,

22     for Declaratory Relief?

23             *MR. STEWART:*  Correct.

24             *THE COURT:*  Count 8 is against CRCPS and SPO I for

25     Piercing The Veil?

1      MR. STEWART:  Correct.

2      THE COURT:  I have not addressed, and I should go

3  back, because you are in a different posture from the Li

4  Plaintiffs.  I have not addressed the issue of whether it is

5  each of these counts is individual or a direct derivative.  Let

6  me go back through and just simply tell you how I see them

7  Count 1 is direct, the Fraud, Misrepresentation?

8      MR. STEWART:  Correct.

9      THE COURT:  Count 2 is direct and derivative, for

10  Breach Of Fiduciary Duty?

11      MR. STEWART:  Correct.

12      THE COURT:  Count 3 is direct, again, under the

13  Colorado Consumer Protection Act?

14      MR. STEWART:  Correct.

15      THE COURT:  Count 4 is direct, Failure To Register As

16  An Investment Company?

17      MR. STEWART:  Correct.

18      THE COURT:  Count 5 is direct, for Violation of Title

19  15 Provisions?

20      MR. STEWART:  Correct.

21      THE COURT:  Count 6, is SPO I, is individually --

22  excuse me, direct and derivative?

23      MR. STEWART:  Correct.

24      THE COURT:  Count 7 is also direct and derivative,

25  Seeking Declaratory Relief, Relating To The Yield Enhancement

1    Agreement?

2         MR. STEWART:  Correct.

3         THE COURT:  And Count 8 is direct, against -- well,

4    for Piercing The Veil?

5         MR. STEWART:  Correct.  All right.  There is a further

6    issue that I just want to clarify how I'm seeing it, and if

7    there is -- I'm seeing it incorrectly, again, I'm just offering

8    the opportunity to make sure that I understand the mountain

9    that I have to sift through to come to legal rulings on.

10        I'm not going to say that I have got it tied down,

11   which count goes against said persons, but there are some

12   counts that reference certain John Does.  There are other

13   counts -- count or counts that reference Hayes, as a defendant.

14   Just as with the LLC principles that I was speaking to

15   Mr. Litowitz about, there are no John Does in the caption, and

16   Mr. Hayes is not listed as a defendant in the caption, and I

17   don't think he has been served.

18        MR. STEWART:  In our Complaint?

19        THE COURT:  In your Complaint.

20        MR. STEWART:  I think that he is listed as a

21   defendant, and there are "Does" in the caption in our

22   Complaint.  I would have -- I don't have it with me.  So, I

23   can't -- if -- if you have it in front of you, and it's not

24   there, you are correct, but...

25        THE COURT:  Let me take a quick look.  I will read

1    you -- you're 2637, correct?

2            *MR. STEWART:*  Yes.

3            *THE COURT:*  The listed defendants are Waveland

4    Ventures, LLC, Colorado Regional Center Project, Solaris,

5    LLP -- excuse me, LLLP, Colorado Regional Center I, LLC,

6    Solaris Property Owners, LLC, Solaris Property Owner I and

7    Peter Knobel.

8            *MR. STEWART:*  Okay.

9            *THE COURT:*  And --

10           *MR. STEWART:*  If Mr. Hayes has not been added, then he

11   hasn't been added.

12           *THE COURT:*  So, just to be clear, from my perspective,

13   it's not that I am putting them out, I'm simply saying that

14   from where things stand now, these John Does and LLC principles

15   and Mr. Hayes are not in.  Because they have not been in, I

16   can't put them out.  I'm just simply saying, based on the

17   captions and the service, they are not in, at least, as things

18   appear now.

19           Now, let me slide over to the defendants.  I will

20   start at the front with the CRC Defendants, and ask whether or

21   not you have any quarrel with the way that I have identified

22   the counts, their nature, direct or derivative, and who they

23   are against?

24           *MR. KILROY:*  I do not, Your Honor.  Thank you.

25           *THE COURT:*  All right.  Let me go to the back to

 1   Mr. Gee.  Same question to you?

 2            *MR. GEE:*  I agree with your understanding, Your Honor.

 3            *THE COURT:*  Okay.  I'm putting that, for the time

 4   being, now we're going to start to move to the motions, and

 5   again, where I think we're going to start is a Motion To

 6   Disqualify that was filed by the Li Plaintiffs, because I

 7   consider this the first motion, that's why you -- you gentlemen

 8   are in the front.

 9            So, I'm going to give you the opportunity to present

10   it to me, however you wish to.  I also want to kind of tell you

11   ... well, before I do that, let me just -- I thought I cleaned

12   everything up, but I'm advised that I had not.  I had

13   considered the Li Plaintiff's representation that it was

14   dismissing the direct claims, and I ruled on the motion,

15   granting it.  It is also the case that you have indicated

16   dismissal of two of the of derivative claims.

17            *MR. LITOWITZ:*  One to lis pendens, because that was

18   handled outside of the Complaint.  The other for appointing --

19   dethroning the general partner, because that was also handled

20   outside of the Complaint.

21            *THE COURT:*  All right.  In any event, I treat those as

22   I treated the motions, with respect -- well, as I treated the

23   representations with respect to the direct claims; that is, I

24   consider it a motion to dismiss, and I do grant that motion to

25   dismiss those claims.  Therefore, the only claims that remain

1   in the case are the ones that I have, this morning, identified,

2   with counsel.

3         MR. LITOWITZ:  Correct.

4         THE COURT:  Yes, Mr. Gee.

5         MR. GEE:  It's Gee.  Yes.

6         THE COURT:  I'm sorry.  I have known you, so you would

7   think I would have it down, but whatever.

8         MR. GEE:  So, Your Honor, another topic that came up

9   in the Li Plaintiff's response to the CRC Defendants' Motion To

10  Dismiss, was the question of -- of this was piercing the veil

11  issue.  I read the Response to say that we're withdrawing the

12  piercing the veil claim by the Li Plaintiffs, and then, in

13  their response to the SPO Defendants' Motion To Dismiss, they

14  seem to retract the withdrawal.  I don't know exactly where

15  that stands.

16        THE COURT:  All right.  Let me tell you how I think --

17  where I think it stands, then I will allow counsel to comment

18  on that.  This piercing of the veil as a claim, all right, it's

19  set forth as a claim.  The truth is, it's not a claim.  It's

20  a -- whether you want to call it a remedy or a procedure, it's

21  a mechanism for having your relief, if you would, go against

22  other people who are behind the corporate entity.  And so, I

23  took the position as being one of agreeing to dismiss it as a

24  standalone claim, but Mr. Litowitz is taking the position that

25  he doesn't want that conduct to be interpreted by me as he is

26

1    abandoning the right to pierce the veil in connection with some

2    other claims that may exist; that's the way I read it.

3         MR. LITOWITZ:  That's absolutely correct.  It's really

4    a matter of preserving that, so that later on, if we seek that

5    as a remedy, I'm not precluded by someone saying you didn't

6    raise it.

7         THE COURT:  I understand that.  Are you satisfied,

8    Mr. Gee?

9         MR. GEE:  I am.  Thank you.

10        THE COURT:  All right.  And I think I have got it all

11   down, in terms of the counts that I was calling the derivative

12   claims of the Li Plaintiffs that were dismissed, it's 4 and 7?

13        MR. LITOWITZ:  Let me -- yes, Judge.

14        THE COURT:  All right.  So getting back to the motion,

15   which is the Motion To Disqualify, **Number 198**, I will listen to

16   everybody's argument, and perhaps rather than try and suggest

17   how I think ... there is sometimes benefit to telling you how

18   I'm kind of picturing it, so that you can respond to that, but

19   I don't want anyone to come away with that, with some notion

20   that I am, kind of, ruling in advance.  The -- the motion has,

21   at its core, a bit of a messy issue, and it will need to get

22   resolved.  When I say a bit of a messy issue, the question is,

23   what standards are we looking at, 1.7 or 1.9?  I understand

24   that on the face of it, it's 1.9, representation of a former

25   client, but I also understand that Snell & Wilmer is

1    essentially saying this, "No, no, no, no, it's 1.7.  You should

2    look at it as if it's a 1.7.  It was a 1.7 when it started,

3    representation of both clients.  There are factors and

4    considerations thrust upon, hot potato, et cetera, that are

5    part of a 1.7 analysis, and the truth is, you really shouldn't

6    penalize us for being responsible and professional enough to

7    impose the 1.7 remedy upon ourselves, by stepping out from the

8    representation of CRCPS, instead of waiting for -- folding our

9    arms across our chest and waiting for you to do that to us,

10   because had we done that then we could say, "Well, we get to

11   stay," with respect -- under 1.7, with respect to CRC I, and

12   all of these other doctrines would apply.

13           Again, I'm not making the argument for anyone.  I'm

14   just giving you, what I see -- at this point see as, kind of,

15   where the parties have planted their flags, and if I have put

16   you on the wrong hill -- I come from Boston, and can never -- I

17   will never forget that the Bunker Hill Monument is built on

18   Breed's Hill, in other words this great revolutionary war

19   monument is in the wrong place.  If I put your flag on the

20   wrong hill, please, don't be shy about correcting me, that's

21   what we're here for.

22           Let me hear argument from Mr. Litowitz.

23           MR. LITOWITZ:  Sure.  Thank you, Your Honor.  I don't

24   think it really matters much whether we are under 1.7 or 1.9.

25   In my filing, in my Reply, I cite 1.7, comment number 29, which

28

 1   says that when there's multiple representation of clients in

 2   the same matter, a lawyer should be mindful that if the common

 3   representation fails, because the potentially adverse clients

 4   can't be reconciled, ordinarily the lawyer is forced to

 5   withdraw from all the clients; that's 1.7.  Okay.

 6          Now, here's my take on it, this dispute began in July

 7   of last summer, when I sent a derivative letter, saying I

 8   represent the limited partners and they want the general

 9   partner to call this loan.

10          At bottom, Your Honor, this is a very simple case.  I

11   know there's a lot of stuff at the periphery.

12          THE COURT:  Yeah, okay.  It's a very simple case.  Go

13   ahead.

14          MR. LITOWITZ:  Hear me out.  At the bottom core of

15   this case is a loan collection, no different than any other

16   loan collection.  At the periphery, is a tremendous number of

17   subsidiary issues about derivative claims, direct claims,

18   disqualifications, securities, et cetera, but at its core, this

19   is simply, some people put money into a lender, the lender lent

20   the money out, and now they are not collecting it to give it

21   back to the investors; that's it.  Okay.  So, it's actually a

22   very simple case, and I am sorry that there's so much pleading

23   here, because I think it's actually superfluous, but let me get

24   to the disqualifications issue.

25          That's by way of an apology for the mound of paper,

1    the Bunker Hill amount of paper.

2         *THE COURT:*  It's there.  You want to apologize,

3    withdraw it all, I will feel so relieved.  Go ahead, please.

4         *MR. LITOWITZ:*  All right.  I'm glad to make your life

5    better.  So, the case started with a derivative demand, and

6    what that means is that there was already the seeds of a

7    conflict, because the limited partners wanted this loan

8    collected and distributed to them, and that's what they asked

9    for in the demand.  The general partners did not want to

10   collect the loan, and -- because they were getting paid

11   management fees for however long the loan was going on, and the

12   borrower didn't want to pay the loan, of course.  So, there was

13   already a conflict between the limited partners and the general

14   partner.

15        At that point, they should have appointed a special

16   litigation committee for someone to figure out, was there a

17   conflict?  Should there be different representation?  They

18   didn't do it.  Mr. Kilroy's firm represented both parties, but

19   yet he didn't, not once, in a year, has he made a single

20   argument, the whole time he represented the -- the limited

21   partnership, not once did he make an argument saying this money

22   should come back.  He has a fiduciary duty to get the money

23   back to the Chinese, not once did he make an argument for it.

24        Instead, he sat at the same table with the borrower,

25   that had just stiffed him, 80-million dollars, and they are

1    friends, sitting together at the table.  Now, I ask you, when

2    have you seen a lender, who was stiffed 40-million dollars, be

3    friends with the borrower?  Okay.  And not be friends with the

4    limited partners, who are trying -- who they have a fiduciary

5    duty to.

6          So, the seeds of a conflict were already there.  They

7    ripened, and I made this motion back in January, I said, "Look,

8    this is crazy.  You know, my people want their money back.  You

9    represent my people."  When you represent a limited

10   partnership, all it is is limited partners and one or more

11   general partners.  So, you represent both.

12         So, at that point, the law, 1.9, says, and the case

13   law says that there's an irrebuttable presumption that once you

14   represent somebody, and then you let go of them, which is what

15   happened here, because he -- after my fuss, he dropped the

16   limited partnership as a client, but there's an irrebuttable

17   presumption that you have information about a former client,

18   and you cannot now represent another client adverse to your

19   former client.

20         THE COURT:  Let me just talk about that for just a

21   minute.

22         MR. LITOWITZ:  Yeah.

23         THE COURT:  Again, I am just conversing with you, so

24   to speak, to make sure that my understanding is correct.  I'm

25   not trying to telegraph anything or accept one party's

1     statement as true or not true.

2          There's this presumption that Snell & Wilmer have this

3     information, this -- this private confidential, secret,

4     meaningful, significant, whatever adjective you want to put on

5     it, from CRCPS, but other than being a -- an entity, it really

6     doesn't do anything by itself.  What I mean is, as I understand

7     it, CRC I, is the general partner, and ... there's no separate

8     pot of information, the CRCPS information and the CRC I

9     information is -- is there?

10          MR. LITOWITZ:  Yes.  There is, for example, if he

11    represented the limited partnership, then my clients are his

12    clients?

13          THE COURT:  CRCPS?

14          MR. LITOWITZ:  Yes.  So I should get to see all of the

15    correspondence from his office, because it was about my

16    clients.

17          THE COURT:  Maybe, maybe not.

18          MR. LITOWITZ:  I get everything he has written, by

19    everybody, because these are my clients.  Here is another

20    absurdity, or if this goes to trial or hearing, I have to have

21    my Chinese people come in here and they are going to say, "Who

22    is this guy?"  And I am going to say, "That guy who is fighting

23    to not give you your money back, is your former lawyer.  The

24    guy, whose job was to get you your money back and to protect

25    the fiduciary duty, to get you the best you could get, he is up

32

1     there against you, fighting you"; that's going to be very hard

2     to explain to my clients.

3          THE COURT:  I get that, I mean, but that's not

4     responsive to what I asked.

5          MR. LITOWITZ:  Okay.  I can be responsive to what you

6     asked.  If you have a former client --

7          THE COURT:  Not in the -- in the academic sense, in

8     the factual sense of this case.  Is there really any

9     information that CRCPS has or had that CR -- that is different

10    than everything that CRC I has or had?  And I am not saying

11    which way this cuts, whether it's for you, against you or

12    anything else.

13         MR. LITOWITZ:  I think that -- there isn't.  But the

14    reason for that is because they never bothered to represent the

15    limited partners.  So, it's their own fault.

16         (Mr. Litowitz is speaking Chinese.)

17         THE COURT:  I'm over here.  I don't know what you are

18    saying to him.

19         MR. LITOWITZ:  I'm asking him if he speaks Chinese.

20         THE COURT:  Please, let's skip the drama, okay?

21         MR. LITOWITZ:  Okay.  We will skip the drama.  They

22    don't speak Chinese.

23         THE COURT:  I don't speak Chinese.  That's not

24    relevant to anything, yet.

25         MR. LITOWITZ:  Oh, it is.  To communicate to your

1   clients, who speak Chinese, you have to speak Chinese.  So, he

2   doesn't speak Chinese, his people don't speak Chinese.  So, he

3   never made the effort to represent these people, who are his

4   clients, and so, of course, he doesn't have any information

5   about them.  He never bothered to get it.  His posture, the

6   whole time --

7        THE COURT:  My question was not whether he had

8   information about the limited partners.  My question was

9   whether or not CRC I... well, my question was whether CRCPS has

10  some information or knowledge that is different from that which

11  resides in CRC I?

12       MR. LITOWITZ:  I don't know the answer to that, and

13  also -- also, if a hundred and twelve -- 70-plus percent of

14  people, and that's all we got, we didn't get one single proxy.

15  If they all want them gone --

16       THE COURT:  We're drifting.  We're drifting.  The

17  issue on the Motion to Disqualify is the issue that was filed.

18  I'm not here to, kind of, start drifting from that into what I

19  know we're drifting into, which is the counterclaim.  So --

20       MR. LITOWITZ:  Okay.

21       THE COURT:  -- let's stay in this pot.  We will get to

22  that pot eventually, but for now let's stay in this pot.

23       MR. LITOWITZ:  Okay.  Well, then I don't want to drag

24  this on, so, I will just say that, um, I believe that there's

25  been the seeds of a conflict from the beginning, it has

1   matured, and the law says there's an automatic presumption,

2   regardless of whether, in fact, he knows anything different

3   from -- the two entities know anything different.  It doesn't

4   matter.  It's not a factual inquiry.

5         The inquiry is only a couple of steps.  Is the LP a

6   former client?  Yes.  Is he now representing someone adverse to

7   them?  Yes.  There's an automatic presumption; that's it, it's

8   done.  Thank you.

9         THE COURT:  Okay.  And to be clear, you have postured

10  the motion, and I am not saying inappropriately, in fact I'm

11  saying appropriately as a 1.9.  You have responded to a 1.7

12  issues, but you see it as, it's a 1.9, and I take it, you would

13  take exception to any attempt, such as what I said earlier,

14  which is, it's really -- if you look at it broadly, across

15  time, it's really a 1.7, where they self-sanctioned.  You don't

16  agree with that?  Or would resist it?

17        MR. LITOWITZ:  I agree with it, but I think the

18  sanctions should be harder.  I think -- I like the way you have

19  put it.  Yeah, I agree with that.

20        THE COURT:  All right.  Mr. Kilroy, please, and I

21  would ask that you respond in English.

22        MR. KILROY:  Sure.  The only language I do speak.

23        THE COURT:  There you go, you have your concession.

24        MR. KILROY:  Absolutely.  First, the Court is correct

25  in terms of describing the -- the flag that we have posted on

1    the hill, so to speak.  In our Response we focused on the --

2    the thrusted-upon doctrine.  I don't think we specifically

3    cited to the comment in Rule 1.7, that deals with this, which

4    is comment number five, but the theme is exactly that, that we

5    don't get to 1.9, because to the extent there's a conflict, it

6    was thrust upon us.

7          Let me take you through, from my perspective, the

8    history.  Mr. Litowitz indeed sent a derivative demand to our

9    client before filing the lawsuit, but then when he filed the

10   lawsuit it was not a derivative lawsuit.  There's plenty of

11   strategic reasons why plaintiffs counsel would do one or the

12   other, if you are representing just direct, not derivative

13   plaintiffs, you have opportunities to settle their claims.

14   Once you get into the derivative mode, you may not have those

15   opportunities.  So, there's a lot of strategy that goes into

16   this.

17         We certainly believe, based on the first Complaint

18   filed, that it was a Complaint against, for relevant purposes,

19   CRC I, the general partner, and under really, respondeat

20   superior principles, the limited liability partnership, itself,

21   CRCPS, they were named as a defendant, but only to the extent

22   that their liability was connected to the CRC I's.

23         In his Reply Brief, I think it's important to point

24   out, this is **ECF 215**, Mr. Litowitz says, and I agree with this,

25   "Snell & Wilmer first appeared in this case for both the LP and

1   its GP, this made some sense initially, since the plaintiff

2   sued both the LP and the GP directly, claiming that they both

3   failed to collect the limited partners' money, and recklessly

4   invested in the Solaris project.  At that point, the LP and GP

5   were both defendants in a direct lawsuit, so their interests

6   were aligned in forming a common defense, making joint

7   representation reasonable."

8          I think that's a concession that in the first --

9   contrary to what we just heard, the original pleading was such

10  that we believed we could represent both jointly, and I think

11  plaintiff's counsel agreed with that.  Things changed, in a

12  very confusing way, in terms of, are they bringing derivative

13  claims or not?  At least from my standpoint, it was very

14  difficult to discern exactly what the lead plaintiffs were

15  doing, and we had plenty of discussions, believe it or not,

16  they weren't as vitriolic as you might expect, having read the

17  pleadings.  I talked with Mr. Litowitz on many occasions, and

18  we just disagreed.

