# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-02443

Jun Li, Qi Qin, Yi Liu, Jie Yang, et al.
        Plaintiffs,

                                                          Hon. Judge Moore
        v.                                     Hon. Magistrate Varholak

Colorado Regional Center Project Solaris LLLP,
Colorado Regional Center I, LLC, et al.
        Defendants.

---

**Li Plaintiffs' Response to Colorado Regional Center I LLC's Motion [ECF # 257] to effectively Transfer the Title of All Properties by December 31st**

---

Defendants Colorado Regional Center I LLC ("CRC1") and Solaris Property Owner I LLC ("SPO1") are usurping the power of this Court as ultimate decisionmaker.

They are not content to wait for this Court to decide the pending motions. So they are circumventing any decision of this Court by pre-programming the result that they want, which is apparently a transfer of collateral titles from SPO1 to CRCPS by December 31st. Instead of telling the Court and the other lawyers in advance, they have sprung this proposal without conferral, under the guise of merely being a "change in circumstances," without any explanation of what has changed [ECF 257; 2]. In reality, this case is stayed until the Judge makes a decision. The Defendants cannot move the chess pieces where *they* alone want them to land, in advance of the Judge telling all the parties where the chess pieces should go.

It is the job of the JUDGE to decide what happens to the condominium unit titles that are currently held by SPO1. The *Li Plaintiffs* believe that SPO1 must keep the condo titles and repay

the loan in cash only, since the window for payment by transfer of title has long closed. The *Cui Plaintiffs* believe that the titles should be placed with a receiver. The Defendants (SPO1 and CRC1) have spent the last year arguing that SPO1 should keep all the titles. So there was a three-way disagreement about what should happen to the titles of the units. This was apparent at the oral argument at the end of August.

Now - before the Court has a chance to decide the issue of where the titles should be moved if anywhere - the Defendants want to usurp the Judge's power and resolve the whole matter by themselves without consulting anyone else. This is a dispositive action which they are trying to slip past the Judge as a mere "change of circumstance." [ECF 257; 2]. This is not a "change of circumstance" -- it is an extra-legal action taken prior to a Judge's ruling on this precise issue. After all, the Judge may side with the *Li Plaintiffs* that the titles should stay with SPO1, or the Judge may side with the *Cui Plaintiffs* that the titles should be in receivership, or the Judge may side with CRC1's old position that the titles should stay with SPO1, or the Judge may side with CRC1's new position that the titles should be transferred to CRCPS. It is not the job of the Defendants to resolve this issue by transferring the titles before the Judge rules on where the titles belong. They are simply poisoning the well.

**There was no conferral per Local Rule 7 by attorneys Kilroy for CRC1 or attorney Gee for SPO1.** The lawyers in this case had not talked or emailed for months. Attorney Litowitz only got an email about this motion two hours before it was filed, and that was only sent to him as a response to Litowitz's first email to the lawyers in months. Here is what happened: Litowitz (who is in Taiwan) wrote to all the lawyers, specifically asking attorney Kilroy if CRC1 was planning to send limited partners a valuation of the condos as required under the limited partnership agreement, and asking attorney Gee why there were recent property transfers at Solaris

2

Vail through SPO1 affiliated entities (that is, affiliates of attorney Gee's clients such as SPOIV, SPOV, etc.). In response to Litowitz's question about valuation, Kilroy emailed back at 4pm Denver time with an answer and said he was "conferring" on a motion to transfer all the titles from SPO1 to CRCPS, and Kilroy filed the motion two hours later at 6:02pm Denver time, before anyone had a chance to confer. Magistrate Varholak made clear that the parties were to talk by phone and have a meaningful conferral before any motion was filed. None of that was done: the motion was filed before any conferral.

**As a simple matter of timing, the action sought by CRC1's motion cannot be accomplished by the end of this year.** The Practice Rules of this Court allow 21 days for a response and 14 days for a reply. D.C.COLO.LCivR 7.1(d). Today is December 15th. There is simply not enough time to accomplish briefing and hearings on this matter and then have it totally resolved on the merits in 2 weeks over the Christmas season during a pandemic.

**There is a stay on any sales or transfers.** Attorney Litowitz distinctly remembers attorneys Kilroy, Gee, and Stewart all agreeing that in lieu of having Judge Moore decide the receivership issue at the time of oral argument, there would be an agreement to let the Judge consider the merits while the parties held the status quo by not making any sales or transfers. In other words, there is a stay on sales and transfers. That only makes sense: if the parties are disputing where the titles should be held, then CRC1 and SPO1 have no call to decide this issue BEFORE the Judge gets to it. That would only poison the well in advance and further require the parties to undo any transfers if, for example, the Judge rules that SPO1 should keep the titles.

**The Motion changes the Defendants' story yet again.** The Defendants have been saying for the entire case that the properties were already "conveyed" from SPO1 to CRCPS: "SPOI

elected to prepay the loan advances by conveying Collateral Units" [ECF # 224; 29]; "[T]he borrower exercised its contractual right to put the collateral condominium units back to CRCPS" [ECF # 229; 13]. For a year, they have been telling the Court that CRCPS already has the properties, and this is what their office emailed to limited partners, as explained in the Li Plaintiffs' Third Amended Complaint.

