# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-02443

Jun Li, Qi Qin, Yi Liu, Jie Yang, et al.
        Plaintiffs,

                                        Hon. Judge Moore
        v.                              Hon. Magistrate Varholak

Colorado Regional Center Project Solaris LLLP,
Colorado Regional Center I, LLC, et al.
        Defendants.

---

## Li Plaintiffs' Briefing on Subject Matter Jurisdiction and Motion to Dismiss the State-Law Claims under Fed. R. Civ. P. 12(h)(3) and 12(b)(1)

---

This Court requested that the Li Plaintiffs brief the question of subject matter jurisdiction based on diversity of citizenship, in light of its opinion that CRCPS is more appropriately aligned as a defendant than a plaintiff:

> In this case, it would appear that CRCPS should be aligned as a defendant, in which case, if the citizenship of CRCPS is based on the citizenship of its members, diversity jurisdiction does not appear to exist. Thus, on this record, complete diversity has not been plausibly alleged. [ECF 271: 51].

The Judge's characterization of CRCPS as a defendant is within his discretion and is a reasonable conclusion, even though the Li Plaintiffs originally thought otherwise. As briefed below, the proper alignment of a party is a determination on which reasonable lawyers and judges can disagree.

The Court's realignment of CRCPS destroys complete diversity and eliminates subject matter jurisdiction. As such, the case is at an end in this Court, and must be refiled in a state court of general jurisdiction: "Jurisdictional issues must be addressed first and, if they are resolved against jurisdiction, the case is at an end." *In re. Franklin Savings Corp.,* 385 F.3d 1279, 1286 (10th Cir. 2004). Fed. R. Civ. P. 12(h)(3) provides: "If the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action." Lack of subject matter can be raised by the Court *sua sponte* under Rule 12(h)(3) or by motion under Fed. R. Civ. P. 12(b)(1) by any interested party, either plaintiff or defendant: "[I]t has long been well-established that the court's lack of subject matter jurisdiction may be asserted at any time by any interested party, either in the answer or in the form of a suggestion to the court prior to final judgment." Wright, Miller, & Kane, 5B Federal Practice and Procedure §1350 (3d ed. 2020). Regardless of whether a party or the Court raised the issue, the result is the same: lack of federal subject matter jurisdiction means that this Court lacked power to rule on the state-law claims: "For a court to pronounce on the meaning . . . of a state or federal law when it has no jurisdiction to do so is, by very definition, for a court to act ultra vires." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 101 (1998)(holding that jurisdiction prerequisites must be satisfied before determinations on the merits can be validly issued).

Jurisdiction is determined at the time the complaint was filed, *Ravenswood Inv. Co., L.P. v. Avalon Corr. Serv.*, 631 F.3d 1219, 1223 (10th Cir. 2011), so the lack of subject matter jurisdiction goes back to the inception of this lawsuit. This means the Court doesn't have - and never had - subject matter jurisdiction over the state-law claims which it addressed in its recent opinion, nor should it exercise supplemental jurisdiction over those state-law claims. The Court's rulings under Fed. R. Civ. P. 12(b)(6) as to the merits or demerits of the state-law counts (Li

Plaintiffs' Counts I, II, III, and VI) lacked subject matter jurisdiction and they are not 'final,' not 'on the merits,' and not 'res judicata' in any further proceeding. The state-law claims should be reheard in a state court of general jurisdiction. Finally, there should be no requests for fees or costs from any of the defendant's lawyers, since all of them failed to raise the dispositive issue of subject matter jurisdiction.

Indeed, the Li Plaintiffs are curious as to why the defendants never raised the issue of subject matter jurisdiction by filing a Rule 12(b)(1) motion to dismiss at the outset. One possibility is they agreed with the Li Plaintiffs. A more ominous possibility is that defendants were holding a Rule 12(b)(1) motion in abeyance as an 'ace in the hole' to dismiss the case if they lost on the merits. In any event, the Court has independent grounds to raise a jurisdictional issue *sua sponte*, which it did after an assiduous review of the case.

