**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-cv-02443-RM-STV
Consolidated with Civil Action No. 1:19-cv-02637

Jun Li, *et al.*,

    Plaintiffs,

v.

Waveland Ventures, LLC, *et al.*,

    Defendants.

---

### CRC DEFENDANTS' MOTION FOR AWARD OF ATTORNEY FEES

---

Defendants Waveland Ventures, LLC, Colorado Regional Center, LLC, and Colorado Regional Center I, LLC (collectively, the "CRC Defendants"), through undersigned counsel, respectively move pursuant to Rule 54 for an award of attorney fees incurred in defending this action, which was dismissed in full as to the CRC Defendants on March 2, 2021 (ECF No. 271).

### CERTIFICATE OF CONFERRAL

Pursuant to D.C.COLO.LCivR 7.1, undersigned counsel conferred with counsel for Cui Plaintiffs and Li Plaintiffs regarding this Motion and states that Cui Plaintiffs and Li Plaintiffs oppose the requested relief. The precise amount of attorney fees sought from each set of Plaintiffs has changed since the conferral because undersigned counsel has further endeavored to precisely allocate the attorney fees incurred in defending the actions filed by the Cui Plaintiffs and the Li Plaintiffs. In any event, counsel for the Cui Plaintiffs and the Li Plaintiffs have clarified that their clients intend to oppose any award of attorney fees sought by the CRC Defendants.

4841-2468-7839

## INTRODUCTION

The Li Plaintiffs initiated this tort action against the CRC Defendants, and others, in August of 2019. Cui Plaintiffs filed a separate fraud action in September 2019, and these matters were consolidated in November 2019. Since then, the Li Plaintiffs and the Cui Plaintiffs have each filed three amended complaints. The basic thrust of Plaintiffs' complaints always has been alleged fraud and other unlawful conduct by the CRC Defendants. The CRC Defendants moved to dismiss Plaintiffs' complaints in full, and this Court dismissed all claims against the CRC Defendants on March 2, 2021.

During the pendency of the CRC Defendants' motion to dismiss, Plaintiffs continued to prosecute this case to the fullest extent possible, requiring the CRC Defendants to expend significant resources and time defending against Plaintiffs' numerous claims for relief and serious accusations of wrongdoing, fraud, and other tortious conduct. Additional fees were incurred as a result of Plaintiffs' actions, including through their filing of multiple complaints and numerous motions, including motions for sanctions, injunctive relief, and appointment of a receiver. Despite still being at the Rule 12 stage, the combined electronic docket contains over three hundred entries. Due to Plaintiffs' litigation tactics, the CRC Defendants necessarily incurred a substantial amount of fees in successfully defending against this action and now seek to recover those fees. Since the essence of Plaintiffs' claims against the CRC Defendants sound in tort and were dismissed on motion of the CRC Defendants pursuant to Fed. R. Civ. P. 12(b)(6), the CRC Defendants are entitled to an award of attorney fees under C.R.S. § 13-17-201.

# ARGUMENT

I. **The CRC Defendants Are Entitled to an Award of Attorney Fees pursuant to C.R.S. § 13-17-201**

   A. **C.R.S. § 13-17-201 Applies to This Court's Dismissal of Claims under Rule 12(b)**

Under Colorado law, where any action sounding in tort "is dismissed on motion of the defendant prior to trial under rule 12(b) of the Colorado rules of civil procedure, such defendant *shall* have judgment for his reasonable attorney fees in defending the action." C.R.S. § 13-17-201 (emphasis added). An award of fees under C.R.S. § 13-17-201 is mandatory and applies where both tort and non-tort claims are pled and dismissed under Rule 12. *See Infant Swimming Research, Inc. v. Faegre & Benson, LLP*, 335 F. App'x 707, 715-16 (10th Cir. 2009) ("Both the plain language of the statute and numerous court decisions make clear that an award of attorney fees is mandatory when a trial court dismisses an action under Rule 12(b)."); *Torres v. Am. Fam. Mut. Ins. Co.*, 606 F. Supp. 2d 1286, 1292 (D. Colo. 2009); *Dubray v. Intertribal Bison Co–Op*, 192 P.3d 604, 607 (Colo. App. 2008).

