## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-02443

Jun Li, Qi Qin, Yi Liu, Jie Yang, et al.
    Plaintiffs,

                   Hon. Judge Moore
    v.                Hon. Magistrate Varholak

Colorado Regional Center Project Solaris LLLP,
Colorado Regional Center I, LLC, et al.
    Defendants.

## Li Plaintiffs' Response to CRC Defendants'
## Motion for Attorney Fees [ECF 274]

The CRC Defendants have moved for an award of attorney fees, citing Fed. R. Civ. P. 54 and a Colorado statute that applies solely to **_tort actions_** which are **_finally_** dismissed **_by the defendant's own motion_**:

> In all actions . . . occasioned by the tort of any other person, where any such action is dismissed on motion of the defendant prior to trial under rule 12(b) of the Colorado rules of civil procedure, such defendant shall have judgment for his reasonable attorney fees in defending the action. Colo. Rev. Stat 13-17-201.

There are 3 elements required for recovery of attorney fees under Rule 54 and this statute: (1) a "tort action," (2) "dismissed on motion of the defendant," (3) which is a "final" judgment.

Here, all 3 elements are unsatisfied. The Li Plaintiffs will start by explaining the *current* failure of elements #2 and #3, and then show that element #1 can *never* be satisfied since this is not a "tort action" because only 1 count out of 5 was styled as a 'tort,' while the remaining counts and the counterclaim are contractual.

I. **The Court Hasn't Decided Whether the CRC Defendants Were Dismissed under a "Motion of the Defendant" so a Fee Award is Premature**

The attorney fees statute only applies when a tort action is dismissed under Rule 12(b) on a motion of the defendant. The statute does not apply to dismissals made *sua sponte* by the Court, nor on motions from other parties, nor dismissals under a different rule than Rule 12(b).

The Court is now hearing briefs whether to dismiss the case under Rule 12(h)(3) for lack of subject matter jurisdiction. It raised this issue *sua sponte* in its opinion and requested briefing [ECF 271: 51-55]. If this happens, the statute will not apply because dismissal would not be the result of a Rule 12(b) motion by the defendant.

Further, the Court is hearing briefs on the Li Plaintiffs' Motion to Dismiss under Rule 12(b)(1) [ECF 272]. If it grants this motion, then the statute will not apply because the dismissal would not be the result of a motion by the *defendant*.

Until the Court makes a final decision whether to dismiss, and states the grounds for such dismissal, the CRC Defendants cannot say definitively that the case was dismissed under their Rule 12(b) motion. This element cannot be satisfied at present.

II. **There is No Final Order as Required by Rule 54**

Fed. R. Civ. P. 54(d)(2)(B) provides that attorney fees can be sought only after a *final judgment*: "Subparagraph B provides a deadline for motions for attorney fees - 14 days after final judgment . . [to] afford an opportunity for the court to resolve fee disputes shortly after trial." *Notes of Advisory Committee on Rules - 1993 Amendment*. But there has not been a trial nor a final judgment, nor is there likely to be a final judgment for a long time. This is because Rule 54(b) says that when a case involves multiple parties and claims, a ruling as to fewer than all parties and

claims is presumptively nonfinal unless the court decides to certify the ruling as final by making a specific finding that there is "no just reason for delay" on certifying it as final:

> (b) *Judgment on Multiple Claims or Involving Multiple Parties*. When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, **the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.** Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities. (emphasis added).

This Court's opinion at ECF 271 is a mixed bag: it dismissed claims against the CRC Defendants but kept them in the case as a Counterclaim Plaintiff; it allows the Plaintiffs to proceed with breach of contract claims against the borrower SPOI (claims which should have been brought by CRCI, as explained below); it keeps alive the issue of CRCI's removal as general partner; and it allows repleading of the issue of receivership to oust CRCI. This keeps CRCI involved in the case, so the current opinion is not presumptively final under Rule 54(b).

