IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-02443

Jun Li, Qi Qin, Yi Liu, Jie Yang, et al.
        Plaintiffs,

        v.

Hon. Judge Moore
Hon. Magistrate Varholak

Colorado Regional Center Project Solaris LLLP,
Colorado Regional Center I, LLC, et al.
        Defendants.

## Li Plaintiffs' Motion for Reconsideration: Request to Reinstate Count I of the Third Amended Complaint

**STATEMENT OF CONFERRAL PER D.C.COLO.LCivR 7.1: the Li Plaintiffs have conferred with the CRC Defendants (the only ones directly impacted) and notified the other lawyers. The CRC Defendants oppose this motion.**

Under Fed. R. Civ. P. 54(b), a non-final decision of a district court "may be revised at any time before the entry of a judgment." This is typically accomplished through a motion for reconsideration, which will succeed when "the original order is clearly erroneous." *Bowe v SMC Elec. Products, Inc.*, 945 F.Supp. 1482, 1483 (D. Colo. 1996), quoting *Major v. Benton*, 647 F.2d 110, 112 (10th Cir. 1981)("When a lower court is convinced that an interlocutory ruling it has made is substantially erroneous, the only sensible thing to do is to set itself right to avoid subsequent reversal."). Here, the Court's ruling at ECF 271 contains clearly erroneous misunderstandings and misapplications of law in its dismissal of Count I of the Li Plaintiffs' Third Amended Complaint ("Breach of Fiduciary Duty Arising by Contract and Statute against CRCI"). As a remedy, Count I must be reinstated to avoid a reversal on appeal.

**Error #1: The Court Misunderstands and Misapplied the Economic Loss Rule**

The 'economic loss rule' promotes judicial economy by allowing a Court to strike a common law tort claim that is "dependent" on an underlying contract claim. The rule does not apply to "independent" torts, nor can it be used to dismiss the underlying contract claim. This Court's ruling at ECF 271 broke both of these basic rules: it used the economic loss rule to dismiss an independent statutory claim **and** to dismiss an underlying contract claim. The Court said, "Indeed, the entire claim, as pled, is barred by the economic loss rule." [ECF 271: fn. 53]. This is wrong and will be easily reversed if left unfixed.

In 2019, Colorado law changed the economic loss rule to designate statutory breaches as 'independent' causes of action that are not 'dependent torts.' *Bermel v. BlueRadios, Inc.*, 440 P.3d 1150 (Colo. 2019)(economic loss rule cannot apply to a claim under the civil theft statute because statutory claims are inherently *independent* of any underlying contract). In *Bermel*, the Colorado Supreme Court said: "Even if the economic loss rule serves a laudable goal, it is not this court's place to substitute the judiciary's policy judgments for those of the General Assembly." *Id.* at 1185; accord *McWhinney Centerra Lifestyle Center LLC v. Poag & McEwen Lifestyle Centers*, 2021 WL 126572 at *12 (Colo. App. Jan. 14, 2021)("In *Bermel*, the supreme court held that the economic loss rule did not bar a tort claim where a state statute created a cause of action."). Here, the Court erred by mischaracterizing the statutory claim in Count I as a dependent tort when it was an independent statutory cause of action.

The Court compounded this error by also dismissing the underlying *contract* claim under the economic loss rule. That simply cannot happen: striking a contract claim is not something that the economic loss rule can do.

Count I contained a stand-alone contract claim against CRCI for breaching §8.04/8.06 of the LP Agreement. In Colorado as elsewhere, the breach of *contractual* fiduciary duties is a *contract* claim, not a *tort* claim -- so it cannot be dismissed under the economic loss rule. *Casey v. Colorado Higher Ed. Ins. Benefits Alliance Trust*, 310 P.3d 196, 202 (Colo. App. 2012)("We conclude that trust agreements are the source of the **trustees' fiduciary duty** described in the employees' **breach of contract** claim."). Courts in Delaware - the Mecca of business entity law - refers to these contractual provisions as *contractually created fiduciary duties*: "In this appeal, we hold that a limited partnership agreement may provide for contractually created fiduciary duties substantially mirroring traditional fiduciary duties that apply in the corporation law." *Gotham Partners L.P. v. Hallwood Realty Partners, L.P.*, 817 A.2d 160, 163 (Del. 2002). If a contract contains fiduciary duties, the breach of those duties is a matter of *contract*, not tort, and it cannot be touched by the economic loss rule.

After these two reversible errors, the Court decided to set aside eons of partnership law to assert without precedent that a general partner owes fiduciary duties only to limited partners but not to *the partnership itself* [ECF 271:28], and for this reason CRCPS cannot state a claim that general partner CRCI breached fiduciary duties owed to it. This conclusion runs contrary to the contract before the Court and contrary to the Colorado statute. Again, it is easily reversible.

