IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-02443-RM-STV

JUN LI, *et al.*, individually and derivatively for Colorado Regional Center Project Solaris LLLP,

    Plaintiffs,

v.

WAVELAND VENTURES LLC, *et al.*,

    Defendants.

## SPO DEFENDANTS' BRIEFING REGARDING JURIDICTION AND RESPONSE TO LI PLAINTIFFS' MOTION TO DISMISS

Solaris Property Owner ("SPO"), Solaris Property Owner I ("SPO I"), and Peter Knobel[1] (collectively, "SPO Defendants") respond as follows to the Court's request for jurisdictional briefing in its Order or Pending Motions, Doc. 271, and to the *Li* Plaintiffs' Motion to Dismiss State-Law Claims under FRCP 12(h)(3) and 12(b)(1), Doc. 272.

### INTRODUCTION

In its Order on Pending Motions (the "Order"), Doc. 271, the Court requested supplemental briefing on the question of "whether the Court has diversity jurisdiction and, if not, whether the Court should retain supplemental jurisdiction." Doc. 271 at 54. Rather than address the question head-on, the Li Plaintiffs asked the Court to unwind the aspect of the Order dismissing most of Plaintiffs' state-law claims on their merits; according to the Li Plaintiffs, the

---

[1] All claims against Mr. Knobel were dismissed. Consequently, only Section II of this submission is pertinent to him.

Court never had jurisdiction to do so. *See* Doc. 272. The *Cui* Plaintiffs, by contrast, steadfastly maintain that complete diversity exists. *See* Doc. 286.

The Li Plaintiffs are right that the Court lacks diversity jurisdiction—although they are wrong to suggest that it was ever a close call. Because (1) CRCPS is properly aligned as a defendant, (2) its citizenship is determined by the citizenship of its partners, and (3) Plaintiffs allege that they are partners in CRCPS, complete diversity cannot exist. The Court nonetheless correctly exercised supplemental jurisdiction over the dismissed claims, which shared a common nucleus of operative fact and were efficiently disposed of along with the federal securities claims.

The Court therefore should decline to modify the Order dismissing most of Plaintiffs' claims on their merits. It should, however, dismiss the remaining state-law claims for lack of jurisdiction.

## DISCUSSION

### I. THE COURT SHOULD NOT RETAIN JURISDICTION

The Court does not have diversity jurisdiction over the surviving state law claims, nor should it exercise supplemental jurisdiction. The burden falls on Plaintiffs, as the parties alleging diversity jurisdiction, to plausibly allege complete diversity. *See Robinson v. Brown & Williamson Tobacco Corp.*, 909 F. Supp. 824, 826 (D. Colo. 1995) (noting the "presumption against diversity jurisdiction and [that] the burden is upon the one asserting it to affirmatively sustain it"). As the Court has noted, Plaintiffs fail to allege the citizenship of the partners and members of the various entities involved in this case. This leaves no basis to find diversity jurisdiction.

As it happens, though, the *absence* of diversity jurisdiction is apparent from the pleadings. Plaintiffs each allege that they are citizens of the People's Republic of China. *See* Doc. 190 ¶¶ 24–

2

39; Doc. 222 ¶¶ 6–7.They also allege that they are limited partners of CRCPS. *See* Doc. 190 ¶ 91; Doc. 222 at 1–2. This makes CRCPS a citizen of the People's Republic of China as well. *See Carden v. Arkoma Assocs.*, 494 U.S. 185, 195 (1990) (holding that citizenship of limited partners must be considered in determining citizenship of an artificial entity). If CRCPS is aligned as a defendant, then complete diversity does not exist.

The Tenth Circuit recognizes that "[t]he most prominent reason for not aligning a corporation as a plaintiff in a derivative suit is that the corporation is adverse to the plaintiff's derivative suit." *Symes v. Harris*, 472 F.3d 754, 761 (10th Cir. 2006). "There is antagonism whenever the management is aligned against the stockholder and defends a course of conduct which he attacks." *Smith v. Sperling*, 354 U.S. 91, 95 (1957).

