Litowitz, Douglas 4/12/2021
For Educational Use Only

**AIG Retirement Services, Inc. v. Barbizet, Not Reported in A.2d (2006)**

2006 WL 1980337
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Court of Chancery of Delaware.

AIG RETIREMENT SERVICES, INC. (formerly known as SunAmerica Inc.), derivatively on behalf of New California Life Holdings, Inc., a corporation organized under Delaware law, and Aurora National Life Assurance Company, a stock insurance company under California law, Plaintiff,
v.
Patricia BARBIZET, an individual; Gilles Erulin, an individual; and John J. Ryan, III, an individual, Defendants,
and
AURORA NATIONAL LIFE ASSURANCE COMPANY, a stock insurance company under California law; and New California Life Holdings, Inc., a Delaware corporation, Nominal Defendants.

No. Civ.A. 974–N.
|
Submitted June 13, 2006.
|
Decided July 11, 2006.

**Synopsis**
**Background:** Minority shareholder brought action against corporate directors and corporation, alleging that the directors breached their fiduciary duties by refusing to bring a lawsuit. Defendants moved to dismiss.

**Holding:** The Court of Chancery, Chandler, J., held that minority shareholder was not required to present demand to board of directors.

Motion granted in part and denied in part.

**Procedural Posture(s):** Motion to Dismiss.

West Headnotes (1)

[1]  **Corporations and Business Organizations** ⚷ Interest of director or officer in lawsuit or lack of independence

Minority shareholder was not required to present corporate board with a demand to bring lawsuit in connection with corporate loan, where the directors allegedly lacked independence due to their close ties to individual who controlled a business that could be found liable if suit was brought. Chancery Court Rule 23.1.

2 Cases that cite this headnote

**Attorneys and Law Firms**

Kenneth J. Nachbar and Megan W. Cascio, of Morris Nichols Arsht & Tunnell LLP, Wilmington, Delaware; Mark Holscher, Marc F. Feinstein and Adam G. Levine, of O'Melveny & Myers LLP, Los Angeles, California, for Plaintiff, of counsel.

Richard H. Morse, Rolin P. Bissell, John J. Paschetto and Michele Sherretta, of Young Conaway Stargatt & Taylor, LLP, Wilmington, Delaware; Fred W. Reinke, of Leboeuf, Lamb, Greene & Macrae, LLP, New York, New York; Robert L. Weigel, of Gibson, Dunn & Crutcher LLP, New York, New York, for Defendants Patricia Barbizet, Gilles Erulin and John J. Ryan, III, of counsel.

*MEMORANDUM OPINION*

CHANDLER, J.

**\*1** This case involves a conflict between the two shareholders of a holding company engaged, through a subsidiary, in the insurance business. One of the shareholders would like the company to file a lawsuit, but the board of directors has refused to bring the action. The complaining shareholder alleges the directors breached their fiduciary duties by refusing to bring the lawsuit, and also seeks to

bring the lawsuit derivatively. Because I conclude that the complaint adequately alleges that the director defendants were beholden to an interested party, I hold that demand is excused and that a claim for breach of fiduciary duties may proceed. I grant the motion to dismiss, however, with respect to the insurance company's wholly owned subsidiary on the grounds that this subsidiary—and its board of directors—played no role in the events that form the basis of plaintiff's claims.

## I. BACKGROUND

New California Life Holdings, Inc. ("New California") is a Delaware corporation engaged in the insurance business through its wholly owned subsidiary Aurora National Life Assurance Company ("Aurora").[1] New California's two shareholders are Artemis, S.A.[2] and AIG Retirement Services, Inc. ("AIG"). The New California Board has refused a board proposal that it bring suit in connection with a loan received several years ago. AIG brings this suit derivatively and argues that demand is excused because a majority of the members of the board of directors were beholden to Francois Pinault, a French businessman who allegedly owns and controls Artemis S.A. The facts of this case are described in more detail below.

