# EXHIBIT A

```
 1                    IN THE UNITED STATES DISTRICT COURT
                          FOR THE DISTRICT OF COLORADO
 2
      Civil Action No. 19-cv-2443-RM
 3
      JUN LI, et al.,
 4
           Plaintiffs,
 5

 6    DIANWEN CUI, et al.,

 7    Consolidated Plaintiffs

 8    vs.

 9    COLORADO REGIONAL CENTER PROJECT

10    SOLARIS LLLP, et al.,

11    _____

12
```

### REPORTER'S TRANSCRIPT
Hearing

_____

Proceedings before the HONORABLE RAYMOND MOORE, Judge, United States District Court for the District of Colorado, commencing at 9 a.m., on the 31st day of August, 2020, in Courtroom A601 and VTC, United States Courthouse, Denver, Colorado.

Proceeding Recorded by Mechanical Stenography, Transcription Produced via Computer by Tammy Hoffschildt, 901 19th Street, Room A251, Denver, Colorado, 80294, (303) 292-1088

```
 1            Having said that, I'm not striking anything that
 2   anybody has filed up to now or not considering it.  Just
 3   saying, going forward, let's just get in line with the way that
 4   I normally do things and proceed along those lines.  Okay.
 5            The next thing I want to do may sound a little absurd,
 6   and frankly I don't care how much absurd it sounds, but what I
 7   want to do is to walk through and make sure that I have an
 8   understanding as to who the various counts of the Complaint are
 9   against.  Having said this, let me be clear about something,
10   the documents are what they are, and I'm not suggesting that by
11   asking this question.  I am allowing some amendment or change
12   in the -- in the pleadings, but it is possible that I simply
13   have misunderstood something and want to, at least, identify
14   where there may be issues and what those issues might be.
15            So, I'm starting with the Li Plaintiff's Third
16   Amendment Complaint, and I'm just going to walk through this
17   count by count, telling you what I see.
18            There are, as I understand things, five counts that
19   are still in play?
20            MR. LITOWITZ:  Exactly.
21            THE COURT:  Count 1 is against CRC I, Breach Of
22   Fiduciary Duty?
23            MR. LITOWITZ:  Correct.
24            THE COURT:  Count 2 is against CRC, SPO, SPO I, Knobel
25   and the LLC Principles for Civil Theft.
```

1   *THE COURTROOM DEPUTY:*  No, Your Honor.  She is still
2   there.
3       *THE COURT:*  Okay.  All right.  I can't see her, but
4   welcome and good morning to you, ma'am.  She can't respond?
5       *MS. KANAN:*  Thank you, Your Honor.
6       *THE COURT:*  She can respond.  All right.  Mr. Kilroy,
7   excuse me, please.
8       *MR. KILROY:*  Before I do, Your Honor, I forgot to
9   mention that Rick Hayes, my client representative, managing
10  director of CRCP --
11      *THE COURT:*  We will get to him.
12      *MR. KILROY:*  -- is back at the back of the room.  I
13  just wanted to make sure you know that.
14      *THE COURT:*  Is he the one far right?  I got him.  I
15  got him.  He is the one I moved.
16      *MR. KILROY:*  Right.  And I think what Mr. Litowitz
17  said is correct.
18      *THE COURT:*  Okay.  Count 3 goes to SPO I, for Breach
19  Of Loan Agreement?
20      *MR. LITOWITZ:*  Correct.  Count 4 goes to SPO I, for --
21  shorthand is, in fact, shorthand, but transfer of title to
22  CRCPS.
23      *MR. LITOWITZ:*  Count 4 has been stricken, Your Honor.
24      *THE COURT:*  I'm sorry.  Count 4 is out.  That's
25  correct.  Count 5 I should say goes to CRC I --

```
 1   Mr. Litowitz's position being that there was some fraudulent
 2   concealment of the breach, and it wasn't discovered until 2018,
 3   which would bring them within the statute.  Neither side has
 4   responded at all to the notion that there is no standing to sue
 5   derivatively for acts which occurred before the limited
 6   partners became limited partners.  Neither side has responded
 7   to the claim -- to the position that the Complaints fail to
 8   state a claim for post-investment breaches of fiduciary duty,
 9   but both respond to the Economic Loss Rule.  The Li Plaintiffs
10   saying the duty arises from contract and the Uniform Limited
11   Partnership Act.  The Cui Plaintiffs saying, for purposes of
12   this count, what they are relying on is the statutory duty
13   under the Uniform Limited Partnership Act.
14           Let me start in the back with Mr. Stewart.
15           *MR. STEWART:*  The only thing I would add, Your Honor,
16   I didn't separate it out as a section, but the *Elk River*
17   *Association* case that I cited, and the cite states clearly that
18   a fiduciary relationship between the parties to a limited
19   partnership attached during the negotiations would precede
20   formal execution, certificate limited partnership.  So, I do
21   think I did address that, what -- that was one of the issues
22   that you said that we did not address, and it is actually in
23   the brief, although not identified well.
24           *THE COURT:*  All right.  Give me one second here.
25   Again, as you move away from that microphone, not only does my
```

