IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-2443-RM-STV

JUN LI, et al,

    Plaintiffs,

vs.

COLORADO REGIONAL CENTER PROJECT SOLARIS, LLLP, et al,

    Defendants.
_____

**REPORTER'S TRANSCRIPT**
Hearing

_____

    Proceedings before the HONORABLE RAYMOND MOORE,Judge,
United States District Court for the District of Colorado,
commencing at 3:19 p.m., on the 7th day of June,2021, in
Courtroom A601, United States Courthouse, Denver, Colorado.

Tamara Hoffschilt, FCRR, CRR, RMR
901 19th Street, Room A251
Denver, Colorado, 80294
(303)947-1905

Proceedings Reported by Mechanical Stenography
Transcription Produced via Computer

**APPEARANCES**

Douglas Litowitz Douglas Litowitz, Law Office of, 413 Locust Place, Deerfield, IL 60015, and Brian Stewart (BY VTC audio only) Ardent Law Group P.C., 4340 Von Karman Avenue, Suite 290, Newport Beach, CA 92660, appearing for the Plaintiffs.

James D. Kilroy, Snell & Wilmer LLP-Denver, 1200 17th Street, One Tabor Center, Suite 1900, Denver, CO 80202, appearing for Colorado Regional Center Project, Defendants.
Ty C. Gee, Haddon Morgan & Foreman, P.C., 150 East 10th Avenue, Denver, CO 80203, appearing for Solaris, LLLP, Defendants.

\*   \*   \*   \*   \*

**PROCEEDINGS**

(In open court at 3:19 p.m.) is.

THE COURT:  Please be seated.  Cathy, my screen is showing me the Cisco logo.

THE CLERK:  He is just by audio only, Your Honor.

THE COURT:  Okay.  Okay.  There we go.  All right. 19-cv-2443, Li, et al versus Colorado Regional Center, Project Solaris, LLLP, et al.

Let me take appearances, beginning with the plaintiff.

MR. LITOWITZ:  Douglas Litowitz, for the Li plaintiffs, Your Honor.

MR. STEWART:  Good afternoon, Your Honor. Brian Stewart, the Arden Law Group, for the Qi plaintiffs.

MR. KILROY:  Good afternoon, Your Honor.  For the CRC defendants, the CRC, CRC1 and Waveland Ventures, James Kilroy.

MR. GEE:  Good afternoon, Your Honor.  Ty Gee appearing on behalf of the SPO defendants, Solaris Property,

1   Owners, Solaris Property Owner I and Peter Knobel.

2           THE COURT:  All right.  I'm moving around lots of

3   different things, forgive me for that.  In this case there

4   were -- there was an order issued, I think it's **ECF 271**, back

5   in March, on various Motions To Dismiss, and prior to that we

6   were here, in court, discussing the various motions, the

7   position of the parties.

8           Since that motion has issued, there's been a number of

9   other matters filed, and I want to take them up today, in a

10  particular order.  Unlike last time, it is not my intention to

11  necessarily have argument on each of these issues, because I

12  think it's all briefed, but my sense of things was that there

13  is a *bop-a-gopher aspect* to this case, that I just can't seem

14  to bring to a conclusion.  What I mean by that is, as one order

15  or issue or whatever gets filed or raised, there are a flurry

16  of responses and a flurry of pleadings.  It is my desire to

17  want to have some discussion about some of these matters, about

18  other of these matters.  I'm simply more interested in letting

19  you know what my ruling is, but I intend to take things in a

20  particular order.

21          The order in which I intend to take things up is as

22  follows:  First I'm going to deal with the Order To Show

23  Cause, which is **ECF Number 292**, I believe, and that deals with

24  the issue of, if you would, *who is in the case*, for lack of a

25  better way of saying it, focusing on the Rule 10 issue, and

1   whether CRC, which is the shorthand that I use as the order

2   previously used for Colorado Regional Center, LLC, as well as

3   its managing partner, Hayes, are in the case or not in the

4   case, after that Motion For Reconsideration **Number 282,**

5   following that, the Qi plaintiff's Motion To Clarify, that's

6   **ECF Number 307,** following that, I want to address the issue of

7   subject-matter jurisdiction, in light of the dismissal order

8   that issued, where all that remains in this case are some state

9   claims and whether or not there is subject-matter jurisdiction,

10  whether it be by diversity or supplemental.  After that, the Li

11  defendant's Motion For Default Judgment **ECF Number 294,** after

12  that the Motion For Attorneys Fees, **274,** and finally, I will

13  comment on, some, about status reports that have been filed.

14          So, with that, as a starting point, I don't think

15  there's a whole lot that's terribly confusing, with regard to

16  the Order To Show Cause.  What I mean by that is that there are

17  two potential parties, if I can use that phrase, that we're

18  talking about, it's CRC and Rick Hayes.

19          I will conclude that the action has been commenced

20  against CRC by the filing of the original Complaint.  CRC was

21  initially named as a plaintiff, in the initial Qi.  I will

22  mispronounce names, forgive me.  The initial Qi Complaints,

23  they were named and served.  Counsel entered appearances for

24  for CRC.  The additional claims that were raised in the Amended

25  Complaint arose out of the the same conduct.  There are some

1  issues that have been raised, with regard to the caption, and

2  whether they were or were not or should have been included in

3  the caption, and I have heard, in response to that, that the

4  clerk's office said to do it this way, that way or the other

5  way.  I'm really not as moved by that as counsel might be.  All

6  that I mean by that is, parties are represented by lawyers.

7  Lawyers get to make the lawyer decision, assuming that somebody

8  in the clerk's office said something, I don't know that that

9  resolves the issue or absolves someone from not naming someone

10 as a party, and I just don't, frankly, think that it is a path

11 on which I'm going to rely in any meaningful way in resolving

12 this.

13          With regard to Hayes, I don't think the action has

14 been commenced.  He has never appeared in any caption, whether

15 it be the original caption, the consolidated caption, any

16 caption.  He has never been served.  No counsel has ever

17 entered an appearance.  As far as I know, the only claim that

18 was arguably against him was Count 8.  Claim has been dismissed

19 without prejudice.

20          So, that's my resolution, and, Mr. Stewart, I'm not

21 asking you to -- I'm not suggesting to you that there's

22 anything to be served by further discussion of the matter, but

23 I will give you one minute, if you want to make a brief record?

24     *MR. STEWART:*  Your Honor, all I can tell you is I

25 would agree with you as to Mr. Hayes.  Mr. Hayes was not named

1    in the original Complaint and he was not served.  There was a

2    summons issued.  He has never been served.  I don't think he

3    has ever made -- I don't think he has ever made an appearance,

4    so I would agree with that, as to Mr. Hayes.

5          My point about the caption, is the other parties were

6    served in the original Complaint.  They have always responded

7    and we were instructed that they weren't going to accept the

8    pleadings, that it had to be the lead case with nothing else in

9    there.

10         So, that's what happened, but I don't think -- I don't

11   think anyone -- I mean, if the position is the way I understand

12   it, then we have not sued anyone.  In any -- as soon as there

13   was an Amended Complaint filed, that was filed with the Li

14   case, and the reference to the consolidated case, but without

15   the caption, because we were being told it would not be -- they

16   would not be accepting the filings, well then -- then we

17   never -- I mean, I don't know how -- how you resolve it from

18   the standpoint of what you just said.

19         THE COURT:  Well, I guess my answer would be, come to

20   me and I will straighten it out, but at the end of the day, I

21   don't think we need to go there, because you and I are in

22   agreement about Hayes, and I am not suggesting that the case

23   has not been commenced against CRC.

24         MR. STEWART:  If that's where we are at, then we are

25   fine.  I'm in full agreement with you, that Hayes was not named

1    in the original Complaint, and -- and that while we had a

2    summons issued, he was never served, and Jim has never entered

3    an appearance for him, and that -- we have no -- we have no

4    argument on that.

5         THE COURT:  All right.  Then that's where we are.

6         MR. STEWART:  My response to CRC was strictly with

7    respect to the CRC entities, not with Mr. Hayes, individually.

