# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Judge Raymond P. Moore

Civil Action No. 19-cv-02443-RM-STV
      Consolidated with 19-cv-2637-RM-STV

---

Civil Action No. 19-cv-02443-RM-STV ("Li Plaintiffs")

**<u>Derivatively:</u>**
Hsin-Yi Wu, and Qi Qin,
in their capacity as limited partners of
Colorado Regional Center Project Solaris LLLP,

      Plaintiffs

v.

Colorado Regional Center Project Solaris LLLP,

      Nominal Defendant,
and

**<u>Directly:</u>**
Hsin-Yi Wu, Jun Li, Qi Qin, Yi Liu, Jie Yang, Yuquan Ni,
Zhongzao Shi, Fang Sheng, Shunli Shao, Kaiyuan Wu,
Zhijian Wu, Zhongwei Li, Sa Wu, Fan Zhang, Lin Qiao,
Jinge Hu, Rujun Liu, Ying Xu, Lu Li, Cao Xiaolong,
and Yuwei Dong,

      Plaintiffs,

v.

Colorado Regional Center LLC,
Colorado Regional Center I, LLC,
Solaris Property Owner LLC,
Solaris Property Owner I LLC,
Peter Knobel, and
Colorado Regional Center Project Solaris LLLP, and
all principals and ultimate owners of business entities pursuant to
piercing of the limited liability veil,

      Defendants.

---

1

Civil Action No. 19-cv-2637-RM-STV ("Cui Plaintiffs")

Dianwen Cui, Lei Gu, Sufen Leng, Xue Mei, Zhou Mei,
Yan Song, Lu Wang, Yue Wu, Zhuo Yang, Jingwen Zhang,
Lei Zhang, Ling Zhang, Xiaohong Zhang, Qin Zhou,
Xun Zhu, and Chunyi Zou,

      Plaintiffs,

v.

Waveland Ventures LLC,
Colorado Regional Center Project Solaris LLLP,
Colorado Regional Center I, LLC,
Solaris Property Owner LLC,
Solaris Property Owner I, and
Peter Knobel,

      Defendants.

---

## ORDER ON PENDING MOTIONS

---

This matter is before the Court on the following motions: (1) "CRC Defendants' Fed. R. Civ. P. 12(b)(6) Motion To Dismiss Cui Plaintiffs' Third Amended Verified Complaint [ECF 190] And Li Plaintiffs' Third Amended Complaint [ECF 121]" (the "CRC Defendants' Motion to Dismiss")[1]; (2) Li Plaintiffs' "Motion To Dismiss Counterclaim By CRC Defendants Under Fed. R. Civ. P. 12(b)(6) And For Order Declaring General Partner Removed Instanter" (the "Li Plaintiffs' Motion to Dismiss")[2]; (3) "Solaris Property Owner, Solaris Property Owner I and Peter Knobel's Amended[] Motion to Dismiss the Li and Cui Complaints" (the "SPO

---

[1] ECF No. 203. CRC Defendants consist of Waveland Ventures, LLC ("Waveland"), Colorado Regional Center, LLC ("CRC"), and Colorado Regional Center I, LLC ("CRC I").
  Li Plaintiffs filed a response (ECF No. 210). Cui Plaintiffs filed a response and also joined in Li Plaintiffs' response. (ECF Nos. 213, 214.) CRC Defendants filed a reply. (ECF No. 228.)
[2] ECF No. 208. CRC Defendants filed a response (ECF No. 219). In ECF No. 225, Li Plaintiffs joined in CRC Defendants' request for declaratory judgment but clarified during the hearing that they wanted CRC Defendants' request dismissed. Regardless, the counterclaim for declaratory relief is brought only by CRC I.

Defendants' Motion to Dismiss")[3]; (4) "Plaintiffs' Motion for Appointment of Receiver (On Ex Parte Basis Without Bond As Permitted by the Loan Documents)" (the "Cui Plaintiffs' Motion for Receiver")[4]; and (5) Li Plaintiffs' "Motion for Admonishment and Attorney Fees against attorney Ty Gee under 28 U.S.C. §1927" (the "Li Plaintiffs' Motion for Sanctions")[5] (collectively, the "Motions"). The Court held a hearing on all Motions except for Li Plaintiffs' Motion for Sanctions. After considering the Motions,[6] applicable parts of the court record, arguments of counsel, and relevant legal authorities, and being otherwise fully advised, the Court finds and orders as follows.

## I.     BACKGROUND

Based on the well-pled factual allegations of the operative complaints and counterclaim, which the Court accepts as true for the purposes of the motions to dismiss, and documents which the Court may consider in evaluating motions to dismiss, the alleged events giving rise to these consolidated actions are summarized as follows.

Colorado Regional Center Project Solaris LLLP ("CRCPS") is a limited liability limited partnership, allegedly created by Colorado Regional Center, LLC ("CRC") and Waveland Ventures, LLC ("Waveland"). CRC is an approved EB-5 Regional Center,[7] authorized by the U.S. Citizenship and Immigration Services ("USCIS") to operate in the State of Colorado. Colorado Regional Center I, LLC ("CRC I"), a subsidiary of CRC, is the general partner of

---

[3] ECF No. 224. Li Plaintiffs filed a response (ECF No. 230), to which Cui Plaintiffs joined (ECF No. 233). Cui Plaintiffs also filed a separate response (ECF No. 234). SPO Defendants filed two reply briefs (ECF Nos. 232, 240).
[4] ECF No. 211. CRC I filed a response and, with leave of the Court, a supplemental response. (ECF Nos. 229, 263, 265.) Cui Plaintiffs filed a reply (ECF No. 236).
[5] ECF No. 242. SPO Defendants filed a response (ECF No. 246).
[6] Other supplemental authorities or notices were also filed for the Court's consideration. (ECF Nos. 239, 247.)
[7] "An EB-5 regional center is an economic unit, public or private, in the United States that is involved with promoting economic growth. Regional centers are designated by USCIS for participation in the Immigrant Investor Program." https://www.uscis.gov/working-in-the-united-states/permanent-workers/employment-based-immigration-fifth-preference-eb-5/eb-5-immigrant-investor-regional-centers (last visited Feb. 24, 2021).

CRCPS. Plaintiffs in these consolidated actions are some of the 165 Chinese investors who each purchased a limited partnership interest in CRCPS for approximately $500,000, as part of an approved EB-5 Program for foreign nationals to obtain a permanent residence visa. CRCPS loaned the investors' money to Solaris Property Owner LLC ("SPO") to fund completion of its condominium project (hereafter "The Residences" or "Solaris") in Vail, Colorado.

This transaction – the investment in limited partnership interests in CRCPS and the loan of the investors' funds – was effectuated and memorialized through several documents. The relevant documents, and a summary of what they cover, are as follows:

- CRCPS's Confidential Information Memorandum ("CIM")[8] dated March 31, 2011: this contained a summary of the offering; a statement of risks; the terms of the offering; the subscription procedures; the "English Language Proficiency" acknowledgement an investor was required to sign, acknowledging the investor has read the CIM and is proficient in the English language; and copies of various documents which would be entered into in conjunction with the offering. Those documents include the Promissory Note, the Limited Liability Limited Partnership Agreement ("Partnership Agreement"), and the Yield Enhancement Agreement ("YEA").

- The Loan Agreement – signed by CRCPS and SPO, dated and effective November 5, 2010;[9]

- The Promissory Note with two exhibits which are supposed to identify the units which would serve as collateral and their value – from SPO to CRCPS;[10]

---

[8] ECF No. 203-1. The papers refer to the CIM sometimes as the private placement memorandum or PPM.
[9] ECF No. 203-6. This copy is incomplete as its exhibits were not included.
[10] ECF No. 203-1, pp. 37-41. This copy attached to the CIM is unexecuted with the two exhibits uncompleted.

- The YEA – between SPO and CRCPS, dated November 10, 2010;[11] and

- The Partnership Agreement of CRCPS.

(ECF Nos. 203-1, 203-3, 203-5, 203-6.) At some point in time prior to April 18, 2012, SPO assigned its rights and obligations under the loan to SPO I. According to Cui Plaintiffs, SPO I is a wholly owned subsidiary of SPO.

As relevant here, the terms of the loan and the parties' relationship were as follows. CRCPS's loan to SPO I was to be funded in multiple advances over a period of time, accruing interest at 5% per annum, with a term of five years for each loan advance.[12] The loan advances were collateralized with recorded deeds of trust on certain condominium units (the "Collateral Units") owned by the borrower. The borrower had no right to prepay for the first three years of each loan advance. At any time after three years of each loan advance, the borrower could repay each loan advance with either cash or the associated Collateral Unit(s) used to secure that advance.[13] Also, beginning three years after the date in which a limited partner has held his or her limited partnership interest, the limited partner may exercise a "put option" to cause CRCPS to redeem his or her limited partnership interest.[14]

CRCPS made 19 loan advances, with the first loan advanced completed April 18, 2012 and the last completed January 30, 2015.[15] On January 29, 2015, Exhibit A to the Promissory Note was completed, showing, as to each loan advance, one condominium that was used as the Collateral Unit, the alleged value of the Collateral Unit, when the loan advance was completed,

---

Unless stated otherwise, the page references are to the page numbers assigned to the document by the court's electronic case filing (ECF) system, found in the upper right-hand corner of the document.

[11] ECF No. 203-5.
[12] ECF No. 203-1, pp. 15, 17 (Bates CRC 14, 16).
[13] ECF No. 203-1, pp. 37-41; No. 203-6.
[14] Partnership Agreement, ECF No. 203-3, Section 13.06.
[15] Li Plaintiffs' complaint, ECF No. 222-4, "Exhibit A (Promissory Note)." *See also* Agreement Regarding Collateral Units, ECF No. 203-7, p. 3.

and its maturity date.[16] Exhibit A showed the value of the 19 Collateral Units totaled $82,500,000 and the 19 loans advanced totaled $82,500,000.

On April 17, 2015, about three years after the first loan advance was completed, CRC I (as general partner of CRCPS) and SPO I entered into the Agreement Regarding Collateral Units ("ARCU").[17] The ARCU stated that SPO I gave notice that it intended to pay the loan advances with the Collateral Units. However, under the ARCU, SPO I would "temporarily" refrain from transferring title to the Collateral Units to CRCPS, the title to the Collateral Units would continue to be held in the name of SPO I but CRCPS would be responsible for paying fees and costs associated with the Collateral Units. But, "for purposes of calculating interest under the Loan Documents," SPO I would be deemed to have tendered the Collateral Units in repayment of the loan advances.[18]

Starting in 2016, CRC and CRCPS started sending sixth-month notices to limited partners listing the Collateral Units as CRCPS partnership property even though title was still held by SPO I and stating that "we are working with the developer to transfer title."[19]

The maturity dates stated for all loan advances have now passed. And, according to Li and Cui Plaintiffs (collectively, "Plaintiffs"), representations that were made that the loan was fully secured (100% collateralized) were false and the loan is in default but yet unpaid. Therefore, Plaintiffs have filed two separate actions, now consolidated, against various defendants. Li Plaintiffs' action was filed on August 28, 2019, and Cui Plaintiffs' action was filed on September 16, 2019.

---

[16] Li Plaintiffs' complaint, ECF No. 222-4.
[17] ECF No. 203-7. Li Plaintiffs called this the "Secret Agreement" in their complaint.
[18] ARCU, ECF No. 203-7, pp. 2-9. *See* ECF No. 190, ¶ 16; No., 222, ¶¶ 80, 81, 85. At the time the complaints were filed, two of the units had been sold, leaving 17 units at issue. (ECF No. 222, p. 3; No. 190, ¶¶ 16, 81.) A third unit was subsequently sold, leaving 16 Collateral Units at issue.
[19] ECF No. 222, ¶ 89.

*Li Plaintiffs' Claims.* Li Plaintiffs' operative complaint raised seven derivative counts on behalf of CRCPS under Fed. R. Civ. P. 23.1 and three direct counts. But, as set forth in Li Plaintiffs' response brief,[20] and subsequently ordered by the Court during the hearing, the following five counts have been dismissed: Count IV (derivative) – transfer of title; Count VII (first – derivative) – removal of CRC I as general partner; Count VII (second – direct) – fraud; Count VII (third – direct) – fraud; and Count VII (fourth – direct) – piercing the corporate veil.[21] Thus, all direct counts have been dismissed. The Li Plaintiffs' remaining five claims are derivative and are as follows:

| Five Derivative Counts | Defendant(s) | Basis |
|---|---|---|
| Count I | CRC I | Breach of Fiduciary Duty |
| Count II | CRC, SPO, SPO I, Knobel, and "LLC Principals" | Civil Theft |
| Count III | SPO I | Breach of Loan Agreement |
| Count V | CRC I | Federal Securities Fraud |
| Count VI | CRC and its principals; Knobel[22] | State Securities Fraud |

*Cui Plaintiffs' Claims.* Cui Plaintiffs' operative complaint[23] contains eight counts with six defendants. During the hearing, Cui Plaintiffs conceded, or voluntarily withdrew, the following claims: Count III (direct) – violation of the Colorado Consumer Protection Act (against all Defendants – withdrawn entirely); Count IV (direct) – Investment Company Act

---

[20] ECF No. 210, pp. 1-2.
[21] Li Plaintiffs, however, reserve the right to seek equitable veil piercing remedies.
[22] The relief requested, however, is to hold "CRC and SPO I and their affiliates and principals accountable." During the hearing, Li Plaintiffs stated the reference to "SPO I" should be to Knobel; that SPO I was a "typo." (Hearing Transcript at ECF No. 252, 16:3-4.)
[23] ECF No. 190.

(against CRCPS and CRC I – withdrawn entirely)[24]; and Count VI (direct and derivative) –

Breach of Contract (against SPO I – direct claim withdrawn). In addition, during the hearing, Cui

Plaintiffs agreed that Count VIII for Piercing the Corporate Veil (Direct) against CRCPS and

SPO I was not a claim but a remedy. Thus, by this count, Cui Plaintiffs were simply putting

CRCPS and SPO I on notice that Cui Plaintiffs would seek to hold CRCPS's and SPO I's owners

and members liable on the fraud, breach of contract, and securities violation claims.

Accordingly, the Court dismisses this claim without prejudice.

With the dismissal of these claims, the following five counts remain:

| Count | Defendant | Basis |
|---|---|---|
| Count I (direct) | All Defendants | Fraud – Misrepresentation |
| Count II (direct and derivative) | CRC and CRC I | Breach of Fiduciary Duty |
| Count V (direct) | All Defendants | 15 U.S.C. §§ 78o and 78j |
| Count VI (derivative) | SPO I | Breach of Contract |
| Count VII (direct and derivative) | CRCPS, SPO, and SPOI | Declaratory Relief |

The complaint defines "Defendants"[25] as "Waveland, CRC, GP,[26] SPO, SPO I, RICK

HAYES, PETER KNOBBEL and Doe Defendants." However, CRC, defined as "Colorado

Regional Center," is not identified in the caption.[27] Second, the caption of the complaint does not

include Rick Hayes and there is no return of service for Mr. Hayes in the record. Finally,

---

[24] The Court construes Cui Plaintiffs' statement at the hearing that they have no response to CRC Defendants' arguments for dismissal of this claim as an agreement that this claim should be dismissed.

