# In the United States District Court
# for the District of Colorado

Civil Action No. 1:19-cv-02443-RM-STV
—*Consolidated with* No. 19-cv-2637-RM-STV

JUN LI, *et al.*, individually and derivatively for Colorado Regional Center Project
Solaris LLLP,

      Plaintiffs,

v.

WAVELAND VENTURES LLC, *et al.*,

      Defendants.

---

# Defendants SPO, SPO I and Mr. Knobel's Motion for Attorney Fees

---

Defendants Solaris Property Owner, LLC ("SPO"), Solaris Property Owner I, LLC ("SPO I"), and Peter Knobel, through their attorneys Haddon, Morgan, and Foreman, P.C. ("HMF"), move under Federal Rule of Civil Procedure 54(d)(2) for an award of attorney fees. The grounds for the award are the Loan Agreement, the Agreement Regarding Collateral Units ("ARCU"), section 13-17-201, Colo. Rev. Stat. (2020), and 15 U.S.C. § 78u-4(c) (2018).

This Motion relies on the facts set forth in the Court's March 2, 2021 Order (Doc.271) deciding the defendants' motions to dismiss, and plaintiffs' operative complaints (Doc.190 (*Cui*) and Doc.222 (*Li*)).

# Table of Contents

Preliminary Statement ................................................................................................ 1

Argument .................................................................................................................... 2

I.   The SPO Defendants are entitled to an award of fees under the Loan Agreement and
     the ARCU. ......................................................................................................... 3

     A.   The Loan Agreement. .............................................................................. 4

          The litigation arose out of the Loan. ...................................................... 4

          The SPO Defendants are the prevailing parties. ...................................... 8

          Fees claimed. .......................................................................................... 9

     B.   The ARCU. .............................................................................................. 9

          The SPO Defendants' fees were incurred in an action to enforce or interpret the
          ARCU. .................................................................................................... 9

          Fees claimed. .......................................................................................... 12

II.  Knobel is entitled to an award of attorney fees under section 13-17-201. ................. 12

          Civil theft............................................................................................... 14

          Colorado Securities Act fraud and common law fraud. ........................15

          Federal securities fraud. ......................................................................... 16

          Fees claimed. ..........................................................................................17

III. The SPO Defendants are entitled to attorney fees under the PSLRA........................ 18

          The Cui Plaintiffs and/or their counsel violated Rule 11(b). ............... 19

          Fees claimed. .......................................................................................... 21

IV.  The attorney fees requested are reasonable and necessary. ......................................... 22

     A.   The hours expended by the SPO Defendants' counsel are reasonable............... 23

     B.   The rates charged by the SPO Defendants' counsel are reasonable................... 26

i

Conclusion ................................................................................................................. 28

Table of Exhibits ....................................................................................................... 29

## Preliminary Statement

In August 2019 the *Li* Plaintiffs sued SPO, SPO I and Knobel, among other defendants. Soon after, the *Cui* Plaintiffs filed a separate action, impleading SPO and SPO I and, later, Knobel. Both sets of plaintiffs (collectively, "Plaintiffs") also impleaded their partnership, CRCPS, the general partner CRC I, and various CRC I-related entities. The *Cui* action was consolidated into the *Li* action. In this Motion we refer to the consolidated action as "the Lawsuit."

Plaintiffs alleged contract and tort claims against SPO, SPO I and Knobel (collectively, "the SPO Defendants"). The *Li* Plaintiffs asserted a claim for breach of the Loan Agreement and various tort claims. The *Cui* Plaintiffs asserted a claim for breach of the Loan Agreement, a claim requesting a judgment declaring unenforceable the Yield Enforcement Agreement ("YEA") and the ARCU, and various tort claims.

| Count | SPO Defendants Named | Basis |
|---|---|---|
| *Li* Plaintiffs | | |
| II | SPO, SPO I, Knobel | Civil Theft* |
| III | SPO I | Breach of Loan Agreement* |
| IV | SPO I | Transfer Title to CRCPS pursuant to Loan Agreement |
| VI | SPO, SPO I, Knobel | Colorado Securities Act – Fraud* |
| VII-2 | SPO, SPO I, Knobel | Fraud |
| VII-4 | SPO | Veil Piercing |
| *Cui* Plaintiffs | | |
| I | SPO, SPO I, Knobel | Fraud* |
| III | SPO, SPO I, Knobel | Colorado Consumer Protection Act |
| V | SPO, SPO I, Knobel | Federal Securities Exchange Act – Fraud* |
| VI | SPO I | Breach of Loan Agreement* |

| VII | SPO, SPO I | Declaratory Judgment – Enforceability of YEA and ARCU* |
| VIII | SPO I | Veil Piercing |

Before and at the hearing on defendants' respective motions to dismiss, the *Li* Plaintiffs and *Cui* Plaintiffs voluntarily dismissed those claims listed above without asterisks. In its Rule 12(b)(6) Order the Court addressed only those claims with asterisks, dismissing with prejudice all but the contract claims. *See* Doc.271 at 7-8.

On June 14, the Court denied all Plaintiffs' remaining pending motions and dismissed the contract claims without prejudice. Docs.333 & 334 at 7-8. The Court entered judgment in favor of the SPO Defendants and against the *Li* Plaintiffs and *Cui* Plaintiffs on the claims dismissed with prejudice in the 12(b)(6) Order. Doc.335 at 3.

The SPO Defendants incurred significant legal expenses to defend against the Lawsuit because of Plaintiffs' litigation strategies and conduct. The Court should award to the SPO Defendants their reasonable attorney fees in defending the Lawsuit.

*Conferral.* I conferred with all counsel about the relief requested in this Motion. Defendants Waveland Ventures, LLC, Colorado Regional Center, LLC, and Colorado Regional Center I, LLC (collectively, "CRC Defendants") do not oppose the requested relief. The *Li* Plaintiffs and *Cui* Plaintiffs do oppose.

## Argument

Rule 54(d)(2) provides that a claim for attorney fees must be filed no later than fourteen days after entry of judgment, specify the judgment and statute or other ground entitling the movant to the award, and state the amount sought.

