## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-02443

Jun Li, Qi Qin, Yi Liu, Jie Yang, et al.
        Plaintiffs,

                                            Hon. Judge Moore
        v.                                Hon. Magistrate Varholak

Colorado Regional Center Project Solaris LLLP,
Colorado Regional Center I, LLC, et al.
        Defendants.

## Li Plaintiffs' Response to SPO Defendants'
## Motion for Attorney Fees [ECF 344]

The SPO Defendants ("SPO") seek attorney fees from the Li Plaintiffs under three theories of recovery:

1. **The Loan Agreement**, which at §20(vi) grants attorney fees to the 'prevailing party';
2. **The Agreement Regarding Collateral Units**, which at §5 grants attorney fees to the 'prevailing party'; and
3. **Colo. Rev. Stat 13-17-201**, which allows fee-shifting in 'tort actions.'[1]

Despite SPO's overlength brief, their actual arguments for attorney fees are short, threadbare, and unconvincing. They will be treated with the brevity they merit.

1. **SPO cannot Obtain Fees Under the Loan Agreement Because the Court Upheld a Claim that they Breached the Loan Agreement; A Party Cannot be said to 'Prevail' on a Contract Claim it Lost, and Cannot Enforce a Contract it Breached.**

This Court ruled that the Li Plaintiffs stated a claim against SPO for breach of the Loan Agreement [ECF 271: 41]. So far, SPO is the 'losing party,' not the 'prevailing party' in the dispute

---

[1] The Li Plaintiffs never asserted *federal* securities law claims against SPO [ECF 271: 7], so SPO's claim for attorney fees under the federal PSLRA are directed at the Cui Plaintiffs, not the Li Plaintiffs.

over the Loan Agreement. This actually makes SPO the losing party of the entire lawsuit so far, since SPO concedes that the Loan Agreement is the gravamen of the case: "Everything in this litigation is based on or arises out of the Loan. . . . But for the Loan, CRCPS wouldn't exist, Plaintiffs wouldn't have invested in CRCPS, CRCPS wouldn't have loaned any money to SPOI, and this Lawsuit wouldn't have been brought." [ECF 344: 4, 7-8]. That concession effectively ends the inquiry on attorney fees: if the lawsuit turns on a Loan under a Loan Agreement and the Court has upheld a claim that SPO breached that agreement, there is no way to construe them as 'prevailing.'

SPO misleads this Court that it 'prevailed' because the claim for breach of the loan agreement (which the Court found colorable) was nevertheless 'dismissed' -- conveniently leaving out the crucial point that the dismissal was made without prejudice and only on jurisdictional grounds: in fact the claim that SPO breached the contract was upheld on the merits. A defendant is not a 'prevailing party' when a claim against them is dismissed *without prejudice* because they remains at risk of liability under that claim. *Szabo Food Serv. Inc. v. Canteen Corp.*, 823 F.2d 1073, 1076 (7th Cir. 1987)(defendant was not a 'prevailing party' because "dismissal without prejudice . . . does not decide the case on the merits."). Here, the claim against SPO was dismissed because the Court decided not to take supplemental jurisdiction over the continuing path of the colorable claim, thereby letting it be refiled in state court, not because the claim was deficient. And the jurisdiction-based dismissal without prejudice was not based on a Rule 12 motion from SPO but rather on the Court's *sua sponte* request for briefing. In no way did SPO 'prevail' under the Loan Agreement - if anything, it has been the 'losing' party under this claim. Needless to say, it is hornbook law that a breaching party cannot enforce a contract. *Coors v. Sec. Life of Denver Ins. Co.*, 112 P.3d 59, 64 (Colo. 2005)("Under contract law, a party to a contract cannot claim its benefits where he is the first to violate its terms"). As the Li Plaintiffs have stated a claim that

SPO breached the Loan Agreement, SPO cannot turn around and claim benefits under that contract.

2. **Fees Cannot Be Awarded Under the ARCU because that Agreement was Never Considered by the Court so Neither Party 'Prevailed'; Indeed, the Court found that *if* the ARCU was enforceable, the Li Plaintiffs still had a colorable claim against SPO for breach of the Loan Agreement.**

The Court made no rulings whatsoever on the merits of the ARCU and specifically refused to address whether the ARCU was a valid and enforceable agreement, on the grounds that this issue was inadequately briefed. The Court merely held that the parties placed the ARCU "into issue" for later determination [ECF 271: 41 n74]. There cannot be a 'prevailing party' on a contract that the Court refused to review. The Court was agnostic, so to speak, about the ARCU. SPO cannot self-declare victory as the prevailing party under the ARCU any more than it can award itself a Gold Medal in the Olympics.

