# In the United States District Court
# for the District of Colorado

Civil Action No. 1:19-cv-02443-RM-STV
—*Consolidated with* No. 19-cv-2637-RM-STV

JUN LI, *et al.*, individually and derivatively for Colorado Regional Center Project Solaris LLLP,

    Plaintiffs,

v.

WAVELAND VENTURES LLC, *et al.*,

    Defendants.

---

## Defendants SPO, SPO I and Knobel's Amended[1] Reply to *Cui* Plaintiffs' Response to Motion for Attorney Fees

---

Defendants Solaris Property Owner, LLC ("SPO"), Solaris Property Owner I, LLC ("SPO I"), and Peter Knobel (collectively, "SPO Defendants"), through their attorneys Haddon, Morgan and Foreman, P.C., submit this Amended Reply to the *Cui* Plaintiffs' Response (Doc.361) to the SPO Defendants' motion for attorney fees ("Fees Motion") (Doc.344).

---

[1] Because of a font conversion issue, the original reply (Doc.364) was filed in a sans serif font. This Amended Reply is how we had intended it to appear, i.e., with a serif font. We also made a few minor, non-substantive edits to the original reply. This Amended Reply is filed on the same day as the original. We apologize for any inconvenience.

# Argument

## I. The Fees Motion is consistent with the Court's practice standards.

The *Cui* Plaintiffs argue the Fees Motion should be "rejected" because it violates the Court's practice standards. Doc.361 at 2-3. The argument is meritless.

The standard allegedly violated is Standard IV.A., which says a motion may not incorporate by reference another filing and cannot contain within it another motion. The Fees Motion does neither.

The *Cui* Plaintiffs' complaint is that the Fees Motion seeks an award of attorney fees from two different sets of plaintiffs, and this makes the motion "highly convoluted and confusing." Doc. 361 at 2. We think this is exaggerated at best but meritless regardless. One, the CRC Defendants filed the same fees motion, i.e., in one motion they moved for fees against both the *Li* Plaintiffs and the *Cui* Plaintiffs. Doc.274. The *Cui* Plaintiffs said nothing about any practice standard. Both sets of defendants brought a single motion to dismiss against both sets of Plaintiffs; the Court issued a single 12(b)(6) Order addressing the motions to dismiss as to both sets of Plaintffs.

Two, it made perfect sense to file a single motion seeking fees from both sets of Plaintiffs. They brought substantially similar lawsuits. Both actions were premised on the same set of facts and transactions. At the heart of both actions was alleged misrepresentations that allegedly induced each set of Plaintiffs to invest in CRCPS. Three, the Court apparently did not believe there would be a practice standard infraction by filing a single motion for fees against both sets of Plaintiffs. In our motion for leave to

file an overlength Fees Motion, we said, "The fees motion is brought against both sets of plaintiffs. Four grounds are asserted . . . ." Doc.342 ¶ 2. The Court granted it.

Finally, we recognized explicitly the similarities and differences between the two actions, and we took pains to analyze separately each action for the purpose of assessing whether either set of Plaintiffs should be required to pay the SPO Defendants' attorney fees. *See, e.g.*, Doc.344 at 6 (explaining separately how the *Li* Plaintiffs' action and the *Cui* Plaintiffs' action arise out of the Loan); *id.* at 7 (separately analyzing each set of Plaintiffs' claims of conspiracy, collusion, etc., between SPO Defendants and CRC Defendants, and citing separately to each set of Plaintiffs' respective complaints); *id.* at 10 (separately discussing how *Li* Plaintiffs and *Cui* Plaintiffs, respectively, commenced actions implicating enforcement of ARCU).

## II. The Fees Motion is not "premature."

The *Cui* Plaintiffs argue the Fees Motion is "premature" because the Court has not entered final judgment. Doc.361 at 3. There is a final judgment. *See* Doc.335. Plaintiffs' "prematurity" argument is based on their misreading Rule 54(d)(2)(B). The rule doesn't say a fees motion cannot be filed until after judgment; it says a fees motion must be filed "no later than" fourteen days after judgment. Therefore, it is irrelevant whether the Court has entered final judgment, since these plaintiffs do not claim the Fees Motion was filed more than fourteen days after judgment.

