## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Judge Raymond P. Moore

Civil Action No. 19-cv-02443-RM-STV
      Consolidated with 19-cv-2637-RM-STV

**Derivatively:**
Hsin-Yi Wu, and Qi Qin,
in their capacity as limited partners of
Colorado Regional Center Project Solaris LLLP,

      Plaintiffs

v.

Colorado Regional Center Project Solaris LLLP,

      Nominal Defendant,
and

**Directly:**
Hsin-Yi Wu, Jun Li, Qi Qin, Yi Liu, Jie Yang, Yuquan Ni,
Zhongzao Shi, Fang Sheng, Shunli Shao, Kaiyuan Wu,
Zhijian Wu, Zhongwei Li, Sa Wu, Fan Zhang, Lin Qiao,
Jinge Hu, Rujun Liu, Ying Xu, Lu Li, Cao Xiaolong,
and Yuwei Dong,

      Plaintiffs,

v.

Colorado Regional Center LLC,
Colorado Regional Center I, LLC,
Solaris Property Owner LLC,
Solaris Property Owner I LLC,
Peter Knobel, and
Colorado Regional Center Project Solaris LLLP, and
all principals and ultimate owners of business entities pursuant to
piercing of the limited liability veil,

      Defendants.

---

### ORDER ON SPO DEFENDANTS' MOTION FOR ATTORNEY FEES

---

This matter is before the Court on Defendants Solaris Property Owner, LLC ("SPO"), Solaris Property Owner I, LLC ("SPO I"), and Peter Knobel's ("Knobel") (collectively, "SPO Defendants") Motion for Attorney Fees (the "Motion") (ECF No. 344). The SPO Defendants seek an award of attorney fees under two contracts, Colo. Rev. Stat. § 13-17-201, and 15 U.S.C. § 78-u-4(c). The matter is fully briefed.[1] After reviewing the Motion, relevant parts of the court record, and the applicable law, and being otherwise fully advised, the Court finds and orders as follows.

## I.    BACKGROUND

This is a consolidated action. For ease of reference, Plaintiffs in Civil Action No. 19-cv-02443 are referred to collectively as the "Li Plaintiffs" and Plaintiffs in Civil Action No. 19-cv-2637 are referred to collectively as the "Cui Plaintiffs" (Li and Cui Plaintiffs, collectively, "Plaintiffs"). As the parties are familiar with the lengthy background which precedes the Motion, only a brief summary is provided here.

Plaintiffs filed their respective actions alleging they purchased limited partnership interests in Colorado Regional Center Project Solaris, LLLP ("CRCPS"). CRCPS (lender) loaned the money ($82.5 million) Plaintiffs (and other limited partners) invested to SPO (borrower). Subsequently, SPO assigned its rights and obligations under the loan to SPO I. At bottom, Plaintiffs alleged that the loan was undercollateralized with inflated valued condos; that SPO I was allowed to "repay" the loan with the overvalued condos (which was allegedly a disguised sale[2]); the limited partners were offered "put options"[3] to "unload" their interests in CRCPS; and the loan is in default but SPO I has not repaid. Plaintiffs filed numerous federal and state law

---

[1] *See* ECF Nos. 354, 363, 361,365, 370, 371, 374.
[2] According to Li Plaintiffs.
[3] According to Li Plaintiffs, these put options allegedly allowed the limited partners to "put" their partnership interests back to CRCPS and be assigned a condo. When the condo is sold, the limited partners who exercised the put options would receive the proceeds from the sale. (ECF No. 222, ¶ 99.) Cui Plaintiffs also made substantially the same allegations. (ECF No. 190, ¶ 22, 79.)

claims[4] against the various defendants allegedly involved with this deal. Motions to Dismiss were filed by Waveland Ventures, LLC ("Waveland"), Colorado Regional Center, LLC ("CRC"), and Colorado Regional Center I, LLC ("CRC I") (collectively, "CRC Defendants") and by SPO Defendants. Knobel is allegedly the sole equity owner or principal of SPO and/or SPO I.

In its Order on Pending Motions,[5] the Court granted in part and denied in part SPO Defendants' Motion to Dismiss, filed under Fed. R. Civ. P. 12(b)(6), directed against Plaintiffs. SPO Defendants' Motion to Dismiss was granted as to all remaining claims[6] by Plaintiffs except the following: (1) Cui Plaintiffs' Counts VI (derivative against SPO I) and Count VII (derivative against SPO and SPO I for declaratory relief); and (2) Li Plaintiffs' Count III (derivative for breach of contract against SPO I). All claims against Knobel were dismissed; therefore, he was dismissed as a party to this consolidated action.

