**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 19-cv-02443

Jun Li, Qi Qin, Yi Liu, Jie Yang, et al.
        Plaintiffs,

                              Hon. Judge Moore
      v.                        Hon. Magistrate Varholak

Colorado Regional Center Project Solaris LLLP,
Colorado Regional Center I, LLC, et al.
        Defendants.

**Li Plaintiffs' Response to CRC Defendants'**
**Motion for Charging Order [ECF 427]**

      This Court should not double down on its fee-shifting rulings at ECF 413 and 414 by backing them up with charging orders. Those rulings are riddled with errors and are being appealed in the Tenth Circuit. The Li Plaintiffs offer the following points against enforcement of these rulings by charging order or otherwise.

      Judge Moore wrongfully characterized this lawsuit as a "tort action" under Colo. Rev. Stat. §13-17-201 by taking into account claims that were voluntarily dismissed, in violation of *Walters v. Townsend Farms, Inc.*, No. 13-cv-02730-CMA-CBS, 2015 WL 557178, at *4-5 (D. Colo. Feb 9, 2015)(holding that §13-17-201 disallows fee-shifting based on claims dismissed voluntarily, by stipulation, or by confession). The Tenth Circuit, following Colorado law, holds that the fee-shifting statute must be narrowly construed by taking into account only claims dismissed by the Court itself under Rule 12(b), not claims voluntarily dismissed or withdrawn by the plaintiffs. *Zerr v. Johnson*, 120 F.3d 272 (10th Cir. 1997)(table), citing *Houdek*

*v. Mobil Oil Corp.*, 879 P.2d 417, 425 (Colo. App. Ct. 1994)("Colorado courts have held a plaintiff may avoid liability for attorneys' fees under §13-17-201 by seeking a voluntary dismissal or by filing a stipulation of dismissal, or by confessing to a defendant's motion to dismiss"). This is straight from the statute itself, which says that it applies only to tort actions "dismissed [by the Court] on motion of the defendant prior to trial under Rule 12(b)"  It does not apply to actions or claims dismissed by the *plaintiffs*.

ECF 413 and 414 are premised on the erroneous notion that the Li Plaintiffs submitted **ten** claims for the Court's determination under Rule 12(b), when in fact Judge Moore admitted that the number was actually **five**:

> "The Li Plaintiffs' operative Complaint in this case contained ten claims - seven derivative on behalf of CRCPS, and three direct claims. The Li Plaintiffs subsequently voluntarily dismissed all of the direct claims, as well as two of the derivative claims. On the Defendants' motions, this Court then dismissed all but one of the remaining claims." [ECF 415: 8]

Note Judge Moore's use of the past tense: the Li Plaintiffs' Complaint contain**ed** ten claims, but they voluntarily dismissed **five** of them, leaving **five** counts for determination under Rule 12(b).  This is consistent with his statement, "The Li Plaintiffs' remaining **five** counts are derivative and are as follows. . . [at this point he sets forth a chart showing **five** counts for consideration under 12(b)]" [ECF 271:7 (emphasis added)].  The texts of ECF 413 and 414 assert that the Li Plaintiffs made

2

**ten** claims, but the charts attached to ECF 413 and 414 have footnotes admitting that **five** claims were voluntarily dismissed [ECF 413:20fn33 and ECF 414:20fn14], leaving only **five** claims for the Court to review under Rule 12(b).

The characterization of this lawsuit as a "tort action"(or not) turns on the five claims submitted for disposition by the Court under Rule 12(b). So let's examine these "remaining five counts" [ECF 271:7] and see if they quantitatively and qualitatively render this case a "tort action."

Counts I and III assert breaches of express contract provisions contained in, respectively, a limited partnership agreement and a loan agreement; these cannot be tort claims in any possible universe. Count II asserted statutory civil theft, which the Colorado Supreme Court explicitly refused to designate as a tort in *Bermel v. BlueRadios, Inc*. 440 P.3d 1150, 1157 (Colo. 2019). Counts V and VI were for securities law violation, which is not clearly a tort nor a contract claim.

Let's look closer at Counts V and VI since they are the only route by which this Court could conceivably assert that this lawsuit is a "tort" claim. As a preliminary matter, Judge Moore did not engage in a well-rounded inquiry as to whether securities law violations are "tort actions." He did not examine arguments from both sides, did not look for guidance from higher courts, and did not consider any recent scholarship. The Tenth Circuit has referred to the "*sui generis* nature of securities fraud," *CGC Holding Co., LLC v. Broad and Casse*l, 773 F.3d 1976, 1095

3

(10th Cir. 2014), which raises the question as whether there is any way to put securities fraud into a box labeled as a contract claim, tort claim, or statutory claim. This "sui generis" classification is what most treatises also say, for example:

> Courts have considered whether 10b-5 is closer to a tort or contract claim, and if it should be treated as an equitable or legal cause of action. These distinctions assume importance when state law must be employed as an aid to federal jurisdiction, but otherwise 10b-5 should be treated as sui generis.

