# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-02443

Jun Li, Qi Qin, Yi Liu, Jie Yang, et al.
        Plaintiffs,

                                              Hon. Judge Moore

     v.

Colorado Regional Center Project Solaris LLLP,
Colorado Regional Center I, LLC, et al.
        Defendants.

---

## Li Plaintiffs' Fed. R. Civ. P. 62.1 Motion for Indicative Ruling that Defendants Must Obtain Court Approval of Settlement Plan under Fed. R. Civ. P. 23.1

---

This consolidated derivative action is on appeal in the Tenth Circuit. Two sets of Plaintiffs filed derivative claims under Fed. R. Civ. P. 23.1 which governs derivative actions in the federal courts. Rule 23.1(c) provides that a derivative action cannot be 'settled' or 'compromised' without District Court approval:

> (c) Settlement, Dismissal, and Compromise. A derivative action may be settled, voluntarily dismissed, or compromised only with the court's approval. Notice of a proposed settlement, voluntary dismissal, or compromise must be given to shareholders or members in the manner that the court orders.

In violation of this Rule, the Defendants have begun a below-the-radar campaign of *de facto* settling/compromising this lawsuit without Court approval, and without putting the money into an escrow or IOLTA account where Plaintiffs' lawyers can draw fees. They made a distribution of $80,000 per limited partner in December 2021 and they plan a distribution of $30,000 in April 2022 (see Exhibit 1 attached hereto). These distributions are payments from Defendants to antagonistic Plaintiffs who are suing them, which makes them a 'settlement' or 'compromise' that requires Court supervision.

**The Defendants just released documentation showing that they have taken $20 million dollars in 'management fees' out of the Plaintiffs' $82.5 million dollar investment, and that each limited partner's $500,000 investment ten years ago is now worth half of what they invested. The latest partnership tax return prepared by Defendants recognizes a collective loss of some $35-45 million dollars, plus another $20 million dollars lost to 'management fees' -- making this one of the biggest investment debacles in Denver history. The parties are still antagonistic in the Tenth Circuit, and there has been a massive loss of money**

2

**that was supposed to be managed under express fiduciary duties of care and safekeeping. This is an active dispute for tens of millions of dollars under Fed. R. Civ. P. 23.1 and cannot be settled/compromised outside of Court supervision as if it were some back-alley drug deal.**

By making payments directly to limited partners instead of going through counsel's IOLTA accounts (as is normal), the Defendants' strategy is to leak out sufficient distributions directly to motivate Plaintiffs to drop the case and leave their lawyers with nothing, thereby avoiding paying legal fees. This Court should not be a willing participant in that charade and spectacle of buffoonery. The distributions are a *de facto settlement* that falls within the definition of "settlement" and "compromise" in Rule 23.1(c) requiring Court supervision.

Let this be said clearly: Plaintiffs' counsels encourage the Defendants to make distributions -- and encourage a global settlement of the case -- but it should be done in compliance with law and not behind the back of the Court and behind the backs of the Plaintiffs' lawyers. The Plaintiffs and the Defendants are still antagonistic (recall that over 70% of limited partners voted to remove the Defendants as managers),

3

meaning that distributions from the Defendants to placate the Plaintiffs are a "settlement" or "compromise."

A derivative action is meant to benefit the business entity as a whole (in this case, CRCPS) and then benefit ***all*** limited partners derivatively. As in a class action, the entire burden of legal fees should fall equally on all beneficiaries and not only on the represented clients who are being punished for having lawyers try to get back the money for ***all*** limited partners.

These are inequities that Rule 23.1(c) supervision would prevent. It requires defendants to put forth a coherent plan of settlement that spreads the legal fees among all beneficiaries and provides reasonable compensation to counsel. The Defendants need to comply if they want to make a de facto settlement of this case, even if it is merely a 'compromise' that glancingly affects the rights of the limited partners.

Fed. R. Civ. P. 62.1 ("Indicative Ruling on a Motion for Relief that is Barred by a Pending Appeal") allows this Court to declare that new circumstances raise a "substantial issue" for its decision, and to indicate

how it would rule if it retained jurisdiction, despite jurisdiction passing to the appellate court.[1]

Here, a "substantial issue" exists whether the distributions to limited partners (which will eventually drain all the assets of CRCPS) is a *de facto* 'settlement' or 'compromise' under Rule 23.1(c) that should be supervised by the Court. **If this Court does nothing it is giving its stamp of approval to having the Plaintiffs' lawyers chase down their own clients one-by-one for payment, a terrible situation that can be avoided if the Defendants merely put distributions in an escrow or IOLTA like every other case that settles**. Plaintiffs

---

[1] Relief Pending Appeal. If a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may:

> (1) defer considering the motion;
>
> (2) deny the motion; or
>
> (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue.
>
> (b) Notice to the Court of Appeals. The movant must promptly notify the circuit clerk under Federal Rule of Appellate Procedure 12.1 if the district court states that it would grant the motion or that the motion raises a substantial issue.
>
> (c) Remand. The district court may decide the motion if the court of appeals remands for that purpose.

believe that Judge Moore should be supervising the settlement process. Counsel merely ask that the Defendants comply with Rule 23.1(c) because they are effectively settling a derivative case filed under Rule 23.1 while ignoring the requirement for submitting a plan for Court approval.

Procedurally, the Circuits are split on whether a motion for an indicative ruling under Rule 62.1 can be "free-standing" (e.g. whether it speaks for itself) or must be accompanied with an underlying motion for relief, so in an abundance of caution an accompanying motion virtually identical to this Motion is attached as Exhibit 2. *Index Newspapers LLC v. City of Portland*, No. 3:20-CV-1035-SI, 2022 WL 72124, at *2 (D. Or. Jan. 7, 2022)("Accordingly, the Court construes the Federal Defendants' motion for indicative ruling as including an underlying motion . . .").

WHEREFORE, counsel requests a finding that the recent and intended future distributions by the Defendants raise a "substantial issue" of whether the *de facto* settlement should be supervised by this Court under Rule 23.1(c) and the money put into an escrow or IOLTA like any normal case when a client is represented. If the Court finds that a substantial issue exists, the Plaintiffs will ask the Tenth Circuit to

remand on this narrow issue so Judge Moore can oversee the settlement/compromise process.

Dated: March 31, 2022                    Respectfully Submitted,

*/s/ Douglas Litowitz*
Attorney for Plaintiff-Appellants
413 Locust Place
Deerfield, IL 60015
(312) 622-2848
litowitz@gmail.com

## Certificate of Service

This document was filed on the ECF system for the District of Colorado on March 31, 2022 and sent to all counsels of record.