FILED
United States Court of Appeals
Tenth Circuit

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

September 12, 2022

Christopher M. Wolpert
Clerk of Court

JUN LI; QI QIN; YI LIU; JIE YANG;
YUQUAN NI; ZHONGZAO SHI; FANG
SHENG; SHUNLI SHAO; KAIYUAN
WU; ZHIJIAN WU; ZHONGWEI LI;
YUWEI DONG; LIN QIAO; JINGE HU;
RUJUN LIU; FAN ZHANG; LU LI; SA
WU; YING XU; CAO XIAOLONG;
HSIN-YI WU,

       Plaintiffs - Appellants,

and

DIANWEN CUI; LEI GU; SUFEN LENG;
XUE MEI; ZHOU MEI; YAN SONG; LU
WANG; YUE WU; ZHOU YANG;
JINGWEN ZHANG; LEI ZHANG; LING
ZHANG; XIAOHONG ZHANG; QIN
ZHOU; XUN ZHU; CHUNYI ZOU,

       Plaintiffs,

v.

COLORADO REGIONAL CENTER I,
LLC; SOLARIS PROPERTY OWNER I
LLC; PETER KNOBEL; COLORADO
REGIONAL CENTER PROJECT
SOLARIS LLLP, and all principals and
ultimate owners of business entities
pursuant to piercing of the limited liability
veil,

       Defendants - Appellees.

_____

DIANWEN CUI; LEI GU; SUFEN LENG;

No. 21-1232
(D.C. No. 1:19-CV-02443-RM-STV)
(D. Colo.)

XUE MEI; ZHOU MEI; YAN SONG; LU
WANG; YUE WU; ZHOU YANG;
JINGWEN ZHANG; LEI ZHANG; LING
ZHANG; XIAOHONG ZHANG; QIN
ZHOU; XUN ZHU; CHUNYI ZOU,

     Plaintiffs - Appellants,

and

JUN LI; QI QIN; YI LIU; JIE YANG;
YUQUAN NI; ZHONGZAO SHI; FANG
SHENG; SHUNLI SHAO; KAIYUAN
WU; ZHIJIAN WU; ZHONGWEI LI; LIN
QIAO; JINGE HU; RUJUN LIU; FAN
ZHANG; LU LI; SA WU; YING XU;
CAO XIAOLONG; WU HSIN-YI;
YUWEI DONG,

     Plaintiffs,

v.

COLORADO REGIONAL CENTER LLC;
COLORADO REGIONAL CENTER I,
LLC; SOLARIS PROPERTY OWNER
LLC; SOLARIS PROPERTY OWNER I
LLC; COLORADO REGIONAL CENTER
PROJECT SOLARIS LLLP;
WAVELAND VENTURES, LLC,

     Defendants - Appellees,

and

PETER KNOBEL,

     Defendant.

No. 21-1253
(D.C. No. 1:19-CV-02443-RM-STV)
(D. Colo.)

## ORDER AND JUDGMENT[*]

---

Before **MATHESON**, **KELLY**, and **PHILLIPS**, Circuit Judges.

---

Appellants are two groups of Chinese investors, the Li Appellants and the Cui Appellants. Each investor purchased a limited partnership interest in Colorado Regional Center Project Solaris LLLP ("CRCPS"). Through its general partner, CRCPS loaned the proceeds from the investments to a real estate development project. After the project produced low returns and defaulted on the loans, each group of Appellants separately sued CRCPS, its general partner, and other parties involved in the real-estate project.

The district court dismissed both complaints, denied several motions filed by Appellants, and ordered them to pay attorney fees under Colorado and federal law. Each group of Appellants appealed. We consolidated their appeals. Exercising jurisdiction under 28 U.S.C. § 1291, we

> (A) affirm the district court's dismissal of Appellants' claims under Federal Rule of Civil Procedure 12(b)(6) except for the Li Appellants' claim for breach of fiduciary duty, which we affirm in part and reverse in part;

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This Order and Judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

1

(B)   affirm dismissal of the Cui Appellants' remaining state law claims for lack of jurisdiction;

(C)   reverse the district court's dismissal of the Cui Appellants' motion to amend their complaint;

(D)   affirm the district court's denial of the Li Appellants' motion for default judgment; and

(E)   vacate the awards of attorney fees.

We remand to the district court for further proceedings consistent with this Order and Judgment.

## I.  BACKGROUND

### A.  *Factual Background*[1]

### 1.  **The Parties**

CRCPS is a limited liability limited partnership created by Colorado Regional Center, LLC ("CRC") and Waveland Ventures, LLC.  It serves as an EB–5 Regional Center, an entity approved by the federal government to promote economic growth by encouraging investments by foreign persons in exchange for permanent resident cards (green cards).  As described in *Liu v. SEC*, 140 S. Ct. 1936, 1941 (2020), "[t]he EB–5 Program, administered by the U.S. Citizenship and Immigration Services, permits noncitizens to apply for permanent residence in the United States by

---

[1] The Li Appellants and Cui Appellants each amended their complaints three times.  Their third amended complaints are the operative complaints, from which we draw the factual background presented above.  "In reviewing a district court's dismissal under . . . 12(b)(6), we accept as true all well-pleaded factual allegations in the complaint and view them in the light most favorable to the plaintiff[s]."  *Garling v. United States Env't Prot. Agency*, 849 F.3d 1289, 1292 (10th Cir. 2017) (quotations and alterations omitted).

investing in approved commercial enterprises that are based on proposals for promoting economic growth." (quotations omitted).  Colorado Regional Center I LLC ("CRC I"),[2] a subsidiary of CRC, manages CRCPS as its general partner.

Appellants, two groups of Chinese investors, purchased limited partnership interests in CRCPS.  In total, 165 investors each paid approximately $500,000 for their limited partnership interests, totaling $82.5 million.  CRCPS loaned the proceeds from these investments to Solaris Property Owner, LLC ("SPO") to fund the completion of a condominium complex in Vail, Colorado.

2.  **Governing Documents**

Three documents set forth the terms of the parties' arrangements.

First, CRCPS's "Partnership Agreement" (undated) set the terms of CRCPS's internal management.  It provided that CRC I had the exclusive right to manage, operate, and control CRCPS.  Neither CRCPS nor the limited partners could hold CRC I liable for any acts or omissions unless CRC I acted in bad faith, gross negligence, or willful misconduct.  The Partnership Agreement allowed limited partners to exercise a put option[3] to sell their interest to the partnership.

Second, the "Loan Agreement," dated November 5, 2010, provided for CRCPS to loan funds to SPO to complete development of SPO's condominium project.

---

[2] Although the Li Appellants refer to this entity as "CRC 1," the Cui Appellants refer to it as "CRC I," which we adopt throughout this order.

[3] A put option is "[a]n option to sell something (esp. securities) at a fixed price even if the market declines."  *Option*, Black's Law Dictionary (11th ed. 2019).

<u>Third</u>, the "Confidential Information Memorandum," dated March 31, 2011, set the terms of each investor's purchase of the limited partnership stake. It stated that each investor would pay approximately $500,000 for a limited partnership interest in CRCPS, totaling around $82.5 million in raised funds. CRCPS would loan the proceeds to SPO, which would use these funds to pay project development costs for the condominium complex. The Memorandum also stated that certain condominium units in the building would be used as collateral for the loan. A related document designated 19 condominium units as collateral.

