**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 19-cv-02443

Jun Li, Qi Qin, Yi Liu, Jie Yang, et al.
    Plaintiffs,

                Hon. Judge Moore
   v.              Hon. Magistrate Varholak

Colorado Regional Center Project Solaris LLLP,
Colorado Regional Center I, LLC, et al.
    Defendants.

---

**Li Plaintiffs' Motion For Attorney Fees of 15% from Distribution Made to Limited Partners Without a Required F.R.C.P. 23(c) Hearing and Without Required Payment through IOLTA Accounts**

---

**STATEMENT OF CONFERRAL PER LOCAL RULE 7.1: PLAINTIFFS' COUNSEL HAS CONFERRED WITH COUNSEL FOR COLORADO REGIONAL CENTER I LLC AND THEY OPPOSE THIS MOTION. COUNSEL FOR THE CUI PLAINTIFFS DO NOT OPPOSE THIS MOTION**

The Li Plaintiffs hereby request this Court award counsel for the Li Plaintiffs a 15% legal fee against the $80,000 distribution that CRCI made directly to limited partners' bank accounts without court approval and in circumvention of IOLTA accounts.[1] In support of this Motion, the Plaintiffs assert as follows:

(i) The distribution is in the nature of a partial settlement that should have been brought before the Court per Fed. R. Civ. P. 23.1(c);
(ii) Counsel is entitled to legal fees from the distribution since their legal work occasioned it; and
(iii) the distribution should have been paid to IOLTA accounts.

---

[1] The notice from CRCI announcing the distribution is attached as <u>Exhibit 1</u>.

Fed. R. Civ. P. 23.1(c) provides that derivative actions cannot be settled or compromised without a court hearing:

> (c) *Settlement, Dismissal, and Compromise.* A derivative action may be settled, voluntarily dismissed, or compromised only with the court's approval. Notice of a proposed settlement, voluntary dismissal, or compromise must be given to shareholders or members in the manner that the court orders.

The $80,000 per limited partner distribution is a major event that constitutes a partial settlement or pre-settlement of the $500,000 per limited partner in damages sought against CRCI by Plaintiffs' counsel. Whatever one wants to call this payment ('settlement' 'pre-settlement' 'anticipatory partial settlement') it sufficiently resembles a settlement to trigger the requirement of Court supervision under Fed. R. Civ. P. 23.1(c).

Legal fees in derivative cases can be set by percentage of distribution to the shareholders (in this case, the limited partners). The range is from a low of 10-15% to a high of 33%. *Americas Mining Corp. v. Theriault*, 51 A.3d 1213, 1259 (Del. 2012)(explaining the range of attorney fees in derivative settlements); *Make A Difference Foundation, Inc. v. Hopkins*, No. 10-cv-00408-WJM-MJW, 2012 WL 917283 at *4 (D. Colo. Mar. 19, 2012)(setting attorney fees in a derivative settlement using lodestar); *In re Wells Fargo & Co. Shareholder Derivative Litig.*, 445 F.Supp.3d 508, 519 (N.D. Cal. 2020), aff'd 845 F. App'x 563 (9th Cir. 2021)(explaining that 25% is standard for attorney fees in derivative settlements). The *Wells Fargo* case said that payments to *derivative counsel* operate the same as payments to *class action counsel* because both types of cases involve 'common funds' where the attorney unlocks money shared in common by an entire group of beneficiaries, thus the lawyer should be compensated for all money that he has shaken loose for all recipients. The analogy with class actions is appropriate since the federal rule governing

derivative settlements is verbatim with the federal rule governing class action settlements: both require court approval and oversight of attorney fees (compare Fed. R. Civ. P. 23(e) with 21(c)).

Frankly, this is the first case Plaintiffs' counsel has ever seen where a distribution from defendants during a lawsuit was made directly to the parties and not into an IOLTA account where an attorney could deduct his contingency fees. The Colorado Supreme Court instructs lawyers that whenever property passes from a defendant to a plaintiff, it must go through the attorney's trust account so the attorney can deduct his contingency fee.  Here is what the Colorado Supreme Court says in its *Trust Account Manual*:

> The lawyer commonly has a contingent fee agreement with the client giving the lawyer a percentage of the settlement proceeds.  Before the funds are disbursed, Colo. RPC 1.15C(a) requires that all trust account monies intended for deposit shall be deposited intact, meaning that the entire sum of the check is deposited in the trust account.

