**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-cv-02443-RM-STV
Consolidated with Civil Action No. 1:19-cv-02637

Jun Li, *et al.*,

    Plaintiffs,

v.

Waveland Ventures, LLC, *et al.*,

    Defendants.

---

**DEFENDANT CRC I AND COUNSEL'S SUBMISSION IN RESPONSE TO THE LI PLAINTIFFS' SERVICE OF SAFE HARBOR MOTION**

---

Undersigned counsel James Kilroy and Stephanie Kanan, attorneys of record for Defendant Colorado Regional Center I, LLC ("CRC I"), on behalf of Defendant CRC I and themselves, file this Submission in Response to the Li Plaintiffs' Service of Safe Harbor Motion ("Safe Harbor Motion"), stating as follows:

**INTRODUCTION**

On April 30, 2023, counsel for the Li Plaintiffs Doug Litowitz served on undersigned counsel a Fed. R. Civ. P. 11(b)(3) "Safe Harbor Motion," indicating an intent to file the Safe Harbor Motion in 21 days unless undersigned counsel "make[s] appropriate withdrawal or correction to the federal court" regarding a document identified and referenced in this case (and in a parallel state court proceeding which will be discussed herein) called the Agreement Regarding Collateral Units ("ARCU"). *See* Exhibit A, April 30, 2023 Safe Harbor Motion. The ARCU was

a contract entered into between Defendants Colorado Regional Center Project Solaris LLLP ("CRCPS") and Solaris Property Owner I, LLC ("SPO I"). In their Safe Harbor Motion, the Li Plaintiffs claim that the ARCU was "fabricated" and that CRC I and undersigned counsel violated Fed. R. Civ. P. 11(b)(3) by filing or referencing the ARCU in court filings.

As will be discussed below, neither CRC I nor undersigned counsel fabricated the ARCU or anything else.  The ARCU was indisputably negotiated, entered into, and executed prior to the filing of this lawsuit or the threat of any lawsuit. In fact, in a separate state court proceeding that counsel for the Li Plaintiffs filed against SPO I, SPO I has produced documents in discovery showing that the parties to the ARCU – SPO I and CRCPS – came to agreement regarding the subject matter of the ARCU in the time period before the maturity dates of a loan agreement between those parties, and then later executed the ARCU, clearly intending it to be effective as of April 2015.  There was and is evidentiary support for the ARCU itself and any implied contention that the parties actually entered into an agreement regarding the subject matter of the ARCU as of the date indicated on the ARCU itself.

Moreover, neither CRC I nor undersigned counsel ever made any false statements of material fact regarding when the ARCU was signed in any hearing or filing with the Court. And the date that the ARCU was signed had nothing whatsoever to do with the Li Plaintiffs' claims against the CRC Defendants or this Court's resolution of those claims.

In any event, and out of an abundance of caution, CRC I and undersigned counsel file this Submission to clarify the issue raised by Li Plaintiffs in their Safe Harbor Motion.

## CLARIFICATION OR CORRECTION OF RECORD

In their Safe Harbor Motion, the Li Plaintiffs identify three papers in the Court record that they claim should be withdrawn or corrected: (a) an affidavit of Rick Hayes [ECF 51-1]; (b) a paper filed by SPO I called "Response to Plaintiffs' Motion to Compel CRCPS to "Call the Loan" [ECF 186]; and, (c) the Court's Order on Pending Motions [ECF 271].

As will be discussed below, neither the Hayes Affidavit nor the ARCU were fabricated. And the factual contentions in the Hayes Affidavit, with attachments (including the ARCU) have evidentiary support, so therefore there is nothing to "withdraw." As for the SPO I filing [ECF 186] and the Court Order [ECF 271], undersigned counsel naturally cannot withdraw these papers, nor would there be any reason to do so.

