# In the United States District Court
# for the District of Colorado

Civil Action No. 1:19-cv-02443-RM-STV
—*Consolidated with* No. 19-cv-2637-RM-STV

JUN LI, *et al.*, individually and derivatively for Colorado Regional Center Project Solaris LLLP,

    Plaintiffs,

v.

WAVELAND VENTURES LLC, *et al.*,

    Defendants.

## SPO Defendants' Objection to *Li* Plaintiffs' "Notice of D.C.Colo. LAttyR 2(a) Violation by Defendants in Fabricating and Backdating a Contract Integral to this Case"

Defendants Solaris Property Owner, LLC, Solaris Property Owner I, LLC, and Peter Knobel (collectively, "SPO Defendants"), through their attorneys Haddon, Morgan, and Foreman, P.C., submit this Objection to the *Li* Plaintiffs' "Notice of D.C.Colo. LAttyR 2(a) Violation by Defendants in Fabricating and Backdating a Contract Integral to this Case" ("Notice") (Doc.479).

## Introduction

Plaintiffs' "Notice" is improper. Like the numerous argumentative "status reports"[1] plaintiffs' counsel has filed the Notice without any conferral, apparently to

---

[1] Docs.183, 261, 322, 326, 327

circumvent the conferral requirements. Worse, plaintiffs' counsel filed the Notice after he either knew or should have known that his grave allegations of ethical misconduct were substantially groundless and frivolous, and because, we respectfully submit, the Notice was presented for an improper purpose.

This is another instance of plaintiffs' counsel's deviation from the civil rules and the norms expected in this District. He repeatedly has moved in this Court and in the United States Court of Appeals for the Tenth Circuit for "contempt" against opposing parties or their counsel.[2] He filed a motion for sanctions against undersigned counsel.[3] This Court and the Tenth Circuit summarily denied all these motions.

In the Tenth Circuit, plaintiffs' counsel used a Docketing Statement (June 23, 2021) to make gratuitous personal *ad hominem* attacks on this Court. After the Tenth Circuit's decision, he used a response to a motion to make gratuitous personal *ad hominem* attacks on defense counsel. It led to a Tenth Circuit Order striking the paper and admonishing him:

> Mr. Litowitz's use of *unfounded accusations and disparaging language in the response and other filings in this appeal* is inconsistent with the professional standards expected of attorneys admitted to practice in this court. We admonish him to stop doing so.

10th Cir. Ord. (Oct. 28, 2022) (emphasis supplied).

---

[2]Docs.16, 406, 424.

[3]Doc.242.

As the Notice demonstrates, plaintiffs' counsel has not stopped.

## Discussion

The entire purported basis for plaintiffs' allegations of multiple ethics violations by defense counsel is the effective date of the Agreement Regarding Collateral Units ("ARCU").

After this Court dismissed the *Li* plaintiffs' breach of contract claim, two of the *Li* plaintiffs brought two contract claims in Denver District Court in an action styled *Ni v. Solaris Property Owner I, LLC*, No. 2021CV32918. On April 14, 2023, the SPO Defendants disclosed to plaintiffs' counsel, i.e., Attorney Litowitz, dozens of emails exchanged during the period 2015-February 2019 between respective counsel for SPO I and the lender, Colorado Regional Center Project Solaris, LLLP ("CRCPS").

Those emails made it clear that during the period 2015-2019: SPO I tendered the nineteen Collateral Units to CRCPS pursuant to the Loan Agreement in repayment of the nineteen Loan Advances; CRCPS acknowledged the tender; CRCPS initially said it wanted title to the Units transferred to it; in March 2016 SPO I and CRCPS agreed SPO I should hold the Units so that CRCPS could avoid about $1 millioin in various expenses, including Vail real estate transfer taxes; later that month CRCPS said it *did* want the Units transferred to it; by about May 2017, CRCPS and SPO I had returned to their early March 2016 position—SPO I should hold title to the Units until CRCPS requested their transfer.

The first iteration of the ARCU was drafted in early March 2016 to memorialize and set the terms for how SPO I would hold title to the Units. In about September 2017, respective counsel for SPO I and CRCPS began negotiating and revising the draft ARCU. A final draft was completed and signed in February 2019.

Before the ARCU was finalized and signed, counsel for SPO I and CRCPS exchanged emails making it clear that the parties were operating under what they characterized as an "existing oral agreement" under which, e.g., SPO I would continue to hold title to the Units until CRCPS requested transfer.

