| | |
|---|---|
| DISTRICT COURT, SECOND JUDICIAL DISTRICT<br>City and County of Denver, Colorado<br>1437 Bannock Street<br>Denver, CO 80202 | |
| **Plaintiffs:** YUQUAN NI, QI QIN, for themselves and similarly situated limited partners derivatively for Colorado Regional Center Project Solaris LLLP, a Nominal Defendant<br><br>v.<br><br>**Defendants:** SOLARIS PROPERTY OWNER I, LLC, and PETER KNOBEL<br><br>**Cross-Claim Defendant:** COLORADO REGIONAL CENTER PROJECT SOLARIS LLLP | |
| Ty Gee, #19772<br>Heather R. Hanneman, #22383<br>Delanie Grewe, #57423<br>Haddon, Morgan and Foreman, p.c.<br>950 17th Street, Suite 1000<br>Denver, CO 80202<br>Tel 303.831.7364<br>tgee@hmflaw.com; hhanneman@hmflaw.com; dgrewe@hmflaw.com<br><br>*Attorneys for Defendants Solaris Property Owner I, LLC, and Peter Knobel* | ▲COURT USE ONLY▲<br><br>No. 2021CV32918<br><br>Courtroom 203 |

## Defendants' Response to Plaintiffs' Motion for Sanctions under C.R.C.P. 11 re the ARCU's Signature Date

Defendants Solaris Property Owner I, LLC, and Peter Knobel, (collectively, "SPO Defendants") through their attorneys, submit this Response to plaintiffs' "Emergency Motion for Sanctions under C.R.C.P. 11 against SPO Defendants and Crossclaim Defendants for Misleading this Court with a Misrepresentation that the ARCU was signed in 2015 when it was actually signed in 2019 [sic]" (filed Apr. 28, 2023).

Ex.A to SPO Ds'
Objection to Notice

## Introduction

Plaintiffs move for "sanctions" to be imposed against the SPO Defendants and plaintiffs' own partnership CRCPS[1] over the signature date of the ARCU (attached as EXHIBIT A).[2] Their claim is the SPO Defendants and CRCPS in court filings said the ARCU was signed April 17, 2015, when in fact, the lawyers for the parties now have learned, it was signed in February 2019.

Plaintiffs' Motion is substantially groundless. **One**, as the Court has noted, plaintiffs' own counsel was the first to tell this Court that the ARCU was signed April 17, 2015. He then filed multiple other papers saying the same thing.

**Two,** it makes not a whit of difference when CRCPS and SPO I signed the ARCU. Contracting parties are free knowingly and voluntarily to set in the contract its effective date—for today, the past, or the future. It is their agreement. Here, they agreed to make the ARCU's effective date April 17, 2015—regardless when they signed it. That effective date tracks with the parties' actions on and before April 17, 2015, which the ARCU effectively memorialized.

**Three,** plaintiffs are *derivative* plaintiffs bringing an action on behalf of CRCPS. Plaintiffs do not claim that CRCPS—which was represented by a lawyer at all relevant

---

[1] Colorado Regional Center Project Solaris, LLLP.

[2] This is the abbreviation the parties have used for the Agreement Regarding Collateral Units.

times—lacked authority to make the ARCU effective as of April 17, 2015, or to sign the ARCU. That effective date is conclusive and binds both CRCPS and SPO I.

## Facts

**Plaintiffs were the first to assert the ARCU was signed April 17, 2015.** In September 2021 plaintiffs commenced this action. Paragraph 24 of the Complaint alleges CRCPS and SPO I "signed" the ARCU on April 17, 2015. *See* Compl. ¶ 24 (filed Sept. 15, 2021). Plaintiffs through their counsel thereafter asserted this statement in multiple filings. *See, e.g.*, Pls.' Notice of Related Case, Ex.3, at 9, 11 (filed Oct. 21, 2021); Pls.' Mot. for Summ. Judg. Repayment 2 ¶ 6 (filed Apr. 13 2022); Pls.' Mot. for Partial Summ. Judg. 2, 8 (filed Aug. 12, 2022).

On page 2 of their August 12, 2022 motion for partial summary judgment, plaintiffs' counsel wrote, "On April 17, 2015 . . . CRCPS and SPO I entered into [the ARCU] which [sic] speaks for itself."

The Court noted some of these assertions by the plaintiffs about the ARCU's signature date. *See* Order denying Plaintiffs' Req. for Hearing On Emergency Mot. (entered May 2, 2023).

**Counsel did not participate in the negotiation or execution of the ARCU.** SPO I on April 14, 2023, disclosed emails between SPO I's and CRCPS's respective counsel during the period 2015-2019. Based on these emails, all counsel now know the ARCU was physically signed in February 2019.

Plaintiffs commenced the federal lawsuit[3] in August 2019. Before August 2019, the counsel for the SPO Defendants never represented the SPO Defendants in connection with the ARCU and knew nothing about the ARCU. Upon information and belief, neither did CRCPS's litigation counsel, who made no appearance in the federal lawsuit. Upon information and belief, Attorney Litowitz represented plaintiffs and other limited partners for months before August 2019.

The court in the federal lawsuit stayed all disclosures and all discovery pending resolution of the defendants' motions to dismiss the lawsuit. *See* Doc.109, Scheduling Ord. § 5(d) (Dec. 16, 2019). No party made disclosures or engaged in discovery before the Court granted the motions to dismiss and ultimately dismissed the entire lawsuit.

**SPO I's election to repay the Loan with Collateral Units, and the negotiation and drafting of the ARCU.** As discussed in the SPO Defendants' summary judgment motion, which is incorporated here by reference, the Loan Agreement gave SPO I the "absolute right"—on or before the third anniversary of each Loan Advance—to repay any Advance with cash or by "tendering to [CRCPS]" the Collateral Unit securing each Advance. SPO Defs.' Mot. for Summ. Judg. 7 ¶ 18 (filed Nov. 28, 2022). Recital B of the ARCU says the same thing. ARCU, at IS_0000289 ("Borrower has the right to tender any Collateral Unit . . . to Lender in repayment of a corresponding Loan Advance").

---

[3] *Li v. Waveland Ventures, LLC*, No. 1:19-cv-02443-RM-STV (D. Colo.).

The third anniversary of the first Advance was April 18, 2015. ARCU, Recital E, at IS_0000290. Before the third anniversary of each Loan Advance, SPO I notified CRCPS that in lieu of cash it intended to tender as repayment to CRCPS the corresponding Unit securing the Advance. *Id.*, Recital C, at IS_0000290. Instead of accepting the Units as payment, CRCPS agreed it was "desirable for [SPO I] to continue to hold record title" to them. *Id.* Recital D, at IS_0000290.

The ARCU was consistent with the many dozens of emails exchanged between CRCPS's and SPO I's respective counsel during the period 2015-2019. (The Motion for Sanctions ignores these emails.) The emails show this evolution of events: In June 2015 CRCPS's representative Meagan Hayes wrote to SPO I's counsel Ryan Smith, "Do you have time either today or tomorrow to discuss transferring title on the *CRCPS units?*" (Emphasis supplied.) There were long delays as CRCPS investigated the cost of securing title insurance; explored setting up a limited liability company into which the Units would be transferred; negotiated with the Town of Vail to secure an exemption from its real estate transfer tax; negotiated and drafted documents (e.g., transfer agreement, warranty deeds) to facilitate the transfer of the units; engaged outside counsel to negotiate the terms of the transfer. *See* EXHIBIT B.[4]

---

[4]EXHIBIT B contains a voluminous compilation of emails exchanged between CRCPS and SPO I during the period 2015-2019. We regret the volume. However, it is necessary to provide the Court with these emails for two reasons. First, plaintiffs

(footnote cont'd on next page)

On March 2, 2016 the respective principals of SPO I and CRCPS's General Partner, CRC I, agreed to "hold off on actually transferring [the Units] until further notice but continue to perform as if the transfers happened on the respective 3-year Prepayment Dates." Exhibit B, at SPO_0000970. "The rationale is to save CRC potential transaction costs." *Id.* SPO I then prepared a proposed agreement—what ultimately was the first draft of the ARCU—on how CRCPS and SPO I would proceed with their verbal agreement for SPO I to continue to hold title to the Units. *Id.* at SPO_0000971-74. On March 15, 2016, CRCPS's counsel said CRCPS had changed its mind and "the plan will be to move ahead with the transfers as we initially intended." *Id.* at SPO_0000986-87. SPO I agreed. *Id.*

By September 2016, SPO I had signed transfer documents for all but one of the Collateral Units and closing on the transfer of the units was imminent. *Id.* at SPO_0002866. By April 2017, however, it is clear that CRCPS and SPO I had agreed to revert to having SPO I continue to hold title to the Units until CRCPS requested their

---

repeatedly have alleged—without any factual basis—that counsel for SPO Defendants have "misrepresented" or "misled" the Court in counsel's summary of documents. Second, plaintiffs completely ignored these emails in their Motion for Sanctions. But, third, the emails are critical to understanding what plaintiffs already know from reading them: Since 2015 both CRCPS and SPO I have agreed that SPO I timely and properly tendered the Units in repayment of Loan Advances. There *never has been a dispute* about this, and there couldn't be based on the voluminous emails establishing this.

transfer; in the meantime, the parties would act in accordance with the "existing oral agreement in regard to these matters." *See id.* at SPO_0003138-39.

In September 2017, in recognition that SPO I would continue to hold title to the Units, CRCPS's lawyer resumed negotiation and drafting of the ARCU; he revised the first draft of the ARCU that SPO I's lawyer first proposed in March 2016. *See id.* at SPO_0000971-74; SPO_0003616-26. From September 2017 until February 8, 2019, when SPO I signed the final ARCU, CRCPS and SPO I negotiated the ARCU's terms and traded drafts of the ARCU. *See, e.g.*, *id.* at SPO_0008652-54; SPO_0008734-35.

**Purported removal of CRCPS's General Partner.** As the Court is aware, plaintiffs claim the limited partners by a proxy vote "removed" CRCPS's General Partner. The purported proxy vote occurred on or about April 20, 2020.

## Argument

## No "sanctions" are warranted over the ARCU's effective date.

CRCPS and SPO I through their representatives signed the ARCU. Above these signatures, Messrs. Segerdahl and Smith on behalf of CRCPS and SPO I, respectively, said they "have executed this Agreement *as of* the date first above set forth." EXHIBIT A, at IS_0000294, 0000296 (emphasis supplied). The "date first above set

forth" refers to the date—April 17, 2015—in the first paragraph of the ARCU, which

provides:

---

*EXECUTION VERSION*

DATE FILED: January 10, 2023 4:06 PM
FILING ID: 5EF5DD53EC9A7
CASE NUMBER: 2023CV32918

**AGREEMENT REGARDING COLLATERAL UNITS**

This Agreement Regarding Collateral Units (this **"Agreement"**), dated as of the 17th day of April, 2015, is by and among **Colorado Regional Center Project Solaris, LLLP** (the **"Lender"** or **"CRCPS"**), a Colorado limited liability limited partnership, **Solaris Property Owner I, LLC** (**"Borrower"**), a Delaware limited liability company, and, with respect to Section 2 only, **P.B.K. Real Estate, LLC d/b/a Solaris Real Estate LLC** (**"Broker"**), a Colorado limited liability company.

---

That paragraph says the ARCU is "dated *as of* the 17th day of April, 2015 . . . by and

among" CRCPS and SPO I (emphasis supplied).

SPO I produced to plaintiffs on April 14, 2023, voluminous emails exchanged by

the lawyers for plaintiffs and CRCPS during the period 2015-2019. They are summarized

in the facts section, above. None of the lawyers who have appeared in this action was a

party to any of the emails. Prior to their engagement in September 2019, SPO I's litigation

counsel had no knowledge of the ARCU. Until shortly before the April 14 production of

the emails, they had no knowledge of the actual date the ARCU was physically signed. As

discussed in the facts section, we have no knowledge that either plaintiffs' counsel or

CRCPS's litigation counsel had any knowledge of the actual date it was physically signed.

Counsel for plaintiffs and defendants in this action—starting with Attorney

Litowitz—apparently had assumed the ARCU was signed April 17, 2015. Attorney

Litowitz asserted this assumption as a fact in the original Complaint and repeated this "fact" in subsequent filings. We made the same assumption.

In normal litigation, this would be considered an honest—and pedestrian—litigation mistake, the record would be clarified, and all parties would move on with the newly revealed fact. Here, however, plaintiffs in their glass house want to throw stones at the SPO Defendants. Even if plaintiffs had not created and occupied their own glass house, however, there would be no ground for sanctions.

1. The premise for plaintiffs' request for "sanctions" is their assumption that it is significant when the ARCU actually was physically signed, i.e., February 2019. That assumption is premised on another one—that the date the ARCU actually was signed controls when it was effective. Neither assumption is correct.

"Contracts between competent parties, voluntarily and fairly made, should be enforceable according to the terms to which they freely commit themselves." *Ravenstar, LLC v. One Ski Hill Place, LLC*, 2017 CO 83, ¶ 12 (internal quotations omitted). Accordingly, courts "must construe contracts in a way that best effectuates the intent of the parties and allows each party to receive the benefit of the bargain." *Id.*

Nothing prohibits two parties, represented by counsel, from signing a contract in which they agree the contract was effective on an earlier date. To the contrary, the courts explicitly have recognized that parties lawfully may backdate the effective date of a contract. *See, e.g.*, *Breckenridge Co. v. Swales Mgmt. Corp.*, 517 P.2d 476, 478 (Colo. App.

1973) ("The parties may agree that a written contract shall take effect at an earlier date than that on which it was executed."), *rev'd on other grounds*, 522 P.2d 737 (Colo. 1974); *Brewer v. Nat'l Sur. Corp.*, 169 F.2d 926, 928 (10th Cir. 1948) ("It is competent for the parties to agree that a written contract shall take effect as of a date earlier than that on which it was executed, and when this is done, the parties will be bound by such agreement.") (footnote omitted); *Int'l Hedge Grp. Inc. v. Bayne*, 2021 WL 6694739, at *9 (Colo. Dist. Ct., Boulder Cnty. Aug. 5, 2021) ("It is elemental that contracting parties may agree to give retroactive effect to their contracts as they may see fit. And, it is fundamental that where parties to an agreement expressly provide that a written contract be entered into as of an earlier date than that on which it was executed, the agreement is effective retroactively as of the earlier date and the parties are bound thereby.") (internal quotations and citation omitted; italics omitted).

In any case, CRCPS and SPO I in the ARCU did not say they signed the contract on April 17, 2015. They said repeatedly in the ARCU that the ARCU is "dated *as of* the 17th day of April, 2015." The "as of" language commonly is used to signify the *effective date* of a contract. *See, e.g.*, *Better Baked, LLC v. GJG Prop., LLC*, 2020 COA 51 ¶ 59; *Finley v. Atl. Richfield Co.*, 77 F.3d 492, 1996 WL 80380, at *2 (10th Cir. 1996); *see also Viacom Int'l Inc. v. Tandem Prods., Inc.*, 368 F. Supp. 1264, 1270 (S.D.N.Y. 1974) ("When a written contract provides that it shall be effective 'as of' an earlier date, it generally is

retroactive to the earlier date."), *aff'd*, 526 F.2d 593 (2d Cir. 1975) (citing *Mutual Life Ins. Co. v. Hurni Packing Co.*, 263 U.S. 167, 175-76 (1923)).

The series of emails exchanged by CRCPS and SPO I during the period 2015-2019—some of which is included in Exhibit B—underscores not only the parties' intent to make the ARCU effective on April 17, 2015, but the reasons why: both CRCPS and SPO I had been proceeding under a verbal agreement that ultimately was reduced to writing, i.e., the ARCU. For example, they had agreed by April 2015 that SPO I had tendered to CRCPS Collateral Units corresponding to each Loan Advance before the third anniversary of each such Advance. *See* ARCU, Recital C, at IS_0000290. The emails show that SPO I at all relevant times was ready, willing and able to transfer the Units. *See, e.g.*, Exhibit B, at SPO_0000400, 0001069, 0001071.

The first draft of the ARCU was exchanged in February 2016, when CRCPS and SPO I initially decided *not* to go through with the actual transfer of title "to save CRC potential transaction costs," *Id.* at SPO_0000970, SPO_0000971-74. They stopped working on drafting the ARCU when CRCPS decided it *did* want to have the units transferred immediately. *See id.* at SPO_0000986-87.

2. It is legally irrelevant *when* the ARCU was actually physically signed. **One**, as discussed above, parties are free to agree on any effective date. CRCPS admits it signed the ARCU (via its General Partner) and agreed it is *effective as of "the 17th day of April, 2015."* Notably, from April 2015 through February 2019, not even plaintiffs contend the

General Partner lacked authority to sign for and bind CRCPS. Plaintiffs claim the limited partners removed the General Partner in April 2020, *fourteen months after CRCPS signed the ARCU.*

**Two,** as the ARCU acknowledges, SPO I timely notified CRCPS by April 17, 2015, that SPO I was electing to exercise its "absolute right"[5] to repay with Collateral Units. *Plaintiffs failed to disclose in their sanctions motion* the multitude of emails continuously exchanged from 2015 to February 2019 between CRCPS and SPO I's respective in-house counsel discussing how and when SPO I would transfer the Collateral Units to CRCPS to repay the Loan Advances. E.g., on June 4, 2015, a CRCPS representative, Hayes, emailed an SPO I representative: "Hi Mike, . . . Do you have time either today or tomorrow to discuss *transferring title on the CRCPS units*?" Exhibit B, at SPO_0000400 (emphasis supplied). There are emails explicitly stating that CRCPS and SPO I are operating under a verbal agreement consistent with the ARCU. *See, e.g.*, *id.* at SPO_0000970-74, SPO_0000986, SPO_0003138-40, SPO_0003616-26. In later emails CRCPS discussed delaying the transfer, going through with the transfer, and ultimately deferring the transfer pursuant to the ARCU.

Plaintiffs' nondisclosure of the fact and substance of these emails does not reflect well on a party seeking "sanctions" against its opponent for "misrepresentations" and

---

[5]Defs.' Mot. for Summ. Judg., Ex.D ¶ 11 at IS_0000017 (filed Nov. 28, 2022).

"falsehoods." With all due respect, it is improper for plaintiffs to claim the SPO Defendants committed "willful document fraud," "misle[d] the Court" and "misrepresented" the facts relating to the ARCU's actual date of signature while failing (a) to disclose the multitude of emails showing how the parties—since 2015—had operated under an oral agreement entirely consistent with the ARCU, and (b) to acknowledge that parties legally are free to "agree that a written contract shall take effect at an earlier date than that on which it was executed," *Breckenridge Co.*, 517 P.2d at 478.

**Three,** more fundamentally, plaintiffs forget the nature of their lawsuit. They have brought a *derivative* lawsuit on behalf of CRCPS for breach of contract against SPO I. Plaintiffs *are bound by CRCPS's actions and admissions.*[6] CRCPS admits—and therefore plaintiffs necessarily admit—(a) CRCPS signed the ARCU, and (b) CRCPS agreed to make its effective date April 17, 2015. Far from "destroy[ing]" SPO Defendants' defense, the ARCU's effective date of April 17, 2015—regardless when it was signed— compellingly *establishes* their defense via the ARCU. In the ARCU CRCPS authorized SPO I to continue to hold title to the Collateral Units and agreed explicitly that the

---

[6] *See, e.g.*, *Preferred Prof'l Ins. Co. v. The Doctors Co.*, 2018 COA 49 ¶ 17 (insurer's subrogation rights are "derivative of the rights of the insured" and insurer thus "'stand[s] in the shoes of the insured' for all legal purposes"); *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 528 (1984) ("a derivative action allows a stockholder to step into the corporation's shoes and to seek in its right the restitution he could not demand in his own" and "such a stockholder brings suit on a cause of action derived from the corporation") (internal quotations omitted).

transfer of Collateral Units after the respective Maturity Dates is not a Loan default.

ARCU § 1. This is why CRCPS has said this derivative action is "meritless."[7]

## Conclusion

The court should deny the Motion for Sanctions.

---

[7]CRCPS's Resp. to SPO Defs.' Mot. for Summ. Judg. 2, 8 (filed Dec. 27, 2022).

May 19, 2023

Respectfully submitted,

*s/ Ty Gee*

Ty Gee, #19772
Heather R. Hanneman, #22383
Delanie Grewe, #57423
HADDON, MORGAN AND FOREMAN, P.C.
950 17th Street, Suite 1000
Denver, CO 80202
Tel 303.831.7364
tgee@hmflaw.com; hhanneman@hmflaw.com;
dgrewe@hmflaw.com

*Attorneys for Defendants Solaris Property Owner I, LLC, and Peter Knobel*

## Certificate of Service

I certify that on May 19, 2023, I electronically filed the foregoing *Defendants' Response to Plaintiffs' Motion for Sanctions under C.R.C.P. 11 re the ARCU's Signature Date* with the Clerk of Court via the Colorado Courts E-filing system, which will send notification of such filing to all parties of record.

*s/ Nikki Chappelle*

**EXECUTION VERSION**
DATE FILED: January 10, 2023 4:06 PM
FILING ID: 5EF5DD53EC9A7

**AGREEMENT REGARDING COLLATERAL UNITS** V32918

This Agreement Regarding Collateral Units (this "**Agreement**"), dated as of the 17th day of April, 2015, is by and among **Colorado Regional Center Project Solaris, LLLP** (the "**Lender**" or "**CRCPS**"), a Colorado limited liability limited partnership, **Solaris Property Owner I, LLC** ("**Borrower**"), a Delaware limited liability company, and, with respect to Section 2 only, **P.B.K. Real Estate, LLC d/b/a Solaris Real Estate LLC** ("**Broker**"), a Colorado limited liability company.

<u>Recitals</u>

A.      Reference is hereby made to that certain Promissory Note dated April 18, 2012, executed by Borrower, as assignee of Solaris Property Owner, LLC, a Delaware limited liability company ("**Original Borrower**") pursuant to that certain Assignment of Loan Agreement dated October 12, 2011 by and between Original Borrower and Borrower, and payable to the order of Lender ("**Lender**") in the original maximum principal amount of One Hundred Million and No/100 Dollars ($100,000,000.00), as amended by that certain Allonge to Promissory Note dated of even date therewith by and between Borrower and Lender (as amended through the date hereof and as the same may be further amended, restated, replaced, supplemented, or otherwise modified from time to time, collectively the "**Note**"), Borrower has become indebted to Lender with respect to a loan ("**Loan**") made pursuant to that certain Loan Agreement dated November 5, 2010 between Original Borrower and Lender (as amended through the date hereof and as the same may be further amended, restated, replaced, supplemented, or otherwise modified from time to time, the "**Loan Agreement**"), which Loan is secured by one or more Deeds of Trust recorded against the Collateral Units in the real property records of Eagle County, Colorado (as amended through the date hereof and as the same may be further amended, restated, replaced, supplemented, or otherwise modified from time to time, each a "**Deed of Trust**" and collectively, the "**Deeds of Trust**"), and further evidenced, secured or governed by other instruments and documents executed in connection with the Loan, including, but not limited to (i) that certain Operating Payment Agreement dated November 5, 2010 by and between Borrower, as successor in interest to Original Borrower, and Lender (the "**Operating Payment Agreement**"), (ii) that certain Yield Enhancement Agreement dated November 5, 2010 by and between Borrower and Lender, (iii) that certain Memorandum of Understanding dated April 1, 2011 by and between Borrower, as successor in interest to Original Borrower, and Lender (the "**MOU**"), and (iv) that certain Guaranty Agreement dated April 18, 2012 by Peter Knobel for the benefit of Lender (the "**Guaranty**"), and as such loan documents were amended pursuant to that certain Omnibus Amendment to EB-5 Investment Documents dated March 8, 2012 by and between Original Borrower and Lender (the "**Omnibus Amendment**") (such other instruments and documents, Operating Payment Agreement, MOU, Guaranty, and Omnibus Amendment, together with the Note, the Loan Agreement and Deeds of Trust, as amended through the date hereof and as the same may be further amended, restated, replaced, supplemented, or otherwise modified from time to time, collectively, the "**Loan Documents**"). All capitalized terms used but not otherwise defined herein shall have the meaning set forth in the Loan Documents.

B.      Pursuant to the Loan Documents, Borrower has the right to tender any Collateral Unit (as defined therein) to Lender in repayment of a corresponding Loan Advance commencing

{00316124.DOCX / 1}

on the applicable Prepayment Date, as more particularly set forth in the Loan Documents (each, a **"Collateral Unit Distribution"**).

C. Borrower has duly notified Lender that it intends to cause the occurrence of a Collateral Unit Distribution with respect to each of the Collateral Units on the applicable Prepayment Date. From and after the Prepayment Date for a Collateral Unit, such Collateral Unit may hereinafter be referred to each as an **"Eligible Unit"** and collectively as the **"Eligible Units."**

D. In lieu of accepting the conveyance of title to the Eligible Units pursuant to a Collateral Unit Distribution, the Lender and Borrower have determined that it is desirable for Borrower to continue to hold record title to the Eligible Units.

E. The effective date of each Collateral Unit Distribution is as follows:

| Unit | Note Date | Effective Date of Collateral Unit Distribution |
|---|---|---|
| 6E West | April 18, 2012 | April 17, 2015 |
| 2A South | April 25, 2012 | April 24, 2015 |
| Penthouse E West | May 3, 2012 | May 2, 2015 |
| 6E East | May 30, 2012 | May 29, 2015 |
| Penthouse E East | June 15, 2012 | June 14, 2015 |
| 5E West | August 2, 2012 | August 1, 2015 |
| 4G West | August 24, 2012 | August 23, 2015 |
| 7E West | September 7, 2012 | September 6, 2015 |
| Penthouse C East | September 13, 2012 | September 12, 2015 |
| 6D East | October 2, 2012 | October 1, 2015 |
| 5C West | November 6, 2012 | November 5, 2015 |
| 6C West | November 27, 2012 | November 26, 2015 |
| 5G West | January 24, 2013 | January 23, 2016 |
| 3E East | January 29, 2013 | January 28, 2016 |
| 7E East | January 30, 2013 | January 29, 2016 |
| 4D East | March 6, 2013 | March 5, 2016 |
| Penthouse G West | May 20, 2013 | May 19, 2016 |
| Penthouse C West | May 30, 2013 | May 29, 2016 |
| 3C East | January 30, 2015 | January 29, 2018 |

F. Borrower has agreed to temporarily refrain from conveying title to the Eligible Units to Lender pursuant to a Collateral Unit Distribution on the condition that, for purposes of calculating interest under the Loan Documents, Borrower shall be deemed to have caused a Collateral Unit Distribution as of the Prepayment Date corresponding to each Eligible Unit and associated Loan Advance.

The parties desire to set forth their mutual understanding concerning certain matters related to the listing and sale of the Eligible Units as more particularly described below.

