| | |
|---|---|
| DISTRICT COURT, DENVER COUNTY<br>STATE OF COLORADO<br>1437 Bannock Street<br>Denver, Colorado 80202 | **DENIED BY COURT**<br>**06/01/2023**<br>DATE FILED: June 1, 2023 2:31 PM<br>CASE NUMBER: 2021CV32918 |
| **YUQUAN NI** and **QI QIN**, Plaintiffs<br><br>v.<br><br>**SOLARIS PROPERTY OWNER I LLC** and **PETER KNOBEL,** Defendants<br><br>v.<br><br>**COLORADO REGIONAL CENTER PROJECT SOLARIS LLLP**, Crossclaim Defendants | **JILL DEBORAH DORANCY**<br>District Court Judge<br>▲ **COURT USE ONLY** ▲ |
| Attorney for Plaintiffs:<br><br>Douglas Litowitz, pro hac vice<br>Litowitz Law Office<br>413 Locust Place, Deerfield, IL 60015<br>(312) 622-2848<br>litowitz@gmail.com<br><br>Deborah Yim, Colorado Bar No. 54388<br>Primera Law Group, LLC<br>1240 South Parker Road, Suite 103<br>Denver, CO 80231<br>(720) 239-2567<br>dyim@primeralaw.com | Case No: 2021CV32918<br><br>Division:<br><br>Courtroom: 203 |

**EMERGENCY**

**Motion for Sanctions under CRCP 11 against SPO Defendants and Crossclaim Defendants for Misleading this Court with a Misrepresentation that the ARCU was signed in 2015 when it was actually signed in 2019.**

**Certification of Conferral under C.R.C.P. 121 §1-15(8)**

*Plaintiffs conferred with Defendants' and Crossclaim Defendants' counsels regarding this urgent Motion. They both claim to need more time to investigate. But Rule 11 required them to investigate <u>before</u> they asserted the date of the ARCU to this Court. They want <u>future</u> time to investigate something they should have investigated in the <u>past</u>.*

1

Ex.B to SPO Ds'
Objection to Notice

**I.   SPO Defendants Asserted the ARCU was from 2015.**

This Court's *Combined Order* of March 3, 2023 stated the following as a material fact:

> On April 17, 2015, a day prior to the first Loan Advance reaching its thirty-sixth month, CRCPS and SPOI entered into an Agreement Regarding Collateral Units (the "ARCU").  [p. 2].

This parallels the SPO Defendants' *Motion to Dismiss* which states, "On April 17, 2015, CRCPS and SPOI signed the ARCU" [p. 4].

It also parallels the SPO Defendants' *Answer*, which states:

> In April 2015, SPOI declared to CRCPS that it would repay each loan advance within three years of the date of the loan advance . . . CRCPS wanted to defer SPOI's transfer of the Collateral Units. . . CRCPS and SPOI entered into an Agreement Regarding Collateral Units ("ARCU") . . . CRCPS and SPOI memorialized these additional terms in the April 17, 2015 ARCU . . . [pp. 2, 13].

It also parallels the SPO Defendants' *Motion for Summary Judgment* which asserts that the ARCU was "dated April 17, 2015." [p. 10].

It also parallels the SPO Defendants' assertion in the *Case Management Order* that the ARCU altered the loan maturity dates in 2017 and 2018 as the ACRU was *prior* to those dates.

The "Execution Version" of the ARCU says on page 1 that the Agreement is "dated as of the 17th day of April, 2015" and the signature page says that "Borrower and Lender have executed this Agreement as of the date first above set forth."  Therefore both SPOI and CRCPS represented that the date of the ARCU was April 17, 2015.  This supported their position that the ARCU was prior to the loan maturity dates in 2017 and 2018 and thus could alter such dates.

**II.   The ARCU was Actually Signed in February 2019.**

 Recent disclosures from the SPO Defendants shows that the ARCU was negotiated and signed in February 2019.  Exhibit A to this Motion contains emails in February 2019 between

SPOI and CRCPS exchanging redline drafts of the ARCU, and an email where SPOI's representative declares that he signed all agreements on February 8, 2019. The document they were negotiating was called Agreement Regarding Collateral Units and had the stamp "00316124.DOX/1" which is the same stamp as the "Execution Version" of the ARCU they claimed was signed April 17, 2015. See Exhibit A.

### III.     The 2019 Signature Date Destroys the SPO Defendants' Defense.

The SPO Defendants misrepresented the date of the ARCU as 2015 to make the facially plausible argument that a 2015 agreement had the power to push back maturity dates falling in 2017 and 2018, thereby excusing them from repaying the loan advances that matured in those years. This is a much easier and cleaner argument than the truth which is that their clients backdated documents 4 years to achieve the desired effect. Their misrepresentation made its way into this Court's written opinion and the written opinions of the Federal Court.

CRCPS is equally culpable. They signed the ARCU in February 2019 and had actual notice that SPO had misrepresented its date to this Court. They could have, and should have, notified this Court so that Her Honor would not have written a *Combined Order* that contains falsehoods and pointed this case in errant directions on the premise that the ARCU was signed in 2015.

This entire dispute revolves around the ARCU which the Defendants have always contended was dated April 17, 2015 so that it predated the maturity date of loan advances. The revelation of its actual date as falling after the maturity date of loan advances means that everything done so far is tainted. We are looking at what appears to be willful document fraud or (at best) a failure by elite attorneys to investigate and verify their factual statements to the Court.

