# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-02443

Li, et al,
        Plaintiffs,

                              Hon. Judge Moore
    v.                             Hon. Magistrate Varholak

Colorado Regional Center Project Solaris LLLP,
        Nominal Defendant

    v.

Colorado Regional Center I, LLC, et al.
        Defendants.

---

### Li Plaintiffs' Response to SPO Defendants' *Objection*

---

Plaintiffs filed this lawsuit against SPOI in 2019, alleging nonpayment of loan advances that matured in 2017/2018. SPOI defended by producing a document supposedly from 2015 styled Agreement Regarding Collateral Units ("ARCU") which – they claim – showed that they prepaid the loan advances in 2015 by tendering collateral units prior to the maturity dates of the loan advances [Doc. 224: 5, 11].

In reality the ARCU was signed after the loan advances matured and were past due, in 2019. It was backdated to 2015 in a furtive attempt to paper over SPOI's breach of <u>non</u>payment by claiming instead that they <u>prepaid</u> the loan advances. In reality, there was no ARCU in 2015. There was no prepayment in 2015. There was no tender in 2015. In deposition, SPOI's in-house counsel could not name any 2015 prepayment documents:

        **Mr. Litowitz**:    "Do you have a formal document tendering those units in 2015 and dated in 2015?"

|  |  |  |
|---|---|---|
| **Mr. Smith**: | "I have a document that is effective as of 2015." |
| **Mr. Litowitz**: | "I didn't ask you that.  I said, 'Do you have a 2015 document signed and dated tendering the 19 units?" |
| **Mr. Smith:** | "The document was signed effective April 2015." |
| **Mr. Litowitz**: | "I'll ask it one more time.  In 2015, from January 1, 2015 to December 31, 2015, was a document signed by SPOI tendering the 19 units to CRCPS?" |
| **Mr. Smith**: | "No document was signed to my knowledge." |

Deposition of Ryan Smith, Tr. pp. 27-28, 31 (May 25, 2023), attached as Exhibit 1.  Mr. Smith conceded that the ARCU was signed in February 2019, long after SPOI failed to pay the loan advances.

As Plaintiffs informed this Court, there is nothing illegal or unethical *per se* about backdating a contract, but this *becomes* illegal and unethical when third parties are affected by the backdating.  For example, a landlord and tenant can backdate a lease agreement, but Wells Fargo cannot forgive a $100 million dollar loan by changing its date nor can they backdate option grants to directors, since that would harm their third-party shareholders. Applying that rule to the facts at hand, the backdating of the ARCU was not a mere two-party affair but directly harmed the third-party owners of CRCPS (its limited partners) by preventing CRCPS from recovering $80 million in loan advances which could have been distributed to the limited partners in 2017 and 2018.

Document fraud is bad enough. But SPOI also used linguistic fraud.  To any person familiar with real estate, the term "tender of collateral units" means a conveyance of units by warranty deed, and that is how "tender" is defined in the transaction documents of this case.  But SPOI has been using the word "tender" in a totally different way, to designate the metaphysical and psychological state of readiness to do something without actually doing anything in the real world. By combining their backdating with this redefinition, they claim that in 2019 they time-traveled back to 2015 and while in 2015 made a metaphysical "tender" of real estate in prepayment of loan

advances by mental power.  Again here is their in-house counsel when asked how collateral can be "tendered" without a deed:

| | |
|---|---|
| **Mr. Litowitz**: | "How is a conveyance of real estate made in the State of Colorado?" |
| **Mr. Smith**: | "Real estate in the State of Colorado is conveyed by delivery and acceptance of a deed." |
| **Mr. Litowitz**: | "Okay. So is it your testimony that the word "tender" is different than the word "convey"?" |
| **Mr. Smith:** | "Yes." . . . |
| **Mr. Litowitz:** | "What's the difference between tender and convey?" |
| **Mr. Smith:** | "Tender is a readiness and willingness and an ability to perform an act with notice to the other party." . . . |
| **Mr. Litowitz:** | "To clarify this mystification, are you saying that tender is different from conveyance?" |
| **Mr. Smith:** | "Yes, I've said that before and I'll say it again. |

Deposition of Ryan Smith, Tr. pp. 15-16, 24 (May 25, 2023), attached as Exhibit 1.

This Jabberwocky contradicts the Loan Agreement which uses "tender" and "conveyance" synonymously [Doc. 222-1 at §11]; it contradicts the Promissory Note which uses "tender" and "conveyance" synonymously [Doc. 224-2: 1]; it contradicts the Offering Memorandum where "prepayment" means "tendering [] a special warranty deed to a Condominium Unit," i.e. a conveyance [Doc. 222-3: 5]; and it contradicts CRCPS' own representative who stated under oath that prepayment requires "tendering a special warranty deed to one or more condominium units" [Doc. 51-1: ¶21].  The SPOI definition contradicts normal business jargon, since 'tender' and 'conveyance' are used synonymously in business, as they are used synonymously in the loan documents of this case.  Indeed, in the State case against SPOI, an expert opined that in three decades of banking and expert witnessing, he had never seen or heard the word "tender" used in SPO's manner.  See Exhibit 2.  SPOI (and perhaps CRCI) are trying to draw a meaningless and unfounded distinction between "tendering" and "conveying" to enable them to assert that the collateral units were tendered by SPOI through mental effort without any deeds. It is beyond puzzling that a lender would collude with a borrower to limit its own recovery in this way.

3

**So there you have it. SPOI is telling this Court that they used backdating as a way to time-travel from 2019 to 2015, at which time they prepaid a loan which matured in 2017/2018, doing so by metaphysical tender of real estate in their minds.  It is unclear whether CRCI – still a party before this Court – shares this nonsense.**

RPC 3.3(3) requires that if a lawyer comes to know that false evidence has been presented to the Court, they must take remedial measures.  **Someone** in the SPO camp and **someone** in the CRCI camp is at fault for backdating the ARCU and thereby fooling this Court and Plaintiffs' counsels for years, and the burden is on their lawyers to find out who did it.  Further, both parties must disown the claim that the ARCU was a 'tender' of collateral units prior to the maturity date of the loan advances, since this claim is grounded in backdated documents, time-travel, and mental transfers without any real-world actions.

For these reasons, the Li Plaintiffs request an evidentiary hearing to find out who backdated the ARCU, and to have SPOI and CRCI explain to this Court how they time-traveled to facilitate prepayment of a loan that was already past due.

Dated: June 14, 2023                                          Respectfully Submitted,

/s/ Douglas Litowitz
413 Locust Place
Deerfield, IL 60015
312-622-2848
Litowitz@gmail.com

### Certificate of Service

This document was filed on the ECF system for the District of Colorado on June 14, 2023.