# Declaration of Ty Gee

I, Ty Gee, declare:

1.   I am a shareholder at Haddon, Morgan and Foreman, P.C. ("HMF").

2.   I am counsel for Solaris Property Owner, LLC ("SPO"), Solaris Property Owner I, LLC ("SPO I"), and Peter Knobel (collectively, "SPO Defendants"), who are defendants in the consolidated action styled *Li v. Waveland Ventures, LLC*, No. 1:19-cv-02443-RM-STV (D. Colo.). There are two sets of plaintiffs in the Lawsuit—the *Li* Plaintiffs and the *Cui* Plaintiffs. As appropriate in this Declaration I refer collectively to both sets as "Plaintiffs."

3.   I submit this Declaration in support of the SPO Defendants' second motion for attorney fees ("Fees Motion").[1]

4.   I assume the reader's familiarity with the Court's recitation of relevant facts in its March 2, 2021 Order (Doc.271) and October 29, 2021 Order (Doc.413).

5.   As lead counsel for the SPO Defendants, I have personal knowledge of their defense of the consolidated action, which in this Declaration I refer to as "the Lawsuit." I am generally familiar with each timekeeper's work on the Lawsuit.

6.   From the outset of the Lawsuit HMF timekeepers billed separately fees and costs allocable to the *Li* action and to the *Cui* action. When legal services were performed

---

[1] The first motion for attorney fees requested fees through July 21, 2021. The Court granted the motion in October 2021. The SPO Defendants recovered the fee award of $321,397.47.

**EXHIBIT B**

that fairly were for the defense of both actions, we billed one-half of the fees to the *Li* action and one-half to the *Cui* action. When legal services were performed in connection with only one action, e.g., response to a motion filed by the *Li* Plaintiffs, we billed fees to that action only.

7.    For purposes of the Fees Motion I caused the Lawsuit to be broken down by (a) time expended on matters occurring in the District Court ("Trial Time"), and (b) time expended on matters occurring in the Tenth Circuit, which decided the appeals ("Appeal Time"). The Fees Motion includes only Trial Time; it excludes Appeal Time.[2]

8.    **Hourly rates.** I have been a part of the Denver metropolitan legal community for more than thirty years, and a shareholder at HMF for more than a dozen years. I have practiced complex commercial litigation for most of my legal career. I am generally familiar with the prevailing market rates in metropolitan Denver for attorneys and paralegals with skill, experience, and reputation similar to HMF's partners, associates, and paralegals. The rates charged by HMF's attorneys and paralegals in this matter are reasonably comparable to the prevailing market rates for attorneys and paralegals with comparable skill, experience and reputation.

---

[2]On some matters, it was a judgment call whether time should be allocated to the Trial Time category or the Appeal Time category. For example, reviewing the Tenth Circuit's decision, which was filed in the Tenth Circuit and this Court, could be seen as time incurred in the appeal or as time incurred to prepare for remand proceedings.

9.     My current undiscounted hourly rate is $625. However, during the course of HMF's representation of the SPO Defendants since July 21, 2021, I kept my hourly rate in this matter at $550, which was my hourly rate in this matter in July 2021. As the Court previously found, the hourly rate I charged in this lawsuit is reasonable.

10.    After July 21, 2021, the HMF team was minimal. One other partner-level HMF lawyer worked with me in the Lawsuit since July 22, 2021: Heather R. Hanneman. As discussed below, I asked Ms. Hanneman to provide legal services in this case while I was on sabbatical, and so her work primarily was limited to the period in late 2021 when I was on sabbatical. Ms. Hanneman's current undiscounted hourly rate is $575. However, during the course of her work in defending the Lawsuit, her hourly rate was $530.[3] Based on my experience and knowledge of hourly rates in the Denver metropolitan area and on my knowledge of Ms. Hanneman's reputation, experience, legal knowledge and acumen, her undiscounted hourly rate is reasonable in this locality and so too of course is her lower hourly rate charged in connection with the Lawsuit.

11.    Ms. Hanneman is an HMF shareholder with more than thirty years of experience in complex litigation representing clients in federal and state courts, arbitrations, appeals, and administrative proceedings. She is a member of the Colorado

---

[3] During some of the time when Ms. Hanneman was working on the Lawsuit, HMF billed her time at a rate higher than $530. When this error was discovered, the client received a credit for the affected months. Her hourly rate has been corrected retroactively in connection with the Fees Motion and the attached spreadsheets.