19          *THE COURT:*  Let me say with regard to that, that I

20  think I understand.  I think Mr. Litowitz is what he is, and he

21  speaks in these terms that suggest, and I mean you no insult,

22  "How can you be so stupid?  It's so obvious," that is sort of

23  the way he views this thing.

24          In the papers, it's suggestive that the two of you

25  were seeing if I would be okay with the gunfight at the OK

1    Corral.  As I sit here and watch you today, I think you have a

2    better understanding of each other, and some of the

3    over-the-top language just rolls off of people's backs.

4         MR. KILROY:  I appreciate that.  Back to the

5    thrust-upon conflict, recall that -- from my standpoint it was

6    not foreseeable that we would morph a direct claim into a

7    hybrid derivative, plus direct claim, which is sort of what we

8    had in these middle pleadings.  The first amended, second

9    amended, by the time we get to the third amendment, which,

10   remember, I think is just in either March or April of this

11   year, clearly we have a clear picture that this is a hybrid,

12   derivative, plus direct case, on top of that, we have this

13   issue that is really a different issue, that the proxy issue,

14   both are significant issues, from my standpoint.

15        THE COURT:  No, I understand that.

16        MR. KILROY:  Trying to figure out what to do, but for

17   the thrust-upon doctrine argument it really, from my

18   standpoint, goes to the changing nature of the plaintiff's

19   pleading.  We had many discussions, again, where I encouraged

20   Mr. Litowitz that his real claims here are what we now have.

21   It was only after I filed the Motion To Dismiss, and the

22   concessions came, that we now have, sort of, the exact opposite

23   Complaint that we started out with.

24        We started with a pure direct claim where, by

25   plaintiff's counsel admission, we had the professional right to

1   represent both, jointly.  Then we to get a completely different

2   case, and our representation -- when we recognized that, our

3   representation obviously became an issue, and we did what I

4   thought was the appropriate thing, in terms of withdrawing

5   from -- from the entity.

6           The cases that we cited in our brief, deal with this

7   exact issue.  There's not much analysis.  If the Court has not

8   had a chance to read the -- the cases, the case that has the

9   most analysis, I think is the *Forrest v Baeza* case, the

10  *Musheno*, *Lewis* and *Natomas*, dealt with this exact same issue,

11  and basically, the Courts came out in favor of what we're

12  asking; permit the attorney who has recognized the conflict,

13  from our standpoint, done the right thing, to continue to

14  represent the -- the party.  It has been the focus of our

15  representation from the beginning.

16          I will answer the question that Mr. Litowitz couldn't.

17  No, there was no confidential information, for the reasons that

18  were implicit in your question.  This -- this limited liability

19  partnership speaks through a general partner.  There's no

20  independent existence.  There's not an office.  There's not

21  separate staff.  There's nothing.

22          So, the -- there is no confidential information

23  concern, which really drives these conflict issues,

24  fundamentally, to begin with.

25          I think that is all I had, Your Honor.

1          *THE COURT:*  You -- let me see -- let me try it this

2     way.  You will acknowledge that the Tenth Circuit's standards

3     in a 1.9 are not helpful to you?

4          *MR. KILROY:*  Absolutely.  And can I respond to that?

5          *THE COURT:*  Yes.

6          *MR. KILROY:*  What's clear to me, having focused now

7     quite a bit on this issue is derivative cases are -- are

8     strange.  They don't fit into the normal dynamic, and maybe the

9     best example is the *Srebnik* case, that made me pause and decide

10    not to suggest a disqualifying conflict on the plaintiff's

11    part, when, for a long period in this case, they literally were

12    purporting to represent, and maybe Mr. Stewart still is, I

13    can't tell, CRCPS in a derivative capacity, and bringing direct

14    claims against CRCPS.

15         Again, I didn't raise that because I think the way

16    Judge Daniel looked at it, in that case, was wise, it was

17    implicitly recognizing these are different beasts, and I think

18    the other cases that we've cited in our Response Brief also

19    acknowledge that; most particularly, the ones I have already

20    mentioned.

21         But yes, the answer is yes, I understand, on the four

22    corners of 1.9, without the context that I think it deserves,

23    there's language that's not helpful, for sure.

24         *THE COURT:*  In terms of the cases, I don't have them

25    studied.  I have, as of now, kind of a perusal understanding,

1    which one do you think best fits factually?  And I understand

2    all of these derivative cases, they come up in -- in strangely

3    different ways.  Sometimes it's shareholder, sometimes it's

4    what we have here, kind of a limited partners, sometimes they

5    come up, because one corporation is merged with someone else or

6    been purchased by someone else, and so the -- trying to decide

7    which of the factual distinctions matter and which don't, is

8    something that, obviously, I will have to resolve, but at the

9    very least, in terms of your view, which is factually closest?

10         MR. KILROY:  Three, *Musheno*, *Lewis*, and then the

11   *Forrest* case, and I am not directly answering as to the *Forrest*

12   case, only because, from my standpoint, the *Forrest* case gave

13   the most in-depth analysis, including commentary that addresses

14   the difficulties of derivative-conflict issues, but those are

15   the three cases I would -- I would endorse.

16         THE COURT:  All right.  I will come back to

17   Mr. Litowitz for last word.

18         MR. LITOWITZ:  Last word, those cases are completely

19   in opposite.  Those cases are where defendants -- where one

20   lawyer was representing multiple defendants, and what -- moved

21   from quitting one defendant and other defendants.  Those

22   weren't cases where you have adverse parties.  In this case,

23   the limited partnership is a nominal defendant, but it's really

24   the plaintiff.

25         Here, we have a much clearer case of an adverse

 1    connection.  And furthermore, this is not Sui generis type of

 2    case, this derivative case.  Two people, for example, might

 3    have a dispute over a boundary.  They go to a lawyer, they say

 4    we are fine on the boundary, we want you to write up the

 5    agreement on the boundary, and a lawyer can say waive your

 6    conflict and I will write it up.  Before he writes it up, one

 7    of the neighbors comes to him says, I disagree with that.  At

 8    that point, the lawyer can't say, well, okay, I'm going to go

 9    represent the other guy, on the other side of the fence.  No.

10    You're now stuck.  You were representing both, you can't now

11    switch to an adverse party.  It's not Sui generis.  It happens

12    all the time, and that's why there's a rule on it, and

13    furthermore, if, in fact, there's no confidentiality issue, why

14    is it that my own -- the limited partners can't get their own

15    information from the company?  We've asked them for ledgers, we

16    have asked them for information.  If this is our lawyer, I --

17    when I say we, I mean the limited partners.  If this is our

18    lawyer, how come they can't give us all of the information that

19    we want?  I mean, it seems puzzling.  I asked -- if he is our

20    lawyer, who owns the company?  We can't tell you.  We are your

21    client.  You can't tell your own client who owns the company?

22    Let us see the ledgers.  You can't see it.  Well, now you are

23    clearly on both sides of -- of this.

24          Okay.  And so, I understand what Jim is arguing, and

25    he is trying to walk a thin line, slice it thin and say, well,

1   there's no real harm here.  But I think when you drill down,

2   you do see the harm, and -- and so not only the letter of the

3   law, but the appearance and impropriety, with respect to now

4   being adverse to these people that he never really tried to

5   represent.

6       If he was really representing the -- the limited

7   partnership, he would have come into this court and said we

8   want all of our money back from the borrower.  He never said

9   that.  Okay.

10      *MR. KILROY:*  Your Honor, can I just address one quick

11  --

12      *THE COURT:*  Sure.

13      *MR. KILROY:*  First of all, I cannot present a

14  frivolous argument if I don't think there's a basis to do it.

15  Mr. Litowitz thinks I should do.  I can't do it.

16      I have to address this notion that comes up in both

17  Mr. Litowitz' and Stewart's papers a lot, which is, we have

18  withheld information from them and partners who have inspection

19  rights.  In fact, we gave access to Mr. Litowitz, invited him

20  to Vail, on July 17th, 2019, in writing, before the lawsuit was

21  filed, come on out, look at whatever you want.  I personally

22  have told the same to Mr. Stewart, repeatedly.  He was supposed

23  to come out and look at the records in October of 2019.  They

24  have chosen not to do it, while painting this really false

25  picture that we're not complying with inspection rights.  It's

1   just not true.  I can't let that stand.  I'm sorry.

2         THE COURT:  All right.  Yes, sir.

3         MR. STEWART:  Your Honor, I was never invited in

4   October to come out.  I never had plans to come out.  I don't

5   know what Jim is talking about.  We've discussed this a few

6   times, and I -- I don't know why they can't just send copies.

7   Why I would have to come out, when I never had plans to come

8   out in October, and I -- and I am not sure.  We must be

9   miscommunicating.

10        THE COURT:  All right.  Well, here is my view of it.

11  All right.  You each have presented your position, and I don't

12  need to resolve that right now.  What I can say is, if there is

13  an offer to inspect, you should be talking to each other,

14  because I don't -- I think I don't understand, based on what is

15  going on, any explanation for what has happened, other than

16  misunderstanding or miscommunication, and I don't need to

17  resolve it right now.

18        MR. STEWART:  And I will say, Your Honor, I believe

19  it's miscommunication, because Mr. Kilroy and I, we have a very

20  good relationship.  I don't want to sound like I'm affronted,

21  but this is the first time I have heard of that.

22        I may have forgotten, but I was really busy in

23  October, early November, only been in the firm for two weeks,

24  and I was getting ready for arbitration.  There is no way I

25  agreed to that.  Now, he may have thought that we talked about

1    it.  I'm not trying to say that he is misrepresenting anything,

2    but that was never my understanding.

3              MR. LITOWITZ:  If he -- if he -- you know, just tell

4    us who owns --

5              THE COURT:  All right.  Look, I'm not here to deal

6    with every one of these quibbles.  In the course of a response,

7    a statement was made, exception was taken.  I note the

8    exception and we move on.

9              This is not what I wanted to do, but it may be -- in

10   terms of sequence, but it may be what I will do, just because

11   it may -- I'm going to take a break soon, and the answer may

12   help me understand what's going on.

13             One of the motions that has been filed is the Li

14   Plaintiff's Motion To Dismiss The Counterclaim that has been

15   filed by...  whom, Mr. Kilroy, CRC I?  I think that's right.

16             MR. KILROY:  You are right, Your Honor.

17             THE COURT:  Okay.  The reason that I am professing

18   confusion is that I have in my little messy pile two things.

19   One, a response -- well, what I have is a Motion To Dismiss The

20   Counterclaim, that has been filed by the Li Plaintiffs, and

21   that is **ECF Number 208**.  I also have, at **ECF Number 225**, the Li

22   Plaintiff's Joinder In The Demand For Declaratory Judgment, As

23   To Whether The General Partner Has Been Removed.  I'm confused.

24   I don't understand.  Obviously, if you are moving to dismiss

25   it, I don't understand why you would be joining it.  If you are

 1    joining it, I don't understand why you would be moving to

 2    dismiss it.  Help me out.

 3           MR. LITOWITZ:  Yeah, I understand your confusion.

 4    During the interim, while all of these motions were flying,

 5    over the summer, there's been, as you noted, and as you said,

 6    some confusion as to who is in charge.  And in their

 7    declaratory -- in their counterclaim for declaratory judgment,

 8    he asks for what I guess is called a speedy ... something,

 9    whatever, and so I was just joining in that, saying, because

10    there's confusion over this, I think it will be helpful if we

11    get this issue out of the way.  So, I was just joining in that

12    speedy ... I forget the term in this district.  It's like a --

13           MR. STEWART:  Forthwith hearing.

14           MR. LITOWITZ:  Yeah.  Forth -- forthwith hearing.  I

15    was just saying, I too would like to have this addressed.  I'm

16    not joining in the substance of his -- his -- his motion,

17    obviously --

18           THE COURT:  If I dismiss it, there's nothing to

19    speedily or forthwith resolve.

20           MR. LITOWITZ:  But I thought I said in the joinder I

21    was agreeing that it should be speedily removed.  He is not

22    asking -- he was asking -- his relief is not -- his prayer was

23    just that you look at the issue, not that you decide it, as I

24    understood it.

25           THE COURT:  I don't think he just wants me to just

46

1   look at stuff.

2          MR. LITOWITZ:  Let me pull up --

3          THE COURT:  What I'm looking at right now, if I'm

4   looking at stuff, is the prayer, if you would, for the joinder.

5          MR. LITOWITZ:  Oh, I see.

6          THE COURT:  "We, Plaintiffs accept the CRC entity's

7   demand for this Court to issue a speedy declaratory judgment,

8   as to whether the general partner has been effectively removed

9   pursuant to a limited partnership agreement and applicable

10  laws."

11         That looks to me like you are saying, in essence,

12  yeah, we are not opposed to the motion for declaratory

13  judgment.  We want you to do it, and we want you to do it

14  quickly.  But if I dismiss it, there's nothing to do.  So, I

15  don't understand what --

16         MR. LITOWITZ:  Sure, sure.

17         THE COURT:  -- what horse you are riding here.

18         MR. LITOWITZ:  **ECF 214**, the Prayer.  The lead

19  plaintiffs accept the CRC entity's demand for the Court to

20  issue a speedy declaratory judgment, as to whether the general

21  partner has been removed.  Just -- fully briefed, and we wanted

22  Your Honor to decide it.

23         THE COURT:  To decide what?

24         MR. LITOWITZ:  To decide whether -- actually, to

25  decide whether the --

1        THE COURT:  Really simple, really simple.  Do you

2    stand by and continue to pursue the Motion To Dismiss The

3    Counterclaim?

4        MR. LITOWITZ:  Of course.

5        THE COURT:  Okay.  And then we can talk about that --

6    well, let me hear, anything you want to add?

7        MR. KILROY:  Just by way of clarification.  The

8    reference is not a local.  It's Rule 57.  The last sentence of

9    Rule 57 says, the Court may order a speedy hearing of a

10   declaratory judgment action.  I think that was the reference he

11   was talking about, but other than that, I have nothing to add.

12       THE COURT:  All right.  I mean, I'm going to give my

13   court reporter a break for 15 minutes.  I can tell you, I'm not

14   prepared to take it up next, in order, but let me just plant

15   the seed.

16       There's a lot of motions to dismiss.  How those get

17   resolved, we will see.  On the one hand, everything can be

18   denied, on the other hand everything could be granted, and

19   obviously there's a middle ground, where, some of each.  But it

20   seems to me that everybody wants there to be a judicial

21   resolution of the issue, paren, I understand that the motion to

22   dismiss says that there is no entitlement to a judicial

23   resolution, but if we get past that, everybody wants the issue

24   of who is in charge to be resolved.

25       I have of spent some time trying to figure out what

48

<table>
<tr><td>1</td><td>that looks like, and I am telling you, I'm not really sure.</td></tr>
<tr><td>2</td><td>What are we talking about?  Are we talking about bifurcating</td></tr>
<tr><td>3</td><td>the counterclaim from the rest of the case?  Are we talking</td></tr>
<tr><td>4</td><td>about a trial -- trial -- the presentation of evidence, to me,</td></tr>
<tr><td>5</td><td>to enable -- to -- essentially to enable me to rule on what has</td></tr>
<tr><td>6</td><td>been requested.  I suppose we could be talking about summary</td></tr>
<tr><td>7</td><td>judgment, but I can't even envision a scenario where that's</td></tr>
<tr><td>8</td><td>going to do anything but fail, and what I mean by that is, you</td></tr>
<tr><td>9</td><td>will start arguing about what the facts are, and I will be</td></tr>
<tr><td>10</td><td>right back to, okay, there's disputed issues of fact, that</td></tr>
<tr><td>11</td><td>doesn't work.  Yeah.</td></tr>
<tr><td>12</td><td>MR. LITOWITZ:  Your Honor, if I may, I don't believe</td></tr>
<tr><td>13</td><td>you have jurisdiction to decide this, because there's nothing</td></tr>
<tr><td>14</td><td>in any of the documents, there's nothing in any of the</td></tr>
<tr><td>15</td><td>agreements, there's nothing in any statute or common law that</td></tr>
<tr><td>16</td><td>says that you get to decide whether -- who is in charge.  It's</td></tr>
<tr><td>17</td><td>in the documents, itself, that it's a vote, 66 percent, they</td></tr>
<tr><td>18</td><td>got it.  It's done.</td></tr>
<tr><td>19</td><td>THE COURT:  And you are not listening to me, and what</td></tr>
<tr><td>20</td><td>I mean by that is, you want to talk about your Motion To</td></tr>
<tr><td>21</td><td>Dismiss.  I'm not talking about that.  I'm saying, if we get</td></tr>
<tr><td>22</td><td>past that, if in fact I am going to resolve it, I'm not saying</td></tr>
<tr><td>23</td><td>I have concluded that I will, I'm saying, if I get past the</td></tr>
<tr><td>24</td><td>points that you have raised, and determine that everyone, at</td></tr>
<tr><td>25</td><td>that point -- I mean, you are not going to get an appeal at</td></tr>
</table>

49

1    that point, if I rule against you, but who knows.  You can try

2    whatever you want to try, if I were to rule that way.

3           If we get to the point where everyone is in agreement

4    that I should answer the question who is on first, it's less

5    than abundantly clear to me how we should go about doing that,

6    and I am not saying that -- that today we should all come to an

7    agreement and have an answer.  I am saying that as things sit,

8    there's a lot of questions about how to get that kind of moved

9    up, and to some extent it needs to be moved up, because until

10   we know the answer, again, assuming we get past the Motion To

11   Dismiss, but, frankly, if everything went away, there's still

12   the issue that's hanging around about who can he hire the

13   lawyer for CRCPS, and what position are they going to take on

14   these various motions that have been filed, including motions

15   to dismiss or responses or what have you.  I mean, right now,

16   there is this ... little messy core, and I am -- and all I'm

17   telling you is it's not -- it's easy to say, yeah, yeah, we

18   want -- we want the Court to quickly or readily or forthwith

19   resolve it, but what is it, exactly, that we're talking about

20   by way of mechanisms?  Are we talking about essentially full-on

21   trial?  Are we talking about something short of that?  Are we

22   talking about a motion?  How much -- what are we talking about

23   by way of discovery?  What are we talking about, once we get

24   past, you know, the slogan that goes on our flag, "We want this

25   done quickly," and we get down to the procedural nuts and bolts

1    of how do we get this done?

2         I understand the slogan, "We want this done quickly."

3    I understand that both sides, all sides, need clarity on this

4    point, but exactly how we walk the walk, so to speak, is less

5    than clear.

6         I'm being unfair, because Mr. Stewart has wanted to

7    say something.

8         *MR. STEWART:*  In answer to your question, there has

9    been misconstrual with respect to procedure, is that's one of

10   the main reasons that I brought the motion, is because we have

11   this wrath of people locked in a cave forever, agreeing to

12   disagree vehemently, and a receiver would be an independent,

13   third-party portal, only, to Your Honor, who you manage, that

14   we, Mr. Litowitz don't get to talk to, and that, you know,

15   Mr. Kilroy doesn't -- we have a third party that's totally

16   independent, that's manged by the Court, and I think that's a

17   very good solution to the question that you are asking.

18        *THE COURT:*  Okay.

19        *MR. STEWART:*  That's the primary reason.  The

20   secondary reason is, yeah, we think probably should be

21   transferred, but the primary reason is, we substitute this

22   person in, because that's really what the GP is doing.  We are

23   asking to take title of the property and manage it.  It's all

24   the same.

25        *THE COURT:*  Again, I'm not responding in a manner

1   that's critical.

2       MR. STEWART:  I would be more comfortable, Your Honor,

3   if you had a receiver to talk to, than listening to

4   Mr. Litowitz or Mr. Kilroy or Mr. Gee or me, because we're

5   advocates for our position, and I think that this is a

6   perfect -- I mean, I know you have a lot of latitude, the

7   standards are broad, but this is a perfect explanation of why

8   you would do something like that.

9       THE COURT:  But of course, if CRC I has the legal

10  right to continue, I am taking their power away from them

11  without a determination that they've -- that it should be, I

12  suppose.