Now CRC1 and SPO1 are reversing their position 180 degrees and saying that the properties were NOT conveyed. This has been the Li Plaintiffs' contention all along, because Colorado law says that a conveyance can only be accomplished by a transfer of title, which never happened. *Ford v. Summertree Land LLC*, 56 P.3d 1206, 1208 (Colo. App. 2002)("A conveyance is a transfer of title to land by a deed**,**" citing *Stagecoach Prop. Owners Ass'n v. Young's Ranch*, 658 P.2d 1378 (Colo. App. 1982)). But this new position proposed by CRC1 and SPO1 -- that the units were never conveyed by deed -- destroys SPO1's defense that the loan was prepaid, since that could only be accomplished by special warranty deed. The failure to transfer a deed at the right time means that the loan was never prepaid, never paid at maturity, and is due in cash. This is not an episode of Star Trek where the borrower can get in a time machine and rewrite history: SPO1 had their chance to pay CRCPS by transfer of title and they blew it.

**CRC1's Motion assumes the truth of disputed facts not in evidence.** The affidavit of CRC1 manager Rick Hayes as Exhibit A to the Motion says, "deferral of title transfer benefitted CRCPS and its limited partners because it south [sic] to avoid approximately $1 million in HOA dues, taxes, and other payments." CRC1 takes this as a fact but there is no proof. The financial statements of CRCPS from Plante Moral PLLC dated May 16, 2019 show that CRCPS paid HOA fees of $698,196 and real estate taxes of $596,396. In that same year, CRC1 got a meager $212,456 in interest on its $82.5 million loan to SPO1.

**Even worse, attorney Litowitz spoke and emailed with the Vail City Clerk and the Town Attorney who handles real estate transaction taxes, who said that a transfer for a preexisting debt (such as a transfer from SPO1 to CRCPS) would *not* incur any transfer fee.** See Exhibit 1.  This punctures a huge hole in the Defendants' argument that they were trying to help CRCPS by leaving titles in SPO1's name to save money for CRCPS.

CRC1's Motion is pure proof of their negligence.  As general partner, they are supposed to act in the best interests of CRCPS.  They should be trying to get full repayment in cash of the $82.5 million loan and interest and fees, which comes to well over $100 million, but instead they come before this Court to tout some harebrained scheme to take useless and unsellable condo titles of indeterminate worth (perhaps - perhaps - $30 million in present value).  Instead of fighting tooth and nail for the LP, they are trying to cripple it.   Why would an advocate for CRCPS with a fiduciary duty to maximize its return cook up a scheme to take $30 million instead of pursuing a collection action for triple that amount?  Maybe now the Court will understand why every single limited partner who was reachable voted to oust CRC1 for fraud and negligence.

CRC1 is in a hurry to circumvent this Court to have the titles transferred to CRCPS but they have never told the limited partners (nor this Court) what these titles are worth.  There are no spreadsheets, no valuations, no discussions of different strategies -- nothing but silence.  Instead of working with the limited partners who OWN the company, CRC1 has spent the Fall Season locked in talks to reach a terrible result from SPO1, the borrower who stiffed CRCPS $82.5 million plus interest and fees.  CRC1 deserve to be fired, sued, and to have all their income disgorged for abandoning the limited partners -- and that is precisely what all the limited partners are demanding.

The reality of the situation is obvious to a fifth-grader from reading the Private Placement Memorandum:

> After three years following a Loan Advance, upon 60 days prior written notice to the Company (the "Prepayment Notice Period"), SPO shall have the right to prepay all or certain minimum amounts of the outstanding principal balance on the Solaris Note by tendering to the Company either (i) a special warranty deed to a Condominium Unit . . . or (ii) cash in the amount of the principal amount of the prepayment plus all accrued interest. . . On the five-year anniversary date of each respective Loan Advance (the "Maturity Date"), provided that the specific Loan Advance has not previously been paid, SPO will be obligated to pay the entire remaining unpaid principal balance together with any accrued and unpaid interest in full.  (pp. 1, 3).

SPO1 never prepaid the loan by special warranty deed of the units during the prepayment years 3-5 as required. SPO1 never paid the loan balance at maturity. So the window on paying with property has closed. Now they must pay with cash. This case is nothing more than a simple collection action.

The only conceivable defense to this simple argument is the bizarre "Agreement Regarding Collateral Units" between CRCPS and SPO1 -- but that agreement says on its face that it is designed solely to reduce the interest rate payable by SPO1 under the loan, and that the mathematical calculation of reduced interest uses the mathematical *assumption* that the loan was prepaid by transfer of deed at year 3, i.e. the assumption that the loans was "deemed repaid" at the third year in order to calculate the reduced interest. A hypothetical deemed transfer of property is not a real actual transfer by deed, a fact which CRC1 and SPO1 have just discovered. The Agreement Regarding Collateral Units says on its face that it does not affect SPO1's continuing obligation to pay the full loan principal, and by its own terms it admits that it does not constitute a

transfer of title.  In the real world, no title was ever transferred, so there could never have been a 'conveyance' under Colorado law, and thus there was no prepayment, no payment at maturity, and no payment currently being made.

There is no way out of this for the debtor SPO1 no matter how much softball CRC1 tries to play with them.  The money is owed.  It must be repaid.  This is a simple case of an unpaid loan, where the lender (for some reason) allowed the borrower to reduce the interest owed by using a formula that assumed the titles were transferred, but that had no effect on the real world where not titles were ever transferred as required by the deal documents, so the money is still due.  This Court should simply enforce the loan against SPO1 like it would any other borrower who doesn't pay back their loan, then put the case to bed -- all the rest is just smoke and mirrors.

WHEREFORE, the Li Plaintiffs ask this Court to deny CRC1's Motion for Leave to Supplement its Response to the Motion for Appointment of a Receiver.

Dated: December 15, 2020                    Respectfully Submitted,

/s/ Douglas Litowitz
413 Locust Place,
Deerfield, IL 60015
312-622-2848
Litowitz@gmail.com

**Certificate of Service**

This document was filed on the ECF system for the District of Colorado on December 15, 2020 and thereby sent to all counsels of record.

7