I. **Background**

There are two reasons why the Li Plaintiffs did not see a diversity problem with respect to CRCPS. First, they named CRCPS as a "nominal" party which would mean that its citizenship is disregarded for diversity purposes. Second, the facts and circumstances pushed the scale toward aligning CRCPS as a plaintiff, since the Li Plaintiffs had repeatedly sought relief *for* CRCPS and not *against* it.

The Li Plaintiffs felt that the real wrongdoers here - that is, the real defendants against whom they sought relief - were CRCI and SPOI. It was CRCI who had mismanaged the company's sole asset, namely a loan that SPOI refused to repay long after maturity. On the assumption that the real defendants were CRCI and SPOI, the Li Plaintiffs petitioned this Court to compel disclosure of the citizenship of their members so that complete diversity could be assured for the

state-law counts, since this information was not in the public record. See ECF 113: *Li Plaintiffs' Application to Require Defendants to Disclose Citizenship of Members*. The Court denied this request without prejudice, not providing any rationale [ECF 114]. So using available information, the Li Plaintiffs asserted in the Third Amended Complaint that, "Thus, all the Defendants' ultimate members are residents of Colorado, Wisconsin, and perhaps Texas - and none of the Plaintiffs are residents of any of these states. This makes for complete diversity." [ECF 222; fn. 1]. From the Li Plaintiff's perspective, CRCPS was only a party in the formal sense that it would passively receive the overdue loan money from SPOI or the damages for breach by CRCI.

### (a) The Decision to Designate CRCPS as a Nominal Party Whose Jurisdiction Could be Disregarded

The decision to name CRCPS as a nominal defendant accorded with case law. *Meyer v. Fleming*, 327 U.S. 161, 167 (1946)(in a derivative case, the company itself "is only nominally a defendant, since any judgment obtained against the real defendant runs in its favor"); *Britton v. Parker,* 2007 WL 2871003 (D. Colo. Sept. 26, 2007)(corporation as "nominal defendant"); *Vance v. Vance*, 2020 WL 5530041 at *1 (D. Kan. Sept. 15, 2020)(in derivative case, business entity is "nominal defendant"); *Hunt v. Waters,* 403 F.Supp.3d 1036, 1067 (D.N.M. 2019) ("the Tenth Circuit recognizes as nominal parties those parties with no real interest in a suit or against whom no relief is sought"). Under the test in *Hunt*, CRCPS is a nominal party because no relief was sought *against* it, only *for* it.

A court will disregard the citizenship status of nominal parties. *Brazell v Waite*, 525 Fed. Appx. 878, 2013 WL 2398893 at *3 (10th Cir. 2013)("Thus a federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy"), quoting *Lenon v. St. Paul Mercury Ins. Co*, 136 F.3d 1365, 1369 (10th Cir. 1998). An instructive

4

case in the derivative context is *Roskind v. Emigh*, 2007 WL 981725 at *2 (D. Nev. Apr. 2, 2007) where the real dispute was among the LLC members since no claims were made against the LLC itself. The court therefore aligned the LLC with the plaintiffs: "the fact that [the LLC] is technically a citizen of the same state as plaintiff does not destroy the Court's subject matter jurisdiction in this case." *Id.* at *3.

The cases seem to assign "nominal" status to an entity when nothing is asked of it, but to declare it as a "real" party whose citizenship counts when something affirmative is asked of it. See, e.g., *Patel v. Henslee Chicken LLC*, 2020 WL 7260926 at *10 (M.D. Tenn. Dec. 10, 2020)(holding that LLC was a real party whose citizenship mattered, and not a nominal party, when the plaintiffs sought to inspect its books, collect damages from it, dissolve it, and appoint a receiver). Cases in this vein have fact patterns where something is being asked of the company that is greater than simply transferring or collecting assets. *Tampone v. Richmond*, 2010 WL 3083539 at *5 (E.D. Mich. 2010)(company aligned as defendant when it was asked to take action beyond simply transferring or conveying assets). Here, the Li Plaintiffs are merely asking CRCPS collect the loan proceeds from SPOI and damages from CRCI. There is room for debate whether this is more akin to a nominal/ministerial role or a real/active role, but the precedents allow for a determination either way.