Application of C.R.S. § 13-17-201 is not limited to state court actions and applies "with equal force when a federal court dismisses a pendent state tort [action]" pursuant to Fed. R. Civ. P. 12(b). *Jones v. Denver Post Corp.*, 203 F.3d 748, 757 (10th Cir. 2000), *abrogated on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). "When exercising jurisdiction over pendent state claims, [this Court] must apply the substantive law of the forum state ... just as [it] would if … jurisdiction rested on diversity of citizenship." *Id*. at 757 (internal quotations and citation omitted); *BancOklahoma Mortg. Corp. v. Capital Title Co.*, 194 F.3d 1089, 1103 (10th Cir. 1999) ("This rule also applies

3

when a federal court exercises supplemental jurisdiction over state law claims in a federal question lawsuit."). Like here, where the federal court's jurisdiction is based in part on a federal question, federal courts in this District have found C.R.S. § 13-17-201 applicable and awarded attorney fees to successful defendants. *See Advanced Career Techs., Inc. v. John Does 1-10*, 100 F. Supp. 3d 1105, 1007 (D. Colo. 2015) (holding that C.R.S. § 13-17-201 applied in case involving claim for violation of the Lanham Act, as well as common law libel and the Colorado Consumer Protection Act ("CCPA")); *Grynberg v. Ivanhoe Energy, Inc.*, 2011 WL 3294351, at *1 (D. Colo. 2011) (granting fees pursuant to C.R.S. § 13-17-201 where subject matter based on federal question as to RICO claim and on either or both diversity and supplemental jurisdiction as to the state law tort claims).

### B.     This Matter Undoubtedly Sounded in Tort.

In cases involving tort and non-tort claims, if the essence of the action sounds in tort, the statute applies. *See Luskin Daughters 1996 Tr. for benefit of Ackerman v. Young*, 448 P.3d 982, 987 (Colo. 2019) ("Where a plaintiff has pleaded both tort and non-tort claims, the question of statutory attorney fees properly turns on the question whether the essence of the action was one in tort.") (internal quotation marks omitted). Colorado courts apply a two-part test to determine whether C.R.S. § 13-17-201 should apply. *See Gagne v. Gagne*, 338 P.3d 1152, 1168 (Colo. App. 2014). First, courts apply the predominance test to determine "whether the essence of the action is tortious in nature (whether quantitively by simple number of claims or based on a more qualitative review of the relative importance of the claims) or not." *Id.* (internal quotations omitted). If the predominance test fails to yield a clear answer, the court "would then turn to the question of whether tort claims were asserted

4

to unlock additional remedies." *Id.* (internal quotations omitted).  For example, if a plaintiff includes tort claims to unlock remedies beyond those available under a breach of contract, the case sounds in tort and a fee award is appropriate under C.R.S. § 13-17-201. *See id.* at 1167 (citing *Dubray v. Intertribal Bison Coop.*, 192 604, 607 (Colo. App. 2008)).

Under the predominance test, the essence of Plaintiffs' actions against the CRC Defendants are tortious in nature.  From a quantitative standpoint, Plaintiffs' claims against the CRC Defendants primarily sound in tort.  Plaintiffs' remaining fraud claim alleges that they were fraudulently induced into purchasing an interest in CRCPS, and they seek to rescind or recover their $500,000 investment.  ECF No. 190, ¶¶ 93-105.  Plaintiffs seek to recover for the damages they allegedly incurred as a result of the CRC Defendants' alleged fraudulent misrepresentations.  Therefore, Plaintiffs seek recovery in tort.  *See Club Matrix, LLC v. Nassi*, 284 P.3d 93, 96 (Colo. App. 2011) ("One who suffers injury or loss by being fraudulently induced to enter into a contract may affirm the contractual agreement and seek recovery in tort for damages he suffered as a result of the fraudulent misrepresentations.") (internal quotations omitted).

Plaintiffs other claims against the CRC Defendants also sound in tort.  Plaintiffs' federal and state securities fraud claims essentially make the same arguments as the fraudulent misrepresentation claim, seeking damages to make them whole as a result of the "fraudulent and misleading terms" that induced the limited partners to exercise the put option offered to them.  ECF No. 121, ¶¶ 181-211.  Plaintiffs' individual and derivative claims for breach of fiduciary duty are tort claims.  *See Castro v. Lintz*, 338 P.3d 1063, 1069 (Colo. App. 2014) (stating "it is uncontested that breach of fiduciary duty is a tort.").  Finally, Li

Plaintiffs' claim for civil theft alleges that the CRC Defendants engaged in intentionally wrongful conduct by deceiving CRCPS into making the loan. ECF No. 121, ¶¶ 131-49. This also amounts to a claim sounding in tort. *See Bermel v. BlueRadios, Inc.*, 440 P.3d 1150, 1157 (Colo. 2019) (concluding that "because civil theft is wrongful conduct—indeed, intentionally wrongful conduct—that causes harm for which courts will impose civil liability, it would appear to amount to a tort in Colorado."). Thus, from a numeric perspective, the essence of this action sounds in tort and C.R.S. § 13-17-201 applies.