Rule 54(b) makes interim rulings presumptively nonfinal for a good reason. Complex cases with multiple parties and multiple claims typically have a lot of finger-pointing in different directions and can take twists, turns, and reversals as they move through discovery to trial. A party can be dismissed on some claims and then brought back on different claims. New claims can be asserted, pleadings can be amended, and the whole thing can be affected by discovery. So in a complex and fluid situation there is no point in declaring premature finality. Rule 54(b) gives the Court a chance to set an interim but revisable decision to bring some initial order to the case, on its way toward reaching a final decision on all parties and claims. This is the recommended course under Rule 54(b) to avoid piecemeal litigation. The Federal Rules of Civil Procedure contemplate

that when a court is faced with a multiparty case with all sorts of claims and crossclaims and counterclaims, a ruling is presumptively nonfinal until the Court has finally decided the whole matter as to everyone and everything.

CRC is not some innocent bystander who was surreptitiously named in this case: they are a linchpin of the case and will be involved all the way to the very end. The Chinese Plaintiffs trusted CRCI as general partner to manage their $82.5 million dollars invested in CRCPS. CRCI loaned out all the Chinese money to SPOI at 5% interest in a 5-year loan payable by collateral in years 3-5 and thereafter only in cash. CRCI did not call the loan at maturity, and even years after the loan was due, CRCI continued to collect management fees while refusing (and still refusing) to demand repayment in cash. They have done nothing meaningful as manager, claiming instead that they are powerless under the law to sue SPOI for repayment in cash -- a claim this Court just refuted in its opinion. Even now, CRCI refuses to bring suit for CRCPS against SPOI even though the Court says that CRCPS has a colorable claim against SPOI. CRCI is not merely ineffective as general partner to advance the interests of CRCPS, they are wholly destructive of CRCPS' interests. Instead of bringing the claims that the Plaintiffs now have to bring derivatively, CRCI waited until four years after maturity of the loan (December of 2020) and passively allowed the borrower SPOI to transfer back the collateral titles many years too late, for an unnamed sum and for an unnamed value since CRCI refuses to conduct an appraisal. Even while telling investors that it could never collect the loan, CRCI was having its tax preparer file tax returns with the IRS saying that as late as December 2019 (after this case started) that CRCPS was still owed $82.5 million in a Note Receivable -- in other words, they told the IRS the exact opposite of everything they have told this Court in their filings, which borders on perjury. CRCI's performance was so abysmal that over 70-plus percent of the limited partners voted to remove them for incompetence and mismanagement. Meanwhile they rewarded themselves to the tune of roughly $20 million and

4

counting for their unprecedented ability to lose other people's money. In the face of losing 50% of the assets they were supposed to manage, and in the face of an investor revolt, they insist before this Court that they must remain as the general partner *for the best interests of CRCPS* -- the company whose assets they just destroyed and whose owners hate them. The issue of who runs CRCPS is still open, and CRC is involved in t*hat* controversy, which could result in fees against CRCI for refusing to step aside after being properly removed and for accepting repayment in collateral after the deadline allowed in the loan documents. Furthermore, the issue of receivership to oust CRCI was not dismissed with prejudice and may be repleaded. CRCI's involvement in this case is nowhere near 'final.

The lack of finality will become glaringly obvious as soon as the Plaintiffs start demanding SPOI to repay the loan in cash. SPOI will defend by putting the blame back on CRCI and likely interpleading them as a third-party defendant, using the excuse that CRCI was the cause of SPOI's nonpayment in cash, for example because CRCI waived repayment in cash, or that CRCI agreed to take collateral instead of cash, or that CRCI itself breached the Loan Agreement and nullified SPOI's repayment obligation. Any of these claims would bring CRCI right back into this case as a third-party defendant.

In short, this case involves so many parties, claims, counterclaims, and crossclaims that it would be folly for this Court to deviate from the Rule 54 presumption that interim rulings are presumptively nonfinal.

But even if the Court finds that its opinion is final and that dismissal of the CRC Defendants was due to their Rule 12(b)(6) motion, it still doesn't matter because this is not a tort action.

5

III. **This is Not a "Tort Action" Under the Colorado Statute because the Case is Less Than 20% Tort, Far Below 'Tort Predominance'**

The Colorado attorney fees statute only applies when a case is "primarily a tort action," *U.S. Fax Law Ctr., Inc. v. Henry Schein, Inc.*, 205 P.3d 512, 517 (Colo. App. 2009)(statute applied because only tort claims were alleged), citing *Dubray v. Intertribal Bison Coop.*, 192 P.3d 604, 607 (Colo. App. 2008)(statute applied when six of eight claims were torts); *Luskin Daughters 1996 Tr. for benefit of Ackerman v. Young*, 448 P.3d 982, 987 (Colo. 2019)(statute applied when the only claims were based on trespass and diverting water).