First, the LP Agreement actually states in black and white that the general partner has duties running *to the partnership itself*:

> 8.01: "The scope of the General Partner's power and authority shall encompass all matters connected with or incident to the business of the Limited Partnership . . ."
>
> 8.04: "In carrying out their duties and exercising their powers hereunder [for the Limited Partnership, see §8.01 above], the

3

> general partner shall exercise reasonable skill, care, and business judgment."
>
> 8.06: "The General Partners shall have a fiduciary responsibility for the safekeeping and use of all the funds and assets of the Limited Partnership."

So CRCI contractually bound itself to being a fiduciary to the Limited Partnership itself in the exercise of its powers and in the safekeeping of funds and assets of the Limited Partnership. This language alone allows CRCPS to sue CRCI for breach of contractual fiduciary duties.

The Colorado statutes say the same thing. The starting point is Colo. Rev. Stat. 7-62-403(1) which says that a general partner in a limited partnership has the same obligations as a general partner in a general partnership. This takes us to the GP statute which says that general partners are "agents" of the partnership itself (of course, "agents" have fiduciary duties) and further says that a general partner "shall discharge the partner's **duties to the partnership** and the other partners and exercise any rights consistently with the obligation of good faith and fair dealing." Colo. Rev. Stat. 7-64-301(1)(a), 7-64-404(3)(emphasis added). See, also, Hess, Colorado Practice Series §3:24 (June 2020)(emphasis added)("A partner must discharge the partner's duties **to the partnership** and the other partners" -- citing the duties of disclosure, loyalty, compliance, good faith and fair dealing, and the duty of care). It is Hornbook law that general partners owe fiduciary duties to the partnership itself: "General partners owe the highest fiduciary duties of loyalty, care, fairness, and honesty **to the limited partnership** and the limited partners."  Callison & Sullivan, Partnership Law and Practice §22:8 (Oct. 2020 Update)(emphasis added).

This means that the Li Plaintiffs were perfectly correct in Count I to assert that CRCI has statutory fiduciary duties to CRCPS as an entity as well as to the limited partners. The Complaint clearly alleges that CRCI committed a series of actions that harmed CRCPS and all shareholders equally, principally (but not only) by failing to pursue repayment in cash or a judgment against the

4

debtor SPOI.  The right to sue in the name of the limited partnership for a judgment is specifically countenanced in the LP statute: "A limited partner may bring an action **in the right of the limited partnership** to recover a judgment in its favor." Colo. Rev. Stat. 7-62-1001(1)(emphasis added).

If the Court is saying that a breach of fiduciary duty action cannot be brought derivatively but only directly, then it is flat wrong.  For example *Tisch v. Tisch*, 439 P.3d 89 (Colo. App. 2019) was a derivative claim for breach of fiduciary duty.  The *Tisch* Court said that the test for whether a claim can be brought directly or derivatively has to do with where the harm was felt: if it was felt at the entity level and thus by all shareholders equally, then the claim is derivative.  *Id.* at 105.  Here the harm of mismanagement and breach of fiduciary duty was done to the entity CRCPS, so a derivative suit will lie.  Thus the Court erred by saying that CRCPS does not have a claim against CRCI for breach of fiduciary duties, when in fact it stated a claim under *both* contract *and* statute.

### Error #2: The Court Misunderstands and Misapplied The Contemporaneous Ownership Rule

For some obscure reason, this Court was seduced into applying the irrelevant "contemporaneous ownership rule" to this dispute.  The Court acknowledged that a lot of the Li Plaintiffs' allegations in Count I took place after the Li Plaintiffs were already limited partners, so its conclusion was cryptic: "these post-investment allegations are not subject to dismissal on this basis." [ECR 271: 27].  The Li Plaintiffs literally have no idea what that means. However, the negative implication of this is that the pre-investment wrongdoing must be dismissed under the contemporaneous ownership rule.  This is a misapplication of the rule, since it does not have anything to say about pre-investment wrongdoing, but is only concerned with the transfer of a security post-wrongdoing.

5

The contemporary ownership rule has zero application to the **original** owners of a security who keep it continuously from the date of issuance. The rule applies only to **subsequent** purchasers or takers. It was designed to prevent a subsequent purchaser from 'buying litigation,' that is, to prevent an opportunistic attorney from purchasing stock and then suing for wrongdoing that happened previously. *Cadle v. Hicks*, 272 Fed. Appx. 676, 679 (10th Cir. 2008)("[The] principal purpose of the contemporaneous ownership provision is to prevent potential plaintiffs from purchasing a lawsuit"); *Noland v. Barton*, 741 F.2d 315, 317 (10th Cir. 1984)(barring *subsequent* purchasers because "no shareholder owned stock during the time of the alleged mismanagement."); *Brambles USA, Inc. v. Blocker*, 731 F. Supp. 643, 648 (D. Del. 1990)("A primary purpose of the contemporaneous ownership requirement is to curtail strike suits by prohibiting potential plaintiffs from buying into a lawsuit through the purchase of shares of stock in a corporation after an alleged wrong has occurred"). The only other time the rule comes into play is when shares are transferred involuntarily due to death or divorce and the court must decide if the cause of action travels with the shares. Otherwise, there is no reason to invoke the rule at all.