This is exactly the case here, where Plaintiffs affirmatively alleged that CRC I, the general partner of CRCPS, engaged in various acts of malfeasance that harmed the corporation, rendering the company adverse to Plaintiffs. *See ZB Holdings, Inc. v. White*, 144 F.R.D. 42, 46 (S.D.N.Y. 1992) ("[I]f the complaint in a derivative action alleges that the controlling shareholders or dominant officials of the corporation are guilty of fraud or malfeasance, then antagonism exists, and the corporation should be aligned as a defendant."). Plaintiffs, meanwhile, have no role in CRCPS's management. *See Duke & Benedict, Inc. v. Wolstein*, 826 F. Supp. 1413, 1416 (M.D. Fla. 1993) (finding adversity between limited partners and partnership because "[a] limited partnership has no controlling interest nor any voice in how a partnership conducts its business affairs"). Nor does the fact that CRC I has been dismissed eliminate the antagonism or otherwise allow CRCPS to be aligned as a plaintiff. *See Farmers All. Mut. Ins. Co. v. Jones*, 570

3

F.2d 1384, 1387 (10th Cir. 1978) ("Facts which can be used for forming the determination that realignment is proper must have been in existence at the time the action was commenced.").

The Cui Plaintiffs claim that *Lincoln Beneficial Life Co. v. AEI Life, LLC*, 800 F.3d 99, 108 (3d Cir. 2015), is to the contrary. But *Lincoln Beneficial* still requires that the plaintiffs affirmatively plead that the defendant entity's citizenship does not overlap with the plaintiff's citizenship—which Plaintiffs here fail to do. *Id.* 110. Plaintiffs must also conduct a reasonable investigation into citizenship. *Id.* at 110. The Cui Plaintiffs have done neither. Regardless, *Lincoln Beneficial* is inapplicable here, because the pleadings themselves contain allegations destroying complete diversity.

The Li Plaintiffs, meanwhile, cite *Roskind v Emigh*, 2007 WL 981725 at *2 (D. Nev. Apr. 2, 2007), claiming that "the court aligned an LLC with the plaintiff in a derivative lawsuit . . . ." (Doc. 272 at 8.) That's not true; *Roskind* was an action "seeking a judicial dissolution of [a limited liability company] and distribution of title . . . ." *Id.* at *1. It had nothing to do with derivative actions. The Li Plaintiffs also rely on *Police Retirement System of St. Louis v. Ersek*, No. 14-CV-3404-WJM-CBS, 2015 WL 1880304, at *2 (D. Colo. Apr. 23, 2015). *Ersek*, however, involved the unsettled question of how nominal parties impacted the forum-defendant rule, 28 U.S.C. § 1441(b)—not the well-defined criteria for diversity jurisdiction.

That leaves the question of supplemental jurisdiction. Neither convenience nor judicial economy will be served by this Court retaining jurisdiction. No case schedule has been set, no discovery has been conducted, and the SPO Defendants have yet to even file an answer. Indeed, it would seem more efficient to allow Plaintiffs (if they choose) to file a new Complaint in state

4

court containing "a short and plain statement" of their remaining claims, C.R.C.P. 8(a)(2), rather than proceeding here on eighty-six pages of opaque allegations—most of which have been rendered immaterial by the Order.

## II. THE COURT HAD JURISDICTION TO ADDRESS THE DISMISSED STATE-LAW CLAIMS ON THEIR MERITS

No one disputes that the Court initially had federal-question jurisdiction over this matter, because the Li and Cui Plaintiffs each alleged a cause of action under the Federal Securities Exchange Act. *See* Doc. 222 ¶¶ 181–96. The Li Plaintiffs, however, now claim that the Court lacked jurisdiction to dismiss pendent state-law claims. Their position misapprehends the nature of supplemental jurisdiction.

Courts may exercise supplemental jurisdiction over state-law claims that "are so related to [the federal] claims . . . that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). The question of whether the federal and state-law claims form part of the same "case or controversy" turns on whether they "derive from a common nucleus of operative fact." *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966).

Once state-law claims pass this threshold test, courts generally exercise supplemental jurisdiction so long as the federal claims remain alive. But if the Court dismisses the claims over which it had original jurisdiction, it may still retain jurisdiction over the pendent claims. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) ("[W]hen a court grants a motion to dismiss for failure to state a federal claim, the court generally retains discretion to exercise supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over pendent state-law claims."). The decision to do so rests within the Court's sound discretion. *See* 28 U.S.C. § 1367(c)(1)–(4) (enumerating

5

considerations relevant to the exercise of supplemental jurisdiction). In exercising that discretion, the "court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity . . . . ." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).