*A. The Auction and Sale of the ELIC Assets*
In 1990 and the early part of 1991, John Garamendi, the Commissioner of the Department of Insurance of the State of California (the "Commissioner"), was appointed as the conservator of the estate of the Executive Life Insurance Company ("ELIC"). ELIC had been experiencing severe financial problems, in large part because of the precipitous decline in the value of its portfolio of junk bonds.[3] The Commissioner decided to auction off the business and began accepting bids. The Commissioner requested that bids be submitted for the combined purchase of both ELIC's junk bonds and its insurance business.[4]

Credit Lyonnais S.A. ("Credit Lyonnais"), a French bank owned in large part by the French government, wished to bid for the junk bonds, but federal and state law prohibited Credit Lyonnais from owning or controlling ELIC's insurance business. To circumvent this prohibition, Credit Lyonnais submitted a bid according to which it would acquire the junk bond portfolio and a permissible buyer (to be located by Credit Lyonnais) would acquire the insurance business.[5] The Commissioner declared Credit Lyonnais the winning bidder and Credit Lyonnais identified MAAF Assurances ("MAAF"), a French insurance company, as the designated buyer of the ELIC insurance business.

In June 1991, MAAF and Credit Lyonnais (acting through its subsidiary Altus Finance S.A.) entered into secret agreements whereby MAAF would be the buyer in name only and Credit Lyonnais would control the ELIC insurance business and assume the economic risk associated with it.[6] According to these agreements, MAAF would own the shares of the insurance company, but would exercise its ownership rights only at the direction of Credit Lyonnais. These agreements were not disclosed to the Commissioner.

**\*2** In order to purchase the ELIC insurance business, MAAF formed a new subsidiary, New California, in July 1991. In July 1991, MAAF and Credit Lyonnais caused New California to enter into a $200 million loan agreement with Altus Finance S.A. ("Altus"), a subsidiary of Credit Lyonnais.[7] The terms of the loan (the "Altus Loan") included a 15% interest rate and a prohibition against voluntary prepayment.[8] Although the terms of the Altus loan were set in 1991, the loan was not executed until September 2, 1993.

*B. The Formation of Artemis*
In 1992, Credit Lyonnais owned and controlled 44% of Financiere Pinault ("Fin.Pinault"), a corporation organized under French law and controlled by Francois Pinault.[9] In November 1992, Fin. Pinault purchased a shell company from Credit Lyonnais and renamed it Artemis S.A. ("Artemis").[10] Fin. Pinault and Credit Lyonnais then recapitalized Artemis so that Credit Lyonnais owned 24.5% of Artemis (through a subsidiary) and Fin. Pinault owned the remaining 75.5%.

On December 24, 1992, Artemis acquired 21% of the ELIC bond portfolio from Altus for a purchase price of $2 billion.[11] Credit Lyonnais loaned Artemis the funds to purchase these securities. As part of the same transaction, Altus granted Fin. Pinault an option to purchase one of four specified assets.

One of the specified assets was the right to the shares of New California. [12]

### C. AIG Purchases Its Interest in New California

In June 1993, AIG (then known as SunAmerica Inc.) negotiated and purchased a minority interest in New California. [13]

### D. The Altus Loan is Executed

In September 1993, the Altus Loan was executed, *i.e.,* the money actually changed hands pursuant to the loan terms negotiated in 1991.

### E. Artemis Purchases Its Interest in New California

In 1994 and 1995, Artemis acquired the shares of New California from Altus (acting through MAAF pursuant to the secret control agreements).

As a result of these transactions, New California currently has two stockholders: AIG, which owns 33% of its stock, and Artemis, which owns the remaining 67%. [14] Artemis and AIG control the election of the directors to New California's and Aurora's boards of directors, with each company nominating a number of directors in approximate proportion to its ownership interest.

Artemis appointed director defendants Patricia Barbizet and John J. Ryan to the New California board of directors in 1995. Artemis appointed Gilles Erulin to the New California board of directors in 1996. These three director defendants constituted a majority of the New California board of directors when the board refused to authorize the Altus Loan claim. [15]

### F. The Commissioner Files Suit

In early 1999, the Commissioner filed suit alleging Credit Lyonnais and MAAF had formed a conspiracy and had fraudulently induced him to transfer ELIC's assets (the "California Fraud Action"). The Commissioner filed a third amended complaint in February 2000, naming New California, Aurora and Artemis as co-defendants. New California and Aurora moved to dismiss the claims asserted against them in the California Fraud Action and later moved for summary judgment. [16] Both motions were denied.