1    court reporter have trouble with you, I have some trouble,
2    hearing, as well.   Just hold on a second.
3           THE COURT:   Okay.   All right.
4           MR. STEWART:   Other than that, you have succinctly
5    stated what I said.   Just the only thing that I would change is
6    that the -- the issue about whether you can breach a fiduciary
7    duty before, is actually there in the first citation under the
8    statute of limitations claims, in the *Elk River Associates* case
9    that says that, in fact, you do have a fiduciary duty during
10   negotiations prior to formation, so.
11          THE COURT:   Okay.   All right.   Let me... and again, it
12   may be that I'm running a little far afield here, and if I am,
13   well, okay.   I understand the notion that there can be a breach
14   that is related to the negotiation that leads to the contract.
15   If I were to try and embrace that, what do I have that permits
16   me to say when those negotiations occurred?   Because again, to
17   what -- to one extent I understand what you are saying.   You
18   are expanding the shackles that you feel that Mr. Kilroy is
19   putting on what it is -- or where the breach can occur, but
20   you're also moving backwards in time, from the filing of the
21   Complaint, and saying these breaches occurred somewhere earlier
22   than the contract.
23          MR. STEWART:   That's what Mr. Kilroy is saying.
24          THE COURT:   Well, no, I understand that.   I guess I'm
25   trying to figure out, and so now loop back to me how that works

```
 1   into your argument on the statute of limitations?  And I
 2   understand, I suppose, it's again, this is yet an earlier part
 3   of the continuing fraud; is that the answer?
 4           MR. STEWART:  It's no different than that argument,
 5   other than the fact -- that the breach of fiduciary duty are
 6   happening at a mind-boggling rate.
 7           THE COURT:  All right.  I get it.  Let me come forward
 8   to Mr. Litowitz, please.
 9           MR. LITOWITZ:  Yes, on the statute of limitations, I
10   did cite the Tisch case, which held that the statute runs from
11   when the plaintiff knows of the breach of fiduciary duty.
12   There's no duty to make an independent investigation.  So,
13   that's how I dealt with the statute of limitations.
14   Furthermore, I did cite in my Complaint, my Third Amended
15   Complaint, all about recent breaches of fiduciary duty, failure
16   to call the loan is a breach of fiduciary duty, giving people,
17   limited partners, every six months a notice saying that the
18   value of their property is worth 93 percent.  Failing to value
19   it is a breach of fiduciary duty, and I go down the line.  So,
20   these are all continuing breaches of fiduciary duty.  They are
21   collecting a 2 percent fee for managing 82-million dollars into
22   40-million dollars.
23           Now, that's a breach of fiduciary duty.  It's a breach
24   of duty of loyalty.  It's in the Complaint, whether you agree
25   with it or not, it has to be taken as true, and it's clearly
```

1  pleaded and present.

2            So, yes, there's an academic issue as to when it all
3  started, what happened before it was born; chicken and the egg.
4  We have got more than enough now, to say that there's an
5  ongoing continuous breach of fiduciary duty.

6            You know, I know that Your Honor is very keyed into
7  the rules and very knowledgeable, and I respect that, but at
8  the end of the day there's 40-million dollars missing.

9            THE COURT:  Okay.  Sometimes people lose 40-million
10 dollars.  I don't know what you want me to say about that.  I
11 mean, you keep saying it to me as if that makes you right.  It
12 makes you someone who represents clients for, "something bad
13 happened."  Whether it's their fault or not, is what the
14 litigation is about, and telling me that something bad
15 happened, doesn't really move my needle.