8         THE COURT:  I understand.  The Order To Show Cause

9    made absolute as to Hayes is discharged as to CRC.

10        Moving on to the Li plaintiff's Motion For

11   Reconsideration.  There is a bit of me that is somewhat

12   frustrated, and what I mean by that is, I went through -- well,

13   the Motion For Reconsideration, essentially, is saying that the

14   Court misunderstood and misapplied the law, with respect to

15   Count 1 of the Li plaintiffs, because I treated it as a breach

16   fiduciary duty as opposed to a breach of contract and a breach

17   statute.  It's not clear whether or not that's meant to be in

18   addition to the breach -- the tort breach of fiduciary duty,

19   but in any event.

20        What I remember is sitting here and going through

21   every single claim of every single party, and making sure that

22   I understood what the claim was and what the position was with

23   regard to -- and I did that for a reason, and the reason is

24   that it is sometimes hard, and I am not saying this to be

25   critical, I'm saying this to be objective, it is sometimes hard

1    to figure out what claim was asserted against what party, or

2    what the basis of a particular claim was, because sometimes

3    there would be inconsistency between the title of the claim and

4    whose named in the claim, or between the title of the claim and

5    the -- or the body of the claim, and the relief requested with

6    regard to the claim, and so I went through all of this, and

7    with regard to this Count 1, I asked, is breach of fiduciary

8    duty, and I am told that's correct.  I'm not told that there is

9    a statutory claim.  I'm not told that there's a contract claim.

10    I did not go through that exercise for naught.

11        I asked, I was told, I ruled, and now I'm told that I

12    misunderstood.  I didn't misunderstand anything.  I asked, I

13    was told, that's not on me; that's on counsel.

14        Ultimately, some of this I look at and say that I'm

15    more confused now than, perhaps, I would have been originally.

16        For example, the contemporaneous ownership rule, and

17    whether or not there's standing with regard to that.  There

18    was, in the original order, matters that were discussed about

19    pre-investment breaches.  There are matters that have been

20    argued about post-investment breaches, and many times these

21    things are blended, as they are presented to me.  But what I do

22    know is this, that with respect to the original Motion To

23    Dismiss, the defendants raised contemporaneous ownership rule,

24    and it was never responded to in the Response to the Motion To

25    Dismiss.

1        So now it's being raised and responded to as if I

2   misunderstood or misperceived or made -- made some error.  And

3   then, finally, there's a position that, essentially, is raised

4   for the first time, in a Reply, that says, *Well, if Count 3*

5   *breach of a loan agreement as to SPO survives, then Count 1*

6   *must survive, as well,* and I don't understand that.  I think it

7   is ultimately a nonstarter.  Whatever may or may not be the

8   case, with regard to a claim against SPO, does not

9   automatically require a similar or even -- the same or similar

10  outcome, with respect to a claim against the CRC defendants,

11  and I'm interpreting it as, largely, some species of *good for*

12  *the goose, good for the gander*, if it applies to the SPO's then

13  it must apply to the CRCs, and I don't find that to be the

14  case.  I mean --

15        MR. LITOWITZ:  That's not my -- excuse me, Your Honor,

16  that's not my argument.

17        THE COURT:  No.  I will let you speak when I decide

18  that you will speak.

19        MR. LITOWITZ:  Well, okay.

20        THE COURT:  So, ultimately, what I'm looking at here

21  is that I understand that there is a belief -- or there's

22  certainly a request for me to reconsider, but I don't think

23  that there is anything here that constitutes an intervening

24  change in the controlling law or some new evidence that was

25  previously unavailable, or the need to collect clear --

1    correct, excuse me -- clear error or manifest injustice.

2         Essentially, what I'm being asked to do is to,

3    essentially, relook at this, to revisit issues, to consider

4    arguments now that weren't made then, or to characterize

5    something differently than I was told how to characterize it,

6    originally.  I'm not going to get into the merits of the

7    arguments whether it be economic loss or contemporaneous

8    ownership, because I don't need to go down that hole, that

9    rabbit hole.

10         Essentially, I don't think that there's anything here,

11   that merits reconsideration, and I view this, as I said,

12   essentially, a request to re -- what I referred to as

13   bop-a-gopher, this exemplifies it.  I have resolved it as it

14   was presented to me and now I'm being asked to resolve it

15   again, considering other matters that weren't raised or could

16   have been raised or that's inconsistent with what I was told

17   was the proper description of the claim, originally.

18         So, I don't find grounds for a motion for

19   reconsideration.  I will give you two minutes to convince me

20   otherwise.

21         *MR. LITOWITZ:*  A whole two minutes?

22         *THE COURT:*  You are going to get less than that if you

23   smart-ass me one more time.

24         *MR. LITOWITZ:*  All right.  Did you read **ECF 210** that

25   was my response to the Motion To Dismiss.  Let me read it to

1    you, *ECF 210*, at 16, Count I says that the fiduciary duties of

2    the GP are derived from a Limited Partnership Agreement, a

3    contract and from the CULPA, that was a written before your

4    opinion.  You should have read that.

5         THE COURT:  I did.

6         MR. LITOWITZ:  That tells you where the source is.

7    It's a contract claim, and a statutory claim.  It was filed

8    before your opinion.  I don't know why you didn't see that.

9    It's there.

10        Now, in the *Town of Alma* case, which is the leading

11   case, on economic loss, it says --

12        THE COURT:  Put the mask back up.

13        MR. LITOWITZ:  It says, and you quoted it in one of

14   your opinions, in November, *A breach of duty, which arises*

15   *under the provisions of a contract will be redressed under*

16   *contract.*  My count was for breach of fiduciary duty arising

17   from a contract.  It cannot be any clearer.  I told you, and I

18   used the exact language from *Town of Alma*.  There's no way,

19   that -- and you, yourself, in your opinion, cite the contract

20   provisions.  And there's no way, there's never been a case,

21   ever, when with Economic Loss Rule, knocked out a tort and a

22   contract.  It can't happen.  And it can't knock out a tort,

23   that's just a tort.  It can only knock out a tort that

24   piggybacks on a contract.

25        You have taken a rule and you have -- you are the only

1   Judge in the world, that's ever ruled that the Economic Loss

2   Rule knocks out a tort and doesn't leave a contract.  It

3   doesn't make sense to me.  Okay.

4          On contemporary ownership, I was securities lawyer for

5   a couple decades, it only applies when someone owns a security,

6   and then the next person buys it, and the question is whether

7   that person, number two or three or four --

8          THE COURT:  So why didn't you answer originally?

9          MR. LITOWITZ:  What do you mean?

10         THE COURT:  When it was raised in the original Motion

11  To Dismiss --

12         MR. LITOWITZ:  This is my Response.  ECF --

13         THE COURT:  -- to this particular argument.

14         MR. LITOWITZ:  **ECF 210** is my Response to their Motion

15  To Dismiss.  I don't know why it says the source is, the GP --

16  the LPA, a contract and the CULPA; **ECF 210**, page 16.  I tell

17  you where the source is.

18         I'm not coming in after the fact.  I understand

19  there's a lot of paperwork, and I don't envy you having to deal

20  with all of this paperwork, believe me.  I know it's a

21  Herculean task to keep all of this straight, but I made a

22  contract claim and a statutory claim and it's called fiduciary

23  duty breach arising from contract, that's what the *Town of Alma*

24  case says.  A contract -- a breach which arises under a

25  contract must be redressed under a contract theory not a tort

1     theory.  My count is called *arising under a contract.*  So it

2     has to be a contract.

3               *THE COURT:*  So was it a contract claim or --

4               *MR. LITOWITZ:*  It's a contract --

5               *THE COURT:*  -- tort claim or statutory claim --

6               *MR. LITOWITZ:*  It's exactly what it says.

7               *THE COURT:*  -- three claims all rolled into one?

8               *MR. LITOWITZ:*  It's exactly what it says.  It's a

9     count for breach of fiduciary duties arising from contract and

10    and statute, there is no tort.