[25] ECF No. 190, ¶ 49.

[26] Cui Plaintiffs called Colorado Regional Center I, LLC the "GP" in their complaint. For consistency, the Court refers to this party as CRC I.

[27] *See* Fed. R. Civ. P. 10(a) ("The title of the complaint must name all the parties.").

Defendants is not defined to include CRCPS, which Cui Plaintiffs defined as the "LLLP" in their complaint.[28] Because CRC Defendants did not raise the issue with respect to CRC and the Motions are not directed by or against Mr. Hayes or CRCPS, the Court leaves these matters for another day, as appropriate.

*The Purported Removal of CRC I as General Partner of CRCPS.* By Status Report filed April 20, 2020, Li Plaintiffs stated that CRC I had been removed as the general partner of CRCPS by the proxies and written consents of approximately 70% of the 152 known limited partners. The removal was stated to be made pursuant to Sections 9.06 and 12.02 of the Partnership Agreement. Section 9.06 provides that limited partners may remove the general partner "for cause" by a two-thirds (66%) vote of the limited partners owning interests in CRCPS. Section 12.02 states the term "cause" means "acts of the General Partner which constitute larceny, fraud, or a crime involving moral turpitude." The validity and effect of the purported removal, however, are in dispute.

*CRC I's Counterclaim against Li Plaintiffs.* CRC I filed a counterclaim for declaratory judgment against Li Plaintiffs. In that counterclaim, CRC I seeks a determination that its purported removal as general partner was improper and therefore void.

*The pending motions.* CRC Defendants and SPO Defendants separately move to dismiss the Cui Plaintiffs' and the Li Plaintiffs' operative complaints[29] under Fed. R. Civ. P. 12(b)(6). Li

---

[28] During the hearing, Cui Plaintiffs acknowledged the failure to include CRCPS within "Defendants" is a problem. (ECF No. 252, 18:18-25 to 19:1-6.)

[29] CRC Defendants' Motion to Dismiss (ECF No. 203) refers to the Li Plaintiffs' complaint found at ECF No. 121. The Court has allowed Li Plaintiffs to amend their third amended complaint to add or substitute new verifications under Fed. R. Civ. P. 23.1, and Li Plaintiffs did so. (ECF Nos. 221, 222.) Because the third amended complaint was not otherwise amended, the Court allowed CRC Defendants' Motion to Dismiss to stand, deeming it directed against the third amended complaint (ECF No. 222).

CRC Defendants did not move to dismiss Li Plaintiffs' Count VII (first – derivative) – removal of CRC I as general partner (ECF No. 203, p. 4 n.1). But, at Li Plaintiffs' request, the Court dismissed this count during the hearing.

The Court also deems CRC Defendants' Answer and Counterclaim (ECF No. 204) to the Li Plaintiffs' third amended complaint at ECF No. 121 to be responsive to the third amended complaint found at ECF No. 222.

Plaintiffs move to dismiss CRC I's declaratory judgment counterclaim. In addition, Cui Plaintiffs move for a receiver to be appointed. Finally, Li Plaintiffs filed a motion alleging that SPO Defendants' counsel should be sanctioned. The Court addresses these motions in turn.

## II.    LEGAL STANDARD

### A.  RULE 12(b)(6)

In evaluating a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must accept as true all well-pleaded factual allegations in the complaint (or counterclaim), view those allegations in the light most favorable to the non-movant, and draw all reasonable inferences in that party's favor. *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1136 (10th Cir. 2014); *Mink v. Knox*, 613 F.3d 995, 1000 (10th Cir. 2010). The complaint must allege a "plausible" right to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569 n.14 (2007); *see also id.* at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). Conclusory allegations are insufficient, *Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009), and courts "are not bound to accept as true a legal conclusion couched as a factual allegation," *Twombly*, 550 U.S. at 555 (quotation omitted).

In determining whether a claim has been plausibly alleged, courts "do not require plaintiffs to establish a prima facie case. Instead, [courts] consider whether [plaintiffs] have set forth a plausible claim in light of the elements of their claim." *Frappied v. Affinity Gaming Black Hawk, LLC*, 966 F.3d 1038, 1050 (10th Cir. 2020). *See also Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012) (same).[30] When a party asserts complex claims against multiple defendants, "it is particularly important to make clear exactly who is alleged to have done what

---

[30] Cui Plaintiffs' "no set of facts" standard was rejected by the Supreme Court in *Twombly*, 550 U.S. at 562. *See Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (recognizing the rejection of the "no set of facts" language).

to whom, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations." *Bristow Endeavor Healthcare, LLC v. Blue Cross & Blue Shield Ass'n,* 691 F. App'x 515, 519 (10th Cir. 2017) (quotation marks and citation omitted). Further, "[t]he *Twombly* Court was particularly critical of complaints that mentioned no specific time, place, or person involved in…alleged conspiracies." *Id.* (quotation marks and citation omitted).

"Generally, the sufficiency of a complaint must rest on its contents alone." *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010). Exceptions to this restriction are "(1) documents that the complaint incorporates by reference, (2) documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity, and (3) matters of which a court may take judicial notice." *Id.* (quotation marks and citations omitted). *See also Smallen v. The W. Union Co.* , 950 F.3d 1297, 1305 (10th Cir. 2020) (same). "Mere legal conclusions and factual allegations that contradict such…properly considered document[s] are not well-pleaded facts that the court must accept as true." *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1385 (10th Cir. 1997). Thus, "if there is a conflict between the allegations in the complaint and the content of the attached exhibit, the exhibit controls." *Brokers' Choice of Am., Inc.*, 861 F.3d at 1105.

As a final matter, there are some instances in this case where the opposing party fails to respond to some arguments. The Tenth Circuit has stated that "even if a plaintiff does not file a response to a motion to dismiss for failure to state a claim, the district court must still examine the allegations in the plaintiff's complaint and determine whether the plaintiff has stated a claim upon which relief can be granted." *Issa v. Comp USA*, 354 F.3d 1174, 1178 (10th Cir. 2003). The Court does so here.

11

### B.  RULE 9(b)

Rule 9(b) of the Federal Rules of Civil Procedure states: "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." The purpose of Rule 9(b) is to provide defendants fair notice of plaintiff's fraud claims and the factual ground upon which they are based. *United States ex rel. Polukoff v. St. Mark's Hosp.*, 895 F.3d 730, 744-45 (10th Cir. 2018) (quotation marks, citation, and alterations omitted). Thus, the Tenth Circuit "requires a complaint alleging fraud to set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000). However, "in determining whether a plaintiff has satisfied Rule 9(b), courts may consider whether any pleading deficiencies resulted from the plaintiff's inability to obtain information in the defendant's exclusive control." *St. Mark's Hosp.*, 895 F.3d at 745 (quoting *George v. Urban Settlement Servs.*, 833 F.3d 1242, 1255 (10th Cir. 2016)).

### III.  DISCUSSION

### A.  GENERAL MATTERS

The Court begins by recognizing a number of matters relevant to its analysis and ruling on the pending motions. First, while the Cui Plaintiffs' complaint and Li Plaintiffs' complaint contain some overlapping allegations, there are substantial differences as well. Thus, while the Court includes allegations from both complaints in the Background above, the Court considers the allegations separately in evaluating whether either sets of Plaintiffs have plausibly alleged their respective claims for relief.

Second, one or more party has incorporated or joined in another party's arguments. The Court has allowed it in this instance but has advised the parties that it may not do so again in the future. This is especially so when the Court's review shows some of the incorporated arguments are inapplicable or unavailing in light of the allegations or arguments of the particular party at issue.

Third, one or more party may have relied on the allegations of one set of Plaintiffs to support dismissal of claims from both sets of Plaintiffs. But the Court does not do so in its analysis.

Fourth, during the hearing, Plaintiffs attempted to brush aside or avoid insufficiencies with their allegations by making assertions which are not supported by their complaints. As the Court indicated during the hearing, the focus is on the operative filings, not on matters which were not pled or should have been pled.

And, finally, some of the filings are not a model of clarity. As one party noted during the hearing, there are some "confusing" filings. The Court, however, will not search the record to determine if there is support for a party's position or argument. *See Cordova v. Aragon*, 569 F.3d 1183, 1191 (10th Cir. 2009) ("It is not our role to sift through the record to find evidence not cited by the parties to support arguments they have not made."). The Court also will not search the lengthy complaints to determine whether there are allegations to support a claim. It is up to Plaintiffs to point out where they contend supporting allegations may be found. Nor will the Court allow a party, via argument, to "switch horses mid-stream in search of a swifter steed," *Stephanie C. v. Blue Cross Blue Shield of Mass. HMO Blue, Inc.*, 852 F.3d 105, 114 (1st Cir. 2017), where such argument is not supported by the allegations. *Cf. Issa,* 354 F.3d at 1179 (noting that a plaintiff "may not rely on the allegations in his reply brief to supplement his

complaint"). With these caveats, the Court examines the pending motions but only to the extent they address claims which are still at issue.

**B. CRC DEFENDANTS' MOTION TO DISMISS**

### 1. Cui Plaintiffs' Complaint

Cui Plaintiffs have three claims remaining against CRC Defendants. The Court considers these claims below, after addressing Cui Plaintiffs' Declaration and argument that CRC Defendants' Motion to Dismiss violates the Court's Civil Practice Standards.

Specifically, Cui Plaintiffs' counsel attached a Declaration (ECF No. 213-1) stating, among other things, that CRC I breached its fiduciary duties and that CRC I and SPO/SPO I "clearly conspired" against the Chinese investors. CRC Defendants argue the Court should disregard counsel's affidavit in deciding the Motion to Dismiss. The Court agrees because the Declaration is not a document it may consider in ruling on a Rule 12(b)(6) motion. *Gee*, 627 F.3d at 1186. Accordingly, the Declaration will not be considered.

Next, to the extent Cui Plaintiffs argue that CRC Defendants' Motion to Dismiss should be rejected because it violates this Court's Civil Practice Standards, the Court finds no violation by CRC Defendants in addressing the Li and Cui Plaintiffs' respective complaints together. Therefore, the Motion to Dismiss will not be rejected.

#### a) *Count I – Fraud – Direct Claim.*

Cui Plaintiffs' first claim is for fraudulent inducement into becoming limited partners. CRC Defendants move to dismiss this claim on two bases: statute of limitations and failure to plead fraud with particularity. The Court agrees the fraud claim is insufficiently pled; therefore, it need not decide if it is also time barred.

Cui Plaintiffs point to the material misrepresentations and omissions alleged in paragraphs 56, 66, 68, 70, 73, and 74 of their complaint. Those allegations are as follows:

- Paragraph 56 contains general allegations regarding the EB-5 program.

- Paragraph 66 refers to "clear representations" allegedly made by Waveland, CRC, and SPO to "EB-5 investors," with such representations contained in paragraph 65. Paragraph 65 alleges that Waveland and CRC's agents provided "*one*" PowerPoint presentation[31] which represented that the loan was 100% collateralized with real property, i.e., the Solaris units; the limited partners (investors) would have a 2% preferred return; there would be a 100% return of principal; and investors would have access to use of one of Solaris's units.

- Paragraph 70 alleges CRC and Waveland's[32] "Agent" spent little time explaining the complexities of the "Offering Documents"[33] and "usually" provided little guidance as to the meaning of the Offering Documents, and there was "usually" little to no time to review the Offering Documents.

- Paragraph 73 alleges an omission – that the Agent did not talk about risk.

- Paragraph 74 alleges the Offering Documents are "riddled with disclaimers, risk factors, and complex legal jargons and terms that most U.S. born individuals would find perplexing."

(ECF No. 190.)

To determine whether Cui Plaintiffs plausibly allege a claim for fraudulent misrepresentation, the Court examines whether there are sufficient allegations: "(1) that the defendant made a false representation of a material fact; (2) that the one making the representation knew it was false; (3) that the person to whom the representation was made was ignorant of the falsity; (4) that the representation was made with the intention that it be acted upon; and (5) that the reliance resulted in damage to the plaintiff." *Bristol Bay Prods., LLC v. Lampack*, 312 P.3d 1155, 1160 (2013). *See also Squires v. Breckenridge Outdoor Educ. Ctr.*, 715 F.3d 867, 878 (10th Cir. 2013) (identifying five factors) (applying Colorado law). For fraud

---

[31] In Chinese and English. (ECF No. 190, ¶ 68.)
[32] ECF No. 190, ¶¶ 61-65.
[33] Cui Plaintiffs defined this term to mean the loan, CIM, and "related documents." (ECF No. 190, ¶ 19.)

by omission, Cui Plaintiffs should plausibly allege: (1) defendant failed to disclose a past or

present material fact which it had a duty to disclose; (2) defendant failed to disclose it with the

intent of creating a false impression of the actual facts in the mind of the plaintiff; (3) defendant

failed to disclose the fact with the intent that the plaintiff take a course of action he or she might

not take if he or she knew the actual facts; (5) plaintiff took such action or decided not to act

relying on the assumption that the undisclosed fact did not exist or was different from what it

actually was; (6) plaintiff's reliance was justified; and (7) this reliance caused plaintiff damages.

Colo. Jury Instr., Civil 19:2.

More specifically, "a complaint alleging fraud [is required] to set forth the time, place

and contents of the false representation, the identity of the party making the false statements and

the consequences thereof." *Koch*, 203 F.3d at 1236; *see also George v. Urban Settlement Servs.*,

833 F.3d 1242, 1254 (10th Cir. 2016) (same). "[T]he gravamen of [a fraud claim] is the

defendant's conscious knowledge of the falsity of the representation or such recklessness as

amounts to a conscious indifference to the truth." *Ebrahimi v. E.F. Hutton & Co.*, 794 P.2d

1015, 1017 (Colo. App. 1989).

CRC Defendants contend that, of the paragraphs Cui Plaintiffs reference in their

complaint, only paragraphs 73, 74, and 65 contain allegations of misrepresentations and

omissions. And, according to CRC Defendants, such allegations fail to adequately allege false or

misleading statements; the documents signed by Cui Plaintiffs preclude any justifiable reliance;

and the complaint does not plausibly allege facts supporting "scienter," i.e., the requisite

knowledge of falsity or recklessness. In response, Cui Plaintiffs assert that CRC I is the only

party who has actual knowledge of who made the presentations, and that "[t]here is very mystery

as to who presented this information to the Plaintiffs nor is there a question as to what is being

claimed."[34] CRC Defendants' papers, with which the Court mainly agrees, set forth why Cui Plaintiffs' allegations fail to meet the heightened pleading requirement for this common law fraud claim.