The SPO Defendants advance four grounds for attorney fees—two contractual and two statutory. The Loan Agreement and ARCU have fee-shifting provisions that entitle the prevailing party in litigation over their subject matter to an award of reasonable attorney fees and expenses. *See* EXHIBIT A ¶ 20(vi) (Loan Agreement); EXHIBIT B ¶ 15 (ARCU). Title 15, § 78u-4(c), of the United States Code, provides that in a private action arising under the Securities Exchange Act of 1934 the court, upon final adjudication, must determine each party's and attorney's compliance with Rule 11(b) and award a monetary sanction for any violation. Section 13-17-201 provides that when any tort action is dismissed pursuant to the defendant's Rule 12(b) motion, the defendant "shall have judgment for his reasonable attorney fees in defending the action."

The SPO Defendants request that all their fees be awarded under the Loan Agreement, the ARCU and section 13-17-201. If the Court denies some fees on those grounds, they request fees under § 78u-4(c) to the extent the award of fees under the statutory grounds is not duplicative; to the extent it would be duplicative, they ask the Court to award fees in the alternative under § 78u-4(c). *See Powell v. Camping World RV Sales, LLC*, No. 4:13-cv-00195 KGB, 2017 WL 5691010, at *2 (E.D. Ark. Aug. 3, 2017) (awarding fees under contract as alternative to awarding fees under statute).

## I.   The SPO Defendants are entitled to an award of fees under the Loan Agreement and the ARCU.

Although Knobel is not a party to the Loan Agreement or the ARCU, he is the manager of SPO and SPO I. EXHIBIT C ¶ 4. Both companies are obligated under their

3

operating agreements to indemnify and hold him harmless in connection with his actions as their managers. *Id.* ¶ 9; *see* C.R.S. § 7-80-407. SPO I has undertaken responsibility for payment of all legal fees and costs on behalf of SPO and Knobel. Exhibit C ¶ 9. For the reasons discussed below, for purposes of the fee-shifting provisions in the Loan Agreement and ARCU, there is no reason to distinguish among the SPO Defendants or among Plaintiffs' claims. In its defense of the three SPO Defendants, HMF we considered the representation of them to be the representation of one "person"—this was warranted not only by their own relationship among them but also by how Plaintiffs pleaded and prosecuted their actions against them. *See generally* Exhibit C ¶ 9; Exhibit D ¶¶ 5-6.

### A. The Loan Agreement.

The Loan Agreement provides, "In the event of any litigation arising out of this Loan, the prevailing party, in addition to any other rights or remedies to which it may be entitled, *shall* be awarded its reasonable expenses incurred in enforcing or defending such action." Exhibit A § 20(vi) (emphasis supplied).

The SPO Defendants' entitlement to fees under the Loan Agreement depends on two questions: Whether this litigation "ar[ose] out of th[e] Loan," and whether the SPO Defendants are the prevailing party.

**The litigation arose out of the Loan.** The $82.5 million Loan is ground zero of this litigation. Everything in this litigation is based on and arises out of the Loan.

The "Loan" is defined in the Loan Agreement to mean the loan or loans made to SPO under the Loan Agreement or the "Loan Documents." Exhibit A, at CRC_231. "Loan Documents" "mean[s] and include[s] without imitation the Promissory Note, Loan Agreement and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness." Exhibit E, at 2 (deed of trust); *see* Exhibit A, at CRC_231 (referring to deeds of trust securing the Loan for definition of "Loan Documents"). "Indebtedness" means the principal and interest payable under the promissory note for each Loan advance. *See* Exhibit E, at 1-2.

In November 2010, before it had any limited partners and before it had any capital contributions, *see* Doc.271 at 26, CRCPS entered into the Loan Agreement with SPO under which CRCPS said it intended to raise the maximum amount of funds permitted under the EB-5 Immigrant Investor Program and to loan these funds to SPO. Exhibit A ¶ 5. In its private placement memorandum ("PPM"), CRCPS informed prospective investors—and Plaintiffs—it would use funds raised from the sale of partnership interests to "make a loan to SPO," Doc.203-1 at CRC_5; *accord, e.g.*, *id.* at CRC_11, 15 & 16. The PPM and its exhibits make some 200 references to the Loan and Loan Agreement, discussing, among other things, how the Loan it would be collateralized, paid, administered, and so on. *See, e.g.*, *id.* at CRC_14- 16, 19-17. The PPM and its exhibits make more than two dozen references to the Loan Agreement itself. *See, e.g.*, *id.* at CRC_7 & 21. The YEA, which was attached to the PPM, Doc.222 ¶ 31, is an integral part

of the Loan Agreement, to which it was attached as Ex. D; it is a Loan Document. *See* Exhibit E, at 2; Doc.190 ¶ 13. The ARCU is a Loan Document. *See* Exhibit E, at 2.

Litigation "arising out of" the Loan includes litigation not only on any issues arising under the Loan but also "those issues *with any connection*"[1] to the Loan or that originates or flows from the Loan. As discussed in *Brown* in this Motion's footnote 1, "arising out of" universally has been held to be a broad phrase in the arbitration context. But even outside the arbitration context on its own terms, the phrase has a long reach. *See HT Servs., LLC v. W. Heritage Ins. Co.*, No. 20-1275, 2021 WL 2206323, at *2 (10th Cir. June 1, 2021) (citing *N. Ins. Co. v. Ekstrom*, 784 P.2d 320, 323 (Colo. 1989)'s definition of "arising out of" to mean "originate from," "grow out of," or "flow from"); *Hernandez v. United States*, 34 F. Supp. 3d 1168, 1182 (D. Colo. 2014) (holding that Federal Tort Claim Act's "arising out of" exception is "broad").

The Lawsuit arises out of the Loan. This Court found that the *Li* Plaintiffs' claims "derive from a common nucleus of operative facts, namely, the limited partners' investment of millions of dollars in CRCPS (based on allegedly false or fraudulent representations), and the subsequent loan of such funds (with allegedly overvalued

---

[1]*Brown v. Coleman Co.*, 220 F.3d 1180, 1184 (10th Cir. 2000) (emphasis supplied; interpreting arbitration clause); *see generally Let's Go Aero, Inc. v. Cequent Performance Products, Inc.*, 78 F. Supp. 3d 1363, 1374 (D. Colo. 2015) ("The Tenth Circuit Court of Appeals has consistently held that the phrases "arising out of or relating to" mean that the parties intended their arbitration agreement to be construed broadly.") (citing cases).

collateral), which the borrower [allegedly] has wrongfully failed to properly repay." Doc.334 at 4. The same is true of the *Cui* Plaintiffs' claims. *See* Doc.271 at 15, 22, 23.