If anyone 'prevailed' under the ARCU it was the Li Plaintiffs. The Court said that regardless of whether we assume hypothetically that the ARCRU is valid or invalid, the Li Plaintiffs still state a claim for breach of the Loan Agreement:

> To the extent the parties are challenging the validity and effect of the ARCU *in toto*, the Court finds it is unable to resolve the issue here because it is inadequately briefed. The Court only finds that, assuming the ARCU is valid, based on the arguments on this record, Li Plaintiffs plausibly allege a claim for breach of contract [against SPO]. In light of the Court's finding, it need not decide other arguments, e.g. the Li Plaintiffs' assertion that the ARCU lacks consideration and SPO Defendants' argument that the Li Plaintiffs cannot challenge the validity and enforceability of the ARCU. At a minimum, the parties have placed the ARCU into issue in this case and how it affects the Loan [ECF 271: 41, n74].

It is impossible for SPO to be the prevailing party under a contract on which the Court specifically withheld review, let alone refused to give any judgment. But if we take SPO at its word that "The ARCU is inseparable from the Loan" [ECF 344: 10], then SPO is the losing party under the ARCU because it is the losing party under the Loan Agreement from which the ARCU is inseparable.

Nothing in the ARCU prevents a subsequent claim for breach of the Loan Agreement, and there cannot be a prevailing party when "it remains to be seen which party will, in fact, prevail on the merits, [and] defendants have not yet achieved a judicially sanctioned change in the legal relationship of the parties so as to be considered prevailing." *Dattner v. Conagra Foods, Inc.,* 458 F.3d 98, 103 (2nd Cir. 2006)(explaining that a claim dismissed because of a jurisdictional point that can be refiled, or a claim dismissed without prejudice that can be refiled, does not give rise to a 'prevailing party') citing *Buckhannon Bd. and Home Care v. W. Va. Dept. Health & Hum. Resources*, 532 U.S. 598, 605-606 (2001). Here Li Plaintiffs will continue with the same exact claim for breach of contract that was found to be colorable in this Court. Therefore, anything having to do with the ARCU is unripe for an award of fees to *either* party, and it was never construed by the Court in the first place.

3. **The Colorado Fee-Shifting Statute (Colo. Rev. Stat. §13-17-201) Only Applies to <u>Tort</u> Actions -- yet SPO Admits this Was a Contract Action Concerning a Loan memorialized in a Loan Agreement**

When an action asserts both contract and tort claims, Colo. Rev. Stat. §13-17-201 grants attorney fees when the entire "action" is found to be "primarily a tort action". *U.S. Fax Law Ctr., Inc. v. Henry Schein, Inc.*, 205 P.3d 512, 517 (Colo. App. Ct. 2009); *Castro v. Lintz*, 338 P.3d 1063, 1068 (Colo. App. Ct. 2014)(holding that the Colorado statute only applies when the essence of the lawsuit lies in tort). This action cannot be "primarily a tort action" because the Li Plaintiffs did not bring any tort claims against SPO. Indeed, as explained below, SPO fails to cite any cases

4

where the claims by the Li Plaintiffs were considered "torts" (Count II for statutory civil theft and Count VI for state blue-sky violation).

Even in some alternative universe where *arguendo* the Li Plaintiffs nontort claims were somehow hypothetically considered to be torts, the Colorado statute would still not apply because SPO admits this is a contract dispute under the Loan Agreement, the Promissory Note, the Deeds of Trust, the ARCU, and related Loan Documents:

> "The $82.5 million Loan is ground zero of this litigation. Everything in this litigation is based on or arises out of the Loan." [ECF 344: 4].

> "The Lawsuit arises out of the Loan." [ECF 344: 6].

> "The *sine qua non* of Plaintiffs' respective actions is the existence of the Loan. The Loan has an integral role in CRCPS' own existence, in Plaintiff's investment in CRCPS, and Plaintiffs' impleading the SPO Defendants in their respective actions." [ECF 344: 7].

> "But for the Loan, CRCPS wouldn't exist, Plaintiffs wouldn't have invested in CRCPS, CRCPS wouldn't have loaned any money to SPOI, and this Lawsuit wouldn't have been brought." [ECF 344:7-8].