### III. The SPO Defendants are entitled to attorney fees under contractual fee-shifting provisions.

The *Cui* Plaintiffs argue the SPO Defendants are not the prevailing party under the Loan Agreement (and ARCU). They argue: "In order to be considered the prevailing party, the order must constitute a legal change in the relationship of the parties. Here, the court declining to exercise federal subject matter or supplemental jurisdiction over viable contract claims does not constitute such a change." Doc.361 at 3-4. This argument is fundamentally flawed: it looks at two claims when the charge is to examine the entire action.

The Loan Agreement provides that in "any litigation arising out of th[e] Loan," the prevailing party shall be awarded its reasonable expenses incurred "in . . . *defending such action*" Doc.344, Ex.A § 20(vi) (emphasis supplied). The *Cui* Plaintiffs' argument presents a single question: Who prevailed in the action?

As we discussed in the Fees Motion, a prevailing party is one in whose favor a judgment is rendered; is the "successful party"; is one to whom the court has awarded "some relief"; is the party who prevails on her 12(b)(6) motion; is the one who is entitled to costs under Rule 54(d). Doc.344 at 8 (internal quotations omitted; citing cases).

The *Cui* Plaintiffs brought an "action" within the meaning of the Loan Agreement. They asserted six claims against the SPO Defendants—three tort claims, two contract claims, and a veil-piercing claim. They asserted two claims against SPO I only: Counts VI (breach of loan Agreement) and V (veil-piercing). They asserted one claim

4

against SPO and SPO I: Count 7 (declaratory judgment). And they asserted three claims against all the SPO Defendants: Counts I (fraud), III (Colorado Consumer Protection Act ("CCPA")) and V (federal securities fraud). *See generally* Doc.224 at 12-13.[2]

At the 12(b)(6) hearing in August 2020, the Court dismissed Counts III, VI and VIII. *See* Doc.271 at 7-8. In its 12(b)(6) Order, the Court dismissed with prejudice Counts I, V and VII (direct—against SPO and SPO I for declaratory relief). Doc.271 at 33-35, 36-37, 53. On June 14, 2021, the Court dismissed without prejudice Counts VI (derivative—breach of contract against SPO I) and VII (derivative—against SPO and SPO I for declaratory relief), leaving no *Cui* claims pending. Doc.334 at 7. On the same day, the Court entered judgment in the SPO Defendants' favor and against the *Cui* Plaintiffs on all claims that were dismissed with prejudice. The *Cui* Plaintiffs then were evicted from the federal courthouse. That is the picture of a non-prevailing party.

But, the *Cui* Plaintiffs say, our two state-law contract claims survived a motion to dismiss and were dismissed only because the Court declined to exercise supplemental jurisdiction. The Tenth Circuit in *Allen v. Lang*, 738 F. App'x 934 (10th Cir. 2018), rejected both points. On the first point: "[W]e have long held that a party need not prevail on every issue to be considered a Rule 54(d) prevailing party." 738 F. App'x at 944-45 (internal quotations omitted). On the second, it held that a defendant was the

---

[2]When citing to court filings in this motion, we use the ECF-generated page numbers at the top of the pages.

prevailing party for purposes of Rule 54(d)(1) and 28 U.S.C. § 1920 where the court entered judgment in the defendant's favor on the federal claims but declined to exercise supplemental jurisdiction over the remaining state-law claims. *Id.* (citing cases).

Nor does it matter that the state-law contract claims "remain viable against [the SPO Defendants]," Doc.361, at 4. *Allen* rejected that point as well: "[W]hether Mr. Allen might prevail on his state claims in state court and obtain the damages he seeks is beside the point. In general, 'the litigant in whose favor a judgment is rendered is the prevailing party for purposes of Rule 54(d)(1).'" *Id.* at 944 (quoting *Barber v. T.D. Williamson, Inc.*, 254 F.3d 1223, 1234 (10th Cir. 2001)).