Because the Court dismissed the federal claims, it also raised *sua sponte* whether diversity jurisdiction exists and, if not, whether the Court should retain supplemental jurisdiction over the three remaining state law claims. In its Order Regarding Subject Matter Jurisdiction,[7] the Court determined that it did not have diversity jurisdiction and declined to exercise supplemental jurisdiction over the state law claims. Therefore, the three state law claims were dismissed without prejudice. It appears that some Plaintiffs have recently filed a breach of contract claim in state court.[8] At issue now is whether the Court should, or is required to, award attorney fees in favor of any of the SPO Defendants against any Plaintiff based on any claim or "action."

---

[4] A chart summarizing the claims relevant here is appended to the end of this order.
[5] ECF No. 271.
[6] Some claims were voluntarily withdrawn or conceded. (*See* ECF No. 271.)
[7] ECF No. 334.
[8] ECF No. 409.

## II.     LEGAL STANDARD

### A.  Rule 54(d) of the Federal Rules of Civil Procedure

Under Rule 54(d)(2) of the Federal Rules of Civil Procedure, "[a] claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages." "Unless a statute or a court order provides otherwise, the motion must…be filed no later than 14 days after the entry of judgment," and contain specific information to assist with resolving the motion. Fed. R. Civ. P. 54(d)(2)(A) & (B). *See also* D.C.COLO.LCivR 65.3 (Local Rule setting forth additional requirements for attorney fees motion).

### B.  Colorado's Attorney Fee Statute – Colo. Rev. Stat. § 13-17-201

Colorado's attorney fee statute provides:

> In all actions brought as a result of…an injury to person or property occasioned by the tort of any other person, where any such action is dismissed on motion of the defendant prior to trial under rule 12(b) of the Colorado rules of civil procedure, such defendant shall have judgment for his reasonable attorney fees in defending the action.

Colo. Rev. Stat. § 13-17-201. The fee statute applies equally to dismissals under Rule 12(b) of the Federal Rules of Civil Procedure. *See Jones v. Denver Post Corp.*, 203 F.3d 748, 757 n. 6 (10th Cir. 2000) ("[W]e find the [fee] statute applies with equal force when a federal court dismisses a pendent state tort pursuant to Fed. R. Civ. P. 12(b)(6)."); *MacIntyre v. JP Morgan Chase Bank, N.A.*, 827 F. App'x 812, 820 (10th Cir. 2020), cert. denied sub nom., 209 L. Ed. 2d 772 (May 17, 2021) (same). The award of reasonable attorney fees is mandatory to a defendant prevailing in a tort action on a Rule 12(b) motion. *Crandall v. City of Denver*, 238 P.3d 659, 660 (Colo. 2010); *Wyles v. Brady*, 822 F. App'x 690, 697 (10th Cir. 2020). The fee statute leaves nothing to the discretion of the district court except to determine what is a reasonable fee. *Crandall*, 238 P.3d at 663.

The fee statute applies separately to each defendant who has an action dismissed against him under Rule 12(b). *See Gagne v. Gagne*, 338 P.3d 1152, 1168 (Colo. App. 2014) (analyzing only those claims brought against counterclaim defendant in determining he may recover under fee statute); *Falcon Broadband, Inc. v. Banning Lewis Ranch Metro. Dist. No. 1*, 474 P.3d 1231, 1245 (Colo. App. 2018) (The fee "statute applies to the claims against each defendant individually."). If the essence of the action against a defendant dismissed under Rule 12(b) is in tort, then the fee statute applies and fees shall be awarded. *Checkley v. Allied Property & Cas. Ins. Co.*, 635 F. App'x 553, 559 (10th Cir. 2016). The fee statute does not apply if the court does not "dismiss all the tort claims against a certain defendant or if an action contains both tort and non-tort claims and the defendant obtains C.R.C.P 12(b) dismissal of only the tort claims." *Falcon Broadband, Inc.*, 474 P.3d at 1244-45 (quotation marks and citation omitted). "In other words, for the statute to apply, the court must've dismissed the entire action pursuant to a Rule 12(b) motion, and that action must be a tort action." *Id.* at 1245. The burden is on the defendant to establish that he is entitled to recover under the fee statute. *Gagne*, 338 P.3d at 1168 (stating that movant had not shown fees were recoverable under fee statute).