Arnold Jacobs, 5B Disclosure & Remedies Under the Sec. Laws, 5B § 6:54 (Dec. 2021 update)(cites omitted). As one law professor summed up this dilemma of characterization, the modern trend is to see securities fraud as predominately contractual:

> The key question is whether securities fraud actions should be viewed primarily through a tort lens or a contract lens. Recent proposals for major alterations in federal securities regulation have a strong contractarian flavor. Proponents of a contract-based view of securities regulation have made substantial headway in court decisions, in the writings of leading contractarian scholars, and even in the halls of Congress [citing the PSLRA]."

Robert Prentice, "Contract-Based Defenses in Securities Fraud Litigation: A Behavioral Analysis," 2003:2 Illinois L. Rev. 337, 340 (2003)(cites omitted). This ambiguity is reflected in the Supreme Court's declaration that securities fraud actions *resembles* tort actions but the two are different: "[10b-5] resembles, but is not identical to, common-law tort actions for deceit and misrepresentation" *Dura*

4

*Pharma. v. Broudo*, 544 U.S. 336, 341 (2005); *Wenzel v. Patrick Petroleum Co.*, 745 F. Supp. 211, 214 (D. Del. 1990)(holding that securities claims have an 'affinity' with tort claims without being actual torts).

There are good arguments in both directions. On the one hand, securities fraud under Rule 10b-5 is nominally a type of fraud -- and fraud is a tort. On the other hand, securities fraud is unlike a tort because it necessarily requires the purchase or sale of an investment contract, it limits recovery to contractual damages such as actual harm or recission, it can be defended by contractual affirmative defenses such as written waivers and disclaimers, and it is a private right of action arising under a statute, which is different than torts. These ambiguities have left the most sophisticated scholars in America unable to reach consensus on whether securities violations should be classified as tort actions.

How did Judge Moore handle the difficult question of whether securities fraud is a tort?

He took one sentence of *dicta*, out of context, from a 50-year-old district court opinion, failing to mention that the decision was reversed and remanded on the point for which he cited it [ECF 414:7]. That case was *deHaas v. Empire Petroleum Co.*, 302 F. Supp. 647, 649 (D. Colo. 1969), aff'd in part, remanded in part, 435 F.2d 1223 (10th Cir. 1970). In *deHaas*, the jury found a Rule 10b-5 violation but awarded both actual and punitive damages, thereby creating a problem because federal securities

law does not allow punitive damages. When challenged by the defendant to justify upholding the punitive damages award, the district court engaged in tortuous reasoning, saying that 10b-5 has an element of scienter, and scienter implies intentionality, so 10b-5 can be understood as an intentional tort, and since torts can generate punitive damages, the jury's award of punitive damages was permissible as a kind of hybrid 10b-5 tort. From this lower court discussion of punitive damages, Judge Moore took (out of context) only some cropped language saying that Rule 10b-5 necessitates an intentional tort. But Judge Moore neglected to say that this holding was reversed and remanded by the Tenth Circuit, which said that Rule 10b-5 cannot give rise to punitive damages by such a convoluted chain of reasoning, and sent the case back down to strike the punitive damage award and the district court's justification of it. In reversing and remanding, the Tenth Circuit refused to agree with the district court that a 10b-5 claim is an intentional tort.

The *deHaas* decision cited by Judge Moore has never - never - been cited as authority for anything, let alone the principle that securities fraud is an intentional tort. The decision in *deHaas* on which Judge Moore relies has only been cited once, and that was back in 1971 when the Tenth Circuit explained it as holding merely that in some circumstances a Rule 10b-5 violation can morph or be connected to egregious conduct that is tortious. This suggests that Rule 10b-5 is *not* inherently a tort claim unless it is somehow connected to some kind of outrageous or unusual

6

circumstance. *Richardson v. MacArthur*, 451 F.2d 35, 45 (10th Cir. 1971). And that is where Judge Moore's trail ends. In other words, Judge Moore got the law wrong by citing an overturned case, he failed to acknowledge that the case he was citing was reversed, and he even mis-cited the case, upon which he relied as his sole precedent in saying that securities fraud is a tort claim - despite superior precedent to the contrary and despite scholarship and treatises saying that the answer is unclear. Honestly, there is no way to see Judge Moore's conduct as anything other than outcome-oriented, as if he started with the conclusion that he wanted to shift fees onto the Li Plaintiffs and then went searching for something - anything - no matter how tenuous - to give some kind of half-baked legal cover for his predetermined outcome. Humility should have cautioned him that the law is not sufficiently clear to proclaim that securities fraud is a tort within the fee-shifting statute, especially when it must be read narrowly in favor of the plaintiffs.