The Confidential Information Memorandum provided that CRCPS would fund the loan through multiple advances, and each advance would carry a 5% interest rate. The principal balance and accrued interest on each advance was due within five years of each advance. SPO could not prepay any of the balance for three years, but after the three-year-period, it could repay with cash or a collateral condominium unit. CRCPS could refuse repayment through cash and compel SPO to convey the collateral condominium unit.

3. **Investments and Loans**

Based on the documents, CRCPS began soliciting investments. Investors purchased limited partnership interests in CRCPS between 2012 and 2015. Before receiving any advances, SPO assigned its rights and obligations under the arrangement to its wholly owned subsidiary, Solaris Property Owner I ("SPO I").

Between April 2012 and January 2015, CRCPS made 19 loan advances to SPO I. About three years after the first advance, CRCPS and SPO I entered into an

4

agreement regarding the collateral condominium units (the "Agreement Regarding Collateral Units" or "ARCU").  Under the ARCU, SPO I gave CRCPS notice that it would pay back the loan advances by conveying the collateral condominium units. The ARCU stated that SPO I would not immediately transfer the deed to the condominium units but CRCPS would be responsible for all fees and costs associated with the units and would pause the accrual of interest on the advances.  Thus, under the ARCU, SPO I was deemed to have repaid the loan advances.

In 2016, CRC I and CRCPS began sending notices to the limited partners that identified the collateral condominium units as partnership property but acknowledged that SPO I still held title.  The notices stated that CRCPS was coordinating with SPO I to transfer title.

### B.  *The District Court Proceedings*[4]

In 2019, the two groups of limited partners—the Li and the Cui Appellants—filed lawsuits alleging state and federal claims against various defendants.  In general, they alleged that SPO and SPO I misrepresented the value of the collateral condominium units and that CRC I violated its duties as the general partner of CRCPS.  According to Appellants, Defendants-Appellees[5] misrepresented that the loan was fully secured when it was not.  They alleged that these misrepresentations

---

[4] We summarize the district court proceedings here and elaborate on them as needed later in our analysis.

[5] We refer to Defendants-Appellees as Appellees for the remainder of this Order and Judgment.

led to losses of over $40 million and that SPO and SPO I have now defaulted on their loans.

In their operative complaint, the Li Appellants brought several direct and derivative[6] claims against CRC, CRC I, SPO, SPO I, Peter Knobel (SPO's owner), and Waveland Ventures, LLC.[7]  Separately, the Cui Appellants sued Waveland Ventures LLC, CRCPS, CRC I, SPO, SPO I, and Mr. Knobel alleging both direct and derivative claims.[8]  In both complaints, the derivative claims were brought on behalf of CRCPS.

---

[6] "A derivative action is a vehicle that enables the prosecution of claims on behalf of a corporation or other entity." *S'holder Derivative Actions L. & Prac.* § 1:1 (2022).  A derivative suit enables limited partners and other shareholders to assert claims on behalf of the entity, here CRCPS.  A plaintiff in a derivative suit may assert claims against parties that owe fiduciary duties to the entity.

[7] The Li Appellants brought:
>    (1) a derivative breach-of-fiduciary-duty claim against CRC I;
>    (2) a derivative civil-theft claim against CRC, SPO, SPO I, and Mr. Knobel;
>    (3) a derivative breach-of-loan-agreement claim against SPO I;
>    (4) a derivative breach-of-transfer-of-title claim against SPO I;
>    (5) a derivative federal securities-fraud claim against CRC I;
>    (6) a derivative Colorado securities fraud claim against CRC and Mr. Knobel;
>    (7) a derivative claim to remove CRC I as CRCPS's general partner; and
>    (8) a direct fraud claim against CRC, CRC I, Waveland Ventures LLC, and Mr. Knobel.

[8] The Cui Appellants brought:
>    (1) a direct fraud claim against all Appellees;
>    (2) a direct and derivative breach-of-fiduciary-duty claim against CRC and CRC I;
>    (3) a direct Colorado securities fraud claim against all Appellees;
>    (4) a direct federal securities-fraud claim against CRCPS and CRC I;
>    (5) a direct federal securities-fraud claim against all Appellees;

1. **Motions to Dismiss and Other Motions**

Appellees moved to dismiss both operative complaints for failure to state a claim.  CRC I also filed a counterclaim against the Li Appellants after the Li Appellants alerted the district court that CRC I had been removed as general partner of CRCPS for cause.  CRC I argued its removal as general partner was improper.  The Li Appellants moved to dismiss the counterclaim, and the Cui Appellants moved for a receiver to be appointed to manage CRCPS.

Before the district court ruled on the motions to dismiss, Appellants voluntarily dismissed some of their claims.  The Li Appellants' remaining claims were:

> (1) a derivative breach-of-fiduciary-duty claim against CRC I;
>
> (2) a derivative civil-theft claim against CRC, SPO, SPO 1, Mr. Knobel, and the "LLC Principals";[9]
>
> (3) a derivative breach-of-contract claim against SPO I;[10]

---

> (6) a direct and derivative breach-of-contract claim against SPO I;
> (7) a direct and derivative declaratory relief claim against CRC I, SPO, and SPO I; and
> (8) a direct claim to pierce the corporate veil to hold CRC I's and SPO I's owners and members liable.

[9] The district court dismissed this claim, and the Li Appellants mention it only in a footnote in their opening brief.  They have thus waived any arguments as to this claim.  *San Juan Citizens All. v. Stiles*, 654 F.3d 1038, 1055-56 (10th Cir. 2011) (argument raised in a footnote and inadequately developed is waived).

[10] The district court also dismissed the Li Appellants' surviving derivative breach-of-contract claim against SPO and SPO I for lack of subject-matter jurisdiction.  The Li Appellants do not challenge this dismissal on appeal.

(4) a derivative federal securities-fraud claim against CRC I; and

(5) a derivative state securities-fraud claim against CRC, its principals, and Mr. Knobel.

The Cui Appellants' remaining claims were:

(1) a direct fraud claim against all Appellees;

(2) a direct and derivative breach-of-fiduciary-duty claim against CRC and CRC I;

(3) a direct federal-securities-fraud claim against all Appellees;

(4) a derivative breach-of-contract claim against SPO I; and

(5) a direct and derivative claim for declaratory relief against CRCPS, SPO, and SPO I.[11]

The district court granted the Appellees' motions to dismiss in part and denied them in part.  It (1) granted the motions as to Appellants' federal securities-law claims; (2) denied the motions as to Appellants' breach-of-contract claims and the Cui Appellants' declaratory-relief claim against SPO and SPO I; and (3) dismissed the remaining state law claims.

Because only state law claims against SPO and SPO I remained, the court ordered the parties to address whether diversity jurisdiction existed, and if not,

---

[11] The Cui Appellants pled this as a separate claim for relief under Colo. Rev. Stat. § 13-51-106, which allows a plaintiff to "have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder." *See Villa Sierra Condo. Ass'n v. Field Corp.*, 878 P.2d 161, 164 (Colo. App. 1994) (Section 13-51-106 is "intended to provide a method to relieve parties from uncertainty and insecurity with respect to their rights, status, and other legal relations" (quotations omitted)).

whether it should exercise supplemental jurisdiction over those claims. After briefing, the court determined that it lacked diversity subject-matter jurisdiction over Appellants' remaining state law claims against SPO and SPO I, declined to exercise supplemental jurisdiction over those claims, and dismissed them.

The district court next denied the Cui Appellants' motion to appoint a receiver. It also denied the Li Appellants' motion to dismiss CRC I's counterclaim. CRC I later withdrew its counterclaim.