See "Depositing and Withdrawing Funds from Trust Accounts," at coloradosupremecourt.com (last visited Sept. 22, 2022).

Putting together Federal Rule 23.1(c) and the State law requirement of payment through IOLTA accounts, it is clear that CRCI should have come before this Court and laid out its plan to make a major distribution to limited partners and informed the Court of how much it intended to pay defendants and their lawyers.  Then if the Court approved, the money should have been transferred to IOLTA accounts.  But this was not done.

Without being too cynical, it appears that CRCI distributed the money straight to the limited partners' bank accounts instead of an IOLTA (where contingency fees could be deducted

in one shot) with the goal of forcing to Plaintiffs' lawyers to chase down the limited partners to get their contingency fee.  This is gamesmanship litigation.

As to whether the distribution of $80,000 to each limited partner falls within Fed. R. Civ. P. 23.1(c), there is no doubt that the distribution took place under the pressure of Plaintiffs' lawsuit and in the heat of a battle where plaintiffs were seeking $500,000 in damages from CRCI.  In all the years before this lawsuit was filed, CRCI did nothing for the limited partners except trickle out random tiny payments that, for most of the Li Plaintiffs, amounted to only $30,000 over 8 years, a return of maybe 6% of their investment not accounting for inflation.  But AFTER the lawsuit was filed – that is, after CRCI was dragged into extensive litigation in this Court and the Court of Appeals – CRCI suddenly decided to make a major distribution.  This is their way of settling piece-by-piece, or at least lessening any award against them (which is the same thing), but they are doing it around the Federal Rules of Civil Procedure and outside the procedures required by State law that money should go into IOLTA accounts.  **CRCI is trying to settle this derivative lawsuit by degrees instead of all at once – but a settlement is a settlement even if made in degrees, and settlements of derivative cases require Court approval.**

CRCI may claim that a $80,000 distribution to limited partners seeking $500,000 in damages is not a "settlement" but this begs the question of what else it could be?  It was made in the heat of litigation while claims of $500,000 per limited partner were asserted against CRCI, and it is intended as a palliative against such claims.  It wasn't an 'ordinary course distribution' since CRCI had no track record of making such distributions in the ordinary course. It was *extra*ordinary. And here is the real proof that the distribution was a settlement: if this Court finds that CRCI is liable for $500,000 per limited partner in damages, CRCI will surely argue that the $80,000 distribution was a partial settlement that reduces the $500,000 award to $420,000.  A settlement

4

by degrees is still a settlement, and Fed. R. Civ. P. 23(c) requires Court supervision of anything that reeks of a settlement, either whole or partial.

No matter if one calls the distribution a 'settlement' or 'partial settlement' or 'extraordinary payment,' it took place in the middle of hotly contested litigation against CRCI, and therefore the lawyers for the Plaintiffs should be compensated for shaking this money loose and into the pockets of all limited partners. The fees to plaintiffs' lawyers in a derivative case is within the discretion of the Court, but the average is about 25% of money distributed, so 15% is well below the fee awarded to most lawyers in derivative actions. The Li Plaintiffs assert that 15% of the $80,000 distribution should have gone to Plaintiffs' lawyers. Since CRCI didn't pay it at the time of distribution, they should pay it now, especially when that the case against CRCI was reinstated by the Tenth Circuit.

WHEREFORE, Li Plaintiffs request an Order that CRCI pay Plaintiffs' counsel an amount equal to 15% of the $80,000 distributed to each limited partners, and that a similar percentage be applied to any future distributions occasioned by this litigation.

Dated: September 23, 2021                                   Respectfully Submitted,

/s/ Douglas Litowitz
413 Locust Place,
Deerfield, IL 60015
312-622-2848
Litowitz@gmail.com

### Certificate of Service

This document was filed on the ECF system for the District of Colorado on September 23, 2022 and thereby sent to all counsels of record.

5