As for the Li Plaintiffs' demand for a "correction," while unnecessary for the reasons discussed herein, CRC I and undersigned counsel are certainly willing to clarify or correct the record and therefore make the following clarification or correction, pursuant to Fed. R. Civ. P. 11(c)(2): *SPO I and CRCPS signed the ARCU on or about February 8, 2019*.

## BACKGROUND OF RELATED STATE COURT ACTION

This case was ultimately resolved by the Court on Fed. R. Civ. P. 12(b)(6) motions. After this Court issued its Order on Pending Motions dated March 2, 2021 [ECF 271], the Li Plaintiffs filed a new state court lawsuit – a derivative breach of contract action against SPO I, captioned *Qin v. SPO I and Knobel v. CRCPS*, Denver District Court No. 2021CV32918 ("State Court

3

Action").[1]  Defendant SPO I then brought a crossclaim against CRCPS for indemnification. CRC I is not a party in the State Court Action, and undersigned counsel is not counsel of record for any party in the State Court Action. Unlike this case, the State Court Action has progressed through discovery and is headed toward trial in August 2023. During the discovery process in the State Court Action the defendants produced documents that indicate that the ARCU, which is dated as of April 17, 2015, was signed on or about February 8, 2019. The parties also produced documents showing that the parties to the ARCU agreed to the general subject matter of the ARCU as it related to SPO I's tender of collateral prior to the loan maturity dates years prior to 2019, and certainly prior to the maturity dates of the loan agreement between SPO I and CRCPS.

Plaintiffs in the State Court Action filed an emergency motion for sanctions against all attorneys in the State Court Action. On May 2, 2023, the court in the State Court Action denied Plaintiffs' request for an emergency hearing and gave the parties the normal timeframe to respond to Plaintiffs' motion. *See* Exhibit B, May 2, 2023 Order in State Court Action. Shortly thereafter, the Li Plaintiffs served undersigned counsel with the Safe Harbor Motion.

## ANALYSIS

**I.      Undersigned Counsel Did Not Make Any Factual Contention Lacking Evidentiary Support.**

Plaintiffs contend that undersigned counsel and CRC I violated Fed. R. Civ. P. 11(b)(3), which provides, in pertinent part, that by presenting to the court a pleading, written motion or other paper, an attorney certifies, to the best of that person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances … "the factual contentions have evidentiary

---

[1] The Li Plaintiffs also appealed the dismissal of all claims to the Tenth Circuit Court of Appeals, which in turn affirmed in part, reversed in part, and remanded for further proceedings.

support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."

The Li Plaintiffs specifically cite to an affidavit of Rick Hayes, contending that by filing this affidavit, undersigned counsel and CRC I "propagated a fabrication to this Court." The Hayes Affidavit was filed early in this lawsuit, in response to the Li Plaintiffs' motion for a preliminary injunction to enjoin a bulk sale of condominium units. [ECF 32] The motion for preliminary injunction was denied [ECF 59], and the bulk sale never went through. In any case, the CRC Defendants, in opposing the Li Plaintiffs' motion, filed the Hayes Affidavit to provide a factual background leading up to the proposed bulk sale. [ECF51-1]. This factual background included a description of the loan relationship between CRCPS (the limited liability limited partnership of which the Li Plaintiffs are limited partners) and SPO I, the borrower under the loan agreement. In his affidavit, Mr. Hayes, a manager of CRC I, testified, in pertinent part: (1) that CRCPS loaned $82.5 million to SPO I[2], which sums were to be used to pay certain costs pertaining to the development of the Solaris Project; (2) that the loan was evidenced by a loan agreement and promissory note and was funded in multiple advances over time; (3) that to secure the loan SPO I granted deeds of trust to CRCPS for each of 19 condominium units valued in the aggregate at approximately $82.5 million; (4) that the principal balance and interest on each loan advance was due and payable five years after the date of each loan advance; (5) that three years after each loan advance, the borrower, SPO I, had the right to prepay the amount of the loan advance by either paying cash or by tendering a special warranty deed to one or more of the condominium units; (6) that SPO I delivered notice of its intention to exercise the right to collateral transfer with respect

---

[2] The first borrower was SPO. SPO assigned its rights and obligations to SPO I. [ECF 51-1, ¶ 21.]