All these facts are set out in the SPO Defendants' "Response to Plaintiffs' Motion for Sanctions under C.R.C.P. 11 re the ARCU's Signature Date" ("C.R.C.P. 11 Resp.") (filed in the *Ni* case on May 19, 2023) (EXHIBIT A), which is incorporated here by reference. Yes, plaintiffs' counsel in *Ni* filed a Rule 11 motion for sanctions against counsel for the SPO Defendants as well as counsel for CRCPS. Its allegations were substantially the same as those in the Notice. The district court summarily denied the motion on June 12, 2023. EXHIBIT B.

In its final form, the ARCU in the first paragraph says it is "dated *as of* the 17th day of April, 2015." The ARCU's signature page says Borrower and Lender have executed this Agreement *as of* the date first above set forth," referring to the first paragraph. The ARCU is attached as Ex.A to the C.R.C.P. 11 Response.

Insofar as we know, no counsel of record in the case at bar or in the *Ni* case negotiated or drafted the ARCU. No counsel of record in either case was a party to any of

4

the dozens of emails exchanged between respective in-house counsel for SPO I and CRCPS in 2015-February 2019. Like Attorney Litowitz, *see* C.R.C.P. 11 Resp. 3, we had assumed until we reviewed the emails that the ARCU was signed April 17, 2015.

Although we reserve a substantive response to plaintiffs' allegations for if and when plaintiffs file a formal motion requesting affirmative relief, for purposes of this Objection we make three observations.

**One,** like the SPO Defendants' counsel, plaintiffs' own counsel filed papers in this action in which they assumed CRCPS and SPO I "signed" the ARCU in 2015. *E.g.*, Doc.189 at 3; Doc.210 at 4; Doc.230 at 9.

**Two,** it legally is *irrelevant* when CRCPS and SPO I actually signed the ARCU where they both *entered into a contract providing that* its effective date is April 17, 2015. That is, contracting parties are free to backdate their contracts. *See, e.g.*, *Breckenridge Co. v. Swales Mgmt. Corp.*, 517 P.2d 476, 478 (Colo. App. 1973) ("The parties may agree that a written contract shall take effect at an earlier date than that on which it was executed."), *rev'd on other grounds*, 522 P.2d 737 (Colo. 1974); *Brewer v. Nat'l Sur. Corp.*, 169 F.2d 926, 928 (10th Cir. 1948) ("It is competent for the parties to agree that a written contract shall take effect as of a date earlier than that on which it was executed, and when this is done, the parties will be bound by such agreement.") (footnote omitted).

When contracting parties date their contract "as of" a certain date, it signifies the contract's effective date. *See, e.g.*, *Better Baked, LLC v. GJG Prop., LLC*, 2020 COA 51 ¶ 59; *Finley v. Atl. Richfield Co.*, 77 F.3d 492, 1996 WL 80380, at *2 (10th Cir. 1996).

5

These authorities underscore the meritlessness of plaintiffs' claim that there is any significance to the actual date the ARCU was signed. Particularly that is true where plaintiffs ultimately brought only a derivative action in which they are bound by CRCPS's actions, including its decision to enter into the ARCU and to make its effective date April 17, 2015. *See, e.g.*, *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 528 (1984) ("a derivative action allows a stockholder to step into the corporation's shoes and to seek in its right the restitution he could not demand in his own" and "such a stockholder brings suit on a cause of action derived from the corporation") (internal quotations omitted).

**Three,** plaintiffs' counsel *knew* by April 14, 2023, that CRCPS and SPO I orally had agreed on the principal terms of the ARCU well before the date it was signed. The series of emails exchanged by CRCPS and SPO I during the period 2015-February 2019 underscores not only the parties' intent to make the ARCU effective on April 17, 2015, but the reasons why: both CRCPS and SPO I had been proceeding under an oral agreement that ultimately was reduced to writing in the ARCU.

Plaintiffs' nondisclosure of the fact and substance of these emails does not reflect well on a party alleging ethics violations and presentation of "false" and "fabricated" evidence. By May 19, when the SPO Defendants filed their C.R.C.P. 11 Response, plaintiffs' counsel knew that the emails established beyond any doubt that in accordance with their oral agreement and controlling law, CRCPS and SPO I agreed to make the ARCU's effective date April 17, 2015. That plaintiffs' counsel nonetheless persisted in

6

pursuing its Notice and in failing to withdraw it call into question his compliance with Rule 11.

For these reasons, we object to the Notice.

June 14, 2023

                                        Respectfully submitted,

*s/ Ty Gee*
Ty Gee
Harold A. Haddon
Heather R. Hanneman
HADDON, MORGAN AND FOREMAN, P.C.
950 17th Street, Suite 1000
Denver, CO 80202
Tel 303.831.7364
tgee@hmflaw.com; hhaddon@hmflaw.com; hhanneman@hmflaw.com

*Attorneys for Defendants Solaris Property Owner, LLC, Solaris Property Owner I, LLC, and Peter Knobel*