IS  0000290

<u>**Agreement**</u>

Now, therefore, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Lender and Borrower agree as follows:

1.     <u>Collateral Unit Distribution</u>. For purposes of calculating interest (including any default interest) under the Loan Documents, with respect to each Eligible Unit and associated Loan Advance, Borrower shall be deemed to have caused a Collateral Unit Distribution as of the corresponding "Effective Date of Collateral Unit Distribution" set forth in <u>Recital E</u> above. Notwithstanding the occurrence of a Collateral Unit Distribution with respect to an Eligible Unit and anything in the Loan Documents to the contrary, the principal amount of the associated Loan Advance shall continue to constitute Indebtedness under the Loan; provided, however, (i) no interest (including default interest) shall accrue with respect to such Loan Advance from and after the applicable Effective Date of Collateral Unit Distribution (except as required by the Operating Payment Agreement) and (ii) in the event that a Loan Advance remains outstanding after the applicable Maturity Date, no default or Event of Default shall be deemed to have occurred as a result of a failure of Borrower to repay such Loan Advance on or before such Maturity Date, and Lender may not exercise any rights or remedies with respect to a default or Event of Default, unless and until it shall have provided Borrower with a notice and cure period in accordance with Section 17 of the Loan Agreement.

2.     <u>Listing of Eligible Units</u>.

a.     Upon Lender's written request, Lender may authorize Borrower to enter into certain Listing Agreements with its affiliate, P.B.K. Real Estate, LLC, a Colorado limited liability company (d/b/a Solaris Real Estate, LLC) ("**Broker**") to market an Eligible Unit(s) for sale for a total commission of five percent (5%) and on such other terms and conditions as are set forth in the Exclusive Right-To-Sell Listing Contract attached hereto as <u>Exhibit B</u> (each, a "**Listing Agreement**" and the Eligible Unit to which it pertains, a "**Listed Unit**"). The term of the Listing Agreement shall be defined therein. In no event shall Lender, Borrower, or Broker be obligated to enter into a Listing Agreement. The Listing Agreement shall provide that either party has the right to terminate the Listing Period (as defined in the Listing Agreement) upon ten (10) day's written notice to the other. Upon Lender's written request, Borrower shall exercise its right to terminate the Listing Period on the date set forth in Lender's written request that is no sooner than ten (10) days from the date of Borrower's receipt of such notice.

b.     Upon Closing on a Listed Unit, Broker agrees to pay to Lender an amount equal to fifty percent (50%) of the Sale Commission (as defined in the Listing Agreement), net of any Cooperative Broker Compensation (as defined in the Listing Agreement), earned by Broker from the sale of such Listed Unit.

c.     Borrower agrees that Lender shall have authority to make all decisions otherwise granted to Borrower in a Listing Agreement and Borrower shall consult Lender on all matters pertaining to the sale of the Eligible Units.

IS_0000291

      d.    Upon Lender's written request, Lender may authorize Borrower to enter into listing or co-listing agreements with third-party real estate brokers to market Eligible Unit(s). In no event shall Lender or Borrower be obligated to enter into such a listing agreement. Borrower agrees that Lender shall have authority to make all decisions otherwise granted to Borrower in such listing agreement and Borrower shall consult Lender on all matters pertaining to the sale of the Eligible Units.

      3.    <u>Listing of Borrower's Units</u>. During the Listing Period (as defined in the Listing Agreement) for a Listed Unit, Borrower agrees that it will not cause Broker or any other third-party real estate broker to initiate an MLS listing for the sale of any residential unit in Solaris that is owned by Solaris Property Owner, LLC, a Delaware limited liability company, Solaris Property Owner II, LLC, a Delaware limited liability company, or other related entities other than Borrower (collectively, the **"Affiliated Solaris Owners"**) and (ii) is like-kind to an Eligible Unit. Borrower also agrees that any like-kind units owned by the Affiliated Solaris Owners that are currently listed on MLS shall be removed.

      4.    <u>Conveyance of Eligible Units.</u>

      a.    <u>Sale to Third-Party</u>. In the event that Borrower enters into a contract for the purchase and sale of an Eligible Unit that is approved by Lender (a "<u>Purchase Agreement</u>"), Borrower and Lender shall promptly execute and deliver to the other party a Transfer Agreement with respect to such Eligible Unit substantially in the form attached hereto as <u>Exhibit A</u> (each, a "<u>Transfer Agreement</u>"). The Closing Date under the Transfer Agreement shall be the date set forth in the Purchase Agreement.

      b.    <u>Tender to Lender</u>. In the event that Borrower notifies Lender in writing that it intends to tender or otherwise convey any Eligible Unit to Lender or Lender notifies Borrower in writing that an Eligible Unit is to be tendered or otherwise conveyed to Lender, Borrower and Lender shall promptly execute and deliver to the other party a Transfer Agreement with respect to such Eligible Unit substantially in the form of the Transfer Agreement attached hereto as <u>Exhibit A</u>. The Closing Date under the applicable Transfer Agreement shall be the date set forth in the notice from Borrower to Lender that it intends to tender or otherwise convey the Eligible Unit to Lender or notice from Lender to Borrower that requests than the Eligible Unit be tendered or otherwise conveyed to Lender, as the case may be.

      c.    <u>Tender to Limited Partners of the Lender.</u> In the event that Lender notifies Borrower and instructs Borrower to enter into a contract for the sale or conveyance of an Eligible Unit to an individual limited partner or group of limited partners of the Lender, the parties agree that any Sale Commission shall be waived.

      5.    <u>MISCELLANEOUS</u>. This Agreement represents the entire and complete agreement between the parties. The Amendment shall not be amended or modified, except by an instrument in writing, signed by all parties. All terms and provisions hereof shall inure to the benefit of, and being binding upon the parties, and their respective successors and assigns. Wherever used in this Agreement, the singular shall include the plural, and the masculine shall include the feminine and neuter grammatical forms. Captions are included for convenient

IS_0000292

reference only, and shall not be construed to alter or affect any terms or provisions of this Agreement. This Agreement has been executed by the parties after discussions and negotiation, and shall be construed as having been drafted by both parties. If any term of this Agreement is held to be invalid or unenforceable, such term shall be construed as being valid and enforceable to the fullest extent permitted by law, and all remaining terms shall remain full force and effect. This Agreement shall be construed and enforced in accordance with the laws of the State of Colorado. Each party hereto waives all right to trial by jury in any action, proceeding or counterclaim arising out of or relating to this Agreement or any related document. If a party initiates any action to enforce or interpret this Agreement, the party determined by the court or arbiter, as the case may be, to be the prevailing party in such action will be entitled to receive from the non-prevailing party all reasonable costs and expenses, including all reasonable attorneys' fees incurred by the prevailing party in such action. This Agreement may be executed in electronic or facsimile counterparts, each of which when so executed shall be deemed to be an original, and all of which when taken together shall constitute one original signed agreement.

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, Borrower and Lender have executed this Agreement as of the date first above set forth.

BORROWER:

SOLARIS PROPERTY OWNER I, LLC,
a Delaware limited liability company

By: _____
     Ryan A. Smith, its Authorized Signatory

LENDER:

COLORADO REGIONAL CENTER PROJECT SOLARIS, LLLP,
a Colorado limited liability limited partnership

By: _____
Name: _____ Jaxen Segerdahl _____
Its: _____ Manager _____

With respect to Section 2 only.

BROKER:

P.B.K. REAL ESTATE, LLC d/b/a SOLARIS REAL ESTATE LLC,
a Colorado limited liability limited partnership

By: _____
Name: _____
Its: _____

{00316124.DOCX / 1}                    6

IN WITNESS WHEREOF, Borrower and Lender have executed this Agreement as of the date first above set forth.

BORROWER:

SOLARIS PROPERTY OWNER I, LLC,
a Delaware limited liability company


By: _____
      Ryan A. Smith, its Authorized Signatory


LENDER:

COLORADO REGIONAL CENTER PROJECT SOLARIS, LLLP,
a Colorado limited liability limited partnership

By: _____
Name: _____
Its: _____

With respect to Section 2 only.

BROKER:

P.B.K. REAL ESTATE, LLC d/b/a SOLARIS REAL ESTATE LLC,
a Colorado limited liability limited partnership

By: _____
Name: _____
Its: _____

IS_0000295

IN WITNESS WHEREOF, Borrower and Lender have executed this Agreement as of the date first above set forth.

BORROWER:

SOLARIS PROPERTY OWNER I, LLC,
a Delaware limited liability company

By: _____
Ryan A. Smith, its Authorized Signatory

LENDER:

COLORADO REGIONAL CENTER PROJECT SOLARIS, LLLP,
a Colorado limited liability limited partnership

By: _____
Name: _____
Its: _____

With respect to Section 2 only.

BROKER:

P.B.K. REAL ESTATE, LLC d/b/a SOLARIS REAL ESTATE LLC,
a Colorado limited liability limited partnership

By: _____
Name: _____
Its: _____

IS_0000296

## EXHIBIT A

### FORM OF TRANSFER AGREEMENT

(Attached)

IS_0000297

## TRANSFER AGREEMENT

This TRANSFER AGREEMENT (this "**Agreement**") is executed this _____ day of _____, 20___, by and between SOLARIS PROPERTY OWNER I, LLC, a Delaware limited liability company ("**Borrower**") and COLORADO REGIONAL CENTER PROJECT SOLARIS, LLLP, a Colorado limited liability limited partnership ("**Lender**")

### Recitals

A.    Reference is hereby made to that certain Promissory Note dated April 18, 2012, executed by Borrower, as assignee of Solaris Property Owner, LLC, a Delaware limited liability company ("**Original Borrower**") pursuant to that certain Assignment of Loan Agreement dated October 12, 2011 by and between Original Borrower and Borrower, and payable to the order of Lender ("**Lender**") in the original maximum principal amount of One Hundred Million and No/100 Dollars ($100,000,000.00), as amended by that certain Allonge to Promissory Note dated of even date therewith by and between Borrower and Lender (as amended through the date hereof and as the same may be further amended, restated, replaced, supplemented, or otherwise modified from time to time, collectively the "**Note**"), Borrower has become indebted to Lender with respect to a loan ("**Loan**") made pursuant to that certain Loan Agreement dated November 5, 2010 between Original Borrower and Lender (as amended through the date hereof and as the same may be further amended, restated, replaced, supplemented, or otherwise modified from time to time, the "**Loan Agreement**"), which Loan is secured by one of more Deeds of Trust recorded against the Collateral Units in the real property records of Eagle County, Colorado (as amended through the date hereof and as the same may be further amended, restated, replaced, supplemented, or otherwise modified from time to time, each a "**Deed of Trust**" and collectively, the "**Deeds of Trust**"), and further evidenced, secured or governed by other instruments and documents executed in connection with the Loan, including, but not limited to (i) that certain Operating Payment Agreement dated November 5, 2010 by and between Borrower, as successor in interest to Original Borrower, and Lender (the "**Operating Payment Agreement**"), (ii) that certain Memorandum of Understanding dated April 1, 2011 by and between Borrower, as successor in interest to Original Borrower, and Lender (the "**MOU**"), and (iii) that certain Guaranty Agreement dated April 18, 2012 by Peter Knobel for the benefit of Lender (the "**Guaranty**"), and as such loan documents were amended pursuant to that certain Omnibus Amendment to EB-5 Investment Documents dated March 8, 2012 by and between Original Borrower and Lender (the "**Omnibus Amendment**") (such other instruments and documents, Operating Payment Agreement, MOU, Guaranty, and Omnibus Amendment, together with the Note, the Loan Agreement and Deeds of Trust, as amended through the date hereof and as the same may be further amended, restated, replaced, supplemented, or otherwise modified from time to time, collectively, the "**Loan Documents**"). All capitalized terms used but not otherwise defined herein shall have the meaning set forth in the Loan Documents.

B.    Pursuant to that certain Agreement Regarding Collateral Units dated April 17, 2015, by and between Borrower and Lender, Borrower and Lender desire to provide for the conveyance of Collateral Unit _____ (the "**Tendered Unit**") from Borrower to Lender or its designee in full or partial satisfaction of that certain Loan Advance made _____, 20___ in the initial principal amount of $_____ against the Tendered Unit (the "**Tendered Unit**

{00316124.DOCX / 1}

Loan Advance"), as more particularly set forth on <u>Exhibit A</u> of the Note. The initial principal amount of the Tendered Unit Loan Advance together with all accrued interest and other amounts due from Borrower to Lender under the Loan Documents in connection with the Tendered Unit or Tendered Unit Loan Advance is hereafter referred to as the "**Tendered Unit Indebtedness.**" The legal description of the Tendered Unit is set forth in the Deed (as defined below).

**Agreement**

Now, therefore, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Lender and Borrower agree as follows:

1.    <u>Acknowledgments.</u>  The parties hereto each affirm the foregoing Recitals and reincorporate them herein as covenants.

  a.    Borrower further acknowledges that:

   i.    This Agreement is entered into without force or duress and as an act of the free will of Lender and Borrower, and the transfers of the Tendered Unit and Personal Property (defined below) to Lender or its designee are voluntary and absolute conveyances given with all knowledge of the circumstances;

   ii.    The satisfaction of the Tendered Unit Indebtedness under the Loan Documents, as more particularly described below, constitutes good, adequate and valuable consideration for the conveyance of the Tendered Unit and Personal Property to Lender or its designee;

   iii.    Upon conveyance of the Tendered Unit and Personal Property to Lender or its designee, Borrower will have no rights with respect to the Tendered Unit or Personal Property, including, without limitation, rights of redemption, rights to cure or reinstatement under the Colorado Revised Statutes, as they may be amended from time to time, or under any other applicable law;

   iv.    Borrower will hereafter be estopped from asserting any claim or right of redemption as to the Tendered Unit or Personal Property; and

   v.    Upon conveyance of the Tendered Unit and Personal Property to Lender or its designee, Borrower has no equity in the Tendered Unit or Personal Property.

  b.    Lender further acknowledges that:

   i.    This Agreement is entered into without force or duress and as an act of the free will of Lender and Borrower, and the releases and satisfactions given to Borrower are voluntary and absolute releases and satisfactions given with all knowledge of the circumstances;

{00316124.DOCX / 1}    2

ii.      The transfer of the Tendered Unit and Personal Property, as more particularly described below, constitutes good, adequate and valuable consideration for the releases and satisfactions granted to Borrower hereunder;

iii.      Upon conveyance of the Tendered Unit and Personal Property to Lender or its designee, Lender will have no rights with respect to the Tendered Unit Indebtedness except for any Remaining Loan Advance (as defined below); and

iv.      If the Tendered Unit and Personal Property are conveyed to Lender, Lender accepts the Tendered Unit and Personal Property "as is" and "where is" in its condition on the date of Closing subject only to the express provisions of this Agreement.

2.      Conveyance of Tendered Unit

a.      Conveyance to Lender.  If a Tendered Unit is conveyed to Lender, then on or before the Closing Date (as defined in Section 4 below), Borrower will execute and deliver to Lender a special warranty deed for the Tendered Unit in the form attached hereto as **Exhibit "A"** (the "**Deed**").  Upon delivery of the Deed for the Tendered Unit from Borrower to Lender, the Tendered Unit will be subject only to (A) those encumbrances and exceptions to title, if any, (i) listed in Schedule B attached to the Deed, (ii) listed in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with the Tendered Unit, or (iii) arising by, through or under Lender, and (B) the Deed of Trust (collectively, the "**Permitted Exceptions**").

b.      Conveyance to Lender's Designee.  If a Tendered Unit is conveyed to a designee (i.e., unrelated third-party) of Lender, the form of the deed shall be in form reasonably acceptable to Borrower, Lender, and Lender's designee but in no event shall Borrower be obligated to convey greater rights in a Tendered Unit to a designee of Lender than it would otherwise be required to convey to Lender pursuant to Section 2.a. above.

3.      Conveyance of Personal Property.  On or before the Closing Date, Borrower will execute and deliver to Lender or its designee a bill of sale in the form attached hereto as **Exhibit "B"** (the "**Bill of Sale**") or such other form as the parties may hereafter mutually agree, conveying all personal property owned by Borrower and used in connection with the ownership, development, maintenance and operation of the Tendered Unit ("**Personal Property**"), which is described with more detail in the Bill of Sale, free and clear of all liens and claims arising by, through or under Borrower.

4.      Closing Date. The "**Closing Date**" shall mean _____, 20__. "**Closing**" shall be deemed to have occurred upon delivery of the Deed and Bill of Sale from Borrower to Lender or upon delivery of a deed and Bill of Sale to Lender's designee in form provided in Section 2.b. above.

5.      Real Property Taxes. Lender or its designee shall be solely responsible for payment of all real property taxes and assessments on the Tendered Unit for the year of closing and

IS_0000300

subsequent years, provided any amounts for property taxes and assessments pre-paid by Lender to Borrower for the Tendered Unit for the year of Closing shall be credited to Lender at Closing.

6.      Closing Costs; Net Proceeds. Lender and/or its designee shall pay (i) any escrow agent's fee, (ii) any applicable transfer or recording taxes, (iii) any costs incurred in recording the Deed or any other instruments, (iv) any title insurance premiums, (v) any brokerage commissions, and (vii) any other costs customarily paid by a transferee of real property in Eagle County, Colorado. Any net proceeds resulting from a sale of a Tendered Unit to a third-party shall be paid to Lender at Closing. Each party shall pay their own attorneys' fees.

7.      Satisfaction of Loan Advance. Effective upon Closing and subject to Section 12 below: (i) the Tendered Unit Indebtedness shall be paid, satisfied, discharged and released in an amount equal to $_____ (the "Satisfaction Amount") (ii) the principal balance of the Note shall be reduced by the Satisfaction Amount, (iii) the Loan Documents shall be deemed to be amended by deleting all references to the Tendered Unit and/or Tendered Unit Loan Advance, and (v) all security interests, mortgages (including the Deed of Trust), guaranties (including the Guaranty), pledges and other liens granted to or held by Lender and any other secured parties under the security documents with respect only to the Tendered Unit and Tendered Unit Indebtedness shall be forever satisfied, released and discharged without further action by the parties. Any difference between the Satisfaction Amount and the Tendered Unit Indebtedness is hereinafter referred to as the "**Remaining Loan Advance.**" Notwithstanding anything herein to the contrary, the Remaining Loan Advance shall continue to constitute Indebtedness under the Loan; provided, however, in no event shall interest (including default interest) accrue on the Remaining Loan Advance. The Remaining Loan Advance shall be deemed to have been paid, satisfied, discharged and released upon the earlier to occur of Borrower's conveyance of the final Collateral Unit to Lender or its designee or the date on which all other Loan Advances, excluding any Remaining Loan Advances, are satisfied in full or deemed satisfied in full. The provisions of this Section 7 shall survive Closing.

8.      Mutual Releases.

        a.      Release of Lender.  Effective upon Closing, subject to Section 12 below, Borrower, and its affiliates, general partners, limited partners, employees, managers, members, and other representatives and agents, hereby, unconditionally and forever discharge and release Lender, its affiliates, designees, general partners, limited partners, employees, attorneys, lenders, and other representatives from any and all claims and/or liabilities of every nature and kind, whether known or unknown, arising out of or related to the Tendered Unit and/or Tendered Unit Loan Advance, except for claims against Lender which may arise from a breach of this Agreement or the documents executed in connection herewith.  Nothing in this release shall be meant to release the Lender from the obligations and rights stated in this Agreement. The provisions of this Section 8.a. shall survive Closing.

        b.      Release of Borrower. Effective upon Closing, subject to Section 12 below, Lender, and its affiliates, general partners, limited partners, employees, managers, members, and other representatives and agents, hereby, unconditionally and forever

IS_0000301

discharge and release Borrower, its affiliates, designees, general partners, limited partners, employees, attorneys, lenders, and other representatives from any and all claims and/or liabilities of every nature and kind, whether known or unknown, arising out of or related to the Tendered Unit and/or Tendered Unit Loan Advance, except for (i) the Remaining Loan Advance, if any, and (ii) claims against Borrower which may arise from a breach of this Agreement or the documents executed in connection herewith. Nothing in this release shall be meant to release the Borrower from the obligations and rights stated in this Agreement. The provisions of this <u>Section 8.b.</u> shall survive Closing.

9.      <u>Representations and Warranties of Borrower.</u>  Borrower hereby represents and warrants to Lender, as of the date hereof and Closing, as follows:

a.      Borrower owns good, marketable and fee simple title in the Tendered Unit and the Personal Property, free and clear of any and all liens, security interests, charges and encumbrances, except for the Permitted Exceptions;

b.      Borrower does not have any knowledge of any material physical, structural, mechanical or electrical defect affecting any of the Personal Property and/or the improvements attached to or made a part of the Tendered Unit;

c.      Borrower is not currently insolvent, and none of Borrower's property is subject to any bankruptcy proceedings, assignment for benefit of creditors or similar proceedings, nor has Borrower committed any act of bankruptcy;

d.      To the knowledge of Borrower and except as otherwise set forth in any reports delivered from Borrower to Lender, (i) there are no and have never been any Hazardous Materials (as that term is defined below) located, generated or stored in, on or under the Tendered Unit in violation of any Hazardous Materials laws, (ii) Borrower has received no notice of any violation or claim of violation of any law, rule, ordinance or regulation relating to any Hazardous Materials.  Borrower hereby warrants and represents that it has not taken any measures to remove, clean-up or abate any Hazardous Materials at the Tendered Unit.  As used in this subparagraph, the term **"Hazardous Materials"** shall include any substance, liquid or gas in any quantity or manner which violates any Hazardous Materials laws:

(1)      the presence of which requires investigation or remediation under any federal, state or local statute, regulation, ordinance, order, action, policy or common law; or

(2)      which is defined as a hazardous waste, hazardous substance, pollutant or contaminant under any federal, state or local statute, regulation, rule or ordinance, including, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act; or

(3)      which is toxic, explosive, corrosive, flammable, infectious, radioactive, mutenogenic, or otherwise hazardous or toxic and is regulated by any

IS_0000302

government or authority, agency, department, commission, board, agent or instrumentality of the United States, the state where the Tendered Unit is located, or any political subdivision thereof; or,

       (4)    the presence of which in the Tendered Unit causes or threatens to a cause a nuisance upon the Tendered Unit or to adjacent properties, or which poses a hazard to the health or safety of personas on or about the Tendered Unit. Without limiting the generality of the foregoing, the term "Hazardous Materials" shall include asbestos, gasoline, diesel fuel, petroleum hydrocarbons, polychlorinated biphenyls (PCBs), urea formaldehyde foam insulation and radon gas.

       e.    Borrower has not incurred any obligations to any real estate broker or sales person or similar party for the payment of a commission, fee or similar charge in connection with the conveyance of the Tendered Unit and/or the Personal Property;

       f.    There are no leases, subleases, tenancies, occupancy agreements or other agreements granted by Borrower to any party other than Lender for the possession or use of all or any portion of the Tendered Unit or the Personal Property ("**Leases**"), except those Leases attached hereto as **Exhibit "C"**. At Closing, Borrower shall deliver to Lender or its designee any and all original Leases, and, if applicable, Borrower shall execute the Assignment and Assumption of Lease and Rents, in the form attached hereto as **Exhibit "D,"** conveying all of Borrower's right, title and interest in, to and under any Leases, including, without limitation any and all rents prepaid as of the Closing and security deposits held by Borrower in connection with the Leases (the "**Rent**"). At Closing, Borrower shall deliver the Rent to Lender or its designee (to the extent not previously delivered to Lender or its designee);

       g.    Borrower warrants that there are no other deposits or prepaid rental arrangements with any tenants or occupants of the Tendered Unit to which Borrower is a party other than the Rent;

       h.    To Borrower's knowledge and except as set forth in the Permitted Exceptions, there are neither special improvement assessments nor municipal assessments outstanding and owing against the Tendered Unit;

       i.    Except for the Loan Documents, the Permitted Exceptions, and any agreements, commitments, guarantees, undertakings and arrangements, or privileges arising out of Borrower's membership in any homeowner's association governing the Tendered Unit, Borrower warrants that there are no warranties, service and maintenance contracts, agreements with respect to utilities, accounts receivable and other contracts, agreements, commitments, guarantees, undertakings and arrangements, and privileges to which Borrower is a party that are currently in effect with respect to the Tendered Unit, oral or written;

IS_0000303

j.      There is no pending lawsuit or arbitration, or, to Borrower's knowledge, there is no threatened lawsuit or arbitration, which would relate to or affect the Tendered Unit, other than claims identified as Permitted Exceptions;

k.      Borrower has not taken, or permitted any person or entity under its control to take, any action which could result in any of the following:

(1)     Any lien for labor, equipment or materials against the Tendered Unit or the Personal Property which has not been paid; or

(2)     Any lien against, exception to, or claim against the title to the Tendered Unit or the Personal Property, except the Permitted Exceptions;

(3)     Any modification to zoning or other restrictions affecting the use of the Tendered Unit; or,

(4)     Any leases or other rights to occupy the Tendered Unit, except the Leases.

l.      The representations and warranties of Borrower in this Section 9 shall survive the Closing for a period of one (1) year.

10.     Representations and Warranties of Lender. Lender hereby represents and warrants to Borrower, as of the date hereof and Closing, as follows:

a.      Lender has full power and authority, and has been duly authorized, to consummate the transaction contemplated herein; and the transaction contemplated herein does not conflict with, result in a violation of, or constitute a default under any agreement or instrument binding upon Lender or any law, governmental regulation, court decree, or order applicable to Lender.

b.      Lender is not currently insolvent, and none of Lender's property is subject to any bankruptcy proceedings, assignment for benefit of creditors or similar proceedings, nor has Lender committed any act of bankruptcy;

c.      Lender has not incurred any obligations to any real estate broker or sales person or similar party for the payment of a commission, fee or similar charge in connection with the conveyance of the Tendered Unit and/or the Personal Property;

d.      Lender is the sole owner of all of the claims, rights, counts, causes of action, obligations, debts, and demands which are intended to be released or deemed satisfied by Lender pursuant to this Agreement, and no other persons or entities have any interest, by assignment or otherwise, in any of the claims, rights, counts, causes of action, obligations, debts, and demands referred to herein;

{00316124.DOCX / 1}                                  7

e.     The conveyance of the Tendered Unit from Borrower to Lender is exempt from the Town of Vail Real Estate Transfer Tax, and the Lender has received from the Town of Vail a duly executed exemption therefrom; and

f.     The representations and warranties of Lender in this Section 10 shall survive the Closing for a period of one (1) year.

11.    Indemnification.

a.     Indemnification of Lender. Borrower shall indemnify, defend, and hold harmless Lender, its officers, managers, directors, governors, employees, shareholders, members, affiliates, partners, agents, successors, assigns, professionals, and each of them, from and against and in respect of any and all claims, demands, losses, costs, expenses, obligations, liabilities, damages, recoveries, and deficiencies, including reasonable attorneys' fees, interest and penalties, which Lender actually incurs or suffers arising out of the breach of any representation or warranty or breach of any covenant of Borrower in this Agreement. Subject to Section 9.l., the provisions of this Section 11.a. shall survive Closing.

b.     Indemnification of Borrower.  Lender shall indemnify, defend and hold harmless Borrower, its officers, managers, directors, governors, employees, shareholders, members, affiliates, partners, agents, successors, assigns, professionals, and each of them, from and against and in respect of any and all claims, damages, losses, costs, expenses, obligations, liabilities, damages, recoveries, and deficiencies including reasonable attorneys' fees, interest and penalties, which Borrower actually incurs or suffers arising out of (i) the breach of any representation or warranty or breach of covenant of Lender in this Agreement, or (ii) the conveyance of the Tendered Unit and/or Personal Property to any person or entity other than Lender.  Subject to Section 10.f., the provisions of this Section 11.b. shall survive Closing.