## IV.     Appropriate Sanctions

C.R.C.P. 11(a) requires a lawyer to make reasonable inquiry <u>before</u> stating a factual matter to the Court:

> The signature of an attorney constitutes a certificate by him that he has read the pleading; that to the best of his knowledge, information, and belief formed after reasonable inquiry, it is well grounded in fact  . . . and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

This applies to any document filed by a lawyer, including "a motion or other paper." *Jensen v. Matthews-Price*, 845 P.2d 542, 544 (Colo. App. 1992)("Accordingly, an attorney or litigant who signs a <u>motion or other paper</u> has the same obligation as the signer of a pleading to ensure that the document is factually and legally justified.")(emphasis added).  Here, the misrepresentations were contained in pleadings as well as motions and other papers, so they fall within Rule 11.  The penalty for violating Rule 11 is the imposition of "appropriate sanctions."  The determination rests in the discretion of the trial court, and can include attorneys' fees. *Gravina Siding & Windows Co. v. Gravina*, 516 P.3d 37, 51 (Colo. App. 2022).  With this in mind, an "appropriate sanction" is:

(i)     A finding by this Court that the loan advances matured and were callable for repayment in cash at their 5-year maturities in 2017 and 2018;

(ii)    An award of attorney fees incurred by the Plaintiffs to date; and

(iii)   A finding that opposing counsels violated Rule 11 and CPR 3.3 ("Candor to the Tribunal") by making a false statement of material fact to the Court without taking "reasonable remedial measures including, if necessary, disclosure to the tribunal"; and

(iv)    Referral of this matter to the State Bar of Colorado for disciplinary proceedings.

WHEREFORE, Plaintiffs request that this Honorable Court impose the sanctions set forth above against the SPO Defendants and their attorneys Ty Gee, Heather Hanneman, and Delanie Grewe, and also against CRCPS and their attorneys Tim Atkinson, Julie Walker, and Kobi Webb.

Dated: April 28, 2023                    Respectfully submitted,

_s/ Doug Litowitz_
Douglas Litowitz
413 Locust Place
Deerfield, IL 60015
312-622-2848
litowitz@gmail.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 28th day of April, 2023, I electronically served the foregoing on Attorneys for Defendants and Crossclaim Defendants.

SPOI/Knobel: tgee@hmflaw.com; hhanneman@hfmlaw.com; dgrewe@hfmlaw.com

CRCPS: tatkinson@irelandstapleton.com; jwalker@irelandstapleton.com; kwebb@irelandstapleton.com

_s/ Douglas Litowitz_
Douglas Litowitz
413 Locust Place
Deerfield, IL 60015
312-622-2848
litowitz@gmail.com

# EXHIBIT A

Emails between SPOI and CRCPS negotiating the ARCU in February 2019, and copies of the 2019 ARCU and the supposed 2015 ARCU.

| | |
|---|---|
| **From:** | Ryan Smith |
| **Sent:** | Thursday, February 7, 2019 6:20 PM MST |
| **To:** | Rob Glucksman |
| **Subject:** | RE: Agmt Regarding Collateral Units and Transfer Agmt |
| **Attachments:** | Exhibit B - Listing Agreement.pdf |

Attached is a form of Listing Agreement to be attached as Exhibit B to the Agreement Regarding Collateral Units. It is based on the previously executed listing agreements entered into by the parties.

Let me know if it is acceptable, and, if so, please add it into the form of Agreement Regarding Collateral Units that you send to the title company for signature at closing.

---

**From:** Rob Glucksman <rglucksman@coloradoregionalcenter.com>
**Sent:** Thursday, February 7, 2019 5:36 PM
**To:** Ryan Smith <ryan@solarisvail.com>
**Subject:** RE: Agmt Regarding Collateral Units and Transfer Agmt

Thanks, Ryan. These look good. We'll get these to the title company

Confirming I do not have a 'blank' listing agreement with just the business terms included.

Best,
Rob

---

**From:** Ryan Smith <ryan@solarisvail.com>
**Sent:** Thursday, February 7, 2019 4:45 PM
**To:** Rob Glucksman <rglucksman@coloradoregionalcenter.com>
**Subject:** RE: Agmt Regarding Collateral Units and Transfer Agmt

Looks good, thanks. I accepted the insertion of Section 2.d. (changed "a" to "such" in the second sentence to try to pickup co-listing agreements from the first sentence).

Attached please what should be final, executable versions of the following agreements:
1. Agreement Regarding Collateral Units
2. Transfer Agreement (form to be attached as Exhibit A to the Agreement Regarding Collateral Units)
3. Transfer Agreement (completed for 6E West)

For purposes of Exhibit B to the Agreement Regarding Collateral Units, do you have a copy of the form of Listing Agreement that we had previously agreed to? I only have the ones that we executed specific to PH C East and PH G West. If not, I can ask Josh to try to generate a form that mirrors those terms but without a reference to any specific unit.

---

**From:** Rob Glucksman <rglucksman@coloradoregionalcenter.com>
**Sent:** Thursday, February 7, 2019 3:42 PM
**To:** Ryan Smith <ryan@solarisvail.com>
**Subject:** RE: Agmt Regarding Collateral Units and Transfer Agmt

SPO_0008954

Hi Ryan,

That works. Here is a redline with the language inserted.

Best,
Rob

**From:** Ryan Smith <ryan@solarisvail.com>
**Sent:** Thursday, February 7, 2019 3:01 PM
**To:** Rob Glucksman <rglucksman@coloradoregionalcenter.com>
**Subject:** RE: Agmt Regarding Collateral Units and Transfer Agmt

Hi Rob. We could add the language with the additions shown in red below.

"Upon Lender's written request, Lender may authorize Borrower to enter into listing or co-listing agreements with third-party real estate brokers to market Eligible Unit(s). In no event shall Lender or Borrower be obligated to enter into a Listing Agreement. Borrower agrees that Lender shall have authority to make all decisions otherwise granted to Borrower in such listing agreement and Borrower shall consult Lender on all matters pertaining to the sale of the Eligible Units."

**From:** Rob Glucksman <rglucksman@coloradoregionalcenter.com>
**Sent:** Wednesday, February 6, 2019 6:46 PM
**To:** Ryan Smith <ryan@solarisvail.com>
**Cc:** 'Raul Abad' <rabad@fostergraham.com>
**Subject:** RE: Agmt Regarding Collateral Units and Transfer Agmt

Yes, I think that is OK.