Bar and admitted to practice before the United States District Court for the District of Colorado, the United States Court of Appeals for the Tenth Circuit, and the United States Court of Appeals for the District of Columbia Circuit. ATTACHMENT B-1 to this Declaration is Ms. Hanneman's curriculum *vitae.*

12.    The only other lawyer who participated substantively in the Lawsuit was Delanie Grewe, who before joining HMF in 2021 clerked for U.S. District Judge William J. Martinez. While at HMF Ms. Grewe has participated in significant complex civil litigation activities. ATTACHMENT B-2 to this Declaration is Ms. Grewe's curriculum *vitae.* Ms. Grewe's undiscounted hourly rate is $350. However, in the Lawsuit her hourly rate was $315. Based on my experience and knowledge of the Denver metropolitan legal community, her undiscounted hourly rate is reasonable and so of course is her lower hourly rate in the Lawsuit.

13.    The last of HMF's three-member litigation team was a paralegal: Matthew MacPhail. HMF hired Mr. MacPhail upon his graduation as a James B. Angell Scholar from the University of Michigan. He provided paralegal services in connection with the Lawsuit from its commencement until his departure from HMF in mid-June 2023 to attend law school. Mr. McPhail's undiscounted hourly rate in 2021-2023 ranged from $100 to $150. However, his hourly rate in the Lawsuit was $100. Based on my experience and knowledge of the Denver metropolitan legal community, his undiscounted hourly rate of $100 was reasonable and so of course is his lower rate charged in the Lawsuit.

14.    Courtney McDonald, an experienced paralegal, succeeded Mr. MacPhail. Before joining HMF, for six years she provided paralegal and legal assistant services at the Office of the Colorado State Public Defender, to various law firms as a contract paralegal, and to the law firm of Jurdem LLC. Her hourly rate is $150. Since beginning work at HMF on August 1, 2023, Ms. McDonald has provided routine paralegal services in connection with HMF's representation of the SPO Defendants. I am familiar with the work she has done. Both her hourly rate and the hours she has expended are reasonable and were necessary.

15.    **Time expended.** HMF submitted monthly invoices to Ryan Smith, general counsel for SPO and SPO I. The invoices were based on contemporaneous time entries of the attorneys and paralegals working on this matter. I and the other HMF partners "no billed," wrote off or wrote down time, or gave general "courtesy discounts" on invoices when appropriate, for example, if we believed the time on legal work was duplicative, inefficient or otherwise should not be charged to the client. All such write-offs, write-downs and other discounts ("Discounts") are reflected in the invoices and accounted for in the total amounts requested by the SPO Defendants in the Fees Motion. The SPO Defendants have paid the balances on the invoices, or they are due and owing.

16.    HMF timekeepers adhere to the Colorado Supreme Court's guideline on billing time entries: Although attorneys are "not required to record in great detail how each minute of [their] time was expended," they "should identify the general subject matter of [their] time expenditures." *Am. Water Dev., Inc. v. City of Alamosa*, 874 P.2d

5

352, 383 (Colo. 1994). The time entries by HMF timekeepers typically provide more information about how attorney time was spent than simply general subject matter.

17.   To make the Court's and parties' review of HMF timekeepers' time entries easier and more efficient, I am *not* attaching the invoices. In my experience it is difficult to review time entries via many pages of monthly invoices delivered over a period of years, in this case from about July 2021 through August 2023. Instead of the invoices, I am attaching spreadsheets containing all time and fees for which the SPO Defendants seek attorney fees in the Lawsuit.[4] The time entries will be identical to the invoices except for modifications discussed below. The use of the spreadsheets has the added benefit of reducing the time needed for HMF to make the appropriate adjustments to fees when there has been a Discount for time.

18.   I want to explain how the spreadsheets were generated. HMF uses a time-keeping and accounting software called Tabs. HMF timekeepers contemporaneously input their time entries into Tabs, i.e., a description of the work they performed and the amount of time expended on the work. At the end of each month, HMF's bookkeeper uses Tabs to generate invoices to be sent to clients. The invoices contain (a) each HMF timekeepers' verbatim, contemporaneously recorded work description from Tabs, (b) the time expended from Tabs, and (c) the fee charged for that work from Tabs (hourly rate

---

[4] At the Court's request, however, we are happy to provide a copy of the invoices.

multiplied by amount of time). I refer to this information collectively as "Invoice Information."