13      MR. STEWART:  Why you would have three-quarters of

14  your limited partners saying we don't like what you are doing,

15  but we're going -- we're -- I mean this kind of goes in with

16  the conflict situation.  Even if Your Honor decides that,

17  legally there's no fraud, I mean, basically, they are asking

18  you to decide the fraud claim, in advance of everything else.

19      THE COURT:  Which is why I was saying that it's a

20  muddy, messy, sticky wicket.

21      MR. STEWART:  That's why I think that the receivership

22  is the ideal remedy for all we're talking about.

23      THE COURT:  All right.  As I said, I just wanted to

24  put that out there, since we are going to take a break, for

25  people to think about.  I'm not trying to come to a resolution

1    at this juncture.  Let's take 15 minutes and pick it up at ten

2    of.

3             THE COURTROOM DEPUTY:  All rise.  Court is in recess.

4         (Recess at 10:35 a.m.)

5         (In open court at 10:50 a.m.)

6             THE COURTROOM DEPUTY:  All rise.  Court is in session.

7             THE COURT:  Please be seated.  All right.  I just want

8    to make sure that I have Ms. Kanan still with us.  Are you

9    there, ma'am?

10            MS. KANAN:  I am.  Thank you.

11            THE COURT:  Okay.  All right.  We're back in session.

12   Before we left I was raising an issue that I was not trying to

13   resolve, but to say there's an issue as to how do we accomplish

14   this.  In passing, I mentioned something else, and let me just

15   bring the something else front and center right now to get your

16   thoughts.

17            All right.  Let's assume that I grant the motion to

18   disqualify, and I say to Snell & Wilmer, you no longer

19   represent CRC I, now what?  And what I mean by that is,

20   somebody else presumably gets appointed to represent them, and

21   now what?  Should I give that counsel, I don't know, 30 days,

22   60 days, to decide whether or not he or she wants to endorse,

23   go along with the answer or the counterclaim or the motions to

24   dismiss or the responses?  Because, if, in fact, they are

25   conflicted, and I shouldn't -- you know, I shouldn't have

53

1    anything to do with them and their relationship with one of

2    these parties.  Should I really be considering the pleadings

3    that have been filed, up to now, and the matters that have been

4    teed up, up to now, on behalf of them, by the lawyer that I

5    theoretically or hypothetically remove?

6         I'm just raising the issue.  Mr. Kilroy?

7         MR. KILROY:  Well, for my client's sake, I would

8    suggest that the appropriate next step would be to give them

9    time, 30 to 60 days.  This is incredibly complex, more than

10   250, I think, filings.

11        THE COURT:  No, I know, and it's just -- I want to air

12   it out, what everybody believes should happen, because, as you

13   know, there are these other motions and issues that are sitting

14   there, and if, in fact, I say, I silence your voice.

15        MR. KILROY:  Right.

16        THE COURT:  Then why should I rule on them, without

17   giving new counsel and opportunity to endorse them, add them,

18   withdraw from them, supplement them, I don't know what, but at

19   least figure out what new counsel wants to do, rather than have

20   new counsel join a moving train.

21        MR. KILROY:  Right.  And that's my answer.  I think

22   the appropriate thing would be to give new counsel sufficient

23   time, 30, 60 days to get up to speed.

24        THE COURT:  Mr. Gee, I don't think you have a dog in

25   this fight, so to speak, but I would be interested, again, as

1   I'm just trying to get a sense from counsel, as to what they

2   think is appropriate.  Your answer?

3           MR. GEE:  Yes, Your Honor.  Well, I appreciate the

4   Court's grappling with these, as you say, muddy issues,

5   between, on the one hand, the CRC Defendants, on the other hand

6   CRCPS, and then, of course, the Li and Cui Plaintiffs.  It is

7   true, we don't -- we don't have a role in -- in any of that.

8   We actually have a fairly modest position, Your Honor, that you

9   let us go from this lawsuit.

10          THE COURT:  Yeah, I get that.  I mean, everybody wants

11  to get to their bottom line, which is let me out, let me out.

12  I'm just saying, again, some of the issues, there is a bit

13  of -- and I can't, honestly, I absolutely can't tell you what

14  it is I'm referring to, at the moment, but, again, as between

15  your responses, there's times when you join or somebody is

16  joining in something else, and it creates more of an issue.

17  I'm just trying to say, assuming I silence their voice,

18  before -- before I do anything else, with respect to the

19  motions, even yours, what's your position?  Rule on your

20  motions?  Not on theirs?  Not on the counterclaim?  But you're

21  sufficiently separated, that I can go forward with your motion

22  to say dismiss or ... yeah.

23          MR. GEE:  Yes, Your Honor, the last thing you said.

24  It doesn't -- it doesn't seem, to me, that the legal questions

25  we have raised in our Motion To Dismiss are impacted by what

1     happens with the rest of these -- these so-called muddy issues.

2          THE COURT:  And that may be right.  I'm not saying

3     that it is or it isn't.  I'm just kind of probing.  Let me come

4     over to the Li Plaintiffs.  Mr. Litowitz?

5          MR. LITOWITZ:  I think 30 days, and then if the lawyer

6     wants to take the case, after a psychiatric exam.

7          THE COURT:  If the lawyer wants what?

8          MR. LITOWITZ:  I'm just making a joke.  I said a

9     psychiatric exam.

10          THE COURT:  I might order one for you if you keep

11     making these jokes, but go ahead.

12          MR. LITOWITZ:  I think that should be plenty of time.

13     There's plenty of lawyers in Denver.  There's good ones, and

14     this is a business litigation.  Part of a puzzle here that we

15     didn't mention to you is that their funding came from the

16     limited partnership.

17          THE COURT:  Again, everybody wants to talk about what

18     they want to talk about.  Let me tell you, I only want to talk

19     about what I want to talk about.

20          If they are out, you're in agreement that with respect

21     to answer and their motions and their counterclaim, nothing

22     should happen until substitute counsel weighs in?

23          MR. LITOWITZ:  That's right, Your Honor.

24          THE COURT:  Mr. Stewart?

25          MR. STEWART:  Your Honor, whatever timeframe you feel

1  is appropriate, I would agree with.

2      THE COURT:  Okay.  And again, obviously, the timeframe

3  is debatable, but you're not disagreeing with the notion that

4  everything should stop vis-a-vis CRC I, until new counsel has

5  an opportunity to weigh in?

6      MR. STEWART:  If you were to enter that order, it

7  would be deeply unfair to -- in my opinion, to whoever new

8  counsel is.  Would depend upon what you were going to order,

9  but in a vacuum, we don't know what is behind door number three

10 or door number two.

11     THE COURT:  Obviously, to be as blunt as possible,

12 it's even possible that I would consider granting the CRC I

13 Motion To Dismiss, but I shouldn't do that either.  I

14 shouldn't -- even if that were my leanings, I shouldn't do that

15 or do anything with regard to CRC I, until new counsel comes

16 in, has an opportunity to weigh in to the response, the

17 counterclaim, the motions, the responses.  That's where we all

18 are, except for Mr. Gee says, "Except for me.  I don't care.

19 Just let me out."  Anybody disagree?

20     MR. STEWART:  What Mr. Gee is saying or what you are

21 saying?

22     THE COURT:  Myself.  Yeah, I understand nobody wants

23 Mr. Gee out.  That may be an easier resolution than the other

24 one, which is ... the mechanism for resolving this declaratory

25 judgment, if we get to that step.

57

1           Okay.  In any event, let's turn to the receiver

2    motion.  Again, I understand, Mr. Stewart, where you are coming

3    from, and let me just be clear to everybody, if it's not

4    apparent now.  Okay.  I'm told that I'm -- I again

5    mispronounced Mr. Gee's name.  Mr. Gee's name.  Sir, I will

6    try, but this is one my failings in life.

7           MR. GEE:  I have been called worse.

8           THE COURT:  For whatever reason, I can't deal with

9    three letter names.  You correct me as often as you need to.  I

10   will not take offense to that.

11          MR. GEE:  I have been called worse.

12          THE COURT:  I might even call you worse, but I don't

13   intentionally mispronounce your name.

14          MR. GEE:  I understand.

15          THE COURT:  All right.  I want to move to the Motion

16   To Appoint The Receiver.  Although, to some extent, I

17   understand, because we kind of touched on this a bit, to be

18   clear, with regard to everything that we're doing today, what

19   I'm really doing, more than anything else, is making sure that

20   I understand exactly what each of the parties is saying,

21   because -- and I am not, by this comment, meaning to identify

22   any particular party or attorney as being the source of this.

23   There is room for confusion throughout the mass of documents,

24   and I just want to walk through these various things, and

25   understand where everybody is, and that's my primary function

1    in doing this.  And so, if you are sitting here waiting for, oh

2    good, now we are getting to my motion, now we are going to get

3    a ruling on my motion, that's not going to happen.  I will take

4    these things under advisement, but I'm trying to make sure,

5    while we are all in the same room, at the same time, that I

6    understand who is saying up, who is saying down, and clarify

7    any lack of proper understanding that I may have.

8         In saying this, again, I emphasize, that although I

9    will listen to the parties on motions to dismiss, disqualify,

10   all of the rest of this, I have not and will not lose sight of

11   the standard.  What I mean by that is, a motion to dismiss is

12   decided on the basis of the Complaint, not on the basis of a

13   bunch of our discussion, here today, that's tangential or

14   superficial or not grounded in the Complaint, but nonetheless,

15   I think it is helpful in trying to work through these things to

16   understand where the parties are coming from, and that's what

17   I'm trying to do.

18        So, Mr. Stewart, your motion, let me ask you, since

19   your voice is harder to pick up, if you would pull that in

20   closer for my court reporter.  She is nodding her head saying

21   she likes that.  Let me just give you the floor.

22        MR. STEWART:  Your Honor, we touched on it, initially.

23   I kind of view this almost as an unopposed motion, because

24   whether you disqualify him or not, I'm not quite sure what

25   interest Mr. Kilroy's client has.  I guess it's kind of two

1    part, they have no interest in the property, when we are asking

2    for the property to be conveyed.  We're asking for the receiver

3    to take over those 16 pieces of property.  He no longer

4    represents CRCPS.  CRCPS has an interest in the property.  He

5    has no authority to challenge it on that ground.  He only

6    represents Mr. Hayes, or the GP, however you want to, CRC I, in

7    their capacity as general partner.

8            Now, I have, though, in my secondary issues, said,

9    hey, I think it makes sense to, like, just put him in charge,

10   while all of this stuff is floating around, because

11   Mr. Litowitz has got a couple of motions that I haven't joined,

12   but I mean he is pretty fired up about them.  They are pushing

13   back real hard.  And you know, I think that we've got a whole

14   lot of limited partners saying we don't like what's going on,

15   and so, really -- I think it makes a lot of sense to say,

16   Your Honor, I want you, under Rule 66, to say, hey equitably I

17   think it makes sense to Mr. Kilroy and to the GP, because we

18   don't know.  We are making some fraudulent claims.  They may or

19   may not be true, but, you know, if they are not sitting there,

20   they are not making any mistakes, and it's more fair to the

21   limited partners, because they are like, okay, at least we know

22   that the Judge is overseeing this, and you know, whatever is

23   happening is -- is the truth.

24           So, I just kind of look at it as -- as a very -- as a

25   very good remedy for a lot of what we have been spending the

 1   morning talking about.

 2           THE COURT:  Let me pushback, and again this is just to

 3   get your understanding.

 4           MR. STEWART:  Sure.

 5           THE COURT:  Your position is, in part, what do they

 6   care?  They are the person who could squawk, is CRCPS?

 7           MR. STEWART:  Correct.

 8           THE COURT:  I can't ask them anything.

 9           MR. STEWART:  I know.

10           THE COURT:  Because they are not represented.

11           MR. STEWART:  And they haven't been represented since

12   May.

13           THE COURT:  Okay.  And so --

14           MR. STEWART:  But they are not the ones -- they don't

15   have any ability to challenge.  The limited partners have said,

16   we don't want them.

17           THE COURT:  Well, I mean, I understand that.  I also

18   understand that -- that this would be a whole lot cleaner if

19   the limited partnership agreement said a majority or

20   two-thirds, pick your percentage, of the limited partners can

21   replace the general partner whenever they want to, but that's

22   not what it says.

23           MR. STEWART:  No, I agree.  You know it is -- and I

24   don't believe -- I mean, again, I haven't joined in a lot of

25   these motions, and I don't think it makes any sense at all for

 1   you to determine the fraud cause at light speed, in other

 2   words, that's the major portion of what we're talking about

 3   here, which again, set up the receiver, Your Honor -- if they

 4   are doing something wrong, anybody can squawk and you can sit

 5   on them.  I mean it's, in my mind, it's the perfect resolution

 6   for moving this thing forward.  That's just the way I feel.

 7   I'm not in -- I'm not here -- if Your Honor doesn't feel that

 8   way, I know what the case law says.  It's a very extreme

 9   remedy, and you shouldn't do it, then there's plenty others,

10   that say, you know, when you should, you really, really should.

11          THE COURT:  Right.  All right.  Let me come back to --

12   again, the awkwardness of it all, Mr. Kilroy.  Let me just hear

13   from you.

14          MR. KILROY:  Sure.  Certainly my client -- I mean, the

15   bottom line is, Your Honor, we have an interest in pushing back

16   when we don't think we did anything wrong.  I mean, there's a

17   contract that explains what we're supposed to do.  There's this

18   rhetoric, that we keep hearing that somehow either me or my

19   client should have demanded payment in a way that we think

20   ignores what actually happened here.  So, with that, the bottom

21   line is, you know, why do we want to stay on board, because we

22   didn't do anything wrong.  That's it, and I think we're

23   entitled to take that position, and the notion that we don't

24   have standing to --

25          THE COURT:  And I get that, as well.  Go ahead.  No,

                                                                    62

 1    you go ahead.

 2          *MR. KILROY:*  The only other piece of this is of

 3    course, the receivership has to be tied in to a claim for

 4    relief.  In other words, there has to be both an existing

 5    claim, and it sounds like the one that they are hanging their

 6    hat on is the breach of contract claim that's directed at SPO.

 7    But this notion that you should ignore the standard that we put

 8    in our response brief under the *Waag* case, we also push back

 9    on.  There's a standard for appointing receivers.  We don't

10    think they have met it.

11          *THE COURT:*  Should CRCPS get an opportunity to be

12    heard?  I mean, I know it's a chicken-and-egg question, here.

13          *MR. KILROY:*  It's a chicken-or-egg question.  I will

14    answer with your answer, because what does that even mean until

15    we get to a point of understanding who is in charge?

16          At the end of the day -- well, that's my answer.

17          *THE COURT:*  Okay.  All right.  Go ahead.

18          *MR. LITOWITZ:*  I do think CRCPS should be heard, and

19    you can take judicial notice of this, eighty-two point five

20    million dollars was invested, and it's worth maybe 40 now, at

21    the most, in liquid property.  So, when CRC I says they don't

22    think they did anything wrong, I tell you what, give me half of

23    your money, and you tell me if I did anything wrong.

24          *THE COURT:*  All right.  That's not helpful, and we

25    move on.

1          Let me move to ... the CRC Defendant's Motion To

2    Dismiss, and let me tell you how I want to do this.  It is

3    probably not the most efficient way, but it is, perhaps, more

4    helpful to me than doing it another way.

5          What I want to do is go, if you would, talk about the

6    area, the count, the basis and then get a response.  So, in

7    other words, I want to start with fraud, which -- well, and I

8    am floating back and forth between both defendants, because

9    some of these issues kind of go -- I'm sorry -- both

10   plaintiffs.  I'm sorry, because some of these issues are

11   pursued as against each of the Complaints.

12         So, let me start -- the process will become clearer.

13   One of the things that has been -- has been put forward is that

14   the fraud count, which, as I understand it, is the Cui

15   Plaintiffs' Count 1, I should dismiss that count for,

16   essentially, two reasons; one, statute of limitations; and two,

17   failure to meet heightened pleading standards.

18         The Cui Plaintiffs have asserted two things; one, it's

19   a continuing fraud, and therefore the statute of limitations

20   hasn't run or been triggered, whatever, and that the defendants

21   have presented -- prevented, I'm sorry, the Cui Plaintiffs from

22   discovering their actions, by their conduct, and then in regard

23   to the failure to meet the heightened pleading standards,

24   essentially, the Cui Plaintiffs take the position that they

25   have, to the extent that it is possible, because the facts are

 1    particularly within the knowledge of the defendants, and, at

 2    this juncture there isn't -- it's inappropriate, if you would,

 3    to dismiss it on that basis, at this juncture, where, the facts

 4    are so tightly held by them, and my understanding is that to

 5    the extent that the Li Plaintiffs had a dog in this fight, it

 6    was a direct claim that has been dismissed, and they are not

 7    really the focus of this particular claim, which is not to say

 8    that there aren't other fraud claims, whether it be the Federal

 9    and State Securities Fraud Claims.

10           So, that's the way I understand it, in terms of what

11    you are saying, Mr. Kilroy, and what you are saying

12    Mr. Stewart.

13           Let me first start by making sure I understand what it

14    is that you are saying, and then I will let you argue it.

15    Mr. Kilroy, do I have it correct?

16           *MR. KILROY:*  You do, Your Honor.

17           *THE COURT:*  Mr. Stewart?

18           *MR. STEWART:*  You do, Your Honor.

19           *THE COURT:*  All right.  Let me give you a couple of

20    minutes each to flesh this out for me.  Obviously, the

21    pleadings -- I don't mean to -- to pay short shrift to how it's

22    pled.  The pleadings, are the pleadings, are the pleadings.

23    They are sufficient, they are not sufficient.  Again, I

24    understand that there's an argument that there are facts that

25    are particularly within the knowledge, but I suppose what I'm

65

1   signaling to you is that my primary interest is in the statute

2   of limitations, although that may not line up well with your

3   primary interests.  Go ahead.

4           MR. KILROY:  First of all, the -- the count in the Cui

5   Plaintiffs' Third Amendment Complaint, we are dealing with, is

6   Count 1, as the Court pointed out, the second Count 7 of Li

7   Plaintiffs was the common-law fraud claim that's been conceded.

8   So, just on the Cui Plaintiff's one, the Court is exactly

9   right, there's really two -- three -- two basis for our

10  argument.  On the statute of limitations first, again, I won't

11  repeat what's in our brief regarding --

12          THE COURT:  I don't mind a little repeating, but I'm

13  not -- I don't need you to basically... act as if there's not a

14  position that's well articulated.  Your position is well

15  articulated.

16          MR. KILROY:  Got it.  On a high level, we have argued

17  that there's inquiry notice, and the kind of documents that

18  were presented to the investors gave that inquiry notice, on

19  the argument and I think the Court properly focused on the

20  argument that this is some kind of an ongoing fraud, where

21  there's no, sort of, end of the statute of limitations.  I will

22  point to plaintiff's own description of the fraud, as they

23  point out in paragraphs 56, 66, 68, 70, 73 and 74, and as I

24  read those, they all go to the fraudulent inducement to enter

25  into a contract, and that's really the claim that's being

66

1    asserted.  So this notion that you can, sort of, take advantage

2    of the continuing violation doctrine, even if it applies, we

3    think doesn't make enough sense in light of the fraud claim

4    that's been pled in this case.

5              THE COURT:  Okay.

6              MR. KILROY:  That's the statute of limitations issue.

7    Again, Your Honor, on the particularity, the Court can

8    certainly read those, but I want to reemphasize that the Cui

9    Plaintiffs have specifically identified, in their view, what

10   they believe the particular allegations are in the paragraphs,

11   again 56, 66 and so on, and would encourage the Court to read

12   those closely.

13             So, this argument that somehow the plaintiffs can't be

14   more specific or particular, in our Reply Brief we pointed out,

15   certainly, somebody had to have heard a presentation or read a

16   presentation.  There's a lengthy description of a PowerPoint

17   presentation.  We don't have a copy of it.  We don't know who

18   supposedly said it.  We don't know if any of the named

19   plaintiffs heard that presentation, relied on it.  Those are

20   the kind of particulars that are both necessary under Rule 9,

21   in terms of the who, what, when, where, how kind of standard,

22   but they are certainly within the -- the realm of understanding

23   of whoever received this information.  We don't have anything.