### (b) The Decision to Align CRCPS as a Plaintiff Instead of Defendant

The issue of alignment in a derivative context comes down to "a practical and not a mechanical determination" as explained by the Eleventh Circuit in a case where they aligned a company as a *plaintiff* for diversity purposes:

> The plaintiff stockholder in a stockholder's derivative suit is "at best the nominal plaintiff." The corporation is the real party in interest even though the corporate management has failed to pursue the action. But as a practical matter, the corporation is initially named as a defendant. In this way the stockholder insures the presence of the corporation as an indispensable party. **Once joined and present before the court, the corporation is then realigned, if necessary, according to its real interests.** Thus, in theory the corporation should be realigned as a plaintiff in a stockholder's derivative action since as the real party in interest it stands to benefit from a successful suit.
>
> This principle is modified, however, by the necessity of producing an actual controversy or real collision of interests between the parties. For this reason, the corporation properly remains a defendant in a stockholder's derivative action whenever the corporate management is "antagonistic" to the plaintiff shareholder. In other words, if the management of the corporation is actively aligned against the plaintiff shareholder and his lawsuit, then the shareholder and the corporation are actually on opposing sides of the controversy, and the corporation is properly named as a defendant.
>
> The question of whether to realign the corporation as a plaintiff or allow it to remain as a defendant is "a practical not a mechanical determination and is resolved by the pleadings and the nature of the dispute."

*Liddy v. Urbanek*, 707 F.2d 1222, 1224 (11th Cir. 1983)(cites omitted; emphasis added).

There is no question that a District Court has the ultimate power to align a party, and is not bound by the determination of the parties. *Krangel v. Crown*, 791 F.Supp. 1436, 1438 (S.D. Cal. 1992)("Courts have the power to realign the parties according to their true interest once they are present before the court"), citing *Smith v. Sperling*, 354 U.S. 91, 93 (1957)(recognizing that District Court has authority to determine alignment). If a court finds that the company and the plaintiffs share a common goal it will align them together as plaintiffs, but if there is sufficient 'antagonism' between the plaintiffs and the company, it will align the company as a *defendant*.

In this District, there is at least one fairly recent derivative case where the Judge aligned the company as a *plaintiff* for diversity purposes. *Police Ret. Sys. of St. Louis v. Ersek*, 2015 WL 1880304 at *2 (D. Colo. Apr. 23, 2015)(Martinez, J.). *Ersek* was a state law case under consideration for removal to federal court based on diversity of citizenship. Complete diversity was possible if the company involved (which was Western Union) was aligned as a plaintiff. Judge Martinez made this alignment to preserve complete diversity, despite some antagonism that was evident from allegations of wrongdoing by company officials:

> Accordingly, the Court has examined the question and concludes that Western Union's interests in this action are more aligned with Plaintiff's interests than Defendants'. As Plaintiff has pled in its Complaint, it brings this action on behalf of Western Union in order to obtain compensation for monetary and reputational damages to Western Union. (Compl.¶ 1.) Plaintiff alleges that the individual defendants, all directors of Western Union at the relevant time, were responsible for such damages by breaching their fiduciary duties to Western Union and wasting its corporate assets, and were consequently unjustly enriched to Western Union's detriment. (*Id.* ¶¶ 132–48.) . . . The Court concludes that Western Union's interests are aligned with Plaintiff's. . . . Consequently, the Court concludes that there is complete diversity between the parties, and removal was proper on that basis.

*Id.* at *2. This is an unreported case, but it is not an anomaly. Basically, alignment comes down to a practical determination as to whether the company is truly on the same side as the plaintiff or is antagonistic to it, and this can lead to decisions in both directions. As the District of Nevada recent summarized:

> In derivative shareholder lawsuits, a corporation is often properly aligned as a plaintiff because the shareholders are suing on behalf of the corporation. *In re Digimarc Corp. Deriv. Litig.*, 549 F.3d 1223, 1234 (9th Cir. 2008). However, when a corporation becomes "antagonistic" to the interests of the shareholders, the corporation is a proper defendant. . . .