A qualitative review of the claims also shows the essence of the action against the CRC Defendants lies in tort. A tort is generally defined as "legally improper conduct that causes harm and imposes civil liability." *Vigil v. Franklin*, 103 P.3d 322, 324 (Colo. 2004). Plaintiffs, dissatisfied with the return on their investment (despite being fully aware of the risks involved), have made these inflammatory allegations primarily boiling down to claims of fraud and theft by the CRC Defendants. Plaintiffs allege that they have been harmed by what they perceive as legally improper conduct and seek damages as a result. The predominance test clearly establishes that this is a tort action.

In light of the above, the Court should find that the CRC Defendants are entitled to an award of attorney fees pursuant to C.R.S. § 13-17-201.

## II. The Fees Incurred by the CRC Defendants Were Necessary and Reasonable under the Circumstances

"In statutory fee-shifting cases 'the lodestar method is generally employed in calculating attorney fees.'" ECF No. 245 at 2 (quoting *Brody v. Hellman*, 167 P.3d 192, 204 (Colo. App. 2007); citing *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998)). "To determine the reasonableness of a fee request, a court must begin by calculating

6

the so-called 'lodestar' amount of a fee, and a claimant is entitled to the presumption that this lodestar amount reflects a 'reasonable' fee." *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998). The "lodestar" amount equals the product of hours "reasonably expended" times "a reasonable hourly rate." *Id*. Where a fee applicant has carried the burden of showing that the claimed rate and number of hours are reasonable, the resulting product is presumed to be the reasonable fee and adjustments should only be made in rare instances. *Id.*; *Clawson v. Mountain Coal Co.*, 2007 WL 4225578, at *6 (D. Colo. Nov. 28, 2007) (Krieger, J.) (citation omitted).

The attached Declaration of lead trial counsel for the CRC Defendants details the attorney fees incurred and allocates them between those incurred defending the actions brought by the Li Plaintiffs and the Cui Plaintiffs. There is no allocation of fees incurred between and among the CRC Defendants because all attorney fees were incurred on behalf of, and paid by, Defendant CRC I. All claims against the other CRC Defendants – CRC and Waveland Ventures LLC were also dismissed by the Court, but Defendants CRC and Waveland Ventures LLC did not incur or pay for additional attorney fees beyond those claimed by Defendant CRC I. *See* Declaration of James Kilroy ("Kilroy Decl."), filed herewith, ¶ 27.

In support of their request, the CRC Defendants submitted, in addition to Mr. Kilroy's declaration, detailed time records reflecting the amount of time spent and fees incurred by the CRC Defendants in defending this action. *See* Kilroy Decl., Exs. 2 & 3. Using his billing discretion, Mr. Kilroy then further reduced the amount of fees the CRC Defendants incurred in defending this matter for purposes of this fee application, including eliminating

7

time spent and fees incurred on peripheral issues, and then performed an allocation of time to divide the time spent defending against the Li Plaintiffs' claims and related issues and the time spent defending against the Cui Plaintiffs' claims and related issues. *See* Kilroy Decl., ¶¶ 9-16; Exs. 5-7. The lodestar amounts are reflected in Tables 1, 2, and 3 which are attached as Exhibits 5 through 7 to Mr. Kilroy's Declaration. In summary and as described in more detail in Mr. Kilroy's Declaration and exhibits attached thereto, the CRC Defendants seek the following amounts: $390,056.25 from the Li Plaintiffs and $148,569.25 from the Cui Plaintiffs. *See id.* at ¶ 15.

For the reasons set forth below, in conjunction with the information submitted herewith, the Court should find the amounts sought by the CRC Defendants with respect to the Li Plaintiffs and Cui Plaintiffs are reasonable.