When a complaint is a hybrid of contract and tort claims, the court must determine whether the "essence" of the case lies in contract or tort. *Castro v. Lintz*, 338 P.3d 1063, 1068 (Colo. App. 2014). A case's essence (contract or tort) is determined by the *plaintiffs'* characterization of their claims and not what should or might have been pled. *Id.* at 1067-8; *Sweeney v. United Artists Theater Circuit*, 119 P.3d 538 (Colo. App. 2005)(suit by injured moviegoer for falling roof pieces was pled as breach of contract and not as a premises tort, so the statute was not triggered); *Robinson v. Colo. State Lottery Div.*, 179 P.3d 998, 1010 (Colo.2008)(claim against the lottery was pled as a breach of contract, so the statute was not triggered). In *Robinson*, the Colorado Supreme Court warned that courts should not recharacterize the plaintiff's characterization of his claims by saying that they *could* lie in a tort theory, but instead should rely on the plaintiff's own language. In making this determination, the court should narrowly construe the statute against the party seeking fees. *Jones v. Haga*, 2007 WL 433126 at *2 (D. Colo. Feb. 2, 2007)("The statute has been narrowly construed by courts interpreting it.")

Both parties agree that the first task of a reviewing court is to discern the "essence" of the case. Under the "essence" test, this is clearly a contract case. The Plaintiffs are in contractual privity with CRCI under the LP Agreement. CRCI breached the express fiduciary provisions of

6

the LP Agreement -- specifically §8.04/8.06 -- by failing to bring suit against SPOI for breach of the Loan Agreement between CRCPS and SPOI.

Counsel has just described the essence of this case in purely contractual terms without reference to any tort: it is a breach of one contract (the LP Agreement) by not enforcing the breach of a second contract (the Loan Agreement). Nowhere in this description is there any mention of a tort.

The CRC Defendants urge a "predominance" test, citing *Gagne v. Gagne*, 338 P.3d 1152, 1168 (Colo. App. 2014), whereby a court then makes a quantitative analysis of the counts to see if there is a majority of contract or tort claims [ECF 274: 4]. Here are the Li Plaintiff disputes that were heard by the Court:

| | | |
|---|---|---|
| Count I: | Breach of Partnership Agreement and LP statute (**contractual provisions mirrored in partnership statute**) | |
| Count II: | Civil Theft (**statutory tort**) | |
| Count III: | Breach of Loan Agreement by SPOI (**contract**) | |
| Count V: | Federal Securities Law (deceit based on investment **contract**) | |
| Count VI: | Colorado Securities Law (deceit based on investment **contract**) | |
| Counter: | Removal of CRCI per Partnership Agreement (**contract**) | |

It is shocking - almost sanctionable - that CRCI can look at this chart and begin their motion by asserting flatly and without qualification, "The Li Plaintiffs initiated this *tort action*" [ECF 274:2](emphasis added). In point of fact, only a single count was designated as a tort.

Count I (which should be reinstated, per below) was stated as a breach of fiduciary duty 'by contract and statute,' and cited the specific contractual provisions of the LP Agreement that

7

were breached (sections 8.04 and 8.06). The claim was 'statutory' only in the narrow sense that the contractual duties in the LP Agreement were mirrored in the Colorado partnership statutes which provide that general partners have a duty to act with business judgment and safeguard the partnership's assets. This is the precise situation that happened in *Sweeney*, 119 P.3d at 541, where the Plaintiff moviegoer was hit by a piece of falling ceiling and chose to plead it as a contract breach instead of a tort while also saying that the movie theater's contractual duties were mirrored in the Colorado statute for premises liability. The contract claim was dismissed because the court found a 'license' instead of a 'contract.' The court's analysis of 13-17-201 was that it was obligated to follow the plaintiff's decision to sue under contract, and therefore the attorney fees statute did not apply. The same is true here where Court I cites chapter and verse of where the fiduciary duties are located in the contract.