To solve the problem of opportunistic lawyers 'buying litigation,' the Federal Rule of Civil Procedure added Rule 23.1 which requires a plaintiff to swear that he has owned the security continuously and did not buy it solely to bring a derivative action. This was done here. Also, the Third Amended Complaint alleges that the Li Plaintiffs have been security holders through all of the alleged wrongdoing. That should end the analysis. It is really that simple.

In fact, Wright and Miller call the issue of contemporaneous ownership "a light burden" and make a comment that, "it is not surprising that there are very few cases dealing with [it]". 7C Wright, Miller & Kane, Federal Practice and Procedure §1828 (3rd ed. 2020). The Li Plaintiffs

6

have met this light burden. Since there are no subsequent buyers of the LP units in this case, it is (or rather, should be) a total non-issue.

Yet for some inscrutable reason, this Court has blown up this miniscule technical pleading requirement into an automatic meat axe that plows down everything in its path.

As noted above, the rule only applies *forwards* to the issue of whether *subsequent* holders can bring suit for a wrong that happened when a previous person owned the security: that is, it only applies when purchaser #1 holds the security through wrongful behavior and then sells the security to purchasers #2, #3, #4 and so on. This Court has taken upon itself to use the rule in reverse, that is *backwards*, to say that purchaser #1 is barred from asserting claims of wrongdoing since the wrongdoing occurred during purchaser #0. There is no warrant for applying this rule backwards, as the only case cited by CRCI was a case applying the statute **forwards** question whether the plaintiffs owned stock during the entire period of wrongdoing or bought it after the wrongdoing. *In re Accuray Inc, Shareholder Derivative Litigation*, 757 F. Supp. 2d 919 (N.D. Cal. 2010)[cited by CRCI at ECF 203:23]. There is no precedent that the rule applies **backwards**.

As a matter of common sense, the limited partners of CRCPS could only have suffered a harm *after* they invested their money and got an LP unit in CRCPS. There is no way for anyone to be economically harmed before making an economic investment! Yet this Court apparently says that Plaintiffs did not lose their money due to wrongs during their time *as limited partners* of CRCPS but due to wrongs before they invested money. The Court says: "The loan documents – e.g., the Loan Agreement, Promissory Note, and YEA - were entered into prior to Li Plaintiffs becoming limited partners [ECF 271: 26]." And? So what? How could it be otherwise? In every transaction there has to be some structure set up beforehand to market to potential investors. But the loss does not take place until money is put into the structure. The injury cannot happen before

the investment: a person cannot lose what they never invested. And furthermore, the Li Plaintiffs catalogue a litany of fiduciary breaches occurring long after the investment was made.

If the Court is saying that the Li Plaintiffs cannot claim breaches of fiduciary duty that took place before they invested actual money, then the Court is wrong. Colorado law says that fiduciary duties attach during the marketing and negotiation of a security and continue all the way through continuous ownership. General partners owe duties to limited partners during the formation period: "the duties a partner owes to the partnership and the other partners pertain to all transactions connected with the **formation**, conduct, or liquidation of the partnership." Colo. Rev. Stat. Ann. § 7-64-404(6)(emphasis added). This was recognized in Colorado decades ago. *Elk River Associates v. Huskin,* 691 P.2d 1148, 1152 (Colo. App. 1984):

> Although the existence of a fiduciary or confidential relationship is generally a question of fact for the jury, a general partner owes a fiduciary duty to the limited partners as a matter of law. And, while formation of a limited partnership requires substantial compliance in good faith with the requirements of [the statute], a fiduciary relationship between the parties to a limited partnership can attach during the negotiations which precede formal execution of the certificate of limited partnership. **Therefore, we conclude that defendants owed a fiduciary duty as a matter of law to plaintiffs from the time that sale of limited partnership units commenced until defendants were removed as general partners of the limited partnership.**

*Id.* at 1152 (emphasis added, cites omitted). *Elk River* relied on *Lucas v. Abbott*, 601 P.2d 1376, 1379 (Colo. 1979), where the Colorado Supreme Court said:

> Pursuant to the relationship, each joint venturer has a duty to make full disclosure to his colleagues concerning matters which have induced them to enter into the relationship.