### A.     The Court Had Discretion to Exercise Supplemental Jurisdiction

Here, the federal claims asserted by Plaintiffs share a common factual core with the dismissed state-law claims. The Cui Plaintiffs alleged that Defendants either directly or indirectly employed "manipulative or deceptive devices" with respect to the sale of securities. Doc. 190 ¶ 27. They then cited eleven paragraphs of their Third Amended Complaint as examples of these supposed devices. *See id.* (citing *id.* ¶¶ 11–16, 56, 68, 70, 73, 74). These allegations, in turn, implicated each of the agreements underlying Plaintiffs' lawsuit—the Loan Agreement, Operating Payment Agreement, Yield Enhancement Agreement, Memorandum of Understanding, Collateral Unit Agreement, and Promissory Note. *See id.* ¶¶ 11–16. The allegations also encompass every misrepresentation allegedly made in the Offering Documents and Waveland PowerPoint presentation, *id.* ¶ 68, and all substantive aspects of the subsequent alleged "[b]ait and [s]witch," *id.* ¶¶ 70, 73, 74.

The *Li* Plaintiffs' Federal Securities Exchange Act claim is no different. It rested on the same "fraudulently misleading information about the value of the collateral units," failure to "explain the history and method by which [CRC] was over-valuing the collateral," and recharacteriz[ing] the loan (a debt) as 'investor equity . . . .'" Doc. 222 at 188–90. It also sought the same damages as the rest of the lawsuit. *See id.* at 194 (describing the investors' loss as "$500,000 plus interest, which is what they would have received if this was a normal and fully

collateralized loan as packaged to them.") And although the Li Plaintiffs did not assert their federal claim against the SPO Defendants, the claim nonetheless centered on their alleged conduct; according to the Li Plaintiffs, the securities were offered "using Knobel's outrageous asking prices that no one was paying as a substitute for market value." *Id.* ¶ 189.

Every dismissed claim shared the same factual foundation. Beginning with the Cui Plaintiffs, the dismissed claims against the SPO Defendants rested on the following operative facts, which are coterminous with the federal claim:

- Count I: Misrepresentation: "Defendants . . . conspired to induce the Plaintiffs to invest into the LLLP by, among other things, making material representations and omissions set forth in detail above in paragraphs, inter alia, 56, 66, 68, 70, 73, and 74." Doc. 190 at ¶ 94; *compare with* Doc. 190 at ¶ 123 (citing a superset of these paragraphs as the basis for the 15 U.S.C. § 78j claim).

- Count III: Colorado Consumer Production Act: "Defendants engaged in an unfair and deceptive trade practice as described in paragraphs, inter alia, 56, 66, 68, 70, 73 and 74." *Id.* ¶ 113; compare with *id.* ¶ 123 (citing same paragraphs as basis for federal claim).

The same is true of the Li Plaintiffs:

- Count II: Civil Theft and Treble Damages, C.R.S. § 18-4-405: The SPO Defendants allegedly "deceptively gave the impression of the loan being fully collateralized, when in fact the collateral was wildly inflated . . . ." Doc. 222 at ¶ 134; *compare with id.* ¶ 188 (basing federal securities claim on "radically under-collateralized" loan). They also allegedly claim that loan proceeds were wrongfully mischaracterized as equity. *Id.* ¶ 140; *compare with id.* ¶ 190 (same allegation with respect to federal claim).

- Count VI: Colorado Securities Act Fraud and Prohibited Conduct, C.R.S. § 11-51-501: Alleging misrepresentations out of "misleading [collateral] valuations" that were "based off [Mr. Knobel's] untenable and unrealistic list prices that had fallen flat since 2011, (*id.* ¶ 201), that he endorsed fraudulent notices to investors, *id.* ¶ 202, and failed to disclose that investors would not be repaid in cash, *id.* ¶ 205. *Compare with id.* ¶¶ 188 (invoking Mr. Knobel's "outrageous asking prices" as the basis for collateral valuation) and *id.* ¶ 190 (claiming that investment was not a loan, but instead "a disguised sale from the beginning").

7

- Count VII: Fraud: The fraud claim alleges that the loan documents "create[d] the framework for an undercollateralized loan," and that Knobel knowingly endorsed false marketing material and collateral valuations. *Id.* ¶ 222–24; *compare with id.* ¶¶ 188–91 (same factual basis).