**\*3** The complaint alleges that the Commissioner offered to dismiss New California and Aurora from the litigation for no payment. [17] The director defendants, acting in their capacity as directors of New California and Aurora, declined this offer. [18] The complaint also alleges that a second settlement was offered at a cost to the companies of $10 million and this offer was similarly rejected. [19]

In February 2005, New California and Aurora settled with the Commissioner for approximately $80 million. Artemis chose to go to trial. The jury found that Artemis had made false and misleading statements to the California Department of Insurance in order to obtain approval to acquire the stock of New California. The jury awarded $700 million in punitive damages, but the Court struck the award because the jury had not found any actual harm to the ELIC estate as a result of Artemis' participation in the fraudulent conspiracy.

### G. The New California Board of Director's Refusal to Bring the Altus Loan Claim

On September 22, 2005, the boards of directors of New California and Aurora jointly considered a proposal that the companies bring suit against Credit Lyonnais, Altus and MAAF in connection with the Altus Loan. [20] The Artemis-appointed directors, defendants in this action, refused a request by plaintiff that they recuse themselves on the basis of a conflict of interest. [21] The AIG-appointed board members voted for the proposal to pursue the claim. The Artemis-appointed directors voted against the proposal, with the result that it did not pass. [22]

Through this action, AIG alleges that the Artemis-appointed directors violated their fiduciary duties by refusing to authorize New California to bring suit against Credit Lyonnais, Altus and MAAF in connection with the Altus Loan. AIG also seeks to assert the Altus Loan claim derivatively.

## II. LEGAL STANDARD

Case No. 1:19-cv-02443-RM-STV Document 299-3 filed 04/12/21 USDC Colorado pg 4 of 8
Litowitz, Douglas 4/12/2021
For Educational Use Only

AIG Retirement Services, Inc. v. Barbizet, Not Reported in A.2d (2006)

Defendants move to dismiss plaintiff's derivative claim for failure to plead demand excusal under Court of Chancery Rule 23.1. Demand is excused where the complaint pleads particularized factual allegations creating a reasonable doubt that: (1) the directors were disinterested and independent; or (2) the challenged transaction is protected by the business judgment rule.[23] Rule 23.1 imposes "stringent requirements of factual particularity" that cannot be "satisfied by conclusory statements of mere notice pleading."[24]

Defendants move to dismiss plaintiff's claim for breach of fiduciary duty under Rule 12(b)(6). In considering a motion to dismiss pursuant to Court of Chancery Rule 12(b)(6), the well-pled allegations in the complaint and all reasonable inferences drawn from those allegations are accepted as true. Dismissal is not appropriate unless under no reasonable interpretation of the allegations does the complaint state a claim for which relief may be granted. Conclusory statements, without supporting factual averments, will be disregarded for the purposes of defendants' 12(b)(6) motion to dismiss.

### III. ANALYSIS

*4 Plaintiff brings this suit to assert a derivative cause of action with respect to the Altus Loan claim and to assert a claim for breach of fiduciary duty. A significant portion of the complaint describes allegations that the director defendants, in their dual capacities as directors of New California and Aurora, failed to give good-faith consideration to "several attractive settlement proposals" in connection with the California Fraud Action.[25] Plaintiff's brief makes clear, however, that "the allegations regarding the Artemis Director Defendants' refusal to pursue favorable settlement overtures ... do not form the basis of [AIG's] breach of fiduciary duties claims."[26] Rather, these allegations are included in the complaint because they "demonstrate that the Artemis Director Defendants have a history of favoring the interests of Artemis over those of New California and Aurora."[27]

Based on the above statements in the answering brief, I conclude that plaintiff's sole allegation of breach of fiduciary duty is in connection with the director defendants' refusal to pursue the Altus Loan claim and that the Altus Loan claim is the only claim plaintiff seeks to assert derivatively. The complaint does not contain any well-plead allegations regarding any claims belonging to Aurora; nor does it contain any well-plead allegations regarding the individual defendants' conduct in their capacity as directors of Aurora. Accordingly, I grant defendants' motion to dismiss with regard to nominal defendant Aurora.[28]

In connection with New California's Altus Loan claim, defendants argue that plaintiff has failed to meet the pleading standards of Rule 23.1. Defendants also argue that the allegations regarding a breach of fiduciary duty by the New California board of directors fail to meet the pleading standards of Rule 12(b)(6). For the reasons stated below, I reject defendants' arguments on both of these points.