16           MR. LITOWITZ:  Well, I don't know -- I guess, I don't
17 understand that because...

18           THE COURT:  Okay.  You don't understand, we move on.
19 I'm not here to make you understand.

20           Let me --

21           MR. LITOWITZ:  I'm trying to make -- okay.  So let me
22 finish up real quick.  So, on the Economic Loss Rule, we feel
23 that, you know, we did answer that.  I see your clusters here.
24 My view is that there's an absolute ton of material here saying
25 that there's a breach of fiduciary duty, and it's just -- I

1    can't -- I'm dumbfounded why anyone would think that that isn't
2    stated.
3           THE COURT:  Mr. Stewart took the position, with
4    respect to the standing to sue, for acts which occurred before
5    his plaintiffs became limited partners, and essentially, takes
6    the position that there are breaches that were occurring during
7    that timeframe.  You have been silent as to that.  I'm trying
8    to understand whether I missed something in the pleadings, as
9    to that silence or my perceived silence?
10          MR. LITOWITZ:  Well, it has -- it's a little more
11   complicated, and I didn't want to make it more complicated, but
12   the money went in and was then invested.  So the fraud in the
13   inducement, it didn't -- they actually -- the investment didn't
14   actually happen until the money was already in and they were
15   already limited partners.  So, there was -- there was fraud
16   beforehand, and then there was fraud once they started.
17   There's fraud up and down the line.  So, it's not like we're
18   saying there was fraud 12 ago, to get these people into the --
19   or that there was breach of fiduciary duty 12 years ago and
20   it's over now.
21          We're saying that there was a breach of fiduciary duty
22   all up and down the line and it's academic, where you want to
23   say it began or not.  I can tell you an acorn becomes an oak
24   tree, I can't tell you when.  At some point it's an oak tree.
25   So, its -- it's an aphid until it becomes developed.

```
 1              THE COURT:  Okay.  Last word.
 2              MR. KILROY:  Sure.  I won't repeat the statute of
 3    limitations issue, other than to point out that the allegations
 4    of breach of fiduciary duty track the allegations of fraud, and
 5    the Cui Plaintiffs to a tee, the same reference to same
 6    paragraph numbers.
 7              On this issue of no standing to sue derivatively, I
 8    want to address the question you had of Mr. Stewart, on the Elk
 9    River case.
10              That case is specifically designed, I think it's
11    important to look at the language the Colorado Supreme Court
12    used there.  They basically expanded the notion of a duty of --
13    fiduciary duty, to the time period of negotiating the
14    investment, and that was their focus that the express holding
15    is, therefore, we conclude that defendants owed a fiduciary
16    duty as a matter of law to plaintiffs from the time that the
17    sale of the limited partnership units commenced until
18    defendants were removed as general partners.  Now, I make that
19    distinction, because I think this notion that there's no
20    starting point, that you can just go back to the beginning of
21    time, doesn't make enough sense, and I understood your question
22    to kind of be, how do we interpret that?  And the answer is, in
23    this Elk River case, it literally had to do with things that
24    were done in the negotiation of that particular limited
25    partnership, and in contrast, in our case, what we are being
```

1    accused of is selling the investors a bad deal, but the deal
2    was done, described in the PPM, with the documents attached,
3    that we're talking about, the promissory note that the
4    plaintiffs take issue with the Yield Enhancement Agreement,
5    that they take issue with, the notion that there's a put in
6    call, such that it's not fair to say, you've just lost
7    40-million dollars, because that presumes something that isn't
8    pled.  It's not even in evidence.  It's the value of the
9    property.  If it goes up, good for them, if it goes down, bad
10   for all of us.
11            So, I make that distinction, because I think it's
12   important to look closely at *Elk River*.  It's not as expansive
13   as would apply here.  That's really my argument as to the --
14   what I call a pre-investment conduct.
15            On the post-investment conduct, as we pointed out,
16   damages are an essential element of a breach of contract claim,
17   and it's true, and I conceded in our brief, what Mr. Litowitz
18   said, that unlike the Cui Plaintiffs' Third Amended Complaint,
19   the Li Plaintiffs did include some post-investment conduct.  We
20   addressed it in our brief and I won't repeat it.
21            The final issue on this economic loss doctrine, I
22   would point out, again, what we did in the brief, which is, the
23   notion that the -- the fiduciary duty comes from the contract,
24   I think as a concession, that that's exactly why it's barred by
25   the economic loss doctrine.  The *Tuckman* case is, in our view,