11              *THE COURT:*  There is no tort?

12              *MR. LITOWITZ:*  I told you, in my Response, there's

13    three ways to breach a fiduciary duty; there's a tort way,

14    there's a contract way, which you, yourself, recognized in your

15    opinions, you have talked about contractually created fiduciary

16    duties; you have done it yourself.  And then there's the

17    statutory way.  I gave two of those three arguments --

18              *THE COURT:*  Well, I'm not --

19              *MR. LITOWITZ:*  And you are supposed to read it in my

20    favor, by the way.  I know that maybe that's, you know ... you

21    are reading it in my favor.

22              *THE COURT:*  All right.  The motion is denied for the

23    grounds -- for the reasons stated.

24              *MR. LITOWITZ:*  What grounds?

25              *THE COURT:*  I don't have to -- you don't get to quiz.

1    I don't know what is going on here.

2             *MR. LITOWITZ:*  I don't either.

3             *THE COURT:*  Okay.  Well, let me explain, you have an

4    issue, you take it up with the Court of Appeals.

5             *MR. LITOWITZ:*  I will.

6             *THE COURT:*  Fine.  You have that right.  No one is

7    denying you that right.

8             *THE COURT:*  The Qi plaintiff's Motion To Clarify is

9    next.  With regard to it I feel -- I understand, but I don't

10   think there's anything that -- really, that's going on here

11   that needs tremendous clarification.  The issue is what -- part

12   of the concern is that with respect to the -- the declaratory

13   count, the claim is against CRC I, and I have treated it as

14   against CRCPS, and that needs to be clarified, because there's

15   some issue here, and ultimately I stand by what I said, which

16   is, that in terms of the declaratory relief, the reason that I

17   described it or stated it as against CRCPS, is that that is,

18   essentially, what it has to be.

19            I mean, ultimately, again, looking at the transcript,

20   *Count 7 is against CRCPS, SPO and SPO 1 for declaratory relief,*

21   the answer is, *that's correct*.  The reason that there is a bit

22   of a point of contention is understandable and understood by me

23   as follows, what we're talking about is declaratory relief as

24   to the enforceability of particular contracts, the enhancement

25   agreement, as well as the collateral-units agreement.

1    MR. STEWART: Your Honor, and as to the conduct of the

2    general partner in negotiating those deals without any

3    consideration.

4    THE COURT: Let me --

5    MR. STEWART: Oh, I apologize. I didn't mean to

6    interrupt. I'm trying to wait.

7    THE COURT: All right. Ultimately, we are in a very

8    similar position as we were with the Motion For

9    Reconsideration. I went through, and I said, okay, this is a

10   claim against this one for that one, and I get told yes. I

11   then rule, and then there's a request to clarify, not so much

12   as reconsider. Ultimately, here is the issue, with regard to

13   CRC I, which is the general partner of CRCPS, yeah, they signed

14   those contracts, because somebody has to sign on behalf of the

15   limited partnership, but the contract is between CRCPS, and the

16   other party to the contract. The fact that the GP signs for

17   the partnership, is hardly remarkable, and it doesn't make the

18   claim extend to the general partner. Ultimately, if I have a

19   claim for declaratory relief, whatever it may be, with respect

20   to contracts, I can, I suppose, declare the rights of the

21   parties to the contract, but to say that I can declare the

22   right to a nonparty to a contract, it just doesn't -- it

23   doesn't compute for me.

24          So, that's the issue with regard to that piece of it.

25   Hold on one bit, and I know there's a second piece that goes to

1    Count 2, and whether or not I ignored allegations of continuing

2    breaches of fiduciary duty, and misapplied the Economic Loss

3    Rule.

4          Again, I view this, much, as a revisitation.  I think,

5    ultimately, what the discussion was, was that -- or what the

6    ruling was, that there were not allegations of continuing

7    breaches.  There were arguments about continuing breaches to

8    the limited partners, but that doesn't support a derivative

9    claim.  Some of these things that are now being pointed to, and

10   saying, *Okay, let's look at this allegation or that allegation,*

11   *or the other allegation*, were not the basis that were raised

12   the first time, and my view of it is, it doesn't work that you

13   brief -- you brief a motion, I issue an order, and then you

14   point to more things that could have been pointed to before.

15         I decided it on the basis of what was presented to me,

16   I decided it on the basis of how it was represented to me, and

17   I think that there really is no reason to change that now, and

18   whether you want to call it clarify, reconsider, I'm being

19   asked to revisit something that I ruled on.

20         If you disagree, obviously you have recourse to the

21   Circuit, and I am not suggesting that you don't.

22         The final piece here -- piece about the Motion For The

23   Appointment Of A Receiver, I don't think there's anything new

24   here.  What happened is after I ruled on the motion,

25   counterclaim was withdrawn, but I don't know that that means

1   that -- that the original ruling requires revisitation, just

2   because a claim was withdrawn.

3           What was ruled, was ruled upon, and I don't see this,

4   whether it be with respect to the receiver piece or with

5   respect to the breach of fiduciary duty piece or with respect

6   to the contract slash, whether it should be CRCPS or CRC I,

7   piece as being something that needs to be revisited at this

8   juncture.

9           Again, as I said, we went through this and identified

10  it, and I ruled as it was explained to me, and I am not

11  inclined to change the ruling now.

12          Mr. Stewart, please, you have been patient, so go

13  ahead, you get your two minutes.

14          *MR. STEWART:*  I appreciate that, Your Honor, and

15  honestly, I was not intending to bring a motion for

16  reconsideration, I was asking for clarification.  As to the

17  about -- the receivership piece, I have no argument for you on

18  that.  As for the breach of fiduciary -- I'm sorry -- fiduciary

19  duty piece, all I'm trying to say is -- and I understand

20  exactly what you are saying.  Okay.  And I have -- I have a

21  tremendous amount of sympathy.  I mean, we have got multiple

22  parties, everybody defines the parties differently.  I mean,

23  you have -- you have a name for every party, the CRC defendants

24  have a name for every party, the SPO defendants have a name for

25  every party, I have a name for every party and Mr. Litowitz has

1    a name for every party, and there is a lot of confusion because

2    Mr. Litowitz is alleging far different things than we are, and

3    some of it is unintentional and some of it intentional, where

4    parties are mixing and matching, and you even pointed that out

5    in your order, that the defendants are mixing and matching

6    allegations from the Complaints and, you know, vis-a-vis those

7    kinds of things.

8         All I was saying, as to the breach of fiduciary duty

9    claim, is if it arises independently, the Economic Loss Rule

10   doesn't apply, and if you look at the Complaint as a whole, I

11   think that there's plenty in there that shows that they were

12   breaching the fiduciary duty in many different ways.

13        So -- and I don't expect you to, necessarily, you

14   know, change your order on that.  It's just, I need to get it

15   on the record, it's in there, and whether I identified it for

16   you, as well as I should have, at the hearing, that, obviously,

17   I did not.  So that's not even something as a point of debate,

18   but there's ample allegations in the Complaint and I want that

19   to be part of the record.

20        Now, the most important clarification is the first

21   one, because -- and I understand, because Mr. Kilroy pointed it

22   out in his opposition, that was not my understanding of the

23   question, as asked.  And again, there was a lot going on that

24   day.  There were a lot of different motions, with a lot of

25   different people being called a lot of different things.

1    Our motion for dec. relief, was pled individually and

2    derivatively on behalf of CRCPS against CRC I and SPO I, and it

3    was directly related to those contracts, but it wasn't limited

4    to the contracts, and just because the defendants want to say

5    that, and I guess Your Honor has read it that way, that wasn't

6    what was pled.