First, the Court finds insufficient allegations of false or misleading statements or omissions. Here, Cui Plaintiffs do not dispute that the fraud allegations upon which they rely are contained in paragraphs 56, 66, 68, 70,[35] 73, and 74. But, such paragraphs are insufficient. For example, paragraph 65 (referenced in paragraph 66) alleges misrepresentations were made during *one* PowerPoint presentation by Waveland and CRC's agent.[36] But, as CRC Defendants argue, there are no allegations to indicate when this occurred or which, if any, of the Cui Plaintiffs were even present for such alleged misrepresentations. As Cui Plaintiffs acknowledge, there "were 165 investors who were solicited at various times through various presentations"[37] – Cui Plaintiffs, however, are only 16 of such investors.

Cui Plaintiffs' reliance on *In re Rockefeller Ctr. Properties, Inc. Sec. Litig.*, 311 F.3d 198 (3d Cir. 2002) is misplaced. There, the Third Circuit did state that "[w]here it can be shown that the requisite factual information is peculiarly within the defendant's knowledge or control, the rigid requirements of Rule 9(b) may be relaxed." *Id.* at 216. The Third Circuit, however, went on to state:

> Nevertheless, even when the defendant retains control over the flow of information, *boilerplate and conclusory allegations will not suffice. Plaintiffs must accompany their legal theory with factual allegations that make their theoretically viable claim plausible.*

---

[34] ECF No. 213, p. 13.
[35] CRC Defendants reference paragraph 79 when it is clear they mean paragraph 70. (*See* ECF No. 228, p. 4; No. 190, ¶ 94.)
[36] The Court does not find the "who" to be insufficient as to the agents. The allegations, construed in favor of Cui Plaintiffs, are sufficient to put CRC Defendants on notice that the agents at issue are those with whom CRC allegedly had Agency Agreements. That the specific names of the agents have not been identified at this time is insufficient to support dismissal under Rule 12(b)(6).
[37] ECF No. 213, p. 6.

*Id.* (quotation marks and citation omitted, italics in original). Thus, the *In re Rockefeller* court found "Rule 9(b) requires, at a minimum, that plaintiffs support their allegations of securities fraud with all of the essential factual background that would accompany 'the first paragraph of any newspaper story' – that is, the 'who, what, when, where and how' of the events at issue." *Id.* at 217 (citation omitted).

But, here, it should go without saying that the factual information of "who, what, when, where and how" is within the knowledge of those investors who attended the presentation. *Khalik*, 671 F.3d at 1194 (recognizing there are certain details the plaintiff should know and could properly plead). But there are no specific allegations that Cui Plaintiffs even attended the presentation alleged in paragraphs 65 and 66 and, if they did not, what presentation, if any, they did attend and what was represented (or misrepresented) at that presentation. As CRC Defendants argue, it is "clearly incorrect" "that CRC I is the *only* party who possesses actual knowledge of documents and presentations made to the *Cui Plaintiffs*."[38]

Second, Cui Plaintiffs' allegations are also insufficient to plead CRC Defendants acted with the requisite "knowledge of the falsity of the representation or such recklessness as amounts to a conscious indifference to the truth." *Ebrahimi*, 794 P.2d at 1017. Such allegations are conclusory; they are devoid of any factual enhancement. (*See* ECF No. 190, e.g., ¶ 97 ("At the time Defendants made the representations, they knew them to be false.").)

In summary, Cui Plaintiffs' general allegations do not suffice. In light of the Court's determination that Cui Plaintiffs fail to plausibly allege at least two of the fraud claim elements, the Court need not consider CRC Defendants' other arguments. Accordingly, CRC Defendants' Motion to Dismiss is granted as to the fraud claim.

---

[38] ECF No. 228, p. 5 (first italics in original, second italics added).

### b) *Count II – Breach of Fiduciary Duty – Direct and Derivative*

Cui Plaintiffs allege that CRC and CRC I breached their fiduciary duties to them and to CRCPS, specifically citing again to paragraphs 56, 66, 68, 70, 73, and 74 of their complaint.[39] In order to state a claim for breach of fiduciary duty, a plaintiff should plausibly allege: "1) that the defendant was acting as a fiduciary of the plaintiff; 2) that he breached a fiduciary duty to the plaintiff; 3) that the plaintiff incurred damages; and 4) that the defendant's breach of fiduciary duty was a cause of the plaintiff's damages." *Graphic Directions, Inc. v. Bush*, 862 P.2d 1020, 1022 (Colo. App. 1993). *See also Sewell v. Great N. Ins. Co.*, 535 F.3d 1166, 1172 (10th Cir. 2008) (same) (applying Colorado law).

CRC Defendants contend this claim is barred by the statute of limitations; is barred because Cui Plaintiffs lack standing to sue, derivatively, for alleged breaches which occurred before they became limited partners; and is barred by the economic loss rule. The Court starts with Rule 23.1.

*Rule 23.1: Derivative Claim.* CRC Defendants contend that the alleged breaches all occurred prior to Cui Plaintiffs' investment and, therefore, they lack standing to sue under Rule 23.1(b)(1). The Court agrees.

Rule 23.1 of the Federal Rules of Civil Procedure requires that a shareholder derivative complaint allege that "the plaintiff was a shareholder or member at the time of the transaction complained of, or that the plaintiff's share or membership later devolved on it by operation of law." Fed. R. Civ. P. 23.1(b)(1). Under this "contemporaneous ownership rule," to have standing to sue as a representative plaintiff in this derivative action, Cui Plaintiffs must have owned their limited interest at the time of the complained of acts; their derivative claim may not be based on

---

[39] ECF No. 190, ¶ 109. It is unclear to what extent these allegations could even support a breach of fiduciary duty against CRC Defendants. For example, paragraph 56 contains general allegations about the EB-5 Regional Centers.

transactions which occurred prior to the time in which they became limited partners. *Rosenbaum v. MacAllister*, 64 F.3d 1439, 1443 n.2 (10th Cir. 1995); *see also Cadle v. Hicks*, 272 F. App'x 676, 678-79 (10th Cir. 2008) (complaint subject to dismissal for failure to satisfy contemporaneous ownership requirement). But, as CRC Defendants argue, all of what Cui Plaintiffs complain of occurred before they became limited partners. The alleged misrepresentation and marketing materials which were disseminated to potential investors to solicit investments and the like[40] all occurred prior to Cui Plaintiffs becoming limited partners. Accordingly, Cui Plaintiffs lack standing to complain of such transactions.

To the extent Cui Plaintiffs *argue* there are continuing or ongoing breaches of fiduciary duty to CRCPS, including the filing of the Motion to Dismiss itself, such argument is unavailing. First, no such *allegations* are contained in their complaint. Second, such arguments do not support a *derivative* breach of fiduciary duty claim as Cui Plaintiffs assert CRC I "has been actively breaching its fiduciary duties to the *limited partners* on a daily basis since the inception of the LLLP [CRCPS]."[41] Accordingly, the motion is granted as to the derivative breach of fiduciary duty claim.

***Economic Loss Rule: Direct and Derivative Claim.*** The Court addresses two issues CRC Defendants raise with respect to the direct claim: against whom is this claim is asserted and the economic loss rule.

In footnote 5 of CRC Defendants' Motion to Dismiss they argue the breach of fiduciary duty claim is against CRCPS's general partner and, therefore, it must be pled as a derivative claim. Cui Plaintiffs' response does not address this contention (perhaps because it was in a

---

[40] As stated, there are no allegations that Cui Plaintiffs were even present for such alleged presentation.
[41] ECF No. 213, p. 10 (italics added).

footnote) but does address their claim as if it were only being asserted against the general partner – CRC I. To the extent this claim is – or continues to be – also asserted against CRC, the Court addresses CRC Defendants' contention below that Cui Plaintiffs fail to plausibly allege any claim against CRC.

As for the direct claim against CRC I, CRD Defendants contend this and the derivative claim are barred by the economic loss rule. The Court agrees.

Under Colorado's economic loss rule, "a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law." *Town of Alma v. AZCO Constr., Inc.,* 10 P.3d 1256, 1264 (Colo. 2000). "[F]or a duty to be 'independent' of a contract, and thus actionable in tort notwithstanding the economic-loss rule, two conditions must be met. First, the duty must arise from a source other than the relevant contract….Second, the duty must not be a duty also imposed by the contract." *Haynes Trane Serv. Agency, Inc. v. Am. Standard, Inc.*, 573 F.3d 947, 962 (10th Cir. 2009) (applying Colorado law). In other words, even if the underlying duty would arise in the absence of the contract, the duty is not considered independent if it is memorialized in the contract.

Here, the very duties Cui Plaintiffs allege which are breached – the duties of candor, good faith, and loyalty in the management and administration of the EB-5 Investors investment – are the same duties required in the Partnership Agreement. Section 8.06 of the Partnership Agreement specifically provides that CRC I "shall have a fiduciary responsibility for the safekeeping and use of all funds and assets of the Limited Partnership."[42] Accordingly, the direct claim and derivative claim are also dismissed on this basis.

---

[42] ECF No. 203-3, § 8.06.

c) *Count V – Federal Securities And Aiding and Abetting*

Cui Plaintiffs' Count V alleges liability under 15 U.S.C. § 78j (§ 10(b)) for fraudulently inducing them into purchasing limited partnership interests and for aiding and abetting under 15 U.S.C. § 78o. Cui Plaintiffs seek rescission as their remedy. The Court starts with § 78j.

**Section 78j.** CRC Defendants argue Cui Plaintiffs' federal securities fraud claim are time barred and the allegations are insufficient to satisfy the heightened pleading requirements. The Court agrees with the first argument, so it need not decide the second argument.

This securities claim is subject to a three-year statute of limitations and five-year statute of repose. *See* 28 U.S.C. § 1658. The statute of repose is not subject to equitable tolling. *See Merck & Co. v. Reynolds*, 559 U.S. 633, 650 (2010) (Noting "Congress' inclusion in the statute of an unqualified bar on actions instituted '5 years after such violation,' § 1658(b)(2), giv[es] defendants *total repose* after five years." (italics added) (citing *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 363 (1991) (holding predecessor statute not subject to equitable tolling))); *cf. California Pub. Employees' Ret. Sys. v. ANZ Sec., Inc.*, -- U.S. --, 137 S. Ct. 2042, 2051, 198 L. Ed. 2d 584 (2017) (statutes of repose are not subject to equitable tolling). Nor to any continuing fraud exception. *Carlucci v. Han*, 886 F. Supp. 2d 497, 514-515 (E.D. Va. 2012) (collecting cases reaching differing conclusions but agreeing with courts which reject applying this exception). And, here, Cui Plaintiffs do not contest they purchased their limited partnership interests no later than 2012.[43] Under the five-year statute of repose, their claim filed on September 16, 2019 is time barred. Therefore, this claim is subject to dismissal.

---

[43] CRC Defendants represent, with supporting documentation, that all investments were made by 2012, which Plaintiffs do not dispute. Accordingly, the Court assumes that it is so.

*Section 78o(a)(1).* Cui Plaintiffs here allege that "Defendants" aided and abetted the use of Agents to solicit investment and sell limited partnerships interests in CRCPS, when neither Defendants nor the Agents were registered brokers and dealers, in violation of 16 U.S.C. § 78o(a)(1). CRC Defendants contend there is no private right of action under § 78o(a)(1); even if there were a private right of action for a violation of § 78o(a)(1), it does not extend to an action for aiders and abettors; and this claim is barred by the one-year statute of limitations and three-year statue of repose. Cui Plaintiffs' response does not dispute that there is no private right of action. Instead, Cui Plaintiffs argue that Defendants were less aiders and abettors and more controlling or directing parties, liable under 15 U.S.C. § 78t(a). The Court rejects Cui Plaintiffs' argument.

Cui Plaintiffs' complaint fails to allege CRC Defendants are liable under § 78t(a) and they cannot amend their *third* amended complaint by argument in a response brief. *Kearney v. Dimanna*, 195 F. App'x 717, 721 n.2 (10th Cir. 2006) (court will not consider claims where they were not pleaded in the complaint). "[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984) (cited with approval in *Kearney,* 195 F. App'x at 721 n.2). Therefore, this argument does not salvage their claim.

Moreover, the Court construes Cui Plaintiffs' response which relies on a different statute as either an abandonment of their count based on any claim under § 78o(a)(1) or a concession that there is no private right of action for allegedly aiding and abetting a violation of § 78o(a)(1). Accordingly, this count is subject to dismissal on this basis.

Even, assuming, however, that Cui Plaintiffs did not abandon or concede this count, the Court nonetheless agrees this claim should be dismissed. The Court finds that, if an implied right

of action exists, the one-year statute of limitations and three-year statute of repose apply. CRC Defendants rely on *Celsion Corp. v. Stearns Mgmt. Corp.,* 157 F. Supp. 2d 942, 946-947 (N.D. Ill. 2001) and Cui Plaintiffs provide no legal authority to the contrary. The Court's independent research reveals no controlling authority on this issue. Nonetheless, the Court is persuaded by the *Celsion Corp.* court's analysis and agrees that, assuming there is a private right of action for aiding and abetting a violation of § 78o(a)(1), the one-year discovery/three-year period of repose for other causes of action under the 1934 Securities Exchange Act should apply.[44] Here, the alleged solicitations all occurred, at the latest, by 2012.[45] Accordingly, this count is time barred.

### d) *CRC and Waveland*

As their final argument, CRC Defendants assert that Cui Plaintiffs fail to allege anything at all with specificity against CRC and Waveland. Therefore, CRC Defendants argue, they should be dismissed entirely from this action. Cui Plaintiffs were silent on this issue as well – in their response and during the hearing. Upon review, the Court agrees with CRC Defendants.

Cui Plaintiffs define "Defendants" in their complaint to include CRC and Waveland but, as the Court has stated, conclusory collective allegations about Defendants are insufficient. And, the Court's word search for "Waveland" and "CRC" in Cui Plaintiffs' complaint shows any specific allegations against these Defendants fare no better.

There are scant allegations against Waveland. For example, paragraph 9 alleges, in a conclusory fashion, that "Waveland through the various entities it owned and controlled, colluded with SPO to defraud the EB-5 Investors by misrepresenting to them that the loan was

---

[44] The Court recognizes that the express one-year statute of limitations/three-year statute of repose in 15 U.S.C. § 78cc(b) only applies to violations of 15 U.S.C. § 78o(c)(1) and (c)(2), and not to § 78o(a)(1). If anything, in the Court's view, this would lend support to finding that any implied right of action under § 78o should have the same limitations.