The gravamen of Plaintiffs' actions against the SPO Defendants is that the SPO Defendants, one or more, either engaged in these actions or "colluded" with, "conspired" with and/or "aided and abetted"[2] the CRC Defendants in engaging in these actions:

- According to the *Li* Plaintiffs: Fraudulently representing to the *Li* Plaintiffs that the Loan was fully collateralized when it was not; deceiving CRCPS into making the loan; permitting the $82.5 million Loan to be mischaracterized as owner equity; defaulting on the Loan Agreement; fraudulently representing the value of the condominium units used to secure the Loan; breaching the Loan Agreement. Doc.222 at 35-36, 38, 45-46; *see generally id.* ¶¶ 19-107.

- According to the *Cui* Plaintiffs: Fraudulently inducing the *Cui* Plaintiffs to invest in CRCPS by making material misrepresentations and omissions relating to the Loan; engaging in actions to facilitate and continue the fraud; breaching the Loan Agreement. Doc.190 ¶¶ 1-22, 60-88, 93-105, 120-144.

The *sine qua non* of Plaintiffs' respective actions is thus the existence of the Loan. The Loan has an integral role in CRCPS's own existence, in Plaintiffs' investment in CRCPS,

---

[2]*See* Doc.222 ¶¶ 41, 63; Doc.190 ¶¶ 9, 18, 77, 87-88, 94, 122. The *Cui* Plaintiffs alleged that the conspiracy, collusion, etc., included other defendants. *See, e.g.*, Doc.190 ¶¶ 49, 88.

and Plaintiffs' impleading the SPO Defendants in their respective actions. But for the Loan, CRCPS wouldn't exist, Plaintiffs wouldn't have invested in CRCPS, CRCPS wouldn't have loaned any money to SPO I, and this Lawsuit wouldn't have been brought.

**The SPO Defendants are the prevailing parties.** A prevailing party is one in whose favor a judgment is rendered or is the "successful party." *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res.*, 532 U.S. 598, 603 (2001) (internal quotations omitted), *cited in Xlear, Inc. v. Focus Nutrition, LLC*, 893 F.3d 1227, 1236 (10th Cir. 2018). To meet this definition, a party must be "one who has been awarded some relief by the court" in that the court materially altered the legal relationship between the plaintiff and the defendant. *Xlear*, 893 F.3d at 1236-37 (citing *Buckhannon Bd.*, 532 U.S at 603-04).

A defendant who prevails on her Rule 12(b)(6) motion is a prevailing party, regardless whether the plaintiff's claims were dismissed with or without prejudice. *See, e.g.*, *Burton v. Vectrus Sys. Corp.*, 834 Fed. App'x 444, 445 (10th Cir. 2020); *Cantrell v. Int'l Bhd. of Elec. Workers, AFL–CIO, Local 2021*, 69 F.3d 456, 458 (10th Cir. 1995); *see also Barber v. T.D. Williamson, Inc.*, 254 F.3d 1223, 1234 (10th Cir. 2001) ("In general, the litigant who is the prevailing party for purposes of attorney's fees is also the prevailing party for purposes of costs. . . . Usually the litigant in whose favor judgment is rendered is the prevailing party for purposes of Rule 54(d).") (internal quotations omitted).

The Court dismissed all claims against the SPO Defendants. It dismissed with prejudice all tort claims against the SPO Defendants. Doc.271 at 53-54. It dismissed

8

without prejudice the contract claims against SPO and SPO I. Doc.334 at 7. The Court entered judgment against Plaintiffs on the claims against the SPO Defendants that were dismissed with prejudice. Doc.335 at 3. Accordingly, the SPO Defendants are the prevailing parties.

**Fees claimed.** From the commencement of this action until the submission of this Fees Motion, the SPO Defendants have incurred $238,985.68 in attorney fees in connection with the *Li* Plaintiffs' action and $71,730.79 in fees in connection with the *Cui* Plaintiffs' action. *See* Exhibit D ¶ 43. As the Tenth Circuit has authorized, the attorney fee movant may include fees incurred in preparing the motion. *See Case v. Unified Sch. Dist. No. 233, Johnson Cnty., Kan.*, 157 F.3d 1243, 1254 (10th Cir. 1998) (citing cases).

## B. The ARCU.

The ARCU provides:

> If [a party] initiates any action to enforce or interpret this Agreement, the party determined by the court . . . to be the prevailing party in such action will be entitled to receive from the non-prevailing party all reasonable costs and expenses, including all reasonable attorneys' fees incurred by the prevailing party in such action.

Exhibit B § 15. The ARCU is an alternative ground for an award of all the SPO Defendants' attorney fees.

**The SPO Defendants' fees were incurred in an action to enforce or interpret the ARCU.** Although the *Li* Plaintiffs and *Cui* Plaintiffs did not initiate their respective actions to "enforce" the ARCU—they wanted to block its enforcement—they each

initiated an action that directly implicated the enforcement of the ARCU. *See* Doc.222 ¶¶ 80, 81, 85-91, 154, 169. The ARCU was at the heart of their actions.

The *Li* Plaintiffs alleged that the ARCU—which they labeled the "Secret Agreement"—was relevant to all their contract and tort claims against both the CRC Defendants and the SPO Defendants. *See* Doc.222 at 7 (heading: "Factual Allegations Common to All Counts"); *id.* ¶¶ 80-96 (alleging that ARCU was part of a fraudulent scheme to use loan transaction as "a disguised sale" to *Li* Plaintiffs' detriment); *id.* ¶¶ 41 & 63 (alleging SPO Defendants' "conspiracy" and "collusion" with CRC Defendants).

The *Cui* Plaintiffs, which also referred to the ARCU as a "secret agreement" (Doc.190 ¶ 81), also alleged the ARCU was relevant to their contract and tort claims against both the CRC Defendants and the SPO Defendants. *See* Doc.190 ¶¶ 16-17, 87 (indicating that ARCU was part of a scheme to "ensure that any revenues realized from the sale of the units would" pay fees and costs to CRC Defendants or SPO Defendants); *id.* ¶¶ 128-131, 137-142 (alleging SPO I breached Loan Agreement, notwithstanding ARCU); *id.* ¶¶ 77, 79, 81 & 105 (alleging that CRC Defendants and SPO Defendants "collu[ded]" in a fraudulent scheme to delay transfer of collateral units to CRCPS).