> "The ARCU is inseparable from the Loan and the Loan's central role in this Lawsuit. The ARCU and its attached form Transfer Agreement repeatedly reference the Loan, the Loan Agreement, and related Loan Documents . . . The Li Plaintiffs initiated their action in part to secure a judicial interpretation of the ARCU." [ECF 344: 11].

> "Litigation "arising out of" the Loan includes not only any issues arising under the Loan but also "those with any connection" to the Loan or that originates or flows from the Loan." [ECF 344: 6].

SPO's admissions are self-defeating, because they reveal the "essence" of the case to be a contract dispute and not a tort action, thereby falling outside the fee-shifting statute for tort actions. Needless to say, the Colorado statute is in derogation of the American Rule and must be strictly construed against the party seeking recovery of attorney fees. *BSNLI, Inc. v. Russ. T. Diamonds, Inc.*, 293 P.3d 598, 601 (Colo. App. Ct. 2012).

No court, federal or state, has recognized the claims for which SPO seeks attorney fees as "torts" (Count II for statutory civil theft, and Count VI for breach of the Colorado blue sky law). SPO does not cite a single case where a court has applied the Colorado fee-shifting statute to such claims.

As for statutory civil theft, SPO admits that no court has ever held statutory civil theft to be a tort. That should end their claim, but they sneakily disguise this lack of precedent by hinting that statutory civil theft is somehow, someway, 'indirectly' a tort.

They make this false assertion in their equivocation that, "The Colorado courts have not *directly* held that civil theft sounds in tort for the purpose of determining the applicability of section 13-17-201." [ECF 344: 14](emphasis added). This wrongfully implies that Colorado courts have *indirectly* held that statutory civil theft is a tort -- which is untrue. SPO concedes that the key case on this point is the *Bermel* decision of the Colorado Supreme Court in 2019, where that Court looked at countervailing arguments whether statutory civil theft was a 'tort' and ultimately refused to decide the issue. *Bermel v. BlueRadios*, Inc., 440 P.3d 1150,1157 (Colo. 2019)("We need not resolve today whether a claim for civil theft under section 18-4-405 is a claim sounding in tort"). There is nothing in *Bermel* or any subsequent case holding *directly* or *indirectly* that civil theft is a tort.

If anything, the Colorado Supreme Court's ruling in *Bermel* said *indirectly* said that statutory civil theft *isn't* a tort, since they held that it was *not* a tort for purposes of the economic loss rule. Rather, they said that it was better characterized as an independent statutory cause of action. Tellingly, the dissent in *Bermel* said that statutory civil theft *was* a tort, meaning that the majority opinion found that statutory civil theft was *not* a tort. *Id.* at 1160. It is true that the Colorado fee-shifting statute is triggered when a plaintiff adds additional *tort* claims to seek remedies it cannot get under a contractual action, but that only applies when a plaintiff adds

6

additional *tort* claims, and statutory civil theft (which allows treble damages) was never a tort to begin with, so the statute cannot apply in the first place.

On the Colorado blue-sky claim, SPO cites no decisions applying the Colorado fee-shifting statute to a blue-sky securities claim. This is likely because securities law claims are irreducibly contractual since a security is an "investment *contract*," *SEC v. Howey,* 328 U.S. 293, 298-9 (1946)(emphasis added). To get around this lack of precedent, SPO wrongly asserts that there is no difference between the tort of common law fraud and a claim under state blue-sky law [ECF 344: 15], an assertion that is easily refuted in two seconds by the fact that a plaintiff can bring these claims separately in different counts, so they cannot be identical. At most, federal courts hold that there is some overlap between securities law claims and common law torts, but they are still different animals in that the former are always tied to investment *contracts*:

> Section 10(b) [and its state blue-sky equivalents] does not punish deceptive conduct, but only deceptive conduct "in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered." Those purchase-and-sale transactions are the objects of the statute's solicitude. It is those transactions that the statute seeks to "regulate"; it is parties or prospective parties to those transactions that the statute seeks to "protec[t]"

*Morrison v. National Australia Bank Ltd.*, 561 U.S. 247, 266-7 (2010)(internal citations omitted). In other words, Rule 10b-5 and its blue-sky equivalent statutes protect parties to a *contract*. *Holdsworth v. Strong*, 545 F.2d 687, 694 (10th Cir. 1976)(recognizing separate claims under 10b-5 and the tort of common law fraud, saying they are merely "analogous"); *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 341-2 (2005)(saying that securities claim are not identical to tort actions). Had the Li Plaintiffs chosen to assert only common law tort claims, they could have done so. But they chose to proceed solely with claims that were tied to an underlying Loan Agreement -- thereby making their claims contract-based.