Quoting a case from the Northern District of California, *Capella Photonics, Inc. v. Cisco Sys. Inc.*, No. 14-cv-3348-EMC, 2019 WL 4242665 (N.D. Cal. 2019), the *Cui* Plaintiffs argue that dismissal of "'a case without prejudice'" is insufficient to confer prevailing party status because such a dismissal does not constitute a change in the legal relationship of the parties. Doc.361 at 4. This case is of no help to plaintiffs. The Court here did not dismiss the *Cui* Plaintiffs' "case" without prejudice. Of plaintiffs' six claims asserted against one or more of the SPO Defendants, one and a half of them survived a motion to dismiss; the rest were dismissed with prejudice or otherwise, and judgment was entered on them against the *Cui* Plaintiffs and in favor of the SPO Defendants. The judgment most certainly changed the legal relationship between the *Cui* Plaintiffs and the SPO Defendants. *See, e.g.*, *Allen*, 738 Fed. App'x at 944 (holding that "'enforceable judgment on the merits' is one way to 'create that material alteration,'" since judgment

can be enforced "by, for example, using it to estop [plaintiff] from trying to bring the same federal claims against her. Mayor Lang is therefore the prevailing party for Rule 54(d)(1) purposes . . . .") (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603 (2001); brackets omitted).

## IV.  Knobel is entitled to an award of attorney fees under section 13-17-201.

The *Cui* Plaintiffs argue their complaint was not dismissed "on the SPO Defendants [sic] 12(b)(6) Motion to Dismiss." Doc.361 at 4. That is not an ingenuous argument.

Argument II of the Fees Motion says "Knobel is entitled to an award of attorney fees under section 13-17-201." Doc.344 at 15. The *Cui* Plaintiffs' action against Knobel was entirely dismissed pursuant to his 12(b) motion to dismiss. Accordingly, he is entitled to attorney fees under the statute.

Plaintiffs argue they did not bring a tort action against Knobel; rather it was a "hybrid of contract and tort claims." Doc.361 at 5. We do not know what "hybrid" thing plaintiffs are referring to. They asserted against Knobel claims for fraud (Doc.190 at 23-24); CCPA (*id.* at 25-26); and federal securities fraud (*id.* at 26-27). None of those is a contract claim.

The *Cui* Plaintiffs also argue they are in "contractual privity" with the SPO Defendants under the Loan Agreement and ARCU. Doc.361 at 5. That's irrelevant. The section 13-17-201 question is not whether the plaintiff and defendant were in "contractual privity," but whether plaintiff's tort claims were dismissed pursuant to the defendant's

7

12(b) motion. In any event, Knobel, individually, is not in "contractual privity" with any of the plaintiffs.

As to plaintiffs' arguments that their tort claims were really contract claims, we stand on Argument II in our Fees Motion.

## V. Apportionment of fees among SPO, SPO I and Knobel is unnecessary.

The *Cui* Plaintiffs argue the SPO Defendants' requested fees should be apportioned by defendant, i.e., SPO, SPO I and Knobel. Doc.361 at 7. It is not well taken.

Although the *Cui* Plaintiffs do not argue that the fees should be apportioned by claim, the cases discussing apportionment of fees by claims are instructive. Those cases hold that when claims are "inextricably interwoven" or otherwise closely related, it is unnecessary to apportion fees by claim. *See, e.g.*, *Unicom Sys., Inc. v. Farmers Grp., Inc.*, 405 Fed. Appx. 152, 155 (9th Cir. 2010) (affirming trial court's ruling declining to apportion fees: "The claims involved a common core of facts and related legal theories."); *Peters v. Cadrillion, LLC*, No. 315-cv-163-FDW-DCK, 2019 WL 3756391, at *6 (W.D.N.C. Aug. 8, 2019) ("Plaintiffs' extracontractual and contract claims were 'inextricably interwoven,' and therefore, it would be improper and impractical to attempt to apportion Plaintiffs' fees on a claim by claim basis"), *aff'd sub nom. Legacy Data Access, Inc. v. Cadrillion, LLC*, 841 Fed. App'x 506 (4th Cir. 2021); *see also Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983) (in some civil rights cases, "the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to

8

divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.").

The *Cui* Plaintiffs not only brought inextricably interwoven claims, but they also asserted those claims in a way that inextricably interwove the SPO Defendants. For example, they asserted there was "collusion," "conspiracy," "aiding and abetting," "common enterprise," "and/or common course of conduct" among all the defendants, including SPO, SPO I and Knobel. Doc.190 ¶¶ 18, 87-88, 94. As a result, counsel for the SPO Defendants did not distinguish among the SPO Defendants. Doc.345 ¶¶ 5-7, 27-30.