### C.  Private Securities Litigation Reform Act

Under 15 U.S.C. § 78u-4(c) of the Private Securities Litigation Reform Act ("PSLRA"), "in any private action arising under this chapter [Chapter 2B – the Exchange Act], upon final adjudication of the action, the court shall include in the record specific findings regarding compliance by each party and each attorney representing any party with each requirement of Rule 11(b) of the Federal Rules of Civil Procedure as to any complaint, responsive pleading, or dispositive motion." 15 U.S.C. § 78u-4(c)(1). Further, if the court makes a finding that a party or attorney has violated Rule 11(b), "the court shall impose sanctions on such party or attorney in

accordance with Rule 11." 15 U.S.C. § 78u-4(c)(2). "[T]here is no requirement that the defendant have asked for the imposition of sanctions." *City of Livonia Emps. Ret. Sys. v. Boeing Co.*, 711 F.3d 754, 761 (7th Cir. 2013). The review is mandatory.

### III. DISCUSSION

#### A. Cui Plaintiffs' Argument regarding "Combining Parties"

Cui Plaintiffs contend that by combining all Plaintiffs into one motion, SPO Defendants have made the issues confusing and that this was intentional and violates the Court's Civil Practice Standards. While the Court agrees the manner in which the Motion was brought may make it more difficult to respond to by the parties, the Court does not find the Motion violates its Standards. Nor does the Court find that the "combining" of the parties in the Motion was done to intentionally confuse anyone.

#### B. Cui Plaintiffs' Argument regarding "Final Judgment"

Cui Plaintiffs argue SPO Defendants' Motion is premature because there has been no trial or final judgment and SPO Defendants have filed a Motion to Amend the Judgment ("Motion to Amend").[9] But, with exceptions inapplicable here, Fed. R. Civ. P. 54(d)(2)(B) sets forth the latest date for a motion for fees. And, although the Court has granted SPO Defendants' Motion to Amend, that deals only with attorney fees under the PSLRA which would not render the Motion at bar premature.

#### C. Recovery of Attorney Fees Under the Loan Agreement

The Loan Agreement is between the borrower (SPO) and lender (CRCPS), and its covenants and agreements are binding on successors and assigns. It is undisputed that, prior to this litigation, the rights and obligations under the Loan Agreement were assigned to SPO I. The Loan Agreement provides, in relevant part:

---

[9] ECF No. 341.

> In the event of any litigation arising out of this Loan, the prevailing party, in addition to any other rights or remedies to which it may be entitled, shall be awarded its reasonable expenses incurred in enforcing or defending such action. This includes, subject to any limits under applicable law, attorneys' fees and legal expenses, whether or not there is a lawsuit…."

(Paragraph 20(vi).[10]) "Loan" is defined to mean the loan(s) made to Borrower under the Loan Agreement and the "Loan Documents" as described in the Deed of Trust ("DOT").[11] "Loan Documents" is defined in the DOT to "include without limitation the Promissory Note, Loan Agreement and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness."[12] "Indebtedness" "means all principal and interest payable under the Note and any amounts expended or advanced by Lender to discharge obligations of Grantor [SPO/SPO I] or expenses incurred by Trustee or Lender to enforce obligations under this" DOT.[13]

SPO Defendants assert the requirements for an award of fees under the Loan Agreement are met. First, while SPO Defendants acknowledge that Knobel is not a party to the Loan Agreement or Agreement Regarding Collateral Unit ("ARCU"),[14] they argue there is no need to distinguish among the SPO Defendants or among the various claims because (1) SPO and SPO I have a contractual obligation to indemnify Knobel and (2) counsel for SPO Defendants treated these clients as one person based on their relationship and the manner in which Plaintiffs have prosecuted the action against SPO Defendants. Thus, Knobel's fees should be encompassed under the Loan Agreement. Next, SPO Defendants contend this litigation arose from the $82.5

---

[10] ECF No. 344-1, p. 10. Unless stated otherwise, the page references are to the numbers assigned to the document by the CM/ECF system, located at the upper right-hand corner of the document.
[11] ECF No. 344-1, p. 2.
[12] ECF No. 344-4, p. 2.
[13] ECF No. 344-4, pp. 1-2.
[14] Discussed below.

million loan – that the loan is ground zero for this entire litigation. Finally, SPO Defendants assert they are the prevailing parties because the Court dismissed all claims against them.[15]

**The Motion as against Li Plaintiffs.** Li Plaintiffs do not dispute that Knobel and his fees should be encompassed within the Loan Agreement, that this entire action arises from the Loan Agreement, or that the fees sought are reasonable. Thus, the Court assumes it is so. Li Plaintiffs' sole challenge is that SPO Defendants did not prevail because Li Plaintiffs' one remaining claim against SPO I for breach of the Loan Agreement was dismissed without prejudice, leaving Li Plaintiffs free to file that claim elsewhere. The Court disagrees.