But let's suppose that Judge Moore, alone among all the other judges and legal scholars in America, somehow discovered the Holy Grail that securities fraud claims are torts. So what? That still leaves 3 counts of 5 that are not torts, hardly enough to make this lawsuit a "tort action" by a preponderance of claims or by its essence.

In fact, Judge Moore has consistently described this as a contract case with a few twists, and fee-shifting cannot take place when the underlying dispute is based on contracts. *Liberty Bankers Life Ins. Co. v. First Citizens Bank & Trust Co.*, 411

7

P.3d 111, 119 (Colo. App. Ct. 2014).  In *Liberty*, the Court said that even though torts were alleged by the parties, the action did not fall within the fee-shifting statute because the alleged torts surrounded two specific loan participation agreements:

> Here, while Count Three of Liberty's counterclaims facially alleged a tort claim of gross negligence and willful misconduct, the overall action is more accurately characterized as a contract action since all of the counterclaims, including Count Three, were based on acts or omissions relating to the alleged breach of the two participation agreements.

This parallels Judge Moore's description of this case: "[T]his action arises from the loan of money Plaintiffs invested in CRCPS to SPO/SPOI and the alleged failure to repay the loan" and "[T]his entire action arises from the Loan Agreement . . ." [ECF 413: 12, 8].  Just so, this case revolves around the breach of two agreements: CRCI breached the fiduciary duty provisions of the limited partnership agreement and SPOI breached the repayment provisions of the loan agreement.  Anything else is ancillary to these contracts.  Indeed, Judge Moore's recitation of the facts does not mention any conduct outside of contractual agreements:

> Plaintiffs filed their respective actions alleging that they purchased limited partnership interests in Colorado Regional Center Project Solaris LLLP ("CRCPS").  CRCPS loaned the money ($82.5 million) that Plaintiffs (and other limited partners) invested to Solaris Property Owner LLC ("SPO"). Subsequently, SPO assigned its rights and obligations under the loan to Solaris Property Owner I LLC ("SPOI). At bottom, Plaintiffs allege that the loan was undercollateralized with inflated condos; that SPOI was allowed to 'prepay' the loan with overvalued condos (which was allegedly a

8

>  disguised sale); the limited partners were offered "put options" to "unload" their interests in CRCPS; and the loan is in default but SPOI has not repaid. [ECF 413: 2].

This describes a limited partnership *contract*, a loan *contract,* and an offering of investment *contracts*. If there is a tort in here, it is so peripheral that this case cannot be 'primarily' and 'essentially' a tort action. Even the damages sought are contractual: the Li Plaintiffs want CRCPS to receive what it would have received if the contracts had been faithfully performed. The entire case can be described without mentioning a tort, and the entire remedy achieved without mentioning a single tort.

Finally, the rulings at ECF 413 and 414 fail to respect the designation given to the claims by the Plaintiffs themselves, which a court must do when narrowly construing this statute. *Robinson v. Colo. State Lottery Div.*, 179 P.3d 998, 1010 (Colo. 2008); *Castro v. Lintz*, 338 P.3d 1063, 1067-8 (Colo. App. 2014); *Jones v. Haga*, 05-cv-02268-PSF-CBS, 2007 WL 433126 *2 (D. Colo. Feb. 2, 2007). The Li Plaintiffs filed and docketed this lawsuit under a docket sheet saying, "Nature of Suit Category 160: Stockholder Suits," whereas torts have totally different category numbers. So the Plaintiffs never characterized this as a tort action, and *their* characterization is controlling under the fee-shifting statute.

Nowhere does Judge Moore cite a single case applying the statute to any of the five claims heard by the Court under Rule 12(b). The statute has never been applied to a claim for breach of fiduciary duties in a contract (Count I), never been

9

applied to a claim for statutory civil theft (Count II), never been applied to breach of a loan agreement (Count III) and never been applied to securities violations (Counts V and VI). There is literally no case law supporting ECF 413 and 414 other than vague analogies to the effect that the entire complaint alleges some vague 'wrongdoing' and this vaguely means that it is a "tort action." That is sloppy reasoning. Discretion being the better part of valor, Judge Moore should just leave things alone and let the Tenth Circuit figure this out rather than doubling down on his questionable rulings that ignore gigantic swaths of precedent.

WHEREFORE, the Li Plaintiffs oppose any charging order based on ECF 413 and 414 since those rulings are grounded in errors of law and are currently on appeal.

Dated: December 28, 2021                    Respectfully Submitted,

/s/ Douglas Litowitz
413 Locust Place
Deerfield, IL 60015
312-622-2848
Litowitz@gmail.com

**Certificate of Service**

This document was filed on the ECF system for the District of Colorado on December 28, 2021.