The Li Appellants moved for reconsideration of the district court's dismissal of their claims. They also moved for default judgment on their abandoned claim to remove CRC I as general partner. The Cui Appellants also renewed their motion for appointment of a receiver. The district court denied these motions.

Finally, the Cui Appellants moved to file a fourth amended complaint, which the district court denied.

2. **Attorney Fees**

Appellees then moved for attorney fees under Colorado law. The district court granted their motions in part. It ordered the Li Appellants to pay about $390,000 to Waveland Ventures LLC, CRC, and CRC I (collectively "CRC Defendants") and $244,000 to SPO, SPO I, and Mr. Knobel (collectively "SPO Defendants"). It ordered the Cui Appellants to pay about $140,000 to the CRC Defendants and $77,000 to the SPO Defendants.

The court separately awarded attorney fees under the Private Securities Litigation Award Act ("PSLRA") against the Appellants' attorneys. It ordered the Li

Appellants' counsel to pay about $390,000 to the CRC Defendants and $244,000 to the SPO Defendants.  It ordered the Cui Appellants' counsel to pay approximately $140,000 to the CRC Defendants and $5,000 to the SPO Defendants.  The court clarified "that the awards [under Colorado law and the PSLRA] were not cumulative, and the Defendants are entitled to collect only once on their attorney fees."  App., Vol. XIV at 3911.

Appellants timely appealed.[12]

## II. **DISCUSSION**

On appeal:

(A)   The Appellants challenge the district court's Rule 12(b)(6) dismissal of their claims for (1) breach of fiduciary duty, (2) federal securities fraud, (3) Colorado securities fraud (Li Appellants only), and (4) Colorado common law fraud (Cui Appellants only).

(B)   The Cui Appellants argue the district court erred in dismissing their remaining state law claims for lack of jurisdiction.

(C)   The Cui Appellants contend the district court abused its discretion in denying their motion to file a fourth amended complaint.

---

[12] We summarize here our understanding of the district court's subject-matter jurisdiction underlying its orders.  Both sets of Appellants filed claims for federal securities fraud.  The remainder of their claims were based on state law.  The district court had federal question jurisdiction over the federal securities claims under 28 U.S.C. § 1331 and 15 U.S.C. §§ 77v and 78aa.  It dismissed them under Rule 12(b)(6).  It also dismissed the state law claims against the CRC Defendants and Mr. Knobel under Rule 12(b)(6), apparently exercising supplemental jurisdiction under 28 U.S.C. § 1367.  It denied the Rule 12(b)(6) motions to dismiss the derivative state breach-of-contract and declaratory-judgment claims against SPO and SPO I.  But, after asking for supplemental briefing on subject-matter jurisdiction regarding those claims, the court determined it lacked diversity jurisdiction under 28 U.S.C. § 1332 and declined to exercise supplemental jurisdiction under 28 U.S.C. § 1367.

(D)  The Li Appellants assert the district court improperly denied their motion for default judgment on their original claim seeking removal of CRC I as general partner.

(E)  The Appellants challenge the district court's awards of attorney fees.

We address each issue in turn.[13]

## A.  *Rule 12(b)(6) Dismissals*

On appeal, both sets of Appellants challenge the dismissal of (1) their breach-of-fiduciary-duty claims against CRC I and (2) their federal securities-fraud claims. The Li Appellants contest dismissal of (3) their state securities-fraud claim, and the Cui Appellants argue against dismissal of (4) their fraud claim.  Although many of the arguments overlap, we address them based on each separate complaint.

We review de novo the dismissal of a complaint under Rule 12(b)(6). *Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016).  "We accept all well-pleaded factual allegations in the complaint as true, and we view them in the light most favorable to the nonmoving party."  *Sinclair Wyo. Refin. Co. v. A&B Builders, Ltd.*, 989 F.3d 747, 765 (10th Cir. 2021) (quotations and alterations omitted).  To survive a Rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

---

[13] The Li Appellants listed eight issues in their brief.  Li Aplt. Br. at 5-6.  The Cui Appellants listed seven issues in their brief.  Cui Aplt. Br. at 5-6.  We have consolidated the issues into five categories and have identified those which both sets of Appellants raise and those which each of them raise on their own.

liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

We typically consider "only the contents of the complaint when ruling on a 12(b)(6) motion." *Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1146 (10th Cir. 2013). But we will consider "documents incorporated by reference in the complaint [and] documents referred to in and central to the complaint, when no party disputes [their] authenticity." *Id.*; *see Broker's Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1103 (10th Cir. 2017).

"[W]e may affirm the judgment on any ground supported by the record" as long as the plaintiff "had a fair opportunity to address that ground." *Nakkhumpun v. Taylor*, 782 F.3d 1142, 1157 (10th Cir. 2015).

"Federal courts exercising diversity jurisdiction apply the substantive law of the forum state . . . ." *Sinclair Wyo. Refin. Co.*, 989 F.3d at 765-66; *see Erie R.R. v. Tomkins*, 304 U.S. 64, 78 (1938). We therefore apply Colorado law to Appellants' state law claims.

1. **Breach-of-Fiduciary-Duty Claims**

    a. *Legal background*

        i. <u>Economic loss rule</u>

To state a breach-of-fiduciary-duty claim, a plaintiff must allege (1) "the defendant was acting as a fiduciary of the plaintiff," (2) "[the defendant] breached a fiduciary duty to the plaintiff," (3) "the plaintiff incurred damages," and (4) "the

defendant's breach of fiduciary duty was a cause of the plaintiff's damages." *Taylor v. Taylor*, 381 P.3d 428, 431 (Colo. App. 2016) (quotations and emphases omitted). This claim may be based on breach of a contractual duty or breach of a tort duty. *Compare Casey v. Colo. Higher Educ. Ins. Benefits All. Tr.*, 310 P.3d 196, 204 (Colo. App. 2012) (breach of fiduciary duty could support a breach-of-contract claim), *with Castro v. Lintz*, 338 P.3d 1063, 1069 (Colo. App. 2014) (construing breach-of-fiduciary-duty claim as a tort claim).

The Appellants' challenge to dismissal of their fiduciary-duty claims implicates the "economic loss rule," which bars a party to a contract from using a tort claim to recover contract damages unless the party can show it is owed an independent duty in tort creating a separate entitlement to those damages.