5

to each condominium unit to CRCPS in lieu of cash payment after three years following each loan advance; (7) that pursuant to the terms of the ARCU (attached to the Hayes Affidavit) CRCPS had not (as of the Hayes Affidavit) been assigned title to the condominium units; and, (8) the agreed upon deferral of title to the condominium units benefitted CRCPS. [ECF 51-1, ¶¶ 13-25].

The Li Plaintiffs take issue with the Hayes' Affidavit apparently not because of the contents of the affidavit but because it attached the ARCU and the ARCU was signed by the parties on a different date than appears on the ARCU itself. [ECF 51-5]. The Li Plaintiffs apparently claim that the parties to the ARCU fabricated this document to mislead the Li Plaintiffs and the Court. The Li Plaintiffs are wrong.

First, the first draft of the ARCU was generated in mid-2017 and signed on or about February 8, 2019, which was approximately five months before the filing of this lawsuit or the threat of any lawsuit. *See* Exhibit C, Declaration of Robert Glucksman, ¶¶ 21-23. The first threat of any lawsuit, upon information and belief, came from a derivative demand Mr. Litowitz made on CRCPS on July 1, 2019. Undersigned counsel was retained by the CRC I for the first time on August 5, 2019, and the other CRC Defendants and (initially) CRCPS thereafter. *See* Exhibit D, Declaration of James Kilroy. This lawsuit was filed August 28, 2019. [ECF 1]. Any suggestion that the ARCU was created for purposes of this litigation is completely unfounded.

Second, there is evidentiary support for the ARCU itself and for the parties' intent regarding the ARCU, including the parties' intent on when its terms became effective. There is also evidentiary support for the proposition that the parties to the ARCU actually signed the ARCU and agreed to be subject to its terms. There is also evidentiary support for the parties' position that SPO I and CRCPS came to a general agreement about the subject matter of the ARCU during the

time period in which SPO I was entitled to prepay its loan to CRCPS in the form of collateral rather than cash, and that SPO I agreed to hold title to the collateral for the benefit of CRCPS. The Declaration of Robert Glucksman, attached hereto as Exhibit C, outlines in detail the circumstances surrounding the negotiation and execution of the ARCU. The Declaration shows that:

- The parties to the ARCU, CRCPS and SPO I, came to agreement regarding the key subject matter described in the ARCU - SPO I's exercise of its "put right" to prepay loan advances prior to the maturity dates of the loan advances – years prior to the execution of the ARCU and within the time period that SPO I had a contractual put right. *See* Exhibit C, Glucksman Declaration, ¶¶ 11-22.

- SPO's exercise of its put right and the parties' agreement on this issue is documented contemporaneously in emails and other documents, years prior to the execution of the ARCU. *See* Exhibit C, Glucksman Declaration, ¶¶ 16-18, 21-22.

- The parties to the ARCU intended for the ARCU to be effective as of April 17, 2015 not for any nefarious reason, but simply because this is when SPO I first had the right to prepay the first loan advance by utilizing the put right. *See* Exhibit C, Glucksman Declaration, ¶¶ 9-15, 23.

In sum, parties to a contract may agree that a written contract shall take effect at an earlier date than that on which it was executed. *See Brewer v. National Surety Corporation,* 169 F. 2d 926, 928 (10th Cir. 1948) ("It is competent for the parties to agree that a written contract shall take effect as of a date earlier than that on which it was executed, and when this is done, the parties

7

shall be bound by such agreement.").[3] This is what occurred in connection with the ARCU.

The Li Plaintiffs contend that the ARCU is unenforceable and/or void, both because of how it is dated, and also for a host of other reasons. Whether the Li Plaintiffs are or may be correct on one or more of their arguments will ultimately be decided in the State Court Action.