12.    Operating Payment Agreement. Notwithstanding anything to the contrary set forth herein, this Agreement shall not be construed to release Borrower or Lender from their rights and obligations under the Operating Payment Agreement, including, but not limited to, any obligation of Borrower to make the Operating Payments to Lender.

13.    Additional Information. Borrower affirms its continued obligation to provide to Lender the information required by Section 14(ii) of the Loan Agreement.

14.    Construction of Agreement.  Time is of the essence in the performance of this Agreement.  This Agreement represents the entire and complete agreement between the parties. The Agreement shall not be amended or modified, except by an instrument in writing, signed by all parties. All terms and provisions hereof shall inure to the benefit of, and being binding upon Lender, Borrower, and their respective successors and assigns.  Wherever used in this Agreement, the singular shall include the plural, and the masculine shall include the feminine and neuter grammatical forms.   Captions are included for convenient reference only, and shall not be construed to alter or affect any terms or provisions of this Agreement.  This Agreement has been

IS_0000305

executed by the parties after discussions and negotiation, and shall be construed as having been drafted by both parties. If any term of this Agreement is held to be invalid or unenforceable, such term shall be construed as being valid and enforceable to the fullest extent permitted by law, and all remaining terms shall remain full force and effect. This Agreement shall be construed and enforced in accordance with the laws of the State of Colorado. Each party hereto waives all right to trial by jury in any action, proceeding or counterclaim arising out of or relating to this Agreement or any related document.

15.  **Legal Expenses.** If Borrower or Lender initiates any action to enforce or interpret this Agreement, the party determined by the court or arbiter, as the case may be, to be the prevailing party in such action will be entitled to receive from the non-prevailing party all reasonable costs and expenses, including all reasonable attorneys' fees incurred by the prevailing party in such action.

16.  **Legal Counsel.** All parties hereto have been represented by competent legal counsel who has explained the legal significance of this Agreement to their respective clients, or they have had ample opportunity to consult with legal counsel.

17.  **Survival of Agreement.** Unless otherwise expressly herein stated to survive, the terms, covenants and conditions of this Agreement shall not survive the delivery of the Deed and the Bill of Sale from Borrower to Lender or its designee, and shall be merged into the Deed for the conveyance of the Tendered Unit and the Bill of Sale for the conveyance of the Personal Property.

18.  **Rights to Equitable and Legal Relief.** Notwithstanding any other provision contained herein or in any document executed in connection with this Agreement, and in addition to the other remedies set for the in the Loan Documents, this Agreement and the documents executed in connection with this Agreement, each party shall have the right to seek all remedies available at law or in equity in the event of the other party's default or breach hereunder. Without limiting the generality of the foregoing, the non-defaulting or non-breaching party shall be entitled to seek all or any of the following remedies in the event of a default or breach by the other party hereunder: (a) specific performance; and/or (b) injunctive relief; and/or (c) seek the recovery from the other party, on a joint and several basis, all damages, costs, fees (including, without limitation, reasonable attorney fees), losses, and expenses associated with or caused by the breach or default. Notwithstanding the foregoing, in no event shall any party hereto be liable for special, incidental, indirect, exemplary, consequential or punitive damages arising under or in connection with this Agreement.

[SIGNATURE PAGE FOLLOWS]

IS_0000306

IN WITNESS WHEREOF, Borrower and Lender have executed this Transfer Agreement as of the date first above set forth.

BORROWER:

SOLARIS PROPERTY OWNER I, LLC,
a Delaware limited liability company

By:_____
Name: _____
Its:_____

LENDER:

COLORADO REGIONAL CENTER PROJECT SOLARIS, LLLP,
a Colorado limited liability limited partnership

By:_____
Name: _____
Its: _____

IS_0000307

**EXHIBIT A**

**FORM OF DEED**

(Attached)

IS_0000308

**EXHIBIT B**

**FORM OF BILL OF SALE**

(Attached)

IS_0000309

# EXHIBIT C

## LEASES

(Attached)

IS_0000310

# EXHIBIT B

## FORM OF LISTING AGREEMENT

(Attached)

8

IS_0000311

| From: | Ryan Smith |
|---|---|
| Sent: | Thursday, June 4, 2015 12:09 PM MDT |
| To: | Meagan Hayes; Mike Murray |
| CC: | Rob Glucksman |
| Subject: | RE: CRCPS |

That works for me.

-----Original Message-----
From: Meagan Hayes [mailto:mhayes@wavelandventures.com]
Sent: Thursday, June 4, 2015 12:05 PM
To: Mike Murray
Cc: Rob Glucksman; Ryan Smith
Subject: RE: CRCPS

Assuming 2 mountain?  We have another call then.  How about in an hour at 1pm mtn?

-----Original Message-----
From: Mike Murray [mailto:mike.murray@solarisvail.com]
Sent: Thursday, June 4, 2015 1:03 PM
To: Meagan Hayes
Cc: Rob Glucksman; Ryan Smith
Subject: Re: CRCPS

2:00?

Mike Murray

Solaris Management & Consulting, LLC
141 E. Meadow Drive, Suite 211
Vail, CO 81657
(970) 476-7893
www.solarisvail.com

> On Jun 4, 2015, at 10:38 AM, Meagan Hayes <mhayes@wavelandventures.com> wrote:
>
> Hi Mike,
>
> Do you have time either today or tomorrow to discuss transferring title on the CRCPS units?
>
> Thanks!
>
> Meagan

**EXHIBIT B-1**

SPO_0000400

| From: | Rob Glucksman |
|---|---|
| Sent: | Tuesday, June 23, 2015 3:48 PM MDT |
| To: | Ryan Smith |
| CC: | Mike Murray; Meagan Hayes |
| Subject: | RE: CRCPS |
| Attachments: | Pent E West Solaris RETT.PDF, RETT Application Glucksman 050715 6E West.pdf, 2A South Solaris RETT.PDF, Colorado Regional Center Project Solaris LLLP RETTs.pdf |

Hi Ryan,

Thanks for the note and sorry for the delay. First and foremost, attached are some of the transfer tax exemption forms we have received. I'm in process of going through the rest of the application forms. We are going to end up setting up SPO III, LLC to take title to the units for marketing purposes. We'll hopefully be able to move quickly with that next week. The title insurance policy is pretty much resolved. It will not involve us having to go through a title company to close, but I have asked for a quote just to get a sense of the cost. I need a couple confirmations from the title companies for the policies and we need to get SPO III set up. We'll let you know as soon as we can get these accomplished. Please let us know if we're missing anything.

Best,
Rob

-----Original Message-----
From: Ryan Smith [mailto:ryan@solarisvail.com]
Sent: Monday, June 22, 2015 2:09 PM
To: Rob Glucksman
Cc: Mike Murray; Meagan Hayes
Subject: RE: CRCPS

Rob and Meagan,

Any update on the title insurance/closing issue?

Ryan

-----Original Message-----
From: Rob Glucksman [mailto:rglucksman@coloradoregionalcenter.com]
Sent: Thursday, June 4, 2015 2:13 PM
To: Ryan Smith
Cc: Mike Murray; Meagan Hayes
Subject: Re: CRCPS

Thanks Ryan!

Sent from my iPhone

> On Jun 4, 2015, at 2:02 PM, "Ryan Smith" <ryan@solarisvail.com> wrote:
>
> Good speaking with you guys. Below is the contact info for the person at Land Title that I recommend you reach out to regarding title insurance:
>
> Gail Ferry
> Vice President - Eagle County Manager
> Land Title Guarantee Company
> Direct:  970-477-4515
> Efax:   877-276-5043

SPO_0000752

> Email: gferry@ltgc.com
> Address: 610 West Lionshead Circle
>           Suite 200
>           (Landmark Building)
>           Vail, Colorado 81657
>
> -----Original Message-----
> From: Mike Murray
> Sent: Thursday, June 4, 2015 1:34 PM
> To: Meagan Hayes; Rob Glucksman
> Cc: Ryan Smith
> Subject: RE: CRCPS
>
> The number did not work. It said could not accept the call from this area.
>
> Mike Murray
>
> Solaris Management & Consulting, LLC
> 141 E. Meadow Drive, Suite 211
> Vail, CO 81657
> (970) 476-7893
> www.solarisvail.com
>
> -----Original Message-----
> From: Meagan Hayes [mailto:mhayes@wavelandventures.com]
> Sent: Thursday, June 04, 2015 12:26 PM
> To: Rob Glucksman
> Cc: Mike Murray; Ryan Smith
> Subject: Re: CRCPS
>
> Sounds good, we can all dial into
> 1-800-392-9141 | 5124505114#
>
>
>
>> On Jun 4, 2015, at 1:16 PM, Rob Glucksman <rglucksman@coloradoregionalcenter.com> wrote:
>>
>> Let's aim for 1:30pm MST?
>>
>> Thanks,
>> Rob
>>
>> -----Original Message-----
>> From: Mike Murray [mailto:mike.murray@solarisvail.com]
>> Sent: Thursday, June 04, 2015 12:13 PM
>> To: Ryan Smith
>> Cc: Meagan Hayes; Rob Glucksman
>> Subject: Re: CRCPS
>>
>> I have a meeting at 1:00. It might be done by 1:30.
>>
>> Mike Murray
>>
>> Solaris Management & Consulting, LLC
>> 141 E. Meadow Drive, Suite 211
>> Vail, CO 81657

SPO_0000753

>> (970) 476-7893
>> www.solarisvail.com
>>
>>> On Jun 4, 2015, at 12:10 PM, Ryan Smith <ryan@solarisvail.com> wrote:
>>>
>>> That works for me.
>>>
>>> -----Original Message-----
>>> From: Meagan Hayes [mailto:mhayes@wavelandventures.com]
>>> Sent: Thursday, June 4, 2015 12:05 PM
>>> To: Mike Murray
>>> Cc: Rob Glucksman; Ryan Smith
>>> Subject: RE: CRCPS
>>>
>>> Assuming 2 mountain?  We have another call then.  How about in an hour at 1pm mtn?
>>>
>>> -----Original Message-----
>>> From: Mike Murray [mailto:mike.murray@solarisvail.com]
>>> Sent: Thursday, June 4, 2015 1:03 PM
>>> To: Meagan Hayes
>>> Cc: Rob Glucksman; Ryan Smith
>>> Subject: Re: CRCPS
>>>
>>> 2:00?
>>>
>>> Mike Murray
>>>
>>> Solaris Management & Consulting, LLC
>>> 141 E. Meadow Drive, Suite 211
>>> Vail, CO 81657
>>> (970) 476-7893
>>> www.solarisvail.com
>>>
>>>> On Jun 4, 2015, at 10:38 AM, Meagan Hayes <mhayes@wavelandventures.com> wrote:
>>>>
>>>> Hi Mike,
>>>>
>>>> Do you have time either today or tomorrow to discuss transferring title on the CRCPS units?
>>>>
>>>> Thanks!
>>>>
>>>> Meagan

SPO_0000754

| From: | Rob Glucksman |
|---|---|
| Sent: | Tuesday, June 23, 2015 4:10 PM MDT |
| To: | Ryan Smith |
| CC: | Mike Murray; Meagan Hayes |
| Subject: | RE: CRCPS |
| Attachments: | CRCPS Put Notice.docx |

Ryan,

Attached please find a proposed letter. Please let us know if you have any questions/comments.

Best,
Rob

-----Original Message-----
From: Ryan Smith [mailto:ryan@solarisvail.com]
Sent: Tuesday, June 23, 2015 3:54 PM
To: Rob Glucksman
Cc: Mike Murray; Meagan Hayes
Subject: RE: CRCPS

Rob,

Sounds good. You were also going to send me some language to include in the transfer notices. If you can send that to me, I will prepare the notices.

Thanks,

Ryan

-----Original Message-----
From: Rob Glucksman [mailto:rglucksman@coloradoregionalcenter.com]
Sent: Tuesday, June 23, 2015 3:48 PM
To: Ryan Smith
Cc: Mike Murray; Meagan Hayes
Subject: RE: CRCPS

Hi Ryan,

Thanks for the note and sorry for the delay. First and foremost, attached are some of the transfer tax exemption forms we have received. I'm in process of going through the rest of the application forms. We are going to end up setting up SPO III, LLC to take title to the units for marketing purposes. We'll hopefully be able to move quickly with that next week. The title insurance policy is pretty much resolved. It will not involve us having to go through a title company to close, but I have asked for a quote just to get a sense of the cost. I need a couple confirmations from the title companies for the policies and we need to get SPO III set up. We'll let you know as soon as we can get these accomplished. Please let us know if we're missing anything.

Best,
Rob

-----Original Message-----
From: Ryan Smith [mailto:ryan@solarisvail.com]
Sent: Monday, June 22, 2015 2:09 PM
To: Rob Glucksman
Cc: Mike Murray; Meagan Hayes

SPO_0000770

Subject: RE: CRCPS

Rob and Meagan,

Any update on the title insurance/closing issue?

Ryan

-----Original Message-----
From: Rob Glucksman [mailto:rglucksman@coloradoregionalcenter.com]
Sent: Thursday, June 4, 2015 2:13 PM
To: Ryan Smith
Cc: Mike Murray; Meagan Hayes
Subject: Re: CRCPS

Thanks Ryan!

Sent from my iPhone

> On Jun 4, 2015, at 2:02 PM, "Ryan Smith" <ryan@solarisvail.com> wrote:
>
> Good speaking with you guys. Below is the contact info for the person at Land Title that I recommend you reach out to regarding title insurance:
>
> Gail Ferry
> Vice President - Eagle County Manager
> Land Title Guarantee Company
> Direct:  970-477-4515
> Efax:    877-276-5043
> Email:  gferry@ltgc.com
> Address:  610 West Lionshead Circle
>              Suite 200
>              (Landmark Building)
>              Vail, Colorado 81657
>
> -----Original Message-----
> From: Mike Murray
> Sent: Thursday, June 4, 2015 1:34 PM
> To: Meagan Hayes; Rob Glucksman
> Cc: Ryan Smith
> Subject: RE: CRCPS
>
> The number did not work. It said could not accept the call from this area.
>
> Mike Murray
>
> Solaris Management & Consulting, LLC
> 141 E. Meadow Drive, Suite 211
> Vail, CO 81657
> (970) 476-7893
> www.solarisvail.com
>
> -----Original Message-----
> From: Meagan Hayes [mailto:mhayes@wavelandventures.com]
> Sent: Thursday, June 04, 2015 12:26 PM
> To: Rob Glucksman

SPO_0000771

> Cc: Mike Murray; Ryan Smith
> Subject: Re: CRCPS
>
> Sounds good, we can all dial into
> 1-800-392-9141 | 5124505114#
>
>
>
>> On Jun 4, 2015, at 1:16 PM, Rob Glucksman <rglucksman@coloradoregionalcenter.com> wrote:
>>
>> Let's aim for 1:30pm MST?
>>
>> Thanks,
>> Rob
>>
>> -----Original Message-----
>> From: Mike Murray [mailto:mike.murray@solarisvail.com]
>> Sent: Thursday, June 04, 2015 12:13 PM
>> To: Ryan Smith
>> Cc: Meagan Hayes; Rob Glucksman
>> Subject: Re: CRCPS
>>
>> I have a meeting at 1:00. It might be done by 1:30.
>>
>> Mike Murray
>>
>> Solaris Management & Consulting, LLC
>> 141 E. Meadow Drive, Suite 211
>> Vail, CO 81657
>> (970) 476-7893
>> www.solarisvail.com
>>
>>> On Jun 4, 2015, at 12:10 PM, Ryan Smith <ryan@solarisvail.com> wrote:
>>>
>>> That works for me.
>>>
>>> -----Original Message-----
>>> From: Meagan Hayes [mailto:mhayes@wavelandventures.com]
>>> Sent: Thursday, June 4, 2015 12:05 PM
>>> To: Mike Murray
>>> Cc: Rob Glucksman; Ryan Smith
>>> Subject: RE: CRCPS
>>>
>>> Assuming 2 mountain? We have another call then. How about in an hour at 1pm mtn?
>>>
>>> -----Original Message-----
>>> From: Mike Murray [mailto:mike.murray@solarisvail.com]
>>> Sent: Thursday, June 4, 2015 1:03 PM
>>> To: Meagan Hayes
>>> Cc: Rob Glucksman; Ryan Smith
>>> Subject: Re: CRCPS
>>>
>>> 2:00?
>>>
>>> Mike Murray
>>>

>>> Solaris Management & Consulting, LLC
>>> 141 E. Meadow Drive, Suite 211
>>> Vail, CO 81657
>>> (970) 476-7893
>>> www.solarisvail.com
>>>
>>>> On Jun 4, 2015, at 10:38 AM, Meagan Hayes <mhayes@wavelandventures.com> wrote:
>>>>
>>>> Hi Mike,
>>>>
>>>> Do you have time either today or tomorrow to discuss transferring title on the CRCPS units?
>>>>
>>>> Thanks!
>>>>
>>>> Meagan

SPO_0000773

Colorado Regional Center Project Solaris, LLLP
300 W. 6th Street, Suite 1810
Austin, TX 78701

[Date]

Re: Put Notice

To Whom It May Concern,


This letter shall serve as notice for certain Collateral Unit Distributions to be made pursuant to the Promissory Note and Loan Agreement dated November 5, 2010 by and between Solaris Property Owner, LLC ("Borrower") and Colorado Regional Center Project Solaris, LLLP ("Lender").  All capitalized terms contained herein should be referred to in the Promissory Note and Loan Agreement.

Pursuant to the Prepayment clause in the Promissory Note, after the expiration of thirty six (36) months following Closing on any Loan Advance(s), Borrower shall have the right to repay the portion of the outstanding principal balance attributable to any Loan Advance(s) by tendering to Lender a special warranty deed to the Collateral securing such Loan Advance(s), together with a bill of sale for the Furnishings contained within such Collateral Unit, as more specifically set forth in the Loan Agreement. As stipulated in the Loan Agreement, the amount of the principal balance of the Note (i.e., Loan Advance) that will be prepaid shall be equal to the Purchase Price of the Collateral Unit.

Accordingly, Borrower acknowledges the 36-month anniversary of certain Loan Advances (see attached Promissory Note Exhibit A) and Borrower shall make Collateral Unit Distributions to satisfy payment of Loan Advances for the following units: (i) 6E West, (ii) 2A South, (iii) Penthouse E West, (iv) 6E East, and (v) Penthouse E East.  A closing date will be agreed upon by Borrower and Lender, but in no event shall closing occur more 30 days after this notice.  The closing of these transfers shall be completed pursuant to the standard closing documents used by Solaris for the closing of condominium sales to third parties in transactions outside of the Loan Agreement.


Sincerely,


_____

SPO_0000774

| From: | Ryan Smith |
|---|---|
| Sent: | Tuesday, October 13, 2015 4:56 PM MDT |
| To: | kkuchler@ltgc.com |
| CC: | Rob Glucksman |
| Subject: | Solaris/CRC: Deed Preparation |

Katie,

I believe that you have been in touch with Rob Glucksman of the Colorado Regional Center regarding the conveyance of several of the so-called Solaris EB-5 units. In preparation for the transfers, I am requesting LTGC's assistance in preparing the deeds.

Please prepare separate Special Warranty Deeds for the transfer of the following Solaris condominiums from "Solaris Property Owner I, LLC, a Delaware limited liability company" with an address of 141 East Meadow Drive, Suite 211, Vail, Colorado 81657 to "Solaris Property Owner III, LLC, a Colorado limited liability company" with an address of 280 Detroit Street Denver, CO 80206 for consideration of $10.00:

1. Unit 6E West
2. Unit 2A South
3. Pent E West
4. Unit 6E East
5. Pent E East
6. Unit 5E West
7. Unit 4G West
8. Unit 7E West
9. Penthouse C East
10. Unit 6D East

Please let me know if you have any questions or if I can be of assistance you in the process.

Thanks,

Ryan

**SOLARIS**

RYAN SMITH
GENERAL COUNSEL
141 EAST MEADOW DRIVE, SUITE 211
VAIL, COLORADO 81657

M: 303.888.0969
F: 970.479.6666

SPO_0000810

| From: | Ryan Smith |
|---|---|
| Sent: | Monday, October 19, 2015 4:26 PM MDT |
| To: | Rob Glucksman |
| CC: | mhayes@wavelandventures.com; Mike Murray |
| Subject: | RE: 1:00 call |
| Attachments: | CRCPS Put Notice_Borrower Draft 10.19.15.docx |

Rob,

Good speaking with you last week. Attached is a draft of the letter agreement that we discussed. It serves as the "put notice" and addresses several other matters arising in connection with the transfers, such as the distinction between the Lender and the transferee of the unit. Once finalized, I will duplicate for each Collateral Unit.

Katie Kuchler at LTGC said they couldn't prepare the deeds because they do not have an open file on the transaction. So, we could either prepare them ourselves or, depending on whether or not LTGC is involved in the closings, which I believe you are addressing with Gail, have them open files and prepare deeds and related documents, such as settlement statements. While it would be nice to have them handle the closings, if they are going to charge us, we ought to consider doing everything ourselves and limiting LTGC's function to recording the deeds.

Please let me know your thoughts.

Thanks,

Ryan

**From:** Rob Glucksman [mailto:rglucksman@coloradoregionalcenter.com]
**Sent:** Monday, October 12, 2015 10:35 AM
**To:** Ryan Smith <ryan@solarisvail.com>
**Cc:** Meagan Hayes <mhayes@wavelandventures.com>; Mike Murray <mike.murray@solarisvail.com>
**Subject:** Re: 1:00 call

Let's do 4pm today. Would you guys mind calling me? 303.888.9052.

Thanks,
Rob

Sent from my iPhone

On Oct 12, 2015, at 10:18 AM, "Ryan Smith" <ryan@solarisvail.com> wrote:

I could do 4pm today. Early Wednesday morning also works for me.

**From:** Meagan Hayes [mailto:mhayes@wavelandventures.com]
**Sent:** Monday, October 12, 2015 10:12 AM
**To:** Mike Murray <mike.murray@solarisvail.com>; Rob Glucksman

<rglucksman@coloradoregionalcenter.com>
**Cc:** Ryan Smith <ryan@solarisvail.com>
**Subject:** RE: 1:00 call

I have class at 5pm tonight as well – you guys can go ahead with the call and I can catch up with Rob afterwards if that's more convenient

**From:** Mike Murray [mailto:mike.murray@solarisvail.com]
**Sent:** Monday, October 12, 2015 11:11 AM
**To:** Rob Glucksman <rglucksman@coloradoregionalcenter.com>; Meagan Hayes <mhayes@wavelandadventures.com>
**Cc:** Ryan Smith <ryan@solarisvail.com>
**Subject:** RE: 1:00 call

I can do early Wednesday morning, but I have another meeting at 10:00. Can we do 4:00 today?

Mike Murray

*Solaris Management & Consulting, LLC*
141 E. Meadow Drive, Suite 211
Vail, CO 81657
(970) 476-7893
www.solarisvail.com

**From:** Rob Glucksman [mailto:rglucksman@coloradoregionalcenter.com]
**Sent:** Monday, October 12, 2015 10:09 AM
**To:** Meagan Hayes <mhayes@wavelandadventures.com>
**Cc:** Ryan Smith <ryan@solarisvail.com>; Mike Murray <mike.murray@solarisvail.com>
**Subject:** Re: 1:00 call

Wednesday morning works for me.

Thanks,
Rob

Sent from my iPhone

On Oct 12, 2015, at 9:53 AM, "Meagan Hayes" <mhayes@wavelandadventures.com> wrote:

Would Wednesday morning work for you guys instead? The times below will interfere with my classes tomorrow.

**From:** Ryan Smith [mailto:ryan@solarisvail.com]
**Sent:** Monday, October 12, 2015 10:35 AM
**To:** Rob Glucksman <rglucksman@coloradoregionalcenter.com>; Mike Murray <mike.murray@solarisvail.com>

SPO_0000818

**Cc:** Meagan Hayes <mhayes@wavelandventures.com>
**Subject:** RE: 1:00 call

I just learned that my other conference call is going to conflict with ours. Can we push our call from 2:30 to 4:00 or later?

**From:** Rob Glucksman [mailto:rglucksman@coloradoregionalcenter.com]
**Sent:** Friday, October 9, 2015 11:42 AM
**To:** Ryan Smith <ryan@solarisvail.com>; Mike Murray <mike.murray@solarisvail.com>
**Cc:** Meagan Hayes <mhayes@wavelandventures.com>
**Subject:** RE: 1:00 call

No problem. Thanks.

**From:** Ryan Smith [mailto:ryan@solarisvail.com]
**Sent:** Friday, October 09, 2015 11:41 AM
**To:** Mike Murray <mike.murray@solarisvail.com>; Rob Glucksman <rglucksman@coloradoregionalcenter.com>
**Cc:** Meagan Hayes <mhayes@wavelandventures.com>
**Subject:** RE: 1:00 call

That works for me, though I am currently in the process of scheduling a court-ordered conference call on Tuesday. In the event that that call conflicts with ours, I will have to reschedule.

**From:** Mike Murray
**Sent:** Friday, October 9, 2015 11:38 AM
**To:** Rob Glucksman <rglucksman@coloradoregionalcenter.com>; Ryan Smith <ryan@solarisvail.com>
**Cc:** Meagan Hayes <mhayes@wavelandventures.com>
**Subject:** RE: 1:00 call

Works for me.

Mike Murray

*Solaris Management & Consulting, LLC*
141 E. Meadow Drive, Suite 211
Vail, CO 81657
(970) 476-7893
www.solarisvail.com

**From:** Rob Glucksman [mailto:rglucksman@coloradoregionalcenter.com]
**Sent:** Friday, October 09, 2015 11:34 AM
**To:** Mike Murray <mike.murray@solarisvail.com>; Ryan Smith <ryan@solarisvail.com>
**Cc:** Meagan Hayes <mhayes@wavelandventures.com>
**Subject:** RE: 1:00 call

How about Tuesday afternoon at 2:30pm?

Thanks,
Rob

**From:** Mike Murray [mailto:mike.murray@solarisvail.com]
**Sent:** Friday, October 09, 2015 11:33 AM
**To:** Ryan Smith <ryan@solarisvail.com>; Rob Glucksman <rglucksman@coloradoregionalcenter.com>
**Cc:** Meagan Hayes <mhayes@wavelandventures.com>
**Subject:** RE: 1:00 call

I have meetings Tuesday and Wednesday mornings, but available otherwise.

Mike Murray

*Solaris Management & Consulting, LLC*
141 E. Meadow Drive, Suite 211
Vail, CO 81657
(970) 476-7893
www.solarisvail.com

**From:** Ryan Smith
**Sent:** Friday, October 09, 2015 11:31 AM
**To:** Rob Glucksman <rglucksman@coloradoregionalcenter.com>; Mike Murray <mike.murray@solarisvail.com>
**Cc:** Meagan Hayes <mhayes@wavelandventures.com>
**Subject:** RE: 1:00 call

Yes, I am pretty flexible on Monday and Tueday.