In the Agmt Regarding Collateral Units, would you be ok with adding 2d: "Upon Lender's written request, Lender may authorize Borrower to enter into listing agreements with third-party real estate brokers to market Eligible Unit(s). Borrower agrees that Lender shall have authority to make all decisions otherwise granted to Borrower in such listing agreement and Borrower shall consult Lender on all matters pertaining to the sale of the Eligible Units."

Would like to make sure we are able to contract with other brokers if needed, unless you think this is already covered in the document.

**From:** Ryan Smith <ryan@solarisvail.com>
**Sent:** Wednesday, February 6, 2019 4:05 PM
**To:** Rob Glucksman <rglucksman@coloradoregionalcenter.com>
**Cc:** 'Raul Abad' <rabad@fostergraham.com>
**Subject:** RE: Agmt Regarding Collateral Units and Transfer Agmt

Looks good. At the end of Section 7 in this and the form Transfer Agreement, would you agree to add the following: "The provisions of this Section 7 shall survive Closing." With the addition of the Remaining Loan Advance concept, I would like to make clear that this section survives.

SPO_0008955

**From:** Rob Glucksman <rglucksman@coloradoregionalcenter.com>
**Sent:** Wednesday, February 6, 2019 3:47 PM
**To:** Ryan Smith <ryan@solarisvail.com>
**Cc:** 'Raul Abad' <rabad@fostergraham.com>
**Subject:** RE: Agmt Regarding Collateral Units and Transfer Agmt

Ryan,

Attached is the Transfer Agreement with the blanks filled out.

Best,
Rob

**From:** Ryan Smith <ryan@solarisvail.com>
**Sent:** Tuesday, February 5, 2019 6:35 PM
**To:** Rob Glucksman <rglucksman@coloradoregionalcenter.com>
**Cc:** 'Raul Abad' <rabad@fostergraham.com>
**Subject:** RE: Agmt Regarding Collateral Units and Transfer Agmt

Hi Rob,

I am following up on a voicemail that I just left for you. The changes to the Agreement Regarding Collateral Units are fine. I accepted your changes and attached a clean, executable version.

With respect to the Transfer Agreement, it is unnecessary to add the caveat in Section 7 with respect to interest on any Remaining Loan Advance. In the Agreement Regarding Collateral Units you wanted to retain the rights under the loan documents to foreclose on a Collateral Unit as an additional remedy in case borrower failed to transfer the Collateral Unit to CRC in accordance with the Agreement Regarding Collateral Units. However, under the Transfer Agreement, we will have already conveyed the Collateral Unit to CRC, and it is not appropriate to open the door to interest on the Remaining Loan Advance.

I added the one-year survival for the representations and warranties because the parties' representations and warranties are typical of those in a purchase and sale agreement. It is market for those provisions to survive closing for a period of 6 months to 1 year. I suspect that you want to ensure that Borrower's affirmation in Section 9.l., which ties back to the loan agreement, does not expire one year after closing. It was not my intent to cause it to do so. As 9.l. is not really a representation or warranty, but rather an affirmation of an existing covenant, I suggest that we move it to a new section and retain the one year limitation on the survival of both parties' representations and warranties. I have revised the Transfer Agreement accordingly and attached a redline to your draft.

Happy to discuss any remaining issues.

Thanks,

Ryan

SPO_0008956

**From:** Rob Glucksman <rglucksman@coloradoregionalcenter.com>
**Sent:** Tuesday, February 5, 2019 12:36 PM
**To:** Ryan Smith <ryan@solarisvail.com>
**Cc:** 'Raul Abad' <rabad@fostergraham.com>
**Subject:** re: Agmt Regarding Collateral Units and Transfer Agmt

Ryan,

Attached are redlines to the Agreement Regarding Collateral Units and Transfer Agreement. Made a comment in the transfer agreement to tie default back to the Loan Agreement as well. Also removed the 1 year measuring period on the reps/warranties as didn't quite understand which you were concerned about and those that would tie back to the Loan Agreement. Happy to discuss though.

Best,
Rob

Rob Glucksman
Authorized Representative
New York State Empire Outlet Fund I, LLC
Mobile: 303.888.9052
rglucksman@coloradoregionalcenter.com



IRS CIRCULAR 230 DISCLOSURE: To comply with U.S. Treasury regulations, we advise you that any U.S. federal tax advice included in this communication is not intended or written to be used, and can not be used, to avoid any U.S. federal tax penalties or to promote, market, or recommend to another party any transaction or matter addressed herein.

CONFIDENTIALITY NOTICE: This e-mail is confidential and is intended only for the named recipient(s) and may contain information that is privileged, attorney work product or exempt from disclosure under applicable law. If you have received this message in error, or are not the named recipient(s), please immediately notify the sender and delete this e-mail message from your computer.

SPO_0008957

| | |
|---|---|
| **From:** | Ryan Smith |
| **Sent:** | Friday, February 8, 2019 12:59 PM MST |
| **To:** | Rob Glucksman |
| **Subject:** | RE: Agmt Regarding Collateral Units and Transfer Agmt |

FYI, I signed all of Solaris' documents at the title company this morning.

**From:** Rob Glucksman <rglucksman@coloradoregionalcenter.com>
**Sent:** Friday, February 8, 2019 10:04 AM
**To:** Ryan Smith <ryan@solarisvail.com>
**Subject:** RE: Agmt Regarding Collateral Units and Transfer Agmt

Thanks. Will send this to the title company.

Best,
Rob

**From:** Ryan Smith <ryan@solarisvail.com>
**Sent:** Friday, February 8, 2019 9:58 AM
**To:** Rob Glucksman <rglucksman@coloradoregionalcenter.com>
**Subject:** RE: Agmt Regarding Collateral Units and Transfer Agmt

A revised Listing Agreement is attached. The only change was the addition of Section 28.1.