19.   I learned a couple months ago that Tabs has a function that permits HMF to generate for any given case spreadsheets containing the Invoice Information. My paralegal caused Tabs to generate a spreadsheet for the *Li* action and one for the *Cui* action. Ms. Hanneman, Ms. Grewe and I—all of whom billed for appellate legal services provided to the SPO Defendants—manually reviewed the spreadsheets to identify and remove Appeal Time. The resulting spreadsheets are appended as ATTACHMENTS B-3 to B-6.

20.   The spreadsheets chronologically list all the descriptions of work and the corresponding time expended and fee charged for each work item, along with any Discounts applied. My paralegal, a law clerk, and I reviewed each line of the spreadsheets, compared them to the invoices sent to the clients, and confirmed that the spreadsheets accurately reflect the Invoice Information, except as noted in the spreadsheets and this Declaration.

21.   I made some modifications to the time entries. Where appropriate, I made limited redactions/edits to the spreadsheets to protect information subject to the attorney-client privilege, another privilege, or the work product doctrine. I selectively redacted or deleted time entries and their associated hours and/or fees when the SPO Defendants are not requesting payment for those fees. I edited time entries for clarification, e.g., expanding abbreviations. I typically put substantive edits in brackets.

7

22.    As I noted above, in reviewing the monthly invoices I discounted time as appropriate. When reviewing the expenditure of time as a whole in the spreadsheets for the period July 22, 2021-present, I took another pass at determining whether time should be discounted. I added four columns: "Time Discount," "Net Time," "Fees Discount," and "Net Fees." Whenever I wrote down or off time during my review of the spreadsheets, I would identify in the Time Discount column the amount of time. The spreadsheets contain formulas that, based on the discounted time, fill in the Net Time being billed, the amount of fees discounted, and the Net Fees being requested in the Fees Motion for a given task.

23.    The amount of time for discrete work items and the fees charged for those items, as discounted in the monthly invoices and my review of the spreadsheets, are reasonable in light of the skill required to perform the services, the difficulty of the work, the fee customarily charged in this community for similar services, and the experience, reputation and ability of the lawyers and paralegals who provided the services.

24.    The hours expended by HMF in defense of the *Li* action and *Cui* action are reasonable and were necessary.

25.    Among the factors that bear on reasonableness of hours expended are: (a) the hours properly billed to the client in accordance with good billing judgment; (b) time spent on specific tasks; and (c) duplication of efforts.

26.    ***Hours properly billed.*** HMF's hours properly were billed to the SPO Defendants in accordance with good billing judgment. As noted, HMF's timekeepers

8

adjusted their time when appropriate. The hours billed to the SPO Defendants were warranted. Additionally, as noted above, I reviewed all the time entries as part of the process of preparing the Fees Motion and gave additional Discounts as I believed appropriate. The total Discounts given in connection with the *Li* action were $4,483.75; the total given in connection with the *Cui* action were $457.25.

27.   HMF reduced its fees through reasonable and responsible use and management of attorney and paralegal time.

28.   ***Time spent on specific tasks.*** To reduce attorney fees and costs HMF engaged in the minimum work needed to discharge the SPO Defendants' litigation obligations and to preserve, protect and assert their interests and rights.

29.   Since July 21, 2021, HMF expended time in the *Li* action primarily on these matters:

a.   Litigation relating to the Court's Rule 59(e) Order regarding the PSLRA. *See, e.g.*, Doc.404.

b.   Litigation concerning the SPO Defendants' execution of the order awarding them attorney fees, including preparation of a motion for a charging order, *see, e.g.*, Docs.430-432, 440-442, because the *Li* Plaintiffs were not willing voluntarily to pay the award of fees against them.

c.   Post-remand litigation concerning the *Li* Plaintiffs' motion to "strike" the Court's award of $321,397.47 in attorney fees to the SPO Defendants. Doc.472. The SPO Defendants' response to the motion to strike was

complicated, as the Court can see from the response (Doc.472), in part because of the need to correct the *Li* Plaintiffs' mischaracterization of the Tenth Circuit's decision. The amount at issue—$321,397.47—warranted the expenditure of sufficient attorney time to prepare a robust response.