24   So, that's my response to the -- the argument on, Cui

25   Plaintiffs have made, in terms of why they were not more

67

 1   specific in their pleading.  The rest I will leave to our

 2   brief.

 3          THE COURT:  All right.  I will note that, apparently,

 4   I owe an apology to Mr. Stewart's clients, as well.  I guess I

 5   have seated the two counsel in the back, because I'm just going

 6   to keep butchering names.  I have been referring to the -- to

 7   your clients as the Cui Plaintiffs, and I am hearing the word

 8   Cui Plaintiffs.  It's simply because I'm not sure how to

 9   pronounce C U I.

10          MR. STEWART:  I say Cui, because my boss, who is from

11   Taiwan, pronounces it that way.  So, I don't know what is the

12   right way.

13          THE COURT:  Forgive my mispronunciations, and I will

14   just go from there.

15          MR. STEWART:  You are not offending me.  My clients

16   aren't here, so.

17          THE COURT:  We will deal with it another time.  Go

18   ahead.

19          MR. STEWART:  Just addressing Mr. Kilroy's last point,

20   first.  They have produced the documents, they have hired

21   people to give the presentations.  We have got multiple -- who

22   knows what -- my clients don't know who these people are.  They

23   don't -- I don't even know that they were actually at a

24   presentation or just given the documents.  I mean this is the

25   stuff that they should know.  They are the ones out soliciting

68

1    this.  I don't -- I mean, it's kind of reverse or inverse of

2    the argument, but if we go to back to the first --

3          THE COURT:  But, of course, if you don't know if your

4    people ever saw the presentation, what difference does it make

5    what was in the presentation?

6          MR. STEWART:  No, that's not what I'm saying.  I'm

7    just saying, he is saying who, what, where, why.  They don't

8    know any of that.  They are not going to be able to testify to

9    that.  These are their representatives they are putting out

10   there, and they are saying, we don't know who they are.  To me,

11   that's mind boggling.

12         My clients are sitting there, they have never seen

13   this person before, if they've seen them at all.  So, you know,

14   these are the facts that are more likely to be in their

15   possession than ours, but I -- I just wanted to address that,

16   briefly.

17         THE COURT:  All right.  Fair enough.

18         MR. STEWART:  Move forward to the thing that you were

19   more interested and that is, this is very sophisticated type of

20   ongoing fraud.  You look at their CIM, they are saying -- it's

21   quite interesting, because like Solaris says they are not

22   involved, but the entire presentation is about a Solaris loan.

23   So, I don't understand how they can't be involved, but they are

24   saying the loans are going to be secured by deeds of trust, and

25   that the principal will be paid or prepaid.  These are, you

1    know, people who are sophisticated investors in real estate,

2    would expect that the principal is going to be repaid when they

3    talk about how there's all this danger in the investment, a

4    regular person, a common person, I wouldn't think you were

5    talking about whatever the expected returns are, but when you

6    are telling me there's a deed of trust and it's either going to

7    be paid or prepaid, that's telling me that the principal is

8    secure, and I am going to get that money back, and then wait --

9    there's more, though, because this -- this goes on and on and

10   on.

11            THE COURT:  Well, let me stop it, recognizing that

12   there's more.  There's a second piece.  I get that.  But let's

13   assume, for the sake of argument, that they lied their back

14   side off.  Okay.  In terms of the presentation, what they said

15   was in every conceivable legal way, not true, fraudulent,

16   deceptive, what have you, that was when, back in two

17   thousand...

18            MR. STEWART:  I'm saying -- no.  They initially say

19   everything is protected by a deed of trust.  You are going --

20            THE COURT:  Yeah.  Yeah.  I know, but when is the lie?

21            MR. STEWART:  I believe that's in 2012.  Again,

22   that's -- this is for the point of the pleading.  I have got 16

23   plaintiffs, they were not all at the same -- that's part of the

24   reason it's so innocuous.  Then, if you look at the chart, the

25   money is advanced, but then it's not given.  I mean there's so

1    many moving parts on this.

2         *THE COURT:*  I get that.  I get that.

3         *MR. STEWART:*  Can I tell you when my client's money

4    was given?  I can't.  They can tell you.

5         *THE COURT:*  No, I get that.  I get that.  But, in

6    terms of -- in terms of the representations made to your

7    clients.

8         *MR. STEWART:*  They were made over several years;

9    didn't all pop up at once.

10        *THE COURT:*  Okay.  Then, again, what is the fraud?

11   There is the what we call the fraud in the inducement, the

12   initial.

13        *MR. STEWART:*  It's the representation that the loan

14   was secured by a deed of trust, and that that would be paid or

15   prepaid --

16        *THE COURT:*  Made when?

17        *MR. STEWART:*  -- the principal, not the interest.  The

18   principal.

19        *THE COURT:*  Made when?

20        *MR. STEWART:*  During their presentations.  This is

21   what they were told and then during the life of this thing,

22   we've had representations made by, you know, Mr. Hayes'

23   daughter, sending things out saying, yeah, the properties are

24   still worth, you know, more than the loan, and you are going to

25   get all of your money back, and that goes on.  They are

71

1   thinking, okay this is great, this is fine, and you know we can

2   go through, literally, you know, a hundred of these kinds.

3   There's plenty of representations over and over again, which

4   are calculated to prevent people from discovering that they are

5   not going to be paid back.  They are going to get half of their

6   money.  Leading all the way up to, we didn't talk about it, I

7   meant to talk about it on the Motion For Appointment Of The

8   Receiver, but I filed a recent objection to Mr. Hayes'

9   testimony, from the October hearing, which I was not

10  participating in, because we had not consolidated yet.  I mean,

11  he is just sitting there telling the Court that, we can't

12  transfer -- we said, why haven't you given us the property?

13  They bring up Collateral Unit Agreement, which is something

14  they negotiated in 2015 --

15       THE COURT:  I'm assuming you are talking about a

16  hearing in front of Judge Varholak?

17       MR. STEWART:  It was.  He tells the Court, we are

18  saving the limited partners all of this money, because there's

19  a local transfer tax.  He doesn't tell us what the local

20  ordinance is.  Mr. Kilroy doesn't tell us what the ordinance

21  is.  It's not cited.  Nobody takes judicial notice of it.  I

22  can't find it.  I don't know where it is.  I came across it,

23  finally, and it says exactly the opposite.  There is no

24  transfer on this type -- there would be no transfer tax on this

25  type of a transaction, and so, I'm like, we can go up to then.

1    This fraud just keeps on going.  They keep telling us things

2    that are absolutely false, to prevent them from discovering,

3    you know.  What's going on.   You want to speak?

4         THE COURT:  No, it's not his motion.

5         MR. STEWART:  So, that's -- I'm looking at this, this

6    is continuing on to today, to be quite honest with you, because

7    they keep making these representations that, how do you have a

8    loan where they say, okay, you don't have to make payments

9    anymore.  You don't have to make payments anymore because we

10   are going to give you the property, which is only worth half

11   what you are owed, but that's what you agreed to, and they are

12   like, we agreed to that, and then they say, oh by the way, we

13   are not going to give you the property either, we are going to

14   keep it, because it's going to save you a bunch of money, and

15   when they tell us that, it's a lie.

16        THE COURT:  In terms of the particularity --

17        MR. STEWART:  Yes.

18        THE COURT:  -- and returning to the particulars of

19   what is alleged in the Complaint, how is it that I cross the

20   bridge from considering the words in the Complaint to this more

21   amorphous and ever-continuing notion of, as late as whatever

22   somebody told Judge Varholak, when I wasn't there.

23        MR. STEWART:  Here is the thing it's a macro versus

24   micro view of what's going on.  It's not just paragraph 58 and

25   66.  Every cause of action repletes all of the claims in the

73

1    Complaint.  We have clearly pled a very large, sophisticated

2    fraud, and it's ongoing. I mean, if you are going to say that

3    we can't -- there's -- statute of limitations is gone, as they

4    continue to make misrepresentations to our clients, to hide the

5    fraud, I mean, I would have to amend the Complaint every month.

6    I mean, they continually make crazy representations.

7         THE COURT:  No, that's fair, but I mean, in terms of

8    this Third Amended Complaint, I don't have the date of what's

9    in it -- excuse me -- I don't have the date of filing in front

10   of me, but in terms of as of that date, how much of this other

11   stuff that had occurred is in there?

12        MR. STEWART:  Your Honor, some of it's in there, some

13   of it's not, as I said, but again, we can -- we can file

14   amended complaints over and over again.

15        THE COURT:  No, you can't.

16        MR. STEWART:  Exactly.  So, I think what's in there is

17   enough to withstand this challenge, that's what I'm saying, and

18   if there's not, then I guess we will have to amend it again to

19   plead it, because there are plenty of things that have

20   happened.

21        THE COURT:  All right.  Back for last word, brief.

22        MR. KILROY:  The last word is, disciplined restraint.

23   I don't want to address, I'm happy to, but in this discussion,

24   about a motion to dismiss, based on pleadings, I'm going to

25   refrain from addressing the factual issue that Mr. Stewart

74

1    completely misunderstands about the transfer fee.

2             I will answer the question you asked.  It's not in

3    here.  It's not in here.  I'm dealing with a -- the four

4    corners of the document, and he had the opportunity to point to

5    the allegations in the Complaint, and he just said I can't do

6    it, and that's not my problem, it's his.

7             THE COURT:  All right.  Let me move on to a second

8    cluster of claims.  The Federal and State Security Fraud

9    Claims.  As I understand it, there's a commonality here,

10   because the Motion To Dismiss speaks to this type of claim as

11   it is contained in the Li Plaintiffs Counts 5 and 6, and the --

12   I'm just going to say what I have been saying -- the Cui

13   Plaintiffs, Count 5.  The Cui Plaintiff's claim is a direct

14   one.  The Li Plaintiff's claims are derivative ones.

15            First, do I have the claims right?

16            MR. KILROY:  Yes, Your Honor.

17            THE COURT:  You agree with me, Mr. Litowitz?

18            MR. LITOWITZ:  Yes, Your Honor.

19            THE COURT:  And, Mr. Stewart?

20            MR. STEWART:  Yes, Your Honor.

21            THE COURT:  Okay.  As I understand it, there are,

22   essentially, four things that are being said.  One is the

23   statute of limitations, and we don't have to go over that

24   again, although I will hear from Mr. Litowitz on it, because I

25   did not hear from him earlier, and I don't think that there's a

1    substantive difference.  If I'm wrong..., I don't think there's

2    a substantive difference.  I understand the claims are

3    different, but essentially, it's, look, the -- the -- the

4    memoranda, the information, the sale of the security, all of

5    that, is too far back in time to be the subject of something

6    coming forward.

7            I will let you speak to it, but it's essentially a

8    similar argument.

9            There is a -- a second argument that is being

10   advanced, and that is to the extent that it is being claimed

11   that the ability that the limited partners had to exercise or

12   put -- I think I have got this right, to the extent that they

13   could -- that they had an opportunity to, if you would, give

14   back their interest to the investment and -- excuse me -- to

15   give back their investment in CRCPS, to that entity, and to

16   basically take a piece of property for their investment, and if

17   you win, you win, if you lose, you lose.  If the property value

18   goes up, you win.  If the property value goes down, you lose.

19   There is, in essence, a position that to the extent that that

20   is being advanced as some kind of security, the claim is not

21   fairly or properly stated.

22           The third thing is failure to meet the heightened

23   pleadings requirements, that's going to be a consistent one

24   throughout fraud claims, and then there is a claim that is

25   directed almost -- well, directly at the Li Plaintiffs.  It's

1   essentially, CRCPS, essentially, sold securities, so,

2   derivatively what are you doing?  You're asserting a securities

3   claim, derivatively against yourself, and it doesn't make a

4   whole lot of sense, and I will just leave it with that

5   shorthand.  Have I -- have I missed anything at a high level,

6   from your perspective?

7           *MR. LITOWITZ:*  You have not, Your Honor.

8           *THE COURT:*  All right.  Switching over, the Cui

9   Plaintiffs, I don't think they take any position that is

10  fundamentally different than they have taken previously with

11  respect to the earlier discussion that we had about fraud, but

12  one of the things that they do say is that, well, maybe that is

13  or isn't a security, but you are not exempt from registration.

14          The Li Plaintiffs have said there are two security

15  offerings triggering two statutes of limitation.  Cui

16  Plaintiffs essentially, again, repeat the position that we've

17  discussed previous, about a continuing fraud, and the defendant

18  prevented them from discovering.  So, I don't think we need to

19  talk about about that, although if you wish to, I will be fine

20  with that.

21          *MR. KILROY:*  Your Honor, I do not wish to be here

22  until 5 o'clock tonight, so I'm perfectly fine with that.

23          *THE COURT:*  Okay.  Li has said some additional things.

24  Obviously, they take the position that the claims are -- are

25  sufficiently pled, and then there's this offer, I suppose, that

1    if the put is not a purchase or a sale, they can amend, which,

2    whatever the value of that is, it does not help me in looking

3    within the four corners of the Complaint to what is.

4         More particularly, to the extent that the CRC

5    defendants -- excuse me -- that the Motion To Dismiss says that

6    CRCPS cannot assert a security claim against itself.  There is

7    and has been no answer that I can discern.

8         Let me start in the back with Mr. Stewart.  Do I have

9    your position correct, regardless of whether you wish to speak

10   to it or not?

11        *MR. STEWART:*  I don't -- I think that's more of --

12        *THE COURT:*  No.  I mean, your position is,

13   essentially, that it's a continuing fraud they've kept you

14   from, it's well pled, and to the extent that there may or may

15   not be -- well, and that -- if the put is a security, then

16   it's -- they are obligated to -- they are not exempt from

17   registration, that's my summary of your position.  Is it a fair

18   summary, is all I'm asking?

19        *MR. STEWART:*  Sure.

20        *THE COURT:*  Okay.  Let me come forward to

21   Mr. Litowitz.  I have given what I believe to be your summary,

22   as well.  Is it a fair summary?

23        *MR. LITOWITZ:*  Not -- there's a slight variation.  I

24   will make it quick.

25        *THE COURT:*  Go ahead.

78

1      *MR. LITOWITZ:*  I do argue that there's some issues

2      with the statute of limitations, when we look at it in terms of

3      the initial offering, which you mentioned, I agree with you on

4      that, but I do believe that a put is defined as a security,

5      under the securities laws, and they do have a continuing put.

6          I have given the Court a letter that goes from

7      Colorado Regional Center, General Partner, to every limited

8      partner, which tells them that the collateral is worth 93

9      percent of the loan, and if they exercise the put, it will get

10     the value of the property, 93 percent.  To me that's a false

11     statement in connection with issuing a security, which is a

12     put.

13         *THE COURT:*  Okay.  Let me come back over to the

14     plaintiff -- the defendant's table.  Mr. Kilroy, again, as we

15     go through these claims, I'm not asking you to be telling me

16     the same things over and over that you told me before, nor am I

17     trying to put limits on what you can tell me, but you said that

18     I fairly summarized your position.  Let me give you an

19     opportunity to speak to that position.

20         *MR. KILROY:*  Sure.  And in reverse order of the four

21     issues that you identified correctly, as the focus of my motion

22     on this claim, just to elaborate a little bit, it's not just

23     that the derivative securities fraud claim doesn't make sense,

24     it doesn't, but it -- from a legal standpoint, more

25     importantly, it misses a critical element of securities fraud

1    claim, which, of course, is the CRCPS entity, did not purchase

2    a security in itself.  So, it's a standing issue that starts

3    with the scratch of the head, that I think legally turns into

4    that.

5          The other issues I won't repeat the -- the pleading

6    fraud with particularity.  I addressed it in the Cui

7    Plaintiff's Complaint.  I'm not going to spend anymore time

8    than I did on my brief, on the Li Plaintiffs.  Basically, I'm

9    arguing that even reviewing the paragraphs that Mr. Litowitz

10   cited, we don't get there, particularly under the PSLR view,

11   which is a higher standard than Rule 9.

12         The only thing, and I think this was implicit in your

13   description of the second claim, the only thing that I didn't

14   hear, that I should be clear about is, on top of the statute of

15   limitations issue, we have the fraud claim, we have a statute

16   of repose issue, with the statutory security frauds claims, and

17   that kind permeates both my first and second arguments.

18         THE COURT:  The statute of repose is flat, count days

19   from X until Y.

20         MR. KILROY:  Yes.  So, with that, and this sort of

21   addresses both our first and second arguments, even if there's

22   a -- even if I believe it was on the fraud, common law claim,

23   we would point to the statute of repose, which is a cutoff.

24   That's why this is the -- the put option, such an important

25   piece of this from -- from the Li Plaintiffs' standpoint.  I

1    guess from all of the plaintiffs' standpoint.

2           Again, I won't repeat what I have in the brief, but

3    the bottom line, this is contractual opportunity in the Limited

4    Partnership Agreement itself, in Section 13.06, even if it's a

5    security, we are not conceding it is, there is -- there's no

6    purchase of this.  They chose not to -- the plaintiffs in this

7    case rejected that opportunity, and with that, again, there's

8    no standing for securities fraud statutory claim, state or

9    federal, and I should say that the state also has the statute

10   of repose that we identified in our motion to dismiss.

11          THE COURT:  All right.  Let me jump to the back, to

12   Mr. Stewart.  I understand, from our earlier discussion, that

13   your position is as it was, and apart from saying that they are

14   not exempt from registration, my understanding is that you

15   don't -- there's nothing more to add to this discussion, other

16   than repeating what you said previously.  If that's incorrect,

17   please, now would be your opportunity.

18          MR. STEWART:  It is not incorrect, Your Honor.

19          THE COURT:  All right.  Let me come forward to

20   Mr. Litowitz, and understand his position, with regard to these

21   matters, just to make sure that I have it right.

22          MR. LITOWITZ:  Yeah.  Under the securities law, sale

23   includes a contract for disposition of a security.  So, when he

24   says there was no sale, if they are offering puts every six

25   months, and saying the investors should get in line to exercise

1   the right to put their limited partnership back to the entity,

2   then that's an offer.  It's a security.

3          THE COURT:  Okay.  In terms of the statute of

4   limitations, I have not heard from you previously, because you

5   weren't part of the earlier discussion.

6          MR. LITOWITZ:  Me?

7          THE COURT:  Yes.

8          MR. LITOWITZ:  Yes.  There is a statute of limitations

9   and then a statute of repose, 10b-5.  The statute of repose is

10  a hard stop, meaning that it's -- it's a date certain, and then

11  that's it.  There's no tolling it, that was from the Supreme

12  Court, has ruled that.  So, I agree with that, and I think that

13  raises some serious issues on the initial -- shall we say the

14  initial promotional materials.

15         So, that's why I have, you know -- I have limited

16  myself to the put issue.

17         THE COURT:  I understand, and now I'm teasing to say

18  that you have ignored the --

19         MR. LITOWITZ:  I haven't ignored it.  To be honest

20  with you, I think James -- Jim, he makes some good points in

21  his 12(b) motion, and I read his motion, and I -- he made a

22  point that I thought was very good.

23         THE COURT:  You need to stop talking to him, when you

24  are talking to me.

25         MR. LITOWITZ:  I'm sorry.  Yes, Your Honor.

1          THE COURT:  It's okay.

2          MR. LITOWITZ:  I thought he made a very good point.

3   He said to me, well, seems like the harm was among everybody,

4   he felt, equally, and I took that to heart, and I thought,

5   okay, yeah.  I mean, I'm not going to drive the people crazy

6   with derivative and direct claims, and I am going to narrow

7   my -- my claims down as tight as they can be, to make this case

8   as fast as possible.  But I do think on this federal issue that

9   I'm relying on the put issue, because I do believe that there

10  are some statutory limitations issues.

11         THE COURT:  To be clear, is what you have just said a

12  concession with respect to the securities claims, to the extent

13  that they relate to the initial offering?  In other words,

14  those are -- because you have not said anything about that,

15  because you have nothing to say about that, and you do not

16  disagree that either the statute of limitations or the statute

17  of repose precludes your going forward with those claims, as

18  they pertain to the initial offering?