7

*Barna Capital Group Ltd v. Tong Shipping*, 2019 WL 1442193 *3 (D. Nev. Apr. 1, 2019).

Some courts take the position that when a complaint alleges wrongdoing by corporate officers, the company must be aligned as a defendant.[1] Other courts take a more flexible approach and look to the underlying facts and circumstances to see whether the company is neutral toward the lawsuit and stands to benefit, in which case it is aligned with the *plaintiffs*, or whether it actively opposes the lawsuit, in which case it is aligned with the *defendants*. This gives the court a certain freedom to rule either way based on its sense of where the company's true interests lie. Thus in *Roskind v Emigh*, 2007 WL 981725 at *2 (D. Nev. Apr. 2, 2007), the court aligned an LLC with the plaintiff in a derivative lawsuit, citing the Supreme Court's statement that federal courts should "look beyond the pleadings" to the actual interests of the parties. *City of Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63, 69 (1941)("Diversity jurisdiction cannot be conferred on the federal courts by the parties' own determination . . . It is our duty to  . . . 'arrange the parties according to their sides in the dispute'"), quoting *Dawson v. Columbia Ave.*, 197 U.S. 178, 180 (1905).

The support for aligning CRCPS with plaintiffs in this case is that, first, the Li Plaintiffs sought recovery *for* CRCPS and not *against* it. The Li Plaintiffs also tried to rescue CRCPS by changing its management after it lost over half its assets by mishandling a loan. The Li Plaintiffs obtained written proxies from over 70% of the limited partners to remove the general partner (defendant CRCI) and call the disastrous loan to defendant borrower SPOI; thus the limited

---

[1] *Afshar v. WMG, L.C.*, 2015 WL 5602660 (N.D. Iowa Sept. 21, 2015)(LLC member cannot bring derivative action because LLC is aligned as defendant); *Price v. Smith*, 842 F.Supp.2d 1111, 1116 (E.D. Wis. 2012)(LLC member's acrimony against LLC entity makes it a defendant and destroys diversity); *Atanasio v. O'Neill*, 235 F.Supp.3d 422, 426 (E.D.N.Y. 2017)("where an LLC and squabbling LLC members form a cohort of adverse parties - federal diversity jurisdiction over the squabble is not available").

partners are not angry with CRCPS itself but rather with the way it has been run by CRCI. In the Third Amended Complaint, the Li Plaintiffs pleaded that CRCPS was the victim writ large and that plaintiffs merely shared in that common victimhood: "CRCPS has suffered and continues to suffer . . .[a]s the result of CRC's actions," "CRCPS's assets are not safeguarded and are in danger of dissipation," "It is in the best interests of CRCPS to bring suit against SPOI" [ECF 222: ¶129, 158, 163].

But the Li Plaintiffs understand that there is support for the contrary conclusion that CRCPS was antagonistic to the plaintiffs and therefore aligned with the defendants. This is supported by the fact that CRCPS refused the demand of the Li Plaintiffs to call its $82.5 million loan against SPOI for repayment; CRCPS refused to investigate or examine the behavior of its general partner; and CRCPS had the same counsel as that of its general partner against whom relief was sought, thereby aligning itself with the defendants. In other words, there are reasons justifying an alignment in either direction, and there is no bright line test. Accordingly, the Judge has fairly aligned CRCPS with the defendants, and this means, for better or worse, that its rulings on state-law matters were made without subject matter jurisdiction, and the case must be dismissed.

II. **Supplemental Jurisdiction Does Not Exist, and even if it did, it should be Rejected**

Since this Court lacks *original* jurisdiction over the state-law claims, there arises a question whether it can (or should) exercise *supplemental* jurisdiction on such claims. The supplemental jurisdiction statute, 28 U.S.C. §1367, allows a federal court to hear state-law claims which are supplemental or ancillary to claims on which the Court had subject matter jurisdiction.

Supplemental jurisdiction is discretionary, and can be exercised only when the supplemental state-law claims are related by a common nucleus of operative fact to the claim that

was grounded in original federal jurisdiction. The federal and state-law claims must be so intimately related that they are two facets of the same case. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966)(supplemental jurisdiction [then called pendent jurisdiction] requires that the relationship between that federal claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional "case" . . . The state and federal claims must derive from a *common nucleus of operative fact*.")