### A. The Rates Charged by the CRC Defendants' Counsel Are Reasonable

The lodestar calculation begins with examining the hourly rates charged by counsel. The factors most relevant to determine reasonable hourly rates for work performed are (1) the skill required to perform the services; (2) the fee customarily charged in this community for similar services; and (3) the experience, reputation, and ability of the attorneys (and others) involved. *Colo. Hospitality Servs. Inc. v. Owners Ins. Co.*, 154 F. Supp. 3d, 1173, 1180-81 (D. Colo. 2015) (Jackson, J.).

As a preliminary matter, this Court already determined in this litigation that the rates charged by CRC Defendants' counsel, which were uncontested by Cui Plaintiffs, are reasonable. *See* ECF No. 245 at 4. In further support for this request, however, the CRC Defendants have submitted the Declaration of James Kilroy, as well as contemporaneous

time records for all fees sought through this fee application. *See generally* Kilroy Decl. and Exhibits 1 through 7 filed therewith. In his declaration, Mr. Kilroy summarized his background and significant experience in fraud and securities matters such as this one, as well as the experience of other members of the team. *See* Kilroy Decl., ¶¶ 3-5, & 7.

The hourly rates charged by Snell & Wilmer attorneys and paralegals working on this case are consistent with, and within the range of, prevailing market rates in Denver for litigation of this type. *Id*. at ¶ 17. The regular hourly rates of the team members during most of the case were $550.00 per hour for Mr. Kilroy, which represents a 12% discount of his standard 2020 hourly rate of $625.00; between $415.00/hr and $445.00/hr for Ms. Kanan a junior partner; between $255.00/hr and $355.00/hr for the primary associates; and between $180.00/hr and $245.00/hr for the paralegals. *Id*. at ¶¶ 6-8.

Furthermore, the rates charged fall squarely within the range of rates charged by similarly-sized firms performing similar work in this District and given the extensive experience of counsel. *Id*. at ¶ 22; *see also Biax Corp. v. NVIDIA Corp.*, 2013 WL 4051908, at *6 (D. Colo. Aug. 12, 2013) (Brimmer, J.) (relying on 2010 National Law Journal survey that indicated "Denver firms billed between $285 and $810 per hour for partners and between $170 and $530 per hour for associates" and 2010 American Intellectual Property Law Association survey showing 7-9 year associates billed between $275 and $435/hr to find rates charged were reasonable); *Dun-Rite Home Improvements, Inc. v Dun-Rite, LLC*, 2016 WL 11384331, at *8 (D. Colo. Feb. 2, 2016) (Schaffer, M.J.) (relying on *Biax Corp.* and holding that hourly rates falling within 2010 National Law Journal survey range indicating that "Denver firms billed between $285 and $810 per hour for partners and between $170

9
4841-2468-7839

and $530 per hour for associates" were reasonable), *aff'd and adopted by*, 2016 WL 178276 (Daniel, J.). In addition, Mr. Kilroy's 2017 rate of $575.00/hr was determined reasonable by a Colorado district court in El Paso County and his 2018 rate of $585.00 per hour was undisputed and approved by Judge Jackson in a case in this District in 2019.

Considering the skill required to successfully navigate and litigate the many issues raised by Plaintiffs in this case, the prevailing rates in the Denver market, and the experience and ability of the CRC Defendants' lawyers, the Court should find that Snell & Wilmer's hourly rates are reasonable.

**B.   The Hours Were Reasonably Expended**

To demonstrate reasonableness, "[t]he prevailing party must make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Jane L. v. Bangerter*, 61 F.3d 1505, 1510 (10th Cir. 1995) (internal quotations omitted). While courts should approach the reasonableness inquiry "much as a senior partner in a private law firm would review the reports of subordinate attorneys when billing clients," courts may not, however, simply "eyeball the fee request and cut it down by an arbitrary percentage." *Ramos v. Lamm*, 713 F.2d 546, 555 (10th Cir. 1983); *People Who Care v. Rockford Bd. Of Educ., Sch. Dist. No. 205*, 90 F.3d 1307, 1314 (7th Cir. 1996) (internal quotations omitted). Instead, courts consider the following factors: "(1) whether the tasks being billed would normally be billed to a paying client; (2) the number of hours spent on each task; (3) the complexity of the case; (4) the number of reasonable strategies pursued; (5) the responses necessitated by the maneuvering of the other side; and (6) potential duplication of services by multiple lawyers." *Ramos*, 713 F.2d at 554 (internal quotations omitted).