The CRC Defendants mislead this Court by asserting that *all* fiduciary breaches are based in tort, citing a case that involved a non-contractual tort of theft, namely *Castro*, 338 P.3d at 1069, and ignoring decisions where courts held that fiduciary duties arose from contracts. *Casey v. Colorado Higher Ed. Ins. Benefits Alliance Trust*, 310 P.3d 196, 202 (Colo. App. 2012)("We conclude that trust agreements are the source of the trustees' fiduciary duty described in the employees' breach of contract claim.") The courts in Delaware, experts on the law of business entities, refer to *contractually created fiduciary duties*: "In this appeal, we hold that a limited partnership agreement may provide for contractually created fiduciary duties substantially mirroring traditional fiduciary duties that apply in the corporation law." *Gotham Partners L.P. v. Hallwood Realty Partners, L.P.*, 817 A.2d 160, 163 (Del. 2002). That puts the lie to CRCI's claim that all fiduciary breaches are torts; in reality, breaches of fiduciary duties can be brought as contracts or torts, or (as in this case) as predominantly a contract claim that is mirrored in a statute.

In such cases, the claim retains its status as one of contract, and the attorney fees statute does not apply.

The same goes for Count III, which expressly says that SPO *breached its contract* with CRCPS by not repaying in cash.

The Counterclaim is about whether the Li Plaintiffs complied with or breached the LP Agreement in their removal of CRCI. So that is contractual as well.

What about the securities counts (Counts V and VI) -- are they torts or contracts? The CRC Defendants do not - and cannot - cite any authority saying that securities counts are *torts*, for the basic reason that securities are by nature "investment *contracts*":

> In other words, an investment contract for purposes of the Securities Act means a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party,

*SEC v. Howey,* 328 U.S. 293, 298-9 (1946). This is precisely the situation here: the Li Plaintiffs invested money into CRCPS as a common enterprise with the expectation of profit to be derived from the efforts of others, namely CRCI. See, also, 15 U.S.C. 77b(a)(1)(the definition of "securities" includes "puts' and "investment contracts").

According to the Supreme Court, there is an irreducibly contractual aspect of securities claims that makes them different from torts:

> Section 10(b) does not punish deceptive conduct, but only deceptive conduct "in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered." 15 U.S.C. § 78j(b). See *SEC v. Zandford,* 535 U.S. 813, 820, 122 S.Ct. 1899, 153 L.Ed.2d 1 (2002). **Those purchase-and-sale transactions are the objects**

9

> **of the statute's solicitude.** It is those transactions that the statute seeks to "regulate," see *Superintendent of Ins. of N.Y. v. Bankers Life & Casualty Co.,* 404 U.S. 6, 12, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971); it is parties or prospective parties to those transactions that the statute seeks to "protec[t]," *id.,* at 10, 92 S.Ct. 165. See also *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 195, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976).

*Morrison v. National Australia Bank Ltd.*, 561 U.S. 247, 266-7 (2010)(emphasis added). In other words, securities laws protect parties to an actual or prospective contract. *Id.* at 267; *Holdsworth v. Strong*, 545 F.2d 687, 694 (10th Cir. 1976)(recognizing separate claims under 10b-5 and common law fraud, saying they are merely "analogous"); *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 341-2 (2005)(noting that securities claim resemble but are not identical to tort actions).

Had they chosen to do so, the Li Plaintiffs could have pleaded the securities violations as pure common law torts, but they chose to make them contract based claims. That characterization must be respected.

The Li Plaintiffs assert that there were two separate offerings of investment contracts: one for LP units under a Subscription Agreement and an LP Agreement (which are *investment contracts*) and a second offering of "puts" and "put exercise notices" (which are *investment contracts*). The remedies sought by the Li Plaintiffs are *contractual* remedies just like any person who buys something by contract. The Colorado Securities Act (the basis for Count VI) says that the remedy for violation is to simply undo the transaction or else sue for contract damages: the buyer of the security can return the security to the seller for the original price, or if the seller refuses to take it back, the buyer can sue to cover the loss. Colo. Rev. Stat. 11-51-604(1) & (9)(II). These are the same remedies you would find in a contract claim for, say, a lawnmower that doesn't start. The buyer can return the lawnmower to the seller for the original price that he paid, or if the seller refuses to return the original price, the buyer can sue for the loss. This differs completely from a

*tort* analysis where, say, a lawnmower repeatedly butchers its owners or fails to properly trim only the edges of the lawns, in which case damages are not measured by the contract price.