Commenting on this line of cases, a treatise summed up the law by saying that the better rule (followed by Colorado) is that fiduciary issues begin before purchase and extend as long as the security is held:

> Although courts have reached different conclusions on whether fiduciary duties arise prior to the formation of a limited partnership,

8

> the best rule is that general partners can breach their fiduciary duties in connection with preformation actions. UPA §21(1) which is adopted by reference by Revised Uniform Limited Partnership Act §403(b) [§404 in Colorado] provides that fiduciary duties arise for "any transaction connected with the formation, conduct, or liquidation of the partnership."

Callison & Sullivan, Partnership Law and Practice: General and Limited Partnerships §22:14 (Oct. 2020 Update).

This is why the Li Plaintiffs alleged in Count I that breach of fiduciary duty extended from the marketing of the limited partnerships in 2012 all the way to the present failure of CRCI to call the loan, all the way through its their continuous failure to disclose the radical under-collateralization, all the way through their failure to negotiate additional collateral, all the way through their failure to inform investors of the true value of the collateral in their newsletters, and so forth down to the present. It is sheer folly to say that any of these claims are barred by the contemporaneous ownership rule.

Trying to push the wrongdoing back to some point X is a fool's errand, because the Tenth Circuit says that it doesn't matter exactly when the harm commenced as long as it was continuing through the time that the plaintiff held the security. This is called the "continuing harm" exception to the contemporaneous ownership rule, and it comes from the United States Supreme Court. *Noland v. Barton*, 741 F.2d 315, 317 (10th Cir. 1984), citing *Bangor Punta Operations, Inc. v. Bangor Aroostook Railroad Co.,* 417 U.S. 703, fn. 6 (1974). Here, the Li Plaintiffs pled a continuing harm and further that they were the original and current security holders. That is sufficient contemporary ownership for a Rule 12(b)(6) motion.

The Court must now go back and amend its ruling with the knowledge that the Li Plaintiffs were contemporaneous owners and were owed fiduciary duties through the entire period of their dealings with the defendants starting at the negotiation and marketing phase.  Therefore, they state

9

a claim for all wrongdoing alleged, to which (of course) the parties can take discovery to figure out the exact dates of wrongdoing and discovery for purposes of the statute of limitations. *Polk v. Hergert Land & Cattle Co.*, 5 P.3d 402, 406 (Colo. App. 2000)("These assertions, however, only emphasize that there are disputed issues of material fact concerning actions within the limitations period, and that summary judgment is inappropriate."). As this District has stated, "each breach of a contract requiring continuous performance is separately actionable; each has its own accrual date and limitations period. . ." *St. Paul Fire and Marine Ins. Co. v. North River Ins. Co.*, 2012 WL 4464380 at *5 (D. Colo. Sept. 27, 1012)(deciding limitations issue only after discovery).

It is contrary to precedent for this Court to start dismissing counts left and right by invoking the statute of limitations at the pleading stage when the Plaintiffs allege a *continuing* breach of fiduciary duties, and when no facts have been established, only pled, and the pleadings must be read in favor of the plaintiffs.

**Conclusion**

$40 million of Chinese money went missing *after the Chinese invested it* in CRCPS under the control of CRCI.  That massive loss and the unending incompetence of CRCI in handling the investment make them a prime suspect for shouldering the damages.  Yet the Court is twisting the law in impossible directions and bending over backwards, actually misstating the law on the public record, just to achieve the miraculous result that CRCI is released from the case prior to discovery. The Li Plaintiffs will not speculate on why the Court is so aligned with the defendants and fails to show a single shred of sympathy or empathy or understanding or curiosity about the loss of $40 million in Chinese money.

All the Li Plaintiffs will say at this point is that the Court badly misstated the economic loss rule, badly misstated the contemporaneous ownership rule, does not understand that fiduciary

duties can be owed to an entity, and does not understand that fiduciary duties attach at the marketing stage before a purchase is made. If the Court persists with its misapplications of the law, its rulings will never stand on appeal. It has an opportunity now to rethink these matters at least with respect to Count I.

WHEREFORE, the Li Plaintiffs Object to the Ruling that Count I of their Third Amended Complaint was dismissed, and ask that Court I be reinstated as a claim for breach of contract and breach of statutory fiduciary duty.

**NOTE: THIS DOES NOT WAIVE THE LI PLAINTIFFS' CLAIM THAT THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER THIS CASE.**

Dated: March 26, 2021　　　　　　　　　　　　Respectfully Submitted,

　　　　　　　　　　　　　　　　　　　　　　/s/ Douglas Litowitz
　　　　　　　　　　　　　　　　　　　　　　413 Locust Place,
　　　　　　　　　　　　　　　　　　　　　　Deerfield, IL 60015
　　　　　　　　　　　　　　　　　　　　　　312-622-2848
　　　　　　　　　　　　　　　　　　　　　　Litowitz@gmail.com

**Certificate of Service**

This document was filed on the ECF system for the District of Colorado on March 26, 2021.