Despite this obvious factual commonality, the Li Plaintiffs insist that the federal claim "rel[ied] on the particularized fact that the defendants created a system of continual 'puts' . . . that constituted a repeating securities offering to the limited partners." Li Mot., Doc. 272, at 10. This argument fails, because it rests on the mistaken premise that the existence of an *additional* element of proof in a federal claim is enough to negate commonality. *See, e.g.*, *Classic Commc'ns, Inc. v. Rural Tel. Serv. Co.*, 995 F. Supp. 1181, 1184 (D. Kan. 1998) ("The *Gibbs* standard does not require complete unity of factual issues . . . .").

The Li Plaintiffs also claim that "the federal securities claim was based on the defendants' *misrepresentation* of company value, and not (as in the state-law counts) on the contractual and fiduciary breaches (pled in the state-law claims)." *Li* Mot., Doc. 272, at 10. This just isn't true. The Li Plaintiffs' sole contractual claim survived. With respect to the SPO Defendants, meanwhile, every *dismissed* claim was based on intentional misconduct: civil theft, Colorado securities violations, and common-law fraud. None of the dismissed counts had anything to do with fiduciary duties or breach of contract.

**B.    The Court Appropriately Exercised its Discretion With Respect to the State-Law Claims**

The *Li* Plaintiffs also argue that, assuming the Court could have exercised supplemental jurisdiction in resolving the motions to dismiss, it should have refused to do so. This contention ignores both the policy reasons for exercising jurisdiction as well as the breadth of the Court's discretion.

Each of the four factors that informs the exercise of supplemental jurisdiction—judicial economy, convenience, fairness, and comity—supported the Court's decision to address the dismissed state-law claims on their merits. Considerations of judicial economy perhaps weigh the heaviest. Resolving the federal securities claims required the Court to wade through more than 200 paragraphs of factual allegations. *See* Doc. 190 ¶¶ 1–92; Doc. 222 ¶¶ 112. By concurrently resolving the pendent claims sharing a common factual nucleus, the Court spared a state-court judge many hours of redundant effort. Judicial economy was served.[2]

Convenience also favored supplemental jurisdiction. If the Plaintiffs choose to pursue a new lawsuit in state court, they will be able to file a radically narrowed complaint that focuses strictly on the surviving contractual issue. The SPO Defendants, meanwhile, will enjoy greater clarity regarding the nature of the remaining claim against them. And the more focused case will be easier for the state court to manage.

Fairness, too, supported supplemental jurisdiction. As the CRC Defendants pointed out in their response, Plaintiffs went to great lengths to invoke this Court's jurisdiction over not just their federal claims, but the state claims as well. Indeed, the Li Plaintiffs devote the majority of their motion to justifying their now-abandoned position regarding federal jurisdiction. Although perhaps understandable that the Li Plaintiffs now adopt a different view, there is nothing unfair about the Court having exercised discretionary jurisdiction that Plaintiffs themselves invited.

---

[2] This was true when the Court exercised supplemental jurisdiction, and even more true today. Now that the Court has *already* gone through the effort of applying state law to these allegations, it would be all the more wasteful to force a state court to repeat the undertaking.

9

Considerations of comity fail to tilt the balance. Although the Court's analysis was exhaustive and detailed, the Order applied well-settled statutory and common law. It did not address any unsettled issues of state law. Nor will the outcome of this lawsuit have a broad public impact that extends beyond the parties—let alone one specific to Colorado residents. Thus, nothing about the Court's exercise of supplemental jurisdiction disturbed principles of comity.

## CONCLUSION

For the reasons explained above, the SPO Defendants respectfully request that the Court reject the *Li* Plaintiffs' demand that it retroactively disclaim supplemental jurisdiction over the claims previously dismissed on their merits. SPO and SPO I further ask that the Court decline to retain supplemental jurisdiction over the surviving claims.

April 8, 2021

Respectfully submitted

*s/ Christopher P. Montville*
Harold A. Haddon
Ty Gee
Christopher P. Montville
HADDON, MORGAN AND FOREMAN, P.C.
150 East Tenth Avenue
Denver, CO 80203
Tel 303.831.7364
hhaddon@hmflaw.com; tgee@hmflaw.com; cmontville@hmflaw.com
*Attorneys for Defendants Solaris Property Owner, LLC, Solaris Property Owner I, LLC, and Peter Knobel*