*A. Demand is Excused*

It is a fundamental precept of Delaware corporate law that "directors manage the business and affairs of corporations."[29] A company's decision whether to initiate or refrain from initiating a legal action is typically reserved for the board of directors' discretion.[30] Rule 23.1 permits stockholders to enforce unasserted rights of the corporation without the board's approval where they can show "either that the board wrongfully refused the plaintiff's pre-suit demand to initiate the suit or, if no demand was made, that such demand would be a futile gesture and is therefore excused."[31] AIG has never presented the New California Board with a demand; instead, it contends that demand would be futile.[32] AIG bears the burden of establishing that demand is excused.

*Aronson v. Lewis*[33] sets out the standard for determining whether demand is excused. AIG argues that demand is excused under the first prong of *Aronson.* Under the first prong, demand is excused if the complaint states particularized facts raising a reasonable doubt that the board was either interested in the outcome of the transaction or lacked independence to consider the transaction objectively.[34]

*5 This Court applies a subjective "actual person" standard to allegations of director non-independence and takes into account the particular circumstances of each director in order to determine whether each particular director in question is

alleged to have suffered from a lack of independence.[35] The complaint alleges the director defendants lacked independence because of their close ties to Francois Pinault, an allegedly interested party. It follows that, in order to overcome the motion to dismiss, plaintiff must *also* allege with particularity that Francois Pinault was an interested party. I conclude that, based on the particular facts alleged, plaintiff has met the pleading standard under Rule 23.1.

1. *Plaintiff Alleges That the Individual Defendants Were Beholden to Francois Pinault*

a. Patricia Barbizet

The complaint alleges that Francois Pinault appointed Patricia Barbizet to be a board member of several of the companies he controls, including Gucci, Yves Saint Laurent and Chateau Letour.[36] The complaint also alleges that Francois Pinault used his influence to have Barbizet appointed to the board of Credit Lyonnais.[37] Artemis, a company allegedly controlled by Francois Pinault, is alleged to have appointed Barbizet to the New California board of directors. Barbizet is also alleged to be a "director general" of Artemis.[38] These well-pled facts support the inference that Barbizet owes her positions of employment at several Pinault companies to her allegiance to Francois Pinault.

According to the complaint, Barbizet was personally involved in Artemis' cover-up of the Credit Lyonnais scheme. It is alleged she knowingly made false and misleading statements to the California Department of Insurance in order to facilitate MAAF's purchase of ELIC's insurance business.[39] Lastly, the complaint alleges that Barbizet, together with the two other director defendants, declined to settle the California Fraud Action when doing so would have cost New California and Aurora nothing. It is hard to imagine why a non-conflicted director would decline an offer to settle litigation at no cost to the companies. The director defendants then refused a second settlement offer that would have cost the companies $10 million. Plaintiff alleges that the director defendants rejected these settlement offers because of their allegiance to Francois Pinault and his interests.

Based on all of these facts, it is reasonable to infer that Barbizet lacked independence from Francois Pinault. Accordingly, I conclude that plaintiff has adequately pled lack of independence with respect to Barbizet.

b. Gilles Erulin

The complaint alleges that director Gilles Erulin was hired by Francois Pinault in 1993 and currently reports directly to Francois Pinault. Erulin allegedly owes his positions on the New California and Aurora boards of directors to Francois Pinault. The complaint also alleges that Erulin was personally responsible for overseeing the activities that led Artemis to become a defendant in the California Fraud Action. Finally, as mentioned above, Erulin allegedly declined an offer to settle the California Fraud Action on behalf of New California and Aurora, when to do so would have cost the companies nothing.