7    What was pled is that the GP acted inappropriately in

8    negotiating and agreeing to those things.  It wasn't just them

9    signing it.  I mean, what they did with those two agreements,

10   is borderline criminal, and it was done by the general partner,

11   to benefit themselves and harm the limited partners, and you --

12   I -- we have a different opinion on what can be -- what can be

13   done in a declaratory relief cause of action, but it was not

14   intended to be limited to the contract, solely, and I think

15   that you can do that.  But the clarification would be, I

16   apologize, I was wrong, I did not understand your question.  It

17   was not pled against CRPS.  It was pled against CRC I.  If you

18   want to deny it, because you don't think that it's pled

19   correctly, and that we can't ask for that relief, I'm okay with

20   that; that's the clarification I'm looking for.

21       THE COURT:  All right.

22       MR. STEWART:  Because the record is really unclear

23   right now, when the Complaint specifically says who it's

24   alleged against and why, and I -- and I come back to this,

25   because, you know, there was a clerical error about SPO and SPO

1   I that harmed me considerably, and I just -- just because a

2   question is asked, in a flurry of questions over eight

3   different motions, over all of these other things, if I made a

4   mistake, I will own it; that was not my intention to say that

5   we were suing CRCPS, because that wasn't our intent; that's all

6   I'm asking --

7           THE COURT:  All right.  All right.

8           MR. STEWART:  -- is the clarification.  I don't have a

9   problem with it being denied -- you know, with the order

10  saying, we are getting rid of it, but it needs to be corrected,

11  so it says the right party and the right thing, that's all.

12          THE COURT:  Mr. Kilroy, I will give you a brief

13  opportunity to -- to, as well, speak on the record.

14          MR. KILROY:  Thank you, Your Honor.  The only thing I

15  would add, I won't belabor what we briefed, but I will

16  reiterate what we briefed, which is, the colloquy in court was

17  not the only opportunity the plaintiffs had to explain this.

18  In our Motion To Dismiss, we actually explained that a dec.

19  claim, when you are talking about the enforceability of

20  contracts should be limited, as I think the Court was pointing

21  out, to the parties to the contract.  That argument went

22  unanswered and we, for sure, and I think the Court believed,

23  that was a concession, and it was reiterated in the colloquy;

24  that's all I would add to our argument.

25          THE COURT:  All right.  The motion -- well, I don't

1    know how you want to take this, Mr. Stewart, I guess what I am

2    saying to you is that I don't intend to further clarify.   To

3    the extent that you are seeking some particular relief from me,

4    I suppose what I'm doing is denying the motion; that having

5    been said, I think the point that you are trying to highlight

6    has been highlighted on the record and it either will help you

7    or it won't.

8            MR. STEWART:   And, Your Honor, that is the sole

9    purpose of the motion.

10           THE COURT:   Okay.  All right.

11           MR. STEWART:   So, I -- I -- whether I expected you to

12   grant it or deny it, we needed to get the record -- record

13   straight one way or another.

14           THE COURT:   All right.

15           MR. STEWART:   And whether that harms or helps me, I

16   don't know what the outcome will be.

17           THE COURT:   We shall see.

18           MR. STEWART:   I'm not trying -- I'm not trying to be

19   argumentative.

20           THE COURT:   No, no, no.  I'm not taking it that way.

21   I'm not taking it that way.  I'm just saying we are where we

22   are, and I am not backing up.

23           MR. LITOWITZ:   Your Honor, if I may?

24           THE COURT:   Yes.

25           MR. LITOWITZ:   I think Brian and I both have an issue

22

1   that you -- you raised but didn't address, which was in your

2   ruling, at **271**.  You said that there could be a claim under the

3   loan against the borrower SPO I.  So, there's a

4   82-million-dollar loan, the limited partners, can make a claim

5   under the loan for repayment of the loan.  You said that in

6   Count 3, when you granted relief under Count 3.

7          You also said that the limited partners can't act

8   unless they act through the general partner.  So, how did the

9   limited partners take action to collect the loan, if the

10  general partner -- how can there be a loan that should be paid

11  back, yet the general partner isn't pursuing it?  That's the

12  illogic of it.  I never got your answer on that.  Can you give

13  me your answer on that, so I can preserve it?

14         THE COURT:  To be honest with you, my answer on the

15  issue is, this is some argument that is the epitome of the

16  bop-a-gopher thing that I said before, which is, no matter what

17  I say, there's going to be a comeback.  In terms of there being

18  some request for relief, and one of the motions that's pending

19  before me, where this is the issue.  I mean, where you are

20  asking me to explain how or what you should have filed or what

21  claim you should have made.  I'm not doing that.  I'm dealing

22  with what's presented to --

23         MR. LITOWITZ:  That's not what I'm asking.  I'm

24  asking, how is it, conceivably, logically possible?  An LP can

25  only act through it's GP.  And if the LP has a claim, it can

1   only be pursued by the GP.  So, the GP must have had an

2   obligation to pursue that claim, right?

3           THE COURT:  All right.  Now, we're done.  We are done.

4   You were chiming in on a motion that wasn't your motion.  We're

5   done.

6           The next matter is the subject-matter jurisdiction, in

7   light of the order on the pending motions, and here it is, an

8   interesting alignment of parties, if I can use that phrase.

9           As I understand it, given what I have done up to now,

10  the Li plaintiffs are essentially, saying, *You never had*

11  *jurisdiction.*  So, essentially, none of the orders up to now,

12  if they are to stand, should be allowed to stand.  In other

13  words, *If we have got to go to state court, give us a redo, and*

14  *don't in any way, shape or form, do anything that suggests that*

15  *jurisdiction has ever existed*, *if it's to be based on retaining*

16  *jurisdiction on supplemental jurisdiction basis*, that's how I

17  understand it.

18          I understand the CRC defendants to say *Hey, you*

19  *dismissed the various things against us, on various claims, so,*

20  *we don't really have a position with regard to matters going*

21  *forward, but we don't agree to this interpretation, that when*

22  *the federal claims were live, there was no jurisdiction to*

23  *resolve some of these state court claims that arose out of the*

24  *same, if you would, common pool of facts*.

25          Apparently the SPO defendants are of the position that

1   there really is no diversity, and they think that I should

2   decline and let the matter be refiled in state court -- decline

3   supplemental.

4        The Qi plaintiffs say that there is diversity, and I

5   should retain jurisdiction going forward.  Obviously, if

6   diversity is found, then I have got jurisdiction.  I mean

7   there's no declining or anything else that's going on here, and

8   I will tell you that my inclination is to issue a -- because

9   it's such an important piece, to issue a brief written order,

10  with regard to the issue of diversity, with regard to the issue

11  of diversity and this matter of subject-matter jurisdiction, in

12  light of the order on the pending motions.

13       Really, I think it comes down to an issue that is

14  simple to say, and I want to at least take the opportunity to

15  hear from each of you, as to how you see it, and that is how do

16  I line the -- how do I align CRCPS?  And I am pausing, because

17  I have to constantly look at my chart to see what acronym I'm

18  using opposed to the other acronym that the other people have

19  been using.

20       In any event, I mean look, it's relatively clear that

21  that CRCP is a limited partnership.  It has members, the

22  members include the very people that are plaintiffs; the

23  investors, if you would.  If, ultimately, I align CRCPS with

24  the plaintiff, I don't have a problem in terms of diversity.

25  If I, basically, say they should be aligned with the defendant,

1    then I have, in essence, the Chinese investors on both sides of

2    this and there's not diversity.  It is a -- a legal issue, and

3    I want the benefit of having the thoughts -- it's briefed.  I

4    mean I'm not suggesting that there's need for further briefing,

5    I just want to give everybody one last opportunity.  My --

6    my -- my inclination, my leaning, although, again, I'm not

7    making a ruling right at this moment, my inclination is to

8    probably align them with the defendants, and if I do, diversity

9    is not here; there's no diversity; and if I don't, well, there

10   is.

11          So, again, I'm going to go through each of the parties

12   and see.  Mr. Litowitz, let me just give you a couple of

13   minutes to, kind of, speak to this, because -- and especially

14   make sure I understand your position, because it's a little bit

15   different than the position of the other parties, regardless of

16   whether they agree or not, although you filed the Complaint

17   saying that I had jurisdiction, and I understand that's not

18   binding in any way, the statements of counsel, your position

19   now is no, never did, never have.