[45] Even if the Court were to apply the longer two-year statute of limitation and five-year statute of repose found at 28 U.S.C. § 1658, applicable to claims of "fraud, deceit, manipulation, or contrivance," Cui Plaintiffs' claims would still be time barred.

100% collateralized and safe." Likewise, paragraph 20 alleges that Waveland "did not provide all investors with Chinese versions of the Offering Documents." While paragraphs 65 and 66 do allege that Waveland provided a PowerPoint presentation, the Court has found such presentation does not support the claims alleged.

There are more allegations identifying CRC, but they too are insufficient. For example, Cui Plaintiffs allege that CRC would collect a management fee, did not provide all investors with Chinese versions of the Offering Documents, had a conflict of interest, and was also involved with the PowerPoint Presentation. But these and other allegations fail to plausibly support viable claims against CRC, e.g., that CRC owed and breached a fiduciary duty to CRCPS or that it fraudulently induced these investors to purchase their limited partnership interests.

In summary, the Court finds Cui Plaintiffs fail to state any claim against Waveland and CRC. Therefore, in conformity with the Court's findings above concerning CRC Defendants' Motion to Dismiss, all CRC Defendants are dismissed from this case.

### 2. Li Plaintiffs' Complaint

Li Plaintiffs are suing only derivatively on behalf of CRCPS. The Court considers their remaining four derivative claims against one or more CRC Defendants below.

### a) *Count I – Breach of Fiduciary Duty – Against CRC I*

Li Plaintiffs allege that CRC I's fiduciary duty "aris[es] by Contract and Statute."[46] Li Plaintiffs allege that CRC I breached its fiduciary duty by not acting in CRCPS's and the limited partners' best interests, with care, skill, loyalty, and sound business judgment,[47] identifying a number of alleged actions. CRC Defendants' Motion to Dismiss raises four arguments: the breaches alleged in paragraphs 118, 119, 120, 122, and 123 (pre-investment conduct) are barred

---

[46] ECF No. 222, p. 32.
[47] ECF No. 222, ¶ 117.

by the three-year statute of limitations; Li Plaintiffs lack standing to sue under Rule 23.1(b)(1) for transactions complained of prior to the time they became limited partners; Li Plaintiffs' alleged post-investment breaches fail to state a claim; and the claim is barred by the economic loss rule. The Court examines them below.

The Court starts with whether Li Plaintiffs have standing to complain of alleged pre-investment breaches. As stated above, under the "contemporaneous ownership rule" of Fed. R. Civ. P. 23.1, to have standing to sue as a representative plaintiff in this derivative action, Li Plaintiffs must have owned their limited partnership interests at the time of the complained of acts; their derivative claim may not be based on transactions which occurred prior to the time in which they became limited partners. *Rosenbaum*, 64 F.3d at 1443 n.2. But, as CRC Defendants argue, much of what Li Plaintiffs complained of occurred before they became limited partners. The loan documents – e.g., the Loan Agreement, Promissory Note, and YEA - were entered into[48] prior to Li Plaintiffs becoming limited partners; Li Plaintiffs do not argue or show otherwise.[49] Accordingly, Li Plaintiffs lack standing to complain of such transactions.[50] In light of this finding, the Court need not reach CRC Defendants' argument that complaints of such pre-investment breaches are also barred by the statute of limitations.

This leaves Li Plaintiffs' alleged post-investment breaches – paragraphs 121 (failing to get title to Collateral Units transferred); 124 (failing to collect on the loan), and 125 (sending notices with erroneous valuations of the Collateral Units). "[T]o recover on a claim for breach of fiduciary duty, a plaintiff must prove: 1) that the defendant was acting as a fiduciary of the plaintiff; 2) that he breached a fiduciary duty to the plaintiff; 3) that the plaintiff incurred

---

[48] ECF No. 222, ¶ 31.
[49] In fact, they fail to respond at all to this argument.
[50] ECF No. 222, ¶¶ 118-120, 122-123, 127.

damages; and 4) that the defendant's breach of fiduciary duty was a cause of the plaintiff's damages. *Taylor v. Taylor*, 381 P.3d 428, 431 (Colo. App. 2016) (quotation marks and citation omitted). Two of CRC Defendants' arguments address these breaches: failure to state a claim and the economic loss rule.

As to paragraphs 121 and 125, CRC Defendants contend Li Plaintiffs fail to – or cannot – allege damages. Although Li Plaintiffs do not directly respond, the Court is not persuaded because, as the Court understands Li Plaintiffs' theories of this case, they include CRC I's failure to take any action or to timely act regarding the Collateral Units, so that the units could be sold to repay the loan. As to paragraph 124, CRC Defendants contend that, with the ARCU, there is no breach of the loan agreement and, therefore, there could be no breach of fiduciary duty in not collecting on the loan. But, as set forth below, the Court has found that Li Plaintiffs have plausibly alleged a breach of the loan agreement. Further, even assuming there is no breach of contract, that begs the question of whether CRC I breached its fiduciary duty because it did not call in the loan, i.e., have the titles transferred. Accordingly, these post-investment allegations are not subject to dismissal on this basis.

CRC Defendants' final argument relies on the economic loss rule. Li Plaintiffs respond that the economic loss rule does not apply because it is intended to prevent a plaintiff from recovering twice and the fiduciary duties they rely on are derived from contract (the Partnership Agreement) and from the Colorado Uniform Limited Partnership Act.

Li Plaintiffs' first position is readily rejected. As CRC Defendants contend, the policy behind this rule is "(1) to maintain a distinction between contract and tort law; (2) to enforce expectancy interests of the parties so that they can reliably allocate risks and costs during their bargaining; and (3) to encourage the parties to build the cost considerations into the contract

because they will not be able to recover economic damages in tort." *BRW, Inc. v. Dufficy & Sons, Inc.*, 99 P.3d 66, 72 (Colo. 2004). *See also Spring Creek Expl. & Prod. Co., LLC v. Hess Bakken Inv., II, LLC*, 887 F.3d 1003, 1022 (10th Cir. 2018) (recognizing Colorado's rationale in adopting the economic loss rule, "including the importance of maintaining the distinction between contract and tort law and preserving the right of contracting parties to allocate risk").

Li Plaintiffs' second position is also rejected. As stated above, under Colorado's economic loss rule, for a duty to be independent of a contract, "the duty must arise from a source other than the relevant contract" and "the duty must not be a duty also imposed by the contract." *Haynes Trane Serv. Agency, Inc.*, 573 F.3d at 962. Here, Li Plaintiffs rely on the statutory duties "owed by general partners to *limited partners*," citing to Colo. Rev. Stat. § 7-62-403(1).[51] That, however, cannot serve as a basis for their claim for breach of fiduciary duty owed to the *partnership*, CRCPS. Regardless, the duties Li Plaintiffs rely on are memorialized in the Partnership Agreement. Indeed, Li Plaintiffs cite to Sections 8.06 and 8.04 of the Partnership Agreement,[52] which provides, respectively, that "[t]he general partner[] [CRC I] shall have a fiduciary responsibility for the safekeeping and use of all funds and assets of the Limited Partnership [CRCPS]" and "[i]n carrying out their duties and exercising the powers hereunder, the General Partner[] [CRC1] shall exercise reasonable skill, care, and business judgement." Accordingly, such allegations are barred by the economic loss rule.[53]

---

[51] ECF No. 210, p. 15 (italics added).

[52] ECF No. 222, ¶ 45 (alleging fiduciary duty under Section 8.06 to safeguard assets and use reasonable care in making investments); ¶ 114 (alleging duty under Section 8.04 to "exercise reasonable skill, care, and business judgment").

[53] Indeed, the entire claim, as pled, is barred by the economic loss rule.

### b) *Count II – Civil Theft – Against CRC and "LLC Principals"*

In this claim, Li Plaintiffs allege that CRCPS was deceived into making the loan by CRC and others, with the impression that the loan was fully collateralized. SPO, SPO I, and Knobel allegedly engaged in various wrongful actions and Knobel allegedly converted $40,000,000, "accompliced by CRC and its affiliates and principals."[54] This alleged deception caused CRCPS to part with the $82,500,000 to SPO I, for the benefit of SPO and Knobel. The allegations then close with the assertion that the Lender Defendants and Borrower Defendants[55] violated their duties to the investors. CRC Defendants argue there are no allegations by Li Plaintiffs which address the elements of a civil theft claim.

Under Colorado's civil theft statute, Li Plaintiffs should plausibly allege that "(1) the defendant knowingly obtained control over the *plaintiff's* property without authorization and (2) the defendant did so with the specific intent to permanently deprive the plaintiff of the benefit of the property." *Tisch v. Tisch*, 439 P.3d 89, 103 (2019) (italics added). Neither Li Plaintiffs' allegations nor their response supports that such a claim is sufficiently alleged on behalf of CRCPS. Instead, Li Plaintiffs' response shows that the theft they truly claim is the theft of *their* money, given to CRCPS:

> CRC created a false impression of full collateralization to get *investors* to part with *their money*, then later failed to fully collateralize and failed to collect the loan. That is civil theft –

(ECF No. 210, p. 18, Response (italics added).) Their allegations in the complaint do not support a civil theft claim by CRCPS against CRC or its principals. Accordingly, this claim is also dismissed.

---

[54] ECF No. 222, ¶ 148.
[55] The Lender Defendants are alleged to be CRC, CRC I, and Waveland, and the Borrower Defendants are alleged to be SPO, SPO I, and Knobel.

### c) Count V – Federal Securities Claim – Against CRC I

Li Plaintiffs' claim is on behalf of CRCPS against its general partner CRC I.[56] Here, Li Plaintiffs allege that the limited partnership interests and the put options were securities. They contend that each notice sent to investors of the put option was a separate security offering, with the last offer made in 2019. CRC Defendants argue the put option was part and parcel of the initial limited partnership purchase; this claim is barred by the statute of limitations and statute of repose; that CRCPS cannot have a securities fraud claim against itself; and Li Plaintiffs fail to sufficiently plead a securities fraud claim. The Court agrees with the first three arguments; therefore, it need not address the last argument.

First, the Court agrees with CRC Defendants that the put options were not new security offerings – they were included in the Partnership Agreement.[57] And, second, Li Plaintiffs signed such agreements by 2012. Under the five-year statute of repose, Li Plaintiffs' claim filed on August 28, 2019 is time barred.

Finally, the Court also agrees that CRCPS cannot, in effect, have a securities fraud claim against itself by suing its general partner (CRC I) over the securities it (CRCPS) offered and sold. Indeed, Li Plaintiffs allege that CRCPS, acting through CRC I, issued the offering of securities. Moreover, on this claim, Li Plaintiffs do not seek to recover anything on behalf of CRCPS; instead, they seek to recover *their* investments for *themselves*. Accordingly, Li Plaintiffs fail to state a viable claim for securities fraud on behalf of CRCPS.

---

[56] Li Plaintiffs' allegations vacillate between CRC and CRC I. Because CRC Defendants do not argue otherwise, and the Court views the allegations in a light most favorable to Li Plaintiffs, the Court will construe these allegations as alleged against CRC I.

[57] Partnership Agreement, ECF No. 203-3, Section 13.06.

### d) *Count VI – State Securities Claim – Against CRC "and its principals"*

Li Plaintiffs' state securities claim fares no better. Here, Li Plaintiffs sue derivatively on behalf of CRCPS against CRC and its principals. The allegations here complain of the put options and misleading and fraudulent valuations sent in connection with notices of such options. As the Court stated in its findings regarding Li Plaintiffs' federal securities claim, the put option was a part of the limited partnership offering which occurred by 2012. Under the Colorado five-year statute of repose, Colo. Rev. Stat. § 11-51-604(8), for state securities fraud claims, Li Plaintiffs' claim is time barred. Moreover, Li Plaintiffs allege that such notices were sent by CRC *and* CRCPS;[58] it is CRCPS's alleged securities at issue; Li Plaintiffs, individually, allegedly were deceived; and Li Plaintiffs seek relief for themselves, not for CRCPS. Therefore, they have also failed to state a claim for securities fraud on behalf of CRCPS.

### e) *Waveland and CRC*

CRC Defendants also raise the argument that Li Plaintiffs' complaint fails to plead specific allegations against Waveland and CRC which would support any claims against them. Li Plaintiffs apparently contend that Waveland and CRC may be liable based on piercing the corporate veil – thus, they argued during the hearing, they "need to assert liability up the chain of LLCs." But Li Plaintiffs have voluntarily dismissed their claim for piercing the corporate veil, with the proviso that they reserve the right to pierce the corporate veil as a remedy. Thus, Li Plaintiffs are seeking to recover from CRC and Waveland based on the remedy of piercing the various entities' veils. But, here, the Court finds that dismissal of all CRC Defendants is warranted. Thus, as to them, there will be no judgment and no need for any veil piercing remedy. Accordingly, the Court also dismisses the CRC Defendants on this basis.

---

[58] ECF No, 222 ¶¶ 98, 99,

### C. SPO DEFENDANTS' MOTION TO DISMISS

The SPO Defendants move to dismiss all claims by Plaintiffs. Again, as neither the factual allegations nor the responses to the motion are identical, the Court separates them by parties.

#### 1. Cui Plaintiffs' Complaint

Cui Plaintiffs have four claims against the SPO Defendants: Counts I, V, VI, and VII. The Court addresses them below.

##### a) *Count I – Fraud (Direct) – Against all SPO Defendants*

Count I is for fraudulent inducement to invest in CRCPS and become limited partners. The SPO Defendants contend that Cui Plaintiffs fail to state a claim and their claim is barred by the three-year statute of limitations for fraud. *See* C.R.S. § 13-80-101(c) ("All actions for fraud, misrepresentation, concealment, or deceit" must be commenced within three years after the cause of action accrues.). Cui Plaintiffs contend the claim is adequately pled and there is continuing fraud. SPO Defendants counter Cui Plaintiffs' continuing fraud theory does not fly based on the allegations against these defendants. The Court agrees with SPO Defendants.

Cui Plaintiffs do not dispute the fraud claim would have started to run in 2012; instead, they assert the fraud could not have been discovered in 2012 because of subsequent alleged representations that the loan was adequately collateralized. But who made such alleged representations? Cui Plaintiffs' conclusory allegations are that it was "Defendants" who repeatedly provided false and misleading materials in notices provided to Cui Plaintiffs, but such collective allegations are insufficient. Upon a closer review, the factual allegations are that it was the general partner, i.e., CRC I, who allegedly provided such notices. This is supported by Cui Plaintiffs' arguments that is was *CRC I* who continuously sent the investors updates and it was

the *CRC I* who allegedly kept Cui Plaintiffs in the dark.[59] Thus, here, there are no factual allegations against SPO Defendants which would support any continuing fraud. Therefore, Cui Plaintiffs' fraud claim is time barred.