The ARCU is inseparable from the Loan and the Loan's central role in this Lawsuit. The ARCU and its attached form Transfer Agreement repeatedly reference the Loan, the Loan Agreement, and related Loan Documents. It explicitly references the borrower's right under the Loan Documents, including the Loan Agreement, to repay any loan advance by tendering a Collateral Unit and states that CRCPS agrees SPO I should

10

"continue to hold record title" to the various Collateral Units. *See* Exhibit B, at CRC_281-83. As the Court concluded, "At a minimum, the parties have placed the ARCU into issue in this case and how it affects the Loan." Doc.271 at 41 n.74.

Under the ARCU, CRCPS and SPO I expressly agreed that SPO I intended to prepay the Loan with Collateral Units in lieu of cash. But both agreed SPO I should continue to hold record title to the units while CRCPS pursued the sale of the units. In their actions, the *Li* Plaintiffs and *Cui* Plaintiffs claimed that the ARCU was unenforceable or should otherwise be disregarded, and SPO I should be declared in default on the Loan for failure to repay the Loan with cash. Plaintiffs understood, in other words, that the ARCU, which was signed by CRCPS, on its face created a right in SPO I to delay the Loan Agreement's requirement of prepayment of the Loan advances by a certain date. The existence of such a right would foreclose one of Plaintiff's principal legal theories of liability.

Additionally, the *Li* Plaintiffs initiated their action in part to secure a judicial interpretation of the ARCU. *See* Doc.222 ¶ 85 (arguing over the interpretation of "temporary" in ARCU); *id.* ¶ 86 (arguing that ARCU "lacks consideration"). The *Cui* Plaintiffs are in the same boat. *See, e.g.*, Doc.190 ¶¶ 136-144. They explicitly acknowledge they triggered the ARCU's fee-shifting provision. *Id.* ¶ 144.

As discussed above in Argument I.A., the SPO Defendants are the prevailing parties.

**Fees claimed.** The SPO Defendants request all fees incurred in defending the *Li* action ($238,985.68) and the *Cui* action ($71,730.79). *See* Exhibit D ¶ 43.

## II. Knobel is entitled to an award of attorney fees under section 13-17-201.

When exercising jurisdiction over pendent state law claims, courts must apply the substantive law of the forum state. *Jones v. Denver Post Corp.*, 203 F.3d 748, 757 (10th Cir. 2000).[3] In this circuit, attorney fee statutes are considered substantive. *Id.*

Colorado law requires that a defendant "shall have judgment for his reasonable attorney fees" when a tort action "is dismissed on motion of the defendant prior to trial" under Colorado Rule of Civil Procedure 12(b). § 13-17-201; *see Crandall v. City and Cnty. of Denver*, 238 P.3d 659, 665 (Colo.2010) ("the express statutory language of [section 13-17-201] mandate[s] awards of . . . attorney fees to the defendant in the event that a plaintiff's tort action is dismissed pretrial on a . . . 12(b) motion to dismiss"). Accordingly, section 13–17–201 applies when a federal court dismisses under Rule 12(b)(6) a complaint based upon Colorado tort law. *E.g.*, *Deatley v. Allard*, No. 14-cv-00100-RM-KMT, 2015 WL 1740368, at *1 (D. Colo. April 13, 2015) (citing *Jones*, 203 F.3d at 757 n.6).

---

[3]*Jones* was abrogated on other grounds in *National Railroad Passenger Corp. v. Morgan,* 536 U.S. 101 (2002).

Plaintiffs brought only tort claims against Knobel. The *Li* Plaintiffs asserted claims for civil theft and Colorado Securities Act fraud. The *Cui* Plaintiffs asserted claims for fraud and federal securities fraud.[4]

Section 13-17-201 applies to tort actions. Whether an action lies in tort depends on how the claims are pleaded. *Luskin Daughters 1996 Trust for the Benefit of Ackerman v. Young*, 2019 CO 74 ¶ 22 (citing *Castro v. Lintz*, 2014 COA 91 ¶ 16). A claim seeking remedies for injuries wrongfully suffered at the hands of others, whether the injury is economic or physical, lies in tort. *See Castro*, 2014 COA 91 ¶ 27. Section 13-17-201's jurisprudence "makes the plaintiff the master of his pleading: if the plaintiff chooses to plead claims in tort, he runs the risk of C.R.S. § 13–17–201 applying; if he wishes to avoid the application of the statute, he must refrain from pleading tort claims," *Torres v. Am. Family Mut. Ins. Co.*, 606 F. Supp. 2d 1286, 1291 (D. Colo. 2009).

The presence of a federal claim in and of itself has no impact on the application of section 13-17-201. *See US Fax Law Ctr., Inc. v. Henry Schein, Inc.*, 205 P.3d 512, 517 (Colo. App. 2009) ("Nothing in the plain language [of section 13-17-201] limits the application of the statute to "state torts" as opposed to what FLC describes as a "federal statutory tort."); *Grynberg v. Ivanhoe Energy, Inc.*, No. 08-cv-2528-WDM-BNB, 2011 WL 3294351,

---

[4]Both sets of Plaintiffs had asserted other tort claims against Knobel but voluntarily withdrew them before the Court's Rule 12(b)(6) Order was entered. After the CRC Defendants filed their motion to dismiss, the *Li* Plaintiffs voluntarily withdrew their fraud claim. After the SPO Defendants already had briefed the Colorado Consumer Protection Act claim, the *Cui* Plaintiffs at the 12(b)(6) hearing conceded or voluntarily withdrew the claim. *See* Doc.271 at 7-8.

at *1 (D. Colo. 2011) (holding that to extent plaintiffs argued that § 13-17-201 "does not apply to non-state law tort claims, the Colorado courts have rejected this position," and awarding attorney fees to defendant under § 13–17–201 in action based on Colorado tort claims and federal RICO claim); *Advanced Career Techs., Inc. v. John Does 1-10*, 100 F. Supp. 3d 1105, 1110 (D. Colo. 2015) (applying § 13–17–201 to Lanham Act claim).