When construing the fee-shifting statute, a court must respect the plaintiffs' own designation of his claim, because the plaintiff is the master of his complaint and *his* designation of the claim is determinative:

> When a party has pleaded both tort and non-tort claims, a court must determine, as a matter of law, whether the essence of that party's action was one in tort, in order to ascertain if section 13–17–201 applies. *See Castro,* 338 P.3d 1063, 1067 [2014]. In doing so, the court should focus on the manner in which the claims were pleaded. *Id.* In addition, **the court should rely on the pleading party's characterization of its claims and should not consider what the party should or might have pleaded.**

*Gagne v. Gagne*, 338 P.3d 1152, 1167 (Colo. App. Ct. 2014)(emphasis added). Here, the Li Plaintiffs pled *statutory* claims, not common law torts. SPO is not allowed to re-write the Li Plaintiffs complaint to convert it to common law fraud and then invoke the fee-shifting statute. The Li Plaintiffs' characterization must be respected, meaning that no torts were alleged.[2]

The *coup de grace* is that the Colorado fee-shifting statute cannot apply in the middle of a dispute where a nontort claim survives and can continue, since this means that there is no dismissal of the "entire action" as required by the statute. As the Colorado Appellate Court explained,

> We conclude that a defendant may not recover attorney fees under 13-17-201 when (1) the plaintiffs' action includes both tort and nontort claims and (2) the defendants have obtained dismissal of the tort claims, but not of the nontort claims, under C.R.C.P. 12(b). In our view, dismissal of less than the entire "action" is insufficient to trigger an award under the plain language of the statute. Had the

---

[2] Nor does SPO get any mileage from the *Huffman* case, which was **not** decided under the Colorado fee-shifting statute at issue here. In *Huffman*, the plaintiff confessed judgment in a federal case that he lost his claims for negligent misrepresentation, common law fraud, and conversion; the court then said that this precluded him from bringing a Colorado blue-sky claim in state court. *Huffman v. Westmoreland Coal Co.*, 205 P.3d 501 (Colo. App. Ct. 2009). This case has nothing to say about the Colorado fee-shifting statute, and it holds at most that the blue-sky law has certain overlapping elements with common law torts (just as a mule has certain overlapping elements with a horse), but it also shows that they are different claims since he was able to make them separately in different counts. A decision on issue preclusion is not dispositive under the fee-shifting statute, where a plaintiff's designation of his claims is dispositive.

8

> legislature intended to authorize recovery for something other than dismissal of the entire action, it would have employed different language.

*Sotelo v. Hutchens Trucking Co., Inc.,* 166 P.3d 285, 287 (Colo. App. Ct. 2007).  Here the "entire action" against SPO was not dismissed on the merits (indeed Count III against SPO was *upheld* on the merits), so the claims against SPO will continue under in another court recognized by comity or in this Court on remand.  The "entire action" is still continuing and was never dismissed, so the issue of attorney fees is unripe. To see the absurdity of SPO's request, consider that if this Court awards attorney fees *for* SPO at this juncture, a subsequent court may award  attorney fees *against* SPO, so the money would simply get passed back again.  This proves that the claim is unripe, in addition to being groundless in the first place.

**Conclusion**

SPO is not a 'prevailing party' under the Loan Agreement since the Court upheld a claim that they breached that very agreement.  SPO is not a 'prevailing party' under the ARCU since no claims were brought under that agreement and the Court specifically refused to rule on its enforceability, saying only that regardless of whether it was enforceable, the Li Plaintiffs had a colorable claim that SPO breached the Loan Agreement and was the losing party under that claim.  Finally, the Colorado fee-shifting statute only applies to tort actions while SPO admits that this is a contract action, the Li Plaintiffs never alleged any torts, and the statute cannot be invoked when a contract claim remains outstanding.

/

/

/

/

WHEREFORE, the Li Plaintiffs ask this Court to deny the SPO Defendants' motions for attorney fees.

Dated: June 27, 2021   Respectfully Submitted,

/s/ Douglas Litowitz
413 Locust Place,
Deerfield, IL 60015
312-622-2848
Litowitz@gmail.com

**Certificate of Service**

This document was filed on the ECF system for the District of Colorado on June 2, 2021.