There are four grounds for an award of attorney fees. As to the Loan Agreement's and ARCU's respective fee-shifting provisions, SPO I should be permitted to recover for all fees it incurred in defending the action since the impleading of SPO and Knobel to the action did not cause it to incur more fees to defend the action. *See id.* ¶¶ 5-7, 27-30. As to section 13-17-201, although only the action against Knobel was dismissed under Rule 12(b), there should be no allocation of fees, since the defense of the action against Knobel was indistinguishable from the defense of the action against SPO and SPO I. *See id.* ¶¶ 47-51. As to the PSLRA, which the *Cui* Plaintiffs ignore altogether, we agree there should be allocation, but only with regards to claims: the SPO Defendants are entitled to an award of $35,865.40 in connection with the *Cui* Plaintiffs' violation of Rule 11(b). *See id.* ¶ 54-55.

## VI. The *Cui* Plaintiffs impleaded Knobel.

The *Cui* Plaintiffs argue for the first time they only sued Knobel "for the purpose of alleging alter ego liability" and "[i]n fact, there are no allegations of acts or omissions made against [him]." Doc.361 at 7. None of this is true. It is an attempt, "via argument, to switch horses mid-stream in search of a swifter steed, where such argument is not supported by the allegations." Doc.271 at 13 (citation and internal quotations omitted). This Court has previously rejected efforts to have it adopt a "revisionist interpretation" of court filings. *Id.* at 40 n.72.

In their Second Amended Complaint, the *Cui* Plaintiffs impleaded Knobel. Doc.169 ¶ 47. In Paragraph 49, they defined "Defendants" to include Knobel. In this complaint, they made some seventy allegations against him. *See, e.g.*, *id.* ¶¶ 2, 7, 8, 10, 19, 21, 23, 53-54, 60, 67, 77, 82-84, 86, 88-89, 94-101, 103-105.

In their Third Amended Complaint, the *Cui* Plaintiffs impleaded Knobel. Doc.190 ¶ 47. In Paragraph 49, they defined "Defendants" to include Knobel. In this complaint, they alleged some seventy allegations against him. *See, e.g.*, *id.* ¶¶ 2, 7, 8, 10, 19, 21, 23, 53-54, 60, 67, 77, 82-84, 86, 88-89, 94-101, 103-105. They said Count I (fraud), Count III (CCPA) and Count V (federal securities fraud) were asserted against "All Defendants." Doc.190 at 23, 25 & 26. The Court itself noted this. Doc.271 at 8.

When in their motion to dismiss the SPO Defendants said Counts I, III and V were asserted against the SPO Defendants, which we defined to include Knobel, the *Cui* Plaintiffs in their response did not say that these claims were not asserted against Knobel.

To the contrary, they said their Third Amended Complaint properly alleged that the "Solaris Defendants"—defined to mean SPO, SPO I and Knobel, Doc.234, at 1—engaged in substantial misconduct. This passage from their 12(b)(6) response is telling:

> When the Loan Agreements were negotiated and structured, by Mr. Hayes and Mr. Knobel, **it is very unlikely that the Solaris Defendants could have secured any financing,** let alone financing that was under secured, contained no personal guarantee and ensured by its terms that it would never be repaid in full.  The facts alleged in the TAC give the Solaris Defendants fair notice of the Cui Plaintiffs' claims, the facts upon which those claims rest and allege a plausible entitlement to relief on those claims.  Those claims are that the Defendants defrauded the Cui Plaintiffs and the other investors into believing that the loan was fully secured by deeds of trust, and that Mr. Knobel was personally securing the loan, when in fact that there was no personal guarantee and the loan was badly under secured.  Notwithstanding these blatant lies the "loan documents", such as they are, provide an option for the Solaris Defendants to transfer title to the security to the LLLP, in lieu of payment.  Although they claim to have excercised this option title to the security has never been transferred to the LLLP.

Doc.234 at 4.

In its 12(b)(6) Order, the Court noted that after its dismissal of some claims, the *Cui* Plaintiffs' Count I and Count V remained pending and were asserted against "All Defendants." Doc.271 at 8. It then proceeded to analyze whether either was subject to dismissal. *Id.* at 32-35. On page 53 of the Order, the Court dismissed Knobel "from *Cui* Plaintiffs' action as a party." Notably, after the Order, entered on March 2, 2021, the *Cui* Plaintiffs never filed any paper asserting that it never had impleaded Knobel or never had

11

asserted any of the tort claims against him. That did not happen until July 7, 2021, when opposing Knobel's request for an award of attorney fees against them.