SPO Defendants prevailed in this Court on the claims before it – the claims the Court exercised jurisdiction over and ruled upon – brought by Li Plaintiffs. The Court dismissed claims which Li Plaintiffs sought to voluntarily dismiss, dismissed claims on the merit, and dismissed the one remaining breach of contract claim without prejudice for jurisdictional reasons. The ultimate disposition of that claim is not before this Court. On this record, SPO Defendants are the prevailing parties. *See Allen v. Lang*, 738 F. App'x 934, 945 (10th Cir. 2018) (agreeing that "a defendant is a prevailing party for Rule 54(d)(1) purposes when a district court enters judgment on federal claims and declines to exercise supplemental jurisdiction over state claims, dismissing them without prejudice"). Accordingly, SPO Defendants' request for an award of fees under the Loan Agreement is granted.

This should end the issue of fees as against the Li Plaintiffs because the Court will not award a party, and SPO Defendants cannot recover,[16] the same fees more than once. Nonetheless, in order to have a complete record, the Court will address the remaining bases for an award of fees as against Li Plaintiffs.

---

[15] The parties do not distinguish between direct and derivative claims in their arguments; therefore, the Court also does not in analyzing the issues.

[16] SPO Defendants acknowledge they cannot recover more than once.

***The Motion as Against Cui Plaintiffs.*** Cui Plaintiffs argue SPO Defendants were not prevailing parties because the Court dismissed Cui Plaintiffs' two contractual claims without prejudice after declining to exercise supplemental jurisdiction. Therefore, they contend attorney's fees may not be awarded as to the contractual claims. As with Li Plaintiffs, Cui Plaintiffs do not challenge whether this litigation "ar[ose] out of this Loan" or whether Knobel is encompassed within the Loan Agreement. Cui Plaintiffs do argue there should be apportionment and challenge the reasonableness of the fees request, which the Court addresses below.

Although unclear, it appears that Cui Plaintiffs do not challenge whether SPO Defendants were the prevailing parties as to the other claims the Court dismissed. Even if they did make this argument, as SPO Defendants argue, SPO Defendants were the prevailing parties on all claims that were dismissed with prejudice.[17] The fact that the Court dismissed the two contract claims does not dictate a contrary result. *See Allen*, 738 F. App'x at 945. Thus, based on Cui Plaintiffs' argument, SPO Defendants were the prevailing parties before the Court. The Court addresses below the amount of fees recoverable.

### D.  Recovery of Attorney Fees Under the Agreement Regarding Collateral Unit

The ARCU, and related Transfer Agreement, are between CRCPS (lender) and SPO I (borrower). The Transfer Agreement provides:

> If Borrower or Lender initiates any action to enforce or interpret this [Transfer] Agreement, the party determined by the court…to be the prevailing party in such action will be entitled to receive from the non-prevailing party all reasonable cots and expenses, including all reasonable attorneys' fees incurred by the prevailing party in such action.

---

[17] The Court finds the dismissal of the direct claim for declaratory relief based on standing should have been dismissed without prejudice. *Rural Water Sewer & Solid Waste Mgmt., Dist. No. 1, Logan Cty., Okla. v. City of Guthrie*, 654 F.3d 1058, 1069 (10th Cir. 2011) (dismissal for lack of standing must be without prejudice). But this does not change the analysis here as to who are the prevailing parties.

(Paragraph 15.[18]) SPO Defendants contend they are entitled to fees under Paragraph 15 because Plaintiffs initiated an action which directly implicated the enforcement of the ARCU. Based on the same arguments made under the Loan Agreement, SPO Defendants contend that Knobel is encompassed within the ARCU and that they are the prevailing parties. The parties' arguments consider the ARCU and Transfer Agreement as if they are one and the same; therefore, the Court does so as well.

*Motion against Li Plaintiffs.* Li Plaintiffs' single argument is that the Court did not resolve any issues concerning the ARCU and, therefore, no party prevailed. The Court agrees. While the complaint contained allegations about the ARCU (the alleged "secret agreement"), it was Li Plaintiffs' Count III against SPO I which sought to determine the application or interpretation of the ARCU. The Court, however, never resolved that claim in favor of anyone. Thus, there is no prevailing party and no fees may be awarded to SPO Defendants under the ARCU.

*Motion against Cui Plaintiffs.* Cui Plaintiffs' arguments that SPO Defendants are not the prevailing parties appear to apply to SPO Defendants' request for fees under the ARCU, so the Court will address it here as well. And, here, the Court agrees with Cui Plaintiffs. Only Count VII requested relief based on the ARCU, seeking a determination as to its enforceability. SPO Defendants, however, were not the prevailing parties on the claims for breach of contract or declaratory relief (Counts VI and VII). The Court dismissed those claims without prejudice after declining to exercise supplemental jurisdiction. Accordingly, SPO Defendants are not entitled to recover fees under the ARCU.