Under the economic loss rule, if a plaintiff alleges "only economic loss from the breach of an express or implied contractual duty," he or she "may not assert a tort claim for such a breach absent an independent duty of care under tort law." *Town of Alma v. AZCO Const., Inc.*, 10 P.3d 1256, 1264 (Colo. 2000). "Economic loss is defined generally as damages other than physical harm to persons or property." *Id.* To be independent of a contractual duty, the duty must (1) "arise from a source other than the relevant contract," and (2) "not be a duty also imposed by the contract." *Haynes Trane Serv. Agency, Inc. v. Am. Standard, Inc.*, 573 F.3d 947, 962 (10th Cir. 2009) (applying Colorado law). "Fiduciary relationships may be the kind of special relationship that will trigger an independent common law duty of care," but "not

every fiduciary relationship implicates a risk of damages for which contract law cannot provide a remedy." *Casey*, 310 P.3d at 202-03 (quotations omitted).

    ii. <u>Federal Rule of Civil Procedure 23.1 and the contemporaneous ownership rule</u>

The fiduciary-duty claims also implicate Federal Rule of Civil Procedure 23.1(b), known as the contemporaneous ownership rule. *Bangor Punta Operations, Inc. v. Bangor & A. R. Co.*, 417 U.S. 703, 708 n.4 (1974).  It provides that a plaintiff bringing a derivative action must allege that he or she "was a shareholder or member at the time of the transaction complained of." Fed. R. Civ. P. 23.1(b)[14]  Rule 23.1 is a procedural rule, but we apply the state's substantive law in determining whether the transaction at issue occurred while the plaintiff was a shareholder or member. *Cadle v. Hicks*, 272 F. App'x 676, 678-79 (10th Cir. 2008) (unpublished) (cited as instructive under Fed. R. App. P. 32.1; 10th Cir. R. 32.1(A)).

    b. *Analysis*

In their complaint, the Li Appellants brought derivative-breach-of-fiduciary-duty claims against CRC I.  They alleged that CRC I, acting as general partner of CRCPS, failed to adequately ensure that the loan agreement with the SPO Defendants was sufficiently collateralized.  They also alleged that CRC I breached its fiduciary duty in failing to demand complete repayment of the loan and by providing misleading information about it.

---

[14] Under Colorado's limited partnership statute, "'Member' means a general partner or a limited partner." Colo Rev. Stat. § 7-61-102(2).

The Cui Appellants separately brought both direct and derivative breach-of-fiduciary-duty claims against the CRC Defendants.  They alleged that the CRC Defendants provided them with misleading marketing materials and took advantage of the Cui Appellants' lack of English proficiency to convince them to invest in the limited partnership.

The district court dismissed the breach-of-fiduciary-duty claims on two grounds.  First, the court read both complaints as asserting the claims under tort law. It concluded the economic loss rule barred the claims because the CRC Defendants' duties arose from contract.  Second, the court held that many of the allegations supporting the Li Appellants' claim and all of the allegations supporting the Cui Appellants' derivative claim stemmed from the CRC Defendants' conduct that preceded the plaintiffs' investments in the limited partnership.  Thus, under Federal Rule of Civil Procedure 23.1, the court held that Appellants could not recover based on those allegations.

Appellants argue the district court erred in construing their allegations as arising under tort and not under contract.  They contend their complaints make clear that their breach-of-fiduciary-duty claims arose from contract and are therefore properly construed as breach-of-contract claims.  And because their claims are contractual, Appellants argue the economic loss rule does not bar their claims. Appellants also contend the district court improperly applied Rule 23.1.

15

i.   <u>Li Appellants</u>

The Li Appellants brought this claim derivatively against CRC I, arguing it breached its fiduciary duty to CRCPS and therefore violated its contractual obligations.

We employ a three-step analysis to determine whether the district court properly dismissed the Li Appellants' breach-of-fiduciary-duty claim.  <u>First</u>, we determine this is a contract claim, not, as the district court concluded, a tort claim subject to the economic loss rule.  So the district court should not have dismissed it on that ground.  <u>Second</u>, because part of this claim was based on alleged misconduct that occurred before the Li Appellants invested in CRCPS, the district court correctly determined that Rule 23.1 and the "contemporaneous ownership rule" barred that part of the claim.  <u>Third</u>, we conclude that the remaining post-investment allegations stated a claim for breach of contract.  We thus affirm the district court's dismissal of the pre-investment allegations supporting the claim and reverse the dismissal of the post-dismissal allegations.

1)  The contractual nature of the Li Appellants' claim

Construing the complaint in the light most favorable to the Li Appellants, *see Sinclair Wyo. Refin. Co.*, 989 F.3d at 765, we conclude that it pled a breach-of-contract claim rather than a tort claim.  The Li Appellants' complaint labeled its claim as a "Breach of Fiduciary Duty *arising by Contract* and Statute."  App., Vol. II at 299 (emphasis added).  In describing this count, the complaint identified the contractual language creating the fiduciary relationship.  *Id.* at 300 ¶ 114 ("The

16

CRCPS [Partnership Agreement] at Section 8.04 states that 'In carrying out their duties and exercising their powers hereunder, the General Partner [CRC I] shall exercise reasonable skill, care, and business judgment.").  It then described CRC's breaches as "contractual and fiduciary."  *Id.* at 301 ¶ 126.  Finally, the complaint sought damages equaling the "shortfall between what it would have received i[f] the Loan had been paid in cash versus the value of what it actually received (hereafter, the 'Damages')."  *Id.* at 302 ¶ 129.  These allegations show that the legal predicate for the Li Appellants' breach-of-fiduciary-duty claim was contract, not tort.

*Casey v. Colorado Higher Education Institute* is instructive.  310 P.3d 196 (Colo. App. 2012).  There, the plaintiffs brought a breach-of-contract claim alleging the defendants breached their fiduciary duties.  *Id.* at 201.  The defendants responded that, by alleging breach of fiduciary duties, the claim was based on tort and thus was barred.  *Id.*  The Colorado Court of Appeals rejected this argument, concluding that the "[t]he complaint does not allege a tort claim for breach of fiduciary duty against the trustees.  Rather it alleges that the trustees breached the contract . . . by 'failing to perform their contractual obligations, including contractually imposed fiduciary duties.'"  *Id.* at 203 (alterations omitted).  Because the complaint referred to the specific contractual duties creating the fiduciary duty, the court concluded it was a contractual claim.  *Id.*  The Li complaint similarly alleged a breach of fiduciary duty that breached the parties' contract.

Appellees' assertion that the Li Appellants alleged a tort-based breach of fiduciary duty is not persuasive.

17

First, they point to the Li Appellants' colloquy with the district court at the motion-to-dismiss hearing where counsel confirmed to the district court that the claim was a breach-of-fiduciary-duty claim. Appellees argue that the Li Appellants should have clarified then that its claim arose from contract or statute. But the Li Appellants were not asked whether the claim arose from tort or contract. They were asked only whether it was a breach-of-fiduciary-duty claim, and they confirmed it was. App., Vol. X at 2723. Their response did not contradict the plain language of their complaint, which governs in any event.

Second, Appellees argue that the Li Appellants' assertion of breach-of-contract claims against SPO I shows that they knew how to assert breach-of-contract claims. But Appellees fail to explain how the Li Appellants' assertion of a breach-of-contract claim elsewhere in their complaint affects the substance of this claim.

We conclude that the complaint alleged a contractual breach-of-fiduciary-duty claim and is thus not subject to the economic loss rule. The district court erred in dismissing the claim on this ground.

### 2) Rule 23.1

The Li complaint alleged pre-investment misconduct as the basis for CRC I's breach of its fiduciary duties. Rule 23.1 barred its derivative claim based on these allegations. The complaint alleged that CRC I willfully and negligently structured the Loan Agreement with SPO. App., Vol. II at 300 ¶ 118. Because this alleged misconduct predated the Li Appellants' investment, the district court dismissed these allegations. The Li Appellants contend the transaction supporting their derivative

claim did not occur until they purchased the ownership stake in CRCPS. We disagree.

The Loan Agreement was executed on November 5, 2010. *Id.* at 276 ¶ 31. Per the Li complaint, no investors, including the Li Appellants, received marketing materials regarding the limited partnership stakes until after the Loan Agreement's execution. *Id.* at 285 ¶ 61. Thus, the Li Appellants did not own any interest in CRCPS when the transaction complained of—the Loan Agreement—was executed.