In any event, and what matters for purposes of this Submission is that undersigned counsel certainly had and has an evidentiary foundation for filing the Hayes Affidavit, with the attached ARCU. Neither CRC I nor undersigned counsel affirmatively represented when the parties signed the ARCU. But even to the extent that presenting the ARCU in a filing is viewed as implicitly making a factual contention, as set forth above and in the Glucksman Declaration, there was and is evidentiary support for the ARCU itself and for the proposition that the parties to the ARCU intended to and did enter into the ARCU with the understanding that the ARCU would be effective as of the date on the instrument itself. *See* Advisory Comments to 1993 Amendments to Fed. R. Civ. P. 11 (in pertinent part, providing as follows: "(t)he certification is that there is (or likely will be) "evidentiary support" for the allegation, not that the party will prevail with respect to its contention regarding the fact.").

---

[3] The *Brewer* case analyzed Oklahoma substantive law. A Colorado published opinion, however, favorably cites to *Brewer. See Breckenridge Co. v. Swales Management Corp.*, 517 P.2d 476, 478 (Colo. App. 1973), *reversed on other grounds*, 522 P. 2d 737, 185 Colo. 160 (1974); *see also* Best Copy, Inc. v. Advanced Office Equipment, Inc., 2008 WL 5517064 (Colo. Dist. Ct. El Paso Cnty. Aug. 19, 2008) (Trial Order) ("[P]arties to a contract may execute an agreement on one date and provide that all rights, obligations and liabilities thereto will attach respectively as of a retroactive date.") (citation omitted); *Int'l Hedge Grp. Inc. v. Bayne*, No. 2019CV31250, 2021 WL 6694739, at *9 (Colo. Dist. Ct., Boulder Cnty. Aug. 5, 2021) ("It is elemental that contracting parties may agree to give retroactive effect to their contracts as they may see fit. And, it is fundamental that where parties to an agreement expressly provide that a written contract be entered into as of an earlier date than that on which it was executed, the agreement is effective retroactively as of the earlier date and the parties are bound thereby.") (internal quotations and citation omitted; italics omitted).

## II. The Date the ARCU Was Executed Was Immaterial to the Disposition of the Li Plaintiffs' Claims Against the CRC Defendants.

The Court's Order on Pending Motions [ECF 271] did state that CRC I (as general partner of CRCPS) and SPO I "entered into" the ARCU "on April 17, 2015," [ECF 271, p. 6], but that reference was in the "Background" section of the Order, and the date was not significant or material to any aspect of the Court's decision. Indeed, the Court specifically held that "[t]o the extent the parties are challenging the validity and effect of the ARCU in toto, the Court finds it is unable resolve this issue here because it is inadequately briefed." [ECF 271, p. 41].

Notably, the Court's Order on Pending Motions [ECF 271] was decided under Fed. R. Civ. P. 12(b)(6). The parties never exchanged Fed. R. Civ. P. 26(a)(1) initial disclosures and no discovery was conducted. The Court was required to accept all factual allegations in the Li Plaintiffs' operative complaint as true for purposes of determining the Defendants' motions to dismiss [ECF 203 and 223], and it was the Li Plaintiffs, and only the Li Plaintiffs, who alleged that the parties "signed" the ARCU in 2015. *See* Li Plaintiffs' Third Amended Complaint ("LTAC") [ECF 222, p. 40, ¶ 169].[4]

The CRC Defendants referred to and submitted the ARCU with their motion to dismiss [ECF 203, p. 5, n. 2 and p. 9] because the ARCU was referenced in the LTAC. [ECF 222, pp. 23-25, ¶¶80-88]. The CRC Defendants did so in order to provide relevant factual background for the motion, citing for each factual contention to the allegations from the LTAC and also from the Cui Plaintiffs' Third Amended Complaint [ECF 190]. None of the Li Plaintiffs' claims for relief against the CRC Defendants involved the ARCU on any level, with the possible exception of one

---

[4] The Li Plaintiffs' original Third Amended Complaint was filed as ECF 121 and then refiled with a verification page as ECF 222.