**From:** Rob Glucksman [mailto:rglucksman@coloradoregionalcenter.com]
**Sent:** Friday, October 9, 2015 10:53 AM
**To:** Ryan Smith <ryan@solarisvail.com>; Mike Murray <mike.murray@solarisvail.com>
**Cc:** Meagan Hayes <mhayes@wavelandventures.com>
**Subject:** RE: 1:00 call

Hey guys,

We're pretty much all set on the insurance. Can we schedule a call next week to discuss moving forward?

Thanks,
Rob

SPO_0000820

**From:** Ryan Smith [mailto:ryan@solarisvail.com]
**Sent:** Wednesday, September 02, 2015 9:48 AM
**To:** Rob Glucksman <rglucksman@coloradoregionalcenter.com>
**Subject:** RE: 1:00 call

Rob, Do you have time today to touch base on these unit transfers? If so, let me know your phone number and a good time to call. Alternatively, give me a call at 303-888-0969. Thanks, Ryan

**From:** Rob Glucksman [mailto:rglucksman@coloradoregionalcenter.com]
**Sent:** Tuesday, August 11, 2015 1:25 PM
**To:** Ryan Smith <ryan@solarisvail.com>; Mike Murray <mike.murray@solarisvail.com>; Meagan Hayes <mhayes@wavelandventures.com>
**Subject:** RE: 1:00 call

Hi Ryan,

Sorry for the delay. The name and address are:

Solaris Property Owner III, LLC
280 Detroit Street
Denver, CO 80206

Best,
Rob

**From:** Ryan Smith [mailto:ryan@solarisvail.com]
**Sent:** Monday, August 03, 2015 7:37 AM
**To:** Rob Glucksman <rglucksman@coloradoregionalcenter.com>; Mike Murray <mike.murray@solarisvail.com>; Meagan Hayes <mhayes@wavelandventures.com>
**Subject:** RE: 1:00 call

I will have Land prepare the deed.

What is the name and address of the grantee?

**From:** Rob Glucksman [mailto:rglucksman@coloradoregionalcenter.com]
**Sent:** Thursday, July 30, 2015 5:12 PM
**To:** Ryan Smith <ryan@solarisvail.com>; Mike Murray <mike.murray@solarisvail.com>; Meagan Hayes <mhayes@wavelandventures.com>
**Subject:** RE: 1:00 call

Sorry for the land. I think we're fine with using Land Title to facilitate.

Thanks,
Rob

SPO_0000821

**From:** Ryan Smith [mailto:ryan@solarisvail.com]
**Sent:** Wednesday, July 29, 2015 2:34 PM
**To:** Rob Glucksman <rglucksman@coloradoregionalcenter.com>; Mike Murray <mike.murray@solarisvail.com>; Meagan Hayes <mhayes@wavelandventures.com>
**Subject:** RE: 1:00 call

Great. Are we going to be using Land Title to conduct the transfers? I ask because, if so, I will have them prepare the deed.

**From:** Rob Glucksman [mailto:rglucksman@coloradoregionalcenter.com]
**Sent:** Wednesday, July 29, 2015 1:27 PM
**To:** Mike Murray; Meagan Hayes
**Cc:** Ryan Smith
**Subject:** RE: 1:00 call

Hi all,

I think we're getting somewhat close to actually being able to transfer these. Please remind me, were you guys going to have a Special Warranty Deed drafted for these?

Hope you both are well.

Thanks,
Rob

**From:** Mike Murray [mailto:mike.murray@solarisvail.com]
**Sent:** Friday, June 12, 2015 12:31 PM
**To:** Meagan Hayes <mhayes@wavelandventures.com>
**Cc:** Rob Glucksman <rglucksman@coloradoregionalcenter.com>; Ryan Smith <ryan@solarisvail.com>
**Subject:** 1:00 call

Meagan,

Could you circulate the call-in information for the 1:00 MST call?

Mike Murray

*Solaris Management & Consulting, LLC*
141 E. Meadow Drive, Suite 211
Vail, CO 81657
(970) 476-7893
www.solarisvail.com

SPO_0000822

SOLARIS PROPERTY OWNER I, LLC
141 East Meadow Drive, Suite 211
Vail, Colorado 81657

[_____, 2015]

Colorado Regional Center Project Solaris, LLLP
300 W. 6th Street, Suite 1810
Austin, TX 78701

Re: Collateral Unit Distribution – Unit _____

To Whom It May Concern,

Reference is hereby made to that certain Promissory Note dated April 18, 2012, executed by Solaris Property Owner I, LLC, a Delaware limited liability company ("**Borrower**"), as assignee of Solaris Property Owner, LLC, a Delaware limited liability company ("**Original Borrower**") pursuant to that certain Assignment of Loan Agreement dated October 12, 2011 by and between Original Borrower and Borrower, and payable to the order of Colorado Regional Center Project Solaris, LLLP, a Colorado limited liability limited partnership ("**Lender**") in the original maximum principal amount of One Hundred Million and No/100 Dollars ($100,000,000.00), as amended by that certain Allonge to Promissory Note dated of even date therewith by and between Borrower and Lender (as amended through the date hereof and as the same may be further amended, restated, replaced, supplemented, or otherwise modified from time to time, collectively the "**Note**"), Borrower has become indebted to Lender with respect to a loan ("**Loan**") made pursuant to that certain Loan Agreement dated November 5, 2010 between Original Borrower and Lender (as amended through the date hereof and as the same may be further amended, restated, replaced, supplemented, or otherwise modified from time to time, the "**Loan Agreement**"), which Loan is secured by one of more Deeds of Trust recorded against the Collateral Units in the real property records of Eagle County, Colorado (as amended through the date hereof and as the same may be further amended, restated, replaced, supplemented, or otherwise modified from time to time, each a "**Deed of Trust**" and collectively, the "**Deeds of Trust**"), and further evidenced, secured or governed by other instruments and documents executed in connection with the Loan, including, but not limited to, that certain Guaranty Agreement dated April 18, 2012 by Peter Knobel for the benefit of Lender (the "**Guaranty**"), and as such loan documents were amended pursuant to that certain Omnibus Amendment to EB-5 Investment Documents dated March 8, 2012 by and between Original Borrower and Lender (the "**Omnibus Amendment**") (such other instruments and documents, Guaranty, and Omnibus Amendment, together with the Note, the Loan Agreement and Deeds of Trust, collectively, the "**Loan Documents**"). All capitalized terms used but not otherwise defined herein shall have the meaning set forth in the Loan Documents.

Pursuant to the Loan Documents, Borrower hereby notifies Lender that it intends to cause the occurrence of a Collateral Unit Distribution by tendering Collateral Unit _____ (the "**Tendered Unit**") to Lender, or its designee, in satisfaction of that certain Loan Advance made _____ in the principal amount of $_____ against the Tendered Unit (the "**Satisfied Loan Advance**"), as such Satisfied Loan Advance is more particularly set forth on Exhibit A of the Note.

SPO_0000823

A time and place for closing on the Collateral Unit Distribution will be mutually agreed upon by Borrower and Lender; provided, however, notwithstanding anything herein or in the Loan Documents to the contrary, for purposes of calculating interest and any other amounts owing between the parties under the Loan Documents in connection with the Tendered Unit, the Collateral Unit Distribution shall be deemed to have occurred on the Prepayment Date corresponding to the Tendered Unit. The closing of the transfer shall be completed pursuant to the standard closing documents used by Borrower for the closing of condominium sales to third parties in transactions outside of the Loan Agreement.

Lender has designated Solaris Property Owner III, LLC, a Colorado limited liability company and subsidiary of Lender ("*Solaris III*"), as the transferee of the Tendered Unit. Lender hereby represents, warrants and covenants that (i) Solaris III is a wholly owned subsidiary of Lender, (ii) Lender has full power and authority, and has been duly authorized, to consummate the transaction contemplated herein, including designating Solaris III as the transferee of the Tendered Unit and releasing Borrower as provided herein, (iii) the transaction contemplated herein does not conflict with, result in a violation of, or constitute a default under any agreement or instrument binding upon Lender (including the EB-5 documents) or any law, governmental regulation, court decree, or order applicable to Lender, (iv) Lender has not assigned its rights or obligations under the Loan Documents to any other person or entity, and (iv) Lender has, or prior to closing will have, obtained a duly executed exemption from the Town of Vail Real Estate Transfer Tax with respect to the transfer. Lender shall indemnify, defend and forever hold Borrower harmless from and against any and all actions, suits, claims, demands, liabilities, losses, damages, obligations and costs and expenses (including reasonable attorneys' fees) arising from breach of any representation, warranty or covenant of Lender hereunder, which indemnification obligation shall survive closing on the Tendered Unit.

Effective upon closing on the Tendered Unit, Lender and Solaris III acknowledge and agree that (i) all Indebtedness and any other obligations of Borrower under the Loan Documents with respect to the Tendered Unit, including, without limitation, the principal, interest, premium and any other amounts whatsoever due with respect to the Tendered Unit, shall be fully paid, satisfied, discharged and released, (ii) the principal balance of the Note shall be reduced by the amount of the Satisfied Loan Advance, and Exhibit A of the Note shall be deemed to be amended by deleting all references to the Tendered Unit and/or Satisfied Loan Advance; and (iii) all security interests, mortgages, guaranties (including the Guaranty), pledges and other liens granted to or held by Lender and any other secured parties under the security documents securing the Satisfied Loan Advance shall be forever satisfied, released and discharged without further action.

Except as set forth herein, the Loan Documents shall remain in full force and effect in accordance with their terms.

Very truly yours,

SOLARIS PROPERTY OWNER I, LLC,
a Delaware limited liability company

SPO_0000824

By: _____
     Ryan A. Smith, its General Counsel

Accepted and Agreed:

Colorado Regional Center Project Solaris, LLLP,
a Colorado limited liability limited partnership


By:_____
Name: _____
Its: _____

3

| From: | Rob Glucksman |
|---|---|
| Sent: | Tuesday, February 9, 2016 10:48 AM MST |
| To: | Ryan Smith; Mike Murray |
| CC: | Meagan Hayes; Rick Hayes; Mark F. Bell; Michael C. Bullock |
| Subject: | RE: 50033287 |
| Attachments: | Transfer Agreement (00254190-4xC1C96).docx, Transfer Agreement (00262894xC1C96).pdf, Special Warranty Deed_Draft v2.doc, CRCPS Put Notice_Borrower Draft 10 19 15 (00254048-2xC1C96).docx, Bill of Sale (00262440xC1C96).doc |

Hi Ryan,

Apologies for the delay. Attached for your review please find the following documents for your review:

• Transfer Agreement
• CRCPS Put Notice
• Special Warranty Deed
• Bill of Sale

Please let us know if you have any questions or comments.

Best,
Rob

**From:** Ryan Smith [mailto:ryan@solarisvail.com]
**Sent:** Monday, February 01, 2016 8:52 AM
**To:** Rob Glucksman <rglucksman@coloradoregionalcenter.com>; Mike Murray <mike.murray@solarisvail.com>
**Cc:** Meagan Hayes <mhayes@wavelandventures.com>
**Subject:** RE: 50033287

Rob,

I am just following up on our conversation to see if you have made any progress with respect to the transfers. I believe that you were last week expecting to receive comments from outside counsel on the structure and put notice.

Thanks,

Ryan

**From:** Ryan Smith
**Sent:** Friday, January 22, 2016 11:55 AM
**To:** 'Rob Glucksman' <rglucksman@coloradoregionalcenter.com>; Mike Murray <mike.murray@solarisvail.com>
**Cc:** Meagan Hayes <mhayes@wavelandventures.com>
**Subject:** RE: 50033287

SPO_0000853

Rob,

I am following up on your email below and my voicemail of yesterday. What is the status of your review of the deed and put notice?

Let's pick up where we left off in formally documenting the unit transfers. Give me a call to discuss.

Thanks,

Ryan

*SOLARIS*

Ryan Smith
General Counsel
141 East Meadow Drive, Suite 211
Vail, Colorado 81657

M: 303.888.0969
F: 970.479.6666

**From:** Rob Glucksman [mailto:rglucksman@coloradoregionalcenter.com]
**Sent:** Sunday, November 15, 2015 12:46 PM
**To:** Ryan Smith <ryan@solarisvail.com>; Mike Murray <mike.murray@solarisvail.com>
**Cc:** Meagan Hayes <mhayes@wavelandventures.com>
**Subject:** RE: 50033287

Ryan,

Thanks for sending this. We're having our attorney review the deed as well as the put notice.

Best,
Rob

**From:** Ryan Smith [mailto:ryan@solarisvail.com]
**Sent:** Wednesday, November 11, 2015 5:07 PM
**To:** Rob Glucksman <rglucksman@coloradoregionalcenter.com>; Mike Murray <mike.murray@solarisvail.com>
**Cc:** Meagan Hayes <mhayes@wavelandventures.com>
**Subject:** RE: 50033287

Rob,

A draft Special Warranty Deed is attached. The exceptions are cut and paste from Schedule B-2 of a recent title commitment. Let me know if you have any comments.

Did you have any comments to the draft "put notice" that I circulated a week or so ago?

SPO_0000854

Thanks,

Ryan

**From:** Rob Glucksman [mailto:rglucksman@coloradoregionalcenter.com]
**Sent:** Saturday, November 7, 2015 3:57 PM
**To:** Ryan Smith <ryan@solarisvail.com>; Mike Murray <mike.murray@solarisvail.com>
**Cc:** Meagan Hayes <mhayes@wavelandventures.com>
**Subject:** RE: 50033287

That works. Thanks, Ryan. Safe travels.

**From:** Ryan Smith [mailto:ryan@solarisvail.com]
**Sent:** Saturday, November 07, 2015 11:10 AM
**To:** Rob Glucksman <rglucksman@coloradoregionalcenter.com>; Mike Murray <mike.murray@solarisvail.com>
**Cc:** Meagan Hayes <mhayes@wavelandventures.com>
**Subject:** RE: 50033287

Rob, I am happy to prepare the deed, however, I am traveling through Monday and likely will not be able to get to it until early next week. Does that work for you?

**From:** Rob Glucksman [mailto:rglucksman@coloradoregionalcenter.com]
**Sent:** Wednesday, November 4, 2015 10:14 AM
**To:** Mike Murray <mike.murray@solarisvail.com>; Ryan Smith <ryan@solarisvail.com>
**Cc:** Meagan Hayes <mhayes@wavelandventures.com>
**Subject:** FW: 50033287

Hey guys,

This is the note I received from Gail at LTGC. They will not be able to prepare the special warranty deeds. Would you mind preparing a first cut of one?

Thanks,
Rob

**From:** Gail Ferry [mailto:gferry@ltgc.com]
**Sent:** Monday, November 02, 2015 8:29 PM
**To:** Rob Glucksman <rglucksman@coloradoregionalcenter.com>
**Cc:** Peter Griffiths <pgriffiths@ltgc.com>; Scott Bennetts <sbennetts@ltgc.com>; Katie Kuchler <kkuchler@ltgc.com>
**Subject:** 50033287

Rob,

SPO_0000855

As you and I have discussed, Colorado Regional Project Solaris, LLLP, a Colorado Limited Libility Limited Partnership, who was the lender for the property on the above referenced file number, will be coming into title on 10 of those properties in the name of "Solaris Property Owner III, LLC, a Colorado Limited Liability Company". In that regard, you have asked that Land Title be involved in this transaction.

To summarize what we have discussed:

1. Land Title will not be able to prepare the special warranty deeds from the current property owner, Solaris Property Owner I LLC, to the new owner.

2. With very specific instructions from Colorado Regional's attorney, Land Title can perform a closing function, i. e prepare settlement sheets, etc. While we could do each of the 10 properties at a separate residential closing fee of $350 per property, doing all 10 properties under one closing fee could be done at our commercial closing fee rate of $500, plus $50/hour for labor over 5 hours. (Holding of earnest money funds is an additional $50.)

3. To better understand the rights you have under your existing policy, you may work with First American directly. Mr. Scott Bennetts from our commercial department is also available to assist. Scott's email address is per above, and his direct phone number is 303-850-4175.

4. Regardless of the coverage you have under your lender's policy, in order for us to be involved in a closing function, it would be very good for an update of the lender's policy to occur so that any changes in the status of title can be identified. Scott has quoted $4,000 as the cost of issuing an update endorsement.

I believe that this covers the items we discussed. Please let me know if you have any other questions.

Sincerely,
Gail

Gail Ferry
Vice President - Eagle County Manager
**Land Title Guarantee Company**
**Direct: 970-477-4515**
Efax: 877-276-5043
Email: gferry@ltgc.com
Address: 610 West Lionshead Circle
Suite 200
(Landmark Building)
Vail, Colorado 81657

SPO_0000856



Please visit our website for directions, rates, placing orders and much more!

SPO_0000857

| From: | Ryan Smith |
|---|---|
| Sent: | Friday, February 12, 2016 6:39 PM MST |
| To: | Rob Glucksman; Mike Murray |
| CC: | Meagan Hayes; Rick Hayes; Mark F. Bell; Michael C. Bullock |
| Subject: | RE: 50033287 |
| Attachments: | Transfer Agreement (00254190-4xC1C96) (SPO markup 2.12.16_clean).docx, Transfer Agreement (00254190-4xC1C96) (SPO markup 2.12.16_red).docx, CRCPS Put Notice (SPO Draft 2.12.16_clean).docx, CRCPS Put Notice (SPO Draft 2.12.16_red).docx, Bill of Sale (00262440xC1C96) (SPO markup 2.12.16_clean).docx, Bill of Sale (00262440xC1C96) (SPO markup 2.12.16_red).doc |

Rob,

The following documents are attached in clean and redline to the drafts that you provided below:

- Transfer Agreement
  - I appreciate your proposing this agreement as it is good vehicle for the parties' to document their agreement respecting the transfers. Accordingly, I have carried over into it several of the provisions from the last draft of the so-called put notice. Additionally, I have omitted some of the inapplicable provisions; made the acknowledgments, reps and warranties, releases, and indemnities mutual; and modified other provisions to conform with the unique aspects of this transaction. Finalizing this document will likely require further discussion.
- CRCPS Put Notice
  - This document is generally acceptable, though I have further simplified it due to the advent of the Transfer Agreement.
- Bill of Sale

The Special Warranty Deed is also generally acceptable with the exception of the changes to the Permitted Exceptions listed on Schedule B, which will have to be addressed. Are you obtaining a new owner policy or downdating the existing lender policy in connection with the transfer?

After you've had a chance to review, let's setup a time next week to discuss any open items.

Thanks,

Ryan

---

**From:** Ryan Smith
**Sent:** Tuesday, February 9, 2016 2:46 PM
**To:** 'Rob Glucksman' <rglucksman@coloradoregionalcenter.com>; Mike Murray <mike.murray@solarisvail.com>
**Cc:** Meagan Hayes <mhayes@wavelandventures.com>; Rick Hayes <rhayes@wavelandventures.com>; Mark F. Bell <mbell@fostergraham.com>; Michael C. Bullock <mbullock@fostergraham.com>
**Subject:** RE: 50033287

Thanks, Rob. We will review and follow up.

SPO_0000887

**From:** Rob Glucksman [mailto:rglucksman@coloradoregionalcenter.com]
**Sent:** Tuesday, February 9, 2016 10:49 AM
**To:** Ryan Smith <ryan@solarisvail.com>; Mike Murray <mike.murray@solarisvail.com>
**Cc:** Meagan Hayes <mhayes@wavelandventures.com>; Rick Hayes <rhayes@wavelandventures.com>;
Mark F. Bell <mbell@fostergraham.com>; Michael C. Bullock <mbullock@fostergraham.com>
**Subject:** RE: 50033287

Hi Ryan,

Apologies for the delay. Attached for your review please find the following documents for your review:

• Transfer Agreement
• CRCPS Put Notice
• Special Warranty Deed
• Bill of Sale

Please let us know if you have any questions or comments.

Best,
Rob

**From:** Ryan Smith [mailto:ryan@solarisvail.com]
**Sent:** Monday, February 01, 2016 8:52 AM
**To:** Rob Glucksman <rglucksman@coloradoregionalcenter.com>; Mike Murray
<mike.murray@solarisvail.com>
**Cc:** Meagan Hayes <mhayes@wavelandventures.com>
**Subject:** RE: 50033287

Rob,

I am just following up on our conversation to see if you have made any progress with respect to the transfers. I believe that you were last week expecting to receive comments from outside counsel on the structure and put notice.

Thanks,

Ryan

**From:** Ryan Smith
**Sent:** Friday, January 22, 2016 11:55 AM
**To:** 'Rob Glucksman' <rglucksman@coloradoregionalcenter.com>; Mike Murray
<mike.murray@solarisvail.com>
**Cc:** Meagan Hayes <mhayes@wavelandventures.com>
**Subject:** RE: 50033287

Rob,

I am following up on your email below and my voicemail of yesterday. What is the status of your review of the deed and put notice?

Let's pick up where we left off in formally documenting the unit transfers. Give me a call to discuss.

Thanks,

Ryan

**SOLARIS**

RYAN SMITH
GENERAL COUNSEL
141 EAST MEADOW DRIVE, SUITE 211
VAIL, COLORADO 81657

M: 303.888.0969
F: 970.479.6666

**From:** Rob Glucksman [mailto:rglucksman@coloradoregionalcenter.com]
**Sent:** Sunday, November 15, 2015 12:46 PM
**To:** Ryan Smith <ryan@solarisvail.com>; Mike Murray <mike.murray@solarisvail.com>
**Cc:** Meagan Hayes <mhayes@wavelandventures.com>
**Subject:** RE: 50033287

Ryan,

Thanks for sending this. We're having our attorney review the deed as well as the put notice.

Best,
Rob

**From:** Ryan Smith [mailto:ryan@solarisvail.com]
**Sent:** Wednesday, November 11, 2015 5:07 PM
**To:** Rob Glucksman <rglucksman@coloradoregionalcenter.com>; Mike Murray <mike.murray@solarisvail.com>
**Cc:** Meagan Hayes <mhayes@wavelandventures.com>
**Subject:** RE: 50033287

Rob,

A draft Special Warranty Deed is attached. The exceptions are cut and paste from Schedule B-2 of a recent title commitment. Let me know if you have any comments.

Did you have any comments to the draft "put notice" that I circulated a week or so ago?

Thanks,

Ryan

**From:** Rob Glucksman [mailto:rglucksman@coloradoregionalcenter.com]
**Sent:** Saturday, November 7, 2015 3:57 PM
**To:** Ryan Smith <ryan@solarisvail.com>; Mike Murray <mike.murray@solarisvail.com>
**Cc:** Meagan Hayes <mhayes@wavelandventures.com>
**Subject:** RE: 50033287

That works. Thanks, Ryan. Safe travels.

**From:** Ryan Smith [mailto:ryan@solarisvail.com]
**Sent:** Saturday, November 07, 2015 11:10 AM
**To:** Rob Glucksman <rglucksman@coloradoregionalcenter.com>; Mike Murray <mike.murray@solarisvail.com>
**Cc:** Meagan Hayes <mhayes@wavelandventures.com>
**Subject:** RE: 50033287

Rob, I am happy to prepare the deed, however, I am traveling through Monday and likely will not be able to get to it until early next week. Does that work for you?

**From:** Rob Glucksman [mailto:rglucksman@coloradoregionalcenter.com]
**Sent:** Wednesday, November 4, 2015 10:14 AM
**To:** Mike Murray <mike.murray@solarisvail.com>; Ryan Smith <ryan@solarisvail.com>
**Cc:** Meagan Hayes <mhayes@wavelandventures.com>
**Subject:** FW: 50033287

Hey guys,

This is the note I received from Gail at LTGC. They will not be able to prepare the special warranty deeds. Would you mind preparing a first cut of one?

Thanks,
Rob

**From:** Gail Ferry [mailto:gferry@ltgc.com]
**Sent:** Monday, November 02, 2015 8:29 PM
**To:** Rob Glucksman <rglucksman@coloradoregionalcenter.com>
**Cc:** Peter Griffiths <pgriffiths@ltgc.com>; Scott Bennetts <sbennetts@ltgc.com>; Katie Kuchler <kkuchler@ltgc.com>
**Subject:** 50033287

Rob,
As you and I have discussed, Colorado Regional Project Solaris, LLLP, a Colorado Limited Libility Limited Partnership, who was the lender for the property on the above referenced file

number, will be coming into title on 10 of those properties in the name of "Solaris Property Owner III, LLC, a Colorado Limited Liability Company". In that regard, you have asked that Land Title be involved in this transaction.

To summarize what we have discussed:
1. Land Title will not be able to prepare the special warranty deeds from the current property owner, Solaris Property Owner I LLC, to the new owner.
2. With very specific instructions from Colorado Regional's attorney, Land Title can perform a closing function, i. e prepare settlement sheets, etc. While we could do each of the 10 properties at a separate residential closing fee of $350 per property, doing all 10 properties under one closing fee could be done at our commercial closing fee rate of $500, plus $50/hour for labor over 5 hours. (Holding of earnest money funds is an additional $50.)
3. To better understand the rights you have under your existing policy, you may work with First American directly. Mr. Scott Bennetts from our commercial department is also available to assist. Scott's email address is per above, and his direct phone number is 303-850-4175.
4. Regardless of the coverage you have under your lender's policy, in order for us to be involved in a closing function, it would be very good for an update of the lender's policy to occur so that any changes in the status of title can be identified. Scott has quoted $4,000 as the cost of issuing an update endorsement.

I believe that this covers the items we discussed. Please let me know if you have any other questions.

Sincerely,
Gail

Gail Ferry
Vice President - Eagle County Manager
**Land Title Guarantee Company**
**Direct: 970-477-4515**
Efax: 877-276-5043
Email: gferry@ltgc.com
Address: 610 West Lionshead Circle
Suite 200
(Landmark Building)
Vail, Colorado 81657

SPO_0000891



Please visit our website for directions, rates, placing orders and much more!

SPO_0000892

| From: | Rob Glucksman |
| Sent: | Thursday, February 18, 2016 3:33 PM MST |
| To: | Ryan Smith |
| CC: | Mark F. Bell |
| Subject: | RE: 50033287 |

Ryan,

Thanks for sending these over again. Mark Bell is going to reach out to you to walk through some of your comments. He is with Foster Graham Milstein & Calisher and is assisting us with these transfers. I think we're pretty close though.

Thanks,
Rob

**From:** Ryan Smith [mailto:ryan@solarisvail.com]
**Sent:** Friday, February 12, 2016 6:40 PM
**To:** Rob Glucksman <rglucksman@coloradoregionalcenter.com>; Mike Murray <mike.murray@solarisvail.com>
**Cc:** Meagan Hayes <mhayes@wavelandventures.com>; Rick Hayes <rhayes@wavelandventures.com>; Mark F. Bell <mbell@fostergraham.com>; Michael C. Bullock <mbullock@fostergraham.com>
**Subject:** RE: 50033287

Rob,

The following documents are attached in clean and redline to the drafts that you provided below:

- Transfer Agreement
  - o I appreciate your proposing this agreement as it is good vehicle for the parties' to document their agreement respecting the transfers. Accordingly, I have carried over into it several of the provisions from the last draft of the so-called put notice. Additionally, I have omitted some of the inapplicable provisions; made the acknowledgments, reps and warranties, releases, and indemnities mutual; and modified other provisions to conform with the unique aspects of this transaction. Finalizing this document will likely require further discussion.
- CRCPS Put Notice
  - o This document is generally acceptable, though I have further simplified it due to the advent of the Transfer Agreement.
- Bill of Sale

The Special Warranty Deed is also generally acceptable with the exception of the changes to the Permitted Exceptions listed on Schedule B, which will have to be addressed. Are you obtaining a new owner policy or downdating the existing lender policy in connection with the transfer?