**From:** Ryan Smith
**Sent:** Friday, February 8, 2019 9:36 AM
**To:** 'Rob Glucksman' <rglucksman@coloradoregionalcenter.com>
**Subject:** RE: Agmt Regarding Collateral Units and Transfer Agmt

I'll ask Josh to add language to the listing agreement and recirculate for your approval.

**From:** Rob Glucksman <rglucksman@coloradoregionalcenter.com>
**Sent:** Friday, February 8, 2019 7:52 AM
**To:** Ryan Smith <ryan@solarisvail.com>
**Subject:** RE: Agmt Regarding Collateral Units and Transfer Agmt

That works. Thanks.

**From:** Ryan Smith <ryan@solarisvail.com>
**Sent:** Thursday, February 7, 2019 9:56 PM
**To:** Rob Glucksman <rglucksman@coloradoregionalcenter.com>
**Subject:** Re: Agmt Regarding Collateral Units and Transfer Agmt

I'm fine with the early termination concept. However, rather than the right to "cancel" the contract altogether, the parties should have the right to early terminate the Listing Period upon no less than 10 days written notice to the other.

*EXECUTION VERSION*

## AGREEMENT REGARDING COLLATERAL UNITS

This Agreement Regarding Collateral Units (this "**Agreement**"), dated as of the 17th day of April, 2015, is by and among **Colorado Regional Center Project Solaris, LLLP** (the "**Lender**" or "**CRCPS**"), a Colorado limited liability limited partnership, **Solaris Property Owner I, LLC** ("**Borrower**"), a Delaware limited liability company, and, with respect to Section 2 only, **P.B.K. Real Estate, LLC d/b/a Solaris Real Estate LLC** ("**Broker**"), a Colorado limited liability company.

## <u>Recitals</u>

A.      Reference is hereby made to that certain Promissory Note dated April 18, 2012, executed by Borrower, as assignee of Solaris Property Owner, LLC, a Delaware limited liability company ("**Original Borrower**") pursuant to that certain Assignment of Loan Agreement dated October 12, 2011 by and between Original Borrower and Borrower, and payable to the order of Lender ("**Lender**") in the original maximum principal amount of One Hundred Million and No/100 Dollars ($100,000,000.00), as amended by that certain Allonge to Promissory Note dated of even date therewith by and between Borrower and Lender (as amended through the date hereof and as the same may be further amended, restated, replaced, supplemented, or otherwise modified from time to time, collectively the "**Note**"), Borrower has become indebted to Lender with respect to a loan ("**Loan**") made pursuant to that certain Loan Agreement dated November 5, 2010 between Original Borrower and Lender (as amended through the date hereof and as the same may be further amended, restated, replaced, supplemented, or otherwise modified from time to time, the "**Loan Agreement**"), which Loan is secured by one of more Deeds of Trust recorded against the Collateral Units in the real property records of Eagle County, Colorado (as amended through the date hereof and as the same may be further amended, restated, replaced, supplemented, or otherwise modified from time to time, each a "**Deed of Trust**" and collectively, the "**Deeds of Trust**"), and further evidenced, secured or governed by other instruments and documents executed in connection with the Loan, including, but not limited to (i) that certain Operating Payment Agreement dated November 5, 2010 by and between Borrower, as successor in interest to Original Borrower, and Lender (the "**Operating Payment Agreement**"), (ii) that certain Yield Enhancement Agreement dated November 5, 2010 by and between Borrower and Lender, (iii) that certain Memorandum of Understanding dated April 1, 2011 by and between Borrower, as successor in interest to Original Borrower, and Lender (the "**MOU**"), and (iv) that certain Guaranty Agreement dated April 18, 2012 by Peter Knobel for the benefit of Lender (the "**Guaranty**"), and as such loan documents were amended pursuant to that certain Omnibus Amendment to EB-5 Investment Documents dated March 8, 2012 by and between Original Borrower and Lender (the "**Omnibus Amendment**") (such other instruments and documents, Operating Payment Agreement, MOU, Guaranty, and Omnibus Amendment, together with the Note, the Loan Agreement and Deeds of Trust, as amended through the date hereof and as the same may be further amended, restated, replaced, supplemented, or otherwise modified from time to time, collectively, the "**Loan Documents**"). All capitalized terms used but not otherwise defined herein shall have the meaning set forth in the Loan Documents.

B.      Pursuant to the Loan Documents, Borrower has the right to tender any Collateral Unit (as defined therein) to Lender in repayment of a corresponding Loan Advance commencing

SPO_0008913

on the applicable Prepayment Date, as more particularly set forth in the Loan Documents (each, a "**Collateral Unit Distribution**").

C.    Borrower has duly notified Lender that it intends to cause the occurrence of a Collateral Unit Distribution with respect to each of the Collateral Units on the applicable Prepayment Date. From and after the Prepayment Date for a Collateral Unit, such Collateral Unit may hereinafter be referred to each as an "**Eligible Unit**" and collectively as the "**Eligible Units**."

D.    In lieu of accepting the conveyance of title to the Eligible Units pursuant to a Collateral Unit Distribution, the Lender and Borrower have determined that it is desirable for Borrower to continue to hold record title to the Eligible Units.