      d.   Post-remand litigation concerning the *Li* Plaintiffs' "Notice" accusing the SPO Defendants' counsel of ethical violations in connection with CRCPS and SPO I's agreement to backdate the ARCU and requesting that the Court take action against the SPO Defendants' counsel. Doc.482.

      e.   Post-remand litigation concerning the CRC Defendants' and Plaintiffs' joint motion to dismiss the Lawsuit with prejudice. The motion suggested the Court should ignore the Loan Agreement's fee-shifting provision and require each party to bear its own attorney fees and costs. *See* Doc.484 at [1], 4 & 7.

      f.   Preparation of the Fees Motion and its exhibits. This was a substantial and complex undertaking, for a number of reasons. The fees at issue were incurred over a period of more than two years. It was necessary to separate (i) Trial Time from Appeal Time, and (ii) time incurred in the *Li* action from time incurred in the *Cui* action. As noted, I reviewed the spreadsheets line by line to determine whether any additional adjustments should be made. This Declaration was factually complex and time-consuming to prepare.

    30.   Since July 21, 2021, HMF expended time in the *Cui* action primarily on these matters:

    a.   Litigation relating to the Court's Rule 59(e) Order regarding the PSLRA. *See, e.g.*, Doc.404.

    b.   Litigation concerning the SPO Defendants' execution of the order awarding them attorney fees motion, including preparation of a motion for a charging order, *see, e.g.*, Doc.429, 440, because the *Cui* Plaintiffs were not willing voluntarily to pay the award of fees against them.

    c.   Post-remand litigation concerning CRCPS's and Plaintiffs' joint motion to dismiss the Lawsuit with prejudice. The motion suggested the Court should ignore the Loan Agreement's fee-shifting provision and require each party to bear its own attorney fees and costs. *See* Doc.484 at [1], 4 & 7.

    d.   Preparation of the Fees Motion and its exhibits. This was a substantial and complex undertaking, for a number of reasons. The fees at issue were incurred over a period of more than two years. It was necessary to separate (i) Trial Time from Appeal Time, and (ii) time incurred in the *Li* action from time incurred in the *Cui* action. As noted, I reviewed the spreadsheets line by line to determine whether any additional adjustments should be made. This Declaration was factually complex and time-consuming to prepare

31.   All the work we performed in the *Li* action and *Cui* action and billed to the SPO Defendants normally would be billed to a paying client.

32.   ***Duplication of effort.*** There was little opportunity for duplication of efforts. I was the only HMF lawyer working on the Lawsuit from July 21, 2021, until I left on

sabbatical in early September 2022. Before leaving I met on a number of occasions with my law partner Ms. Hanneman, who would be covering for me in my absence, to discuss the factual and procedural background of the Lawsuit. Neither she nor I billed for these meetings. Additionally Ms. Hanneman reviewed many of the court submissions in this case that I suggested would be relevant to issues in the case, and she did not bill for her review. While on sabbatical, I stayed abreast of court filings and consulted as needed with Ms. Hanneman on strategy, e.g., the approach that should be taken in responding to the *Li* Plaintiffs' motion to "strike" the fees award.

33.   In connection with the Fees Motion I carefully reviewed the time entries in which Ms. Hanneman and I collaborated on strategy. To the extent I believed in good faith there was any duplication of effort, I discounted the time. I assumed some inefficiencies during the sabbatical period when Ms. Hanneman was covering for me. As a result I gave substantial discounts for this period. The Net Time charged for the period I was on sabbatical (from early September to early December 2022) eliminates any duplication of effort.

34.   **Fees incurred in the *Li* action versus the *Cui* action.** The total net attorney fees the SPO Defendants incurred in the *Li* action is $41,166.75 and in the *Cui* action is $18,044.75. The fees in each action are reasonable and were necessary.

35.   The disparity is easy to explain. HMF timekeepers incurred about $36,000 in fees that were billed about evenly between the *Li* action and the *Cui* action because the activity concerned both cases, e.g., preparing the motions for charging orders and the

Fees Motion. But the *Li* Plaintiffs' counsel was substantially more active and aggressive than the *Cui* Plaintiffs' counsel in his litigation posture. Since July 21, 2021, the *Cui* Plaintiffs' counsel contested only a couple of the SPO Defendants' motions and filed fewer than about a half dozen court submissions. In contrast, the *Li* Plaintiffs' counsel contested every motion filed by the SPO Defendants and filed multiple motions.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 8th day of September 2023.

*s/ Ty Gee*
_____