19         MR. LITOWITZ:  It's a concession that it's too messy.

20  I didn't want to open that can of worms, Your Honor.

21         THE COURT:  Yeah, well, I'm opening it, and I am

22  spilling it out, and the worms are on the floor, that's why I'm

23  having this hearing, to try to figure out what it is -- not

24  just you, but each of you is particularly saying.

25         So, can opened, you're absolved from responsibility,

```
 1    and the question is put in front of you.

 2          MR. LITOWITZ:  Well, you know my view, which is that

 3    the whole case should be resolved in five minutes.

 4          THE COURT:  I understand that.  I also understand

 5    that's not an answer.

 6          MR. LITOWITZ:  Okay.  My answer is yes, that that the

 7    statute of repose is -- is not going -- based on cases I have

 8    handled, it's not a winnable claim.  In its -- it's two

 9    formidable an obstacle to go back that far in time.  So, that

10    is he why I have limited myself to the more recent --

11          THE COURT:  Okay.  All right.  And I understand that

12    you're basically saying, I lose on the initial offering?

13          MR. LITOWITZ:  I don't want to throw shade on --

14          THE COURT:  You are not throwing -- he is not taking

15    that position.  This is something that I'm asking you about

16    what you are doing and not what he is doing.

17          MR. LITOWITZ:  My view is precisely that.

18          THE COURT:  Okay.  Let me come back and give you the

19    final tiny words, asking you to address what he has just said,

20    which is, it's not only the sale, it's the offer for sale,

21    number one; and then number two, what Mr. Stewart has raised,

22    which is that your -- there's still a violation here, because

23    whether -- you are not exempt from registration, that you

24    should have done something.  It's not clear to me how that ties

25    in with the original claim as set forth in the Complaint, but
```

84

1    nonetheless, I want you to speak to it, because what I'm trying

2    to do here is clarify.

3         MR. KILROY:  Sure.  And on that last issue in our

4    brief we separated out, our view is that that claim, the

5    federal securities claim, that Mr. Stewart brought, isn't

6    really a claim.  It's sort of a combination of a 10b-5-type

7    claim and a claim on the Investment Company Act, where there's

8    no private right of action.

9         So, the short answer to that is no private right of

10   action, on --

11        THE COURT:  On the registration piece, even if he is

12   correct?

13        MR. KILROY:  Correct, correct.  On Mr. Litowitz's

14   position, again, we don't concede that this -- this contractual

15   opportunity could even be a security, but we don't think that

16   his description of a generalized opportunity, itself,

17   constitutes a securities, for purposes of this claim.

18        THE COURT:  All right.  Let me move on to the next

19   set, which is breach of fiduciary duty.  The next cluster of

20   claims, if you would.  I see this as implicating both

21   Complaints.  The Li Plaintiff's Count 1, which is a derivative

22   claim, and the Cui Plaintiff's, Count 2, which is direct and

23   derivative.

24        Do I understand where you're aiming, Mr. Kilroy?

25        MR. KILROY:  Yes, Your Honor.

1      THE COURT:  And do I understand that you agree or

2  disagree, that that is where your breach of fiduciary duty

3  claim is, Mr. Stewart, Count 2?

4      MR. STEWART:  Yes.

5      THE COURT:  And, Mr. Litowitz, Count 1?

6      MR. LITOWITZ:  One moment.  Yeah.

7      THE COURT:  Okay.  So, what we have here is, again, a

8  statute of limitations issue, and then well, I see four

9  clusters of response -- not of response.  I see four cluster of

10 explanations for why the claims should be dismissed.  Statute

11 of limitations; two, no standing to sue derivatively, which of

12 course goes to both Complaints in this instance, for acts that

13 occurred before the limited partners became investors; three, a

14 failure to state a claim in the Complaints with regard to any

15 post-investment breach of fiduciary duty; and then, four the

16 claim is barred by the Economic Loss Rule.

17      Again, at a high level, do I understand what you are

18 saying, Mr. Kilroy?

19      MR. KILROY:  You do, Your Honor.

20      THE COURT:  All right.  My understanding of the

21 responses are these, both the Li defendant -- Plaintiffs,

22 excuse me, and the Cui Plaintiffs, have responded only to two

23 of these four issues.  Each has responded to the statute of

24 limitations.  Again, Mr. Stewart' position being, essentially,

25 as stated, continuing breach, continues to this day.

1    Mr. Litowitz's position being that there was some fraudulent

2    concealment of the breach, and it wasn't discovered until 2018,

3    which would bring them within the statute.  Neither side has

4    responded at all to the notion that there is no standing to sue

5    derivatively for acts which occurred before the limited

6    partners became limited partners.  Neither side has responded

7    to the claim -- to the position that the Complaints fail to

8    state a claim for post-investment breaches of fiduciary duty,

9    but both respond to the Economic Loss Rule.  The Li Plaintiffs

10   saying the duty arises from contract and the Uniform Limited

11   Partnership Act.  The Cui Plaintiffs saying, for purposes of

12   this count, what they are relying on is the statutory duty

13   under the Uniform Limited Partnership Act.

14          Let me start in the back with Mr. Stewart.

15          *MR. STEWART:*  The only thing I would add, Your Honor,

16   I didn't separate it out as a section, but the *Elk River*

17   *Association* case that I cited, and the cite states clearly that

18   a fiduciary relationship between the parties to a limited

19   partnership attached during the negotiations would precede

20   formal execution, certificate limited partnership.  So, I do

21   think I did address that, what -- that was one of the issues

22   that you said that we did not address, and it is actually in

23   the brief, although not identified well.

24          *THE COURT:*  All right.  Give me one second here.

25   Again, as you move away from that microphone, not only does my

87

 1    court reporter have trouble with you, I have some trouble,

 2    hearing, as well.  Just hold on a second.

 3         THE COURT:  Okay.  All right.

 4         MR. STEWART:  Other than that, you have succinctly

 5    stated what I said.  Just the only thing that I would change is

 6    that the -- the issue about whether you can breach a fiduciary

 7    duty before, is actually there in the first citation under the

 8    statute of limitations claims, in the *Elk River Associates* case

 9    that says that, in fact, you do have a fiduciary duty during

10    negotiations prior to formation, so.

11         THE COURT:  Okay.  All right.  Let me... and again, it

12    may be that I'm running a little far afield here, and if I am,

13    well, okay.  I understand the notion that there can be a breach

14    that is related to the negotiation that leads to the contract.

15    If I were to try and embrace that, what do I have that permits

16    me to say when those negotiations occurred?  Because again, to

17    what -- to one extent I understand what you are saying.  You

18    are expanding the shackles that you feel that Mr. Kilroy is

19    putting on what it is -- or where the breach can occur, but

20    you're also moving backwards in time, from the filing of the

21    Complaint, and saying these breaches occurred somewhere earlier

22    than the contract.

23         MR. STEWART:  That's what Mr. Kilroy is saying.

24         THE COURT:  Well, no, I understand that.  I guess I'm

25    trying to figure out, and so now loop back to me how that works

1    into your argument on the statute of limitations?  And I

2    understand, I suppose, it's again, this is yet an earlier part

3    of the continuing fraud; is that the answer?

4         MR. STEWART:  It's no different than that argument,

5    other than the fact -- that the breach of fiduciary duty are

6    happening at a mind-boggling rate.

7         THE COURT:  All right.  I get it.  Let me come forward

8    to Mr. Litowitz, please.

9         MR. LITOWITZ:  Yes, on the statute of limitations, I

10   did cite the *Tisch* case, which held that the statute runs from

11   when the plaintiff knows of the breach of fiduciary duty.

12   There's no duty to make an independent investigation.  So,

13   that's how I dealt with the statute of limitations.

14   Furthermore, I did cite in my Complaint, my Third Amended

15   Complaint, all about recent breaches of fiduciary duty, failure

16   to call the loan is a breach of fiduciary duty, giving people,

17   limited partners, every six months a notice saying that the

18   value of their property is worth 93 percent.  Failing to value

19   it is a breach of fiduciary duty, and I go down the line.  So,

20   these are all continuing breaches of fiduciary duty.  They are

21   collecting a 2 percent fee for managing 82-million dollars into

22   40-million dollars.

23         Now, that's a breach of fiduciary duty.  It's a breach

24   of duty of loyalty.  It's in the Complaint, whether you agree

25   with it or not, it has to be taken as true, and it's clearly

 1   pleaded and present.

 2          So, yes, there's an academic issue as to when it all

 3   started, what happened before it was born; chicken and the egg.

 4   We have got more than enough now, to say that there's an

 5   ongoing continuous breach of fiduciary duty.

 6          You know, I know that Your Honor is very keyed into

 7   the rules and very knowledgeable, and I respect that, but at

 8   the end of the day there's 40-million dollars missing.

 9          THE COURT:  Okay.  Sometimes people lose 40-million

10   dollars.  I don't know what you want me to say about that.  I

11   mean, you keep saying it to me as if that makes you right.  It

12   makes you someone who represents clients for, "something bad

13   happened."  Whether it's their fault or not, is what the

14   litigation is about, and telling me that something bad

15   happened, doesn't really move my needle.

16          MR. LITOWITZ:  Well, I don't know -- I guess, I don't

17   understand that because...

18          THE COURT:  Okay.  You don't understand, we move on.

19   I'm not here to make you understand.

20          Let me --

21          MR. LITOWITZ:  I'm trying to make -- okay.  So let me

22   finish up real quick.  So, on the Economic Loss Rule, we feel

23   that, you know, we did answer that.  I see your clusters here.

24   My view is that there's an absolute ton of material here saying

25   that there's a breach of fiduciary duty, and it's just -- I

  1    can't -- I'm dumbfounded why anyone would think that that isn't

  2    stated.

  3           THE COURT:  Mr. Stewart took the position, with

  4    respect to the standing to sue, for acts which occurred before

  5    his plaintiffs became limited partners, and essentially, takes

  6    the position that there are breaches that were occurring during

  7    that timeframe.  You have been silent as to that.  I'm trying

  8    to understand whether I missed something in the pleadings, as

  9    to that silence or my perceived silence?

 10           MR. LITOWITZ:  Well, it has -- it's a little more

 11    complicated, and I didn't want to make it more complicated, but

 12    the money went in and was then invested.  So the fraud in the

 13    inducement, it didn't -- they actually -- the investment didn't

 14    actually happen until the money was already in and they were

 15    already limited partners.  So, there was -- there was fraud

 16    beforehand, and then there was fraud once they started.

 17    There's fraud up and down the line.  So, it's not like we're

 18    saying there was fraud 12 ago, to get these people into the --

 19    or that there was breach of fiduciary duty 12 years ago and

 20    it's over now.

 21           We're saying that there was a breach of fiduciary duty

 22    all up and down the line and it's academic, where you want to

 23    say it began or not.  I can tell you an acorn becomes an oak

 24    tree, I can't tell you when.  At some point it's an oak tree.

 25    So, its -- it's an aphid until it becomes developed.

1          THE COURT:  Okay.  Last word.

2          MR. KILROY:  Sure.  I won't repeat the statute of

3   limitations issue, other than to point out that the allegations

4   of breach of fiduciary duty track the allegations of fraud, and

5   the Cui Plaintiffs to a tee, the same reference to same

6   paragraph numbers.

7          On this issue of no standing to sue derivatively, I

8   want to address the question you had of Mr. Stewart, on the *Elk*

9   *River* case.

10         That case is specifically designed, I think it's

11  important to look at the language the Colorado Supreme Court

12  used there.  They basically expanded the notion of a duty of --

13  fiduciary duty, to the time period of negotiating the

14  investment, and that was their focus that the express holding

15  is, therefore, we conclude that defendants owed a fiduciary

16  duty as a matter of law to plaintiffs from the time that the

17  sale of the limited partnership units commenced until

18  defendants were removed as general partners.  Now, I make that

19  distinction, because I think this notion that there's no

20  starting point, that you can just go back to the beginning of

21  time, doesn't make enough sense, and I understood your question

22  to kind of be, how do we interpret that?  And the answer is, in

23  this *Elk River* case, it literally had to do with things that

24  were done in the negotiation of that particular limited

25  partnership, and in contrast, in our case, what we are being

1    accused of is selling the investors a bad deal, but the deal

2    was done, described in the PPM, with the documents attached,

3    that we're talking about, the promissory note that the

4    plaintiffs take issue with the Yield Enhancement Agreement,

5    that they take issue with, the notion that there's a put in

6    call, such that it's not fair to say, you've just lost

7    40-million dollars, because that presumes something that isn't

8    pled.  It's not even in evidence.  It's the value of the

9    property.  If it goes up, good for them, if it goes down, bad

10   for all of us.

11        So, I make that distinction, because I think it's

12   important to look closely at *Elk River*.  It's not as expansive

13   as would apply here.  That's really my argument as to the --

14   what I call a pre-investment conduct.

15        On the post-investment conduct, as we pointed out,

16   damages are an essential element of a breach of contract claim,

17   and it's true, and I conceded in our brief, what Mr. Litowitz

18   said, that unlike the Cui Plaintiffs' Third Amended Complaint,

19   the Li Plaintiffs did include some post-investment conduct.  We

20   addressed it in our brief and I won't repeat it.

21        The final issue on this economic loss doctrine, I

22   would point out, again, what we did in the brief, which is, the

23   notion that the -- the fiduciary duty comes from the contract,

24   I think as a concession, that that's exactly why it's barred by

25   the economic loss doctrine.  The *Tuckman* case is, in our view,

 1    directly on point.

 2           THE COURT:  Let me move to the next one then.  We are

 3    going to stop, and I am moving to the next one, because I think

 4    that there's not a lot of discussion that's going to occur.

 5           The next one is the Colorado Consumer Protection Act.

 6    The motion is directed to the, what I have been saying --

 7    mispronouncing as the Cui Plaintiffs, Count 3, direct.  The

 8    motion, in addition to statute of limitations, which we don't

 9    have to repeat anymore in this instance, says it's preempted by

10    the Colorado Securities Act, and I don't see any response at

11    all.

12           MR. STEWART:  I will concede that.

13           THE COURT:  Well, since you are being so kind and so

14    direct, I might be able to squeeze one more in.

15           The Investment Company Act, is directed solely, to the

16    of Cui, Count 4, which is a direct act, and the argument is,

17    there's no private right of action or private remedy of

18    recision under that act, and there again, there's no -- if

19    there is a response, I don't know what it is.

20           MR. KILROY:  I don't have one, Your Honor.

21           THE COURT:  Let's stop, pick it up at 1:15.  We will

22    work our way through the rest of these, and slide over to the

23    SPO motion and do the same thing.  Okay.  Recess.

24           THE COURTROOM DEPUTY:  All rise court is in recess.

25           (Recess at 12:03 p.m.)

1          (In open court at 1:14 p.m.)

2                  *THE COURTROOM DEPUTY:*  All rise.  Court is in session.

3                  *THE COURT:*  Please be seated.  All right.  Picking up

4     where we left off this morning, I believe that I am at the

5     aiding and abetting unregistered brokers issue.  It goes solely

6     to the Cui Defendants, Count 5, which is a direct claim.

7          The argument, as I see it, is three fold -- two,

8     three, why quibble.  One, there's no private right of action;

9     two, if there is a private right of action, it belongs solely

10    to the SEC, whether we call that one or two, whatever, and then

11    finally, again, a statute of limitations, statute of repose

12    issue.

13         The response has been that the defendants were

14    controlling and directing various parties, and therefore they

15    are liable under 78t-(a), which creates joint and several

16    liability for control persons of entities found liable for

17    violation of the securities laws.

18         Let me start with Mr. Kilroy.  From your -- am I

19    identifying the right count to which this has been directed?

20                 *MR. KILROY:*  You have, Your Honor.

21                 *THE COURT:*  And have I described your position fairly?

22                 *MR. KILROY:*  You have.

23                 *THE COURT:*  All right.  Let me go to Mr. Stewart.

24    Have I described your position fairly?

25                 *MR. STEWART:*  You have, Your Honor.

95

1          THE COURT:  Okay.  Then let me come back to

2     Mr. Kilroy, and ask him -- okay.  It occurs to me that I can

3     now see Ms. Kanan, and I have -- I should mention that everyone

4     who was here this morning is here again this afternoon.

5          In any event, let me come back to Mr. Kilroy and ask,

6     high level, you have the floor, a few minutes, tell me what I'm

7     either missing or not missing, or talk to me.

8          MR. KILROY:  Believe it or not, I'm going to just

9     pass, because everything has been raised in our brief.  I would

10     only be repeating, for you, what you have already identified as

11     our arguments.

12          THE COURT:  Then would you tell me how you -- well,

13     let me -- let me let Mr. Stewart amplify.  In terms of saying

14     they are control parties or control persons, presumably they

15     are control persons of an entity, but if that entity doesn't

16     have a right of action, and I'm not saying they do or they

17     don't, but if they don't have a right of action, is there a

18     scenario in which the control person has a right of action,

19     simply because they control an entity, which, itself, does not

20     have a right of action?  I may have made that more confusing

21     than -- than -- my understanding is your answer is,

22     essentially, there is a private right of action.  The private

23     right of action rests in the defendants, because they were

24     controlling or directing these people that they're accused of

25     aiding and abetting -- or that is suggested that they were

 1     aiding and abetting.  But the argument with respect to the

 2     aiding and abetting is, the only person that has a right of

 3     action is the SEC.

 4            If that's right, and I'm not saying it is or it isn't

 5     --

 6            MR. STEWART:  I understand.

 7            THE COURT:  But if that is right, is your answer and

 8     Mr. Kilroy's position simply two ships passing in the night, or

 9     do they -- do they ever collide?

10            MR. STEWART:  I think they are two ships passing in

11     the night.

12            THE COURT:  Okay.  All right.  Then let me go on.

13     Next claim is veil piercing, and it is against the Cui

14     Plaintiffs, Count 8.

15            Now, let me just be clear, the parties, I think, refer

16     to it as Count 7, but I think it is Count 8, and that what

17     happened is that somebody essentially made a typo, and that

18     everybody else continued down typo road.

19            So let me start with verifying that we're talking

20     about Cui Plaintiffs, Count 8, veil piercing, and not Count 7

21     or some other count?

22            MR. KILROY:  We are, Your Honor.  I will take original

23     responsibility.  It looks like my typo on my motion.

24            THE COURT:  Again, I'm not faulting.

25            MR. LITOWITZ:  I am at least equally to blame.

1          THE COURT:  All right.  I don't know that there's a

2     whole lot to discuss here.  I mean, to -- to get right down to

3     it, the -- the position of the CRC people is failure to state a

4     claim.  It's just veil piercing is not a claim.  Again, I'm not

5     even sure that there's a disagreement about that, but everybody

6     wants to make sure that they don't do anything that destroys

7     future ability to rely on an alter ego theory, to effect a

8     recovery on some other claim or action, and if that's the

9     position that everybody has, then fine.  Really isn't anything

10    more we need to talk about.  Do I have it right, from your

11    position --

12         MR. LITOWITZ:  You do, Your Honor.

13         MR. KILROY:  That's the same as what we just

14    discussed.

15         THE COURT:  Okay.  All right.  There is a declaratory

16    judgment claim that is Count 7, direct and indirect, and as I

17    see it, that's not against the CRC Defendants.  It's against

18    the currently unrepresented CRCPS, and I don't think that

19    anybody is disagreeing with that?  Again, any reason to talk

20    about it?

21         MR. KILROY:  Not from my standpoint.

22         MR. LITOWITZ:  No.

23         THE COURT:  Now we go to civil theft, and in this

24    instance, I am looking over at the Li Plaintiffs, Count 2,

25    which is a derivative count, and there are two positions that

1    are advanced by CRC.  The first is failure to state a claim,

2    and the second is that it must be a direct claim, and not a

3    derivative claim, because, essentially, the way this is

4    structured is it is essentially stealing from yourself, which

5    doesn't mean anything.

6           The response is that it states a claim for obtaining

7    investments by deception.  Let me just start again, with

8    whether or not I have identified the right target, in terms of

9    the count.  Solely, goes to the Li Count 2, derivative.

10          MR. KILROY:  Correct.

11          THE COURT:  You agree with that, as well,

12    Mr. Litowitz?

13          MR. LITOWITZ:  Yes.

14          THE COURT:  Let me turn to Mr. Kilroy, give me some

15    further, if you would, discussion.