Here, the Court only had original jurisdiction on the federal securities claim, which does not share commonality with the state-law counts. The federal securities claim was highly specialized, relying on the particularized fact that the defendants created a system of continual "puts" (redemptions of LP units) every six months that constituted a repeating securities offering to the limited partners. Also, the federal securities claim was based on the defendants' *misrepresentation* of company value, and not (as in the state-law counts) on the contractual and fiduciary breaches (pled in the state-law claims) that led to the company having diminished value in the first place. The federal securities claim was an add-on to the gravamen of the lawsuit, which boils down to a bad loan that a lender refuses to collect and a borrower refuses to repay. As the Supreme Court said, "Once it appears that a state claim constitutes the real body of a case, to which the federal claim is only an appendage, the state claim may fairly be dismissed." *Gibbs*, 383 U.S. at 726.

Even if supplemental jurisdiction could be invoked - which it can't - the statute still provides this Court with discretion to decline supplemental jurisdiction when (as here) it has dismissed all claims over which it had original jurisdiction, **or** when state-law claims substantially predominated over the dismissed federal claim. 28 U.S.C.§1367(c)(2)(3). Both of these avenues are available for this Court to decline supplemental jurisdiction. Indeed, there is *presumption* that

Courts should exercise these statutory reasons to decline supplemental jurisdiction when available. *Beck v. Dobrowski*, 559 F.3d 680, 686 (7th Cir. 2009)(explaining a "presumption that when a federal suit is dismissed before trial the court should relinquish any supplemental state-law claim to the state courts.").

Directly relevant here is *Boone v. Carlsbad Bancorporation, Inc.*, 972 F.2d 1545, 1559 (10th Cir. 1992), where the Tenth Circuit found no error in a District Court's refusal to take supplemental jurisdiction over state-law fiduciary claims once it dismissed federal securities claims, even though they relied on a common nucleus of operative fact. Similarly, the District of Delaware declined supplemental jurisdiction over the remaining state-law fiduciary duty claims after it dismissed a sole federal securities count. *Lemon Bay Partners LLP v. Hammonds*, 2007 WL 1830899 at *5 (D. Del. June 26, 2007)(the court joked that retaining supplemental jurisdiction over state-law claims based on a dismissed federal claim would "truly permit the tail to wag the dog").

Nor should the Court be swayed by the burden on litigants of starting a new case in state court. In *Foxfield Villa Associates, LLC v. Robben*, 967 F.3d 1082, 1103 (10th Cir. 2020), the Tenth Circuit said that a District Court properly declined to exercise supplemental jurisdiction even after four years of hearing a case in federal court:

> We discern no abuse of discretion. "[A] district court should normally dismiss supplemental state law claims after all federal claims have been dismissed, particularly when the federal claims are dismissed before trial. *U.S. v. Botefuhr*, 309 F.3d 1263, 1273 (10th Cir. 2002). With that said, "we have [also] suggested that it is appropriate, perhaps even advisable, for a district court to retain supplemented state claims after dismissing all federal questions when the parties have already expended a great deal of time and energy on the state law claims." *Id*. (citing *Anglemyer*, 58 F.3d at 541). But a district

11

> court does not abuse its discretion just because it defies an appropriate and advisable *suggestion*—at least as long as it gives good reasons for doing so. We believe that the many [remaining] state claims . . . are a good reason under the abuse of discretion standard to send this case to the Kansas state courts despite the significant resources that the parties have expended in federal court.

*Foxfield*, 967 F.3d at 1103. Here, Judge Moore has excellent reasons for declining supplemental jurisdiction over a nascent dispute involving solely state-law claims. A federal court is one of limited jurisdiction. It is simply not the best forum for a potentially years-long dispute over Colorado law, especially when this case is still at the pleading stage and no discovery has been taken. If the state-law claims are going to be dismissed, now is the time.