10

The hours expanded by Snell & Wilmer were reasonable, particularly considering the Plaintiffs' conduct, which significantly expanded the scope of the issues the CRC Defendants were forced to address. *See* Kilroy Decl., ¶¶ 18-20. The Li Plaintiffs commenced their action in August 2019. *Id.* The Cui Plaintiffs commenced their action in September 2019. *Id.* Subsequently, on November 19, 2019, the cases were consolidated. *Id.* Over the course of this action, each set of plaintiffs has filed four complaints and there have been more than three hundred filings, over thirty motions (the overwhelming majority of which were instigated by Plaintiffs), and four hearings. *Id*. at ¶¶ 9-15, 18-25.

As this Court knows, these were not routine matters—many of Plaintiffs motions were difficult and required substantial effort by the CRC Defendants to respond to, including requests for sanctions, contempt, disqualification, appointment of a receiver, and injunctive relief. *Id*. at ¶¶ 18-20. Plaintiffs' litigious conduct significantly expanded the scope of issues that the CRC Defendants had to address in this case, contributing to the escalation of attorney fees that the CRC Defendants were forced to incur. *Id*. In light of the complexity of legal and factual issues and the time and effort involved, the requested fees were necessarily and reasonably incurred. *Id*. at ¶¶ 26-28.

### 1. The matter was substantially complex.

This case certainly was complex. The factual and legal issues were challenging, particularly because of the number of parties involved, the large number of filings, the changing nature of complex claims, and the multiple hearings. As this Court has previously noted, some of the filings were not "a model of clarity." ECF No. 271, at 13. The confusing

11

nature of the filings only exacerbated the existing complexities of the case. *See* Kilroy Decl., ¶¶ 18-20.

The Li Plaintiffs commenced their action in August 2019. ECF No. 1. The Cui Plaintiffs commenced their action in September 2019. ECF No. 1 (19-cv-02637). Subsequently, on November 19, 2019, the cases were consolidated. ECF No. 34 (19-cv-02637). Over the course of this consolidated action, each set of Plaintiffs have amended their initial complaints three times. There were several instances where the Plaintiffs failed to follow court protocol, requiring additional amendments and motions and further complicating matters. While the Cui Plaintiffs' complaints and Li Plaintiff's complaints contained some overlapping allegations, they also contained substantial differences. Thus, the CRC Defendants have had to address ever-changing claims against them, increasing the amount of time and work required.

The Li Plaintiffs' original Complaint asserted six direct claims against the CRC Defendants, including complex claims such as alleged federal securities violations and fraud. ECF No. 1. The Li Plaintiffs' First Amended Complaint added three parties to the action and became a direct and derivative action. ECF No. 53. The First Amended Complaint added two claims for rescission of each Plaintiffs' $500,000 investment based on alleged securities violations. *Id*. The Li Plaintiffs' Second Amended Complaint joined an additional plaintiff. ECF No. 86. Finally, the Li Plaintiffs' Third Amended Complaint shifted the nature of the complaint from one containing primarily direct claims to one with primarily derivative claims. ECF No. 121. The Third Amended Complaint included five derivative claims for relief against the CRC Defendants. *Id.* The original direct claims were whittled down to

4841-2468-7839

three direct claims against the CRC Defendants, including a new claim seeking to pierce the veil of CRC I to hold its owners and members liable for fraud, breach of contract, and securities violations. *Id.* The abrupt changes in the nature and number of the Li Plaintiffs' causes of action required the CRC Defendants to devote substantial time to addressing and defending new factual and legal issues.

The Cui Plaintiffs' original Complaint asserted five direct claims against the CRC Defendants, including complex claims such as alleged violations of the Colorado Consumer Protection Act, fraud, and alleged securities violations. ECF No. 1 (19-cv-02637). The Cui Plaintiffs also asserted individual and derivative claims for breach of fiduciary duty. *Id*. The Cui Plaintiffs' First Amended Complaint added no new claims against the CRC Defendants. ECF No. 21. The Cui Plaintiffs' Second Amended Complaint asserted new individual and derivative claims for declaratory relief against the CRC Defendants and added a claim seeking to pierce the veil of CRC I to hold its owners and members liable for fraud, breach of contract, and securities violations. ECF No. 169. Finally, the Cui Plaintiffs' Third Amended Complaint was amended to attach verifications and correct a clerical error. ECF No. 190.