The federal securities law count (Count V) also escapes the attorney fees statute due to federal preemption: the Colorado attorney fees statute is preempted whenever a federal statute has its own scheme for a defendant's attorney to recover fees. This is why the Colorado attorney fees statute cannot apply to claims under §1983, since that statute has its own fee mechanism for defendants at §1988. *General Steel v. Denver/Boulder Better Bus. Bur.,* 2009 WL 1292780 at *2 (D. Colo. May 8, 2009), quoting *State v. Golden's Concrete Co.*, 962 P.2d 919, 926 (Colo. 1988)("Thus, we hold that §1988 preempts the operation of section 13-17-201"). The same preemption would obtain with regard to a federal securities claim, because defendants can get attorney fees under the federal securities laws per 15 U.S.C. 78u-4(c)(3).

The CRC Defendants' deceptively suggest that the Colorado attorney fees statute applies to *all* federal claims. This is wrong: it applies only to federal claims if the federal law is silent on whether a defendant can recover attorney fees. *Snyder v. Acord Corporation*, 811 Fed. Appx. 447, 464 (10th Cir. 2020)(leaving unanswered the question of whether 13-17-201 was preempted by RICO and Clayton Act, relying instead on state law torts to trigger the statute). The CRC Defendants are simply wrong to elide over the issue of federal preemption, and they are wrong to assume that a federal securities claim falls under the statute.

Where does that leave us?

To recap, 5 out of 6 issues before this Court were contractual in nature, while one issue (civil theft) was a tort. So much for the "essence" and "predominance" tests. This is simply not a tort action.

Finally, the purpose of the Colorado statute is to deter unnecessary litigation involving tort claims. *Monell v. Cherokee River, Inc.*, 347 P.3d 1179, 1184 (2015). This instant case is hardly "unnecessary litigation" brought into Colorado. To the contrary, this litigation is due to the mismanagement and ineptitude of Colorado residents and entities against outsiders. In this case, it is not Coloradans that need protection from greedy lawyers asserting mass torts, but it is foreigners who need protection from Colorado residents who squandered and took their money with broken contracts. There is no reason to invoke a statute designed to prevent claims of mass torts (like tobacco and pollution) in a situation that is 80% contractual.

**IV. Dismissal of Count I against CRCI was a Logical Oversight in the Court's Ruling, so Correction of that keeps CRCI as a Defendant, obviating the Attorney Fees Statute since there will be no Dismissal of CRCI.**

This Court should invoke its prerogative under Rule 54(b) to amend its ruling at ECF 271 to correct a logical inconsistency and retain CRCI as a defendant, thereby nullifying the dismissal of the CRC Defendants.

This logical contradiction is this: by upholding Count III, this Court said that CRCPS stated a colorable claim against SPOI for breach of the Loan Agreement, and that the claim can be asserted *derivatively*. A necessary corollary of is that when the derivative demand was made on CRCI to bring the lawsuit they should have proceeded to sue SPOI *directly*, and their refusal to do so was wrongful and a fiduciary breach since they missed/passed on an opportunity to safeguard the assets of CRCPS (as alleged in Court I). Here are the key allegations in the Third Amended Complaint:

> ¶107. By letter dated July 1, 2019, attorney Litowitz made a formal demand on CRCPS to notify CRCI to take action against third parties to collect the full $82,500,000 plus interest owed to CRCPS and

> distribute it to the limited partners, and warning that the limited partners would bring a derivative claim to enforce CRCPS' rights against CRCI.
>
> ¶108. By letter dated August 13, 2019 from attorney James Kilroy, CRCPS declined to take action.
>
> ¶109. CRCPS did not refer the matter to a Special Litigation Committee.
>
> ¶124. CRC has failed to collect - or even attempt to collect - the full amount of the $82.5 million loan by bringing suit against SPO/SPOI . . .

CRI's refusal to pursue a meritorious claim for CRCPS is known as "wrongful refusal" and a violation of fiduciary duties.