***6** Granting every inference in favor of plaintiff, I conclude that the complaint has pled with sufficient particularity that Erulin is beholden to Francois Pinault.

c. John J. Ryan

Francois Pinault appointed John J. Ryan to the board of directors of several of his companies.[40] Ryan was appointed to the board of directors of New California and Aurora by Artemis, a company controlled by Francois Pinault. Ryan has also had extensive business dealings with Francois Pinault, both personally and through his company, JJ Ryan & Sons. According to the complaint, between the years 1998 and 2002, Ryan provided Francois Pinault with tax planning services and real estate advice in return for an annual fee of approximately $480,000.

The fact that Ryan and Francois Pinault had a business relationship, standing alone, is insufficient to raise a reasonable doubt about Ryan's independence.[41] Plaintiff, however, has pled sufficient facts to show that Ryan's relationship with Francois Pinault was of a bias-producing nature, i.e., the relationship was one that gave the interested party leverage over the director.[42] Like Barbizet and Erulin, Ryan's allegiance to Francois Pinault continues to bring him material benefits, and this is sufficient, at the pleading stage, to attack his independence. In addition, I note that Ryan also declined the offer to settle the California Fraud Action when doing so would have cost New California and Aurora nothing.

2. *Francois Pinault is Adequately Alleged to Have Had Interests Adverse to New California*

I have found that the complaint contains particularized allegations that the directors were beholden to Francois Pinault and his interests. The complaint must also allege facts showing that Francois Pinault—who owned a 67% interest in New California—somehow had interests in conflict with those of New California. This pleading is required because "showing a director lacks independence because of a subservient relationship to an interested person depends in the first instance on showing that the supposedly dominating person actually is interested in the transaction in question." [43]

Plaintiff alleges that Francois Pinault's company, Artemis, was a party to the conspiracy to defraud the Commissioner between Credit Lyonnais and MAAF. The jury in the California Fraud Action specifically found that Artemis made material false statements and concealed material facts to obtain Department of Insurance approval to acquire the insurance business. [44] Plaintiff also alleges that Artemis "directed and knowingly allowed" false representations to be made to AIG when it purchased its interest in New California. These facts are sufficient for the Court to infer that Artemis was a party to the conspiracy.

The complaint offers several facts showing that there were close ties (independent of the conspiracy to defraud the Commissioner) between Credit Lyonnais, Francois Pinault and Artemis. Francois Pinault had been a director of Credit Lyonnais and appointed Barbizet to be a director of Credit Lyonnais. Francois Pinault and Credit Lyonnais had once owned Artemis jointly. [45] Lastly, Credit Lyonnais owned a substantial stake in Fin. Pinault when Fin. Pinault purchased Artemis from Credit Lyonnais.

**\*7** The complaint also alleges that Artemis, a company controlled by Francois Pinault, would be a potential defendant in a lawsuit asserting the Altus Loan claim against Credit Lyonnais. Plaintiff does not identify a specific legal theory under which Artemis could be a defendant in such a case. Plaintiff does allege, however, that the Altus Loan was part of the conspiracy to defraud the Commissioner, and that Artemis played an active role in this conspiracy. Based on these allegations, I conclude that plaintiff could prove that Artemis feared it might be liable if the Altus Loan claim was brought against Credit Lyonnais.

For all of the above reasons, I find that the complaint sufficiently alleges that Francois Pinault was interested in preventing New California from filing suit against Credit Lyonnais, Altus and MAAF in connection with the Altus Loan claim.

*B. The Breach of Fiduciary Duty Claim*

The complaint alleges that the director defendants refused to authorize a lawsuit because they were beholden to Francois Pinault and his interests, even though they knew that bringing the lawsuit would be in the best interests of New California. This allegation is sufficient to support a claim for breach of fiduciary duty against the director defendants in their capacity as directors of New California.

IV. CONCLUSION

For the reasons stated above, the motion to dismiss is granted with respect to nominal defendant Aurora and is denied in all other respects.

IT IS SO ORDERED.