20          MR. LITOWITZ:  Yes.  We think that dis-alignment is,

21   you know, it's a tough call for any Judge, and we think it

22   could go either way, depending how a Judge looked at it.  Um,

23   we felt that there was an alignment because we wanted the

24   recovery to come to CRCPS, and so therefore we were aligned,

25   but at the same time, we've had resistance against CRCPS acting

1    through their general partner.

2           So, they've had the opposite counsel from us.  They

3    have been resistent to us.  So, we -- we see why a Judge would

4    rule that way.  Frankly, to be honest with you, I'm happy to

5    just start back at zero in state court.

6           THE COURT:  Well, I understand that.  I mean, but I

7    don't want to disguise the -- the matter.  What I mean by that

8    is, certain rulings have been made on the merits, here, with

9    regard to various motions to dismiss, regardless of whether or

10   not you are resigned, content, happy, whatever the correct verb

11   is, to go over to state court, in view of the potential for the

12   absence of diversity jurisdiction, I don't know why I should be

13   saying that I never had diversity jurisdiction with respect to

14   the state claims, because, to me -- not diversity, but the

15   supplemental jurisdiction.  It seems as if what you are

16   ultimately saying to me is, you didn't have diversity and you

17   didn't have supplemental jurisdiction, therefore kick it all

18   out.  It all goes back to state court, and anything that's been

19   raised here and ruled upon, has no effect in state court.

20           MR. LITOWITZ:  Correct.

21           THE COURT:  I don't understand why you are telling me

22   that there is -- never was supplemental jurisdiction, even when

23   the federal claims were alive.

24           MR. LITOWITZ:  There was one federal claim on my side

25   that was alive, that was a federal securities claim, and the

1   rest were -- I had thought were diversity.  If that diversity

2   no longer exists due to alignment, then I will be sitting here

3   in front of you for another two years fighting over state law.

4   I don't think that that's best use of your time.  So, I think

5   that supplemental jurisdiction is something that you could

6   invoke, but I think that it's not really the best use of

7   federal forum.

8         THE COURT:  No, no, no.  I mean, look, to be clear, if

9   I don't find diversity jurisdiction exists, given that we're at

10  the Motion To Dismiss stage, it is beyond probable that I would

11  decline supplemental jurisdiction, and you would be then free

12  to pursue your claims in state court.  The place where you and

13  I are talking around each other is that you, uniquely, to me,

14  seem to be of the opinion that if I find that in light of the

15  fact that the federal claims are no longer present,

16  supplemental jurisdiction, now, shouldn't be exercised, that

17  somehow that I'm -- I'm unwinding the rulings that have already

18  been made and making them live for a do over, and honestly,

19  that's the part that I'm asking you about.  What makes -- what

20  is it --

21        MR. LITOWITZ:  Well.

22        THE COURT:  -- that is the basis for saying *Hey, given*

23  *that I have now resolved the federal claims, going forward,*

24  *there really isn't diversity jurisdiction, there's nothing to*

25  *be supplemental to*, or I understand it's not necessarily a

28

1    matter that's on the basis of where I am now, but there really

2    is no federal interest in this, and it's early enough in the

3    case, that I can decline to do so.  Why I should do that, in a

4    way that seems to erase away all of the other rulings that have

5    been made, with respect to state law claims up to now; that's

6    the question I'm really asking.

7          MR. LITOWITZ:  I guess because my understanding is

8    that diversity is determined at the moment the lawsuit is

9    filed.  So, if there is a lack of -- sorry.  If jurisdiction is

10   determined the moment that the lawsuit is filed.

11         So, I think you clearly had 1331 jurisdiction over the

12   securities claim.  The rest of it, we thought it was diversity,

13   and maybe it was just supplemental.  At that point, I would

14   just say, at the time that the lawsuit was filed, there was no

15   diversity, and there was nothing to be supplemental to.

16         THE COURT:  Not even the federal claim?

17         MR. LITOWITZ:  No.  Because when there is a sole

18   federal claim, all of the others are state based, the Courts

19   tend to say, some even very strongly, in Chicago, Seventh

20   Circuit, but maybe here too, that the Court should just be done

21   with it.  I mean, it's a federal court of limited jurisdiction.

22   Not that I -- I mean, basically, by that ... how do I put this.

23   I don't -- I don't ... are you sure you want this case?

24         THE COURT:  If that's the end of your argument, that's

25   the end of your argument.  CRC?

1          MR. KILROY:  Your Honor, my -- my only issue, at this

2    point, is exactly what you described, and it just goes to the

3    supplemental jurisdiction issue.  I don't have a position on

4    diversity jurisdiction going forward.

5          THE COURT:  No, I understand that.

6          MR. KILROY:  So, the simple way of looking at this, is

7    absolutely, the Court had supplemental jurisdiction that was

8    invoked by the plaintiffs, regardless of whether there was ever

9    diversity.  The Court and the parties spent two years

10   litigating this matter.  The Court had absolute discretion

11   under the case law, the 28 USC 1367 case law, to do any number

12   of things at the motion-to-dismiss stage.  The Court could have

13   just ruled on the federal claim and -- claims, plural, and then

14   declined to consider the -- the supplemental jurisdiction state

15   law claims.  Nobody asked for that.  Nobody.

16        The Court could have done exactly what the Court did,

17   which is, frankly, role up your sleeves and work through all of

18   this.  Our point is, exactly, I think, what I'm picking up from

19   your questioning of Mr. Litowitz, that horse is out of the

20   barn, that has been decided.

21        So, the only issue left for us -- that really is the

22   only issue left for us, I should say.  We just want to make

23   sure that the Court doesn't erase what has already occurred.

24   If Mr. Litowitz wants to dismiss his claim against SPO, I don't

25   have a position on that, and we don't have a position on

1    whether this Court currently has diversity jurisdiction,

2    because that's not our issue.  I appreciate it is a complex

3    issue.

4            THE COURT:  All right.

5            MR. KILROY:  We don't have a position on it.

6            THE COURT:  SPO?

7            MR. GEE:  Yes.

8            THE COURT:  You notice I'm avoiding saying your name,

9    because, again, I'm constantly forgetting whether you corrected

10   me with hard G or soft G, and so I'm just saying counsel.

11           MR. GEE:  It's Gee, like gee whiz.

12           THE COURT:  Okay.

13           MR. GEE:  So, Judge Moore, so I think the way that the

14   parties are aligned is that the Qi plaintiffs have said that

15   you did and do have diversity jurisdiction.

16           THE COURT:  Correct.

17           MR. GEE:  And the Li plaintiffs say you don't have

18   diversity jurisdiction and never did, and you also don't --

19   don't have supplemental jurisdiction and never did.  And we

20   have a slightly different position, which is that, you most

21   certainly had federal question jurisdiction and you most

22   certainly had supplemental jurisdiction, regardless of how they

23   pleaded the domicile or residency, as it were, of the various

24   plaintiffs.

25           And one thing that we don't hear the we Li plaintiffs

1   counsel talking about, is the analysis that the Court would do

2   when considering state law claims, when the Court has both

3   federal question jurisdiction and supplemental jurisdiction.

4   And the key question is whether the federal claim and the state

5   law claims on which the Court is exercising jurisdiction, have

6   a common nucleus operative effect, and we don't need to belabor

7   the point, but I think we all would agree that every single one

8   of the torts that were brought by both the Qi and the Li

9   plaintiffs have a common nucleus of operative effect, and this

10  all had to do with this wrongdoing, relating to alleged fraud,

11  and this was the basis for the federal securities fraud claim,

12  the state securities fraud claim, the theft claim, et cetera,

13  and I think the failure to address that is fatal to -- to the

14  Li plaintiffs case.

15          THE COURT:  All right.  And that's your response to

16  the going-back-in-time piece.

17          MR. GEE:  Sure.

18          THE COURT:  Let's talk about the going-forward-in-time

19  piece.