In addition, Cui Plaintiffs also fail to sufficiently plead fraud with particularity against SPO Defendants. The Court's findings in addressing Cui Plaintiffs' fraud claim against CRC Defendants also apply to this claim against SPO Defendants, e.g., it was not SPO Defendants who allegedly sent Cui Plaintiffs the fraudulent notices. In addition, an examination of paragraph 65, referenced by paragraph 66, shows Cui Plaintiffs allege the loan collateralization representations were made by Waveland and CRC's agents, not by SPO Defendants. Finally, Cui Plaintiffs argue fraud allegations are also found at paragraphs 8, 9, 10, 12, 13, 16, 18, 20, and 21. Such, allegations, however, do not save this claim because they are conclusory, are alleged against "defendants" or "defendants' paid agents," and are insufficient to factually allege that SPO Defendants made any fraudulent or misleading statements (or omissions) to Cui Plaintiffs.[60] Accordingly, the fraud claim is subject to dismissal on this basis also.

> **b)** *Count V – Federal Securities Fraud (Direct) – Against All SPO Defendants*

Cui Plaintiffs allege SPO Defendants violated 15 U.S.C. §§ 78o and 78j. The SPO Defendants argue Cui Plaintiffs fail to state a claim, fail to meet the pleadings requirements of *Fed. R. Civ. P 9(b) and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), and fail* to bring their claim within the statute of limitations under 28 U.S.C. § 1658. Cui Plaintiffs respond their claim is adequately pled and there is continuing fraud.

---

[59] ECF No. 190, ¶¶ 79, 95; No. 234, p. 9.
[60] For example, paragraph 16 alleges SPO I and CRC I entered into the ARCU which made CRCPS responsible for fees and cost associated with the Collateral Units, to the benefit of SPO I and CRC I. There are no allegations of any fraudulent misrepresentations or omissions.

To start, as the parties rely on the same arguments that were raised in the fraud claim, the Court agrees with SPO Defendants for the same reasons stated above. Specifically, Cui Plaintiffs fail to state a claim, and such claim is barred by the two-year statute of limitations and five-year statute of repose under 28 U.S.C. § 1658. Cui Plaintiffs purchased their limited partnership interests by 2012 but their complaint was not filed until 2019.

In addition, for those same reasons, the Court also finds that Cui Plaintiffs fail to meet the heightened pleading requirement under the PSLRA. Further, Cui Plaintiffs' citations to additional paragraphs in their complaint also fail to plausibly allege that SPO Defendants engaged in any securities fraud. In fact, most of these paragraphs fail to reference SPO Defendants and the few that do are conclusory. For example, in paragraph 66, Cui Plaintiffs allege there were "clear representations by Waveland, CRC and SPO" in paragraph 65. But, paragraph 65 alleges that the PowerPoint presentation where the alleged misrepresentations were made was provided by *Waveland and CRC's agents*. Accordingly, the motion is granted as to this claim based on 78j.

This leaves open the issue of 78o. The Court was unable to locate in the papers where SPO Defendants address this part of Count V. Regardless, *sua sponte* dismissal under Rule 12(b)(6) may be had "when it is 'patently obvious' that the plaintiff could not prevail on the facts alleged…and allowing him an opportunity to amend his complaint would be futile." *McKinney v. State of Okl., Dep't of Human Servs., Shawnee OK*, 925 F.2d 363, 365 (10th Cir. 1991); *see also Johnson v. Spencer*, 950 F.3d 680, 715 (10th Cir. 2020) (same).

Here, the Court has already found, based on CRC Defendants' arguments, this claim is subject to dismissal based on the statute of limitations. The same holds true for SPO Defendants.

In addition, this claim is subject to dismissal for failure to plausibly allege an aiding and abetting claim against SPO Defendants. Cui Plaintiffs summarily assert and allege collectively that "Defendants" "aided and abetted in the use of Agents" to solicit and sell limited partnership interests. But any factual allegations assert they are CRC's Agents[61] – not the borrower's agents. And, even if the Court were to consider other references to agents, they are alleged to be those Waveland's or CRC's.[62] Finally, while Cui Plaintiffs collectively refer to "Defendants" selling securities when they offered the put options, the specific factual allegation is that CRC I offered put rights in notices to investors and the Partnership Agreement (of which SPO Defendants are not parties) contains such put options. Accordingly, the Court also dismisses this part of Count V.

### c)   *Count VI – Breach of Contract (Derivative) – Against SPO I*

Cui Plaintiffs' breach of contract claim alleges payment of the loan has become due but SPO I has not repaid the loan or transferred title of the Collateral Units to CRCPS as SPO I has stated it intended to do so. SPO I counters this claim is barred based on the ARCU. The Court is not persuaded.

Cui Plaintiffs challenge the enforceability of and obligations under the ARCU and YEA, which the Court addresses below on their declaratory judgment claim. For purposes of this claim the Court assumes the loan was modified or supplemented by the ARCU.[63] At issue then is whether Cui Plaintiffs plausibly allege the loan, as modified, has been breached. SPO I's argument appears to be that until CRCPS made a request for conveyance of any of the Collateral Units, it has no obligation to make any conveyance; therefore, it cannot be in default. SPO I

---

[61] ECF No. 190, ¶ 60.
[62] ECF No. 190, ¶¶ 64, 65.
[63] If the loan was not modified or supplemented by the ARCU, then it appears SPO I would clearly be in breach.

refers to pages 3-4 of the ARCU but the Court's review shows the ARCU is not so limited. Instead, the ARCU also appears to allow SPO I to make a tender of the Collateral Unit covered by the ARCU in payment on the loan.[64] Further, it also appears that, under the terms of the loan, the various loan advances have matured and no one contends the ARCU has changed that maturity date. SPO I does not address how its earlier "tender" of the Collateral Units satisfies its obligation under the terms of the loan at maturity, even as modified. Based on the arguments of these parties, on the current record, the Court cannot say that Cui Plaintiffs fail to plausibly state a claim for breach of contract.[65] Accordingly, SPO Defendants' request for dismissal of this claim against SPO I is denied.

### d) *Count VII – Declaratory Relief (Direct and Derivative) – Against SPO and SPO I*

Count VII seeks declaratory relief as to the enforceability of and obligations under the YEA and ARCU. SPO Defendants contend that Cui Plaintiffs lack standing to bring a direct claim; the Court should decline to consider the claim; and the claim as to the YEA is barred by laches. The Court agrees, in part, with SPO Defendants.

*First*, the Court agrees Cui Plaintiffs, individually, lack standing to assert this declaratory judgment claim. Cui Plaintiffs' argument in reliance on the Colorado statute governing declaratory judgments, C.R.S. § 13-51-106, is simply a nonstarter. They fail to show how it could apply to this federal lawsuit or why it would obviate a need to evaluate their standing to sue. It does not; instead, an examination of the claim shows Cui Plaintiffs, individually, lack standing.

---

[64] ECF No. 203-7, ¶ 4.b.
[65] That is not to say, on a fuller record showing, for example, how the loan documents work together, which party may ultimately prevail.

A limited partner may not bring a direct action against a third-party whose action causes harm to the partnership. *See Tisch*, 439 P.3d at 103 (discussing shareholder standing); *Adams v. Land Servs., Inc.*, 194 P.3d 429, 433 (Colo. App. 2008) (partners, individually, lacked standing to sue for injury to partnership property). Instead, either the partnership itself or a partner acting on behalf of the partnership in a derivative action must pursue that claim. *See Tisch*, 439 P.3d at 103. A partner may bring a personal suit where the partner has sustained an injury separate and distinct from that of the partnership or the other partners. *See id.*

Here, Cui Plaintiffs are not parties to the agreements at issue; they allege no independent duty to them, no direct injury, and no damage that would not be shared by all other limited partners. On the contrary, Cui Plaintiffs allege that SPO I[66] has now stated it will transfer title to the Collateral Units but will require *CRCPS* to pay for more than $1 million in fees and costs associated with the transfer. Cui Plaintiffs allege that SPO I is anticipated to claim that *CRCPS* is responsible for these charges pursuant to the YEA and ARCU, but that "the LLLP [*CRCPS*] contends these agreements are unenforceable" due to lack of consideration."[67] Accordingly, Cui Plaintiffs lack standing to bring a direct (individual) claim.

*Second*, the Court does not agree with SPO Defendants' argument that the Court should decline to consider the claim because it would "serve[] no useful purpose."[68] For example, SPO Defendants posit that even if both agreements were invalidated, SPO I was authorized under the Loan Agreement and Promissory Note to prepay the loan advances by conveying Collateral Units to CRCPS. But the Court finds that, even if true, it would appear that, assuming the actions

---

[66] As with other allegations, Cui Plaintiffs refer to "Defendants" when the claim is not directed against all Defendants. Here, the claim is for declaratory judgment and the record under consideration shows the only borrower on the loan is SPO I.
[67] ECF No. 190, ¶¶ 139-141.
[68] ECF No. 224, p. 31.

37

taken under the ARCU constitute a transfer or conveyance, absent the ARCU no timely conveyance occurred under the Loan Agreement and Promissory Note. Thus, it would appear that SPO I may be in default. But, the Court need not – and does not – reach these issues. It suffices to say that declaratory relief concerning these agreements would not be all for naught.

The Court has also examined the other factors it should consider in deciding whether to exercise its discretion to hear and decide this claim. In addition to finding that this declaratory claim would serve a useful purpose in clarifying the legal relations of the various agreements at issue, the Court finds this declaratory claim (1) would settle the controversy between the parties concerning the validity and effect of these agreements; (2) is not being used for procedural fencing or to provide an arena for a race to *res judicata*; and (3) would not create friction with a state court or improperly encroach upon state jurisdiction. The Court also finds that no alternative remedy has been proposed which is better or more effective. *See Hatton v. Combs*, 793 F. App'x 801, 804 (10th Cir. 2019) (quoting *State Farm Fire & Casualty Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994)).

Finally, the Court need not reach the issue of laches because SPO Defendants raise this as an affirmative defense against Cui Plaintiffs individually.[69] To the extent SPO Defendants intend to raise this defense as a derivative claim, it is rejected. "'The elements of laches are: (1) full knowledge of the facts; (2) unreasonable delay in the assertion of available remedy; and (3) intervening reliance by and prejudice to another.'" *Hickerson v. Vessels*, 316 P.3d 620, 623 (Colo. 2014) (quoting *City of Thornton v. Bijou Irr. Co.*, 926 P.2d 1, 73 (Colo. 1996)). Here,

---

[69] ECF No. 224, p. 32 ("Plaintiffs have known of the YEA since before they *invested*." (emphasis added)). During the hearing, Cui Plaintiffs acknowledged that laches was "problematic" for them, individually, addressing the elimination of the use of the condos by USCIS. But, the claim for declaratory relief does not seek a determination concerning this aspect of the YEA.

SPO Defendants' arguments fail to address how these factors apply derivatively, i.e., as against CRCPS.

### 2. Li Plaintiffs' Complaint

Li Plaintiffs' three derivative claims against the SPO Defendants are set forth in Counts II, III, and VI. The Court addresses each below.

### a) *Count II – Civil Theft (Derivative) – Against SPO, SPO I, and Knobel*

In Count II, Li Plaintiffs assert, on behalf of CRCPS, a civil theft claim under Colo. Rev. Stat. § 18-4-401 and § 18-4-405. Li Plaintiffs' claim is premised on the assertion that they – the investors – were promised that their investment was fully secured, when in fact it was undercollateralized. SPO Defendants move to dismiss based on arguments of failure to plausibly allege a civil theft claim, of failure to meet a heightened burden to allege fraud, and the running of the two-year statute of limitations. *See Tisch*, 439 P.3d at 100 (applying two-year statute of limitations). The Court starts with the last argument.

Li Plaintiffs assert the statute of limitations begins to run when the "victim" – here, Li Plaintiffs – learns of the deception, not from the actual date of deception, citing to *Tisch*, *supra*, and that this did not occur until they hired current counsel in 2019. Thus, they contend, their claim is timely. SPO Defendants counter that their allegations show otherwise. The Court agrees.

Specifically, Li Plaintiffs allege that in *2016* CRC and CRCPS started sending notices to investors who had invested longer than three years[70] "showing a supposed appraisal value of the collateral as well below the Loan, even in the best-case scenario." These notices "showed that the Loan appeared to be undercollateralized by only 19 condominium units," and "the limited partners" (Li Plaintiffs) contacted their foreign agents to see why the loan "was so

---

[70] Plaintiffs had all invested by 2012.

undercollateralized." The agents then arranged for the appraisal firm of HVS Golf Services of Boulder and "that firm concluded that SPO and CRC had *set wildly inflated prices* on the collateral **from the outset**, and that these *wildly inflated collateral numbers* were **not determined by the market prices** but instead by what SPO I determined…."[71] The HVS report, attached to Li Plaintiffs' complaint, is dated August 5, 2016 – more than three years before their action was filed. While it is true that Li Plaintiffs also allege they hired counsel in 2019, who then hired a valuation expert, that does not negate the allegation that these limited partners knew the loan was under-collateralized in 2016. Accordingly, the civil theft claim is dismissed as time barred.[72]

The civil theft claim also fails for failure to state a claim. Under Colorado's civil theft statute, Li Plaintiffs were required to plausibly allege that "(1) the defendant knowingly obtained control over the *plaintiff's* property without authorization and (2) the defendant did so with the specific intent to permanently deprive the plaintiff of the benefit of the property." *Tisch*, 439 P.3d at 103 (italics added). Here, the claim is brought on behalf of *CRCPS* but the theft alleged is of *Li Plaintiffs'* property, i.e., money. Accordingly, CRCPS's claim is also subject to dismissal on this basis.[73]

---

[71] ECF No. 222, ¶¶ 98-101 (italics added, bold in original).

[72] SPO Defendants do not challenge whether this claim, as alleged, plausibly pled a civil theft claim on behalf of *CRCPS*. Nonetheless, during the hearing, Li Plaintiffs attempted to switch their theory, arguing the victim was *CRCPS*. But, the allegations in their operative complaint and their response brief do not support such as revisionist interpretation of their claim. Regardless, based on Li Plaintiffs' theory as alleged in the complaint, the claim is time barred.

[73] The Court would question whether the issue is really one of standing but for the fact that the allegations and arguments show Li Plaintiffs were really seeking to recover *their* money from *SPO Defendants*. They, however, fail to plausibly allege such a viable claim when it was *their* money that was given to *CRCPS* who loaned its money to SPO, whose obligations were then transferred to SPO I.

### b) *Count III – Breach of Contact (Derivative) – Against SPO I*

Li Plaintiffs assert that, under the loan, SPO I had two choices: repay cash at maturity or tender each Collateral Unit to CRCPS at the three-year mark. Li Plaintiffs contend SPO I has defaulted because it did not transfer (convey title to) the Collateral Units after the three-year mark and did not repay the loan at maturity, i.e., the five-year mark. They further allege the ARCU does not change this requirement because: (1) any "temporary period" has expired; and (2) it lacks consideration.