**Civil theft.** As pleaded by the *Li* plaintiffs, civil theft under section 18-4-405 sounds in tort. As the *Li* plaintiffs admit, civil theft includes fraud. Doc.222 ¶¶ 132-133, at 35. They alleged that Knobel and others "willfully" "convert[ed] through fraud roughly $40,000,000" through "deception." Doc.222 ¶¶ 132, 134-136; *see* Doc.271 at 39. Conversion is a tort. *E.g.*, *Gagne v. Gagne*, 2014 COA 127 ¶ 87 (citing *Harris Grp., Inc. v. Robinson*, 209 P.3d 1188, 1199 (Colo. App. 2009)). Fraud and misrepresentation are torts. *E.g.*, *Van Rees v. Unleaded Software, Inc.*, 2016 CO 51 ¶ 10; *Advanced Career Techs., Inc. v. John Does 1-10*, 100 F. Supp. 3d 1105, 1110 (D. Colo. 2015).

The Colorado courts have not directly held that civil theft sounds in tort for the purpose of determining the applicability of section 13-17-201. However, in the context of an economic-loss-rule analysis, the supreme court noted, "we have described a tort broadly as legally improper conduct that causes harm and imposes civil liability." *Bermel v. BlueRadios, Inc.*, 2019 CO 31 ¶ 32. Although the court concluded it did not need to decide whether civil theft sounds in tort, it observed, "[B]ecause civil theft is wrongful conduct—indeed, intentionally wrongful conduct—that causes harm for which courts will impose civil liability, it would appear to amount to a tort in Colorado." *Id.* ¶ 33.

14

Additionally, in determining whether a statutory claim sounds in tort, courts consider the similarities between the overall purposes of tort law and the statutory claim. *Bldg. on Our Best LLC v. Sentinel Ins. Co. Ltd.*, No. 15-CV-00669-RBJ, 2016 WL 1756488, at *3 (D. Colo. May 3, 2016). The primary purpose of tort law is "'to compensate plaintiffs for injuries wrongfully suffered at the hands of others.'" *Id.* (quoting *Coats v. Dish Network, LLC*, 303 P.3d 147, 154 (Colo. App. 2013)). A key purpose of the civil theft statute is to remedy economic losses. *Bermel*, 2019 CO 31 ¶ 42; *see id.* ¶ 42 n.9. Accordingly, civil theft sounds in tort.

**Colorado Securities Act fraud and common law fraud.** Both types of fraud sound in tort. *E.g.*, *L.J. v. Carricato*, 2018 COA 3 ¶ 22; *First Nat'l Bank of Durango v. Lyons*, 2015 COA 19 ¶ 15; *see Huffman v. Westmoreland Coal Co.*, 205 P.3d 501, 507 (Colo. App. 2009) ("A claim for common law fraud and one for state securities law fraud are 'sufficiently intertwined' within the same factual transaction, and the 'major thrust of these claims is identical.'") (quoting *Sandefer v. Dist. Court*, 635 P.2d 547, 551 (Colo. 1981), *overruled on other grounds, Ingold v. AIMCO/Bluffs, LLC Apts.,* 159 P.3d 116 (Colo. 2007)).

The *Li* plaintiffs' factual basis for the Colorado Securities Act ("CSA") and common law fraud claims was that Knobel "overvalu[ed]" the condominium units that collateralized CRCPS's loan to SPO/SPO I and thereby induced them to invest in CRCPS; the investment resulted in economic losses to them. Doc.222 ¶¶ 203-04, 207, 210-211, at 46-47; *see* Doc.271 at 42. The *Li* plaintiffs thus pleaded the CSA and fraud

claims as prototypical tort claims, i.e., they alleged Knobel made material misrepresentations that caused injury.

The *Cui* plaintiffs' factual basis for their fraud claim was that Knobel participated in the offering materials on which these plaintiffs allegedly relied in investing in CRCPS. Doc.190 ¶¶ 94-105, at 23-24; *see* Doc.271 at 32. Although the factual theory is different from the *Li* plaintiffs', the *Cui* plaintiffs also asserted a prototypical fraud theory—Knobel allegedly made material misrepresentations inducing them to invest, resulting in injury.

**Federal securities fraud.** A § 78j claim is similar to a CSA fraud claim. Section 78j's elements are: (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation. *Detroit St. Partners, Inc. v. Lustig*, 403 F. Supp. 3d 934, 944 (D. Colo. 2019). The CSA elements are: (1) that the plaintiff is a purchaser or seller of a security; (2) that the security is a "security"; (3) that the defendant acted with the requisite scienter; (4) that the defendant's conduct was in connection with the purchase or sale of a security; (5) that the defendant's conduct was in violation of section 11–51–123; and (6) that plaintiff relied upon defendant's conduct to her detriment, or that defendant's conduct caused plaintiff's injury. *Rosenthal v. Dean Witter Reynolds, Inc.*, 908 P.2d 1095, 1102 (Colo. 1995), *cited in Agile Safety Variable Fund, L.P. v. RBS Citizens, N.A.*, 793 F. Supp. 2d 1248, 1258 (D. Colo. 2011). Like common law fraud, § 78j defines a

tort. *See Huffman*, 205 P.3d at 507; *People v. Pahl*, 169 P.3d 169, 185 (Colo. App. 2006); *Kerby v. Commodity Res. Inc.*, 395 F. Supp. 786, 790 (D. Colo. 1975) (noting that CSA's § 11-51-123 "appears to be the analogue of § 10(b) of the Securities and Exchange Act").

The *Cui* plaintiffs alleged Knobel violated § 78 by fraudulently inducing them to invest in CRCPS and violated § 78o by aiding and abetting the CRC Defendants' violation of the Federal Securities Act. Doc.190 ¶¶ 122-123; *see* Doc.271 at 22, 33. They alleged Knobel used or aided and abetted the use of "manipulative and deceptive devices to induce" them into investing in CRCPS; they sought return of their investment and fees. Doc.190 ¶¶ 123-124. And they relied on the same core facts for the §§ 78j and 78o claim that they rely on for their CSA and fraud claims. *See id.* ¶ 123 (alleging that Knobel and all other defendants used manipulate and deceptive devices to induce plaintiffs into investing "[a]s set forth in" paragraphs 11-16, 56, 66, 68, 70, 73 and 74). Paragraphs 56, 66, 68, 70, 73 and 74 were the factual basis for the CSA and fraud claims. Accordingly, the federal securities fraud claim sounds in tort.