Plaintiffs also argue Knobel cannot request fees because he was never served with a copy of the summons and complaint and his lawyers never executed a waiver of service on his behalf. Doc.361 at 7. The suggestion is that Knobel is not a party to this action even though the *Cui* Plaintiffs named him in two complaints, including the operative one, and accused him of committing multiple torts against them. It is meritless.

The argument's premise is that a *named* defendant may only become a *real* defendant if he is served with or waives service of a summons. That is fundamentally wrong. *See Hopper v. Wyant*, 502 Fed. App'x 790, 792 (10th Cir. 2012) (rejecting argument that defendant could not move to dismiss because she "was never properly served": "[H]er attorney appeared on her behalf in filing the motion to dismiss. An individual may submit to the jurisdiction of the court by appearance, and voluntary use of certain court procedures may constitute constructive consent to the personal jurisdiction of the court. In light of the fact that service—and personal jurisdiction more generally—is a due process protection for *defendants*, we conclude that Ms. Cain's notice of the suit plus her attorney's appearance gave the court jurisdiction to accept and grant her motion.") (brackets altered; citation and internal quotations omitted).

The *Cui* Plaintiffs dispute that Knobel was even a named defendant. They say that "due to a misunderstanding or miscommunication with the clerk's office" all documents filed in this case were filed with the *Li* caption; so "Mr. Knobel technically was never

actually named as a defendant in the *Cui* Matter." Doc.361 at 8. The *Cui* Plaintiffs' "misunderstanding" or "miscommunication" hardly controls whether Knobel was a named defendant. Their operative complaint speaks for itself. While the *Cui* Plaintiffs used the *Li* caption when they filed the complaint, there is no doubt they intended to and did implead Knobel: the complaint said so; all the *Cui* Plaintiffs' 12(b)(6) papers were consistent with their having impleaded Knobel; the Court believed he was a party. In any event, both the first and second grounds for an award of attorney fees do not depend on whether Knobel is or is not a party.

## VII. The SPO Defendants established the reasonableness of their requested fees.

The *Cui* Plaintiffs argue that the SPO Defendants failed to provide the Court with evidence that the requested attorney fees are reasonable. Doc.361 at 9. They are mistaken.

As these plaintiffs acknowledge, when a fee applicant shows that its attorneys' hourly rates and hours expended are reasonable, the resulting lodestar number is "presumed to be the reasonable fee and adjustments should only be made in rare circumstances." *Id.* at 8 (citing *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998)). We showed reasonable rates and hours expended.

Paragraphs 8-13 of the Gee Declaration discuss the background and hourly rates of all the attorneys and paralegals. Doc.345. In Paragraph 14, Gee declares that the attorneys' and paralegals' respective hourly rates are reasonably comparable to the prevailing market rates in metropolitan Denver for attorneys and paralegals with

comparable skill, experience and reputation. *Id.* In Paragraphs 20-39, Gee discusses in some detail the reasonableness of the hours expended. *Id.*

On pages 26-28 of the Fees Motion, we discuss the reasonableness of the SPO Defendants' attorneys' and paralegals' rates. Doc.344. On pages 23-26, we discuss the reasonableness of the hours expended by the attorneys and paralegals. *Id.*

Based on these rates and hours, the lodestar for defending the *Cui* action is $71,730.79.

The *Cui* Plaintiffs ignore the Fees Motion's and Gee's discussion of the reasonableness of fees and hours. That dooms their claim that "the Court is [not] given anything more to go on than," Doc.361 at 9, the SPO entities' lawyer's statement of the amount of attorney fees incurred. Rather than address the evidence we presented, the *Cui* Plaintiffs embark on an unhelpful superficial review of the number of papers the SPO Defendants filed in its defense of the *Cui* action. Such a review has little bearing on how much time and effort were needed to defend against the *Cui* Plaintiffs' multimillion dollar lawsuit.

## Conclusion

The Court should award the SPO Defendants $71,730.79 in fees incurred to defend the *Cui* action.

July 9, 2021

        Respectfully submitted,

        *s/ Ty Gee*
        Harold A. Haddon
        Ty Gee
        Christopher P. Montville
        HADDON, MORGAN AND FOREMAN, P.C.
        150 East Tenth Avenue
        Denver, CO 80203
        Tel 303.831.7364
        hhaddon@hmflaw.com; tgee@hmflaw.com;
        cmontville@hmflaw.com

        *Attorneys for Defendants Solaris Property Owner, LLC, Solaris Property Owner I, LLC, and Peter Knobel*