---

[18] ECF No. 344-2, p. 18.

### E.  Recovery of Attorney Fees Under Colo. Rev. Stat. § 13-17-201

To determine if section 13-17-201 applies when a party has pleaded tort and non-tort claims, "a court must determine, as a matter of law," *Gagne*, 338 P.3d at 1167, whether the "essence" of that party's action was one in tort. *Luskin Daughters 1996 Trust v. Young*, 448 P.3d 982, 987 (Colo. 2019). In making its determination, the court "should focus on the manner in which the claims were pleaded," *Young*, 448 P.3d at 987, and "rely on the pleading party's characterization of its claims." *Gagne*, 338 P.3d at 1167. *See also Falcon Broadband, Inc. v. Banning Lewis Ranch Metro. Dist. No. 1*, 474 P.3d 1231, 1245 (Colo. App. 2018) ("How the plaintiff chose to plead the claim (as a tort or not) controls."). The Court "should not consider what the party should or might have pleaded." *Gagne*, 338 P.3d at 1167.

If the essence of the action against a defendant dismissed under Rule 12(b) is in tort, then the fee statute applies and fees shall be awarded. *Checkley v. Allied Property & Cas. Ins. Co.*, 635 F. App'x 553, 559 (10th Cir. 2016). The fee statute does not apply if the court does not "dismiss all the tort claims against a certain defendant or if an action contains both tort and non-tort claims and the defendant obtains C.R.C.P 12(b) dismissal of only the tort claims." *Falcon Broadband, Inc.*, 474 P.3d at 1244-45 (quotation marks and citation omitted). "In other words, for the statute to apply, the court must've dismissed the entire action pursuant to a Rule 12(b) motion, and that action must be a tort action." *Id.* at 1245.

As to the SPO Defendants, the Court only dismissed this action as against Knobel. SPO Defendants argue that all the claims pled against Knobel sound in tort; therefore, he is entitled to recover fees under section 13-17-201. However, SPO Defendants contend they should be awarded all fees expended without allocation between contract and tort claims or among SPO Defendants.

*Motion as against Li Plaintiffs*. Li Plaintiffs rejoin that the civil theft and Colorado Securities Act counts are not tort claims; that SPO Defendants have affirmatively argued this is a contract action concerning the Loan Agreement; and that because their claims were tied to the underlying Loan Agreement, they are contract-based claims. Thus, they contend the "essence" of this case is a contract and not a tort action. In addition, Li Plaintiffs assert that the entire action against SPO Defendants was not dismissed because Count III may continue in another court; therefore, the attorney fees issue is unripe. Defendants reply that Li Plaintiffs are wrong – they only contend the entire action was dismissed against Knobel. Nonetheless, they assert fees should be awarded for all. The Court finds otherwise.

The Court agrees with Li Plaintiffs that the entire action against SPO Defendants were not dismissed under Rule 12(b). As SPO Defendants acknowledge, the entire action only as to Knobel was dismissed under Rule 12(b). Thus, it follows that only Knobel may recover under the fee statute, assuming he can establish it applies. The Court is not persuaded by SPO Defendants' argument that they should ALL recover fees against Li Plaintiffs when it was only Knobel who prevailed.

The question then is this: was the essence of this action as against Knobel one in tort? After considering the allegations and claims, evaluating the source of the duties breached or violated (were they from promises between the parties or from ones imposed by law[19]), as against Knobel, the Court finds the essence of this action was one in tort.

While this action arises from the loan of the money Plaintiffs invested in CRCPS to SPO/SPO I and the alleged failure to repay the loan, the essence of the action against Knobel is

---

[19] *See Falcon Broadband, Inc.*, 474 P.3d at 1237, 1245 n.18 (differentiating tort versus contract obligations for purposes of the Colorado Governmental Immunity Act ("CGIA") but recognizing difference in context between the fee statute and the CGIA).

that he was one of the masterminds in creating this allegedly fraudulent deal.[20] For example, the loan was allegedly collateralized with condos that were assigned collateral values by Knobel at inflated prices.[21] The loan was allegedly set up so that "Knobel" could repay the loan with the inflated valued condos rather than with cash. As Li Plaintiffs alleged, "[t]his exposed the fraud at the heart of this Loan"[22] because the sale of these allegedly inflated valued condos would "fetch perhaps $40,000,000 or less," when $82,500,000 was owed under the loan[23] leaving the investors (Plaintiffs) with a more than $40 million loss. This was alleged to be "theft with a pen."[24] And to add insult to injury, CRCPS allegedly then hired Knobel's real estate firm to sell these inflated condos – "a massive fraud and a colossal breach of fiduciary duty."[25] Based on such alleged conduct, Li Plaintiffs asserted three claims against Knobel: Count II – civil theft; Count VI – Colorado Securities Act; and Count VII-2 – fraud. As SPO Defendants argue, the claims alleged a tort.