The Li Appellants cite *Elk River Assocs. v. Huskin*, 691 P.2d 1148 (Colo. App. 1984), to argue that CRC I's fiduciary obligation to the investors predated their actual investment. Li Aplt. Br. at 32. *Huskin* said "a fiduciary relationship between the parties to a limited partnership can attach during the negotiations which precede formal execution of the certificate of limited partnership." 691 P.2d at 1152. This argument fails for two reasons.

First, the Li Appellants sued derivatively on behalf of CRCPS, so the relevant fiduciary duty is not between the limited partners and the general partner but between the general partner and the CRCPS partnership. *See Burks v. Lasker*, 441 U.S. 471, 477 (1979) ("A derivative suit is brought by shareholders to enforce a claim on behalf of the corporation."); Colo. Rev. Stat. § 7-62-1001(1) (Colorado law permitting limited partners to bring derivative suits on behalf of the limited partnership). Because the Li Appellants were not limited partners of CRCPS when the Loan Agreement was executed, they could not sue CRC I on behalf of CRCPS.

19

Second, even assuming the fiduciary relationship between the Li Appellants and CRC I began during negotiations to sell the limited partnership interests in CRCPS and that the Li Appellants were suing directly, the negotiations did not begin until after execution of the Loan Agreement. Thus, Rule 23.1(b) barred the Li Appellants' pre-investment derivative claims.

### 3) Remaining post-investment allegations

Turning to the Li Appellants' remaining, post-investment allegations, we conclude they plausibly stated a claim for breach of contract.

To plausibly state a breach of contract, a plaintiff must allege "(1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff." *Marquardt v. Perry*, 200 P.3d 1126, 1129 (Colo. App. 2008).

The Li complaint alleged that (1) the Partnership Agreement was the contract governing the relationship between CRCPS and CRC I, App., Vol. II at 300 ¶ 114; (2) CRCPS paid management fees to CRC I, *id.* at 298 ¶ 104; (3) in failing to honor its fiduciary duties, CRC I failed to perform the contract, *id.* at 300-01 ¶¶ 114-18, 126; and (4) CRCPS incurred damages resulting from the breach. *Id.* at 302 ¶ 129. The Li complaint thus plausibly alleged a breach of contract.

\*   \*   \*   \*

In sum, the breach-of-fiduciary-duty claim was validly pled as a contract claim, but Rule 23.1(b) barred the pre-investment part of the claim. We therefore

reverse the district court's dismissal of the Li Appellants' breach-of-fiduciary-duty claims for allegations relating to post-investment conduct.

### ii. Cui Appellants

In contrast, the Cui Appellants' complaint failed to allege a contractual breach-of-fiduciary-duty claim and was thus subject to the economic loss rule. The Cui complaint described this count generally as a breach of fiduciary duty by CRC and CRC I. App., Vol. VI at 1585. It did not mention any contractual creation of the fiduciary duty. Indeed, the Cui complaint stated that CRC owed the Cui Appellants a duty "[a]s the regional center entrusted by the Plaintiffs to oversee their investment." *Id.* at 1586 ¶ 107. Thus, the complaint on its face does not allege a fiduciary duty arising out of contract.

Because the Cui Appellants' claim arises out of tort, we must apply the economic loss rule. As described above, the rule bars recovery for economic losses under tort if the breach stemmed from a breach of a contractual duty. *Town of Alma*, 10 P.3d at 1264. Here, the breach stemmed from a breach of contract, and the Cui complaint alleged only economic losses. Thus, the economic loss rule barred the Cui Appellants' breach-of-fiduciary-duty claim. We therefore affirm the district court's dismissal of the Cui Appellants' breach-of-fiduciary-duty claim.

2. **Federal Securities-Fraud Claims**

The Li Appellants appeal the dismissal of their derivative federal securities-fraud claim against CRC I.  The Cui Appellants appeal dismissal of their direct federal securities-fraud claim against all Appellees.[15]  We affirm the district court.

a. *Li Appellants*

The Li Appellants brought a derivative federal securities-fraud claim only against CRC I.  They allege that CRC I made material misrepresentations to the limited partners to induce them to exercise their put options at a loss.  The district court dismissed their claim because it (1) was barred under the statute of repose and (2) was not a proper derivative claim.  We affirm on the second ground and do not address the first.

A derivative action "permits an individual shareholder to bring 'suit to enforce a *corporate* cause of action against officers, directors, and third parties.'"  *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 95 (1991) (quoting *Ross v. Bernhard*, 396 U.S. 531, 534 (1970)).  The derivative action allows an individual shareholder "to protect *the interests of the corporation* from the misfeasance and malfeasance of faithless directors and managers."  *Id.* (emphasis added) (quotations omitted).[16]

---

[15] The Cui complaint also included a direct federal securities-fraud claim under 15 U.S.C. § 80a against CRCPS and CRC I in its capacity as the general partner.  The Cui Appellants do not raise this claim on appeal.

[16] We treat limited partnerships and corporations the same for purposes of a derivative suit.  *See* Fed. R. Civ. P. 23.1(a) (treating unincorporated associations and corporations similarly for derivative suits); Colo. Rev. Stat. § 7-60-106(1) (defining a

Here, the Li Appellants' securities-fraud claim did not allege violations by CRC I against CRCPS.  Instead, they alleged harms that CRC I and CRCPS caused the *investors* directly.  For instance, the Li complaint alleged that "CRCPS - acting through CRC1 - issued an offering of securities when it granted a put right to each limited partner to 'put' his unit back to CRCPS."  App., Vol. II at 310 ¶ 187.  In making this "offering of the put option *to investors*," the Li complaint alleged, "CRC failed to explain the history and method by which it was over-valuing the collateral."  *Id.* at 310-11 ¶ 189 (emphasis added), *see also id.* at 311 ¶ 190 ("CRC never explained clearly to investors the implications of allowing SPO to recharacterize the loan (a debt) as 'investors equity.' . . . This is a material omission of fact *to induce the limited partners* to invest and stay in the transaction which has caused them continuing detriment." (emphasis added)).  These allegations described a direct and not a derivative claim.  They do not allege any harm caused to CRCPS.  It was thus an improper derivative claim, and the district court properly dismissed it.

b.  *Cui Appellants*

The Cui Appellants brought direct federal securities-fraud claims against all Appellees.  They allege that Appellees made material misrepresentations to convince them to purchase their limited partnership interests in CRCPS.[17]  The district court

---

limited liability partnership as an association).  The parties do not dispute this approach.

[17] The Cui Appellants' complaint also alleged that Appellees violated section 78o of the Federal Securities Act by selling securities without being registered.  They

dismissed their claim after concluding it was barred under the statute of repose.  We agree.

"A statute of repose . . . puts an outer limit on the right to bring a civil action." *CTS Corp. v. Waldburger*, 573 U.S. 1, 8 (2014).  Unlike a statute of limitations, whose limit begins after a claim accrues, a statute of repose's limit is measured "from the date of the last culpable act or omission of the defendant." *Id.*  Thus, it bars "any suit that is brought after a specified time since the defendant acted . . . , even if this period ends before the plaintiff has suffered a resulting injury." *Id.* (quotations omitted).

Under 28 U.S.C. § 1658(b)(2), a plaintiff alleging a federal securities violation may not bring a private cause of action later than "5 years after such violation." Before the district court, the Cui Appellants did not dispute Appellees' assertion that they purchased their limited partnerships in 2012.  App., Vol. XI at 2955 n.43.  They thus needed to bring their claims no later than 2017, but they failed to file their complaint until 2019.  The Cui Appellants' federal securities-fraud claim was therefore time-barred.[18]

---

do not present any argument regarding these allegations on appeal, so they have abandoned this claim.