9

aspect of the Li Plaintiffs' breach of fiduciary duty claim (the claim for "post-investment" breach of fiduciary duty). And as for that claim, the CRC Defendants argued that under the ARCU, CRCPS controlled the collateral condominium units and that CRC I could not bring a lawsuit against the borrower, SPO I, because of the ARCU. [ECF 203, pp. 24-25]. There was and is evidentiary support for these arguments, and the factual predicates in these arguments. Again, CRC I has consistently maintained that the parties to the ARCU agreed, well before the maturity dates of loan advances, that SPO I would hold title to the condominium units after the maturity dates (for the benefit of CRCPS), and the parties to the ARCU expressly intended for the terms of the agreement to be effective as of April 2015. *See* Exhibit C, Glucksman Declaration, ¶¶ 11-24.

In any event, the Court granted the CRC Defendants' motion to dismiss on the breach of fiduciary duty claim based on the economic loss doctrine. The Tenth Circuit reversed that aspect of the Court's Order on Pending Motions and remanded this claim. As matters stand, once the Court determines whether to exercise supplemental jurisdiction over the Li Plaintiffs' breach of fiduciary duty claim, the Li Plaintiffs will presumably pursue this claim, and remain free to challenge the validity and effect of the ARCU – an issue the Court expressly did not determine. [ECF 271, p. 41, n. 74.]

## **CONCLUSION**

Undersigned counsel and CRC I did not violate Fed. R. Civ. P. 11(b)(3), but have now, at the Li Plaintiffs' request, clarified or corrected the record regarding the date the ARCU was signed. This clarification or correction of the record is not, of course, a concession of a Fed. R. Civ. P. 11 violation. *Photocircuits Corp. v. Marathon Agents, Inc.*, 162 F.R.D. 449, 451-52 (E.D.N.Y 1995).

Should the Li Plaintiffs file a Fed. R. Civ. P. 11 motion notwithstanding this Submission, CRC I and undersigned counsel reserve the right to fully respond.

DATED: May 19, 2023.                              SNELL & WILMER L.L.P.


*s/ James Kilroy*
James Kilroy


*s/ Stephane A. Kanan*
Stephanie A. Kanan
1200 Seventeenth Street, Suite 1900
Denver, CO 80202-5854
Phone: (303) 634-2000
Fax: (303) 634-2020
***Counsel for Defendants Waveland Ventures, LLC, Colorado Regional Center, LLC, and Colorado Regional Center I, LLC***

## CERTIFICATE OF SERVICE

This is to certify that on May 19, 2023, a true and correct copy of the above and foregoing document has been electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record:

Douglas Litowitz
413 Locust Place
Deerfield, IL  60015
Telephone: (312) 622-2848
Email: litowitz@gmail.com
***Attorneys for Li Plaintiffs***

Hubert Kuo
Brian P. Stewart
Ardent Law Group
4340 Von Karman Avenue, Suite 290
Newport Beach, CA  92660
Telephone: (949) 299-0188
Email: hkuo@ardentlawgroup.com
Email: bstewart@ardentlawgroup.com
***Attorneys for Cui Plaintiffs***

Heather Hanneman
Harold A. Haddon
Ty Gee
Christopher P. Montville
Haddon Morgan and Foreman, P.C.
950 17th Street, Suite 1000
Denver, CO  80202
Telephone: (303) 831-7364
Email: hhanneman@hmflaw.com
Email: hhaddon@hmflaw.com
Email: tgee@hmflaw.com
Email: cmontville@hmflaw.com
***Attorneys for Defendants Solaris Property Owner, LLC, Solaris Property Owner I, LLC, and Peter Knobel***

/s/Amy Kovarsky
for Snell & Wilmer L.L.P.

4863-6094-9091

12