After you've had a chance to review, let's setup a time next week to discuss any open items.

Thanks,

SPO_0000927

Ryan

**From:** Ryan Smith
**Sent:** Tuesday, February 9, 2016 2:46 PM
**To:** 'Rob Glucksman' <rglucksman@coloradoregionalcenter.com>; Mike Murray <mike.murray@solarisvail.com>
**Cc:** Meagan Hayes <mhayes@wavelandventures.com>; Rick Hayes <rhayes@wavelandventures.com>; Mark F. Bell <mbell@fostergraham.com>; Michael C. Bullock <mbullock@fostergraham.com>
**Subject:** RE: 50033287

Thanks, Rob. We will review and follow up.

**From:** Rob Glucksman [mailto:rglucksman@coloradoregionalcenter.com]
**Sent:** Tuesday, February 9, 2016 10:49 AM
**To:** Ryan Smith <ryan@solarisvail.com>; Mike Murray <mike.murray@solarisvail.com>
**Cc:** Meagan Hayes <mhayes@wavelandventures.com>; Rick Hayes <rhayes@wavelandventures.com>; Mark F. Bell <mbell@fostergraham.com>; Michael C. Bullock <mbullock@fostergraham.com>
**Subject:** RE: 50033287

Hi Ryan,

Apologies for the delay. Attached for your review please find the following documents for your review:

- Transfer Agreement
- CRCPS Put Notice
- Special Warranty Deed
- Bill of Sale

Please let us know if you have any questions or comments.

Best,
Rob

**From:** Ryan Smith [mailto:ryan@solarisvail.com]
**Sent:** Monday, February 01, 2016 8:52 AM
**To:** Rob Glucksman <rglucksman@coloradoregionalcenter.com>; Mike Murray <mike.murray@solarisvail.com>
**Cc:** Meagan Hayes <mhayes@wavelandventures.com>
**Subject:** RE: 50033287

Rob,

I am just following up on our conversation to see if you have made any progress with respect to the transfers. I believe that you were last week expecting to receive comments from outside counsel on the structure and put notice.

Thanks,

Ryan

**From:** Ryan Smith
**Sent:** Friday, January 22, 2016 11:55 AM
**To:** 'Rob Glucksman' <rglucksman@coloradoregionalcenter.com>; Mike Murray <mike.murray@solarisvail.com>
**Cc:** Meagan Hayes <mhayes@wavelandventures.com>
**Subject:** RE: 50033287

Rob,

I am following up on your email below and my voicemail of yesterday. What is the status of your review of the deed and put notice?

Let's pick up where we left off in formally documenting the unit transfers. Give me a call to discuss.

Thanks,

Ryan

*SOLARIS*

RYAN SMITH
GENERAL COUNSEL
141 EAST MEADOW DRIVE, SUITE 211
VAIL, COLORADO 81657

M: 303.888.0969
F: 970.479.6666

**From:** Rob Glucksman [mailto:rglucksman@coloradoregionalcenter.com]
**Sent:** Sunday, November 15, 2015 12:46 PM
**To:** Ryan Smith <ryan@solarisvail.com>; Mike Murray <mike.murray@solarisvail.com>
**Cc:** Meagan Hayes <mhayes@wavelandventures.com>
**Subject:** RE: 50033287

Ryan,

Thanks for sending this. We're having our attorney review the deed as well as the put notice.

Best,
Rob

SPO_0000929

**From:** Ryan Smith [mailto:ryan@solarisvail.com]
**Sent:** Wednesday, November 11, 2015 5:07 PM
**To:** Rob Glucksman <rglucksman@coloradoregionalcenter.com>; Mike Murray <mike.murray@solarisvail.com>
**Cc:** Meagan Hayes <mhayes@wavelandventures.com>
**Subject:** RE: 50033287

Rob,

A draft Special Warranty Deed is attached. The exceptions are cut and paste from Schedule B-2 of a recent title commitment. Let me know if you have any comments.

Did you have any comments to the draft "put notice" that I circulated a week or so ago?

Thanks,

Ryan

**From:** Rob Glucksman [mailto:rglucksman@coloradoregionalcenter.com]
**Sent:** Saturday, November 7, 2015 3:57 PM
**To:** Ryan Smith <ryan@solarisvail.com>; Mike Murray <mike.murray@solarisvail.com>
**Cc:** Meagan Hayes <mhayes@wavelandventures.com>
**Subject:** RE: 50033287

That works. Thanks, Ryan. Safe travels.

**From:** Ryan Smith [mailto:ryan@solarisvail.com]
**Sent:** Saturday, November 07, 2015 11:10 AM
**To:** Rob Glucksman <rglucksman@coloradoregionalcenter.com>; Mike Murray <mike.murray@solarisvail.com>
**Cc:** Meagan Hayes <mhayes@wavelandventures.com>
**Subject:** RE: 50033287

Rob, I am happy to prepare the deed, however, I am traveling through Monday and likely will not be able to get to it until early next week. Does that work for you?

**From:** Rob Glucksman [mailto:rglucksman@coloradoregionalcenter.com]
**Sent:** Wednesday, November 4, 2015 10:14 AM
**To:** Mike Murray <mike.murray@solarisvail.com>; Ryan Smith <ryan@solarisvail.com>
**Cc:** Meagan Hayes <mhayes@wavelandventures.com>
**Subject:** FW: 50033287

Hey guys,

This is the note I received from Gail at LTGC. They will not be able to prepare the special warranty deeds. Would you mind preparing a first cut of one?

SPO_0000930

Thanks,
Rob

**From:** Gail Ferry [mailto:gferry@ltgc.com]
**Sent:** Monday, November 02, 2015 8:29 PM
**To:** Rob Glucksman <rglucksman@coloradoregionalcenter.com>
**Cc:** Peter Griffiths <pgriffiths@ltgc.com>; Scott Bennetts <sbennetts@ltgc.com>; Katie Kuchler <kkuchler@ltgc.com>
**Subject:** 50033287

Rob,
As you and I have discussed, Colorado Regional Project Solaris, LLLP, a Colorado Limited Libility Limited Partnership, who was the lender for the property on the above referenced file number, will be coming into title on 10 of those properties in the name of "Solaris Property Owner III, LLC, a Colorado Limited Liability Company". In that regard, you have asked that Land Title be involved in this transaction.

To summarize what we have discussed:
1. Land Title will not be able to prepare the special warranty deeds from the current property owner, Solaris Property Owner I LLC, to the new owner.
2. With very specific instructions from Colorado Regional's attorney, Land Title can perform a closing function, i. e prepare settlement sheets, etc. While we could do each of the 10 properties at a separate residential closing fee of $350 per property, doing all 10 properties under one closing fee could be done at our commercial closing fee rate of $500, plus $50/hour for labor over 5 hours. (Holding of earnest money funds is an additional $50.)
3. To better understand the rights you have under your existing policy, you may work with First American directly. Mr. Scott Bennetts from our commercial department is also available to assist. Scott's email address is per above, and his direct phone number is 303-850-4175.
4. Regardless of the coverage you have under your lender's policy, in order for us to be involved in a closing function, it would be very good for an update of the lender's policy to occur so that any changes in the status of title can be identified. Scott has quoted $4,000 as the cost of issuing an update endorsement.

I believe that this covers the items we discussed. Please let me know if you have any other questions.

Sincerely,
Gail

Gail Ferry
Vice President - Eagle County Manager
**Land Title Guarantee Company**
**Direct: 970-477-4515**
Efax: 877-276-5043
Email: gferry@ltgc.com
Address: 610 West Lionshead Circle
Suite 200
(Landmark Building)
Vail, Colorado 81657



Please visit our website for directions, rates, placing orders and much more!

SPO_0000932

| From: | Ryan Smith |
|---|---|
| Sent: | Wednesday, March 2, 2016 6:11 PM MST |
| To: | Rob Glucksman (rglucksman@coloradoregionalcenter.com); Mark F. Bell |
| CC: | Rick Hayes; Peter Knobel |
| Subject: | CRC/Solaris Unit Transfer Update |
| Attachments: | Letter Agreement re Collateral Unit Distributions_SPO Draft 3.2.16.docx |

Rob and Mark,

Peter and Rick met yesterday and I understand that they agreed that the parties would hold off on actually transferring the eligible units until further notice but continue to perform as if the transfers happened on the respective 3-year Prepayment Dates. The rationale is to save CRC potential transaction costs.

Accordingly, at Peter's and Rick's request, I have drafted a letter agreement to document that arrangement. I have tried to keep it as simple as possible but the fact that CRC will be in possession of units that continue to be owned by Solaris does give rise to some issues that need to be addressed. The attached letter agreement is my attempt to do so in a manner that is fair to both parties and consistent with the parties' performance.

Please review and let me know your comments.

Thanks,

Ryan

*SOLARIS*

RYAN SMITH
GENERAL COUNSEL
141 EAST MEADOW DRIVE, SUITE 211
VAIL, COLORADO 81657

M: 303.888.0969
F: 970.479.6666

SOLARIS PROPERTY OWNER I, LLC
141 East Meadow Drive, Suite 211
Vail, Colorado 81657

March 17, 2015

Colorado Regional Center Project Solaris, LLLP
300 W. 6th Street, Suite 1810
Austin, TX 78701

Re: Letter Agreement Regarding Collateral Unit Distributions ("Letter Agreement")

To Whom It May Concern,

Reference is hereby made to that certain Promissory Note dated April 18, 2012, executed by Solaris Property Owner I, LLC, a Delaware limited liability company ("Borrower"), as assignee of Solaris Property Owner, LLC, a Delaware limited liability company ("Original Borrower") pursuant to that certain Assignment of Loan Agreement dated October 12, 2011 by and between Original Borrower and Borrower, and payable to the order of Colorado Regional Center Project Solaris, LLLP, a Colorado limited liability limited partnership ("Lender") in the original maximum principal amount of One Hundred Million and No/100 Dollars ($100,000,000.00) (as amended through the date hereof and as the same may be further amended, restated, replaced, supplemented, or otherwise modified from time to time, collectively the "Note"), pursuant to which Borrower has become indebted to Lender with respect to a loan ("Loan") made pursuant to that certain Loan Agreement dated November 5, 2010 between Original Borrower and Lender (as amended through the date hereof and as the same may be further amended, restated, replaced, supplemented, or otherwise modified from time to time, the "Loan Agreement"), which Loan is further evidenced, secured or governed by other instruments and documents executed in connection with the Loan, including, but not limited to, that certain Operating Payment Agreement dated November 5, 2010 by and between Borrower, as successor in interest to Original Borrower, and Lender (as amended through the date hereof and as the same may be further amended, restated, replaced, supplemented, or otherwise modified from time to time, the "Operating Payment Agreement") (such other instruments and documents and Operating Payment Agreement, together with the Note and the Loan Agreement, as each have been amended through the date hereof and as the same may be further amended, restated, replaced, supplemented, or otherwise modified from time to time, including by this Letter Agreement, collectively, the "Loan Documents"). All capitalized terms used but not otherwise defined herein shall have the meaning set forth in the Loan Documents.

Pursuant to the Loan Documents, commencing on the date that is three (3) years from the date of a Loan Advance (the "Prepayment Date"), Borrower has the right to transfer the Collateral Unit by which such Loan Advance is secured to Lender in full satisfaction of such Loan Advance (each, a "Collateral Unit Distribution"). Borrower has duly notified Lender of its intent to effect a Collateral Unit Distribution of each Collateral Unit, in each case on the Prepayment Date corresponding to such Collateral Unit.

In order to reduce the transaction costs that Lender would incur in connection with such Collateral Unit Distributions, Lender desires for Borrower to refrain from causing such Collateral Unit

SPO_0000971

Distributions, and Borrower has agreed to refrain from causing such Collateral Unit Distributions, on the terms and conditions more particularly set forth in this Letter Agreement.

Therefore, Lender and Borrower hereby agree that, with respect to each Collateral Unit:

(i) <u>No Collateral Unit Distributions</u>. Borrower shall not cause a Collateral Unit Distribution until on or after the earlier to occur of (i) the date that is thirty (30) days from written notice from Borrower to Lender of Borrower's intent to cause a Collateral Unit Distribution, or (ii) the Maturity Date of the Loan Advance corresponding to such Collateral Unit;

(ii) <u>Interest Calculation</u>. Notwithstanding the foregoing, for purposes of calculating interest and any other amounts owing by and between Lender and Borrower pursuant to the Loan Documents in connection with such Collateral Unit, a Collateral Unit Distribution shall be deemed to have occurred on the Prepayment Date corresponding to such Collateral Unit (the "<u>Effective Collateral Unit Distribution Date</u>");

(iii) <u>Operating Payment Calculation</u>. For purposes of calculating the Operating Payments attributable to such Collateral Unit pursuant to the Operating Payment Agreement, the Operating Payment Commencement Date shall be deemed to be the Effective Collateral Unit Distribution Date;

(iv) <u>Lender Possession; Lender Responsibilities</u>. Commencing on the Prepayment Date corresponding to such Collateral Unit, Lender shall (a) be entitled to possession of the Collateral Unit and all revenue from such Collateral Unit; (b) maintain, manage, and operate such Collateral Unit in the manner presently conducted by it and timely pay all costs and expenses thereof; (c) pay all taxes and other charges now or hereafter levied or assessed or imposed against the Collateral Unit, or any part thereof, or the furnishings as the same become due and payable (subject to paragraph v. below); (d) keep the Collateral Unit and furnishings in good working order and repair; (e) obtain and maintain insurance for Lender and the Collateral Unit providing at least comprehensive "all-risk" property insurance on the Collateral Unit and furnishings and commercial general liability insurance, including a broad form comprehensive general liability endorsement and coverage against claims for personal injury, bodily injury, death or property damage occurring upon, in or about such Collateral Unit, each subject to the reasonable approval of Borrower as to insurance companies, amounts, deductibles, loss payees and insureds; (f) not create, incur, assume or suffer to exist any lien on any portion of the Collateral Unit or permit any such action to be taken; (g) bear all risk of loss with respect to the Collateral Unit and furnishings except to the extent caused by the willful misconduct of Borrower; and (h) hold harmless and indemnify Borrower from and against any and all costs, expenses, damages, claims, demands and liabilities of every kind or character relating to such Collateral Unit except to the extent caused by the willful misconduct of Borrower; and

(v) <u>Escrow of Taxes and HOA Assessments</u>.

SPO_0000972

a. <u>Initial Deposits</u>. On or before April 1, 2016, Lender shall deposit with Borrower (i) an amount equal to the ad valorem property taxes ("<u>Taxes</u>") estimated to be next coming due (i.e., April 30, 2016) for the 2015 tax year less all amounts previously escrowed by Lender with Borrower on account of Taxes for the 2015 tax year, and (ii) an amount equal to the homeowner's association assessments (the "<u>HOA Assessments</u>") next coming due less all amounts previously escrowed by Lender with Borrower on account of such HOA Assessments.

b. <u>Monthly Deposits</u>. On each Settlement Date, Lender shall pay to Borrower (i) the pro-rata portion of the Taxes that Borrower estimates will be coming due in the immediately succeeding year in order to accumulate with Borrower sufficient funds to pay all such Taxes prior to their respective due dates, and (ii) the pro-rata portion of the HOA Assessments that Borrower estimates will next be coming due in order to accumulate with Borrower sufficient funds to pay all such HOA Assessments prior to their respective due dates (the foregoing amounts so deposited with Lender are hereinafter called the "<u>Escrow Funds</u>" and the account in which such amounts are held shall hereinafter be referred to as the "<u>Escrow Account</u>").

c. <u>Application of Escrow Funds</u>. Borrower will apply the Escrow Funds to payments of Taxes and HOA Dues required to be made by Lender hereunder. If the amount of the Escrow Funds shall exceed the amounts due for Taxes and HOA Dues, Borrower shall credit such excess against future payments to be made to the Escrow Funds. If at any time Borrower reasonably determines that the Escrow Funds are not or will not be sufficient to pay Taxes and HOA Dues by the due dates thereof, Borrower shall notify Lender of such determination and Lender shall deposit with Borrower the amount that Borrower estimates is sufficient to make up the deficiency prior to the due date of the Taxes and/or HOA Assessments.

(vi) <u>Transfers</u>. Upon any transfer by deed of a Collateral Unit from Borrower to Lender in accordance with the Loan Documents, as amended by this Letter Agreement, Lender shall accept the transfer of such Collateral Unit in full satisfaction of the corresponding Loan Advance (a) in "as-is, where-is" condition and subject to any and all wear and tear or damage caused, permitted, or suffered by, through, or under Lender or its permittees, and (b) subject to all liens or other encumbrances caused, permitted, or suffered by, through, or under Lender or its permittees. Any amount remaining in the Escrow Funds after the transfer by deed of a Collateral Unit from Borrower to Lender shall be returned to Lender.

In the event of conflict between the terms and conditions of this Letter Agreement and the Loan Documents, the terms and conditions of this Letter Agreement shall control in point of conflict. Except as expressly amended hereby, the Loan Documents shall remain in full force and effect in accordance with their terms.

[SIGNATURE PAGE FOLLOWS]

SPO_0000973

Accepted and agreed effective as of the date first set forth above:

**BORROWER**

SOLARIS PROPERTY OWNER I, LLC,
a Delaware limited liability company


By: _____
    Ryan A. Smith, its General Counsel

**LENDER**

COLORADO REGIONAL CENTER PROJECT SOLARIS, LLLP,
a Colorado limited liability limited partnership

By:_____
Name: _____
Its: _____

SPO_0000974

| From: | Ryan Smith |
|---|---|
| Sent: | Tuesday, March 15, 2016 5:20 PM MDT |
| To: | Peter Knobel; Rob Glucksman |
| CC: | Mark F. Bell; Rick Hayes |
| Subject: | RE: CRC/Solaris Unit Transfer Update |

Rob,

In that case, let's finalize the transfer agreement and related documents that we exchanged drafts of last month. Mark and I had a productive conversation with respect to those documents earlier this month, and, prior to the temporary change in plan, Mark was going to send me updated drafts of those documents. So, let's pickup where we left off and finalize the documents with the goal of closing a unit next week.

Thanks,

Ryan

**From:** Peter Knobel
**Sent:** Tuesday, March 15, 2016 4:08 PM
**To:** Rob Glucksman <rglucksman@coloradoregionalcenter.com>
**Cc:** Ryan Smith <ryan@solarisvail.com>; Mark F. Bell <mbell@fostergraham.com>; Rick Hayes <rhayes@wavelandventures.com>
**Subject:** Re: CRC/Solaris Unit Transfer Update

Great let's start

Best regards,

Peter Knobel

On Mar 15, 2016, at 4:54 PM, Rob Glucksman <rglucksman@coloradoregionalcenter.com> wrote:

Ryan,

After discussing with Rick, I believe the plan will be to move ahead with the transfers as we initially intended. Please let us know if you have any questions.

Thanks,
Rob

**From:** Ryan Smith [mailto:ryan@solarisvail.com]
**Sent:** Wednesday, March 02, 2016 6:11 PM
**To:** Rob Glucksman <rglucksman@coloradoregionalcenter.com>; Mark F. Bell <mbell@fostergraham.com>

SPO_0000986

**Cc:** Rick Hayes <rhayes@wavelandventures.com>; Peter Knobel <peter@solarisvail.com>
**Subject:** CRC/Solaris Unit Transfer Update

Rob and Mark,

Peter and Rick met yesterday and I understand that they agreed that the parties would hold off on actually transferring the eligible units until further notice but continue to perform as if the transfers happened on the respective 3-year Prepayment Dates. The rationale is to save CRC potential transaction costs.

Accordingly, at Peter's and Rick's request, I have drafted a letter agreement to document that arrangement. I have tried to keep it as simple as possible but the fact that CRC will be in possession of units that continue to be owned by Solaris does give rise to some issues that need to be addressed. The attached letter agreement is my attempt to do so in a manner that is fair to both parties and consistent with the parties' performance.

Please review and let me know your comments.

Thanks,

Ryan

**SOLARIS**
RYAN SMITH
GENERAL COUNSEL
141 EAST MEADOW DRIVE, SUITE 211
VAIL, COLORADO 81657

M: 303.888.0969
F: 970.479.6666

SPO_0000987

| From: | Mark F. Bell |
|---|---|
| Sent: | Tuesday, March 22, 2016 3:39 PM MDT |
| To: | Ryan Smith |
| CC: | Rob Glucksman |
| Subject: | Transfer Agreement |
| Attachments: | Transfer Agreement (00279797xC1C96).pdf |

Ryan,

Attached are the additional revisions to the Transfer Agreement. Please call my cell with any comments—303-870-4809. I am working remotely.

Thank you,

Mark

**Foster Graham Milstein & Calisher, LLP**
360 South Garfield Street | Suite 600
Denver, CO 80209
**Main:** 303-333-9810
**Fax:** 303-333-9786
Fostergraham.com



FOSTER GRAHAM MILSTEIN & CALISHER LLP
ATTORNEYS AT LAW

DENVER - COLORADO SPRINGS



Confidentiality Notice and Disclaimer: The information contained in this e-mail may contain privileged and/or confidential information intended only for the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any dissemination, distribution, copying or other use of this e-mail is strictly prohibited. If you have received it in error, please immediately notify us by telephone (303-333-9810) or e-mail, and delete this message. Although this e-mail and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received, it is the responsibility of the recipient to ensure it is virus free and no responsibility is accepted by Foster

Graham Milstein & Calisher, LLP for any loss or damage arising in any way from its use.

SPO_0000990

| From: | Ryan Smith |
|---|---|
| Sent: | Saturday, March 26, 2016 3:38 PM MDT |
| To: | Mark F. Bell |
| CC: | Rob Glucksman (rglucksman@coloradoregionalcenter.com) |
| Subject: | RE: Transfer Agreement |
| Attachments: | Transfer Agreement (00254190-4xC1C96) (SPO markup 3.26.16_clean).docx, Transfer Agreement (00254190-4xC1C96) (SPO markup 3.26.16_red).docx |

Mark,

Thanks for your patience this week. A revised draft of the Transfer Agreement is attached in clean and redline to the draft that Angela circulated on Wednesday. I accepted most of your proposed changes and made tweaks to others.

I believe that we are in agreement on the form of the Bill of Sale and Special Warranty Deed, with the list of Permitted Exceptions to the Deed being the only other outstanding item. Did you get an updated title policy that we could look to for that list?

Please let me know if you have any further comments to the Transfer Agreement. I'd like to try finalize it by Monday.

Thanks,

Ryan

**From:** Mark F. Bell [mailto:mbell@fostergraham.com]
**Sent:** Wednesday, March 23, 2016 11:09 AM
**To:** Ryan Smith <ryan@solarisvail.com>
**Subject:** RE: Transfer Agreement

No problem. We may be closing the office shortly.

**From:** Ryan Smith [mailto:ryan@solarisvail.com]
**Sent:** Wednesday, March 23, 2016 11:05 AM
**To:** Angela N. Welles <awelles@fostergraham.com>
**Cc:** Mark F. Bell <mbell@fostergraham.com>
**Subject:** RE: Transfer Agreement

Thanks, Angela.

Mark, I am in meetings all afternoon today and likely will not be able to get back to you with comments until tomorrow at the earliest.

**From:** Angela N. Welles [mailto:awelles@fostergraham.com]
**Sent:** Wednesday, March 23, 2016 8:37 AM
**To:** Ryan Smith <ryan@solarisvail.com>

**Cc:** Mark F. Bell <mbell@fostergraham.com>
**Subject:** Transfer Agreement

Please see the attached Transfer Agreement.

If you need anything further, please let me know.

Thank you,

**Angela Welles**
Paralegal
awelles@fostergraham.com

**Foster Graham Milstein & Calisher, LLP**
360 South Garfield Street | Suite 600
Denver, CO 80209
**Main:** 303-333-9810
**Fax:** 303-333-9786
Fostergraham.com



FOSTER GRAHAM MILSTEIN & CALISHER, LLP
ATTORNEYS AT LAW
DENVER - COLORADO SPRINGS



Confidentiality Notice and Disclaimer: The information contained in this e-mail may contain privileged and/or confidential information intended only for the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any dissemination, distribution, copying or other use of this e-mail is strictly prohibited. If you have received it in error, please immediately notify us by telephone (303-333-9810) or e-mail, and delete this message. Although this e-mail and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received, it is the responsibility of the recipient to ensure it is virus free and no responsibility is accepted by Foster Graham Milstein & Calisher, LLP for any loss or damage arising in any way from its use.

| From: | Ryan Smith |
|---|---|
| Sent: | Monday, May 2, 2016 5:15 PM MDT |
| To: | Mark F. Bell |
| Subject: | Solaris/CRC Transfer |

Mark,

Just checking-in on the status. When we last spoke you were going to circle back with Rob on the specific units that he was prepared to transfer. Solaris is prepared to transfer each of the eligible units.

Thanks,

Ryan

*SOLARIS*

RYAN SMITH
GENERAL COUNSEL
141 EAST MEADOW DRIVE, SUITE 211
VAIL, COLORADO 81657

M: 303.888.0969
F: 970.479.6666

SPO_0001069

| | |
|---|---|
| **From:** | Ryan Smith |
| **Sent:** | Thursday, May 19, 2016 5:38 PM MDT |
| **To:** | Mark F. Bell |
| **CC:** | Rob Glucksman (rglucksman@coloradoregionalcenter.com) |
| **Subject:** | Solaris/CRC Unit Transfers |
| **Attachments:** | Transfer Agreement (00254190-4xC1C96) (SPO markup 5.19.16_clean).docx, Transfer Agreement (00254190-4xC1C96) (SPO markup 5.19.16_red).docx |

Mark,

I am following up on the voicemail that I left for you earlier today. Is CRC prepared to begin transferring units? When we last spoke you were awaiting confirmation from Land Title that the lender's policy would provide coverage once CRC takes title to the units, which I believe it will.

Attached is an updated Transfer Agreement in clean and redline to the March 16 version. Since the time that we agreed on that version, Solaris paid the 2015 real property taxes that come due on the collateral units. I updated Section 6 (Property Tax Prorations) to reflect that fact.

Please provide an update as Solaris is prepared to begin transferring the units.

Thanks,

Ryan

**SOLARIS**

RYAN SMITH
GENERAL COUNSEL
141 EAST MEADOW DRIVE, SUITE 211
VAIL, COLORADO 81657

M: 303.888.0969
F: 970.479.6666

| From: | Mark F. Bell |
|---|---|
| Sent: | Tuesday, May 31, 2016 10:01 AM MDT |
| To: | Ryan Smith |
| Subject: | Solaris |

Ryan,

My partner, Michael Bullock, will be in touch with you to finish up the closing. I believe 18 units are now eligible and our client would like to have one closing.