E.    The effective date of each Collateral Unit Distribution is as follows:

| Unit | Note Date | Effective Date of Collateral Unit Distribution |
|---|---|---|
| 6E West | April 18, 2012 | April 17, 2015 |
| 2A South | April 25, 2012 | April 24, 2015 |
| Penthouse E West | May 3, 2012 | May 2, 2015 |
| 6E East | May 30, 2012 | May 29, 2015 |
| Penthouse E East | June 15, 2012 | June 14, 2015 |
| 5E West | August 2, 2012 | August 1, 2015 |
| 4G West | August 24, 2012 | August 23, 2015 |
| 7E West | September 7, 2012 | September 6, 2015 |
| Penthouse C East | September 13, 2012 | September 12, 2015 |
| 6D East | October 2, 2012 | October 1, 2015 |
| 5C West | November 6, 2012 | November 5, 2015 |
| 6C West | November 27, 2012 | November 26, 2015 |
| 5G West | January 24, 2013 | January 23, 2016 |
| 3E East | January 29, 2013 | January 28, 2016 |
| 7E East | January 30, 2013 | January 29, 2016 |
| 4D East | March 6, 2013 | March 5, 2016 |
| Penthouse G West | May 20, 2013 | May 19, 2016 |
| Penthouse C West | May 30, 2013 | May 29, 2016 |
| 3C East | January 30, 2015 | January 29, 2018 |

F.    Borrower has agreed to temporarily refrain from conveying title to the Eligible Units to Lender pursuant to a Collateral Unit Distribution on the condition that, for purposes of calculating interest under the Loan Documents, Borrower shall be deemed to have caused a Collateral Unit Distribution as of the Prepayment Date corresponding to each Eligible Unit and associated Loan Advance.

The parties desire to set forth their mutual understanding concerning certain matters related to the listing and sale of the Eligible Units as more particularly described below.

**Agreement**

SPO_0008914

Now, therefore, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Lender and Borrower agree as follows:

1.      <u>Collateral Unit Distribution</u>. For purposes of calculating interest (including any default interest) under the Loan Documents, with respect to each Eligible Unit and associated Loan Advance, Borrower shall be deemed to have caused a Collateral Unit Distribution as of the corresponding "Effective Date of Collateral Unit Distribution" set forth in <u>Recital E</u> above. Notwithstanding the occurrence of a Collateral Unit Distribution with respect to an Eligible Unit and anything in the Loan Documents to the contrary, the principal amount of the associated Loan Advance shall continue to constitute Indebtedness under the Loan; provided, however, (i) no interest (including default interest) shall accrue with respect to such Loan Advance from and after the applicable Effective Date of Collateral Unit Distribution (except as required by the Operating Payment Agreement) and (ii) in the event that a Loan Advance remains outstanding after the applicable Maturity Date, no default or Event of Default shall be deemed to have occurred as a result of a failure of Borrower to repay such Loan Advance on or before such Maturity Date, and Lender may not exercise any rights or remedies with respect to a default or Event of Default, unless and until it shall have provided Borrower with a notice and cure period in accordance with Section 17 of the Loan Agreement.

2.      <u>Listing of Eligible Units</u>.

a.      Upon Lender's written request, Lender may authorize Borrower to enter into certain Listing Agreements with its affiliate, P.B.K. Real Estate, LLC, a Colorado limited liability company (d/b/a Solaris Real Estate, LLC) ("**Broker**") to market an Eligible Unit(s) for sale for a total commission of five percent (5%) and on such other terms and conditions as are set forth in the Exclusive Right-To-Sell Listing Contract attached hereto as <u>Exhibit B</u> (each, a "**Listing Agreement**" and the Eligible Unit to which it pertains, a "**Listed Unit**").  The term of the Listing Agreement shall be defined therein. In no event shall Lender, Borrower, or Broker be obligated to enter into a Listing Agreement. The Listing Agreement shall provide that either party has the right to terminate the Listing Period (as defined in the Listing Agreement) upon ten (10) day's written notice to the other. Upon Lender's written request, Borrower shall exercise its right to terminate the Listing Period on the date set forth in Lender's written request that is no sooner than ten (10) days from the date of Borrower's receipt of such notice.

b.      Upon Closing on a Listed Unit, Broker agrees to pay to Lender an amount equal to fifty percent (50%) of the Sale Commission (as defined in the Listing Agreement), net of any Cooperative Broker Compensation (as defined in the Listing Agreement), earned by Broker from the sale of such Listed Unit.

c.      Borrower agrees that Lender shall have authority to make all decisions otherwise granted to Borrower in a Listing Agreement and Borrower shall consult Lender on all matters pertaining to the sale of the Eligible Units.

d.      Upon Lender's written request, Lender may authorize Borrower to enter into listing or co-listing agreements with third-party real estate brokers to market Eligible Unit(s).

SPO_0008915

In no event shall Lender or Borrower be obligated to enter into such a listing agreement.  Borrower agrees that Lender shall have authority to make all decisions otherwise granted to Borrower in such listing agreement and Borrower shall consult Lender on all matters pertaining to the sale of the Eligible Units.

3.     <u>Listing of Borrower's Units</u>. During the Listing Period (as defined in the Listing Agreement) for a Listed Unit, Borrower agrees that it will not cause Broker or any other third-party real estate broker to initiate an MLS listing for the sale of any residential unit in Solaris that is owned by Solaris Property Owner, LLC, a Delaware limited liability company, Solaris Property Owner II, LLC, a Delaware limited liability company, or other related entities other than Borrower (collectively, the **"Affiliated Solaris Owners"**) and (ii) is like-kind to an Eligible Unit.  Borrower also agrees that any like-kind units owned by the Affiliated Solaris Owners that are currently listed on MLS shall be removed.