16          MR. KILROY:  The -- starting with the first issue,

17    again, pled as a derivative, not just that doesn't make sense,

18    but legally there are no allegations, even if they didn't make

19    sense, that would support the notion that the named defendants

20    stole from CRCPS.  Clearly, I think what they're getting at is

21    this notion we've heard over and over, which is that somehow

22    all of the defendants stole money from the -- the plaintiffs,

23    and as we worked through it, it's clear that what the theory

24    really is, is that the units still are there, there may be a

25    loss if they are sold at less than the parties would like,

1   there may be a gain, if they are sold at more than parties

2   would like.  Regardless, there are no allegations that somehow

3   the defendants stole money, opportunities or anything from

4   CRCPS.  So, that's the derivative piece of it.  The other

5   argument just really goes to the detail in the pleadings, so I

6   won't repeat it.

7          THE COURT:  So, let me just go over, then, and hear

8   from Mr. Litowitz about this, focusing on not the nature of

9   your position, which is that investments were obtained by

10  deception, but how that constitutes a civil theft derivative

11  claim?  Because I'm having some trouble following it, to be

12  honest with you.

13         MR. LITOWITZ:  Well, basically, civil theft is

14  conversion by deception, and as I have said, the PPM told every

15  investor that the project consisted of 79 condos, and it turned

16  out there weren't 79 condos, and then the *Tisch* case, 439 P.3d

17  89, had a fraud in 2003, but the deception was not uncovered

18  until 2015, and the Court allowed a lawsuit in 2016, 13 years

19  later, saying there's no duty to examine.

20          So, I think the grounding of a civil theft claim is

21  there.  Now, if you want to get sophistical and say, you can't

22  steal from yourself, I have an easy remedy for, I will make

23  that a direct claim from 112 clients.

24         THE COURT:  Except I'm not here to allow people to

25  change things in response to my simply asking a question..

1        MR. LITOWITZ:  He is making a very sophistical

2   argument, no one was harmed, because they can't steal from

3   themselves.  Your Honor, really, really, these people have lost

4   their life savings.  Are we going to play around with this

5   company is, is stealing from itself.  You know, we're not

6   here -- this isn't Enron.  We know where the money was taken.

7   We're not going to say that they took money from themselves.

8   Are you really going to say that these people stole their own

9   money?  I mean this is a sophistical argument.

10       THE COURT:  Well, you're raising a derivative claim.

11       MR. LITOWITZ:  Yes.

12       THE COURT:  So, it's on behalf of CRCPS saying that

13  they stole what from CRCPS?

14       MR. LITOWITZ:  They stole...

15       THE COURT:  Not from the investors, not from the

16  Chinese, from CRCPS?

17       MR. LITOWITZ:  From CRCPS.  I guess it would be ... I

18  mean, I think that we state a claim against SPO, through --

19       THE COURT:  That really doesn't help, because he is

20  not SPO.

21       MR. LITOWITZ:  That's true.  Yeah, I mean, I guess ...

22  the question is, um ... who ... CRCPS sought out the money from

23  these investors.  I guess, yeah, I mean, okay I will -- I will

24  make it a direct claim for --

25       THE COURT:  No, you won't.  This is not you get to do

1    what you get to do.  I'm asking a question, that's all I'm

2    doing.  I'm not ruling on anything today.  The question, and

3    you are not going to -- hell will freeze over before we get in

4    the game of ping-pong, where every time you get pushed into a

5    corner on derivative, you go to direct, every time you get

6    pushed into a corner on direct, you go to derivative.  It does

7    not work that way.  I'm just simply trying to understand the

8    nature of the allegation, to the extent that civil theft has

9    been alleged, what is it, if anything, that you can point to,

10   that CRCPS is saying, that the CRC defendants stole from CRCPS?

11           MR. LITOWITZ:  Well, I -- the CRC defendants,

12   convinced the CRC entity, the limited partners, that -- of

13   these various facts, which it turned out to be deceptive.  So,

14   the harm was suffered by all of them.  So, I appreciate what

15   you are saying.  I'm trying to streamline this, so that's why I

16   cut out my direct claims, to make this -- let's make it as

17   simple as I can make it derivative.  Now, if I have -- if I

18   have backed myself into some logical corner here, by trying to

19   clean this up for everybody, then I can go back and make, you

20   know --

21           THE COURT:  No, you can't.  You seem to have this

22   notion that you can just change things.  We are in the Fourth

23   Complaint now.  Now, I understand that all of this would be

24   decided by Magistrate Judge Varholak, because I probably would

25   send it back down, but the notion that every time I -- I'm

1    trying to set the parameter or the margins of what is in play

2    and what is not, every time that the discussion becomes

3    difficult, we're going to change the margins.  No, we're not.

4    It's as simple as that.  No, we are not.

5         I understand what your motivation was.  Frankly,

6    that's not what I'm trying to decide.  What I'm trying to

7    decide is whether the allegation that he has raised, or the

8    claim -- the claim, the motion to dismiss that he has raised,

9    has merit or doesn't have merit.  Part of that decision is,

10   depending upon me understanding how CRCPS how they stole

11   something from CRCPS.  What is it that they stole from them?

12   And the answer that I'm getting is, not stated this way, but

13   ... the answer is, quote, well nothing, but they did steal from

14   the limited partners in CRCPS.

15        *MR. LITOWITZ:*  Well, there's a pot of money of

16   82-million dollars, and they put it into a fraudulent deal.  I

17   mean there's a pot of money in a limited partnership's bank

18   account.  They put that money into a fraudulent deal, that's a

19   conversion.  I don't see that as illogical.

20        *THE COURT:*  Okay.  All right.  The next cluster is,

21   frankly, gone; and that is, there were some arguments about the

22   Li Plaintiff's derivative -- well ... about the Li Plaintiff

23   derivative claims, and the reason I say it's gone, is

24   ultimately, since the argument has been raised, the Li

25   Plaintiffs have amended and provided the verification.  So, I'm

1   not sure that there's anything else that goes on, to talk

2   about, with regard to that.

3           MR. KILROY:  I agree.

4           THE COURT:  You agree, as well, Mr. Litowitz?

5           MR. LITOWITZ:  I wanted to mention one quick second,

6   surprising for Brian, my second amendment added one name to the

7   Complaint, that's not exactly a brain killer.

8           THE COURT:  And that's not exactly anything that's

9   relevant to anything that I'm talking about.

10          MR. LITOWITZ:  It is.

11          THE COURT:  So, we will move on.  I do need to say

12  this, however, because of the timing of things, the Motion To

13  Dismiss was filed before the corrections in the Third Amended

14  Complaint.  Nonetheless, all that happened was the

15  verification, as I understand it, and so the motions -- I'm

16  considering the motions in their current form as being directed

17  to the most recent operative pleading, and that no side is

18  objecting to that.  Let me start in the back.  Mr. Gee?

19          MR. GEE:  That is correct, Your Honor.

20          THE COURT:  Mr. Kilroy?

21          MR. KILROY:  That is correct.

22          THE COURT:  Mr. Litowitz?

23          MR. LITOWITZ:  Correct.

24          THE COURT:  And, Mr. Stewart?

25          MR. STEWART:  Correct.

1    THE COURT:  And then finally, there is a -- a brief

2    statement of of position that claims against CRC and Waveland

3    and to be clear, that's CRC, not CRC I, CRC and Waveland should

4    be dismissed, because of a failure to state a claim.  I'm not

5    sure that I have heard any particular response that is

6    singularly focused on that position.

7    I would summarize the position as being, essentially,

8    this, you can complain about what CRC I did, as the general

9    partner of CRCPS.  You can complain about that, and whether you

10    are right or wrong, that does not mean that CRC, and then

11    further removed, Waveland are alleged to have done anything.  I

12    suspect I know what the answer is, but let me just be sure that

13    I understand what the position is.  Mr. Kilroy?

14    MR. KILROY:  You have stated the position exactly

15    correctly.

16    THE COURT:  All right.  Mr. Stewart, you want to tell

17    me what I already know?

18    THE COURT:  We can leave it to Mr. Litowitz, if you

19    like.

20    MR. STEWART:  Your Honor, I think that you, at least

21    during our deliberations today, stated it correctly, that

22    Waveland owns CRC and CRC owns CRC I, as far as I -- we don't

23    have any information as to who is at the heart of all of that,

24    although we have our suspicions, but I don't have anything else

25    to add.

1            THE COURT:  And at the end of the day, I suppose --

2      again, I'm not saying and I am not building arguments and I am

3      not writing responses or anything else, but I just want to make

4      sure that I'm not incorrectly taking the position that -- I'm

5      incorrectly taking a position that should not be taken.

6            I assume, that at the end of the day, what is being

7      said, subtly or otherwise is, "Well, we don't have any direct

8      allegation as to what they did, specifically, but we do

9      maintain that there may be a right to pierce the corporate

10     veil. If you pierce the corporate veil, that piercing may lead

11     up the food chain, if you would, from CRC I, to its owner, and

12     CRC, and then further up the food chain, from CRC to its owner,

13     Waveland.  Fair?

14            MR. KILROY:  Fair.

15            THE COURT:  Anything to add to that, Mr. Litowitz?

16            MR. LITOWITZ:  I'm trying to find it, but I believe

17     that the question of -- I believe that in the *Wichita* case,

18     which is in this -- in this Circuit, 365 F. Supp. 3rd, 112, it

19     said pleadings standard for veil piercing is liberal.  Also in

20     the Tenth, in Colorado, *Griffith* case, 381 P.3d, 308, piercing

21     of a veil there's an instrumentality.  I believe those were

22     alleged.  So, I think that you are correct.

23            THE COURT:  All right.  I think I have covered

24     everything that you have tried to put on my plate, Mr. Kilroy,

25     at least by way of the Motion to Dismiss.  Do you agree or

1   disagree?

2        MR. KILROY:  I agree.

3        THE COURT:  All right.  Then we stop this discussion,

4   and shift over to the of SPO Defendant's Motion To Dismiss,and

5   we're going to go down -- Mr. Gee, would have to be -- would

6   have to have been asleep all morning to not understand how we

7   are going to proceed.  We are going to proceed in the exact

8   same manner.  I want to make sure I understand what claims

9   we're talking about, with respect to the labels, and then what

10  your argument is, and then what the response is.

11       I start with civil theft, which is the Li Plaintiff's

12  Count 2, derivative.  Correct?

13       MR. GEE:  That is correct.

14       THE COURT:  All right.  Then in terms of a basis,

15  there are a number of things that are stated, failure to state

16  a claim, insufficiently pled, fraud-plus allegations, and a

17  statute of limitations issue.

18       I suppose, and I am sitting here somewhat confused,

19  and what I mean by that is I'm trying to see if I could pull

20  from memory, and I can't, what it is that we're talking about,

21  in terms of the civil theft, because the statute of

22  limitations, whether it is or isn't -- whether it is or isn't

23  exceeded, there must be some understanding as to what it is

24  that you believe constitutes the civil theft in order for you

25  to be able to say here is the start date, the statute is

1  tolled, but I will let you get into that.

2          The response is fairly straightforward, the Li

3  Plaintiffs have said that it's not time barred.  Oddly, I think

4  that there is a response from the Cui Plaintiffs, although I'm

5  not sure that this claim is directed at anything that they

6  have.

7          MR. STEWART:  Your Honor, if there is, I apologize --

8          THE COURT:  No reason to. I'm just -- this is why

9  we're doing this, so that I make sure that I am not mixing

10  something up myself.

11          MR. STEWART:  I have to confess, this Motion To

12  Dismiss was a little more difficult to address, because,

13  Mr. Gee, for whatever reason, has not separated the claims

14  nearly as effectively --

15          THE COURT:  I don't disagree with that.

16          MR. STEWART:  -- as Mr. Kilroy, on many occasions he

17  is citing to Mr. Litowitz' Complaint, when he is talking about

18  me.

19          THE COURT:  And I don't --

20          MR. STEWART:  Makes it very, very hard to understand

21  where he is going.

22          THE COURT:  I understand.  I'm not criticizing you or

23  him or anybody else.  I'm just kind of marching through this,

24  as I understand things now, the Motion To Dismiss, is insofar

25  as it pertains to civil theft, is not directed against you.

1        MR. STEWART:  I do not --

2        THE COURT:  If that's the case, I don't really care

3   what your answer is.

4        MR. STEWART:  Perfect.

5        THE COURT:  So, again, my understanding of the Li

6   response is that it's not time barred.  Again, I will hear a

7   little bit, because it may be that I understand Mr. Kilroy's

8   view on this.  I don't want to assume that Mr. Gee and

9   Mr. Kilroy have identical postures anymore than I assume that

10  Mr. Stewart and Mr. Litowitz have identical postures.  So, let

11  me get a brief statement from you, as to how you see these

12  things being fleshed out.

13       MR. GEE:  Sure, Your Honor.  With regard to civil

14  theft, as you saw, I'm not going to repeat this, but our

15  initial approach was basically the eightball approach, which

16  is, do you -- do you -- did you state enough facts in order to

17  warrant asserting this claim?

18       THE COURT:  Right.

19       MR. GEE:  Getting to your question, Your Honor, about

20  when did this theft allegedly take place, what I gather from --

21  from the Li Plaintiffs' Complaint is that it occurred as soon

22  as money was disbursed to my client under the loan agreement.

23  And the loan -- the money was disbursed in multiple advances

24  over a period of years, ending in around 2014, '15, something

25  like that.

1              The statute of limitations for civil theft is two

2     years, and I am not certain if I understand from the Li

3     Plaintiffs how they get around the statute of limitations, but

4     it is a fraud-based civil theft claim.  So on top of that

5     statute of limitations problem, there is the problem of the Li

6     Plaintiffs' total inability to say what statements we made, the

7     SPO defendants made, to any one of them that was --

8              THE COURT:  You are drifting, and I am not interested

9     in drifting into the fraud.

10             I have a problem with the civil theft, as is already

11    been revealed, in terms of, I'm having a problem identifying

12    exactly what it is that derivatively, acting on behalf of

13    CRCPS, they are accusing SPO of having stolen, but it's an

14    easier understanding as it pertains to SPO than it is for the

15    CRC people.

16             My assumption is that you are taking the position that

17    what they are alleging is -- as having been stolen by you, are

18    the funds that were, essentially, in your view, loaned to you

19    by CRCPS, and that regardless of the fact that there's -- what

20    is it, 19 different advances, or 17 -- somewhere in the upper

21    teens, regardless, the statute has passed with regard to those

22    matters.  So if, in fact, that is the theft, the statute has

23    run?

24             MR. GEE:  That's correct, Your Honor.

25             THE COURT:  All right.  Let me hear from the Li's,

1    again, Mr. Litowitz, as to your argument, to make sure that I

2    have not unfairly short shrifted it.  Essentially, your

3    position is, it's not time barred?

4              MR. LITOWITZ:  Yes, Your Honor the Tisch, 439 P.3d,

5    89.

6              THE COURT:  Can you explain to me  --

7              MR. LITOWITZ:  It says that that statute begins to run

8    on civil theft from when the victim learns of the deception,

9    and we did not -- the clients did not know that this -- that

10   this collateral was so low value, until a couple years ago.

11   Less than a couple years ago.  So --

12             THE COURT:  Who are you calling the client?

13             MR. LITOWITZ:  My clients, the limited partners.

14             THE COURT:  They are not -- well, their claim is a

15   derivative one.

16             MR. LITOWITZ:  My claim is a derivative one -- well,

17   I'm saying that ... yeah.  I mean, this is that same logical

18   puzzle.

19             THE COURT:  I understand.

20             MR. LITOWITZ:  Yeah, yeah, yeah.  I mean --

21             THE COURT:  I mean, if ultimately, the derivative

22   claim is that -- I guess I'm just trying to figure out whether

23   or not Mr. Gee has correctly identified your position as to

24   what the theft was that was committed by the SPO defendants,

25   and what he has said to me is the theft is the loaning of the

1    money, or what I have said to him, and he has agreed with,

2    however you want to call it, potato, potato, who cares, it is

3    the loaning of the money to the SPO Defendants, that initial

4    loaning of the money which took place in multiple steps, but

5    that that loaning of the money is the, quote/unquote, theft?

6           MR. LITOWITZ:  Well, it's part of it, and then in --

7    combined with the fact that the structure for this pile of

8    money to be invested -- loaned to SPO, was such that they got

9    to set their own valve of their own -- of the collateral, which

10   is mind-boggling, it was nonrecourse and it was structured at

11   the money, without being over collateralized; that they

12   assigned inflated values to the -- to the collateral; and that

13   all of this was created -- in the Complaint I talk about this

14   whole story.  This was all created in combination between SPO,

15   CRC I.  They built this roach motel.

16          THE COURT:  All right.  But if, in fact, all of that

17   is true, everything that you have just said is a description of

18   matters which occurred before the funds were advanced to the

19   SPO group.

20          So, let me assume that everything that you have said

21   is correct.  If the theft is the handing of the money, the

22   loaning of the money, whatever verb you want to put on that, to

23   the SPO Plaintiffs, and it occurred X number of years ago,

24   where X is greater than the statute of limitations, what's the

25   answer?

1          *MR. LITOWITZ:*  The answer is that they didn't know

2     about it until recently, and the statute of limitations begins

3     to run from the victim's knowledge --

4          *THE COURT:*  The victim being CRCPS?

5          *MR. LITOWITZ:*  Yes.

6          *THE COURT:*  So, CRCPS did not know that it loaned the

7     money to SPO or that it entered into these agreements?

8          *MR. LITOWITZ:*  It did not know, at least the limited

9     partners part of it.  I mean, didn't know that -- that this was

10    a sham transaction.

11         *THE COURT:*  All right.  I move on to the Colorado

12    Securities Fraud.  This is directed to, as far as I can tell,

13    and again, I don't miss -- or I don't disagree that if I had my

14    druthers I would like to have seen it in -- on a count by

15    count, opposed to broader basis, nor am I trying to assign

16    blame as to whose fault that is.  I'm just trying to put my

17    mind around it and move forward.  Colorado Securities Fraud

18    Claim is Li, Count 6, correct?

19         *MR. LITOWITZ:*  Correct.

20         *THE COURT:*  Mr. Stewart doesn't care, as long as it's

21    not directed to something he filed.  Li, Count 6, as I

22    understand it, it is failure to state a claim and insufficiency

23    of the fraud allegations, that's the general pleading that you

24    say insufficient, he says sufficient.  I get that.

25         There's also the statute of limitations, and there is

1    also a standing argument where what you are saying is, again,

2    you are incorporating somebody else's argument, but the way I

3    understand it, you are saying, look, CRCPS didn't buy any

4    securities, therefore it was not of the victim, if you would,

5    of securities fraud.

6            So, in -- given that this is a derivative claim, how

7    can you have violated the Colorado Securities -- how can you be

8    guilty of committing Colorado Securities Fraud, guilty being

9    too strong of a word, but when what the facts are is that CRCPS

10   didn't buy any securities but, in fact, simply sold them.

11           The Cui Plaintiffs have said continuing fraud, but I

12   think as we've now cleared up, this isn't really directed to

13   the Cui Plaintiffs, and so as before, unless there's some

14   objection from Mr. Stewart, I will disregard the Cui

15   Plaintiffs' position, and I see no objection or concern on

16   Mr. Stewart' part with regard to my doing that.

17           *MR. STEWART:*  To the extent that I understand it, I

18   don't have an objection to it.

19           *THE COURT:*  Okay.  Fair enough.  Do I have it right,

20   Mr. Gee?

21           *MR. GEE:*  You do.

22           *THE COURT:*  You want to add anything to this?

23           *MR. GEE:*  I do not.

24           *THE COURT:*  Mr. Litowitz, please?

25           *MR. LITOWITZ:*  Yes, two things, real quick.  The

1    Colorado Securities Law says that you don't have to be a seller

2    of securities to be liable.  All you have to do is give

3    substantial assistance to another person selling securities.

4    Clearly, that's what happened here.

5           We're saying that SPO gave substantial assistance to

6    another person, who bought the securities, which would be

7    limited partners.  The FDIC case, 2020 --

8           THE COURT:  But what basis do the limited partners

9    have to raise this claim, when they are not proceeding

10   directly, but are only proceeding derivatively.