### III. The Judge's Opinion on State-Law Matters Does Not Create Claim Preclusion/Res Judicata in a Subsequent Case

If this case is dismissed in federal court and the state-law claims are filed in state court, there is a question of whether this Court's decisions under Rule 12(b)(6) would be binding on the subsequent state court. This question is called by various names such as 'claim preclusion,' 'res judicata,' 'law of the case,' 'collateral estoppel.' These terms are sometimes deemed to have subtle differences, but they are part of the larger question as to the whether a federal court's analysis in a case is binding ('res judicata') in a subsequent state court proceeding.

This question is easily answered in the negative. For a federal ruling to be res judicata, it must be a "final judgment" and it must be "on the merits." *Allen v. McCurry*, 449 U.S. 90, 94 (1980)("Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action"); *Northern Natural Gas Co. v. Grounds*, 931 F.2d 678, 681-2 (10th Cir. 1991)(using the terms "claim

preclusion" and "res judicata" synonymously, but following the dual requirements of a *final judgment* that is *on the merits*).

The problem here is that this Court's opinion at ECF 271 is neither final nor is it on the merits, so it cannot be res judicata.

Under Rule 54(b), a judgment that does not dispose of all the parties' claims is not "final." Such a ruling "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." The only other way for a judgment to be final is if the Court certifies it as "final," which was not requested here. Again, the only claim which is arguably final is the count on federal securities laws, which is severable from the other counts because it had an independent ground for subject matter jurisdiction. All the other matters were stayed pending the Court's ruling on the alignment of CRCPS, so its ruling is subject to alteration and is not final.

More importantly, a judgment by a court lacking subject matter jurisdiction is not 'on the merits.' *Gallardo v. AT&T Mobility, LLC,* 937 F.Supp.2d 1128, 1134 (N.D. Cal. 2013)("a claim is not barred by res judicata if the forum in which the first action was brought lacked subject matter jurisdiction to adjudicate that claim"), quoting *Clark v. Bear Stearns & Co.*, 966 F.2d 1318, 1321 (9th Cir. 1992). The logic is simple: if the court lacked jurisdiction, this lack began when jurisdiction is determined - the date of the complaint - so all subsequent judgments are not on the merits and not res judicata. This rule goes back hundreds of years in what the Supreme Court calls "a long and venerable tradition":

> "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Ex parte McCardle*, 7 Wall. 506, 514 (1869). . . . Just last term, we restated the principle in the clearest fashion, unanimously setting aside the Ninth Circuit's merits decision in a case that had lost the elements of a justiciable controversy.

*Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94-95 (1998), cited approvingly in *Brownback v. King*, 141 S.Ct. 740, 2021 WL 726222 (Feb. 25, 2021)(Thomas, J.); *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1217 (10th Cir. 2006)("[O]nce a court determines it lacks jurisdiction over a claim, it perforce lacks jurisdiction to make any determination on the merits of the underlying claim."). The lack of res judicata only means that a subsequent court is neither *mandated* nor *bound* to reach the same conclusions as Judge Moore on the state-law claims, but it doesn't stop that court from considering Judge Moore's opinion on the state-law claims.

**Conclusion**

If Judge Moore is correct that there was no diversity jurisdiction over the state-law claims, they must be dismissed for lack of subject matter jurisdiction under Rule 12(h)(3) and Rule 12(b)(1), and there is no reason to invoke supplemental jurisdiction over state-law claims.

WHEREFORE, the Li Plaintiffs ask this Court for an order as follows:

(i)   The Li Plaintiffs' case and all state-law Counts are dismissed under Fed. R. Civ. P. 12(h)(3) due to lack of original subject matter jurisdiction and lack of supplemental jurisdiction;
(ii)  Notwithstanding the above, the Court's dismissal of Count V (federal securities law) can be deemed final and appealable because the Court had subject matter jurisdiction over such Count; and
(iii) The Li Plaintiffs are free to file their state-law claims in state court.

Dated: March 11, 2021                                    Respectfully Submitted,

/s/ Douglas Litowitz  
413 Locust Place,  
Deerfield, IL 60015  
312-622-2848  
Litowitz@gmail.com

**Certificate of Service**

This document was filed on the ECF system for the District of Colorado on March 11, 2021.