The case also involved substantive motions practice, including briefing related to the Plaintiffs' two motions for injunctions, briefing related to the Plaintiffs' motions to disqualify the CRC Defendants' counsel, briefing related to the Plaintiffs' spurious lis pendens notice, briefing related to recovery of attorneys' fees resulting from the order declaring lis pendens invalid, and briefing related to the CRC Defendants' motion to dismiss. Kilroy Decl., ¶¶ 18-20. In its entirety, there have been more than 300 filings made in these consolidated cases over the course of seventeen months. *Id.* Thus, the Court should find that

13

the fees incurred with respect to these matters were reasonable and necessary under the circumstances.

Additionally, the CRC Defendants prepared for and participated in four hearings before the Court. *Id*. at ¶¶ 21-25. Each of these hearings involved multiple motions and lengthy arguments involving complex and important issues. *Id*. These four hearings involved complex matters and required substantial preparation by the CRC Defendants. *Id*. The Court should find that the fees incurred with respect to these matters were reasonably and necessarily incurred.

### 2. The amount in controversy was significant.

The amount in controversy was significant for all involved. *See id*. at ¶ 19. Li Plaintiffs' Third Amended Complaint sought restitution of the Plaintiffs' investment of $500,000 each plus interest, which totaled $82,500,000. The Cui Plaintiffs' Third Amended Complaint sought compensatory damages not less than the full amount invested by the EB-5 Investors, prejudgment interest at the legal rate since the date the Plaintiffs were entitled to the return of their investment, restitution, and punitive damages. Plaintiffs essentially sought to unwind and renegotiate the terms of an $82,500,000 investment based on allegations of fraud and other tortious conduct. Thus, the attorney fees expended—less than 1% of the amount Plaintiffs sought in this case—are reasonably proportional to the value of the case. *Id*.

### 3. The matter was reasonably staffed for a litigation of this size.

This matter was reasonably staffed for a complex business and securities matter of this size. *See id*. at ¶ 26. The primary staffing ratio was one senior partner and one senior

14

associate (now junior partner), and one paralegal, with assistance from time to time from junior associates and one junior partner. *Id*. To the extent possible, the majority of day-to-day tasks, briefing, discovery issues, and preparation of final hearing materials were performed by the senior associate and paralegal with oversight from the managing partner. *Id*. Only two attorneys and one paralegal represented the CRC Defendants at the hearings, and each had an active role. *Id*.

### 4. The CRC Defendants obtained a favorable result.

All can agree that this was hard-fought litigation and the CRC Defendants obtained a favorable result—complete dismissal of all claims brought by all Plaintiffs pursuant to Rule 12(b). *See generally* ECF No. 271. The CRC Defendants also succeeded in their efforts along the way. Including the success on its motion to dismiss, the CRC Defendants were successful in all substantive motions addressed at the four hearings. The major victories for the CRC Defendants include having Plaintiffs' motions for injunctions denied, the notice of lis pendens stricken and attorney fees awarded, Plaintiffs' motion for appointment of receiver denied, and Plaintiffs' various motions for sanctions, contempt, and/or to disqualify denied.

Considering all of the relevant factors and the circumstances of this case, the Court should find that the amount of fees requested by the CRC Defendants is reasonable.

## CONCLUSION

The CRC Defendants respectfully request the Court grant this Motion and award the CRC Defendants attorney fees incurred in connection with this litigation in the amount of $390,056.25 as to the Li Plaintiffs and $148,569.25 as to the Cui Plaintiffs.

///

DATED: March 16, 2021.

*/s/James D. Kilroy*
James D. Kilroy
Stephanie A. Kanan
SNELL & WILMER L.L.P.
1200 Seventeenth Street, Suite 1900
Denver, CO 80202-5854
Phone: (303) 634-2000
Fax: (303) 634-2020
Email:  jkilroy@swlaw.com
Email:  skanan@swlaw.com

***Counsel for Defendant Colorado Regional Center I, LLC***

16

**CERTIFICATE OF SERVICE**

  This is to certify that on March 16, 2021, a true and correct copy of the above and foregoing document has been electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record:

Douglas Litowitz
413 Locust Place
Deerfield, IL  60015

Hubert Kuo
Brian P. Stewart
Ardent Law Group
4340 Von Karman Avenue, Suite 290
Newport Beach, CA  92660

Harold A. Haddon
Ty Gee
Haddon Morgan and Foreman, P.C.
150 East 10th Avenue
Denver, CO  80203

            */s/Sandy Braverman*
            for Snell & Wilmer L.L.P.

# DECLARATION AND EXHIBITS FILED AS RESTRICTED