In fact, CRCI was in no position to fashion *any* response of any kind to the derivative demand to sue SPOI since they had a conflicting financial interest: they were getting paid for each year that the loan was outstanding, so they had a disincentive to call the loan for immediate payment. Due to this conflict, CRCI had an obligation to appoint a Special Litigation Committee (SLC) of unconflicted persons to decide the matter, which they failed to do. Their lawyers are not disinterested independent parties either, since they stand to gain from denial of the demand and the subsequent litigation (hence this outrageous request for attorney fees).

Normally, management decisions to pursue or reject a derivative demand are judged by the business judgment rule which contains a presumption that the manager acted with due care. *Gubricky on behalf of Chipotle Mexican Grill, Inc. v. Ellis*, 2018 WL 1621166 at *6 (D. Colo. Apr. 4, 2018)(The decision to refuse a shareholder demand is subject to the business judgment rule.).

But the business judgment rule doesn't apply when a management decision is conflicted, *Rich ex. rel. Fuqi Intern., Inc. v. Yu Kwai Chong*, 66 A.2d 963 (Del. Ch. 2013). A finding of

wrongful refusal can be found at any time by the court (even 'ex post') if it turns out that management's decision was not made by a disinterested independent committee. *City of Taramac Firefighters Pension Trust Fund v. Corvi*, 2019 WL 549938 at *7 (Del. Ch. Feb. 12, 2019). Thus CRCI does not get the protection of the business judgment rule since it did not use a Special Litigation Committee and instead passed judgment on a derivative demand in which it was conflicted.

Since the late 1980s at least, courts in Colorado have advised managers to use Special Litigation Committees to make final decisions if the managers have a conflict. *Greenfield v. Hamilton Oil Co.*, 760 P.2d 664, 668 (Colo. App. 1988). The Special Litigation Committee must be above reproach, totally unconflicted, and without allegiance to the manager or the company. *Day v. Stascavage*, 251 P.3d 1225, 1229 (Colo. App. 2010). CRCI did not follow this ordinary protocol: it simply refused to enforce the Loan Agreement against SPOI and continued to collect management fees. There is no excuse for skipping this step, which the Colorado Supreme Court describes as ordinary and normal. *Hirsch v. Jones Intercable, Inc.*, 984 P.2d 629, 637 (Colo. 1999)("The decision regarding whether to [bring or] dismiss the suit is ordinarily delegated to a special litigation committee (SLC) formed of individuals independent of those charged with the wrongdoing . . .That decision is subject to review by a court").

A finding of "wrongful refusal" is warranted here, since CRCI had a duty to safeguard the assets of CRCPS: "Unquestionably, the general partners of a limited partnership owes direct fiduciary duties to the partnership and to its limited partners," *Wallace ex rel. Cencom Cable Income Partners II, Inc. LP v. Wood*, 752 A.2d 1175, 1180 (Del. Ch. 1999).

This Court can recognize CRCI's wrongful refusal by simply reinstating Count I (breach of fiduciary duty by CRCI in not suing SPOI directly) to align with Count III (allowing CRCPS to

sue SPOI derivatively). As the opinion now stands, the dismissal of Count I is disconsonant with the upholding of Count III, and this asymmetry must be corrected.

**Conclusion**

This action is not final, it has not been dismissed by motion of the defendant, and even worse, it is not even a tort action. Thus it falls outside the Colorado attorney fees statute.

Furthermore, Count I should be reinstated to harmonize with Count III, meaning that the CRC Defendants should not be dismissed in the first place, an independent reason that the attorney fees statute should not be triggered.

WHEREFORE, the Li Plaintiffs ask this Court to deny the CRC Defendants' motions for attorney fees and costs, and to amend the Court's ruling at ECF 271 to note that the derivative demand of the Li Plaintiffs was wrongfully rejected and that Count I therefore states a claim for breach of contractual fiduciary duty in wrongful denial of a derivative demand that would benefit the limited partnership.

**NOTE: THIS IS A RESPONSE TO ANOTHER PARTY"S MOTION AND DOES NOT WAIVE THE LI PLAINTIFFS' CLAIM THAT THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER THIS CASE.**

Dated: March 22, 2021                                        Respectfully Submitted,

/s/ Douglas Litowitz
413 Locust Place,
Deerfield, IL 60015
312-622-2848
Litowitz@gmail.com

**Certificate of Service**

This document was filed on the ECF system for the District of Colorado on March 22, 2021.