**All Citations**

Not Reported in A.2d, 2006 WL 1980337

**Footnotes**

**AIG Retirement Services, Inc. v. Barbizet, Not Reported in A.2d (2006)**

1 The director defendants were, and continue to be, directors of both New California and Aurora National Life Assurance Company.
2 According to the complaint, Artemis S.A. owns its New California shares through a wholly owned subsidiary called Aurora, S .A. Artemis S.A. is owned and controlled by a French company called Financiere Pinault. Financiere Pinault is owned and controlled by a French businessman named Francois Pinault.
3 Compl. ¶ 38.
4 *Id.* ¶ 39.
5 *Id.* ¶ 40.
6 *Id.* ¶ 43.
7 *Id.* ¶¶ 20, 61.
8 Plaintiff alleges that this interest rate was excessive and that the prohibition against prepayment was one-sided.
9 Compl. ¶ 55.
10 *Id.*
11 *Id.* ¶ 58. Defs.' Opening Br. at 10.
12 Altus did not own these shares; they were nominally owned by MAAF. Altus was able to enter an agreement to cause the shares it did not own to be sold to Artemis because of the secret control agreements with MAAF.
13 *Id.* ¶ 49.
14 *Id.* ¶ 96. Artemis owns these shares through its subsidiary Aurora S.A.
15 These director defendants have also served on the Aurora board of directors and have, at all relevant times, constituted a majority of that board.
16 *Id.* ¶ 74.
17 *Id.* ¶¶ 81–82.
18 *Id.*
19 *Id.*
20 *Id.* ¶ 94.
21 *Id.*
22 *Id.*
23 See *Brehm v. Eisner,* 746 A.2d 244, 255 (Del.2000).
24 *Id.* at 254.
25 *Id.* ¶¶ 81–89.
26 Pl.'s Answering Br. at 26. Defendants argue that the doctrine of laches would bar such claims.
27 Pl.'s Answering Br. at 26.
28 Because the surviving claims are New California claims and not Aurora claims, defendants' arguments about standing and personal jurisdiction are moot. Those arguments attacked AIG's ability to bring a "double-derivative" claim on behalf of Aurora, a California corporation, and to assert a breach of fiduciary duty claim against the directors of Aurora. It is undisputed that AIG has standing to bring derivative claims on behalf of New California, a Delaware corporation whose stock AIG owned at all relevant times. Similarly, it is undisputed that this Court has personal jurisdiction over the individual defendants regarding their conduct as members of the board of directors of New California, a Delaware corporation. *See* 10 *Del. C.* § 3114.
29 *Aronson v. Lewis,* 473 A.2d 805, 812 (Del.1984).
30 *White v. Panic,* 783 A.2d 543, 550 (Del.2001) ("In most situations, the board of directors has sole authority to initiate or refrain from initiating legal actions asserting rights held by the corporation.")
31 *Id.*
32 Compl. ¶ 97.

**AIG Retirement Services, Inc. v. Barbizet, Not Reported in A.2d (2006)**

| | |
|---|---|
| 33 | 473 A.2d 805 (Del.1984). |
| 34 | *Id.* at 814. |
| 35 | *McMullin v. Beran,* 765 A.2d 910, 923 (2000). |
| 36 | *Id.* |
| 37 | *Id.* |
| 38 | Compl. ¶ 32. |
| 39 | The complaint alleges that Barbizet avoided criminal indictment for her role in the conspiracy by paying a fine of $1 million and entering into an agreement prohibiting her from entering the United States during a three-year period. |
| 40 | Compl. ¶ 34. |
| 41 | *In re General Motors (Hughes) S'holder Litig.,* 2005 WL 1089021, at *8 (Del.Ch. May 4, 2005). |
| 42 | *Id.* |
| 43 | *Continuing Creditors' Comm. Of Star Telecomm. Inc. v. Edgecomb,* 385 F.Supp.2d 449, 462 (D.Del.2004). |
| 44 | Compl. ¶ 2. |
| 45 | *Id.* ¶ 55. |

**End of Document**  © 2021 Thomson Reuters. No claim to original U.S. Government Works.