20          MR. GEE:  Sure.  Going forward in times, we agree with

21  you, Your Honor, that the question is whether or not the Court

22  has diversity jurisdiction and more important and

23  dispositively, the question about whether CRCPS should be

24  aligned as a plaintiff or a defendant, we agree, and the

25  question that --

1          THE COURT:  And your answer is?

2          MR. GEE:  The answer is that it should be aligned as a

3     defendant, because the test is whether or not the CRCPS is

4     antagonistic.  If it's taking legal positions antagonistic to

5     the plaintiffs, the limited partners; the answer is yes, as

6     Mr. Litowitz, himself, acknowledged in his argument.

7          THE COURT:  Mr. Stewart, please.

8          MR. STEWART:  I will be brief, Your Honor.  The --

9     the, you know -- it's in the Briefs.  I directed you to the

10    allegations in the Complaint, that I feel that the plaintiffs

11    should be aligned with CRCPS as plaintiffs.  The claims were

12    for the benefit of all of the limited partnership -- limited

13    partners.  They were for the benefit of CRCPS.  I mean, all of

14    the limited partners, there's 165 of them, as you know,

15    although not necessarily as part of the pleadings, most of them

16    are -- believed that something was going wrong, and that they

17    didn't want the GP to be the GP anymore.

18          So, I'm a little mystified that -- other than it gets

19    us out of your hair, I don't know how you would align us

20    together.  In other words, how you would align the CRCPS with

21    the defendants, but, you know, I will read it if that's what

22    happens.

23          As far as going forward, we Briefed it, I think that

24    there has been -- that it was -- it was alleged at the

25    beginning, and it's interesting to me, because if Mr. Litowitz

1    goes to state court or does whatever he thinks he is going to

2    do, well, then we clearly have diversity jurisdiction now,

3    because you have eliminated all of the CRC defendants.  So,

4    it's just -- it's just the SPO defendants, and my -- and my

5    plaintiffs, if Mr. Litowitz goes away.

6           But I think there has always been diversity

7    jurisdiction, and eliminating half of the defendants certainly

8    doesn't change that.  You know, we -- you know, we allege that

9    everybody -- all of our plaintiffs are citizens of China.  I

10   don't think that anybody -- I mean we've done as much research

11   as we can, and it appears to us that, you know, there's nobody

12   that's a Chinese national who is an owner of SPO or of CRC.  I

13   think it's kind of a red herring.  I don't understand how we

14   are going to get away from the diversity jurisdiction?  I think

15   it was pled adequately.  It wasn't pled artfully, but it was

16   pled adequately.

17          *THE COURT:*  Let me ask you some questions about SPO.

18   As I understand it, the sole equity member is Knobel?

19          *MR. STEWART:*  That's how I understand it.

20          *THE COURT:*  All right.  Is that enough?  I mean, don't

21   I need to know, since SPO is a limited -- a limited -- an LLC,

22   itself, don't I need to know the citizenship of all of its

23   members, as well?

24          *MR. LITOWITZ:*  That's why I asked you that a year ago.

25   Fourteen months ago I asked you that.

34

1        *THE COURT:*  No one is speaking to you.  Let me finish

2    my conversation with Mr. Stewart.

3            Mr. Stewart?

4        *MR. STEWART:*  Could you re-ask the question?

5        *THE COURT:*  I was saying, to the extent that we know

6    or it is alleged that Knobel is a Colorado resident, I'm not

7    sure what it means in terms of getting my arms around the full

8    understanding with regard to SPO, because I would need to know,

9    the citizenship of all of its members.

10        *MR. STEWART:*  As I said, as far as I know, he is the

11   only member, and to the extent that it's discoverable,

12   that's -- you know, we've done everything what we can do, and

13   there's no indication in anything that's available to the

14   public that there's anybody else that is a member, and that's,

15   you know, that's our position.

16           I mean there's not -- there's been a stay of

17   discovery.  We can't determine if there's anybody else.  There

18   are numerous articles written where he is identified as the

19   only person.  There's articles that we can find where, you

20   know, they are talking about loans taken out.  I mean, no one

21   else is ever mentioned, at all.  He is identified as the sole

22   owner, that's our understanding.  As I said, I think we've pled

23   it.

24        *THE COURT:*  What about SPO 1?

25        *MR. STEWART:*  Same.

1          THE COURT:  Okay.

2          MR. STEWART:  Same thing.  I agree with you, I think

3     it's been briefed very well, from four very different

4     perspectives.  So I don't know -- I don't know, you know, where

5     you go, because, you know, do I think that the alignment is

6     pretty clear, and I think the alignment in both cases has been

7     as plaintiffs, but, you know, obviously other people can have

8     different opinions, we may have to suffer under that --

9          THE COURT:  I can tell you this --

10         MR. STEWART:  -- nevertheless --

11         THE COURT:  I can tell you this, there -- whichever

12    way I end up going on this, it's not going to be to get you out

13    of my hair, and I -- I don't mean to suggest that you were

14    suggesting that.  Seriously, I just want to make it clear, in

15    terms of the record, that ultimately the law will be as I see

16    it, and the consequence of that will be whatever the

17    consequence is, whether that is, you stay, you go.  It is what

18    it is.  And it's not the kind of thing where, I'm approaching

19    this or intend to approach this or have ever approached this

20    as, *Gee, do I want this case, can I move it so that it goes*

21    *away* or *Can I move it so that I keep it.*

22         Again, just being clear.

23         MR. STEWART:  No, no.  I apologize --

24         THE COURT:  There's no reason.  There's no reason.

25         MR. STEWART:  -- for that just kind of leaked out.

36

1          THE COURT:  It's just that it's been said.  There's

2     other things that have been said, I don't want silence to be

3     taken as that's the approach that I think is the right approach

4     to the case.  I don't think that's the right approach to the

5     case.

6          MR. STEWART:  Your Honor, I apologize, because I have

7     never said anything like that before.  I should not have --

8     have let that squeeze into our argument.

9          THE COURT:  See what happens -- see what happens when

10    I put you on audio.

11         MR. STEWART:  Oh, no, you know...

12         THE COURT:  Well, it is what it is.  All right.  As I

13    said --

14         MR. STEWART:  But I guess I would -- I was done, but

15    for the most part, depending on what happens with Mr. Litowitz

16    and his clients, then I don't even think -- the alignment issue

17    is a nonissue, because you -- all of the CRC defendants have

18    been eliminated from my claims.  There is no alignment issue.

19         THE COURT:  Look, I'm just letting everybody have

20    their say, and --

21         MR. STEWART:  I understand, and I gave you my

22    two-cents worth and I am done.

23         THE COURT:  Fair enough.  It will all go into the

24    blender and juice will come out.

25             As I said -- I will try and get it to you quickly,

1    because I understand that it matters.  I mean, I know you have

2    some kind of a status in front of Judge Varholak, I don't know,

3    next week, sometime soon.  I'm not trying -- I'm not promising

4    it's going to be on the front end of this.  What I am saying is

5    that, ultimately, at this stage of the case, if there is no

6    longer diversity jurisdiction, although the matter is not

7    closed, in my mind, I would not expect that I would keep the

8    case, supplementally.

9           So, it's either -- again, I will look at it, I will

10   consider it, I'm just letting you know that I think it is not

11   just a minor issue.  It's a major issue as to where the -- as

12   to where the -- the case flowers, if you will, here or

13   elsewhere.  All right.

14          There are a couple of other matters.  There's a

15   motion -- Motion For Default Judgment.

16          *MR. LITOWITZ:*  Actually, Your Honor, I think I would

17   ask Jim, or whoever the lawyers are, our understanding of your

18   order **271,** in terms of -- in some places you use dismissal with

19   prejudice in some places you use dismissal without prejudice.

20          *THE COURT:*  All right.  Let me be clear, with regard

21   to the Li claimants claims against the CRC defendants that's

22   Counts 1, 2, 5 and 6, the dismissal was with prejudice.

23          *MR. LITOWITZ:*  And that can't be amended over?

24          *THE COURT:*  I don't know what you are asking me.