SPO Defendants contend Li Plaintiffs fail to state a claim and the ARCU is still in effect. SPO Defendants' first argument is also directed to Cui Plaintiffs' claim for breach of contract. For the reasons stated above in addressing Cui Plaintiffs' claim, this argument is also rejected as against Li Plaintiffs. Further, Li Plaintiffs' additional argument that the ARCU does not constitute a transfer – because it was done only for the purposes of calculating interest – and therefore does not satisfy the terms of the loan, also supports they have plausibly stated a claim.[74] The ARCU specifically states that, "[f]or purposes of calculating interest … Borrower [SPO I] shall be deemed to have caused a Collateral Unit Distribution [repayment in the form of a Collateral Unit]." However, "[n]otwithstanding the occurrence of a Collateral Unit Distribution…the principal amount of associated Loan Advance shall continue to constitute Indebtedness under the Loan."[75] Thus, on the current record, Li Plaintiffs plausibly allege a claim for breach of contract.

---

[74] To the extent the parties are challenging the validity and effect of the ARCU in toto, the Court finds it is unable to resolve this issue here because it is inadequately briefed. The Court only finds that, assuming the ARCU is valid, based on the arguments on this record, Li Plaintiffs plausibly allege a claim for breach of contract.

In light of the Court's finding, it need not decide other arguments, e.g., Li Plaintiffs' assertion that the ARCU lacks consideration and SPO Defendants' argument that Li Plaintiffs cannot challenge the validity and enforceability of the ARCU. At a minimum, the parties have placed the ARCU into issue in this case and how it affects the Loan.

[75] ECF No. 203-7, p. 4 at ¶ 1.

### c) *Count VI – Colorado Securities Fraud (Derivative) – Against Knobel*

Li Plaintiffs' Colorado Securities Act claim is based on Colo. Rev. Stat. § 11-51-501 and § 11-51-604(5). The essence of their claim is that, as to Knobel, he was allegedly aware of misleading valuations (overstating the value of the Collateral Units) that CRC sent to investors to get them to exercise the put option, which would allegedly cause each investor a loss. Knobel is alleged to have provided the overvaluation of the Collateral Units to CRC. SPO Defendants argue CRCPS lacks standing to bring a securities fraud claim because it was the seller and marketer of the securities which Li Plaintiffs contend were fraudulent; Li Plaintiffs fail to state a claim and plead fraud with particularity; and this claim is barred by the statute of limitations and statute of repose.[76] The Court agrees that CRCPS lacks standing; therefore, it need not reach the other arguments.

Specifically, this securities claim is a derivative claim brought on behalf of CRCPS but the security complained of is CRCPS' limited partnership interests. As SPO Defendants argue,[77] CRCPS cannot have a securities fraud claim against itself. Moreover, Li Plaintiffs' allegations unequivocally show that the alleged conduct was directed against Li Plaintiffs as investors, i.e., the purchasers of the complained of securities. CRCPS, as the issuer of the securities, lacks standing to complain of the alleged "misleading and fraudulent valuations" given by CRC to Li Plaintiffs. *See The Wilderness Soc'y. v. Kane Cty*., 632 F.3d 1162, 1168 (10th Cir. 2011) (en banc) (discussing the two strands of standing); *VR Acquisitions, LLC v. Wasatch Cty.,* 853 F.3d 1142, 1146 (10th Cir. 2017) (same). Accordingly, this claim is also dismissed.

---

[76] In a footnote, SPO Defendants also argue that this claim violates Fed. R. Civ. P. 8(a) because the heading states that it is directed against Knobel personally but the prayer is directed against CRC and SPO I and their affiliates and principals. (ECF No. 224, p. 21 n.10.) In light of the Court's findings, it need not reach this issue, especially since it was raised in a footnote.

[77] Through SPO Defendants' incorporation of CRC Defendants' argument. (ECF No. 230, p. 19; No. 203, p. 22.)

### D. LI PLAINTIFFS' MOTION TO DISMISS

As stated, CRC I filed a counterclaim for declaratory relief against Li Plaintiffs. In that counterclaim, CRC I alleges that, under the Partnership Agreement, two-thirds of all limited partners could vote to remove CRC I as the general partner of CRCPS "for cause," i.e., for "acts of the General Partner which constitute larceny, fraud, or a crime involving moral turpitude."[78] By "Status Report" dated April 20, 2020, Li Plaintiffs (and purportedly other limited partners) announced they appointed the wife and legal assistant of their counsel as their proxy to remove CRC I as the general partner of CRCPS due to fraud and breach of fiduciary duty. CRC I disputes that "cause" exists for its removal or that the removal procedures were proper and, therefore, that it can be and has been properly removed. Thus, it contends, the dispute must be resolved by the courts.

Li Plaintiffs' motion seeks to dismiss the counterclaim and an order "declaring general partner removed instanter." Li Plaintiffs' motion asserts that CRC I's removal was in accord with the voting procedures under the Partnership Agreement and requires no judicial determination of fraud as a prerequisite or as a condition subsequent to its removal as general partner. Li Plaintiffs further contend that judicial review or determination may be had only if the Partnership Agreement had expressly so stated. In other words, if the Court were to require judicial approval or allow judicial review, Li Plaintiffs contend the Court would be rewriting the Partnership Agreement. The Court finds otherwise.

Section 7-62-402(1)(c) of the Colorado Revised Statutes provides that "[a] person ceases to be a general partner of a limited partnership upon the happening of any of the following events:…(c) The general partner is removed as a general partner *in accordance with the*

---

[78] ECF No. 203-3, pp. 13 (§ 9.06) & 18 (§ 12.01).

*partnership agreement*." (Italics added.) In this case, the Court agrees the Partnership Agreement does not require judicial approval *prior* to the limited partners acting to remove the general partner. That does not mean, however, that the general partner allegedly removed cannot challenge whether the purported removal was proper and effective – that any removal was in fact "in accordance with the partnership agreement"[79] – and seek a judicial determination on the issue. After all, the Partnership Agreement allows for removal not based on the limited partners' sole discretion but, rather, "*only*" for limited specific reasons and under specific procedures. Under Li Plaintiffs' arguments, limited partners would have what would be tantamount to unfettered discretion to remove a general partner, contrary to the Partnership Agreement. Thus, the Court finds CRC I can challenge its purported removal as general partner of CRCPS.

Further, the parties' arguments show there is a justiciable controversy over the issue of whether CRI I has been or can be properly removed under the facts and circumstances and the procedures Li Plaintiffs used (all of which are currently not established and in dispute). And, the Court agrees that the five *Mhoon*, 31 F.3d at 983, factors support a finding it should hear and decide this claim. Specifically, the Court finds this declaratory claim (1) would settle the controversy between the parties concerning the purported removal of CRC I; (2) would serve a useful purpose in clarifying the legal relations of the parties, i.e., who may serve as the general partner of CRCPS; (3) is not being used for procedural fencing or to provide an arena for a race to *res judicata*; and (4) would not create friction with a state court or improperly encroach upon state jurisdiction. In addition, no alternative remedy has been proposed which is better or more effective. Accordingly, Li Plaintiffs' motion to dismiss CRC I's counterclaim for declaratory relief for failure to state a claim is denied.

---

[79] ECF No. 208, p. 2.

Concomitantly, Li Plaintiffs' request for a declaration that CRC I has been properly removed may not be granted. It is unclear under what rule or legal authority Li Plaintiffs' request is made, or how their arguments (without appropriate and sufficient evidentiary support) show they should be granted this relief. For example, if the request is made under Rule 12(b)(6), such relief may not be afforded under this rule. If the request is made under Fed. R. Civ. P. 56, Li Plaintiffs fail to show there is no genuine dispute of any material fact or that they are entitled to judgment as a matter of law. Accordingly, this request is also denied.

### E.  CUI PLAINTIFFS' MOTION FOR APPOINTMENT OF RECEIVER

Cui Plaintiffs move for a receiver, citing C.R.C.P. 66 and Fed. R. Civ. P. 66, but only Fed. R. Civ. P. 66 applies in this case. And, although unclear, the Court assumes Cui Plaintiffs are suing derivatively on behalf of CRCPS. Otherwise, they could not, for example, rely on as support the Deeds of Trusts which allow the lender, i.e., CRCPS, to have a receiver appointed. The scope of Cui Plaintiffs' request is also unclear – it starts by seeking receivership over the remaining Collateral Units as well as any associated leases and rents on such units (collectively denominated by Li Plaintiffs as "Receivership Property," which the Court will also use here)[80] but ends by seeking a receiver over the Receivership Property and the partnership as well, substituting as general partner.[81] The Court, therefore, assumes Cui Plaintiffs seek a receiver over CRCPS and its assets, which consists only of the Receivership Property, with the receiver acting as general partner.

"A district court may appoint a receiver to take the control, custody, or management of property involved in litigation, to preserve the property, and to receive the rents, issues, and profits thereof pending the ultimate determination of such litigation." *United States v. Solco I,*

---

[80] ECF No. 211, ¶ 9.
[81] ECF No. 211, ¶¶ 42, 43,

LLC, 962 F.3d 1244, 1246 (10th Cir. 2020) (quotation marks, alterations, and citation omitted). The receivership's "focus is to safeguard the assets, administer the property as suitable, and to assist the district court in achieving a final, equitable distribution of the assets if necessary." *Id.* (quotation marks and citation omitted). "A receiver is an officer of the court, not the parties' agent." *Id.* (quotation marks, alteration, and citation omitted); *see also* 12 Mary Kay Kane, Federal Practice and Procedure § 2981 (3d ed. Oct. 2020 Update) (same).

Receivership "is an extraordinary equitable remedy that lies in the discretion of the court, justifiable only in extreme situations." *Waag v. Hamm*, 10 F. Supp. 2d 1191, 1993 (D. Colo. 1998). The factors which the Court may consider in exercising its discretion include: "(1) the existence of a valid claim by the moving party; (2) the probability that fraudulent conduct has occurred or will occur to frustrate the claim; (3) imminent danger that property will be lost, concealed, or diminished in value; (4) inadequacy of available legal remedies; (5) lack of a less drastic equitable remedy; and (6) the likelihood that appointment of a receiver will do more harm than good." *Waag*, 10 F. Supp. 2d at 1193. *See also U.S. Bank Nat'l Ass'n v. Lakeview Retail Prop. Owner LLC*, No. 1:15CV404-LG-RHW, 2016 WL 2599145, at *2 (S.D. Miss. May 5, 2016) (same) (cited by Cui Plaintiffs). The Court examines these factors in turn, after addressing Cui Plaintiffs' standing argument.

***CRC I's Standing.*** Cui Plaintiffs contend CRC I lacks standing because it has been removed as the general partner of CRCPS. That is not so. While Plaintiffs assert they have removed CRC I, CRC I has challenged that removal. As such, whether the removal is proper and effective are matters in dispute. Accordingly, on this record, CRC I has standing to challenge whether a receiver should be appointed for CRCPS and the Receivership Property and to act as general partner.

46

***The existence of a valid claim by the moving party.*** Although unclear, Cui Plaintiffs appear to be relying on their derivative claims for fraud, breach of fiduciary duty, and breach of contract. The Court is dismissing all but Cui Plaintiffs' breach of contract claim and declaratory judgment claims. Thus, that leaves Cui Plaintiffs with a viable claim.

***The probability that fraudulent conduct has occurred or will occur to frustrate the claim.*** Cui Plaintiffs' breach of contract claim is based on the failure to pay the loan, either by transfer of the Collateral Units or cash. CRC I has informed the Court that SPO I would transfer title to the Collateral Units by the end of December 2020. As the Court has received no filing to the contrary, it assumes that transfer has been effectuated. Thus, CRCPS now holds title to the remaining Collateral Units to handle as it deems appropriate. Ostensibly, the transfer should obviate any allegation of future fraudulent conduct associated with the Collateral Units – they are now in CRCPS's possession. The allegations of past fraudulent conduct are being dismissed and Cui Plaintiffs fails to sufficiently show any anticipated future fraudulent conduct which would frustrate this claim.

***Imminent danger that property will be lost, concealed, or diminished in value.*** The Collateral Units obviously cannot be lost or concealed, but whether they will diminish in value during the pendency of this litigation is uncertain. While the Court can take judicial notice that there has been a global pandemic for about a year, Cui Plaintiffs provide no information to assist on whether the value of luxury condominiums is in imminent danger of diminishing in value.

The Court recognizes, however, that Cui Plaintiffs assert that the transfer of three of the Collateral Units violated the Partnership Agreement; that the proceeds from one of the transfers were allegedly primarily used to pay CRC I's management and attorney's fees; and that the transfer of the other two units were preferential payments to certain limited partners. Whether

these assertions are true cannot be determined by the record at hand. Nor is it clear to the Court
that such allegations are within the contemplation of the claim on which the request for
receivership relies. Regardless, the Court finds such assertions are insufficient to show any
imminent danger to the Collateral Units.

　　　　*Inadequacy of available legal remedies and lack of a less drastic equitable remedy.*

　　　　CRC I asserts that monetary damages are an adequate remedy. If only the Receivership
Property were at issue, the Court may agree. But also at issue is who should run CRCPS. As a
limited liability limited partnership, CRCPS requires a general partner in order to function. And,
here, Plaintiffs claim to have removed CRC I as general partner while CRC I contends it is still
the general partner. That issue remains unresolved.

　　　　What is apparent is that, until the issue is resolved, CRCPS remains in an indeterminate
state. For example, CRCPS's counsel has withdrawn in this case and no new counsel has entered
its appearance because of the dispute over who has authority to retain new counsel on its behalf.
This means that there is no one acting on behalf of CRCPS, such as retaining tax professionals to
prepare tax returns or issue K-1s or preserving and protecting the Collateral Units. There is no
adequate legal remedy – or a less drastic equitable remedy – to address this indeterminate state,
other than through a receiver or if the parties are able to reach an agreement as to the running of
CRCPS until the issue of the purported removal of CRC I is resolved.

　　　　*The likelihood that appointment of a receiver will do more harm than good.* CRC I
contends that a receivership will do more harm than good because of CRCPS's insufficient cash
flow. CRCPS's assets consist only of the Receivership Property. The Court agrees this poses a
significant issue which Cui Plaintiffs' papers do not address – the costs of hiring a receiver and

the source of funds to pay for this receiver. But that is countered heavily by the harm with having no one to preserve and protect the assets pending this litigation.

*Summary.* "[A] federal court should appoint a receiver only when appointment is auxiliary to some primary relief which is sought and which equity may appropriately grant." *Waag*, 10 F. Supp. 2d at 1993 (quotation marks and citation omitted). While the Court finds there is support toward granting the motion, it finds there is currently insufficient information for it to do so. In addition, the Court questions below whether it still has – or should retain – jurisdiction upon the dismissal of the federal claims. Thus, it denies the motion without prejudice.