**Fees claimed.** Although the Court dismissed the entire action only as to Knobel, the SPO Defendants request an award of all fees they incurred. The contention that fees should be allocated between tort and contract claims would be premised on the idea that additional attorney fees were incurred (a) to defend the contract claims above and beyond the fees incurred to defend the tort claims, or (b) to defend SPO and SPO I above and beyond the fees incurred to defend Knobel. Neither premise is incorrect. The total fees incurred to defend the tort claims and Knobel were coextensive with the total fees

incurred to defend the tort and contract claims and SPO and SPO I. *See* Exhibit D ¶¶ 5-7, 47-51. Accordingly, the Court should award to Knobel and SPO I, which was responsible for all fees incurred in the defense of Knobel, all fees the SPO Defendants incurred in defending the Lawsuit.

## III.   The SPO Defendants are entitled to attorney fees under the PSLRA.

Congress enacted the PSLRA as "a check against abusive litigation by private parties." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007). One of the checks is the provision for "mandate[ory] imposition of sanctions for frivolous litigation." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71, 81 (2006). The purpose of sanctions is "not only to deter . . . abusive lawsuits, but also to *compensate fully* victims of this kind of abusive litigation." *Gurary v. Nu-Tech Bio-Med, Inc.*, 303 F.3d 212, 215 (2d Cir. 2002) (emphasis supplied).

Section 78u-4(c), added by the PSLRA to the Securities Exchange Act, governs sanctions for abusive litigation. Subparagraph (1) provides that in any private action arising under the Securities Exchange Act:

> upon final adjudication of the action, the court shall include in the record specific findings regarding compliance by each party and each attorney representing any party with each requirement of [Fed. R. Civ. P.] 11(b) . . . as to any complaint, responsive pleading, or dispositive motion.[5]

---

[5]No motion is necessary under the PSLRA, and a party cannot obtain a district court determination on sanctions before a final adjudication. *E.g.*, *Hilkene v. WD-40 Co.*, No. CIV A 04-2253-KHV, 2007 WL 470830, at *1 (D. Kan. Feb. 8, 2007); *see City of Livonia Employees' Ret. Sys. & Local 295/Local 851 v. Boeing Co.*, 711 F.3d 754, 761 (7th Cir. 2013).

Rule 11(b) provides that when an attorney presents a pleading or motion to the court, she certifies that to the best of her knowledge, information and belief, formed after an inquiry reasonable under the circumstances: (i) it is not being presented for any improper purpose, such as to needlessly increase the cost of litigation; (ii) the claims and other legal contentions are warranted by existing law; and (iii) the factual contentions have evidentiary support.

If the court finds that a party or attorney violated any requirement of Rule 11(b), it must impose sanctions. § 77u-4(c)(2). If a plaintiff violates Rule 11(b) in submitting a complaint, the presumptive sanction "is an award to the opposing party of the reasonable attorneys' fees and other expenses incurred in the action." § 77u-4(c)(3)(A)(ii).

**The Cui Plaintiffs and/or their counsel violated Rule 11(b).** In their original and amended complaints, the *Cui* Plaintiffs sued SPO and SPO I and asserted securities fraud claims against them under §§ 78j and 78o of the Securities Exchange Act. *See* Doc.1 ¶¶ 110-114 (No. 1:19-cv-2637); Doc. 21 ¶¶ 112-116 (No. 1:19-cv-2637). Beginning in their Second Amended Complaint, they also sued Knobel and asserted §§ 78j and 78o securities fraud claims against him. *See* Doc.169 at 1 (identifying defendants in the caption as "Waveland Ventures LLC, *et al.*"); *id.* ¶ 47 (listing "Peter Knobbel" [sic] as a "Defendant"); *id.* ¶¶ 120-124 (asserting §§ 78j & 78o claims against "All Defendants"). In their Third Amended Complaint, the *Cui* Plaintiffs listed "Peter Knobel" in the caption and in the body of the complaint as a defendant. Doc.190, at 1 & ¶ 47. They asserted §§ 78j and 78o claims against Knobel. *Id.* ¶¶ 120-124.

19

The §§ 78j and 78o claims violated Rule 11(b). To begin with, they were not warranted under existing law. As the Court concluded, the § 78j claim was time-barred. Doc.271 at 22, 34. It was not a close call. The *Cui* Plaintiffs bought their interests in CRCPS "no later than 2012." Doc.271 at 22. Under the five-year statute of repose, which is not subject to equitable tolling, their claims were time-barred no later than 2017. The *Cui* Plaintiffs did not contest this. *See id.* They commenced their action in September 2019. Time-barred securities claims are frivolous. *Norris v. Grosvenor Mktg. Ltd.*, 803 F.2d 1281, 1288 (2d Cir. 1986); *Byrne v. BuyThisFast Network, Inc.*, No. 03 Civ. 1999 (HB), 2005 WL 1155175, at *3 (S.D.N.Y. May 17, 2005); *see de la Fuente v. DCI Telecommc'ns, Inc.*, 259 F. Supp. 2d 250, 263 (S.D.N.Y. 2003) ("Bringing an obviously time-barred complaint can itself be frivolous. . . . [T]he policy behind the PSLRA would appear to favor, not just dismissal of the stale claims, but sanctions for bringing them in the first place.") (footnote omitted).

When defendants asserted that the § 78o claim was not legally cognizable because the statute does not create a private right of action, e.g., Doc.203 at 26, 7 (citing cases), the *Cui* Plaintiffs "d[id] not dispute that there is no private right of action." Doc.271 at 23. Accordingly, the Court construed the *Cui* Plaintiffs' response "as either an abandonment of their count based on any claim under § 78o(a)(1) or a concession that there is no private right of action for allegedly aiding and abetting a violation of § 78o(a)(1)." *Id.* Additionally, the Court concluded, even if an implied right of action exists under the statute, it was time-barred.

20

The *Cui* Plaintiffs' factual allegations in support of the § 78j claims against the SPO Defendants not only failed to meet the PSLRA's heightened pleading requirements but also had no evidentiary support. This Court so found. Doc.271 at 34. On the § 78o claim, the Court indicated it was "patently obvious that the [*Cui* Plaintiffs] could not prevail on the facts alleged," *id.* Nor did the *Cui* Plaintiffs have evidentiary support for their aiding and abetting allegations. *See id.* at 35. In short, none of these plaintiffs' factual allegations had evidentiary support.[6]

No "'reasonable and competent attorney would believe in the merit of'"[7] or would have asserted the *Cui* Plaintiffs' §§ 78j and 78o claims.