The civil theft claim alleged Knobel "deceptively gave the impression of the Loan being fully collateralized" resulting in the conversion through fraud of about $40 million from CRCPS. That Knobel allegedly deceived CRCPS into making the Loan; allegedly stood to gain the difference between the loan principal and value of the collateral; allegedly converted $40 million through deception, artifice, and overinflating the value of the collateral; and allegedly acted with forethought, scienter, and malice with others. These assertions clearly alleged tortious conduct by Knobel. *See Castro*, 33b P.3d at 1069 (recognizing that the breach of a statutory duty may allege a tort); *Luskin*, 448 P.3d at 987-88 (essence of action sounded in tort where declaratory and injunctive relief claims alleged tortious conduct as bases for claims).

---

[20] ECF No. 222, e.g., ¶ 83.
[21] ECF No. 222, e.g., ¶¶ 37, 41, 48.
[22] ECF No. 222, p. 2.
[23] ECF No. 222, pp. 1, 2.
[24] ECF No. 222, p. 3.
[25] ECF No. 222, p. 3.

The same holds true for the Colorado Securities Act claim. There, Li Plaintiffs alleged that CRC, in notices to investors, sent misleading and fraudulent valuations to the limited partners in connection with an attempt to get them to exercise a put option offered. Li Plaintiffs alleged that Knobel was aware of the misleading valuations; knew the "entire deal" and CRC's representations about the collateral were lies; and provided the figures for the overvaluation of the condos. Knobel allegedly had a duty to disclose to the limited partners that the loan was not likely to ever get paid back in cash and that CRCPS would be stuck with undervalued collateral. Knobel was allegedly a party to this fraud and involved with structuring the transaction "to deceive, defraud, and deprive the limited partners of their investment."[26] These allegations also clearly alleged tortious conduct.

Finally, the fraud claim sounds in tort.[27] Here, Li Plaintiffs alleged that Knobel knew the marketing materials given to them were false and contained material omissions and misstatements about the loan being safe and fully collateralized. Knobel allegedly knew that the assigned values of the collateral units were wrong and wildly inflated and set up the loan to be deliberately undercollateralized. By his (and others') actions, Knobel (and others) allegedly wrongfully and fraudulently made themselves $40 million.

The quantity and quality of the claims against Knobel establish the essence of Li Plaintiffs' claims against Knobel sounded in tort. These claims were dismissed under Rule 12(b)(6); therefore, Knobel is statutorily entitled to attorney fees in defending this action. As the Court has already awarded Knobel fees under the Loan Agreement, it need not separate out what reasonable fees may be awarded under the fee statute. Nor are these fees to be awarded again.

---

[26] ECF No. 222, ¶¶ 206-207.
[27] This claim was not dismissed under Rule 12(b)(6). Instead, this claim was dismissed by the Court, without objections, after Li Plaintiffs decided to withdraw it. With or without this claim, the action against Knobel sounds in tort.

***Motion as against Cui Plaintiffs.*** Cui Plaintiffs argue no fees should be awarded for two reasons. First, Cui Plaintiffs argue their Third Amended Complaint was not dismissed on SPO Defendants' Motion to Dismiss as "several claims survived." Second, Cui Plaintiffs argue their claim was in "essence" a contact case as they were in contractual privity with SPO Defendants under the Loan Agreement and ARCU. Cui Plaintiffs assert Count I is for fraudulent inducement to enter into a contract. Cui Plaintiffs further argue the other Counts (III, IV, and V) are also contractual as Cui Plaintiffs invested money into CRCPS with the expectation of profits to be derived from others, i.e., that they entered into investment contracts.

Cui Plaintiffs' first argument is without merit. SPO Defendants already acknowledge in their Motion that only Knobel was dismissed entirely under Rule 12. And they only argue that Knobel is entitled to fees.

Cui Plaintiffs' second argument is also unavailing. Cui Plaintiffs' claims against Knobel were for fraud, violation of the Colorado Consumer Protection Act ("CCPA"), and violation of the federal securities act. The CCPA claim was voluntarily dismissed without objection. The other two claims were dismissed under Rule 12 on the merits. As SPO Defendants argue, these dismissed claims were tort claims.