[18] The Cui Appellants incorporate the Li Appellants' arguments regarding the statute of repose.  They suggest that Appellees' 2016-2019 notices offering to allow limited partners to exercise their put options each constituted a new security.  But the Cui complaint alleged only that the security at issue was the 2012 sale of the limited partnership interest.

3.  **Li Appellants' Colorado Securities-Fraud Claim**

The Li Appellants brought a derivative securities-fraud claim under the

Colorado Securities Act against CRC, its principals, and Mr. Knobel.  Their

allegations were identical to their federal securities-fraud claims:  CRC, along with

Mr. Knobel, "sent misleading and fraudulent valuations to investors in connection

with an attempt to get them to exercise a put option offered to them, which would

cause a loss to each investor."  App., Vol. II at 312 ¶ 200.

As with their federal securities-fraud claims, Appellants failed to allege a

derivative action.  They alleged that they, as investors, suffered harms, not CRCPS.

We thus affirm the dismissal of their Colorado Securities Act derivative fraud claims.

4.  **Cui Appellants' Fraud Claims**

The Cui Appellants appeal dismissal of their Colorado fraud claim against all

Appellees.  To state a fraud claim under Colorado law, a plaintiff must allege (1) "the

defendant misrepresented a material fact," (2) "the defendant knew the representation

was false," (3) the plaintiff "did not know the representation was false," (4) "the

defendant made the misrepresentation intending that the [plaintiff] act on it," and

(5) "damages resulted from the [plaintiff's] reliance."  *Loveland Essential Grp., LLC

v. Grommon Farms, Inc.*, 251 P.3d 1109, 1116 (Colo. App. 2010).

A plaintiff asserting a fraud claim must satisfy the heightened pleading

requirements of Federal Rule of Civil Procedure 9(b).  Under Rule 9(b), the plaintiff

"must state with particularity the circumstances constituting fraud or mistake."  Fed.

R. Civ. P. 9(b).  We have interpreted this Rule to require a plaintiff to "set forth the

time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Toone v. Wells Fargo Bank, N.A.*, 716. F.3d 516, 522 (10th Cir. 2013) (quotations omitted); *United States ex rel. Polukoff v. St. Mark's Hosp.*, 895 F.3d 730, 745 (10th Cir. 2018) (allegations of fraud must "provide factual allegations regarding the who, what, when, where and how of the alleged claims" (quotations and alterations omitted)).

The district court dismissed the Cui Appellants' fraud claim after determining the Cui complaint failed to meet Rule 9(b)'s heightened pleading standard. The Cui Appellants contend the complaint adequately alerted Appellees to the nature of their claim, and any deficiency in the pleadings resulted from asymmetric information. We agree with the district court.

As the district court determined, the Cui Appellants' allegations lacked the specificity needed to allege fraud. For instance, the complaint alleged that Waveland LLC "colluded with SPO to defraud the EB–5 investors by misrepresenting to them that the Loan was 100% collateralized and safe." App., Vol. VI at 1564-65 ¶ 9. But this allegation contained no specifics regarding which statements were fraudulent, nor did it identify when or where the false representation was made. Elsewhere in the complaint, the Cui Appellants identified numerous purported misrepresentations in a marketing presentation to potential investors by Appellees' agents, *id.* at 1573-75 ¶¶ 65-66, but the complaint again failed to identify where, when, and to whom the misrepresentations were made. Indeed, as the district court noted, the complaint

failed to allege that any of the Cui Appellants attended this presentation. These allegations lack the requisite specificity to allege a fraud claim.

The Cui Appellants argue we should relax Rule 9(b)'s heightened pleading standard because Appellees were better placed to have details regarding their fraudulent scheme. We have held that "courts may consider whether any pleading deficiencies resulted from the plaintiff's inability to obtain information in the defendant's exclusive control." *Polukoff*, 895 F.3d at 745 (quotations omitted). But the Cui Appellants' complaint was deficient, not because they lacked information in Appellees' exclusive control, but because they failed to identify necessary information that was squarely within their knowledge, such as the dates, locations, and identities of relevant actors. We thus affirm the district court's dismissal of the Cui Appellants' fraud claim.

## B. *Dismissal of State Claims for Lack of Jurisdiction*

After the district court denied the motion to dismiss the Li Appellants' derivative breach-of-contract claim and the Cui Appellants' derivative breach-of-contract and declaratory-judgment claims against SPO and SPO I, it ordered the parties to address whether it had diversity jurisdiction over these claims, and if not, whether it should exercise supplemental jurisdiction.

After briefing, the district court concluded that because the Appellants' remaining claims were derivative in nature, it had to determine whether to align CRCPS as a plaintiff or a defendant. It concluded CRCPS's interests were adverse to the Appellants' interests, so the court aligned it as a defendant. And because

27

CRCPS, as a limited partnership, takes on the citizenship of its limited partners, *see Carden v. Arkoma Assocs.*, 494 U.S. 185, 195-96 (1990), the court concluded it had the same citizenship as the Appellants.  It therefore determined it lacked subject-matter jurisdiction.  It then declined to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c)(3).[19]

On appeal, the Li Appellants do not challenge the dismissal of their derivative breach-of-contract claim against SPO and SPO I for lack of subject-matter jurisdiction.  We thus limit our analysis to the Cui Appellants' challenge to the dismissal of their derivative breach-of-contract and declaratory-judgment claims against SPO and SPO I for lack of subject-matter jurisdiction.[20]  The Cui Appellants do not address the district court's determination of CRCPS's alignment or its citizenship.  Instead, they focus on the diversity of citizenship between themselves and the SPO Defendants.  Because the district court determined CRCPS and the Cui Appellants shared the same citizenship and therefore there was no complete diversity, the citizenship of SPO is not material to its holding that there was no diversity jurisdiction.  *See Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806).  Because the Cui Appellants fail to dispute the alignment and citizenship of CRCPS, they have

---

[19] On appeal, the Appellants do not challenge this declination of supplemental jurisdiction.

[20] In their reply brief, the Cui Appellants argue they alleged both direct and derivative claims that survived the motion to dismiss.  This is incorrect.  The district court dismissed the direct claims under Rule 12(b)(6) and left only the derivative claims.

waived their challenge to the district court's dismissal for lack of subject-matter jurisdiction. *Krastev v. INS*, 292 F.3d 1268, 1280 (10th Cir. 2002) ("Issues not raised on appeal are deemed to be waived.").  Any such challenge would fail in any event.

## C. *Leave to Amend the Complaint*

The Cui Appellants argue the district court should have granted their motion for leave to file a fourth amended complaint.  "A district court should refuse leave to amend only upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Wilkerson v. Shinseki*, 606 F.3d 1256, 1267 (10th Cir. 2010) (quotations and alterations omitted).  "We ordinarily apply the abuse-of-discretion standard when reviewing a denial of leave to amend." *Moya v. Garcia*, 895 F.3d 1229, 1239 (10th Cir. 2018).

In a June 14, 2021 order,[21] the district court denied the Cui Appellants' motion for leave to amend.  It reasoned that amendment would be futile based on (1) its dismissal of the Cui Appellants' breach-of-fiduciary-duty and fraud claims with prejudice, (2) its refusal to exercise supplemental jurisdiction over the surviving state law claims, and (3) the Cui Appellants' previous three amendments of their complaint. *See Anderson v. Suiters*, 499 F.3d 1228, 1238 (10th Cir.2007) (a district court may deny a motion to amend a complaint if the amendment would be futile, and

---

[21] Issued the same day the court entered final judgment.