I hope you enjoyed the long weekend.

Mark

_____

**Mark F. Bell**

**Foster Graham Milstein & Calisher, LLP**
360 South Garfield Street | Suite 600
Denver, CO 80209
**Main:** 303-333-9810
**Fax:** 303-333-9786
Fostergraham.com

DENVER - COLORADO SPRINGS

 

Confidentiality Notice and Disclaimer: The information contained in this e-mail may contain privileged and/or confidential information intended only for the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any dissemination, distribution, copying or other use of this e-mail is strictly prohibited. If you have received it in error, please immediately notify us by telephone (303-333-9810) or e-mail, and delete this message. Although this e-mail and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received, it is the responsibility of the recipient to ensure it is virus free and no responsibility is accepted by Foster Graham Milstein & Calisher, LLP for any loss or damage arising in any way from its use.

| | |
|---|---|
| **From:** | Mark F. Bell |
| **Sent:** | Tuesday, May 31, 2016 10:32 AM MDT |
| **To:** | Ryan Smith |
| **Subject:** | RE: Solaris |

I hesitate to answer given the history, however, I believe we may be able to close next week. Mark

**From:** Ryan Smith [mailto:ryan@solarisvail.com]
**Sent:** Tuesday, May 31, 2016 10:16 AM
**To:** Mark F. Bell <mbell@fostergraham.com>
**Subject:** RE: Solaris

Mark,

Thanks for the update. What is your sense of timing?

Ryan

**From:** Mark F. Bell [mailto:mbell@fostergraham.com]
**Sent:** Tuesday, May 31, 2016 10:01 AM
**To:** Ryan Smith <ryan@solarisvail.com>
**Subject:** Solaris

Ryan,
My partner, Michael Bullock, will be in touch with you to finish up the closing. I believe 18 units are now eligible and our client would like to have one closing.
I hope you enjoyed the long weekend.
Mark

**Mark F. Bell**

**Foster Graham Milstein & Calisher, LLP**
360 South Garfield Street | Suite 600
Denver, CO 80209
**Main:** 303-333-9810
**Fax:** 303-333-9786
Fostergraham.com

SPO_0001106

DENVER - COLORADO SPRINGS

 

Confidentiality Notice and Disclaimer: The information contained in this e-mail may contain privileged and/or confidential information intended only for the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any dissemination, distribution, copying or other use of this e-mail is strictly prohibited. If you have received it in error, please immediately notify us by telephone (303-333-9810) or e-mail, and delete this message. Although this e-mail and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received, it is the responsibility of the recipient to ensure it is virus free and no responsibility is accepted by Foster Graham Milstein & Calisher, LLP for any loss or damage arising in any way from its use.

SPO_0001107

| From: | Michael C. Bullock |
|---|---|
| Sent: | Tuesday, June 14, 2016 9:42 AM MDT |
| To: | Ryan Smith |
| CC: | Mark F. Bell |
| Subject: | Transfer Agreement |
| Attachments: | Transfer Agreement REDLINE FINAL (00316124xC1C96).docx |

Ryan,

I apologize for the delay. Attached is a copy of the redlined Transfer Agreement you previously sent over with one additional item added to the borrower's reps and warranties, which is a simple statement that the borrower will continue to abide by and comply with the EB-5 Program as set forth in the loan documents.

Let me or Mark know if you have any questions.

Thank you,

Michael

_____

**Michael C. Bullock**

**Foster Graham Milstein & Calisher, LLP**
360 South Garfield Street | Suite 600
Denver, CO 80209
**Main:** 303-333-9810
**Fax:** 303-333-9786
Fostergraham.com



FOSTER GRAHAM MILSTEIN & CALISHER LLP
ATTORNEYS AT LAW
DENVER · COLORADO SPRINGS



Confidentiality Notice and Disclaimer: The information contained in this e-mail may contain privileged and/or confidential information intended only for the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any dissemination, distribution, copying or other use of this e-mail is strictly prohibited. If you have received it in error, please immediately notify us by telephone (303-333-9810) or e-mail, and delete this message. Although this e-mail and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received, it is the responsibility of the recipient to ensure it is virus free and no responsibility is accepted by Foster Graham Milstein & Calisher, LLP for any loss or damage arising in any way from its use.

*SPO DRAFT* ~~3.26~~**5.19**.16

## TRANSFER AGREEMENT

This TRANSFER AGREEMENT (this "**Agreement**") is executed this _____ day of _____ 2016. By and between SOLARIS PROPERTY OWNER I, LLC, a Delaware limited liability company ("**Borrower**"), COLORADO REGIONAL CENTER PROJECT SOLARIS, LLLP, a Colorado limited liability limited partnership ("**Lender**"), and _____, a Colorado limited liability company ("**Designee**"). Lender and Designee may hereafter be referred to each as a "**Lender Party**" or collectively as the "**Lender Parties**".

### Recitals

A.     Reference is hereby made to that certain Promissory Note dated April 18, 2012, executed by Borrower, as assignee of Solaris Property Owner, LLC, a Delaware limited liability company ("**Original Borrower**") pursuant to that certain Assignment of Loan Agreement dated October 12, 2011 by and between Original Borrower and Borrower, and payable to the order of Lender ("**Lender**") in the original maximum principal amount of One Hundred Million and No/100 Dollars ($100,000,000.00), as amended by that certain Allonge to Promissory Note dated of even date therewith by and between Borrower and Lender (as amended through the date hereof and as the same may be further amended, restated, replaced, supplemented, or otherwise modified from time to time, collectively the "**Note**"), Borrower has become indebted to Lender with respect to a loan ("**Loan**") made pursuant to that certain Loan Agreement dated November 5, 2010 between Original Borrower and Lender (as amended through the date hereof and as the same may be further amended, restated, replaced, supplemented, or otherwise modified from time to time, the "**Loan Agreement**"), which Loan is secured by one of more Deeds of Trust recorded against the Collateral Units in the real property records of Eagle County, Colorado (as amended through the date hereof and as the same may be further amended, restated, replaced, supplemented, or otherwise modified from time to time, each a "**Deed of Trust**" and collectively, the "**Deeds of Trust**"), and further evidenced, secured or governed by other instruments and documents executed in connection with the Loan, including, but not limited to (i) that certain Operating Payment Agreement dated November 5, 2010 by and between Borrower, as successor in interest to Original Borrower, and Lender (the "**Operating Payment Agreement**"), (ii) that certain Memorandum of Understanding dated April 1, 2011 by and between Borrower, as successor in interest to Original Borrower, and Lender (the "**MOU**"), and (iii) that certain Guaranty Agreement dated April 18, 2012 by Peter Knobel for the benefit of Lender (the "**Guaranty**"), and as such loan documents were amended pursuant to that certain Omnibus Amendment to EB-5 Investment Documents dated March 8, 2012 by and between Original Borrower and Lender (the "**Omnibus Amendment**") (such other instruments and documents, Operating Payment Agreement, MOU, Guaranty, and Omnibus Amendment, together with the Note, the Loan Agreement and Deeds of Trust, as amended through the date hereof and as the same may be further amended, restated, replaced, supplemented, or otherwise modified from time to time, collectively, the "**Loan Documents**"). All capitalized terms used but not otherwise defined herein shall have the meaning set forth in the Loan Documents.

B.     Pursuant to the Loan Documents, Borrower notified Lender that it intends to cause the occurrence of a Collateral Unit Distribution by tendering Collateral Unit _____ (the

SPO_0001109

"**Tendered Unit**") to Lender, or its designee, in satisfaction of that certain Loan Advance made _____ in the principal amount of $_____ (the "**Satisfied Loan Advance**") against the Tendered Unit, as more particularly set forth on <u>Exhibit A</u> of the Note.  The legal description of the Tendered Unit is set forth in the Deed (as defined below).

**Agreement**

Now, therefore, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Lender and Borrower agree as follows:

1.      <u>Designated Transferee</u>. Lender has designated Designee as the transferee of the Tendered Unit.

2.      <u>Acknowledgments.</u>  The parties hereto each affirm the foregoing Recitals and reincorporate them herein as covenants.

a.      Borrower further acknowledges that:

i.      This Agreement is entered into without force or duress and as an act of the free will of Lender and Borrower, and the transfers of the Tendered Unit and Personal Property (defined below) to Lender or Designee are voluntary and absolute conveyances given with all knowledge of the circumstances;

ii.      The satisfaction of the amount of the Satisfied Loan Advance under the Loan Documents, as more particularly described below, constitutes good, adequate and valuable consideration for the conveyance of the Tendered Unit and Personal Property to Lender or Designee;

iii.      Upon conveyance of the Tendered Unit and Personal Property to Lender or Designee, Borrower will have no rights with respect to the Tendered Unit or Personal Property, including, without limitation, rights of redemption, rights to cure or reinstatement under the Colorado Revised Statutes, as they may be amended from time to time, or under any other applicable law;

iv.      Borrower will hereafter be estopped from asserting any claim or right of redemption as to the Tendered Unit or Personal Property; and

v.      As of the Effective Closing Date (defined below), Borrower has no equity in the Tendered Unit or Personal Property.

b.      Lender Parties further acknowledges that:

i.      This Agreement is entered into without force or duress and as an act of the free will of Lender Parties and Borrower, and the releases and satisfactions given to Borrower are voluntary and absolute releases and satisfactions given with all knowledge of the circumstances;

SPO_0001110

ii.     The transfer of the Tendered Unit and Personal Property, as more particularly described below, constitutes good, adequate and valuable consideration for the releases and satisfactions granted to Borrower hereunder;

iii.     Upon conveyance of the Tendered Unit and Personal Property to Lender, Lender Parties will have no rights with respect to the Satisfied Loan Advance; and

iv.     Lender Parties accept the Tendered Unit and Personal Property "as is" and "where is" in its condition on the date of Closing subject only to the express provisions of this Agreement.

3.     <u>Conveyance by Special Warranty Deed.</u>  On or before the Closing Date (as defined below), Borrower will execute and deliver to Lender or Designee a special warranty deed in the form attached hereto as **Exhibit "A"** (the "**Deed**"), and incorporated herein by this reference. Within three (3) business days of Closing (as defined below), Lender or Designee shall record the Deed with the Clerk and Recorder for the County of Eagle, Colorado. Upon delivery of the Deed for the Tendered Unit from Borrower to Lender or Designee, the Tendered Unit will be subject only to (A) those encumbrances and exceptions to title, if any, listed in (i) Schedule B attached to the Deed or (ii) any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with the Tendered Unit, or (iii) arising  by, through or under Lender or Designee, and (B) the Deed of Trust (collectively, the "**Permitted Exceptions**").

4.     <u>Conveyance of Personal Property.</u>  On or before the Closing Date, Borrower will execute and deliver to Lender or Designee a bill of sale in the form attached hereto as **Exhibit "B"** (the "**Bill of Sale**"), conveying all personal property owned by Borrower and used in connection with the ownership, development, maintenance and operation of the Tendered Unit ("**Personal Property**"), which is described with more detail in the Bill of Sale, free and clear of all liens and claims.

5.     <u>Closing Date; Effective Closing Date.</u>  The "**Closing Date**" shall mean _____, 2016. "**Closing**" shall be deemed to have occurred upon delivery of the Deed and Bill of Sale from Borrower to Lender or Designee. Notwithstanding anything herein or in the Loan Documents to the contrary, for purposes of calculating interest and any other amounts owing by and between Lender and Borrower pursuant to the Loan Documents in connection with the Tendered Unit and/or Satisfied Loan Advance, the Collateral Unit Distribution shall be deemed to have occurred on _____ (the "**Effective Closing Date**"), which date represents the Prepayment Date applicable to the Tendered Unit under the Loan Documents.

6.     Real Property ~~Tax Proration. Pursuant to the Loan Documents, Borrower previously collected from Lender ad valorem real property taxes attributable to the Tendered Unit for the period of time between the beginning of the tax year of the Effective Closing Date and the Effective Closing Date in the amount of $_____ (the "**Property Tax Escrow Amount**"). To the extent that the Property Tax Escrow Amount has not previously been paid by Borrower to the applicable taxing authorities for the tax year of the Effective Closing Date, Lender shall receive a credit against the amounts due and payable from Lender to Borrower under the~~

SPO_0001111

~~Loan Documents on the first Settlement Date (as defined in the MOU) to occur after Closing, or such other date as the parties shall hereafter mutually agree. For the avoidance of doubt and without limiting the generality of the Loan Documents.~~Taxes. Borrower paid prior to delinquency the ad valorem real property taxes assessed against the Tendered Unit for the 2015 tax year. Lender Parties shall be solely responsible for payment of all real property taxes and assessments on the Tendered Unit for ~~the year of the Effective Closing Date~~2016 and subsequent years.

7.      Closing Costs. Lender Parties shall pay (i) any escrow agent's fee, (ii) any applicable transfer or recording taxes, (iii) any costs incurred in recording the Deed or any other instruments, and (iv) any title insurance premiums. Each party shall pay their own attorneys' fees.

8.      Satisfaction of Loan Advance. Effective upon delivery of the Deed and Bill of Sale to Designee and subject to Section 14: (i) all Indebtedness with respect to the Tendered Unit, including, without limitation, the Satisfied Loan Advance, shall be fully paid, satisfied, discharged and released, (ii) the principal balance of the Note shall be reduced by the amount of the Satisfied Loan Advance, (iii) the Loan Documents shall be deemed to be amended by deleting all references to the Tendered Unit and/or Satisfied Loan Advance, and (v) all security interests, mortgages (including the Deed of Trust), guaranties (including the Guaranty), pledges and other liens granted to or held by Lender and any other secured parties under the security documents with respect only to the Satisfied Loan Advance shall be forever satisfied, released and discharged without further action by the parties. The provisions of this Section 8 shall survive Closing.

9.      Mutual Releases.

        a.      Release of Lender Parties.  Subject to Section 14 below, Borrower, and its affiliates, general partners, limited partners, employees, managers, members, and other representatives and agents, hereby, unconditionally and forever discharge and release Lender Parties, their affiliates, designees, general partners, limited partners, employees, attorneys, lenders, and other representatives from any and all claims and/or liabilities of every nature and kind, whether known or unknown, arising out of or related to the Tendered Unit and/or Satisfied Loan Advance, except for claims against Lender Parties which may arise from a breach of this Agreement or the documents executed in connection herewith. The provisions of this Section 9.a. shall survive Closing.

        b.      Release of Borrower. Subject to Section 14 below, Lender Parties, and their affiliates, general partners, limited partners, employees, managers, members, and other representatives and agents, hereby, unconditionally and forever discharge and release Borrower, its affiliates, designees, general partners, limited partners, employees, attorneys, lenders, and other representatives from any and all claims and/or liabilities of every nature and kind, whether known or unknown, arising out of or related to the Tendered Unit and/or Satisfied Loan Advance, except for claims against Borrower which may arise from a breach of this Agreement or the documents executed in connection herewith.  The provisions of this Section 9.b. shall survive Closing.

10.     Representations and Warranties of Borrower.  Borrower hereby represents and warrants to Lender Parties, as of the date hereof and Closing, as follows:

SPO_0001112

a. Borrower owns good, marketable and fee simple title in the Tendered Unit and the Personal Property, free and clear of any and all liens, security interests, charges and encumbrances, except for the Permitted Exceptions;

b. Borrower does not have any knowledge of any material physical, structural, mechanical or electrical defect affecting any of the Personal Property and/or the improvements attached to or made a part of the Tendered Unit;

c. Borrower is not currently insolvent, and none of Borrower's property is subject to any bankruptcy proceedings, assignment for benefit of creditors or similar proceedings, nor has Borrower committed any act of bankruptcy;

d. To the knowledge of Borrower, there are no and have never been any Hazardous Materials (as that term is defined below) located, generated or stored in, on or under the Tendered Unit in violation of any Hazardous Materials laws. Borrower has received no notice of any violation or claim of violation of any law, rule, ordinance or regulation relating to any Hazardous Materials. Borrower hereby warrants and represents that it has not taken any measures to remove, clean-up or abate any Hazardous Materials at the Tendered Unit. As used in this subparagraph, the term "**Hazardous Materials**" shall include any substance, liquid or gas in any quantity or manner which violates any Hazardous Materials laws:

(1) the presence of which requires investigation or remediation under any federal, state or local statute, regulation, ordinance, order, action, policy or common law; or

(2) which is defined as a hazardous waste, hazardous substance, pollutant or contaminant under any federal, state or local statute, regulation, rule or ordinance, including, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act; or

(3) which is toxic, explosive, corrosive, flammable, infectious, radioactive, mutenogenic, or otherwise hazardous or toxic and is regulated by any government or authority, agency, department, commission, board, agent or instrumentality of the United States, the state where the Tendered Unit is located, or any political subdivision thereof; or,

(4) the presence of which in the Tendered Unit causes or threatens to a cause a nuisance upon the Tendered Unit or to adjacent properties, or which poses a hazard to the health or safety of personas on or about the Tendered Unit. Without limiting the generality of the foregoing, the term "Hazardous Materials" shall include asbestos, gasoline, diesel fuel, petroleum hydrocarbons, polychlorinated biphenyls (PCBs), urea formaldehyde foam insulation and radon gas.

SPO_0001113

e.　Borrower has not incurred any obligations to any real estate broker or sales person or similar party for the payment of a commission, fee or similar charge in connection with the conveyance of the Tendered Unit and/or the Personal Property;

f.　There are no leases, subleases, tenancies, occupancy agreements or other agreements granted by Borrower to any party other than Lender for the possession or use of all or any portion of the Tendered Unit or the Personal Property ("**Leases**"), except those Leases attached hereto as **Exhibit "C"**.  At Closing, Borrower shall deliver to Lender or Designee any and all original Leases, and, if applicable, Borrower shall execute the Assignment and Assumption of Lease and Rents, in the form attached hereto as **Exhibit "D,"** conveying all of Borrower's right, title and interest in, to and under any Leases, including, without limitation any and all rents prepaid as of the Closing and security deposits held by Borrower in connection with the Leases (the "**Rent**").  At Closing, Borrower shall deliver the Rent to Lender or Designee (to the extent not previously delivered to Lender);

g.　Borrower warrants that there are no other deposits or prepaid rental arrangements with any tenants or occupants of the Tendered Unit to which Borrower is a party other than the Rent;

h.　To Borrower's knowledge and except as set forth in the Permitted Exceptions, there are neither special improvement assessments nor municipal assessments outstanding and owing against the Tendered Unit;

i.　Except for the Loan Documents, the Permitted Exceptions, and any agreements, commitments, guarantees, undertakings and arrangements, or privileges arising out of Borrower's membership in any homeowner's association governing the Tendered Unit, Borrower warrants that there are no warranties, service and maintenance contracts, agreements with respect to utilities, accounts receivable and other contracts, agreements, commitments, guarantees, undertakings and arrangements, and privileges to which Borrower is a party that are currently in effect with respect to the Tendered Unit, oral or written;

j.　There is no pending lawsuit or arbitration, or, to Borrower's knowledge, there is no threatened lawsuit or arbitration, which would relate to or affect the Tendered Unit, other than claims identified as Permitted Exceptions;

k.　Borrower has not taken, or permitted any person or entity under its control to take, any action which could result in any of the following:

(1)　Any lien for labor, equipment or materials against the Tendered Unit or the Personal Property which has not been paid; or

(2)　Any lien against, exception to, or claim against the title to the Tendered Unit or the Personal Property, except the Permitted Exceptions;

SPO_0001114

(3)     Any modification to zoning or other restrictions affecting the use of the Tendered Unit; or,

(4)     Any leases or other rights to occupy the Tendered Unit, except the Leases; and

l.     Borrower shall abide by and comply with all requirements of the EB-5 Program under and pursuant to the Loan Documents.

l. m.     The representations and warranties of Borrower in this Section 10 shall survive the Closing.

11.     Representations and Warranties of Lender Parties. Lender Parties hereby represent and warrant to Borrower, as of the date hereof and Closing, as follows:

a.     Designee is a wholly owned subsidiary of Lender; Lender Parties have full power and authority, and has been duly authorized, to consummate the transaction contemplated herein, including designating Designee as the transferee of the Tendered Unit; and the transaction contemplated herein does not conflict with, result in a violation of, or constitute a default under any agreement or instrument binding upon any Lender Party or any law, governmental regulation, court decree, or order applicable to any Lender Party.

b.     Lender Parties are not currently insolvent, and none of Lender Parties' property is subject to any bankruptcy proceedings, assignment for benefit of creditors or similar proceedings, nor have Lender Parties committed any act of bankruptcy;

c.     Lender Parties have not incurred any obligations to any real estate broker or sales person or similar party for the payment of a commission, fee or similar charge in connection with the conveyance of the Tendered Unit and/or the Personal Property;

d.     Lender Parties are the sole owner of all of the claims, rights, counts, causes of action, obligations, debts, and demands which are intended to be released or deemed satisfied by Lender pursuant to this Agreement, and no other persons or entities have any interest, by assignment or otherwise, in any of the claims, rights, counts, causes of action, obligations, debts, and demands referred to herein;

e.     The conveyance of the Tendered Unit from Borrower to Lender or Designee, as applicable, is exempt from the Town of Vail Real Estate Transfer Tax, and the applicable Lender Party has received from the Town of Vail a duly executed exemption therefrom; and

f.     The representations and warranties of Lender Parties in this Section 11 shall survive the Closing.

SPO_0001115

12.     Possession of Property. Lender Parties acknowledge and agree that, prior to the date hereof, Borrower has delivered possession of the Tendered Unit and Personal Property to a Lender Party in good and satisfactory condition.

13.     Indemnification.

a.      Indemnification of Lender Parties. Borrower shall indemnify, defend, and hold harmless Lender Parties, their officers, managers, directors, governors, employees, shareholders, members, affiliates, partners, agents, successors, assigns, professionals, and each of them, from and against and in respect of any and all claims, demands, losses, costs, expenses, obligations, liabilities, damages, recoveries, and deficiencies, including reasonable attorneys' fees, interest and penalties, which Lender Parties actually incur or suffer arising out of the breach of any representation or warranty or breach of any covenant of Borrower in this Agreement. The provisions of this Section 13.a. shall survive Closing.

b.      Indemnification of Borrower.  Lender Parties shall indemnify, defend and hold harmless Borrower, its officers, managers, directors, governors, employees, shareholders, members, affiliates, partners, agents, successors, assigns, professionals, and each of them, from and against and in respect of any and all claims, damages, losses, costs, expenses, obligations, liabilities, damages, recoveries, and deficiencies including reasonable attorneys' fees, interest and penalties, which Borrower actually incurs or suffers arising out of the breach of any representation or warranty or breach of covenant of a Lender Party in this Agreement.  The provisions of this Section 13.b. shall survive Closing.

14.     Operating Payment Agreement. Notwithstanding anything to the contrary set forth herein, this Agreement shall not be construed to release Borrower or Lender from their rights and obligations under the Operating Payment Agreement, including, but not limited to, any obligation of Borrower to make the Operating Payments to Lender; provided, however, the parties agree that Operating Payment Commencement Date (as defined in the Operating Payment Agreement) with respect to the Satisfied Loan Advance shall be the Effective Closing Date.

15.     Construction of Agreement.  Time is of the essence in the performance of this Agreement.  This Agreement represents the entire and complete agreement between the parties. The Agreement shall not be amended or modified, except by an instrument in writing, signed by all parties. All terms and provisions hereof shall inure to the benefit of, and being binding upon the Lender Parties, Borrower, and their respective successors and assigns.  Wherever used in this Agreement, the singular shall include the plural, and the masculine shall include the feminine and neuter grammatical forms.  Captions are included for convenient reference only, and shall not be construed to alter or affect any terms or provisions of this Agreement.  This Agreement has been executed by the parties after discussions and negotiation, and shall be construed as having been drafted by both parties.  If any term of this Agreement is held to be invalid or unenforceable, such term shall be construed as being valid and enforceable to the fullest extent permitted by law, and all remaining terms shall remain full force and effect. This Agreement shall be construed and enforced in accordance with the laws of the State of Colorado. Each party hereto waives all right to trial by jury in any action, proceeding or counterclaim arising out of or relating to this Agreement or any related document.

SPO_0001116

16. <u>Legal Expenses.</u>  If Borrower or a Lender Party initiates any action to enforce or interpret this Agreement, the party determined by the court or arbiter, as the case may be, to be the prevailing party in such action will be entitled to receive from the non-prevailing party all reasonable costs and expenses, including all reasonable attorneys' fees incurred by the prevailing party in such action.

17. <u>Legal Counsel.</u>  All parties hereto have been represented by competent legal counsel who has explained the legal significance of this Agreement to their respective clients, or they have had ample opportunity to consult with legal counsel.

18. <u>Survival of Agreement.</u> Unless otherwise expressly herein stated to survive, the terms, covenants and conditions of this Agreement shall not survive the delivery of the Deed and the Bill of Sale from Borrower to a Lender Party, and shall be merged into the Deed for the conveyance of the Tendered Unit and the Bill of Sale for the conveyance of the Personal Property.

19. <u>Rights to Equitable and Legal Relief.</u>  Notwithstanding any other provision contained herein or in any document executed in connection with this Agreement, and in addition to the other remedies set for the in the Loan Documents, this Agreement and the documents executed in connection with this Agreement, each party shall have the right to seek all remedies available at law or in equity in the event of the other party's default or breach hereunder.  Without limiting the generality of the foregoing, the non-defaulting or non-breaching party shall be entitled to seek all or any of the following remedies in the event of a default or breach by the other party hereunder: (a) specific performance; and/or (b) injunctive relief; and/or (c) seek the recovery from the other party, on a joint and several basis, all damages, costs, fees (including, without limitation, reasonable attorney fees), losses, and expenses associated with or caused by the breach or default.  Notwithstanding the foregoing, in no event shall any party hereto be liable for special, incidental, indirect, exemplary, consequential or punitive damages arising under or in connection with this Agreement.

[SIGNATURE PAGE FOLLOWS]

SPO_0001117

IN WITNESS WHEREOF, Borrower and Lender have executed this Transfer Agreement as of the date first above set forth.

BORROWER:

SOLARIS PROPERTY OWNER I, LLC,
a Delaware limited liability company


By: _____
    Ryan A. Smith, its General Counsel


LENDER:

Colorado Regional Center Project Solaris, LLLP,
a Colorado limited liability limited partnership

By:_____
Name: _____
Its: _____


DESIGNEE:

_____,
a Colorado limited liability company

By:_____
Name: _____
Its: _____

SPO_0001118

# EXHIBIT A

## FORM OF DEED

(Attached)

SPO_0001119

**EXHIBIT B**

**FORM OF BILL OF SALE**

(Attached)

SPO_0001120

**EXHIBIT C**

**LEASES**

(Attached)

SPO_0001121

| From: | Michael C. Bullock |
|---|---|
| Sent: | Wednesday, July 6, 2016 10:48 AM MDT |
| To: | Rob Glucksman; Ryan Smith; Mark F. Bell |
| CC: | Meagan Hayes |
| Subject: | RE: Closing date |
| Attachments: | Transfer Agreement REDLINE FINAL (00316124xC1C96).docx |

Either Mark or I will be available for closing on whatever date is convenient for you guys.