4.     <u>Conveyance of Eligible Units.</u>

a.     <u>Sale to Third-Party</u>. In the event that Borrower enters into a contract for the purchase and sale of an Eligible Unit that is approved by Lender (a "<u>Purchase Agreement</u>"), Borrower and Lender shall promptly execute and deliver to the other party a Transfer Agreement with respect to such Eligible Unit substantially in the form attached hereto as <u>Exhibit A</u> (each, a "<u>Transfer Agreement</u>"). The Closing Date under the Transfer Agreement shall be the date set forth in the Purchase Agreement.

b.     <u>Tender to Lender</u>. In the event that Borrower notifies Lender in writing that it intends to tender or otherwise convey any Eligible Unit to Lender or Lender notifies Borrower in writing that an Eligible Unit is to be tendered or otherwise conveyed to Lender, Borrower and Lender shall promptly execute and deliver to the other party a Transfer Agreement with respect to such Eligible Unit substantially in the form of the Transfer Agreement attached hereto as <u>Exhibit A</u>. The Closing Date under the applicable Transfer Agreement shall be the date set forth in the notice from Borrower to Lender that it intends to tender or otherwise convey the Eligible Unit to Lender or notice from Lender to Borrower that requests than the Eligible Unit be tendered or otherwise conveyed to Lender, as the case may be.

c.     <u>Tender to Limited Partners of the Lender.</u> In the event that Lender notifies and instructs Borrower to enter into a contract for the sale or conveyance of an Eligible Unit to an individual limited partner or group of limited partners of the Lender, the parties agree that any Sale Commission shall be waived.

5.     <u>MISCELLANEOUS</u>. This Agreement represents the entire and complete agreement between the parties.  The Amendment shall not be amended or modified, except by an instrument in writing, signed by all parties. All terms and provisions hereof shall inure to the benefit of, and being binding upon the parties, and their respective successors and assigns. Wherever used in this Agreement, the singular shall include the plural, and the masculine shall include the feminine and neuter grammatical forms.  Captions are included for convenient reference only, and shall not be construed to alter or affect any terms or provisions of this Agreement.  This Agreement has been executed by the parties after discussions and negotiation,

SPO_0008916

and shall be construed as having been drafted by both parties. If any term of this Agreement is held to be invalid or unenforceable, such term shall be construed as being valid and enforceable to the fullest extent permitted by law, and all remaining terms shall remain full force and effect. This Agreement shall be construed and enforced in accordance with the laws of the State of Colorado. Each party hereto waives all right to trial by jury in any action, proceeding or counterclaim arising out of or relating to this Agreement or any related document. If a party initiates any action to enforce or interpret this Agreement, the party determined by the court or arbiter, as the case may be, to be the prevailing party in such action will be entitled to receive from the non-prevailing party all reasonable costs and expenses, including all reasonable attorneys' fees incurred by the prevailing party in such action. This Agreement may be executed in electronic or facsimile counterparts, each of which when so executed shall be deemed to be an original, and all of which when taken together shall constitute one original signed agreement.

[SIGNATURE PAGE FOLLOWS]

SPO_0008917

IN WITNESS WHEREOF, Borrower and Lender have executed this Agreement as of the date first above set forth.

BORROWER:

SOLARIS PROPERTY OWNER I, LLC,
a Delaware limited liability company


By: _____
    Ryan A. Smith, its Authorized Signatory


LENDER:

COLORADO REGIONAL CENTER PROJECT SOLARIS, LLLP,
a Colorado limited liability limited partnership

By:_____
Name: _____
Its: _____

With respect to Section 2 only.

BROKER:

P.B.K. REAL ESTATE, LLC d/b/a SOLARIS REAL ESTATE LLC,
a Colorado limited liability limited partnership

By:_____
Name: _____
Its: _____

SPO_0008918

*EXECUTION VERSION*

## AGREEMENT REGARDING COLLATERAL UNITS

This Agreement Regarding Collateral Units (this "**Agreement**"), dated as of the 17ᵗʰ day of April, 2015, is by and among **Colorado Regional Center Project Solaris, LLLP** (the "**Lender**" or "**CRCPS**"), a Colorado limited liability limited partnership, **Solaris Property Owner I, LLC** ("**Borrower**"), a Delaware limited liability company, and, with respect to Section 2 only, **P.B.K. Real Estate, LLC d/b/a Solaris Real Estate LLC** ("**Broker**"), a Colorado limited liability company.

### Recitals

A.      Reference is hereby made to that certain Promissory Note dated April 18, 2012, executed by Borrower, as assignee of Solaris Property Owner, LLC, a Delaware limited liability company ("**Original Borrower**") pursuant to that certain Assignment of Loan Agreement dated October 12, 2011 by and between Original Borrower and Borrower, and payable to the order of Lender ("**Lender**") in the original maximum principal amount of One Hundred Million and No/100 Dollars ($100,000,000.00), as amended by that certain Allonge to Promissory Note dated of even date therewith by and between Borrower and Lender (as amended through the date hereof and as the same may be further amended, restated, replaced, supplemented, or otherwise modified from time to time, collectively the "**Note**"), Borrower has become indebted to Lender with respect to a loan ("**Loan**") made pursuant to that certain Loan Agreement dated November 5, 2010 between Original Borrower and Lender (as amended through the date hereof and as the same may be further amended, restated, replaced, supplemented, or otherwise modified from time to time, the "**Loan Agreement**"), which Loan is secured by one or more Deeds of Trust recorded against the Collateral Units in the real property records of Eagle County, Colorado (as amended through the date hereof and as the same may be further amended, restated, replaced, supplemented, or otherwise modified from time to time, each a "**Deed of Trust**" and collectively, the "**Deeds of Trust**"), and further evidenced, secured or governed by other instruments and documents executed in connection with the Loan, including, but not limited to (i) that certain Operating Payment Agreement dated November 5, 2010 by and between Borrower, as successor in interest to Original Borrower, and Lender (the "**Operating Payment Agreement**"), (ii) that certain Yield Enhancement Agreement dated November 5, 2010 by and between Borrower and Lender, (iii) that certain Memorandum of Understanding dated April 1, 2011 by and between Borrower, as successor in interest to Original Borrower, and Lender (the "**MOU**"), and (iv) that certain Guaranty Agreement dated April 18, 2012 by Peter Knobel for the benefit of Lender (the "**Guaranty**"), and as such loan documents were amended pursuant to that certain Omnibus Amendment to EB-5 Investment Documents dated March 8, 2012 by and between Original Borrower and Lender (the "**Omnibus Amendment**") (such other instruments and documents, Operating Payment Agreement, MOU, Guaranty, and Omnibus Amendment, together with the Note, the Loan Agreement and Deeds of Trust, as amended through the date hereof and as the same may be further amended, restated, replaced, supplemented, or otherwise modified from time to time, collectively the "**Loan Documents**"). All capitalized terms used but not otherwise defined herein shall have the meaning set forth in the Loan Documents.