11          MR. LITOWITZ:  Well, I think it's on the basis that

12   the harm -- the --

13          THE COURT:  Don't care if they are harmed.  This is

14   standing, not harm.

15          MR. LITOWITZ:  Okay.  I think they have standing

16   because they were -- they were defrauded by a combination of --

17          THE COURT:  The only "they" that's relevant in the

18   derivative is CRCPS.

19          MR. LITOWITZ:  But what is CRCPS?

20          THE COURT:  It's an entity.

21          MR. LITOWITZ:  You are making it into some imaginary

22   floating UFO.  It's not.  It's just the LP and the GP.

23          THE COURT:  Right.  But it is a recognized entity,

24   under Colorado law.  It is an an entity against which you have

25   chosen to raise -- on behalf of which you have chosen to raise

1    derivative claims, and I am simply asking why do you keep

2    talking about somebody else, rather than the entity whose claim

3    you are raising derivatively, to say securities fraud was

4    committed against the limited partners, maybe yes, maybe no,

5    but how is securities fraud committed, derivatively, by CRCPS?

6    That's the part that I'm just having some trouble with.

7            MR. LITOWITZ:  Well --

8            THE COURT:  As it relates to SPO.  As it relates to

9    SPO.

10           MR. LITOWITZ:  Well, I believe that SPO has told

11   the -- has told CRCPS, as I say in my motion here, that they've

12   already conveyed the property back to CRCPS.  They've said

13   that, but at the same time they told the I.R.S. and their own

14   accountants say they have never got the property back.

15           So, there's a bit of a confusion as to whether this

16   property has ever come back or will come back or who owns it.

17           THE COURT:  I get all of that.  But how is what --

18           MR. LITOWITZ:  I'm trying to fit it into a box, I

19   understand that.

20           THE COURT:  All right.  And that's what I'm trying to

21   do.  I'm trying to figure out whether we're talking about a

22   gallon of water in a half gallon box or if we're talking about

23   something that I can actually understand parameters of.

24           MR. LITOWITZ:  I understand.  My fear is that you are

25   going to have some fetish over the box.

1          THE COURT:  I don't have fetishes; foot, pleadings or

2     otherwise.

3          MR. LITOWITZ:  I don't mean like that.

4          THE COURT:  Okay.  Good enough.  I didn't want you

5     calling me Rex Ryan, that's all I want.

6          MR. LITOWITZ:  Fixation, preoccupation or focus.  How

7     is that, that sounds more --

8          THE COURT:  Fair enough.

9          MR. LITOWITZ:  You are going to intellectually focus

10    on the boxes that ease attribute on your ability -- you know

11    your legal skill as a Judge, and that's what you do.  But you

12    know, let's not forget, the rule number one of the Rules of

13    Civil Procedure is that these rules are interpreted to do

14    justice.

15         So, we're here not just to fit things into boxes, but

16    to also look at the long game.  The bigger picture of it.  So,

17    I just, you know, I get your point.

18         THE COURT:  All right.  Let me move on to CCPA, which

19    is directed to the Cui Plaintiffs, Count 3, Direct, and at

20    least that's where I think it's pointing.  Mr. Gee.

21         MR. GEE:  Yes.  The Cui Plaintiffs brought a CCPA

22    claim directly against all of the SPO defendants.

23         THE COURT:  All right.  And it's Count 3?

24         MR. GEE:  This is true.

25         THE COURT:  And, in this instance, I have the reverse

1   problem Mr. Stewart.  It's not that I see an answer and I'm

2   trying to figure out what it -- whether it ties to something --

3   well, I see an answer, and the fact of the answer leads me to

4   believe, "Oh my God, I may have missed something.  Maybe they

5   are directing something at you."  Here, there is no answer that

6   I can see, and, again, it may be that I'm not reading the

7   papers correctly.

8           MR. STEWART:  No.  You are reading them correctly.  If

9   it's Count 3, I don't have the Complaint in front of me, so I'm

10  going to take your word for it.  It's the same thing we

11  discussed as to Mr. Kilroy's client, and I believe I withdrew

12  it.  So, I don't think it's anything that we need to talk

13  about.

14          THE COURT:  You are not fighting about it?

15          MR. STEWART:  No.

16          THE COURT:  Okay.  The next is fraud.  Frankly I'm

17  going to lump the next two together.  Fraud and Federal

18  Securities Fraud.  The reason I lump them together is because I

19  think the position of the parties is the same on each.  The

20  fraud is Cui -- well, I'm just going to stay with my

21  mispronunciation.  If I try and correct it on the fly, I will

22  mess is up.  It's Cui, Count 1, direct; Securities Fraud is

23  Cui, Count 5, direct.  Am I correct?

24          MR. GEE:  Yes, Your Honor.

25          THE COURT:  With regard to each, the basis for the

1    motion is twofold, a failure to state a claim slash

2    insufficient broad allegations and statute of limitations.  My

3    understanding of the Cui position is one that we have discussed

4    over the course of the day, which is that this is a continuing

5    fraud, and so it continues past the -- the original placement

6    of the investments in CRCPS, and continues up to and including

7    the date of the latest Complaint, if not beyond.

8         I don't say any of this facetiously, I just want to

9    make sure I have got my arms around where we are all coming

10   from.  Do I understand your position, Mr. Gee?

11        *MR. GEE:*  Well, the -- what you just said, Your Honor,

12   was a reference to its being continuing fraud.  I don't think

13   that theory works for the SPO.  I can understand why they are

14   making that claim as to the CRC Defendants.

15        *THE COURT:*  All right.  But wait, okay, I will give

16   you the last word on the point, ultimately, you are saying what

17   I have said about what you're saying is correct?

18        *MR. GEE:*  Yes.

19        *THE COURT:*  Which is pleading insufficiency, plus

20   statute of limitations.  All right.

21        *MR. STEWART:*  Yes.  What you said about my position is

22   correct, Your Honor.

23        *THE COURT:*  Now, I will give you the last word, an

24   opportunity to explain to me why the, quote/unquote, continuing

25   fraud theory, whatever its viability as applied to the CRC

1    defendants, allegedly doesn't work when applied to the SPO

2    Defendants.

3         MR. GEE:  Right.  The basis of the continuing fraud

4    theory, as to the CRC Defendants is that there's this ongoing

5    communication.  For example, these so-called update letters

6    that are sent to the limited partners.  With respect to the SPO

7    defendants, not only is there a failure of allegation of

8    well-pleaded allegations, as to any contact with the limited

9    partners, themselves, at the outset, but as to the continuing

10   fraud idea, there is no allegation of any continuing contact

11   with -- between the SPO defendants and any of the limited

12   partners, and -- nor -- nor is there any allegation that we

13   helped write, we helped review.  I hadn't even seen the vast

14   majority of whatever these update letters are.

15        So, I just don't see how the continuing fraud works as

16   to the SPO Defendants, based on the four corners of the Cui

17   Complaint.

18        THE COURT:  I lied to you, Mr. Gee.  I told you, you

19   had the last word, but I give it to Mr. Stewart instead.

20        MR. STEWART:  Thank you, Your Honor.  I don't have a

21   whole lot to add, however, Mr. Gee states, in his paperwork

22   that his clients have nothing to do with the securities

23   offering.  This was not money looking for an investment.  It

24   was an investment looking for money, and Mr. Gee's client was

25   involved from the get go.  If you look at the CIM, which is

 1   attached as an exhibit to Mr. Kilroy's paperwork, there's all

 2   kinds of information that only comes from the Mr. Gee's client.

 3   I don't -- in my opinion, that's not true.  We will agree to

 4   disagree on that.  I would state that I don't know that he has

 5   been involved or his clients have been involved with these

 6   continuing representations of the value of the property, but

 7   they were involved with this Collateral Units Agreement, and

 8   the positioning that we're allowed to stop paying you, because

 9   we are going to take the position that we get to give you back

10   the property, but we're not going to give it back, and that is

11   still -- that's continuation of the fraud, in my opinion.

12        THE COURT:  Okay.  Okay.  Let me move on.  The Breach

13   Of Contract Claim, or the attack on the Breach Of Contract.

14   Here I think it goes to different counts in different

15   Complaints.  In terms of the Li Plaintiffs, it goes to Count 3.

16   In terms of the Cui Plaintiffs, it goes to Count 6, the Li

17   Plaintiffs' count being derivative, the Cui Plaintiffs' count

18   being direct and derivative.  Am I correct in terms of what --

19   where you are pointing your argument?

20        MR. GEE:  You are, Your Honor.

21        THE COURT:  And I don't assume that either

22   Mr. Litowitz or Mr. Stewart disagrees with that, but if you do,

23   let me know.  I mean, I can't see why you would think that

24   he -- why you would want to be pointing at more counts, rather

25   than less counts, but who knows.  Nothing?  Okay.  All right.

1          As I understand it, the argument is ... well, in this

2   instance, I'm going to ask you to, kind of, amplify or lay out

3   your position more fully, because, to some extent here, I'm not

4   quite sure that I have got my arms fully around it, and it may

5   just be that I have been trying to be careful all day in terms

6   of slicing the salami this direction opposed to that direction.

7          The argument is, in terms of the direct claim; that

8   is, the Cui Count 6 claim, that the limited partners don't have

9   any standing to assert a direct action for breach of contract

10  presumably because they are not a party to the contract.

11  Beyond that, the second argument appears to go to both the

12  derivative and the direct claims, and that second argument

13  appears to be that there really hasn't been any breach alleged,

14  and the agreement regarding collateral units remains in effect.

15         In other words, nobody has done something that's

16  not -- nobody has done anything other than what's allowed by

17  the agreement, ergo, where is the breach of the agreement?  And

18  then my understanding of the response is that Cui -- Cui

19  Plaintiffs say that they have standing because there's a very

20  distinct injury that has occurred to them, by virtue of this

21  contract breach, however we may get to define it.

22         So without -- that's -- I just want, again, as I'm

23  doing with each of these, telling you my understanding of your

24  position, telling you my understanding of the response position

25  and then going to you and saying, all right, now, help me out,

 1   amplify or not.

 2          *MR. GEE:*  Yes, Your Honor, I think you have captured

 3   it.  The only, kind of, side point I would make is that the Cui

 4   Plaintiffs, Claim 7, is for declaratory judgment as to two

 5   other agreements that I think are --

 6          *THE COURT:*  Yeah.  We will get to that one next, but

 7   you're fine with my description of where you are coming from?

 8          *MR. GEE:*  I am.

 9          *THE COURT:*  Let me come over to Mr. Stewart, and say,

10   all right, I don't want to twist or misunderstand your view.

11   My understanding is that you are saying that in terms of the

12   direct claim, the limited partners do have standing, because

13   they have suffered an injury, but how does the fact that

14   contract breach ends up hurting a third party, give that third

15   party standing to assert a breach of contract claim where they

16   are not a party to the agreement, or, if you would, somebody

17   whose rights are -- well, let's just stop there and let me let

18   you speak to it.

19          *MR. STEWART:*  Your Honor, I -- I don't think I have

20   made that argument, so, in fact, the way that I read the Motion

21   To Dismiss was the challenge to the derivative claim, and there

22   wasn't really a challenge to the individual claim.  When you

23   characterize it the way that you are, there probably isn't

24   standing for the individuals under the contract.

25          And I don't -- I don't think that I have argued that.

1    I don't think I have argued in my -- in the paperwork that, you

2    know, there's this individual damage that's occurred.

3              THE COURT:  And see that's where --

4              MR. STEWART:  That's fine, and I apologize.

5              THE COURT:  There's no reason.  There's no reason.  I

6    mean.

7              MR. STEWART:  All of the papers, so confusing.

8              THE COURT:  That's why we are here, and so, as I

9    understand it, in this particular instance, to the extent that

10   there is a claim -- there is no challenge to the right -- to

11   your right to raise a derivative claim of breach of contract.

12   There is only -- well, there is no standing challenge, as to

13   your right to raise a derivative claim for breach of contract,

14   ergo, to the extent that you say you do have standing,

15   derivatively, it's ships passing in the night, not due to --

16   and I am not here to assign fault, okay, but ultimately you

17   needn't respond to that, because he is not really claiming

18   that.  To the extent that he is saying the Cui Plaintiffs do

19   not have standing to assert a breach of contract claim

20   directly, because they are not parties to the contracts that

21   are complained about, you're not taking issue with that?

22             MR. STEWART:  I'm not.  I just didn't read -- I mean,

23   the first that I am understanding this is coming from you, and

24   no, I don't.  I don't have -- I don't take issue with it.  I

25   don't think that I -- I didn't read it that way, and I didn't

1    try to challenge that.

2         THE COURT:  Again, like I said, that's why I wanted to

3    have this, rather than go through the motions of, you know,

4    writing something up and then having everyone say, "Well, wait,

5    that wasn't my claim.  Wait, I thought this, I thought that."

6         There is this other issue, regardless of whether or

7    not -- regardless of whether or not it is a direct or

8    derivative claim, there is this other issue, with respect to

9    whether or not there can be a breach of contract regarding the

10   agreement regarding collateral units, where nothing has

11   occurred, which is not provided for by the agreement itself.

12        I understand, the argument, at the end of the day is,

13   I'm trying to get money for my people.  I get that.  But as I'm

14   understanding the argument, the argument is, essentially, this,

15   what is the breach of this contract that has occurred; more

16   specifically, what provision or what have I done that, whether

17   derivatively or directly --

18        MR. STEWART:  Your Honor.

19        THE COURT:  Go ahead.

20        MR. STEWART:  So, the point of the specific

21   performance action, which is the breach of contract, has

22   nothing to do with that.  All that's saying is you are -- under

23   the agreement, you are supposed to pay us or give us the

24   property.  You have opted to give us the property, and you have

25   chosen not to.  Collateral -- and then I don't even discuss

1   that ridiculous agreement in that cause of action.  The debt

2   relief cause of action, these two sub agreements, these two

3   amendments, whatever you want to call them, I mean there's so

4   many agreements running together, are invalid.  So, that's a

5   separate -- those two things, they don't really go together,

6   although I can see where you can want to make the one affect

7   the other.  I mean, all I'm saying is, you know, give us the

8   property.  I don't know.  I don't know what -- what the Court

9   is going to do on the fraud and the breach of fiduciary duty,

10  but you guys are supposed to either pay us or you can

11  apparently, you know I don't -- I have a lot of feelings about

12  that, but apparently, you can choose not to pay us and give us

13  the security.  Haven't done either one.  Do something, give us

14  something.

15          THE COURT:  I get it.

16          MR. STEWART:  That's the whole point.

17          THE COURT:  Let me come forward to Mr. Litowitz,

18  because, again, as I said, this impacts your Count 3.  So I

19  need to give you an opportunity to speak to it, as well.

20          MR. LITOWITZ:  Thank you.  My position is slightly

21  different than Mr. Stewart's.  My position is that of the loan

22  agreement, which we can derivatively -- it was entered into by

23  CRCPS, which we can derivatively enforce for them, says at

24  Section 11, that it can be prepaid by conveying titles, and no

25  titles were ever conveyed.  The PPM, the CIM, says this loan

1    has a five-year maturity, it can be prepaid by cash or by

2    conveying property; nothing was ever conveyed.

3         My view of the agreement regarding collateral units,

4    is that it says, on its face, this is not a transfer.  It's a

5    deemed transfer for calculating interest.  It's not a transfer.

6    And furthermore, it doesn't affect the indebtedness.  All of

7    the indebtedness is owed now in cash.  So, I don't want the

8    property.  We feel that we're entitled to cash payment of the

9    loan, and I back that up with the -- with what I filed in front

10   of the Court, which are the financial statements of CRC I,

11   which say we have a note receivable for 82-million dollars,

12   this -- end of 2018.

13        If the property was transferred, and it was paid -- if

14   the loan was paid back by property, how could there still be --

15   how come they are telling the federal government and telling

16   their client -- limited partners, that they still have a note

17   for 80-million dollars?

18        *THE COURT:*  Stop.  Sir, who do you want, Robin or

19   Cathy.  Who are we talking about?  It's okay.  It's okay.  They

20   just want to bring me inmates.  That's all it is.  They just

21   want to bring me inmates.

22        We had an interruption and the Marshal is on the wrong

23   floor.  Yeah.  That's all I have got.  It's okay.  Let me go

24   back to you.

25        *MR. LITOWITZ:*  It's like being alone with your wife

1    and someone rings the doorbell.

2          I will get back to where I was.  My position is that

3    we don't have to get into this issue of moving the property

4    back.  There's a clear breach of the contract.  It says after

5    maturity, you have got to pay all of the money back.  So, all

6    of the money that's been paid and interest has to come back.

7    So, I think we -- we both agree that the contracts have been

8    breached, but I feel that -- we feel, the limited partners that

9    I represent, feel that it should come back in cash.

10         THE COURT:  Okay.

11         MR. LITOWITZ:  So I don't feel that this agreement

12   regarding collateral units is breached or not, doesn't matter.

13   It doesn't matter.

14         THE COURT:  No.  I'm just raising something that just

15   popped into my head, and if it isn't, frankly, a terribly

16   rational thought, so be it.

17         So, I have got two groups that are proceeding

18   derivatively, in other words, each of you professing to assert

19   relief for CRCPS and asking for different things.

20         MR. LITOWITZ:  Yeah.

21         THE COURT:  How do I wrap my head around that?

22         MR. LITOWITZ:  Well, it's -- it's because I feel that

23   the -- that -- in the end, we both want the money to go back to

24   the investors, but I feel like it has to, kind of, make a

25   circuitous route through CRCPS, because they were the ones who

1    were the lender.

2         THE COURT:  Okay.  Okay.  And I guess, factually, it

3    depends upon which set of facts ends up developing, because

4    ultimately, what you are saying to me is slightly different,

5    factually.  It is that the maturity date was reached without a

6    prepayment, and therefore, if you get to that point, then

7    what's owed is cash, although, again, so many agreements and so

8    many pages, maybe you have the option to do X or Y or Z, but at

9    least, initially, the obligation is to pay cash?

10        MR. LITOWITZ:  That's exactly right.

11        THE COURT:  Okay.  All right.

12        MR. STEWART:  Your Honor, if you are trying to --

13        THE COURT:  Pull that mic back in front of you.  You

14   don't like that mic.

15        MR. STEWART:  Sorry.  If you are trying to allow those

16   two requests to co-exist, it's fairly easy, because what I'm

17   saying is you are supposed to pay us, and you didn't, and you

18   said you are going to give us the property, and you didn't.

19   Give us the property.  If you decide that they are supposed to

20   pay us, I'm not going to be upset or object to that.

21        THE COURT:  Yeah.  As I said, ultimately, after saying

22   it out loud, my sense of it is, depends on how the facts

23   develop.  Having said that, before I go back to Mr. Gee, let me

24   say that, again, as I'm having these discussions, to make sure

25   I understand, I'm not abandoning the task before me, which is

1   dealing with the Motion To Dismiss.

2          So, waiving, I don't know, statements made to the

3   I.R.S. or something, unless there's an allegation with regard

4   to it, it's meaningless, at this juncture, in the context of

5   what we're talking about, which is resolving a Motion To

6   Dismiss.

7          MR. LITOWITZ:  Well, I disagree that it's been filed.

8   It's in the docket, so, it's -- it's --

9          THE COURT:  You can put anything you want to in the

10  docket.  That doesn't mean it's proper for consideration on a

11  Motion To Dismiss.

12         MR. LITOWITZ:  Yeah.  You are right about that, but it

13  is -- it's not just something I pulled out --

14         THE COURT:  Didn't accuse you of that.

15         MR. LITOWITZ:  You got me.

16         THE COURT:  Mr. Gee?

17         MR. GEE:  Well, Your Honor, despite your best

18  intentions, we're talking about the agreement regarding

19  collateral units, and we should be, frankly.  I think it's

20  appropriate for plaintiff's counsel to talk about that

21  agreement, and the reason for that is that we -- we have two

22  claims, one from each set of plaintiffs, based on breach of the

23  loan agreement, but the loan agreement does not exist by

24  itself.  It exists with the agreement regarding collateral

25  units.  I'm not exactly sure how to characterize the agreement

1    regarding collateral units.  You could say it's a supplement,

2    to the loan agreement.  You could say it's an amendment.  But

3    in any case, it specifically, directly addresses the

4    obligations of CRCPS, on whose behalf the plaintiffs are suing,

5    and whose signature appears on the agreement regarding

6    collateral units, and the agreement regarding collateral units,

7    specifically informs the parties, including my clients, about

8    what are their obligations under the loan agreement, and the

9    agreement is, we will not convey the units, we are prepared

10   for, but at your request upon our agreement, we will hold onto

11   the units, that's not a breach of contract as a matter of law,

12   that's -- that's our point of view, Your Honor.