25          *MR. LITOWITZ:*  I can't re-- re-plead?

38

1        *THE COURT:*  It's with prejudice.

2        *THE COURT:*  All right.  In terms of the default

3   judgment, my inclination is, and I will, although I will hear

4   from counsel, deny it.

5        It's really asking for two things; one number, it's

6   saying to me that the motion to have CRC I removed as general

7   counsel is now unopposed, because the counterclaim has been

8   withdrawn, and then there is a statement that the Qi Motion For

9   Appointment Of Receiver is now unopposed.  With regard to the

10  latter, it's really very simple, I don't know what the concept

11  of unopposed was.  The Motion For Appointment Of A Receiver was

12  the Qi motion, not the Li plaintiffs.  So I'm not going to

13  entertain a motion for -- by defendant A, or defendant group A,

14  for me to enter default judgment, with respect to a claim, if

15  you want to call it a claim or a position or an argument that

16  has never been put before me by them.

17       With regard to the notion that CRC I is now unopposed,

18  well that -- the motion addressing their -- the removal of CRC

19  I is now unopposed.  Again, there really is nothing before me.

20  There was a motion, I ruled on the motion.  There's no new

21  motion, and the fact that after the motion, the counterclaim

22  was voluntarily dismissed, doesn't somehow birth a new motion

23  that's never been made.

24       So, ultimately, the issue of whether or not the

25  removal was proper or not is not currently before me, in some

1    unresolved matter -- manner, I should say, as to which I would

2    enter default judgment.

3            So, it's my intention to deny -- well, I deny.  I give

4    you two minutes, or thereabouts, Mr. Litowitz.

5            MR. LITOWITZ:  Your own order, at **271**, said that

6    removal could be made and it was made.  You then said it can be

7    challenged.  So it can be removed and challenged.  Now the

8    challenge is gone.  There's nothing there for you.  They said,

9    they remove the challenge.  They said they are out of the case.

10   I have told you that we have over 70 percent of the people, for

11   a year, these people, hate them.  They have taken an 82-million

12   dollar loan, and they have taken 30-million dollars from these

13   people.  I don't understand why that doesn't resonate.  They

14   don't like them.  They removed them.

15           The contract says, removal, 70 percent vote.  It

16   doesn't say anything about going before a Court.  It doesn't

17   say anything about judicial approval.  It just says 70 percent.

18   I got it, and we removed them, and you said --

19           THE COURT:  What motion is presently before me?

20           MR. LITOWITZ:  Yes, the motion is presently before me.

21           THE COURT:  That has not been resolved already?

22           MR. LITOWITZ:  How long does it take?  Till the sun

23   explodes.  They have the votes.  You know, I mean, you are

24   never going to rule for our people.

25           THE COURT:  You want to accuse me, you want to pack

1    the courtroom, you want to suggest that I don't like them, fine

2    I get it.

3            MR. LITOWITZ:  Good.

4            THE COURT:  And you know what, it carries no weight.

5            MR. LITOWITZ:  Obviously.

6            THE COURT:  It is not true.  It's theater and --

7            MR. LITOWITZ:  Yeah.

8            THE COURT:  -- and I am really not going to rule on

9    the -- rule your way, because you come up with something after

10   the fact.

11           MR. LITOWITZ:  It's not after the fact.  I removed

12   them last --

13           THE COURT:  Fine.  The motion is denied.

14           MR. LITOWITZ:  I removed them last April, Your Honor.

15           THE COURT:  The motion is denied.

16           MR. LITOWITZ:  What's it going to take?

17           THE COURT:  The next matter is the CRC defendants

18   Motion For Attorney's Fees.  Obviously, that's also going to be

19   not resolved right now.  There are some things that I want to

20   ask about, and I will tell you right now that there's some

21   issue, if that's the right word, with respect to whether or not

22   some of the matters that are claimed by CRC now are duplicative

23   of matters that were addressed with regard to the lis pendens.

24           We will look at that.  I want to give you an

25   opportunity, if you can, and I am not sure that you can, in

41

 1    this context, being generalized, to speak to that, before I get

 2    to the other issue.

 3             MR. KILROY:  I can.  And it was raised by the Qi

 4    plaintiffs in their Response.

 5             THE COURT:  Right.

 6             MR. KILROY:  In our Reply we conceded.  We went back

 7    and we looked at the specific entries that Mr. Stewart pointed

 8    out, and if you look at the very final paragraph, I modified

 9    the figures accordingly.

10             THE COURT:  They are right.

11             MR. KILROY:  Fair point.

12             MR. STEWART:  And, Your Honor, I expected that.  Jim

13    has been very straightforward with me, and I just thought it

14    was AN innocent mistake --

15             THE COURT:  No, no, no, that's fine.  I just wanted to

16    make sure that if there's something else that's there, that

17    there's not any remaining dispute that's there, as to things

18    that dealt with the earlier matter.  And my sense of it is that

19    there's no longer disagreement as to the, I don't know what you

20    want to call it, the -- the -- the reasonableness of the fees,

21    or the rates or the claims that are being made.  There may be a

22    challenge as to whether or not these fees should be awarded,

23    but putting that issue aside, the amount that's in debate is

24    not really in dispute; is that fair?

25             MR. STEWART:  To the extent that I am capable of

42

  1    understanding their bills, there's no dispute.  I trust Jim.  I

  2    don't think they are doing anything, you know, untoward.

  3            THE COURT:  Okay.  The second issue is this,

  4    obviously, it's CRC's burden, and sometimes what ends up

  5    happening is that things -- people align, to use a poison

  6    phrase, themselves in clusters, and they tend to speak in

  7    clusters.  For example, the CRC defendants continuously speak

  8    as the CRC defendants, and I guess what I am saying is whether

  9    or not -- well, there's two things.  One is, what is the

 10    position with regard to each of the CRC defendants

 11    individually, as opposed to, kind of, as a collective?  And

 12    then secondarily, the question, ultimately, comes down to

 13    whether or not the action was, in essence, a tort action, and

 14    what am I looking at to resolve that issue?  What I mean by

 15    that is, there were certain claims that were made at an earlier

 16    point in time, that were voluntarily dismissed.  Are they in

 17    the mix?  Regardless of fact that they were voluntarily

 18    dismissed, are they in the mix for inclusion in the analysis as

 19    to whether or not the action was, in essence, tort or not, or

 20    are those things that should not be considered?

 21            I understand that's not something that's necessarily

 22    been highlighted before, but I would like to hear from the CRC

 23    defendants as to those two issues; one, speak to it,

 24    individually, as opposed to collectively; and then two, your

 25    view on whether or not dismiss the voluntarily dismissed claims

1  go into the analysis or not?  I understand there's some other

2  issues here.

3       MR. KILROY:  Sure.

4       THE COURT:  The Li plaintiffs are raising a host of

5  premature claims.  I am not viewing the matter as premature, at

6  this point, given the various other rulings that have been

7  made, but I do think that we need to get to this point, before

8  I can look at this.

9       So, with respect to those two things, let me hear from

10  you.  I will hear from the Li plaintiffs, and I will hear from

11  the Qi plaintiffs.

12       MR. STEWART:  Your Honor, does it apply to the Li

13  plaintiffs?

14       THE COURT:  Well, what I can say is that, they -- they

15  make an argument -- they make an argument that they -- the

16  motion for fees is premature.

17       MR. STEWART:  Well, I made that argument, because the

18  Motion For Fees is as to me.  Is the Motion For Fees as to both

19  parties, and I just didn't read it right?

20       THE COURT:  I have to get look at it again.  Let's

21  assume, going forward, it's both parties, because I'm assuming

22  that both parties made claims that were dismissed.