## F.  LI PLAINTIFFS' MOTION FOR SANCTIONS

Li Plaintiffs' Motion for Sanctions is readily – and summarily – resolved. Here, Li Plaintiffs argue counsel for SPO Defendants acted inappropriately by allegedly threatening to file a Fed. R. Civ. P. 11 motion unless Li Plaintiffs dismissed SPO Defendants from this action. Li Plaintiffs contend this is improper because the alleged threat was made *after* SPO Defendants already filed their Motion to Dismiss and just days *before* the hearing set for the Court to hear that and other motions. Li Plaintiffs contend counsel is trying to usurp this Court's authority to decide the Motion to Dismiss and to "cast[] a pall" over Li Plaintiffs' counsel. They seek sanctions under 28 U.S.C. § 1927.

The Court may sanction an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927. The Court has reviewed Motion for Sanctions, with attachments, response, and court record, and finds no such conduct. First, SPO Defendants have filed no Rule 11 Motion. Second, SPO Defendants' contention that Li Plaintiffs' claims violate Rule 11 does not render SPO Defendants' contention a Rule 11 violation. Finally, the record shows no conduct by SPO Defendants, or their counsel, which would constitute conduct

falling within Section 1927, i.e., no conduct which multiplied the proceedings unreasonably or vexatiously. Accordingly, the Motion for Sanctions is denied.[82]

### G. SUBJECT MATTER JURISDICTION

Plaintiffs allege this Court has subject matter jurisdiction based on diversity of citizenship and federal question. In this Order all federal claims are dismissed. The Court finds, however, that diversity jurisdiction has not been plausibly alleged by either set of Plaintiffs.

First, Plaintiffs allege the residences of individual Defendants, but it is their domicile which is determinative. *See Siloam Springs Hotel, L.L.C. v. Century Sur. Co.,* 781 F.3d 1233, 1238 (10th Cir. 2015) ("An individual's residence is not equivalent to his domicile and it is domicile that is relevant for determining citizenship."); *Reece v. AES Corp.*, 638 F. App'x 755, 769 (10th Cir. 2016) (explaining that a person is a citizen of a state if the person is domiciled in that state, and that allegations of "residence" may be insufficient because one can reside in one place but be domiciled in another).

Second, there are several Defendants who are unincorporated associations and an unincorporated entity's citizenship is typically determined by its members' citizenship – not by its place of incorporation and principal place of business. *See Grynberg v. Kinder Morgan Energy Partners, L.P.*, 805 F.3d 901, 905-906 (10th Cir. 2015). Cui Plaintiffs' allegations in support of diversity as to these unincorporated associations fail to adequately address this issue. And while footnote 1 in Li Plaintiffs' operative complaint contains allegations of members or

---

[82] Li Plaintiffs also purport to complain on behalf of Cui Plaintiffs. But Cui Plaintiffs did not file their own motion or join in this motion, while they have joined other filings in other instances. Further, Li Plaintiffs' counsel does not represent Cui Plaintiffs. Accordingly, the Court will consider this as a motion asserted only by Li Plaintiffs. To the extent Cui Plaintiffs intend that they also be considered parties to the Motion for Sanctions, the motion is denied as to them for the same reasons they are denied as to Li Plaintiffs.

"equity members," it also relies on the residence of such members. It is also unclear to the Court as to the significance of Li Plaintiffs' differentiation between members and equity members.

Finally, Li Plaintiffs' action is now solely derivative, with CRCPS aligned as a nominal defendant. Cui Plaintiffs' action, however, is a derivative and direct action with CRCPS aligned as a defendant. In *Smith v. Sperling*, 354 U.S. 91, 95-96 (1957), the Supreme Court established that federal courts must assess diversity of citizenship in a shareholder derivative action by determining, from reviewing the pleadings, whether the shareholder plaintiff is antagonistic to the corporation (rather than upon the plaintiff's choice to designate the corporation as either a plaintiff or a defendant). *See Frank v. Hadesman & Frank, Inc.*, 83 F.3d 158, 160 (7th Cir. 1996) (discussing Fed. R. Civ. P. 23.1 and "[t]he jurisdictional consequence" if the corporation would appear as plaintiff, putting citizens of Illinois on both sides, unless the shareholder could demonstrate corporation should be realigned as a defendant under *Smith v. Sperling*). After such assessment, the court determines whether the corporation (here, CRCPS) should be aligned as a plaintiff or defendant and, accordingly, whether complete diversity exists. In this case, it would appear that CRCPS should be aligned as a defendant, in which case, if the citizenship of CRCPS is based on the citizenship of its members, diversity jurisdiction does not appear to exist. Thus, on this record, complete diversity has not been plausibly alleged.

That leaves the issue of supplemental jurisdiction. Under 28 U.S.C. § 1367(c)(3), the Court may decline supplemental jurisdiction if it has dismissed all claims over which is has original jurisdiction. If the Court only had original jurisdiction based on federal question, it may be appropriate for it to decline to exercise subject matter jurisdiction over the remaining breach of contract and declaratory claims and declaratory counterclaim. But the Court need not reach

this issue if it also has diversity jurisdiction. In light of the uncertainty, the Court directs the parties to brief this issue as set forth below.

## IV.     CONCLUSION

In summary, what remains are Cui Plaintiffs' derivative claim for breach of contract against SPO I and derivative claim for declaratory relief against SPO and SPO I; Li Plaintiffs' derivative claim for breach of contract against SPO I; and CRC I's counterclaim for declaratory relief. Based on the foregoing, it is **ORDERED**

(1)    That, based on Cui Plaintiffs' statements made during the hearing and the court record, the following claims of Cui Plaintiffs' are hereby DISMISSED WITH PREJUDICE:

(a)  Count III – Based on the Colorado Consumer Protection Act;

(b)  Count IV – Based on the Investment Company Act; and

(c)  Count VI – *Direct Claim* based on Breach of Contact;

(2)    That, based on Cui Plaintiffs' statements made during the hearing and the court record, the following claim of Cui Plaintiffs' is hereby DISMISSED WITHOUT PREJUDICE:

(a)  Count VIII – Piercing the Corporate Veil;

(3)    That CRC Defendants' Motion to Dismiss (ECF No. 203) is DENIED IN PART AS MOOT and GRANTED IN PART as to the Cui Plaintiffs' complaint against CRC Defendants as follows:

(a)  GRANTED as stated herein to the following counts by Cui Plaintiffs, directly and derivatively, against CRC Defendants, and dismissed with prejudice: Counts I, II, and V;

52

(b) DENIED AS MOOT as stated herein as to the following counts brought by Cui Plaintiffs, directly, against CRC Defendants: Count III, IV, and VIII; and

(c) That there being no claims which remain by Cui Plaintiffs, directly or derivatively, against CRC Defendants, they are DISMISSED as to Cui Plaintiffs' action;

(4) That CRC Defendants' Motion to Dismiss (ECF No. 203) is DENIED IN PART AS MOOT and GRANTED IN PART as to the Li Plaintiffs' complaint against CRC Defendants as follows:

(a) DENIED AS MOOT: Count VII (second – direct – fraud against CRC Defendants) and Count VII (fourth – direct – piercing the corporate veil against CRC I);

(b) GRANTED: Counts I, II, V, and VI; and

(d) That there being no claims which remain by Li Plaintiffs against CRC Defendants, they are DISMISSED as to Li Plaintiffs' action;

(5) That SPO Defendants' Motion to Dismiss (ECF No. 224) against Cui Plaintiffs' complaint is DENIED IN PART AS MOOT, GRANTED IN PART, and DENIED IN PART as follows:

(a) DENIED AS MOOT: Count III; Count VI (Direct – Breach of Contract against SPO I); and Count VIII:

(b) GRANTED and DISMISSED WITH PREJUDICE: Counts I, V, and VII (direct – against SPO and SPO I for declaratory relief);

(c) DENIED: Count VI and VII (derivative – against SPO and SPO I for declaratory relief); and

(d) That there being no claim against Defendant Knobel, he is dismissed from Cui Plaintiffs' action as a party;

(6) That SPO Defendants' Motion to Dismiss (ECF No. 224) against the Li Plaintiffs' complaint is GRANTED IN PART and DENIED IN PART as follows:

(a) GRANTED and DISMISSED WITH PREJUDICE: Count II (derivative – against SPO Defendants for civil theft) and Count VI (derivative – against Knobel for state securities fraud);

(b) DENIED: Count III (derivative – breach of contract against SPO I);

(c) That there being no claim against Defendant Knobel, he is dismissed from Li Plaintiffs' action;

(7) That Li Plaintiffs' Motion to Dismiss CRC I's Counterclaim (ECF No. 208) is DENIED;

(8) That Cui Plaintiffs' Motion for Appointment of Receiver (ECF No. 211) is DENIED WITHOUT PREJUDICE;

(9) That Li Plaintiffs' Motion for Sanctions (ECF No. 242) is DENIED;

(10) That within **30 days** of the date of this Order, Plaintiffs shall simultaneously brief whether the Court has diversity jurisdiction and, if not, whether the Court should retain supplemental jurisdiction;

(11) That the remaining Defendants are SPO, SPO I, CRCPS, and CRC I (but only as a counterclaim plaintiff with respect to its counterclaim); and

(12) That the answers of Defendants SPO, SPO I, and CRCPS to what remains of Cui Plaintiffs' and Li Plaintiffs' respective complaints and the answer of counterclaim defendants Li Plaintiffs to CRC I's counterclaim are **STAYED** until the Court

determines whether it has or should retain subject matter jurisdiction.

DATED this 2nd day of March, 2021.

BY THE COURT:

RAYMOND P. MOORE
United States District Judge

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# JUDGE RAYMOND P. MOORE

| | |
|---|---|
| Courtroom Deputy: Cathy Pearson | Date:   June 7, 2021 |
| Court Reporter:     Tammy Hoffschildt | |

**CASE NO.    19-cv-02443-RM-STV**

Parties                                                        Counsel

JUN LI, *et al.*,                                          Douglas Litowitz
                                                                   Brian Stewart (by VTC Audio only)
          Plaintiffs,

v.

COLORADO REGIONAL CENTER PROJECT          James Kilroy
SOLARIS, LLLP, *et al.*,                            Ty Gee

          Defendants.

---

## COURTROOM MINUTES

**MOTION HEARING**
**Court in session:**            3:19 p.m.

Appearances of counsel.

Preliminary remarks made by the Court.

Discussion held and argument given regarding the Order to Show Cause (Doc. 292) and pending motions.

**ORDERED:**   The Order to Show Cause (Doc. 292) is made absolute as to Rick Hayes and discharged as to Colorado Regional Center, LLC, for reasons stated on the record.

The Court states findings prior to ruling on each motion.

**ORDERED:**   Li Plaintiffs' Motion for Reconsideration: Request to Reinstate Count I of the Third Amended Complaint (Doc. 282) is DENIED as stated on the record.

**ORDERED:**   Plaintiffs' Motion for Clarification of Courts Order Pursuant to Federal Rule of Civil Procedure Rule 60 (Doc. 307) is DENIED as stated on the record.

A written order will issue as to Li Plaintiffs' Briefing on Subject Matter Jurisdiction and Motion to Dismiss the State-Law Claims under Fed. R. Civ. P. 12(h)(3) and 12(b)(1) (Doc. 272) and CRC Defendants' Motion for Award of Attorney Fees (Doc. 274).

**ORDERED:**   Li Plaintiffs Motion to Declare Default Judgment Removing CRI as General Partner [ECF 208] and Granting Appointment of Receiver [ECF 221] (Doc. 294) is DENIED as stated on the record.

The Court address Status Reports (Docs. 322, 326, and 327).

**Court in recess:**          **4:50 p.m.**
**Total in court time:**      **1:31**
**Hearing concluded**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
## Judge Raymond P. Moore

Civil Action No. 19-cv-02443-RM-STV
      Consolidated with 19-cv-02637-RM-STV

**Derivatively:**
HSIN-YI WU, and QI QIN,
IN THEIR CAPACITY AS LIMITED PARTNERS OF
COLORADO REGIONAL CENTER PROJECT SOLARIS LLLP,

      Plaintiffs

v.

COLORADO REGIONAL CENTER PROJECT SOLARIS LLLP,

      Nominal Defendant,

and

**Directly:**
HSIN-YI WU, JUN LI, QI QIN, YI LIU, JIE YANG, YUQUAN NI,
ZHONGZAO SHI, FANG SHENG, SHUNLI SHAO, KAIYUAN WU,
ZHIJIAN WU, ZHONGWEI LI, SA WU, FAN ZHANG, LIN QIAO,
JINGE HU, RUJUN LIU, YING XU, LU LI, CAO XIAOLONG,
and YUWEI DONG,

      Plaintiffs,

v.

COLORADO REGIONAL CENTER LLC,
COLORADO REGIONAL CENTER I, LLC,
SOLARIS PROPERTY OWNER LLC,
SOLARIS PROPERTY OWNER I LLC,
PETER KNOBEL,
COLORADO REGIONAL CENTER PROJECT SOLARIS LLLP, and
ALL PRINCIPALS AND ULTIMATE OWNERS OF BUSINESS ENTITIES PURSUANT TO
PIERCING OF THE LIMITED LIABILITY VEIL,

      Defendants.

Civil Action No. 19-cv-02637-RM-STV ("Cui Plaintiffs")

DIANWEN CUI, LEI GU, SUFEN LENG, XUE MEI, ZHOU MEI,
YAN SONG, LU WANG, YUE WU, ZHUO YANG, JINGWEN ZHANG,
LEI ZHANG, LING ZHANG, XIAOHONG ZHANG, QIN ZHOU,
XUN ZHU, and CHUNYI ZOU,

     Plaintiffs,

v.

WAVELAND VENTURES LLC,
COLORADO REGIONAL CENTER PROJECT SOLARIS LLLP,
COLORADO REGIONAL CENTER I, LLC,
SOLARIS PROPERTY OWNER LLC,
SOLARIS PROPERTY OWNER I, and
PETER KNOBEL,

     Defendants.

---

## ORDER REGARDING SUBJECT MATTER JURISDICTION

---

At issue before the Court is its subject matter jurisdiction. The parties have briefed the issue and the Court held a hearing on June 7, 2021. After considering the court record, the parties' arguments, and the applicable law, and being otherwise fully advised, the Court finds and orders as follows.