**Fees claimed.** For purposes of determining the sanction to be imposed against the *Cui* Plaintiffs and/or their counsel, we submit that their claims should be combined into two groups: federal securities fraud-related claims and contract claims. EXHIBIT D ¶ 54.

---

[6]The PSLRA's requirement of a Rule 11 review does not incorporate subdivision 11(c)(2)'s safe harbor period. That is, other than the existence of § 78u-4(c), a plaintiff is entitled to no advance warning that her complaint is subject to Rule 11(c) sanctions. In this case, however, the *Cui* Plaintiffs and their counsel were given advance warning.

In August 2020 counsel for the SPO Defendants notified Plaintiffs' counsel that their respective complaints failed to comply with their Rule 11(b) certifications. Doc.242-1. The *Li* Plaintiffs responded by moving for sanctions against the SPO Defendants' counsel. Doc.242. The *Cui* Plaintiffs did not respond. EXHIBIT E ¶ 53.

[7]*Lawrence v. Sch. Dist. No. 1*, No. 13-CV-03531-RM-MJW, 2014 WL 6990406, at *5 (D. Colo. Dec. 10, 2014) (quoting *Dodds Ins. Servs., Inc. v. Royal Ins. Co. of Am.*, 935 F.2d 1152, 1155 (10th Cir. 1991)); *see Collins v. Daniels*, 916 F.3d 1302, 1320 (10th Cir. 2019) ("We evaluate an attorney's conduct under a standard of objective reasonableness—whether a reasonable attorney admitted to practice before the district court would file such a document.") (internal quotations and brackets omitted).

As pleaded, both fraud claims (federal securities fraud and common law fraud) are substantially the same; additionally, they have similar elements. *See Sandefer* 635 P.2d 547, at 551 ("major thrust" of state securities fraud and common law fraud "is identical"). The two contract claims are completely interrelated.

The SPO Defendants submit that an appropriate sanction would be no less than fifty percent of the total fees incurred in defense of the federal securities claims. Fifty percent of the total fees is $35,865.40. This includes fees for the preparation of this Motion. The PSLRA authorizes as a sanction the assessment of fees to prepare a fees motion. *See Gurary v. Nu-Tech Bio-Med, Inc.*, 303 F.3d 212, 225 (2d Cir. 2002) (noting that defendant incurred $28,000 in fees to prepare fees motion and observing that PSLRA "can support a reading that permits the fees and expenses incurred in pursuing the sanctions to be included in the award"); *see generally Case*, 157 F.3d at 1254.

## IV. The attorney fees requested are reasonable and necessary.

"The most useful starting point for determining the amount of a reasonable fee is" the lodestar, i.e., "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983), *quoted in Homeward Bound, Inc. v. Hissom Mem'l Ctr.*, 963 F.2d 1352, 1355 (10th Cir. 1992), *and cited in Deatley v. Allard*, No. 14-CV-00100-RM-KMT, 2015 WL 1740368, at *2 (D. Colo. Apr. 13, 2015). There is a "strong presumption that the lodestar figure . . . represents a reasonable fee." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S.

546, 565 (1986), *supplemented*, 483 U.S. 711 (1987), *and quoted in Homeward Bound, Inc. v. Hissom Mem'l Ctr.*, 963 F.2d 1352, 1355 (10th Cir. 1992).

HMF's separate, redacted invoices in connection with the *Li* action and the *Cui* action are appended to the Gee Declaration as Attachments 2 and 3. *See* EXHIBIT D ¶¶ 16-17.

### A.   The hours expended by the SPO Defendants' counsel are reasonable.

Factors considered in the reasonableness of the numbers of hours spent by counsel for the prevailing party include (1) the hours that would be properly billed to one's client in accordance with good billing judgment; (2) time spent on specific tasks; and (3) duplication of efforts. *Deatley,* 2015 WL 1740368, at *2 (citing *Malloy v. Monahan*, 73 F.3d 1012, 1017-18 (10th Cir. 1996)).

The Gee Declaration addresses these factors. Paragraphs 19-35 of the declaration describe the complexity of the Lawsuit and the work that was needed to defend the Lawsuit. In summary, Plaintiffs' respective counsel pursued an aggressive litigation strategy. In prolix complaints that repeatedly were amended, Plaintiffs alleged facts and relied on voluminous complicated documents dating back a decade. Plaintiffs took a kitchen-sink approach to asserting contract and tort claims. That alone resulted in significant expenditure of attorney time.

During the course of the Lawsuit—from fall 2019 until and including the date of the 12(b)(6) hearing—Plaintiffs continually amended their claims. In one complaint iteration, the *Li* Plaintiffs or *Cui* Plaintiffs might add new facts to a claim; in another they

would add or drop a claim; and in yet another they would add or drop a defendant from the claim. As this Court observed, even after the 12(b)(6) hearing when Plaintiffs answered the Court's pointed questions about the nature and scope of their claims, Plaintiffs took positions about their claims different from the way they had pleaded them. *See* Doc.333 at 3 & n.5; Doc.334 at 3-4.

Three months after the Court's 12(b)(6) Order, the *Cui* Plaintiffs moved for leave to file a *fourth* amended complaint. They said the defective claims the Court dismissed could be "rehabilitated" and "clarif[ied]," and a fourth amendment would give them an "opportunity to present a more carefully drafted pleading." Doc.330 at 3, 6. Notably, when it granted the *Li* Plaintiffs' and *Cui* Plaintiffs' separate motions for leave to file their third and second amended complaints, respectively, the Court found defendants had suffered prejudice in the form of incurring attorney fees. Tr. of 3/2/20 hearing, at 28 ("certainly the defendants have had to spend time reviewing the multitude of complaints that have come in and to analyze whether or not they sufficiently state a claim and there is certainly some prejudice as a result of that").