In their fraud claim (Count I), Cui Plaintiffs alleged that Knobel (and all other Defendants) made material misrepresentations and omissions and provided false and misleading materials to induced them into investing in CRCPS. And Knobel allegedly continued to provide false and misleading notices after Cui Plaintiffs invested in CRCPS. In their federal securities claim, Cui Plaintiffs alleged that Defendants (which included Knobel[28]) 1) violated 15 U.S.C. § 78o when they "aided and abetted in the use of Agents" to solicit and sell limited partnership interests but they and their agents failed to register as a broker or dealer, and 2) violated 15

---

[28] ECF No. 190, ¶ 49 (defining "Defendants" to include Knobel (misspelled as "Knobbel")).

U.S.C. § 78j by using manipulative and deceptive devices to induce Cui Plaintiffs into purchasing limited partnership interests in CRCPS. The Court finds these are also tort based claims. The gist of these claims is that Cui Plaintiffs were fraudulently or deceptively induced to purchase their interests in CRCPS and that, while doing so, Knobel was not registered as a broker or dealer. Thus, Knobel is entitled to recover under the fee statute.

As the Court has already awarded Knobel fees under the Loan Agreement, it need not separate out what reasonable fees may be awarded under the fee statute as to Knobel. Nor are these fees to be awarded again.

### F.  Amount of Reasonable Fees

*Li Plaintiffs.* Li Plaintiffs were given the opportunity to challenge the amount of fees sought by SPO Defendants but decline to do so. Instead, they chose to rely on limited arguments, such as SPO Defendants were not the prevailing parties, to win the day. The Court has no obligation to do their work. Nonetheless, it has reviewed SPO Defendants' submission, i.e., the rates charged, the experience of the timekeepers, the number of hours expended, and the tasks performed. The Court, having held three hearings, reviewed hundreds of filings, and issued numerous orders, is well aware of the nature and complexity of the case, the type and number of issues raised, the scope and depth of the filings, and what would be a reasonable amount of time required to address such filings, even if they were not addressed directly to SPO Defendants. *See Malloy v. Monahan*, 73 F.3d 1012, 1017-18 (10th Cir. 1996) (setting forth factors court should consider in evaluating reasonableness of fees).

After such review, the Court finds the fees requested were reasonable. In doing so, the Court is mindful that the Supreme Court has cautioned that "[a] request for attorney's fees

should not result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Therefore, the fees requested of $244,020.68[29] shall be awarded.

*Cui Plaintiffs.* Cui Plaintiffs raise three arguments here: (1) that SPO Defendants' counsel fails to apportion fees among the various Defendants they represent – three different Defendants against whom different claims were made; (2) that Knobel was not a party and therefore fees cannot be awarded in his favor; and (3) that SPO Defendants offered no evidence of the reasonableness of the claimed fees. The Court agrees, in part.

First, where appropriate, the Court agrees that fees should be apportioned. Under Cui Plaintiffs' argument, however, no fees awarded under the Loan Agreement are required to be apportioned. Cui Plaintiffs argument there is that no fees should be awarded because SPO Defendants were not the prevailing parties. But the Court finds otherwise; therefore, no apportionment among the prevailing parties is required.

The Court agrees that apportionment would be required for the dismissal of Knobel under Section 13-17-201. SPO Defendants' proposed grouping of the federal securities fraud-related claims and contract claims[30] separately for recovery of fees under the PSLRA claim shows that it is possible to do so. The Court is not persuaded by SPO Defendants' contrary arguments. However, the Court need not determine what this number may be because it is not necessary to do so here. It has already awarded Knobel fees under the Loan Agreement and fees will not be awarded again.

Second, the Court rejects the argument that Knobel was not a party. Cui Plaintiffs argue that Knobel was added as a party solely for the purpose of alleging alter ego liability; there are no allegations made against him; and he was never served or executed a waiver of service of

---

[29] ECF Nos. 370, 371.
[30] Separating the claims into two groups: the federal securities fraud-related claims and contract claims.

summons. The Court has already considered and rejected these arguments in its Order of August 11, 2021, addressing SPO Defendants' Motion to Amend.[31] Thus, Knobel was a party for purposes of awarding fees.

Finally, the Court rejects Cui Plaintiffs'' argument that SPO Defendants' counsel's declaration is "hearsay" that cannot be considered in determining the amount billed in defense of the Cui Plaintiffs' action or the reasonableness of such fees. Moreover, SPO Defendants have submitted the Declaration of Ryan Smith, general counsel of SPO and SPO I to establish the amount of fees at issue.[32] Cui Plaintiffs do not challenge the reasonableness of the hourly rates charged but apparently challenge the number of hours billed as they complain about the amount of work product that should have been required.