"[a] proposed amendment is futile if the complaint, as amended, would be subject to dismissal" (quotations omitted)).  We view the request to amend differently.

The Cui Appellants proposed to amend their complaint to state a breach-of-contract claim based on CRC I's breach of its contractual fiduciary duty.  As we explained above in our discussion of the Li Appellants' fiduciary-duty claim, such a claim is not subject to the economic loss rule.  In short, the proposed amended complaint does not appear to be futile, and "[i]f a proposed amendment is not *clearly* futile, then denial of leave to amend is improper."  *Seale v. Peacock*, 32 F.4th 1011, 1029 (10th Cir. 2022) (quoting Wright & Miller, Federal Practice & Procedure § 1487).  We reverse the district court's denial of the Cui Appellants' request for leave to amend and remand for further consideration.

### D. *Motion for Default Judgment*

The Li Appellants challenge the district court's refusal to enter default judgment in their favor on their abandoned claim to remove CRC I as general partner of CRCPS.  They initially included a count in their operative complaint seeking removal of CRC I as general partner.  But they voluntarily dismissed this count. App., Vol. VIII at 2090.  After CRC I filed a counterclaim seeking a declaratory judgment that its purported removal was improper, the Li Appellants moved to dismiss the counterclaim and "for [an] order declaring general partner removed instanter."  *Id.* at 2079.

The district court denied the Li Appellants' motion to dismiss the counterclaim and their request for a declaration stating that CRC I was properly removed as

general partner.  After this ruling, CRC I voluntarily dismissed its counterclaim.  The Li Appellants then moved for entry of default judgment ordering the removal of CRC I as general partner.  The court denied their motion during a hearing.  *See* App., Vol. XIII at 3420-69.

The Li Appellants argue this denial was erroneous.  They appear to suggest that CRC I's voluntary dismissal amounted to a concession that its removal was proper.  But as Appellees point out, the Li Appellants had already dismissed their claim seeking removal of CRC I as general partner.  The district court thus had no claims involving removal of CRC I before it, let alone a claim adjudicated in the Li Appellants' favor.  In short, when the Li Appellants moved for default judgment, there was no pending claim on which judgment could be entered.  We therefore affirm.

### E. *Attorney Fees*

The district court awarded attorney fees under Colorado law and the PSLRA. We vacate the attorney fees and remand to the district court for further proceedings.[22]

"[A]lthough this appeal involves the review of an award of attorneys' fees under state law, the standard of review under which we review an award of fees is a procedural matter controlled by federal precedent." *Xlear, Inc. v. Focus Nutrition, LLC*, 893 F.3d 1227, 1233 (10th Cir. 2018).  "We review the decision to award

---

[22] Nothing in our Order and Judgment should prevent the district court from revisiting whether it should award attorney fees under Colorado law or the PSLRA at the conclusion of proceedings on remand.

attorney fees, and the amount awarded, for abuse of discretion." *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1232 (10th Cir. 2000). "A district court abuses its discretion if it commits legal error, relies on clearly erroneous factual findings, or issues a ruling without any rational evidentiary basis." *Xlear, Inc.*, 893 F.3d at 1233. "Whether a litigant is a 'prevailing party' is a legal question we review de novo." *Id.*

1. **Colorado Law**

Under Colorado law, if a court grants a motion to dismiss a tort action, the "defendant shall have judgment for his reasonable attorney fees in defending the action." Colo. Rev. Stat. § 13-17-201(1).

If a plaintiff has pled tort and non-tort claims, the court must determine "whether the essence of that party's action was one in tort." *Gagne v. Gagne*, 338 P.3d 1152, 1167 (Colo. App. 2014). The court first assesses "whether the 'essence of the action' is tortious in nature (whether quantitatively by simple number of claims or based on a more qualitative view of the relative importance of the claims)." *Id.* at 1168 (quotations omitted). If this assessment fails to give a definitive answer, the court must then determine "whether tort claims were asserted to unlock additional remedies." *Id.* (quotations omitted).

If the court determines the essence of the action was tortious, then attorney fees are mandatory. *See Luskin Daughters 1996 Tr. v. Young*, 448 P.3d 982, 987 (Colo. 2019). A court must also award attorney fees to a defendant even if claims remain live against a co-defendant. *See Stauffer v. Stegemann*, 165 P.3d 713, 718

32

(Colo. App. 2006).  But "the statute does not authorize recovery if a defendant obtains dismissal of some, but not all, of a plaintiff's tort claims."  *Colorado Special Districts Prop. & Liab. Pool v. Lyons*, 277 P.3d 874, 885 (Colo. 2012).

### a.  *Li Appellants*

Because we reverse dismissal of the Li Appellants' breach-of-fiduciary-duty claim because the district court misconstrued it as a tort claim rather than as a contract claim, we vacate the attorney fee award.  As discussed, Colorado law does not permit an award of attorney fees if some of the plaintiff's claims remain live. *Falcon Broadband, Inc. v. Banning Lewis Ranch Metro. Dist. No. 1*, 474 P.3d 1231, 1244-45 (Colo. App. 2018) (statute does not apply "if the court doesn't dismiss all the tort claims against a certain defendant or if an action contains both tort and non-tort claims and the defendant obtains C.R.C.P 12(b) dismissal of only the tort claims" (quotations omitted)).  Our reversal revives the breach-of-fiduciary-duty claim.  We therefore vacate the award of attorney fees under Colorado law.

### b.  *Cui Appellants*

Similarly, because we reverse and remand on the Cui Appellants' motion for leave to amend their complaint, we vacate the award of attorney fees under Colorado law.

As discussed, Colorado law awards attorney fees for a tort action when the "action is dismissed on motion of the defendant."  Colo. Rev. Stat. § 13-17-201(1). But because we reverse the district court's denial of the Cui Appellants' proposed

amendment, which includes a breach-of-fiduciary-duty claim arising under contract, the statutory basis for the attorney fee award no longer applies.

## 2. **Federal Law**

The PSLRA requires a court, "upon final adjudication of the action," to make "specific findings regarding compliance by each party and each attorney representing any party with each requirement of Rule 11(b) of the Federal Rules of Civil Procedure as to any complaint, responsive pleading, or dispositive motion." 15 U.S.C. § 78u-4(c)(1). If the court finds that a party violated Rule 11(b), it "shall impose sanctions on such party or attorney." 15 U.S.C. § 78u-4(c)(2). Unlike other sanctions provisions, the PSLRA imposes a presumption in favor of sanctions. *Id.* § 78u-4(c)(3).

After making its dismissal rulings and concluding that no claims were pending, the district court ordered the parties to address whether it should award attorney fees under the PSLRA. The court concluded that four of the Li Appellants' five claims— including their federal securities claim—were frivolous and thus warranted a sanctions award.

As to the Cui Appellants, the court concluded that two of the five claims it adjudicated—including the federal securities claim—were frivolous. The court determined that the Cui Appellants' claims against the CRC Defendants contained substantial defects and that the Cui Appellants failed to rebut the presumption in favor of sanctions. But it concluded the Cui Appellants' claims against the SPO Defendants were not as defective, so it awarded lower sanctions.