Ryan, also attached is the further revised/redline copy of the Transfer Agreement where we have narrowed the additional requested representation to Section 14(ii) of the Loan Agreement which essentially is the borrower's continued duty to provide information.

Please let me know if that is a problem.

Thanks,

Michael

_____

**Michael C. Bullock**

**Foster Graham Milstein & Calisher, LLP**
360 South Garfield Street | Suite 600
Denver, CO 80209
**Main:** 303-333-9810
**Fax:** 303-333-9786
Fostergraham.com



DENVER - COLORADO SPRINGS



Confidentiality Notice and Disclaimer: The information contained in this e-mail may contain privileged and/or confidential information intended only for the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any dissemination, distribution, copying or other use of this e-mail is strictly prohibited. If you have received it in error, please immediately notify us by telephone (303-333-9810) or e-mail, and delete this message. Although this e-mail and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received, it is the responsibility of the recipient to ensure it is virus free and no responsibility is accepted by Foster Graham Milstein & Calisher, LLP for any loss or damage arising in any way from its use.

**From:** Rob Glucksman [mailto:rglucksman@coloradoregionalcenter.com]
**Sent:** Wednesday, July 06, 2016 9:29 AM

SPO_0001470

**To:** Ryan Smith <ryan@solarisvail.com>; Michael C. Bullock <mbullock@fostergraham.com>; Mark F. Bell <mbell@fostergraham.com>
**Cc:** Meagan Hayes <mhayes@waveladventures.com>
**Subject:** RE: Closing date

Hi all,

Hope everyone enjoyed their holiday weekend. Can we set a date to get these close and transferred? I'm out of town the 12th-17th, but am otherwise available.

Thanks,
Rob

**From:** Ryan Smith [mailto:ryan@solarisvail.com]
**Sent:** Tuesday, June 28, 2016 12:38 AM
**To:** Rob Glucksman <rglucksman@coloradoregionalcenter.com>; Michael C. Bullock <mbullock@fostergraham.com>; Mark F. Bell <mbell@fostergraham.com>
**Cc:** Meagan Hayes <mhayes@waveladventures.com>
**Subject:** RE: Closing date

Rob: Indeed, I am out this week. I'll touch base with you and Michael on Tuesday, July 5, following my return. Thanks, Ryan

**From:** Rob Glucksman [mailto:rglucksman@coloradoregionalcenter.com]
**Sent:** Monday, June 27, 2016 12:35 PM
**To:** Michael C. Bullock <mbullock@fostergraham.com>; Mark F. Bell <mbell@fostergraham.com>; Ryan Smith <ryan@solarisvail.com>
**Cc:** Meagan Hayes <mhayes@waveladventures.com>
**Subject:** RE: Closing date

I received an autoreply from Ryan. Looks like he is out of town through July 1st. Can we target July 5th?

Best,
Rob

**From:** Michael C. Bullock [mailto:mbullock@fostergraham.com]
**Sent:** Monday, June 27, 2016 11:41 AM
**To:** Rob Glucksman <rglucksman@coloradoregionalcenter.com>; Mark F. Bell <mbell@fostergraham.com>; Ryan Smith <ryan@solarisvail.com>
**Cc:** Meagan Hayes <mhayes@waveladventures.com>
**Subject:** RE: Closing date

Does Wed. the 29th work for everyone?

SPO_0001471

**Michael C. Bullock**

**Foster Graham Milstein & Calisher, LLP**
360 South Garfield Street | Suite 600
Denver, CO 80209
**Main:** 303-333-9810
**Fax:** 303-333-9786
Fostergraham.com



FOSTER GRAHAM MILSTEIN & CALISHER LLP
ATTORNEYS AT LAW
DENVER - COLORADO SPRINGS



Confidentiality Notice and Disclaimer: The information contained in this e-mail may contain privileged and/or confidential information intended only for the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any dissemination, distribution, copying or other use of this e-mail is strictly prohibited. If you have received it in error, please immediately notify us by telephone (303-333-9810) or e-mail, and delete this message. Although this e-mail and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received, it is the responsibility of the recipient to ensure it is virus free and no responsibility is accepted by Foster Graham Milstein & Calisher, LLP for any loss or damage arising in any way from its use.

**From:** Rob Glucksman [mailto:rglucksman@coloradoregionalcenter.com]
**Sent:** Monday, June 27, 2016 11:40 AM
**To:** Mark F. Bell <mbell@fostergraham.com>; Ryan Smith <ryan@solarisvail.com>
**Cc:** Michael C. Bullock <mbullock@fostergraham.com>; Meagan Hayes <mhayes@wavelandventures.com>
**Subject:** re: Closing date

Hi all,

Can we set a date for closing? Unless I'm mistaken, I think we're there.

Thanks,
Rob

Rob Glucksman
Colorado Regional Center
Cell: 303.888.9052
rglucksman@coloradoregionalcenter.com



SPO_0001472

IRS CIRCULAR 230 DISCLOSURE: To comply with U.S. Treasury regulations, we advise you that any U.S. federal tax advice included in this communication is not intended or written to be used, and can not be used, to avoid any U.S. federal tax penalties or to promote, market, or recommend to another party any transaction or matter addressed herein.

CONFIDENTIALITY NOTICE: This e-mail is confidential and is intended only for the named recipient(s) and may contain information that is privileged, attorney work product or exempt from disclosure under applicable law. If you have received this message in error, or are not the named recipient(s), please immediately notify the sender and delete this e-mail message from your computer.

SPO_0001473

| From: | Rob Glucksman |
| --- | --- |
| Sent: | Wednesday, July 6, 2016 11:21 AM MDT |
| To: | Ryan Smith; Michael C. Bullock; Mark F. Bell |
| CC: | Meagan Hayes; Mike Murray; Rick Hayes |
| Subject: | RE: Closing date |

Thanks, Ryan. We're going to do it Colorado Regional Center Project Solaris, LLLP rather than SPO III.

Best,
Rob

**From:** Ryan Smith [mailto:ryan@solarisvail.com]
**Sent:** Wednesday, July 06, 2016 11:17 AM
**To:** Michael C. Bullock <mbullock@fostergraham.com>; Rob Glucksman
<rglucksman@coloradoregionalcenter.com>; Mark F. Bell <mbell@fostergraham.com>
**Cc:** Meagan Hayes <mhayes@wavelandventures.com>; Mike Murray <mike.murray@solarisvail.com>
**Subject:** RE: Closing date

All,

I am back in town. Let's aim to do the transfers before Rob leaves next week, say on Monday the 11th?

The revised language in Section 10.l. is acceptable to Solaris.

Will the grantee of all the units be "Solaris Property Owner III, a Colorado limited liability company"? Let me know and I can begin finalizing the deeds and bills of sale.

Thanks,

Ryan

**From:** Michael C. Bullock [mailto:mbullock@fostergraham.com]
**Sent:** Wednesday, July 6, 2016 10:49 AM
**To:** Rob Glucksman <rglucksman@coloradoregionalcenter.com>; Ryan Smith <ryan@solarisvail.com>;
Mark F. Bell <mbell@fostergraham.com>
**Cc:** Meagan Hayes <mhayes@wavelandventures.com>
**Subject:** RE: Closing date

Either Mark or I will be available for closing on whatever date is convenient for you guys.

Ryan, also attached is the further revised/redline copy of the Transfer Agreement where we have narrowed the additional requested representation to Section 14(ii) of the Loan Agreement which essentially is the borrower's continued duty to provide information.

Please let me know if that is a problem.

Thanks,

SPO_0001491

Michael

_____

**Michael C. Bullock**

**Foster Graham Milstein & Calisher, LLP**
360 South Garfield Street | Suite 600
Denver, CO 80209
**Main:** 303-333-9810
**Fax:** 303-333-9786
Fostergraham.com



DENVER - COLORADO SPRINGS



Confidentiality Notice and Disclaimer: The information contained in this e-mail may contain privileged and/or confidential information intended only for the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any dissemination, distribution, copying or other use of this e-mail is strictly prohibited. If you have received it in error, please immediately notify us by telephone (303-333-9810) or e-mail, and delete this message. Although this e-mail and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received, it is the responsibility of the recipient to ensure it is virus free and no responsibility is accepted by Foster Graham Milstein & Calisher, LLP for any loss or damage arising in any way from its use.

---

**From:** Rob Glucksman [mailto:rglucksman@coloradoregionalcenter.com]
**Sent:** Wednesday, July 06, 2016 9:29 AM
**To:** Ryan Smith <ryan@solarisvail.com>; Michael C. Bullock <mbullock@fostergraham.com>; Mark F. Bell <mbell@fostergraham.com>
**Cc:** Meagan Hayes <mhayes@wavelandventures.com>
**Subject:** RE: Closing date

Hi all,

Hope everyone enjoyed their holiday weekend. Can we set a date to get these close and transferred? I'm out of town the 12th-17th, but am otherwise available.

Thanks,
Rob

**From:** Ryan Smith [mailto:ryan@solarisvail.com]
**Sent:** Tuesday, June 28, 2016 12:38 AM
**To:** Rob Glucksman <rglucksman@coloradoregionalcenter.com>; Michael C. Bullock <mbullock@fostergraham.com>; Mark F. Bell <mbell@fostergraham.com>

**Cc:** Meagan Hayes <mhayes@wavelandventures.com>
**Subject:** RE: Closing date

Rob: Indeed, I am out this week. I'll touch base with you and Michael on Tuesday, July 5, following my return. Thanks, Ryan

**From:** Rob Glucksman [mailto:rglucksman@coloradoregionalcenter.com]
**Sent:** Monday, June 27, 2016 12:35 PM
**To:** Michael C. Bullock <mbullock@fostergraham.com>; Mark F. Bell <mbell@fostergraham.com>; Ryan Smith <ryan@solarisvail.com>
**Cc:** Meagan Hayes <mhayes@wavelandventures.com>
**Subject:** RE: Closing date

I received an autoreply from Ryan. Looks like he is out of town through July 1st. Can we target July 5th?

Best,
Rob

**From:** Michael C. Bullock [mailto:mbullock@fostergraham.com]
**Sent:** Monday, June 27, 2016 11:41 AM
**To:** Rob Glucksman <rglucksman@coloradoregionalcenter.com>; Mark F. Bell <mbell@fostergraham.com>; Ryan Smith <ryan@solarisvail.com>
**Cc:** Meagan Hayes <mhayes@wavelandventures.com>
**Subject:** RE: Closing date

Does Wed. the 29th work for everyone?

_____

**Michael C. Bullock**


**Foster Graham Milstein & Calisher, LLP**
360 South Garfield Street | Suite 600
Denver, CO 80209
**Main:** 303-333-9810
**Fax:** 303-333-9786
Fostergraham.com



FOSTER GRAHAM MILSTEIN & CALISHER LLP
ATTORNEYS AT LAW
DENVER - COLORADO SPRINGS

SPO_0001493



Confidentiality Notice and Disclaimer: The information contained in this e-mail may contain privileged and/or confidential information intended only for the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any dissemination, distribution, copying or other use of this e-mail is strictly prohibited. If you have received it in error, please immediately notify us by telephone (303-333-9810) or e-mail, and delete this message. Although this e-mail and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received, it is the responsibility of the recipient to ensure it is virus free and no responsibility is accepted by Foster Graham Milstein & Calisher, LLP for any loss or damage arising in any way from its use.

**From:** Rob Glucksman [mailto:rglucksman@coloradoregionalcenter.com]
**Sent:** Monday, June 27, 2016 11:40 AM
**To:** Mark F. Bell <mbell@fostergraham.com>; Ryan Smith <ryan@solarisvail.com>
**Cc:** Michael C. Bullock <mbullock@fostergraham.com>; Meagan Hayes <mhayes@wavelandventures.com>
**Subject:** re: Closing date

Hi all,

Can we set a date for closing? Unless I'm mistaken, I think we're there.

Thanks,
Rob

Rob Glucksman
Colorado Regional Center
Cell: 303.888.9052
rglucksman@coloradoregionalcenter.com



IRS CIRCULAR 230 DISCLOSURE: To comply with U.S. Treasury regulations, we advise you that any U.S. federal tax advice included in this communication is not intended or written to be used, and can not be used, to avoid any U.S. federal tax penalties or to promote, market, or recommend to another party any transaction or matter addressed herein.

CONFIDENTIALITY NOTICE: This e-mail is confidential and is intended only for the named recipient(s) and may contain information that is privileged, attorney work product or exempt from disclosure under applicable law. If you have received this message in error, or are not the named recipient(s), please immediately notify the sender and delete this e-mail message from your computer.

SPO_0001494

| | |
|---|---|
| **From:** | Michael C. Bullock |
| **Sent:** | Wednesday, July 27, 2016 2:57 PM MDT |
| **To:** | Rob Glucksman; Ryan Smith |
| **CC:** | Mark F. Bell |
| **Subject:** | RE: Land Title Delivery (141 EAST MEADOW DRIVE)(buyer/owner SOLARIS)(our 50033287.3) |

Rob,

I think we are getting close, but the title company is making some noise about their ability to provide owner's coverage under the existing lender's policy.

Will be trying to set up a call to speak with their in-house counsel.

—————————————————

**Michael C. Bullock**

**Foster Graham Milstein & Calisher, LLP**
360 South Garfield Street | Suite 600
Denver, CO 80209
**Main:** 303-333-9810
**Fax:** 303-333-9786
Fostergraham.com



FOSTER GRAHAM MILSTEIN & CALISHER LLP
ATTORNEYS AT LAW
DENVER - COLORADO SPRINGS



Confidentiality Notice and Disclaimer: The information contained in this e-mail may contain privileged and/or confidential information intended only for the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any dissemination, distribution, copying or other use of this e-mail is strictly prohibited. If you have received it in error, please immediately notify us by telephone (303-333-9810) or e-mail, and delete this message. Although this e-mail and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received, it is the responsibility of the recipient to ensure it is virus free and no responsibility is accepted by Foster Graham Milstein & Calisher, LLP for any loss or damage arising in any way from its use.

**From:** Rob Glucksman [mailto:rglucksman@coloradoregionalcenter.com]
**Sent:** Wednesday, July 27, 2016 2:56 PM
**To:** Ryan Smith <ryan@solarisvail.com>; Michael C. Bullock <mbullock@fostergraham.com>
**Cc:** Mark F. Bell <mbell@fostergraham.com>
**Subject:** RE: Land Title Delivery (141 EAST MEADOW DRIVE)(buyer/owner SOLARIS)(our 50033287.3)

Hi all,

SPO_0001618

Can we get these closed next? I'm travelling to China and will be back Sunday/Monday. Ideally, it's cleanest to close these on 8/1. Not sure if you need me to be present or not to do so. Otherwise, can we try to close no later than Wednesday?

Thanks,
Rob

**From:** Ryan Smith [mailto:ryan@solarisvail.com]
**Sent:** Monday, July 25, 2016 4:12 PM
**To:** Michael C. Bullock <mbullock@fostergraham.com>; Rob Glucksman <rglucksman@coloradoregionalcenter.com>
**Subject:** RE: Land Title Delivery (141 EAST MEADOW DRIVE)(buyer/owner SOLARIS)(our 50033287.3)

Michael,

I reviewed the commitment. I have a call into Scott Bennetts at LTGC with a question about Schedule B-1 requirement 3. I would prefer not to include the additional recital, which is more appropriate for a deed in lieu of foreclosure, in the deed. He is looking into it and going to get back to me.

Please let me know the status of your review and when you think you will be prepared to proceed with the transfers.

Thanks,

Ryan

**From:** Ryan Smith
**Sent:** Thursday, July 21, 2016 5:40 PM
**To:** 'Michael C. Bullock' <mbullock@fostergraham.com>; 'Rob Glucksman' <rglucksman@coloradoregionalcenter.com>
**Subject:** RE: Land Title Delivery (141 EAST MEADOW DRIVE)(buyer/owner SOLARIS)(our 50033287.3)

Got it, thanks. Let's group on this tomorrow after we've had a chance to review.

**From:** Michael C. Bullock [mailto:mbullock@fostergraham.com]
**Sent:** Thursday, July 21, 2016 4:06 PM
**To:** Ryan Smith <ryan@solarisvail.com>; Rob Glucksman <rglucksman@coloradoregionalcenter.com>
**Subject:** FW: Land Title Delivery (141 EAST MEADOW DRIVE)(buyer/owner SOLARIS)(our 50033287.3)

Ryan,

Attached is the revised Commitment which we received yesterday afternoon.

I am looking through it as well.

Michael

SPO_0001619

**Michael C. Bullock**

**Foster Graham Milstein & Calisher, LLP**
360 South Garfield Street | Suite 600
Denver, CO 80209
**Main:** 303-333-9810
**Fax:** 303-333-9786
Fostergraham.com



DENVER - COLORADO SPRINGS



Confidentiality Notice and Disclaimer: The information contained in this e-mail may contain privileged and/or confidential information intended only for the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any dissemination, distribution, copying or other use of this e-mail is strictly prohibited. If you have received it in error, please immediately notify us by telephone (303-333-9810) or e-mail, and delete this message. Although this e-mail and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received, it is the responsibility of the recipient to ensure it is virus free and no responsibility is accepted by Foster Graham Milstein & Calisher, LLP for any loss or damage arising in any way from its use.

**From:** sbennetts@ltgc.com [mailto:sbennetts@ltgc.com]
**Sent:** Wednesday, July 20, 2016 9:20 AM
**To:** Michael C. Bullock <mbullock@fostergraham.com>
**Subject:** Land Title Delivery (141 EAST MEADOW DRIVE)(buyer/owner SOLARIS)(our 50033287.3)

View this email in full HTML in your browser

### COMMITMENT FOR SOLARIS DEED IN LIEU CONVEYANCE.

**Navigating and Understanding your Title Commitment Summary**

- **Click on the blue links in the Table of Contents to go to a specific section**
- **Click on the ☐ (back to top)links to return to the top of the email**
- **Click on the blue links within the body of the email to view a related document**
- **Click on a blue email address link in the Contacts section to send an email to that party**
- **Green underlined text indicates changes from the previous Title Summary**

For general information on title insurance, please refer to http://www.alta.org/consumer

## Commitment Summary - 141 East Meadow Drive (50033287.3)

View Printable Version

### Table of Contents

- LTGC Contacts
- Delivery Parties
- Order Information
- Coverages
- Title Fees
- Requirements
- Exceptions
- Disclosure

### Your Land Title Guarantee Company Contacts (back to top)

#### For Closing Assistance:

- **Gail Ferry**
  0090 BENCHMARK RD #205
  PO BOX 3480
  AVON, CO 81620
  970-477-4515
  Fax: 877-276-5043
  gferry@ltgc.com

#### For Title Assistance:

- **Scott Bennetts**
  Scott Bennetts
  5975 GREENWOOD PLAZA BLVD
  GREENWOOD VILLAGE, CO 80111
  303-850-4175
  Fax: 303-850-4184
  sbennetts@ltgc.com

#### Wire Instructions

- **FIRSTBANK OF COLORADO**
  10403 W COLFAX AVENUE
  LAKEWOOD, CO 80215
  Phone: 303-237-5000
  Credit: LAND TITLE GUARANTEE COMPANY
  ABA No.: 107005047
  Account: 2160521825
  Attention: Gail Ferry

### Commitment Delivery Parties (back to top)

- **LAND TITLE GUARANTEE COMPANY**
  PO BOX 357
  VAIL, CO 81658
  Attn: Gail Ferry
  Phone: 970-476-2251
  Fax: 970-476-4534
  Copies: 1
  EMail: gferry@ltgc.com
- **LAND TITLE GUARANTEE COMPANY**

SPO_0001621

5975 GREENWOOD PLAZA BOULEVARD
GREENWOOD VILLAGE, CO 80111
Attn: PETER GRIFFITHS
Phone: 303-321-1880
Fax: 303-322-7603
Copies: 1
EMail: pgriffiths@ltgc.com
Linked Commitment Delivery

• **FOSTER GRAHAM MILSTEIN AND CALISHER LLP**

360 S GARFIELD 6TH FLOOR
DENVER, CO 80209
Attn: MICHAEL C BULLOCK
Phone: 303-333-9810
Fax: 303-333-9786
Copies: 1
EMail: mbullock@fostergraham.com
Linked Commitment Delivery

**Order Information** (back to top)

**Property Address:**
141 East Meadow Drive
Vail, Colorado 81657
County of Eagle, State of Colorado
**Legal Description:**
PARCEL 1:

CONDOMINIUM UNIT 6E WEST, THE RESIDENCES AT SOLARIS-VAIL, ACCORDING TO THE CONDOMINIUM PLAT FOR THE RESIDENCES AT SOLARIS-VAIL RECORDED ON APRIL 26, 2010 AT RECEPTION NO. 201007818 AND AMENDMENT RECORDED APRIL 25, 2012 AT RECEPTION NO. 201208075, IN THE OFFICE OF THE CLERK AND RECORDER OF EAGLE COUNTY, COLORADO, AND THE CONDOMINIUM DECLARATION FOR THE RESIDENCES AT SOLARIS-VAIL RECORDED ON APRIL 26, 2010 AT RECEPTION NO. 201007819 IN THE OFFICE OF THE CLERK AND RECORDER OF EAGLE COUNTY, COLORADO.

PARCEL 2:

CONDOMINIUM UNIT 2A SOUTH, THE RESIDENCES AT SOLARIS-VAIL, ACCORDING TO THE CONDOMINIUM PLAT FOR THE RESIDENCES AT SOLARIS-VAIL RECORDED ON APRIL 26, 2010 AT RECEPTION NO. 201007818 AND AMENDMENT RECORDED APRIL 25, 2012 AT RECEPTION NO. 201208075, IN THE OFFICE OF THE CLERK AND RECORDER OF EAGLE COUNTY, COLORADO, AND THE CONDOMINIUM DECLARATION FOR THE RESIDENCES AT SOLARIS-VAIL RECORDED ON APRIL 26, 2010 AT RECEPTION NO. 201007819 IN THE OFFICE OF THE CLERK AND RECORDER OF EAGLE COUNTY, COLORADO.

PARCEL 3:

CONDOMINIUM UNIT PENTHOUSE E WEST, THE RESIDENCES AT SOLARIS-VAIL, ACCORDING TO THE CONDOMINIUM PLAT FOR THE RESIDENCES AT SOLARIS-VAIL RECORDED ON APRIL 26, 2010 AT RECEPTION NO. 201007818 AND AMENDMENT RECORDED APRIL 25, 2012 AT RECEPTION NO. 201208075, IN THE OFFICE OF THE CLERK AND RECORDER OF EAGLE COUNTY, COLORADO, AND THE CONDOMINIUM DECLARATION FOR THE RESIDENCES AT SOLARIS-VAIL RECORDED ON APRIL 26, 2010 AT RECEPTION NO. 201007819 IN THE OFFICE OF THE CLERK AND RECORDER OF EAGLE COUNTY, COLORADO.

PARCEL 4:

CONDOMINIUM UNIT 6E EAST, THE RESIDENCES AT SOLARIS-VAIL, ACCORDING TO THE CONDOMINIUM PLAT FOR THE RESIDENCES AT SOLARIS-VAIL RECORDED ON APRIL 26, 2010 AT RECEPTION NO. 201007818 AND AMENDMENT RECORDED APRIL 25, 2012 AT RECEPTION NO. 201208075, IN THE OFFICE OF THE CLERK AND RECORDER OF EAGLE COUNTY, COLORADO, AND THE CONDOMINIUM DECLARATION

FOR THE RESIDENCES AT SOLARIS-VAIL RECORDED ON APRIL 26, 2010 AT RECEPTION NO. 201007819 IN THE OFFICE OF THE CLERK AND RECORDER OF EAGLE COUNTY, COLORADO.

PARCEL 5:

CONDOMINIUM UNIT PENTHOUSE E EAST, THE RESIDENCES AT SOLARIS-VAIL, ACCORDING TO THE CONDOMINIUM PLAT FOR THE RESIDENCES AT SOLARIS-VAIL RECORDED ON APRIL 26, 2010 AT RECEPTION NO. 201007818 AND AMENDMENT RECORDED APRIL 25, 2012 AT RECEPTION NO. 201208075, IN THE OFFICE OF THE CLERK AND RECORDER OF EAGLE COUNTY, COLORADO, AND THE CONDOMINIUM DECLARATION FOR THE RESIDENCES AT SOLARIS-VAIL RECORDED ON APRIL 26, 2010 AT RECEPTION NO. 201007819 IN THE OFFICE OF THE CLERK AND RECORDER OF EAGLE COUNTY, COLORADO.

PARCEL 6:

CONDOMINIUM UNIT 5E WEST, THE RESIDENCES AT SOLARIS-VAIL, ACCORDING TO THE CONDOMINIUM PLAT FOR THE RESIDENCES AT SOLARIS-VAIL RECORDED ON APRIL 26, 2010 AT RECEPTION NO. 201007818 AND AMENDMENT RECORDED APRIL 25, 2012 AT RECEPTION NO. 201208075, IN THE OFFICE OF THE CLERK AND RECORDER OF EAGLE COUNTY, COLORADO, AND THE CONDOMINIUM DECLARATION FOR THE RESIDENCES AT SOLARIS-VAIL RECORDED ON APRIL 26, 2010 AT RECEPTION NO. 201007819 IN THE OFFICE OF THE CLERK AND RECORDER OF EAGLE COUNTY, COLORADO.

PARCEL 7:

CONDOMINIUM UNIT PENTHOUSE C EAST, THE RESIDENCES AT SOLARIS-VAIL, ACCORDING TO THE CONDOMINIUM PLAT FOR THE RESIDENCES AT SOLARIS-VAIL RECORDED ON APRIL 26, 2010 AT RECEPTION NO. 201007818 AND AMENDMENT RECORDED APRIL 25, 2012 AT RECEPTION NO. 201508075, IN THE OFFICE OF THE CLERK AND RECORDER OF EAGLE COUNTY, COLORADO, AND THE CONDOMINIUM DECLARATION FOR THE RESIDENCES AT SOLARIS-VAIL RECORDED ON APRIL 26, 2010 AT RECEPTION NO. 201007819 IN THE OFFICE OF THE CLERK AND RECORDER OF EAGLE COUNTY, COLORADO.

PARCEL 8:

CONDOMINIUM UNIT 5G WEST, THE RESIDENCES AT SOLARIS-VAIL, ACCORDING TO THE CONDOMINIUM PLAT FOR THE RESIDENCES AT SOLARIS-VAIL RECORDED ON APRIL 26, 2010 AT RECEPTION NO. 201007818 AND AMENDMENT RECORDED APRIL 25, 2012 AT RECEPTION NO. 201208075, IN THE OFFICE OF THE CLERK AND RECORDER OF EAGLE COUNTY, COLORADO, AND THE CONDOMINIUM DECLARATION FOR THE RESIDENCES AT SOLARIS-VAIL RECORDED ON APRIL 26, 2010 AT RECEPTION NO. 201007819 IN THE OFFICE OF THE CLERK AND RECORDER OF EAGLE COUNTY, COLORADO.