B.      Pursuant to the Loan Documents, Borrower has the right to tender any Collateral Unit (as defined therein) to Lender in repayment of a corresponding Loan Advance commencing

on the applicable Prepayment Date, as more particularly set forth in the Loan Documents (each, a "**Collateral Unit Distribution**").

      C.      Borrower has duly notified Lender that it intends to cause the occurrence of a Collateral Unit Distribution with respect to each of the Collateral Units on the applicable Prepayment Date. From and after the Prepayment Date for a Collateral Unit, such Collateral Unit may hereinafter be referred to each as an "**Eligible Unit**" and collectively as the "**Eligible Units.**"

      D.      In lieu of accepting the conveyance of title to the Eligible Units pursuant to a Collateral Unit Distribution, the Lender and Borrower have determined that it is desirable for Borrower to continue to hold record title to the Eligible Units.

      E.      The effective date of each Collateral Unit Distribution is as follows:

|  |  |  |
| :---: | :---: | :---: |
| 6E West | April 18, 2012 | April 17, 2015 |
| 2A South | April 25, 2012 | April 24, 2015 |
| Penthouse E West | May 3, 2012 | May 2, 2015 |
| 6E East | May 30, 2012 | May 29, 2015 |
| Penthouse E East | June 15, 2012 | June 14, 2015 |
| 5E West | August 2, 2012 | August 1, 2015 |
| 4G West | August 24, 2012 | August 23, 2015 |
| 7E West | September 7, 2012 | September 6, 2015 |
| Penthouse C East | September 13, 2012 | September 12, 2015 |
| 6D East | October 2, 2012 | October 1, 2015 |
| 5C West | November 6, 2012 | November 5, 2015 |
| 6C West | November 27, 2012 | November 26, 2015 |
| 5G West | January 24, 2013 | January 23, 2016 |
| 3E East | January 29, 2013 | January 28, 2016 |
| 7E East | January 30, 2013 | January 29, 2016 |
| 4D East | March 6, 2013 | March 5, 2016 |
| Penthouse G West | May 20, 2013 | May 19, 2016 |
| Penthouse C West | May 30, 2013 | May 29, 2016 |
| 3C East | January 30, 2015 | January 29, 2018 |

      F.      Borrower has agreed to temporarily refrain from conveying title to the Eligible Units to Lender pursuant to a Collateral Unit Distribution on the condition that, for purposes of calculating interest under the Loan Documents, Borrower shall be deemed to have caused a Collateral Unit Distribution as of the Prepayment Date corresponding to each Eligible Unit and associated Loan Advance.

      The parties desire to set forth their mutual understanding concerning certain matters related to the listing and sale of the Eligible Units as more particularly described below.

## Agreement

Now, therefore, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Lender and Borrower agree as follows:

1.    <u>Collateral Unit Distribution</u>. For purposes of calculating interest (including any default interest) under the Loan Documents, with respect to each Eligible Unit and associated Loan Advance, Borrower shall be deemed to have caused a Collateral Unit Distribution as of the corresponding "Effective Date of Collateral Unit Distribution" set forth in Recital E above. Notwithstanding the occurrence of a Collateral Unit Distribution with respect to an Eligible Unit and anything in the Loan Documents to the contrary, the principal amount of the associated Loan Advance shall continue to constitute Indebtedness under the Loan; provided, however, (i) no interest (including default interest) shall accrue with respect to such Loan Advance from and after the applicable Effective Date of Collateral Unit Distribution (except as required by the Operating Payment Agreement) and (ii) in the event that a Loan Advance remains outstanding after the applicable Maturity Date, no default or Event of Default shall be deemed to have occurred as a result of a failure of Borrower to repay such Loan Advance on or before such Maturity Date, and Lender may not exercise any rights or remedies with respect to a default or Event of Default, unless and until it shall have provided Borrower with a notice and cure period in accordance with Section 17 of the Loan Agreement.

2.    <u>Listing of Eligible Units</u>.

a.    Upon Lender's written request, Lender may authorize Borrower to enter into certain Listing Agreements with its affiliate, P.B.K. Real Estate, LLC, a Colorado limited liability company (d/b/a Solaris Real Estate, LLC) ("**Broker**") to market an Eligible Unit(s) for sale for a total commission of five percent (5%) and on such other terms and conditions as are set forth in the Exclusive Right-To-Sell Listing Contract attached hereto as Exhibit B (each, a "**Listing Agreement**" and the Eligible Unit to which it pertains, a "**Listed Unit**"). The term of the Listing Agreement shall be defined therein. In no event shall Lender, Borrower, or Broker be obligated to enter into a Listing Agreement. The Listing Agreement shall provide that either party has the right to terminate the Listing Period (as defined in the Listing Agreement) upon ten (10) day's written notice to the other. Upon Lender's written request, Borrower shall exercise its right to terminate the Listing Period on the date set forth in Lender's written request that is no sooner than ten (10) days from the date of Borrower's receipt of such notice.

b.    Upon Closing on a Listed Unit, Broker agrees to pay to Lender an amount equal to fifty percent (50%) of the Sale Commission (as defined in the Listing Agreement), net of any Cooperative Broker Compensation (as defined in the Listing Agreement), earned by Broker from the sale of such Listed Unit.

c.    Borrower agrees that Lender shall have authority to make all decisions otherwise granted to Borrower in a Listing Agreement and Borrower shall consult Lender on all matters pertaining to the sale of the Eligible Units.

d. Upon Lender's written request, Lender may authorize Borrower to enter into listing or co-listing agreements with third-party real estate brokers to market Eligible Unit(s). In no event shall Lender or Borrower be obligated to enter into such a listing agreement. Borrower agrees that Lender shall have authority to make all decisions otherwise granted to Borrower in such listing agreement and Borrower shall consult Lender on all matters pertaining to the sale of the Eligible Units.