13        THE COURT:  All right.  There are but two more that

14   have to do with your Motion To Dismiss.  You're seeking

15   declaratory judgment regarding the ARCU, and the Yield

16   Enhancement Agreement, and this is going solely to the Cui

17   Defendants, Count 7, direct and derivative.

18        MR. GEE:  That's correct, Your Honor.

19        THE COURT:  All right.  The argument is threefold.  In

20   terms of direct, you are saying there's no standing because

21   they are not parties, beyond that, you are saying, I should

22   just decline to decide, and then finally, you are saying that,

23   at least in terms of the Yield Enhancement Agreement it's

24   barred by laches, since it's ancient history.  Those are not

25   your words, but conceptually, do I understand where you are

1    coming from?

2          MR. GEE:  You do, Your Honor.

3          THE COURT:  And then my understanding, with respect to

4    the Response from the Cui Plaintiffs, is that there really

5    isn't -- well -- I won't say there really isn't.  I haven't

6    necessarily found a direct answer to the last two points, I

7    should just choose not to, and that laches applies to the Yield

8    Enhancement Agreement, but in terms of the standing issue, what

9    I do see is that you are relying on Colorado statute governing

10   declaratory judgments, and I am not sure what that's got to do

11   with what we're talking about here, because I did not

12   understand, and maybe I'm confused, and if so, forgive me, but

13   I did not understand that this declaratory judgment claim was

14   somehow pursuant some Colorado Statute.

15         MR. STEWART:  That's only addressing the individual

16   claim issue.  All I'm saying is that the -- that would be it's

17   not procedural, it's substantive, and any person has an

18   interest is allowed to ask for declaratory relief.  What I'm

19   saying, and I may be wrong about this, what I'm saying is the

20   individuals have an interest, so they can ask for declaratory

21   relief.  Now, if it's only -- if it's only the -- that CRCPS

22   does, it doesn't matter.

23         The position -- that code is strictly for the position

24   that you can't do this, individually, and I think, at least one

25   reading of that statute is you absolutely can.  If the Court

1    disagrees with me or Mr. Gee does, that's fine.  I'm not always

2    right, but, you know, that's the only reason that it's there.

3         *THE COURT:*  Do you choose to articulate your

4    disagreement with the fact that I -- with the suggestion that I

5    should simply decline to become involved and/or that the Yield

6    Enhancement Agreement issues should be, at least to the extent

7    that we're talking about a declaratory judgment, deemed to be

8    barred by laches?

9         *MR. STEWART:*  It's problematic, you may be right about

10   that, in this particular instance.  We are talking about, there

11   are large portions of the Yield Enhancement Agreement that were

12   after the fact eliminated, that make it almost of no value

13   whatsoever, and so on the one hand I think it's very unfair to

14   hold my clients to specific things that are in there, for which

15   they exchanged consideration for actual use of the condos, when

16   the government came in and says, you can't do that in this kind

17   of a deal.  And so, when you are saying there's a laches issue,

18   I mean, arguably, yeah, you are right, I mean, they knew about

19   it.  They were informed that they don't get to use those --

20   have the use of the condos anymore.  I think the Yield

21   Enhancement Agreement, itself, is like a blank piece of paper.

22        They are basically saying we get to do all of this

23   stuff, and you guys -- you guys get no benefit out of it, but

24   we still to get do it, because after the fact it was canceled.

25        And a laches agreement may work, but I just think that

1    it's fundamentally an inequitable result.

2            THE COURT:  Okay.  And then the last one is something

3    that I don't think that we need to talk about, because I think

4    we've talked about it.  There is a portion of the Motion to

5    Dismiss that's directed against Cui Plaintiffs, Count 8, which

6    is a claim for piercing the corporate veil, and again, the

7    discussion is -- well, first, it's a direct claim, under Count

8    8.  The argument is that -- essentially, what the argument is,

9    is that this is isn't a claim.  This is a theory of relief, and

10   to the extent that you don't prevail, notice of the other

11   claims, any of your other direct claims, you are not going to

12   prevail on this claim.  At least that's the way I see it.  If

13   I'm missing something here, if this is somehow different than

14   the things that we discussed earlier, please let me know.

15           MR. GEE:  It is not.

16           MR. STEWART:  We've discussed it, this would be the

17   fourth time.

18           THE COURT:  Probably.

19           MR. STEWART:  Obviously, it's not a separate claim.

20   They are allegations, and really my concern with it, and I

21   think it's been satisfied, is that everybody knows that these

22   claims have been made, as of today.

23           So if two years from now we're trying to collect on a

24   judgment, God help us if we get one, and there's some kind of a

25   fraudulent transfer issue, no one says they weren't aware of

1    it; that's all.  Because I note that in Colorado, just like

2    California and everywhere else I have practiced, you can make a

3    motion after the judgment to add somebody on a -- on an

4    alter-ego theory.  It's not something that has to be pled.

5    It's more of a putting them on notice, that, yeah, we're going

6    to be looking to that.

7              *THE COURT:*  All right.  I think that what that leaves

8    is something that I have touched upon a little bit, but I will

9    go more directly to it, now, and that's switches over to **ECF**

10   **Number 208**, which is the Li Plaintiffs' Motion To Dismiss The

11   Counterclaim.  Earlier I talked about it in the context of the

12   joinder that was filed at **225**, and what are we talking about

13   here?  What's being pursued?  I'm interpreting what I recall of

14   the earlier discussion as being this, the Li Plaintiffs still

15   persist in the Motion To Dismiss, but if it's denied, we need

16   to -- or they are not in disagreement that this matter needs to

17   be resolved sooner, rather than later before.

18         Having said all of that, let me give Mr. Litowitz the

19   opportunity to, at least briefly, speak to the grounds.  I

20   don't have them charted out like I did on some of the others.

21   Essentially, what I understand you to be saying to me is, well,

22   the contract doesn't say judicial review, so therefore you

23   can't have a declaratory judgment, and honestly, I don't get

24   that.  I don't get it.  I mean, there's lots of contracts that

25   are allegedly breached, people bring actions, whether they are

1    direct actions or claims for --

2         *MR. LITOWITZ:*  This --

3         *THE COURT:*  -- declaratory action.  I mean why does

4    the contract have to say you can only get -- you can get a

5    declaratory judgment if there's a dispute under this contract,

6    and if it doesn't say something like that, I have to assume

7    that I don't have standing to address a counterclaim saying

8    that we take issue with the contention that the -- that we have

9    been removed for fraud, because there was no fraud.  I don't

10   get it.

11        *MR. LITOWITZ:*  Okay.  I'm trying to think of what

12   you -- you don't get it.  I mean, the agreement says that the

13   limited partners can vote, and vote out the general partner on

14   the grounds of fraud, and that there's no judicial approval

15   needed.

16        *THE COURT:*  It does not say no judicial approval is

17   needed.  It just simply says, you can remove them for cause and

18   fraud is listed as one of those things.

19        *MR. LITOWITZ:*  And --

20        *THE COURT:*  So let's -- let's make it simple, because

21   you like to speak by analogy and so do I, let's say that the

22   contract said that the limited partners can remove of CRC I, in

23   the event that its general partner -- its general partner or

24   its owner, operator, whatever, the guy in charge, commits

25   murder, and then you send him a note that says, you committed

1    murder, therefore you are out, and the fact is, there was no

2    murder.  You just think there was.

3           Why is it that he has to -- he is precluded from

4    standing up and saying, "What are you talking about?  You don't

5    just get to say what you believe, and therefore legal

6    consequences flow from it.  If I, in fact, challenge the

7    accusation that there's murder?"

8           I mean, ultimately, arguing by analogy creates

9    problems, but I think in this instance I'm just trying to take

10   something out of the hot, emotional issue of this case, and

11   turn it into something a little different, slightly different,

12   and say that's the way I understand it.  You are accusing him

13   of murder and he is saying, "I didn't murder anyone.  If I

14   didn't murder anyone, you can't remove me," and the provision

15   does not say, if you believe I committed murder, nor does it

16   say, if you accumulate 60 percent or 75 percent.  It says, for

17   cause, defined as murder.  So that's the way I'm seeing this,

18   and I don't -- I view your position as saying, we can remove

19   him, and he can't do anything about it if we believe that he

20   committed murder and I don't get that.

21          MR. LITOWITZ:  See, I -- first of all, if they wanted

22   to put that language in there, saying -- which is typical

23   language, saying, fraud as determined by a Court of competent

24   jurisdiction, which I put in all of my agreements, I was a

25   hedge-fund lawyer for ten years.

1        THE COURT:  Congratulations.

2        MR. LITOWITZ:  Contra proferentem, they wrote this.

3        THE COURT:  Okay.

4        MR. LITOWITZ:  So you have got those two.  Now, here

5   is the third paradox.  If we had to go to a hearing on fraud,

6   we would actually be in advance of the actual trial.

7        THE COURT:  I get that.

8        MR. LITOWITZ:  Okay.

9        THE COURT:  Which is why I said, how do we address

10  this?  What are we doing?  Are we bifurcating?  What are we

11  doing?  I mean, you call it a paradox, but the answer to a

12  paradox is not to just say, "Well, we would normally have

13  something to talk about, but since it's hard, I'm going to just

14  deny your -- I'm going to dismiss your counter claim, because

15  it's hard," or because it creates procedural difficulties.

16        MR. LITOWITZ:  No.  What I'm saying there is no there,

17  there.

18        THE COURT:  What does that mean?  Honestly, in terms

19  of the argument, there's no there, there.  You are telling me

20  that unless the contract says X you can accuse and remove, and

21  I am saying maybe that's right, maybe it's not, but I don't

22  understand how you get that concept from the words "can be

23  removed for cause," cause being defined as, I don't care if

24  we're talking about the case, fraud, if we're talking about my

25  argument by analogy, murder.

1          MR. LITOWITZ:  I'm trying to find where it.  The cases

2     say you have to have just a good-faith belief that there's

3     fraud.  You don't have to actually have a judgment of fraud,

4     that would be absurd.

5          So, here we've alleged multiple multiple instances of

6     fraud.

7          THE COURT:  And what if you are wrong?

8          MR. LITOWITZ:  What if I'm wrong?  Well, then what if

9     I'm wrong, then -- then -- then you have converted a limited

10    partnership into a non-democracy.  You have taken a voluntary

11    business association, and you have said that all of the members

12    are all wrong, and the only person that's right is the general

13    partner.

14         THE COURT:  No.  I mean, look, you are trying to

15    create something, frankly, if I said that, I wouldn't care.  If

16    that's the way it shakes out, that's the way it shakes out.  If

17    all of your people are wrong, then they are wrong.  The fact

18    that you say that they are right, doesn't make them right.  It

19    doesn't make it -- your -- you're basically coming into this,

20    in the position of what you say determines the outcome.  You

21    are saying what you say determines my standing, and what you

22    say determines his -- his -- CRC I's ability to act as the

23    general partner of CRCPS, and I am sorry, I don't know the

24    statute that says what Mr. Litowitz says goes.

25         MR. LITOWITZ:  Well, I mean, I don't know why -- you

1    know, these people -- why would they want to stay?  I mean,

2    it's like a cockroach that refuses to be driven out of the

3    kitchen.  I mean, you know, if everybody wants you gone, and

4    these are the people that own the company, want you gone, and

5    they have said, you have committed fraud, we believe you have

6    committed fraud, and here is what we think you have done.  You

7    have lost our money, we don't trust you, we want you gone, and

8    you are going to say I stay.

9        THE COURT:  I'm not saying it's smart.  I'm not saying

10   it's stupid.

11       MR. LITOWITZ:  We could have a mini hearing on it, if

12   you want.  I just don't know -- I see your point, obviously,

13   and I think it's well-taken, which is, well, does this mean we

14   do a trial?  Does this mean we do -- just look at the

15   documents?  Where does this leave us, is what you are saying,

16   right?

17       THE COURT:  What I'm saying is if the counterclaim

18   stays, and both sides say that it would be useful to the

19   litigation as a whole, to resolve this matter, sooner, rather

20   than later, because it is having a paralyzing affect on such

21   things as who can even hire counsel for CRCPS, which needs to

22   be in the litigation somehow, I don't disagree with that

23   concept, that it is something that needs to be addressed

24   sooner, rather than later.

25           Having said that, I have not articulated to you that I

1    believe that the way to address it is X versus Y versus Z.

2    Instead, what I have said to you, is this is a Gordian knot,

3    and I would appreciate it, if you of gentlemen talked about

4    this further, assuming that this stays, and that's an

5    assumption.

6         MR. LITOWITZ:  Yeah.

7         THE COURT:  And figure out how are we going to proceed

8    in this, in a manner that makes sense.  I understand,

9    Mr. Stewart' position, because his is fairly straightforward,

10   as articulated to me.  It is, look, one way is, put somebody in

11   charge, a receiver in charge, and let's go -- and then, you

12   know, let's go forward.  Whether I agree or disagree, I

13   understand what it is that he is saying.

14        MR. STEWART:  That wasn't what I was going to say.  I

15   wanted to interject, because I am not really involved in the

16   motion that you are talking about.

17        THE COURT:  Right.

18        MR. STEWART:  But it's affecting all of us, because

19   what we're talking about is we're going to fast track a hearing

20   on fraud, which is the underlying basis of the entire action

21   for this limited purpose, when we still -- we are a year in,

22   and there's no discovery.  Nobody has been able to discuss

23   this, and so I -- you know, I'm listening to you, and that

24   doesn't make sense.  I don't think it makes sense to anybody,

25   really, but maybe --

1          THE COURT:  Then what does?

2          MR. STEWART:  So, perhaps, I think what you are

3     suggesting, and I don't know exactly if we can -- we can do

4     everything, but I mean, we can all agree to get together and

5     stipulate, you know, to let somebody -- some third-party

6     counsel come in.  It's a nominal defendant.  They are not

7     really supposed to be doing much of anything in this case, and

8     so, if that's -- if hiring counsel is the -- is the underlying

9     driving force here, I'm pretty sure I would ask them to, you

10    know, throw out three names of people that you think are

11    qualified and we will pick one.  I mean, this isn't -- it isn't

12    as if we're -- we're real confused by someone who is going to

13    come in and really upset the apple cart as to CRCPS.

14         THE COURT:  Well, and again, I'm not -- to be clear,

15    my position is that this needs to be given serious thought to,

16    if we get to where it survives.

17         MR. STEWART:  I understand.

18         THE COURT:  But I'm not sure that I should be taken

19    quite so literally, in terms of saying the main thrust the only

20    thrust is who hires counsel, because, there's all kinds of

21    other things that go on.  If, in fact, Mr. Litowitz's people

22    are quote in charge, then, I don't know, they could liquidate

23    CRCPS, make demand on SPO, there's all kinds of things that can

24    go on, but if they are not in charge, they are just spitting in

25    the wind.

1      MR. LITOWITZ:  Stole half their money, how could it

2   get worse?

3      THE COURT:  Look, I'm not trying to solve anything,

4   other than to say this is something that needs to be -- that

5   may need to be thought out.  Mr. Kilroy?

6      MR. KILROY:  I agree.  My only thought is, I think

7   what the Court decides on these motions --

8      THE COURT:  Impacts things.

9      MR. KILROY:  -- impacts things in many number of ways.

10  I think right now our heads are spinning --

11     THE COURT:  You are absolutely right.  To some extent

12  let's take an extreme example, if I deny everything, then

13  everything is in play, and then the situation is as confused,

14  and difficult, as Mr. Stewart says.  If I dismiss everything,

15  except the counterclaim, well then, we don't really have all of

16  these problems, because it's just the one declaratory action

17  that needs to be addressed, and all of the rest of it, we don't

18  need to get into, although, the question would become, what

19  does for cause for a fraud mean, and that takes us down,

20  perhaps, the very same ratholes that I'm trying to say that I

21  avoided.

22     MR. KILROY:  It might.  It might.  Depends on how the

23  Court rules on the current fraud claim, could that have an

24  impact on --

25     THE COURT:  Depends, because it's not a summary

1    judgment.  It's a pleading issue.

2            *MR. KILROY:*  I agree it depends.  We are saying the

3    same thing, which is I think --

4            *THE COURT:*  Okay.  We're in total agreement.  My part

5    comes first.  All that I'm saying to you is, it would be useful

6    if you thought about how to proceed, and I recognize that that

7    is an unfair request, to a degree, because you don't know how

8    I'm going to come out on various things, and that may impact

9    how you feel we should proceed.  I get that.

10           *MR. KILROY:*  And I get what you are saying, as well.

11           *THE COURT:*  All right.  So, I also understand that

12   there's a Motion For Sanctions, that's out there, that I have

13   said I wasn't going to deal with here.  All of the motions that

14   I have discussed, that is the Motion To Disqualify, **ECF Number**

15   **198**, the Motion To Appoint A Receiver, **ECF Number 211**, the

16   Motion to Dismiss, **ECF Number 203**, the Motion To Dismiss, **ECF**

17   **Number 224** and the Motion To Dismiss, **ECF Number 208** are under

18   advisement and I will get you rulings as quickly as I can.

19           I appreciate your travel, coming here.

20           *MR. LITOWITZ:*  Thank you for having us.

21           *THE COURT:*  No, I'm actually communicating with my

22   courtroom deputy.  Cathy, which motion for joinder are we

23   talking about okay?  All right.  Well, **214**, hold on.  The

24   Motion For Joinder And Response, there's been no real

25   objections to the joinders, and so I'm not -- I will grant **214**

1    and **225**, which I think is pretty much the same thing.  Hold on.

2          *MR. LITOWITZ:*  It is, they are.

3          *MR. STEWART:*  Your Honor, this is Mr. Stewart.  I want

4    clarification on the sanctions motion, is that -- obviously,

5    you are not hearing it today.  Is it still floating out there?

6          *THE COURT:*  It's still out there.

7          *MR. STEWART:*  The only thing I wanted to say is I

8    didn't reply, because I didn't bring it.  I didn't bring it, I

9    didn't join it.  I have nothing to do with it.  But Mr. Gee

10   keeps saying in his papers that he doesn't know if Mr. Litowitz

11   is representing my client.  I'm like, I think it's pretty clear

12   I don't -- I represent my clients and he represents his, and

13   I -- I'm kind of tired of getting lumped together on things

14   that are obviously not things that we're both doing, and it --

15   it's an irritant.  So, I want to be clear that I -- I had

16   nothing to do with that motion, and I didn't reply to the

17   opposition, because I didn't bring it.

18         *THE COURT:*  Okay.  Fair enough.  All right.  Let me

19   just start going around in the great big circle.  Mr. Litowitz,

20   anything else?

21         *MR. LITOWITZ:*  No.  But thank you, Your Honor.

22         *THE COURT:*  Mr. Stewart, anything else?

23         *MR. STEWART:*  Nothing further.

24         *THE COURT:*  Mr. Gee, anything else?

25         *MR. GEE:*  No.

1          *THE COURT:*  Mr. Kilroy, anything else?

2          *MR. KILROY:*  No.

3          *THE COURT:*  Ms. Kanan, anything else?

4          *MS. KANAN:*  No, Your Honor.

5          *THE COURT:*  I wanted to give her an opportunity to

6    speak.  All right.  Thank you all.  We will be in recess.

7          *THE COURTROOM DEPUTY:*  All rise.  Court is in recess.

8          (Recess at 2:48 p.m.)

9                        REPORTERS' CERTIFICATE

10         I certify that the foregoing is a correct transcript

11   from the record of proceedings in the above-entitled matter.

12         Dated at Denver, Colorado, this 8th day of September,

13   2020.

14                        _____

                          Tammy Hoffschildt, FCRR, CRR, RMR

15

16

17

18

19

20

21

22

23

24

25