23       MR. STEWART:  Okay.  My mistake.  My mistake.  Sorry.

24       MR. KILROY:  On the first issue, which is attribution,

25  between and among the CRC defendants, we address that in **ECF**

1      **305,** page ten, and the factual answer is, there's only one true

2      defendant who incurred attorney fees that was CRC I, and we did

3      collectivize them, but there was no -- and I was surprised,

4      going through the billing statements, there was no independent

5      analysis for instance of Waveland Ventures or CRC I.  So, we're

6      asking for the full attorney fee award to go to the defendants

7      but understand that the party that incurred them, indeed was

8      CRC I.

9          So it may be more appropriate to issue an order

10     directing, if there's an award, to the party that incurred the

11     fees, and that's a fair point.

12         Before I forget, I did find that cite to the reduction

13     of our claim, that's on page **-- ECF 305,** page 11, where we

14     explain what I told you earlier, that we did review and

15     discounted, after getting Mr. Stewart' Brief.

16         On the last issue, the short answer is yes, and we

17     cited case law, actually, in the Response to the -- our Reply,

18     **ECF 293,** page three, to this notion that, as I understood the

19     argument, I think it came from both sets of plaintiffs, but it

20     was essentially, *Well, as you are doing your predominance*

21     *analysis, you should only look at what we ended up with.*  We

22     point out that, in fact, we defended those claims.  The case

23     law supports the notion that they should be considered in your

24     predominance analysis.

25         They were actually never formally withdrawn through a

1   Rule 41 process or otherwise.  It was kind of casual in this

2   case, where, during the course of argument, well after we had

3   incurred all of these expenses, there was some concessions

4   made.

5          So, with that, again, the short answer is we think

6   that you should consider those, as you are doing the

7   calculation of both quantity and quality of the causes of

8   action to determine, in your discretion, whether this was an

9   issue of tort -- tort claims or predominantly tort claims.

10         THE COURT:  And you, obviously, believe that they

11  were?

12         MR. KILROY:  We do.  And I won't reiterate what we

13  have in our Brief.

14         THE COURT:  Yeah.  Like I said, these things are

15  Briefed out.  I just think that we needed to get to a point

16  where, we were -- I was understanding whether things were going

17  to be reopened, reconsidered, clarified, renewed, revoked,

18  whatever, before we could actually zero in on this one.  And so

19  it's going to take, you know, an additional written order.  But

20  let me hear from the Li plaintiffs with regard to this, I will

21  hear from Mr. Stewart, as well.

22         MR. LITOWITZ:  Your Honor, this is a double contract

23  action.  We had five counts, only one was for a tort, for civil

24  theft.  It's a double contract.  My clients are in a contract

25  called a Limited Partnership Agreement.  Requires fiduciary

1    duty by CRC I.  That fiduciary duty requires them to call an

2    overdue loan that is past its maturity.  A contract requires a

3    party to call a contract.  It's a contract action through and

4    through.

5          There are securities claims in there, which are

6    investment contracts, that's the definition of a security.  So

7    there's one tort claim.  To call this a tort action is silly.

8          THE COURT:  Mr. Stewart.

9          MR. STEWART:  Your Honor, I think I briefed it, as

10   well as I'm going to argue it.  I think that this is --

11         THE COURT:  Again, look, I'm -- I'm not saying --

12         MR. STEWART:  Not primarily --

13         THE COURT:  The problem is with the lag on the audio.

14   We talk over each other.

15         MR. STEWART:  Oh, I'm sorry.

16         THE COURT:  I'm not saying that there's something that

17   needs further discussion.

18         MR. STEWART:  You just want clarification on the issue

19   of the things that were abandoned before the hearing--

20         THE COURT:  I want to -- given that I'm going to have

21   a written order issued, I want to give you another one last or

22   a final or a first, however you want to view it, opportunity to

23   speak to, again, the issue -- again or for the first time, the

24   issue of whether or not the voluntarily dismissed claims are

25   part of the universe that's used to determine the essence of

47

1   the action.

2        MR. STEWART:  You know, honestly, I don't have

3   anything further to add.  I don't think it matters.  I think --

4   I don't think it's -- I don't think it's qualified, as a -- a

5   primarily tort claim with or without them.

6        THE COURT:  Why not?

7        MR. STEWART:  Because all of these claims arise out of

8   the contract.  The  contract to enter into the investment.  The

9   contract to become a member of the limited partnership, and in

10  fact, the only thing, I guess, that would be a tort claim, has

11  been characterized, it's really just arises out of a contract,

12  and so economic damages is all you get, is the breach of

13  fiduciary duty.  The other side is arguing that's not a tort in

14  order -- in order to win the action.

15       So, I'm looking at it and I'm saying, *Where's the

16  torts*?  We're talking about, you know, things -- things that

17  are done vis-a-vis representations to enter into the contract,

18  and then actions that were taken by general partner, you know,

19  to manage the limit the partnership, which is part of another

20  agreement.

21       So, in theory, you can -- obviously, there's going to

22  be an argument on the other side saying, *No, no, no, these are*

23  *all torts*, and you know, that may resonate with some people,

24  but this is, primarily, a contract action.  Everything that

25  we're talking about arises from one contract or another; loan

                                                                              48

1    agreement; limit partnership agreement; agreement for lateral

2    units.  It's all contractual.  And the only thing that really,

3    I think, spins on, is the breach of fiduciary duty, and if the

4    basis for getting rid of it is the economic loss doctrine

5    saying, you know, there's no -- *You can only get contractual*

6    *damages*, well, then the breach of fiduciary duty is strictly a

7    contract action, as well.  So I don't think the

8    characterization of what we abandoned matters.

9            *THE COURT:*  Okay.  All right.  In terms of other

10   matters, and there are, there are three status reports that

11   have been filed, **322**, **326** and **327**, which was filed earlier this

12   afternoon.  I see them.  They don't, by virtue of being status

13   reports, create, if you would a -- a motion or an issue that is

14   teed up before me.  I understand there remains a real reason to

15   be concerned, as to whether -- who is the limited partners?

16   Who was removed?  Who wasn't removed?  There are further

17   concerns about what is going on, with regard to the notes, and

18   the condos and the funds.  Those are things that are matters of

19   deep concern, I grant you all of that, but a status report

20   isn't a motion that requires some action, and it's not the case

21   that every issue that's just kind of raised, via status, is

22   something that I'm going to pick up and say, *Oh, God, now we've*

23   *got to address this*.  I'm being kept advised of things.  All

24   right.  I consider myself advised.

25           We are at the end of this hearing, unless there's some

49

 1   other matter that I have not addressed?  By that, I mean, a

 2   pending motion that I have not addressed?  Mr. Litowitz?

 3          *MR. LITOWITZ:*  I had a motion for each of the LLCs to

 4   reveal their owners, and you said it was denied without

 5   prejudice.

 6          *THE COURT:*  And that's been -- that's not pending.

 7          *MR. LITOWITZ:*  Well, I will -- I will raise it again,

 8   now.

 9          *THE COURT:*  No, you won't.  You want to file

10   something, you can file something.  I'm not sitting here doing

11   this, what we did last time, where I make some ruling and then

12   it's bop-a-gopher again.

13          Is there anything currently pending, currently

14   pending, not that you want to have pending, that you want to

15   file in the future, currently pending, that I have not

16   addressed?

17          *MR. LITOWITZ:*  Yes.  Who runs the company?

18          *THE COURT:*  Mr. Kilroy?

19          *MR. KILROY:*  No, Your Honor.  Thank you.

20          *THE COURT:*  Mr. Gee?

21          *MR. GEE:*  No, Your Honor.

22          *THE COURT:*  Mr. Stewart?

23          *MR. STEWART:*  No, Your Honor.  But I would -- I would

24   like to take the opportunity to thank you for allowing me to

25   appear by phone.  Really appreciate it.

1          THE COURT:  No problem.  We're in recess.

2          THE COURTROOM DEPUTY:  All rise.  Court is in recess.

3     (Recess at 4:50 p.m.)

4                    **REPORTER'S CERTIFICATE**

5     I certify that the foregoing is a correct transcript from

6  the record of proceedings in the above-entitled matter.  Dated

7  at Denver, Colorado, this 12th day of June, 2021.

8

9                                   *S/ Tammy Hoffschildt*
                                    Tammy Hoffschildt
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25