## I.    BACKGROUND[1]

Li Plaintiffs and Cui Plaintiffs[2] (collectively, "Plaintiffs"), limited partners in Colorado Regional Center Project Solaris LLLP ("CRCPS"), filed their respective actions, now consolidated, before this court. Their complaints alleged federal securities law claims[3] and state law claims; they alleged the Court had federal question jurisdiction, diversity jurisdiction, and

---

[1] The Court assumes the reader is familiar with the lengthy background which precedes this Order.
[2] Li Plaintiffs are those in Civil Action No. 19-cv-02443. Cui Plaintiffs are those in Civil Action No. 19-cv-02637.
[3] Cui Plaintiffs also had a claim under 15 U.S.C. § 80a (registration as an investment company) against CRCPS which has been withdrawn. (ECF No. 190, p. 26 (Count IV); No. 271, pp. 7-8.)

2

supplemental jurisdiction.[4] At various points in time, Plaintiffs identified CRCPS as not only a nominal defendant (on their derivative claims) but also a defendant (against whom direct claims were made). Colorado Regional Center I, LLC ("CRC I"), CRCPS's general partner, filed a counterclaim against Li Plaintiffs. That counterclaim has now voluntarily been dismissed.

Many motions were filed, including motions to dismiss. By Order on Pending Motions, after disregarding various claims which Plaintiffs voluntarily dismissed or conceded as subject to dismissal, the Court dismissed all remaining claims in this consolidated action except (1) Li Plaintiffs' Count III (derivative – breach of contract against SPO I); and (2) Cui Plaintiffs' Counts VI (derivative – breach of contract against SPO I) and VII (derivative – against SPO and SPO I for declaratory relief).[5] Also in that order, in light of the dismissal of the federal claims, the Court raised *sua sponte* whether diversity jurisdiction exists and, if not, whether the Court should retain supplemental jurisdiction over the remaining state law claims.

The Court held a hearing on the issue of its subject matter jurisdiction, along with other issues. The parties' positions were, in some instances, diametrically opposed to each other. After careful review, the Court agrees with the SPO Defendants[6]: the Court does not have diversity jurisdiction and will decline to exercise supplemental jurisdiction over the remaining state law claims.

---

[4] What Plaintiffs alleged depended on the complaint. For example, in Li Plaintiffs' original complaint, which was a direct action with no derivative claims, they alleged diversity and federal question jurisdiction. (ECF No. 1.) In subsequent complaints, after they raised derivative claims on behalf of CRCPS, Li Plaintiffs relied also on supplemental jurisdiction. (ECF Nos. 121, 222.)

[5] The Order on Pending Motions also left in place Cui Plaintiffs' Count VII against CRCPS. Cui Plaintiffs, however, have recently advised that Count VII is *not* directed – and never has been – against CRCPS. The Court will therefore dismiss Count VII, without prejudice, as to CRCPS.

[6] The SPO Defendants are Solaris Property Owner LLC ("SPO"), Solaris Property Owner I ("SPO I"), and Peter Knobel.

## II.     DISCUSSION

### A.  Federal Question and Supplemental Jurisdiction

No one disputes the Court had federal question jurisdiction. The Li Plaintiffs' motion/response on the issue of supplemental jurisdiction is not a model of clarity. What is clear, however, is that, after alleging the Court had supplemental jurisdiction, Li Plaintiffs fail to defend that position. Instead, Li Plaintiffs now assert the Court never had supplemental jurisdiction and, therefore, lacks jurisdiction over the state law claims, including those which it has already dismissed. The Court finds otherwise.

Section 1267(a) of 28 U.S.C. provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  The question of whether the federal and state claims form "the same case and controversy" depends on whether they "derive from a common nucleus of operative fact." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966). "[I]f, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is power in federal courts to hear the whole." *Id.* In this case, contrary to Li Plaintiffs' after-the-fact arguments, the federal and state claims "derive from a common nucleus of operative facts," namely, the limited partners' investment of millions of dollars in CRCPS (based on allegedly false or fraudulent representations), and the subsequent loan of such funds (with allegedly overvalued collateral), which the borrower has wrongfully failed to properly repay. Accordingly, supplemental jurisdiction exists over the state law claims.

4

## B. Diversity Jurisdiction and Alignment of CRCPS

Under the general rule, the court determines the parties' citizenship as of the time the complaint was filed. *Symes v. Harris*, 472 F.3d 754, 758-59 (10th Cir. 2006). The issue of whether the Court has diversity jurisdiction depends on whether CRCPS should be aligned as a plaintiff or defendant. "Corporations are generally aligned as nominal defendants in derivative suits. When determining whether diversity jurisdiction exists, however, courts are not bound by this practice or by the party alignment set forth in the pleadings." *Symes*, 472 F.3d at 761. Instead, courts are to "attempt to determine the parties' actual interests," *id.*, from reviewing the pleadings and the nature of the controversy. *Smith v. Sperling*, 354 U.S. 91, 95-96 (1957). Where the corporation is adverse to the plaintiff's derivative suit, the corporation should not be aligned as a plaintiff. *Symes*, 472 F.3d at 761. There is antagonism – and therefore the parties' interests are adverse – "whenever the management is aligned against the stockholder and defends a course of conduct which he attacks. The charge normally is cast in terms of fraud, breach of trust, or illegality." *Smith*, 354 U.S. 96.

In this case, it is readily apparent that Plaintiffs (the limited partners) and CRCPS are adverse. The management of CRCPS lies in the general partner. Although Plaintiffs dispute whether CRC I is still the general partner, CRC I has taken – and apparently continues to take – actions with which Plaintiffs take exception. (*See* ECF Nos. 322, 325, 326.) Regardless, the record shows, at the time of the filing of this action – and currently – Plaintiffs' interests are antagonistic to CRC I's interests. For example, Li Plaintiffs allege they demanded CRCPS/CRC I to take action against the borrower to collect on the loan but they declined to do so. And Cui Plaintiffs allege that demand on CRC I to take action would be futile. In fact, Plaintiffs allege

that CRC I, and other CRC Defendants,[7] engaged in various wrongful conduct including breach of fiduciary duty. Accordingly, CRCPS should be aligned with Defendants.

With CRCPS aligned as a Defendant, there is no diversity jurisdiction. CRCPS is an unincorporated association and, therefore, takes the citizenship of all its partners – limited and general. *See Grynberg v. Kinder Morgan Energy Partners, L.P.*, 805 F.3d 901, 905 (10th Cir. 2015) ("an unincorporated entity's citizenship is typically determined by its members' citizenship"). Plaintiffs, however, are CRCPS's limited partners. Accordingly, diversity jurisdiction does not exist.

### C. Supplemental Jurisdiction

"'When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims.'" *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011) (quoting *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998)). *See* 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if … (3) the district court has dismissed all claims over which it has original jurisdiction."). The only claims remaining are for breach of contract and declaratory relief as to certain agreements. Accordingly, the Court exercises its discretion and declines to exercise supplemental jurisdiction over these remaining claims.

### D. Other Matters

During the hearing, the Order to Show Cause (ECF No. 292) was discharged as to CRC and made absolute as to Rick Hayes. Accordingly, Rick Hayes is DISMISSED WITHOUT PREJUDICE.

---

[7] CRC Defendants are Colorado Regional Center LLC ("CRC"), Colorado Regional Center I, LLC, and Waveland Ventures, LLC.

There is one remaining pending matter before the Court – CRC Defendants' Motion for Fees, as prevailing parties. The Court will issue an order on that motion shortly.

### III.    CONCLUSION

Based on the foregoing, it is **ORDERED**

(1)    That Cui Plaintiffs' Count VII as against CRCPS is hereby DISMISSED WITHOUT PREJUDICE;

(2)    That Defendant Rick Hayes is DISMISSED WITHOUT PREJUDICE;

(3)    That Li Plaintiffs' Motion to Dismiss (ECF No. 272) is DENIED;

(4)    That, pursuant to 28 U.S.C. § 1367(c), the Court declines to exercise supplemental jurisdiction over the remaining state law claims;

(5)    That the following claims are DISMISSED WITHOUT PREJUDICE: (a) Li Plaintiffs' Count III (derivative – breach of contract against SPO I) and (b) Cui Plaintiffs' Counts VI (derivative – breach of contract against SPO I) and VII (derivative – against SPO and SPO I for declaratory relief);

(6)    That the Clerk shall enter JUDGMENT in favor of CRC Defendants and against the Li Plaintiffs and Cui Plaintiffs in accordance with this Order Regarding Subject Matter Jurisdiction, the Court's oral order of June 7, 2021, and the Order on Pending Motion (ECF No. 271);

(7)    That the Clerk shall enter JUDGMENT in favor of SPO Defendants and against Li Plaintiffs and Cui Plaintiffs in accordance with this Order Regarding Subject Matter Jurisdiction, the Court's oral order of June 7, 2021, and the Order on Pending Motion (ECF No. 271);

(8)     That the Clerk shall enter JUDGMENT in favor of Defendant Rick Hayes and against Cui Plaintiffs in accordance with the Court's oral order of June 7, 2021 and this Order Regarding Subject Matter Jurisdiction;

(9)     That Li Plaintiffs' Motion Under Fed. R. Civ. P. 54(b) (ECF No. 329) is DENIED AS MOOT;

(10)    That the Clerk shall also docket a copy of this Order in Civil Action No. 19-cv-02637; and

(11)    That the Clerk shall CLOSE this case and Civil Action No. 19-cv-02637.

DATED this 14th day of June, 2021.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge

8

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-02443-RM-STV
      Consolidated with 19-cv-02637-RM-STV

---

Civil Action No. 19-cv-02443-RM-STV ("Li Plaintiffs")

**Derivatively:**
HSIN-YI WU, AND QI QIN, IN THEIR CAPACITY AS LIMITED PARTNERS OF COLORADO REGIONAL CENTER PROJECT SOLARIS LLLP,

      Plaintiffs

v.

COLORADO REGIONAL CENTER PROJECT SOLARIS LLLP,

      Nominal Defendant,

and

**Directly:**
HSIN-YI WU, JUN LI, QI QIN, YI LIU, JIE YANG, YUQUAN NI, ZHONGZAO SHI, FANG SHENG, SHUNLI SHAO, KAIYUAN WU, ZHIJIAN WU, ZHONGWEI LI, SA WU, FAN ZHANG, LIN QIAO, JINGE HU, RUJUN LIU, YING XU, LU LI, CAO XIAOLONG, AND YUWEI DONG,

      Plaintiffs,

v.

COLORADO REGIONAL CENTER LLC,
COLORADO REGIONAL CENTER I, LLC,
SOLARIS PROPERTY OWNER LLC,
SOLARIS PROPERTY OWNER I LLC,
PETER KNOBEL, AND COLORADO REGIONAL CENTER PROJECT SOLARIS LLLP, AND ALL PRINCIPALS AND ULTIMATE OWNERS OF BUSINESS ENTITIES PURSUANT TO PIERCING OF THE LIMITED LIABILITY VEIL,

      Defendants.

Civil Action No. 19-cv-2637-RM-STV ("Cui Plaintiffs")

DIANWEN CUI, LEI GU, SUFEN LENG, XUE MEI, ZHOU MEI, YAN SONG, LU WANG, YUE WU, ZHUO YANG, JINGWEN ZHANG, LEI ZHANG, LING ZHANG, XIAOHONG ZHANG, QIN ZHOU, XUN ZHU, AND CHUNYI ZOU,

      Plaintiffs,

v.

WAVELAND VENTURES LLC,
COLORADO REGIONAL CENTER PROJECT SOLARIS LLLP,
COLORADO REGIONAL CENTER I, LLC,
SOLARIS PROPERTY OWNER LLC,
SOLARIS PROPERTY OWNER I, AND
PETER KNOBEL,

      Defendants.

# FINAL JUDGMENT

In accordance with the orders filed during the pendency of this case, and pursuant to Fed. R. Civ. P. 58(a), the following Final Judgment is hereby entered.

Pursuant to the Order on Pending Motions (Doc. 271) by Judge Raymond P. Moore entered on June 2, 2021 and the Order Regarding Subject Matter Jurisdiction (Doc. 334) by Judge Raymond P. Moore on June 14, 2021, it is

ORDERED that judgment is hereby entered in favor of Defendants Colorado Regional Center LLC, Colorado Regional Center I, LLC, and Waveland Ventures, LLC and against the Li Plaintiffs and Cui Plaintiffs in accordance with the Order Regarding Subject Matter Jurisdiction (Doc. 334), the Court's oral order of June 7, 2021, and the Order on Pending Motion (ECF No. 271).   It is

FURTHER ORDERED that judgment is hereby entered in favor of Solaris Property Owner LLC, Solaris Property Owner I LLC, and Peter Knobel ("SPO Defendants") and against Li Plaintiffs and Cui Plaintiffs in accordance with the Order Regarding Subject Matter Jurisdiction (Doc. 334), the Court's oral order of June 7, 2021, and the Order on Pending Motion (ECF No. 271). It is

FURTHER ORDERED that judgment is hereby entered in favor of Defendant Rick Hayes and against Cui Plaintiffs in accordance with the Court's oral order of June 7, 2021 and the Order Regarding Subject Matter Jurisdiction (Doc. 334). It is

FURTHER ORDERED that CRC Defendants are awarded their costs incurred in prosecuting this action and shall, within fourteen days of the date of the Judgment, file a Bill of Costs, in accordance with the procedures under Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1, which shall be taxed by the Clerk of the Court. It is

FURTHER ORDERED that both Civil Action No. 19-cv-02443-RM-STV and Civil Action No. 19-cv-02637-RM-STV are closed.

Dated this 14th day of June, 2021.

FOR THE COURT:

JEFFREY P. COLWELL

By:    s/C. Pearson
       Cathy Pearson
       Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-02443

Jun Li, Qi Qin, Yi Liu, Jie Yang, et al.
　　　　　Plaintiffs,

　　　　　　　　　　　　　　　　　　Hon. Judge Moore
　　　　v.　　　　　　　　　　　　　Hon. Magistrate Varholak

Colorado Regional Center Project Solaris LLLP,
Colorado Regional Center I, LLC, et al.
　　　　　Defendants.

---

## NOTICE OF APPEAL

---

The so-called "Li Plaintiffs" (as distinct from the so-called "Cui Plaintiffs") as those terms have been used by the District Court in the above-named consolidated case, hereby appeal to the United States Court of Appeals for the Tenth Circuit from the District Court's Final Judgement at ECF 335 entered on June 14, 2021 (the "Final Judgment"). The Final Judgement expressly incorporates the District Court's Order Regarding Subject Matter Jurisdiction (ECF 334) and the District Court's oral orders on June 7, 2021 denying the Li Plaintiffs' motions with respect to reconsideration or alteration of the Court's previous Order on Pending Motions (ECF 271). This Notice of Appeal includes any subsequent post-Judgment award of fees or costs.

Dated: June 18, 2021　　　　　　　　/s/ Douglas Litowitz
　　　　　　　　　　　　　　　　　413 Locust Place
　　　　　　　　　　　　　　　　　Deerfield, IL 60015
　　　　　　　　　　　　　　　　　312-622-2848
　　　　　　　　　　　　　　　　　Litowitz@gmail.com