Additionally, Plaintiffs made all allegations against the CRC Defendants applicable to the SPO Defendants by claiming that the SPO Defendants conspired with, colluded with, or aided and abetted the CRC Defendants' alleged actions. This increased the cost of defense. *See* Exhibit D ¶¶ 29, 30 & 48. Plaintiffs' other litigation tactics also contributed to the expenditure of a substantial amount of time. For example, the Court may take judicial notice that over twenty-two months Plaintiffs accounted for the vast

24

majority of the more than 330 submissions; each set of Plaintiffs filed more than 2,500 pages of materials with the Court (by contrast the SPO Defendants filed fewer than 500 pages). Plaintiffs engaged in a "bop a gopher"[8] approach to court orders—after the court entered an order, Plaintiffs repeatedly filed motions seeking "clarification" or reconsideration of it or requesting relief that was related to or different from that requested in the motion the Court denied. All of this is relevant to the reasonableness of the hours HMF expended on behalf of the SPO Defendants. *See United States v. $114,700.00 in United States Currency*, No. 17-cv-00452-CMA-GPG, 2020 WL 5076762, at *2 (D. Colo. Aug. 26, 2020) (among factors court considers in determining reasonableness of hours is "the responses necessitated by an opponent's maneuvering"); *Tallitsch v. Child Support Servs., Inc.*, 926 P.2d 143, 147 (Colo. App. 1996) ("In awarding attorney fees, the trial court may consider…the length of time required to represent the client effectively.").

Paragraphs 36-37 of the Gee Declaration address the time spent on the major litigation tasks: (a) reviewing Plaintiffs' and the other defendants' numerous submissions, and conferring with counsel regarding the submissions, that were filed over the last twenty-two months; (b) reviewing complaints and preparing responses to motions to amend the complaints; (c) researching and drafting motions to dismiss and related motions for sanctions (the grounds for sanctions were related to the grounds for

---

[8]Doc. 332 at 3:13 (transcript of June 7, 2021 hearing).

dismissal) as to specific complaints only to have the draft motions mooted by substantial revisions to the complaints; (d) preparing for and attending the four hearings; (e) reviewing the court's orders on the parties' submissions; and (f) preparing the Fees Motion papers.

The likelihood of duplication of efforts was minimal; to the extent there was, HMF's billing practices would have accounted for duplication so that the SPO Defendants would not have been charged for duplicative work. *Id.* ¶¶ 15, 37, 39.

Time expended between the *Li* action and the *Cui* action was allocated properly. *See* Exhibit D ¶ 4.

**B.   The rates charged by the SPO Defendants' counsel are reasonable.**

A reasonable hourly billing rate is defined as the prevailing market rate in the relevant community for an attorney of similar experience. *Guarneros v. Denver Green Party*, No. 1:19-cv-00139-RM-NYW, 2020 WL 7055493, at *6 (D. Colo. Dec. 2, 2020); *see Guides, Ltd. v. Yarmouth Grp. Prop. Mgmt., Inc.*, 295 F.3d 1065, 1078 (10th Cir. 2002). A court may use its own knowledge of the prevailing market rate to determine whether the claimed rate is reasonable. *Guarneros*, 2020 WL 7055493, at *6. The requesting party has the burden of showing the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. *Id.*

Each of the HMF partners' billing rates is well within the range of rates prevailing in the community for similar services by lawyers of reasonably comparable skill,

experience, and reputation. EXHIBIT D ¶¶ 7-9, 10, 12. Mr. Haddon had the highest rate, $700/hour, which was warranted because of his skill, experience, and reputation. However, except for one month (October 2019) Mr. Haddon wrote off all his time. The associate lawyer's hourly rate too was within the prevailing market rate for lawyers of reasonably comparable skill, experience, and reputation. *Id.* ¶¶ 11-12.

Attorney Gee, billing at hourly rates of $525–$575 over the twenty-two months this Lawsuit was pending, performed most of the legal work. *Id.* ¶ 39. There is substantial evidence that his hourly rate is reasonable. In an arbitration of a complex business fraud and mismanagement matter involving hundreds of millions of dollars, the arbitrator, an experienced trial attorney who has been practicing law in Colorado for more than forty years, found that Mr. Gee's hourly rate of $550 was reasonable. *Id.* ¶ 8. The CRC Defendants' attorney James D. Kilroy, like Attorney Gee, has been practicing law for about thirty years. Doc.173 at 5. The Court concluded that his $550 hourly rate was reasonable. Doc. 245 at 4. In *Grynberg*, the Court found that Attorney Gee's 2011 hourly rate of $425 was reasonable. 2011 WL 3294351, at *6.

HMF's paralegals' hourly rate of $140 is reasonably comparable to the prevailing market rates for paralegals of similar skill and experience in the Denver metropolitan area.

The Court's prior cases support a finding of reasonableness for the hourly rates charged by HMF's lawyers and paralegals. *See White v. Chafin*, No. 13-cv-1761-CMA-MJW, 2016 WL 9735066, at *4 ((D. Colo. Sept. 23, 2016) (approving hourly rates of $500 for lead counsel, $275–$450 for co-counsel, and $150 for paralegal); *Martinez v. Valdez*,

125 F. Supp. 3d 1190, 1212-13 (D. Colo. 2015) (approving hourly rates of $300–$500 for counsel and $150 for paralegal); *Schlenker v. City of Arvada*, No. 09-cv-1189-WDM-KLM, 2010 WL 2843414, *2 (D. Colo. July 19, 2010) (approving hourly rates of $400–$450 for counsel and $110 for paralegal).

◆

Because HMF's hours expended and rates charged are reasonable, the lodestar calculation yields the appropriate fees to award the SPO Defendants. *See* EXHIBIT D ¶¶ 18-40.

## Conclusion

The Court should award the SPO Defendants $238,985.68 in fees incurred defending the *Li* action and $71,730.79 in fees incurred defending the *Cui* action.

June 23, 2021

Respectfully submitted,

*s/ Ty Gee*

Harold A. Haddon
Ty Gee
Christopher P. Montville
HADDON, MORGAN AND FOREMAN, P.C.
150 East Tenth Avenue
Denver, CO 80203
Tel 303.831.7364
hhaddon@hmflaw.com; tgee@hmflaw.com;
cmontville@hmflaw.com

*Attorneys for Defendants Solaris Property Owner, LLC, Solaris Property Owner I, LLC, and Peter Knobel*

# Table of Exhibits

A.  Loan Agreement (Nov. 5, 2010)

B.  Agreement Regarding Collateral Units (Apr. 17, 2015)

C.  Declaration of Ryan Smith (June 23, 2021)

D.  Declaration of Ty Gee (June 23, 2021)

E.  Deed of Trust