The Court has examined the services billed and the time expended for such services and finds them to be reasonable under the circumstances. While it is true that there were more filings by Li Plaintiffs, and there are other Defendants in the case, it is also true that Cui Plaintiffs' complaint oftentimes grouped Defendants together necessitating an examination of any filing which may otherwise appear to be directed at another party. The Court is also aware of the difficulties encountered in ascertaining which claim was directed against whom and of Cui Plaintiffs' amendments and voluntary "dismissals" or concessions made during this this lawsuit. As the Court stated in discussing the award against Li Plaintiffs, it is well aware of the work required in this case to defend against the filings made. Based on its knowledge, and its review of the supporting documents for the fee request, the Court cannot say that the time expended or the services performed were not reasonable or unnecessary.

---

[31] ECF No. 377, pp. 13-14. To the extent the Court needs to address them again, it incorporates that part of the Order of August 11, 2021, as if fully set forth herein.
[32] ECF No. 344-3.

### G.  Recovery of Fees under the PSLRA

SPO Defendants request an award of fees against Cui Plaintiffs and/or their counsel under the PSLRA to the extent any fees are not awarded under the Loan Agreement, the ARCU, and section 13-17-201. The Court addresses this argument in its Order on PSLRA Fees concurrently with this Order on SPO Defendants' Motion for Attorney Fees.  As explained in that Order, however, the fees awarded are not cumulative and can be collected only once.

### IV.    CONCLUSION

Based on the foregoing, it is therefore **ORDERED**

(1) That SPO Defendants' Motion for Attorney Fees (ECF No. 344) is GRANTED as stated herein;

(2) That SPO Defendants are awarded $244,020.68 in attorney fees against Li Plaintiffs; and

(3) That SPO Defendants are awarded $77,376.79 in attorney fees against Cui Plaintiffs.

DATED this 29th day of October, 2021.

BY THE COURT:

RAYMOND P. MOORE
United States District Judge

19

## Chart of Claims

| Li Plaintiffs' Counts | | | | |
|---|---|---|---|---|
| Count | Direct/ Derivative | SPO Defendants Named | Basis | Disposition |
| II | Derivative | SPO, SPO I, & Knobel | Civil Theft | Dismissed on Merits. |
| III | Derivative | SPO I | Breach of Loan Agreement | Dismissed without prejudice. Court declined to exercise subject matter jurisdiction. |
| IV | Derivative | SPO I | Transfer of Title to CRCPS | Dismissed as withdrawn.[33] |
| VI | Derivative | Knobel[34] | Colorado Securities Act – Fraud | Dismissed on merits. |
| VII-2[35] | Direct | Knobel[36] | Fraud | Dismissed as withdrawn. |
| VII-4 | Direct | SPO | Veil Piercing | Dismissed as withdrawn. |

---

[33] "Dismissed as withdrawn," as used herein, refers to the Court's dismissal of these claims after they were voluntarily "withdrawn," "dismissed," or conceded to by Plaintiffs.

[34] As relevant here, the parties and Court recognized that Li Plaintiffs' Count VI alleged it is against Knobel but then, in the prayer, sought relief against SPO I. The Court treated that count as directed against Knobel. (ECF No. 271, pp. 7 & n.22, 42; No. 224, p. 21 & n.10.)

[35] Li Plaintiffs' complaint contains four "Count VIIs." (ECF No. 222.)

[36] Whether this claim also includes SPO and SPO Is is unclear. The count is directed against Knobel but the prayer seeks relief against Knobel and "his SPO/SPOI entities." (ECF No. 222, pp. 49-51.) The Court did not resolve this issue because Li Plaintiffs voluntarily abandoned these claims, which the Court dismissed. (ECF No. 271, p. 7.)

| Cui Plaintiffs' Counts | | | | |
|---|---|---|---|---|
| Count | Direct/ Derivative | SPO Defendants Named | Basis | Disposition |
| I | Direct | SPO, SPO I, Knobel | Fraud | Dismissed on merits. |
| III | Direct | SPO, SPO I, Knobel | Colorado Consumer Protection Act | Dismissed as withdrawn. |
| V | Direct | SPO, SPO I, Knobel | Federal Securities Exchange Act | Dismissed on merits. |
| VI | Direct & Derivative | SPO I | Breach of Contract | Direct – dismissed as withdrawn. Derivative – Dismissed without prejudice. Court declined to exercise supplemental jurisdiction. |
| VII | Direct & Derivative | SPO, SPOI | Declaratory Relief: Enforceability of YEA and ARCU | Dismissed without prejudice. Court declined to exercise supplemental jurisdiction. |
| VIII | Direct | SPO I | Veil Piercing | Dismissed as withdrawn; not a claim but a remedy. |