The court then ordered (1) the Li Appellants' counsel to pay about $390,000 to CRC Defendants and $244,000 to SPO Defendants; and (2) the Cui Appellants' counsel to pay about $140,000 to CRC Defendants and $5,000 to SPO Defendants.

    a.  *Li Appellants*

Because we reverse the district court's dismissal of one of the Li Appellants' claims, we vacate the PSLRA fee award. The PSLRA provides that, "[i]n any private action arising under" the securities statutes, the district court must award attorney fees "upon final adjudication of the action." 15 U.S.C. § 78u-4(c)(1). The parties have not briefed, and the district court did not address whether "final adjudication of the action" refers solely to federal securities-law claims or whether it refers to the entire action. If it refers to the latter, our reversal of the district court's dismissal of the Li Appellants' breach-of-fiduciary-duty claims means that adjudication of the action is not final.[23] On remand, the district court must determine whether it must first resolve the Li Appellants' surviving breach-of-fiduciary-duty claim before assessing attorney fees under the PSLRA.[24]

---

[23] We note the case law understanding of 15 U.S.C. § 78u-4(c)(1) is unsettled. The Fourth Circuit has said, but only in dicta, that the PSLRA "applies to any action with a claim arising under Chapter 2B of Title 15 of the U.S. Code, 15 U.S.C. § 78a et seq." *Morris v. Wachovia Sec., Inc.*, 448 F.3d 268, 276 (4th Cir. 2006). Relatedly, district courts have attempted to address the meaning of "final adjudication." *See Blaser v. Bessemer Tr. Co.*, 2002 WL 31359015, at *3 (S.D.N.Y. 2002) (noting "there is little case law on its meaning"); *Manchester Mgmt. Co., LLC v. Echo Therapeutics, Inc.*, 297 F. Supp. 3d 451, 465 (S.D.N.Y. 2018); *Great Dynasty Int'l Fin. Holdings Ltd. v. Haiting Li*, 2014 WL 3381416, at *5 (N.D. Cal. 2014).

[24] The district court concluded that the breach-of-fiduciary-duty claim was frivolous, which is not correct in light of our reversal. We affirm the dismissal of the

b. *Cui Appellants*

Because we reverse the district court's order denying the Cui Appellants leave to amend their complaint, we vacate the district court's PSLRA fee award. As with the award against the Li Appellants, the district court must determine whether "final adjudication of the action" refers solely to the Cui Appellants' federal securities-law claim or whether it covers the entire complaint.

## III. **CONCLUSION**

In sum, we

(A) affirm the district court's dismissal of Appellants' claims under Federal Rule of Civil Procedure 12(b)(6) except for the Li Appellants' claim for breach of fiduciary duty, which we affirm in part and reverse in part;

(B) affirm dismissal of the Cui Appellants' remaining state law claims for lack of jurisdiction;

(C) reverse the district court's dismissal of the Cui Appellants' motion to amend their complaint;

---

derivative federal securities-law claim because it did not allege harm to CRCPS, the limited partnership. But the district court may have awarded fees on a faulty basis because it seems to have broadly concluded that a derivative federal-securities law claim against a general partner would be a suit against the limited partnership itself and could not be maintained even if it alleged damage to CRCPS. App., Vol. XIV at 3823 ("It was not objectively reasonable for Li Plaintiffs to sue CRC I derivatively on behalf of CRCPS for alleged securities violations.").

The case law indicates that investors may pursue derivative federal-securities law claims against a corporate manager (here, the general partner, CRC I) for alleged harm to the corporation (here, the limited partnership, CRCPS). *See Frankel v. Slotkin*, 984 F.2d 1328, 1332-33 (2nd Cir. 1993) (plaintiff could maintain derivative federal-securities law claim against majority shareholder by showing damage to the corporation); *Hill v. Vanderbilt Cap. Advisors, LLC*, 834 F. Supp. 2d 1228, 1268-69 (D.N.M. 2011) (other circuits have established that federal securities-law claims may be pursued derivatively).

(D)   affirm the district court's denial of the Li Appellants' motion for default judgment; and

(E)   vacate the awards of attorney fees.[25]

The following chart lists the issues presented on appeal and our dispositions:

| | Appeal Issue | Li Appellants | Cui Appellants |
|---|---|---|---|
| (A) | Rule 12(b)(6) Dismissal of: | | |
| (1) | Breach of fiduciary duty | Affirmed in part Reversed in part | Affirmed |
| (2) | Federal securities fraud | Affirmed | Affirmed |
| (3) | Colorado securities fraud | Affirmed | N/A |
| (4) | Colorado common law fraud | N/A | Affirmed |
| (B) | Dismissal for Lack of Subject-Matter Jurisdiction | N/A | Affirmed |
| (C) | Denial of Motion to Amend | N/A | Reversed |
| (D) | Denial of Motion for Default Judgment | Affirmed | N/A |
| (E) | Attorney Fees | | |
| (1) | Colorado | Vacated | Vacated |
| (2) | PSLRA | Vacated | Vacated |

---

[25] We thus deny as moot the following motions addressing the district court's orders regarding the attorney fee awards:  (1) CRC I's motion for leave to allow the district court to correct the amended final judgment, Doc. 10870007; (2) the Li Appellants' motion for affirmative relief striking the amended final judgment, Doc. 10878163; and (3) the Li Appellants' motion to strike the second amended final judgment, Doc. 10874725.

We also deny the Li Appellants' motion for appointment of a neutral appellate counsel for CRCPS, Doc. 10847355.  The Li Appellants provide no legal basis for this request.

We remand to the district court for further proceedings consistent with this

Order and Judgment.

Entered for the Court


Scott M. Matheson, Jr.
Circuit Judge

UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT
Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303) 844-3157
Clerk@ca10.uscourts.gov

Christopher M. Wolpert                                                              Jane K. Castro
Clerk of Court                                                                     Chief Deputy Clerk

September 12, 2022


Douglas Eliot Litowitz
Douglas Litowitz Law Office
413 Locust Place
Deerfield, IL 60015

Eric M Schiffer
Schiffer & Buus
959 South Coast Drive, Suite 385
Costa Mesa, CA 92626

Brian Stewart
Ardent Law Group
4340 Von Karman Avenue, Suite 290
Newport Beach, CA 92660


RE:     **21-1232, 21-1253, Li, et al., et al v. Colorado Regional Center I, et al**
        Dist/Ag docket: 1:19-CV-02443-RM-STV, 1:19-CV-02637-RM-STV

Dear Counsel:

Enclosed is a copy of the order and judgment issued today in this matter. The court has
entered judgment on the docket pursuant to Fed. R. App. P. Rule 36.

Pursuant to Fed. R. App. P. Rule 40(a)(1), any petition for rehearing must be filed within
14 days after entry of judgment. Please note, however, that if the appeal is a civil case in
which the United States or its officer or agency is a party, any petition for rehearing must
be filed within 45 days after entry of judgment. Parties should consult both the Federal
Rules and local rules of this court with regard to applicable standards and requirements.
In particular, petitions for rehearing may not exceed 3900 words or 15 pages in length,
and no answer is permitted unless the court enters an order requiring a response. *See* Fed.
R. App. P. Rules 35 and 40, and 10th Cir. R.35 and 40 for further information governing
petitions for rehearing.

Please contact this office if you have questions.

Sincerely,

Christopher M. Wolpert
Clerk of Court

cc:     Ty Gee
        Harold Haddon
        Stephanie Kanan
        James D. Kilroy
        Hubert H. Kuo
        Christopher P. Montville

CMW/jjh