PARCEL 9:

CONDOMINIUM UNIT 4G WEST, THE RESIDENCES AT SOLARIS-VAIL, ACCORDING TO THE CONDOMINIUM PLAT FOR THE RESIDENCES AT SOLARIS-VAIL RECORDED ON APRIL 26, 2010 AT RECEPTION NO. 201007818 AND AMENDMENT RECORDED APRIL 25, 2012 AT RECEPTION NO. 201208075, IN THE OFFICE OF THE CLERK AND RECORDER OF EAGLE COUNTY, COLORADO, AND THE CONDOMINIUM DECLARATION FOR THE RESIDENCES AT SOLARIS-VAIL RECORDED ON APRIL 26, 2010 AT RECEPTION NO. 201007819 IN THE OFFICE OF THE CLERK AND RECORDER OF EAGLE COUNTY, COLORADO.

PARCEL 10:

CONDOMINIUM UNIT 7E WEST, THE RESIDENCES AT SOLARIS-VAIL, ACCORDING TO THE CONDOMINIUM PLAT FOR THE RESIDENCES AT SOLARIS-VAIL RECORDED ON APRIL 26, 2010 AT RECEPTION NO. 201007818 AND AMENDMENT RECORDED APRIL 25, 2012 AT RECEPTION NO. 201208075, IN THE OFFICE OF THE CLERK AND RECORDER OF EAGLE COUNTY, COLORADO, AND THE CONDOMINIUM DECLARATION FOR THE RESIDENCES AT SOLARIS-VAIL RECORDED ON APRIL 26, 2010 AT RECEPTION NO. 201007819 IN THE OFFICE OF THE CLERK AND RECORDER OF EAGLE COUNTY, COLORADO.

PARCEL 11:

CONDOMINIUM UNIT 6D EAST, THE RESIDENCES AT SOLARIS-VAIL, ACCORDING TO THE CONDOMINIUM PLAT FOR THE RESIDENCES AT SOLARIS-VAIL RECORDED ON APRIL 26, 2010 AT RECEPTION NO. 201007818 AND AMENDMENT RECORDED APRIL 25, 2012 AT RECEPTION NO. 201208075, IN THE OFFICE OF THE CLERK AND RECORDER OF EAGLE COUNTY, COLORADO, AND THE CONDOMINIUM DECLARATION FOR THE RESIDENCES AT SOLARIS-VAIL RECORDED ON APRIL 26, 2010 AT RECEPTION NO. 201007819 IN THE OFFICE OF THE CLERK AND RECORDER OF EAGLE COUNTY, COLORADO.

PARCEL 12:

CONDOMINIUM UNIT 5C WEST, THE RESIDENCES AT SOLARIS-VAIL, ACCORDING TO THE CONDOMINIUM PLAT FOR THE RESIDENCES AT SOLARIS-VAIL RECORDED ON APRIL 26, 2010 AT RECEPTION NO. 201007818 AND AMENDMENT RECORDED APRIL 25, 2012 AT RECEPTION NO. 201208075, IN THE OFFICE OF THE CLERK AND RECORDER OF EAGLE COUNTY, COLORADO, AND THE CONDOMINIUM DECLARATION FOR THE RESIDENCES AT SOLARIS-VAIL RECORDED ON APRIL 26, 2010 AT RECEPTION NO. 201007819 IN THE OFFICE OF THE CLERK AND RECORDER OF EAGLE COUNTY, COLORADO.

PARCEL 13:

CONDOMINIUM UNIT 6C WEST, THE RESIDENCES AT SOLARIS-VAIL, ACCORDING TO THE CONDOMINIUM PLAT FOR THE RESIDENCES AT SOLARIS-VAIL RECORDED ON APRIL 26, 2010 AT RECEPTION NO. 201007818 AND AMENDMENT RECORDED APRIL 25, 2012 AT RECEPTION NO. 201208075, IN THE OFFICE OF THE CLERK AND RECORDER OF EAGLE COUNTY, COLORADO, AND THE CONDOMINIUM DECLARATION FOR THE RESIDENCES AT SOLARIS-VAIL RECORDED ON APRIL 26, 2010 AT RECEPTION NO. 201007819 IN THE OFFICE OF THE CLERK AND RECORDER OF EAGLE COUNTY, COLORADO.

PARCEL 14:

CONDOMINIUM UNIT 3E EAST, THE RESIDENCES AT SOLARIS-VAIL, ACCORDING TO THE CONDOMINIUM PLAT FOR THE RESIDENCES AT SOLARIS-VAIL RECORDED ON APRIL 26, 2010 AT RECEPTION NO. 201007818 AND AMENDMENT RECORDED APRIL 25, 2012 AT RECEPTION NO. 201208075, IN THE OFFICE OF THE CLERK AND RECORDER OF EAGLE COUNTY, COLORADO, AND THE CONDOMINIUM DECLARATION FOR THE RESIDENCES AT SOLARIS-VAIL RECORDED ON APRIL 26, 2010 AT RECEPTION NO. 201007819 IN THE OFFICE OF THE CLERK AND RECORDER OF EAGLE COUNTY, COLORADO.

PARCEL 15:

CONDOMINIUM UNIT 7E EAST, THE RESIDENCES AT SOLARIS-VAIL, ACCORDING TO THE CONDOMINIUM PLAT FOR THE RESIDENCES AT SOLARIS-VAIL RECORDED ON APRIL 26, 2010 AT RECEPTION NO. 201007818 AND AMENDMENT RECORDED APRIL 25, 2012 AT RECEPTION NO. 201208075, IN THE OFFICE OF THE CLERK AND RECORDER OF EAGLE COUNTY, COLORADO, AND THE CONDOMINIUM DECLARATION FOR THE RESIDENCES AT SOLARIS-VAIL RECORDED ON APRIL 26, 2010 AT RECEPTION NO. 201007819 IN THE OFFICE OF THE CLERK AND RECORDER OF EAGLE COUNTY, COLORADO.

PARCEL 16:

CONDOMINIUM UNIT 4D EAST, THE RESIDENCES AT SOLARIS-VAIL, ACCORDING TO THE CONDOMINIUM PLAT FOR THE RESIDENCES AT SOLARIS-VAIL RECORDED ON APRIL 26, 2010 AT RECEPTION NO. 201007818 AND AMENDMENT RECORDED APRIL 25, 2012 AT RECEPTION NO. 201208075, IN THE OFFICE OF THE CLERK AND RECORDER OF EAGLE COUNTY, COLORADO, AND THE CONDOMINIUM DECLARATION FOR THE RESIDENCES AT SOLARIS-VAIL RECORDED ON APRIL 26, 2010 AT RECEPTION NO. 201007819 IN THE OFFICE OF THE CLERK AND RECORDER OF EAGLE COUNTY, COLORADO.

PARCEL 17:

CONDOMINIUM UNIT PENTHOUSE G WEST, THE RESIDENCES AT SOLARIS-VAIL, ACCORDING TO THE CONDOMINIUM PLAT FOR THE RESIDENCES AT SOLARIS-VAIL RECORDED ON APRIL 26, 2010 AT RECEPTION NO. 201007818 AND AMENDMENT RECORDED APRIL 25, 2012 AT RECEPTION NO. 201208075, IN THE OFFICE OF THE CLERK AND RECORDER OF EAGLE COUNTY, COLORADO, AND THE CONDOMINIUM DECLARATION FOR THE RESIDENCES AT SOLARIS-VAIL RECORDED ON APRIL 26, 2010 AT RECEPTION NO. 201007819 IN THE OFFICE OF THE CLERK AND RECORDER OF EAGLE COUNTY, COLORADO.

PARCEL 18:

CONDOMINIUM UNIT PENTHOUSE C WEST, THE RESIDENCES AT SOLARIS-VAIL, ACCORDING TO THE CONDOMINIUM PLAT FOR THE RESIDENCES AT SOLARIS-VAIL RECORDED ON APRIL 26, 2010 AT RECEPTION NO. 201007818 AND AMENDMENT RECORDED APRIL 25, 2012 AT RECEPTION NO. 201208075, IN THE OFFICE OF THE CLERK AND RECORDER OF EAGLE COUNTY, COLORADO, AND THE CONDOMINIUM DECLARATION FOR THE RESIDENCES AT SOLARIS-VAIL RECORDED ON APRIL 26, 2010 AT RECEPTION NO. 201007819 IN THE OFFICE OF THE CLERK AND RECORDER OF EAGLE COUNTY, COLORADO.

**Plat Map(s):**
Reception Number: 7818, Recorded in 2010
**APN(s):**
210108294061
**Tax Information:**
**Effective Date & Time**
July 08, 2016 at 5:00 P.M.
**Interest:**
FEE SIMPLE
**Buyer(s) / Borrower(s):**
SOLARIS PROPERTY OWNER I, LLC, A DELAWARE LIMITED LIABILITY COMPANY
**Vesting Deed(s) / (View dates for 24 month Chain of Title):**

**Proposed Insured & Coverages** (back to top)

"ALTA" Loan Policy 06-17-06                                                                                    $80,000,000.00
Proposed Insured:
COLORADO REGIONAL CENTER PROJECT SOLARIS, LLLP, A COLORADO LIMITED
LIABILITY LIMITED PARTNERSHIP

**Estimated Title Fees** (back to top)

ALTA Loan Policy 06-17-06                                                                                           $0.00
Endorsement 107.12-06 (Lender)                                                                                 $4,000.00
                                  **Total Estimated Title Fees:**                                              **$4,000.00**

**Requirements** (back to top)

Item (a) Payment to or for the account of the grantors or mortgagors of the full consideration for the estate or interest to be insured.

Item (b) Proper instrument(s) creating the estate or interest to be insured must be executed and duly filed for record, to-wit:

Item (c) Payment of all taxes, charges or assessments levied and assessed against the subject premises which are due and payable.

Item (d) Additional requirements, if any disclosed below:

1. A FULL COPY OF THE FULLY EXECUTED OPERATING AGREEMENT AND ANY AND ALL AMENDMENTS THERETO FOR SOLARIS PROPERTY OWNER I, LLC, A DELAWARE LIMITED LIABILITY COMPANY MUST BE FURNISHED TO LAND TITLE GUARANTEE COMPANY. SAID AGREEMENT MUST DISCLOSE WHO MAY CONVEY, ACQUIRE, ENCUMBER, LEASE OR OTHERWISE DEAL WITH INTERESTS IN REAL PROPERTY FOR SAID ENTITY.

NOTE: ADDITIONAL REQUIREMENTS MAY BE NECESSARY UPON REVIEW OF THIS DOCUMENTATION.

2. PROVIDE LAND TITLE GUARANTEE COMPANY WITH CONSENT OF ALL MEMBERS OF SOLARIS PROPERTY OWNER I, LLC, A DELAWARE LIMITED LIABILITY COMPANY AUTHORIZING THE PROPOSED CONVEYANCE.

3. DEED FROM SOLARIS PROPERTY OWNER I, LLC, A DELAWARE LIMITED LIABILITY COMPANY TO COLORADO REGIONAL CENTER PROJECT SOLARIS, LLLP, A COLORADO LIMITED LIABILITY LIMITED PARTNERSHIP.

NOTE: THE ABOVE REQUIRED DEED MUST CONTAIN THE FOLLOWING RECITAL; "THIS DEED IS AN ABSOLUTE CONVEYANCE, THE GRANTOR HAVING SOLD SAID LAND TO THE GRANTEE FOR A FAIR AND ADEQUATE CONSIDERATION, SUCH CONSIDERATION, IN ADDITION TO THAT ABOVE RECITED, BEING FULL

SPO_0001625

SATISFACTION OF ALL OBLIGATIONS SECURED BY THE DEEDS OF TRUST EXECUTED BY SOLARIS PROEPRTY OWNER I, LLC, A DELAWARE LIMITED LIABILITY COMPANY TO COLORADO REGIONAL CENTER PROJECT SOLARIS, LLLP, A COLORADO LIMITED LIABILITY PARTNERSHIP RECORDED UNDER RECEPTION NOS. 201207658, 201208189, 201208833, 201211086, 201212544, 201215493, 201218479, 201223783, 201216936, 201218223, 201219480, 201220174, 201222624, 201301974, 201301972, 201302128, 201305514 AND 201310067, RECORDS OF EAGLE COUNTY.

"GRANTOR DECLARES THAT THIS CONVEYANCE IS FREELY AND FAIRLY MADE, AND THAT THERE ARE NO AGREEMENTS, ORAL OR WRITTEN, OR OTHER THAN THIS DEED BETWEEN GRANTOR AND GRANTEE WITH RESPECT TO SAID LAND."

4. DULY EXECUTED AND ACKNOWLEDGED ESTOPPEL AFFIDAVIT FROM SOLARIS PROPERTY OWNER I, LLC, A DELAWARE LIMITED LIABILITY COMPANY IN FAVOR OF LAND TITLE GUARANTEE COMPANY AND ITS UNDERWRITER.

NOTE: ISSUANCE OF THE ENDORSEMENT REFERENCED IN THIS COMMITMENT IS SUBJECT TO THE APPROVAL OF THE UNDERWRITER OF SAID ENDORSEMENT. THIS COMMITMENT MAY BE REVISED AS REQUIRED BY THE UNDERWRITER TO ISSUE THE ENDORSEMENT REQUESTED. THIS NOTE WILL BE DELETED UPON THE RECEIPT OF SAID APPROVAL.

### Exceptions (back to top)

1. Any facts, rights, interests, or claims thereof, not shown by the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by persons in possession of the Land.

2. Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.

3. Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records.

4. Any lien, or right to a lien, for services, labor or material heretofore or hereafter furnished, imposed by law and not shown by the Public Records.

5. Defects, liens, encumbrances, adverse claims or other matters, if any, created, first appearing in the public records or attaching subsequent to the effective date hereof but prior to the date the proposed insured acquires of record for value the estate or interest or mortgage thereon covered by this Commitment.

6. Any and all unpaid taxes, assessments and unredeemed tax sales.

7. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.

IN ADDITION TO THOSE MATTERS SHOWN AS EXCEPTIONS ON MORTGAGEES POLICY, POLICY NO. TAAJ50033287 WITH AN EFFECTIVE DATE OF MAY 04, 2012 AT 5:00 P.M., (CONDOMINIUM UNIT 6E WEST, CONDOMINIUM UNIT 2A SOUTH AND CONDOMINIUM UNIT PENTHOUSE E WEST), ENDORSEMENT 110.5-06 WITH AN EFFECTIVE DATE OF JUNE 19, 2012 AT 5:00 P.M. (CONDOMINIUM UNIT 6E EAST AND CONDOMINIUM UNIT PENTHOUSE E EAST), ENDORSEMENT 110.5-06 WITH AN EFFECTIVE DATE OF AUGUST 2, 2012 AT 5:00 P.M. (CONDOMINIUM UNIT 5E WEST), ENDORSEMENT 110.5-06 WITH AN EFFECTIVE DATE OF SEPTEMBER 13, 2012 AT 5:00 P.M. (CONDOMINIUM UNIT PENTHOUSE C EAST), ENDORSEMENT 110.5-06 WITH AN EFFECTIVE DATE OF NOVEMBER 27, 2012 AT 5:00 P.M. (CONDOMINIUM UNIT 5G WEST), ENDORSEMENT 110.5-06 WITH AN EFFECTIVE DATE OF JANUARY 30, 2013 AT 5:00 P.M. (CONDOMINIUM UNITS 4G WEST, 7E WEST, 6D EAST, 5C WEST, 6C WEST, 3E EAST, 7E EAST AND 4D EAST), ENDORSEMENT 110.5-06 WITH AN EFFECTIVE DATE OF MARCH 20, 2013 AT 5:00 P.M. (CONDOMINIUM UNIT PENTHOUSE G WEST) AND ENDORSEMENT 110.5-06 WITH AN EFFECTIVE DATE OF MAY 20, 2013 AT 5:00 P.M. (CONDOMINIUM UNIT PENTHOUSE C WEST), THE THE FOLLOWING APPEAR OF RECORD SUBSEQUENT TO SAID EFFECTIVE DATES:

8. TERMS, CONDITIONS, PROVISIONS, BURDENS, OBLIGATIONS AND EASEMENTS AS SET FORTH AND GRANTED IN GRANT OF EASEMENT RECORDED MAY 09, 2012 UNDER RECEPTION NO. 201209258.

9. TERMS, CONDITIONS, PROVISIONS, BURDENS AND OBLIGATIONS AS SET FORTH IN SOLARIS METROPOLITAN DISTRICT NO. 2 SPECIAL DISTRICT DISCLOSURE RECORDED DECEMBER 17, 2014 UNDER RECEPTION NO. 201421735.

10. TERMS, CONDITIONS, PROVISIONS, BURDENS AND OBLIGATIONS AS SET FORTH IN SOLARIS METROPOLITAN DISTRICT NO. 3 SPECIAL DISTRICT DISCLOSURE RECORDED DECEMBER 17, 2014 UNDER RECEPTION NO. 201421736.

11. FIFTH AMENDMENT TO THE CONDOMINIUM DECLARATION FOR THE RESIDENCES AT SOLARIS-VAIL RECORDED DECEMBER 29, 2014 UNDER RECEPTION NO. 201422174,

12. SIXTH AMENDMENT AND SUPPLEMENTAL DECLARATION TO THE CONDOMINIUM DECLARATION FOR THE RESIDENCES AT SOLARIS-VAIL AND THIRD AMENDMENT TO THE CONDOMINIUM PLAT OF THE RESIDENCES AT SOLARIS-VAIL RECORDED APRIL 21, 2016 UNDER RECEPTION NO. 201605526.

13. CONSEQUENCES OF ANY ALLEGATION OR DETERMINATION THAT THE TRANSFER TO THE INSURED IS A PREFERENCE OR FRAUDULENT TRANSFER BY REASON OF THE OPERATION OF FEDERAL BANKRUPTCY OR STATE INSOLVENCY LAWS.

NOTE: ITEM NO. 13 WILL BE DELETED UPON SALE TO A BONAFIDE THIRD PARTY PURCHASER OR UPON EXPIRATION OF TWO YEARS FROM DATE OF DEED-IN-LIEU TRANSFER.

**Disclosure Statements** (back to top)

### LAND TITLE GUARANTEE COMPANY and LAND TITLE GUARANTEE COMPANY GRAND JUNCTION DISCLOSURE STATEMENTS

Note: Pursuant to CRS 10-11-122, notice is hereby given that:

1. The subject real property may be located in a special taxing district.
2. A Certificate of Taxes Due listing each taxing jurisdiction may be obtained from the County Treasurer's authorized agent.
3. The information regarding special districts and the boundaries of such districts may be obtained from the Board of County Commissioners, the County Clerk and Recorder, or the County Assessor.

Note: Effective September 1, 1997, CRS 30-10-406 requires that all documents received for recording or filing in the clerk and recorder's office shall contain a top margin of at least one inch and a left, right and bottom margin of at least one half of an inch. The clerk and recorder may refuse to record or file any document that does not conform, except that, the requirement for the top margin shall not apply to documents using forms on which space is provided for recording or filing information at the top margin of the document.

Note: Colorado Division of Insurance Regulations 3-5-1, Paragraph C of Article VII requires that "Every title entity shall be responsible for all matters which appear of record prior to the time of recording whenever the title entity conducts the closing and is responsible for recording or filing of legal documents resulting from the transaction which was closed". Provided that Land Title Guarantee Company conducts the closing of the insured transaction and is responsible for recording the legal documents from the transaction, exception number 5 will not appear on the Owner's Title Policy and the Lenders Policy when issued.

Note: Affirmative mechanic's lien protection for the Owner may be available (typically by deletion of Exception no. 4 of Schedule B, Section 2 of the Commitment from the Owner's Policy to be issued) upon compliance with the following conditions:

1. The land described in Schedule A of this commitment must be a single family residence which includes a condominium or townhouse unit.
2. No labor or materials have been furnished by mechanics or material-men for purposes of construction on the land described in Schedule A of this Commitment within the past 6 months.
3. The Company must receive an appropriate affidavit indemnifying the Company against un-filed mechanic's and material-men's liens.
4. The Company must receive payment of the appropriate premium.
5. If there has been construction, improvements or major repairs undertaken on the property to be purchased within six months prior to the Date of the Commitment, the requirements to obtain coverage for unrecorded liens will include: disclosure of certain construction information; financial information as to the seller, the builder and or the contractor; payment of the appropriate premium fully executed Indemnity Agreements satisfactory to the company, and, any additional requirements as may be necessary after an examination of the aforesaid information by the Company.

No coverage will be given under any circumstances for labor or material for which the insured has contracted for or agreed to pay.

Note: Pursuant to CRS 10-11-123, notice is hereby given:

SPO_0001627

This notice applies to owner's policy commitments containing a mineral severance instrument exception, or exceptions, in Schedule B, Section 2.

1. That there is recorded evidence that a mineral estate has been severed, leased, or otherwise conveyed from the surface estate and that there is a substantial likelihood that a third party holds some or all interest in oil, gas, other minerals, or geothermal energy in the property; and
2. That such mineral estate may include the right to enter and use the property without the surface owner's permission.

NOTE: Pursuant to CRS 10-1-128(6)(a), It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado division of insurance within the department of regulatory agencies.

Nothing herein contained will be deemed to obligate the company to provide any of the coverages referred to herein unless the above conditions are fully satisfied.

**Open the attached pdf version of the commitment to view our PRIVACY POLICY.**

*The above Summary is provided for information purposes only. To the extend that it conflicts with or otherwise varies from the actual commitment provided, the latter will govern.The above links and associated images are provided for information purposes only. They are not guaranteed as to accuracy, availability or quality.* These images are provided for informational purposes only. They are not guaranteed as to availability or quality.

These documents are PDF (Portable Document Format) files and can be viewed or printed with Adobe Acrobat Reader™. If you do not have Adobe Acrobat Reader™ on your system, you can download it for free from Adobe.

Some of these documents may be designed to print on LEGAL paper. To print these on LETTER paper, select the "Fit to Page" option from within the Acrobat Reader.

If you want to print on LEGAL paper, select legal-size paper from within the "Print Setup" dialog box from within the Acrobat Reader.

Having troubles viewing the PDF's on Firefox? Try installing a pdf plugin like PDF Viewer.

**Content in this email is Copyright LT Systems, L.L.C. All rights reserved.**

SPO_0001628

| From: | Michael C. Bullock |
|---|---|
| Sent: | Monday, August 1, 2016 12:19 PM MDT |
| To: | Ryan Smith; Peter Griffiths |
| CC: | Scott Bennetts; Rob Glucksman (rglucksman@coloradoregionalcenter.com); Mark F. Bell |
| Subject: | RE: Solaris/CRC #ABC50033287.3 |

We still need an answer or clarification as to whether our existing lender's policy can convert or provide affirmative coverage as an owner's policy for the re-acquired units.

I believe title was still looking into that.

We are available for a call to discuss.

Michael

_____

**Michael C. Bullock**

**Foster Graham Milstein & Calisher, LLP**
360 South Garfield Street | Suite 600
Denver, CO 80209
**Main:** 303-333-9810
**Fax:** 303-333-9786
Fostergraham.com





Confidentiality Notice and Disclaimer: The information contained in this e-mail may contain privileged and/or confidential information intended only for the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any dissemination, distribution, copying or other use of this e-mail is strictly prohibited. If you have received it in error, please immediately notify us by telephone (303-333-9810) or e-mail, and delete this message. Although this e-mail and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received, it is the responsibility of the recipient to ensure it is virus free and no responsibility is accepted by Foster Graham Milstein & Calisher, LLP for any loss or damage arising in any way from its use.

**From:** Ryan Smith [mailto:ryan@solarisvail.com]
**Sent:** Monday, August 01, 2016 12:09 PM
**To:** Peter Griffiths <pgriffiths@ltgc.com>; Michael C. Bullock <mbullock@fostergraham.com>
**Cc:** Scott Bennetts <sbennetts@ltgc.com>; Rob Glucksman (rglucksman@coloradoregionalcenter.com) <rglucksman@coloradoregionalcenter.com>
**Subject:** RE: Solaris/CRC #ABC50033287.3

SPO_0001643

Peter/Michael,

Are there any outstanding title insurance issues that need to be resolved?

The only issue upon which I am awaiting a response from Peter is my request to omit Requirement No. 3, as described below.

We are planning to close this week so we need to resolve any outstanding issues. I suggest that we schedule a conference call to discuss. I am available most any time this afternoon.

Thanks,

Ryan

---

**From:** Ryan Smith
**Sent:** Wednesday, July 27, 2016 2:30 PM
**To:** 'Peter Griffiths' <pgriffiths@ltgc.com>
**Cc:** Scott Bennetts <sbennetts@ltgc.com>; Michael C. Bullock <mbullock@fostergraham.com>
**Subject:** RE: Solaris/CRC #ABC50033287.3

Peter,

Thanks for your reply. I defer to Michael on the title insurance coverage that his client desires. However, I do think it would be helpful for all of us to get on a call to work through any remaining issues. I am generally available at the times that you proposed, with the exception of between 10am-11am tomorrow.

Michael, what's your availability?

Thanks,

Ryan

**From:** Peter Griffiths [mailto:pgriffiths@ltgc.com]
**Sent:** Wednesday, July 27, 2016 2:10 PM
**To:** Ryan Smith <ryan@solarisvail.com>
**Cc:** Scott Bennetts <sbennetts@ltgc.com>; Michael C. Bullock <mbullock@fostergraham.com>
**Subject:** Re: Solaris/CRC #ABC50033287.3

Ryan

I left a message for Michael to call me about the title insurance aspects.
The current loan policy will remain in place under the continuation of coverage clause. However, the conveyance to the lender does not add any additional coverage or convert this policy into an owner's policy - the conditions and exclusions from coverage still remain in force, as at the effective date in that policy.

SPO_0001644

First American, the underwriter for the loan policy, is concerned that the endorsement 107-12 which we suggested in the commitment may not be acceptable and they are are suggesting that an owner's policy be issued. This may be a costly option and we are waiting for their decision on the pricing for this policy.

In the meantime, in order to provide some form of insurance coverage, over and above the coverage in the current loan policy, First American will require a review of the agreement giving rise to the deed to the lender and the form of deed.

I am available for a call this afternoon or tomorrow until 1pm

Peter Griffiths

**Peter Griffiths**
Vice-President and General Counsel
Land Title Guarantee Company
5975 Greenwood Plaza Blvd, Suite 150
Greenwood Village CO 80111
Direct: 303-331-6323
Office: 303-321-1880
Fax: 303-393-4948

On Wed, Jul 27, 2016 at 11:10 AM, Ryan Smith <ryan@solarisvail.com> wrote:

Scott and Peter,

I am following up on my conversation with Scott of earlier this week. I had requested to omit Requirement No. 3 on Schedule B-1 of the attached commitment. The language may be appropriate for a true deed in lieu of foreclosure, which this transaction is not. However, Grantor is generally willing to make the same representations to LTGC in the estoppel affidavit pursuant to Requirement No. 4.

I am copying Michael Bullock, attorney for CRC (Grantee), so that he is in the loop. Please let us know of any other items that are outstanding from Solaris or CRC.

The parties intend to effect the transfers by next Wednesday, August 3, so your prompt response would be appreciated.

Thanks,

Ryan


SOLARIS
RYAN SMITH

GENERAL COUNSEL
141 EAST MEADOW DRIVE, SUITE 211
VAIL, COLORADO 81657

M: 303.888.0969
F: 970.479.6666

SPO_0001646