3. <u>Listing of Borrower's Units</u>. During the Listing Period (as defined in the Listing Agreement) for a Listed Unit, Borrower agrees that it will not cause Broker or any other third-party real estate broker to initiate an MLS listing for the sale of any residential unit in Solaris that is owned by Solaris Property Owner, LLC, a Delaware limited liability company, Solaris Property Owner II, LLC, a Delaware limited liability company, or other related entities other than Borrower (collectively, the **"Affiliated Solaris Owners"**) and (ii) is like-kind to an Eligible Unit. Borrower also agrees that any like-kind units owned by the Affiliated Solaris Owners that are currently listed on MLS shall be removed.

4. <u>Conveyance of Eligible Units.</u>

a. <u>Sale to Third-Party</u>. In the event that Borrower enters into a contract for the purchase and sale of an Eligible Unit that is approved by Lender (a "<u>Purchase Agreement</u>"), Borrower and Lender shall promptly execute and deliver to the other party a Transfer Agreement with respect to such Eligible Unit substantially in the form attached hereto as <u>Exhibit A</u> (each, a "<u>Transfer Agreement</u>"). The Closing Date under the Transfer Agreement shall be the date set forth in the Purchase Agreement.

b. <u>Tender to Lender</u>. In the event that Borrower notifies Lender in writing that it intends to tender or otherwise convey any Eligible Unit to Lender or Lender notifies Borrower in writing that an Eligible Unit is to be tendered or otherwise conveyed to Lender, Borrower and Lender shall promptly execute and deliver to the other party a Transfer Agreement with respect to such Eligible Unit substantially in the form of the Transfer Agreement attached hereto as <u>Exhibit A</u>. The Closing Date under the applicable Transfer Agreement shall be the date set forth in the notice from Borrower to Lender that it intends to tender or otherwise convey the Eligible Unit to Lender or notice from Lender to Borrower that requests than the Eligible Unit be tendered or otherwise conveyed to Lender, as the case may be.

c. <u>Tender to Limited Partners of the Lender.</u> In the event that Lender notifies and instructs Borrower to enter into a contract for the sale or conveyance of an Eligible Unit to an individual limited partner or group of limited partners of the Lender, the parties agree that any Sale Commission shall be waived.

5. <u>MISCELLANEOUS</u>. This Agreement represents the entire and complete agreement between the parties. The Amendment shall not be amended or modified, except by an instrument in writing, signed by all parties. All terms and provisions hereof shall inure to the benefit of, and being binding upon the parties, and their respective successors and assigns. Wherever used in this Agreement, the singular shall include the plural, and the masculine shall include the feminine and neuter grammatical forms. Captions are included for convenient

reference only, and shall not be construed to alter or affect any terms or provisions of this Agreement. This Agreement has been executed by the parties after discussions and negotiation, and shall be construed as having been drafted by both parties. If any term of this Agreement is held to be invalid or unenforceable, such term shall be construed as being valid and enforceable to the fullest extent permitted by law, and all remaining terms shall remain full force and effect. This Agreement shall be construed and enforced in accordance with the laws of the State of Colorado. Each party hereto waives all right to trial by jury in any action, proceeding or counterclaim arising out of or relating to this Agreement or any related document. If a party initiates any action to enforce or interpret this Agreement, the party determined by the court or arbiter, as the case may be, to be the prevailing party in such action will be entitled to receive from the non-prevailing party all reasonable costs and expenses, including all reasonable attorneys' fees incurred by the prevailing party in such action. This Agreement may be executed in electronic or facsimile counterparts, each of which when so executed shall be deemed to be an original, and all of which when taken together shall constitute one original signed agreement.

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, Borrower and Lender have executed this Agreement as of the date first above set forth.

BORROWER:

SOLARIS PROPERTY OWNER I, LLC,
a Delaware limited liability company


By: _____
       Ryan A. Smith, its Authorized Signatory


LENDER:

COLORADO REGIONAL CENTER PROJECT SOLARIS, LLLP,
a Colorado limited liability limited partnership

By:_____
Name: _____
Its: _____

With respect to Section 2 only.

BROKER:

P.B.K. REAL ESTATE, LLC d/b/a SOLARIS REAL ESTATE LLC,
a Colorado limited liability limited partnership

By:_____
Name: _____
Its: _____

IN WITNESS WHEREOF, Borrower and Lender have executed this Agreement as of the date first above set forth.

BORROWER:

SOLARIS PROPERTY OWNER I, LLC,
a Delaware limited liability company


By: _____
     Ryan A. Smith, its Authorized Signatory


LENDER:

COLORADO REGIONAL CENTER PROJECT SOLARIS, LLLP,
a Colorado limited liability limited partnership

By:_____
Name: _____
Its: _____

With respect to Section 2 only.

BROKER:

P.B.K. REAL ESTATE, LLC d/b/a SOLARIS REAL ESTATE LLC,
a Colorado limited liability limited partnership

By: _____
Name: _____
Its: _____

IN WITNESS WHEREOF, Borrower and Lender have executed this Agreement as of the date first above set forth.

BORROWER:

SOLARIS PROPERTY OWNER I, LLC,
a Delaware limited liability company

By: _____
Ryan A. Smith, its Authorized Signatory

LENDER:

COLORADO REGIONAL CENTER PROJECT SOLARIS, LLLP,
a Colorado limited liability limited partnership

By:_____
Name: _____
Its: _____

With respect to Section 2 only.

BROKER:

P.B.K. REAL ESTATE, LLC d/b/a SOLARIS REAL ESTATE LLC,
a Colorado limited liability limited partnership

By:_____
Name: _____
Its: _____